| **STATE OF ILLINOIS,** CIRCUIT COURT | **SUMMONS** | *For Court Use Only* FILED 12/30/2022 4:45 PM IRIS Y. MARTINEZ CIRCUIT CLERK COOK COUNTY, IL 2023L000001 Calendar, S 20856623 |
|---|---|---|
| Cook ☒ COUNTY | | |

| **Instructions ▾** | |
|---|---|
| Enter above the county name where the case was filed. | AAA MAX 1 LIMITED, AAA MAX 2 LIMITED, AAA MAX 3 LIMITED, AAA MAX 4 LIMITED, AAA B787 2 LIMITED and AAA B787 3 LIMITED **Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | V. |
| Enter the names of all people you are suing as Defendants/ Respondents. | THE BOEING COMPANY and BOEING COMMERCIAL AVIATION SERVICES EUROPE LIMITED **Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

**Case Number** _____

| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
|---|---|
| | E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org. |
| | Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |
| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons,* or *Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help. |
| | If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| In 1a, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1. Defendant/Respondent's address and service information:** |
|---|---|
| | a. Defendant/Respondent's primary address/information for service: |
| | Name *(First, Middle, Last):* The Boeing Company |
| | Registered Agent's name, if any: c/o Illinois Corporate Service Company |
| | Street Address, Unit #: 801 Adlai Stevenson Drive |
| | City, State, ZIP: Springfield, IL 62703 |
| | Telephone: _____ Email: _____ |
| In 1b, enter a second address for Defendant/ Respondent, if you have one. | b. If you have more than one address where Defendant/Respondent might be found, list that here: |
| | Name *(First, Middle, Last):* _____ |
| | Street Address, Unit #: _____ |
| | City, State, ZIP: _____ |
| | Telephone: _____ Email: _____ |
| In 1c, check how you are sending your documents to Defendant/ Respondent. | c. Method of service on Defendant/Respondent: |
| | ☑ Sheriff  ☐ Sheriff outside Illinois: _____ |
| | *County & State* |
| | ☐ Special process server  ☐ Licensed private detective |

SU-S 1503.2 Page 1 of 4 (06/21)

Enter the Case Number given by the Circuit Clerk:_____

| | |
|---|---|
| In 2, enter the amount of money owed to you. | **2.   Information about the lawsuit:**<br>Amount claimed:   $ __$100,000+__ |
| In 3, enter your complete address, telephone number, and email address, if you have one. | **3.   Contact information for the Plaintiff/Petitioner:**<br>Name *(First, Middle, Last)*:   __Mitchell A. Orpett, Tribler Orpett & Meyer, P.C.__<br>Street Address, Unit #:   __225 W. Washington St., Suite 2550__<br>City, State, ZIP:   __Chicago, IL 60606__<br>Telephone:   __(312) 201-6400__        Email:   __maorpett@tribler.com__ |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| Important information for the person getting this form | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
|---|---|

| | |
|---|---|
| Check 4a or 4b. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box 4a. Otherwise, if the clerk gives you a court date, check box 4b. | **4.   Instructions for person receiving this *Summons* (Defendant):**<br>☑   a.   To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served *(not counting the day of service)* by e-filing or at:<br>Address:   __Daley Center, 50 West Washington St., Room 801__<br>City, State, ZIP:   __Chicago, IL 60602__ |
| In 4a, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*.<br><br>In 4b, fill out:<br>•The court date and time the clerk gave you.<br>•The courtroom and address of the court building.<br>•The call-in or video information for remote appearances (if applicable).<br>•The clerk's phone number and website. All of this information is available from the Circuit Clerk. | ☐   b.   Attend court:<br>On: _____ at _____ ☐ a.m. ☐ p.m. in _____<br>      *Date*                *Time*                              *Courtroom*<br>**In-person at:**<br>_____<br>*Courthouse Address*        *City*                    *State*       *ZIP*<br>OR<br>**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):<br>      By telephone: _____<br>                        *Call-in number for telephone remote appearance*<br>      By video conference: _____<br>                              *Video conference website*<br>      _____<br>      *Video conference log-in information (meeting ID, password, etc.)*<br><br>Call the Circuit Clerk at: _____ or visit their website<br>                              *Circuit Clerk's phone number*<br>at: _____ to find out more about how to do this.<br>      *Website*        12/30/2022 4:45 PM IRIS Y. MARTINEZ |

| | |
|---|---|
| **STOP!**<br>The Circuit Clerk will fill in this section. | Witness this Date: _____                    *Seal of Court*<br><br>Clerk of the Court: _____ |
| **STOP!**<br>The officer or process server will fill in the Date of Service. | This *Summons* must be served within 30 days of the witness date.<br><br>Date of Service: _____<br>*(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |

FILED DATE: 12/30/2022 4:45 PM    2023L000001

FILED
12/30/2022 4:45 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000001
Calendar, S
20856623

**888.27011**                                         **Firm No.: 39950**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| AAA MAX 1 LIMITED, AAA MAX 2 LIMITED, AAA MAX 3 LIMITED, AAA MAX 4 LIMITED, AAA B787 2 LIMITED and AAA B787 3 LIMITED, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) | |
| THE BOEING COMPANY and BOEING COMMERCIAL AVIATION SERVICES EUROPE LIMITED, | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs, AAA MAX 1 LIMITED, AAA MAX 2 LIMITED, AAA MAX 3 LIMITED, AAA MAX 4 LIMITED, AAA B787 2 LIMITED and AAA B787 3 LIMITED (collectively referred to in the singular as "AAA"), by their undersigned attorneys, hereby complain of the defendants, THE BOEING COMPANY and BOEING COMMERCIAL AVIATION SERVICES EUROPE LIMITED ("BCASEL"), said defendants being referred to collectively hereafter as "BOEING," and allege as follows:

### INTRODUCTION

This lawsuit arises out of Boeing's tortious conduct and breach of contract relating to its 737 MAX and 787 Dreamliner aircraft and specifically to its sale of certain of those aircraft to Norwegian Air Shuttle ASA and/or Arctic Aviation Assets DAC, which were then ultimately assigned to AAA. Boeing has already admitted its conduct and wrongdoing regarding the

manufacture and sale of those aircraft as part of a Deferred Prosecution Agreement it entered into with the United States Department of Justice in January 2021. A copy of the Deferred Prosecution Agreement entered into and signed by Boeing with the Department of Justice is attached hereto as Exhibit O and made a part hereof. As a result of that malfeasance by Boeing, AAA has suffered substantial damages and is entitled to judgment against and full compensation from Boeing.

## PARTIES

1.      AAA are each limited liability companies incorporated and existing under the laws of the Cayman Islands.

2.      Defendant, The Boeing Company is, on information and belief, a corporation existing under the laws of Delaware, with its corporate headquarters and principal place of business in Chicago, Illinois, located in Cook County. Defendant, Boeing Commercial Aviation Services Europe Limited ("BCASEL") is, on information and belief, a private limited company incorporated and existing under the laws of England, with its principal place of business in England. Both companies are referred to collectively hereafter in the singular as "BOEING."

3.      At all relevant times, Boeing was engaged in the business of designing, manufacturing, integrating, assembling, modifying, maintaining, inspecting, testing, servicing, marketing, distributing, and selling aircraft, including the 737 MAX and 787 Dreamliner aircraft purchased by Norwegian Air Shuttle ASA and/or Arctic Aviation Assets DAC (collectively referred to as "NORWEGIAN").

## JURISDICTION AND VENUE

4.      This court has jurisdiction over this proceeding because The Boeing Company is or was at all times relevant hereto located in and did and still transacts business in the State of Illinois and did at all times relevant hereto maintain its principal place of business in Chicago, Cook

FILED DATE: 12/30/2022 4:45 PM   2023L000001

FILED DATE: 12/30/2022 4:45 PM   2023L000001

County, Illinois.  On information and belief, BCASEL entered into transactions with The Boeing Company related to the subject matter of this case.

5.     Venue is proper in Cook County because The Boeing Company resides or at all times relevant hereto did reside and conducts business in Cook County through its corporate headquarters in Chicago, Illinois and because, on information and belief, a substantial portion of the conduct relating to BCASEL took place within and/or relates to transactions with an Illinois entity.  Since June 2020, BOEING has been litigating the related lawsuit filed against it by NORWEGIAN in the United States District Court for the Northern District of Illinois, located in Chicago, Cook County, Illinois.

## STATUS OF AAA AS ASSIGNEE

6.     AAA  is the assignee of NORWEGIAN's interest in certain purchase agreements, warranty agreements and GoldCare Agreements for the twelve BOEING 737 MAX and the two 787 Dreamliner aircraft identified in paragraphs 7 and 10 respectively (hereinafter referred to as the "14 Aircraft"), entered into by and between NORWEGIAN and BOEING.  Pursuant to those assignments, AAA has the right and exclusive power to pursue all claims for damages in respect of the aircraft covered by those agreements arising out of any default or breach by BOEING and all warranty and indemnity rights provided in those agreements. Those 737 MAX agreements are attached and incorporated into this Complaint as Group Exhibits A-L.  The 787 Dreamliner agreements are attached and incorporated into this Complaint as Group Exhibits M and N.

7.     In particular and in part, NORWEGIAN assigned to AAA its interest in the purchase and GoldCare agreements it had entered into with BOEING relating to the following designated 737-MAX aircraft:

FILED DATE: 12/30/2022 4:45 PM   2023L000001

| MSN | Model | State of Registration | Lessor/Owner (Jurisdiction) | Registration Mark |
|---|---|---|---|---|
| 42831 | Boeing 737-8 | Sweden | AAA Max 2 Limited (Cayman Islands) | SE-RYG |
| 64992 | Boeing 737-8 | Sweden | AAA Max 2 Limited (Cayman Islands) | SE-RYH |
| 42835 | Boeing 737-8 | Sweden | AAA Max 4 Limited (Cayman Islands) | SE-RTA |
| 63971 | Boeing 737-8 | Sweden | AAA Max 4 Limited (Cayman Islands) | SE-RYC |
| 42825 | Boeing 737-8 | Sweden | AAA Max 1 Limited (Cayman Islands) | SE-RYL |
| 42826 | Boeing 737-8 | Sweden | AAA Max 1 Limited (Cayman Islands) | SE-RYK |
| 42827 | Boeing 737-8 | Ireland | AAA Max 1 Limited (Cayman Islands) | EI-FYE |
| 42828 | Boeing 737-8 | Ireland | AAA Max 1 Limited (Cayman Islands) | EI-FYD |
| 42829 | Boeing 737-8 | Sweden | AAA Max 1 Limited (Cayman Islands) | SE-RYF |
| 42830 | Boeing 737-8 | Sweden | AAA Max 1 Limited (Cayman Islands) | SE-RYJ |
| 42832 | Boeing 737-8 | Norway | AAA Max 3 Limited (Cayman Islands) | LN-BKA |
| 42833 | Boeing 737-8 | Norway | AAA Max 3 Limited (Cayman Islands) | LN-BKB |

Those 737 agreements are attached and incorporated into this Complaint as Group Exhibits A-L.

       a.      Agreements for the 737 MAX aircraft are attached and incorporated as Exhibits A-1, A-2, B-1, B-2, C-1, C-2, D-1, D-2, E-1, E-2, F-1, F-2, H-1, H-2, I-1, I-2, J-1, J-2, K-1, K-2, L-1, and L-2.

FILED DATE: 12/30/2022 4:45 PM   2023L000001

   b.     The GoldCare agreements for one of the 737 MAX aircraft, MSN 42831, are attached as incorporated as the following exhibits: A-6 to A-16. Substantially similar agreements were entered into for each of the other 737 MAX Aircraft. These agreements are, on information and belief, in the possession of BOEING as well as NORWEGIAN.

8.     BOEING was aware of and consented to NORWEGIAN's assignments to AAA of NORWEGIAN's interest in the aircraft identified in paragraph 7.

   a.     The assignment agreements are attached as incorporated as Exhibits A-3, A-4, B-3, B-4, C-3, C-4, D-3, D-4, E-3, E-4, F-3, F-4, G-3, G-4, H-3, H-4, I-3, I-4, J-3, J-4, K-3, K-4, L-3, and L-4.

   b.     The consent to assignment agreements are attached and incorporated as Exhibits A-5, B-5, C-5, D-5, E-5, F-5, G-5, H-5, I-5, J-5, K-5, and L-5.

9.     AAA is also the assignee of NORWEGIAN's interest in certain purchase agreements, warranty agreements and GoldCare agreements for two 787 Dreamliner aircraft entered into by and between NORWEGIAN and BOEING.  Pursuant to those assignments, AAA has the right and exclusive power to pursue all claims for damages in respect of the aircraft covered by those agreements arising out of any default or breach by BOEING and all warranty and indemnity rights provided in those agreements.

10.     In particular and in part, AAA was assigned the rights in respect of the following designated 787 Dreamliner aircraft:

| MSN | Model | State of Registration | Lessor/Owner (Jurisdiction) | Registration Mark |
|---|---|---|---|---|
| 63316 | Boeing 787-9 | UK | AAA C787 2 Limited (Cayman Islands) | G-CKWF |
| 63321 | Boeing 787-9 | UK | AAA B787 3 Limited (Cayman Islands) | G-CKWU |

Those 787 agreements are attached and incorporated into this Complaint as Group Exhibits M-N.

   a.     The purchase and warranty agreements for the two 787 Dreamliners are attached and incorporated as Exhibits M-1 to M-4 and N-1 to N-3.

FILED DATE: 12/30/2022 4:45 PM   2023L000001

b.     The GoldCare agreements for those aircraft are attached and incorporated as Exhibits M-7 to M-15 and N-6 to N-12.

11.     BOEING was aware of and consented to the assignments to AAA of NORWEGIAN's interest in the aircraft identified in paragraph 10.

a.     The assignment agreements are attached as incorporated as Exhibits M-5 and N-4 and are described in the Exhibit Index.

b.     The notice of assignments to Boeing documents and consent agreements are attached and incorporated as Exhibits M-6 and N-5 and are described in the Exhibit Index.

## FACTS – 737 MAX AIRCRAFT

12.     On information and belief, for a period of time prior to entering into the Purchase Agreements and GoldCare Agreements relating to the twelve 737 MAX aircraft identified in paragraph 7, above, BOEING marketed the 737 MAX design aircraft to NORWEGIAN and made a number of promises and representations to NORWEGIAN, the Federal Aviation Administration and the industry at large that the 737 MAX aircraft was similar in design and operation to its earlier model, the 737 Next Generation ("737-NG").  These promises and representations were made to induce and allow NORWEGIAN to purchase the 737 MAX Aircraft and led to the purchase by NORWEGIAN of the twelve aircraft identified in paragraph 7, above.

13.     On information and belief, among the promises and representations made by BOEING to NORWEGIAN and the Federal Aviation Administration, among others, was that no new pilot training would be required for NG operators in order for NORWEGIAN to incorporate the 737 MAX aircraft into its fleet.

14.     Specifically, on information and belief, BOEING represented to NORWEGIAN that NORWEGIAN's NG pilots would not require new flight simulator training to operate the 737 MAX.

FILED DATE: 12/30/2022 4:45 PM   2023L000001

15.     On information and belief, BOEING also promised and represented to NORWEGIAN that the 737 MAX aircraft purchased by NORWEGIAN would be state of the art.

16.     At all times relevant hereto and specifically at the time of its sale of the 737 MAX aircraft to NORWEGIAN, BOEING knew and understood that NORWEGIAN could and/or would assign NORWEGIAN's rights to the twelve 737 MAX aircraft under the Purchase Agreements to AAA and made its aforesaid representations and promises with the knowledge or expectation that, as a result thereof, AAA would and/or could take ownership of those aircraft.

17.     At no time prior to BOEING's sales to NORWEGIAN did BOEING disclose to NORWEGIAN, the Federal Aviation Administration or the industry at large that the larger engines utilized on the 737 MAX and the twelve aircraft identified in paragraph 7, above (hereinafter referred to as the "12 MAX Aircraft") could cause significant issues, including changing the aircraft's center of gravity, decreasing aircraft stability and negatively affecting flight handling characteristics in such a manner as to make the aircraft more susceptible to the risk of a catastrophic aerodynamic stall.

18.     On information and belief, in January 2012, NORWEGIAN and BOEING entered into Purchase Agreement Number PA-03754 with BOEING (the "737 Purchase Agreement"), pursuant to which NORWEGIAN agreed to purchase a number of 737 MAX-8 aircraft.

19.     On information and belief, the 737 Purchase Agreement incorporated the terms and conditions of an Aircraft General Terms Agreement dated August 29, 2007, which was identified as AGTA-NSB (the "AGTA").

20.     On information and belief, the 737 Purchase Agreement also incorporated various letter agreements.

21.     On information and belief, BOEING and NORWEGIAN entered into certain Supplemental Agreements and GoldCare service agreements relating to NORWEGIAN's

FILED DATE: 12/30/2022 4:45 PM   2023L000001

purchase of 737 MAX aircraft.  The 737 Purchase Agreement, the  AGTA, the relevant letter agreements, the Supplemental Agreements and the GoldCare Agreements pertaining thereto are hereinafter referred to as the "737 Contracts").

22.    On information and belief, the Contracts include specific promises by BOEING, including BOEING's express warranty by which BOEING agreed that the 737 MAX aircraft purchased by NORWEGIAN, including the 12 MAX Aircraft, and their component parts would be free from defects in design and construction and would be "state of the art."

23.    The twelve MAX Aircraft delivered by BOEING to NORWEGIAN are or were at all relevant times defective, unsafe and could not be operated, all in violation of the Contracts and BOEING's common-law duties.  Based on that conduct of BOEING relating to the 737 MAX Aircraft, AAA has suffered severe damages and loss as set forth herein.

### FACTS – 787 DREAMLINER AIRCRAFT

24.    On information and belief, BOEING engaged in conduct in connection with the 787 Dreamliner that mirrored its fraudulent, deceptive, negligent conduct and intentionally or negligently misrepresented to NORWEGIAN material facts relating to the 787 Dreamliner Aircraft in order to induce NORWEGIAN and AAA to enter into Purchase Agreements and financing arrangements, including assignment of the 787 Dreamliners to AAA.  As one example, BOEING promised that the 787 would be a reliable aircraft and would offer NORWEGIAN operational and cost savings as well as competitive advantages.

25.    On information and belief, BOEING further represented that the 787 Dreamliner's engines would provide unparalleled fuel efficiency and enable carriers such as NORWEGIAN the ability to optimize its fleet and network performance.

FILED DATE: 12/30/2022 4:45 PM   2023L000001

26.     On information and belief, in reliance on these and other promises, NORWEGIAN and BOEING entered into Purchase Agreement Number PA-03661 on May 10, 2011, under which NORWEGIAN agreed to purchase 787-8 aircraft from BOEING.  On October 21, 2015, BOEING and NORWEGIAN entered into Purchase Agreement Number PA-04424, relating to BOEING Model 787-9 Aircraft, which was for the purchase and sale of nineteen additional 787s, including BOEING Model B787-9 aircraft bearing manufacturer's serial number 63321.  On March 28, 2018, BOEING entered into Purchase Agreement No. 04790, by which it agreed to sell BOEING Model B787-9 aircraft bearing manufacturer's serial number 63321 (together with Purchase Agreement Number PA-03661 and Purchase Agreement Number PA-04424 and their related amendments, supplements and modifications, these agreements are referred to as the "787 Purchase Agreements").  The 787 Purchase Agreements all related to BOEING's sale of 787 Dreamliner aircraft to NORWEGIAN,  including the two 787 Dreamliners identified in paragraph 10, above (hereinafter referred to as the "2 Dreamliners"). BOEING also entered into or provided a Consent and Agreement to, Airframe Warranties Agreements in respect of the 2 Dreamliners by which it consented to the assignment by NORWEGIAN to AAA of the warranties pursuant to the Airframe Warranties Agreement and to make payment in respect of each valid claim relating thereto ("Warranty Agreements").  BOEING also entered into two GoldCare service agreements covering each of the 2 Dreamliners ("Dreamliner GoldCare Agreements"). The 787 Purchase Agreements, the Warranty Agreements and the Dreamliner GoldCare Agreements, together with all letter agreements, supplemental agreements and amendments relating thereto are referred to herein as the "787 Contracts."

27.     In and by the 787 Contracts, BOEING warranted and represented that the 787 Dreamliners, including the 2 Dreamliners, and its component parts would be free from defects in design and construction.

28.     At all times relevant hereto and specifically at the time of its sale of the 787 Dreamliners to NORWEGIAN, BOEING knew and understood that NORWEGIAN could and/or would assign NORWEGIAN's rights to the 787 Dreamliners under the Purchase Agreements to AAA and made its aforesaid representations and promises with the knowledge or expectation that, as a result thereof, AAA would and/or could take ownership of those aircraft.

29.     Despite BOEING's warranties and representations, the 787 Dreamliner and the 2 Dreamliners did not perform and were not serviced as promised.  BOEING has breached the 787 Contracts in that the 787 Dreamliners have suffered from a series of electrical fires causing the grounding of the aircraft, a series of problems caused by engine unreliability and early fan blade corrosion causing more 787 Dreamliners to be grounded, and problems with compressors.

30.     BOEING's conduct with respect to the 787 Dreamliners, including the 2 Dreamliners, has substantially impaired the value of those aircraft and caused substantial damage to AAA.

### <u>COUNT I – BREACH OF CONTRACT</u>
**(12 MAX Aircraft and GoldCare Agreements)**

31.     AAA hereby adopts and realleges paragraphs 1-30 of this Complaint as its paragraph 31, as though fully set forth herein.

32.     BOEING and NORWEGIAN are parties to the 737 Contracts.

33.     Pursuant to the 737 Contracts, BOEING was required, among other things, to deliver aircraft to NORWEGIAN, including the 12 MAX Aircraft, that were capable of being

FILED DATE: 12/30/2022 4:45 PM   2023L000001

flown safely, were state of the art, met all regulatory requirements, and conformed to BOEING's contractual warranty.

34.    The 12 MAX Aircraft delivered by BOEING to NORWEGIAN cannot be flown and fail to comply with BOEING's warranty or with applicable regulatory requirements and certificates.

35.    BOEING has failed, among other things, to deliver the 12 MAX Aircraft to NORWEGIAN so that they are capable of being flown safely, are state of the art, meet all regulatory requirements, can be serviced as anticipated and otherwise failed to comply with its contractual undertakings and obligations and has therefore breached the 737 Contracts.

36.    BOEING breached the terms of the 737 Contracts by failing to design and manufacture the 12 MAX Aircraft in accordance with FAA regulations and all other applicable regulatory requirements pertaining to type certificates that must be obtained for the design and manufacture of a new aircraft model and to allow NORWEGIAN to operate the 12 MAX Aircraft.

37.    Contrary to and in violation of the 737 Contracts, the 12 MAX Aircraft delivered by BOEING to NORWEGIAN are not state of the art and use outdated cockpit design and flight control systems.

38.    BOEING's breaches were caused by its gross negligence. As such, under Washington law, BOEING cannot enforce any exculpatory clause or limitation of liability that may be set forth in the 737 Contracts.

39.    BOEING's grossly negligent acts and/or omissions with respect to the 12 MAX Aircraft include, but are not limited to:

    a.    Designing, manufacturing, assembling, and/or certifying an aircraft with an unsafe pitch down system;

11

FILED DATE: 12/30/2022 4:45 PM   2023L000001

b.      Designing manufacturing, assembling, and/or certifying an aircraft that allowed for a single point of failure to cause an aviation disaster, thereby rendering the aircraft unsafe and incapable of being operated;

c.      Designing, manufacturing, assembling, and/or certifying an aircraft with inadequate and unsafe AOA sensors;

d.      Designing, manufacturing, assembling, and/or certifying an aircraft with a flight control system susceptible to bad data from the AOA sensor, and failing to install standard features to protect against this known problem;

e.      Designing, manufacturing, assembling, and/or certifying an aircraft with an unsafe and dangerous flight control system that would cause the plane to automatically dive without providing a safe and reasonable means for override;

f.      Marketing and selling the 737 MAX and the 12 MAX Aircraft as having the same flight properties as the 737-NG to consciously and intentionally induce airlines, including NORWEGIAN, to avoid the time-consuming retraining of airline pilots despite knowing that the 737 MAX and the 12 MAX Aircraft contained a new and potentially dangerous MCAS automated flight control system;

g.      Failing to provide adequate warning with regard to the 12 MAX Aircraft's or the 737 MAX's MCAS and the risk of an automated dive without any command from a pilot, or clear instruction to safely and promptly override such an MCAS automated dive;

h.      Failing to conduct a thorough and accurate safety assessment of the aircraft;

i.      Failing to warn NORWEGIAN of the need to properly train pilots on the 12 MAX Aircraft.

40.      AAA and NORWEGIAN have performed all of their material obligations under the 737 Contracts.

41.      AAA has suffered and will continue to suffer damages as a result of BOEING's breaches of the 737 Contracts.

WHEREFORE, AAA respectfully asks this Court to enter judgment in its favor and against BOEING and to award it money damages in an amount to be determined at trial, together with

FILED DATE: 12/30/2022 4:45 PM   2023L000001

interest, costs and fees and any such other relief as it may be entitled to under law and the circumstances of this case.

## COUNT II – BREACH OF CONTRACT
### (2 Dreamliner Aircraft and Warranty and Dreamliner GoldCare Agreements)

42.     AAA hereby adopts and realleges paragraphs 1-31 of this Complaint as its paragraph 42, as though fully set forth herein.

43.     BOEING and NORWEGIAN are parties to the 787 Contracts.

44.      Pursuant to the 787 Contracts, BOEING was required, among other things, to deliver and service aircraft to NORWEGIAN that were not damaged, were capable of being flown safely, were state of the art, met all regulatory requirements, conformed to BOEING's contractual warranty, were capable of being used as reasonably expected and intended and were serviced by BOEING as contractually promised.

45.     The 2 Dreamliners failed to meet the contractual obligations, representations and warranties of BOEING under the 787 Contracts.

46.     AAA has been and will continue to be damaged by BOEING's breach of the 787 Contracts.

WHEREFORE, AAA respectfully asks this Court to enter judgment in its favor and against BOEING and to award it money damages in an amount to be determined at trial, together with interest, costs and fees and any such other relief as it may be entitled to under law and the circumstances of this case.

## COUNT III – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
### (14 Aircraft and GoldCare Agreements)

47.     AAA hereby adopts and realleges paragraphs 1-46 of this Complaint as its paragraph 47, as though fully set forth herein.

FILED DATE: 12/30/2022 4:45 PM   2023L000001

48.     Under Washington law, every contract contains an implied covenant of good faith and fair dealing. Where one party to the contract contravenes the intention and spirit of the contract, that party is liable for breach of the implied covenant of good faith and fair dealing.

49.     BOEING's actions and/or omissions as set forth herein are in breach of the covenant of good faith and fair dealing implied and imputed in the Contracts.

50.     BOEING's acts and/or omissions regarding the airworthiness and servicing of the 737 MAX, the 787 Dreamliner and the 14 Aircraft, its certification by regulators, and training requirements for pilots flying the 737 MAX were contrary to and in violation of its duties of good faith and fair dealing, and were made in such a manner as to evade the spirit of the Contracts and/or so as to deny NORWEGIAN the expected benefits of the transactions.

51.     BOEING's breach of the implied covenant of good faith and fair dealing has caused and continues to cause damage to AAA.

WHEREFORE, AAA respectfully asks this Court to enter judgment in its favor and against BOEING and to award it money damages in an amount to be determined at trial, together with interest, costs and fees and any such other relief as it may be entitled to under law and the circumstances of this case.

## <u>COUNT IV – FRAUDULENT INDUCEMENT</u>
### (12 MAX Aircraft and GoldCare Agreement)

52.     AAA hereby adopts and realleges paragraphs 1-51 of this Complaint as its paragraph 52, as though fully set forth herein.

53.     BOEING represented to NORWEGIAN that the 737 MAX and the 12 MAX Aircraft were safe aircraft.

54.     BOEING further represented to NORWEGIAN that the 12 MAX Aircraft it would deliver to NORWEGIAN would meet all regulatory requirements and would be free from defects

FILED DATE: 12/30/2022 4:45 PM   2023L000001

in material, process of manufacture, and workmanship in view of the state of the art at the time of design.

55.     BOEING further represented to NORWEGIAN that Norwegian's flight crews would be "at home" in the 737 MAX and that NORWEGIAN would not need to provide its pilots who were familiar with and flew its earlier model 737 Next Generation ("737-NG") with any additional training because of its commonality with that earlier model.

56.     BOEING further represented to NORWEGIAN that the 737 MAX aircraft, including the 12 MAX Aircraft, would offer "aerodynamic improvement" over the 737-NG.

57.     BOEING further represented to NORWEGIAN that the 737 MAX, including the 12 MAX Aircraft, would be state of the art.

58.     BOEING made these promises and representations to induce NORWEGIAN to order 737 MAX airplanes, including the 12 MAX Aircraft.

59.     BOEING made these promises to NORWEGIAN knowing that they were false or with reckless indifference to their falsity.

60.     BOEING intentionally misrepresented and concealed information about the 737 MAX from NORWEGIAN to induce NORWEGIAN to purchase the 12 MAX Aircraft and to continue to enter into the Contracts and additional agreements with BOEING, including agreements to order additional 737 MAX aircraft and GoldCare services for the 12 MAX Aircraft, and other 737 MAX planes.

61.     Among other misrepresentations and nondisclosures, BOEING failed to disclose to NORWEGIAN, and actively concealed, that the 737 MAX had a tendency to experience abnormal nose up pitching, which is prohibited by FAA airworthiness regulations, including under 14 C.F.R. §25.203(a).

FILED DATE: 12/30/2022 4:45 PM   2023L000001

62.     BOEING also failed to disclose, and actively concealed, from NORWEGIAN that it had developed MCAS to try to counter the 737 MAX's undisclosed nose-up pitching problem; that MCAS was incorporated on the 737 MAX and had been incorporated on each of the 12 MAX Aircraft and could, under certain conditions, cause the plane to crash; or that BOEING had designed MCAS with a single-point of failure that could lead to a crash.

63.     BOEING further misrepresented to NORWEGIAN that the 737 MAX would not require additional pilot training, even though BOEING knew the MAX was substantially different from the NG, handled differently from the NG due to its larger engines and engine placement, and included MCAS, an entirely new flight control system that was equipped with the power to override pilot inputs and force the MAX into a nosedive.

64.     BOEING misrepresented to NORWEGIAN that the 737 MAX and the 12 MAX Aircraft would fly similarly to the NG, when it knew that those planes would not do so.

65.     BOEING also misrepresented to NOWEGIAN that the 737 MAX, including the 12 MAX Aircraft, would be safe and airworthy, and that they had been designed in compliance with aviation regulations.

66.     BOEING's misrepresentations and omissions were false and misleading.

67.     BOEING's misrepresentations and omissions were also material.

68.     At all times relevant hereto, BOEING knew that these misrepresentations and omissions were false or misleading or acted with a reckless disregard as to the veracity of its statements or omissions.

69.     NORWEGIAN relied on BOEING's material misrepresentations and omissions in determining to purchase the 12 MAX Aircraft over other alternatives, and in determining to enter into the Contracts with BOEING.

FILED DATE: 12/30/2022 4:45 PM   2023L000001

70.     NORWEGIAN reasonably relied on BOEING's promises and representations regarding the 737 MAX and the 12 MAX Aircraft.

71.     BOEING made the false and misleading statements and omissions described herein with the intent of inducing NORWEGIAN to purchase 737 MAX aircraft over other alternatives, including specifically to enter into the Contracts for and regarding the 12 MAX Aircraft.

72.     As the assignee of all pertinent rights under the purchase agreements entered into by NORWEGIAN, AAA stands in the shoes of NORWEGIAN and owns NORWEGIAN's rights under the contracts. AAA has suffered and will continue to suffer damages as a result of BOEING's misrepresentations and omissions and is therefore entitled to receive a refund of the purchase price and all damages relating to and arising out Boeing's tortious conduct.

WHEREFORE, AAA respectfully asks this Court to enter judgment in its favor and against BOEING and to award it money damages in an amount to be determined at trial, together with interest, costs and fees and any such other relief as it may be entitled to under law and the circumstances of this case.

## **RELIEF REQUESTED**

AAA respectfully requests that the Court enter judgment in its favor and against BOEING and award the following relief in its favor and against BOEING as follows:

A)     compensatory and consequential damages sustained as a result of Boeing's wrongdoing and breach of the Contracts, in an amount to be proven at trial, including interest;

B)     reasonable costs and expenses, including expenses for experts and attorney fees; and

C)     such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

AAA demands trial by jury of all claims so triable.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ Mitchell A. Orpett
One of the Attorneys for AAA MAX 1
LIMITED, AAA MAX 2 LIMITED, AAA
MAX 3 LIMITED, AAA MAX 4
LIMITED, AAA B787 2 LIMITED and
AAA B787 3 LIMITED

</div>

Mitchell A. Orpett, Esq.
Michael R. Spanel, Esq.
Tribler, Orpett & Meyer, P.C.
225 W. Washington St., Suite 2550
Chicago, Illinois 60606
(312) 201-6400
docket@tribler.com
maorpett@tribler.com
mrspanel@tribler.com

18

FILED DATE: 12/30/2022 4:45 PM   2023L000001

888.27011                                                     Firm No. 39950

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| AAA MAX 1 LIMITED, AAA MAX 2 ) | |
| LIMITED, AAA MAX 3 LIMITED, ) | |
| AAA MAX 4 LIMITED, AAA B787 2 ) | |
| LIMITED and AAA B787 3 LIMITED, ) | |
| ) | |
| Plaintiffs, ) | Case No. |
| ) | |
| v. ) | |
| ) | |
| THE BOEING COMPANY and BOEING ) | **JURY TRIAL DEMANDED** |
| COMMERCIAL AVIATION SERVICES ) | |
| EUROPE LIMITED, ) | |
| ) | |
| Defendants. ) | |

<u>**SUPREME COURT RULE 222(b) AFFIDAVIT**</u>

Pursuant to the provisions and penalties of 735 ILCS 5/1-109, the undersigned attorney certifies, after being duly sworn on oath, that the total amount of money damages sought for the Plaintiffs in this matter exceeds $50,000.

/s/ Mitchell A. Orpett
One of the Attorneys for AAA MAX 1
LIMITED, AAA MAX 2 LIMITED, AAA
MAX 3 LIMITED, AAA MAX 4
LIMITED, AAA B787 2 LIMITED and
AAA B787 3 LIMITED

Mitchell A. Orpett, Esq.
Michael R. Spanel, Esq.
Tribler, Orpett & Meyer, P.C.
225 W. Washington St., Suite 2550
Chicago, Illinois 60606
(312) 201-6400
docket@tribler.com
maorpett@tribler.com
mrspanel@tribler

FILED DATE: 12/30/2022 4:45 PM   2023L000001

# INDEX OF EXHIBITS

| GROUP EXHIBIT A | | | |
|---|---|---|---|
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| A-1 | 42831 | Boeing 737-8 | Master Lease Agreement - 14.05.2018 |
| A-2 | 42831 | Boeing 737-8 | Lease Supplement No.1 - 16.05.2018 |
| A-3 | 42831 | Boeing 737-8 | Purchase Agreement Assignment |
| A-4 | 42831 | Boeing 737-8 | Purchase Agreement Assignment Supplement 1 |
| A-5 | 42831 | Boeing 737-8 | Consent and Agreement |
| A-6 | 42831 | Boeing 737-8 | GoldCare Security Assignment |
| A-7 | 42831 | Boeing 737-8 | S1001 Acknowledgement in respect of the GoldCare Security Assignment |
| A-8 | 42831 | Boeing 737-8 | Certificate of Charge in respect of the Goldcare Lessor Support Agreement Security Assignment |
| A-9 | 42831 | Boeing 737-8 | Filed C1 in respect of the Goldcare Lessor Support Agreement Security Assignment |
| A-10 | 42831 | Boeing 737-8 | S1001 Revenue Notification in respect of the GoldCare Security Assignment |

FILED DATE: 12/30/2022 4:45 PM   2023L000001

| A-11 | 42831 | Boeing 737-8 | GoldCare Lessor Support Agreement Addendum No 7 |
| A-12 | 42831 | Boeing 737-8 | GoldCare Lessor Support Agreement Addendum No 15 |
| A-13 | 42831 | Boeing 737-8 | GoldCare Lessor Support Agreement Assignment Notice and Acknowledgement (Arctic to Lessor) |
| A-14 | 42831 | Boeing 737-8 | GoldCare Lessor Support Agreement Assignment Notice and Acknowledgement (Lessee to Sub-Lessee) |
| A-15 | 42831 | Boeing 737-8 | GoldCare Lessor Support Agreement Assignment Notice and Acknowledgement (Lessor to Lessee) |
| A-16 | 42831 | Boeing 737-8 | GoldCare Lessor Support Agreement Assignment Notice and Acknowledgement (Sub-Lessee to Security Trustee) |
| **GROUP EXHIBIT B** | | | |
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| B-1 | 64992 | Boeing 737-8 | Master Lease Agreement - 14.05.2018 |
| B-2 | 64992 | Boeing 737-8 | Lease Supplement No.2 - 26.06.2018 |
| B-3 | 64992 | Boeing 737-8 | Purchase Agreement Assignment |
| B-4 | 64992 | Boeing 737-8 | Purchase Agreement Assignment Supplement 2 |
| B-5 | 64992 | Boeing 737-8 | Consent and Agreement |

FILED DATE: 12/30/2022 4:45 PM   2023L000001

| GROUP EXHIBIT C | | | |
|---|---|---|---|
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| C-1 | 42835 | Boeing 737-8 | Master Lease Agreement - 16.11.2018 |
| C-2 | 42835 | Boeing 737-8 | Lease Supplement No.1 - 20.11.2018 |
| C-3 | 42835 | Boeing 737-8 | Purchase Agreement Assignment |
| C-4 | 42835 | Boeing 737-8 | Purchase Agreement Assignment Supplement 1 |
| C-5 | 42835 | Boeing 737-8 | Consent and Agreement |
| GROUP EXHIBIT D | | | |
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| D-1 | 63971 | Boeing 737-8 | Master Lease Agreement - 16.11.2018 |
| D-2 | 63971 | Boeing 737-8 | Lease Supplement No.2 - 18.12.2018 |
| D-3 | 63971 | Boeing 737-8 | Purchase Agreement Assignment |
| D-4 | 63971 | Boeing 737-8 | Purchase Agreement Assignment Supplement 2 |
| D-5 | 63971 | Boeing 737-8 | Consent and Agreement |

FILED DATE: 12/30/2022 4:45 PM   2023L000001

| GROUP EXHIBIT E | | | |
|---|---|---|---|
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| E-1 | 42825 | Boeing 737-8 | Master Lease Agreement - 22.06.2017 |
| E-2 | 42825 | Boeing 737-8 | Lease Supplement No.3 - 17.07.2017 |
| E-3 | 42825 | Boeing 737-8 | Purchase Agreement Assignment |
| E-4 | 42825 | Boeing 737-8 | Purchase Agreement Assignment Supplement 3 |
| E-5 | 42825 | Boeing 737-8 | Consent and Agreement |
| GROUP EXHIBIT F | | | |
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| F-1 | 42826 | Boeing 737-8 | Master Lease Agreement - 22.06.2017 |
| F-2 | 42826 | Boeing 737-8 | Lease Supplement No.1 - 29.06.2017 |
| F-3 | 42826 | Boeing 737-8 | Purchase Agreement Assignment |
| F-4 | 42826 | Boeing 737-8 | Purchase Agreement Assignment Supplement 1 |
| F-5 | 42826 | Boeing 737-8 | Consent and Agreement |

FILED DATE: 12/30/2022 4:45 PM   2023L000001

| GROUP EXHIBIT G | | | |
|---|---|---|---|
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| G-1 | 42827 | Boeing 737-8 | Master Lease Agreement - 22.06.2017 |
| G-2 | 42827 | Boeing 737-8 | Lease Supplement No.5 - 31.07.2017 |
| G-3 | 42827 | Boeing 737-8 | Purchase Agreement Assignment |
| G-4 | 42827 | Boeing 737-8 | Purchase Agreement Assignment Supplement 5 |
| G-5 | 42827 | Boeing 737-8 | Consent and Agreement |
| GROUP EXHIBIT H | | | |
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| H-1 | 42828 | Boeing 737-8 | Master Lease Agreement - 22.06.2017 |
| H-2 | 42828 | Boeing 737-8 | Lease Supplement No.4 - 17.07.2017 |
| H-3 | 42828 | Boeing 737-8 | Purchase Agreement Assignment |
| H-4 | 42828 | Boeing 737-8 | Purchase Agreement Assignment Supplement 4 |
| H-5 | 42828 | Boeing 737-8 | Consent and Agreement |

FILED DATE: 12/30/2022 4:45 PM   2023L000001

| GROUP EXHIBIT I | | | |
|---|---|---|---|
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| I-1 | 42829 | Boeing 737-8 | Master Lease Agreement - 22.06.2017 |
| I-2 | 42829 | Boeing 737-8 | Lease Supplement No.6 - 10.08.2017 |
| I-3 | 42829 | Boeing 737-8 | Purchase Agreement Assignment |
| I-4 | 42829 | Boeing 737-8 | Purchase Agreement Assignment Supplement 6 |
| I-5 | 42829 | Boeing 737-8 | Consent and Agreement |
| GROUP EXHIBIT J | | | |
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| J-1 | 42830 | Boeing 737-8 | Master Lease Agreement - 22.06.2017 |
| J-2 | 42830 | Boeing 737-8 | Lease Supplement No.2 - 29.06.2017 |
| J-3 | 42830 | Boeing 737-8 | Purchase Agreement Assignment |
| J-4 | 42830 | Boeing 737-8 | Purchase Agreement Assignment Supplement 2 |
| J-5 | 42830 | Boeing 737-8 | Consent and Agreement |

| GROUP EXHIBIT K | | | |
|---|---|---|---|
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| K-1 | 42832 | Boeing 737-8 | Master Lease Agreement - 07.08.2018 |
| K-2 | 42832 | Boeing 737-8 | Lease Supplement No.1 - 09.08.2018 |
| K-3 | 42832 | Boeing 737-8 | Purchase Agreement Assignment |
| K-4 | 42832 | Boeing 737-8 | Purchase Agreement Assignment Supplement 1 |
| K-5 | 42832 | Boeing 737-8 | Consent and Agreement |
| GROUP EXHIBIT L | | | |
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| L-1 | 42833 | Boeing 737-8 | Master Lease Agreement - 07.08.2018 |
| L-2 | 42833 | Boeing 737-8 | Lease Agreement - 16.08.2018 |
| L-3 | 42833 | Boeing 737-8 | Purchase Agreement Assignment |
| L-4 | 42833 | Boeing 737-8 | Purchase Agreement Assignment Supplement 2 |
| L-5 | 42833 | Boeing 737-8 | Consent and Agreement |

FILED DATE: 12/30/2022 4:45 PM   2023L000001

| GROUP EXHIBIT M | | | |
|---|---|---|---|
| Exhibit Number | MSN | Model | Description |
| M-1 | 63316 | Boeing 787-9 | Master Lease Agreement |
| M-2 | 63316 | Boeing 787-9 | Lease Supplement |
| M-3 | 63316 | Boeing 787-9 | Aircraft Sale and Purchase Agreement |
| M-4 | 63316 | Boeing 787-9 | Airframe Warranties Agreement |
| M-5 | 63316 | Boeing 787-9 | Consent and Agreement to Airframe Warranties Agreement |
| M-6 | 63316 | Boeing 787-9 | Notice of Assignment to Manufacturer |
| M-7 | 63316 | Boeing 787-9 | Goldcare Lessor Support Agreement |
| M-8 | 63316 | Boeing 787-9 | Addendum to Goldcare Lessor Support Agreement |
| M-9 | 63316 | Boeing 787-9 | Goldcare Lessor Support Agreement Assignment |
| M-10 | 63316 | Boeing 787-9 | Goldcare Notice - Lessee to Sublessee |
| M-11 | 63316 | Boeing 787-9 | Goldcare Notice - Sublessee to Security Trustee |

FILED DATE: 12/30/2022 4:45 PM   2023L000001

| M-12 | 63316 | Boeing 787-9 | Goldcare Notice (Arctic to Owner) |
| M-13 | 63316 | Boeing 787-9 | Goldcare Notice (Owner to Lessee) |
| M-14 | 63316 | Boeing 787-9 | GoldCare Lessor Support Agreement Addendum No 7 |
| **GROUP EXHIBIT N** | | | |
| **Exhibit Number** | **MSN** | **Model** | **Description** |
| N-1 | 63321 | Boeing 787-9 | Master Lease Agreement |
| N-2 | 63321 | Boeing 787-9 | Lease Supplement |
| N-3 | 63321 | Boeing 787-9 | Airframe Warranties Agreement |
| N-4 | 63321 | Boeing 787-9 | Purchase Agreement Assignment |
| N-5 | 63321 | Boeing 787-9 | Consent and Agreement |
| N-6 | 63321 | Boeing 787-9 | GoldCare Arrangements Letter |
| N-7 | 63321 | Boeing 787-9 | Goldcare Lessor Support Agreement Assignment |
| N-8 | 63321 | Boeing 787-9 | Goldcare Assignment Lessee to Sublessee |

FILED DATE: 12/30/2022 4:45 PM   2023L000001

| N-9 | 63321 | Boeing 787-9 | Goldcare Assignment (Sub-Lessee to Security Trustee) |
| N-10 | 63321 | Boeing 787-9 | Goldcare Assignment (Arctic to New Owner) |
| N-11 | 63321 | Boeing 787-9 | Goldcare Assignment (New Owner to Lessee) |
| N-12 | 63321 | Boeing 787-9 | GoldCare Lessor Support Agreement Addendum No 9 |

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, S

FILED
1/11/2023 2:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000001
Calendar, S
21000066

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# GROUP EXHIBIT A

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-1

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# MASTER LEASE AGREEMENT

### 14 MAY 2018

**Between**

**AAA MAX 2 LIMITED**
**as Lessor**

**and**

**STOGOFJORDEN LIMITED**
**as Lessee**

**Up to two (2) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

Allen & Overy LLP

0121556-0000001 BK:44097776.5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## CONTENTS

**Clause**                                                                                                                                      **Page**

1.   Definitions and interpretation ...........................................................................................1
2.   Agreement to Lease; Term .................................................................................................1
3.   Rent .......................................................................................................................................2
4.   Lessor's Disclaimer of Warranties; Manufacturers' Warranties .......................................4
5.   Purchase Options; Return of Aircraft .................................................................................6
6.   Liens .....................................................................................................................................9
7.   Registration, Maintenance, Operation and Possession ......................................................9
8.   Replacement; Temporary Installation; Pooling; Alterations, Modifications and Additions; Etc .......23
9.   Loss, Destruction, Requisition, Etc .................................................................................27
10.  Insurance ...........................................................................................................................31
11.  Absolute Obligations ........................................................................................................39
12.  Assignment ........................................................................................................................40
13.  Lease Events of Default and Termination Events .............................................................40
14.  Remedies ............................................................................................................................44
15.  Further Assurances; Investment of Security Funds ..........................................................46
16.  Notices ...............................................................................................................................47
17.  Miscellaneous; Governing Law ........................................................................................47
18.  Security for the Lessor's Obligation .................................................................................48
19.  Lessor's Right to Perform for Lessee ...............................................................................48
20.  English Language Prevails .................................................................................................49
21.  Complete Agreement .........................................................................................................49
22.  Limitation of Liability of the Lessor .................................................................................49

**Schedule**

1.   Form of Acceptance Certificate .......................................................................................50
2.   Form of Lease Supplement ...............................................................................................51
3.   Form of Eurocontrol Letter ..............................................................................................55
4.   Form of EU ETS Authority Letter ....................................................................................56

Signatories .......................................................................................................................................57

0121556-0000001 BK:44097776.5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS MASTER LEASE AGREEMENT** dated __14 May 2018 (this **Lease**)

**AMONG**

(1)    **AAA MAX 2 LIMITED**, an exempted company  with limited liability incorporated and existing under the laws of the Cayman Islands, as lessor (the **Lessor**); and

(2)    **STOGOFJORDEN LIMITED**, a limited liability company duly incorporated under the laws of Ireland (the **Lessee**).

 **WITNESSETH:**

(1)    **WHEREAS,** pursuant to that certain Participation Agreement, dated as of the date of execution and delivery thereof (as amended, supplemented and modified from time to time, the **Participation Agreement**), among, *inter alios*, the Lessor, Walkers Fiduciary Limited, as lessor parent, the Lessee, Apple Bank for Savings, as lender and as Agent and Bank of Utah, as security trustee, the Lessor and the Lessee have agreed to enter into this Lease.

(2)    **WHEREAS,** pursuant to each Purchase Assignment in respect of an Aircraft, the Lessor will acquire certain rights under the Purchase Agreement in respect of such Aircraft.

(3)    **WHEREAS,** pursuant to the terms and conditions of this Lease, the Lessor has agreed to lease each Aircraft to the Lessee and the Lessee has agreed to lease each Aircraft from the Lessor.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

## 1.    DEFINITIONS AND INTERPRETATION

### 1.1    Definitions

Unless the context otherwise requires, capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in part 1 of appendix 1 to the Participation Agreement for all purposes of this Lease.

### 1.2    Interpretation

This Lease shall be interpreted in accordance with the rules of construction set forth in part 2 of appendix 1 to the Participation Agreement.

## 2.    AGREEMENT TO LEASE; TERM

### 2.1    Delivery

The Lessor hereby agrees on each Delivery Date for an Aircraft, subject to (a) the purchase of such Aircraft by the Lessor to be delivered pursuant to the Participation Agreement, the Purchase Agreement and the Purchase Assignment and (b) the satisfaction or waiver of the conditions precedent with respect to such Aircraft set forth or referred to in clause 4 of the Participation Agreement, to accept delivery of, and subject to clause 2 of the Participation Agreement to lease to the Lessee hereunder, and the Lessee hereby agrees, subject to the foregoing and the satisfaction of the conditions precedent (with respect to such Aircraft) set forth in clause 5 of the Participation Agreement, to accept delivery of, to sign the Acceptance Certificate and to lease from the Lessor hereunder, such Aircraft, whereupon the Term for such Aircraft shall commence.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**2.2    Acceptance**

The Lessee hereby agrees that the execution of the Acceptance Certificate for an Aircraft in the form of Schedule 1 hereto shall be deemed to constitute unconditional, absolute and irrevocable acceptance of such Aircraft by the Lessee under this Lease.

**2.3    Term**

Subject to acceptance of an Aircraft as provided in Clauses 2.1 and 2.2, the Lessee hereby leases from the Lessor such Aircraft for the Term applicable thereto.

**2.4    Cape Town Convention**

(a)    The parties hereto agree that, for all purposes of the Cape Town Convention, upon execution of a Lease Supplement (i) this Lease, together with such Lease Supplement, will constitute a separate International Interest with respect to the Airframe and each Engine identified in such Lease Supplement, (ii) such Airframe and Engines each constitute an Aircraft Object and (iii) this Lease, together with such Lease Supplement, will constitute an agreement for the registration of such Airframe.

(b)    If there is any change to the manner in which the Cape Town Convention is implemented in the Government of Registry, the Lessee shall take such action as the Lessor may require in relation to such change, including:

(i)    amending or re-executing any Operative Document;

(ii)    registering, perfecting and/or preserving any International Interest(s) vested in the Lessor and the Secured Parties with respect to the Airframe and/or any Engine; and

(iii)    entry into agreements (subordination or otherwise) to protect the priority of any International Interest(s) or other registrable interests referred to in the foregoing paragraphs (i) and/or (ii).

(c)    The Lessee agrees to indemnify on demand and shall pay or reimburse the Agent, the Lenders, the Insurer Representative, each Insurer Group Member, the Lessor, the Lessor Parent and the Security Trustee for any reasonable costs and expenses (including reasonable fees and disbursements of legal counsel and other experts employed or retained by such Person) incurred by such Person in connection with any action taken pursuant to paragraph (b) above.

**3.    RENT**

**3.1    Initial Rent**

On or prior to each Delivery Date, the Lessee agrees to pay the Lessor the Initial Rent in Dollars for the Aircraft to be delivered on such Delivery Date.

**3.2    Basic Rent**

In addition, the Lessee agrees to pay the Lessor rent (the **Basic Rent**) for each Aircraft in euro with respect to each Rent Period in arrear on each Basic Rent Payment Date occurring during the Term for such Aircraft, in each case, in an amount calculated in accordance with paragraph (a) through (b) below.

(a)    For all purposes of this Lease, the Basic Rent payable in respect of each Aircraft on each Basic Rent Payment Date for such Aircraft occurring during the Term for such Aircraft shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

be equal to the sum of (i) the "Principal Instalment" set forth in Schedule I to the Lease Supplement for such Aircraft for the relevant Basic Rent Payment Date and (ii) the "Interest Instalment" set forth in Schedule I to the Lease Supplement for such Aircraft for the relevant Basic Rent Payment Date.

(b)    Each instalment of Basic Rent for an Aircraft payable on any Basic Rent Payment Date for such Aircraft shall in all events be in an amount that is equal to the amount payable by the Lessor to the Agent under the Loan Agreement in respect of the scheduled principal of, and interest on, the Loan for such Aircraft due on the corresponding Loan Payment Date.

## 3.3    Supplemental Rent

The Lessee shall pay all Supplemental Rent to the Lessor or to such other Person to whom such amount may be owed under the Operative Documents in the currency (whether euro or another currency) in which the same is due and owing, and such Supplemental Rent shall be payable within thirty (30) days of demand upon the Lessee (or within such longer period as the Lessor, acting reasonably and having regard to all relevant circumstances (including, without limitation, the timing of any approvals or licenses required from any Government Body of the Government of Registry and/or the jurisdiction of incorporation or formation of the Lessee in order for such payment to be lawfully made) may agree), provided that if any such demand has been made and subsequent to the making of such demand a Material Default, Termination Event or an Event of Default shall occur, any such Supplemental Rent shall be payable forthwith upon the occurrence of such Material Default, Termination Event or Event of Default.  In the event of any failure on the part of the Lessee to pay any Supplemental Rent, the Lessor shall have the same rights, powers and remedies provided for herein or by law or equity or otherwise as in the case of non-payment of Basic Rent.  The Lessee will also pay interest on demand to the recipient entitled thereto, as Supplemental Rent, to the extent permitted by Applicable Laws, at a rate per annum equal to the applicable Post-Default Rate on any part of any instalment of Basic Rent not paid when due for the period from and including the due date thereof to but excluding the date on which the same is paid in full and, in the case of payment to any of the Lessor, the Lenders, the Agent, the Insurer Representative, the Security Trustee or any other Person, on any payment of Supplemental Rent payable but not paid when due or demanded by the recipient entitled thereto for the period from and including the due date thereof to but excluding the date on which the same is paid in full.

## 3.4    Manner of Payment

(a)    All Rent and other sums payable hereunder shall be paid by 9:00 a.m. (New York City time) on the date payment is due, in euro (or, in the case of any Supplemental Rent denominated in a currency other than euro, in the relevant currency) and in immediately available funds (or such other funds as are from time to time customary for the settlement of international banking transactions in euro or other relevant currency in London or other relevant jurisdiction of such other currency).  Whenever any payment of Basic Rent shall become due on a day which is not a Business Day, the due date thereof shall be the immediately preceding Business Day, provided always that the amount of Basic Rent shall not be adjusted by reason of such payment being made on such immediately preceding Business Day.

(b)    Whenever any payment (other than a payment of Basic Rent) shall become due on a date which is not a Business Day, or if any such payment is payable on demand and demand is not made on a Business Day or is made on a Business Day but is made outside normal banking hours of the recipient of such demand, demand for such payment shall be deemed to have been made on the immediately succeeding Business Day, and if such payment includes any payment of interest (or an amount calculated or determined by reference to interest), the amount payable shall be adjusted accordingly.  All payments of Rent to the Lessor and all other amounts payable hereunder by the Lessee to the Lessor shall be paid to such account as the Lessor may specify from time to time in

FILED DATE: 1/11/2023 2:57 PM   2023L000001

writing not less than thirty (30) Business Days prior to the date on which the relevant amount is payable.

**3.5    Absolute Obligation**

The obligation of the Lessee to pay Rent hereunder shall be absolute and unconditional as more fully set forth in Clause 11.  To the extent Taxes arise from the leasing of any Aircraft to the Lessee under this Lease which are payable by way of withholding by the Lessee, such Taxes shall be deducted and paid by the Lessee by way of withholding, and the Lessor agrees that the full amount of Rent due under this Lease in respect of an Aircraft shall be the amount of Basic Rent payable in respect of such Aircraft under Clause 3.2 increased by any such Taxes withheld by the Lessee.

**3.6    Associated Rights**

The Lessee hereby agrees to pay and perform all of its obligations under the Operative Documents to which it is a party and further acknowledges and agrees that the payment of Rent hereunder and the performance by the Lessee of its obligations under the other Operative Documents constitute Associated Rights and are secured by and/or associated with the relevant Aircraft and Engines.

**3.7    Assignment of Rent**

Pursuant to the Security Documents, the Lessor has assigned its right to receive Basic Rent and Termination Value hereunder to the Security Trustee, and pursuant to such assignment the Lessor hereby directs, and the Lessee hereby agrees, that all Basic Rent and Termination Value payable to the Lessor hereunder shall be paid directly to the Agent (unless a Material Default, Termination Event or an Event of Default shall have occurred and be continuing and the Insurer Representative or the Security Trustee has given notice to the Agent and the Lessor in which case the Basic Rent and Termination Value shall be paid directly to the Security Trustee).

**4.    LESSOR'S DISCLAIMER OF WARRANTIES; MANUFACTURERS' WARRANTIES**

**4.1    Disclaimer**

Subject to Clause 4.2, the Lessee acknowledges and agrees that (a) each Aircraft is of a size, design, capacity and manufacture selected by and acceptable to the Lessee and (b) the Lessee is satisfied that such Aircraft are suitable for its purposes.  NONE OF LESSOR, LESSOR PARENT, ANY LENDER, THE AGENT, THE SECURITY TRUSTEE, THE INSURER REPRESENTATIVE OR ANY MEMBER OF THE INSURER GROUP SHALL MAKE OR GIVE OR SHALL BE DEEMED TO HAVE MADE OR GIVEN AND HEREBY EXPRESSLY DISCLAIMS ANY REPRESENTATION, WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, AS TO (i) THE AIRWORTHINESS, VALUE, CONDITION, DESIGN, COMPLIANCE WITH SPECIFICATIONS OF, OPERATION OF, OR THE QUALITY OF THE MATERIAL OF OR WORKMANSHIP IN, OR TITLE TO, OR ANY DEFECT IN, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, (ii) THE MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE OF ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, OR AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT OR THE LIKE, OR ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (iii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT WITH RESPECT TO ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

WHETHER OR NOT IN STRICT OR ABSOLUTE LIABILITY OR ARISING FROM THE NEGLIGENCE OF LESSOR, THE LENDERS, THE AGENT, THE SECURITY TRUSTEE OR THE INSURER REPRESENTATIVE, ACTUAL OR IMPUTED, (INCLUDING ANY STATUTORY WARRANTY OR CONDITION UNDER THE LAWS OF THE UNITED STATES, ANY STATE THEREOF, THE GOVERNMENT OF REGISTRY OR THE JURISDICTION OF INCORPORATION OR FORMATION OF LESSEE) OR (iv) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF, OR DAMAGE TO, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING, FOR ANY LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES THEREFROM, IT BEING UNDERSTOOD THAT ALL SUCH RISKS, AS BETWEEN LESSEE AND SUCH OTHER PERSONS, ARE TO BE BORNE BY LESSEE, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE OPERATIVE DOCUMENTS.  NONE OF THE INSURER REPRESENTATIVE, ANY MEMBER OF THE INSURER GROUP, THE LENDERS, THE AGENT NOR THE SECURITY TRUSTEE SHALL BE LIABLE OR OTHERWISE RESPONSIBLE IN ANY MANNER FOR ANY REPRESENTATION OR WARRANTY MADE BY THE LESSOR HEREUNDER OR UNDER ANY OTHER OPERATIVE DOCUMENT.

**4.2**   **Manufacturers' Warranties**

None of the provisions of this Clause 4 or any other provision of this Lease shall be deemed to amend, modify or otherwise affect the representations, warranties or other obligations (express or implied) of the Manufacturer or the Engine Manufacturer or any contractor, subcontractor or supplier of the Manufacturer or the Engine Manufacturer with respect to any Aircraft, any Airframe, any Engine or any Parts, forming a part of or installed on or attached to any Aircraft, any Airframe or any Engine or to release the Manufacturer or the Engine Manufacturer or any such contractor, subcontractor or supplier from any such representation, warranty or obligation.  So long as no Event of Default or Termination Event shall have occurred and be continuing, the Lessee, or any Permitted Sub-Lessee leasing an Aircraft from the Lessee, shall have the benefit of and shall be entitled to enforce (as it shall deem appropriate), either in its own name or in the name of the Lessor (at the cost of the Lessee and in respect of which enforcement the Lessee hereby agrees to indemnify the Lessor) for the use and benefit of the Lessee (or the relevant Permitted Sub-Lessee) during the relevant Term by way of revocable license (provided that the Lessor shall not revoke such license until an Event of Default or Termination Event occurs and is continuing and shall reinstate such license in the event the Event of Default or Termination Event is cured), any and all dealer's, manufacturer's contractor's, or subcontractor's credits, guarantees, indemnities, warranties or other benefits, if any, available to the Lessor in respect of any Aircraft, any Engine and/or any Part, provided that neither the Lessee nor any Permitted Sub-Lessee shall be entitled to modify, amend or otherwise alter any of the foregoing without the prior written consent of the Security Trustee except in circumstances where such modification, amendment or alteration could not reasonably be expected to have a Material Adverse Effect in relation to the Lessor or any Secured Party, and the Lessor agrees at the Lessee's expense to do, execute and deliver such further acts, deeds, matters or things as may be reasonably requested by the Lessee to enable the Lessee to obtain customary warranty service furnished for any Aircraft, any Engine and/or Part by such dealer, manufacturer, contractor or subcontractor or any supplier as aforesaid or to exercise any other rights in relation to any of the foregoing benefits, and any moneys recovered from such enforcement shall be promptly paid to, and retained by, the Lessee (or, if directed by the Lessee, any Permitted Sub-Lessee), provided further, that if a Material Default, Termination Event or Event of Default shall have occurred and be continuing, any such moneys payable to the Lessee or Permitted Sub-Lessee shall instead be paid to the Lessor as security for, and applied to, the obligations of the Lessee Obligors under the Operative Documents in such order as the Lessor shall elect and, at such time as no Material Default, Termination Event or Event of Default shall be continuing, to the extent not so applied, promptly paid to the Lessee.  The Lessee hereby acknowledges the provisions of the Purchase Assignment, the Engine Warranties Agreement

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and each Security Agreement and of the security interests granted to the Security Trustee in respect of the Lessor's rights, title and interests in and to the Purchase Agreement and the Engine Agreement created by the Operative Documents.

## 5. PURCHASE OPTIONS; RETURN OF AIRCRAFT

### 5.1 Purchase Options

Provided that the leasing of the relevant Aircraft under this Lease has not otherwise terminated, and no Material Default, Termination Event or Event of Default has occurred and is continuing, the Lessee may on any date falling after the third anniversary of the Delivery Date and prior to or including the scheduled end of the Term for such Aircraft, by thirty (30) days' prior written notice (or such shorter period of notice as the Lessor the Insurance Representative and the Security Trustee may agree) delivered to the Lessor (with copies to the Security Trustee, the Insurer Representative and the Agent) (which notice shall be irrevocable), elect for it or a nominee approved by the Insurer Representative (such approval not to be unreasonably withheld) (an **Approved Nominee**) to purchase such Aircraft on such date for a purchase price equal to the Termination Value in respect of such Aircraft on such date, plus any Rent in respect thereof then due and payable (including, but without duplication, any amounts payable by the Lessor or the Lessee under the Lessor Indemnity Agreement and the Loan Agreement in respect of the related prepayment of the Loan for such Aircraft) plus, if the purchase of the Aircraft occurs on the Final Maturity Date, ten euro (€10); provided that, in no event shall the Lessee have the right to purchase or elect an Approved Nominee to purchase such Aircraft without the prior written consent of the Insurer Representative unless, concurrently therewith, the Lessee shall simultaneously purchase each other Aircraft.

### 5.2 Purchase Procedure; Termination

In connection with the purchase of an Aircraft pursuant to Clause 5.1, upon indefeasible payment to the Lessor of the Termination Value in respect of such Aircraft on such date and any Rent then due in respect of such Aircraft, the Lessor will transfer to the Lessee or its Approved Nominee all of the Lessor's right, title and interest in and to such Aircraft (including any warranties relating thereto and assigned to the Lessor pursuant to the relevant Purchase Assignment and the relevant Engine Warranties Agreement), in "AS-IS, WHERE-IS" condition, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, except that the Lessor will warrant to the Lessee or its Approved Nominee that it has such title to such Aircraft as was delivered to the Lessor by the Manufacturer on the Delivery Date for such Aircraft and the lawful right to transfer such Aircraft in accordance with the terms hereof and that such Aircraft is free of all Lessor Liens attributable to it.  THE WARRANTY CONTAINED IN THE IMMEDIATELY PRECEDING SENTENCE WILL BE MADE BY LESSOR IN LIEU OF AND IN SUBSTITUTION FOR, AND LESSEE HEREBY WAIVES, RELEASES AND RENOUNCES, ALL OTHER EXPRESS OR IMPLIED WARRANTIES, CONDITIONS OR REPRESENTATIONS WITH REGARD TO THE CONDITION OR TITLE OF THE RELEVANT AIRCRAFT (INCLUDING SUCH AS TO THE STATE, DESCRIPTION, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT), AND ALL OBLIGATIONS AND LIABILITIES OF LESSOR HEREUNDER WITH RESPECT TO CONSEQUENTIAL DAMAGES THEREFROM, AND ALL RIGHTS, CLAIMS AND REMEDIES OF LESSEE, EXPRESS OR IMPLIED, ARISING OUT OF LAW OR OTHERWISE WITH RESPECT THERETO THE USE OR OPERATION OF SUCH AIRCRAFT AND ANYTHING GIVEN OR SOUGHT TO BE IMPLIED FROM ANYTHING SAID OR WRITTEN IN THE NEGOTIATIONS BETWEEN THE PARTIES HERETO OR THEIR REPRESENTATIVES PRIOR TO ENTERING INTO THIS LEASE WITH RESPECT THERETO. ANY STATUTORY OR OTHER WARRANTY, CONDITION, DESCRIPTION OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE STATE, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT IS EXPRESSLY EXCLUDED, INCLUDING BUT NOT LIMITED TO:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a)     ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS;

(b)     ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE;

(c)     ANY OBLIGATION OR LIABILITY WITH RESPECT TO ANY ACTUAL OR ALLEGED INFRINGEMENT OF PATENTS, LICENSES OR THE LIKE, OR ANY OTHER INTELLECTUAL PROPERTY;

(d)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM EACH PARTY'S OR ITS ASSIGNS' NEGLIGENCE, ACTUAL OR IMPUTED; AND

(e)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO SUCH AIRCRAFT, FOR LOSS OF USE, REVENUE OR PROFIT WITH RESPECT TO LESSEE OR FOR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF WHATEVER DESCRIPTION.

In connection with such transfer, the Lessee shall prepare and the Lessor shall execute, all in form and substance satisfactory to the Lessee and/or in a form recordable in the Government of Registry, a bill of sale evidencing each such transfer, a termination of this Lease in respect of such Aircraft and such other documents (including the discharge of the Lien of the Aircraft Mortgage in respect of such Aircraft and the other Security Documents and opinions of counsel) as the Lessee may reasonably request, all at the expense of the Lessee.  Upon a purchase of an Aircraft by the Lessee or its nominee pursuant to Clause 5.1 and Clause 5.2 or Clause 14, the leasing of such Aircraft under this Lease shall terminate.

**5.3     Return of Aircraft; Condition Upon Return**

(a)     Unless the Lessee or its nominee shall have acquired title to an Aircraft pursuant to Clause 5.2 or Clause 14, the Lessee will, upon the termination or expiration of this Lease with respect to such Aircraft (other than following an Event of Loss with respect to such Aircraft), at its own risk and expense, cause the Airframe for such Aircraft, together with the Manuals and Technical Records therefor, to be delivered to the Lessor pursuant to Clause 5.6, fully equipped with two Engines, duly installed thereon (or one or two Replacement Engines of the same manufacturer or of another manufacturer, of the same or an improved model (it being understood that such engines on such Aircraft shall be of the same or an improved model and suitable for installation and use on the Airframe for such Aircraft but having a value and remaining useful life at least equal to, and being in as good operating condition as, the Engines leased by the Lessee for such Aircraft)), duly installed thereon.

(b)     At the time of such return, (i) such Aircraft shall have a valid Certificate of Airworthiness, (ii) the Airframe and Engines or engines for such Aircraft shall be free and clear of all Liens (other than any the Lessor Liens, Lender Liens or other Liens arising under any Operative Document), (iii) the Airframe and Engines or engines for such Aircraft shall be in as good operating condition, and in proper operating condition for scheduled revenue passenger flights as provided in this Clause 5.3, Clause 7.2 and Clause 8 and (iv) such Aircraft shall, except as otherwise provided herein, be in substantially the same configuration and have installed (A) the same or equivalent avionics and other equipment, safety equipment and appurtenances as when such Aircraft was originally delivered to the Lessee hereunder and (B) all other equipment financed on the Delivery Date for such Aircraft (it being agreed that the records of the Manufacturer, including the Purchase Agreement and the Manuals and Technical Records, shall be prima facie evidence thereof).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     Upon such return the Airframe for such Aircraft shall have cleared a recently completed major check as would be required to clear such Aircraft for at least the next 12 months and such Engines and all major components for such Aircraft shall have at least 50% of the hours, cycles or time (whichever is more limiting) in each case remaining until the next anticipated engine refurbishment, overhaul or inspection requiring removal.  At the time of such return, the Lessee shall also at its own expense:

     (i)     remove or paint over all names, insignia and other indications of the Lessee or any Permitted Sub-Lessee from the exterior and interior of such Aircraft in a good, workman-like manner;

     (ii)     transfer or cause to be transferred, or reassign or cause to be reassigned, to the Lessor to the extent then possible all assignable and remaining warranties and performance guarantees obtained by the Lessee or any Permitted Sub-Lessee with respect to such Aircraft, together with all documents related thereto that may be required to effect such transfer or reassignment; and

     (iii)     if requested by the Lessor, obtain an export certificate of airworthiness (if available) for, and obtain or submit any applicable approval, permit, license or report for the re-export of, such Aircraft from the Civil Aviation Authority and deregister such Aircraft from the registry maintained by the Government of Registry.

(d)     If the Lessee fails to remove or procure the removal by the Permitted Sub-Lessee of the registration or to obtain the export certificate of airworthiness or such re-export approval, permit or license as provided above, the Lessor may do so at the cost and expense of the Lessee and, in such event, the Lessee shall upon demand reimburse the Lessor for the cost thereof.  The Lessee hereby irrevocably appoints the Lessor, upon such failure of the Lessee, as its true and lawful attorney-in-fact, with full power of substitution, in the Lessee's name or otherwise, to carry out the provisions of this Clause 5.3 and to take any action and to execute and/or file any instrument necessary to accomplish the purposes of this Clause 5.3.

(e)     If any other of the foregoing requirements shall not be satisfied at the time of return, the Lessee shall (at the Lessor's election) either promptly remedy any deficiency or make a payment fully compensating the Lessor for the remedy of such deficiency.  If requested by the Lessor, the Lessee shall perform or procure the performance of (at the sole cost and expense of the Lessee):

     (i)     a complete videotape borescope inspection of such Engines in accordance with Engine Manufacturer's maintenance manual demonstrating to the Lessor's satisfaction that such Engines (or any module) are not unserviceable or beyond serviceable limits (or serviceable with limitations) under such manual; and

     (ii)     a flight test demonstration, at the Lessee's expense and during normal business hours, for a period of not more than two hours at any airport referred to in Clause 5.4.  Personnel designated by the Lessor may participate as observers in such demonstration flight and a pilot selected by the Lessor may accompany the Lessee's pilot and occupy the observer's seat during such demonstration.  The purpose of the demonstration flight will be to ascertain that all systems and their components are functioning satisfactorily and in the event they are not so functioning they will be corrected by the Lessee or provision made therefor by the Lessee.

**5.4**     **Place of Redelivery; Storage Upon Return**

     Each Aircraft shall be returned to an airport in Europe designated by the Lessor, and the Lessee shall retain the risk of loss for such Aircraft, and the related Airframe, Engines and Parts, until they are returned in conformity with the provisions of this Lease at such airport.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**5.5      Return of Engines**

In the event that any engine not owned by the Lessor shall be delivered with any returned Airframe as set forth in Clause 5.3 (which engine must meet the requirements of a Replacement Engine, the Lessee shall, concurrently with such delivery, at its own expense, furnish the Lessor with a bill of sale covering such engine, including full warranty as to title, and thereupon the Lessor will transfer to the Lessee, on an "as-is, where-is" basis, without recourse or warranty (except as to the absence of the Lessor Liens, Lender Liens or other Liens arising under or in connection with any Operative Document), all of the Lessor's right, title and interest in and to any Engine constituting part of the relevant Aircraft but not installed on such Airframe at the time of the return of such Airframe.  After such conveyance, the substituted engine shall be deemed an "Engine" as defined herein and shall meet the conditions set forth in Clause 5 hereof.

**5.6      Fuel, Manuals**

Upon the return of each Aircraft, each fuel tank and oil tank shall contain the same quantity of fuel or oil as was contained in the fuel and oil tanks when such Aircraft was delivered to the Lessee on the Delivery Date for such Aircraft.  Upon the return of each Aircraft, the Lessee shall deliver to the Lessor at least one original or certified copy of all logs, manuals and data, and inspection, modification and overhaul records (including all job cards) required to be maintained with respect to such Aircraft under the applicable rules and regulations of the Civil Aviation Authority (collectively, **Manuals and Technical Records**) and such other additional records as would be necessary for the FAA to issue an unrestricted certificate of airworthiness, passenger transport category, for such Aircraft and if any thereof are not in English, certified English translations thereof.

**6.      LIENS**

The Lessee will not (and shall procure that no sublessee will) directly or indirectly create, incur, assume, suffer, permit or allow to exist any Lien on or with respect to any Aircraft or any Airframe or any Engine or any Part, title thereto or any interest therein or in or to this Lease or any other Operative Document or any of its rights hereunder or thereunder, except Permitted Liens.  The Lessee will promptly, at its own expense, take such action as may be necessary duly to discharge or satisfy (by bonding or otherwise) any Lien that is not a Permitted Lien if the same shall arise at any time.

**7.      REGISTRATION, MAINTENANCE, OPERATION AND POSSESSION**

**7.1      Registration**

The Lessee shall, at its sole cost and expense, upon the delivery of an Aircraft, cause such Aircraft to be duly certified as to airworthiness in accordance with the law of the Government of Registry and to be duly registered with the Civil Aviation Authority in the name of the Lessor as owner of such Aircraft and the relevant Initial Permitted Sub-Lessee as operator of such Aircraft, the extent permitted by Applicable Law.  Unless otherwise provided in this Lease, the Lessee shall not take any action, or fail to take any action, which action or failure might cause such airworthiness certification and registration to cease to be in full force and effect or to be revoked, withdrawn or suspended. Without limiting the generality of the foregoing, the Lessee at all times during the Term for an Aircraft shall ensure, at the Lessee's sole cost and expense, that prior to the expiration thereof, the Certificate of Airworthiness and Certificate of Registration are renewed or maintained by the Civil Aviation Authority.  Without limiting the generality of Clause 11, the Lessor shall take, and shall co-operate with the Lessee to take, at the Lessee's sole cost and expense all actions necessary to permit and maintain such registration and to permit the Lessee to receive copies of all correspondence and communications to and from the Civil Aviation Authority.  Except as expressly permitted by the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Operative Documents, the Lessee shall not, during the Term for an Aircraft, take any action which (a) may cause deregistration of such Aircraft from the Civil Aviation Authority or (b) the removal of the Lien of the Aircraft Mortgage in respect of such Aircraft from the Civil Aviation Authority.

**7.2     Maintenance**

The Lessee shall, at the Lessee's cost and expense:

(a)     establish, maintain or cause the establishment and maintenance of a maintenance programme for Boeing model 737 - 8 aircraft and for CFM model LEAP-1B27 engines (and Replacement Engines), as the case may be, each conforming with the Manufacturer's and Engine Manufacturer's maintenance planning document and approved by the Civil Aviation Authority (collectively, the **Approved Maintenance Programme**), and ensure that all service, inspection, maintenance, modification, storage, repair and overhaul of each Aircraft is performed in accordance with such Approved Maintenance Programme, by the Lessee or by the Permitted Sub-Lessee if so approved by the Civil Aviation Authority or by a maintenance facility approved by the Civil Aviation Authority (the **Approved Maintenance Facility**), provided that (i) all Manuals and Technical Records shall be kept in the English language, (ii) the Lessee shall submit the Approved Maintenance Programme to the Lessor, the Insurer Representative and Security Trustee on or prior to the Delivery Date for each Aircraft and shall advise the Lessor, and the Insurer Representative, upon the their reasonable request, of any material subsequent changes to such Approved Maintenance Programme by issuing revisions thereof approved by the Civil Aviation Authority to the Lessor, Security Trustee, the Insurer Representative and the Agent and (iii) upon the return of any Aircraft pursuant to the terms hereof, such Aircraft shall be capable of qualifying immediately for the issuance of a Certificate of Airworthiness issued by the FAA for commercial passenger transport;

(b)     keep each Airframe, each Engine and all Parts or procure each of the same are kept in good operating and serviceable condition and repair, and in such condition (including maintenance of the Manuals and Technical Records) as necessary to enable all applicable airworthiness certifications of each Aircraft to be maintained in good standing at all times under the Applicable Laws of the Government of Registry except when such Aircraft is undergoing service, maintenance, modification, overhaul, testing and/or repairs as required or permitted hereunder;

(c)     promptly furnish the Lessor, upon request, with such information as may be required to enable the Lessor to file any report required to be filed by the Lessor with any Government Body because of the Lessor's ownership of each Aircraft or the Lessor's lease of each Aircraft hereunder, as the case may be;

(d)     procure that each Airframe, each Engine and each Part is maintained, inspected serviced, stored, repaired, modified and overhauled (i) to comply with all warranty requirements pursuant to the Purchase Agreement or the Engine Agreement, as the case may be, (ii) in accordance with Manufacturer's and Engine Manufacturer's repair manuals, (iii) pursuant to the Approved Maintenance Programme and (iv) in a manner that does not discriminate against any Aircraft, any Airframe or any Engine when compared to the highest applicable standard (including the prompt performance of Service Bulletins, mandatory Manufacturer's and Engine Manufacturer's directives and Airworthiness Directives) applied by the Lessee or the Permitted Sub-Lessee with regard to similar aircraft owned, operated or leased by the Lessee or the Permitted Sub-Lessee;

(e)     procure and maintain in effect with Manufacturer and Engine Manufacturer a revision service, if any, for all Manuals and Technical Records, and maintain the Manuals and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Technical Records in such condition to satisfy the standards of the Civil Aviation Authority for a Certificate of Airworthiness for commercial passenger/cargo transport;

(f)     procure that for each Aircraft, all applicable mandatory alert Service Bulletins issued by Manufacturer and Engine Manufacturer shall be accomplished, and, in addition, all other Service Bulletins the Lessee or the Permitted Sub-Lessee adopts during the Term for such Aircraft for any similarly operated aircraft of the same model in the Lessee's or the Permitted Sub-Lessee's fleet, it being the intent of the parties that no Aircraft shall be discriminated against in any manner in Service Bulletin compliance and other maintenance matters; and

(g)     for each Aircraft, comply with all applicable Airworthiness Directives issued by the Civil Aviation Authority and which become due during the Term for such Aircraft or which at the time of redelivery of such Aircraft to the Lessor pursuant to the terms hereof have been issued by the Civil Aviation Authority or made mandatory by EASA upon operators regarding Boeing model 737 - 8 aircraft, CFM model LEAP-1B27 engines and any Part, as the case may be, and which have become due.

Neither the Lessor nor any Secured Party shall bear responsibility or liability for any grounding or suspension of operations of any Aircraft resulting from Airworthiness Directives, Service Bulletins, or any repairs or modifications to any Aircraft by the Lessee or any other Person.

**7.3     Operation**

Subject to Clause 7.5, the Lessee undertakes that no Aircraft will be maintained, used, insured or operated:

(a)     in violation of the Certificate of Airworthiness or any license or registration of, or with, any Government Body having jurisdiction over the Lessee (or any Permitted Sub-Lessee) or such Aircraft;

(b)     for any primary purpose other than the commercial transportation of passengers and/or cargo, provided that cargo shall be carried only in the cargo hold of such Aircraft;

(c)     in violation of the Approved Maintenance Programme or any warranty requirements pursuant to the Purchase Agreement, Engine Agreement or any other agreement setting forth any other material warranties with respect to such Aircraft, the related Airframe, Engines or Parts;

(d)     for any purpose or in any manner for which it is not designed or reasonably suited or outside the tolerances and limitations for which such Aircraft, the related Airframe or any related Engine was designed in accordance with the Approved Maintenance Program, Applicable Laws and applicable material warranties;

(e)     at any time while the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof are not in full force and effect;

(f)     for any purpose or in any manner inconsistent with the terms of, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof;

(g)     in any place inconsistent with the terms of, excluded from coverage by, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof (or outside any geographical limit imposed by the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof, including without limitation, in or through any recognized or (in the Lessor's reasonable opinion) threatened area of hostilities unless fully

FILED DATE: 1/11/2023 2:57 PM   2023L000001

covered by war risk and allied perils insurance in amounts and scope required by this Lease; or

(h)   in violation of any Applicable Law of or by any Government Body having jurisdiction over the Lessor or the Lessee or any Secured Party or any Aircraft or any mandatory requirement of Manufacturer, Engine Manufacturer or supplier, except for unintentional minor or nonrecurring violations which are cured promptly and which:

   (i)   do not involve any loss or reduction of coverage under any of the Aircraft Insurances or any Aircraft Reinsurances required by the terms of Clause 10;

   (ii)   do not involve any material risk of the sale, forfeiture or loss of or damage to such Aircraft or any interest therein;

   (iii)   do not involve any material risk of the Lessor or any Secured Party being subject to civil penalties;

   (iv)   do not involve any risk of criminal penalties being imposed against or upon the Lessee, the Lessor, the Lessor Parent or any Secured Party, which in the case of the Lessor or the Lessee shall be a material risk; and

   (v)   do not subject the Lessor, the Lessee or the Permitted Sub-Lessee to any fine or penalty or enforcement action which would materially adversely affect the business or operations of the Lessor, the Lessee, the Permitted Sub-Lessee or any Guarantor, the operation of any Aircraft or the rights of the Lessee, the Lessor or any Secured Party hereunder or under any other Operative Document,

provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party or have any material risk of the sale or forfeiture of any Aircraft, or of materially adversely affecting the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder, and if any Applicable Law requires alteration of any Aircraft, the Lessee will conform thereto or obtain conformance therewith at no cost or expense to the Lessor or any Secured Party and will maintain such Aircraft in proper operating condition under such Applicable Law, provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party, have any material risk of the sale or forfeiture of any Aircraft or any Engine, or adversely affect the rights of the Lessor or any Secured Party hereunder or under any other Operative Documents or the obligations of the Lessee hereunder.

Further, the Lessee undertakes that:

   (i)   all debts, costs, Losses, liabilities, premiums, calls, contributions, penalties, landing fees, overflight and navigation charges (including Eurocontrol fees), dues, tolls, charges, fines, recoveries or other expenses with respect to any Aircraft shall be duly and punctually paid and discharged during the Term, provided that the Lessee may in good faith diligently contest the validity or application of any of the foregoing in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of the sale of forfeiture or any Aircraft, or adversely affecting the rights of the Lessor or any Secured Party hereunder or under any of the other Operative Documents or the obligations of the Lessee hereunder or any risk of any criminal penalties or criminal liability being imposed, and upon

FILED DATE: 1/11/2023 2:57 PM   2023L000001

reasonable request by the Lessor, the Insurer Representative or the Security Trustee shall confirm to such Person's reasonable satisfaction that such action has been taken;

(ii)     no alteration in or modification or addition to any Airframe, any Engine or any Part, or any removal of any Engine or any Part from the Aircraft, or installation on or attachment to any Airframe, any Engine or any Part of anything not being part of any Aircraft on the Delivery Date shall occur unless expressly permitted by this Lease, including under Clause 8.4; and

(iii)    it shall not and shall procure that any Permitted Sub-Lessee shall not cause or permit to be done anything regarding any Airframe, any Engine or any Part the effect of which may be reasonably expected to result in such Airframe, such Engine or such Part being requisitioned for title or arrested or otherwise to jeopardize the interests of the Lessor and the Secured Parties in and to such Airframe, such Engine or such Part.

## 7.4     Possession

(a)     Subject to Clauses 7.5, 8 and 9, the Lessee shall not and shall procure that no Permitted Sub-Lessee shall, without the prior written consent of the Insurer Representative and the Security Trustee (which consent may be withheld in their sole discretion), sublease (whether directly, under a Dry Lease or Wet Lease), or otherwise in any manner deliver, transfer or relinquish possession of any Airframe, any Engine or any Part to any Person or firm or install any Engine, or permit any Engine to be installed, on any airframe other than the associated Airframe, provided, however, that (subject to Clauses 7.5, 8 and 9) so long as no Termination Event or Event of Default shall have occurred and be continuing, the Lessee may, without the prior written consent of the Insurer Representative or the Security Trustee:

(i)      deliver or permit the delivery of possession of any Airframe, any Engine or any Part (A) to the manufacturer thereof for testing or other similar purposes or (B) to an Approved Maintenance Facility for service, repair, maintenance or overhaul work on such Airframe, such Engine, such Part or any part thereof or for alterations or modifications in or additions to such Airframe, such Engine or such Part to the extent required or permitted by the terms of Clause 8.4, but in any event only in compliance with the Approved Maintenance Programme and Clause 7.2;

(ii)     install or permit the installation of an Engine for any reason on another airframe owned by the Lessee free and clear of all Liens, except (A) Permitted Liens and except those that apply only to the engines (other than the Engines), appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment (other than Parts) installed on such airframe (but not to such airframe as an entirety); and (B) mortgage liens or other security interests, but only if the holder of such mortgage lien or other security interest expressly agrees that such Engine shall not become subject to the Lien of such mortgage or security interest, notwithstanding the installation thereof on such airframe;

(iii)    install or permit the installation of an Engine for any reason on an airframe owned or operated by the Lessee or an Approved NAS Sub-Lessee (while such Approved NAS Sub-Lessee is leasing the Engine from the Lessee pursuant to a Permitted Sub-Lease) leased under a lease unrelated to this Lease to the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) or purchased by the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) subject to a conditional sale or other security agreement, provided,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

however, that in any such case the Lessee shall provide written assurance reasonably satisfactory to the Lessor and the Security Trustee that the rights, title and interests of the Lessor and the Secured Parties in such Engine under the Operative Documents will not be derogated in any material manner as a result thereof;

(iv)     temporarily install an engine on an Airframe which does not satisfy the requirements of Replacement Engine; and

(v)      Wet Lease an Aircraft for a term not to exceed the lesser of six (6) months and the remainder of the Term for such Aircraft,

provided, in each case, that the rights of any transferee who receives possession by reason of a transfer permitted by this Clause 7.4 (other than the transfer of an Engine which is deemed an Event of Loss) SHALL BE EXPRESSLY SUBJECT AND SUBORDINATE TO ALL THE TERMS OF THIS LEASE AND THE OTHER OPERATIVE DOCUMENTS, including the Lessor's and the Secured Parties' rights to a repossession pursuant to Clause 14 hereof, to terminate and avoid this Lease or other transfer upon such repossession and to require the Lessee or other transferee to forthwith deliver any Airframe and/or any Engine subject to this Lease or other transfer upon repossession, and the Lessee shall remain primarily liable hereunder for the performance of all of the terms of this Lease to the same extent as if such transfer had not occurred.

(b)      No relinquishment of possession of any Airframe, any Engine or any Part shall affect in any way the registration of any Aircraft or discharge or diminish any of the Lessee's obligations hereunder or under any of the other Operative Documents or constitute a waiver of the Lessor's or any Secured Party's rights or remedies hereunder or under any of the other Operative Documents.

(c)      The Lessor agrees, for the benefit of the Lessee (and any Permitted Sub-Lessee) and for the benefit of any mortgagee or other holder of a security interest in any engine (other than an Engine) owned or leased by the Lessee (or any Permitted Sub-Lessee), any lessor of any engine (other than an Engine) leased to the Lessee (or any Permitted Sub-Lessee) and any conditional vendor of any engine (other than an Engine) purchased or leased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale agreement or any other security agreement, that no interest shall be created hereunder in any engine so owned, leased or purchased and that none of the Lessor, Security Trustee nor their respective successors or assigns will acquire or claim, as against the Lessee (or any Permitted Sub-Lessee) or any such mortgagee, lessor or conditional vendor or other holder of a security interest or any successor or assignee of any thereof, any right, title or interest in such engine as the result of such engine being installed on any Airframe, provided, however, that such agreement of the Lessor shall not be for the benefit of any lessor of or secured party in respect of any airframe (other than an Airframe) leased to the Lessee (or any Permitted Sub-Lessee) or purchased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale or other security agreement or for the benefit of any mortgagee of or any other holder of a security interest in an airframe (other than an Airframe) owned by the Lessee (or any Permitted Sub-Lessee), unless such lessor, conditional vendor, other secured party or mortgagee has expressly agreed (which agreement may be contained in such lease, conditional sale or other security agreement or mortgage) that neither it nor its successors or assigns will acquire, as against the Lessor, the Security Trustee or any other Secured Party any right, title or interest in an Engine as a result of such Engine being installed on such airframe.

(d)      The Lessee will, upon reasonable request, furnish to the Insurer Representative, the Security Trustee and the Agent prompt notice of any transfer or relinquishment of possession of any Aircraft permitted under this Clause 7.4 (other than Clause 7.4(a)), and if requested by the Insurer Representative, the Security Trustee or the Agent a copy of the documents relating to such transfer or relinquishment of possession, duly certified by an officer's certificate of the Lessee being a complete and correct copy of all documents so provided.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**7.5**     **Dry Leasing**

(a)     The Lessee shall not enter into any sublease (whether by Dry Lease or any other similar arrangement) of any duration with respect to any Aircraft (including any Airframe and any Engines or engines installed thereon) with any Person without the prior written consent of the Insurer Representative and the Security Trustee (each of which may withhold its consent in its sole discretion) other than:

(i)     the Initial Permitted Sub-Lease; or

(ii)     another Permitted Sub-Lease with a Permitted Sub-Lessee.

(b)     Other than in respect of the Initial Permitted Sub-Lease, any such sublease shall be subject to the following conditions and requirements:

(i)     any such sublease shall be made expressly subject and subordinate to all the terms of this Lease and the other Operative Documents, and shall not adversely affect the priority or perfection of the Lien of the Security Documents, the enforceability of the Collateral or the right of the Lessor or the Security Trustee to avoid such sublease and to repossess such Aircraft, the associated Airframe or the associated Engines in connection with the exercise of any remedies upon any Termination Event or Event of Default;

(ii)     the Lessee shall remain primarily liable hereunder for the performance of all terms and conditions of this Lease to the same extent as if such sublease had not occurred;

(iii)     all terms and conditions of this Lease and the other Operative Documents shall remain in full force and effect;

(iv)     prior to entering into any such sublease, the Lessee shall provide to the Lessor and the Secured Parties certificates of insurance and brokers' undertakings from the Lessee's insurance brokers or an authorized representative of the Lessee's insurers reflecting that the Aircraft Insurances required to be maintained pursuant to Clause 10 are in full force and will not be adversely affected due to the sublease;

(v)     such sublease shall (A) provide that such Aircraft, and the associated Airframe, Engines and Parts, be maintained in accordance with the Approved Maintenance Programme, and (B) be governed by English law or another jurisdiction acceptable to the Security Trustee and the Insurer Representative, and (C) be with a Permitted Sub-Lessee;

(vi)     such sublease shall not permit any further sub-leasing and the term of the sublease shall not exceed the remaining Term with respect to such Aircraft;

(vii)     either (A) no re-registration of such Aircraft shall occur as a result of entering into such sublease or (B) if entering into such sublease shall involve the re-registration of such Aircraft, the proposed state of registration of such Aircraft shall be Norway, Ireland, the United Kingdom or shall have been approved by the Insurer Representative and the Security Trustee in writing (which approval may be withheld in their sole discretion) and shall in each case be subject to the following:

(A)     under the Applicable Laws of the proposed state of registration of such Aircraft:

I.     there shall exist no rights in favour of the Lessee or the relevant sublessee or any other Person that would, upon bankruptcy or other default by such sublessee, prevent the deregistration, re-export and return of such Aircraft to

FILED DATE: 1/11/2023 2:57 PM   2023L000001

the Lessor (or upon the enforcement of the Lien of the Security Documents, the Security Trustee) in accordance with and as permitted by the terms of Clause 5 upon the exercise by the Lessor of its remedies under Clause 14;

II.    the Lessor shall be recognized as the owner of such Aircraft and the Secured Parties' Lien over the Aircraft pursuant to the Security Documents shall be recognised;

III.   there shall be no impediment (as at the date of re-registration) to the exercise of the rights and remedies provided for in this Lease or in any other Operative Document in respect of such Aircraft and the practical realisation by the Lessor and the Secured Parties of the benefits of this Lease and the Security Documents (to the extent relating to the Aircraft and this Lease) will be available under such Applicable Law;

IV.    the rights of the Lessor under this Lease and the rights and Liens of the Security Trustee and the Secured Parties under the Security Documents, in each case, in respect of such Aircraft, shall be enforceable in   the jurisdiction of re-registration and, if requested by the Security Trustee or the Insurer Representative, the Lessor shall provide a new local law mortgage over the Aircraft in favour of the Secured Parties;

V.     all filings (including all filings required by the Insurer Representative or the Security Trustee pursuant to the Cape Town Convention), recordations and other actions necessary in order to establish, protect and perfect the Lessor's title to the Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Paragraph IV above) shall have been made;

VI.    no Secured Party shall be required to qualify to do business in such jurisdiction as a result of such re-registration;

(B)    such re-registration shall not result in any Tax for which the Lessee is not required to indemnify;

(C)    the insurance and any reinsurance required in respect of such Aircraft by Clause 10 shall be in full force and effect subsequent to such re-registration and the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee evidence of such insurance reasonably satisfactory to the Insurer Representative and the Security Trustee;

(D)    no Liens (other than Permitted Liens) shall arise as a result of such re-registration;

(E)    all filings, registrations, recordations and other actions necessary under the Applicable Laws of the jurisdiction in which such Aircraft is to be registered, in order to establish, protect and perfect the Lessor's title to such Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Clause 7.5(vii)(A)(IV) above), shall be made;

(F)    the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee an opinion of independent counsel in the state of such re-registration addressed to the Lessor, the Security Trustee, the Agent and the Insurer

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Representative reasonably satisfactory in form and substance to the Insurer Representative and the Security Trustee; and

(G)     all reasonable costs, expenses, fees and other charges in connection with any such re-registration shall be paid by the Lessee;

(viii)   the Lessee shall (A) at least thirty (30) days prior to such sublease taking effect, give the Lessor, the Security Trustee, the Agent and the Insurer Representative written notice of such proposed sublease together with a copy of the proposed agreement (which agreement must be reasonably acceptable in form and substance to the Lessor, the Security Trustee and the Insurer Representative), (B) deliver a copy of the approved executed agreement to the Security Trustee, the Lessor, the Agent and the Insurer Representative and assign the Lessee's interests in such agreement to the Lessor, who in turn shall assign such interests to the Security Trustee, as a perfected first-priority security interest for the Lessee's obligations hereunder and cause the Lessee to consent to such assignment and to the Lessor's further assignment of such sublease to the Security Trustee for the benefit of the Secured Parties and (C) provide evidence to the Security Trustee, the Agent and the Insurer Representative that registrations have been made with the International Registry with respect to the International Interests, if any, created pursuant to such sublease and the assignments of International Interests, if any, created pursuant to the assignments;

(ix)    the Lessee shall, at least ten (10) days prior to such sublease taking effect, deliver to the Lessor, the Security Trustee, the Agent and the Insurer Representative proposed forms of (A) an acknowledgment by the sublessee recognizing all rights, title and interests of the Lessor, the Security Trustee and the other Secured Parties under the Operative Documents, and (B) a written opinion of counsel in the country of citizenship or incorporation or formation of the relevant sublessee confirming that all steps necessary to protect the rights, title and interests of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents (including, without limitation, registration of all interests, assignments and subordinations with the International Registry) have been taken or will be taken in a manner reasonably satisfactory to the Secured Parties, each in form and substance reasonably satisfactory to the Lessor, the Agent, the Insurer Representative and the Security Trustee, and on or prior to such sublease taking effect, deliver to the Lessor, the Insurer Representative, the Agent and the Security Trustee executed copies of such documents;

(x)     the Lessee shall promptly reimburse the Lessor, the Security Trustee or any other Secured Party for any reasonable costs and expenses (including attorneys' fees and expenses) incurred by them in connection with such sublease or any related re-registration; and

(xi)    the proposed sublessee must be solvent.

## 7.6    Special Operation and Possession Covenants

In addition to the foregoing requirements, the Lessee covenants and agrees as follows:

(a)     **Restricted Use of Aircraft**

No Aircraft, Engine or Part shall, without the prior written consent of the Lessor, the Security Trustee and the Insurer Representative, (whether, directly or under a Dry Lease, Wet Lease, Charter, blocked-space or other arrangement) be:

(i)     flown to or within, or otherwise operated or used to or within, an Excluded Country if to do so would breach any Applicable Law (including Sanctions) or operated (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar

FILED DATE: 1/11/2023 2:57 PM   2023L000001

arrangement) by or for an airline or by any other Person which is a national of, or established under, the laws of, or whose principal place of business or principal place of aircraft operations is located in, an Excluded Country;

(ii)  principally used in, or operated or used (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under the laws of, or whose principal place of business or principal place of aircraft operations is located in, a Restricted Country;

(iii)  "primarily based" in one or more Restricted Countries.  For purposes of this provision, **primarily based** shall mean that during any consecutive seven (7) day period, the aggregate amount of time spent on the ground by such Aircraft, such Engine or such Part, as applicable, in one or more Restricted Countries shall exceed 15% of the total amount of time spent on the ground during such seven (7) day period, provided that the limitation imposed by this paragraph (iii) shall not prohibit, to the extent necessary, any nonrecurring maintenance or other nonrecurring repairs to be done with respect to an Aircraft in a Restricted Country;

(iv)  operated or used by or for any other Person except in accordance with Clauses 7.3, 7.4 and 7.5;

(v)  operated or used in contravention of any United States law, regulation or stated policy of general applicability restricting the operation or use of United States-manufactured or financed aircraft and engines and such restrictions are applicable to the transactions contemplated hereby;

(vi)  flown or otherwise operated or used for any offensive or defensive military purpose;

(vii)  operated or used for any purpose for which it is not designed or reasonably suited in accordance with the Approved Maintenance Programme, Applicable Law and applicable material warranties or for any primary purpose or other than the commercial transport of passengers and cargo; or

(viii)  subleased (whether under a dry lease or wet lease) to any Person other than as provided in this Lease.

(b)  **Waiver of Defences to Repossession**

None of the Lessee, nor any Permitted Sub-Lessee, nor anyone claiming through or under the Lessee or Permitted Sub-Lessee, shall set up, claim or seek to take advantage of any Applicable Laws now or hereafter in force in any jurisdiction in which any Aircraft or any portion thereof may be situated in order to prevent, hinder or delay any effort in accordance with this Lease on the part of the Lessor or the Security Trustee to regain possession of any Aircraft or deregister or re-export any Aircraft or any portion thereof from any jurisdiction in which such Aircraft or any portion thereof may be situated following the occurrence of an Event of Default or Termination Event, and while the same shall be continuing, and the Lessee, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may be lawful so to do, the benefit of all such Applicable Laws (including, without limitation, any rights it may have, if any, to avail itself of the protection provided by the Convention of 1933 on the Unification of Certain Rules Relating to the Precautionary Arrest of Aircraft, or any other similar law, treaty or convention applicable to the Lessee or any Aircraft which would limit the ability of the Lessor or the Security Trustee

FILED DATE: 1/11/2023 2:57 PM   2023L000001

to repossess or otherwise recover any Aircraft following the occurrence and during the continuance of an Event of Default or Termination Event).

(c)     **Statement of Account of Landing Fees or Navigation Charges**

In the event that a Government Body of any country in which any Aircraft or the Lessee or any Permitted Sub-Lessee operates shall be permitted by Applicable Law to detain or seize, or shall adopt legislation which permits the detention or seizure of, an aircraft for unpaid landing fees or navigation charges without formal legal proceedings, the Lessee shall (and shall procure that any Permitted Sub-Lessee shall) promptly following demand by the Security Trustee or the Insurer Representative, deliver to the Security Trustee, the Agent and the Insurer Representative a letter, in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative, addressed to the airport or air navigation authority of such country authorizing such authority to release to the Security Trustee from time to time a statement of account of all such fees and charges then due in respect of all aircraft owned by or leased to the Lessee or any Permitted Sub-Lessee, as the case may be.

(d)     **Eurocontrol**

The Lessee shall and shall procure that the relevant Initial Permitted Sub-Lessee shall prior to the Delivery Date of an Aircraft, and the Lessee shall procure that any other Permitted Sub-Lessee shall, prior to the commencement of any sub-lease:

(i)     procure that the Lessee or any Permitted Sub-Lessee executes a Eurocontrol Letter and ensure that such letter is promptly sent to and acknowledged by Eurocontrol in accordance with Eurocontrol's advertised procedures;

(ii)    to the extent it has not already done so, promptly enter into a CEFA Agreement and provide the Security Trustee and the Insurer Representative with a copy certified by an officer of such company;

(iii)   if requested by the Security Trustee or the Insurer Representative, promptly obtain from Eurocontrol (via CEFA or otherwise) and provide to the Lessor, the Security Trustee and the Insurer Representative a general statement of account in relation to charges incurred by the Lessee and the Initial Permitted Sub-Lessee (and, if applicable, other Permitted Sub-Lessee); and

(iv)    if Eurocontrol's procedures relating to the availability to third parties of general statements of account are amended, take such actions as may be reasonably requested by the Security Trustee or Insurer Representative to ensure that the Security Trustee is able to obtain (or continue to obtain) such general statements of account in accordance with such procedures.

(e)     **EU ETS Laws**

It shall procure that any Permitted Sub-Lessee:

(i)     comply, and must procure that any other "aircraft operator" for the purposes of the EU ETS Laws complies, with all EU ETS Laws applicable to it/them or the Aircraft and, promptly on request from the Lessor, the Insurer Representative or the Security Trustee, supply to such person evidence reasonably satisfactory to it of such compliance;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(ii)     identify itself as "aircraft operator" to any EU ETS Authority whenever required under the EU ETS Laws or whenever the Lessor, the Insurer Representative or the Security Trustee may request.

(f)    **No Operation by the Secured Parties**

In no event shall any Secured Party be represented as carrying goods or passengers on any Aircraft or as being in any way connected or associated with any operation or carriage which may be undertaken by the Lessee or any Permitted Sub-Lessee or as having any operational interest in any Aircraft.

(g)    **Seizure of Aircraft**

The Lessee shall not do, shall procure that no Permitted Sub-Lessee shall do, and shall otherwise use its best efforts to prevent, any act which could reasonably be expected to result in any Aircraft, any Airframe or any Engine being arrested, confiscated, seized, taken in execution, attached, impounded, forfeited, detained in exercise or purported exercise of any registered or possessory lien or other claim or otherwise taken from the possession of the Lessee or any Permitted Sub-Lessee, and if any such arrest, confiscation, seizure, execution, taking, attachment, impoundment, forfeiture, detention or other loss of possession occurs, the Lessee shall give Security Trustee, the Lessor, the Agent and the Insurer Representative immediate notice thereof and shall forthwith procure the prompt release of such Aircraft, such Airframe or such Engine.

(h)    **Credit for Maintenance**

The Lessee shall not pledge and shall procure that no Permitted Sub-Lessee shall pledge  the credit of any Secured Party for any maintenance, service, repairs, overhauls of, or modifications to, or changes or alterations in, or additions to, any Aircraft, any Airframe, any Engine or any Part.

(i)    **Notice of Suspension**

The Lessee shall give the Lessor, the Security Trustee, the Agent and the Insurer Representative immediate written notice of any action being taken by the management of any Lessee Obligor relating to any general suspension of payment proceedings under any Applicable Law.

(j)    **Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under Clause 10 and should any such claim be paid, shall procure that immediate action is taken either (A) to increase any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty or (B) to obtain "contingent War Risk Insurance" acceptable to the Issuer Representative and the Security Trustee for the express benefit of the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee so that their financial interests in each Aircraft shall at all times be fully insured for the period covered by that War Risk Insurance, notwithstanding any annual aggregate limit or sublimit of liability.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(k)     **Inspection**

At all reasonable times and (except during the continuance of a Default, a Termination Event or an Event of Default) upon reasonable notice to the Lessee and not more frequently than once per calendar year any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives may inspect any Aircraft, any Engine or any Part and the Manuals and Technical Records relating thereto and to the registration thereof and copy or make extracts from the books and records of the Lessee and any Permitted Sub-Lessee relative thereto and may discuss the Lessee's and any Permitted Sub-Lessee business or financial affairs with any of the Lessee's or Permitted Sub-Lessee officials, auditors or officers as may be required for the foregoing and, to the extent available, make any inspection reports available to the Agent, provided that, unless a Termination Event or an Event of Default has occurred and is continuing:

(i)     any such inspection shall be a visual, walk-around inspection which may include going on board such Aircraft, subject to the Permitted Sub-Lessee's limitations for reasons of safety or insurance coverage, but shall not include opening or removing any panels, bays or engine or avionic components of such Aircraft, unless such Aircraft is, on the date of such inspection, undergoing a maintenance visit, in which case such panels, bays or engine or avionic components as are open or removed from such Aircraft on such date may be inspected; and

(ii)    any such inspection or examination shall not unreasonably delay or interrupt or cause any obstruction in the Lessee's maintenance and operation of such Aircraft.

(l)     None of the Lessor, the Security Trustee, the Agent, the Lenders or the Insurer Representative (i) shall have any duty to make any such inspection or (ii) shall incur any liability or obligation by reason of making or not making any such inspection, except as provided in this Clause 7.7.  So long as no Termination Event or Event of Default has occurred and is continuing, the reasonable cost of one such inspection initiated by any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives each calendar year shall be paid by the Lessee.  The Lessee shall pay the cost of all such inspections during the continuance of a Termination Event or an Event of Default.  The cost of other inspections shall be paid by the party requesting such inspection, unless such inspection reveals a material breach of the obligations hereunder to maintain each Aircraft and the associated Manuals and Technical Records, in which case the cost of such inspection shall be borne by the Lessee.  Upon the request of the Lessor, the Lessee shall promptly notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of the major phase checks ("C" check or higher and any structural inspection) then scheduled on any Aircraft for the six-month period following such request.

**7.7     Information Concerning the Aircraft and Engines**

The Lessee shall at its own cost and expense promptly provide the Lessor, the Agent, the Lenders, the Insurer Representative and the Security Trustee with such information (to the extent required by this Lease, any Operative Document or maintained by the Lessee in accordance with its standard fleet procedures) regarding the registration, location, operation, use, insurance, maintenance and condition of each Aircraft and its associated Engines, including all Parts to the extent practicable, as the Lessor, the Agent, the Lenders, the Insurer Representative or the Security Trustee may from time to time reasonably require.

**7.8     Substitution of Engines**

(a)     So long as no Termination Event or Event of Default shall have occurred and be continuing (unless such Termination Event or Event of Default relates to the Engine being substituted), the Lessee may

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(and may permit any Permitted Sub-Lessee to) at any time, with contemporaneous notice to the Lessor, the Agent, the Lenders, the Insurer Representative and the Security Trustee, duly convey or cause to be conveyed to the Lessor as a substitute for an Engine title to another engine of the same manufacturer and model, as such Engine which satisfies the conditions set forth in the definition of "Replacement Engine", provided that all engines installed on any Airframe shall be of compatible make and model, free and clear of all Liens other than Permitted Liens and shall have a value and remaining useful life and utility at least equal to, and being in as good operating condition and state of maintenance as, the Engine to be replaced thereby, assuming such Engine was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to such replacement.  Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)      furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)     cause a Lease Supplement, in form and substance reasonably satisfactory to the Lessor, the Insurer Representative and the Security Trustee subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry;

(iii)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such replacement engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor may reasonably request;

(iv)     furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) reasonably satisfactory to the Lessor, the Security Trustee and the Insurer Representative certifying that such engine has value and remaining useful life at least equal to, and is in as good operating condition (as the Engine being substituted, assuming such Engine was in the condition and state of repair required by the terms hereof immediately prior to such substitution;

(v)      cause amendments to the relevant Aircraft Mortgage and any Security Document, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such replacement engine to the relevant Aircraft Mortgage and the relevant Security Documents to be duly executed by the Lessor, Lessee or Permitted Sub-Lessee (as applicable) and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or the jurisdiction of incorporation or formation of the Lessor, Lessee or Permitted Sub-Lessee as applicable;

(vi)     cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)    furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and Security Trustee regarding the perfection of the Lien of any amended Security Document and relevant Aircraft Mortgage with respect to such Replacement Engine, in form and substance reasonably satisfactory to the Security Trustee and the Insurer Representative (addressed to the Security Trustee, the Insurer Representative, the Lenders and the Agent); and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(viii)   affix a nameplate on such replacement engine in accordance with Clause 8.5.

(b)   Upon full compliance by the Lessee with the terms of this Clause 7.8, the Lessor will transfer or cause to be transferred, at the Lessee's sole cost and expense, to or upon the order of the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it) all of the Lessor's right, title and interest, if any, in and to each replaced Engine with respect to which such substitution occurred by an appropriate instrument, signed by the Security Trustee, releasing such Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Engine" as defined herein and shall be deemed part of the same Aircraft as was the Engine replaced thereby.  No substitution with respect to an Engine under the circumstances contemplated by the terms of this Clause 7.8 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

**7.9   Annual Survey**

(a)   Upon written request, but no more frequently than once each calendar year for each Aircraft any one of the Security Trustee, the Agent, the Insurer Representative or their authorized representative, may request a technical report about the related Airframe, Engines and Manuals and Technical Records in connection with such Airframe and each such Engine, performed at an Approved Maintenance Facility in connection with the most recently completed (i) airworthiness inspection, or heavy maintenance check (in the case of an Airframe), (ii) heavy maintenance visit and any shop visit (in the case of each such Engine), and (iii) overhaul or reconditioning (in the case of any Part, appurtenance or system in respect of such Aircraft or each such Engine not covered by clauses (i) and (ii) preceding).

(b)   Such report shall be at the Lessee's expense and shall contain sufficient detail so as to enable the Security Trustee, the Agent and the Insurer Representative to determine the Lessee's compliance with the terms of this Lease and the general repair, condition, maintenance, overhaul and time-before-overhaul status of such Airframe and each such Engine or Part.  If any such report is prepared at the request of the Security Trustee, the Security Trustee shall promptly provide a copy to the Agent and the Insurer Representative.

**7.10   Engine power by the hour support arrangements**

If at any time the Lessee or a Permitted Sub-lessee enters into or receives the benefit of a power by the hour (or equivalent) support arrangement relating to the Engines with the Engine Manufacturer, the Lessee shall use all reasonable endeavours to procure that such benefit is promptly assigned to the Security Trustee (each such assignment, an **Engine PBH Security Assignment**).

**8.   REPLACEMENT;   TEMPORARY   INSTALLATION;   POOLING;   ALTERATIONS, MODIFICATIONS AND ADDITIONS; ETC**

**8.1   Replacement of Parts**

(a)   The Lessee, at its own expense, will promptly replace or cause to be replaced all Parts that may from time to time be incorporated or installed in or attached to any Airframe or any Engine and that may from time to time be defective and not economically repairable, become time-expired or due for replacement or worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)  In addition, the Lessee (or any Permitted Sub-Lessee) may, at its own expense, remove in the ordinary course of maintenance, service, repair, overhaul or testing, any Part, whether or not time-expired, due for replacement, worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use, provided, however, that the Lessee will, at its own cost and expense, replace (or cause to be replaced) such Part as promptly as practicable.

(c)  Each replacement Part shall be free and clear of all Liens (except Permitted Liens) and except as permitted by Clause 8.3, shall be in at least as good operating condition as, and shall have value, modification status and performance characteristics at least equal to, or, if applicable, comparable to, the Part replaced assuming such replaced Part was in the condition and repair required to be maintained by the terms hereof.

(d)  Each Part at any time removed from any Airframe or each Part removed from any Engine shall remain the property of the Lessor, no matter where located, until such time as such Part shall be replaced by a Part that has been incorporated or installed in or attached to the Airframe from which such Part was removed or, as the case may be, an Engine and that meets the requirements for a replacement Part specified above and shall be subject to the Lien of the relevant Aircraft Mortgage.

(e)  Immediately upon any replacement Part becoming incorporated or installed in or attached to an Airframe or, as the case may be, an Engine as above provided and title thereto being vested in the Lessor free and clear of all Liens (except Permitted Liens), without further act:

(i)  title to the replaced Part shall thereupon vest in the Lessee or its Approved Nominee and shall no longer be deemed a Part hereunder; and

(ii)  such replacement Part shall become subject to this Lease and be deemed part of such Airframe or, as the case may be, such Engine for all purposes hereof to the same extent as the Part originally incorporated or installed in or attached to such Airframe or, as the case may be, such Engine.

## 8.2  Temporary Installation of Parts

The Lessee may install or permit the installation of any part on any Airframe or Engine by way of substitution, replacement, renewal or mandatory modification notwithstanding that such installation is not in accordance with Clause 8.1 in the case of a part if:

(a)  there shall not have been available to the Lessee at the time and in the place that such part was required to be installed on such Airframe or, as the case may be, such Engine a substitute or replacement Part complying with the requirements of Clause 8.1;

(b)  it would have resulted in a disruption of the operation of the relevant Aircraft and/or the business of the Lessee to have grounded such Aircraft and/or to have permitted the relevant Part to continue to be unserviceable or unrepaired until such time as an part complying with the requirements of Clause 8.1 became available for installation on such Airframe or such Engine; and

(c)  as soon as practicable, but in any event within one hundred and eighty (180) days, the Lessee shall cause any such part not complying with the requirements of Clause 8.1 to be removed and replaced or substituted by a part complying with the requirements of Clause 8.1.

## 8.3  Pooling of Parts

Any Part removed from any Airframe or any Engine may be subjected by the Lessee or permitted by the Lessee to be subjected to a normal pooling arrangement customary in the international airline

FILED DATE: 1/11/2023 2:57 PM   2023L000001

industry entered into in the ordinary course of the Lessee's (or, while the relevant Aircraft is leased by the Lessee to the Initial Permitted Sub-Lessee pursuant to the Initial Permitted Sub-Lease, the Initial Permitted Sub-Lessee's) business, provided, that the part replacing such removed Part shall be incorporated or installed in or attached to such Airframe or such Engine in accordance with Clause 8.1 as promptly as possible after the removal of such removed Part.  In addition, any replacement part when incorporated or installed in or attached to any Airframe or any Engine in accordance with Clause 8.1 may be owned by another air carrier subject to such a normal pooling arrangement, provided that the Lessee, at its own cost and expense, as soon as practicable, shall either (a) cause title to such replacement part to vest in the Lessor in accordance with Clause 8.1 by the Lessee acquiring title (or procuring acquisition of the title) thereto for the benefit of the Lessor free and clear of all Liens (other than Permitted Liens) and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement or (b) replace such replacement Part by incorporating or installing in or attaching to such Airframe or such Engine a further replacement Part owned by the Lessee (or such Permitted Sub-Lessee) free and clear of all Liens (other than Permitted Liens) and by causing title to such further replacement Part to vest in the Lessor in accordance with Clause 8.1 and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement.

## 8.4   Alterations, Modifications and Additions

(a)     The Lessee, at its own expense, will promptly make (or cause to be made) such alterations and modifications in and additions to any Airframe or any Engine as may be reasonably required from time to time to comply with any Airworthiness Directives, Service Bulletins, other directive or modifications published (and of a mandatory nature) by the Manufacturer, the Engine Manufacturer and/or the Civil Aviation Authority in accordance with the terms of this Lease, provided that the Lessee may in good faith diligently contest the validity or application of any such Airworthiness Directive, Service Bulletin, directive or modification in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of adversely affecting the value of any Aircraft, the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder.

(b)     In addition, the Lessee (or the Permitted Sub-Lessee), at its own expense, may from time to time make such alterations and modifications in and additions to any Airframe or any Engine as the Lessee (or Permitted Sub-Lessee) may deem desirable in the proper conduct of its business, including installation of additional buyer furnished equipment or removal of Parts that the Lessee (or Permitted Sub-Lessee) determines to be obsolete or no longer suitable or appropriate for use on such Airframe or such Engine, provided, however, that no such alteration, modification or addition shall materially diminish the value, utility, remaining useful life, performance or operational characteristics of such Airframe or such Engine, or impair the condition or airworthiness thereof, below the value, remaining useful life, performance or operational characteristics, condition or airworthiness thereof immediately prior to such alteration, modification or addition (assuming such Airframe or such Engine was then of the value, remaining useful life, performance or operational characteristics, condition or airworthiness required to be maintained by the terms of this Lease), provided, further, that the Lessee shall consult with the Manufacturer or the Engine Manufacturer, as applicable, the Insurer Representative and the Security Trustee prior to undertaking any material alteration or modification to any Aircraft. Without prejudice to the generality of the foregoing, the Lessor consents to the modification which includes installation of antennae, aerodynamic domes, wiring, structural attaching parts, mounts, receivers, wireless access points,(WAP's), modems, controllers, switching equipment, display and sound reproduction equipment and all related hardware and software directly associated with the receipt and distribution of satellite or where applicable ground based internet signals and data into the Aircraft for passenger use, whether provided by ROW 44 or an alternative provider.  Title to all Parts incorporated or installed in or attached or added to any Aircraft as the result of such alteration, modification or addition, shall

immediately vest in the Lessor free and clear of all Liens (except Permitted Liens) and become subject to this Lease, without the necessity for any further act of transfer, document or notice.

(c)     Notwithstanding Clause 8.1 and the foregoing provisions of this Clause 8.4 and provided that no Termination Event  or Event of Default shall have occurred and is continuing, the Lessor agrees that the Lessee or any Permitted Sub-Lessee may, at any time during the Term in respect of any Aircraft, remove or suffer to be removed any Part (including buyer furnished equipment) from such Aircraft that:

(i)     is in addition to, and not in replacement of or substitution for, any Part originally incorporated or installed in or attached to the related Airframe or Engine at the time of the Delivery of such Aircraft hereunder or any Part in replacement of or substitution for any such Part;

(ii)    is not required to be incorporated or installed in or attached or added to the related Airframe or Engine pursuant to the terms of Clause 7 or this Clause 8 or in order to maintain insurance required by Clause 10; or

(iii)   can be removed from the related Airframe or such Engine without causing damage to such Airframe or such Engine or diminishing or impairing in any material respect the value, utility, remaining useful life, performance or operational characteristics, condition or airworthiness that such Airframe or such Engine would have had at such time had such removal not occurred.

(d)     Upon the removal by the Lessee (or any Permitted Sub-Lessee) of any Part as provided in and permitted by this Clause 8.4, title thereto shall, without further act, vest in the Lessee or the Lessee's Approved Nominee, and such Part shall no longer be deemed part of the Airframe or Engine from which it was removed.  Notwithstanding the foregoing, any Part not removed by the Lessee (or any Permitted Sub-Lessee) as above provided prior to the return of the relevant Airframe or Engine to the Lessor hereunder shall become the property of the Lessor at the time of such return and become subject to the relevant Aircraft Mortgage and the relevant Security Agreement.

**8.5     Nameplate and Other Markings**

The Lessee shall affix and keep a metal nameplate having dimensions of not less than five inches by four inches in the cockpit of each Airframe adjacent to the airworthiness certificate therein and on each of the Engines bearing the inscription "THIS [AIRFRAME/ENGINE] IS OWNED BY AAA MAX 2 LIMITED AND LEASED TO STOGOFJORDEN LIMITED, IS FURTHER SUB-LEASED TO NORWEGIAN AIR INTERNATIONAL LIMITED AND SUBJECT TO A MORTGAGE IN FAVOUR OF BANK OF UTAH, AS SECURITY TRUSTEE", or such other inscription as the Security Trustee or the Insurer Representative from time to time may reasonably request (such nameplate to be affixed within ten (10) days after the Delivery Date for such Airframe and such Engines, and the Lessee shall thereupon so advise the Lessor).  Except as provided above, the Lessee shall not allow the name or other indication of any other Person to be placed on any Airframe or any Engine, if such name or other indication could be interpreted as a claim of ownership or other interest therein; provided, that each Airframe, Engine and Part may be marked with the customary name, colours or insignia of the Lessee or the Permitted Sub-Lessee and/or any manufacturer(s) of such Airframe, Engines and Parts.

**8.6     No Third Party Beneficiaries**

It is expressly agreed that the Lessee's obligations with respect to maintenance under Clauses 7 and 8 are solely for the benefit of the Lessor and the Secured Parties and that the Lessee shall have no liability to any other Person with respect thereto, and that except for the Lessee's indemnification

FILED DATE: 1/11/2023 2:57 PM   2023L000001

obligations with respect thereto contained in the Participation Agreement which shall survive the termination of such documents in accordance with their respective terms, the Lessee's obligations under Clauses 7 and 8 in respect of an Aircraft shall terminate upon termination of the leasing of an Aircraft to the Lessee pursuant to this Lease and the relevant Lease Supplement in accordance with the terms hereof.

**8.7     No Authorization to Contract for the Lessor**

Nothing contained in this Lease shall constitute any consent or request by the Lessor or any Secured Party express or implied, for the performance of any works or services or the furnishing of any materials or other property in respect of any Aircraft, any Engine or any Part thereof, nor as giving the Lessee any right, power or authority to contract for or permit the performance of any works or services or the furnishing of any materials or other property, in such fashion as would permit the making of any claim against the Lessor or any Secured Party in respect thereof or any claim that any Lien (other than Permitted Liens) based on the performance of such works or services or the furnishing of any such materials or other property is prior to the interests of the Lessor or any other Person in such Aircraft, such Engine or such Part thereof.

**8.8     No Rights of Retention**

The Lessee hereby waives any and all rights of retention which it may have or which at any time hereafter may be conferred upon it, by virtue of law or otherwise, related to any replacement of Parts, alterations, modifications or additions that the Lessee may make to any Airframe or any Engine.  The Lessee hereby expressly releases the Lessor and the Secured Parties from any and all obligations, whether present or future, to indemnify or reimburse the Lessee for any of the aforementioned replacements, alterations, modifications, improvements or additions.

**9.     LOSS, DESTRUCTION, REQUISITION, ETC**

**9.1     Event of Loss with Respect to an Aircraft**

(a)     Upon the occurrence of an Event of Loss with respect to an Aircraft or an Airframe and any related Engines and/or engines then installed thereon, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), which notice shall specify the actions the Lessee is taking with respect to such Event of Loss.  So long as no Default, Termination Event or Event of Default shall have occurred and be continuing, the Lessee may within forty-five (45) days after such occurrence, request permission from the Lessor to replace such Aircraft (or such Airframe and Engine(s), as applicable), upon terms and conditions acceptable to the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee in their absolute discretion, including compliance with such terms and requirements that would make such replacement aircraft (or such replacement airframe and engine(s), as applicable) (a **Replacement Aircraft**) eligible for financing supported by the Insurance Policy in the same amount as such replaced Aircraft (or such replaced Airframe and Engine(s), as applicable), it being agreed that if the Lessee does not request such permission within the relevant time period (or does not receive such permission within ten (10) days after such request), the Lessee will not be entitled to substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable).

(b)     The Lessee will not substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) hereunder unless such Replacement Aircraft (or replacement airframe and engine(s), as applicable) would be eligible for financing supported by the Insurance Policy, as determined by the Insurer Representative in its sole discretion.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     It is expressly agreed that if any Basic Rent Payment Date for the affected Aircraft occurs at or after the date of such Event of Loss and prior to the payment of the Termination Value and any other Rent due in relation to such Aircraft, the Lessee shall pay to the Lessor on such Basic Rent Payment Date the amount equal to the Basic Rent which would have become due and payable in respect of such Aircraft on such Basic Rent Payment Date in accordance with the terms hereof had no Event of Loss so occurred.

(d)     Unless a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) are being substituted in the circumstances contemplated in the preceding clauses, the Term for the affected Aircraft shall end on a date no later than the earliest of (i) the date falling ninety (90) days after the occurrence of such Event of Loss and (ii) the Lessor or the Security Trustee receives insurance or requisition proceeds in respect thereof (the **Settlement Date**), and on such Settlement Date the Lessee shall pay to the Lessor an amount equal to the then applicable Termination Value for the affected Aircraft on such Settlement Date together with all accrued but unpaid Rent for the affected Aircraft to such Settlement Date and, without duplication, all other amounts then owing by the Lessee under the Operative Documents.

(e)     Upon full compliance by the Lessee with the terms of this Clause 9.1 the Lessor will (subject to insurer's salvage rights, if any) transfer to, or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty, all of the Lessor's right, title and interest, if any, in and to the Aircraft with respect to which such Event of Loss occurred by an appropriate instrument, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Aircraft shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Aircraft" as defined herein.

## 9.2     Event of Loss with Respect to an Engine

(a)     Upon the occurrence of an Event of Loss with respect to an Engine under circumstances in which there has not occurred an Event of Loss with respect to the associated Airframe, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), then within one hundred and twenty (120) days after the occurrence of such Event of Loss, the Lessee shall duly convey or cause to be conveyed to the Lessor and duly subject to the relevant Aircraft Mortgage and other relevant Security Documents, as replacement for such Engine with respect to which such Event of Loss occurred, title to a Replacement Engine (provided that all engines installed on such Airframe shall be of compatible make and model).

(b)     Such Replacement Engine shall be free and clear of all Liens (other than Permitted Liens) and having a value and remaining useful life at least equal to, and being in as good operating condition and state of maintenance as, the Engine with respect to which such Event of Loss occurred, assuming such Engine was of the value and remaining useful life and in the condition and state of repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss, but without regard to its point in the maintenance cycle.

(c)     Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)      furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)     cause an amendment to the related Lease Supplement, in form and substance reasonably satisfactory to the Lessor and the Security Trustee, subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant

FILED DATE: 1/11/2023 2:57 PM   2023L000001

to the Applicable Laws of the relevant Government of Registry or any other Relevant Jurisdiction;

(iii)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such Replacement Engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor and the Security Trustee may reasonably request;

(iv)    furnish the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) satisfactory to the Insurer Representative and the Security Trustee certifying that such engine has value and remaining useful life and it is in good operating condition as the Engine being substituted, assuming such Engine was in the condition and state of repair as required by the terms hereof immediately prior to such substitution, but without regard to its point in the maintenance cycle;

(v)    cause amendments to the relevant Aircraft Mortgage and other Security Documents, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such Replacement Engine to the relevant Aircraft Mortgage and Security Documents to be duly executed by the Lessor and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry, the jurisdiction of incorporation or formation of the Lessor and the United States of America;

(vi)    cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessee, the Security Trustee and the Insurer Representative under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)    furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and the Security Trustee regarding the perfection of the Lien of the relevant Aircraft Mortgage and Security Documents with respect to such Replacement Engine addressed to the Security Trustee, the Insurer Representative and the Agent and in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative;

(viii)    affix a nameplate on such replacement engine in accordance with Clause 8.5;

(ix)    assign to the Lessor (for further assignment to the Security Trustee) all assignable and remaining engine warranties applicable to such Replacement Engine in a manner consistent with the relevant Engine Warranties Agreement.

(d)    Upon full compliance by the Lessee with the terms of this Clause 9.2 the Lessor will (subject to insurer's salvage rights, if any) transfer to or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it), all of the Lessor's right, title and interest, if any, in and to the replaced Engine by an appropriate instrument, signed by the Security Trustee, releasing the replaced Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer. For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an **Engine** as defined herein. No Event of Loss with respect to an Engine under the circumstances contemplated

FILED DATE: 1/11/2023 2:57 PM   2023L000001

by the terms of this Clause 9.2 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

**9.3     Application of Payments from Governmental Authorities or Others**

Any payments (other than insurance proceeds from policies carried (or caused to be carried) by the Lessee the application of which is provided for in Clause 10 and other than proceeds of insurance policies carried by the Lessor or any Secured Party) received at any time by the Lessor or the Lessee from any Government Body or other Person with respect to an Event of Loss of any Aircraft or any Engine shall be paid over to the Security Trustee and applied, subject to Clause 9.6, in accordance with the terms of the Intercreditor Deed.

**9.4     Requisition for Use of any Airframe and the Engines Installed Thereon**

In the event of the requisition for use by any Government Body not constituting an Event of Loss of an Airframe and the Engines installed thereon during the relevant Term, the Lessee shall promptly notify the Lessor, the Security Trustee, the Insurer Representative and the Agent of such requisition, and all of the Lessee's obligations under this Lease shall continue to the extent such obligations are not restricted or curtailed by such requisition and to the same extent as if such requisition had not occurred (but the Lessee's obligations to pay Rent for the relevant Aircraft pursuant to Clause 3 and its obligations under Clause 10 shall not be reduced or excused by such requisition).  All payments (and any interest thereon) received by the Lessor or the Lessee for the use of such Airframe and Engines at any time shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied in accordance with the Intercreditor Deed.

**9.5     Requisition for Use of an Engine Not Installed on an Airframe**

If an Engine not then installed on an Airframe is requisitioned for use by any Government Body, the Lessee shall replace such Engine or cause it to be replaced by complying with the terms of Clause 9.2 hereof as if an Event of Loss had occurred with respect to such Engine, and (upon compliance by the Lessee as aforesaid) any payments received by the Lessor or the Lessee from with respect to such requisition shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, that if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied to the obligations of the Lessee hereunder as the Lessor shall direct and any excess, shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee.

**9.6     Payments to the Lessee**

Any amount referred to in this Clause 9 which is payable or creditable to the Lessee or any Permitted Sub-Lessee shall not be paid or credited to the Lessee or such Permitted Sub-Lessee or, if it has been previously paid to the Lessee or such Permitted Sub-Lessee, shall not be retained by the Lessee or such Permitted Sub-Lessee, if at the time of such payment or credit a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to, applied in accordance with the terms of the Operative Documents and/or held by the Security Trustee as security for the obligations of the Lessee under this Lease and the Operative Documents and at such time as there shall not be continuing any Material Default, Termination Event or Event of Default such amount (together with interest thereon, if any), if then remaining, shall be paid or credited to the Lessee or the Permitted Sub-Lessee (as the case may be).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 10.    INSURANCE

### 10.1    Aviation Third Party Legal Liability Insurance

Except to the extent provided in Clauses 10.3 and 10.5, on or before the Delivery Date for an Aircraft, and throughout the Term therefor and for a period extending to two years following the later of (a) the final Basic Rent Payment Date for such Aircraft and (b) the date such Aircraft is returned to the Lessor, the Lessee will carry or cause to be carried at its own expense with insurers of recognized standing which insurers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative, airline liability insurance in respect of such Aircraft including war and allied perils, hi-jacking and other similar risks that are excluded from standard liability coverage to the extent that such insurance is (a) maintained by the Lessee or the Permitted Sub-Lessee with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (b) customarily obtained by carriers with comparable route structures flying similar aircraft or (c) generally required by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures in amounts customary for similar aircraft in the Lessee's fleet (but not less than seven hundred and fifty million Dollars (US$750,000,000) any one occurrence per each aircraft and subject to customary sub-limits for non-aviation coverage and aggregate limits for products liability and war risks coverages) and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet and of the type usually carried by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning and operating similar aircraft and engines, and which covers risks of a kind customarily insured against by such corporations which shall include general third party legal liability (including war and allied perils), passenger liability, and property damage liability (including cargo, baggage and mail liability).  Any liability insurance carried in accordance with this Clause 10.1 and any policies taken out in substitution or replacement for any of such policies:

(a)    shall be amended to name the Security Trustee, as the contract party (the **Contract Party**) and each of the Lessor, the Lessee, the Lessor Parent, the Agent, the Security Trustee, the Lenders, the Insurer Representative, the Insurer Group and their respective successors, members, assigns, officers, directors, shareholders, agents, employees, servants, Affiliates and sub-contractors as additional insureds (the **Additional Insureds**);

(b)    shall provide that in respect of the interests of the Lessor or any other Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that the Additional Insured so protected has not caused, contributed to or knowingly condoned the said act or omission);

(c)    shall provide that there shall be no recourse against the Lessor or any other Additional Insured for the payment of premiums under such policies and that the Insurer Representatives shall waive any right of subrogation against the Additional Insureds; and

(d)    shall provide that, if such insurance is cancelled for any reason whatsoever, or if any material change is made in such insurance that adversely affects the interest of the Lessor or any other Additional Insured, such cancellation or change shall not be effective as to the Lessor or any other Additional Insured for thirty (30) days (seven (7) days, or such other period as is then customarily obtainable in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers (if different from the Lessee's insurance broker) to the Lessee's appointed insurance broker.  The Lessee hereby covenants to cause the Lessee's or the Permitted Sub-Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Each liability policy (a) shall be primary without right of contribution from any other insurance that is carried by any other Person to the extent that such other insurance provides it with contingent or excess liability insurance with respect to its interest as such in any Aircraft, (b) shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured, (c) shall waive any right of the Aircraft Insurer to any setoff, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Lessee, the Permitted Sub-Lessee, the Lessor or any other Additional Insured to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft) and (d) shall provide for worldwide coverage (except in relation to Excluded Countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk and related perils policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit.

**10.2     Aircraft Hull Insurance**

(a)     Except to the extent provided in Clauses 10.3 and 10.5, on or prior to the Delivery Date for each Aircraft and throughout the Term for each Aircraft (and, in the case of the termination of this Lease with respect to an Aircraft pursuant to Clause 14 hereof, at all times following such termination until the sale or other disposition of such Aircraft pursuant hereto) the Lessee shall maintain or cause to be maintained in full force and effect, at its own expense and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet, all-risk aircraft hull insurance covering such Aircraft, while flying and on the ground, including coverage of the Engines and Parts while temporarily removed from or not installed on such Aircraft and not replaced with similar components (with flight taxing and ingestion coverage), against loss or damage, of the type (but not necessarily the amount) usually insured against by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning or operating similar aircraft and engines on an agreed-value basis in a euro amount not less than 120% of the highest Termination Value for such Aircraft during the applicable insurance period (the **Threshold Value**), and all-risk insurance with respect to each Engine and Part while removed from an Aircraft, and, as to each Engine or Part not installed on an Airframe, not less than the fair market value of such Engine or Part.

(b)     The Lessee shall maintain or cause to be maintained in full force and effect war-risk and related perils insurance and hi-jacking and government confiscation insurance (excluding for confiscation by the Government of Registry) in respect of each Aircraft on an agreed value basis for such Aircraft throughout each policy year, for not less than the amounts set forth in the preceding paragraph in respect of such Aircraft covering each of the following perils (i) insured by the Lessee or the Permitted Sub-Lessee, with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (ii) customarily insured by air carriers with comparable route structures flying similar aircraft, and (iii) generally required to be insured by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures.

(c)     All policies and subsequent policies taken out in accordance with this Clause 10.2 will be issued by insurance companies or underwriters of recognized standing in the international aviation industry or re-insurance companies or underwriters of such standing and through internationally recognized aviation insurance brokers, all of which insurance companies, underwriters and insurance brokers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative. In addition, all such policies and subsequent policies:

(i)     shall be denominated and payable in euro and shall be on an agreed value basis without the insurer's right to replace;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(ii)   shall name the Additional Insureds as additional insureds in respect of the legal liability insurances and the Security Trustee as the sole contract party and as loss payee in respect of hull claims that become payable on the basis of a total loss and provide that payment in respect of such claims shall be made to or to the order of the contract parties for application in accordance with the Operative Documents and in respect of all other hull claims the loss will be settled with such Persons as may be necessary to repair the relevant Airframe or Engine;

(iii)  shall provide that in respect of the interests of each Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that such Additional Insured has not caused, contributed to or knowingly condoned the said act or omission);

(iv)  shall provide that there shall be no recourse against the Lessor or any Additional Insured for the payment of premiums under such policies; and

(v)   shall provide that, if such insurance is canceled for any reason whatsoever, or if any material change is made in such insurance which adversely affects the interests of any Additional Insured, such cancellation or change shall not be effective as to Additional Insureds for thirty (30) days (seven (7) days, or such other period as is then customarily imposed by in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers to the Lessee's appointed insurance broker. The Lessee hereby covenants to cause the Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

(d)  The hull policy for each Aircraft:

(i)   shall waive any right of the Aircraft Insurer or any reinsurers to any set-off, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Additional Insureds or any other Person to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft);

(ii)   if separate hull all risks and war risks policies are arranged, shall contain a 50/50 claims funding clause acceptable to the Security Trustee, the Agent and the Insurer representative (which shall be AVS 103 or similar) in the event of a dispute as to which policy in respect of the hull insurances set forth in this Clause 10.2 shall pay in the event of a loss;

(iii)  shall provide for worldwide coverage (except for excluded countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit; and

(iv)  shall have deductibles (not applicable in the case of an Event of Loss or war and allied perils insurance) standard in the   industry in respect of the same model aircraft, which are reasonably acceptable to the Insurer Representative and the Security Trustee and in amounts which are no greater than seven hundred and fifty thousand dollars (US$750,000) and in any event such deductible shall not be greater than those which other international airlines of comparable standing (in the judgement of the Secured Parties' independent insurance advisor after consultation with the Lessee's broker of record) to the Lessee operating comparable aircraft are able to obtain in such market.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(e)     The Lessee may procure endorsements to the relevant insurance policies required to be maintained pursuant to Clause 10 so as to incorporate the terms of AVN 67B (or any successor provision) unto such policies, in which event, to the extent that any provision of any such AVN 67B (or any successor provision) endorsement conflicts or is otherwise inconsistent with the requirements of this Clause 10, then (so long as it shall remain general industry practice to insure aircraft financed by financial institutions on the basis of such endorsement) such endorsement shall be deemed to satisfy the requirements of this Clause 10 to the extent covered by such endorsement.

(f)     As between the Lessor and the Lessee it is agreed that all insurance payments received under policies that the Lessee is required to maintain pursuant to this Clause 10.2, exclusive of any payments received in excess of the then applicable Threshold Value for an Aircraft, as the result of the occurrence of an Event of Loss with respect to an Airframe or an Engine related thereto will be applied, unless a replacement is effected in accordance with Clause 9.1 or 9.2 hereof, pursuant to the Intercreditor Deed.

(g)     As between the Lessor and the Lessee the insurance payment of any property damage or loss with respect to an Aircraft (i) that constitutes an Event of Loss, in excess of the then applicable Threshold Value for such Aircraft, shall be paid to the Lessee, and (ii) that does not constitute an Event of Loss with respect to the related Airframe or a related Engine, will be applied in payment (or to reimburse the Lessee), for repairs or for replacement property in accordance with the terms of Clauses 7 and 8, if not already paid for by the Lessee and any balance remaining after compliance with such Clauses with respect to such loss shall, subject as provided below, be paid to and retained by the Lessee or in accordance with Clause 9.3(b) of the Intercreditor Deed.

(h)     Notwithstanding any provision in this Clause 10.2, any amount referred to in this Clause 10.2 which is payable to the Lessee, shall not be paid to the Lessee or, if it has been previously paid directly to the Lessee, shall not be retained by the Lessee, if at the time of such payment a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to and held by the Security Trustee as security for the obligations of the Lessee under this Lease and, during the continuance of such Material Default, Termination Event or Event of Default, shall be applied to the satisfaction of the then due and payable obligations of the Lessee under this Lease, and, at such time as there shall not be continuing any such Material Default, Termination Event or Event of Default, the remainder of such amount shall be paid to the Lessee.

**10.3     Default**

If the Lessee shall default in effecting or maintaining any insurance or if any insurance shall, for any cause become void, the Lessor, the Security Trustee or any other Additional Insured may (but without any obligation to do so and without prejudice to the Lessor's other rights and remedies hereunder) effect and keep up such insurance at the cost of the Lessee and the Lessee will forthwith upon demand repay to the Lessor, the Security Trustee or any other Additional Insured all premiums and other moneys from time to time paid by the Lessor, the Security Trustee or any other Additional Insured in respect of such insurance (which amount shall be certified by the Lessor, the Security Trustee or such other Additional Insured).

**10.4     Certificates**

On or before the Delivery Date for each Aircraft and promptly after the issuance or modification or renewal thereof (but in any event prior to the expiration of any insurance then to be renewed) in form substantially similar to those given prior to or on such Delivery Date, the Lessee will furnish to the Lessor, the Insurer Representative, the Agent and Security Trustee (with sufficient copies for all Lenders):

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a)     a certificate of the Lessee's insurance broker or an authorized representative of the Aircraft Insurer describing in reasonable detail the Aircraft Insurances then carried and maintained on such Aircraft, containing an endorsement reflecting the Aircraft Insurances required hereunder and:

      (i)     certifying the date and time of commencement and expiry of each insurance policy;

      (ii)    specifying the deductible amounts and levels of co-insurance, if any, for each type of loss; and

(b)     a letter of undertaking from the Lessee's appointed insurance broker with regard to the Aircraft Insurances required hereunder in respect of such Aircraft (in the case of each renewal, in substantially the same form as delivered on the relevant Delivery Date).

**10.5     Notice of Variations**

If any material variation is made to the terms of any of the Aircraft Insurances or Aircraft Reinsurances the Lessee shall immediately give notice to the Lessor, the Insurer Representative, the Security Trustee, the Agent and the Lenders of such variation and shall provide such further details in relation thereto as the Lessor, the Insurer Representative, the Security Trustee, the Agent or any Lender may reasonably require.

**10.6     Premiums**

The Lessee shall pay or cause to be paid the premiums (or installments thereof) as required by the terms of such policies and produce to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request receipts in respect of payment of such premiums (or installments thereof) or other evidence of such payments as the Lessor, the Insurer Representative, the Security Trustee or the Agent may reasonably request.  In the case of renewals of such policies, the Lessee shall cause to be provided to the Lessor, the Insurer Representative, the Security Trustee and the Agent evidence of such renewal as soon as practicable and in any event within seven (7) days after the date of renewal and shall give the Lessor, the Insurer Representative, the Security Trustee and the Agent notice of such intended renewal no later than the day before such date and the Lessee shall pay the renewal and other premiums (and installments thereof) as required by the terms of such policies.

**10.7     Insurance Policies**

In the absence of an unqualified opinion or certificate addressed to the Lessor, the Insurer Representative, the Security Trustee and the Agent from the Lessee's or the Permitted Sub-Lessee's insurance brokers (and, if applicable, reinsurance brokers), the Lessor and each Secured Party shall be entitled to full reliance, without exception, that the certificates of insurance (and, if applicable, certificates of reinsurance) delivered pursuant to this Clause 10 do not conflict with the terms and conditions of the underlying insurance (and, if applicable, reinsurance) policies.  Copies of the policies and endorsements and riders amendatory thereof (excluding premium information) with respect to the Aircraft Insurances and any Aircraft Reinsurances, required under this Clause 10 shall be made available to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request for inspection by their respective representatives at the offices of the Lessee or the Permitted Sub-Lessee or the Lessee's or the Permitted Sub-Lessee's insurance brokers during normal business hours.

FILED DATE: 1/11/2023 2:57 PM    2023L000001

**10.8    Reinsurance**

Unless the Aircraft Insurances maintained by the Lessee in accordance with the provisions in this Clause 10 are maintained with Lloyd's of London or in other internationally recognized aviation insurance markets with insurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee and the Insurer Representative, then the Lessee shall procure that the insurers shall maintain reinsurance in all respects satisfactory to the Security Trustee and the Insurer Representative covering identical subject matter and risk for an amount (which shall not be less than ninety five percent (95%) of the relevant coverage amount) with Lloyd's of London or in other internationally recognized aviation insurance markets with reinsurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee, the Agent and the Insurer Representative. Any reinsurance shall:

(a)    be on the same terms as the original insurances;

(b)    contain a "cut-through" clause satisfactory to the Security Trustee, the Agent and the Insurer Representative providing that, in the event of any claim arising under the reinsurance, the reinsurers thereunder shall, in lieu of payment to the original insurer or its successors in interest and assigns, pay to or to the order of the Contract Party as loss payee that portion of any loss due for which the reinsurers thereunder would but for this cut-through clause be liable to pay the original insurer or its successors in interest and assigns, it being understood and agreed (and the Lessee agreeing to obtain the agreement of its original insurers for the benefit of the Lessor, the Agent, the Security Trustee, the Insurer Representative, the other Secured Parties and the reinsurers) that any such payment by the reinsurers thereunder shall fully discharge and release the original insurers from any and all further liability in connection therewith; and

(c)    provide for payment to be made directly to or to the order of the Contract Party as provided herein notwithstanding (x) any bankruptcy, insolvency, liquidation or dissolution of the original insurer(s), and/or (y) that the original insurer(s) have made no payment under the primary insurance policies.

**10.9    Location**

Except as otherwise expressly permitted herein, the Lessee shall not at any time do or suffer to be done to any Aircraft, any Engine or any Part thereof or the premises on which the same may be located, or bring or keep, or permit to be brought or kept, anything therein or thereon or operate any Aircraft, any Engine or any Part thereof or take the same to or keep the same in, or permit the same to be taken to or kept in, a place where or whereby any insurance required hereunder may be rendered void or voidable or no longer in force or coverage thereunder shall be limited, without first arranging at its own expense such additional Insurance coverage as shall be necessary to avoid such result, such additional insurance to be in form and substance satisfactory to the Lessor, the Security Trustee and the Insurer Representative.  The Lessee will pay or cause to be paid all additional insurance premiums required on account of the additional risk caused by the use to which any Aircraft is put as aforesaid.

**10.10    Notice from the Lessee**

The Lessee will forthwith notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of any event (including but not limited to an occurrence) which will or may give rise to a claim under the Aircraft Insurances required in Clause 10.2, in excess of an amount in any currency equal to three million Dollars (US$3,000,000) in respect of an Airframe and one million Dollars (US$1,000,000) in respect of an Engine, but nothing in this Clause 10.10 shall prejudice the payment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

provisions of Clause 10.2.  Upon completion of the repairs in respect of a loss in which insurers have paid proceeds towards such repair, the Lessee shall deliver to the Lessor, the Insurer Representative, the Security Trustee and the Agent an engineer's certificate certifying that such repairs have been completed in accordance with the manufacturer's recommended procedures.

**10.11    Certain Undertakings in Respect of the Aircraft Insurances**

(a)    The Lessee shall not and shall procure that no Permitted Sub-Lessee shall:

    (i)    make any modification to the Aircraft Insurances or any Aircraft Reinsurances required hereunder which is materially adverse to the interest of the Lessor, the Insurer Representative, the Security Trustee, any Secured Party or any other Additional Insured;

    (ii)    do, or omit to do, or permit to be done, or left undone anything whereby any required Aircraft Insurance or any Aircraft Reinsurance would or might reasonably be expected to be rendered, in whole or in part, invalid or unenforceable and, without prejudice to the foregoing, not use or keep or permit any Aircraft or any Engine or any Part thereof, to be used or kept for any purpose, in any manner or in any place not covered by required Aircraft Insurances or any Aircraft Reinsurances (except as otherwise expressly permitted herein); and

    (iii)    discriminate against any Aircraft relative to other aircraft of the same or comparable model within the Lessee's or the Permitted Sub-Lessee's fleet as to the coverage of the Aircraft Insurances required under this Clause 10.

(b)    The Lessee shall as soon as practicable, but in no event later than 48 hours, upon receipt of notice of cancellation of the war risks and related perils insurance due to armed hostilities in the area where any Aircraft may then be located or scheduled to operate, remove any Aircraft or cause any Aircraft to be removed to the United Kingdom  (or such other location at which such Aircraft shall remain covered by war risks and related perils insurance) and shall cause such Aircraft to remain in such location until such war risks and related perils insurance is reinstated and compliance herewith shall cure any related Termination Event or  Event of Default under Clause 13(c), provided, however, that the Lessee need not comply with the provisions of this paragraph (b) if to do so would cause the Lessee to breach any other obligation contained herein.

(c)    The Lessee shall be responsible for the payment of any applicable deductibles or costs of any Aircraft Insurances and any Aircraft Reinsurances.

**10.12    Reimbursement**

The Lessee shall reimburse the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative, as the case may be, on demand for the amount of any premiums or premium installments which such party may pay pursuant to this Clause 10 together with interest thereon, for the period from and including the date of such payment by such party to but excluding the date on which the same is paid in full by the Lessee at the applicable Post-Default Rate.

**10.13    Change in Industry Practice; Additional Requirements**

In the event that there is a material change in the generally accepted industry-wide practice with regard to the insurance of aircraft (whether relating to all or any of the types of insurances required to be effected under the foregoing provisions of this Clause 10) such that the insurances required pursuant to the provisions of this Clause 10 are insufficient to protect the interests of the Lessor, the Insurer Representative, the Security Trustee or any of the other Additional Insureds hereunder, the Insurer Representative and the Security Trustee shall, to the extent reasonably practicable, consult

FILED DATE: 1/11/2023 2:57 PM   2023L000001

with the Lessee, and the insurance requirements set forth in this Clause 10 shall be varied at the request of the Insurer Representative or the Security Trustee so as to include such additional or varied requirements as may be reasonably necessary to ensure that the insurances and reinsurances as so varied shall provide comparable protection to that which it would have provided if such change in the generally accepted industry-wide practice had not occurred.

**10.14   Compliance with Legal Requirements**

In addition to the foregoing provisions of this Clause 10 the Lessee shall and shall procure that any Permitted Sub-Lessee shall comply with all legal requirements as to the insurance of any Aircraft or any Engine which may from time to time be imposed by the Applicable Laws of any Aircraft's registration or of any jurisdiction to or from or over which any Aircraft or any Engine shall be flown or in which the same shall be located.

**10.15   Additional Insurance**

The Lessee shall have the right to carry insurance in excess of the amounts required hereunder and additional and separate insurance for its own benefit at its own expense; provided that, no such insurance shall result in a duplicate payment on a loss, or shall impair in any way (whether or not material) the rights of the Lessor, the Insurer Representative, the Security Trustee, and other Secured Party or any other Additional Insured under this Lease and the Operative Documents.  Proceeds of such insurance shall be payable directly to the Lessee.

**10.16   Additional Terms of Insurance**

The Lessee agrees to ensure that the insurance policies in respect of all Insurances referred to in Clauses 10.1 and 10.2 above shall at all times be underwritten in full.

**10.17   Self Insurance**

Except for the deductibles permitted by Clause 10.2 hereof or otherwise permitted by the Lessor, the Security Trustee and the Insurer Representative, the Lessee shall not be permitted to self-insure against any of the risks required to be covered by the insurance described in this Clause 10.

**10.18   Date Recognition Exclusion**

If the Aircraft Insurances are subject to any exclusion relating to date recognition, the Lessee shall obtain write-backs covering such exclusions to the fullest extent available in the international aviation insurance markets and in accordance with good and prudent international aviation insurance practice.

**10.19   Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under this Clause 10 and shall take immediate action to restore any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 11.   ABSOLUTE OBLIGATIONS

(a)   This Lease is a net lease, and it is intended that the Lessee shall pay or cause to be paid all costs, charges, fees (including Eurocontrol fees), assessments, expenses, withholdings and Taxes of every character whether foreseen or unforeseen, ordinary or extraordinary, incurred in connection with or arising out of the use, operation, maintenance, repair, modification, alteration, replacement and leasing of any Aircraft, including the costs, expenses and Taxes and similar levies set forth in the Participation Agreement.  The Lessee's obligation to pay all Rent and to perform all other obligations hereunder is absolute and unconditional and shall not be affected or reduced by any circumstances or for any reason, including:

(i)   any setoff, counterclaim, recoupment, defense or other right which the Lessee may have against the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party, the Manufacturer, the Engine Manufacturer or any Person providing services with respect to any Aircraft, or any other Person, for any reason whatsoever (whether in connection with the transactions contemplated hereby or otherwise), including any breach by the Lessor of its warranties contained herein or in the other Operative Documents;

(ii)   any defect in the title, airworthiness, eligibility of registration under any Applicable Law, condition, design, operation, or fitness for use of, or any damage to or loss or destruction of, any Aircraft or any portion thereof (subject to the provisions of Clause 9 hereof), any interruption or cessation in the use of or possession thereof by or availability to the Lessee for any reason whatsoever, whether arising out of or related to an act or omission of the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, Manufacturer, Engine Manufacturer or any other Person;

(iii)   any Lien with respect to any Aircraft or any portion thereof;

(iv)   the invalidity or unenforceability or lack of due authorization or other infirmity of this Lease or any absence of right, power or authority of any Person to enter into any Operative Document;

(v)   any Taxes;

(vi)   any change, waiver, extension, indulgence or liability or other act or omission in respect of any liability or obligation of the Lessor, the Security Trustee, the Lenders, the Agent or the Insurer Representative or any other Secured Party;

(vii)   any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation, receivership or other like proceeding relating to the Lessee, the Lessor, the Lessor Parent, the Trustee or the Security Trustee or any disaffirmance, rejection or other action taken with respect to this Lease or any other Operative Document by the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party or any other Person, or by any court, in any such proceeding;

(viii)   the Lessee at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of sovereignty or otherwise, which immunity, if any, the Lessee hereby expressly waives;

(ix)   any restrictions applicable to the Lessee on the transfer or conversion of currency; or

(x)   any other circumstances or happening of any nature whatsoever, whether or not similar to any of the foregoing; it being the express intention of the Lessor and the Lessee that all Rent

FILED DATE: 1/11/2023 2:57 PM   2023L000001

payable hereunder shall be payable in all events, unless the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease or the other Operative Documents.

(b)     This Lease shall not, except as expressly set forth herein, be cancellable by the Lessee and, except as expressly set forth elsewhere in this Lease, the Lessee hereby waives any and all rights which it may now have or which at any time hereafter may be conferred upon it, by statute or otherwise, to terminate, abate, cancel, quit, reduce, defer, suspend or surrender this Lease or any Aircraft or any obligation imposed upon the Lessee hereunder or under the other Operative Documents (including payment of Rent), except in accordance with the terms hereof and thereof.

(c)     If for any reason whatsoever this Lease shall be terminated in whole or in part by operation of Applicable Law, except as specifically provided herein, the Lessee, if and to the extent that the Lessee retains the use and possession of any Aircraft, nonetheless agrees to pay to the Lessor an amount equal to each Basic Rent payment and any Supplemental Rent payment in respect of such Aircraft at the time such payments would have become due and payable in accordance with the terms hereof and the other Operative Documents had this Lease not been terminated in whole or in part and so long as such payments are made and all other terms and conditions hereof are complied with by the Lessee, the Lessor and the Lessee will deem this Lease to remain in full force and effect.

(d)     Nothing contained in this Lease shall be construed as a waiver of the Lessee's right to seek any claim against the Lessor, the Security Trustee, any Secured Party or any other Person arising out of the transactions contemplated by the Operative Documents in a separate proceeding or by compulsory counterclaim.

## 12.     ASSIGNMENT

The terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Except as otherwise provided in Clause 7.4, neither party hereto shall, without the prior written consent of the other and except as expressly permitted by the Operative Documents, assign any of its rights or obligations hereunder.

## 13.     LEASE EVENTS OF DEFAULT AND TERMINATION EVENTS

Other than the events referred to in paragraphs (f), (p), (t) or (u) which, if they do not arise as a result of any act or omission of any Lessee Group Member, shall constitute "Termination Events" (but, for the avoidance of doubt,  in all other circumstances shall constitute "Lease Events of Default"), the following events shall constitute "Lease Events of Default" hereunder, (whether any such event shall be voluntary or involuntary or come about or be effective by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, the United States or any other jurisdiction, or the administration or interpretation thereof) and each such Lease Event of Default or Termination Event shall be deemed to exist and continue so long as, but only so long as, it shall not have been remedied:

(a)     the Lessee shall fail to pay when due any amount of Basic Rent or Termination Value on the date such Basic Rent or Termination Value is due, and such failure shall continue unremedied for three (3) Business Days following the due date therefor;

(b)     the Lessee shall fail to pay when due any amount of Supplemental Rent or any other amount due and owing from the Lessee under this Lease (other than as specified in Paragraph (a) above) or any other Operative Document and such failure to pay shall continue for a period of five (5) Business Days after demand has been made on the Lessee;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     the Lessee shall fail to carry and maintain or fails to procure that any Permitted Sub-Lessee carry and maintain Aircraft Insurances (including any required Aircraft Reinsurances) required to be maintained in accordance with the provisions of Clause 10, or the Lessee shall fail to perform or observe any covenant, condition or agreement contained in Clause 7.6(a) or 10.11 hereof or Clause 8(g) of the Participation Agreement;

(d)     any Lessee Obligor shall have failed to perform or observe in any material respect any other covenant or agreement (ie, other than those covered by the preceding paragraph (a), (b) or (c) of this Clause 13) to be performed or observed by it hereunder or under any other Operative Document to which it is a party, and such failure is unremediable, or if remediable and the Lessee is diligently proceeding to remedy such failure, shall continue unremedied for a period of thirty (30) days after the earlier of (i) the Lessee obtaining actual knowledge of such failure or (ii) notice to the Lessee thereof has been given by the Lessor, the Security Trustee or the Insurer Representative;

(e)     any representation or warranty of any Lessee Obligor under any of the Operative Documents or in any document or certificate furnished by the Lessee in connection therewith or pursuant thereto shall be untrue, inaccurate or misleading in any material respect as at the time when made or furnished;

(f)     any license, consent, approval or authorization of, or any filing or registration with, any governmental authority or agency necessary for the performance by a Lessee Obligor of its obligations under this Lease or any other Operative Document or in connection herewith or therewith (including, without limitation, the registration of any Aircraft or the any Mortgage or any Security Agreement) or the Certificate of Airworthiness issued in respect of any Aircraft shall be revoked, not applied for or not issued or shall cease to remain in full force (or, as applicable, is not duly renewed upon the terms consistent with the original approval or otherwise satisfactory to the Security Trustee and the Insurer Representative) or any of the foregoing shall be modified and any such revocation, non-application or issuance or modification would materially adversely affect (in the opinion of the Security Trustee or the Insurer Representative) the rights and remedies of the Lessor hereunder or of any Secured Party under the Operative Documents;

(g)     the Lessee or either Guarantor shall apply for or consent to the appointment of, or the taking of possession by, a receiver, an examiner, a trustee, custodian or liquidator of itself or of a substantial part of its property, or the Lessee or either Guarantor shall admit in writing submitted in connection with judicial or other similar procedures its inability to pay its debts generally as they come due, shall announce a moratorium on payment of its debts or any class of its debts, or shall make a general assignment for the benefit of creditors;

(h)     the Lessee or either Guarantor shall file a voluntary petition or commence a case in bankruptcy or a voluntary petition or an answer seeking reorganization in a proceeding under any bankruptcy or insolvency laws (as now or hereafter in effect) or an answer admitting the material allegations of a petition filed against any the Lessee or either Guarantor in any such proceedings, or the Lessee or either Guarantor shall by voluntary petition, answer or consent to or seek relief under the provisions of any other now existing or future bankruptcy, insolvency, reorganization or other similar law providing for the reorganization or winding-up of corporations, or providing for an agreement, composition, extension or adjustment with its creditors;

(i)     an order, judgment or decree shall be entered in any proceeding by any court of competent jurisdiction appointing, without the consent of such Lessee or either Guarantor, a receiver, trustee, custodian or liquidator of the Lessee or either Guarantor or of any substantial part of its property, or sequestering any substantial part of the property of such Lessee or either

FILED DATE: 1/11/2023 2:57 PM    2023L000001

Guarantor, and any such order, judgment or decree of appointment or sequestration shall remain in force undismissed, unstayed or unvacated for a period of sixty (60) days after the date of entry thereof;

(j)    a petition against the Lessee or either Guarantor in a proceeding under any bankruptcy laws or other insolvency laws as now or hereafter in effect shall be filed in a court of competent jurisdiction and shall not be withdrawn or dismissed within sixty (60) days thereafter, or if, under the provisions of any law providing for reorganization or winding-up of corporations which may apply to the Lessee or either Guarantor any court of competent jurisdiction shall assume jurisdiction, custody or control of the Lessee or of any substantial part of its property or any Aircraft and such jurisdiction, custody or control shall remain in force unrelinquished, unstayed or unterminated for a period of sixty (60) days;

(k)    the Lessee or either Guarantor threatens to suspend making payments or declares a moratorium or seeks a restructuring of its Indebtedness or the Lessee shall fail to pay when due (after giving effect to any applicable grace periods) any principal of or interest or scheduled payments in respect of any of its other Indebtedness (i) aggregating ten million Dollars (US$10,000,000) or more (or the equivalent thereof in any currency) or (ii) in respect of any Other Indebtedness, and the lender(s), the funder(s) or an agent or trustee thereof in respect of such Indebtedness declares or thereby becomes entitled to declare such Indebtedness to be due and payable prior to its scheduled maturity;

(l)    any additional procedure similar to those referred to in subparagraphs (g), (h), (i) and (j) above for the relief of financially distressed debtors under any Applicable Law or any other competent jurisdiction is entered into by the Lessee or either Guarantor voluntarily or involuntarily, and is not withdrawn or dismissed within sixty (60) days thereafter;

(m)    any of the events referred to in subparagraphs (g) to (l) above occurs in relation to any Permitted Sub-Lessee, and:

(i)    the Lessee fails to inform the Lessor, the Security Trustee and the Insurer Representative immediately upon becoming aware of such event; or

(ii)    the Lessee fails to terminate the leasing of the Aircraft pursuant to the relevant Permitted Sub-Lease immediately upon written request from the Lessor, the Security Trustee or the Insurer Representative.

(n)    a final judgment or judgments for the payment of money in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, shall be rendered against the Lessee or either Guarantor and the same shall remain undischarged for a period of sixty (60) days during which execution of such judgment shall not be effectively stayed, or an attachment or attachments or other Lien or Liens in respect of such judgment or judgments shall be issued or entered against any of the property of the Lessee or either Guarantor, for an amount in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, and shall remain undischarged or unbonded for thirty (30) days, except, in each case when such is being contested in good faith by appropriate proceedings that do not involve any substantial risk of the sale, seizure, forfeiture or loss of Collateral or title thereto, interest therein or use thereof;

(o)    the existence, validity, enforceability or priority of the Lessor's rights, title and interests to any Aircraft is challenged by any Lessee Obligor or any other Person claiming through the Lessee or this Lease or any other Operative Document becomes wholly or in part to a material extent invalid, illegal or unenforceable for any reason;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(p)     the validity or enforceability (but not any particular interpretation) of any provision of any Operative Document is contested through appropriate proceedings by the Lessee or any Affiliate thereof or by any Government Body seeking to establish the invalidity or unenforceability thereof;

(q)     the Lessee or any Permitted Sub-Lessee shall:

     (i)     (in the case of a Permitted Sub-Lessee) cease, or announce its intention to cease, to conduct its business as a commercial scheduled airline;

     (ii)    other than in circumstances permitted by Clause 8(g) of the Participation Agreement, assign, lease or otherwise dispose of all or any material part of the assets or property (whether by a single transaction or a number of related or unrelated transactions and whether at the same time or over a period of time) comprising the its aircraft or aircraft related business; or

     (iii)   (in the case of a Permitted Sub-Lessee) cease to hold, whether by virtue of the revocation, suspension or non-renewal thereof or otherwise, any air transport license or its equivalent required to enable the it to carry out its principal business or the franchises, concessions, permits, rights or privileges required for the conduct of the business or operations of it shall be revoked, canceled or otherwise terminated or the free and continued use and exercise thereof curtailed or prevented, and as a result of any of the foregoing the preponderant business activity of it shall cease to be that of a commercial airline;

(r)     there shall have occurred and be continuing any "Event of Default" under and as defined in any Other Operative Document;

(s)     The Lessee breaches its obligations under clause 6 or clause 23 of the Participation Agreement;

(t)     there shall be any change (or such change shall be enacted or made by decree or otherwise and shall be scheduled and become thereafter effective) in the laws, regulations or treaties of the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, (while it is leasing an Aircraft from the Lessee) any Permitted Sub-Lessee, the Cayman Islands, Ireland the United States or any government or political agency, subdivision or instrumentality thereof which materially adversely affects the validity, legality or perfection of the Lessor's title to any Aircraft, or any Secured Party's rights in any Aircraft under any Security Document, or which materially adversely affects the Lessor's or any Secured Party's interests under this Lease or materially adversely affects the Lessee's ability to perform or comply with its obligations under this Lease or the legality of such performance or compliance;

(u)     any Government Body shall have condemned, seized or appropriated all or any substantial part of the property of the Lessee or either Guarantor which is likely materially and adversely to affect the ability of such the Lessee or either Guarantor to perform its obligations under the Operative Documents; and/or

(v)     any other event occurs (other than an Event of Loss) or any other circumstance arises which is likely materially and adversely to affect the ability or legal obligation of the Lessee to perform its obligations under any Operative Document to which it is a party.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 14.   REMEDIES

(a)   Upon the occurrence of any Event of Default or a Termination Event and at any time thereafter so long as the same shall be continuing, the Lessor may (without prejudice to any other rights of the Secured Parties under this Lease or the other Operative Documents), at its option, (in the case of any Event of Default) accept such repudiation and by notice to the Lessee declare this Lease to be in default or a Termination Event to have occurred and (in each case) by notice to the Lessee may, at its option, terminate any commitment of the Lessor to lease any Aircraft for which the relevant Delivery Date has not yet occurred (provided, that upon the occurrence of any Event of Default described in Clause 13(g)-(l), this Lease shall automatically be deemed in default and the Lessor's commitment shall automatically terminate); and at any time after this Lease shall be declared or deemed to be declared to be in default or a Termination Event to have occurred under this Clause 14, the Lessor may, so long as the Lessee shall not have remedied all outstanding Events of Default or Termination Events, exercise one or more of the following remedies with respect to all or any part of any Aircraft as the Lessor in its sole discretion shall elect:

   (i)   the Lessor may demand that the Lessee pay the Lessor, and the Lessee shall pay to the Lessor, all Basic Rent (for all Aircraft) that has accrued but remains unpaid, together with the then applicable Termination Value for such Aircraft, computed on the date of final payment in full thereof, all Supplemental Rent then due and payable by the Lessee hereunder and all amounts then due and payable by the Lessee to the Lessor or any Secured Party under all other Operative Documents, and upon the indefeasible payment of such amount and all Supplemental Rent then due and payable by the Lessee hereunder, the Term for such Aircraft shall terminate;

   (ii)   the Lessor shall be entitled in addition to making any demand referred to in paragraph (a) above:

      (A)   to cause the Lessee upon demand of the Lessor (provided that such demand shall be deemed to have been given if the Lessor is stayed by operation of law from making such demand) and at the Lessee's expense, to return promptly, and the Lessee shall return promptly, all or such part of any Aircraft, and the Manuals and Technical Records relating thereto, as the Lessor may so demand, to the Lessor in the manner and condition required by, and otherwise in accordance with all the provisions of, Clause 5 as if such Aircraft was being returned at the end of the Term for such Aircraft, or if the Lessee does not so deliver such Aircraft or the Manuals and Technical Records relating thereto, the Lessor, at its option, may enter upon the premises where all or any part of such Aircraft and the Manuals and Technical Records relating thereto are located and take immediate possession of and remove the same (together with any engine or part which is not an Engine or Part associated with such Aircraft but which is installed on the relevant Airframe or stored with or attached to any relevant Engine, subject to all of the rights of the owner, lessor, lienor or secured party of such engine or part) by summary proceedings or otherwise all without liability accruing to the Lessor for or by reason of such entry or taking of possession, whether for restoration of damage to property caused by such taking or otherwise, provided that all actions of the Lessor in this respect are reasonable and necessary, and the Lessor may institute proceedings to repossess such Aircraft in any jurisdiction where such Aircraft may be located, and provided further that if at any time after the Lessor has exercised its rights under this paragraph (A), the Lessee shall make the payments referred to in paragraph (a) above, the Term for such Aircraft shall terminate;

      (B)   following repossession of an Aircraft pursuant to Clause 14(b)(i), to sell such Aircraft at public or private sale, as the Lessor may determine; provided that the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessor shall apply the proceeds of any sale in the manner set forth in the Intercreditor Deed, and the Lessor agrees to give the Lessee at least ten (10) Business Days' prior notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article 8(4) of the Convention) of the date fixed for any public sale of such Aircraft or of the date on or after which will occur the execution of any contract providing for any private sale thereof, and any such sale shall be conducted so as to afford the Lessee a reasonable opportunity to bid; and

(C)     the Lessor may exercise any other right or remedy which may be available to it as a secured party under Applicable Law or under the Cape Town Convention, including, without limitation, all rights and remedies under Chapter III of the Convention and Chapter II of the Protocol.  the Lessor hereby agrees to give the Lessee at least fifteen (15) days' notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article IX(6) of the Protocol as set forth in Article IX(6) of the Protocol in connection with a proposal to procure the de-registration and export of an Aircraft without a court order.  the Lessee expressly agrees to permit the Lessor to obtain from any applicable court, pending final determination of any claim resulting from an Event of Default or Termination Event hereunder, speedy relief in the form of any of the orders specified in Article 13 of the Convention and Article X of the Protocol as the Lessor shall determine in its sole and absolute discretion, subject to any procedural requirements prescribed by Applicable Laws.

(b)     In addition, the Lessee shall be liable, except as otherwise provided above, for any and all unpaid Supplemental Rent due hereunder before, after or during the exercise of any of the foregoing remedies and for all legal fees and other costs and expenses actually incurred by the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative by reason of the occurrence of any Event of Default or Termination Event or the exercise of the Lessor's remedies with respect thereto, including (i) all costs and expenses incurred in connection with the return of the relevant Aircraft in accordance with the terms of Clause 5 or in placing the relevant Aircraft in the condition and airworthiness required by such Clause and (ii) any other costs and expenses that the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative may incur in connection with the retaking, holding, storage, export, deregistration and preparing for sale of the relevant Aircraft and other like action or that the Lessee has agreed to assume in any other Operative Document or pursuant to Applicable Law.  Except as otherwise expressly provided above, no remedy referred to in this Clause 14 is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above; and the exercise or beginning of exercise by the Lessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by the Lessor of any or all of such other remedies.  No express or implied waiver by the Lessor of, and no course of dealing by it with respect to, any Event of Default or Termination Event shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default or Termination Event.

(c)     The Lessee hereby consents to the exercise by the Lessor of the remedies granted herein and in the Cape Town Convention.  The Lessee acknowledges and agrees that the Lessor may exercise such of the foregoing remedies as it shall determine in its sole discretion and none of the foregoing remedies is manifestly unreasonable.  To the extent permitted by Applicable Law, the Lessee and the Lessor hereby agree that paragraph 2 of Article 13 of the Convention shall not apply to this Lease or to the exercise of any remedy by the Lessor under this Lease or the Cape Town Convention.  Following the occurrence of an Event of Default or Termination Event, the Lessee agrees to immediately discharge, upon demand by the Lessor or the Security Trustee, any registration made with the International Registry in favour of the Lessee.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 15.    FURTHER ASSURANCES; INVESTMENT OF SECURITY FUNDS

### 15.1    Further Assurances

(a)    The Lessee and the Lessor shall from time to time, at the cost and expense of the Lessee, do and perform such other and further acts and duly execute and deliver such further documents and assurances as may be required by Applicable Laws or requested by the other party to establish, maintain and protect the respective rights and remedies of the other party and to carry out and effect the intent and purpose of this Lease including, if requested by the Lessor, the Security Trustee, the Agent  or the Insurer Representative and at the expense of the Lessee:

(i)    the execution and delivery of supplements hereto or to the other Operative Documents, in recordable form, subjecting to this Lease or to the other Operative Documents, any replacement or substitute airframe or engine;

(ii)    the recording or filing of counterparts hereto or thereto, in accordance with the laws of such jurisdictions in which any Aircraft is based as the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee; and

(iii)    the registration of any interest, assignment or subordination with the International Registry to preserve, protect, perfect or establish priority in respect of any Aircraft Object or Associated Right covered by or related to this Lease, the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee.

(b)    The Lessee shall be solely responsible for obtaining all required consents and approvals of, giving all required notices to, performing all required registrations and filings for recordation with, and taking all other necessary actions in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, any Guarantor the jurisdiction of incorporation or formation of the Lessor, England and Wales and/or the United States of America including any governmental or political agency, subdivision or instrumentality thereof.

(c)    Without limiting the foregoing, the Lessee shall cause this Lease, and any and all additional instruments which shall be executed pursuant to the terms hereof, to be kept, filed, deposited or recorded, at all times, in the International Registry and in such places in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, the jurisdiction of incorporation or formation of the Lessor, the United States of America, England and Wales and such other jurisdictions in which any Aircraft is based as the Lessor, the Security Trustee, the Agent, any Lender or the Insurer Representative may reasonably request in order to perfect and preserve the rights of the Lessor, the Security Trustee, the Agent, the Lenders, the Insurer Representative or the other Secured Parties hereunder, and furnish to the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee an opinion or opinions of counsel or other evidence satisfactory to the Lessor, the Insurer Representative and the Security Trustee of each such filing, deposit or recordation and, without limitation of any of the foregoing, at the reasonable request of the Lessor, the Insurer Representative, the Agent, any lender or the Security Trustee, promptly correct any defect, error or omission which may at any time hereafter be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof and, at the request of the Lessee, the Lessor shall promptly correct any defect, error or omission which may at any time be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof. Without limiting any of the foregoing, the Lessee will co-operate fully with the Lessor, the Security Trustee, the Agent, the Lenders and the Insurer Representative for obtaining the deregistration of any Aircraft and any required export licenses, when requested by the Security Trustee upon any return of any Aircraft required hereunder.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**15.2    Security Funds**

(a)    Notwithstanding anything in this Lease to the contrary, if a Material Default or Event of Default or Termination Event  under this Lease shall have occurred and be continuing or if the Lessor (or the Security Trustee, as the Lessor's assignee) is holding funds pending replacement of any Airframe and/or Engines pursuant to Clause 9, all amounts otherwise payable to the Lessee hereunder shall be paid to the Lessor and shall be held by the Lessor (or, if either Security Agreement shall not have been discharged, shall be paid to and held by the Security Trustee) as security for the obligations of the Lessee under this Lease, and, at such time as there shall not be continuing such Material Default, Termination Event or Event of Default or such replacement is complete, such amounts, net of any amounts theretofore properly applied to the Lessee's obligations hereunder, shall be paid to the Lessee or as the Lessee may direct.

(b)    All funds held by the Security Trustee hereunder shall be held as Collateral under the Lessee Security Agreement to secure, inter alia, the repayment of the Loans and the other amounts expressed to be secured thereunder and applied as provided therein.

**16.    NOTICES**

All notices, consents and other communications hereunder shall be given in accordance with clause 13(c) of the Participation Agreement.

**17.    MISCELLANEOUS; GOVERNING LAW**

(a)    Any provision of this Lease that is prohibited or unenforceable in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and shall not invalidate or render unenforceable the other provisions hereof in any jurisdiction.  To the extent permitted by Applicable Law, the Lessee hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.  No term or provision of this Lease may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought and only as permitted by the Operative Documents.  The Clause and paragraph headings in this Lease and the table of contents are for convenience of reference only and shall not modify, define, expand or limit any of the terms or provisions hereof.

(b)    This Lease and any non-contractual obligations arising out of or in connection with it are governed by English law.

(c)    The provisions of clause 13(d) of the Participation Agreement, in so far as they relate to any dispute between the Lessor and the Lessee, shall apply hereto as if set out in this Agreement, *mutatis mutandis*.

(d)    To the extent that the Lessee may be or hereafter become entitled, in any jurisdiction in which judicial proceedings may at any time be commenced with respect to this Lease, to claim for itself or its property, assets or revenues immunity (whether by reason of sovereignty or otherwise) from suit, jurisdiction of any court, attachment prior to judgment, attachment in aid of execution of a judgment, set-off, execution of judgment or from any other legal process, and to the extent that in any such jurisdiction there may be attributed any such immunity (whether or not claimed), the Lessee hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity.

(e)    The payment obligations of the Lessee payable under this Lease and any other Operative Document (the **payor**) expressed to be payable thereunder in one currency (the **first currency**) shall not be discharged by an amount paid in another currency (the **second currency**), whether pursuant to a judgment or otherwise, to the extent that the amount so paid on prompt conversion to the first

FILED DATE: 1/11/2023 2:57 PM   2023L000001

currency under normal banking procedures does not yield the full amount of the first currency due thereunder, and the payor shall indemnify the recipient of such payment (the **payee**) against any such shortfall; and in the event that any payment by the payor, whether pursuant to a judgment or otherwise, upon conversion and transfer does not result in payment of such amount of the first currency, the payee shall have a separate cause of action against the payor for the additional amount necessary to yield the amount due and owing to the payee.

(f)     If it is necessary to determine for any reason other than that referred to in Clause 17(e) above the equivalent in the first currency of a sum denominated in the second currency, the rate of exchange used shall be that at which in accordance with normal banking procedures the Security Trustee could purchase the first currency with the second currency on the Business Day on which such determination is to be made (or, if such day is not a Business Day, on the next preceding Business Day).

(g)     This Lease may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Lease.

(h)     Except to the extent expressly provided herein, any terms of this Lease which expressly incorporate any provisions of the Cape Town Convention shall prevail in the case of any conflict with any other provision contained herein.  Each of the parties hereto acknowledges and agrees that for purposes of the Cape Town Convention (to the extent applicable hereto), separate rights may exist with respect to each Airframe and Engine.

## 18.     SECURITY FOR THE LESSOR'S OBLIGATION

(a)     In order to secure the repayment, inter alia, of the Secured Obligations, the Lessor has agreed in the Lessor Security Agreement, among other things, to assign to the Security Trustee its right, title and interest in and to this Lease, including all Associated Rights related thereto, subject to the reservations and conditions therein set forth.  The Lessee hereby consents to such assignment and acknowledges receipt of a copy of the Security Agreement it being understood that such consent shall not affect any requirement or the absence of any requirement for any consent under any other circumstances.

(b)     Until the Lien of the Lessor Security Agreement has been released:

    (i)     the Lessee shall, notwithstanding anything herein to the contrary, make all payments of Rent and all other amounts payable hereunder in accordance with clause 13 of the Participation Agreement and such payments shall not be subject to any defence, counterclaim, set-off or other right or claim of any kind which the Lessee may be able to assert against the Lessor or any other Person in an action brought by any thereof on this Lease;

    (ii)     all rights of the Lessor with respect to this Lease (including all consent, waiver and notice rights), any Aircraft, any Airframe, any Engine or any Part thereof, to the extent set forth in and subject in each case to the exceptions set forth in the Lessor Security Agreement, shall be exercisable by the Security Trustee (to the exclusion of the Lessor); and

    (iii)     all documents, notices, certificates and opinions of counsel sent by the Lessee to the Lessor shall also be sent to the Security Trustee.

## 19.     LESSOR'S RIGHT TO PERFORM FOR LESSEE

If the Lessee fails to make any payment of Rent required to be made by it hereunder or fails to perform or comply with any of its agreements contained herein, the Lessor or the Security Trustee may (but shall be under no obligation to) itself make such payment or perform or comply with such

FILED DATE: 1/11/2023 2:57 PM   2023L000001

agreement, and the amount of such payment and the amount of the reasonable expenses of the Lessor or the Security Trustee incurred in connection with such payment or the performance of or compliance with such agreement, as the case may be, shall be deemed Supplemental Rent, payable by the Lessee upon demand together with interest thereon at the applicable Post-Default Rate.

**20.   ENGLISH LANGUAGE PREVAILS**

For the avoidance of doubt, the Lessor and the Lessee agree any translation of this Lease shall not apply in construing this Lease and that the English version of this Lease shall govern for all purposes.

**21.   COMPLETE AGREEMENT**

Except for the other Operative Documents, this Lease contains the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior written or oral communications or agreements with respect thereto.

**22.   LIMITATION OF LIABILITY OF THE LESSOR**

The Lessee acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Lease is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Master Lease Agreement to be duly executed by their respective duly authorized officers on the date first above written.

**SCHEDULE 1**

**FORM OF ACCEPTANCE CERTIFICATE**

Stogofjorden Limited (the **Lessee**) at [●] on this [●] day of [●] (the **Delivery Date**), has accepted delivery from AAA Max 2 Limited (the **Lessor**) of the following described aircraft (the **Aircraft**) pursuant to and in accordance with the terms of that certain Master Lease Agreement (the **Lease**) dated [●] between the Lessor and the Lessee:

One (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number [●] and registration mark [●] together with two (2) installed CFM model LEAP-1B27 engines bearing manufacturer's serial numbers [●] and [●], all parts, appliances, components, instruments, accessories, accessions, attachments, avionics (including, without limitation, radio, radar, navigation systems and other electronic equipment), other equipment (including, without limitation, all buyer-designated equipment and all buyer-furnished equipment) and components of whatever nature incorporated or installed in or attached to the Aircraft or such Engines, and all Manuals and Technical Records pertaining to the Aircraft and Engines.

The Lessee further certifies (a) that it has irrevocably accepted the above-described Aircraft for all purposes hereof and of the Lease as being airworthy, in good working order and repair without defect or inherent vice in title, condition, design, operation or fitness for use, and (b) that the Aircraft conforms in all respects with all of the requirements of the Lease.

Capitalized terms used in this Acceptance Certificate not otherwise defined herein shall have the meaning assigned thereto in the Lease.

**IN WITNESS THEREOF**, the Lessee has caused this Acceptance Certificate to be executed in its name by its duly authorized representative on this [●] day of [●].

STOGOFJORDEN LIMITED

By: _____
Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 2

## FORM OF LEASE SUPPLEMENT

### LEASE SUPPLEMENT NO. [  ]

THIS LEASE SUPPLEMENT NO. [●] dated [●] (this **Lease Supplement**) is between AAA Max 2 Limited**,** an exempted company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Stogofjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

### WITNESSETH:

**WHEREAS**:

(1) the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated [●] relating to 737 - 8 Boeing model [●] aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2) the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1. The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

    (a) one (1) Boeing model 737 - 8  airframe bearing manufacturer's serial number [●] and registration mark [●]; and

    (b) two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers [●] and [●], respectively.

2. The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3. The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4. The parties confirm that the Purchase Price for the Delivered Aircraft is US$[●] and the Initial Rent for the Delivered Aircraft is US$[●].

5. All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6. The [revised] "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7. This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 2 LIMITED

By: _____
     Name:
     Title:

STOGOFJORDEN LIMITED

By: _____
     Name:
     Title:

Receipt of the counterpart of the foregoing Lease Supplement No. [●] is hereby acknowledged on this [●] day of [●].

[●], as Security Trustee

By: _____
     Name:
     Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

| Basic Rent Payment Date | Principal Instalment | Interest Instalment |
| --- | --- | --- |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 3**

**FORM OF EUROCONTROL LETTER**

From:   **NORWEGIAN AIR INTERNATIONAL LIMITED**

To:     The Director of the Central Route Charges Office
        European Organisation for the Safety of Air Navigation (EUROCONTROL)
        Rue de La Fusée, 96
        B-1130 Brussels
        Belgium

[     ] 2018

Dear Sirs

**Authorisation Letter**

**AIR NAVIGATION CHARGES: ONE (1) BOEING 737 - 8 AIRCRAFT BEARING MANUFACTURER'S SERIAL NUMBER [●] AND REGISTRATION MARK [●] (THE AIRCRAFT)**

We have subleased the Aircraft from Stogofjorden Limited (the **Sublessor**) in accordance with a sublease agreement dated [  ] 2018 between us and the Sublessor.

We hereby authorise you to provide the Sublessor (hereby represented by [SECURITY TRUSTEE]) with a general statement of account in relation to air navigation charges incurred by us and due to EUROCONTROL.   Access to the statement(s) of account will be provided in accordance with the procedures established by EUROCONTROL.

The authorisation contained in this letter may only be revoked or amended by a written instruction signed by us and the Sublessor.

Yours faithfully

For and on behalf of
**NORWEGIAN AIR INTERNATIONAL LIMITED**

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 4

## FORM OF EU ETS AUTHORITY LETTER

From:   **NORWEGIAN AIR INTERNATIONAL LIMITED**

To:     All governmental entities in the European Union charged with administering any EU ETS (as defined below) applicable to us and the Aircraft

[●]

Dear Sirs

**Emissions Trading Schemes**

1       Pursuant to the terms of the aircraft lease agreement dated [●] 2018 (the **Lease**) between AAA Max 2 Limited (the **Lessor**) and Stogofjorden Limited (the **Lessee**) and the aircraft sub-lease agreement dated [●] 2018 (the **Sub-Lease**) between the Lessee and ourselves, we have agreed to sub-lease one (1) Boeing 737 - 8 aircraft with manufacturer's serial number [●] and registration mark [●].

2       We wish to enable each of the Lessor, [●] (the Insurer Representative) and [●] the (Security Trustee) to monitor the performance by us of our obligations under the Emissions Trading Schemes (**EU ETS**).

3       We hereby unconditionally authorise you, on request by the Lessor, the Security Trustee or the Insurer Representative from time to time, to provide the Lessor the Security Trustee or the Insurer Representative with particulars of any obligations due from but unperformed by us under the EU ETS.

4       The authorisation contained herein shall only be revoked or amended upon receipt by you of a written instruction signed by ourselves, the Lessor and the Agent requesting such revocation.

Yours faithfully

………………………………………………
For and on behalf of
**NORWEGIAN AIR INTERNATIONAL LIMITED**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATORIES

**LESSOR**

**AAA MAX 2 LIMITED**

By: _____

Name:
Title: **Connie Bigord
         Director**

**LESSEE**

**STOGOFJORDEN LIMITED**

By: _____

Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATORIES

**LESSOR**

**AAA MAX 2 LIMITED**

By:  _____
     Name:
     Title:

**LESSEE**

**STOGOFJORDEN LIMITED**

By:  _____

Name:   MARIA SINEAD O'BRIEN
Title:   DIRECTOR

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-2

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## LEASE SUPPLEMENT NO. 1

THIS LEASE SUPPLEMENT NO. 1 dated __16__ May 2018 (this **Lease Supplement**) is between AAA Max 2 Limited**,** an exempted company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Stogofjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)    the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated 14 May 2018 relating to 737 - 8 Boeing model aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)    the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.    The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

    (a)    one (1) Boeing model 737 - 8  airframe bearing manufacturer's serial number 42831 and registration mark EI-FYG; and

    (b)    two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers 602391 and 602406, respectively.

2.    The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.    The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.    The parties confirm that the Purchase Price for the Delivered Aircraft is US$48,451,035.00 and the Initial Rent for the Delivered Aircraft is US$7,267,655.25.

5.    All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.    The Principal Instalment and Interest Instalment in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.    This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

8.    This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 2 LIMITED

By: _____

     Name: Gennie Bigord
     Title: Director

STOGOFJORDEN LIMITED

By: _____

     Name:
     Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 1 is hereby acknowledged on this ___ day of May 2018.

BANK OF UTAH, as Security Trustee

By: _____

     Name:
     Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 2 LIMITED

By: _____
      Name:
      Title:

STOGOFJORDEN LIMITED

By: _____
      Name:               Tore Jenssen
      Title:            Attorney-In-Fact

Receipt of the counterpart of the foregoing Lease Supplement No. 1 is hereby acknowledged on this ___ day of May 2018.

BANK OF UTAH, as Security Trustee

By: _____
      Name:
      Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 2 LIMITED

By: _____
   Name:
   Title:

STOGOFJORDEN LIMITED

By: _____
   Name:
   Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 1 is hereby acknowledged on this __16__ day of May 2018.

BANK OF UTAH, as Security Trustee

By: _____
   Name:   John Thomas
   Title:   Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# SCHEDULE I TO LEASE SUPPLEMENT

| Loan Payment Date | Principal Instalment € | Interest Instalment € | Principal Outstanding € |
|---|---|---|---|
| 16/05/2018 | - | - | €   36,884,488.33 |
| 16/08/2018 | €   768,426.84 | €   127,608.80 | €   36,116,061.49 |
| 16/11/2018 | €   768,426.84 | €   124,950.29 | €   35,347,634.65 |
| 16/02/2019 | €   768,426.84 | €   122,291.77 | €   34,579,207.81 |
| 16/05/2019 | €   768,426.84 | €   119,633.25 | €   33,810,780.97 |
| 16/08/2019 | €   768,426.84 | €   116,974.74 | €   33,042,354.13 |
| 16/11/2019 | €   768,426.84 | €   114,316.22 | €   32,273,927.29 |
| 16/02/2020 | €   768,426.84 | €   111,657.70 | €   31,505,500.45 |
| 16/05/2020 | €   768,426.84 | €   108,999.19 | €   30,737,073.61 |
| 16/08/2020 | €   768,426.84 | €   106,340.67 | €   29,968,646.77 |
| 16/11/2020 | €   768,426.84 | €   103,682.15 | €   29,200,219.93 |
| 16/02/2021 | €   768,426.84 | €   101,023.64 | €   28,431,793.09 |
| 16/05/2021 | €   768,426.84 | €   98,365.12 | €   27,663,366.25 |
| 16/08/2021 | €   768,426.84 | €   95,706.60 | €   26,894,939.41 |
| 16/11/2021 | €   768,426.84 | €   93,048.09 | €   26,126,512.57 |
| 16/02/2022 | €   768,426.84 | €   90,389.57 | €   25,358,085.73 |
| 16/05/2022 | €   768,426.84 | €   87,731.05 | €   24,589,658.89 |
| 16/08/2022 | €   768,426.84 | €   85,072.54 | €   23,821,232.05 |
| 16/11/2022 | €   768,426.84 | €   82,414.02 | €   23,052,805.21 |
| 16/02/2023 | €   768,426.84 | €   79,755.50 | €   22,284,378.37 |
| 16/05/2023 | €   768,426.84 | €   77,096.99 | €   21,515,951.53 |
| 16/08/2023 | €   768,426.84 | €   74,438.47 | €   20,747,524.69 |
| 16/11/2023 | €   768,426.84 | €   71,779.95 | €   19,979,097.85 |
| 16/02/2024 | €   768,426.84 | €   69,121.44 | €   19,210,671.01 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

| 16/05/2024 | € 768,426.84 | € 66,462.92 | € 18,442,244.17 |
|---|---|---|---|
| 16/08/2024 | € 768,426.84 | € 63,804.40 | € 17,673,817.33 |
| 16/11/2024 | € 768,426.84 | € 61,145.88 | € 16,905,390.49 |
| 16/02/2025 | € 768,426.84 | € 58,487.37 | € 16,136,963.65 |
| 16/05/2025 | € 768,426.84 | € 55,828.85 | € 15,368,536.81 |
| 16/08/2025 | € 768,426.84 | € 53,170.33 | € 14,600,109.97 |
| 16/11/2025 | € 768,426.84 | € 50,511.82 | € 13,831,683.13 |
| 16/02/2026 | € 768,426.84 | € 47,853.30 | € 13,063,256.29 |
| 16/05/2026 | € 768,426.84 | € 45,194.78 | € 12,294,829.45 |
| 16/08/2026 | € 768,426.84 | € 42,536.27 | € 11,526,402.61 |
| 16/11/2026 | € 768,426.84 | € 39,877.75 | € 10,757,975.77 |
| 16/02/2027 | € 768,426.84 | € 37,219.23 | € 9,989,548.93 |
| 16/05/2027 | € 768,426.84 | € 34,560.72 | € 9,221,122.09 |
| 16/08/2027 | € 768,426.84 | € 31,902.20 | € 8,452,695.25 |
| 16/11/2027 | € 768,426.84 | € 29,243.68 | € 7,684,268.41 |
| 16/02/2028 | € 768,426.84 | € 26,585.17 | € 6,915,841.57 |
| 16/05/2028 | € 768,426.84 | € 23,926.65 | € 6,147,414.73 |
| 16/08/2028 | € 768,426.84 | € 21,268.13 | € 5,378,987.89 |
| 16/11/2028 | € 768,426.84 | € 18,609.62 | € 4,610,561.05 |
| 16/02/2029 | € 768,426.84 | € 15,951.10 | € 3,842,134.21 |
| 16/05/2029 | € 768,426.84 | € 13,292.58 | € 3,073,707.37 |
| 16/08/2029 | € 768,426.84 | € 10,634.07 | € 2,305,280.53 |
| 16/11/2029 | € 768,426.84 | € 7,975.55 | € 1,536,853.69 |
| 16/02/2030 | € 768,426.84 | € 5,317.03 | € 768,426.85 |
| 16/05/2030 | € 768,426.85 | € 2,658.52 | € 0.00 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-3

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# PURCHASE AGREEMENT ASSIGNMENT

Dated as of _____16 May_____ 2018

**ARCTIC AVIATION ASSETS DAC**
**as Assignor**

**and**

**NORWEGIAN AIR SHUTTLE ASA**
**as Assignor**

**STOGOFJORDEN LIMITED**
**as Lessee**

**NORWEGIAN AIR INTERNATIONAL LIMITED**
**as Sub-Lessee**

**BANK OF UTAH**

**as Security Trustee**

**and**

**AAA MAX 2 LIMITED**
**as Lessor**

two (2) Boeing model 737 - 8 aircraft

ALLEN & OVERY

Allen & Overy LLP

0121556-0000001 BK:44255451.5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS PURCHASE AGREEMENT ASSIGNMENT** dated _____16 May_____ 2018 (this **Assignment**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**), **NORWEGIAN AIR SHUTTLE ASA**, a company organized under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 2 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **STOGOFJORDEN LIMITED**, a private company limited by shares incorporated under the laws of Ireland (the **Lessee**), **BANK OF UTAH**, as security trustee (in such capacity, together with its successors and permitted assigns, the **Security Trustee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a private company limited by shares duly incorporated under the laws of Ireland (**Sub-Lessee**).

### W I T N E S S E T H :

**WHEREAS**, Norwegian and The Boeing Company (the **Manufacturer**) entered into that certain purchase agreement number 03754, dated 24 January 2012, and that certain Aircraft General Terms Agreement AGTA-NSB, dated 29 August 2007 (the **AGTA**), which is incorporated by reference in that purchase agreement, providing for, inter alia, the sale by the Manufacturer of each Aircraft.

**WHEREAS**, Norwegian assigned and transferred to Arctic its rights and obligations under the Purchase Agreement to purchase the Aircraft in accordance with the Assignment, Assumption and Release Agreement dated 27 November 2014 (the **AARA**).

**WHEREAS**, the benefit of the warranty provisions in the Purchase Agreement were excluded from the rights of Norwegian that were assigned and transferred by it to Arctic under the AARA.

**WHEREAS**, the Lessor wishes to acquire certain rights and interests under the Purchase Agreement and each Assignor, on the terms and conditions set forth herein, is willing to assign to the Lessor certain of its rights and interests under the Purchase Agreement, and the Lessor is willing to accept such assignment; and

**WHEREAS**, the Manufacturer is willing to execute and deliver to the Lessor on each Delivery Date a consent and agreement (the **Consent and Agreement**) to the provisions hereof in substantially the form of Schedule 1 hereto in respect of the relevant Aircraft.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and of other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1.      For all purposes of this Assignment, unless the context otherwise requires, the following terms shall have the following respective meanings:

**Agent** shall mean Apple Bank for Savings, as agent for the Lenders.

**Aircraft** shall mean any of the two (2) Boeing model 737 - 8 airframes described in Schedule 2 hereto (each, an **Airframe**), as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, together, in the case of either Airframe, with two CFM model LEAP-1B27 engines, each as more particularly described in Schedule 2, as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, installed on such Airframe and each other engine described in any Purchase Assignment Supplement hereto (collectively, the **Engines**), together with the equipment, components and accessories installed on such Aircraft (other than buyer furnished equipment that has not been converted to seller purchased equipment pursuant to the Purchase Agreement) pursuant to the Purchase Agreement, and together with all technical records, manuals and data with respect thereto provided in relation to such Aircraft pursuant to the Purchase Agreement (collectively, the **Manuals and Technical Records**).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Delivery** shall mean, with respect to an Aircraft, the time when the Sub-Lessee (as designee of the Lessee), as the authorized representative of the Lessor, shall accept delivery of such Aircraft under the Purchase Agreement (as evidenced by delivery to the Lessor from the Manufacturer of the bill of sale in respect of such Aircraft referred to in the Purchase Agreement).

**Delivery Date** shall mean, with respect to an Aircraft, the date on which the Delivery of such Aircraft occurs.

**Engine Manufacturer** shall mean CFM International S.A., a French company, and its successors and permitted assigns.

**Insurer Representative** shall mean Allianz Global Corporate & Speciality SE, U.K. Branch, as Insurer Representative.

**Lease** shall mean, in respect of each Aircraft, the Master Lease Agreement dated on or about the date hereof as supplemented by the lease supplement dated on or prior to the Delivery Date for such Aircraft, substantially in the form of Exhibit I to the Master Lease Agreement, in each case between the Lessor, as lessor, and the Lessee, as lessee, providing for the lease of such Aircraft, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Lease Event of Default** shall have the meaning given to such term in the Lease.

**Lessor Security Assignment** shall mean, in respect of each Aircraft, the security agreement relating to that Aircraft dated on or prior to the Delivery Date for such Aircraft between the Lessor and the Security Trustee, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Loan Agreement** shall mean the loan agreement, dated 14 May 2018, among the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Lenders identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Loan Event of Default** shall mean shall have the meaning given to such term in the Loan Agreement.

**Participation Agreement** shall mean the Participation Agreement dated 14 May 2018 among inter alios the Assignors, the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Lenders identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Purchase Agreement** shall mean the purchase agreement no. PA-03754 dated 24 January 2012 originally made between Norwegian and the Manufacturer, as partially assigned to and assumed by Arctic pursuant to the AARA,   and as further amended and supplemented from time to time thereafter, providing for, inter alia, the purchase by Arctic from the Manufacturer of each Aircraft, as more particularly described therein, which incorporates by reference the terms and conditions of the Aircraft General Terms Agreement (AGTA-NSB) dated 29 August 2007 between Norwegian and the Manufacturer (the **AGTA**).

**Purchase Assignment Supplement** shall mean in respect of each Aircraft, the purchase assignment supplement relating to such Aircraft entered into between the Assignors, the Lessee, the Sub-Lessee and the Lessor and consented to by the Manufacturer, substantially in the form of Schedule 3 hereto.

**Purchase Price** shall mean, with respect to an Aircraft, the amount in United States Dollars (U.S.$) in respect of the purchase of such Aircraft as shall be notified by Arctic to the Lessor at least five (5) Business Days prior to the Delivery Date for such Aircraft upon agreement with the Manufacturer

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and pursuant to the terms of the Purchase Agreement; provided that the Lessor's maximum liability under this Assignment in respect of the Purchase Price for such Aircraft shall not exceed the amount set forth in the Purchase Assignment Supplement; provided, further, that in the event that such amount changes after such notification but prior to the relevant Delivery Date, the parties agree that such amount shall be appropriately adjusted.

**Security Trustee** shall mean Bank of Utah, as Security Trustee.

**Sub-Lease** shall mean, with respect to an Aircraft, the aircraft operating lease agreement entered into or to be entered into on or about the Delivery Date of such Aircraft between the Lessee as lessor and the Sub-Lessee as lessee.

**Sub-Lease Event of Default** shall have the meaning given to the term "Termination Event" in the Sub-Lease.

**Transaction Parties** means the Lessor, the Lessee and the Sub-Lessee and **Transaction Party** shall mean any one of them.

**Warranties** means the warranties in respect of the Airframe given by the Manufacturer pursuant to Exhibit C (Product Assurance Document) of the Aircraft General Terms Agreement (which forms part of the Purchase Agreement) as attached hereto as Schedule 4 (The Warranties), including all post-delivery-rights in respect thereof.

All other capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Assignment and this Assignment shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

2.   As of the date of delivery of a Purchase Assignment Supplement from the Assignors to the Lessor (with copies to the Manufacturer and the Security Trustee) with respect to an Aircraft, each Assignor shall, with effect from such date, thereby sell, assign, transfer and set over unto the Lessor, its successors and permitted assigns, all of such Assignor's rights and interests in and to the Purchase Agreement as and to the extent they relate to the purchase of such Aircraft and the operation thereof, except as and to the extent expressly reserved below, including in such assignment:

   (a)   the right upon valid tender by the Manufacturer to purchase such Aircraft pursuant to the Purchase Agreement subject to the terms and conditions thereof and the right to take title to such Aircraft and to be named the Buyer in the bill of sale to be delivered by the Manufacturer for such Aircraft pursuant to the Purchase Agreement;

   (b)   the right to accept delivery of such Aircraft, such acceptance to be exercised by the Sub-Lessee (as designee of the Lessee) as the authorized representative of the Lessor, provided that the Manufacturer shall have received written notice in advance of the identity and authority of such authorized representative;

   (c)   all claims for damages in respect of such Aircraft arising as a result of any default by the Manufacturer under the Purchase Agreement in respect of such Aircraft;

   (d)   all warranty and indemnity provisions contained in the Purchase Agreement, including the Warranties, and all claims arising thereunder, in respect of such Aircraft; and

   (e)   any and all rights of each Assignor to compel performance of the terms of the Purchase Agreement in respect of such Aircraft;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

reserving exclusively to the Assignors, however:

(i)     all the Assignors' rights and interests in and to the Purchase Agreement as and to the extent that it relates to aircraft other than an Aircraft or the purchase, ownership or operation of such other aircraft and to the extent that it relates to any other matters not directly pertaining to an Aircraft;

(ii)    all the Assignors' rights and interests in or arising out of (including any credits for or repayment of) any advance payments made or to be made by the Assignors in respect of such Aircraft under the Purchase Agreement and any other payments or deposits made by the Assignors in respect of such Aircraft under the Purchase Agreement or any other agreement;

(iii)   the right to obtain services, training, data and demonstration and test flights pursuant to the Purchase Agreement; and

(iv)    the right to maintain plant representatives at the Manufacturer's plant pursuant to the Purchase Agreement.

The Lessor hereby accepts the assignment set forth above.

Notwithstanding the foregoing, so long and only so long as no notice has been issued to the Manufacturer in accordance with this Assignment, the Lessor hereby authorizes the Sub-Lessee during the term of the Lease in respect of an Aircraft, to the exclusion of the Lessor, to exercise in such Sub-Lessee's name (A) the right to enforce any warranty or indemnity, including the Warranties, under the Purchase Agreement and to retain any recovery or benefit resulting from the enforcement of any warranty or indemnity, including the Warranties, under the Purchase Agreement in respect of such Aircraft, (B) all rights to demand, accept and retain all rights in and to all property (other than such Aircraft) and (C) the right to exercise all other rights and powers of the Customer under the Purchase Agreement assigned to the Lessor hereunder in respect of such Aircraft; provided that the Assignors and such Sub-Lessee may not enter into any change order or other amendment, modification or supplement to the Purchase Agreement if such change order, amendment, modification or supplement would (i) result in any rescission, cancellation or termination of the Purchase Agreement or any aircraft warranties in respect of any Aircraft, or (ii) materially diminish the rights and interests assigned hereunder.

For all purposes of this Assignment, the Manufacturer shall not be deemed to have knowledge of or need to recognize the occurrence of a Lease Event of Default, a Termination Event, a Sub-Lease Event of Default or a Loan Event of Default, unless and until the Manufacturer shall have received from the Lessee or the Lessor (or the Security Trustee, so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) written notice thereof, addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706. Until such time as a notice shall have been given by the Lessee or the Lessor (or the Security Trustee so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) to the Manufacturer, the Manufacturer shall deal solely and exclusively with the Sub-Lessee. Thereafter, until the Lessee or the Lessor (or the Security Trustee, as the case may be) who served the notice on the Manufacturer shall have notified the Manufacturer that any such Lease Event of Default, Termination Event, Sub-Lease Event of Default or Loan Event of Default is no longer continuing (which notice shall be given at such Sub-Lessee's, the Lessee's or the Lessor's (as applicable) written request promptly after the remedy thereof), the Manufacturer shall deal solely and exclusively with the Lessor, the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessee or the Security Trustee, as the case may be. The Manufacturer may act with acquittance and conclusively rely on such notice. For the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and in the event that the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control.

3.  It is expressly agreed that, anything herein contained to the contrary notwithstanding: (a) prior to the execution of a Purchase Assignment Supplement with respect to an Aircraft, each Assignor will perform its obligations with respect to such Aircraft to be performed by it on or before the Delivery Date for such Aircraft, (b) Arctic or Norwegian, as applicable, shall at all times remain liable to the Manufacturer under the Purchase Agreement to perform all duties and obligations of the Customer thereunder to the same extent as if this Assignment had not been executed, (c) the exercise by a Transaction Party of any of the rights assigned hereunder shall not release Arctic or Norwegian, as applicable, from any of its duties or obligations to the Manufacturer under the Purchase Agreement, except to the extent that such exercise by a Transaction Party shall constitute performance of such duties and obligations, and (d) except as specifically provided in the next succeeding paragraph with respect to the Transaction Parties, the Transaction Parties shall not have any obligation or liability under the Purchase Agreement by reason of or arising out of this Assignment or be obligated to perform any of the obligations or duties of Arctic or Norwegian, as applicable, under the Purchase Agreement or to make any payment or to make any inquiry as to the sufficiency of any payment received by it or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder.

Anything contained in this Assignment to the contrary notwithstanding (but without in any way releasing either Assignor from any of its duties or obligations under the Purchase Agreement), the Transaction Parties confirm for the benefit of the Manufacturer that, insofar as the provisions of the Purchase Agreement relate to any Aircraft, in exercising any rights under the Purchase Agreement with respect to such Aircraft, or in making any claim with respect to such Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to such Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, the Transaction Parties to the same extent as if each Transaction Party had been the original Customer thereunder. The Transaction Parties further agree, expressly for the benefit of the Manufacturer, that at any time and from time to time upon the written request of the Manufacturer, the Transaction Parties shall promptly and duly execute and deliver any and all such further assurances, instruments and documents and take all such further action as the Manufacturer may reasonably request in order to obtain the full benefits of the Transaction Parties' agreements set forth in this paragraph.

Nothing contained herein shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the contract rights of the Manufacturer thereunder or require the Manufacturer to divest itself of title to or possession of any Aircraft or other goods and services until delivery thereof and payment therefor on the date of such delivery as provided therein.

Effective at any time after a Sub-Lease Event of Default has occurred, and for so long as such Sub-Lease Event of Default is continuing, the Sub-Lessee does hereby irrevocably appoint the Lessee, its successors and permitted assigns, the Sub-Lessee's true and lawful attorney, by way of security, with full power (in the name of the Sub-Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessee may exercise rights with respect

FILED DATE: 1/11/2023 2:57 PM   2023L000001

thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Lease Event of Default has occurred, and for so long as such Lease Event of Default is continuing, the Sub-Lessee and the Lessee do hereby irrevocably appoint the Lessor, its successors and permitted assigns, the Sub-Lessee's and the Lessee's true and lawful attorney, by way of security, with full power (in the name of the Sub-Lessee, the Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessor may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessor may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Loan Event of Default has occurred, and for so long as such Loan Event of Default is continuing, the Sub-Lessee, the Lessee and the Lessor do hereby irrevocably appoint the Security Trustee, its successors and permitted assigns, the Sub-Lessee's, the Lessee's and the Lessor's true and lawful attorney, by way of security, with full power (in the name of the Sub-Lessee, the Lessee, the Lessor or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Security Trustee may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Security Trustee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

4.      NEITHER ASSIGNOR SHALL BE DEEMED TO HAVE GIVEN, AND EACH ASSIGNOR HEREBY EXPRESSLY DISCLAIMS, ANY IMPLIED REPRESENTATION OR WARRANTY AS TO THE AIRWORTHINESS, CONDITION, MERCHANTABILITY, DESIGN, OPERATION OR FITNESS FOR USE OF ANY AIRCRAFT OR ANY PART THEREOF, OR ANY OTHER IMPLIED REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO ANY AIRCRAFT.

5.      Each Assignor agrees that at any time and from time to time upon the written request of any Transaction Party, it will promptly and duly execute and deliver any and all such further instruments and documents and take such further action as such Transaction Party may reasonably request in order to obtain the full benefits of this Assignment and of the rights and powers herein granted.

6.      Each Assignor does hereby represent and warrant that it has not assigned or pledged, and hereby covenants that it will not assign or pledge so long as this Assignment shall remain in effect, the whole or any part of the rights hereby assigned to anyone other than the Lessor. Each Assignor hereby acknowledges and agrees that the Lessor has assigned to the Security Trustee, as collateral security for the Lessor's obligations under the Loan Agreement and the other Operative Documents, all of the Lessor's right, title and interest in and to the Purchase Agreement (as it relates to any Aircraft) and this Assignment pursuant to the Lessor Security Assignment, and each Assignor hereby consents to such assignment.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

7.   The Lessor agrees that it will not enter into any agreement with the Manufacturer that would amend, modify, rescind, cancel or terminate the Purchase Agreement in respect of any Aircraft or take any other action to amend, modify, rescind, cancel or terminate any of the Assignors' rights in respect of any Aircraft, without the prior written consent of the Assignors and the Security Trustee (so long as the Lien of the Lessor Security Assignment is in effect and has not been released by the Security Trustee).

8.   Each of the Transaction Parties agrees, expressly for the benefit of the Manufacturer, that it will not disclose, directly or indirectly, any terms of the Purchase Agreement disclosed to it; provided, that (a) the Transaction Parties may use, retain and disclose any such information to its special counsel and public accountants, who shall maintain the confidentiality of the Purchase Agreement, (b) the Transaction Parties may disclose any such information as required by Applicable Law or governmental regulations, (c) to the extent that any Transaction Party may have received a subpoena or other written demand under colour of legal right for such information, such Transaction Party may disclose such information, but it shall first, as soon as practicable upon receipt of such demand, furnish a copy thereof to the Manufacturer, and the relevant Transaction Party shall afford the Manufacturer reasonable opportunity, at the moving Person's cost and expense, to obtain a protective order or other reasonably satisfactory assurance of confidential treatment for the information required to be disclosed, (d) the Transaction Parties may disclose any such information to any bona fide potential purchaser or lessee of any Aircraft (subject to execution by such potential purchaser or lessee of a confidentiality undertaking substantially similar to this Section 8) and (e) the Transaction Parties may disclose any such information to the Agent, the Lenders, the Security Trustee, the Insurer Representative, each Insurer Group Member and any other Person with whom any of the foregoing is in good faith conducting negotiations relating to the possible transfer and sale of such Person's interests in the Purchase Agreement, any Aircraft and/or any provision of funds (subject to the execution of a confidentiality undertaking substantially similar to this Section 8 by such Agent, Lender, Security Trustee, Insurer Representative, Insurer Group Member and Person described in this paragraph 8) and to their respective special counsel and financial advisors (who shall maintain the confidentiality of the Purchase Agreement to the extent required by this Section 8).

9.   This Assignment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

10.   On the Delivery Date for an Aircraft, subject to satisfaction or waiver of the conditions set forth in the Participation Agreement required to be satisfied on or prior to the Delivery Date for such Aircraft, the Lessor agrees to purchase such Aircraft from the Manufacturer and (without limiting its other payment obligations under the Operative Documents on the Delivery Date for such Aircraft) to pay the Purchase Price for such Aircraft in the manner specified in the Purchase Agreement.

11.   If the Delivery Date for an Aircraft does not occur by 11:59 p.m. (Seattle time) on the date set forth in the Purchase Assignment Supplement in respect of such Aircraft, this Assignment (as it relates to such Aircraft) shall (unless otherwise agreed by the parties hereto) automatically terminate, whereupon the rights subject to this Assignment (as it relates to such Aircraft) shall be deemed reassigned by the Lessor to the Assignors without the requirement of any further act or action (other than any notice required to be given to the Manufacturer).

12.   For the purposes of this Assignment, all notices and other communications shall be in writing, in English, and shall be given or made by fax, or personal delivery and faxed or delivered to the intended recipient (other than the Manufacturer) at the address specified below, or, as to any party, at such other address as shall be designated by such party in a notice to each other party hereto. Except as otherwise provided in this Assignment, all such communications shall be deemed to have been duly given when transmitted by fax (provided such transmission by fax is in legible form and is

FILED DATE: 1/11/2023 2:57 PM   2023L000001

accompanied by or generates a substantially simultaneous confirmation of transmission), or personally delivered, in each case given or addressed as aforesaid.

(a)     If to the Lessor:

AAA Max 2 Limited
c/o Walkers Fiduciary Limited
Cayman Corporate Centre
27 Hospital Road
George Town
Grand Cayman KY1-9008
Cayman Islands

Attention:      The Directors

Telephone:      +1 345 814 7600

Email:          fiduciary@walkersglobal.com

(b)     If to Arctic:

Arctic Aviation Assets DAC
Ground Floor
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:      + 353 879 461 070

Fax:            + 353 1 814 1839

with a copy to Norwegian at the address below.

(c)     If to Norwegian:
Norwegian Air Shuttle ASA
Oksenøyveien 3
Postboks 115
N-1330 Fornebu
Norway

Attention:      Chief Financial Officer

Telephone:      + 47 99 54 6400

Fax:            +47 67 59 3001

(d)     With a copy to the Security Trustee:

Bank of Utah
200 East South Temple
Suite 210
Salt Lake City, UT 84111

FILED DATE: 1/11/2023 2:57 PM   2023L000001

|  | Attention: | Jennifer Miller |
|--|------------|------------------|
|  | Fax: | +1 801-746-3519 |
|  | Email: | corptrust@bankofutah.com |

(e)  If to the Lessee:

Stogofjorden Limited
c/o Arctic Aviation Assets DAC
Imbus House
Dublin Airport
Co. Dublin
Ireland

|  | Attention: | Tore Jenssen |
|--|------------|--------------|
|  | Telephone: | + 353 879 461 070 |
|  | Fax: | + 353  1 814 7839 |

with a copy to Norwegian at the address above.

(f)  If to the Sub-Lessee:

Norwegian Air International Limited
Imbus House
Dublin Airport
Co. Dublin
Ireland

|  | Attention: | Tore Jenssen |
|--|------------|--------------|
|  | Telephone: | + 353 879 461 070 |
|  | Fax: | + 353 1 814 7839 |

with a copy to Norwegian at the address above.

13.  This Assignment will be governed by, and construed in accordance with, the laws of the State of Washington, except for the conflict of laws principles thereof.

14.  The provisions of clauses 13(d)(ii) to 13(d)(vi) of the Participation Agreement, in so far as they relate to any dispute between the parties shall apply hereto as if set out in this Assignment *mutatis mutandis*.

15.  Each of the parties to this Assignment (except the Sub-Lessee) acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Assignment is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

16.  The Sub-Lessee acknowledges and agrees that the provisions of clause 20(c) (No Discharge, etc.; No Petitioning) and clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement apply to it to the same extent as if it were a party to the Participation

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Agreement and as if the reference to "Lessee" in such clause 20(c) referred to the Lessee and the Sub-Lessee.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Agreement Assignment to be duly executed the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 1**

**FORM OF CONSENT AND AGREEMENT**

**THE BOEING COMPANY**

**CONSENT AND AGREEMENT**

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated _____ 2018 between **AAA MAX 2 LIMITED** (the **Lessor**), **STOGOFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** (the **Sub-Lessee**) **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**) and the Bank of Utah, as security trustee (the **Security Trustee**) relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number [●] (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.    all representations, warranties, indemnities and agreements of the Manufacturer, including the Warranties, under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.    no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.    the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.    if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

5.      the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement, including the Warranties, and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Loan Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.      the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.      the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.      The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

        (a)     the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

        (b)     the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)     to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)     Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.      The Manufacturer hereby confirms to the Security Trustee that:

(a)     upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)     except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.     The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.     The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.     It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 2018

**THE BOEING COMPANY**

By:

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

MSN [●]

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# SCHEDULE 2

## DESCRIPTION OF AIRCRAFT

Each of the two (2) Boeing model 737 - 8 airframes, bearing Manufacturer's serial numbers 42831 and 64992, as further identified on each Purchase Assignment Supplement to be entered into by the Assignors, the Lessor, the Lessee and the Sub-Lessee in respect of such airframes, together, in the case of each such airframe, with the two (2) CFM Model LEAP-1B27 engines installed thereon and each other engine identified on any Purchase Assignment Supplement hereto.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 3

## FORM OF PURCHASE ASSIGNMENT SUPPLEMENT

## PURCHASE ASSIGNMENT SUPPLEMENT NO. __

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated _____ 2018 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 2 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **STOGOFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a private company limited by shares duly incorporated under the laws of Ireland (**Sub-Lessee**) and the Bank of Utah, as security trustee (the **Security Trustee**) and supplements that Purchase Agreement Assignment dated _____ 2018 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

## W I T N E S S E T H:

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and the Sub-Lessee desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and the Sub-Lessee hereby agrees as follows:

1.   The Sub-Lessee of the Aircraft is:                                  _____

2.   Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

   Manufacturer's serial number:                          _____

   Registration Mark:                                            _____

   Engine Manufacturer's serial numbers:            _____ & _____

3.   Latest Delivery Date with respect to such Aircraft:       _____

4.   Maximum liability of the Lessor with respect to the   U.S.$_____
   Purchase Price of such Aircraft:

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. ____ to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

| | | |
|---|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | ) | |
| by **ARCTIC AVIATION ASSETS DAC** | | |
| acting by its lawfully | ) | |
| appointed attorney | ) | ……………………………….. |

<div align="right">Lawfully appointed attorney</div>

in the presence of:                                    )

Witness's Signature:    _____

Name:                         _____

Address:                     _____

                                  _____

**Norwegian**

SIGNED AND DELIVERED as a DEED by
**NORWEGIAN AIR SHUTTLE ASA**                         )
acting by its lawfully appointed attorney              )          ……………………………..

<div align="right">Lawfully appointed attorney</div>

in the presence of:                                    )

Witness's Signature:    _____

Name:                         _____

Address:                     _____

                                  _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **AAA MAX 2 LIMITED** | ) |
| acting by | ) |
| _____ | ) |
| acting under the authority of that | |
| Company, in the presence of: | ) |

Witness's Signature:    _____

Name:    _____

Address:    _____

_____

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed Attorney of
**BANK OF UTAH**
(as Security Trustee)

acting by

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature:    _____
Name:    _____
Address:    _____
_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (2)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **STOGOFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

.…………………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature:  _____

Name:  _____

Address:  _____

_____

**Sub-Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR INTERNATIONAL** | ) |
| **LIMITED** | ) |
| acting by its lawfully appointed attorney | |

.…………………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature:  _____

Name:  _____

Address:  _____

_____

**SIGNATURES (3)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By:
Name:
Title:
Date:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 4

## THE WARRANTIES

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM 2023L000001

**SIGNATURES**

**PURCHASE AGREEMENT ASSIGNMENT**

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by          )

**ARCTIC AVIATION ASSETS DAC**          )
acting by
its lawfully appointed attorney          )

................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:   ......................................

Name:          Vanessa Caesar
          ..................................
          Imbus House

Address:          ......Financial Administrator...

**Tore Jenssen**
**Attorney-In-Fact**

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by          )

**NORWEGIAN AIR SHUTTLE ASA**          )
acting by
its lawfully appointed attorney          )

................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:   ......................................

Name:          ......................................

Address:          ......................................

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

### PURCHASE AGREEMENT ASSIGNMENT

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by          )

**ARCTIC AVIATION ASSETS DAC**          )
acting by
its lawfully appointed attorney          )

.....................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:   ............................................

Name:   ............................................

Address:   ............................................

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by          )

**NORWEGIAN AIR SHUTTLE ASA**          )
acting by
its lawfully appointed attorney          )

in the presence of:

Witness's Signature:   ............................................

Name:   ............................................

Address:   ............................................

ATTORNEY-IN-FACT

PER-HELGE ELLINGSEN
OKSENØYVEIEN 3

1330 FORNEBU

PER-HELGE ELLINGSEN

ATTORNEY-IN-FACT

THOMAS F WELLEN

..........A.T.T.O.R.N.E.Y.-.I.N.-.F.A.C.T
Lawfully appointed attorney

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by                )
**AAA MAX 2 LIMITED**                          )
acting by                                      )
_____                        )
acting under the authority of that             )
Company, in the presence of:                   )

**Gennie Bigord**
**Director**

Witness's Signature:

Name:            Stephanie Jackson

Address:         Cayman Corporate Centre, 27 Hospital Road
                 George Town, Grand Cayman KY1-9008
                 Cayman Islands

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

## PURCHASE AGREEMENT ASSIGNMENT

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by )

**STOGOFJORDEN LIMITED** )
acting by
its lawfully appointed attorney )

................................................
Lawfully appointed attorney
**Tore Jenssen**
**Attorney-In-Fact**

in the presence of:

Witness's Signature: ...... Sarah Hogan ..............

Name: ..... SARAH HOGAN ...............

Address: ....INBUS HOUSE, DUBLIN AIRPORT

**Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by )

**NORWEGIAN AIR INTERNATIONAL** )
**LIMITED**
acting by
its lawfully appointed attorney )

................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature: ................................................

Name: ................................................

Address: ................................................

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

### PURCHASE AGREEMENT ASSIGNMENT

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by      )

**STOGOFJORDEN LIMITED**      )
acting by
its lawfully appointed attorney      )

...........................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:      ...........................................

Name:      ...........................................

Address:      ...........................................

**Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by      )

**NORWEGIAN AIR INTERNATIONAL**      )
**LIMITED**
acting by
its lawfully appointed attorney      )

...........................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:      ...........................................

Name:      Vanessa Caesar

Address:      Imbus House
Financial Administrator

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (3)

### PURCHASE AGREEMENT ASSIGNMENT

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed ~~Attorney~~ Vice President of
**BANK OF UTAH**
(as Security Trustee)

acting by

acting under the authority of
that entity in such capacity in the presence of:

John Thomas
Vice President

Witness's signature:
Name: Marie Stapley
Address: Legal Assistant

200 E. South Temple, Ste 210
Salt Lake City, Utah 84111

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 1

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated 16 May 2018 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 2 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **STOGOFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a private company limited by shares duly incorporated under the laws of Ireland (**Sub-Lessee**) and the Bank of Utah, as security trustee (the **Security Trustee**) and supplements that Purchase Agreement Assignment dated 16 May 2018 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

### W I T N E S S E T H:

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and the Sub-Lessee desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and the Sub-Lessee hereby agrees as follows:

1. The Sub-Lessee of the Aircraft is:                                  Norwegian Air International Limited

2. Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

   Manufacturer's serial number:                               42831

   Registration Mark:                                          EI-FYG

   Engine Manufacturer's serial numbers:                       602391 & 602406

3. Latest Delivery Date with respect to such Aircraft:         16 May 2018

4. Maximum liability of the Lessor with respect to the         U.S.$48,451,035.00
   Purchase Price of such Aircraft:

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. 1 to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM 2023L000001

## SIGNATURES

### PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by **ARCTIC AVIATION ASSETS DAC** acting by its lawfully appointed attorney | ) ) ) |

.......................................
Tore Jenssen
Lawfully appointed attorney
Attorney-In-Fact

in the presence of:                                        )

Witness's Signature:

Name:

Vanessa Caesar

Address:              Imbus House

Financial Administrator

**Norwegian**

| | |
|---|---|
| SIGNED AND DELIVERED as a DEED by **NORWEGIAN AIR SHUTTLE ASA** acting by its lawfully appointed attorney | ) ) |

.......................................
Lawfully appointed attorney

in the presence of:                                        )

Witness's Signature:

Name:

Address:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

### PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | ) |
| by **ARCTIC AVIATION ASSETS DAC** | |
| acting by its lawfully | ) |
| appointed attorney | ) |

.......................................
Lawfully appointed attorney

in the presence of:                                )

Witness's Signature:  _____

Name:  _____

Address:  _____

_____

**Norwegian**

| | |
|---|---|
| SIGNED AND DELIVERED as a DEED by | |
| **NORWEGIAN AIR SHUTTLE ASA** | ) |
| acting by its lawfully appointed attorney | ) |

THOMAS F WELLEN

ATTORNEY-IN-FACT
Lawfully appointed attorney

in the presence of:                                )

Witness's Signature: _____

Name:       FLh-**HELGE ELLINGSEN**

Address:    **ATTORNEY-IN-FACT**

_____

OKSENØYVEIEN 3
1330 FORNEBU

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by       )
**AAA MAX 2 LIMITED**       )
acting by       )
      )
_____
acting under the authority of that
Company, in the presence of:       )

Gennie Bigord
Director

Witness's Signature: _____

Name:     Gloria Ebanks

Address:     Cayman Corporate Centre
27 Hospital Road, George Town
Grand Cayman KY1-9008
Cayman Islands

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed Attorney of
**BANK OF UTAH**
(as Security Trustee)

acting by

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature: _____
Name: _____
Address: _____
_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **AAA MAX 2 LIMITED** | ) |
| acting by | ) |
| _____ | ) |
| acting under the authority of that | |
| Company, in the presence of: | ) |

Witness's Signature:     _____

Name:     _____

Address:     _____

              _____

**Security Trustee**

**EXECUTED** as a **DEED**

                       Vice President

By the lawfully appointed ~~Attorney~~ of

**BANK OF UTAH**

(as Security Trustee)

acting by                             John Thomas
                                       Vice President

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature:

Name:                 Marie Stapley

Address:               Legal Assistant

               200 E. South Temple, Ste 210
               Salt Lake City, Utah 84111

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **STOGOFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

Lawfully appointed attorney
Tore Jenssen
Attorney-In-Fact

in the presence of:

Witness's Signature:      *Sarah Hogan*

Name:                          SARAH  HOGAN

Address:                      INBUS HOUSE,

                                   DUBLIN  AIRPORT

**Sub-Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR INTERNATIONAL** | ) |
| **LIMITED** | ) |
| acting by its lawfully appointed attorney | |

........................................

Lawfully appointed attorney

in the presence of:

Witness's Signature:    _____

Name:                          _____

Address:                      _____

                                   _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessee**

**SIGNED AND DELIVERED as a DEED** by )
**STOGOFJORDEN LIMITED** )
acting by )
its lawfully appointed attorney )

..........................................

Lawfully appointed attorney

in the presence of:

Witness's Signature: _____

Name: _____

Address: _____

_____

**Sub-Lessee**

**SIGNED AND DELIVERED as a DEED** by )
**NORWEGIAN AIR INTERNATIONAL** )
**LIMITED** )
acting by its lawfully appointed attorney

..........................................

Lawfully appointed attorney

in the presence of:

Witness's Signature: _____

Name: _____

Address: 
Vanessa Caesar
Imbus House
Financial Administrator

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By: _TJ Greene_
Name: _Tiffany Greene_
Title: _Attorney in fact_
Date:

_MSN 42831_

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**CONSENT AND AGREEMENT**

**THE BOEING COMPANY**

**CONSENT AND AGREEMENT**

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated ___16__ May 2018 between **AAA MAX 2 LIMITED** (the **Lessor**), **STOGOFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** (the **Sub-Lessee**) **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**) and the Bank of Utah, as security trustee (the **Security Trustee**) relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number 42831 (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.      all representations, warranties, indemnities and agreements of the Manufacturer, including the Warranties, under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.      no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.      the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.      if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

5.      the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement, including the Warranties, and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been

FILED DATE: 1/11/2023 2:57 PM   2023L000001

assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Loan Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.    the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.    the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.    The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)    the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)    the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)     Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.     The Manufacturer hereby confirms to the Security Trustee that:

(a)     upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)     except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.     The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.     The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.     It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated ___16 May_____ 2018

**THE BOEING COMPANY**

By:     TA Greene

Name:   Tiffany Greene

Title:  Attorney-in fact

MSN 42831

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-6

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# GOLDCARE LESSOR SUPPORT AGREEMENT ASSIGNMENT

<u>      16 May          </u> **2018**

**NORWEGIAN AIR INTERNATIONAL LIMITED**
**as Assignor**

**and**

**BANK OF UTAH**
**as Security Trustee**

**relating to one (1) Boeing Model 737 - 8 Aircraft**
**with Manufacturer's Serial Number 42831 Registration Mark EI-FYG**
**equipped with CFM LEAP-1B27 engines**

## ALLEN & OVERY

**Allen & Overy LLP**

0121556-0000001 BK:44551453.2

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# CONTENTS

**Clause**                                                                                   **Page**

1.   Interpretation ............................................................................................1
2.   Secured Obligations ...................................................................................2
3.   Assignment ................................................................................................2
4.   Notices of Assignment ...............................................................................3
5.   Enforcement of Security by Security Trustee .............................................3
6.   Receiver ....................................................................................................3
7.   Power of Attorney ......................................................................................4
8.   Further Assurance ......................................................................................5
9.   Security .....................................................................................................5
10.  Exercise of Powers ....................................................................................7
11.  Representations and covenants ..................................................................7
12.  Assignment and Transfer ...........................................................................8
13.  Counterparts ..............................................................................................8
14.  Governing Law ..........................................................................................8
15.  Participation Agreement .............................................................................8

**Schedule**

1.   Form of Assignment Notice and Acknowledgement ..................................10

Signatures .............................................................................................................13

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS ASSIGNMENT** is made by way of deed on _____16 May_____ 2018

**BETWEEN**:

(1)  **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company incorporated in Ireland whose registered office is Ground Floor, Imbus House, Dublin Airport, Ireland (as **Assignor**); and

(2)  **BANK OF UTAH,** as security trustee for certain secured parties (in this capacity together with its successors and permitted assigns the **Security Trustee**).

**Background**:

(A)  The Lessee, as lessor, has leased and the Assignor, as lessee, has taken on lease, the Aircraft for the period and upon the terms and conditions contained in the Initial Permitted Sub-Lease.

(B)  By the Loan Agreement and the Loan Supplement, the Lenders have agreed to make available to the Lessor a loan for the purpose of inter alia financing a portion of the acquisition cost of the Aircraft.

(C)  The Assignor has agreed to execute this Assignment as security for the Secured Obligations.

**IT IS AGREED** as follows:

1.  **INTERPRETATION**

1.1  **Definitions**

Unless the context otherwise requires, capitalized terms used herein (including the recitals above) and not otherwise defined herein shall have the meanings set forth in part 1 of appendix 1 to the Participation Agreement.  In this Assignment:

**Aircraft** means the Boeing model 737 - 8 aircraft bearing manufacturer's serial number 42831, together with the related engines, parts and manuals and technical records.

**Assigned Documents** means

(a)  the GoldCare Lessor Support Agreement;

(b)  the Assignment from Arctic;

(c)  the Assignment from the Lessor; and

(d)  the Assignment from the Lessee.

**Assigned Property** means all the Assignor's present and future right, title and interest (whether contractual, proprietary or of any other kind and including the right to sue for damages and any returned premium) under or in connection with the Assigned Documents in respect of the Aircraft.

**Assignment from Arctic** means the assignment notice and acknowledgemt in respect GoldCare Lessor Support Agreement dated _16_ May 2018 between Arctic, the Lessor and the Manufacturer.

**Assignment from the Lessee** means the assignment notice and acknowledgemt in respect GoldCare Lessor Support Agreement dated _16_ May 2018 between the Lessee, the Assignor and the Manufacturer.

MSN 42831 – GoldCare Lessor Support
Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Assignment from the Lessor** means the assignment notice and acknowledgemt in respect GoldCare Lessor Support Agreement dated  16 May 2018 between the Lessor, the Lessee and the Manufacturer.

**GoldCare Lessor Support Agreement** means the 737-8 GoldCare Lessor Support Agreement No. NBE-MISC-1606838 dated as of 28 June 2017 between the Manufacturer and Arctic as supplemented from time to time and to the extent relating to the Aircraft, as amended by Addendum No. 7 dated  16 May 2018 between the Manufacturer and Arctic, and as assigned to the Assignor pursuant to the Assignment from Arctic, the Assignment from the Lessor and the Assignment from the Lesee.

**Lessor** means AAA Max 2 Limited, an exempted company incorporated in the Cayman Islands.

**Participation Agreement** means the participation agreement dated 14 May 2018 between, among others, the Lessor and the Security Trustee relating to the Aircraft.

**Primary Secured Obligations** means Secured Obligations relating to the Aircraft.

**Receiver** means any administrative receiver, receiver and manager or receiver or similar officer appointed by the Security Trustee hereunder or under any statutory power.

**Security Period** means the period from the date of this Assignment until the date on which the security created by this Assignment is released in accordance with Clauses 3.4 and 3.5.

## 1.2    Construction

In this Assignment, the provisions of part 2 of appendix 1 of the Participation Agreement will be deemed to be set out herein in their entirety but as if reference therein to "this Agreement" were a reference instead to this Assignment.

## 2.    SECURED OBLIGATIONS

The Assignor shall pay, discharge and perform the Secured Obligations when they become due for payment, discharge or performance.

## 3.    ASSIGNMENT

3.1    The Assignor hereby assigns and agrees to assign, by way of security, with full title guarantee the Assigned Property to the Security Trustee absolutely (but subject to redemption upon irrevocable payment and discharge in full of the Secured Obligations to the satisfaction of the Security Trustee), reserving exclusively to the Assignor however all the Assignor's rights and interests in and to the Assigned Documents as and to the extent that they relate to aircraft other than the Aircraft.

3.2    No Secured Party shall incur any liabilities whatsoever in respect of the Assigned Documents by virtue of this Assignment.  The Assignor remains liable to perform all the obligations assumed by it under or in connection with the Assigned Documents.

3.3    Any Proceeds actually received by the Security Trustee shall be applied in accordance with the provisions of the Intercreditor Deed.

3.4    Subject to Clause 3.5 below, when all Primary Secured Obligations shall have been finally and indefeasibly paid in full, and provided that no Default or Event of Default shall have occurred and be continuing at the time that the Primary Secured Obligations are finally and indefeasibly paid in full, this Assignment shall terminate, and the Security Trustee shall at the request of the Assignor cause

FILED DATE: 1/11/2023 2:57 PM   2023L000001

the Assigned Property to be released from the Lien of this Assignment and cause to be assigned, transferred and delivered, against receipt but without any recourse, warranty or representation whatsoever, any remaining Assigned Property and money received in respect thereof to or on the order of the Assignor, at its sole cost and expense.

3.5    If at the time the Security Trustee is requested to release the security created by this Assignment in accordance with Clause 3.4 above any Secured Obligations are outstanding and a Default or an Event of Default has occurred and is continuing, then the Security Trustee shall not release the Assigned Property from the Lien of this Assignment and this Assignment shall not terminate until the earlier of:

(a)    the date on which all Defaults and Events of Default shall have been cured; and

(b)    the date on which all amounts owing in respect of any such Primary Secured Obligations shall have been indefeasibly paid in full.

3.6    Prior to the release of the security created by this Assignment in accordance with paragraph 3.4 above, the Assignor shall not sell, transfer, assign or otherwise dispose of any of its rights, title and interests in or to the Assigned Property or any part thereof, and shall not create, grant, permit to subsist or suffer to exist any Liens over the Assigned Property or any part thereof or any interest therein (other than the Lien constituted by this Assignment), and shall duly and promptly at its own cost and expense discharge any such Lien.

## 4.    NOTICES OF ASSIGNMENT

4.1    The Assignor covenants and agrees that on execution of this Assignment and from time to time upon the request of the Security Trustee, it will execute and forthwith deliver a notice of assignment to the Manufacturer in the form of Schedule 1 (Form of Notice and Acknowledgement to the Manufacturer) or in such other form as the Security Trustee may reasonably require.

4.2    The Assignor further covenants and agrees that, it shall use its best endeavours to procure as soon as practicable following the execution of this Assignment and delivery of the notice referred to in Clause 4.1, that the Manufacturer executes and delivers to the Security Trustee the acknowledgement to the notice of assignment in the form of Schedule 1 (Form of Notice and Acknowledgement to the Manufacturer) or in such other form as the Security Trustee may reasonably require.

## 5.    ENFORCEMENT OF SECURITY BY SECURITY TRUSTEE

When, and at any time after, an Event of Default shall have occurred and is continuing, the Security Trustee shall be entitled, in its absolute discretion, without notice, immediately to put into force and exercise all the powers and remedies possessed by it according to Applicable Laws as assignee by way of security of the Assigned Property as and when it may see fit.

## 6.    RECEIVER

6.1    The Security Trustee may, at any time after the occurrence of an Event of Default which is continuing, by instrument in writing, appoint any person to be a Receiver of all or any part of the Assigned Property.  Where more than one Receiver is appointed, each Receiver shall have power to act severally and independently of any other Receivers, except to the extent that the Security Trustee may specify to the contrary in the appointment.  The Security Trustee may remove any Receiver and appoint another Receiver in his place.

6.2    A Receiver shall be the agent of the Assignor, and the Assignor shall be solely responsible for his acts, omissions or defaults and for his remuneration.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

6.3    A Receiver shall have the power to do or omit to do on behalf of the Assignor anything which the Assignor itself could do or omit to do in relation to the Assigned Property if the Receiver had not been appointed, notwithstanding the liquidation of the Assignor. In particular (but without limitation), a Receiver shall have the powers conferred on the Security Trustee hereunder and the powers conferred from time to time on receivers by statute (in the case of powers conferred by the Law of Property Act 1925, without the restrictions contained in section 103 of that Act).

6.4    The Security Trustee may from time to time determine the remuneration of any Receiver and section 109(6) of the Law of Property Act 1925 shall be varied accordingly. A Receiver shall be entitled to remuneration appropriate to the work and responsibilities involved upon the basis of charging from time to time adopted by the Receiver in accordance with the current practice of his firm.

**7.    POWER OF ATTORNEY**

7.1    The Assignor, by way of security for the Secured Obligations, irrevocably appoints each of the Security Trustee and any Receiver severally to be its attorney in its name and on its behalf:

(a)    to execute and complete all such documents which the Security Trustee or such Receiver may require for perfecting the title of the Security Trustee to the Assigned Property or for vesting the same in the Security Trustee, its nominee or any purchaser;

(b)    to execute and complete any document referred to in Clause 8 (Further Assurance); and

(c)    generally to execute and complete all documents and to do all acts and things which may be required for the full exercise of any of the powers conferred on the Security Trustee or a Receiver under this Assignment or which may be deemed expedient by the Security Trustee or a Receiver in connection with any disposition, realisation or getting in by the Security Trustee or a Receiver of the Assigned Property or any part thereof or in connection with any other exercise of any power under this Assignment.

7.2    The exercise by the Security Trustee or any Receiver of the power of attorney referred to in Clause 7.1 shall be conclusive evidence of its right to exercise the same.

7.3    The power hereby conferred shall be a general power of attorney under the Powers of Attorney Act 1971 and the Assignor ratifies and confirms and agrees to ratify and confirm, any deed, assurance, agreement, instrument, act or thing which the Security Trustee may execute or do pursuant thereto.

7.4    The power of attorney referred to in Clause 7.1 shall not be exercised unless and until an Event of Default shall have occurred and be continuing.

**8.    FURTHER ASSURANCE**

The Assignor further undertakes that at any time and from time to time upon the request of the Security Trustee it will, at its own cost, execute, perfect, do, and (if required) register every such further assurance, document, act or thing which the Security Trustee may specify with a view to:

(a)    perfecting or giving effect to or ensuring the priority of any assignment or security created or intended to be created by this Assignment; or

(b)    facilitating the exercise, or the proposed exercise, of any of the Security Trustee's powers under this Assignment.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 9.     SECURITY

9.1     This Assignment and the security created hereby shall be held by the Security Trustee as a continuing security for the payment, discharge and performance of the Secured Obligations, and the securities, covenants and provisions contained in this Assignment shall remain in force as continuing securities to the Security Trustee notwithstanding any settlement of account or any intermediate payment or satisfaction of any part of the Secured Obligations or any other act, event or matter whatsoever, except only the execution by the Security Trustee by way of deed of an absolute and unconditional release of the security created by this Assignment and the reassignment of the Assigned Property to the Assignor or such other person as the Assignor may direct.

9.2     The security created by this Assignment, and the powers and remedies of the Security Trustee under this Assignment, shall be in addition to, and shall not in any way be prejudiced or affected by, any collateral or other security or powers or remedies now or hereafter held by the Security Trustee for all or any part of the Secured Obligations.

9.3     No delay or omission of the Security Trustee in the exercise of any right or power vested in it hereunder shall impair such right or power or be construed as a waiver of or an acquiescence in any default by the Assignor.

9.4     The Security Trustee shall have all the powers conferred on mortgagees by Section 101 of the Law of Property Act, 1925, but without the restrictions contained in section 103 of that Act.

9.5     If any discharge (whether in respect of the obligations of any Obligor or any security for those obligations or otherwise) or arrangement is made in whole or in part on the faith of any payment, security or other disposition which is avoided or must be restored on insolvency, liquidation, administration or otherwise without limitation, the liability of the Assignor under this Assignment will continue or be reinstated as if the discharge or arrangement had not occurred.

9.6     Each Secured Party may concede or compromise any claim that any payment, security or other disposition is liable to avoidance or restoration.

9.7     The obligations of the Assignor under this Assignment will not be affected by any act, omission or thing (whether or not known to it or any Secured Party) which, but for this provision, would reduce, release or prejudice any of its obligations under this Assignment.  This includes:

(a)     any time or waiver granted to, or composition with, any person;

(b)     any release of any person under the terms of any composition or arrangement;

(c)     the taking, variation, compromise, exchange, renewal or release of, or refusal or neglect to perfect, take up or enforce, any rights against, or security over assets of, any person;

(d)     any non-presentation or non-observance of any formality or other requirement in respect of any instrument or any failure to realise the full value of any security;

(e)     any incapacity, lack of power, authority or legal personality of or dissolution or change in the members or status of any person;

(f)     any amendment of an Operative Document, or any other document or security; or

(g)     any unenforceability, illegality, invalidity or non-provability of any obligation of any person under any Operative Document or any other document or security or the failure by any member of the Group to enter into or be bound by any Operative Document.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

9.8     The Assignor waives any right it may have of first requiring any Secured Party (or any trustee or agent on its behalf) to proceed against or enforce any other right or security or claim payment from any person or file any proof or claim in any insolvency, administration, winding-up or liquidation proceedings relative to any other Obligor or any other person before claiming from the Assignor under this Assignment.

9.9     At any time during the Security Period, each Secured Party (or any trustee or agent on its behalf) may, subject always to the terms of the Intercreditor Deed, without affecting the liability of the Assignor under this Assignment:

(a)     (i)     refrain from applying or enforcing any other moneys, security or rights held or received by that Secured Party (or any trustee or agent on its behalf) against those amounts; or

        (ii)    apply and enforce them in such manner and order as it sees fit (whether against those amounts or otherwise); and

(b)     hold in an interest-bearing suspense account any moneys received from the Assignor or on account of the Assignor's liability under this Assignment.

9.10    Unless the Security Period has expired or the Security Trustee otherwise directs, the Assignor will not, after a claim has been made under this Assignment or by virtue of any payment or performance by it under this Assignment:

(a)     be subrogated to any rights, security or moneys held, received or receivable by any Secured Party (or any trustee or agent on its behalf);

(b)     be entitled to any right of contribution or indemnity in respect of any payment made or moneys received on account of the Assignor's liability under this Clause 9.10;

(c)     claim, rank, prove or vote as a creditor of any other Obligor or its estate in competition with any Secured Party (or any trustee or agent on its behalf); or

(d)     receive, claim or have the benefit of any payment, distribution or security from or on account of any other Obligor, or exercise any right of set-off as against any other Obligor.

The Assignor must hold in trust for and immediately pay or transfer to the Security Trustee any payment or distribution or benefit of security received by it contrary to this Clause 9.10 or in accordance with any directions given by the Security Trustee under this Clause 9.10.

9.11    This Assignment is in addition to and is not in any way prejudiced by any other security now or subsequently held by the Security Trustee.  No prior security held by the Security Trustee (in its capacity as such or otherwise) over any Assigned Property will merge into this Security.

9.12    The Assignor may not, without the prior consent of the Security Trustee, hold any security from any Obligor in respect of the Assignor's liability under this Assignment.  The Assignor will hold any security held by it in breach of this provision on trust for the Security Trustee.

## 10.    EXERCISE OF POWERS

10.1    In exercising the powers referred to in Clauses 5 (Enforcement of Security by Security Trustee) and 6 (Receiver), the Assigned Property or any part thereof may be sold, disposed of or otherwise dealt with at such times in such manner for such consideration and generally on such terms and conditions as the Security Trustee or any Receiver may think fit.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

10.2   No purchaser or other person shall be bound or concerned to enquire whether the right of the Security Trustee or any Receiver to exercise any of the powers conferred by this Assignment has arisen or be concerned with notice to the contrary or with the propriety of the exercise or purported exercise of such powers.

10.3   The Assignor will indemnify the Security Trustee and every Receiver or attorney appointed pursuant hereto in respect of all liabilities and expenses incurred by it, him or them in the exercise of any rights, powers or discretions vested in it, him or them pursuant hereto.

10.4   Without prejudice to the Security Trustee's duties at law, neither the Security Trustee nor any Receiver shall be liable for any Losses arising in connection with the exercise of any of its rights, powers and discretions hereunder and, in particular (without limitation) the Security Trustee and any Receiver in possession shall not be liable to account as mortgagee in possession or for anything except actual receipts.

10.5   When acting hereunder, the Security Trustee shall have the benefit of the rights, powers, authorities, discretions, indemnittees and protections conferred on it pursuant to the Operative Documents.

## 11.   REPRESENTATIONS AND COVENANTS

11.1   The Assignor represents and warrants to the Assignee that:

(a)   the Assignor has full power, authority and legal right to enter into, execute and deliver this Assignment and to perform its obligations hereunder; and

(b)   the Assignor is the sole legal and equitable owner of the Assigned Property free and clear of all Liens other than as constituted by this Assignment and the other Operative Documents.

11.2   The Assignor hereby covenants and undertakes with the Assignee throughout the Security Period that:

(a)   the Assignor shall from time to time promptly sign, seal, execute, acknowledge, deliver, file and register all such additional documents, instruments, agreements, certificates, consents and assurances and do all such other acts and things as may be reasonably necessary and as the Assignee may reasonably request from time to time in order to perfect the security granted or intended to be granted by this Assignment or to establish, maintain, protect or preserve the rights of the Assignee under this Assignment or to obtain the full benefits of this Assignment or to enable it to exercise and enforce the rights and remedies under this Assignment or in respect of the Assigned Property;

(b)   the Assignor shall not assign or otherwise deal with the Assigned Property and shall not create or incur, nor shall it agree to or acquiesce in the creation or incurrence by any other Person of any mortgage, charge or lien in or upon the Assigned Property, save for the assignment and the charge constituted by this Assignment and any other Operative Document;

(c)   the Assignor shall promptly furnish to the Assignee such information, reports and records with respect to the Assigned Property as the Assignee may from time to time reasonably require and which are in the possession of or are available to or within the knowledge of the Assignor;

(d)   the Assignor is not in breach of any term or condition relating to the Assigned Documents, and the Assigned Documents are in full force and effect to the best of its knowledge.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(e)     no right of set-off, counterclaim or defense with respect to this Assignment shall be exercisable by the Assignor against the Assignee; and

(f)     all cash, proceeds, checks, drafts, orders and other instruments for the payment of money received by the Assignor on account of any Assigned Property shall promptly be delivered in the form received (properly endorsed, but without recourse, for collection where required) to the Security Trustee and the Assignor agrees not to commingle any such collections or proceeds with its other funds or property and agrees to hold as security the same upon trust for the Security Trustee until delivered, **provided that** so as long as no Event of Default has occurred and is continuing, the Assignor may appropriate such collections or proceeds pursuant to and in accordance with the provisions of the Operative Documents.

**12.     ASSIGNMENT AND TRANSFER**

The parties agree that any assignment or transfer of their rights and/or obligations under this Assignment shall only be made in accordance with the provisions of the Operative Documents.

**13.     COUNTERPARTS**

This Assignment may, to the extent permitted under any Applicable Laws binding on it, be executed in any number of counterparts.  This has the same effect as if the signatures on the counterparts were on a single copy of this Assignment.

**14.     GOVERNING LAW**

This Assignment and any non-contractual obligations connected with it are governed by and shall be construed in accordance with English law.

**15.     PARTICIPATION AGREEMENT**

(a)     The provisions of each of clauses 13(c), 13(d)(ii) – (vi), 13(e), 13(f) and 13(j) of the Participation Agreement apply to this Assignment but as if reference therein to "this Agreement" were a reference instead to this Assignment.

(b)     For the purposes of clause 13(c) of the Participation Agreement, as incorporated herein, the details of the Assignor are as follows:

Norwegian Air International Limited
Ground Floor
Imbus House
DublinAirport
Co. Dublin
Ireland

Attention:     Tore Jenssen
Telephone:     +353 879 461070
Fax:           +353 1 814 1839
Email:         tore.jenssen@arcticaa.com

**THIS ASSIGNMENT** has been executed as a deed and delivered on the date stated at the beginning of this Assignment.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 1**

**FORM OF ASSIGNMENT NOTICE AND ACKNOWLEDGEMENT**

To:    [●] (**Manufacturer**)

(Attention:    To Whom It May Concern)

Dated [●]

Reference is made to (a) 737-8 GoldCare Lessor Support Agreement No. NBE-MISC-1606838 dated as of 28 June 2017 (**Agreement**) between The Boeing Company (**Boeing**) and Norwegian Air International Limited (as assignee of Arctic Aviation Assets Designated Activity Company, AAA Max 2 Limited, and Stogofjorden Limited) (**Lessee**) and (b) Addendum No. 7 dated as of _____, 2018 (**Addendum**), pertaining to one (1) Boeing model 737-8 aircraft bearing Manufacturer's Serial Number [●] (**Aircraft**).

Terms used herein without definition will have the same meanings as in the Agreement.

Lessee confirms for the benefit of Boeing that Lessee owns and controls the rights Lessee purports to assign herein.

In connection with AAA Max 2 Limited financing of the Aircraft, Lessee is entering into a Security Agreement, dated as of _____, 2018 (**Security Agreement**), between Lessee and Bank of Utah, as security trustee (**Security Trustee**), which grants a security interest in all Lessee's rights contained in the Agreement and the Addendum related to the Aircraft (**Assigned Rights**). Lessee is authorized to exercise the Assigned Rights until such time as the Security Trustee notifies Boeing as provided below that an Event of Default under the Transaction Documents (as defined in the Security Agreement) has occurred and is continuing. In connection with this assignment for security purposes, as authorized by the provisions of the Agreement:

1.    Security Trustee, as assignee of, and holder of a security interest in, the estate, right, and interest of the Lessee in and to the Agreement pursuant to the terms of the Security Agreement, acknowledges that it has received copies of the applicable provisions of the Agreement and agrees that in exercising any rights under the Agreement or asserting any claims with respect to the Aircraft or other things (including without limitation, Materials, training and services) delivered or to be delivered, its rights and remedies under the Security Agreement will be subject to the terms and conditions of the Agreement including but not limited to those related to any exclusion or limitation of liabilities or warranties, indemnity and insurance.

2.    Lessee is authorized to exercise, to the exclusion of Security Trustee all rights and powers of "Customer" under the Agreement, unless and until Boeing receives a written notice from Security Trustee, addressed to its Vice President - Contracts, Boeing Global Services at P.O. Box 3707, Seattle, Washington 98124, Mail Code 21-34 (if by mail), or (425) 237-1706 (if by facsimile) that an Event of Default under the Transaction Documents has occurred and is continuing. Until such notice has been given, Boeing will be entitled to deal solely and exclusively with Lessee. Thereafter, until Security Trustee has provided Boeing written notice that any such event no longer continues, Boeing will be entitled to deal solely and exclusively with Security Trustee. Boeing may act with acquittance and conclusively rely on any such notice.

3.    Following written notice from the Security Trustee to Boeing that an Event of Default under the Transaction Documents has occurred and is continuing, Boeing agrees that:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a) the Security Trustee or its nominee may at any time (but shall not be obliged to) assume all rights, duties and obligations of the Lessee under the Agreement, including the rights to any payments or maintenance under the Agreement; and

(b) Boeing will work directly with the Security Trustee to ensure that the rights of the Lessee or any sub-lessee to such payments or maintenance under the Agreement, any addendum or any Goldcare Agreement (as defined in the Agreement) (or if the Agreement or relevant Goldcare Agreement have been terminated the rights as immediately before such termination) are available for use by the Security Trustee or its nominee on the Aircraft.

4. Lessee undertakes that it will promptly notify the Security Trustee upon an officer of the Lessee becoming aware that the Lessee or any sub-lessee is in default under the Agreement, any addendum or any Goldcare Agreement (as defined in the Agreement) relating to the Aircraft.

5. Lessee will remain responsible to Boeing for any amounts due to Boeing with respect to the Aircraft under the Agreement prior to Boeing's receipt of such notice. We request that Boeing acknowledge receipt of this letter and confirm the following by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned:

(a) the transfer of the rights set forth above and that the Security Trustee or its nominee shall be entitled to assume the rights, duties and obligations of the Lessee under the Agreement (if the Security Trustee so elects).

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

NORWEGIAN AIR INTERNATIONAL                BANK OF UTAH, as Security Trustee
LIMITED

By _____                 By _____

Title _____                 Title _____

Dated _____                   Dated _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Receipt of the above letter is acknowledged effective as of the date indicated below.

THE BOEING COMPANY

By _____

Title    Attorney-in-Fact

Dated _____

MSN    _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**
**GOLDCARE LESSOR SUPPORT AGREEMENT ASSIGNMENT**
**MSN 42831**

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by                    )

**NORWEGIAN AIR INTERNATIONAL**                              )
**LIMITED**
acting by
its lawfully appointed attorney

.......................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:      ....V.................................

Name:                     ..........Vanessa Caesar...........
                                Imbus House
Address:                  ····Financial Administrator····

**The Security Trustee**

**EXECUTED** as a **DEED** by                    )
**BANK OF UTAH**                                  )
acting by                                         )
its lawfully appointed attorney

.......................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:      .............................................

Name:                     .............................................

Address:                  .............................................

MSN 42831 – GoldCare Lessor Support
Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**
**GOLDCARE LESSOR SUPPORT AGREEMENT ASSIGNMENT**
**MSN 42831**

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by          )

**NORWEGIAN AIR INTERNATIONAL**          )
**LIMITED**
acting by
its lawfully appointed attorney                    …………………………………..
                                                    Lawfully appointed attorney

in the presence of:

Witness's Signature:   …………………………………..

Name:   …………………………………..

Address:   …………………………………..

**The Security Trustee**

**EXECUTED** as a **DEED** by          )
**BANK OF UTAH**          )
acting by          )
its lawfully appointed ~~attorney~~ **Vice President**

                                                    …………………………………..
                                                    Lawfully appointed ~~attorney~~   **Vice President**

in the presence of:

Witness's Signature:   …………………………………..

Name:   **Marie Stapley**
        **Legal Assistant**

Address:   **200 E. South Temple, Ste 210**
           **Salt Lake City, Utah 84111**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-7

FILED DATE: 1/11/2023 2:57 PM   2023L000001



**PDF output of your Enquiry Thread in relation to  - Collector-General's - General query**

Enquiry ID: 1805-45180 - My Reference: 37241.32

**MASON HAYES & CURRAN 22/05/2018  09:44**

**18/05/2018**
**12:10**



Dear Sirs,

Pursuant to Section 1001 of the Taxes Consolidation Act, 1997. I attach a Form C1 Companies Registration Office filing in respect of the GoldCare Lessor Support Agreement Assignment relating to one (1) Boeing Model 737-8 aircraft bearing manufacturers serial number 42831 and registration mark EI-FYG, equipped with two (2) CFM model LEAP-1B27 engines with manufacturers serial numbers 602391 and 602406, in relation to the following company:

1.      Company Name: Norwegian Air International Limited
2.      Company Number: 525771
3.      Tax Number: IE 3222152QH
4.      Chargeholder: Bank of Utah
5.      Date of Charge: 16 May 2018

Kindly acknowledge receipt.

Mason Hayes & Curran

**18/05/2018**
**17:08**



Dear Sirs

I wish to acknowledge receipt of your email in this office on the 18th of May 2018.

Kind Regards

Mairead Quaid
Customer Services
061- 488561

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-8

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## Certificate of the Registration of a Charge Issued
## Pursuant to Section 409 of the Companies Act 2014.

| | | |
|---|---|---|
| I Hereby Certify that a | : | **GOLDCARE LESSOR SUPPORT AGREEMENT ASSIGNMENT DATED 16 MAY 2018 IN RESPECT OF ONE (1) BOEING MODEL 737-8 AIRCRAFT BEARING MANUFACTURER'S SERIAL NUMBER 42831 AND REGISTRATION MARK EI-FYG, EQUIPPED WITH TWO (2) CFM MODEL LEAP-1B27 ENGINES WITH MANUFACTURER'S SERIAL NUMBERS 602391 AND 602406 BETWEEN NORWEGIAN AIR INTERNATIONAL LIMITED (THE "ASSIGNOR") AND BANK OF UTAH (IN ITS CAPACITY AS SECURITY TRUSTEE, THE "SECURITY TRUSTEE") (THE "GOLDCARE LESSOR SUPPORT AGREEMENT ASSIGNMENT").** |
| Charge Number | : | **111** |
| Submission Number | : | **12734629** |
| Date And Time Of Priority | : | **Friday, the 18th Day of May, 2018 at 11:53:52** |
| Created by | : | **NORWEGIAN AIR INTERNATIONAL LIMITED** |
| Company Number | : | **525771** |
| Person Entitled | | **BANK OF UTAH AS SECURITY TRUSTEE** |
| Given Under my Hand this | : | **Friday, the 18th Day of May, 2018** |

~~Signature~~

_____

**For Registrar of Companies**

Signed By: On Behalf of The Registrar of Companies
Signing Date: Tue, 22 May 2018 06:39:03 GMT +01:00
Reason: I certify this document
Location: Dublin, Ireland
Contact Info: digital.certs@cro.ie



FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-9



FILED DATE: 1/11/2023 2:57 PM   2023L000001

**C1 Submission Number: 12734629**

# C1 - Registration Of A Charge

## Company Identification

### Registration of a charge

Date charge created                16 May 2018

### Company Details

Company Number          525771

Company Name            NORWEGIAN AIR INTERNATIONAL LIMITED

### Description of the Charge

Description     GoldCare Lessor Support Agreement Assignment dated 16 May 2018 in respect of one (1) Boeing model 737-8 aircraft bearing manufacturer's serial number 42831 and registration mark EI-FYG, equipped with two (2) CFM model LEAP-1B27 engines with manufacturer's serial numbers 602391 and 602406 between Norwegian Air International Limited (the "Assignor") and Bank of Utah (in its capacity as security trustee, the "Security Trustee") (the "GoldCare Lessor Support Agreement Assignment").

# Persons Entitled - Particulars of Property

## Persons entitled to the charge

**1**

Surname/Company Name        Bank of Utah as Security Trustee

Forename (if person)

Address         200 East South Temple
                Suite 210
                Salt Lake City
                UT 84111

### Short particulars of the property charged

Pursuant to clause 3.1 of the GoldCare Lessor Support Agreement Assignment, the Assignor thereby assigned and agreed to assign, by way of security, with full title guarantee the Assigned Property to the Security Trustee absolutely (but subject to redemption upon irrevocable payment and discharge in full of the Secured Obligations to the satisfaction of the Security Trustee) ,reserving exclusively to the Assignor however all the Assignor's rights and interests in and to the Assigned Documents as and to the extent that they relate to aircraft other than the Aircraft.

Capitalised terms used but not defined herein shall have the meaning ascribed to them in the Further Particulars.

C1 Submission Number: 12734629

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## Further particulars of the property charged

Definitions

All capitalised terms used herein and not otherwise defined herein shall have the meaning ascribed to them in the GoldCare Lessor Support Agreement Assignment or in Part 1 of Appendix 1 to the Participation Agreement, including by way of incorporation and/or reference to any other document.

"Aircraft" means the Boeing model 737 - 8 aircraft bearing manufacturer's serial number 42831, together with the related engines, parts and manuals and technical records.

"Assigned Documents" means:

(a) the GoldCare Lessor Support Agreement;

(b)  the Assignment from Arctic;

(c) the Assignment from the Lessor; and

(d) the Assignment from the Lessee.

"Assigned Property" means all the Assignor's right, title and interest existing on 16 May 2018 and in the future (whether contractual, proprietary or of any other kind and including the right to sue for damages and any returned premium) under or in connection with the Assigned Documents in respect of the Aircraft.

"Assignment from Arctic" means the assignment notice and acknowledgemt in respect GoldCare Lessor Support Agreement dated 16 May 2018 between Arctic, the Lessor and the Manufacturer.

"Assignment from the Lessee" means the assignment notice and acknowledgemt in respect GoldCare Lessor Support Agreement dated 16 May 2018 between the Lessee, the Assignor and the Manufacturer.

"Assignment from the Lessor" means the assignment notice and acknowledgemt in respect GoldCare Lessor Support Agreement dated 16 May 2018 between the Lessor, the Lessee and the Manufacturer.

"GoldCare Lessor Support Agreement" means the 737-8 GoldCare Lessor Support Agreement No. NBE-MISC-1606838 dated as of 28 June 2017 between the Manufacturer and Arctic as supplemented from time to time and to the extent relating to the Aircraft, as amended by Addendum No. 7 dated 16 May 2018 between the Manufacturer and Arctic, and as assigned to the Assignor pursuant to the Assignment from Arctic, the Assignment from the Lessor and the Assignment from the Lessee.

"Lessee" shall mean Stogofjorden Limited a company incorporated under the laws of Ireland.

"Lessor" means AAA Max 2 Limited, an exempted company incorporated in the Cayman Islands.

"Manufacturer" means The Boeing Company, a Delaware corporation, and its successors and assigns.

"Participation Agreement" means the participation agreement dated 14 May 2018 between, among others, the Lessor and the Security Trustee relating to the Aircraft.

 "Secured Obligations" shall mean:

(a) any and all monies, indebtedness, liabilities and obligations (whether actual or contingent, whether existing on 16 May 2018 or thereafter arising, whether or not for the payment of money, and including, without limitation, any obligation to pay damages) which are on 16 May 2018 or which may at any time and from time to time thereafter be due, owing, payable, or incurred or expressed to be due, owing, payable or incurred from or by the Lessor, the Lessee or either Guarantor to the Secured Parties (or any of them) (or, in the case of the Lessee, the Lessor) under the Operative Documents, including, without limitation, all obligations of:

(i) the Lessor in respect of the amounts payable pursuant to the Loan Agreement and each Loan Supplement;

**C1 Submission Number: 12734629**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(ii) the Lessee in respect of Rent and Termination Values under the Lease and each Lease Supplement;

(iii) a Permitted Sub-Lessee in respect of amounts payable by a Permitted Sub-Lessee under a Permitted Sub-Lease;

(iv) each Guarantor under its respective Guarantee: and

(v) the Lessor and/or the Lessee under the Lessor Indemnity Agreement, the Lessor Guarantee, and the Loan Agreement;

(b) any and all sums advanced by the Secured Parties (or any of them) in order to protect or preserve the Collateral or preserve their interest in the Collateral;

(c) any and all monies, obligations and/or liabilities which are stated to form part of the Secured Obligations by any provision of any Operative Document; and

(d) all Other Indebtedness.

# Particulars of persons verifying the contents of the form

## Details of Person(s) who are certifying that the information provided is correct

| | |
|---|---|
| Nature of interest in charge | Verification of charge by Lender |
| Type Of Signature | Signature as a Solicitor on behalf of an Entity |

### Individual details

| | |
|---|---|
| Surname | Fox |
| Forename | Karol |
| Firm Name | Mason Hayes & Curran |
| Is a counter signature required? | Yes |
| Nature of interest in charge | Verification of charge by Company |
| Type Of Signature | Signature as a Solicitor on behalf of an Entity |

### Individual details

| | |
|---|---|
| Surname | Gallagher |
| Forename | Laura |
| Firm Name | Matheson |

C1 Submission Number: 12734629

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# Particulars of the presenter

**Reference**

**Presenter Details**

Type of entity                              Irish Registered Company

Name                                        MHC Corporate Services Limited

Address                                     6TH FLOOR
                                            SOUTH BANK HOUSE
                                            BARROW STREET
                                            DUBLIN 4

Email Address                               johnnolan@MHC.ie

C1 Submission Number: 12734629

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# Legal References

## Collective Citations

Companies Act 2014

Legal Function Performed:

Particulars of a Charge created by a company incorporated in the State

**Companies Act 2014**

**Section: 409(3)**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-10



FILED DATE: 1/11/2023 2:57 PM   2023L000001

**PDF output of your Enquiry Thread in relation to  - Collector-General's - General query**

Enquiry ID: 1805-45180 - My Reference: 37241.32

**MASON HAYES & CURRAN 18/05/2018  12:10**

**18/05/2018 12:10**



Dear Sirs,

Pursuant to Section 1001 of the Taxes Consolidation Act, 1997. I attach a Form C1 Companies Registration Office filing in respect of the GoldCare Lessor Support Agreement Assignment relating to one (1) Boeing Model 737-8 aircraft bearing manufacturers serial number 42831 and registration mark EI-FYG, equipped with two (2) CFM model LEAP-1B27 engines with manufacturers serial numbers 602391 and 602406, in relation to the following company:

1.	Company Name: Norwegian Air International Limited
2.	Company Number: 525771
3.	Tax Number: IE 3222152QH
4.	Chargeholder: Bank of Utah
5.	Date of Charge: 16 May 2018

Kindly acknowledge receipt.

Mason Hayes & Curran

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-11

**ADDENDUM NO. 7**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

This Addendum No. 7 is entered into on _____, 2018 (this **Addendum**) by and between Arctic Aviation Assets Designated Activity Company (**Customer**) and The Boeing Company, a Delaware corporation (**Boeing**). This Addendum incorporates by reference the terms and conditions of the GoldCare Lessor Support Agreement No. NBE-MISC-1606838 dated 28 June 2017 (the **Agreement**), between Customer and Boeing.

Capitalized terms used in this Addendum which are not defined herein have the meanings set forth in the Agreement.  All Covered Maintenance Service Amounts set out below are in 2016 base year dollars, and subject to escalation as set forth in Exhibit B. "Escalation Price Adjustment" to the Agreement. The terms of this Addendum apply exclusively to the aircraft identified in item 3 below.

1.  Lessee's name: <u>Norwegian Air International Limited</u>

2.  GTA Aircraft model: <u> 737-8</u>

3.  GTA Aircraft MSN: <u>42831</u>

4.  GTA Aircraft Delivery Date from Boeing on or about: <u>16 May 2018 (estimated)</u>

5.  GTA Aircraft Owner/Lessor: AAA Max 2 Limited

6.  Date of Lease: _____

    (i) Aircraft Lease Agreement dated _____ between Orphan SPV and Stogofjorden Limited.

    (ii) Aircraft Sublease Agreement dated on or about the date hereof between Stogofjorden Limited and Norwegian Air International Limited.

7.  Initial term of Lease for GTA Aircraft (not including extensions): <u>12 years</u>

8.  Extension terms in Lease for GTA Aircraft (and indicate whether covered by the Agreement) and note any early termination options: <u>No extension option.  Lessee option to terminate early and purchase the aircraft by payment of a termination value.</u>

9.  Name, date and reference of GoldCare Agreement covering the GTA Aircraft:

    Boeing GoldCare Agreement No. NSB-SU-1601152 dated July 28, 2016

10. Term of GoldCare Agreement for GTA Aircraft: <u>12 years</u>

11. HMV to be covered for GTA Aircraft: (check one) __<u>X</u>__ Yes ____ No

Page 1

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**ADDENDUM NO. 7**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

12. Landing Gear (Serial Nos. : MLG – LH MAL14217Y6920,  RH MAL14218Y6920,  NLG GK00128Y6920)

Landing Gear Exchange or Overhaul to be covered for GTA Aircraft: (check one)  __X__ Yes _____ No

13. APU (Serial No. P-       )

APU Services to be covered for GTA Aircraft: (check one)  __X__ Yes _____ No

14. Covered Maintenance Service Amount for HMV:

   a. 9-HMV: $6,062 (Six Thousand Sixty-Two US Dollars) per month

   b. 12-HMV: $7,522 (Seven Thousand Five Hundred Twenty-Two US Dollars) per month

15. Covered Maintenance Service Amount for Landing Gear Exchange or Overhaul (whichever is applicable):

   a. Landing Gear Exchange and Overhaul $3,386 (Three Thousand Three Hundred Eighty-Six US Dollars) per month

   b. Overhaul $2,684 (Two Thousand Six Hundred Eighty-Four US Dollars) per month

16. Covered Maintenance Service Amount for APU Services:  $6,860 (Six Thousand Eight Hundred Sixty US Dollars) per month.

17. Covered Maintenance Services description, terms and conditions are in the Agreement.

18. GTA Aircraft previously covered by separate Addendum:(check one)

   _____ Yes  __X__ No

   If Yes:

   a. Accrued amounts from prior Addendum for the following Covered Maintenance Services:

      i.    HMV: $ ---NA-------___

      ii.   Landing Gear (select which of the following is applicable):

            (i)    Exchange: $ ---NA-------__

**ADDENDUM NO. 7**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

       (ii)     Overhaul: $__---NA-------__

    iii.     APU Services: $__---NA------__

    b.    The sums set out in Article 18.a herein are based on the escalation provisions of the prior addendum.

19.   <u>Term</u>:

Upon completion of all of the obligations specified herein and in the Agreement, or upon the GTA Aircraft resuming coverage under GoldCare following a Triggering Event, the Agreement will be deemed to be amended to remove this Addendum and this Addendum will expire.

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**ADDENDUM NO. 7**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

IN WITNESS WHEREOF, the Boeing and Customer have executed this Addendum as of _____, 2018 ___.

Arctic Aviation Assets Designated Activity Company

By: _____
Name:
Title:        Tore Jenssen
              Attorney-In-Fact

AAA MAX 2 LIMITED

By: _____
Name:
Title:

STOGOFJORDEN LIMITED

By: _____
Name:
Title:

NORWEGIAN AIR INTERNATIONAL LIMITED

By: _____
Name:
Title:

THE BOEING COMPANY

By: _____
Name:
Title: Attorney-In-Fact

NBE-MISC-1606838                                                    Page 4
Addendum No. 7 – MSN 42831

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**ADDENDUM NO. 7**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

IN WITNESS WHEREOF, the Boeing and Customer have executed this Addendum as of _____, 2018____.

Arctic Aviation Assets Designated Activity Company

By: _____
Name:
Title:

AAA MAX 2 LIMITED

By: _____
Name: Karen Ellerbe
Title: Attorney-in- Fact

STOGOFJORDEN LIMITED

By: _____
Name:
Title:

NORWEGIAN AIR INTERNATIONAL LIMITED

By: _____
Name:
Title:

THE BOEING COMPANY

By: _____
Name:
Title: Attorney-In-Fact

NBE-MISC-1606838                                              Page 4
Addendum No. 7 – MSN 42831

**BOEING PROPRIETARY**

**ADDENDUM NO. 7**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

IN WITNESS WHEREOF, the Boeing and Customer have executed this Addendum as of _____, 2018 ___.

Arctic Aviation Assets Designated Activity Company

By: _____
Name:
Title:

AAA MAX 2 LIMITED

By: _____
Name:
Title:

STOGOFJORDEN LIMITED

By: _____
Name:        Tore Jenssen
Title:        Attorney-In-Fact

NORWEGIAN AIR INTERNATIONAL LIMITED

By: _____
Name:
Title:

THE BOEING COMPANY

By: _____
Name:
Title: Attorney-In-Fact

NBE-MISC-1606838                                          Page 4
Addendum No. 7 – MSN 42831

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**ADDENDUM NO. 7**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

IN WITNESS WHEREOF, the Boeing and Customer have executed this Addendum as of _____, 2018 ___.

Arctic Aviation Assets Designated Activity Company

By: _____
Name:
Title:

AAA MAX 2 LIMITED

By: _____
Name:
Title:

STOGOFJORDEN LIMITED

By: _____
Name:
Title:

NORWEGIAN AIR INTERNATIONAL LIMITED

By: _____
Name: EDMOND NAUGHTON
Title: DIRECTOR

THE BOEING COMPANY

By: _____
Name:
Title: Attorney-In-Fact

**ADDENDUM NO. 7**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

IN WITNESS WHEREOF, the Boeing and Customer have executed this Addendum as of _____, 2018.

ARCTIC AVIATION ASSETS DESIGNATED ACTIVITY COMPANY

By: _____
Name:
Title:

AAA MAX 2 LIMITED

By: _____
Name:
Title:

STOGOFJORDEN LIMITED

By: _____
Name:
Title:

NORWEGIAN AIR INTERNATIONAL LIMITED

By: _____
Name:
Title:

THE BOEING COMPANY

By: _____
Name: JON LANTORIA
Title: Attorney-In-Fact

FILED DATE: 1/11/2023 2:57 PM  2023L000001

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-12

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**ADDENDUM NO. 15**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

This Addendum No. 15 is entered into on _9 March____, 2020 (this **Addendum**) by and between Arctic Aviation Assets Designated Activity Company (**Customer**) and The Boeing Company, a Delaware corporation (**Boeing**). This Addendum incorporates by reference the terms and conditions of the GoldCare Lessor Support Agreement No. NBE-MISC-1606838 dated 28 June 2017 (the **Agreement**), between Customer and Boeing.

Capitalized terms used in this Addendum which are not defined herein have the meanings set forth in the Agreement. All Covered Maintenance Service Amounts set out below are in 2016 base year dollars, and subject to escalation as set forth in Exhibit B. "Escalation Price Adjustment" to the Agreement. The terms of this Addendum apply exclusively to the aircraft identified in item 3 below.

1.  Lessee's name: Norwegian Air Sweden AB

2.  GTA Aircraft model: _737-8_

3.  GTA Aircraft MSN: 42831

4.  GTA Aircraft Delivery Date from Boeing on or about: 16 May 2018 (estimated)

5.  GTA Aircraft Owner/Lessor: AAA Max 2 Limited

6.  Date of Lease: _____ See Below _____

    (i) Aircraft Lease Agreement dated 14 May 2018 between AAA MAX 2 Limited and Stogofjorden Limited.

    (ii) Aircraft Sublease Agreement dated on or about the date hereof between Stogofjorden Limited and Norwegian Air Sweden AB.

7.  Initial term of Lease for GTA Aircraft (not including extensions): 12 Years

    8. Extension terms in Lease for GTA Aircraft (and indicate whether covered by the Agreement) and note any early termination options: No extension option. Lessee option to terminate early and purchase the aircraft by payment of a termination value.

9.  Name, date and reference of GoldCare Agreement covering the GTA Aircraft:

    Boeing GoldCare Agreement No. NSB-SU-1601152 dated July 28, 2016

10. Term of GoldCare Agreement for GTA Aircraft: 12 years

11. HMV to be covered for GTA Aircraft: (check one) __X__ Yes ____ No

Page 1

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**ADDENDUM NO. 15**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

12. Landing Gear (Serial Nos. : MLG – LH MAL14217Y6920, RH MAL14218Y6920, NLG GK00128Y6920)

Landing Gear Exchange or Overhaul to be covered for GTA Aircraft: (check one) __X__ Yes ____ No

13. APU (Serial No. P-12340)

APU Services to be covered for GTA Aircraft: (check one) __X__ Yes ____ No

14.   Covered Maintenance Service Amount for HMV:

   a.   9-HMV: $6,062 (Six Thousand Sixty-Two US Dollars) per month

   b.   12-HMV: $7,522 (Seven Thousand Five Hundred Twenty-Two US Dollars) per month

15.   Covered Maintenance Service Amount for Landing Gear Exchange or Overhaul (whichever is applicable):

   a.   Landing Gear Exchange and Overhaul $3,386 (Three Thousand Three Hundred Eighty-Six US Dollars) per month

   b.   Overhaul $2,684 (Two Thousand Six Hundred Eighty-Four US Dollars) per month

16.   Covered Maintenance Service Amount for APU Services:  $6,860 (Six Thousand Eight Hundred Sixty US Dollars) per month.

17.   Covered Maintenance Services description, terms and conditions are in the Agreement.

18.   GTA Aircraft previously covered by separate Addendum:(check one)

   ____ Yes __X__ No

   If Yes:

   a.   Accrued amounts from prior Addendum for the following Covered Maintenance Services:

      i.   HMV: $ ---NA-------

      ii.   Landing Gear (select which of the following is applicable):

         (i)   Exchange: $ ---NA-------

NBE-MISC-1606838                                                       Page 2
Addendum No. 15 – MSN 42831

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**ADDENDUM NO. 15**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

     (ii)    Overhaul: $__---NA-------__

   iii.    APU Services: $__---NA-------__

  b.    The sums set out in Article 18.a herein are based on the escalation provisions of the prior addendum.

19.   <u>Term</u>:

Upon completion of all of the obligations specified herein and in the Agreement, or upon the GTA Aircraft resuming coverage under GoldCare following a Triggering Event, the Agreement will be deemed to be amended to remove this Addendum and this Addendum will expire.

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**ADDENDUM NO. 15**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

IN WITNESS WHEREOF, the Boeing and Customer have executed this Addendum as of _9 March_ , 2020.

ARCTIC AVIATION ASSETS DAC

By: _____

Name:   **Peter Lawless**
Title:   **Attorney-in-Fact**

AAA MAX 2 LIMITED
By: _____

Name:

Title:

STOGOFJORDEN LIMITED

By: _____

Name:   **Peter Lawless**
Title:   **Attorney-in-Fact**

NORWEGIAN AIR SWEDEN AB

By: _____

Name:

Title:

THE BOEING COMPANY

By: _Dan L. Kays_

Name: Dan L. Kays
Title: Attorney-In-Fact

NBE-MISC-1606838
Addendum No. 15 – MSN 42831                                    Page 4

**BOEING PROPRIETARY**

**ADDENDUM NO. 15**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

IN WITNESS WHEREOF, the Boeing and Customer have executed this Addendum as of __9 March__, 2020.

ARCTIC AVIATION ASSETS DAC

By: _____

Name:

Title:

AAA MAX 2 LIMITED

By: _____

Name: Elaine Anderson

Title: Director

STOGOFJORDEN LIMITED

By: _____

Name:

Title:

NORWEGIAN AIR SWEDEN AB

By: _____

Name:

Title:

THE BOEING COMPANY

By: _Dan L. Kays_

Name: Dan L. Kays

Title: Attorney-In-Fact

NBE-MISC-1606838
Addendum No. 15 – MSN 42831

Page 4

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM  2023L000001

**ADDENDUM NO. 15**
**TO**
**GOLDCARE LESSOR SUPPORT AGREEMENT**

IN WITNESS WHEREOF, the Boeing and Customer have executed this Addendum as of __9 March__, 2020.

ARCTIC AVIATION ASSETS DAC

By: _____

Name:

Title:

AAA MAX 2 LIMITED
By: _____

Name:

Title:

STOGOFJORDEN LIMITED

By: _____

Name:

Title:

NORWEGIAN AIR SWEDEN AB

By: _____

Name: HAAKON FLAATEN
Title: ATTORNEY-IN-FACT

THE BOEING COMPANY
By: _Dan L. Kays_

Name: Dan L. Kays

Title: Attorney-In-Fact

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-13

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## ASSIGNMENT NOTICE AND ACKNOWLEDGEMENT

Boeing Global Services
P. O. Box 3707
Seattle, Washington 98124-2207
U.S.A.

By Courier
1901 Oakesdale Ave. SW
U.S.A.

Attention          Vice President – Contracts
                   Mail Code 21-34

Reference is made to (a) 737-8 GoldCare Lessor Support Agreement No. NBE-MISC-1606838 dated as of 28 June 2017 (**Agreement**) between The Boeing Company (**Boeing**) and Arctic Aviation Assets Designated Activity Company (**Assignor**); and (b) Addendum No. 7 dated as of _____, 2018 (**Addendum**), pertaining to one (1) Boeing model 737-8 aircraft bearing Manufacturer's Serial Number 42831 (**Aircraft**).

Terms used herein without definition will have the same meanings as in the Agreement.

Assignor confirms for the benefit of Boeing that Assignor owns and controls the rights Assignor purports to assign herein.

In connection with purchase rights of the Aircraft, Assignor hereby assigns and agrees to assign to AAA Max 2 Limited (**Assignee**) all Assignor's rights contained in the Agreement and the Addenda related to the Aircraft (**Assigned Rights**). In connection with this assignment to accomplish this transfer of rights, as authorized by the provisions of the Agreement:

1.     Assignee acknowledges that it has received copies of the applicable provisions of the Agreement and agrees to be bound by and comply with all applicable terms and conditions of the Agreement and the Addendum, including, without limitation, the DISCLAIMER AND RELEASE and EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES in Article 7, Part 1 of Exhibit H of the Agreement and the insurance provisions in Article 8, Part 1 of Exhibit H of the Agreement. Assignee further agrees upon the written request of Boeing, to promptly execute and deliver such further assurances and documents and take such further action as Boeing may reasonably request in order to obtain the full benefits of Assignee's agreements in this paragraph; and.

2.     Assignor will remain responsible for any payments due Boeing as a result of obligations relating to the Aircraft incurred by Assignor to Boeing prior to the effective date of this letter.

3.     Notwithstanding any other provision of the Agreement, Boeing acknowledges the transfer of all of the Assignor's rights in the Agreement and the Addendum related to the Aircraft from the Assignor to the Assignee.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

We request that Boeing acknowledge receipt of this letter and confirm the transfer of rights set forth above by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned.

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Very truly yours,

ARCTIC AVIATION ASSETS                                  AAA MAX 2 LIMITED
DESIGNATED ACTIVITY COMPANY

By _____                              By _____

Title _____                           Title _____
          Tore Jenssen
Dated _____                           Dated _____
          Attorney-In-Fact

Receipt of the above letter is acknowledged and the transfer of rights under the Agreement with respect to the Aircraft described above is confirmed, effective as of the date indicated below.

THE BOEING COMPANY

By _____

Title ___ Attorney-in-Fact ___

Dated _____

MSN _____ 42831 _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

We request that Boeing acknowledge receipt of this letter and confirm the transfer of rights set forth above by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned.

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Very truly yours,

ARCTIC AVIATION ASSETS                    AAA MAX 2 LIMITED
DESIGNATED  ACTIVITY COMPANY

By _____                    By _____ Karen Ellerbe

Title _____                   Title Attorney-in-Fact

Dated _____                    Dated _____

Receipt of the above letter is acknowledged and the transfer of rights under the Agreement with respect to the Aircraft described above is confirmed, effective as of the date indicated below.

THE BOEING COMPANY

By_____

Title ___Attorney-in-Fact_____

Dated _____

MSN_____42831_____

MSN 42831                                                                 Page 2 of 2

FILED DATE: 1/11/2023 2:57 PM   2023L000001

We request that Boeing acknowledge receipt of this letter and confirm the transfer of rights set forth above by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned.

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Very truly yours,

ARCTIC AVIATION ASSETS                     AAA MAX 2 LIMITED
DESIGNATED  ACTIVITY COMPANY

By _____                 By _____

Title _____                Title _____

Dated _____                 Dated _____

Receipt of the above letter is acknowledged and the transfer of rights under the Agreement with respect to the Aircraft described above is confirmed, effective as of the date indicated below.

THE BOEING COMPANY

By _____

Title ___ Attorney-in-Fact ___

Dated _____

MSN_____ 42831

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-14

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## ASSIGNMENT NOTICE AND ACKNOWLEDGEMENT

Boeing Global Services
P. O. Box 3707
Seattle, Washington 98124-2207
U.S.A.

By Courier
1901 Oakesdale Ave. SW
U.S.A.

Attention        Vice President – Contracts
                 Mail Code 21-34

Reference is made to (a) 737-8 GoldCare Lessor Support Agreement No. NBE-MISC-1606838 dated as of 28 June 2017 (**Agreement**) between The Boeing Company (**Boeing**) and Stogofjorden Limited (as assignee of Aviation Assets Designated Activity Company, and AAA Max 2 Limited) (**Assignor**); and (b) Addendum No. 7 dated as of _____, 2018 (**Addendum**), pertaining to one (1) Boeing model 737-8 aircraft bearing Manufacturer's Serial Number 42831 (**Aircraft**).

Terms used herein without definition will have the same meanings as in the Agreement.

Assignor confirms for the benefit of Boeing that Assignor owns and controls the rights Assignor purports to assign herein.

In connection with a sublease agreement of the Aircraft, Assignor hereby assigns and agrees to assign to Norwegian Air International Limited (**Assignee**) all Assignor's rights contained in the Agreement and the Addendum related to the Aircraft (**Assigned Rights**). In connection with this assignment to accomplish this transfer of rights, as authorized by the provisions of the Agreement:

1.      Assignee acknowledges that it has received copies of the applicable provisions of the Agreement and agrees to be bound by and comply with all applicable terms and conditions of the Agreement and the Addendum, including, without limitation, the DISCLAIMER AND RELEASE and EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES in Article 7, Part 1 of Exhibit H of the Agreement and the insurance provisions in Article 8, Part 1 of Exhibit H of the Agreement. Assignee further agrees upon the written request of Boeing, to promptly execute and deliver such further assurances and documents and take such further action as Boeing may reasonably request in order to obtain the full benefits of Assignee's agreements in this paragraph; and.

2.      Arctic Aviation Assets Designated Activity Company will remain responsible for any payments due Boeing as a result of obligations relating to the Aircraft incurred by Assignor to Boeing prior to the effective date of this letter.

3.      Notwithstanding any other provision of the Agreement, Boeing acknowledges the transfer of all of the Assignor's rights in the Agreement and the Addendum related to the Aircraft from the Assignor to the Assignee.

FILED DATE: 1/11/2023 2:57 PM 2023L000001

We request that Boeing acknowledge receipt of this letter and confirm the transfer of rights set forth above by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned.

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Very truly yours,

STOGOFJORDEN LIMITED                          NORWEGIAN AIR INTERNATIONAL LIMITED

By _____ Tore Jenssen                          By _____

Title _____ Attorney-In-Fact                   Title _____

Dated _____                          Dated _____

Receipt of the above letter is acknowledged and the transfer of rights under the Agreement with respect to the Aircraft described above is confirmed, effective as of the date indicated below.

THE BOEING COMPANY

By _____

Title _____ Attorney-in-Fact

Dated _____

MSN _____ 42831

FILED DATE: 1/11/2023 2:57 PM   2023L000001

We request that Boeing acknowledge receipt of this letter and confirm the transfer of rights set forth above by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned.

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Very truly yours,

STOGOFJORDEN LIMITED                NORWEGIAN AIR INTERNATIONAL LIMITED

By _____             By _____

Title _____          Title ___DIRECTOR___

Dated _____          Dated _____

Receipt of the above letter is acknowledged and the transfer of rights under the Agreement with respect to the Aircraft described above is confirmed, effective as of the date indicated below.

THE BOEING COMPANY

By _____

Title ___Attorney-in-Fact___

Dated _____

MSN____42831____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

We request that Boeing acknowledge receipt of this letter and confirm the transfer of rights set forth above by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned.

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof

Very truly yours,

STOGOFJORDEN LIMITED                    NORWEGIAN AIR INTERNATIONAL LIMITED

By _____             By _____

Title _____          Title _____

Dated _____          Dated _____

Receipt of the above letter is acknowledged and the transfer of rights under the Agreement with respect to the Aircraft described above is confirmed, effective as of the date indicated below.

THE BOEING COMPANY

By_____

Title ___ Attorney-in-Fact ___

Dated _____

MSN_____42831_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-15

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**ASSIGNMENT NOTICE AND ACKNOWLEDGEMENT**

Boeing Global Services
P. O. Box 3707
Seattle, Washington 98124-2207
U.S.A.

By Courier
1901 Oakesdale Ave. SW
U.S.A.

Attention        Vice President – Contracts
                 Mail Code 21-34

Reference is made to (a) 737-8 GoldCare Lessor Support Agreement No. NBE-MISC-1606838 dated as of 28 June 2017 (**Agreement**) between The Boeing Company (**Boeing**) and AAA Max 2 Limited (as assignee of Arctic Aviation Assets Designated Activity Company) (**Assignor**); and (b) Addendum No. 7 dated as of _____, 2018 (**Addendum**), pertaining to one (1) Boeing model 737-8 aircraft bearing Manufacturer's Serial Number 42831 (**Aircraft**).

Terms used herein without definition will have the same meanings as in the Agreement.

Assignor confirms for the benefit of Boeing that Assignor owns and controls the rights Assignor purports to assign herein.

In connection with a lease agreement of the Aircraft, Assignor hereby assigns and agrees to assign to Stogofjorden Limited (**Assignee**) all Assignor's rights contained in the Agreement and the Addendum related to the Aircraft (**Assigned Rights**). In connection with this assignment to accomplish this transfer of rights, as authorized by the provisions of the Agreement:

1.      Assignee acknowledges that it has received copies of the applicable provisions of the Agreement and agrees to be bound by and comply with all applicable terms and conditions of the Agreement and the Addendum, including, without limitation, the DISCLAIMER AND RELEASE and EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES in Article 7, Part 1 of Exhibit H of the Agreement and the insurance provisions in Article 8, Part 1 of Exhibit H of the Agreement. Assignee further agrees upon the written request of Boeing, to promptly execute and deliver such further assurances and documents and take such further action as Boeing may reasonably request in order to obtain the full benefits of Assignee's agreements in this paragraph; and.

2.      Arctic Aviation Assets Designated Activity Company will remain responsible for any payments due Boeing as a result of obligations relating to the Aircraft incurred by Assignor to Boeing prior to the effective date of this letter.

3.      Notwithstanding any other provision of the Agreement, Boeing acknowledges the transfer of all of the Assignor's rights in the Agreement and the Addendum related to the Aircraft from the Assignor to the Assignee.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

We request that Boeing acknowledge receipt of this letter and confirm the transfer of rights set forth above by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned.

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Very truly yours,

AAA MAX 2 LIMITED                    STOGOFJORDEN LIMITED

By _____ Karen Ellerbe            By _____

Title Attorney-in-Fact                Title _____

Dated _____                Dated _____

Receipt of the above letter is acknowledged and the transfer of rights under the Agreement with respect to the Aircraft described above is confirmed, effective as of the date indicated below.

THE BOEING COMPANY

By_____

Title ___Attorney-in-Fact___

Dated _____

MSN_____42831_____

MSN 42831                                                      Page 2 of 2

FILED DATE: 1/11/2023 2:57 PM   2023L000001

We request that Boeing acknowledge receipt of this letter and confirm the transfer of rights set forth above by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned.

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Very truly yours,

| AAA MAX 2 LIMITED | STOGOFJORDEN LIMITED |
|---|---|
| By _____ | By _____ |
| Title _____ | Title _____ Tore Jenssen Attorney-In-Fact |
| Dated _____ | Dated _____ |

Receipt of the above letter is acknowledged and the transfer of rights under the Agreement with respect to the Aircraft described above is confirmed, effective as of the date indicated below.

THE BOEING COMPANY

By_____

Title __Attorney-in-Fact_____

Dated _____

MSN_____42831_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

We request that Boeing acknowledge receipt of this letter and confirm the transfer of rights set forth above by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned.

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Very truly yours,

AAA MAX 2 LIMITED                              STOGOFJORDEN LIMITED

By _____                     By _____

Title _____                  Title _____

Dated _____                  Dated _____

Receipt of the above letter is acknowledged and the transfer of rights under the Agreement with respect to the Aircraft described above is confirmed, effective as of the date indicated below.

THE BOEING COMPANY

By _____

Title ___ Attorney-in-Fact ___

Dated _____

MSN _____ 42831 _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT A-16

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## ASSIGNMENT NOTICE AND ACKNOWLEDGEMENT

Boeing Global Services
P. O. Box 3707
Seattle, Washington 98124-2207
U.S.A.

By Courier
1901 Oakesdale Ave. SW
Renton, WA 98057
U.S.A.

Attention         Vice President – Contracts
                  Mail Code 21-34

Reference is made to (a) 737-8 GoldCare Lessor Support Agreement No. NBE-MISC-1606838 dated as of 28 June 2017 (**Agreement**) between The Boeing Company (**Boeing**) and Norwegian Air International Limited (as assignee of Arctic Aviation Assets Designated Activity Company, AAA Max 2 Limited, and Stogofjorden Limited) (**Lessee**) and (b) Addendum No. 7 dated as of _____, 2018 (**Addendum**), pertaining to one (1) Boeing model 737-8 aircraft bearing Manufacturer's Serial Number 42831 (**Aircraft**).

Terms used herein without definition will have the same meanings as in the Agreement.

Lessee confirms for the benefit of Boeing that Lessee owns and controls the rights Lessee purports to assign herein.

In connection with AAA Max 2 Limited financing of the Aircraft, Lessee is entering into a Security Agreement, dated as of _____, 2018 (**Security Agreement**), between Lessee and Bank of Utah, as security trustee (**Security Trustee**), which grants a security interest in all Lessee's rights contained in the Agreement and the Addendum related to the Aircraft (**Assigned Rights**). Lessee is authorized to exercise the Assigned Rights until such time as the Security Trustee notifies Boeing as provided below that an Event of Default under the Transaction Documents (as defined in the Security Agreement) has occurred and is continuing. In connection with this assignment for security purposes, as authorized by the provisions of the Agreement:

1.      Security Trustee, as assignee of, and holder of a security interest in, the estate, right, and interest of the Lessee in and to the Agreement pursuant to the terms of the Security Agreement, acknowledges that it has received copies of the applicable provisions of the Agreement and agrees that in exercising any rights under the Agreement or asserting any claims with respect to the Aircraft or other things (including without limitation, Materials, training and services) delivered or to be delivered, its rights and remedies under the Security Agreement will be subject to the terms and conditions of the Agreement including but not limited to those related to any exclusion or limitation of liabilities or warranties, indemnity and insurance.

2.      Lessee is authorized to exercise, to the exclusion of Security Trustee all rights and powers of "Customer" under the Agreement, unless and until Boeing receives a written notice from Security Trustee, addressed to its Vice President - Contracts, Boeing Global Services at P.O. Box 3707, Seattle, Washington 98124, Mail Code 21-34 (if by mail), or (425) 237-1706 (if by facsimile) that an Event of Default under the Transaction Documents has occurred and is continuing. Until such notice has been given, Boeing will be entitled to deal solely and exclusively with Lessee. Thereafter, until Security Trustee has provided Boeing written notice that any such event no longer continues, Boeing

FILED DATE: 1/11/2023 2:57 PM  2023L000001

will be entitled to deal solely and exclusively with Security Trustee. Boeing may act with acquittance and conclusively rely on any such notice.

3. Following written notice from the Security Trustee to Boeing that an Event of Default under the Transaction Documents has occurred and is continuing, Boeing agrees that:

   (a) the Security Trustee or its nominee may at any time (but shall not be obliged to) assume all rights, duties and obligations of the Lessee under the Agreement, including the rights to any payments or maintenance under the Agreement; and

   (b) Boeing will work directly with the Security Trustee to ensure that the rights of the Lessee or any sub-lessee to such payments or maintenance under the Agreement, any addendum or any Goldcare Agreement (as defined in the Agreement) (or if the Agreement or relevant Goldcare Agreement have been terminated the rights as immediately before such termination) are available for use by the Security Trustee or its nominee on the Aircraft.

4. Lessee undertakes that it will promptly notify the Security Trustee upon an officer of the Lessee becoming aware that the Lessee or any sub-lessee is in default under the Agreement, any addendum or any Goldcare Agreement (as defined in the Agreement) relating to the Aircraft.

5. Lessee will remain responsible to Boeing for any amounts due to Boeing with respect to the Aircraft under the Agreement prior to Boeing's receipt of such notice. We request that Boeing acknowledge receipt of this letter and confirm the following by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned.

   (a) the transfer of the rights set forth above and that the Security Trustee or its nominee shall be entitled to assume the rights, duties and obligations of the Lessee under the Agreement (if the Security Trustee so elects).

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Very truly yours,

NORWEGIAN AIR INTERNATIONAL LIMITED

By _____

Title ___DIRECTOR___

Dated _____

BANK OF UTAH, as security trustee

By _____

Title _____

Dated _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

will be entitled to deal solely and exclusively with Security Trustee. Boeing may act with acquittance and conclusively rely on any such notice.

3.     Following written notice from the Security Trustee to Boeing that an Event of Default under the Transaction Documents has occurred and is continuing, Boeing agrees that:

      (a)     the Security Trustee or its nominee may at any time (but shall not be obliged to) assume all rights, duties and obligations of the Lessee under the Agreement, including the rights to any payments or maintenance under the Agreement; and

      (b)     Boeing will work directly with the Security Trustee to ensure that the rights of the Lessee or any sub-lessee to such payments or maintenance under the Agreement, any addendum or any Goldcare Agreement (as defined in the Agreement) (or if the Agreement or relevant Goldcare Agreement have been terminated the rights as immediately before such termination) are available for use by the Security Trustee or its nominee on the Aircraft.

4.     Lessee undertakes that it will promptly notify the Security Trustee upon an officer of the Lessee becoming aware that the Lessee or any sub-lessee is in default under the Agreement, any addendum or any Goldcare Agreement (as defined in the Agreement) relating to the Aircraft.

5.     Lessee will remain responsible to Boeing for any amounts due to Boeing with respect to the Aircraft under the Agreement prior to Boeing's receipt of such notice. We request that Boeing acknowledge receipt of this letter and confirm the following by signing its acknowledgment and forwarding one copy of this letter to each of the undersigned.

      (a)     the transfer of the rights set forth above and that the Security Trustee or its nominee shall be entitled to assume the rights, duties and obligations of the Lessee under the Agreement (if the Security Trustee so elects).

This notice and acknowledgement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Very truly yours,

NORWEGIAN AIR INTERNATIONAL LIMITED

BANK OF UTAH, as security trustee

By _____

By _____

Title _____

Title _____ **John Thomas** _____
           **Vice President**

Dated _____

Dated _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Receipt of the above letter is acknowledged effective as of the date indicated below.

THE BOEING COMPANY

By _____

Title ___Attorney-in-Fact___

Dated _____

MSN _____42831_____

FILED
1/11/2023 2:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000001
Calendar, S
21000066

FILED DATE: 1/11/2023 2:57 PM    2023L000001

# GROUP EXHIBIT B

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT B-1

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# MASTER LEASE AGREEMENT

### 14 MAY 2018

**Between**

**AAA MAX 2 LIMITED**
**as Lessor**

**and**

**STOGOFJORDEN LIMITED**
**as Lessee**

**Up to two (2) Boeing model 737 - 8 aircraft**

# ALLEN & OVERY

Allen & Overy LLP

0121556-0000001 BK:44097776.5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**CONTENTS**

| Clause | | Page |
|---|---|---|
| 1. | Definitions and interpretation | 1 |
| 2. | Agreement to Lease; Term | 1 |
| 3. | Rent | 2 |
| 4. | Lessor's Disclaimer of Warranties; Manufacturers' Warranties | 4 |
| 5. | Purchase Options; Return of Aircraft | 6 |
| 6. | Liens | 9 |
| 7. | Registration, Maintenance, Operation and Possession | 9 |
| 8. | Replacement; Temporary Installation; Pooling; Alterations, Modifications and Additions; Etc | 23 |
| 9. | Loss, Destruction, Requisition, Etc | 27 |
| 10. | Insurance | 31 |
| 11. | Absolute Obligations | 39 |
| 12. | Assignment | 40 |
| 13. | Lease Events of Default and Termination Events | 40 |
| 14. | Remedies | 44 |
| 15. | Further Assurances; Investment of Security Funds | 46 |
| 16. | Notices | 47 |
| 17. | Miscellaneous; Governing Law | 47 |
| 18. | Security for the Lessor's Obligation | 48 |
| 19. | Lessor's Right to Perform for Lessee | 48 |
| 20. | English Language Prevails | 49 |
| 21. | Complete Agreement | 49 |
| 22. | Limitation of Liability of the Lessor | 49 |

**Schedule**

| 1. | Form of Acceptance Certificate | 50 |
|---|---|---|
| 2. | Form of Lease Supplement | 51 |
| 3. | Form of Eurocontrol Letter | 55 |
| 4. | Form of EU ETS Authority Letter | 56 |

| Signatories | 57 |
|---|---|

0121556-0000001 BK:44097776.5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS MASTER LEASE AGREEMENT** dated _14 May 2018 (this **Lease**)

**AMONG**

(1)     **AAA MAX 2 LIMITED**, an exempted company  with limited liability incorporated and existing under the laws of the Cayman Islands, as lessor (the **Lessor**); and

(2)     **STOGOFJORDEN LIMITED**, a limited liability company duly incorporated under the laws of Ireland (the **Lessee**).

 **WITNESSETH:**

(1)     **WHEREAS,** pursuant to that certain Participation Agreement, dated as of the date of execution and delivery thereof (as amended, supplemented and modified from time to time, the **Participation Agreement**), among, *inter alios*, the Lessor, Walkers Fiduciary Limited, as lessor parent, the Lessee, Apple Bank for Savings, as lender and as Agent and Bank of Utah, as security trustee, the Lessor and the Lessee have agreed to enter into this Lease.

(2)     **WHEREAS,** pursuant to each Purchase Assignment in respect of an Aircraft, the Lessor will acquire certain rights under the Purchase Agreement in respect of such Aircraft.

(3)     **WHEREAS,** pursuant to the terms and conditions of this Lease, the Lessor has agreed to lease each Aircraft to the Lessee and the Lessee has agreed to lease each Aircraft from the Lessor.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

**1.      DEFINITIONS AND INTERPRETATION**

**1.1     Definitions**

Unless the context otherwise requires, capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in part 1 of appendix 1 to the Participation Agreement for all purposes of this Lease.

**1.2     Interpretation**

This Lease shall be interpreted in accordance with the rules of construction set forth in part 2 of appendix 1 to the Participation Agreement.

**2.      AGREEMENT TO LEASE; TERM**

**2.1     Delivery**

The Lessor hereby agrees on each Delivery Date for an Aircraft, subject to (a) the purchase of such Aircraft by the Lessor to be delivered pursuant to the Participation Agreement, the Purchase Agreement and the Purchase Assignment and (b) the satisfaction or waiver of the conditions precedent with respect to such Aircraft set forth or referred to in clause 4 of the Participation Agreement, to accept delivery of, and subject to clause 2 of the Participation Agreement to lease to the Lessee hereunder, and the Lessee hereby agrees, subject to the foregoing and the satisfaction of the conditions precedent (with respect to such Aircraft) set forth in clause 5 of the Participation Agreement, to accept delivery of, to sign the Acceptance Certificate and to lease from the Lessor hereunder, such Aircraft, whereupon the Term for such Aircraft shall commence.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**2.2     Acceptance**

The Lessee hereby agrees that the execution of the Acceptance Certificate for an Aircraft in the form of Schedule 1 hereto shall be deemed to constitute unconditional, absolute and irrevocable acceptance of such Aircraft by the Lessee under this Lease.

**2.3     Term**

Subject to acceptance of an Aircraft as provided in Clauses 2.1 and 2.2, the Lessee hereby leases from the Lessor such Aircraft for the Term applicable thereto.

**2.4     Cape Town Convention**

(a)     The parties hereto agree that, for all purposes of the Cape Town Convention, upon execution of a Lease Supplement (i) this Lease, together with such Lease Supplement, will constitute a separate International Interest with respect to the Airframe and each Engine identified in such Lease Supplement, (ii) such Airframe and Engines each constitute an Aircraft Object and (iii) this Lease, together with such Lease Supplement, will constitute an agreement for the registration of such Airframe.

(b)     If there is any change to the manner in which the Cape Town Convention is implemented in the Government of Registry, the Lessee shall take such action as the Lessor may require in relation to such change, including:

   (i)     amending or re-executing any Operative Document;

   (ii)     registering, perfecting and/or preserving any International Interest(s) vested in the Lessor and the Secured Parties with respect to the Airframe and/or any Engine; and

   (iii)     entry into agreements (subordination or otherwise) to protect the priority of any International Interest(s) or other registrable interests referred to in the foregoing paragraphs (i) and/or (ii).

(c)     The Lessee agrees to indemnify on demand and shall pay or reimburse the Agent, the Lenders, the Insurer Representative, each Insurer Group Member, the Lessor, the Lessor Parent and the Security Trustee for any reasonable costs and expenses (including reasonable fees and disbursements of legal counsel and other experts employed or retained by such Person) incurred by such Person in connection with any action taken pursuant to paragraph (b) above.

**3.     RENT**

**3.1     Initial Rent**

On or prior to each Delivery Date, the Lessee agrees to pay the Lessor the Initial Rent in Dollars for the Aircraft to be delivered on such Delivery Date.

**3.2     Basic Rent**

In addition, the Lessee agrees to pay the Lessor rent (the **Basic Rent**) for each Aircraft in euro with respect to each Rent Period in arrear on each Basic Rent Payment Date occurring during the Term for such Aircraft, in each case, in an amount calculated in accordance with paragraph (a) through (b) below.

(a)     For all purposes of this Lease, the Basic Rent payable in respect of each Aircraft on each Basic Rent Payment Date for such Aircraft occurring during the Term for such Aircraft shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

be equal to the sum of (i) the "Principal Instalment" set forth in Schedule I to the Lease Supplement for such Aircraft for the relevant Basic Rent Payment Date and (ii) the "Interest Instalment" set forth in Schedule I to the Lease Supplement for such Aircraft for the relevant Basic Rent Payment Date.

(b)    Each instalment of Basic Rent for an Aircraft payable on any Basic Rent Payment Date for such Aircraft shall in all events be in an amount that is equal to the amount payable by the Lessor to the Agent under the Loan Agreement in respect of the scheduled principal of, and interest on, the Loan for such Aircraft due on the corresponding Loan Payment Date.

**3.3**    **Supplemental Rent**

The Lessee shall pay all Supplemental Rent to the Lessor or to such other Person to whom such amount may be owed under the Operative Documents in the currency (whether euro or another currency) in which the same is due and owing, and such Supplemental Rent shall be payable within thirty (30) days of demand upon the Lessee (or within such longer period as the Lessor, acting reasonably and having regard to all relevant circumstances (including, without limitation, the timing of any approvals or licenses required from any Government Body of the Government of Registry and/or the jurisdiction of incorporation or formation of the Lessee in order for such payment to be lawfully made) may agree), provided that if any such demand has been made and subsequent to the making of such demand a Material Default, Termination Event or an Event of Default shall occur, any such Supplemental Rent shall be payable forthwith upon the occurrence of such Material Default, Termination Event or Event of Default.  In the event of any failure on the part of the Lessee to pay any Supplemental Rent, the Lessor shall have the same rights, powers and remedies provided for herein or by law or equity or otherwise as in the case of non-payment of Basic Rent.  The Lessee will also pay interest on demand to the recipient entitled thereto, as Supplemental Rent, to the extent permitted by Applicable Laws, at a rate per annum equal to the applicable Post-Default Rate on any part of any instalment of Basic Rent not paid when due for the period from and including the due date thereof to but excluding the date on which the same is paid in full and, in the case of payment to any of the Lessor, the Lenders, the Agent, the Insurer Representative, the Security Trustee or any other Person, on any payment of Supplemental Rent payable but not paid when due or demanded by the recipient entitled thereto for the period from and including the due date thereof to but excluding the date on which the same is paid in full.

**3.4**    **Manner of Payment**

(a)    All Rent and other sums payable hereunder shall be paid by 9:00 a.m. (New York City time) on the date payment is due, in euro (or, in the case of any Supplemental Rent denominated in a currency other than euro, in the relevant currency) and in immediately available funds (or such other funds as are from time to time customary for the settlement of international banking transactions in euro or other relevant currency in London or other relevant jurisdiction of such other currency).  Whenever any payment of Basic Rent shall become due on a day which is not a Business Day, the due date thereof shall be the immediately preceding Business Day, provided always that the amount of Basic Rent shall not be adjusted by reason of such payment being made on such immediately preceding Business Day.

(b)    Whenever any payment (other than a payment of Basic Rent) shall become due on a date which is not a Business Day, or if any such payment is payable on demand and demand is not made on a Business Day or is made on a Business Day but is made outside normal banking hours of the recipient of such demand, demand for such payment shall be deemed to have been made on the immediately succeeding Business Day, and if such payment includes any payment of interest (or an amount calculated or determined by reference to interest), the amount payable shall be adjusted accordingly.  All payments of Rent to the Lessor and all other amounts payable hereunder by the Lessee to the Lessor shall be paid to such account as the Lessor may specify from time to time in

FILED DATE: 1/11/2023 2:57 PM   2023L000001

writing not less than thirty (30) Business Days prior to the date on which the relevant amount is payable.

**3.5**      **Absolute Obligation**

The obligation of the Lessee to pay Rent hereunder shall be absolute and unconditional as more fully set forth in Clause 11.  To the extent Taxes arise from the leasing of any Aircraft to the Lessee under this Lease which are payable by way of withholding by the Lessee, such Taxes shall be deducted and paid by the Lessee by way of withholding, and the Lessor agrees that the full amount of Rent due under this Lease in respect of an Aircraft shall be the amount of Basic Rent payable in respect of such Aircraft under Clause 3.2 increased by any such Taxes withheld by the Lessee.

**3.6**      **Associated Rights**

The Lessee hereby agrees to pay and perform all of its obligations under the Operative Documents to which it is a party and further acknowledges and agrees that the payment of Rent hereunder and the performance by the Lessee of its obligations under the other Operative Documents constitute Associated Rights and are secured by and/or associated with the relevant Aircraft and Engines.

**3.7**      **Assignment of Rent**

Pursuant to the Security Documents, the Lessor has assigned its right to receive Basic Rent and Termination Value hereunder to the Security Trustee, and pursuant to such assignment the Lessor hereby directs, and the Lessee hereby agrees, that all Basic Rent and Termination Value payable to the Lessor hereunder shall be paid directly to the Agent (unless a Material Default, Termination Event or an Event of Default shall have occurred and be continuing and the Insurer Representative or the Security Trustee has given notice to the Agent and the Lessor in which case the Basic Rent and Termination Value shall be paid directly to the Security Trustee).

**4.**      **LESSOR'S DISCLAIMER OF WARRANTIES; MANUFACTURERS' WARRANTIES**

**4.1**      **Disclaimer**

Subject to Clause 4.2, the Lessee acknowledges and agrees that (a) each Aircraft is of a size, design, capacity and manufacture selected by and acceptable to the Lessee and (b) the Lessee is satisfied that such Aircraft are suitable for its purposes.  NONE OF LESSOR, LESSOR PARENT, ANY LENDER, THE AGENT, THE SECURITY TRUSTEE, THE INSURER REPRESENTATIVE OR ANY MEMBER OF THE INSURER GROUP SHALL MAKE OR GIVE OR SHALL BE DEEMED TO HAVE MADE OR GIVEN AND HEREBY EXPRESSLY DISCLAIMS ANY REPRESENTATION, WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, AS TO (i) THE AIRWORTHINESS, VALUE, CONDITION, DESIGN, COMPLIANCE WITH SPECIFICATIONS OF, OPERATION OF, OR THE QUALITY OF THE MATERIAL OF OR WORKMANSHIP IN, OR TITLE TO, OR ANY DEFECT IN, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, (ii) THE MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE OF ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, OR AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT OR THE LIKE, OR ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (iii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT WITH RESPECT TO ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

WHETHER OR NOT IN STRICT OR ABSOLUTE LIABILITY OR ARISING FROM THE NEGLIGENCE OF LESSOR, THE LENDERS, THE AGENT, THE SECURITY TRUSTEE OR THE INSURER REPRESENTATIVE, ACTUAL OR IMPUTED, (INCLUDING ANY STATUTORY WARRANTY OR CONDITION UNDER THE LAWS OF THE UNITED STATES, ANY STATE THEREOF, THE GOVERNMENT OF REGISTRY OR THE JURISDICTION OF INCORPORATION OR FORMATION OF LESSEE) OR (iv) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF, OR DAMAGE TO, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING, FOR ANY LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES THEREFROM, IT BEING UNDERSTOOD THAT ALL SUCH RISKS, AS BETWEEN LESSEE AND SUCH OTHER PERSONS, ARE TO BE BORNE BY LESSEE, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE OPERATIVE DOCUMENTS.  NONE OF THE INSURER REPRESENTATIVE, ANY MEMBER OF THE INSURER GROUP, THE LENDERS, THE AGENT NOR THE SECURITY TRUSTEE SHALL BE LIABLE OR OTHERWISE RESPONSIBLE IN ANY MANNER FOR ANY REPRESENTATION OR WARRANTY MADE BY THE LESSOR HEREUNDER OR UNDER ANY OTHER OPERATIVE DOCUMENT.

## 4.2    Manufacturers' Warranties

None of the provisions of this Clause 4 or any other provision of this Lease shall be deemed to amend, modify or otherwise affect the representations, warranties or other obligations (express or implied) of the Manufacturer or the Engine Manufacturer or any contractor, subcontractor or supplier of the Manufacturer or the Engine Manufacturer with respect to any Aircraft, any Airframe, any Engine or any Parts, forming a part of or installed on or attached to any Aircraft, any Airframe or any Engine or to release the Manufacturer or the Engine Manufacturer or any such contractor, subcontractor or supplier from any such representation, warranty or obligation.  So long as no Event of Default or Termination Event shall have occurred and be continuing, the Lessee, or any Permitted Sub-Lessee leasing an Aircraft from the Lessee, shall have the benefit of and shall be entitled to enforce (as it shall deem appropriate), either in its own name or in the name of the Lessor (at the cost of the Lessee and in respect of which enforcement the Lessee hereby agrees to indemnify the Lessor) for the use and benefit of the Lessee (or the relevant Permitted Sub-Lessee) during the relevant Term by way of revocable license (provided that the Lessor shall not revoke such license until an Event of Default or Termination Event occurs and is continuing and shall reinstate such license in the event the Event of Default or Termination Event is cured), any and all dealer's, manufacturer's contractor's, or subcontractor's credits, guarantees, indemnities, warranties or other benefits, if any, available to the Lessor in respect of any Aircraft, any Engine and/or any Part, provided that neither the Lessee nor any Permitted Sub-Lessee shall be entitled to modify, amend or otherwise alter any of the foregoing without the prior written consent of the Security Trustee except in circumstances where such modification, amendment or alteration could not reasonably be expected to have a Material Adverse Effect in relation to the Lessor or any Secured Party, and the Lessor agrees at the Lessee's expense to do, execute and deliver such further acts, deeds, matters or things as may be reasonably requested by the Lessee to enable the Lessee to obtain customary warranty service furnished for any Aircraft, any Engine and/or Part by such dealer, manufacturer, contractor or subcontractor or any supplier as aforesaid or to exercise any other rights in relation to any of the foregoing benefits, and any moneys recovered from such enforcement shall be promptly paid to, and retained by, the Lessee (or, if directed by the Lessee, any Permitted Sub-Lessee), provided further, that if a Material Default, Termination Event or Event of Default shall have occurred and be continuing, any such moneys payable to the Lessee or Permitted Sub-Lessee shall instead be paid to the Lessor as security for, and applied to, the obligations of the Lessee Obligors under the Operative Documents in such order as the Lessor shall elect and, at such time as no Material Default, Termination Event or Event of Default shall be continuing, to the extent not so applied, promptly paid to the Lessee.  The Lessee hereby acknowledges the provisions of the Purchase Assignment, the Engine Warranties Agreement

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and each Security Agreement and of the security interests granted to the Security Trustee in respect of the Lessor's rights, title and interests in and to the Purchase Agreement and the Engine Agreement created by the Operative Documents.

## 5.  PURCHASE OPTIONS; RETURN OF AIRCRAFT

### 5.1  Purchase Options

Provided that the leasing of the relevant Aircraft under this Lease has not otherwise terminated, and no Material Default, Termination Event or Event of Default has occurred and is continuing, the Lessee may on any date falling after the third anniversary of the Delivery Date and prior to or including the scheduled end of the Term for such Aircraft, by thirty (30) days' prior written notice (or such shorter period of notice as the Lessor the Insurance Representative and the Security Trustee may agree) delivered to the Lessor (with copies to the Security Trustee, the Insurer Representative and the Agent) (which notice shall be irrevocable), elect for it or a nominee approved by the Insurer Representative (such approval not to be unreasonably withheld) (an **Approved Nominee**) to purchase such Aircraft on such date for a purchase price equal to the Termination Value in respect of such Aircraft on such date, plus any Rent in respect thereof then due and payable (including, but without duplication, any amounts payable by the Lessor or the Lessee under the Lessor Indemnity Agreement and the Loan Agreement in respect of the related prepayment of the Loan for such Aircraft) plus, if the purchase of the Aircraft occurs on the Final Maturity Date, ten euro (€10); provided that, in no event shall the Lessee have the right to purchase or elect an Approved Nominee to purchase such Aircraft without the prior written consent of the Insurer Representative unless, concurrently therewith, the Lessee shall simultaneously purchase each other Aircraft.

### 5.2  Purchase Procedure; Termination

In connection with the purchase of an Aircraft pursuant to Clause 5.1, upon indefeasible payment to the Lessor of the Termination Value in respect of such Aircraft on such date and any Rent then due in respect of such Aircraft, the Lessor will transfer to the Lessee or its Approved Nominee all of the Lessor's right, title and interest in and to such Aircraft (including any warranties relating thereto and assigned to the Lessor pursuant to the relevant Purchase Assignment and the relevant Engine Warranties Agreement), in "AS-IS, WHERE-IS" condition, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, except that the Lessor will warrant to the Lessee or its Approved Nominee that it has such title to such Aircraft as was delivered to the Lessor by the Manufacturer on the Delivery Date for such Aircraft and the lawful right to transfer such Aircraft in accordance with the terms hereof and that such Aircraft is free of all Lessor Liens attributable to it.  THE WARRANTY CONTAINED IN THE IMMEDIATELY PRECEDING SENTENCE WILL BE MADE BY LESSOR IN LIEU OF AND IN SUBSTITUTION FOR, AND LESSEE HEREBY WAIVES, RELEASES AND RENOUNCES, ALL OTHER EXPRESS OR IMPLIED WARRANTIES, CONDITIONS OR REPRESENTATIONS WITH REGARD TO THE CONDITION OR TITLE OF THE RELEVANT AIRCRAFT (INCLUDING SUCH AS TO THE STATE, DESCRIPTION, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT), AND ALL OBLIGATIONS AND LIABILITIES OF LESSOR HEREUNDER WITH RESPECT TO CONSEQUENTIAL DAMAGES THEREFROM, AND ALL RIGHTS, CLAIMS AND REMEDIES OF LESSEE, EXPRESS OR IMPLIED, ARISING OUT OF LAW OR OTHERWISE WITH RESPECT THERETO THE USE OR OPERATION OF SUCH AIRCRAFT AND ANYTHING GIVEN OR SOUGHT TO BE IMPLIED FROM ANYTHING SAID OR WRITTEN IN THE NEGOTIATIONS BETWEEN THE PARTIES HERETO OR THEIR REPRESENTATIVES PRIOR TO ENTERING INTO THIS LEASE WITH RESPECT THERETO. ANY STATUTORY OR OTHER WARRANTY, CONDITION, DESCRIPTION OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE STATE, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT IS EXPRESSLY EXCLUDED, INCLUDING BUT NOT LIMITED TO:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a)     ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS;

(b)     ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE;

(c)     ANY OBLIGATION OR LIABILITY WITH RESPECT TO ANY ACTUAL OR ALLEGED INFRINGEMENT OF PATENTS, LICENSES OR THE LIKE, OR ANY OTHER INTELLECTUAL PROPERTY;

(d)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM EACH PARTY'S OR ITS ASSIGNS' NEGLIGENCE, ACTUAL OR IMPUTED; AND

(e)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO SUCH AIRCRAFT, FOR LOSS OF USE, REVENUE OR PROFIT WITH RESPECT TO LESSEE OR FOR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF WHATEVER DESCRIPTION.

In connection with such transfer, the Lessee shall prepare and the Lessor shall execute, all in form and substance satisfactory to the Lessee and/or in a form recordable in the Government of Registry, a bill of sale evidencing each such transfer, a termination of this Lease in respect of such Aircraft and such other documents (including the discharge of the Lien of the Aircraft Mortgage in respect of such Aircraft and the other Security Documents and opinions of counsel) as the Lessee may reasonably request, all at the expense of the Lessee.  Upon a purchase of an Aircraft by the Lessee or its nominee pursuant to Clause 5.1 and Clause 5.2 or Clause 14, the leasing of such Aircraft under this Lease shall terminate.

**5.3     Return of Aircraft; Condition Upon Return**

(a)     Unless the Lessee or its nominee shall have acquired title to an Aircraft pursuant to Clause 5.2 or Clause 14, the Lessee will, upon the termination or expiration of this Lease with respect to such Aircraft (other than following an Event of Loss with respect to such Aircraft), at its own risk and expense, cause the Airframe for such Aircraft, together with the Manuals and Technical Records therefor, to be delivered to the Lessor pursuant to Clause 5.6, fully equipped with two Engines, duly installed thereon (or one or two Replacement Engines of the same manufacturer or of another manufacturer, of the same or an improved model (it being understood that such engines on such Aircraft shall be of the same or an improved model and suitable for installation and use on the Airframe for such Aircraft but having a value and remaining useful life at least equal to, and being in as good operating condition as, the Engines leased by the Lessee for such Aircraft)), duly installed thereon.

(b)     At the time of such return, (i) such Aircraft shall have a valid Certificate of Airworthiness, (ii) the Airframe and Engines or engines for such Aircraft shall be free and clear of all Liens (other than any the Lessor Liens, Lender Liens or other Liens arising under any Operative Document), (iii) the Airframe and Engines or engines for such Aircraft shall be in as good operating condition, and in proper operating condition for scheduled revenue passenger flights as provided in this Clause 5.3, Clause 7.2 and Clause 8 and (iv) such Aircraft shall, except as otherwise provided herein, be in substantially the same configuration and have installed (A) the same or equivalent avionics and other equipment, safety equipment and appurtenances as when such Aircraft was originally delivered to the Lessee hereunder and (B) all other equipment financed on the Delivery Date for such Aircraft (it being agreed that the records of the Manufacturer, including the Purchase Agreement and the Manuals and Technical Records, shall be prima facie evidence thereof).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)    Upon such return the Airframe for such Aircraft shall have cleared a recently completed major check as would be required to clear such Aircraft for at least the next 12 months and such Engines and all major components for such Aircraft shall have at least 50% of the hours, cycles or time (whichever is more limiting) in each case remaining until the next anticipated engine refurbishment, overhaul or inspection requiring removal.  At the time of such return, the Lessee shall also at its own expense:

(i)    remove or paint over all names, insignia and other indications of the Lessee or any Permitted Sub-Lessee from the exterior and interior of such Aircraft in a good, workman-like manner;

(ii)    transfer or cause to be transferred, or reassign or cause to be reassigned, to the Lessor to the extent then possible all assignable and remaining warranties and performance guarantees obtained by the Lessee or any Permitted Sub-Lessee with respect to such Aircraft, together with all documents related thereto that may be required to effect such transfer or reassignment; and

(iii)    if requested by the Lessor, obtain an export certificate of airworthiness (if available) for, and obtain or submit any applicable approval, permit, license or report for the re-export of, such Aircraft from the Civil Aviation Authority and deregister such Aircraft from the registry maintained by the Government of Registry.

(d)    If the Lessee fails to remove or procure the removal by the Permitted Sub-Lessee of the registration or to obtain the export certificate of airworthiness or such re-export approval, permit or license as provided above, the Lessor may do so at the cost and expense of the Lessee and, in such event, the Lessee shall upon demand reimburse the Lessor for the cost thereof.  The Lessee hereby irrevocably appoints the Lessor, upon such failure of the Lessee, as its true and lawful attorney-in-fact, with full power of substitution, in the Lessee's name or otherwise, to carry out the provisions of this Clause 5.3 and to take any action and to execute and/or file any instrument necessary to accomplish the purposes of this Clause 5.3.

(e)    If any other of the foregoing requirements shall not be satisfied at the time of return, the Lessee shall (at the Lessor's election) either promptly remedy any deficiency or make a payment fully compensating the Lessor for the remedy of such deficiency.  If requested by the Lessor, the Lessee shall perform or procure the performance of (at the sole cost and expense of the Lessee):

(i)    a complete videotape borescope inspection of such Engines in accordance with Engine Manufacturer's maintenance manual demonstrating to the Lessor's satisfaction that such Engines (or any module) are not unserviceable or beyond serviceable limits (or serviceable with limitations) under such manual; and

(ii)    a flight test demonstration, at the Lessee's expense and during normal business hours, for a period of not more than two hours at any airport referred to in Clause 5.4.  Personnel designated by the Lessor may participate as observers in such demonstration flight and a pilot selected by the Lessor may accompany the Lessee's pilot and occupy the observer's seat during such demonstration.  The purpose of the demonstration flight will be to ascertain that all systems and their components are functioning satisfactorily and in the event they are not so functioning they will be corrected by the Lessee or provision made therefor by the Lessee.

**5.4    Place of Redelivery; Storage Upon Return**

Each Aircraft shall be returned to an airport in Europe designated by the Lessor, and the Lessee shall retain the risk of loss for such Aircraft, and the related Airframe, Engines and Parts, until they are returned in conformity with the provisions of this Lease at such airport.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 5.5 Return of Engines

In the event that any engine not owned by the Lessor shall be delivered with any returned Airframe as set forth in Clause 5.3 (which engine must meet the requirements of a Replacement Engine, the Lessee shall, concurrently with such delivery, at its own expense, furnish the Lessor with a bill of sale covering such engine, including full warranty as to title, and thereupon the Lessor will transfer to the Lessee, on an "as-is, where-is" basis, without recourse or warranty (except as to the absence of the Lessor Liens, Lender Liens or other Liens arising under or in connection with any Operative Document), all of the Lessor's right, title and interest in and to any Engine constituting part of the relevant Aircraft but not installed on such Airframe at the time of the return of such Airframe.  After such conveyance, the substituted engine shall be deemed an "Engine" as defined herein and shall meet the conditions set forth in Clause 5 hereof.

## 5.6 Fuel, Manuals

Upon the return of each Aircraft, each fuel tank and oil tank shall contain the same quantity of fuel or oil as was contained in the fuel and oil tanks when such Aircraft was delivered to the Lessee on the Delivery Date for such Aircraft.  Upon the return of each Aircraft, the Lessee shall deliver to the Lessor at least one original or certified copy of all logs, manuals and data, and inspection, modification and overhaul records (including all job cards) required to be maintained with respect to such Aircraft under the applicable rules and regulations of the Civil Aviation Authority (collectively, **Manuals and Technical Records**) and such other additional records as would be necessary for the FAA to issue an unrestricted certificate of airworthiness, passenger transport category, for such Aircraft and if any thereof are not in English, certified English translations thereof.

## 6. LIENS

The Lessee will not (and shall procure that no sublessee will) directly or indirectly create, incur, assume, suffer, permit or allow to exist any Lien on or with respect to any Aircraft or any Airframe or any Engine or any Part, title thereto or any interest therein or in or to this Lease or any other Operative Document or any of its rights hereunder or thereunder, except Permitted Liens.  The Lessee will promptly, at its own expense, take such action as may be necessary duly to discharge or satisfy (by bonding or otherwise) any Lien that is not a Permitted Lien if the same shall arise at any time.

## 7. REGISTRATION, MAINTENANCE, OPERATION AND POSSESSION

## 7.1 Registration

The Lessee shall, at its sole cost and expense, upon the delivery of an Aircraft, cause such Aircraft to be duly certified as to airworthiness in accordance with the law of the Government of Registry and to be duly registered with the Civil Aviation Authority in the name of the Lessor as owner of such Aircraft and the relevant Initial Permitted Sub-Lessee as operator of such Aircraft, the extent permitted by Applicable Law.  Unless otherwise provided in this Lease, the Lessee shall not take any action, or fail to take any action, which action or failure might cause such airworthiness certification and registration to cease to be in full force and effect or to be revoked, withdrawn or suspended. Without limiting the generality of the foregoing, the Lessee at all times during the Term for an Aircraft shall ensure, at the Lessee's sole cost and expense, that prior to the expiration thereof, the Certificate of Airworthiness and Certificate of Registration are renewed or maintained by the Civil Aviation Authority.  Without limiting the generality of Clause 11, the Lessor shall take, and shall co-operate with the Lessee to take, at the Lessee's sole cost and expense all actions necessary to permit and maintain such registration and to permit the Lessee to receive copies of all correspondence and communications to and from the Civil Aviation Authority.  Except as expressly permitted by the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Operative Documents, the Lessee shall not, during the Term for an Aircraft, take any action which (a) may cause deregistration of such Aircraft from the Civil Aviation Authority or (b) the removal of the Lien of the Aircraft Mortgage in respect of such Aircraft from the Civil Aviation Authority.

**7.2    Maintenance**

The Lessee shall, at the Lessee's cost and expense:

(a)    establish, maintain or cause the establishment and maintenance of a maintenance programme for Boeing model 737 - 8 aircraft and for CFM model LEAP-1B27 engines (and Replacement Engines), as the case may be, each conforming with the Manufacturer's and Engine Manufacturer's maintenance planning document and approved by the Civil Aviation Authority (collectively, the **Approved Maintenance Programme**), and ensure that all service, inspection, maintenance, modification, storage, repair and overhaul of each Aircraft is performed in accordance with such Approved Maintenance Programme, by the Lessee or by the Permitted Sub-Lessee if so approved by the Civil Aviation Authority or by a maintenance facility approved by the Civil Aviation Authority (the **Approved Maintenance Facility**), provided that (i) all Manuals and Technical Records shall be kept in the English language, (ii) the Lessee shall submit the Approved Maintenance Programme to the Lessor, the Insurer Representative and Security Trustee on or prior to the Delivery Date for each Aircraft and shall advise the Lessor, and the Insurer Representative, upon the their reasonable request, of any material subsequent changes to such Approved Maintenance Programme by issuing revisions thereof approved by the Civil Aviation Authority to the Lessor, Security Trustee, the Insurer Representative and the Agent and (iii) upon the return of any Aircraft pursuant to the terms hereof, such Aircraft shall be capable of qualifying immediately for the issuance of a Certificate of Airworthiness issued by the FAA for commercial passenger transport;

(b)    keep each Airframe, each Engine and all Parts or procure each of the same are kept in good operating and serviceable condition and repair, and in such condition (including maintenance of the Manuals and Technical Records) as necessary to enable all applicable airworthiness certifications of each Aircraft to be maintained in good standing at all times under the Applicable Laws of the Government of Registry except when such Aircraft is undergoing service, maintenance, modification, overhaul, testing and/or repairs as required or permitted hereunder;

(c)    promptly furnish the Lessor, upon request, with such information as may be required to enable the Lessor to file any report required to be filed by the Lessor with any Government Body because of the Lessor's ownership of each Aircraft or the Lessor's lease of each Aircraft hereunder, as the case may be;

(d)    procure that each Airframe, each Engine and each Part is maintained, inspected serviced, stored, repaired, modified and overhauled (i) to comply with all warranty requirements pursuant to the Purchase Agreement or the Engine Agreement, as the case may be, (ii) in accordance with Manufacturer's and Engine Manufacturer's repair manuals, (iii) pursuant to the Approved Maintenance Programme and (iv) in a manner that does not discriminate against any Aircraft, any Airframe or any Engine when compared to the highest applicable standard (including the prompt performance of Service Bulletins, mandatory Manufacturer's and Engine Manufacturer's directives and Airworthiness Directives) applied by the Lessee or the Permitted Sub-Lessee with regard to similar aircraft owned, operated or leased by the Lessee or the Permitted Sub-Lessee;

(e)    procure and maintain in effect with Manufacturer and Engine Manufacturer a revision service, if any, for all Manuals and Technical Records, and maintain the Manuals and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Technical Records in such condition to satisfy the standards of the Civil Aviation Authority for a Certificate of Airworthiness for commercial passenger/cargo transport;

(f)     procure that for each Aircraft, all applicable mandatory alert Service Bulletins issued by Manufacturer and Engine Manufacturer shall be accomplished, and, in addition, all other Service Bulletins the Lessee or the Permitted Sub-Lessee adopts during the Term for such Aircraft for any similarly operated aircraft of the same model in the Lessee's or the Permitted Sub-Lessee's fleet, it being the intent of the parties that no Aircraft shall be discriminated against in any manner in Service Bulletin compliance and other maintenance matters; and

(g)     for each Aircraft, comply with all applicable Airworthiness Directives issued by the Civil Aviation Authority and which become due during the Term for such Aircraft or which at the time of redelivery of such Aircraft to the Lessor pursuant to the terms hereof have been issued by the Civil Aviation Authority or made mandatory by EASA upon operators regarding Boeing model 737 - 8 aircraft, CFM model LEAP-1B27 engines and any Part, as the case may be, and which have become due.

Neither the Lessor nor any Secured Party shall bear responsibility or liability for any grounding or suspension of operations of any Aircraft resulting from Airworthiness Directives, Service Bulletins, or any repairs or modifications to any Aircraft by the Lessee or any other Person.

**7.3     Operation**

Subject to Clause 7.5, the Lessee undertakes that no Aircraft will be maintained, used, insured or operated:

(a)     in violation of the Certificate of Airworthiness or any license or registration of, or with, any Government Body having jurisdiction over the Lessee (or any Permitted Sub-Lessee) or such Aircraft;

(b)     for any primary purpose other than the commercial transportation of passengers and/or cargo, provided that cargo shall be carried only in the cargo hold of such Aircraft;

(c)     in violation of the Approved Maintenance Programme or any warranty requirements pursuant to the Purchase Agreement, Engine Agreement or any other agreement setting forth any other material warranties with respect to such Aircraft, the related Airframe, Engines or Parts;

(d)     for any purpose or in any manner for which it is not designed or reasonably suited or outside the tolerances and limitations for which such Aircraft, the related Airframe or any related Engine was designed in accordance with the Approved Maintenance Program, Applicable Laws and applicable material warranties;

(e)     at any time while the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof are not in full force and effect;

(f)     for any purpose or in any manner inconsistent with the terms of, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof;

(g)     in any place inconsistent with the terms of, excluded from coverage by, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof (or outside any geographical limit imposed by the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof, including without limitation, in or through any recognized or (in the Lessor's reasonable opinion) threatened area of hostilities unless fully

FILED DATE: 1/11/2023 2:57 PM   2023L000001

covered by war risk and allied perils insurance in amounts and scope required by this Lease; or

(h)     in violation of any Applicable Law of or by any Government Body having jurisdiction over the Lessor or the Lessee or any Secured Party or any Aircraft or any mandatory requirement of Manufacturer, Engine Manufacturer or supplier, except for unintentional minor or nonrecurring violations which are cured promptly and which:

   (i)     do not involve any loss or reduction of coverage under any of the Aircraft Insurances or any Aircraft Reinsurances required by the terms of Clause 10;

   (ii)    do not involve any material risk of the sale, forfeiture or loss of or damage to such Aircraft or any interest therein;

   (iii)   do not involve any material risk of the Lessor or any Secured Party being subject to civil penalties;

   (iv)    do not involve any risk of criminal penalties being imposed against or upon the Lessee, the Lessor, the Lessor Parent or any Secured Party, which in the case of the Lessor or the Lessee shall be a material risk; and

   (v)     do not subject the Lessor, the Lessee or the Permitted Sub-Lessee to any fine or penalty or enforcement action which would materially adversely affect the business or operations of the Lessor, the Lessee, the Permitted Sub-Lessee or any Guarantor, the operation of any Aircraft or the rights of the Lessee, the Lessor or any Secured Party hereunder or under any other Operative Document,

provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party or have any material risk of the sale or forfeiture of any Aircraft, or of materially adversely affecting the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder, and if any Applicable Law requires alteration of any Aircraft, the Lessee will conform thereto or obtain conformance therewith at no cost or expense to the Lessor or any Secured Party and will maintain such Aircraft in proper operating condition under such Applicable Law, provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party, have any material risk of the sale or forfeiture of any Aircraft or any Engine, or adversely affect the rights of the Lessor or any Secured Party hereunder or under any other Operative Documents or the obligations of the Lessee hereunder.

Further, the Lessee undertakes that:

   (i)     all debts, costs, Losses, liabilities, premiums, calls, contributions, penalties, landing fees, overflight and navigation charges (including Eurocontrol fees), dues, tolls, charges, fines, recoveries or other expenses with respect to any Aircraft shall be duly and punctually paid and discharged during the Term, provided that the Lessee may in good faith diligently contest the validity or application of any of the foregoing in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of the sale of forfeiture or any Aircraft, or adversely affecting the rights of the Lessor or any Secured Party hereunder or under any of the other Operative Documents or the obligations of the Lessee hereunder or any risk of any criminal penalties or criminal liability being imposed, and upon

FILED DATE: 1/11/2023 2:57 PM   2023L000001

reasonable request by the Lessor, the Insurer Representative or the Security Trustee shall confirm to such Person's reasonable satisfaction that such action has been taken;

(ii)    no alteration in or modification or addition to any Airframe, any Engine or any Part, or any removal of any Engine or any Part from the Aircraft, or installation on or attachment to any Airframe, any Engine or any Part of anything not being part of any Aircraft on the Delivery Date shall occur unless expressly permitted by this Lease, including under Clause 8.4; and

(iii)   it shall not and shall procure that any Permitted Sub-Lessee shall not cause or permit to be done anything regarding any Airframe, any Engine or any Part the effect of which may be reasonably expected to result in such Airframe, such Engine or such Part being requisitioned for title or arrested or otherwise to jeopardize the interests of the Lessor and the Secured Parties in and to such Airframe, such Engine or such Part.

## 7.4    Possession

(a)    Subject to Clauses 7.5, 8 and 9, the Lessee shall not and shall procure that no Permitted Sub-Lessee shall, without the prior written consent of the Insurer Representative and the Security Trustee (which consent may be withheld in their sole discretion), sublease (whether directly, under a Dry Lease or Wet Lease), or otherwise in any manner deliver, transfer or relinquish possession of any Airframe, any Engine or any Part to any Person or firm or install any Engine, or permit any Engine to be installed, on any airframe other than the associated Airframe, provided, however, that (subject to Clauses 7.5, 8 and 9) so long as no Termination Event or Event of Default shall have occurred and be continuing, the Lessee may, without the prior written consent of the Insurer Representative or the Security Trustee:

(i)    deliver or permit the delivery of possession of any Airframe, any Engine or any Part (A) to the manufacturer thereof for testing or other similar purposes or (B) to an Approved Maintenance Facility for service, repair, maintenance or overhaul work on such Airframe, such Engine, such Part or any part thereof or for alterations or modifications in or additions to such Airframe, such Engine or such Part to the extent required or permitted by the terms of Clause 8.4, but in any event only in compliance with the Approved Maintenance Programme and Clause 7.2;

(ii)    install or permit the installation of an Engine for any reason on another airframe owned by the Lessee free and clear of all Liens, except (A) Permitted Liens and except those that apply only to the engines (other than the Engines), appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment (other than Parts) installed on such airframe (but not to such airframe as an entirety); and (B) mortgage liens or other security interests, but only if the holder of such mortgage lien or other security interest expressly agrees that such Engine shall not become subject to the Lien of such mortgage or security interest, notwithstanding the installation thereof on such airframe;

(iii)   install or permit the installation of an Engine for any reason on an airframe owned or operated by the Lessee or an Approved NAS Sub-Lessee (while such Approved NAS Sub-Lessee is leasing the Engine from the Lessee pursuant to a Permitted Sub-Lease) leased under a lease unrelated to this Lease to the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) or purchased by the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) subject to a conditional sale or other security agreement, provided,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

however, that in any such case the Lessee shall provide written assurance reasonably satisfactory to the Lessor and the Security Trustee that the rights, title and interests of the Lessor and the Secured Parties in such Engine under the Operative Documents will not be derogated in any material manner as a result thereof;

(iv)    temporarily install an engine on an Airframe which does not satisfy the requirements of Replacement Engine; and

(v)    Wet Lease an Aircraft for a term not to exceed the lesser of six (6) months and the remainder of the Term for such Aircraft,

provided, in each case, that the rights of any transferee who receives possession by reason of a transfer permitted by this Clause 7.4 (other than the transfer of an Engine which is deemed an Event of Loss) SHALL BE EXPRESSLY SUBJECT AND SUBORDINATE TO ALL THE TERMS OF THIS LEASE AND THE OTHER OPERATIVE DOCUMENTS, including the Lessor's and the Secured Parties' rights to a repossession pursuant to Clause 14 hereof, to terminate and avoid this Lease or other transfer upon such repossession and to require the Lessee or other transferee to forthwith deliver any Airframe and/or any Engine subject to this Lease or other transfer upon repossession, and the Lessee shall remain primarily liable hereunder for the performance of all of the terms of this Lease to the same extent as if such transfer had not occurred.

(b)    No relinquishment of possession of any Airframe, any Engine or any Part shall affect in any way the registration of any Aircraft or discharge or diminish any of the Lessee's obligations hereunder or under any of the other Operative Documents or constitute a waiver of the Lessor's or any Secured Party's rights or remedies hereunder or under any of the other Operative Documents.

(c)    The Lessor agrees, for the benefit of the Lessee (and any Permitted Sub-Lessee) and for the benefit of any mortgagee or other holder of a security interest in any engine (other than an Engine) owned or leased by the Lessee (or any Permitted Sub-Lessee), any lessor of any engine (other than an Engine) leased to the Lessee (or any Permitted Sub-Lessee) and any conditional vendor of any engine (other than an Engine) purchased or leased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale agreement or any other security agreement, that no interest shall be created hereunder in any engine so owned, leased or purchased and that none of the Lessor, Security Trustee nor their respective successors or assigns will acquire or claim, as against the Lessee (or any Permitted Sub-Lessee) or any such mortgagee, lessor or conditional vendor or other holder of a security interest or any successor or assignee of any thereof, any right, title or interest in such engine as the result of such engine being installed on any Airframe, provided, however, that such agreement of the Lessor shall not be for the benefit of any lessor of or secured party in respect of any airframe (other than an Airframe) leased to the Lessee (or any Permitted Sub-Lessee) or purchased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale or other security agreement or for the benefit of any mortgagee of or any other holder of a security interest in an airframe (other than an Airframe) owned by the Lessee (or any Permitted Sub-Lessee), unless such lessor, conditional vendor, other secured party or mortgagee has expressly agreed (which agreement may be contained in such lease, conditional sale or other security agreement or mortgage) that neither it nor its successors or assigns will acquire, as against the Lessor, the Security Trustee or any other Secured Party any right, title or interest in an Engine as a result of such Engine being installed on such airframe.

(d)    The Lessee will, upon reasonable request, furnish to the Insurer Representative, the Security Trustee and the Agent prompt notice of any transfer or relinquishment of possession of any Aircraft permitted under this Clause 7.4 (other than Clause 7.4(a)), and if requested by the Insurer Representative, the Security Trustee or the Agent a copy of the documents relating to such transfer or relinquishment of possession, duly certified by an officer's certificate of the Lessee being a complete and correct copy of all documents so provided.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 7.5    Dry Leasing

(a)    The Lessee shall not enter into any sublease (whether by Dry Lease or any other similar arrangement) of any duration with respect to any Aircraft (including any Airframe and any Engines or engines installed thereon) with any Person without the prior written consent of the Insurer Representative and the Security Trustee (each of which may withhold its consent in its sole discretion) other than:

(i)    the Initial Permitted Sub-Lease; or

(ii)    another Permitted Sub-Lease with a Permitted Sub-Lessee.

(b)    Other than in respect of the Initial Permitted Sub-Lease, any such sublease shall be subject to the following conditions and requirements:

(i)    any such sublease shall be made expressly subject and subordinate to all the terms of this Lease and the other Operative Documents, and shall not adversely affect the priority or perfection of the Lien of the Security Documents, the enforceability of the Collateral or the right of the Lessor or the Security Trustee to avoid such sublease and to repossess such Aircraft, the associated Airframe or the associated Engines in connection with the exercise of any remedies upon any Termination Event or Event of Default;

(ii)    the Lessee shall remain primarily liable hereunder for the performance of all terms and conditions of this Lease to the same extent as if such sublease had not occurred;

(iii)    all terms and conditions of this Lease and the other Operative Documents shall remain in full force and effect;

(iv)    prior to entering into any such sublease, the Lessee shall provide to the Lessor and the Secured Parties certificates of insurance and brokers' undertakings from the Lessee's insurance brokers or an authorized representative of the Lessee's insurers reflecting that the Aircraft Insurances required to be maintained pursuant to Clause 10 are in full force and will not be adversely affected due to the sublease;

(v)    such sublease shall (A) provide that such Aircraft, and the associated Airframe, Engines and Parts, be maintained in accordance with the Approved Maintenance Programme, and (B) be governed by English law or another jurisdiction acceptable to the Security Trustee and the Insurer Representative, and (C) be with a Permitted Sub-Lessee;

(vi)    such sublease shall not permit any further sub-leasing and the term of the sublease shall not exceed the remaining Term with respect to such Aircraft;

(vii)    either (A) no re-registration of such Aircraft shall occur as a result of entering into such sublease or (B) if entering into such sublease shall involve the re-registration of such Aircraft, the proposed state of registration of such Aircraft shall be Norway, Ireland, the United Kingdom or shall have been approved by the Insurer Representative and the Security Trustee in writing (which approval may be withheld in their sole discretion) and shall in each case be subject to the following:

(A)    under the Applicable Laws of the proposed state of registration of such Aircraft:

I.    there shall exist no rights in favour of the Lessee or the relevant sublessee or any other Person that would, upon bankruptcy or other default by such sublessee, prevent the deregistration, re-export and return of such Aircraft to

FILED DATE: 1/11/2023 2:57 PM   2023L000001

the Lessor (or upon the enforcement of the Lien of the Security Documents, the Security Trustee) in accordance with and as permitted by the terms of Clause 5 upon the exercise by the Lessor of its remedies under Clause 14;

II.     the Lessor shall be recognized as the owner of such Aircraft and the Secured Parties' Lien over the Aircraft pursuant to the Security Documents shall be recognised;

III.    there shall be no impediment (as at the date of re-registration) to the exercise of the rights and remedies provided for in this Lease or in any other Operative Document in respect of such Aircraft and the practical realisation by the Lessor and the Secured Parties of the benefits of this Lease and the Security Documents (to the extent relating to the Aircraft and this Lease) will be available under such Applicable Law;

IV.     the rights of the Lessor under this Lease and the rights and Liens of the Security Trustee and the Secured Parties under the Security Documents, in each case, in respect of such Aircraft, shall be enforceable in   the jurisdiction of re-registration and, if requested by the Security Trustee or the Insurer Representative, the Lessor shall provide a new local law mortgage over the Aircraft in favour of the Secured Parties;

V.      all filings (including all filings required by the Insurer Representative or the Security Trustee pursuant to the Cape Town Convention), recordations and other actions necessary in order to establish, protect and perfect the Lessor's title to the Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Paragraph IV above) shall have been made;

VI.     no Secured Party shall be required to qualify to do business in such jurisdiction as a result of such re-registration;

(B)     such re-registration shall not result in any Tax for which the Lessee is not required to indemnify;

(C)     the insurance and any reinsurance required in respect of such Aircraft by Clause 10 shall be in full force and effect subsequent to such re-registration and the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee evidence of such insurance reasonably satisfactory to the Insurer Representative and the Security Trustee;

(D)     no Liens (other than Permitted Liens) shall arise as a result of such re-registration;

(E)     all filings, registrations, recordations and other actions necessary under the Applicable Laws of the jurisdiction in which such Aircraft is to be registered, in order to establish, protect and perfect the Lessor's title to such Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Clause 7.5(vii)(A)(IV) above), shall be made;

(F)     the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee an opinion of independent counsel in the state of such re-registration addressed to the Lessor, the Security Trustee, the Agent and the Insurer

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Representative reasonably satisfactory in form and substance to the Insurer Representative and the Security Trustee; and

(G) all reasonable costs, expenses, fees and other charges in connection with any such re-registration shall be paid by the Lessee;

(viii) the Lessee shall (A) at least thirty (30) days prior to such sublease taking effect, give the Lessor, the Security Trustee, the Agent and the Insurer Representative written notice of such proposed sublease together with a copy of the proposed agreement (which agreement must be reasonably acceptable in form and substance to the Lessor, the Security Trustee and the Insurer Representative), (B) deliver a copy of the approved executed agreement to the Security Trustee, the Lessor, the Agent and the Insurer Representative and assign the Lessee's interests in such agreement to the Lessor, who in turn shall assign such interests to the Security Trustee, as a perfected first-priority security interest for the Lessee's obligations hereunder and cause the Lessee to consent to such assignment and to the Lessor's further assignment of such sublease to the Security Trustee for the benefit of the Secured Parties and (C) provide evidence to the Security Trustee, the Agent and the Insurer Representative that registrations have been made with the International Registry with respect to the International Interests, if any, created pursuant to such sublease and the assignments of International Interests, if any, created pursuant to the assignments;

(ix) the Lessee shall, at least ten (10) days prior to such sublease taking effect, deliver to the Lessor, the Security Trustee, the Agent and the Insurer Representative proposed forms of (A) an acknowledgment by the sublessee recognizing all rights, title and interests of the Lessor, the Security Trustee and the other Secured Parties under the Operative Documents, and (B) a written opinion of counsel in the country of citizenship or incorporation or formation of the relevant sublessee confirming that all steps necessary to protect the rights, title and interests of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents (including, without limitation, registration of all interests, assignments and subordinations with the International Registry) have been taken or will be taken in a manner reasonably satisfactory to the Secured Parties, each in form and substance reasonably satisfactory to the Lessor, the Agent, the Insurer Representative and the Security Trustee, and on or prior to such sublease taking effect, deliver to the Lessor, the Insurer Representative, the Agent and the Security Trustee executed copies of such documents;

(x) the Lessee shall promptly reimburse the Lessor, the Security Trustee or any other Secured Party for any reasonable costs and expenses (including attorneys' fees and expenses) incurred by them in connection with such sublease or any related re-registration; and

(xi) the proposed sublessee must be solvent.

## 7.6 Special Operation and Possession Covenants

In addition to the foregoing requirements, the Lessee covenants and agrees as follows:

(a) **Restricted Use of Aircraft**

No Aircraft, Engine or Part shall, without the prior written consent of the Lessor, the Security Trustee and the Insurer Representative, (whether, directly or under a Dry Lease, Wet Lease, Charter, blocked-space or other arrangement) be:

(i) flown to or within, or otherwise operated or used to or within, an Excluded Country if to do so would breach any Applicable Law (including Sanctions) or operated (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar

FILED DATE: 1/11/2023 2:57 PM   2023L000001

arrangement) by or for an airline or by any other Person which is a national of, or established under, the laws of, or whose principal place of business or principal place of aircraft operations is located in, an Excluded Country;

(ii)    principally used in, or operated or used (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under the laws of, or whose principal place of business or principal place of aircraft operations is located in, a Restricted Country;

(iii)   "primarily based" in one or more Restricted Countries.  For purposes of this provision, **primarily based** shall mean that during any consecutive seven (7) day period, the aggregate amount of time spent on the ground by such Aircraft, such Engine or such Part, as applicable, in one or more Restricted Countries shall exceed 15% of the total amount of time spent on the ground during such seven (7) day period, provided that the limitation imposed by this paragraph (iii) shall not prohibit, to the extent necessary, any nonrecurring maintenance or other nonrecurring repairs to be done with respect to an Aircraft in a Restricted Country;

(iv)    operated or used by or for any other Person except in accordance with Clauses 7.3, 7.4 and 7.5;

(v)     operated or used in contravention of any United States law, regulation or stated policy of general applicability restricting the operation or use of United States-manufactured or financed aircraft and engines and such restrictions are applicable to the transactions contemplated hereby;

(vi)    flown or otherwise operated or used for any offensive or defensive military purpose;

(vii)   operated or used for any purpose for which it is not designed or reasonably suited in accordance with the Approved Maintenance Programme, Applicable Law and applicable material warranties or for any primary purpose or other than the commercial transport of passengers and cargo; or

(viii)  subleased (whether under a dry lease or wet lease) to any Person other than as provided in this Lease.

(b)    **Waiver of Defences to Repossession**

None of the Lessee, nor any Permitted Sub-Lessee, nor anyone claiming through or under the Lessee or Permitted Sub-Lessee, shall set up, claim or seek to take advantage of any Applicable Laws now or hereafter in force in any jurisdiction in which any Aircraft or any portion thereof may be situated in order to prevent, hinder or delay any effort in accordance with this Lease on the part of the Lessor or the Security Trustee to regain possession of any Aircraft or deregister or re-export any Aircraft or any portion thereof from any jurisdiction in which such Aircraft or any portion thereof may be situated following the occurrence of an Event of Default or Termination Event, and while the same shall be continuing, and the Lessee, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may be lawful so to do, the benefit of all such Applicable Laws (including, without limitation, any rights it may have, if any, to avail itself of the protection provided by the Convention of 1933 on the Unification of Certain Rules Relating to the Precautionary Arrest of Aircraft, or any other similar law, treaty or convention applicable to the Lessee or any Aircraft which would limit the ability of the Lessor or the Security Trustee

FILED DATE: 1/11/2023 2:57 PM   2023L000001

to repossess or otherwise recover any Aircraft following the occurrence and during the continuance of an Event of Default or Termination Event).

(c)     **Statement of Account of Landing Fees or Navigation Charges**

In the event that a Government Body of any country in which any Aircraft or the Lessee or any Permitted Sub-Lessee operates shall be permitted by Applicable Law to detain or seize, or shall adopt legislation which permits the detention or seizure of, an aircraft for unpaid landing fees or navigation charges without formal legal proceedings, the Lessee shall (and shall procure that any Permitted Sub-Lessee shall) promptly following demand by the Security Trustee or the Insurer Representative, deliver to the Security Trustee, the Agent and the Insurer Representative a letter, in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative, addressed to the airport or air navigation authority of such country authorizing such authority to release to the Security Trustee from time to time a statement of account of all such fees and charges then due in respect of all aircraft owned by or leased to the Lessee or any Permitted Sub-Lessee, as the case may be.

(d)     **Eurocontrol**

The Lessee shall and shall procure that the relevant Initial Permitted Sub-Lessee shall prior to the Delivery Date of an Aircraft, and the Lessee shall procure that any other Permitted Sub-Lessee shall, prior to the commencement of any sub-lease:

(i)      procure that the Lessee or any Permitted Sub-Lessee executes a Eurocontrol Letter and ensure that such letter is promptly sent to and acknowledged by Eurocontrol in accordance with Eurocontrol's advertised procedures;

(ii)     to the extent it has not already done so, promptly enter into a CEFA Agreement and provide the Security Trustee and the Insurer Representative with a copy certified by an officer of such company;

(iii)    if requested by the Security Trustee or the Insurer Representative, promptly obtain from Eurocontrol (via CEFA or otherwise) and provide to the Lessor, the Security Trustee and the Insurer Representative a general statement of account in relation to charges incurred by the Lessee and the Initial Permitted Sub-Lessee (and, if applicable, other Permitted Sub-Lessee); and

(iv)    if Eurocontrol's procedures relating to the availability to third parties of general statements of account are amended, take such actions as may be reasonably requested by the Security Trustee or Insurer Representative to ensure that the Security Trustee is able to obtain (or continue to obtain) such general statements of account in accordance with such procedures.

(e)     **EU ETS Laws**

It shall procure that any Permitted Sub-Lessee:

(i)      comply, and must procure that any other "aircraft operator" for the purposes of the EU ETS Laws complies, with all EU ETS Laws applicable to it/them or the Aircraft and, promptly on request from the Lessor, the Insurer Representative or the Security Trustee, supply to such person evidence reasonably satisfactory to it of such compliance;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(ii)    identify itself as "aircraft operator" to any EU ETS Authority whenever required under the EU ETS Laws or whenever the Lessor, the Insurer Representative or the Security Trustee may request.

(f)    **No Operation by the Secured Parties**

In no event shall any Secured Party be represented as carrying goods or passengers on any Aircraft or as being in any way connected or associated with any operation or carriage which may be undertaken by the Lessee or any Permitted Sub-Lessee or as having any operational interest in any Aircraft.

(g)    **Seizure of Aircraft**

The Lessee shall not do, shall procure that no Permitted Sub-Lessee shall do, and shall otherwise use its best efforts to prevent, any act which could reasonably be expected to result in any Aircraft, any Airframe or any Engine being arrested, confiscated, seized, taken in execution, attached, impounded, forfeited, detained in exercise or purported exercise of any registered or possessory lien or other claim or otherwise taken from the possession of the Lessee or any Permitted Sub-Lessee, and if any such arrest, confiscation, seizure, execution, taking, attachment, impoundment, forfeiture, detention or other loss of possession occurs, the Lessee shall give Security Trustee, the Lessor, the Agent and the Insurer Representative immediate notice thereof and shall forthwith procure the prompt release of such Aircraft, such Airframe or such Engine.

(h)    **Credit for Maintenance**

The Lessee shall not pledge and shall procure that no Permitted Sub-Lessee shall pledge  the credit of any Secured Party for any maintenance, service, repairs, overhauls of, or modifications to, or changes or alterations in, or additions to, any Aircraft, any Airframe, any Engine or any Part.

(i)    **Notice of Suspension**

The Lessee shall give the Lessor, the Security Trustee, the Agent and the Insurer Representative immediate written notice of any action being taken by the management of any Lessee Obligor relating to any general suspension of payment proceedings under any Applicable Law.

(j)    **Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under Clause 10 and should any such claim be paid, shall procure that immediate action is taken either (A) to increase any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty or (B) to obtain "contingent War Risk Insurance" acceptable to the Issuer Representative and the Security Trustee for the express benefit of the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee so that their financial interests in each Aircraft shall at all times be fully insured for the period covered by that War Risk Insurance, notwithstanding any annual aggregate limit or sublimit of liability.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(k)     **Inspection**

At all reasonable times and (except during the continuance of a Default, a Termination Event or an Event of Default) upon reasonable notice to the Lessee and not more frequently than once per calendar year any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives may inspect any Aircraft, any Engine or any Part and the Manuals and Technical Records relating thereto and to the registration thereof and copy or make extracts from the books and records of the Lessee and any Permitted Sub-Lessee relative thereto and may discuss the Lessee's and any Permitted Sub-Lessee business or financial affairs with any of the Lessee's or Permitted Sub-Lessee officials, auditors or officers as may be required for the foregoing and, to the extent available, make any inspection reports available to the Agent, provided that, unless a Termination Event or an Event of Default has occurred and is continuing:

(i)     any such inspection shall be a visual, walk-around inspection which may include going on board such Aircraft, subject to the Permitted Sub-Lessee's limitations for reasons of safety or insurance coverage, but shall not include opening or removing any panels, bays or engine or avionic components of such Aircraft, unless such Aircraft is, on the date of such inspection, undergoing a maintenance visit, in which case such panels, bays or engine or avionic components as are open or removed from such Aircraft on such date may be inspected; and

(ii)     any such inspection or examination shall not unreasonably delay or interrupt or cause any obstruction in the Lessee's maintenance and operation of such Aircraft.

(l)     None of the Lessor, the Security Trustee, the Agent, the Lenders or the Insurer Representative (i) shall have any duty to make any such inspection or (ii) shall incur any liability or obligation by reason of making or not making any such inspection, except as provided in this Clause 7.7.  So long as no Termination Event or Event of Default has occurred and is continuing, the reasonable cost of one such inspection initiated by any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives each calendar year shall be paid by the Lessee.  The Lessee shall pay the cost of all such inspections during the continuance of a Termination Event or an Event of Default.  The cost of other inspections shall be paid by the party requesting such inspection, unless such inspection reveals a material breach of the obligations hereunder to maintain each Aircraft and the associated Manuals and Technical Records, in which case the cost of such inspection shall be borne by the Lessee.  Upon the request of the Lessor, the Lessee shall promptly notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of the major phase checks ("C" check or higher and any structural inspection) then scheduled on any Aircraft for the six-month period following such request.

## 7.7     Information Concerning the Aircraft and Engines

The Lessee shall at its own cost and expense promptly provide the Lessor, the Agent, the Lenders, the Insurer Representative and the Security Trustee with such information (to the extent required by this Lease, any Operative Document or maintained by the Lessee in accordance with its standard fleet procedures) regarding the registration, location, operation, use, insurance, maintenance and condition of each Aircraft and its associated Engines, including all Parts to the extent practicable, as the Lessor, the Agent, the Lenders, the Insurer Representative or the Security Trustee may from time to time reasonably require.

## 7.8     Substitution of Engines

(a)     So long as no Termination Event or Event of Default shall have occurred and be continuing (unless such Termination Event or Event of Default relates to the Engine being substituted), the Lessee may

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(and may permit any Permitted Sub-Lessee to) at any time, with contemporaneous notice to the Lessor, the Agent, the Lenders, the Insurer Representative and the Security Trustee, duly convey or cause to be conveyed to the Lessor as a substitute for an Engine title to another engine of the same manufacturer and model, as such Engine which satisfies the conditions set forth in the definition of "Replacement Engine", provided that all engines installed on any Airframe shall be of compatible make and model, free and clear of all Liens other than Permitted Liens and shall have a value and remaining useful life and utility at least equal to, and being in as good operating condition and state of maintenance as, the Engine to be replaced thereby, assuming such Engine was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to such replacement.  Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)     furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)    cause a Lease Supplement, in form and substance reasonably satisfactory to the Lessor, the Insurer Representative and the Security Trustee subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry;

(iii)   furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such replacement engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor may reasonably request;

(iv)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) reasonably satisfactory to the Lessor, the Security Trustee and the Insurer Representative certifying that such engine has value and remaining useful life at least equal to, and is in as good operating condition (as the Engine being substituted, assuming such Engine was in the condition and state of repair required by the terms hereof immediately prior to such substitution;

(v)     cause amendments to the relevant Aircraft Mortgage and any Security Document, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such replacement engine to the relevant Aircraft Mortgage and the relevant Security Documents to be duly executed by the Lessor, Lessee or Permitted Sub-Lessee (as applicable) and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or the jurisdiction of incorporation or formation of the Lessor, Lessee or Permitted Sub-Lessee as applicable;

(vi)    cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)   furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and Security Trustee regarding the perfection of the Lien of any amended Security Document and relevant Aircraft Mortgage with respect to such Replacement Engine, in form and substance reasonably satisfactory to the Security Trustee and the Insurer Representative (addressed to the Security Trustee, the Insurer Representative, the Lenders and the Agent); and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(viii)   affix a nameplate on such replacement engine in accordance with Clause 8.5.

(b)   Upon full compliance by the Lessee with the terms of this Clause 7.8, the Lessor will transfer or cause to be transferred, at the Lessee's sole cost and expense, to or upon the order of the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it) all of the Lessor's right, title and interest, if any, in and to each replaced Engine with respect to which such substitution occurred by an appropriate instrument, signed by the Security Trustee, releasing such Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Engine" as defined herein and shall be deemed part of the same Aircraft as was the Engine replaced thereby.  No substitution with respect to an Engine under the circumstances contemplated by the terms of this Clause 7.8 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

**7.9   Annual Survey**

(a)   Upon written request, but no more frequently than once each calendar year for each Aircraft any one of the Security Trustee, the Agent, the Insurer Representative or their authorized representative, may request a technical report about the related Airframe, Engines and Manuals and Technical Records in connection with such Airframe and each such Engine, performed at an Approved Maintenance Facility in connection with the most recently completed (i) airworthiness inspection, or heavy maintenance check (in the case of an Airframe), (ii) heavy maintenance visit and any shop visit (in the case of each such Engine), and (iii) overhaul or reconditioning (in the case of any Part, appurtenance or system in respect of such Aircraft or each such Engine not covered by clauses (i) and (ii) preceding).

(b)   Such report shall be at the Lessee's expense and shall contain sufficient detail so as to enable the Security Trustee, the Agent and the Insurer Representative to determine the Lessee's compliance with the terms of this Lease and the general repair, condition, maintenance, overhaul and time-before-overhaul status of such Airframe and each such Engine or Part.  If any such report is prepared at the request of the Security Trustee, the Security Trustee shall promptly provide a copy to the Agent and the Insurer Representative.

**7.10   Engine power by the hour support arrangements**

If at any time the Lessee or a Permitted Sub-lessee enters into or receives the benefit of a power by the hour (or equivalent) support arrangement relating to the Engines with the Engine Manufacturer, the Lessee shall use all reasonable endeavours to procure that such benefit is promptly assigned to the Security Trustee (each such assignment, an **Engine PBH Security Assignment**).

**8.   REPLACEMENT;  TEMPORARY  INSTALLATION;  POOLING;  ALTERATIONS, MODIFICATIONS AND ADDITIONS; ETC**

**8.1   Replacement of Parts**

(a)   The Lessee, at its own expense, will promptly replace or cause to be replaced all Parts that may from time to time be incorporated or installed in or attached to any Airframe or any Engine and that may from time to time be defective and not economically repairable, become time-expired or due for replacement or worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     In addition, the Lessee (or any Permitted Sub-Lessee) may, at its own expense, remove in the ordinary course of maintenance, service, repair, overhaul or testing, any Part, whether or not time-expired, due for replacement, worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use, provided, however, that the Lessee will, at its own cost and expense, replace (or cause to be replaced) such Part as promptly as practicable.

(c)     Each replacement Part shall be free and clear of all Liens (except Permitted Liens) and except as permitted by Clause 8.3, shall be in at least as good operating condition as, and shall have value, modification status and performance characteristics at least equal to, or, if applicable, comparable to, the Part replaced assuming such replaced Part was in the condition and repair required to be maintained by the terms hereof.

(d)     Each Part at any time removed from any Airframe or each Part removed from any Engine shall remain the property of the Lessor, no matter where located, until such time as such Part shall be replaced by a Part that has been incorporated or installed in or attached to the Airframe from which such Part was removed or, as the case may be, an Engine and that meets the requirements for a replacement Part specified above and shall be subject to the Lien of the relevant Aircraft Mortgage.

(e)     Immediately upon any replacement Part becoming incorporated or installed in or attached to an Airframe or, as the case may be, an Engine as above provided and title thereto being vested in the Lessor free and clear of all Liens (except Permitted Liens), without further act:

    (i)      title to the replaced Part shall thereupon vest in the Lessee or its Approved Nominee and shall no longer be deemed a Part hereunder; and

    (ii)     such replacement Part shall become subject to this Lease and be deemed part of such Airframe or, as the case may be, such Engine for all purposes hereof to the same extent as the Part originally incorporated or installed in or attached to such Airframe or, as the case may be, such Engine.

## 8.2     Temporary Installation of Parts

The Lessee may install or permit the installation of any part on any Airframe or Engine by way of substitution, replacement, renewal or mandatory modification notwithstanding that such installation is not in accordance with Clause 8.1 in the case of a part if:

(a)     there shall not have been available to the Lessee at the time and in the place that such part was required to be installed on such Airframe or, as the case may be, such Engine a substitute or replacement Part complying with the requirements of Clause 8.1;

(b)     it would have resulted in a disruption of the operation of the relevant Aircraft and/or the business of the Lessee to have grounded such Aircraft and/or to have permitted the relevant Part to continue to be unserviceable or unrepaired until such time as an part complying with the requirements of Clause 8.1 became available for installation on such Airframe or such Engine; and

(c)     as soon as practicable, but in any event within one hundred and eighty (180) days, the Lessee shall cause any such part not complying with the requirements of Clause 8.1 to be removed and replaced or substituted by a part complying with the requirements of Clause 8.1.

## 8.3     Pooling of Parts

Any Part removed from any Airframe or any Engine may be subjected by the Lessee or permitted by the Lessee to be subjected to a normal pooling arrangement customary in the international airline

FILED DATE: 1/11/2023 2:57 PM   2023L000001

industry entered into in the ordinary course of the Lessee's (or, while the relevant Aircraft is leased by the Lessee to the Initial Permitted Sub-Lessee pursuant to the Initial Permitted Sub-Lease, the Initial Permitted Sub-Lessee's) business, provided, that the part replacing such removed Part shall be incorporated or installed in or attached to such Airframe or such Engine in accordance with Clause 8.1 as promptly as possible after the removal of such removed Part.   In addition, any replacement part when incorporated or installed in or attached to any Airframe or any Engine in accordance with Clause 8.1 may be owned by another air carrier subject to such a normal pooling arrangement, provided that the Lessee, at its own cost and expense, as soon as practicable, shall either (a) cause title to such replacement part to vest in the Lessor in accordance with Clause 8.1 by the Lessee acquiring title (or procuring acquisition of the title) thereto for the benefit of the Lessor free and clear of all Liens (other than Permitted Liens) and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement or (b) replace such replacement Part by incorporating or installing in or attaching to such Airframe or such Engine a further replacement Part owned by the Lessee (or such Permitted Sub-Lessee) free and clear of all Liens (other than Permitted Liens) and by causing title to such further replacement Part to vest in the Lessor in accordance with Clause 8.1 and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement.

**8.4**   **Alterations, Modifications and Additions**

(a)   The Lessee, at its own expense, will promptly make (or cause to be made) such alterations and modifications in and additions to any Airframe or any Engine as may be reasonably required from time to time to comply with any Airworthiness Directives, Service Bulletins, other directive or modifications published (and of a mandatory nature) by the Manufacturer, the Engine Manufacturer and/or the Civil Aviation Authority in accordance with the terms of this Lease, provided that the Lessee may in good faith diligently contest the validity or application of any such Airworthiness Directive, Service Bulletin, directive or modification in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of adversely affecting the value of any Aircraft, the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder.

(b)   In addition, the Lessee (or the Permitted Sub-Lessee), at its own expense, may from time to time make such alterations and modifications in and additions to any Airframe or any Engine as the Lessee (or Permitted Sub-Lessee) may deem desirable in the proper conduct of its business, including installation of additional buyer furnished equipment or removal of Parts that the Lessee (or Permitted Sub-Lessee) determines to be obsolete or no longer suitable or appropriate for use on such Airframe or such Engine, provided, however, that no such alteration, modification or addition shall materially diminish the value, utility, remaining useful life, performance or operational characteristics of such Airframe or such Engine, or impair the condition or airworthiness thereof, below the value, remaining useful life, performance or operational characteristics, condition or airworthiness thereof immediately prior to such alteration, modification or addition (assuming such Airframe or such Engine was then of the value, remaining useful life, performance or operational characteristics, condition or airworthiness required to be maintained by the terms of this Lease), provided, further, that the Lessee shall consult with the Manufacturer or the Engine Manufacturer, as applicable, the Insurer Representative and the Security Trustee prior to undertaking any material alteration or modification to any Aircraft. Without prejudice to the generality of the foregoing, the Lessor consents to the modification which includes installation of antennae, aerodynamic domes, wiring, structural attaching parts, mounts, receivers, wireless access points,(WAP's), modems, controllers, switching equipment, display and sound reproduction equipment and all related hardware and software directly associated with the receipt and distribution of satellite or where applicable ground based internet signals and data into the Aircraft for passenger use, whether provided by ROW 44 or an alternative provider.  Title to all Parts incorporated or installed in or attached or added to any Aircraft as the result of such alteration, modification or addition, shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

immediately vest in the Lessor free and clear of all Liens (except Permitted Liens) and become subject to this Lease, without the necessity for any further act of transfer, document or notice.

(c)  Notwithstanding Clause 8.1 and the foregoing provisions of this Clause 8.4 and provided that no Termination Event  or Event of Default shall have occurred and is continuing, the Lessor agrees that the Lessee or any Permitted Sub-Lessee may, at any time during the Term in respect of any Aircraft, remove or suffer to be removed any Part (including buyer furnished equipment) from such Aircraft that:

(i)  is in addition to, and not in replacement of or substitution for, any Part originally incorporated or installed in or attached to the related Airframe or Engine at the time of the Delivery of such Aircraft hereunder or any Part in replacement of or substitution for any such Part;

(ii)  is not required to be incorporated or installed in or attached or added to the related Airframe or Engine pursuant to the terms of Clause 7 or this Clause 8 or in order to maintain insurance required by Clause 10; or

(iii)  can be removed from the related Airframe or such Engine without causing damage to such Airframe or such Engine or diminishing or impairing in any material respect the value, utility, remaining useful life, performance or operational characteristics, condition or airworthiness that such Airframe or such Engine would have had at such time had such removal not occurred.

(d)  Upon the removal by the Lessee (or any Permitted Sub-Lessee) of any Part as provided in and permitted by this Clause 8.4, title thereto shall, without further act, vest in the Lessee or the Lessee's Approved Nominee, and such Part shall no longer be deemed part of the Airframe or Engine from which it was removed.  Notwithstanding the foregoing, any Part not removed by the Lessee (or any Permitted Sub-Lessee) as above provided prior to the return of the relevant Airframe or Engine to the Lessor hereunder shall become the property of the Lessor at the time of such return and become subject to the relevant Aircraft Mortgage and the relevant Security Agreement.

## 8.5  Nameplate and Other Markings

The Lessee shall affix and keep a metal nameplate having dimensions of not less than five inches by four inches in the cockpit of each Airframe adjacent to the airworthiness certificate therein and on each of the Engines bearing the inscription "THIS [AIRFRAME/ENGINE] IS OWNED BY AAA MAX 2 LIMITED AND LEASED TO STOGOFJORDEN LIMITED, IS FURTHER SUB-LEASED TO NORWEGIAN AIR INTERNATIONAL LIMITED AND SUBJECT TO A MORTGAGE IN FAVOUR OF BANK OF UTAH, AS SECURITY TRUSTEE", or such other inscription as the Security Trustee or the Insurer Representative from time to time may reasonably request (such nameplate to be affixed within ten (10) days after the Delivery Date for such Airframe and such Engines, and the Lessee shall thereupon so advise the Lessor).  Except as provided above, the Lessee shall not allow the name or other indication of any other Person to be placed on any Airframe or any Engine, if such name or other indication could be interpreted as a claim of ownership or other interest therein; provided, that each Airframe, Engine and Part may be marked with the customary name, colours or insignia of the Lessee or the Permitted Sub-Lessee and/or any manufacturer(s) of such Airframe, Engines and Parts.

## 8.6  No Third Party Beneficiaries

It is expressly agreed that the Lessee's obligations with respect to maintenance under Clauses 7 and 8 are solely for the benefit of the Lessor and the Secured Parties and that the Lessee shall have no liability to any other Person with respect thereto, and that except for the Lessee's indemnification

FILED DATE: 1/11/2023 2:57 PM   2023L000001

obligations with respect thereto contained in the Participation Agreement which shall survive the termination of such documents in accordance with their respective terms, the Lessee's obligations under Clauses 7 and 8 in respect of an Aircraft shall terminate upon termination of the leasing of an Aircraft to the Lessee pursuant to this Lease and the relevant Lease Supplement in accordance with the terms hereof.

**8.7     No Authorization to Contract for the Lessor**

Nothing contained in this Lease shall constitute any consent or request by the Lessor or any Secured Party express or implied, for the performance of any works or services or the furnishing of any materials or other property in respect of any Aircraft, any Engine or any Part thereof, nor as giving the Lessee any right, power or authority to contract for or permit the performance of any works or services or the furnishing of any materials or other property, in such fashion as would permit the making of any claim against the Lessor or any Secured Party in respect thereof or any claim that any Lien (other than Permitted Liens) based on the performance of such works or services or the furnishing of any such materials or other property is prior to the interests of the Lessor or any other Person in such Aircraft, such Engine or such Part thereof.

**8.8     No Rights of Retention**

The Lessee hereby waives any and all rights of retention which it may have or which at any time hereafter may be conferred upon it, by virtue of law or otherwise, related to any replacement of Parts, alterations, modifications or additions that the Lessee may make to any Airframe or any Engine.  The Lessee hereby expressly releases the Lessor and the Secured Parties from any and all obligations, whether present or future, to indemnify or reimburse the Lessee for any of the aforementioned replacements, alterations, modifications, improvements or additions.

**9.       LOSS, DESTRUCTION, REQUISITION, ETC**

**9.1     Event of Loss with Respect to an Aircraft**

(a)     Upon the occurrence of an Event of Loss with respect to an Aircraft or an Airframe and any related Engines and/or engines then installed thereon, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), which notice shall specify the actions the Lessee is taking with respect to such Event of Loss.  So long as no Default, Termination Event or Event of Default shall have occurred and be continuing, the Lessee may within forty-five (45) days after such occurrence, request permission from the Lessor to replace such Aircraft (or such Airframe and Engine(s), as applicable), upon terms and conditions acceptable to the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee in their absolute discretion, including compliance with such terms and requirements that would make such replacement aircraft (or such replacement airframe and engine(s), as applicable) (a **Replacement Aircraft**) eligible for financing supported by the Insurance Policy in the same amount as such replaced Aircraft (or such replaced Airframe and Engine(s), as applicable), it being agreed that if the Lessee does not request such permission within the relevant time period (or does not receive such permission within ten (10) days after such request), the Lessee will not be entitled to substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable).

(b)     The Lessee will not substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) hereunder unless such Replacement Aircraft (or replacement airframe and engine(s), as applicable) would be eligible for financing supported by the Insurance Policy, as determined by the Insurer Representative in its sole discretion.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)      It is expressly agreed that if any Basic Rent Payment Date for the affected Aircraft occurs at or after the date of such Event of Loss and prior to the payment of the Termination Value and any other Rent due in relation to such Aircraft, the Lessee shall pay to the Lessor on such Basic Rent Payment Date the amount equal to the Basic Rent which would have become due and payable in respect of such Aircraft on such Basic Rent Payment Date in accordance with the terms hereof had no Event of Loss so occurred.

(d)      Unless a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) are being substituted in the circumstances contemplated in the preceding clauses, the Term for the affected Aircraft shall end on a date no later than the earliest of (i) the date falling ninety (90) days after the occurrence of such Event of Loss and (ii)  the Lessor or the Security Trustee receives insurance or requisition proceeds in respect thereof (the **Settlement Date**), and on such Settlement Date the Lessee shall pay to the Lessor an amount equal to the then applicable Termination Value for the affected Aircraft on such Settlement Date together with all accrued but unpaid Rent for the affected Aircraft to such Settlement Date and, without duplication, all other amounts then owing by the Lessee under the Operative Documents.

(e)      Upon full compliance by the Lessee with the terms of this Clause 9.1 the Lessor will (subject to insurer's salvage rights, if any) transfer to, or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty, all of the Lessor's right, title and interest, if any, in and to the Aircraft with respect to which such Event of Loss occurred by an appropriate instrument, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Aircraft shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Aircraft" as defined herein.

**9.2      Event of Loss with Respect to an Engine**

(a)      Upon the occurrence of an Event of Loss with respect to an Engine under circumstances in which there has not occurred an Event of Loss with respect to the associated Airframe, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), then within one hundred and twenty (120) days after the occurrence of such Event of Loss, the Lessee shall duly convey or cause to be conveyed to the Lessor and duly subject to the relevant Aircraft Mortgage and other relevant Security Documents, as replacement for such Engine with respect to which such Event of Loss occurred, title to a Replacement Engine (provided that all engines installed on such Airframe shall be of compatible make and model).

(b)      Such Replacement Engine shall be free and clear of all Liens (other than Permitted Liens) and having a value and remaining useful life at least equal to, and being in as good operating condition and state of maintenance as, the Engine with respect to which such Event of Loss occurred, assuming such Engine was of the value and remaining useful life and in the condition and state of repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss, but without regard to its point in the maintenance cycle.

(c)      Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)      furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)      cause an amendment to the related Lease Supplement, in form and substance reasonably satisfactory to the Lessor and the Security Trustee, subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant

FILED DATE: 1/11/2023 2:57 PM   2023L000001

to the Applicable Laws of the relevant Government of Registry or any other Relevant Jurisdiction;

(iii)   furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such Replacement Engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor and the Security Trustee may reasonably request;

(iv)   furnish the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) satisfactory to the Insurer Representative and the Security Trustee certifying that such engine has value and remaining useful life and it is in good operating condition as the Engine being substituted, assuming such Engine was in the condition and state of repair as required by the terms hereof immediately prior to such substitution, but without regard to its point in the maintenance cycle;

(v)   cause amendments to the relevant Aircraft Mortgage and other Security Documents, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such Replacement Engine to the relevant Aircraft Mortgage and Security Documents  to be duly executed by the Lessor and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry, the jurisdiction of incorporation or formation of the Lessor and the United States of America;

(vi)   cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessee, the Security Trustee and the Insurer Representative under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)   furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and the Security Trustee regarding the perfection of the Lien of the relevant Aircraft Mortgage and Security Documents with respect to such Replacement Engine addressed to the Security Trustee, the Insurer Representative and the Agent and in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative;

(viii)   affix a nameplate on such replacement engine in accordance with Clause 8.5;

(ix)   assign to the Lessor (for further assignment to the Security Trustee) all assignable and remaining engine warranties applicable to such Replacement Engine in a manner consistent with the relevant Engine Warranties Agreement.

(d)   Upon full compliance by the Lessee with the terms of this Clause 9.2 the Lessor will (subject to insurer's salvage rights, if any) transfer to or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it), all of the Lessor's right, title and interest, if any, in and to the replaced Engine by an appropriate instrument, signed by the Security Trustee, releasing the replaced Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an **Engine** as defined herein.  No Event of Loss with respect to an Engine under the circumstances contemplated

FILED DATE: 1/11/2023 2:57 PM   2023L000001

by the terms of this Clause 9.2 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

**9.3    Application of Payments from Governmental Authorities or Others**

Any payments (other than insurance proceeds from policies carried (or caused to be carried) by the Lessee the application of which is provided for in Clause 10 and other than proceeds of insurance policies carried by the Lessor or any Secured Party) received at any time by the Lessor or the Lessee from any Government Body or other Person with respect to an Event of Loss of any Aircraft or any Engine shall be paid over to the Security Trustee and applied, subject to Clause 9.6, in accordance with the terms of the Intercreditor Deed.

**9.4    Requisition for Use of any Airframe and the Engines Installed Thereon**

In the event of the requisition for use by any Government Body not constituting an Event of Loss of an Airframe and the Engines installed thereon during the relevant Term, the Lessee shall promptly notify the Lessor, the Security Trustee, the Insurer Representative and the Agent of such requisition, and all of the Lessee's obligations under this Lease shall continue to the extent such obligations are not restricted or curtailed by such requisition and to the same extent as if such requisition had not occurred (but the Lessee's obligations to pay Rent for the relevant Aircraft pursuant to Clause 3 and its obligations under Clause 10 shall not be reduced or excused by such requisition).  All payments (and any interest thereon) received by the Lessor or the Lessee for the use of such Airframe and Engines at any time shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied in accordance with the Intercreditor Deed.

**9.5    Requisition for Use of an Engine Not Installed on an Airframe**

If an Engine not then installed on an Airframe is requisitioned for use by any Government Body, the Lessee shall replace such Engine or cause it to be replaced by complying with the terms of Clause 9.2 hereof as if an Event of Loss had occurred with respect to such Engine, and (upon compliance by the Lessee as aforesaid) any payments received by the Lessor or the Lessee from with respect to such requisition shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, that if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied to the obligations of the Lessee hereunder as the Lessor shall direct and any excess, shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee.

**9.6    Payments to the Lessee**

Any amount referred to in this Clause 9 which is payable or creditable to the Lessee or any Permitted Sub-Lessee shall not be paid or credited to the Lessee or such Permitted Sub-Lessee or, if it has been previously paid to the Lessee or such Permitted Sub-Lessee, shall not be retained by the Lessee or such Permitted Sub-Lessee, if at the time of such payment or credit a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to, applied in accordance with the terms of the Operative Documents and/or held by the Security Trustee as security for the obligations of the Lessee under this Lease and the Operative Documents and at such time as there shall not be continuing any Material Default, Termination Event or Event of Default such amount (together with interest thereon, if any), if then remaining, shall be paid or credited to the Lessee or the Permitted Sub-Lessee (as the case may be).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 10.   INSURANCE

### 10.1   Aviation Third Party Legal Liability Insurance

Except to the extent provided in Clauses 10.3 and 10.5, on or before the Delivery Date for an Aircraft, and throughout the Term therefor and for a period extending to two years following the later of (a) the final Basic Rent Payment Date for such Aircraft and (b) the date such Aircraft is returned to the Lessor, the Lessee will carry or cause to be carried at its own expense with insurers of recognized standing which insurers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative, airline liability insurance in respect of such Aircraft including war and allied perils, hi-jacking and other similar risks that are excluded from standard liability coverage to the extent that such insurance is (a) maintained by the Lessee or the Permitted Sub-Lessee with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (b) customarily obtained by carriers with comparable route structures flying similar aircraft or (c) generally required by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures in amounts customary for similar aircraft in the Lessee's fleet (but not less than seven hundred and fifty million Dollars (US$750,000,000) any one occurrence per each aircraft and subject to customary sub-limits for non-aviation coverage and aggregate limits for products liability and war risks coverages) and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet and of the type usually carried by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning and operating similar aircraft and engines, and which covers risks of a kind customarily insured against by such corporations which shall include general third party legal liability (including war and allied perils), passenger liability, and property damage liability (including cargo, baggage and mail liability).  Any liability insurance carried in accordance with this Clause 10.1 and any policies taken out in substitution or replacement for any of such policies:

(a)   shall be amended to name the Security Trustee, as the contract party (the **Contract Party**) and each of the Lessor, the Lessee, the Lessor Parent, the Agent, the Security Trustee, the Lenders, the Insurer Representative, the Insurer Group and their respective successors, members, assigns, officers, directors, shareholders, agents, employees, servants, Affiliates and sub-contractors as additional insureds (the **Additional Insureds**);

(b)   shall provide that in respect of the interests of the Lessor or any other Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that the Additional Insured so protected has not caused, contributed to or knowingly condoned the said act or omission);

(c)   shall provide that there shall be no recourse against the Lessor or any other Additional Insured for the payment of premiums under such policies and that the Insurer Representatives shall waive any right of subrogation against the Additional Insureds; and

(d)   shall provide that, if such insurance is cancelled for any reason whatsoever, or if any material change is made in such insurance that adversely affects the interest of the Lessor or any other Additional Insured, such cancellation or change shall not be effective as to the Lessor or any other Additional Insured for thirty (30) days (seven (7) days, or such other period as is then customarily obtainable in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers (if different from the Lessee's insurance broker) to the Lessee's appointed insurance broker.  The Lessee hereby covenants to cause the Lessee's or the Permitted Sub-Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Each liability policy (a) shall be primary without right of contribution from any other insurance that is carried by any other Person to the extent that such other insurance provides it with contingent or excess liability insurance with respect to its interest as such in any Aircraft, (b) shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured, (c) shall waive any right of the Aircraft Insurer to any setoff, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Lessee, the Permitted Sub-Lessee, the Lessor or any other Additional Insured to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft) and (d) shall provide for worldwide coverage (except in relation to Excluded Countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk and related perils policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit.

**10.2    Aircraft Hull Insurance**

(a)    Except to the extent provided in Clauses 10.3 and 10.5, on or prior to the Delivery Date for each Aircraft and throughout the Term for each Aircraft (and, in the case of the termination of this Lease with respect to an Aircraft pursuant to Clause 14 hereof, at all times following such termination until the sale or other disposition of such Aircraft pursuant hereto) the Lessee shall maintain or cause to be maintained in full force and effect, at its own expense and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet, all-risk aircraft hull insurance covering such Aircraft, while flying and on the ground, including coverage of the Engines and Parts while temporarily removed from or not installed on such Aircraft and not replaced with similar components (with flight taxing and ingestion coverage), against loss or damage, of the type (but not necessarily the amount) usually insured against by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning or operating similar aircraft and engines on an agreed-value basis in a euro amount not less than 120% of the highest Termination Value for such Aircraft during the applicable insurance period (the **Threshold Value**), and all-risk insurance with respect to each Engine and Part while removed from an Aircraft, and, as to each Engine or Part not installed on an Airframe, not less than the fair market value of such Engine or Part.

(b)    The Lessee shall maintain or cause to be maintained in full force and effect war-risk and related perils insurance and hi-jacking and government confiscation insurance (excluding for confiscation by the Government of Registry) in respect of each Aircraft on an agreed value basis for such Aircraft throughout each policy year, for not less than the amounts set forth in the preceding paragraph in respect of such Aircraft covering each of the following perils (i) insured by the Lessee or the Permitted Sub-Lessee, with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (ii) customarily insured by air carriers with comparable route structures flying similar aircraft, and (iii) generally required to be insured by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures.

(c)    All policies and subsequent policies taken out in accordance with this Clause 10.2 will be issued by insurance companies or underwriters of recognized standing in the international aviation industry or re-insurance companies or underwriters of such standing and through internationally recognized aviation insurance brokers, all of which insurance companies, underwriters and insurance brokers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative. In addition, all such policies and subsequent policies:

(i)    shall be denominated and payable in euro and shall be on an agreed value basis without the insurer's right to replace;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(ii)     shall name the Additional Insureds as additional insureds in respect of the legal liability insurances and the Security Trustee as the sole contract party and as loss payee in respect of hull claims that become payable on the basis of a total loss and provide that payment in respect of such claims shall be made to or to the order of the contract parties for application in accordance with the Operative Documents and in respect of all other hull claims the loss will be settled with such Persons as may be necessary to repair the relevant Airframe or Engine;

(iii)    shall provide that in respect of the interests of each Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that such Additional Insured has not caused, contributed to or knowingly condoned the said act or omission);

(iv)    shall provide that there shall be no recourse against the Lessor or any Additional Insured for the payment of premiums under such policies; and

(v)     shall provide that, if such insurance is canceled for any reason whatsoever, or if any material change is made in such insurance which adversely affects the interests of any Additional Insured, such cancellation or change shall not be effective as to Additional Insureds for thirty (30) days (seven (7) days, or such other period as is then customarily imposed by in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers to the Lessee's appointed insurance broker. The Lessee hereby covenants to cause the Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

(d)     The hull policy for each Aircraft:

(i)     shall waive any right of the Aircraft Insurer or any reinsurers to any set-off, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Additional Insureds or any other Person to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft);

(ii)     if separate hull all risks and war risks policies are arranged, shall contain a 50/50 claims funding clause acceptable to the Security Trustee, the Agent and the Insurer representative (which shall be AVS 103 or similar) in the event of a dispute as to which policy in respect of the hull insurances set forth in this Clause 10.2 shall pay in the event of a loss;

(iii)    shall provide for worldwide coverage (except for excluded countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit; and

(iv)    shall have deductibles (not applicable in the case of an Event of Loss or war and allied perils insurance) standard in the  industry in respect of the same model aircraft, which are reasonably acceptable to the Insurer Representative and the Security Trustee and in amounts which are no greater than seven hundred and fifty thousand dollars (US$750,000) and in any event such deductible shall not be greater than those which other international airlines of comparable standing (in the judgement of the Secured Parties' independent insurance advisor after consultation with the Lessee's broker of record) to the Lessee operating comparable aircraft are able to obtain in such market.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(e)   The Lessee may procure endorsements to the relevant insurance policies required to be maintained pursuant to Clause 10 so as to incorporate the terms of AVN 67B (or any successor provision) unto such policies, in which event, to the extent that any provision of any such AVN 67B (or any successor provision) endorsement conflicts or is otherwise inconsistent with the requirements of this Clause 10, then (so long as it shall remain general industry practice to insure aircraft financed by financial institutions on the basis of such endorsement) such endorsement shall be deemed to satisfy the requirements of this Clause 10 to the extent covered by such endorsement.

(f)   As between the Lessor and the Lessee it is agreed that all insurance payments received under policies that the Lessee is required to maintain pursuant to this Clause 10.2, exclusive of any payments received in excess of the then applicable Threshold Value for an Aircraft, as the result of the occurrence of an Event of Loss with respect to an Airframe or an Engine related thereto will be applied, unless a replacement is effected in accordance with Clause 9.1 or 9.2 hereof, pursuant to the Intercreditor Deed.

(g)   As between the Lessor and the Lessee the insurance payment of any property damage or loss with respect to an Aircraft (i) that constitutes an Event of Loss, in excess of the then applicable Threshold Value for such Aircraft, shall be paid to the Lessee, and (ii) that does not constitute an Event of Loss with respect to the related Airframe or a related Engine, will be applied in payment (or to reimburse the Lessee), for repairs or for replacement property in accordance with the terms of Clauses 7 and 8, if not already paid for by the Lessee and any balance remaining after compliance with such Clauses with respect to such loss shall, subject as provided below, be paid to and retained by the Lessee or in accordance with Clause 9.3(b) of the Intercreditor Deed.

(h)   Notwithstanding any provision in this Clause 10.2, any amount referred to in this Clause 10.2 which is payable to the Lessee, shall not be paid to the Lessee or, if it has been previously paid directly to the Lessee, shall not be retained by the Lessee, if at the time of such payment a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to and held by the Security Trustee as security for the obligations of the Lessee under this Lease and, during the continuance of such Material Default, Termination Event or Event of Default, shall be applied to the satisfaction of the then due and payable obligations of the Lessee under this Lease, and, at such time as there shall not be continuing any such Material Default, Termination Event or Event of Default, the remainder of such amount shall be paid to the Lessee.

## 10.3   Default

If the Lessee shall default in effecting or maintaining any insurance or if any insurance shall, for any cause become void, the Lessor, the Security Trustee or any other Additional Insured may (but without any obligation to do so and without prejudice to the Lessor's other rights and remedies hereunder) effect and keep up such insurance at the cost of the Lessee and the Lessee will forthwith upon demand repay to the Lessor, the Security Trustee or any other Additional Insured all premiums and other moneys from time to time paid by the Lessor, the Security Trustee or any other Additional Insured in respect of such insurance (which amount shall be certified by the Lessor, the Security Trustee or such other Additional Insured).

## 10.4   Certificates

On or before the Delivery Date for each Aircraft and promptly after the issuance or modification or renewal thereof (but in any event prior to the expiration of any insurance then to be renewed) in form substantially similar to those given prior to or on such Delivery Date, the Lessee will furnish to the Lessor, the Insurer Representative, the Agent and Security Trustee (with sufficient copies for all Lenders):

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a) a certificate of the Lessee's insurance broker or an authorized representative of the Aircraft Insurer describing in reasonable detail the Aircraft Insurances then carried and maintained on such Aircraft, containing an endorsement reflecting the Aircraft Insurances required hereunder and:

  (i) certifying the date and time of commencement and expiry of each insurance policy;

  (ii) specifying the deductible amounts and levels of co-insurance, if any, for each type of loss; and

(b) a letter of undertaking from the Lessee's appointed insurance broker with regard to the Aircraft Insurances required hereunder in respect of such Aircraft (in the case of each renewal, in substantially the same form as delivered on the relevant Delivery Date).

## 10.5    Notice of Variations

If any material variation is made to the terms of any of the Aircraft Insurances or Aircraft Reinsurances the Lessee shall immediately give notice to the Lessor, the Insurer Representative, the Security Trustee, the Agent and the Lenders of such variation and shall provide such further details in relation thereto as the Lessor, the Insurer Representative, the Security Trustee, the Agent or any Lender may reasonably require.

## 10.6    Premiums

The Lessee shall pay or cause to be paid the premiums (or installments thereof) as required by the terms of such policies and produce to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request receipts in respect of payment of such premiums (or installments thereof) or other evidence of such payments as the Lessor, the Insurer Representative, the Security Trustee or the Agent may reasonably request.  In the case of renewals of such policies, the Lessee shall cause to be provided to the Lessor, the Insurer Representative, the Security Trustee and the Agent evidence of such renewal as soon as practicable and in any event within seven (7) days after the date of renewal and shall give the Lessor, the Insurer Representative, the Security Trustee and the Agent notice of such intended renewal no later than the day before such date and the Lessee shall pay the renewal and other premiums (and installments thereof) as required by the terms of such policies.

## 10.7    Insurance Policies

In the absence of an unqualified opinion or certificate addressed to the Lessor, the Insurer Representative, the Security Trustee and the Agent from the Lessee's or the Permitted Sub-Lessee's insurance brokers (and, if applicable, reinsurance brokers), the Lessor and each Secured Party shall be entitled to full reliance, without exception, that the certificates of insurance (and, if applicable, certificates of reinsurance) delivered pursuant to this Clause 10 do not conflict with the terms and conditions of the underlying insurance (and, if applicable, reinsurance) policies.  Copies of the policies and endorsements and riders amendatory thereof (excluding premium information) with respect to the Aircraft Insurances and any Aircraft Reinsurances, required under this Clause 10 shall be made available to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request for inspection by their respective representatives at the offices of the Lessee or the Permitted Sub-Lessee or the Lessee's or the Permitted Sub-Lessee's insurance brokers during normal business hours.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**10.8    Reinsurance**

Unless the Aircraft Insurances maintained by the Lessee in accordance with the provisions in this Clause 10 are maintained with Lloyd's of London or in other internationally recognized aviation insurance markets with insurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee and the Insurer Representative, then the Lessee shall procure that the insurers shall maintain reinsurance in all respects satisfactory to the Security Trustee and the Insurer Representative covering identical subject matter and risk for an amount (which shall not be less than ninety five percent (95%) of the relevant coverage amount) with Lloyd's of London or in other internationally recognized aviation insurance markets with reinsurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee, the Agent and the Insurer Representative. Any reinsurance shall:

(a)    be on the same terms as the original insurances;

(b)    contain a "cut-through" clause satisfactory to the Security Trustee, the Agent and the Insurer Representative providing that, in the event of any claim arising under the reinsurance, the reinsurers thereunder shall, in lieu of payment to the original insurer or its successors in interest and assigns, pay to or to the order of the Contract Party as loss payee that portion of any loss due for which the reinsurers thereunder would but for this cut-through clause be liable to pay the original insurer or its successors in interest and assigns, it being understood and agreed (and the Lessee agreeing to obtain the agreement of its original insurers for the benefit of the Lessor, the Agent, the Security Trustee, the Insurer Representative, the other Secured Parties and the reinsurers) that any such payment by the reinsurers thereunder shall fully discharge and release the original insurers from any and all further liability in connection therewith; and

(c)    provide for payment to be made directly to or to the order of the Contract Party as provided herein notwithstanding (x) any bankruptcy, insolvency, liquidation or dissolution of the original insurer(s), and/or (y) that the original insurer(s) have made no payment under the primary insurance policies.

**10.9    Location**

Except as otherwise expressly permitted herein, the Lessee shall not at any time do or suffer to be done to any Aircraft, any Engine or any Part thereof or the premises on which the same may be located, or bring or keep, or permit to be brought or kept, anything therein or thereon or operate any Aircraft, any Engine or any Part thereof or take the same to or keep the same in, or permit the same to be taken to or kept in, a place where or whereby any insurance required hereunder may be rendered void or voidable or no longer in force or coverage thereunder shall be limited, without first arranging at its own expense such additional Insurance coverage as shall be necessary to avoid such result, such additional insurance to be in form and substance satisfactory to the Lessor, the Security Trustee and the Insurer Representative.  The Lessee will pay or cause to be paid all additional insurance premiums required on account of the additional risk caused by the use to which any Aircraft is put as aforesaid.

**10.10    Notice from the Lessee**

The Lessee will forthwith notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of any event (including but not limited to an occurrence) which will or may give rise to a claim under the Aircraft Insurances required in Clause 10.2, in excess of an amount in any currency equal to three million Dollars (US$3,000,000) in respect of an Airframe and one million Dollars (US$1,000,000) in respect of an Engine, but nothing in this Clause 10.10 shall prejudice the payment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

provisions of Clause 10.2.  Upon completion of the repairs in respect of a loss in which insurers have paid proceeds towards such repair, the Lessee shall deliver to the Lessor, the Insurer Representative, the Security Trustee and the Agent an engineer's certificate certifying that such repairs have been completed in accordance with the manufacturer's recommended procedures.

**10.11**   **Certain Undertakings in Respect of the Aircraft Insurances**

(a)   The Lessee shall not and shall procure that no Permitted Sub-Lessee shall:

    (i)   make any modification to the Aircraft Insurances or any Aircraft Reinsurances required hereunder which is materially adverse to the interest of the Lessor, the Insurer Representative, the Security Trustee, any Secured Party or any other Additional Insured;

    (ii)   do, or omit to do, or permit to be done, or left undone anything whereby any required Aircraft Insurance or any Aircraft Reinsurance would or might reasonably be expected to be rendered, in whole or in part, invalid or unenforceable and, without prejudice to the foregoing, not use or keep or permit any Aircraft or any Engine or any Part thereof, to be used or kept for any purpose, in any manner or in any place not covered by required Aircraft Insurances or any Aircraft Reinsurances (except as otherwise expressly permitted herein); and

    (iii)   discriminate against any Aircraft relative to other aircraft of the same or comparable model within the Lessee's or the Permitted Sub-Lessee's fleet as to the coverage of the Aircraft Insurances required under this Clause 10.

(b)   The Lessee shall as soon as practicable, but in no event later than 48 hours, upon receipt of notice of cancellation of the war risks and related perils insurance due to armed hostilities in the area where any Aircraft may then be located or scheduled to operate, remove any Aircraft or cause any Aircraft to be removed to the United Kingdom  (or such other location at which such Aircraft shall remain covered by war risks and related perils insurance) and shall cause such Aircraft to remain in such location until such war risks and related perils insurance is reinstated and compliance herewith shall cure any related Termination Event or  Event of Default under Clause 13(c), provided, however, that the Lessee need not comply with the provisions of this paragraph (b) if to do so would cause the Lessee to breach any other obligation contained herein.

(c)   The Lessee shall be responsible for the payment of any applicable deductibles or costs of any Aircraft Insurances and any Aircraft Reinsurances.

**10.12**   **Reimbursement**

The Lessee shall reimburse the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative, as the case may be, on demand for the amount of any premiums or premium installments which such party may pay pursuant to this Clause 10 together with interest thereon, for the period from and including the date of such payment by such party to but excluding the date on which the same is paid in full by the Lessee at the applicable Post-Default Rate.

**10.13**   **Change in Industry Practice; Additional Requirements**

In the event that there is a material change in the generally accepted industry-wide practice with regard to the insurance of aircraft (whether relating to all or any of the types of insurances required to be effected under the foregoing provisions of this Clause 10) such that the insurances required pursuant to the provisions of this Clause 10 are insufficient to protect the interests of the Lessor, the Insurer Representative, the Security Trustee or any of the other Additional Insureds hereunder, the Insurer Representative and the Security Trustee shall, to the extent reasonably practicable, consult

FILED DATE: 1/11/2023 2:57 PM   2023L000001

with the Lessee, and the insurance requirements set forth in this Clause 10 shall be varied at the request of the Insurer Representative or the Security Trustee so as to include such additional or varied requirements as may be reasonably necessary to ensure that the insurances and reinsurances as so varied shall provide comparable protection to that which it would have provided if such change in the generally accepted industry-wide practice had not occurred.

**10.14    Compliance with Legal Requirements**

In addition to the foregoing provisions of this Clause 10 the Lessee shall and shall procure that any Permitted Sub-Lessee shall comply with all legal requirements as to the insurance of any Aircraft or any Engine which may from time to time be imposed by the Applicable Laws of any Aircraft's registration or of any jurisdiction to or from or over which any Aircraft or any Engine shall be flown or in which the same shall be located.

**10.15    Additional Insurance**

The Lessee shall have the right to carry insurance in excess of the amounts required hereunder and additional and separate insurance for its own benefit at its own expense; provided that, no such insurance shall result in a duplicate payment on a loss, or shall impair in any way (whether or not material) the rights of the Lessor, the Insurer Representative, the Security Trustee, and other Secured Party or any other Additional Insured under this Lease and the Operative Documents.  Proceeds of such insurance shall be payable directly to the Lessee.

**10.16    Additional Terms of Insurance**

The Lessee agrees to ensure that the insurance policies in respect of all Insurances referred to in Clauses 10.1 and 10.2 above shall at all times be underwritten in full.

**10.17    Self Insurance**

Except for the deductibles permitted by Clause 10.2 hereof or otherwise permitted by the Lessor, the Security Trustee and the Insurer Representative, the Lessee shall not be permitted to self-insure against any of the risks required to be covered by the insurance described in this Clause 10.

**10.18    Date Recognition Exclusion**

If the Aircraft Insurances are subject to any exclusion relating to date recognition, the Lessee shall obtain write-backs covering such exclusions to the fullest extent available in the international aviation insurance markets and in accordance with good and prudent international aviation insurance practice.

**10.19    Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under this Clause 10 and shall take immediate action to restore any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 11.   ABSOLUTE OBLIGATIONS

(a)   This Lease is a net lease, and it is intended that the Lessee shall pay or cause to be paid all costs, charges, fees (including Eurocontrol fees), assessments, expenses, withholdings and Taxes of every character whether foreseen or unforeseen, ordinary or extraordinary, incurred in connection with or arising out of the use, operation, maintenance, repair, modification, alteration, replacement and leasing of any Aircraft, including the costs, expenses and Taxes and similar levies set forth in the Participation Agreement.  The Lessee's obligation to pay all Rent and to perform all other obligations hereunder is absolute and unconditional and shall not be affected or reduced by any circumstances or for any reason, including:

(i)   any setoff, counterclaim, recoupment, defense or other right which the Lessee may have against the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party, the Manufacturer, the Engine Manufacturer or any Person providing services with respect to any Aircraft, or any other Person, for any reason whatsoever (whether in connection with the transactions contemplated hereby or otherwise), including any breach by the Lessor of its warranties contained herein or in the other Operative Documents;

(ii)   any defect in the title, airworthiness, eligibility of registration under any Applicable Law, condition, design, operation, or fitness for use of, or any damage to or loss or destruction of, any Aircraft or any portion thereof (subject to the provisions of Clause 9 hereof), any interruption or cessation in the use of or possession thereof by or availability to the Lessee for any reason whatsoever, whether arising out of or related to an act or omission of the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, Manufacturer, Engine Manufacturer or any other Person;

(iii)   any Lien with respect to any Aircraft or any portion thereof;

(iv)   the invalidity or unenforceability or lack of due authorization or other infirmity of this Lease or any absence of right, power or authority of any Person to enter into any Operative Document;

(v)   any Taxes;

(vi)   any change, waiver, extension, indulgence or liability or other act or omission in respect of any liability or obligation of the Lessor, the Security Trustee, the Lenders, the Agent or the Insurer Representative or any other Secured Party;

(vii)   any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation, receivership or other like proceeding relating to the Lessee, the Lessor, the Lessor Parent, the Trustee or the Security Trustee or any disaffirmance, rejection or other action taken with respect to this Lease or any other Operative Document by the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party or any other Person, or by any court, in any such proceeding;

(viii)   the Lessee at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of sovereignty or otherwise, which immunity, if any, the Lessee hereby expressly waives;

(ix)   any restrictions applicable to the Lessee on the transfer or conversion of currency; or

(x)   any other circumstances or happening of any nature whatsoever, whether or not similar to any of the foregoing; it being the express intention of the Lessor and the Lessee that all Rent

FILED DATE: 1/11/2023 2:57 PM   2023L000001

payable hereunder shall be payable in all events, unless the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease or the other Operative Documents.

(b)     This Lease shall not, except as expressly set forth herein, be cancellable by the Lessee and, except as expressly set forth elsewhere in this Lease, the Lessee hereby waives any and all rights which it may now have or which at any time hereafter may be conferred upon it, by statute or otherwise, to terminate, abate, cancel, quit, reduce, defer, suspend or surrender this Lease or any Aircraft or any obligation imposed upon the Lessee hereunder or under the other Operative Documents (including payment of Rent), except in accordance with the terms hereof and thereof.

(c)     If for any reason whatsoever this Lease shall be terminated in whole or in part by operation of Applicable Law, except as specifically provided herein, the Lessee, if and to the extent that the Lessee retains the use and possession of any Aircraft, nonetheless agrees to pay to the Lessor an amount equal to each Basic Rent payment and any Supplemental Rent payment in respect of such Aircraft at the time such payments would have become due and payable in accordance with the terms hereof and the other Operative Documents had this Lease not been terminated in whole or in part and so long as such payments are made and all other terms and conditions hereof are complied with by the Lessee, the Lessor and the Lessee will deem this Lease to remain in full force and effect.

(d)     Nothing contained in this Lease shall be construed as a waiver of the Lessee's right to seek any claim against the Lessor, the Security Trustee, any Secured Party or any other Person arising out of the transactions contemplated by the Operative Documents in a separate proceeding or by compulsory counterclaim.

## 12.     ASSIGNMENT

The terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Except as otherwise provided in Clause 7.4, neither party hereto shall, without the prior written consent of the other and except as expressly permitted by the Operative Documents, assign any of its rights or obligations hereunder.

## 13.     LEASE EVENTS OF DEFAULT AND TERMINATION EVENTS

Other than the events referred to in paragraphs (f), (p), (t) or (u) which, if they do not arise as a result of any act or omission of any Lessee Group Member, shall constitute "Termination Events" (but, for the avoidance of doubt,  in all other circumstances shall constitute "Lease Events of Default"), the following events shall constitute "Lease Events of Default" hereunder, (whether any such event shall be voluntary or involuntary or come about or be effective by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, the United States or any other jurisdiction, or the administration or interpretation thereof) and each such Lease Event of Default or Termination Event shall be deemed to exist and continue so long as, but only so long as, it shall not have been remedied:

(a)     the Lessee shall fail to pay when due any amount of Basic Rent or Termination Value on the date such Basic Rent or Termination Value is due, and such failure shall continue unremedied for three (3) Business Days following the due date therefor;

(b)     the Lessee shall fail to pay when due any amount of Supplemental Rent or any other amount due and owing from the Lessee under this Lease (other than as specified in Paragraph (a) above) or any other Operative Document and such failure to pay shall continue for a period of five (5) Business Days after demand has been made on the Lessee;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     the Lessee shall fail to carry and maintain or fails to procure that any Permitted Sub-Lessee carry and maintain Aircraft Insurances (including any required Aircraft Reinsurances) required to be maintained in accordance with the provisions of Clause 10, or the Lessee shall fail to perform or observe any covenant, condition or agreement contained in Clause 7.6(a) or 10.11 hereof or Clause 8(g) of the Participation Agreement;

(d)     any Lessee Obligor shall have failed to perform or observe in any material respect any other covenant or agreement (ie, other than those covered by the preceding paragraph (a), (b) or (c) of this Clause 13) to be performed or observed by it hereunder or under any other Operative Document to which it is a party, and such failure is unremediable, or if remediable and the Lessee is diligently proceeding to remedy such failure, shall continue unremedied for a period of thirty (30) days after the earlier of (i) the Lessee obtaining actual knowledge of such failure or (ii) notice to the Lessee thereof has been given by the Lessor, the Security Trustee or the Insurer Representative;

(e)     any representation or warranty of any Lessee Obligor under any of the Operative Documents or in any document or certificate furnished by the Lessee in connection therewith or pursuant thereto shall be untrue, inaccurate or misleading in any material respect as at the time when made or furnished;

(f)     any license, consent, approval or authorization of, or any filing or registration with, any governmental authority or agency necessary for the performance by a Lessee Obligor of its obligations under this Lease or any other Operative Document or in connection herewith or therewith (including, without limitation, the registration of any Aircraft or the any Mortgage or any Security Agreement) or the Certificate of Airworthiness issued in respect of any Aircraft shall be revoked, not applied for or not issued or shall cease to remain in full force (or, as applicable, is not duly renewed upon the terms consistent with the original approval or otherwise satisfactory to the Security Trustee and the Insurer Representative) or any of the foregoing shall be modified and any such revocation, non-application or issuance or modification would materially adversely affect (in the opinion of the Security Trustee or the Insurer Representative) the rights and remedies of the Lessor hereunder or of any Secured Party under the Operative Documents;

(g)     the Lessee or either Guarantor shall apply for or consent to the appointment of, or the taking of possession by, a receiver, an examiner, a trustee, custodian or liquidator of itself or of a substantial part of its property, or the Lessee or either Guarantor shall admit in writing submitted in connection with judicial or other similar procedures its inability to pay its debts generally as they come due, shall announce a moratorium on payment of its debts or any class of its debts, or shall make a general assignment for the benefit of creditors;

(h)     the Lessee or either Guarantor shall file a voluntary petition or commence a case in bankruptcy or a voluntary petition or an answer seeking reorganization in a proceeding under any bankruptcy or insolvency laws (as now or hereafter in effect) or an answer admitting the material allegations of a petition filed against any the Lessee or either Guarantor in any such proceedings, or the Lessee or either Guarantor shall by voluntary petition, answer or consent to or seek relief under the provisions of any other now existing or future bankruptcy, insolvency, reorganization or other similar law providing for the reorganization or winding-up of corporations, or providing for an agreement, composition, extension or adjustment with its creditors;

(i)     an order, judgment or decree shall be entered in any proceeding by any court of competent jurisdiction appointing, without the consent of such Lessee or either Guarantor, a receiver, trustee, custodian or liquidator of the Lessee or either Guarantor or of any substantial part of its property, or sequestering any substantial part of the property of such Lessee or either

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Guarantor, and any such order, judgment or decree of appointment or sequestration shall remain in force undismissed, unstayed or unvacated for a period of sixty (60) days after the date of entry thereof;

(j)      a petition against the Lessee or either Guarantor in a proceeding under any bankruptcy laws or other insolvency laws as now or hereafter in effect shall be filed in a court of competent jurisdiction and shall not be withdrawn or dismissed within sixty (60) days thereafter, or if, under the provisions of any law providing for reorganization or winding-up of corporations which may apply to the Lessee or either Guarantor any court of competent jurisdiction shall assume jurisdiction, custody or control of the Lessee or of any substantial part of its property or any Aircraft and such jurisdiction, custody or control shall remain in force unrelinquished, unstayed or unterminated for a period of sixty (60) days;

(k)      the Lessee or either Guarantor threatens to suspend making payments or declares a moratorium or seeks a restructuring of its Indebtedness or the Lessee shall fail to pay when due (after giving effect to any applicable grace periods) any principal of or interest or scheduled payments in respect of any of its other Indebtedness (i) aggregating ten million Dollars (US$10,000,000) or more (or the equivalent thereof in any currency) or (ii) in respect of any Other Indebtedness, and the lender(s), the funder(s) or an agent or trustee thereof in respect of such Indebtedness declares or thereby becomes entitled to declare such Indebtedness to be due and payable prior to its scheduled maturity;

(l)      any additional procedure similar to those referred to in subparagraphs (g), (h), (i) and (j) above for the relief of financially distressed debtors under any Applicable Law or any other competent jurisdiction is entered into by the Lessee or either Guarantor voluntarily or involuntarily, and is not withdrawn or dismissed within sixty (60) days thereafter;

(m)      any of the events referred to in subparagraphs (g) to (l) above occurs in relation to any Permitted Sub-Lessee, and:

(i)      the Lessee fails to inform the Lessor, the Security Trustee and the Insurer Representative immediately upon becoming aware of such event; or

(ii)      the Lessee fails to terminate the leasing of the Aircraft pursuant to the relevant Permitted Sub-Lease immediately upon written request from the Lessor, the Security Trustee or the Insurer Representative.

(n)      a final judgment or judgments for the payment of money in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, shall be rendered against the Lessee or either Guarantor and the same shall remain undischarged for a period of sixty (60) days during which execution of such judgment shall not be effectively stayed, or an attachment or attachments or other Lien or Liens in respect of such judgment or judgments shall be issued or entered against any of the property of the Lessee or either Guarantor, for an amount in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, and shall remain undischarged or unbonded for thirty (30) days, except, in each case when such is being contested in good faith by appropriate proceedings that do not involve any substantial risk of the sale, seizure, forfeiture or loss of Collateral or title thereto, interest therein or use thereof;

(o)      the existence, validity, enforceability or priority of the Lessor's rights, title and interests to any Aircraft is challenged by any Lessee Obligor or any other Person claiming through the Lessee or this Lease or any other Operative Document becomes wholly or in part to a material extent invalid, illegal or unenforceable for any reason;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(p)     the validity or enforceability (but not any particular interpretation) of any provision of any Operative Document is contested through appropriate proceedings by the Lessee or any Affiliate thereof or by any Government Body seeking to establish the invalidity or unenforceability thereof;

(q)     the Lessee or any Permitted Sub-Lessee shall:

    (i)     (in the case of a Permitted Sub-Lessee) cease, or announce its intention to cease, to conduct its business as a commercial scheduled airline;

    (ii)    other than in circumstances permitted by Clause 8(g) of the Participation Agreement, assign, lease or otherwise dispose of all or any material part of the assets or property (whether by a single transaction or a number of related or unrelated transactions and whether at the same time or over a period of time) comprising the its aircraft or aircraft related business; or

    (iii)   (in the case of a Permitted Sub-Lessee) cease to hold, whether by virtue of the revocation, suspension or non-renewal thereof or otherwise, any air transport license or its equivalent required to enable the it to carry out its principal business or the franchises, concessions, permits, rights or privileges required for the conduct of the business or operations of it shall be revoked, canceled or otherwise terminated or the free and continued use and exercise thereof curtailed or prevented, and as a result of any of the foregoing the preponderant business activity of it  shall cease to be that of a commercial airline;

(r)     there shall have occurred and be continuing any "Event of Default" under and as defined in any Other Operative Document;

(s)     The Lessee breaches its obligations under clause 6 or clause 23 of the Participation Agreement;

(t)     there shall be any change (or such change shall be enacted or made by decree or otherwise and shall be scheduled and become thereafter effective) in the laws, regulations or treaties of the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, (while it is leasing an Aircraft from the Lessee) any Permitted Sub-Lessee, the Cayman Islands, Ireland the United States or any government or political agency, subdivision or instrumentality thereof which materially adversely affects the validity, legality or perfection of the Lessor's title to any Aircraft, or any Secured Party's rights in any Aircraft under any Security Document, or which materially adversely affects the Lessor's or any Secured Party's interests under this Lease or materially adversely affects the Lessee's ability to perform or comply with its obligations under this Lease or the legality of such performance or compliance;

(u)     any Government Body shall have condemned, seized or appropriated all or any substantial part of the property of the Lessee or either Guarantor which is likely materially and adversely to affect the ability of such the Lessee or either Guarantor to perform its obligations under the Operative Documents; and/or

(v)     any other event occurs (other than an Event of Loss) or any other circumstance arises which is likely materially and adversely to affect the ability or legal obligation of the Lessee to perform its obligations under any Operative Document to which it is a party.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**14.    REMEDIES**

(a)    Upon the occurrence of any Event of Default or a Termination Event and at any time thereafter so long as the same shall be continuing, the Lessor may (without prejudice to any other rights of the Secured Parties under this Lease or the other Operative Documents), at its option, (in the case of any Event of Default) accept such repudiation and by notice to the Lessee declare this Lease to be in default or a Termination Event to have occurred and (in each case) by notice to the Lessee may, at its option, terminate any commitment of the Lessor to lease any Aircraft for which the relevant Delivery Date has not yet occurred (provided, that upon the occurrence of any Event of Default described in Clause 13(g)-(l), this Lease shall automatically be deemed in default and the Lessor's commitment shall automatically terminate); and at any time after this Lease shall be declared or deemed to be declared to be in default or a Termination Event to have occurred under this Clause 14, the Lessor may, so long as the Lessee shall not have remedied all outstanding Events of Default or Termination Events, exercise one or more of the following remedies with respect to all or any part of any Aircraft as the Lessor in its sole discretion shall elect:

(i)    the Lessor may demand that the Lessee pay the Lessor, and the Lessee shall pay to the Lessor, all Basic Rent (for all Aircraft) that has accrued but remains unpaid, together with the then applicable Termination Value for such Aircraft, computed on the date of final payment in full thereof, all Supplemental Rent then due and payable by the Lessee hereunder and all amounts then due and payable by the Lessee to the Lessor or any Secured Party under all other Operative Documents, and upon the indefeasible payment of such amount and all Supplemental Rent then due and payable by the Lessee hereunder, the Term for such Aircraft shall terminate;

(ii)    the Lessor shall be entitled in addition to making any demand referred to in paragraph (a) above:

(A)    to cause the Lessee upon demand of the Lessor (provided that such demand shall be deemed to have been given if the Lessor is stayed by operation of law from making such demand) and at the Lessee's expense, to return promptly, and the Lessee shall return promptly, all or such part of any Aircraft, and the Manuals and Technical Records relating thereto, as the Lessor may so demand, to the Lessor in the manner and condition required by, and otherwise in accordance with all the provisions of, Clause 5 as if such Aircraft was being returned at the end of the Term for such Aircraft, or if the Lessee does not so deliver such Aircraft or the Manuals and Technical Records relating thereto, the Lessor, at its option, may enter upon the premises where all or any part of such Aircraft and the Manuals and Technical Records relating thereto are located and take immediate possession of and remove the same (together with any engine or part which is not an Engine or Part associated with such Aircraft but which is installed on the relevant Airframe or stored with or attached to any relevant Engine, subject to all of the rights of the owner, lessor, lienor or secured party of such engine or part) by summary proceedings or otherwise all without liability accruing to the Lessor for or by reason of such entry or taking of possession, whether for restoration of damage to property caused by such taking or otherwise, provided that all actions of the Lessor in this respect are reasonable and necessary, and the Lessor may institute proceedings to repossess such Aircraft in any jurisdiction where such Aircraft may be located, and provided further that if at any time after the Lessor has exercised its rights under this paragraph (A), the Lessee shall make the payments referred to in paragraph (a) above, the Term for such Aircraft shall terminate;

(B)    following repossession of an Aircraft pursuant to Clause 14(b)(i), to sell such Aircraft at public or private sale, as the Lessor may determine; provided that the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessor shall apply the proceeds of any sale in the manner set forth in the Intercreditor Deed, and the Lessor agrees to give the Lessee at least ten (10) Business Days' prior notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article 8(4) of the Convention) of the date fixed for any public sale of such Aircraft or of the date on or after which will occur the execution of any contract providing for any private sale thereof, and any such sale shall be conducted so as to afford the Lessee a reasonable opportunity to bid; and

(C)     the Lessor may exercise any other right or remedy which may be available to it as a secured party under Applicable Law or under the Cape Town Convention, including, without limitation, all rights and remedies under Chapter III of the Convention and Chapter II of the Protocol.  the Lessor hereby agrees to give the Lessee at least fifteen (15) days' notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article IX(6) of the Protocol as set forth in Article IX(6) of the Protocol in connection with a proposal to procure the de-registration and export of an Aircraft without a court order.  the Lessee expressly agrees to permit the Lessor to obtain from any applicable court, pending final determination of any claim resulting from an Event of Default or Termination Event hereunder, speedy relief in the form of any of the orders specified in Article 13 of the Convention and Article X of the Protocol as the Lessor shall determine in its sole and absolute discretion, subject to any procedural requirements prescribed by Applicable Laws.

(b)     In addition, the Lessee shall be liable, except as otherwise provided above, for any and all unpaid Supplemental Rent due hereunder before, after or during the exercise of any of the foregoing remedies and for all legal fees and other costs and expenses actually incurred by the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative by reason of the occurrence of any Event of Default or Termination Event or the exercise of the Lessor's remedies with respect thereto, including (i) all costs and expenses incurred in connection with the return of the relevant Aircraft in accordance with the terms of Clause 5 or in placing the relevant Aircraft in the condition and airworthiness required by such Clause and (ii) any other costs and expenses that the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative may incur in connection with the retaking, holding, storage, export, deregistration and preparing for sale of the relevant Aircraft and other like action or that the Lessee has agreed to assume in any other Operative Document or pursuant to Applicable Law.  Except as otherwise expressly provided above, no remedy referred to in this Clause 14 is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above; and the exercise or beginning of exercise by the Lessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by the Lessor of any or all of such other remedies.  No express or implied waiver by the Lessor of, and no course of dealing by it with respect to, any Event of Default or Termination Event shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default or Termination Event.

(c)     The Lessee hereby consents to the exercise by the Lessor of the remedies granted herein and in the Cape Town Convention.  The Lessee acknowledges and agrees that the Lessor may exercise such of the foregoing remedies as it shall determine in its sole discretion and none of the foregoing remedies is manifestly unreasonable.  To the extent permitted by Applicable Law, the Lessee and the Lessor hereby agree that paragraph 2 of Article 13 of the Convention shall not apply to this Lease or to the exercise of any remedy by the Lessor under this Lease or the Cape Town Convention.  Following the occurrence of an Event of Default or Termination Event, the Lessee agrees to immediately discharge, upon demand by the Lessor or the Security Trustee, any registration made with the International Registry in favour of the Lessee.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 15.    FURTHER ASSURANCES; INVESTMENT OF SECURITY FUNDS

### 15.1    Further Assurances

(a)    The Lessee and the Lessor shall from time to time, at the cost and expense of the Lessee, do and perform such other and further acts and duly execute and deliver such further documents and assurances as may be required by Applicable Laws or requested by the other party to establish, maintain and protect the respective rights and remedies of the other party and to carry out and effect the intent and purpose of this Lease including, if requested by the Lessor, the Security Trustee, the Agent  or the Insurer Representative and at the expense of the Lessee:

(i)    the execution and delivery of supplements hereto or to the other Operative Documents, in recordable form, subjecting to this Lease or to the other Operative Documents, any replacement or substitute airframe or engine;

(ii)    the recording or filing of counterparts hereto or thereto, in accordance with the laws of such jurisdictions in which any Aircraft is based as the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee; and

(iii)    the registration of any interest, assignment or subordination with the International Registry to preserve, protect, perfect or establish priority in respect of any Aircraft Object or Associated Right covered by or related to this Lease, the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee.

(b)    The Lessee shall be solely responsible for obtaining all required consents and approvals of, giving all required notices to, performing all required registrations and filings for recordation with, and taking all other necessary actions in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, any Guarantor the jurisdiction of incorporation or formation of the Lessor, England and Wales and/or the United States of America including any governmental or political agency, subdivision or instrumentality thereof.

(c)    Without limiting the foregoing, the Lessee shall cause this Lease, and any and all additional instruments which shall be executed pursuant to the terms hereof, to be kept, filed, deposited or recorded, at all times, in the International Registry and in such places in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, the jurisdiction of incorporation or formation of the Lessor, the United States of America, England and Wales and such other jurisdictions in which any Aircraft is based as the Lessor, the Security Trustee, the Agent, any Lender or the Insurer Representative may reasonably request in order to perfect and preserve the rights of the Lessor, the Security Trustee, the Agent, the Lenders, the Insurer Representative or the other Secured Parties hereunder, and furnish to the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee an opinion or opinions of counsel or other evidence satisfactory to the Lessor, the Insurer Representative and the Security Trustee of each such filing, deposit or recordation and, without limitation of any of the foregoing, at the reasonable request of the Lessor, the Insurer Representative, the Agent, any lender or the Security Trustee, promptly correct any defect, error or omission which may at any time hereafter be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof and, at the request of the Lessee, the Lessor shall promptly correct any defect, error or omission which may at any time be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof. Without limiting any of the foregoing, the Lessee will co-operate fully with the Lessor, the Security Trustee, the Agent, the Lenders and the Insurer Representative for obtaining the deregistration of any Aircraft and any required export licenses, when requested by the Security Trustee upon any return of any Aircraft required hereunder.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**15.2     Security Funds**

(a)     Notwithstanding anything in this Lease to the contrary, if a Material Default or Event of Default or Termination Event  under this Lease shall have occurred and be continuing or if the Lessor (or the Security Trustee, as the Lessor's assignee) is holding funds pending replacement of any Airframe and/or Engines pursuant to Clause 9, all amounts otherwise payable to the Lessee hereunder shall be paid to the Lessor and shall be held by the Lessor (or, if either Security Agreement shall not have been discharged, shall be paid to and held by the Security Trustee) as security for the obligations of the Lessee under this Lease, and, at such time as there shall not be continuing such Material Default, Termination Event or Event of Default or such replacement is complete, such amounts, net of any amounts theretofore properly applied to the Lessee's obligations hereunder, shall be paid to the Lessee or as the Lessee may direct.

(b)     All funds held by the Security Trustee hereunder shall be held as Collateral under the Lessee Security Agreement to secure, inter alia, the repayment of the Loans and the other amounts expressed to be secured thereunder and applied as provided therein.

**16.     NOTICES**

All notices, consents and other communications hereunder shall be given in accordance with clause 13(c) of the Participation Agreement.

**17.     MISCELLANEOUS; GOVERNING LAW**

(a)     Any provision of this Lease that is prohibited or unenforceable in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and shall not invalidate or render unenforceable the other provisions hereof in any jurisdiction.  To the extent permitted by Applicable Law, the Lessee hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.  No term or provision of this Lease may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought and only as permitted by the Operative Documents.  The Clause and paragraph headings in this Lease and the table of contents are for convenience of reference only and shall not modify, define, expand or limit any of the terms or provisions hereof.

(b)     This Lease and any non-contractual obligations arising out of or in connection with it are governed by English law.

(c)     The provisions of clause 13(d) of the Participation Agreement, in so far as they relate to any dispute between the Lessor and the Lessee, shall apply hereto as if set out in this Agreement, *mutatis mutandis*.

(d)     To the extent that the Lessee may be or hereafter become entitled, in any jurisdiction in which judicial proceedings may at any time be commenced with respect to this Lease, to claim for itself or its property, assets or revenues immunity (whether by reason of sovereignty or otherwise) from suit, jurisdiction of any court, attachment prior to judgment, attachment in aid of execution of a judgment, set-off, execution of judgment or from any other legal process, and to the extent that in any such jurisdiction there may be attributed any such immunity (whether or not claimed), the Lessee hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity.

(e)     The payment obligations of the Lessee payable under this Lease and any other Operative Document (the **payor**) expressed to be payable thereunder in one currency (the **first currency**) shall not be discharged by an amount paid in another currency (the **second currency**), whether pursuant to a judgment or otherwise, to the extent that the amount so paid on prompt conversion to the first

FILED DATE: 1/11/2023 2:57 PM   2023L000001

currency under normal banking procedures does not yield the full amount of the first currency due thereunder, and the payor shall indemnify the recipient of such payment (the **payee**) against any such shortfall; and in the event that any payment by the payor, whether pursuant to a judgment or otherwise, upon conversion and transfer does not result in payment of such amount of the first currency, the payee shall have a separate cause of action against the payor for the additional amount necessary to yield the amount due and owing to the payee.

(f)     If it is necessary to determine for any reason other than that referred to in Clause 17(e) above the equivalent in the first currency of a sum denominated in the second currency, the rate of exchange used shall be that at which in accordance with normal banking procedures the Security Trustee could purchase the first currency with the second currency on the Business Day on which such determination is to be made (or, if such day is not a Business Day, on the next preceding Business Day).

(g)     This Lease may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Lease.

(h)     Except to the extent expressly provided herein, any terms of this Lease which expressly incorporate any provisions of the Cape Town Convention shall prevail in the case of any conflict with any other provision contained herein.  Each of the parties hereto acknowledges and agrees that for purposes of the Cape Town Convention (to the extent applicable hereto), separate rights may exist with respect to each Airframe and Engine.

## 18.     SECURITY FOR THE LESSOR'S OBLIGATION

(a)     In order to secure the repayment, inter alia, of the Secured Obligations, the Lessor has agreed in the Lessor Security Agreement, among other things, to assign to the Security Trustee its right, title and interest in and to this Lease, including all Associated Rights related thereto, subject to the reservations and conditions therein set forth.  The Lessee hereby consents to such assignment and acknowledges receipt of a copy of the Security Agreement it being understood that such consent shall not affect any requirement or the absence of any requirement for any consent under any other circumstances.

(b)     Until the Lien of the Lessor Security Agreement has been released:

    (i)     the Lessee shall, notwithstanding anything herein to the contrary, make all payments of Rent and all other amounts payable hereunder in accordance with clause 13 of the Participation Agreement and such payments shall not be subject to any defence, counterclaim, set-off or other right or claim of any kind which the Lessee may be able to assert against the Lessor or any other Person in an action brought by any thereof on this Lease;

    (ii)     all rights of the Lessor with respect to this Lease (including all consent, waiver and notice rights), any Aircraft, any Airframe, any Engine or any Part thereof, to the extent set forth in and subject in each case to the exceptions set forth in the Lessor Security Agreement, shall be exercisable by the Security Trustee (to the exclusion of the Lessor); and

    (iii)     all documents, notices, certificates and opinions of counsel sent by the Lessee to the Lessor shall also be sent to the Security Trustee.

## 19.     LESSOR'S RIGHT TO PERFORM FOR LESSEE

If the Lessee fails to make any payment of Rent required to be made by it hereunder or fails to perform or comply with any of its agreements contained herein, the Lessor or the Security Trustee may (but shall be under no obligation to) itself make such payment or perform or comply with such

agreement, and the amount of such payment and the amount of the reasonable expenses of the Lessor or the Security Trustee incurred in connection with such payment or the performance of or compliance with such agreement, as the case may be, shall be deemed Supplemental Rent, payable by the Lessee upon demand together with interest thereon at the applicable Post-Default Rate.

**20.     ENGLISH LANGUAGE PREVAILS**

For the avoidance of doubt, the Lessor and the Lessee agree any translation of this Lease shall not apply in construing this Lease and that the English version of this Lease shall govern for all purposes.

**21.     COMPLETE AGREEMENT**

Except for the other Operative Documents, this Lease contains the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior written or oral communications or agreements with respect thereto.

**22.     LIMITATION OF LIABILITY OF THE LESSOR**

The Lessee acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Lease is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Master Lease Agreement to be duly executed by their respective duly authorized officers on the date first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 1

## FORM OF ACCEPTANCE CERTIFICATE

Stogofjorden Limited (the **Lessee**) at [●] on this [●] day of [●] (the **Delivery Date**), has accepted delivery from AAA Max 2 Limited (the **Lessor**) of the following described aircraft (the **Aircraft**) pursuant to and in accordance with the terms of that certain Master Lease Agreement (the **Lease**) dated [●] between the Lessor and the Lessee:

One (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number [●] and registration mark [●] together with two (2) installed CFM model LEAP-1B27 engines bearing manufacturer's serial numbers [●] and [●], all parts, appliances, components, instruments, accessories, accessions, attachments, avionics (including, without limitation, radio, radar, navigation systems and other electronic equipment), other equipment (including, without limitation, all buyer-designated equipment and all buyer-furnished equipment) and components of whatever nature incorporated or installed in or attached to the Aircraft or such Engines, and all Manuals and Technical Records pertaining to the Aircraft and Engines.

The Lessee further certifies (a) that it has irrevocably accepted the above-described Aircraft for all purposes hereof and of the Lease as being airworthy, in good working order and repair without defect or inherent vice in title, condition, design, operation or fitness for use, and (b) that the Aircraft conforms in all respects with all of the requirements of the Lease.

Capitalized terms used in this Acceptance Certificate not otherwise defined herein shall have the meaning assigned thereto in the Lease.

**IN WITNESS THEREOF**, the Lessee has caused this Acceptance Certificate to be executed in its name by its duly authorized representative on this [●] day of [●].

STOGOFJORDEN LIMITED

By: _____
Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 2**

**FORM OF LEASE SUPPLEMENT**

LEASE SUPPLEMENT NO. [  ]

THIS LEASE SUPPLEMENT NO. [●] dated [●] (this **Lease Supplement**) is between AAA Max 2 Limited**,** an exempted company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Stogofjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated [●] relating to 737 - 8 Boeing model [●] aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.     The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

    (a)     one (1) Boeing model 737 - 8  airframe bearing manufacturer's serial number [●] and registration mark [●]; and

    (b)     two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers [●] and [●], respectively.

2.     The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.     The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.     The parties confirm that the Purchase Price for the Delivered Aircraft is US$[●] and the Initial Rent for the Delivered Aircraft is US$[●].

5.     All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.     The [revised] "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.     This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 2 LIMITED

By: _____
     Name:
     Title:

STOGOFJORDEN LIMITED

By: _____
     Name:
     Title:

Receipt of the counterpart of the foregoing Lease Supplement No. [●] is hereby acknowledged on this [●] day of [●].

[●], as Security Trustee

By: _____
     Name:
     Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

| Basic Rent<br>Payment Date | Principal Instalment | Interest Instalment |
| --- | --- | --- |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 3

## FORM OF EUROCONTROL LETTER

From:   **NORWEGIAN AIR INTERNATIONAL LIMITED**

To:     The Director of the Central Route Charges Office
        European Organisation for the Safety of Air Navigation (EUROCONTROL)
        Rue de La Fusée, 96
        B-1130 Brussels
        Belgium

[     ] 2018

Dear Sirs

### Authorisation Letter

**AIR NAVIGATION CHARGES: ONE (1) BOEING 737 - 8 AIRCRAFT BEARING MANUFACTURER'S SERIAL NUMBER [●] AND REGISTRATION MARK [●] (THE AIRCRAFT)**

We have subleased the Aircraft from Stogofjorden Limited (the **Sublessor**) in accordance with a sublease agreement dated [  ] 2018 between us and the Sublessor.

We hereby authorise you to provide the Sublessor (hereby represented by [SECURITY TRUSTEE]) with a general statement of account in relation to air navigation charges incurred by us and due to EUROCONTROL.  Access to the statement(s) of account will be provided in accordance with the procedures established by EUROCONTROL.

The authorisation contained in this letter may only be revoked or amended by a written instruction signed by us and the Sublessor.

Yours faithfully

For and on behalf of
**NORWEGIAN AIR INTERNATIONAL LIMITED**

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 4

## FORM OF EU ETS AUTHORITY LETTER

From:   **NORWEGIAN AIR INTERNATIONAL LIMITED**

To:     All governmental entities in the European Union charged with administering any EU ETS (as defined below) applicable to us and the Aircraft

[•]

Dear Sirs

**Emissions Trading Schemes**

1       Pursuant to the terms of the aircraft lease agreement dated [•] 2018 (the **Lease**) between AAA Max 2 Limited (the **Lessor**) and Stogofjorden Limited (the **Lessee**) and the aircraft sub-lease agreement dated [•] 2018 (the **Sub-Lease**) between the Lessee and ourselves, we have agreed to sub-lease one (1) Boeing 737 - 8 aircraft with manufacturer's serial number [●] and registration mark [●].

2       We wish to enable each of the Lessor, [●] (the Insurer Representative) and [●] the (Security Trustee) to monitor the performance by us of our obligations under the Emissions Trading Schemes (**EU ETS**).

3       We hereby unconditionally authorise you, on request by the Lessor, the Security Trustee or the Insurer Representative from time to time, to provide the Lessor the Security Trustee or the Insurer Representative with particulars of any obligations due from but unperformed by us under the EU ETS.

4       The authorisation contained herein shall only be revoked or amended upon receipt by you of a written instruction signed by ourselves, the Lessor and the Agent requesting such revocation.

Yours faithfully

…………………………………………
For and on behalf of
**NORWEGIAN AIR INTERNATIONAL LIMITED**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

<div align="center">

**SIGNATORIES**

</div>

**LESSOR**

**AAA MAX 2 LIMITED**

By:  _____

Name:
Title: **Gennie Bigord**
        **Director**

**LESSEE**

**STOGOFJORDEN LIMITED**

By:  _____

Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATORIES**

**LESSOR**

**AAA MAX 2 LIMITED**

By: _____
            Name:
            Title:

**LESSEE**

**STOGOFJORDEN LIMITED**

By: _____

Name:    MARIA SINEAD O'BRIEN
Title:    DIRECTOR

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT B-2

LEASE SUPPLEMENT  NO. 2

THIS LEASE SUPPLEMENT NO. 2 dated  26  June 2018 (this **Lease Supplement**) is between AAA Max 2 Limited**,** an exempted company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Stogofjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)    the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated  14 May 2018 relating to 737 - 8 Boeing model aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)    the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE,** in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.    The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

(a)    one (1) Boeing model 737 - 8  airframe bearing manufacturer's serial number 64992 and registration mark EI-FYH; and

(b)    two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers 602464 and 602473, respectively.

2.    The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.    The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.    The parties confirm that the Purchase Price for the Delivered Aircraft is US$49,299,775.00 and the Initial Rent for the Delivered Aircraft is US$7,394,966.25.

5.    All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.    The Principal Instalment and Interest Instalment in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.    This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

8.    This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM    2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 2 LIMITED

By: _____

     Name:   **Elaine Anderson**

     Title:    **Director**

STOGOFJORDEN LIMITED

By: _____

     Name:

     Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 2 is hereby acknowledged on this ___ day of June 2018.

BANK OF UTAH, as Security Trustee

By: _____

     Name:

     Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 2 LIMITED

By: _____
     Name:
     Title:

STOGOFJORDEN LIMITED

By: _____
     Name: MARIA SINEAD O'BRIEN
     Title: DIRECTOR

Receipt of the counterpart of the foregoing Lease Supplement No. 2 is hereby acknowledged on this ___ day of June 2018.

BANK OF UTAH, as Security Trustee

By: _____
     Name:
     Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 2 LIMITED

By: _____
     Name:
     Title:

STOGOFJORDEN LIMITED

By: _____
     Name:
     Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 2 is hereby acknowledged on this 26th day of June 2018.

BANK OF UTAH, as Security Trustee

By: _____
     Name:
     Title:      Jon Croasmun
                 Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

| Loan Payment Date | Principal Instalment € | Interest Instalment € | Principal Outstanding € |
|---|---|---|---|
| 26/06/2018 | | | € 38,557,744.84 |
| 26/09/2018 | € 803,286.35 | € 115,412.97 | € 37,754,458.48 |
| 26/12/2018 | € 803,286.35 | € 113,008.53 | € 36,951,172.13 |
| 26/03/2019 | € 803,286.35 | € 110,604.10 | € 36,147,885.78 |
| 26/06/2019 | € 803,286.35 | € 108,199.66 | € 35,344,599.43 |
| 26/09/2019 | € 803,286.35 | € 105,795.22 | € 34,541,313.08 |
| 26/12/2019 | € 803,286.35 | € 103,390.79 | € 33,738,026.73 |
| 26/03/2020 | € 803,286.35 | € 100,986.35 | € 32,934,740.38 |
| 26/06/2020 | € 803,286.35 | € 98,581.91 | € 32,131,454.03 |
| 26/09/2020 | € 803,286.35 | € 96,177.47 | € 31,328,167.68 |
| 26/12/2020 | € 803,286.35 | € 93,773.04 | € 30,524,881.33 |
| 26/03/2021 | € 803,286.35 | € 91,368.60 | € 29,721,594.98 |
| 26/06/2021 | € 803,286.35 | € 88,964.16 | € 28,918,308.63 |
| 26/09/2021 | € 803,286.35 | € 86,559.73 | € 28,115,022.28 |
| 26/12/2021 | € 803,286.35 | € 84,155.29 | € 27,311,735.93 |
| 26/03/2022 | € 803,286.35 | € 81,750.85 | € 26,508,449.58 |
| 26/06/2022 | € 803,286.35 | € 79,346.42 | € 25,705,163.23 |
| 26/09/2022 | € 803,286.35 | € 76,941.98 | € 24,901,876.88 |
| 26/12/2022 | € 803,286.35 | € 74,537.54 | € 24,098,590.53 |
| 26/03/2023 | € 803,286.35 | € 72,133.11 | € 23,295,304.18 |
| 26/06/2023 | € 803,286.35 | € 69,728.67 | € 22,492,017.83 |
| 26/09/2023 | € 803,286.35 | € 67,324.23 | € 21,688,731.48 |
| 26/12/2023 | € 803,286.35 | € 64,919.80 | € 20,885,445.13 |
| 26/03/2024 | € 803,286.35 | € 62,515.36 | € 20,082,158.78 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

| 26/06/2024 | € 803,286.35 | € 60,110.92 | € 19,278,872.43 |
|---|---|---|---|
| 26/09/2024 | € 803,286.35 | € 57,706.48 | € 18,475,586.08 |
| 26/12/2024 | € 803,286.35 | € 55,302.05 | € 17,672,299.73 |
| 26/03/2025 | € 803,286.35 | € 52,897.61 | € 16,869,013.38 |
| 26/06/2025 | € 803,286.35 | € 50,493.17 | € 16,065,727.03 |
| 26/09/2025 | € 803,286.35 | € 48,088.74 | € 15,262,440.68 |
| 26/12/2025 | € 803,286.35 | € 45,684.30 | € 14,459,154.33 |
| 26/03/2026 | € 803,286.35 | € 43,279.86 | € 13,655,867.98 |
| 26/06/2026 | € 803,286.35 | € 40,875.43 | € 12,852,581.63 |
| 26/09/2026 | € 803,286.35 | € 38,470.99 | € 12,049,295.28 |
| 26/12/2026 | € 803,286.35 | € 36,066.55 | € 11,246,008.93 |
| 26/03/2027 | € 803,286.35 | € 33,662.12 | € 10,442,722.58 |
| 26/06/2027 | € 803,286.35 | € 31,257.68 | € 9,639,436.23 |
| 26/09/2027 | € 803,286.35 | € 28,853.24 | € 8,836,149.88 |
| 26/12/2027 | € 803,286.35 | € 26,448.81 | € 8,032,863.53 |
| 26/03/2028 | € 803,286.35 | € 24,044.37 | € 7,229,577.18 |
| 26/06/2028 | € 803,286.35 | € 21,639.93 | € 6,426,290.83 |
| 26/09/2028 | € 803,286.35 | € 19,235.50 | € 5,623,004.48 |
| 26/12/2028 | € 803,286.35 | € 16,831.06 | € 4,819,718.13 |
| 26/03/2029 | € 803,286.35 | € 14,426.62 | € 4,016,431.78 |
| 26/06/2029 | € 803,286.35 | € 12,022.18 | € 3,213,145.43 |
| 26/09/2029 | € 803,286.35 | € 9,617.75 | € 2,409,859.08 |
| 26/12/2029 | € 803,286.35 | € 7,213.31 | € 1,606,572.73 |
| 26/03/2030 | € 803,286.35 | € 4,808.87 | € 803,286.38 |
| 26/06/2030 | € 803,286.38 | € 2,404.44 | € 0.00 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT B-3

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# PURCHASE AGREEMENT ASSIGNMENT

Dated as of _____16 May_____ 2018

**ARCTIC AVIATION ASSETS DAC**
**as Assignor**

**and**

**NORWEGIAN AIR SHUTTLE ASA**
**as Assignor**

**STOGOFJORDEN LIMITED**
**as Lessee**

**NORWEGIAN AIR INTERNATIONAL LIMITED**
**as Sub-Lessee**

**BANK OF UTAH**

**as Security Trustee**

**and**

**AAA MAX 2 LIMITED**
**as Lessor**

**two (2) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

Allen & Overy LLP

0121556-0000001 BK:44255451.5

**THIS PURCHASE AGREEMENT ASSIGNMENT** dated \_\_\_\_\_16 May\_\_\_\_\_ 2018 (this **Assignment**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**), **NORWEGIAN AIR SHUTTLE ASA**, a company organized under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 2 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **STOGOFJORDEN LIMITED**, a private company limited by shares incorporated under the laws of Ireland (the **Lessee**), **BANK OF UTAH**, as security trustee (in such capacity, together with its successors and permitted assigns, the **Security Trustee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a private company limited by shares duly incorporated under the laws of Ireland (**Sub-Lessee**).

## W I T N E S S E T H:

**WHEREAS**, Norwegian and The Boeing Company (the **Manufacturer**) entered into that certain purchase agreement number 03754, dated 24 January 2012, and that certain Aircraft General Terms Agreement AGTA-NSB, dated 29 August 2007 (the **AGTA**), which is incorporated by reference in that purchase agreement, providing for, inter alia, the sale by the Manufacturer of each Aircraft.

**WHEREAS**, Norwegian assigned and transferred to Arctic its rights and obligations under the Purchase Agreement to purchase the Aircraft in accordance with the Assignment, Assumption and Release Agreement dated 27 November 2014 (the **AARA**).

**WHEREAS**, the benefit of the warranty provisions in the Purchase Agreement were excluded from the rights of Norwegian that were assigned and transferred by it to Arctic under the AARA.

**WHEREAS**, the Lessor wishes to acquire certain rights and interests under the Purchase Agreement and each Assignor, on the terms and conditions set forth herein, is willing to assign to the Lessor certain of its rights and interests under the Purchase Agreement, and the Lessor is willing to accept such assignment; and

**WHEREAS**, the Manufacturer is willing to execute and deliver to the Lessor on each Delivery Date a consent and agreement (the **Consent and Agreement**) to the provisions hereof in substantially the form of Schedule 1 hereto in respect of the relevant Aircraft.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and of other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1.    For all purposes of this Assignment, unless the context otherwise requires, the following terms shall have the following respective meanings:

**Agent** shall mean Apple Bank for Savings, as agent for the Lenders.

**Aircraft** shall mean any of the two (2) Boeing model 737 - 8 airframes described in Schedule 2 hereto (each, an **Airframe**), as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, together, in the case of either Airframe, with two CFM model LEAP-1B27 engines, each as more particularly described in Schedule 2, as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, installed on such Airframe and each other engine described in any Purchase Assignment Supplement hereto (collectively, the **Engines**), together with the equipment, components and accessories installed on such Aircraft (other than buyer furnished equipment that has not been converted to seller purchased equipment pursuant to the Purchase Agreement) pursuant to the Purchase Agreement, and together with all technical records, manuals and data with respect thereto provided in relation to such Aircraft pursuant to the Purchase Agreement (collectively, the **Manuals and Technical Records**).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Delivery** shall mean, with respect to an Aircraft, the time when the Sub-Lessee (as designee of the Lessee), as the authorized representative of the Lessor, shall accept delivery of such Aircraft under the Purchase Agreement (as evidenced by delivery to the Lessor from the Manufacturer of the bill of sale in respect of such Aircraft referred to in the Purchase Agreement).

**Delivery Date** shall mean, with respect to an Aircraft, the date on which the Delivery of such Aircraft occurs.

**Engine Manufacturer** shall mean CFM International S.A., a French company, and its successors and permitted assigns.

**Insurer Representative** shall mean Allianz Global Corporate & Speciality SE, U.K. Branch, as Insurer Representative.

**Lease** shall mean, in respect of each Aircraft, the Master Lease Agreement dated on or about the date hereof as supplemented by the lease supplement dated on or prior to the Delivery Date for such Aircraft, substantially in the form of Exhibit I to the Master Lease Agreement, in each case between the Lessor, as lessor, and the Lessee, as lessee, providing for the lease of such Aircraft, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Lease Event of Default** shall have the meaning given to such term in the Lease.

**Lessor Security Assignment** shall mean, in respect of each Aircraft, the security agreement relating to that Aircraft dated on or prior to the Delivery Date for such Aircraft between the Lessor and the Security Trustee, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Loan Agreement** shall mean the loan agreement, dated 14 May 2018, among the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Lenders identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Loan Event of Default** shall mean shall have the meaning given to such term in the Loan Agreement.

**Participation Agreement** shall mean the Participation Agreement dated 14 May 2018 among inter alios the Assignors, the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Lenders identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Purchase Agreement** shall mean the purchase agreement no. PA-03754 dated 24 January 2012 originally made between Norwegian and the Manufacturer, as partially assigned to and assumed by Arctic pursuant to the AARA,   and as further amended and supplemented from time to time thereafter, providing for, inter alia, the purchase by Arctic from the Manufacturer of each Aircraft, as more particularly described therein, which incorporates by reference the terms and conditions of the Aircraft General Terms Agreement (AGTA-NSB) dated 29 August 2007 between Norwegian and the Manufacturer (the **AGTA**).

**Purchase Assignment Supplement** shall mean in respect of each Aircraft, the purchase assignment supplement relating to such Aircraft entered into between the Assignors, the Lessee, the Sub-Lessee and the Lessor and consented to by the Manufacturer, substantially in the form of Schedule 3 hereto.

**Purchase Price** shall mean, with respect to an Aircraft, the amount in United States Dollars (U.S.$) in respect of the purchase of such Aircraft as shall be notified by Arctic to the Lessor at least five (5) Business Days prior to the Delivery Date for such Aircraft upon agreement with the Manufacturer

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and pursuant to the terms of the Purchase Agreement; provided that the Lessor's maximum liability under this Assignment in respect of the Purchase Price for such Aircraft shall not exceed the amount set forth in the Purchase Assignment Supplement; provided, further, that in the event that such amount changes after such notification but prior to the relevant Delivery Date, the parties agree that such amount shall be appropriately adjusted.

**Security Trustee** shall mean Bank of Utah, as Security Trustee.

**Sub-Lease** shall mean, with respect to an Aircraft, the aircraft operating lease agreement entered into or to be entered into on or about the Delivery Date of such Aircraft between the Lessee as lessor and the Sub-Lessee as lessee.

**Sub-Lease Event of Default** shall have the meaning given to the term "Termination Event" in the Sub-Lease.

**Transaction Parties** means the Lessor, the Lessee and the Sub-Lessee and **Transaction Party** shall mean any one of them.

**Warranties** means the warranties in respect of the Airframe given by the Manufacturer pursuant to Exhibit C (Product Assurance Document) of the Aircraft General Terms Agreement (which forms part of the Purchase Agreement) as attached hereto as Schedule 4 (The Warranties), including all post-delivery-rights in respect thereof.

All other capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Assignment and this Assignment shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

2.   As of the date of delivery of a Purchase Assignment Supplement from the Assignors to the Lessor (with copies to the Manufacturer and the Security Trustee) with respect to an Aircraft, each Assignor shall, with effect from such date, thereby sell, assign, transfer and set over unto the Lessor, its successors and permitted assigns, all of such Assignor's rights and interests in and to the Purchase Agreement as and to the extent they relate to the purchase of such Aircraft and the operation thereof, except as and to the extent expressly reserved below, including in such assignment:

(a)   the right upon valid tender by the Manufacturer to purchase such Aircraft pursuant to the Purchase Agreement subject to the terms and conditions thereof and the right to take title to such Aircraft and to be named the Buyer in the bill of sale to be delivered by the Manufacturer for such Aircraft pursuant to the Purchase Agreement;

(b)   the right to accept delivery of such Aircraft, such acceptance to be exercised by the Sub-Lessee (as designee of the Lessee) as the authorized representative of the Lessor, provided that the Manufacturer shall have received written notice in advance of the identity and authority of such authorized representative;

(c)   all claims for damages in respect of such Aircraft arising as a result of any default by the Manufacturer under the Purchase Agreement in respect of such Aircraft;

(d)   all warranty and indemnity provisions contained in the Purchase Agreement, including the Warranties, and all claims arising thereunder, in respect of such Aircraft; and

(e)   any and all rights of each Assignor to compel performance of the terms of the Purchase Agreement in respect of such Aircraft;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

reserving exclusively to the Assignors, however:

(i)     all the Assignors' rights and interests in and to the Purchase Agreement as and to the extent that it relates to aircraft other than an Aircraft or the purchase, ownership or operation of such other aircraft and to the extent that it relates to any other matters not directly pertaining to an Aircraft;

(ii)    all the Assignors' rights and interests in or arising out of (including any credits for or repayment of) any advance payments made or to be made by the Assignors in respect of such Aircraft under the Purchase Agreement and any other payments or deposits made by the Assignors in respect of such Aircraft under the Purchase Agreement or any other agreement;

(iii)   the right to obtain services, training, data and demonstration and test flights pursuant to the Purchase Agreement; and

(iv)    the right to maintain plant representatives at the Manufacturer's plant pursuant to the Purchase Agreement.

The Lessor hereby accepts the assignment set forth above.

Notwithstanding the foregoing, so long and only so long as no notice has been issued to the Manufacturer in accordance with this Assignment, the Lessor hereby authorizes the Sub-Lessee during the term of the Lease in respect of an Aircraft, to the exclusion of the Lessor, to exercise in such Sub-Lessee's name (A) the right to enforce any warranty or indemnity, including the Warranties, under the Purchase Agreement and to retain any recovery or benefit resulting from the enforcement of any warranty or indemnity, including the Warranties, under the Purchase Agreement in respect of such Aircraft, (B) all rights to demand, accept and retain all rights in and to all property (other than such Aircraft) and (C) the right to exercise all other rights and powers of the Customer under the Purchase Agreement assigned to the Lessor hereunder in respect of such Aircraft; provided that the Assignors and such Sub-Lessee may not enter into any change order or other amendment, modification or supplement to the Purchase Agreement if such change order, amendment, modification or supplement would (i) result in any rescission, cancellation or termination of the Purchase Agreement or any aircraft warranties in respect of any Aircraft, or (ii) materially diminish the rights and interests assigned hereunder.

For all purposes of this Assignment, the Manufacturer shall not be deemed to have knowledge of or need to recognize the occurrence of a Lease Event of Default, a Termination Event, a Sub-Lease Event of Default or a Loan Event of Default, unless and until the Manufacturer shall have received from the Lessee or the Lessor (or the Security Trustee, so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) written notice thereof, addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706. Until such time as a notice shall have been given by the Lessee or the Lessor (or the Security Trustee so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) to the Manufacturer, the Manufacturer shall deal solely and exclusively with the Sub-Lessee. Thereafter, until the Lessee or the Lessor (or the Security Trustee, as the case may be) who served the notice on the Manufacturer shall have notified the Manufacturer that any such Lease Event of Default, Termination Event, Sub-Lease Event of Default or Loan Event of Default is no longer continuing (which notice shall be given at such Sub-Lessee's, the Lessee's or the Lessor's (as applicable) written request promptly after the remedy thereof), the Manufacturer shall deal solely and exclusively with the Lessor, the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessee or the Security Trustee, as the case may be. The Manufacturer may act with acquittance and conclusively rely on such notice. For the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and in the event that the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control.

3. It is expressly agreed that, anything herein contained to the contrary notwithstanding: (a) prior to the execution of a Purchase Assignment Supplement with respect to an Aircraft, each Assignor will perform its obligations with respect to such Aircraft to be performed by it on or before the Delivery Date for such Aircraft, (b) Arctic or Norwegian, as applicable, shall at all times remain liable to the Manufacturer under the Purchase Agreement to perform all duties and obligations of the Customer thereunder to the same extent as if this Assignment had not been executed, (c) the exercise by a Transaction Party of any of the rights assigned hereunder shall not release Arctic or Norwegian, as applicable, from any of its duties or obligations to the Manufacturer under the Purchase Agreement, except to the extent that such exercise by a Transaction Party shall constitute performance of such duties and obligations, and (d) except as specifically provided in the next succeeding paragraph with respect to the Transaction Parties, the Transaction Parties shall not have any obligation or liability under the Purchase Agreement by reason of or arising out of this Assignment or be obligated to perform any of the obligations or duties of Arctic or Norwegian, as applicable, under the Purchase Agreement or to make any payment or to make any inquiry as to the sufficiency of any payment received by it or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder.

Anything contained in this Assignment to the contrary notwithstanding (but without in any way releasing either Assignor from any of its duties or obligations under the Purchase Agreement), the Transaction Parties confirm for the benefit of the Manufacturer that, insofar as the provisions of the Purchase Agreement relate to any Aircraft, in exercising any rights under the Purchase Agreement with respect to such Aircraft, or in making any claim with respect to such Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to such Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, the Transaction Parties to the same extent as if each Transaction Party had been the original Customer thereunder. The Transaction Parties further agree, expressly for the benefit of the Manufacturer, that at any time and from time to time upon the written request of the Manufacturer, the Transaction Parties shall promptly and duly execute and deliver any and all such further assurances, instruments and documents and take all such further action as the Manufacturer may reasonably request in order to obtain the full benefits of the Transaction Parties' agreements set forth in this paragraph.

Nothing contained herein shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the contract rights of the Manufacturer thereunder or require the Manufacturer to divest itself of title to or possession of any Aircraft or other goods and services until delivery thereof and payment therefor on the date of such delivery as provided therein.

Effective at any time after a Sub-Lease Event of Default has occurred, and for so long as such Sub-Lease Event of Default is continuing, the Sub-Lessee does hereby irrevocably appoint the Lessee, its successors and permitted assigns, the Sub-Lessee's true and lawful attorney, by way of security, with full power (in the name of the Sub-Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessee may exercise rights with respect

FILED DATE: 1/11/2023 2:57 PM   2023L000001

thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Lease Event of Default has occurred, and for so long as such Lease Event of Default is continuing, the Sub-Lessee and the Lessee do hereby irrevocably appoint the Lessor, its successors and permitted assigns, the Sub-Lessee's and the Lessee's true and lawful attorney, by way of security, with full power (in the name of the Sub-Lessee, the Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessor may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessor may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Loan Event of Default has occurred, and for so long as such Loan Event of Default is continuing, the Sub-Lessee, the Lessee and the Lessor do hereby irrevocably appoint the Security Trustee, its successors and permitted assigns, the Sub-Lessee's, the Lessee's and the Lessor's true and lawful attorney, by way of security, with full power (in the name of the Sub-Lessee, the Lessee, the Lessor or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Security Trustee may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Security Trustee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

4.     NEITHER ASSIGNOR SHALL BE DEEMED TO HAVE GIVEN, AND EACH ASSIGNOR HEREBY EXPRESSLY DISCLAIMS, ANY IMPLIED REPRESENTATION OR WARRANTY AS TO THE AIRWORTHINESS, CONDITION, MERCHANTABILITY, DESIGN, OPERATION OR FITNESS FOR USE OF ANY AIRCRAFT OR ANY PART THEREOF, OR ANY OTHER IMPLIED REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO ANY AIRCRAFT.

5.     Each Assignor agrees that at any time and from time to time upon the written request of any Transaction Party, it will promptly and duly execute and deliver any and all such further instruments and documents and take such further action as such Transaction Party may reasonably request in order to obtain the full benefits of this Assignment and of the rights and powers herein granted.

6.     Each Assignor does hereby represent and warrant that it has not assigned or pledged, and hereby covenants that it will not assign or pledge so long as this Assignment shall remain in effect, the whole or any part of the rights hereby assigned to anyone other than the Lessor. Each Assignor hereby acknowledges and agrees that the Lessor has assigned to the Security Trustee, as collateral security for the Lessor's obligations under the Loan Agreement and the other Operative Documents, all of the Lessor's right, title and interest in and to the Purchase Agreement (as it relates to any Aircraft) and this Assignment pursuant to the Lessor Security Assignment, and each Assignor hereby consents to such assignment.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

7.      The Lessor agrees that it will not enter into any agreement with the Manufacturer that would amend, modify, rescind, cancel or terminate the Purchase Agreement in respect of any Aircraft or take any other action to amend, modify, rescind, cancel or terminate any of the Assignors' rights in respect of any Aircraft, without the prior written consent of the Assignors and the Security Trustee (so long as the Lien of the Lessor Security Assignment is in effect and has not been released by the Security Trustee).

8.      Each of the Transaction Parties agrees, expressly for the benefit of the Manufacturer, that it will not disclose, directly or indirectly, any terms of the Purchase Agreement disclosed to it; provided, that (a) the Transaction Parties may use, retain and disclose any such information to its special counsel and public accountants, who shall maintain the confidentiality of the Purchase Agreement, (b) the Transaction Parties may disclose any such information as required by Applicable Law or governmental regulations, (c) to the extent that any Transaction Party may have received a subpoena or other written demand under colour of legal right for such information, such Transaction Party may disclose such information, but it shall first, as soon as practicable upon receipt of such demand, furnish a copy thereof to the Manufacturer, and the relevant Transaction Party shall afford the Manufacturer reasonable opportunity, at the moving Person's cost and expense, to obtain a protective order or other reasonably satisfactory assurance of confidential treatment for the information required to be disclosed, (d) the Transaction Parties may disclose any such information to any bona fide potential purchaser or lessee of any Aircraft (subject to execution by such potential purchaser or lessee of a confidentiality undertaking substantially similar to this Section 8) and (e) the Transaction Parties may disclose any such information to the Agent, the Lenders, the Security Trustee, the Insurer Representative, each Insurer Group Member and any other Person with whom any of the foregoing is in good faith conducting negotiations relating to the possible transfer and sale of such Person's interests in the Purchase Agreement, any Aircraft and/or any provision of funds (subject to the execution of a confidentiality undertaking substantially similar to this Section 8 by such Agent, Lender, Security Trustee, Insurer Representative, Insurer Group Member and Person described in this paragraph 8) and to their respective special counsel and financial advisors (who shall maintain the confidentiality of the Purchase Agreement to the extent required by this Section 8).

9.      This Assignment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

10.     On the Delivery Date for an Aircraft, subject to satisfaction or waiver of the conditions set forth in the Participation Agreement required to be satisfied on or prior to the Delivery Date for such Aircraft, the Lessor agrees to purchase such Aircraft from the Manufacturer and (without limiting its other payment obligations under the Operative Documents on the Delivery Date for such Aircraft) to pay the Purchase Price for such Aircraft in the manner specified in the Purchase Agreement.

11.     If the Delivery Date for an Aircraft does not occur by 11:59 p.m. (Seattle time) on the date set forth in the Purchase Assignment Supplement in respect of such Aircraft, this Assignment (as it relates to such Aircraft) shall (unless otherwise agreed by the parties hereto) automatically terminate, whereupon the rights subject to this Assignment (as it relates to such Aircraft) shall be deemed reassigned by the Lessor to the Assignors without the requirement of any further act or action (other than any notice required to be given to the Manufacturer).

12.     For the purposes of this Assignment, all notices and other communications shall be in writing, in English, and shall be given or made by fax, or personal delivery and faxed or delivered to the intended recipient (other than the Manufacturer) at the address specified below, or, as to any party, at such other address as shall be designated by such party in a notice to each other party hereto. Except as otherwise provided in this Assignment, all such communications shall be deemed to have been duly given when transmitted by fax (provided such transmission by fax is in legible form and is

FILED DATE: 1/11/2023 2:57 PM   2023L000001

accompanied by or generates a substantially simultaneous confirmation of transmission), or personally delivered, in each case given or addressed as aforesaid.

(a)     If to the Lessor:

AAA Max 2 Limited
c/o Walkers Fiduciary Limited
Cayman Corporate Centre
27 Hospital Road
George Town
Grand Cayman KY1-9008
Cayman Islands

Attention:      The Directors

Telephone:    +1 345 814 7600

Email:           fiduciary@walkersglobal.com

(b)     If to Arctic:

Arctic Aviation Assets DAC
Ground Floor
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:    + 353 879 461 070

Fax:             + 353 1 814 1839

with a copy to Norwegian at the address below.

(c)     If to Norwegian:
Norwegian Air Shuttle ASA
Oksenøyveien 3
Postboks 115
N-1330 Fornebu
Norway

Attention:      Chief Financial Officer

Telephone:    + 47 99 54 6400

Fax:             +47 67 59 3001

(d)     With a copy to the Security Trustee:

Bank of Utah
200 East South Temple
Suite 210
Salt Lake City, UT 84111

FILED DATE: 1/11/2023 2:57 PM  2023L000001

|  | Attention: | Jennifer Miller |
|---|---|---|
|  | Fax: | +1 801-746-3519 |
|  | Email: | corptrust@bankofutah.com |

(e)  If to the Lessee:

Stogofjorden Limited
c/o Arctic Aviation Assets DAC
Imbus House
Dublin Airport
Co. Dublin
Ireland

|  | Attention: | Tore Jenssen |
|---|---|---|
|  | Telephone: | + 353 879 461 070 |
|  | Fax: | + 353  1 814 7839 |

with a copy to Norwegian at the address above.

(f)  If to the Sub-Lessee:

Norwegian Air International Limited
Imbus House
Dublin Airport
Co. Dublin
Ireland

|  | Attention: | Tore Jenssen |
|---|---|---|
|  | Telephone: | + 353 879 461 070 |
|  | Fax: | + 353 1 814 7839 |

with a copy to Norwegian at the address above.

13.   This Assignment will be governed by, and construed in accordance with, the laws of the State of Washington, except for the conflict of laws principles thereof.

14.   The provisions of clauses 13(d)(ii) to 13(d)(vi) of the Participation Agreement, in so far as they relate to any dispute between the parties shall apply hereto as if set out in this Assignment *mutatis mutandis*.

15.   Each of the parties to this Assignment (except the Sub-Lessee) acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Assignment is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

16.   The Sub-Lessee acknowledges and agrees that the provisions of clause 20(c) (No Discharge, etc.; No Petitioning) and clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement apply to it to the same extent as if it were a party to the Participation

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Agreement and as if the reference to "Lessee" in such clause 20(c) referred to the Lessee and the Sub-Lessee.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Agreement Assignment to be duly executed the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 1

## FORM OF CONSENT AND AGREEMENT

## THE BOEING COMPANY

## CONSENT AND AGREEMENT

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated _____ 2018 between **AAA MAX 2 LIMITED** (the **Lessor**), **STOGOFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** (the **Sub-Lessee**) **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**) and the Bank of Utah, as security trustee (the **Security Trustee**) relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number [●] (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.     all representations, warranties, indemnities and agreements of the Manufacturer, including the Warranties, under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.     no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.     the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.     if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

5.      the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement, including the Warranties, and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Loan Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.      the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.      the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.      The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)      the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)      the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)     to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)     Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.     The Manufacturer hereby confirms to the Security Trustee that:

(a)     upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)     except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.    The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.    The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.    It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 2018

**THE BOEING COMPANY**

By:

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

MSN [●]

**SCHEDULE 2**

**DESCRIPTION OF AIRCRAFT**

Each of the two (2) Boeing model 737 - 8 airframes, bearing Manufacturer's serial numbers 42831 and 64992, as further identified on each Purchase Assignment Supplement to be entered into by the Assignors, the Lessor, the Lessee and the Sub-Lessee in respect of such airframes, together, in the case of each such airframe, with the two (2) CFM Model LEAP-1B27 engines installed thereon and each other engine identified on any Purchase Assignment Supplement hereto.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 3

### FORM OF PURCHASE ASSIGNMENT SUPPLEMENT

### PURCHASE ASSIGNMENT SUPPLEMENT NO. __

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated _____ 2018 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 2 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **STOGOFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a private company limited by shares duly incorporated under the laws of Ireland (**Sub-Lessee**) and the Bank of Utah, as security trustee (the **Security Trustee**) and supplements that Purchase Agreement Assignment dated _____ 2018 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

### W I T N E S S E T H:

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and the Sub-Lessee desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and the Sub-Lessee hereby agrees as follows:

1.   The Sub-Lessee of the Aircraft is:                    _____

2.   Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

   Manufacturer's serial number:                    _____

   Registration Mark:                    _____

   Engine Manufacturer's serial numbers:                    _____ & _____

3.   Latest Delivery Date with respect to such Aircraft:                    _____

4.   Maximum liability of the Lessor with respect to the Purchase Price of such Aircraft:     U.S.$_____

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. ___ to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | ) |
| by **ARCTIC AVIATION ASSETS DAC** | |
| acting by its lawfully | ) |
| appointed attorney | ) |

………………………………..

Lawfully appointed attorney

in the presence of:                                         )

Witness's Signature:    _____

Name:                        _____

Address:                     _____

                               _____

**Norwegian**

| | |
|---|---|
| SIGNED AND DELIVERED as a DEED by | |
| **NORWEGIAN AIR SHUTTLE ASA** | ) |
| acting by its lawfully appointed attorney | ) |

………………………………..

Lawfully appointed attorney

in the presence of:                                         )

Witness's Signature:    _____

Name:                        _____

Address:                     _____

                               _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **AAA MAX 2 LIMITED** | ) |
| acting by | ) |
| _____ | ) |
| acting under the authority of that | |
| Company, in the presence of: | ) |

Witness's Signature:     _____

Name:                          _____

Address:                      _____

                                    _____

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed Attorney of
**BANK OF UTAH**
(as Security Trustee)

acting by

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature:     _____
Name:                          _____
Address:                      _____
                                    _____

**SIGNATURES (2)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **STOGOFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

………………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature: _____

Name: _____

Address: _____

_____

**Sub-Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR INTERNATIONAL** | ) |
| **LIMITED** | ) |
| acting by its lawfully appointed attorney | |

………………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature: _____

Name: _____

Address: _____

_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (3)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By:
Name:
Title:
Date:

FILED DATE: 1/11/2023 2:57 PM  2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 4**

**THE WARRANTIES**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**

**PURCHASE AGREEMENT ASSIGNMENT**

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by )

**ARCTIC AVIATION ASSETS DAC** )
acting by
its lawfully appointed attorney )

Lawfully appointed attorney

in the presence of:

**Tore Jenssen**
**Attorney-In-Fact**

Witness's Signature: ...........................................

Name:           **Vanessa Caesar**
..................................................
          **Imbus House**

Address:      ......**Financial Administrator**...

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by )

**NORWEGIAN AIR SHUTTLE ASA** )
acting by
its lawfully appointed attorney )

Lawfully appointed attorney

in the presence of:

Witness's Signature: ...........................................

Name: ...........................................

Address: ...........................................

FILED DATE: 1/11/2023 2:57 PM  2023L000001

## SIGNATURES

## PURCHASE AGREEMENT ASSIGNMENT

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by )

**ARCTIC AVIATION ASSETS DAC** )
acting by
its lawfully appointed attorney )

.......................................
Lawfully appointed attorney

in the presence of:

Witness's Signature: ...........................................

Name: ...........................................

Address: ...........................................

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by )

**NORWEGIAN AIR SHUTTLE ASA** )
acting by
its lawfully appointed attorney )

THOMAS F WELLÉN

in the presence of:

..........ATTORNEY-IN-FACT
Lawfully appointed attorney

Witness's Signature: ...........................................

Name: PER-HELGE ELLINGSEN
OKSENØYVEIEN 3

Address: 1330 FORNEBU

PER-HELGE ELLINGSEN

ATTORNEY-IN-FACT

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by )
**AAA MAX 2 LIMITED** )
acting by )
_____ )
acting under the authority of that )
Company, in the presence of: )

Gennie Bigord
Director

Witness's Signature:

Name:          Stephanie Jackson

Address:       Cayman Corporate Centre, 27 Hospital Road
               George Town, Grand Cayman KY1-9008
               Cayman Islands

4                                    Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

### PURCHASE AGREEMENT ASSIGNMENT

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by   )

**STOGOFJORDEN LIMITED**   )
acting by
its lawfully appointed attorney   )

Lawfully appointed attorney
**Tore Jenssen**
**Attorney-In-Fact**

in the presence of:

Witness's Signature:   *Sarah Hogan*

Name:   SARAH HOGAN

Address:   INBUS HOUSE, DUBLIN AIRPORT

**Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by   )

**NORWEGIAN AIR INTERNATIONAL**   )
**LIMITED**
acting by
its lawfully appointed attorney   )

Lawfully appointed attorney

in the presence of:

Witness's Signature:

Name:

Address:

5        Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

### PURCHASE AGREEMENT ASSIGNMENT

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by        )

**STOGOFJORDEN LIMITED**                         )
acting by
its lawfully appointed attorney                  )

......................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:     ...........................................

Name:                    ...........................................

Address:                 ...........................................

**Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by        )

**NORWEGIAN AIR INTERNATIONAL**                  )
**LIMITED**
acting by
its lawfully appointed attorney                  )

......................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:     ...........................................

Name:                    Vanessa Caesar

Address:                 Imbus House
                         Financial Administrator

FILED DATE: 1/11/2023 2:57 PM  2023L000001

## SIGNATURES (3)

### PURCHASE AGREEMENT ASSIGNMENT

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed ~~Attorney~~ **Vice President** of
**BANK OF UTAH**
(as Security Trustee)

acting by

acting under the authority of
that entity in such capacity in the presence of:

John Thomas
Vice President

Witness's signature:
Name:                    Marie Stapley
Address:                 Legal Assistant

200 E. South Temple, Ste 210
Salt Lake City, Utah 84111

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT B-4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 2

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated  26_  June 2018 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 2 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **STOGOFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a private company limited by shares duly incorporated under the laws of Ireland (**Sub-Lessee**) and the Bank of Utah, as security trustee (the **Security Trustee**) and supplements that Purchase Agreement Assignment dated 16 May 2018 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

## W I T N E S S E T H:

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and the Sub-Lessee desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**,  in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and the Sub-Lessee hereby agrees as follows:

1.     The Sub-Lessee of the Aircraft is:                                   Norwegian Air International Limited

2.     Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

Manufacturer's serial number:                          64992

Registration Mark:                                            EI-FYH

Engine Manufacturer's serial numbers:            602464 & 602473

3.     Latest Delivery Date with respect to such Aircraft:          26 June 2018

4.     Maximum liability of the Lessor with respect to the    U.S.$49,299,775.00
       Purchase Price of such Aircraft:

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS  WHEREOF**,  the parties hereto have caused this Purchase Assignment Supplement No. 2 to be duly executed on the day and year first above written.

**SIGNATURES**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Arctic**

**SIGNED AND DELIVERED** as a **DEED**         )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully                                       )
appointed attorney                                          )

..................................................
Lawfully appointed attorney

in the presence of:                                         )

Witness's Signature:        Sarah Hogan

Name:                              SARAH HOGAN

Address:                           INBUS HOUSE

                                        DUBLIN AIRPORT

**Norwegian**

SIGNED AND DELIVERED as a DEED by
**NORWEGIAN AIR SHUTTLE ASA**                   )
acting by its lawfully appointed attorney          )

..................................................
Lawfully appointed attorney

in the presence of:                                         )

Witness's Signature:        _____

Name:                              _____

Address:                           _____

                                        _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

### PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by **ARCTIC AVIATION ASSETS DAC** acting by its lawfully appointed attorney | ) ) ) |

..............................................

Lawfully appointed attorney

in the presence of:                                    )

Witness's Signature: _____

Name: _____

Address: _____

_____

**Norwegian**

| | |
|---|---|
| SIGNED AND DELIVERED as a DEED by **NORWEGIAN AIR SHUTTLE ASA** acting by its lawfully appointed attorney | ) ) |

in the presence of:                                    )

..............................................

Lawfully appointed attorney

**THOMAS F WELLÉN**

**ATTORNEY- IN- FACT**

Witness's Signature: _____

Name:        ANDERS FREDRIKSEN

Address:     OKSENØYVEIEN 3

             1330 FORNEBU

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED**  as a **DEED**  by | ) |
| **AAA MAX 2 LIMITED** | ) |
| acting by | ) |
| _____ | ) |
| acting under the authority of that | |
| Company, in the presence of: | ) |

*Elaine Anderson*

**Elaine Anderson**
**Director**

Witness's Signature:

Stephanie Jackson

Name:

Address:

Cayman Corporate Centre
27 Hospital Road, George Town
Grand Cayman KY1-9008
Cayman Islands

**Security Trustee**

**EXECUTED**  as a **DEED**

By the lawfully appointed Attorney of
**BANK OF UTAH**
(as Security Trustee)

acting by

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature:       _____
Name:                                _____
Address:                           _____
                                          _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED**  as a **DEED**  by | ) |
| **AAA MAX 2 LIMITED** | ) |
| acting by | ) |
| | ) |
| _____ | |
| acting under the authority of that | |
| Company, in the presence of: | ) |

Witness's Signature:     _____

Name:                          _____

Address:                      _____

                                    _____

**Security Trustee**

**EXECUTED**  as a **DEED**
                                              **Vice President**
By the lawfully appointed ~~Attorney~~ of
**BANK OF UTAH**
(as Security Trustee)

acting by **Jon Croasmun**

acting under the authority of   **Vice President**
that entity in such capacity in the presence of:

Witness's signature:
Name:                                    **Marie Stapley**
Address:                                 **Legal Assistant**

                          **200 E. South Temple, Ste 210**
                          **Salt Lake City, Utah 84111**

Jon Croasmun
Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by )
**STOGOFJORDEN LIMITED** )
acting by )
its lawfully appointed attorney )

...................................................

Lawfully appointed attorney

in the presence of:

Witness's Signature:        *Sarah Hogan*

Name:                       SARAH   HOGAN

Address:                    INBUS HOUSE,

                            DUBLIN  AIRPORT

**Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by )
**NORWEGIAN AIR INTERNATIONAL** )
**LIMITED** )
acting by its lawfully appointed attorney

...................................................

Lawfully appointed attorney

in the presence of:

Witness's Signature:        _____

Name:                       _____

Address:                    _____

                            _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by            )
**STOGOFJORDEN LIMITED**                               )
acting by                                                        )
its lawfully appointed attorney                        )

.........................................

Lawfully appointed attorney

in the presence of:

Witness's Signature:        _____

Name:                              _____

Address:                          _____

                                       _____

**Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by            )
**NORWEGIAN AIR INTERNATIONAL**                 )
**LIMITED**                                                      )
acting by its lawfully appointed attorney

.........................................

Lawfully appointed attorney

in the presence of:

Witness's Signature:        Sarah Hogan

Name:                              SARAH HOGAN

Address:                          INBUS HOUSE

                                       DUBLIN AIRPORT

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By:
Name: Tiffany Greene
Title: Attorney-in-fact
Date:

MSN 64992

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT B-5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

### CONSENT AND AGREEMENT

### THE BOEING COMPANY

### CONSENT AND AGREEMENT

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated 16 May 2018 between **AAA MAX 2 LIMITED** (the **Lessor**), **STOGOFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** (the **Sub-Lessee**) **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**) and the Bank of Utah, as security trustee (the **Security Trustee**) relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number 64992 (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.  all representations, warranties, indemnities and agreements of the Manufacturer, including the Warranties, under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.  no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.  the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.  if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

5.  the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement, including the Warranties, and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Loan Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.     the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.     the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.     The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

    (a)     the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

    (b)     the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)    to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)    Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.    The Manufacturer hereby confirms to the Security Trustee that:

(a)    upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)    except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.    The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.    The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.    It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated    26 June    2018

**THE BOEING COMPANY**

By: *A Greene*
Name: *Tiffany Greene*
Title: *Attorney-in-fact.*

MSN 64992

FILED
1/11/2023 2:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000001
Calendar, S
21000066

FILED DATE: 1/11/2023 2:57 PM    2023L000001

# GROUP EXHIBIT C

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT C-1

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**EXECUTION VERSION**

# MASTER LEASE AGREEMENT

### 16 NOVEMBER 2018

**Between**

**AAA MAX 4 LIMITED**
**as Lessor**

**and**

**TROLLFJORDEN LIMITED**
**as Lessee**

**Two (2) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

Allen & Overy LLP

0121556-0000001 BK:46177236.5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**CONTENTS**

**Clause**                                                                               **Page**

1.   Definitions and interpretation ...................................................................1
2.   Agreement to Lease; Term....................................................................1
3.   Rent ......................................................................................2
4.   Lessor's Disclaimer of Warranties; Manufacturers' Warranties ............................4
5.   Purchase Options; Return of Aircraft...................................................6
6.   Liens .....................................................................................9
7.   Registration, Maintenance, Operation and Possession ....................................10
8.   Replacement; Temporary Installation; Pooling; Alterations, Modifications and Additions; Etc .......24
9.   Loss, Destruction, Requisition, Etc .......................................................28
10.  Insurance ................................................................................32
11.  Absolute Obligations.....................................................................40
12.  Assignment................................................................................42
13.  Lease Events of Default and Termination Events ..........................................42
14.  Remedies ..................................................................................45
15.  Further Assurances; Investment of Security Funds, No Breach of Sanctions ................47
16.  Notices ..................................................................................49
17.  Miscellaneous; Governing Law ............................................................49
18.  Security for the Lessor's Obligation ....................................................50
19.  Lessor's Right to Perform for Lessee ....................................................50
20.  English Language Prevails ................................................................51
21.  Complete Agreement .......................................................................51
22.  Limitation of Liability of the Lessor ...................................................51

**Schedule**

1.   Form of Acceptance Certificate ..........................................................52
2.   Form of Lease Supplement ................................................................53
3.   Form of Eurocontrol Letter ..............................................................57
4.   Form of EU ETS Authority Letter .........................................................58

Signatories.....................................................................................59

0121556-0000001 BK:46177236.5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS MASTER LEASE AGREEMENT** dated ⎯16 November 2018 (this **Lease**)

**AMONG**

(1)  **AAA MAX 4 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands, as lessor (the **Lessor**); and

(2)  **TROLLFJORDEN LIMITED**, a limited liability company duly incorporated under the laws of Ireland (the **Lessee**).

 **WITNESSETH:**

(1)  **WHEREAS,** pursuant to that certain Participation Agreement, dated as of the date of execution and delivery thereof (as amended, supplemented and modified from time to time, the **Participation Agreement**), among, *inter alios*, the Lessor, Walkers Fiduciary Limited, as lessor parent, the Lessee, Bank of China Limited, Singapore Branch as Lender and Agent and Bank of Utah, as security trustee, the Lessor and the Lessee have agreed to enter into this Lease.

(2)  **WHEREAS,** pursuant to each Purchase Assignment in respect of an Aircraft, the Lessor will acquire certain rights under the Purchase Agreement in respect of such Aircraft.

(3)  **WHEREAS,** pursuant to the terms and conditions of this Lease, the Lessor has agreed to lease each Aircraft to the Lessee and the Lessee has agreed to lease each Aircraft from the Lessor.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

## 1.  DEFINITIONS AND INTERPRETATION

### 1.1  Definitions

Unless the context otherwise requires, capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in part 1 of appendix 1 to the Participation Agreement for all purposes of this Lease.

### 1.2  Interpretation

This Lease shall be interpreted in accordance with the rules of construction set forth in part 2 of appendix 1 to the Participation Agreement.

## 2.  AGREEMENT TO LEASE; TERM

### 2.1  Delivery

The Lessor hereby agrees on each Delivery Date for an Aircraft, subject to (a) the purchase of such Aircraft by the Lessor to be delivered pursuant to the Participation Agreement, the Purchase Agreement and the Purchase Assignment and (b) the satisfaction or waiver of the conditions precedent with respect to such Aircraft set forth or referred to in clause 4 of the Participation Agreement, to accept delivery of, and subject to clause 2 of the Participation Agreement to lease to the Lessee hereunder, and the Lessee hereby agrees, subject to the foregoing and the satisfaction of the conditions precedent (with respect to such Aircraft) set forth in clause 5 of the Participation Agreement, to accept delivery of, to sign the Acceptance Certificate and to lease from the Lessor hereunder, such Aircraft, whereupon the Term for such Aircraft shall commence.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 2.2 Acceptance

The Lessee hereby agrees that the execution of the Acceptance Certificate for an Aircraft in the form of Schedule 1 hereto shall be deemed to constitute unconditional, absolute and irrevocable acceptance of such Aircraft by the Lessee under this Lease.

## 2.3 Term

Subject to acceptance of an Aircraft as provided in Clauses 2.1 and 2.2, the Lessee hereby leases from the Lessor such Aircraft for the Term applicable thereto.

## 2.4 Cape Town Convention

(a)     The parties hereto agree that, for all purposes of the Cape Town Convention, upon execution of a Lease Supplement (i) this Lease, together with such Lease Supplement, will constitute a separate International Interest with respect to the Airframe and each Engine identified in such Lease Supplement, (ii) such Airframe and Engines each constitute an Aircraft Object and (iii) this Lease, together with such Lease Supplement, will constitute an agreement for the registration of such Airframe.

(b)     If there is any change to the manner in which the Cape Town Convention is implemented in the Government of Registry, the Lessee shall take such action as the Lessor may require in relation to such change, including:

(i)     amending or re-executing any Operative Document;

(ii)    registering, perfecting and/or preserving any International Interest(s) vested in the Lessor and the Secured Parties with respect to the Airframe and/or any Engine; and

(iii)   entry into agreements (subordination or otherwise) to protect the priority of any International Interest(s) or other registrable interests referred to in the foregoing paragraphs (i) and/or (ii).

(c)     The Lessee agrees to indemnify on demand and shall pay or reimburse the Agent, the Lenders, the Insurer Representative, each Insurer Group Member, the Lessor, the Lessor Parent and the Security Trustee for any reasonable costs and expenses (including reasonable fees and disbursements of legal counsel and other experts employed or retained by such Person) incurred by such Person in connection with any action taken pursuant to paragraph (b) above.

## 3.   RENT

## 3.1 Initial Rent

On or prior to each Delivery Date, the Lessee agrees to pay the Lessor the Initial Rent in Dollars for the Aircraft to be delivered on such Delivery Date.

## 3.2 Basic Rent

In addition, the Lessee agrees to pay the Lessor rent (the **Basic Rent**) for each Aircraft in Dollars with respect to each Rent Period in arrear on each Basic Rent Payment Date occurring during the Term for such Aircraft, in each case, in an amount calculated in accordance with paragraph (a) through (b) below.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a)     For all purposes of this Lease, the Basic Rent payable in respect of each Aircraft on each Basic Rent Payment Date for such Aircraft occurring during the Term for such Aircraft shall be equal to the sum of (i) the "Principal Instalment" set forth in Schedule I to the Lease Supplement for such Aircraft for the relevant Basic Rent Payment Date and (ii) the amount equal to the interest due and payable under clause 3.2 of the Loan Agreement on the Loan Payment Date corresponding to such Basic Rent Payment Date .

(b)     Each instalment of Basic Rent for an Aircraft payable on any Basic Rent Payment Date for such Aircraft shall in all events be in an amount that is equal to the amount payable by the Lessor to the Agent under the Loan Agreement in respect of the scheduled principal of, and interest on, the Loan for such Aircraft due on the corresponding Loan Payment Date.

## 3.3     Supplemental Rent

The Lessee shall pay all Supplemental Rent to the Lessor or to such other Person to whom such amount may be owed under the Operative Documents in the currency (whether Dollars or another currency) in which the same is due and owing, and by the date on which such amount is payable in accordance with the provision of the Operative Documents under which such payment obligation arises.  The Lessee will also pay interest on demand to the recipient entitled thereto, as Supplemental Rent, to the extent permitted by Applicable Laws, at a rate per annum equal to the applicable Post-Default Rate on any part of any instalment of Basic Rent not paid when due for the period from and including the due date thereof to but excluding the date on which the same is paid in full and, in the case of payment to any of the Lessor, the Lenders, the Agent, the Insurer Representative, the Security Trustee or any other Person, on any payment of Supplemental Rent payable but not paid when due or demanded by the recipient entitled thereto for the period from and including the due date thereof to but excluding the date on which the same is paid in full.

## 3.4     Manner of Payment

(a)     All Rent and other sums payable hereunder shall be paid by 9:00 a.m. (Singapore time) on the date payment is due, in Dollars (or, in the case of any Supplemental Rent denominated in a currency other than Dollars, in the relevant currency) and in immediately available funds (or such other funds as are from time to time customary for the settlement of international banking transactions in Dollars or other relevant currency in London or other relevant jurisdiction of such other currency).  Whenever any payment of Basic Rent shall become due on a day which is not a Business Day, the due date thereof shall be the next succeeding Business Day (unless the next succeeding Business Day would fall in the next succeeding month, in which case the relevant payment date shall be made on the immediately preceding Business Day) provided always that the amount of Basic Rent shall be adjusted accordingly and in a manner consistent with the provisions of clause 4.1(f) of the Loan Agreement.

(b)     Whenever any payment (other than a payment of Basic Rent) shall become due on a date which is not a Business Day, or if any such payment is payable on demand and demand is not made on a Business Day or is made on a Business Day but is made outside normal banking hours of the recipient of such demand, demand for such payment shall be deemed to have been made on the immediately succeeding Business Day, and if such payment includes any payment of interest (or an amount calculated or determined by reference to interest), the amount payable shall be adjusted accordingly.  All payments of Rent to the Lessor and all other amounts payable hereunder by the Lessee to the Lessor shall be paid to such account as the Lessor may specify from time to time in writing not less than five (5) Business Days prior to the date on which the relevant amount is payable.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 3.5    Absolute Obligation

The obligation of the Lessee to pay Rent hereunder shall be absolute and unconditional as more fully set forth in Clause 11.  To the extent Taxes arise from the leasing of any Aircraft to the Lessee under this Lease which are payable by way of withholding by the Lessee, such Taxes shall be deducted and paid by the Lessee by way of withholding, and the Lessor agrees that the full amount of Rent due under this Lease in respect of an Aircraft shall be the amount of Basic Rent payable in respect of such Aircraft under Clause 3.2 increased by any such Taxes withheld by the Lessee such that the Lessor receives the net amount of Rent that it would have otherwise have received had no such withholding been made by the Lessee.

## 3.6    Associated Rights

The Lessee hereby agrees to pay and perform all of its obligations under the Operative Documents to which it is a party and further acknowledges and agrees that the payment of Rent hereunder and the performance by the Lessee of its obligations under the other Operative Documents constitute Associated Rights and are secured by and/or associated with the relevant Aircraft and Engines.

## 3.7    Assignment of Rent and direction of payments

(a)    Pursuant to the Security Documents, the Lessor has assigned its right to receive Basic Rent and Termination Value hereunder to the Security Trustee, and pursuant to such assignment the Lessor hereby directs, and the Lessee hereby agrees, that all Basic Rent and Termination Value payable to the Lessor hereunder shall be paid directly to the Agent to be applied in accordance with the payment waterfall in clause 4.1(c) of the Loan Agreement (unless a Material Default, Termination Event or an Event of Default shall have occurred and be continuing and the Insurer Representative or the Security Trustee has given notice to the Agent and the Lessor in which case the Basic Rent and Termination Value shall be paid directly to the Security Trustee).

(b)    The Lessee hereby agrees that it shall procure that any Permitted Sub-Lessee shall (or shall, in the case of the Initial Permitted Sub-Lessee, direct Arctic on its behalf to) pay directly to the Agent, on each Basic Payment Date, a portion of rental under the Permitted Sub-Lease equal to the amount of Basic Rent payable by the Lessee to the Lessor hereunder on such Basic Rent Payment Date to be applied in accordance with the payment waterfall in clause 4.1(c) of the Loan Agreement (unless a Material Default, Termination Event or an Event of Default shall have occurred and be continuing and the Insurer Representative or the Security Trustee has given notice to the Agent and the Lessor in which case such amounts shall be paid directly to the Security Trustee). Such payments by the Permitted Sub-Lessee shall *pro tanto* satisfy the Lessee's obligations pursuant to paragraph (a) above.

## 4.    LESSOR'S DISCLAIMER OF WARRANTIES; MANUFACTURERS' WARRANTIES

## 4.1    Disclaimer

Subject to Clause 4.2, the Lessee acknowledges and agrees that (a) each Aircraft is of a size, design, capacity and manufacture selected by and acceptable to the Lessee and (b) the Lessee is satisfied that such Aircraft are suitable for its purposes.  NONE OF LESSOR, LESSOR PARENT, ANY LENDER, THE AGENT, THE SECURITY TRUSTEE, THE INSURER REPRESENTATIVE OR ANY MEMBER OF THE INSURER GROUP SHALL MAKE OR GIVE OR SHALL BE DEEMED TO HAVE MADE OR GIVEN AND HEREBY EXPRESSLY DISCLAIMS ANY REPRESENTATION, WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, AS TO (i) THE AIRWORTHINESS, VALUE, CONDITION, DESIGN, COMPLIANCE WITH SPECIFICATIONS OF, OPERATION OF, OR THE QUALITY OF THE MATERIAL OF OR WORKMANSHIP IN, OR TITLE TO, OR ANY DEFECT IN, ANY AIRCRAFT, ANY

FILED DATE: 1/11/2023 2:57 PM   2023L000001

AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, (ii) THE MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE OF ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, OR AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT OR THE LIKE, OR ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (iii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT WITH RESPECT TO ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, WHETHER OR NOT IN STRICT OR ABSOLUTE LIABILITY OR ARISING FROM THE NEGLIGENCE OF LESSOR, THE LENDERS, THE AGENT, THE SECURITY TRUSTEE OR THE INSURER REPRESENTATIVE, ACTUAL OR IMPUTED, (INCLUDING ANY STATUTORY WARRANTY OR CONDITION UNDER THE LAWS OF THE UNITED STATES, ANY STATE THEREOF, THE GOVERNMENT OF REGISTRY OR THE JURISDICTION OF INCORPORATION OR FORMATION OF LESSEE) OR (iv) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF, OR DAMAGE TO, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING, FOR ANY LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES THEREFROM, IT BEING UNDERSTOOD THAT ALL SUCH RISKS, AS BETWEEN LESSEE AND SUCH OTHER PERSONS, ARE TO BE BORNE BY LESSEE, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE OPERATIVE DOCUMENTS.  NONE OF THE INSURER REPRESENTATIVE, ANY MEMBER OF THE INSURER GROUP, THE LENDERS, THE AGENT NOR THE SECURITY TRUSTEE SHALL BE LIABLE OR OTHERWISE RESPONSIBLE IN ANY MANNER FOR ANY REPRESENTATION OR WARRANTY MADE BY THE LESSOR HEREUNDER OR UNDER ANY OTHER OPERATIVE DOCUMENT.

**4.2    Manufacturers' Warranties**

None of the provisions of this Clause 4 or any other provision of this Lease shall be deemed to amend, modify or otherwise affect the representations, warranties or other obligations (express or implied) of the Manufacturer or the Engine Manufacturer or any contractor, subcontractor or supplier of the Manufacturer or the Engine Manufacturer with respect to any Aircraft, any Airframe, any Engine or any Parts, forming a part of or installed on or attached to any Aircraft, any Airframe or any Engine or to release the Manufacturer or the Engine Manufacturer or any such contractor, subcontractor or supplier from any such representation, warranty or obligation.  So long as no Event of Default or Termination Event shall have occurred and be continuing, the Lessee, or any Permitted Sub-Lessee leasing an Aircraft from the Lessee, shall have the benefit of and shall be entitled to enforce (as it shall deem appropriate), either in its own name or in the name of the Lessor (at the cost of the Lessee and in respect of which enforcement the Lessee hereby agrees to indemnify the Lessor) for the use and benefit of the Lessee (or the relevant Permitted Sub-Lessee) during the relevant Term by way of revocable license (provided that the Lessor shall not revoke such license until an Event of Default or Termination Event occurs and is continuing and shall reinstate such license in the event the Event of Default or Termination Event is cured), any and all dealer's, manufacturer's contractor's, or subcontractor's credits, guarantees, indemnities, warranties or other benefits, if any, available to the Lessor in respect of any Aircraft, any Engine and/or any Part, provided that neither the Lessee nor any Permitted Sub-Lessee shall be entitled to modify, amend or otherwise alter any of the foregoing without the prior written consent of the Security Trustee except in circumstances where such modification, amendment or alteration could not reasonably be expected to have a Material Adverse Effect in relation to the Lessor or any Secured Party, and the Lessor agrees at the Lessee's expense to do, execute and deliver such further acts, deeds, matters or things as may be reasonably

FILED DATE: 1/11/2023 2:57 PM   2023L000001

requested by the Lessee to enable the Lessee to obtain customary warranty service furnished for any Aircraft, any Engine and/or Part by such dealer, manufacturer, contractor or subcontractor or any supplier as aforesaid or to exercise any other rights in relation to any of the foregoing benefits, and any moneys recovered from such enforcement shall be promptly paid to, and retained by, the Lessee (or, if directed by the Lessee, any Permitted Sub-Lessee), provided further, that if a Material Default, Termination Event or Event of Default shall have occurred and be continuing, any such moneys payable to the Lessee or Permitted Sub-Lessee shall instead be paid to the Security Trustee as security for, and applied to, the obligations of the Lessee Obligors under the Operative Documents in accordance with the Intercreditor Agreement and, at such time as no Material Default, Termination Event or Event of Default shall be continuing, to the extent not so applied, promptly paid to the Lessee.  The Lessee hereby acknowledges the provisions of the Purchase Assignment, the Engine Warranties Agreement and each Security Agreement and of the security interests granted to the Security Trustee in respect of the Lessor's rights, title and interests in and to the Purchase Agreement and the Engine Agreement created by the Operative Documents.

**5.    PURCHASE OPTIONS; RETURN OF AIRCRAFT**

**5.1    Purchase Options**

Provided that the leasing of the relevant Aircraft under this Lease has not otherwise terminated, and no Material Default, Termination Event or Event of Default has occurred and is continuing, the Lessee may on any date falling after the Delivery Date and prior to or including the scheduled end of the Term for such Aircraft, by thirty (30) days' prior written notice (or such shorter period of notice as the Lessor the Insurance Representative and the Security Trustee may agree) delivered to the Lessor (with copies to the Security Trustee, the Insurer Representative and the Agent) (which notice shall be irrevocable), elect for it or a nominee approved by the Insurer Representative and the Agent (such approval not to be unreasonably withheld) (an **Approved Nominee)** to purchase such Aircraft on such date for a purchase price equal to the Termination Value in respect of such Aircraft on such date, plus any and all Rent in respect thereof then due and payable (including, but without duplication, any amounts payable by the Lessor or the Lessee under the Lessor Indemnity Agreement and the Loan Agreement in respect of the related prepayment of the Loan for such Aircraft) plus, if the purchase of the Aircraft occurs on the Final Maturity Date, ten Dollars (US$ 10); provided that, in no event shall the Lessee have the right to purchase or elect an Approved Nominee to purchase such Aircraft without the prior written consent of the Insurer Representative if such consent would be required by the Lessor to voluntarily prepay the Loan for such Aircraft in full under clause 2.4 of the Loan Agreement at the time of the proposed purchase of the Aircraft.

**5.2    Purchase Procedure; Termination**

In connection with the purchase of an Aircraft pursuant to Clause 5.1, upon indefeasible payment to the Lessor of the Termination Value in respect of such Aircraft in full on such date and any and all Rent then due in respect of such Aircraft, the Lessor will (at the cost of the Lessee) transfer to the Lessee or its Approved Nominee all of the Lessor's right, title and interest in and to such Aircraft (including any warranties relating thereto and assigned to the Lessor pursuant to the relevant Purchase Assignment and the relevant Engine Warranties Agreement), in "AS-IS, WHERE-IS" condition, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, except that the Lessor will warrant to the Lessee or its Approved Nominee that it has such title to such Aircraft as was delivered to the Lessor by the Manufacturer on the Delivery Date for such Aircraft (or in respect of any Engine or Part which was not delivered to the Lessor by the Manufacturer on the Delivery Date for such Aircraft or was delivered to the Lessor pursuant to any subsequent transfer in accordance with the terms of this Lease, on the date the Lessor acquired title to such Engine or Part), and the lawful right to transfer such Aircraft in accordance with the terms hereof and that such Aircraft is free of all Lessor Liens attributable to it.  THE WARRANTY CONTAINED IN THE IMMEDIATELY PRECEDING SENTENCE WILL BE MADE BY LESSOR IN LIEU OF AND IN

SUBSTITUTION FOR, AND LESSEE HEREBY WAIVES, RELEASES AND RENOUNCES, ALL OTHER EXPRESS OR IMPLIED WARRANTIES, CONDITIONS OR REPRESENTATIONS WITH REGARD TO THE CONDITION OR TITLE OF THE RELEVANT AIRCRAFT (INCLUDING SUCH AS TO THE STATE, DESCRIPTION, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT), AND ALL OBLIGATIONS AND LIABILITIES OF LESSOR HEREUNDER WITH RESPECT TO CONSEQUENTIAL DAMAGES THEREFROM, AND ALL RIGHTS, CLAIMS AND REMEDIES OF LESSEE, EXPRESS OR IMPLIED, ARISING OUT OF LAW OR OTHERWISE WITH RESPECT THERETO THE USE OR OPERATION OF SUCH AIRCRAFT AND ANYTHING GIVEN OR SOUGHT TO BE IMPLIED FROM ANYTHING SAID OR WRITTEN IN THE NEGOTIATIONS BETWEEN THE PARTIES HERETO OR THEIR REPRESENTATIVES PRIOR TO ENTERING INTO THIS LEASE WITH RESPECT THERETO.   ANY STATUTORY OR OTHER WARRANTY, CONDITION, DESCRIPTION OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE STATE, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT IS EXPRESSLY EXCLUDED, INCLUDING BUT NOT LIMITED TO:

(a)     ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS;

(b)     ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE;

(c)     ANY OBLIGATION OR LIABILITY WITH RESPECT TO ANY ACTUAL OR ALLEGED INFRINGEMENT OF PATENTS, LICENSES OR THE LIKE, OR ANY OTHER INTELLECTUAL PROPERTY;

(d)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM EACH PARTY'S OR ITS ASSIGNS' NEGLIGENCE, ACTUAL OR IMPUTED; AND

(e)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO SUCH AIRCRAFT, FOR LOSS OF USE, REVENUE OR PROFIT WITH RESPECT TO LESSEE OR FOR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF WHATEVER DESCRIPTION.

In connection with such transfer, the Lessee shall prepare and the Lessor shall execute, all in form and substance satisfactory to the Lessee and/or in a form recordable in the Government of Registry, a bill of sale evidencing each such transfer, a termination of the leasing of such Aircraft under this Lease and such other documents (including the discharge of the Lien of the Aircraft Mortgage in respect of such Aircraft and the other Security Documents and opinions of counsel) as the Lessee may reasonably request, all at the expense of the Lessee.  Upon a purchase of an Aircraft by the Lessee or its nominee pursuant to Clause 5.1 and Clause 5.2 or Clause 14, the leasing of such Aircraft under this Lease shall terminate.

**5.3     Return of Aircraft; Condition Upon Return**

(a)     Unless the Lessee or its nominee shall have acquired title to an Aircraft pursuant to Clause 5.2 or Clause 14, the Lessee will, upon the termination or expiration of this Lease with respect to such Aircraft (other than following an Event of Loss with respect to such Aircraft), at its own risk and expense, cause the Airframe for such Aircraft, together with the Manuals and Technical Records therefor, to be delivered to the Lessor pursuant to Clause 5.6, fully equipped with two Engines, duly installed thereon (or one or two Replacement Engines of the same manufacturer or of another manufacturer, of the same or an improved model (it being understood that such engines on such Aircraft shall be of the same or an improved model and suitable for installation and use on the Airframe for such

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Turn off

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Aircraft but having a value and remaining useful life at least equal to, and being in as good operating condition as, the Engines leased by the Lessee for such Aircraft)), duly installed thereon.

(b)    At the time of such return, (i) such Aircraft shall have a valid Certificate of Airworthiness, (ii) the Airframe and Engines or engines for such Aircraft shall be free and clear of all Liens (other than any Lessor Liens, Lender Liens or other Liens arising under any Operative Document), (iii) the Airframe and Engines or engines for such Aircraft shall be in as good operating condition, and in proper operating condition for scheduled revenue passenger flights as provided in this Clause 5.3, Clause 7.2 and Clause 8 and (iv) such Aircraft shall, except as otherwise provided herein, be in substantially the same configuration and have installed (A) the same or equivalent avionics and other equipment, safety equipment and appurtenances as when such Aircraft was originally delivered to the Lessee hereunder and (B) all other equipment financed on the Delivery Date for such Aircraft (it being agreed that the records of the Manufacturer, including the Purchase Agreement and the Manuals and Technical Records, shall be prima facie evidence thereof).

(c)    Upon such return the Airframe for such Aircraft shall have cleared a recently completed major check as would be required to clear such Aircraft for at least the next 12 months and such Engines and all major components for such Aircraft shall have at least 50% of the hours, cycles or time (whichever is more limiting) in each case remaining until the next anticipated engine refurbishment, overhaul or inspection requiring removal.  At the time of such return, the Lessee shall also at its own expense:

(i)    remove or paint over all names, insignia and other indications of the Lessee or any Permitted Sub-Lessee from the exterior and interior of such Aircraft in a good, workman-like manner;

(ii)    transfer or cause to be transferred, or reassign or cause to be reassigned, to the Lessor to the extent then possible all assignable and remaining warranties and performance guarantees obtained by the Lessee or any Permitted Sub-Lessee with respect to such Aircraft, together with all documents related thereto that may be required to effect such transfer or reassignment; and

(iii)    if requested by the Lessor, obtain an export certificate of airworthiness (if available) for, and obtain or submit any applicable approval, permit, license or report for the re-export of, such Aircraft from the Civil Aviation Authority and deregister such Aircraft from the registry maintained by the Government of Registry.

(d)    If the Lessee fails to remove or procure the removal by the Permitted Sub-Lessee of the registration or to obtain the export certificate of airworthiness or such re-export approval, permit or license as provided above, the Lessor may do so at the cost and expense of the Lessee and, in such event, the Lessee shall upon demand reimburse the Lessor for the cost thereof.  The Lessee hereby irrevocably appoints the Lessor, upon such failure of the Lessee, as its true and lawful attorney-in-fact, with full power of substitution, in the Lessee's name or otherwise, to carry out the provisions of this Clause 5.3 and to take any action and to execute and/or file any instrument necessary to accomplish the purposes of this Clause 5.3.

(e)    If any other of the foregoing requirements shall not be satisfied at the time of return, the Lessee shall (at the Lessor's election) either promptly remedy any deficiency or make a payment fully compensating the Lessor for the remedy of such deficiency.  If requested by the Lessor, the Lessee shall perform or procure the performance of (at the sole cost and expense of the Lessee):

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(i)     a complete videotape borescope inspection of such Engines in accordance with Engine Manufacturer's maintenance manual demonstrating to the Lessor's satisfaction that such Engines (or any module) are not unserviceable or beyond serviceable limits (or serviceable with limitations) under such manual; and

(ii)    a flight test demonstration, at the Lessee's expense and during normal business hours, for a period of not more than two hours at any airport referred to in Clause 5.4.  Personnel designated by the Lessor may participate as observers in such demonstration flight and a pilot selected by the Lessor may accompany the Lessee's pilot and occupy the observer's seat during such demonstration.  The purpose of the demonstration flight will be to ascertain that all systems and their components are functioning satisfactorily and in the event they are not so functioning they will be corrected by the Lessee or provision made therefor by the Lessee.

**5.4     Place of Redelivery; Storage Upon Return**

Each Aircraft shall be returned to an airport in Europe designated by the Lessor, and the Lessee shall retain the risk of loss for such Aircraft, and the related Airframe, Engines and Parts, until they are returned in conformity with the provisions of this Lease at such airport.

**5.5     Return of Engines**

In the event that any engine not owned by the Lessor shall be delivered with any returned Airframe as set forth in Clause 5.3 (which engine must meet the requirements of a Replacement Engine, the Lessee shall, concurrently with such delivery, at its own expense, furnish the Lessor with a bill of sale covering such engine, including full warranty as to title, and thereupon the Lessor will transfer to the Lessee, on an "as-is, where-is" basis, without recourse or warranty (except as to the absence of Lessor Liens, Lender Liens or other Liens arising under or in connection with any Operative Document), all of the Lessor's right, title and interest in and to any Engine constituting part of the relevant Aircraft but not installed on such Airframe at the time of the return of such Airframe.  After such conveyance, the substituted engine shall be deemed an "Engine" as defined herein and shall meet the conditions set forth in Clause 5 hereof.

**5.6     Fuel, Manuals**

Upon the return of each Aircraft, each fuel tank and oil tank shall contain the same quantity of fuel or oil as was contained in the fuel and oil tanks when such Aircraft was delivered to the Lessee on the Delivery Date for such Aircraft.  Upon the return of each Aircraft, the Lessee shall deliver to the Lessor at least one original or certified copy of all logs, manuals and data, and inspection, modification and overhaul records (including all job cards) required to be maintained with respect to such Aircraft under the applicable rules and regulations of the Civil Aviation Authority (collectively, the **Manuals and Technical Records**) and such other additional records as would be necessary for the FAA to issue an unrestricted certificate of airworthiness, passenger transport category, for such Aircraft and if any thereof are not in English, certified English translations thereof.

**6.     LIENS**

The Lessee will not (and shall procure that no sublessee will) directly or indirectly create, incur, assume, suffer, permit or allow to exist any Lien on or with respect to any Aircraft or any Airframe or any Engine or any Part, title thereto or any interest therein or in or to this Lease or any other Operative Document or any of its rights hereunder or thereunder, except Permitted Liens.  The Lessee will promptly, at its own expense, take such action as may be necessary duly to discharge or satisfy (by bonding or otherwise) any Lien that is not a Permitted Lien if the same shall arise at any time.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 7.    REGISTRATION, MAINTENANCE, OPERATION AND POSSESSION

### 7.1    Registration

The Lessee shall, at its sole cost and expense, upon the delivery of an Aircraft, cause such Aircraft to be duly certified as to airworthiness in accordance with the law of the Government of Registry and to be duly registered with the Civil Aviation Authority in the name of the Lessor as owner of such Aircraft and the relevant Initial Permitted Sub-Lessee as operator of such Aircraft, the extent permitted by Applicable Law.  Unless otherwise provided in this Lease, the Lessee shall not take any action, or fail to take any action, which action or failure might cause such airworthiness certification and registration to cease to be in full force and effect or to be revoked, withdrawn or suspended. Without limiting the generality of the foregoing, the Lessee at all times during the Term for an Aircraft shall ensure, at the Lessee's sole cost and expense, that prior to the expiration thereof, the Certificate of Airworthiness and Certificate of Registration are renewed or maintained by the Civil Aviation Authority.  Without limiting the generality of Clause 11, the Lessor shall take, and shall co-operate with the Lessee to take, at the Lessee's sole cost and expense all actions necessary to permit and maintain such registration and to permit the Lessee to receive copies of all correspondence and communications to and from the Civil Aviation Authority.  Except as expressly permitted by the Operative Documents, the Lessee shall not, during the Term for an Aircraft, take any action which (a) may cause deregistration of such Aircraft from the Civil Aviation Authority or (b) the removal of the Lien of the Aircraft Mortgage in respect of such Aircraft from the Civil Aviation Authority.

### 7.2    Maintenance

The Lessee shall, at the Lessee's cost and expense:

(a)    establish, maintain or cause the establishment and maintenance of a maintenance programme for Boeing model 737 - 8 aircraft and for CFM model LEAP-1B27 engines (and Replacement Engines), as the case may be, each conforming with the Manufacturer's and Engine Manufacturer's maintenance planning document and approved by the Civil Aviation Authority (collectively, the **Approved Maintenance Programme**), and ensure that all service, inspection, maintenance, modification, storage, repair and overhaul of each Aircraft is performed in accordance with such Approved Maintenance Programme, by the Lessee or by the Permitted Sub-Lessee if so approved by the Civil Aviation Authority or by a maintenance facility approved by the Civil Aviation Authority (the **Approved Maintenance Facility**), provided that (i) all Manuals and Technical Records shall be kept in the English language, (ii) the Lessee shall submit the Approved Maintenance Programme to the Lessor, the Agent, the Insurer Representative and Security Trustee on or prior to the Delivery Date for each Aircraft and shall advise the Lessor, and the Insurer Representative, upon their reasonable request, of any material subsequent changes to such Approved Maintenance Programme by issuing revisions thereof approved by the Civil Aviation Authority to the Lessor, Security Trustee, the Insurer Representative and the Agent and (iii) upon the return of any Aircraft pursuant to the terms hereof, such Aircraft shall be capable of qualifying immediately for the issuance of a Certificate of Airworthiness issued by the FAA for commercial passenger transport;

(b)    keep each Airframe, each Engine and all Parts or procure each of the same are kept in good operating and serviceable condition and repair, and in such condition (including maintenance of the Manuals and Technical Records) as necessary to enable all applicable airworthiness certifications of each Aircraft to be maintained in good standing at all times under the Applicable Laws of the Government of Registry except when such Aircraft is undergoing service, maintenance, modification, overhaul, testing and/or repairs as required or permitted hereunder;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     promptly furnish the Lessor, upon request, with such information as may be required to enable the Lessor to file any report required to be filed by the Lessor with any Government Body because of the Lessor's ownership of each Aircraft or the Lessor's lease of each Aircraft hereunder, as the case may be;

(d)     procure that each Airframe, each Engine and each Part is maintained, inspected serviced, stored, repaired, modified and overhauled (i) to comply with all warranty requirements pursuant to the Purchase Agreement or the Engine Agreement, as the case may be, (ii) in accordance with Manufacturer's and Engine Manufacturer's repair manuals, (iii) pursuant to the Approved Maintenance Programme and (iv) in a manner that does not discriminate against any Aircraft, any Airframe or any Engine when compared to the highest applicable standard (including the prompt performance of Service Bulletins, mandatory Manufacturer's and Engine Manufacturer's directives and Airworthiness Directives) applied by the Lessee or the Permitted Sub-Lessee with regard to similar aircraft owned, operated or leased by the Lessee or the Permitted Sub-Lessee;

(e)     procure and maintain in effect with Manufacturer and Engine Manufacturer a revision service, if any, for all Manuals and Technical Records, and maintain the Manuals and Technical Records in such condition to satisfy the standards of the Civil Aviation Authority for a Certificate of Airworthiness for commercial passenger/cargo transport;

(f)     procure that for each Aircraft, all applicable mandatory alert Service Bulletins issued by Manufacturer and Engine Manufacturer shall be accomplished, and, in addition, all other Service Bulletins the Lessee or the Permitted Sub-Lessee adopts during the Term for such Aircraft for any similarly operated aircraft of the same model in the Lessee's or the Permitted Sub-Lessee's fleet, it being the intent of the parties that no Aircraft shall be discriminated against in any manner in Service Bulletin compliance and other maintenance matters; and

(g)     for each Aircraft, comply with all applicable Airworthiness Directives issued by the Civil Aviation Authority and which become due during the Term for such Aircraft or which at the time of redelivery of such Aircraft to the Lessor pursuant to the terms hereof have been issued by the Civil Aviation Authority or made mandatory by EASA upon operators regarding Boeing model –737 - 8 aircraft, CFM model LEAP-1B27 engines and any Part, as the case may be, and which have become due.

Neither the Lessor nor any Secured Party shall bear responsibility or liability for any grounding or suspension of operations of any Aircraft resulting from Airworthiness Directives, Service Bulletins, or any repairs or modifications to any Aircraft by the Lessee or any other Person.

**7.3     Operation**

Subject to Clause 7.5, the Lessee undertakes that no Aircraft will be maintained, used, insured or operated:

(a)     in violation of the Certificate of Airworthiness or any license or registration of, or with, any Government Body having jurisdiction over the Lessee (or any Permitted Sub-Lessee) or such Aircraft;

(b)     for any primary purpose other than the commercial transportation of passengers and/or cargo, provided that cargo shall be carried only in the cargo hold of such Aircraft;

(c)     in violation of the Approved Maintenance Programme or any warranty requirements pursuant to the Purchase Agreement, Engine Agreement or any other agreement setting forth

FILED DATE: 1/11/2023 2:57 PM   2023L000001

any other material warranties with respect to such Aircraft, the related Airframe, Engines or Parts;

(d) for any purpose or in any manner for which it is not designed or reasonably suited or outside the tolerances and limitations for which such Aircraft, the related Airframe or any related Engine was designed in accordance with the Approved Maintenance Program, Applicable Laws and applicable material warranties;

(e) at any time while the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof are not in full force and effect;

(f) for any purpose or in any manner inconsistent with the terms of, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof;

(g) in any place inconsistent with the terms of, excluded from coverage by, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof (or outside any geographical limit imposed by the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof, including without limitation, in or through any recognized or (in the Lessor's, the Agent's or the Insurer Representative's reasonable opinion) threatened area of hostilities unless fully covered by war risk and allied perils insurance in amounts and scope required by this Lease; or

(h) in violation of any Applicable Law of or by any Government Body having jurisdiction over the Lessor or the Lessee (or any Permitted Sub-Lessee) or any Secured Party or any Aircraft or any mandatory requirement of Manufacturer, Engine Manufacturer or supplier, except for unintentional minor or nonrecurring violations which are cured promptly and which:

   (i) do not involve any loss or reduction of coverage under any of the Aircraft Insurances or any Aircraft Reinsurances required by the terms of Clause 10;

   (ii) do not involve any material risk of the sale, forfeiture or loss of or damage to such Aircraft or any interest therein;

   (iii) do not involve any material risk of the Lessor or any Secured Party being subject to civil penalties;

   (iv) do not involve any risk of criminal penalties being imposed against or upon the Lessee, the Lessor, the Lessor Parent or any Secured Party, which in the case of the Lessor or the Lessee shall be a material risk; and

   (v) do not subject the Lessor, the Lessee or the Permitted Sub-Lessee to any fine or penalty or enforcement action which would materially adversely affect the business or operations of the Lessor, the Lessee, the Permitted Sub-Lessee or any Guarantor, the operation of any Aircraft or the rights of the Lessee, the Lessor or any Secured Party hereunder or under any other Operative Document,

provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party or have any material risk of the sale or forfeiture of any Aircraft, or of materially adversely affecting the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder, and if any Applicable Law requires alteration of any Aircraft, the Lessee will conform thereto or obtain conformance therewith at no cost or expense to the Lessor or any Secured Party and will maintain such Aircraft in proper operating condition under such

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Applicable Law, provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party, have any material risk of the sale or forfeiture of any Aircraft or any Engine, or adversely affect the rights of the Lessor or any Secured Party hereunder or under any other Operative Documents or the obligations of the Lessee hereunder.

Further, the Lessee undertakes that:

(i)     all debts, costs, Losses, liabilities, premiums, calls, contributions, penalties, landing fees, overflight and navigation charges (including Eurocontrol fees), dues, tolls, charges, fines, recoveries or other expenses with respect to any Aircraft shall be duly and punctually paid and discharged during the Term, provided that the Lessee may in good faith diligently contest the validity or application of any of the foregoing in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of the sale of forfeiture of any Aircraft, or adversely affecting the rights of the Lessor or any Secured Party hereunder or under any of the other Operative Documents or the obligations of the Lessee hereunder or any risk of any criminal penalties or criminal liability being imposed, and upon reasonable request by the Lessor, the Insurer Representative or the Security Trustee shall confirm to such Person's reasonable satisfaction that such action has been taken;

(ii)    no alteration in or modification or addition to any Airframe, any Engine or any Part, or any removal of any Engine or any Part from the Aircraft, or installation on or attachment to any Airframe, any Engine or any Part of anything not being part of any Aircraft on the Delivery Date shall occur unless expressly permitted by this Lease, including under Clause 8.4; and

(iii)   it shall not and shall procure that any Permitted Sub-Lessee shall not cause or permit to be done anything regarding any Airframe, any Engine or any Part the effect of which may be reasonably expected to result in such Airframe, such Engine or such Part being requisitioned for title or arrested or otherwise to jeopardize the interests of the Lessor and the Secured Parties in and to such Airframe, such Engine or such Part.

**7.4     Possession**

(a)     Subject to Clauses 7.5, 8 and 9, the Lessee shall not and shall procure that no Permitted Sub-Lessee shall, without the prior written consent of the Insurer Representative and the Security Trustee (which consent may be withheld in their sole discretion), sublease (whether directly, under a Dry Lease or Wet Lease), or otherwise in any manner deliver, transfer or relinquish possession of any Airframe, any Engine or any Part to any Person or firm or install any Engine, or permit any Engine to be installed, on any airframe other than the associated Airframe, provided, however, that (subject to Clauses 7.5, 8 and 9) so long as no Termination Event or Event of Default shall have occurred and be continuing, the Lessee may, without the prior written consent of the Insurer Representative, the Agent or the Security Trustee:

(i)     deliver or permit the delivery of possession of any Airframe, any Engine or any Part (A) to the manufacturer thereof for testing or other similar purposes or (B) to an Approved Maintenance Facility for service, repair, maintenance or overhaul work on such Airframe, such Engine, such Part or any part thereof or for alterations or modifications in or additions to such Airframe, such Engine or such Part to the extent required or permitted by the terms

FILED DATE: 1/11/2023 2:57 PM   2023L000001

of Clause 8.4, but in any event only in compliance with the Approved Maintenance Programme and Clause 7.2;

(ii)     install or permit the installation of an Engine for any reason on another airframe owned by the Lessee free and clear of all Liens, except (A) Permitted Liens and except those that apply only to the engines (other than the Engines), appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment (other than Parts) installed on such airframe (but not to such airframe as an entirety); and (B) mortgage liens or other security interests, but only if the holder of such mortgage lien or other security interest expressly agrees that such Engine shall not become subject to the Lien of such mortgage or security interest, notwithstanding the installation thereof on such airframe;

(iii)    install or permit the installation of an Engine for any reason on an airframe owned or operated by the Lessee or an Approved NAS Sub-Lessee (while such Approved NAS Sub-Lessee is leasing the Engine from the Lessee pursuant to a Permitted Sub-Lease) leased under a lease unrelated to this Lease to the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) or purchased by the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) subject to a conditional sale or other security agreement, provided, however, that in any such case the Lessee shall provide written assurance reasonably satisfactory to the Lessor and the Security Trustee that the rights, title and interests of the Lessor and the Secured Parties in such Engine under the Operative Documents will not be derogated in any material manner as a result thereof;

(iv)     temporarily install an engine on an Airframe which does not satisfy the requirements of Replacement Engine;

(v)      wet lease the Aircraft:

        (A)     if from a Permitted Sub-Lessee to any of Norwegian Air Shuttle, Norwegian Air International Limited, Norwegian Air UK Limited, Norwegian Air Sweden AB or Norwegian Air Norway AS, for a term not to exceed the lesser of twelve (12) months and the remainder of the Term for such Aircraft; or

        (B)     otherwise, for a term not to exceed the lesser of six (6) months and the remainder of the Term for such Aircraft; and

provided, in each case, that the rights of any transferee who receives possession by reason of a transfer permitted by this Clause 7.4 (other than the transfer of an Engine which is deemed an Event of Loss) SHALL BE EXPRESSLY SUBJECT AND SUBORDINATE TO ALL THE TERMS OF THIS LEASE AND THE OTHER OPERATIVE DOCUMENTS, including the Lessor's and the Secured Parties' rights to a repossession pursuant to Clause 14 hereof, to terminate and avoid this Lease or other transfer upon such repossession and to require the Lessee or other transferee to forthwith deliver any Airframe and/or any Engine subject to this Lease or other transfer upon repossession, and the Lessee shall remain primarily liable hereunder for the performance of all of the terms of this Lease to the same extent as if such transfer had not occurred.

(b)      No relinquishment of possession of any Airframe, any Engine or any Part shall affect in any way the registration of any Aircraft or discharge or diminish any of the Lessee's obligations hereunder or under any of the other Operative Documents or constitute a waiver of the Lessor's or any Secured Party's rights or remedies hereunder or under any of the other Operative Documents.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     The Lessor agrees, for the benefit of the Lessee (and any Permitted Sub-Lessee) and for the benefit of any mortgagee or other holder of a security interest in any engine (other than an Engine) owned or leased by the Lessee (or any Permitted Sub-Lessee), any lessor of any engine (other than an Engine) leased to the Lessee (or any Permitted Sub-Lessee) and any conditional vendor of any engine (other than an Engine) purchased or leased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale agreement or any other security agreement, that no interest shall be created hereunder in any engine so owned, leased or purchased and that none of the Lessor, Security Trustee nor their respective successors or assigns will acquire or claim, as against the Lessee (or any Permitted Sub-Lessee) or any such mortgagee, lessor or conditional vendor or other holder of a security interest or any successor or assignee of any thereof, any right, title or interest in such engine as the result of such engine being installed on any Airframe, provided, however, that such agreement of the Lessor shall not be for the benefit of any lessor of or secured party in respect of any airframe (other than an Airframe) leased to the Lessee (or any Permitted Sub-Lessee) or purchased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale or other security agreement or for the benefit of any mortgagee of or any other holder of a security interest in an airframe (other than an Airframe) owned by the Lessee (or any Permitted Sub-Lessee), unless such lessor, conditional vendor, other secured party or mortgagee has expressly agreed (which agreement may be contained in such lease, conditional sale or other security agreement or mortgage) that neither it nor its successors or assigns will acquire, as against the Lessor, the Security Trustee or any other Secured Party any right, title or interest in an Engine as a result of such Engine being installed on such airframe.

(d)     The Lessee will, upon reasonable request, furnish to the Insurer Representative, the Security Trustee and the Agent prompt notice of any transfer or relinquishment of possession of any Aircraft permitted under this Clause 7.4 (other than Clause 7.4(a)), and if requested by the Insurer Representative, the Security Trustee or the Agent a copy of the documents relating to such transfer or relinquishment of possession, duly certified by an officer's certificate of the Lessee as being a complete and correct copy of all documents so provided.

**7.5     Dry Leasing**

(a)     The Lessee shall not enter into any sublease (whether by Dry Lease or any other similar arrangement) of any duration with respect to any Aircraft (including any Airframe and any Engines or engines installed thereon) with any Person without the prior written consent of the Insurer Representative, the Agent and the Security Trustee (each of which may withhold its consent in its sole discretion) other than:

(i)      the Initial Permitted Sub-Lease; or

(ii)     another Permitted Sub-Lease with a Permitted Sub-Lessee.

(b)     Other than in respect of the Initial Permitted Sub-Lease, any such sublease shall be subject to the following conditions and requirements:

(i)      any such sublease shall be made expressly subject and subordinate to all the terms of this Lease and the other Operative Documents, and shall not adversely affect the priority or perfection of the Lien of the Security Documents, the enforceability of the Collateral or the right of the Lessor or the Security Trustee to avoid such sublease and to repossess such Aircraft, the associated Airframe or the associated Engines in connection with the exercise of any remedies upon any Termination Event or Event of Default;

(ii)     the Lessee shall remain primarily liable hereunder for the performance of all terms and conditions of this Lease to the same extent as if such sublease had not occurred;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(iii)    all terms and conditions of this Lease and the other Operative Documents shall remain in full force and effect;

(iv)    prior to entering into any such sublease, the Lessee shall provide to the Lessor and the Secured Parties certificates of insurance, reinsurance and brokers' undertakings in respect of insurances and reinsurances from the Lessee's insurance brokers or an authorized representative of the Lessee's insurers reflecting that the Aircraft Insurances and Reinsurances required to be maintained pursuant to Clause 10 are in full force and will not be adversely affected due to the sublease;

(v)    such sublease shall (A) provide that such Aircraft, and the associated Airframe, Engines and Parts, be maintained in accordance with the Approved Maintenance Programme, and (B) be governed by English law or another jurisdiction acceptable to the Security Trustee, the Agent and the Insurer Representative, and (C) be with a Permitted Sub-Lessee;

(vi)    such sublease shall not permit any further sub-leasing and the term of the sublease shall not exceed the remaining Term with respect to such Aircraft;

(vii)    either (A) no re-registration of such Aircraft shall occur as a result of entering into such sublease or (B) if entering into such sublease shall involve the re-registration of such Aircraft, the proposed state of registration of such Aircraft shall be Norway, Ireland, Sweden, the United Kingdom or shall have been approved by the Insurer Representative, the Agent and the Security Trustee in writing (which approval may be withheld in their sole discretion) and shall in each case be subject to the following:

(A)    under the Applicable Laws of the proposed state of registration of such Aircraft:

I.    there shall exist no rights in favour of the Lessee or the relevant sublessee or any other Person that would, upon bankruptcy or other default by such sublessee, prevent the deregistration, re-export and return of such Aircraft to the Lessor (or upon the enforcement of the Lien of the Security Documents, the Security Trustee) in accordance with and as permitted by the terms of Clause 5 upon the exercise by the Lessor of its remedies under Clause 14;

II.    the Lessor shall be recognized as the owner of such Aircraft and the Secured Parties' Lien over the Aircraft pursuant to the Security Documents shall be recognised;

III.    there shall be no impediment (as at the date of re-registration) to the exercise of the rights and remedies provided for in this Lease or in any other Operative Document in respect of such Aircraft and the practical realisation by the Lessor and the Secured Parties of the benefits of this Lease and the Security Documents (to the extent relating to the Aircraft and this Lease) will be available under such Applicable Law;

IV.    the rights of the Lessor under this Lease and the rights and Liens of the Security Trustee and the Secured Parties under the Security Documents, in each case, in respect of such Aircraft, shall be enforceable in the jurisdiction of re-registration and, if requested by the Security Trustee or the Insurer Representative, the Lessor shall provide a new local law mortgage over the Aircraft in favour of the Secured Parties;

V.    all filings (including all filings required by the Insurer Representative or the Security Trustee pursuant to the Cape Town Convention), recordations and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

other actions necessary in order to establish, protect and perfect the Lessor's title to the Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Paragraph IV above) shall have been made;

VI.   no Secured Party shall be required to qualify to do business in such jurisdiction as a result of such re-registration;

(B)   such re-registration shall not result in any Tax for which the Lessee is not required to indemnify;

(C)   the insurance and any reinsurance required in respect of such Aircraft by Clause 10 shall be in full force and effect subsequent to such re-registration and the Lessee shall provide to the Lessor, the Insurer Representative, the Agent and the Security Trustee evidence of such insurance and any reinsurances required reasonably satisfactory to the Insurer Representative, the Agent and the Security Trustee;

(D)   no Liens (other than Permitted Liens) shall arise as a result of such re-registration;

(E)   all filings, registrations, recordations and other actions necessary under the Applicable Laws of the jurisdiction in which such Aircraft is to be registered, in order to establish, protect and perfect the Lessor's title to such Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Clause 7.5(vii)(A)(IV) above), shall be made;

(F)   the Lessee shall provide to the Lessor, the Insurer Representative, the Agent and the Security Trustee an opinion of independent counsel in the state of such re-registration addressed to the Lessor, the Security Trustee, the Agent and the Insurer Representative reasonably satisfactory in form and substance to the Insurer Representative, the Agent and the Security Trustee; and

(G)   all reasonable costs, expenses, fees and other charges in connection with any such re-registration shall be paid by the Lessee;

(viii)   the Lessee shall (A) at least thirty (30) days prior to such sublease taking effect, give the Lessor, the Security Trustee, the Agent and the Insurer Representative written notice of such proposed sublease together with a copy of the proposed agreement (which agreement must be reasonably acceptable in form and substance to the Lessor, the Security Trustee and the Insurer Representative), (B) deliver a copy of the approved executed agreement to the Security Trustee, the Lessor, the Agent and the Insurer Representative and assign the Lessee's interests in such agreement to the Lessor, who in turn shall assign such interests to the Security Trustee, as a perfected first-priority security interest for the Lessee's obligations hereunder and cause the Lessee to consent to such assignment and to the Lessor's further assignment of such sublease to the Security Trustee for the benefit of the Secured Parties and (C) provide evidence to the Security Trustee, the Agent and the Insurer Representative that registrations have been made with the International Registry with respect to the International Interests, if any, created pursuant to such sublease and the assignments of International Interests, if any, created pursuant to the assignments;

(ix)   the Lessee shall, at least ten (10) days prior to such sublease taking effect, deliver to the Lessor, the Security Trustee, the Agent and the Insurer Representative proposed forms of (A) an acknowledgment by the sublessee recognizing all rights, title and interests of the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessor, the Security Trustee and the other Secured Parties under the Operative Documents, and (B) a written opinion of counsel in the country of citizenship or incorporation or formation of the relevant sublessee confirming that all steps necessary to protect the rights, title and interests of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents (including, without limitation, registration of all interests, assignments and subordinations with the International Registry) have been taken or will be taken in a manner reasonably satisfactory to the Secured Parties, each in form and substance reasonably satisfactory to the Lessor, the Agent, the Insurer Representative and the Security Trustee, and on or prior to such sublease taking effect, deliver to the Lessor, the Insurer Representative, the Agent and the Security Trustee executed copies of such documents;

(x)     the Lessee shall promptly reimburse the Lessor, the Security Trustee or any other Secured Party for any reasonable costs and expenses (including attorneys' fees and expenses) incurred by them in connection with such sublease or any related re-registration; and

(xi)    the proposed sublessee must be solvent.

**7.6     Special Operation and Possession Covenants**

In addition to the foregoing requirements, the Lessee covenants and agrees as follows:

(a)     **Restricted Use of Aircraft**

No Aircraft, Engine or Part shall, without the prior written consent of the Lessor, the Security Trustee, the Agent and the Insurer Representative, (whether, directly or under a Dry Lease, Wet Lease, Charter, blocked-space or other arrangement) be:

(i)     flown to, from or within, or otherwise operated or used to, from or within, any Restricted Country if to do so would breach any Applicable Law (including Sanctions) or operated (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under, the laws of, or whose principal place of business or principal place of aircraft operations is located in, any Restricted Country;

(ii)    principally used in, or operated or used (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under the laws of, or whose principal place of business or principal place of aircraft operations is located in, a Restricted Country;

(iii)   "primarily based" in one or more Restricted Countries.  For purposes of this provision, **primarily based** shall mean that during any consecutive seven (7) day period, the aggregate amount of time spent on the ground by such Aircraft, such Engine or such Part, as applicable, in one or more Restricted Countries shall exceed 15% of the total amount of time spent on the ground during such seven (7) day period, provided that the limitation imposed by this paragraph (iii) shall not prohibit, to the extent necessary, any nonrecurring maintenance or other nonrecurring repairs to be done with respect to an Aircraft in a Restricted Country;

(iv)    operated or used by or for any other Person except in accordance with Clauses 7.3, 7.4 and 7.5;

(v)     operated or used in contravention of any United States law, regulation or stated policy of general applicability restricting the operation or use of United

FILED DATE: 1/11/2023 2:57 PM   2023L000001

States-manufactured or financed aircraft and engines and such restrictions are applicable to the transactions contemplated hereby;

(vi)   operated in any manner which would cause any Obligor, any Secured Party or any Permitted Sub-Lessee to be in breach of Sanctions;

(vii)   flown or otherwise operated or used for any offensive or defensive military purpose;

(viii)   operated or used for any purpose for which it is not designed or reasonably suited in accordance with the Approved Maintenance Programme, Applicable Law and applicable material warranties or for any primary purpose or other than the commercial transport of passengers and cargo; or

(ix)   subleased (whether under a dry lease or wet lease) to any Person other than as provided in this Lease,

and the Lessee shall inform the Agent, the Insurer Representative and the Security Trustee in writing as soon as possible if any Obligor or any of its Subsidiaries or, upon its becoming aware, any of their respective joint ventures or any of their respective directors, officers or employees, becomes a Sanctioned Person.

(b)   **Waiver of Defences to Repossession**

None of the Lessee, nor any Permitted Sub-Lessee, nor anyone claiming through or under the Lessee or Permitted Sub-Lessee, shall set up, claim or seek to take advantage of any Applicable Laws now or hereafter in force in any jurisdiction in which any Aircraft or any portion thereof may be situated in order to prevent, hinder or delay any effort in accordance with this Lease on the part of the Lessor or any Secured Party to regain possession of any Aircraft or deregister or re-export any Aircraft or any portion thereof from any jurisdiction in which such Aircraft or any portion thereof may be situated following the occurrence of an Event of Default or Termination Event, and while the same shall be continuing, and the Lessee, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may be lawful so to do, the benefit of all such Applicable Laws (including, without limitation, any rights it may have, if any, to avail itself of the protection provided by the Convention of 1933 on the Unification of Certain Rules Relating to the Precautionary Arrest of Aircraft, or any other similar law, treaty or convention applicable to the Lessee or any Aircraft which would limit the ability of the Lessor or any Secured Party to repossess or otherwise recover any Aircraft following the occurrence and during the continuance of an Event of Default or Termination Event).

(c)   **Statement of Account of Landing Fees or Navigation Charges**

In the event that a Government Body of any country in which any Aircraft or the Lessee or any Permitted Sub-Lessee operates shall be permitted by Applicable Law to detain or seize, or shall adopt legislation which permits the detention or seizure of, an aircraft for unpaid landing fees or navigation charges without formal legal proceedings, the Lessee shall (and shall procure that any Permitted Sub-Lessee shall) promptly following demand by the Security Trustee or the Insurer Representative, deliver to the Security Trustee, the Agent and the Insurer Representative a letter, in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative, addressed to the airport or air navigation authority of such country authorizing such authority to release to the Security Trustee from time to time a statement of account of all such fees and charges then due in respect of all aircraft owned by or leased to the Lessee or any Permitted Sub-Lessee, as the case may be.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(d)     **Eurocontrol**

The Lessee shall and shall procure that the relevant Initial Permitted Sub-Lessee shall prior to the Delivery Date of an Aircraft, and the Lessee shall procure that any other Permitted Sub-Lessee shall, prior to the commencement of any sub-lease:

(i)     procure that the Lessee or any Permitted Sub-Lessee executes a Eurocontrol Letter and ensure that such letter is promptly sent to and acknowledged by Eurocontrol in accordance with Eurocontrol's advertised procedures;

(ii)    to the extent it has not already done so, promptly enter into a CEFA Agreement and provide the Security Trustee and the Insurer Representative with a copy certified by an officer of such company;

(iii)   if requested by the Security Trustee or the Insurer Representative, promptly obtain from Eurocontrol (via CEFA or otherwise) and provide to the Lessor, the Security Trustee and the Insurer Representative a general statement of account in relation to charges incurred by the Lessee and the Initial Permitted Sub-Lessee (and, if applicable, other Permitted Sub-Lessee); and

(iv)    if Eurocontrol's procedures relating to the availability to third parties of general statements of account are amended, take such actions as may be reasonably requested by the Security Trustee or Insurer Representative to ensure that the Security Trustee is able to obtain (or continue to obtain) such general statements of account in accordance with such procedures.

(e)     **EU ETS Laws**

It shall procure that any Permitted Sub-Lessee:

(i)     comply, and must procure that any other "aircraft operator" for the purposes of the EU ETS Laws complies, with all EU ETS Laws applicable to it/them or the Aircraft and, promptly on request from the Lessor, the Insurer Representative or the Security Trustee, supply to such person evidence reasonably satisfactory to it of such compliance;

(ii)    identify itself as "aircraft operator" to any EU ETS Authority whenever required under the EU ETS Laws or whenever the Lessor, the Insurer Representative or the Security Trustee may request.

(f)     **No Operation by the Secured Parties**

In no event shall any Secured Party be represented as carrying goods or passengers on any Aircraft or as being in any way connected or associated with any operation or carriage which may be undertaken by the Lessee or any Permitted Sub-Lessee or as having any operational interest in any Aircraft.

(g)     **Seizure of Aircraft**

The Lessee shall not do, shall procure that no Permitted Sub-Lessee shall do, and shall otherwise use its best efforts to prevent, any act which could reasonably be expected to result in any Aircraft, any Airframe or any Engine being arrested, confiscated, seized, taken in execution, attached, impounded, forfeited, detained in exercise or purported exercise of any registered or possessory lien or other claim or otherwise taken from the possession of the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessee or any Permitted Sub-Lessee, and if any such arrest, confiscation, seizure, execution, taking, attachment, impoundment, forfeiture, detention or other loss of possession occurs, the Lessee shall give Security Trustee, the Lessor, the Agent and the Insurer Representative immediate notice thereof and shall forthwith procure the prompt release of such Aircraft, such Airframe or such Engine.

(h)   **Credit for Maintenance**

The Lessee shall not pledge and shall procure that no Permitted Sub-Lessee shall pledge the credit of any Secured Party for any maintenance, service, repairs, overhauls of, or modifications to, or changes or alterations in, or additions to, any Aircraft, any Airframe, any Engine or any Part.

(i)   **Notice of Suspension**

The Lessee shall give the Lessor, the Security Trustee, the Agent and the Insurer Representative immediate written notice of any action being taken by the management of any Lessee Obligor relating to any general suspension of payment proceedings under any Applicable Law.

(j)   **Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under Clause 10 and should any such claim be paid, shall procure that immediate action is taken either (A) to increase any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty or (B) to obtain "contingent War Risk Insurance" acceptable to the Issuer Representative and the Security Trustee for the express benefit of the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee so that their financial interests in each Aircraft shall at all times be fully insured for the period covered by that War Risk Insurance, notwithstanding any annual aggregate limit or sublimit of liability.

(k)   **Inspection**

At all reasonable times and (except during the continuance of a Default, a Termination Event or an Event of Default) upon reasonable notice to the Lessee each of the Insurer Representative and the Agent may, no more frequently than once per calendar year each, require the Lessee to allow it and its authorised representatives to inspect any Aircraft, any Engine or any Part and the Manuals and Technical Records relating thereto and to the registration thereof and copy or make extracts from the books and records of the Lessee and any Permitted Sub-Lessee relative thereto and may discuss the Lessee's and any Permitted Sub-Lessee business or financial affairs with any of the Lessee's or Permitted Sub-Lessee officials, auditors or officers as may be required for the foregoing and, to the extent available, make any inspection reports available to the Agent, provided that, unless a Termination Event or an Event of Default has occurred and is continuing:

(i)   any such inspection shall be a visual, walk-around inspection which may include going on board such Aircraft, subject to the Permitted Sub-Lessee's limitations for reasons of safety or insurance coverage, but shall not include opening or removing any panels, bays or engine or avionic components of such Aircraft, unless such

Aircraft is, on the date of such inspection, undergoing a maintenance visit, in which case such panels, bays or engine or avionic components as are open or removed from such Aircraft on such date may be inspected; and

(ii)     any such inspection or examination shall not unreasonably delay or interrupt or cause any obstruction in the Lessee's maintenance and operation of such Aircraft.

(l)     None of the Lessor, the Security Trustee, the Agent, the Lenders or the Insurer Representative (i) shall have any duty to make any such inspection or (ii) shall incur any liability or obligation by reason of making or not making any such inspection, except as provided in this Clause 7.7.  So long as no Termination Event or Event of Default has occurred and is continuing, the reasonable cost of one such inspection initiated by the Insurer Representative each calendar year shall be paid by the Lessee.  The cost of any inspection initiated by the Agent shall, unless the Insurer Representative also participates in such inspection and agrees that such inspection constitutes its one annual inspection for that calendar year, be for the account of the Agent only.  The Lessee shall pay the cost of all such inspections during the continuance of a Termination Event or an Event of Default.  The cost of other inspections shall be paid by the party requesting such inspection, unless such inspection reveals a material breach of the obligations hereunder to maintain each Aircraft and the associated Manuals and Technical Records, in which case the cost of such inspection shall be borne by the Lessee.  Upon the request of the Lessor, the Insurer Representative or the Agent, the Lessee shall promptly notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of the major phase checks ("C" check or higher and any structural inspection) then scheduled on any Aircraft for the six-month period following such request.

## 7.7     Information Concerning the Aircraft and Engines

The Lessee shall at its own cost and expense promptly provide the Lessor, the Agent, the Lenders, the Insurer Representative and the Security Trustee with such information (to the extent required by this Lease, any Operative Document or maintained by the Lessee in accordance with its standard fleet procedures) regarding the registration, location, operation, use, insurance, maintenance and condition of each Aircraft and its associated Engines, including all Parts to the extent practicable, as the Lessor, the Agent, the Lenders, the Insurer Representative or the Security Trustee may from time to time reasonably require.

## 7.8     Substitution of Engines

(a)     So long as no Termination Event or Event of Default shall have occurred and be continuing (unless such Termination Event or Event of Default relates to the Engine being substituted), the Lessee may (and may permit any Permitted Sub-Lessee to) at any time, with contemporaneous notice to the Lessor, the Agent, the Lenders, the Insurer Representative and the Security Trustee, duly convey or cause to be conveyed to the Lessor as a substitute for an Engine title to another engine of the same manufacturer and model, as such Engine which satisfies the conditions set forth in the definition of "Replacement Engine", provided that all engines installed on any Airframe shall be of compatible make and model, free and clear of all Liens other than Permitted Liens and shall have a value and remaining useful life and utility at least equal to, and being in as good operating condition and state of maintenance as, the Engine to be replaced thereby, assuming such Engine was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to such replacement.  Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(i)     furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor, the Agent and the Security Trustee with respect to such Replacement Engine;

(ii)    cause a Lease Supplement, in form and substance reasonably satisfactory to the Lessor, the Insurer Representative, the Agent and the Security Trustee subjecting such Replacement Engine to this Lease to be duly executed by the Lessor and the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry;

(iii)   furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such replacement engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor may reasonably request;

(iv)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) reasonably satisfactory to the Lessor, the Security Trustee and the Insurer Representative certifying that such engine has value and remaining useful life at least equal to, and is in as good operating condition (as the Engine being substituted, assuming such Engine was in the condition and state of repair required by the terms hereof immediately prior to such substitution);

(v)     cause amendments to the relevant Aircraft Mortgage and any Security Document, in form and substance reasonably satisfactory to the Insurer Representative, the Agent and the Security Trustee subjecting such replacement engine to the relevant Aircraft Mortgage and the relevant Security Documents to be duly executed by the Lessor, Lessee or Permitted Sub-Lessee (as applicable) and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or the jurisdiction of incorporation or formation of the Lessor, Lessee or Permitted Sub-Lessee as applicable;

(vi)    cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to clause 6 of the Participation Agreement);

(vii)   furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative, the Agent and Security Trustee regarding the perfection of the Lien of any amended Security Document and relevant Aircraft Mortgage with respect to such Replacement Engine, in form and substance reasonably satisfactory to the Security Trustee, the Agent and the Insurer Representative (addressed to the Security Trustee, the Insurer Representative, the Lenders and the Agent); and

(viii)  affix a nameplate on such replacement engine in accordance with Clause 8.5.

(b)     Upon full compliance by the Lessee with the terms of this Clause 7.8, the Lessor will transfer or cause to be transferred, at the Lessee's sole cost and expense, to or upon the order of the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it)  all of the Lessor's right, title and interest, if any, in and to each replaced Engine with respect to which such substitution occurred by an appropriate instrument, signed by the Security Trustee, releasing such Engine from any Lien

FILED DATE: 1/11/2023 2:57 PM   2023L000001

of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer. For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Engine" as defined herein and shall be deemed part of the same Aircraft as was the Engine replaced thereby. No substitution with respect to an Engine under the circumstances contemplated by the terms of this Clause 7.8 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

**7.9    Annual Survey**

(a)     Upon written request, but no more frequently than once each calendar year for each Aircraft any one of the Security Trustee, the Agent, the Insurer Representative or their authorized representative (unless an Event of Default has occurred and is continuing in which case no such limitation shall apply), may request a technical report about the related Airframe, Engines and Manuals and Technical Records in connection with such Airframe and each such Engine, performed at an Approved Maintenance Facility in connection with the most recently completed (i) airworthiness inspection, or heavy maintenance check (in the case of an Airframe), (ii) heavy maintenance visit and any shop visit (in the case of each such Engine), and (iii) overhaul or reconditioning (in the case of any Part, appurtenance or system in respect of such Aircraft or each such Engine not covered by clauses (i) and (ii) preceding).

(b)     Such report shall be at the Lessee's expense and shall contain sufficient detail so as to enable the Security Trustee, the Agent and the Insurer Representative to determine the Lessee's compliance with the terms of this Lease and the general repair, condition, maintenance, overhaul and time-before-overhaul status of such Airframe and each such Engine or Part. If any such report is prepared at the request of the Security Trustee, the Security Trustee shall promptly provide a copy to the Agent and the Insurer Representative.

**7.10   Engine power by the hour support arrangements**

If at any time the Lessee or a Permitted Sub-lessee enters into or receives the benefit of a power by the hour (or equivalent) support arrangement relating to the Engines with the Engine Manufacturer, the Lessee shall use all reasonable endeavours to procure that such benefit is promptly assigned to the Security Trustee (each such assignment, an **Engine PBH Security Assignment**).

**8.     REPLACEMENT; TEMPORARY INSTALLATION; POOLING; ALTERATIONS, MODIFICATIONS AND ADDITIONS; ETC**

**8.1    Replacement of Parts**

(a)     The Lessee, at its own expense, will promptly replace or cause to be replaced all Parts that may from time to time be incorporated or installed in or attached to any Airframe or any Engine and that may from time to time be defective and not economically repairable, become time-expired or due for replacement or worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever.

(b)     In addition, the Lessee (or any Permitted Sub-Lessee) may, at its own expense, remove in the ordinary course of maintenance, service, repair, overhaul or testing, any Part, whether or not time-expired, due for replacement, worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use, provided, however, that the Lessee will, at its own cost and expense, replace (or cause to be replaced) such Part as promptly as practicable.

FILED DATE: 1/11/2023 2:57 PM    2023L000001

(c)     Each replacement Part shall be free and clear of all Liens (except Permitted Liens) and except as permitted by Clause 8.3, shall be in at least as good operating condition as, and shall have value, modification status and performance characteristics at least equal to, or, if applicable, comparable to, the Part replaced assuming such replaced Part was in the condition and repair required to be maintained by the terms hereof.

(d)     Each Part at any time removed from any Airframe or each Part removed from any Engine shall remain the property of the Lessor, no matter where located, until such time as such Part shall be replaced by a Part that has been incorporated or installed in or attached to the Airframe from which such Part was removed or, as the case may be, an Engine and that meets the requirements for a replacement Part specified above and shall be subject to the Lien of the relevant Aircraft Mortgage.

(e)     Immediately upon any replacement Part becoming incorporated or installed in or attached to an Airframe or, as the case may be, an Engine as above provided and title thereto being vested in the Lessor free and clear of all Liens (except Permitted Liens), without further act:

(i)     title to the replaced Part shall thereupon vest in the Lessee or its Approved Nominee and shall no longer be deemed a Part hereunder; and

(ii)    such replacement Part shall become subject to this Lease and be deemed part of such Airframe or, as the case may be, such Engine for all purposes hereof to the same extent as the Part originally incorporated or installed in or attached to such Airframe or, as the case may be, such Engine.

## 8.2     Temporary Installation of Parts

The Lessee may install or permit the installation of any part on any Airframe or Engine by way of substitution, replacement, renewal or mandatory modification notwithstanding that such installation is not in accordance with Clause 8.1 in the case of a part if:

(a)     there shall not have been available to the Lessee at the time and in the place that such part was required to be installed on such Airframe or, as the case may be, such Engine a substitute or replacement Part complying with the requirements of Clause 8.1;

(b)     it would have resulted in a disruption of the operation of the relevant Aircraft and/or the business of the Lessee to have grounded such Aircraft and/or to have permitted the relevant Part to continue to be unserviceable or unrepaired until such time as an part complying with the requirements of Clause 8.1 became available for installation on such Airframe or such Engine; and

(c)     as soon as practicable, but in any event within one hundred and eighty (180) days, the Lessee shall cause any such part not complying with the requirements of Clause 8.1 to be removed and replaced or substituted by a part complying with the requirements of Clause 8.1.

## 8.3     Pooling of Parts

Any Part removed from any Airframe or any Engine may be subjected by the Lessee or permitted by the Lessee to be subjected to a normal pooling arrangement customary in the international airline industry entered into in the ordinary course of the Lessee's (or, while the relevant Aircraft is leased by the Lessee to the Initial Permitted Sub-Lessee pursuant to the Initial Permitted Sub-Lease, the Initial Permitted Sub-Lessee's) business, provided, that the part replacing such removed Part shall be incorporated or installed in or attached to such Airframe or such Engine in accordance with Clause 8.1 as promptly as possible after the removal of such removed Part.    In addition, any

FILED DATE: 1/11/2023 2:57 PM   2023L000001

replacement part when incorporated or installed in or attached to any Airframe or any Engine in accordance with Clause 8.1 may be owned by another air carrier subject to such a normal pooling arrangement, provided that the Lessee, at its own cost and expense, as soon as practicable, shall either (a) cause title to such replacement part to vest in the Lessor in accordance with Clause 8.1 by the Lessee acquiring title (or procuring acquisition of the title) thereto for the benefit of the Lessor free and clear of all Liens (other than Permitted Liens) and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement or (b) replace such replacement Part by incorporating or installing in or attaching to such Airframe or such Engine a further replacement Part owned by the Lessee (or such Permitted Sub-Lessee) free and clear of all Liens (other than Permitted Liens) and by causing title to such further replacement Part to vest in the Lessor in accordance with Clause 8.1 and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement.

**8.4     Alterations, Modifications and Additions**

(a)     The Lessee, at its own expense, will promptly make (or cause to be made) such alterations and modifications in and additions to any Airframe or any Engine as may be reasonably required from time to time to comply with any Airworthiness Directives, Service Bulletins, other directive or modifications published (and of a mandatory nature) by the Manufacturer, the Engine Manufacturer and/or the Civil Aviation Authority in accordance with the terms of this Lease, provided that the Lessee may in good faith diligently contest the validity or application of any such Airworthiness Directive, Service Bulletin, directive or modification in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of adversely affecting the value of any Aircraft, the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder.

(b)     In addition, the Lessee (or the Permitted Sub-Lessee), at its own expense, may from time to time make such alterations and modifications in and additions to any Airframe or any Engine as the Lessee (or Permitted Sub-Lessee) may deem desirable in the proper conduct of its business, including installation of additional buyer furnished equipment or removal of Parts that the Lessee (or Permitted Sub-Lessee) determines to be obsolete or no longer suitable or appropriate for use on such Airframe or such Engine, provided, however, that no such alteration, modification or addition shall materially diminish the value, utility, remaining useful life, performance or operational characteristics of such Airframe or such Engine, or impair the condition or airworthiness thereof, below the value, remaining useful life, performance or operational characteristics, condition or airworthiness thereof immediately prior to such alteration, modification or addition (assuming such Airframe or such Engine was then of the value, remaining useful life, performance or operational characteristics, condition or airworthiness required to be maintained by the terms of this Lease), provided, further, that the Lessee shall consult with the Manufacturer or the Engine Manufacturer, as applicable, the Insurer Representative and the Security Trustee prior to undertaking any material alteration or modification to any Aircraft. Without prejudice to the generality of the foregoing, the Lessor consents to the modification which includes installation of antennae, aerodynamic domes, wiring, structural attaching parts, mounts, receivers, wireless access points (WAP's), modems, controllers, switching equipment, display and sound reproduction equipment and all related hardware and software directly associated with the receipt and distribution of satellite or where applicable ground based internet signals and data into the Aircraft for passenger use, whether provided by ROW 44 or an alternative provider.  Title to all Parts incorporated or installed in or attached or added to any Aircraft as the result of such alteration, modification or addition, shall immediately vest in the Lessor free and clear of all Liens (except Permitted Liens) and become subject to this Lease, without the necessity for any further act of transfer, document or notice.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     Notwithstanding Clause 8.1 and the foregoing provisions of this Clause 8.4 and provided that no Termination Event  or Event of Default shall have occurred and is continuing, the Lessor agrees that the Lessee or any Permitted Sub-Lessee may, at any time during the Term in respect of any Aircraft, remove or suffer to be removed any Part (including buyer furnished equipment) from such Aircraft that:

(i)     is in addition to, and not in replacement of or substitution for, any Part originally incorporated or installed in or attached to the related Airframe or Engine at the time of the Delivery of such Aircraft hereunder or any Part in replacement of or substitution for any such Part;

(ii)    is not required to be incorporated or installed in or attached or added to the related Airframe or Engine pursuant to the terms of Clause 7 or this Clause 8 or in order to maintain insurance required by Clause 10; or

(iii)   can be removed from the related Airframe or Engine without causing damage to such Airframe or such Engine or diminishing or impairing in any material respect the value, utility, remaining useful life, performance or operational characteristics, condition or airworthiness that such Airframe or such Engine would have had at such time had such removal not occurred.

(d)     Upon the removal by the Lessee (or any Permitted Sub-Lessee) of any Part as provided in and permitted by this Clause 8.4, title thereto shall, without further act, vest in the Lessee or the Lessee's Approved Nominee, and such Part shall no longer be deemed part of the Airframe or Engine from which it was removed.  Notwithstanding the foregoing, any Part not removed by the Lessee (or any Permitted Sub-Lessee) as above provided prior to the return of the relevant Airframe or Engine to the Lessor hereunder shall become the property of the Lessor at the time of such return and become subject to the relevant Aircraft Mortgage and the relevant Security Agreement.

## 8.5     Nameplate and Other Markings

The Lessee shall affix and keep a metal nameplate having dimensions of not less than five inches by four inches in the cockpit of each Airframe adjacent to the airworthiness certificate therein and on each of the Engines bearing the inscription "THIS [AIRFRAME/ENGINE] IS OWNED BY AAA MAX 4 LIMITED AND LEASED TO TROLLFJORDEN LIMITED, IS FURTHER SUB-LEASED TO [NORWEGIAN AIR NORWAY AS][NORWEGIAN AIR SWEDEN AB] AND SUBJECT TO A MORTGAGE IN FAVOUR OF BANK OF UTAH, AS SECURITY TRUSTEE", or such other inscription as the Security Trustee or the Insurer Representative from time to time may reasonably request (such nameplate to be affixed within ten (10) days after the Delivery Date for such Airframe and such Engines, and the Lessee shall thereupon so advise the Lessor).  Except as provided above, the Lessee shall not allow the name or other indication of any other Person to be placed on any Airframe or any Engine, if such name or other indication could be interpreted as a claim of ownership or other interest therein; provided, that each Airframe, Engine and Part may be marked with the customary name, colours or insignia of the Lessee or the Permitted Sub-Lessee and/or any manufacturer(s) of such Airframe, Engines and Parts.

## 8.6     No Third Party Beneficiaries

It is expressly agreed that the Lessee's obligations with respect to maintenance under Clauses 7 and 8 are solely for the benefit of the Lessor and the Secured Parties and that the Lessee shall have no liability to any other Person with respect thereto, and that except for the Lessee's indemnification obligations with respect thereto contained in the Participation Agreement and the Lessor Indemnity Agreement which shall survive the termination of such documents in accordance with their

FILED DATE: 1/11/2023 2:57 PM   2023L000001

respective terms, the Lessee's obligations under Clauses 7 and 8 in respect of an Aircraft shall terminate upon termination of the leasing of an Aircraft to the Lessee pursuant to this Lease and the relevant Lease Supplement in accordance with the terms hereof.

**8.7**     **No Authorization to Contract for the Lessor**

Nothing contained in this Lease shall constitute any consent or request by the Lessor or any Secured Party express or implied, for the performance of any works or services or the furnishing of any materials or other property in respect of any Aircraft, any Engine or any Part thereof, nor as giving the Lessee any right, power or authority to contract for or permit the performance of any works or services or the furnishing of any materials or other property, in such fashion as would permit the making of any claim against the Lessor or any Secured Party in respect thereof or any claim that any Lien (other than Permitted Liens) based on the performance of such works or services or the furnishing of any such materials or other property is prior to the interests of the Lessor or any other Person in such Aircraft, such Engine or such Part thereof.

**8.8**     **No Rights of Retention**

The Lessee hereby waives any and all rights of retention which it may have or which at any time hereafter may be conferred upon it, by virtue of law or otherwise, related to any replacement of Parts, alterations, modifications or additions that the Lessee may make to any Airframe or any Engine.  The Lessee hereby expressly releases the Lessor and the Secured Parties from any and all obligations, whether present or future, to indemnify or reimburse the Lessee for any of the aforementioned replacements, alterations, modifications, improvements or additions.

**9.**     **LOSS, DESTRUCTION, REQUISITION, ETC**

**9.1**     **Event of Loss with Respect to an Aircraft**

(a)     Upon the occurrence of an Event of Loss with respect to an Aircraft or an Airframe and any related Engines and/or engines then installed thereon, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), which notice shall specify the actions the Lessee is taking with respect to such Event of Loss.  So long as no Default, Termination Event or Event of Default shall have occurred and be continuing, the Lessee may within forty-five (45) days after such occurrence, request permission from the Lessor to replace such Aircraft (or such Airframe and Engine(s), as applicable), upon terms and conditions acceptable to the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee in their absolute discretion, including compliance with such terms and requirements that would make such replacement aircraft (or such replacement airframe and engine(s), as applicable) (a **Replacement Aircraft**) eligible for financing supported by the Insurance Policy in the same amount as such replaced Aircraft (or such replaced Airframe and Engine(s), as applicable), it being agreed that if the Lessee does not request such permission within the relevant time period (or does not receive such permission within ten (10) days after such request), the Lessee will not be entitled to substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable).

(b)     Any such replacement airframe and/or replacement engines shall satisfy the conditions set forth in the definitions thereof and shall be free and clear of all Liens (other than Permitted Liens) and shall have a value, utility and remaining useful life at least equal to, and be in as good operating condition and state of maintenance as, the relevant Airframe and/or Engines being replaced (assuming such Airframe and/or Engines were of the value, utility and remaining useful life and in the condition and repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     The Lessee will not substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) hereunder unless such Replacement Aircraft (or replacement airframe and engine(s), as applicable) would be eligible for financing supported by the Insurance Policy, as determined by the Insurer Representative in its sole discretion.

(d)     It is expressly agreed that if any Basic Rent Payment Date for the affected Aircraft occurs at or after the date of such Event of Loss and prior to the payment of the Termination Value and any other Rent due in relation to such Aircraft, the Lessee shall pay to the Lessor on such Basic Rent Payment Date the amount equal to the Basic Rent which would have become due and payable in respect of such Aircraft on such Basic Rent Payment Date in accordance with the terms hereof had no Event of Loss so occurred.

(e)     Unless a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) are being substituted in the circumstances contemplated in the preceding clauses, the Term for the affected Aircraft shall end on a date no later than the earliest of (i) the date falling ninety (90) days after the occurrence of such Event of Loss and (ii) the Lessor or the Security Trustee receives insurance or requisition proceeds in respect thereof (the **Settlement Date**), and on such Settlement Date the Lessee shall pay to the Lessor an amount equal to the then applicable Termination Value for the affected Aircraft on such Settlement Date together with all accrued but unpaid Rent for the affected Aircraft to such Settlement Date and, without duplication, all other amounts then owing by the Lessee under the Operative Documents.

(f)     Upon full compliance by the Lessee with the terms of this Clause 9.1 the Lessor will (so long as no Event of Default shall have occurred and be continuing and subject to insurer's salvage rights, if any) transfer to, or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty, all of the Lessor's right, title and interest, if any, in and to the Aircraft with respect to which such Event of Loss occurred by an appropriate instrument, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Aircraft shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Aircraft" as defined herein.

## 9.2     Event of Loss with Respect to an Engine

(a)     Upon the occurrence of an Event of Loss with respect to an Engine under circumstances in which there has not occurred an Event of Loss with respect to the associated Airframe, the Lessee shall promptly and in any case within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), then within one hundred and twenty (120) days after the occurrence of such Event of Loss, the Lessee shall duly convey or cause to be conveyed to the Lessor and duly subject to the relevant Aircraft Mortgage and other relevant Security Documents, as replacement for such Engine with respect to which such Event of Loss occurred, title to a Replacement Engine (provided that all engines installed on such Airframe shall be of compatible make and model).

(b)     Such Replacement Engine shall be free and clear of all Liens (other than Permitted Liens) and having a value and remaining useful life at least equal to, and being in as good operating condition and state of maintenance as, the Engine with respect to which such Event of Loss occurred, assuming such Engine was of the value and remaining useful life and in the condition and state of repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss, but without regard to its point in the maintenance cycle.

(c)     Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(i)     furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor, the Agent and the Security Trustee with respect to such Replacement Engine;

(ii)    cause an amendment to the related Lease Supplement, in form and substance reasonably satisfactory to the Lessor, the Agent and the Security Trustee, subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or any other Relevant Jurisdiction;

(iii)   furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such Replacement Engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor and the Security Trustee may reasonably request;

(iv)    furnish the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) satisfactory to the Insurer Representative and the Security Trustee certifying that such engine has value and remaining useful life and it is in as good an operating condition as the Engine being substituted, assuming such Engine was in the condition and state of repair as required by the terms hereof immediately prior to such substitution, but without regard to its point in the maintenance cycle;

(v)     cause amendments to the relevant Aircraft Mortgage and other Security Documents, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such Replacement Engine to the relevant Aircraft Mortgage and Security Documents  to be duly executed by the Lessor and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry, the jurisdiction of incorporation or formation of the Lessor and the United States of America;

(vi)    cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessee, the Security Trustee and the Insurer Representative under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)   furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative, the Agent and the Security Trustee regarding the perfection of the Lien of the relevant Aircraft Mortgage and Security Documents with respect to such Replacement Engine addressed to the Security Trustee, the Insurer Representative and the Agent and in form and substance reasonably acceptable to the Security Trustee, the Agent and the Insurer Representative;

(viii)  affix a nameplate on such replacement engine in accordance with Clause 8.5;

(ix)    assign to the Lessor (for further assignment to the Security Trustee) all assignable and remaining engine warranties applicable to such Replacement Engine in a manner consistent with the relevant Engine Warranties Agreement.

(d)     Upon full compliance by the Lessee with the terms of this Clause 9.2 the Lessor will (so long as no Event of Default shall have occurred and be continuing and subject to insurer's salvage rights, if any) transfer to or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was

FILED DATE: 1/11/2023 2:57 PM   2023L000001

transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it), all of the Lessor's right, title and interest, if any, in and to the replaced Engine by an appropriate instrument, signed by the Security Trustee, releasing the replaced Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an **Engine** as defined herein.  No Event of Loss with respect to an Engine under the circumstances contemplated by the terms of this Clause 9.2 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

## 9.3     Application of Payments from Governmental Authorities or Others

Any payments (other than insurance proceeds from policies carried (or caused to be carried) by the Lessee the application of which is provided for in Clause 10 and other than proceeds of insurance policies carried by the Lessor or any Secured Party) received at any time by the Lessor or the Lessee from any Government Body or other Person with respect to an Event of Loss of any Aircraft or any Engine shall be paid over to the Security Trustee and applied, subject to Clause 9.6, in accordance with the terms of the Intercreditor Deed.

## 9.4     Requisition for Use of any Airframe and the Engines Installed Thereon

In the event of the requisition for use by any Government Body not constituting an Event of Loss of an Airframe and the Engines installed thereon during the relevant Term, the Lessee shall promptly notify the Lessor, the Security Trustee, the Insurer Representative and the Agent of such requisition, and all of the Lessee's obligations under this Lease shall continue to the extent such obligations are not restricted or curtailed by such requisition and to the same extent as if such requisition had not occurred (but the Lessee's obligations to pay Rent for the relevant Aircraft pursuant to Clause 3 and its obligations under Clause 10 shall not be reduced or excused by such requisition).  All payments (and any interest thereon) received by the Lessor or the Lessee for the use of such Airframe and Engines at any time shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied in accordance with the Intercreditor Deed.

## 9.5     Requisition for Use of an Engine Not Installed on an Airframe

If an Engine not then installed on an Airframe is requisitioned for use by any Government Body, the Lessee shall replace such Engine or cause it to be replaced by complying with the terms of Clause 9.2 hereof as if an Event of Loss had occurred with respect to such Engine, and (upon compliance by the Lessee as aforesaid) any payments received by the Lessor or the Lessee from with respect to such requisition shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, that if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied to the obligations of the Lessee hereunder as the Lessor shall direct and any excess, shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee.

## 9.6     Payments to the Lessee

Any amount referred to in this Clause 9 which is payable or creditable to the Lessee or any Permitted Sub-Lessee shall not be paid or credited to the Lessee or such Permitted Sub-Lessee or, if it has been previously paid to the Lessee or such Permitted Sub-Lessee, shall not be retained by the Lessee or such Permitted Sub-Lessee, if at the time of such payment or credit a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to, applied in

FILED DATE: 1/11/2023 2:57 PM   2023L000001

accordance with the terms of the Operative Documents and/or held by the Security Trustee as security for the obligations of the Lessee under this Lease and the Operative Documents and at such time as there shall not be continuing any Material Default, Termination Event or Event of Default such amount (together with interest thereon, if any), if then remaining, shall be paid or credited to the Lessee or the Permitted Sub-Lessee (as the case may be).

## 10.   INSURANCE

### 10.1   Aviation Third Party Legal Liability Insurance

Except to the extent provided in Clauses 10.3 and 10.5, on or before the Delivery Date for an Aircraft, and throughout the Term therefor and for a period extending to two years following the later of (a) the final Basic Rent Payment Date for such Aircraft and (b) the date such Aircraft is returned to the Lessor, the Lessee will carry or cause to be carried at its own expense with insurers of recognized standing in the international aviation industry which insurers shall be reasonably acceptable to the Lessor, the Security Trustee, the Agent and the Insurer Representative, airline liability insurance in respect of such Aircraft including war and allied perils, hi-jacking and other similar risks that are excluded from standard liability coverage to the extent that such insurance is (a) maintained by the Lessee or the Permitted Sub-Lessee with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (b) customarily obtained by carriers with comparable route structures flying similar aircraft or (c) generally required by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures in amounts customary for similar aircraft in the Lessee's fleet (but not less than seven hundred and fifty million Dollars (US$750,000,000) any one occurrence per each aircraft and subject to customary sub-limits for non-aviation coverage and aggregate limits for products liability and war risks coverages) and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet and of the type usually carried by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning and operating similar aircraft and engines, and which covers risks of a kind customarily insured against by such corporations which shall include general third party legal liability (including war and allied perils to the fullest extent available under good commercial practice), passenger liability, and property damage liability (including cargo, baggage and mail liability).  Any liability insurance carried in accordance with this Clause 10.1 and any policies taken out in substitution or replacement for any of such policies:

(a)      shall be amended to name the Security Trustee and each of the Lessor, the Lessor Parent, the Agent, the Security Trustee, the Lenders and the Insurer Representative as contract parties (collectively, the **Contract Parties**) and  each of the foregoing, the Lessee, each Participant and each of the Insurer Group and their respective successors, members, assigns, transferees, officers, directors, shareholders, agents, employees, servants, Affiliates and sub-contracts as additional insured (the **Additional Insureds**);

(b)      shall provide that in respect of the interests of the Lessor or any other Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that the Additional Insured so protected has not caused, contributed to or knowingly condoned the said act or omission);

(c)      shall provide that there shall be no recourse against the Lessor or any other Additional Insured for the payment of premiums under such policies and that the Aircraft Insurers shall waive any right of subrogation against the Additional Insureds; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(d)      shall provide that, if such insurance is cancelled for any reason whatsoever, or if any material change is made in such insurance that adversely affects the interest of the Lessor or any other Additional Insured, such cancellation or change shall not be effective as to the Lessor or any other Additional Insured for thirty (30) days (seven (7) days, or such other period as is then customarily obtainable in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers (if different from the Lessee's insurance broker) to the Lessee's appointed insurance broker.  The Lessee hereby covenants to cause the Lessee's or the Permitted Sub-Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

Each liability policy (a) shall be primary without right of contribution from any other insurance or reinsurance that is carried by any other Person to the extent that such other insurance or reinsurance provides it with contingent or excess liability insurance with respect to its interest as such in any Aircraft, (b) shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured, (c) shall waive any right of the Aircraft Insurer to any setoff, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Lessee, the Permitted Sub-Lessee, the Lessor or any other Additional Insured to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft) and (d) shall provide for worldwide coverage (except in relation to Excluded Countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk and related perils policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit.

**10.2     Aircraft Hull Insurance**

(a)      Except to the extent provided in Clauses 10.3 and 10.5, on or prior to the Delivery Date for each Aircraft and throughout the Term for each Aircraft (and, in the case of the termination of this Lease with respect to an Aircraft pursuant to Clause 14 hereof, at all times following such termination until the sale or other disposition of such Aircraft pursuant hereto) the Lessee shall maintain or cause to be maintained in full force and effect, at its own expense and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet, all-risk aircraft hull insurance covering such Aircraft, while flying and on the ground, including coverage of the Engines and Parts while temporarily removed from or not installed on such Aircraft and not replaced with similar components (with flight taxing and ingestion coverage), against loss or damage, of the type (but not necessarily the amount) usually insured against by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning or operating similar aircraft and engines on an agreed-value basis in a dollar amount not less than 120% of the aggregate of (i) all outstanding principal in respect of the relevant Loan in relation to such Aircraft and (ii) the maximum amount of interest payable during the applicable Interest Period (the **Threshold Value**), and all-risk insurance with respect to each Engine and Part while removed from an Aircraft, and, as to each Engine or Part not installed on an Airframe, not less than the fair market value of such Engine or Part.

(b)      The Lessee shall maintain or cause to be maintained in full force and effect war-risk and related perils insurance and hi-jacking and government confiscation insurance (on the basis LSW555D or the highest equivalent level of coverage available (including for confiscation by the Government of Registry)) in respect of each Aircraft on an agreed value basis for such Aircraft throughout each policy year, for not less than the amounts set forth in the preceding paragraph in respect of such Aircraft covering each of the following perils (i) insured by the Lessee or the Permitted Sub-Lessee, with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (ii) customarily insured by

FILED DATE: 1/11/2023 2:57 PM    2023L000001

air carriers with comparable route structures flying similar aircraft, and (iii) generally required to be insured by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures.

(c)   All policies and subsequent policies taken out in accordance with this Clause 10.2 will be issued by insurance companies or underwriters of recognized standing in the international aviation industry or re-insurance companies or underwriters of such standing and through internationally recognized aviation insurance brokers, all of which insurance companies, underwriters and insurance brokers shall be reasonably acceptable to the Lessor, the Security Trustee, the Agent and the Insurer Representative. In addition, all such policies and subsequent policies:

(i)   shall be denominated and payable in Dollars and shall be on an agreed value basis without the insurer's right to replace;

(ii)   shall name the Additional Insureds as additional insureds in respect of the legal liability insurances and the Security Trustee as the sole contract party and as loss payee in respect of hull claims that become payable on the basis of a total loss and provide that payment in respect of such claims shall be made to or to the order of the contract parties for application in accordance with the Operative Documents and in respect of all other hull claims the loss will be settled with such Persons as may be necessary to repair the relevant Airframe or Engine;

(iii)   shall provide that in respect of the interests of each Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that such Additional Insured has not caused, contributed to or knowingly condoned the said act or omission);

(iv)   shall provide that there shall be no recourse against the Lessor or any Additional Insured for the payment of premiums under such policies; and

(v)   shall provide that, if such insurance is cancelled for any reason whatsoever, or if any material change is made in such insurance which adversely affects the interests of any Additional Insured, such cancellation or change shall not be effective as to Additional Insureds for thirty (30) days (seven (7) days, or such other period as is then customarily imposed by in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers to the Lessee's appointed insurance broker. The Lessee hereby covenants to cause the Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Parties on behalf of all Additional Insureds.

(d)   The hull policy for each Aircraft:

(i)   shall waive any right of the Aircraft Insurer or any reinsurers to any set-off, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Additional Insureds or any other Person to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft);

(ii)   if separate hull all risks and war risks policies are arranged, shall contain a 50/50 claims funding clause acceptable to the Security Trustee, the Agent and the Insurer representative (which shall be AVS 103 or similar) in the event of a dispute as to which policy in respect of the hull insurances set forth in this Clause 10.2 shall pay in the event of a loss;

FILED DATE: 1/11/2023 2:57 PM    2023L000001

(iii)    shall provide for worldwide coverage (except for excluded countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit;

(iv)    shall have deductibles (not applicable in the case of an Event of Loss or war and allied perils insurance) standard in the  industry in respect of the same model aircraft, which are reasonably acceptable to the Insurer Representative, the Agent and the Security Trustee and in amounts which are no greater than seven hundred and fifty thousand dollars (US$750,000) and in any event such deductible shall not be greater than those which other international airlines of comparable standing (in the judgement of the Secured Parties' independent insurance advisor after consultation with the Lessee's broker of record) to the Lessee operating comparable aircraft are able to obtain in such market; and

(v)    shall provide in the event that an Aircraft is fitted with a leased engine, the agreed value of such Aircraft for the purposes of the insurances is automatically increased by the value of the leased engine.

(e)    The Lessee may procure endorsements to the relevant insurance policies required to be maintained pursuant to Clause 10 so as to incorporate the terms of AVN 67B (or any successor provision) unto such policies, in which event, to the extent that any provision of any such AVN 67B (or any successor provision) endorsement conflicts or is otherwise inconsistent with the requirements of this Clause 10, then (so long as it shall remain general industry practice to insure aircraft financed by financial institutions on the basis of such endorsement) such endorsement shall be deemed to satisfy the requirements of this Clause 10 to the extent covered by such endorsement.

(f)    As between the Lessor and the Lessee it is agreed that all insurance payments received under policies that the Lessee is required to maintain pursuant to this Clause 10.2, exclusive of any payments received in excess of the then applicable Threshold Value for an Aircraft, as the result of the occurrence of an Event of Loss with respect to an Airframe or an Engine related thereto will be applied, unless a replacement is effected in accordance with Clause 9.1 or 9.2 hereof, pursuant to the Intercreditor Deed.

(g)    As between the Lessor and the Lessee the insurance payment of any property damage or loss with respect to an Aircraft (i) that constitutes an Event of Loss, in excess of the then applicable Threshold Value for such Aircraft, shall be paid to the Lessee, and (ii) that does not constitute an Event of Loss with respect to the related Airframe or a related Engine, will be applied in payment (or to reimburse the Lessee), for repairs or for replacement property in accordance with the terms of Clauses 7 and 8, if not already paid for by the Lessee and any balance remaining after compliance with such Clauses with respect to such loss shall, subject as provided below, be paid to and retained by the Lessee or in accordance with clause 9.3(b) of the Intercreditor Deed.

(h)    Notwithstanding any provision in this Clause 10.2, any amount referred to in this Clause 10.2 which is payable to the Lessee, shall not be paid to the Lessee or, if it has been previously paid directly to the Lessee, shall not be retained by the Lessee, if at the time of such payment a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to and held by the Security Trustee as security for the obligations of the Lessee under this Lease and, during the continuance of such Material Default, Termination Event or Event of Default, shall be applied to the satisfaction of the then due and payable obligations of the Lessee under this Lease, and, at such time as there

FILED DATE: 1/11/2023 2:57 PM   2023L000001

shall not be continuing any such Material Default, Termination Event or Event of Default, the remainder of such amount shall be paid to the Lessee.

**10.3     Default**

If the Lessee shall default in effecting or maintaining any insurance or if any insurance shall, for any cause become void, the Lessor, the Security Trustee or any other Additional Insured may (but without any obligation to do so and without prejudice to the Lessor's other rights and remedies hereunder) effect and keep up such insurance at the cost of the Lessee and the Lessee will forthwith upon demand repay to the Lessor, the Security Trustee or any other Additional Insured all premiums and other moneys from time to time paid by the Lessor, the Security Trustee or any other Additional Insured in respect of such insurance (which amount shall be certified by the Lessor, the Security Trustee or such other Additional Insured).

**10.4     Certificates**

On or before the Delivery Date for each Aircraft and promptly after the issuance or modification or renewal thereof (but in any event prior to the expiration of any insurance or reinsurance then to be renewed) in form substantially similar to those given prior to or on such Delivery Date, the Lessee will furnish to the Lessor, the Insurer Representative, the Agent and Security Trustee (with sufficient copies for all Lenders):

(a)      a certificate of the Lessee's insurance broker or an authorized representative of the Aircraft Insurer (and, if applicable, Aircraft Reinsurer and any relevant insurance and/or reinsurance broker) describing in reasonable detail the Aircraft Insurances and Aircraft Reinsurances then carried and maintained on such Aircraft, containing an endorsement reflecting the Aircraft Insurances and Aircraft Reinsurances for such Aircraft required hereunder and:

(i)      certifying the date and time of commencement and expiry of each insurance or reinsurance policy;

(ii)      specifying the deductible amounts and levels of co-insurance, if any, for each type of loss; and

(b)      a letter of undertaking from the Lessee's appointed insurance broker with regard to the Aircraft Insurances and Aircraft Reinsurances for such Aircraft respectively required hereunder in respect of such Aircraft (in the case of each renewal, in substantially the same form as delivered on the relevant Delivery Date).

**10.5     Notice of Variations**

If any material variation is made to the terms of any of the Aircraft Insurances or Aircraft Reinsurances the Lessee shall immediately give notice to the Lessor, the Insurer Representative, the Security Trustee, the Agent and the Lenders of such variation and shall provide such further details in relation thereto as the Lessor, the Insurer Representative, the Security Trustee, the Agent or any Lender may reasonably require.

**10.6     Premiums**

The Lessee shall pay or cause to be paid the premiums (or installments thereof) as required by the terms of such policies and produce to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request receipts in respect of payment of such premiums (or installments thereof) or other evidence of such payments as the Lessor, the Insurer Representative, the Security Trustee or the Agent may reasonably request.  In the case of renewals of such policies, the Lessee

FILED DATE: 1/11/2023 2:57 PM   2023L000001

shall cause to be provided to the Lessor, the Insurer Representative, the Security Trustee and the Agent evidence of such renewal as soon as practicable and in any event within seven (7) days after the date of renewal and shall give the Lessor, the Insurer Representative, the Security Trustee and the Agent notice of such intended renewal no later than the day before such date and the Lessee shall pay the renewal and other premiums (and installments thereof) as required by the terms of such policies.

**10.7    Insurance Policies**

In the absence of an unqualified opinion or certificate addressed to the Lessor, the Insurer Representative, the Security Trustee and the Agent from the Lessee's or the Permitted Sub-Lessee's insurance brokers (and, if applicable, reinsurance brokers), the Lessor and each Secured Party shall be entitled to full reliance, without exception, that the certificates of insurance (and, if applicable, certificates of reinsurance) delivered pursuant to this Clause 10 do not conflict with the terms and conditions of the underlying insurance (and, if applicable, reinsurance) policies.  Copies of the policies and endorsements and riders amendatory thereof (excluding premium information) with respect to the Aircraft Insurances and any Aircraft Reinsurances, required under this Clause 10 shall be made available to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request for inspection by their respective representatives at the offices of the Lessee or the Permitted Sub-Lessee or the Lessee's or the Permitted Sub-Lessee's insurance brokers during normal business hours.

**10.8    Reinsurance**

Unless the Aircraft Insurances maintained by the Lessee in accordance with the provisions in this Clause 10 are maintained with Lloyd's of London or in other internationally recognized aviation insurance markets with insurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee and the Insurer Representative, then the Lessee shall procure that the insurers shall maintain reinsurance in all respects satisfactory to the Security Trustee and the Insurer Representative covering identical subject matter and risk for an amount (which shall not be less than ninety five percent (95%) of the relevant coverage amount) with Lloyd's of London or in other internationally recognized aviation insurance markets with reinsurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee, the Agent and the Insurer Representative. Any reinsurance shall:

(a)    be on the same terms as the original insurances;

(b)    contain a "cut-through" clause satisfactory to the Security Trustee, the Agent and the Insurer Representative providing that, in the event of any claim arising under the reinsurance, the reinsurers thereunder shall, in lieu of payment to the original insurer or its successors in interest and assigns, pay to or to the order of the Security Trustee as loss payee that portion of any loss due for which the reinsurers thereunder would but for this cut-through clause be liable to pay the original insurer or its successors in interest and assigns, it being understood and agreed (and the Lessee agreeing to obtain the agreement of its original insurers for the benefit of the Lessor, the Agent, the Security Trustee, the Insurer Representative, the other Secured Parties and the reinsurers) that any such payment by the reinsurers thereunder shall fully discharge and release the original insurers from any and all further liability in connection therewith; and

(c)    provide for payment to be made directly to or to the order of the Security Trustee as loss payee as provided herein notwithstanding (x) any bankruptcy, insolvency, liquidation or dissolution of the original insurer(s), and/or (y) that the original insurer(s) have made no payment under the primary insurance policies.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**10.9     Location**

Except as otherwise expressly permitted herein, the Lessee shall not at any time do or suffer to be done to any Aircraft, any Engine or any Part thereof or the premises on which the same may be located, or bring or keep, or permit to be brought or kept, anything therein or thereon or operate any Aircraft, any Engine or any Part thereof or take the same to or keep the same in, or permit the same to be taken to or kept in, a place where or whereby any insurance required hereunder may be rendered void or voidable or no longer in force or coverage thereunder shall be limited, without first arranging at its own expense such additional Aircraft Insurance and/or Aircraft Reinsurance coverage as shall be necessary to avoid such result, such additional insurance to be in form and substance satisfactory to the Lessor, the Security Trustee, the Agent and the Insurer Representative. The Lessee will pay or cause to be paid all additional insurance premiums required on account of the additional risk caused by the use to which any Aircraft is put as aforesaid.

**10.10    Notice from the Lessee**

The Lessee will forthwith notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of any event (including but not limited to an occurrence) which will or may give rise to a claim under the Aircraft Insurances required in Clause 10.2, in excess of an amount in any currency equal to three million Dollars (US$3,000,000) (or its equivalent in any other currency) in respect of an Airframe and one million Dollars (US$1,000,000) (or its equivalent in any other currency) in respect of an Engine, but nothing in this Clause 10.10 shall prejudice the payment provisions of Clause 10.2.  Upon completion of the repairs in respect of a loss in which insurers have paid proceeds towards such repair, the Lessee shall deliver to the Lessor, the Insurer Representative, the Security Trustee and the Agent an engineer's certificate certifying that such repairs have been completed in accordance with the manufacturer's recommended procedures.

**10.11    Certain Undertakings in Respect of the Aircraft Insurances**

(a)     The Lessee shall not and shall procure that no Permitted Sub-Lessee shall:

(i)      make any modification to the Aircraft Insurances or any Aircraft Reinsurances required hereunder which is materially adverse to the interest of the Lessor, the Insurer Representative, the Security Trustee, any Secured Party or any other Additional Insured;

(ii)     do, or omit to do, or permit to be done, or left undone anything whereby any required Aircraft Insurance or any Aircraft Reinsurance would or might reasonably be expected to be rendered, in whole or in part, invalid or unenforceable and, without prejudice to the foregoing, not use or keep or permit any Aircraft or any Engine or any Part thereof, to be used or kept for any purpose, in any manner or in any place not covered by required Aircraft Insurances or any Aircraft Reinsurances (except as otherwise expressly permitted herein); and

(iii)    discriminate against any Aircraft relative to other aircraft of the same or comparable model within the Lessee's or the Permitted Sub-Lessee's fleet as to the coverage of the Aircraft Insurances and Aircraft Reinsurances required under this Clause 10.

(b)     The Lessee shall as soon as practicable, but in no event later than 48 hours, upon receipt of notice of cancellation of the war risks and related perils insurance due to armed hostilities in the area where any Aircraft may then be located or scheduled to operate, remove any Aircraft or cause any Aircraft to be removed to the United Kingdom  (or such other location at which such Aircraft shall remain covered by war risks and related perils insurance) and shall cause such Aircraft to remain in such location until such war risks and related perils insurance is reinstated and compliance herewith shall cure any related Termination Event or

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Event of Default under Clause 13(c), provided, however, that the Lessee need not comply with the provisions of this paragraph (b) if to do so would cause the Lessee to breach any other obligation contained herein.

(c)     The Lessee shall be responsible for the payment of any applicable deductibles or costs of any Aircraft Insurances and any Aircraft Reinsurances.

**10.12    Reimbursement**

The Lessee shall reimburse the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative, as the case may be, on demand for the amount of any premiums or premium installments which such party may pay pursuant to this Clause 10 together with interest thereon, for the period from and including the date of such payment by such party to but excluding the date on which the same is paid in full by the Lessee at the applicable Post-Default Rate.

**10.13    Change in Industry Practice; Additional Requirements**

In the event that there is a material change in the generally accepted industry-wide practice with regard to the insurance of aircraft (whether relating to all or any of the types of insurances required to be effected under the foregoing provisions of this Clause 10) such that the insurances required pursuant to the provisions of this Clause 10 are insufficient to protect the interests of the Lessor, the Insurer Representative, the Agent the Security Trustee or any of the other Additional Insureds hereunder, the Insurer Representative, the Agent and the Security Trustee shall, to the extent reasonably practicable, consult with the Lessee, and the insurance requirements set forth in this Clause 10 shall be varied at the request of the Insurer Representative or the Security Trustee so as to include such additional or varied requirements as may be reasonably necessary to ensure that the insurances and reinsurances as so varied shall provide comparable protection to that which it would have provided if such change in the generally accepted industry-wide practice had not occurred.

**10.14    Compliance with Legal Requirements**

In addition to the foregoing provisions of this Clause 10 the Lessee shall and shall procure that any Permitted Sub-Lessee shall comply with all legal requirements as to the insurance of any Aircraft or any Engine which may from time to time be imposed by the Applicable Laws of any Aircraft's registration or of any jurisdiction to or from or over which any Aircraft or any Engine shall be flown or in which the same shall be located.

**10.15    Additional Insurance**

The Lessee shall have the right to carry insurance in excess of the amounts required hereunder and additional and separate insurance for its own benefit at its own expense; provided that, no such insurance shall result in a duplicate payment on a loss, or shall impair in any way (whether or not material) the rights of the Lessor, the Insurer Representative, the Security Trustee, and other Secured Party or any other Additional Insured under this Lease and the Operative Documents.  Proceeds of such insurance shall be payable directly to the Lessee.

**10.16    Additional Terms of Insurance**

The Lessee agrees to ensure that the insurance and reinsurance policies in respect of all Aircraft Insurances and Aircraft Reinsurances referred to in Clauses 10.1 and 10.2 above shall at all times be underwritten in full.

FILED DATE: 1/11/2023 2:57 PM  2023L000001

**10.17    Self Insurance**

Except for the deductibles permitted by Clause 10.2 hereof or otherwise permitted by the Lessor, the Security Trustee and the Insurer Representative, the Lessee shall not be permitted (and shall not permit any Permitted Sub-Lessee) to self-insure against any of the risks required to be covered by the insurance described in this Clause 10.

**10.18    Date Recognition Exclusion**

If the Aircraft Insurances and/or Aircraft Reinsurances are subject to any exclusion relating to date recognition, the Lessee shall obtain write-backs covering such exclusions to the fullest extent available in the international aviation insurance markets and in accordance with good and prudent international aviation insurance practice.

**10.19    Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance and/or War Risk Reinsurances required to be maintained under this Clause 10 and shall take immediate action to restore any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty.

**11.    ABSOLUTE OBLIGATIONS**

(a)    This Lease is a net lease, and it is intended that the Lessee shall pay or cause to be paid all costs, charges, fees (including Eurocontrol fees), assessments, expenses, withholdings and Taxes of every character whether foreseen or unforeseen, ordinary or extraordinary, incurred in connection with or arising out of the use, operation, maintenance, repair, modification, alteration, replacement and leasing of any Aircraft, including the costs, expenses and Taxes and similar levies set forth in the Participation Agreement.  The Lessee's obligation to pay all Rent and to perform all other obligations hereunder is absolute and unconditional and shall not be affected or reduced by any circumstances or for any reason, including:

(i)    any setoff, counterclaim, recoupment, defense or other right which the Lessee may have against the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party, the Manufacturer, the Engine Manufacturer or any Person providing services with respect to any Aircraft, or any other Person, for any reason whatsoever (whether in connection with the transactions contemplated hereby or otherwise), including any breach by the Lessor of its warranties contained herein or in the other Operative Documents;

(ii)    any defect in the title, airworthiness, eligibility of registration under any Applicable Law, condition, design, operation, or fitness for use of, or any damage to or loss or destruction of, any Aircraft or any portion thereof (subject to the provisions of Clause 9 hereof), any interruption or cessation in the use of or possession thereof by or availability to the Lessee for any reason whatsoever, whether arising out of or related to an act or omission of the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, Manufacturer, Engine Manufacturer or any other Person;

(iii)    any Lien with respect to any Aircraft or any portion thereof;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(iv)    the invalidity or unenforceability or lack of due authorization or other infirmity of this Lease or any absence of right, power or authority of any Person to enter into any Operative Document;

(v)    any Taxes;

(vi)    any change, waiver, extension, indulgence or liability or other act or omission in respect of any liability or obligation of the Lessor, the Security Trustee, the Lenders, the Agent or the Insurer Representative or any other Secured Party;

(vii)    any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation, receivership or other like proceeding relating to the Lessee, the Lessor, the Lessor Parent, the Trustee or the Security Trustee or any disaffirmance, rejection or other action taken with respect to this Lease or any other Operative Document by the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party or any other Person, or by any court, in any such proceeding;

(viii)    the Lessee at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of sovereignty or otherwise, which immunity, if any, the Lessee hereby expressly waives;

(ix)    any restrictions applicable to the Lessee on the transfer or conversion of currency; or

(x)    any other circumstances or happening of any nature whatsoever, whether or not similar to any of the foregoing; it being the express intention of the Lessor and the Lessee that all Rent payable hereunder shall be payable in all events, unless the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease or the other Operative Documents.

(b)    This Lease shall not, except as expressly set forth herein, be cancellable by the Lessee and, except as expressly set forth elsewhere in this Lease, the Lessee hereby waives any and all rights which it may now have or which at any time hereafter may be conferred upon it, by statute or otherwise, to terminate, abate, cancel, quit, reduce, defer, suspend or surrender this Lease or any Aircraft or any obligation imposed upon the Lessee hereunder or under the other Operative Documents (including payment of Rent), except in accordance with the terms hereof and thereof.

(c)    If for any reason whatsoever this Lease shall be terminated in whole or in part by operation of Applicable Law, except as specifically provided herein, the Lessee, if and to the extent that the Lessee retains the use and possession of any Aircraft, nonetheless agrees to pay to the Lessor an amount equal to each Basic Rent payment and any Supplemental Rent payment in respect of such Aircraft at the time such payments would have become due and payable in accordance with the terms hereof and the other Operative Documents had this Lease not been terminated in whole or in part and so long as such payments are made and all other terms and conditions hereof are complied with by the Lessee, the Lessor and the Lessee will deem this Lease to remain in full force and effect.

(d)    Nothing contained in this Lease shall be construed as a waiver of the Lessee's right to seek any claim against the Lessor, the Security Trustee, any Secured Party or any other Person arising out of the transactions contemplated by the Operative Documents in a separate proceeding or by compulsory counterclaim.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**12.     ASSIGNMENT**

The terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Except as otherwise provided in Clause 7.4, neither party hereto shall, without the prior written consent of the other and except as expressly permitted by the Operative Documents, assign any of its rights or obligations hereunder.

**13.     LEASE EVENTS OF DEFAULT AND TERMINATION EVENTS**

Other than the events referred to in paragraphs (f), (p), (t) or (u) which, if they do not arise as a result of any act or omission of any Lessee Group Member, shall constitute "Termination Events" (but, for the avoidance of doubt,  in all other circumstances shall constitute "Lease Events of Default"), the following events shall constitute "Lease Events of Default" hereunder, (whether any such event shall be voluntary or involuntary or come about or be effective by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, the United States or any other jurisdiction, or the administration or interpretation thereof) and each such Lease Event of Default or Termination Event shall be deemed to exist and continue so long as, but only so long as, it shall not have been remedied:

(a)     the Lessee shall fail to pay when due any amount of Basic Rent or Termination Value on the date such Basic Rent or Termination Value is due, and such failure shall continue unremedied for three (3) Business Days following the due date therefor;

(b)     the Lessee shall fail to pay when due any amount of Supplemental Rent or any other amount due and owing from the Lessee under this Lease (other than as specified in Paragraph (a) above) or any other Operative Document and such failure to pay shall continue for a period of five (5) Business Days after demand has been made on the Lessee;

(c)     the Lessee shall fail to carry and maintain or fails to procure that any Permitted Sub-Lessee carry and maintain Aircraft Insurances (including any required Aircraft Reinsurances) required to be maintained in accordance with the provisions of Clause 10, or the Lessee shall fail to perform or observe any covenant, condition or agreement contained in Clause 7.6(a) or 10.11 hereof or clause 8(g) of the Participation Agreement;

(d)     any Lessee Obligor shall have failed to perform or observe in any material respect  any other covenant or agreement (ie, other than those covered by the preceding paragraph (a), (b) or (c) of this Clause 13) to be performed or observed by it hereunder or under any other Operative Document to which it is a party, and such failure is unremediable, or if remediable and the Lessee is diligently proceeding to remedy such failure, shall continue unremedied for a period of thirty (30) days after the earlier of (i) the Lessee obtaining actual knowledge of such failure or (ii) notice to the Lessee thereof has been given by the Lessor, the Security Trustee or the Insurer Representative;

(e)     any representation or warranty of any Lessee Obligor under any of the Operative Documents or in any document or certificate furnished by the Lessee in connection therewith or pursuant thereto shall be untrue, inaccurate or misleading in any material respect as at the time when made or furnished;

(f)     any license, consent, approval or authorization of, or any filing or registration with, any governmental authority or agency necessary for the performance by a Lessee Obligor of its obligations under this Lease or any other Operative Document or in connection herewith or therewith (including, without limitation, the registration of any Aircraft or any Mortgage or any Security Agreement) or the Certificate of Airworthiness issued in respect of any Aircraft

FILED DATE: 1/11/2023 2:57 PM   2023L000001

shall be revoked, not applied for or not issued or shall cease to remain in full force (or, as applicable, is not duly renewed upon the terms consistent with the original approval or otherwise satisfactory to the Security Trustee and the Insurer Representative) or any of the foregoing shall be modified and any such revocation, non-application or issuance or modification would materially adversely affect (in the opinion of the Security Trustee or the Insurer Representative) the rights and remedies of the Lessor hereunder or of any Secured Party under the Operative Documents;

(g)     the Lessee or either Guarantor shall apply for or consent to the appointment of, or the taking of possession by, a receiver, an examiner, a trustee, custodian or liquidator of itself or of a substantial part of its property, or the Lessee or either Guarantor shall admit in writing submitted in connection with judicial or other similar procedures its inability to pay its debts generally as they come due, shall announce a moratorium on payment of its debts or any class of its debts, or shall make a general assignment for the benefit of creditors or any creditor exercises a contractual right to assume the general operations or financial management of the Lessee;

(h)     the Lessee or either Guarantor shall file a voluntary petition or commence a case in bankruptcy or a voluntary petition or an answer seeking reorganization in a proceeding under any bankruptcy or insolvency laws (as now or hereafter in effect) or an answer admitting the material allegations of a petition filed against any the Lessee or either Guarantor in any such proceedings, or the Lessee or either Guarantor shall by voluntary petition, answer or consent to or seek relief under the provisions of any other now existing or future bankruptcy, insolvency, reorganization or other similar law providing for the reorganization or winding-up of corporations, or providing for an agreement, composition, extension or adjustment with its creditors;

(i)      an order, judgment or decree shall be entered in any proceeding by any court of competent jurisdiction appointing, without the consent of such Lessee or either Guarantor, a receiver, trustee, custodian or liquidator of the Lessee or either Guarantor or of any substantial part of its property, or sequestering any substantial part of the property of such Lessee or either Guarantor, and any such order, judgment or decree of appointment or sequestration shall remain in force undismissed, unstayed or unvacated for a period of sixty (60) days after the date of entry thereof;

(j)      a petition against the Lessee or either Guarantor in a proceeding under any bankruptcy laws or other insolvency laws as now or hereafter in effect shall be filed in a court of competent jurisdiction and shall not be withdrawn or dismissed within sixty (60) days thereafter, or if, under the provisions of any law providing for reorganization or winding-up of corporations which may apply to the Lessee or either Guarantor any court of competent jurisdiction shall assume jurisdiction, custody or control of the Lessee or of any substantial part of its property or any Aircraft and such jurisdiction, custody or control shall remain in force unrelinquished, unstayed or unterminated for a period of sixty (60) days;

(k)     the Lessee or either Guarantor threatens to suspend making payments or declares a moratorium or seeks a restructuring of its Indebtedness or the Lessee shall fail to pay when due (after giving effect to any applicable grace periods) any principal of or interest or scheduled payments in respect of any of its other Indebtedness (i) aggregating ten million Dollars (US$10,000,000) or more (or the equivalent thereof in any currency) or (ii) in respect of any Other Indebtedness, and the lender(s), the funder(s) or an agent or trustee thereof in respect of such Indebtedness declares or thereby becomes entitled to declare such Indebtedness to be due and payable prior to its scheduled maturity;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(l)     any additional procedure similar to those referred to in subparagraphs (g), (h), (i) and (j) above for the relief of financially distressed debtors under any Applicable Law or any other competent jurisdiction is entered into by the Lessee or either Guarantor voluntarily or involuntarily, and is not withdrawn or dismissed within sixty (60) days thereafter;

(m)    any of the events referred to in subparagraphs (g) to (l) above occurs in relation to any Permitted Sub-Lessee, and:

   (i)     the Lessee fails to inform the Lessor, the Security Trustee and the Insurer Representative immediately upon becoming aware of such event; or

   (ii)    the Lessee fails to terminate the leasing of the Aircraft pursuant to the relevant Permitted Sub-Lease immediately upon written request from the Lessor, the Security Trustee or the Insurer Representative.

(n)    a final judgment or judgments for the payment of money in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, shall be rendered against the Lessee or either Guarantor and the same shall remain undischarged for a period of sixty (60) days during which execution of such judgment shall not be effectively stayed, or an attachment or attachments or other Lien or Liens in respect of such judgment or judgments shall be issued or entered against any of the property of the Lessee or either Guarantor, for an amount in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, and shall remain undischarged or unbonded for thirty (30) days, except, in each case when such is being contested in good faith by appropriate proceedings that do not involve any substantial risk of the sale, seizure, forfeiture or loss of Collateral or title thereto, interest therein or use thereof and the Lessee provides the Lessor, the Agent, the Security Trustee and the Insurer Representative with reasonable evidence to that effect;

(o)    the existence, validity, enforceability or priority of the Lessor's rights, title and interests to any Aircraft is challenged by any Lessee Obligor or any other Person claiming through the Lessee or this Lease or any other Operative Document is or becomes wholly or in part to a material extent invalid, illegal or unenforceable for any reason;

(p)    the validity or enforceability (but not any particular interpretation) of any provision of any Operative Document is contested through appropriate proceedings by the Lessee or any Affiliate thereof or by any Government Body seeking to establish the invalidity or unenforceability thereof;

(q)    the Lessee or any Permitted Sub-Lessee shall:

   (i)     (in the case of a Permitted Sub-Lessee) cease, or announce its intention to cease, to conduct its business as a commercial scheduled airline;

   (ii)    other than in circumstances permitted by Clause 8(g) of the Participation Agreement, assign, lease or otherwise dispose of all or any material part of the assets or property (whether by a single transaction or a number of related or unrelated transactions and whether at the same time or over a period of time) comprising the its aircraft or aircraft related business; or

   (iii)   (in the case of a Permitted Sub-Lessee) cease to hold, whether by virtue of the revocation, suspension or non-renewal thereof or otherwise, any air transport license or its equivalent required to enable the it to carry out its principal business or the franchises, concessions, permits, rights or privileges required for the conduct of the business or operations of it shall be revoked, canceled or otherwise terminated or the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

free and continued use and exercise thereof curtailed or prevented, and as a result of any of the foregoing the preponderant business activity of it  shall cease to be that of a commercial airline;

(r)   there shall have occurred and be continuing any "Event of Default" under and as defined in any Other Operative Document;

(s)   The Lessee breaches its obligations under clause 6 or clause 23 of the Participation Agreement;

(t)   there shall be any change (or such change shall be enacted or made by decree or otherwise and shall be scheduled and become thereafter effective) in the laws, regulations or treaties of the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, (while it is leasing an Aircraft from the Lessee) any Permitted Sub-Lessee, the Cayman Islands, Ireland the United States or any government or political agency, subdivision or instrumentality thereof which materially adversely affects the validity, legality or perfection of the Lessor's title to any Aircraft, or any Secured Party's rights in any Aircraft under any Security Document, or which materially adversely affects the Lessor's or any Secured Party's interests under this Lease or materially adversely affects the Lessee's ability to perform or comply with its obligations under this Lease or the legality of such performance or compliance;

(u)   any Government Body shall have condemned, seized or appropriated all or any substantial part of the property of the Lessee or either Guarantor which is likely materially and adversely to affect the ability of such the Lessee or either Guarantor to perform its obligations under the Operative Documents; and/or

(v)   any other event occurs (other than an Event of Loss) or any other circumstance arises which is likely materially and adversely to affect the ability or legal obligation of the Lessee to perform its obligations under any Operative Document to which it is a party.

## 14.   REMEDIES

(a)   Upon the occurrence of any Event of Default or a Termination Event and at any time thereafter so long as the same shall be continuing, the Lessor may (without prejudice to any other rights of the Secured Parties under this Lease or the other Operative Documents), at its option, (in the case of any Event of Default) accept such repudiation and by notice to the Lessee declare this Lease to be in default or a Termination Event to have occurred and (in each case) by notice to the Lessee may, at its option, terminate any commitment of the Lessor to lease any Aircraft for which the relevant Delivery Date has not yet occurred (provided, that upon the occurrence of any Event of Default described in Clause 13(g)-(l), this Lease shall automatically be deemed in default and the Lessor's commitment shall automatically terminate); and at any time after this Lease shall be declared or deemed to be declared to be in default or a Termination Event to have occurred under this Clause 14, the Lessor may, so long as the Lessee shall not have remedied all outstanding Events of Default or Termination Events, exercise one or more of the following remedies with respect to all or any part of any Aircraft as the Lessor in its sole discretion shall elect:

(i)   the Lessor may demand that the Lessee pay the Lessor, and the Lessee shall pay to the Lessor, all Basic Rent (for all Aircraft) that has accrued but remains unpaid, together with the then applicable Termination Value for such Aircraft, computed on the date of final payment in full thereof, all Supplemental Rent then due and payable by the Lessee hereunder and all amounts then due and payable by the Lessee to the Lessor or any Secured Party under all other Operative Documents, and upon the indefeasible payment of such amount

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and all Supplemental Rent then due and payable by the Lessee hereunder, the Term for such Aircraft shall terminate;

(ii)     the Lessor shall be entitled in addition to making any demand referred to in paragraph (a) above:

    (A)     to cause the Lessee upon demand of the Lessor (provided that such demand shall be deemed to have been given if the Lessor is stayed by operation of law from making such demand) and at the Lessee's expense, to return promptly, and the Lessee shall return promptly, all or such part of any Aircraft, and the Manuals and Technical Records relating thereto, as the Lessor may so demand, to the Lessor in the manner and condition required by, and otherwise in accordance with all the provisions of, Clause 5 as if such Aircraft was being returned at the end of the Term for such Aircraft, or if the Lessee does not so deliver such Aircraft or the Manuals and Technical Records relating thereto, the Lessor, at its option, may enter upon the premises where all or any part of such Aircraft and the Manuals and Technical Records relating thereto are located and take immediate possession of and remove the same (together with any engine or part which is not an Engine or Part associated with such Aircraft but which is installed on the relevant Airframe or stored with or attached to any relevant Engine, subject to all of the rights of the owner, lessor, lienor or secured party of such engine or part) by summary proceedings or otherwise all without liability accruing to the Lessor for or by reason of such entry or taking of possession, whether for restoration of damage to property caused by such taking or otherwise, provided that all actions of the Lessor in this respect are reasonable and necessary, and the Lessor may institute proceedings to repossess such Aircraft in any jurisdiction where such Aircraft may be located, and provided further that if at any time after the Lessor has exercised its rights under this paragraph (A), the Lessee shall make the payments referred to in paragraph (a) above, the Term for such Aircraft shall terminate;

    (B)     following repossession of an Aircraft pursuant to Clause 14(a)(ii)(A), to sell such Aircraft at public or private sale, as the Lessor may determine; provided that the Lessor shall apply the proceeds of any sale in the manner set forth in the Intercreditor Deed, and the Lessor agrees to give the Lessee at least ten (10) Business Days' prior notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article 8(4) of the Convention) of the date fixed for any public sale of such Aircraft or of the date on or after which will occur the execution of any contract providing for any private sale thereof, and any such sale shall be conducted so as to afford the Lessee a reasonable opportunity to bid; and

    (C)     the Lessor may exercise any other right or remedy which may be available to it as a secured party under Applicable Law or under the Cape Town Convention, including, without limitation, all rights and remedies under Chapter III of the Convention and Chapter II of the Protocol. The Lessor hereby agrees to give the Lessee at least fifteen (15) days' notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article IX(6) of the Protocol) as set forth in Article IX(6) of the Protocol in connection with a proposal to procure the de-registration and export of an Aircraft without a court order. The Lessee expressly agrees to permit the Lessor to obtain from any applicable court, pending final determination of any claim resulting from an Event of Default or Termination Event hereunder, speedy relief in the form of any of the orders specified in Article 13 of the Convention and Article X of the Protocol as the Lessor shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

determine in its sole and absolute discretion, subject to any procedural requirements prescribed by Applicable Laws.

(b)     In addition, the Lessee shall be liable, except as otherwise provided above, for any and all unpaid Supplemental Rent due hereunder before, after or during the exercise of any of the foregoing remedies and for all legal fees and other costs and expenses actually incurred by the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative by reason of the occurrence of any Event of Default or Termination Event or the exercise of the Lessor's remedies with respect thereto, including (i) all costs and expenses incurred in connection with the return of the relevant Aircraft in accordance with the terms of Clause 5 or in placing the relevant Aircraft in the condition and airworthiness required by such Clause and (ii) any other costs and expenses that the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative may incur in connection with the retaking, holding, storage, export, deregistration and preparing for sale of the relevant Aircraft and other like action or that the Lessee has agreed to assume in any other Operative Document or pursuant to Applicable Law.   Except as otherwise expressly provided above, no remedy referred to in this Clause 14 is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above; and the exercise or beginning of exercise by the Lessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by the Lessor of any or all of such other remedies.   No express or implied waiver by the Lessor of, and no course of dealing by it with respect to, any Event of Default or Termination Event shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default or Termination Event.

(c)     The Lessee hereby consents to the exercise by the Lessor of the remedies granted herein and in the Cape Town Convention.   The Lessee acknowledges and agrees that the Lessor may exercise such of the foregoing remedies as it shall determine in its sole discretion and none of the foregoing remedies is manifestly unreasonable.   To the extent permitted by Applicable Law, the Lessee and the Lessor hereby agree that paragraph 2 of Article 13 of the Convention shall not apply to this Lease or to the exercise of any remedy by the Lessor under this Lease or the Cape Town Convention.   Following the occurrence of an Event of Default or Termination Event, the Lessee agrees to immediately discharge, upon demand by the Lessor or the Security Trustee, any registration made with the International Registry in favour of the Lessee.

## 15.     FURTHER ASSURANCES; INVESTMENT OF SECURITY FUNDS, NO BREACH OF SANCTIONS

### 15.1     Further Assurances

(a)     The Lessee and the Lessor shall from time to time, at the cost and expense of the Lessee, do and perform such other and further acts and duly execute and deliver such further documents and assurances as may be required by Applicable Laws or requested by the other party to establish, maintain and protect the respective rights and remedies of the other party and to carry out and effect the intent and purpose of this Lease including, if requested by the Lessor, the Security Trustee, the Agent  or the Insurer Representative and at the expense of the Lessee:

(i)     the execution and delivery of supplements hereto or to the other Operative Documents, in recordable form, subjecting to this Lease or to the other Operative Documents, any replacement or substitute airframe or engine;

(ii)     the recording or filing of counterparts hereto or thereto, in accordance with the laws of such jurisdictions in which any Aircraft is based as the Insurer Representative or the Security

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee; and

(iii)  the registration of any interest, assignment or subordination with the International Registry to preserve, protect, perfect or establish priority in respect of any Aircraft Object or Associated Right covered by or related to this Lease, the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee.

(b)  The Lessee shall be solely responsible for obtaining all required consents and approvals of, giving all required notices to, performing all required registrations and filings for recordation with, and taking all other necessary actions in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, any Guarantor the jurisdiction of incorporation or formation of the Lessor, England and Wales and/or the United States of America including any governmental or political agency, subdivision or instrumentality thereof.

(c)  Without limiting the foregoing, the Lessee shall cause this Lease, and any and all additional instruments which shall be executed pursuant to the terms hereof, to be kept, filed, deposited or recorded, at all times, in the International Registry and in such places in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, the jurisdiction of incorporation or formation of the Lessor, the United States of America, England and Wales and such other jurisdictions in which any Aircraft is based as the Lessor, the Security Trustee, the Agent, any Lender or the Insurer Representative may reasonably request in order to perfect and preserve the rights of the Lessor, the Security Trustee, the Agent, the Lenders, the Insurer Representative or the other Secured Parties hereunder, and furnish to the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee an opinion or opinions of counsel or other evidence satisfactory to the Lessor, the Insurer Representative and the Security Trustee of each such filing, deposit or recordation and, without limitation of any of the foregoing, at the reasonable request of the Lessor, the Insurer Representative, the Agent, any lender or the Security Trustee, promptly correct any defect, error or omission which may at any time hereafter be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof and, at the request of the Lessee, the Lessor shall promptly correct any defect, error or omission which may at any time be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof.  Without limiting any of the foregoing, the Lessee will co-operate fully with the Lessor, the Security Trustee, the Agent, the Lenders and the Insurer Representative for obtaining the deregistration of any Aircraft and any required export licenses, when requested by the Security Trustee upon any return of any Aircraft required hereunder.

**15.2  Security Funds**

(a)  Notwithstanding anything in this Lease to the contrary, if a Material Default or Event of Default or Termination Event  under this Lease shall have occurred and be continuing or if the Lessor (or the Security Trustee, as the Lessor's assignee) is holding funds pending replacement of any Airframe and/or Engines pursuant to Clause 9, all amounts otherwise payable to the Lessee hereunder shall be paid to the Lessor and shall be held by the Lessor (or, if either Security Agreement shall not have been discharged, shall be paid to and held by the Security Trustee) as security for the obligations of the Lessee under this Lease, and, at such time as there shall not be continuing such Material Default, Termination Event or Event of Default or such replacement is complete, such amounts, net of any amounts theretofore properly applied to the Lessee's obligations hereunder, shall be paid to the Lessee or as the Lessee may direct.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)    All funds held by the Security Trustee hereunder shall be held as Collateral under the Lessee Security Agreement to secure, inter alia, the repayment of the Loans and the other amounts expressed to be secured thereunder and applied as provided therein.

**15.3**    **No Sanctions Breaches**

(a)    No Lessee Obligor shall, and it shall not permit or authorise any other person or Subsidiary to, directly or indirectly, use, lend, make payments of, contribute or otherwise make available, all or any part of the proceeds of any Loan or other transactions contemplated by the Operative Documents to fund any trade, business or other activities:

(i)    involving or for the benefit of any Sanctioned Person; or

(ii)    in any other manner that could cause any Obligor or any Secured Party to be in breach of any Sanctions.

**16.**    **NOTICES**

All notices, consents and other communications hereunder shall be given in accordance with clause 13(c) of the Participation Agreement.

**17.**    **MISCELLANEOUS; GOVERNING LAW**

(a)    Any provision of this Lease that is prohibited or unenforceable in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and shall not invalidate or render unenforceable the other provisions hereof in any jurisdiction. To the extent permitted by Applicable Law, the Lessee hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect. No term or provision of this Lease may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought and only as permitted by the Operative Documents. The Clause and paragraph headings in this Lease and the table of contents are for convenience of reference only and shall not modify, define, expand or limit any of the terms or provisions hereof.

(b)    This Lease and any non-contractual obligations arising out of or in connection with it are governed by English law.

(c)    The provisions of clause 13(d) of the Participation Agreement, in so far as they relate to any dispute between the Lessor and the Lessee, shall apply hereto as if set out in this Agreement, *mutatis mutandis*.

(d)    To the extent that the Lessee may be or hereafter become entitled, in any jurisdiction in which judicial proceedings may at any time be commenced with respect to this Lease, to claim for itself or its property, assets or revenues immunity (whether by reason of sovereignty or otherwise) from suit, jurisdiction of any court, attachment prior to judgment, attachment in aid of execution of a judgment, set-off, execution of judgment or from any other legal process, and to the extent that in any such jurisdiction there may be attributed any such immunity (whether or not claimed), the Lessee hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity.

(e)    The payment obligations of the Lessee payable under this Lease and any other Operative Document (the **payor**) expressed to be payable thereunder in one currency (the **first currency**) shall not be discharged by an amount paid in another currency (the **second**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**currency**), whether pursuant to a judgment or otherwise, to the extent that the amount so paid on prompt conversion to the first currency under normal banking procedures does not yield the full amount of the first currency due thereunder, and the payor shall indemnify the recipient of such payment (the **payee**) against any such shortfall; and in the event that any payment by the payor, whether pursuant to a judgment or otherwise, upon conversion and transfer does not result in payment of such amount of the first currency, the payee shall have a separate cause of action against the payor for the additional amount necessary to yield the amount due and owing to the payee.

(f)     If it is necessary to determine for any reason other than that referred to in Clause 17(e) above the equivalent in the first currency of a sum denominated in the second currency, the rate of exchange used shall be that at which in accordance with normal banking procedures the Security Trustee could purchase the first currency with the second currency on the Business Day on which such determination is to be made (or, if such day is not a Business Day, on the next preceding Business Day).

(g)     This Lease may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Lease.

(h)     Except to the extent expressly provided herein, any terms of this Lease which expressly incorporate any provisions of the Cape Town Convention shall prevail in the case of any conflict with any other provision contained herein.  Each of the parties hereto acknowledges and agrees that for purposes of the Cape Town Convention (to the extent applicable hereto), separate rights may exist with respect to each Airframe and Engine.

## 18.    SECURITY FOR THE LESSOR'S OBLIGATION

(a)     In order to secure the repayment, inter alia, of the Secured Obligations, the Lessor has agreed in the Lessor Security Agreement, among other things, to assign to the Security Trustee its right, title and interest in and to this Lease, including all Associated Rights related thereto, subject to the reservations and conditions therein set forth.  The Lessee hereby consents to such assignment and acknowledges receipt of a copy of the Security Agreement it being understood that such consent shall not affect any requirement or the absence of any requirement for any consent under any other circumstances.

(b)     Until the Lien of the Lessor Security Agreement has been released:

(i)     the Lessee shall, notwithstanding anything herein to the contrary, make all payments of Rent and all other amounts payable hereunder in accordance with clause 13 of the Participation Agreement and such payments shall not be subject to any defence, counterclaim, set-off or other right or claim of any kind which the Lessee may be able to assert against the Lessor or any other Person in an action brought by any thereof on this Lease;

(ii)    all rights of the Lessor with respect to this Lease (including all consent, waiver and notice rights), any Aircraft, any Airframe, any Engine or any Part thereof, to the extent set forth in and subject in each case to the exceptions set forth in the Lessor Security Agreement, shall be exercisable by the Security Trustee (to the exclusion of the Lessor); and

(iii)   all documents, notices, certificates and opinions of counsel sent by the Lessee to the Lessor shall also be sent to the Security Trustee.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

19.     **LESSOR'S RIGHT TO PERFORM FOR LESSEE**

If the Lessee fails to make any payment of Rent required to be made by it hereunder or fails to perform or comply with any of its agreements contained herein, the Lessor or the Security Trustee may (but shall be under no obligation to) itself make such payment or perform or comply with such agreement, and the amount of such payment and the amount of the reasonable expenses of the Lessor or the Security Trustee incurred in connection with such payment or the performance of or compliance with such agreement, as the case may be, shall be deemed Supplemental Rent, payable by the Lessee upon demand together with interest thereon at the applicable Post-Default Rate.

20.     **ENGLISH LANGUAGE PREVAILS**

For the avoidance of doubt, the Lessor and the Lessee agree any translation of this Lease shall not apply in construing this Lease and that the English version of this Lease shall govern for all purposes.

21.     **COMPLETE AGREEMENT**

Except for the other Operative Documents, this Lease contains the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior written or oral communications or agreements with respect thereto.

22.     **LIMITATION OF LIABILITY OF THE LESSOR**

The Lessee acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Lease is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Master Lease Agreement to be duly executed by their respective duly authorized officers on the date first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 1

## FORM OF ACCEPTANCE CERTIFICATE

Trollfjorden Limited (the **Lessee**) at [●] on this [●] day of [●] (the **Delivery Date**), has accepted delivery from AAA Max 4 Limited (the **Lessor**) of the following described aircraft (the **Aircraft**) pursuant to and in accordance with the terms of that certain Master Lease Agreement (the **Lease**) dated [●] between the Lessor and the Lessee:

One (1) Boeing model –737 - 8 airframe bearing manufacturer's serial number [●] and registration mark [●] together with two (2) installed CFM model LEAP-1B27 engines bearing manufacturer's serial numbers [●] and [●], all parts, appliances, components, instruments, accessories, accessions, attachments, avionics (including, without limitation, radio, radar, navigation systems and other electronic equipment), other equipment (including, without limitation, all buyer-designated equipment and all buyer-furnished equipment) and components of whatever nature incorporated or installed in or attached to the Aircraft or such Engines, and all Manuals and Technical Records pertaining to the Aircraft and Engines.

The Lessee further certifies (a) that it has irrevocably accepted the above-described Aircraft for all purposes hereof and of the Lease as being airworthy, in good working order and repair without defect or inherent vice in title, condition, design, operation or fitness for use, and (b) that the Aircraft conforms in all respects with all of the requirements of the Lease.

Capitalized terms used in this Acceptance Certificate not otherwise defined herein shall have the meaning assigned thereto in the Lease.

**IN WITNESS THEREOF**, the Lessee has caused this Acceptance Certificate to be executed in its name by its duly authorized representative on this [●] day of [●].

TROLLFJORDEN LIMITED

By:      _____
Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 2**

**FORM OF LEASE SUPPLEMENT**

LEASE SUPPLEMENT NO. [  ]

THIS LEASE SUPPLEMENT NO. [●] dated [●] (this **Lease Supplement**) is between AAA Max 4 Limited**,** an exempted company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Trollfjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated [●] relating to –737 - 8 Boeing model [●] aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.     The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

    (a)     one (1) Boeing model –737 - 8  airframe bearing manufacturer's serial number [●] and registration mark [●]; and

    (b)     two (2) CFM model LEAP-1B27 engines bearing manufacturer's serial numbers [●] and [●], respectively.

2.     The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.     The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.     The parties confirm that the Purchase Price for the Delivered Aircraft is US$[●] and the Initial Rent for the Delivered Aircraft is US$[●].

5.     All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.     The [revised] "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.     This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 4 LIMITED

By: _____
    Name:
    Title:

TROLLFJORDEN LIMITED

By: _____
    Name:
    Title:

Receipt of the counterpart of the foregoing Lease Supplement No. [●] is hereby acknowledged on this [●] day of [●].

[●], as Security Trustee

By: _____
    Name:
    Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

### SCHEDULE I TO LEASE SUPPLEMENT

| Basic Rent Payment Date | Principal Instalment |
|---|---|

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 3**

**FORM OF EUROCONTROL LETTER**

From:   **[NORWEGIAN AIR NORWAY AS][NORWEGIAN AIR SWEDEN AB]**

To:     The Director of the Central Route Charges Office
        European Organisation for the Safety of Air Navigation (EUROCONTROL)
        Rue de La Fusée, 96
        B-1130 Brussels
        Belgium

                                                                    [     ] 2018

Dear Sirs

**Authorisation Letter**

**AIR NAVIGATION CHARGES: ONE (1) BOEING 737 - 8 AIRCRAFT BEARING MANUFACTURER'S SERIAL NUMBER [●] AND REGISTRATION MARK [●] (THE AIRCRAFT)**

We have subleased the Aircraft from Trollfjorden Limited (the **Sublessor**) in accordance with a sublease agreement dated [  ] 2018 between us and the Sublessor.

We hereby authorise you to provide the Sublessor (hereby represented by [SECURITY TRUSTEE]) with a general statement of account in relation to air navigation charges incurred by us and due to EUROCONTROL.   Access to the statement(s) of account will be provided in accordance with the procedures established by EUROCONTROL.

The authorisation contained in this letter may only be revoked or amended by a written instruction signed by us and the Sublessor.

Yours faithfully

For and on behalf of
**[NORWEGIAN AIR NORWAY AS][NORWEGIAN AIR SWEDEN AB]**

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 4

## FORM OF EU ETS AUTHORITY LETTER

From:   **[NORWEGIAN AIR NORWAY AS][NORWEGIAN AIR SWEDEN AB]**

To:     All governmental entities in the European Union charged with administering any EU ETS (as defined below) applicable to us and the Aircraft

[●]

Dear Sirs

**Emissions Trading Schemes**

1       Pursuant to the terms of the aircraft lease agreement dated [●] 2018 (the **Lease**) between AAA Max 4 Limited (the **Lessor**) and Trollfjorden Limited (the **Lessee**) and the aircraft sub-lease agreement dated [●] 2018 (the **Sub-Lease**) between the Lessee and ourselves, we have agreed to sub-lease one (1) Boeing 737 - 8 aircraft with manufacturer's serial number [●] and registration mark [●].

2       We wish to enable each of the Lessor, [●] (the Insurer Representative) and [●] the (Security Trustee) to monitor the performance by us of our obligations under the Emissions Trading Schemes (**EU ETS**).

3       We hereby unconditionally authorise you, on request by the Lessor, the Security Trustee or the Insurer Representative from time to time, to provide the Lessor the Security Trustee or the Insurer Representative with particulars of any obligations due from but unperformed by us under the EU ETS.

4       The authorisation contained herein shall only be revoked or amended upon receipt by you of a written instruction signed by ourselves, the Lessor and the Agent requesting such revocation.

Yours faithfully

…………………………………………………
For and on behalf of
**[NORWEGIAN AIR NORWAY AS][NORWEGIAN AIR NORWAY AB]**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# SIGNATORIES

**LESSOR**

**AAA MAX 4 LIMITED**

By: _____

    Name:       Elaine Anderson

    Title:        Director

**LESSEE**

**TROLLFJORDEN LIMITED**

By: _____

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM  2023L000001

## SIGNATORIES

**LESSOR**

**AAA MAX 4 LIMITED**

By: _____
       Name:
       Title:

**LESSEE**

**TROLLEJORDEN LIMITED**

By: _____

Name:
Title:      Sinead O'Brien
          Attorney-in-Fact

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT C-2

FILED DATE: 1/11/2023 2:57 PM   2023L000001

LEASE SUPPLEMENT NO. 1

THIS LEASE SUPPLEMENT NO. 1 dated 20 November, 2018 (this **Lease Supplement**) is between AAA Max 4 Limited**,** an exempted company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Trollfjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated 16 November 2018 relating to two 737 - 8 Boeing model  aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.      The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

   (a)     one (1) Boeing model 737 - 8  airframe bearing manufacturer's serial number 42835 and registration mark SE-RTA; and

   (b)     two (2) CFM model LEAP-1B27 engines bearing manufacturer's serial numbers 602679 and 602687, respectively.

2.      The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.      The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.      The parties confirm that the Purchase Price for the Delivered Aircraft is US$49,282,115.00 and the Initial Rent for the Delivered Aircraft is US$7,392,317.25.

5.      All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.      The "Principal Instalment" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.      This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 4 LIMITED

By: _____

       Name:
       Title:      **Elaine Anderson**
                      **Director**

TROLLFJORDEN LIMITED

By: _____

       Name:
       Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 1 is hereby acknowledged on this 20th day of _November_ , 2018.

BANK OF UTAH, as Security Trustee

By: _____

       Name:
       Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 4 LIMITED

By: _____

      Name:

      Title:

TROLLFJORDEN LIMITED

By: _____

      Name: Brian Byrne

      Title: Attorney-in-Fact

Receipt of the counterpart of the foregoing Lease Supplement No. 1 is hereby acknowledged on this 20th day of November , 2018.

BANK OF UTAH, as Security Trustee

By: _____

      Name:

      Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 4 LIMITED

By: _____

Name:
Title:

TROLLFJORDEN LIMITED

By: _____

Name:
Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 1 is hereby acknowledged on this 20th day of __November__, 2018.

BANK OF UTAH, as Security Trustee

By: _____

Name: Jon Croasmun
Title: Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

| Basic Rent Payment Date | Principal Instalment (US$) |
|---|---|
| 20/11/2018 | - |
| 20/02/2019 | 741,191.16 |
| 20/05/2019 | 748,100.92 |
| 20/08/2019 | 755,075.09 |
| 20/11/2019 | 762,114.28 |
| 20/02/2020 | 769,219.09 |
| 20/05/2020 | 776,390.13 |
| 20/08/2020 | 783,628.03 |
| 20/11/2020 | 790,933.40 |
| 20/02/2021 | 798,306.88 |
| 20/05/2021 | 805,749.09 |
| 20/08/2021 | 813,260.69 |
| 20/11/2021 | 820,842.31 |
| 20/02/2022 | 828,494.62 |
| 20/05/2022 | 836,218.26 |
| 20/08/2022 | 844,013.90 |
| 20/11/2022 | 851,882.22 |
| 20/02/2023 | 859,823.89 |
| 20/05/2023 | 867,839.60 |
| 20/08/2023 | 875,930.04 |
| 20/11/2023 | 884,095.89 |
| 20/02/2024 | 892,337.88 |
| 20/05/2024 | 900,656.70 |
| 20/08/2024 | 909,053.07 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

| | |
|---|---|
| 20/11/2024 | 917,527.72 |
| 20/02/2025 | 926,081.37 |
| 20/05/2025 | 934,714.76 |
| 20/08/2025 | 943,428.64 |
| 20/11/2025 | 952,223.75 |
| 20/02/2026 | 961,100.86 |
| 20/05/2026 | 970,060.72 |
| 20/08/2026 | 979,104.11 |
| 20/11/2026 | 988,231.81 |
| 20/02/2027 | 997,444.60 |
| 20/05/2027 | 1,006,743.28 |
| 20/08/2027 | 1,016,128.64 |
| 20/11/2027 | 1,025,601.50 |
| 20/02/2028 | 1,035,162.67 |
| 20/05/2028 | 1,044,812.98 |
| 20/08/2028 | 1,054,553.25 |
| 20/11/2028 | 1,064,384.32 |
| 20/02/2029 | 1,074,307.04 |
| 20/05/2029 | 1,084,322.27 |
| 20/08/2029 | 1,094,430.86 |
| 20/11/2029 | 1,104,633.70 |
| 20/02/2030 | 1,114,931.64 |
| 20/05/2030 | 1,125,325.59 |
| 20/08/2030 | 1,135,816.44 |
| 20/11/2030 | 1,146,404.94 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT C-3

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**EXECUTION VERSION**

# PURCHASE AGREEMENT ASSIGNMENT

Dated as of _20 November_   2018

**ARCTIC AVIATION ASSETS DAC**
**as Assignor**

**NORWEGIAN AIR SHUTTLE ASA**
**as Assignor**

**TROLLFJORDEN LIMITED**
**as Lessee**

**NORWEGIAN AIR NORWAY AS**

**as Sub-Lessee**

**NORWEGIAN AIR SWEDEN AB**

**as Sub-Lessee**

**BANK OF UTAH**

**as Security Trustee**

**and**

**AAA MAX 4 LIMITED**
**as Lessor**

**two (2) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

**Allen & Overy LLP**

0121556-0000001 BK:46157644.4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS PURCHASE AGREEMENT ASSIGNMENT** dated <u>20 November</u> 2018 (this **Assignment**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**), **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 4 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **TROLLFJORDEN LIMITED**, a private company limited by shares incorporated under the laws of Ireland (the **Lessee**) and **BANK OF UTAH**, as security trustee (in such capacity, together with its successors and permitted assigns, the **Security Trustee**), **NORWEGIAN AIR NORWAY AS**, a private company limited by shares duly incorporated under the laws of Norway (**Norway AS**) and **NORWEGIAN AIR SWEDEN AB**, a private company limited by shares duly incorporated under the laws of Sweden under Reg. No. 559111-7907 (**Sweden AB**) (each of Norway AS and Sweden AB being a **Sub-Lessee**).

## W I T N E S S E T H :

**WHEREAS**, Norwegian and The Boeing Company (the **Manufacturer**) entered into that certain purchase agreement number 03754, dated 24 January 2012, and that certain Aircraft General Terms Agreement AGTA-NSB, dated 29 August 2007 (the **AGTA**), which is incorporated by reference in that purchase agreement, providing for, inter alia, the sale by the Manufacturer of each Aircraft.

**WHEREAS**, Norwegian assigned and transferred to Arctic its rights and obligations under the Purchase Agreement to purchase the Aircraft in accordance with the Assignment, Assumption and Release Agreement dated 27 November 2014 (the **AARA**).

**WHEREAS**, the Lessor wishes to acquire certain rights and interests under the Purchase Agreement and each Assignor, on the terms and conditions set forth herein, is willing to assign to the Lessor certain of its rights and interests under the Purchase Agreement, and the Lessor is willing to accept such assignment; and

**WHEREAS**, the Manufacturer is willing to execute and deliver to the Lessor on each Delivery Date a consent and agreement (the **Consent and Agreement**) to the provisions hereof in substantially the form of Schedule 1 hereto in respect of the relevant Aircraft.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and of other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1.    For all purposes of this Assignment, unless the context otherwise requires, the following terms shall have the following respective meanings:

    **Agent** shall mean Bank of China Limited, Singapore Branch, as agent for the Lenders.

    **Aircraft** shall mean any of the two (2) Boeing model 737 - 8 airframes described in Schedule 2 hereto (each, an **Airframe**), as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, together, in the case of either Airframe, with two CFM LEAP-1B27 engines, each as more particularly described in Schedule 2, as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, installed on such Airframe and each other engine described in any Purchase Assignment Supplement hereto (collectively, the **Engines**), together with the equipment, components and accessories installed on such Aircraft (other than buyer furnished equipment that has not been converted to seller purchased equipment pursuant to the Purchase Agreement) pursuant to the Purchase Agreement, and together with all technical records, manuals and data with respect thereto provided in relation to such Aircraft pursuant to the Purchase Agreement (collectively, the **Manuals and Technical Records**).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Delivery** shall mean, with respect to an Aircraft, the time when the relevant Sub-Lessee (as designee of the Lessee), as the authorized representative of the Lessor, shall accept delivery of such Aircraft under the Purchase Agreement (as evidenced by delivery to the Lessor from the Manufacturer of the bill of sale in respect of such Aircraft referred to in the Purchase Agreement).

**Delivery Date** shall mean, with respect to an Aircraft, the date on which the Delivery of such Aircraft occurs.

**Engine Manufacturer** shall mean CFM International S.A., a French company and its successors and permitted assigns.

**Insurer Representative** shall mean Allianz Global Corporate & Specialty SE, U.K. Branch, as Insurer Representative.

**Lease** shall mean, in respect of each Aircraft, the Master Lease Agreement dated on or about the date hereof as supplemented by the lease supplement dated on or prior to the Delivery Date for such Aircraft, substantially in the form of Exhibit I to the Master Lease Agreement, in each case between the Lessor, as lessor, and the Lessee, as lessee, providing for the lease of such Aircraft, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Lease Event of Default** shall have the meaning given to such term in the Lease.

**Lessor Security Assignment** shall mean, in respect of each Aircraft, the security agreement relating to that Aircraft dated on or prior to the Delivery Date for such Aircraft between the Lessor and the Security Trustee, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Loan Agreement** shall mean the loan agreement, dated on or about 16 November 2018, among the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Lenders identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Loan Event of Default** shall mean shall have the meaning given to such term in the Loan Agreement.

**Participation Agreement** shall mean the Participation Agreement dated on or about 16 November 2018, among inter alios the Assignors, the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Lenders identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Purchase Agreement** shall mean the purchase agreement no. PA-03754 dated 24 January 2012 originally made between Norwegian and the Manufacturer, as partially assigned to and assumed by Arctic pursuant to the AARA,  and as further amended and supplemented from time to time thereafter, providing for, inter alia, the purchase by Arctic from the Manufacturer of each Aircraft, as more particularly described therein, which incorporates by reference the terms and conditions of the Aircraft General Terms Agreement (AGTA-NSB) dated 29 August 2007 between Norwegian and the Manufacturer (the **AGTA**).

**Purchase Assignment Supplement** shall mean in respect of each Aircraft, the purchase assignment supplement relating to such Aircraft entered into between the Assignors, the Lessee, the relevant Sub-Lessee and the Lessor and consented to by the Manufacturer, substantially in the form of Schedule 3 hereto.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Purchase Price** shall mean, with respect to an Aircraft, the amount in United States Dollars (U.S.$) in respect of the purchase of such Aircraft as shall be notified by Arctic to the Lessor at least five (5) Business Days prior to the Delivery Date for such Aircraft upon agreement with the Manufacturer and pursuant to the terms of the Purchase Agreement; provided that the Lessor's maximum liability under this Assignment in respect of the Purchase Price for such Aircraft shall not exceed the amount set forth in the Purchase Assignment Supplement; provided, further, that in the event that such amount changes after such notification but prior to the relevant Delivery Date, the parties agree that such amount shall be appropriately adjusted.

**Security Trustee** shall mean Bank of Utah, as Security Trustee.

**Sub-Lease** shall mean, with respect to an Aircraft, the aircraft operating lease agreement entered into or to be entered into on or about the Delivery Date of such Aircraft between the Lessee as lessor and the relevant Sub-Lessee as lessee.

**Sub-Lease Event of Default** shall have the meaning given to the term "Termination Event " in the Sub-Lease.

**Transaction Parties** means the Lessor, the Lessee and each Sub-Lessee and **Transaction Party** shall mean any one of them.

**Warranties** means the warranties in respect of the Airframe given by the Manufacturer pursuant to Exhibit C (Product Assurance Document) of the AGTA (which forms part of the Purchase Agreement) as attached hereto as Schedule 4 (The Warranties), including all post-delivery-rights in respect thereof.

All other capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Assignment and the rules of construction set out in part 2 of appendix 1 of the Participation Agreement and will be deemed to be set out herein in their entirety but as if each reference to any "Operative Document" were a reference instead to this Assignment.

2.    As of the date of delivery of a Purchase Assignment Supplement from the Assignors to the Lessor (with copies to the Manufacturer and the Security Trustee) with respect to an Aircraft, each Assignor shall, with effect from such date, thereby sell, assign, transfer and set over unto the Lessor, its successors and permitted assigns, all of such Assignor's rights and interests in and to the Purchase Agreement as and to the extent they relate to the purchase of such Aircraft and the operation thereof, except as and to the extent expressly reserved below, including in such assignment:

(a)    the right upon valid tender by the Manufacturer to purchase such Aircraft subject to the terms and conditions thereof and the right to take title to such Aircraft and to be named the Buyer in the bill of sale to be delivered by the Manufacturer for such Aircraft pursuant to the Purchase Agreement;

(b)    the right to accept delivery of such Aircraft, such acceptance to be exercised by the relevant Sub-Lessee (as designee of the Lessee) as the authorized representative of the Lessor, provided that the Manufacturer shall have received written notice in advance of the identity and authority of such authorized representative;

(c)    all claims for damages in respect of such Aircraft arising as a result of any default by the Manufacturer under the Purchase Agreement in respect of such Aircraft;

(d)    all warranty and indemnity provisions contained in the Purchase Agreement, including the Warranties, and all claims arising thereunder, in respect of such Aircraft; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(e)        any and all rights of each Assignor to compel performance of the terms of the Purchase Agreement in respect of such Aircraft;

reserving exclusively to the Assignors, however:

        (i)      all the Assignors' rights and interests in and to the Purchase Agreement as and to the extent that it relates to aircraft other than an Aircraft or the purchase, ownership or operation of such other aircraft and to the extent that it relates to any other matters not directly pertaining to an Aircraft;

        (ii)     all the Assignors' rights and interests in or arising out of (including any credits for or repayment of) any advance payments made or to be made by the Assignors in respect of such Aircraft under the Purchase Agreement and any other payments or deposits made by the Assignors in respect of such Aircraft under the Purchase Agreement or any other agreement;

        (iii)    the right to obtain services, training, data and demonstration and test flights pursuant to the Purchase Agreement; and

        (iv)    the right to maintain plant representatives at the Manufacturer's plant pursuant to the Purchase Agreement.

        The Lessor hereby accepts the assignment set forth above.

Notwithstanding the foregoing, so long and only so long as no notice has been issued to the Manufacturer in accordance with this Assignment, the Lessor hereby authorizes the relevant Sub-Lessee during the term of the Lease in respect of an Aircraft, to the exclusion of the Assignor, to exercise in such relevant Sub-Lessee's name (A) the right to enforce any warranty or indemnity, including the Warranties, under the Purchase Agreement and to retain any recovery or benefit resulting from the enforcement of any warranty or indemnity, including the Warranties, under the Purchase Agreement in respect of such Aircraft, (B) all rights to demand, accept and retain all rights in and to all property (other than such Aircraft) and (C) the right to exercise all other rights and powers of the Customer under the Purchase Agreement assigned to the Lessor hereunder in respect of such Aircraft; provided that the Assignors and such relevant Sub-Lessee may not enter into any change order or other amendment, modification or supplement to the Purchase Agreement if such change order, amendment, modification or supplement would (i) result in any rescission, cancellation or termination of the Purchase Agreement or any aircraft warranties in respect of any Aircraft, or (ii) materially diminish the rights and interests assigned hereunder.

For all purposes of this Assignment, the Manufacturer shall not be deemed to have knowledge of or need to recognize the occurrence of a Lease Event of Default, a Termination Event, a Sub-Lease Event of Default or a Loan Event of Default, unless and until the Manufacturer shall have received from the Lessee or the Lessor (or the Security Trustee, so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) written notice thereof, addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706. Until such time as a notice shall have been given by the Lessee or the Lessor (or the Security Trustee so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) to the Manufacturer, the Manufacturer shall deal solely and exclusively with the relevant Sub-Lessee. Thereafter, until the Lessee or the Lessor (or the Security Trustee, as the case may be) who served the notice on the Manufacturer shall have notified the Manufacturer that any such Lease Event of Default,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Termination Event, Sub-Lease Event of Default or Loan Event of Default is no longer continuing (which notice shall be given at such relevant Sub-Lessee's, the Lessee's or the Lessor's (as applicable) written request promptly after the remedy thereof), the Manufacturer shall deal solely and exclusively with the Lessor, the Lessee or the Security Trustee, as the case may be. The Manufacturer may act with acquittance and conclusively rely on such notice. For the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and in the event that the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control.

3.      It is expressly agreed that, anything herein contained to the contrary notwithstanding: (a) prior to the execution of a Purchase Assignment Supplement with respect to an Aircraft, each Assignor will perform its obligations with respect to such Aircraft to be performed by it on or before the Delivery Date for such Aircraft, (b) Arctic or Norwegian, as applicable, shall at all times remain liable to the Manufacturer under the Purchase Agreement to perform all duties and obligations of the Customer thereunder to the same extent as if this Assignment had not been executed, (c) the exercise by a Transaction Party of any of the rights assigned hereunder shall not release Arctic or Norwegian, as applicable, from any of its duties or obligations to the Manufacturer under the Purchase Agreement, except to the extent that such exercise by a Transaction Party shall constitute performance of such duties and obligations, and (d) except as specifically provided in the next succeeding paragraph with respect to the Transaction Parties, the Transaction Parties shall not have any obligation or liability under the Purchase Agreement by reason of or arising out of this Assignment or be obligated to perform any of the obligations or duties of Arctic or Norwegian, as applicable, under the Purchase Agreement or to make any payment or to make any inquiry as to the sufficiency of any payment received by it or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder.

Anything contained in this Assignment to the contrary notwithstanding (but without in any way releasing either Assignor from any of its duties or obligations under the Purchase Agreement), the Transaction Parties confirm for the benefit of the Manufacturer that, insofar as the provisions of the Purchase Agreement relate to any Aircraft, in exercising any rights under the Purchase Agreement with respect to such Aircraft, or in making any claim with respect to such Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to such Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, the Transaction Parties to the same extent as if each Transaction Party had been the original Customer thereunder. The Transaction Parties further agree, expressly for the benefit of the Manufacturer, that at any time and from time to time upon the written request of the Manufacturer, the Transaction Parties shall promptly and duly execute and deliver any and all such further assurances, instruments and documents and take all such further action as the Manufacturer may reasonably request in order to obtain the full benefits of the Transaction Parties' agreements set forth in this paragraph.

Nothing contained herein shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement and AGTA or modify in any respect the contract rights of the Manufacturer thereunder or require the Manufacturer to divest itself of title to or possession of any Aircraft or other goods and services until delivery thereof and payment therefor on the date of such delivery as provided therein.

Effective at any time after a Sub-Lease Event of Default has occurred, and for so long as such Sub-Lease Event of Default is continuing, the relevant Sub-Lessee does hereby irrevocably appoint the Lessee, its successors and permitted assigns, the relevant Sub-Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee or otherwise) to ask,

require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessee may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Lease Event of Default has occurred, and for so long as such Lease Event of Default is continuing, the relevant Sub-Lessee and the Lessee do hereby irrevocably appoint the Lessor, its successors and permitted assigns, the relevant Sub-Lessee's and the Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee, the Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessor may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessor may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Loan Event of Default has occurred, and for so long as such Loan Event of Default is continuing, each Sub-Lessee, the Lessee and the Lessor do hereby irrevocably appoint the Security Trustee, its successors and permitted assigns, the relevant Sub-Lessee's, the Lessee's and the Lessor's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee, the Lessee, the Lessor or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Security Trustee may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Security Trustee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

4.      NO ASSIGNOR SHALL BE DEEMED TO HAVE GIVEN, AND EACH ASSIGNOR HEREBY EXPRESSLY DISCLAIMS, ANY IMPLIED REPRESENTATION OR WARRANTY AS TO THE AIRWORTHINESS, CONDITION, MERCHANTABILITY, DESIGN, OPERATION OR FITNESS FOR USE OF ANY AIRCRAFT OR ANY PART THEREOF, OR ANY OTHER IMPLIED REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO ANY AIRCRAFT.

5.      Each Assignor agrees that at any time and from time to time upon the written request of any Transaction Party, it will promptly and duly execute and deliver any and all such further instruments and documents and take such further action as such Transaction Party may reasonably request in order to obtain the full benefits of this Assignment and of the rights and powers herein granted.

6.      Each Assignor does hereby represent and warrant that it has not assigned or pledged, and hereby covenants that it will not assign or pledge so long as this Assignment shall remain in effect, the whole or any part of the rights hereby assigned to anyone other than the Lessor. Each Assignor hereby acknowledges and agrees that the Lessor has assigned to the Security Trustee, as collateral security for the Lessor's obligations under the Loan Agreement and the other Operative Documents, all of the Lessor's right, title and interest in and to the Purchase Agreement (as it relates to any

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Aircraft) and this Assignment pursuant to the Lessor Security Assignment, and each Assignor hereby consents to such assignment.

7.     The Lessor agrees that it will not enter into any agreement with the Manufacturer that would amend, modify, rescind, cancel or terminate the Purchase Agreement in respect of any Aircraft or take any other action to amend, modify, rescind, cancel or terminate any of the Assignors' rights in respect of any Aircraft, without the prior written consent of the Assignors and the Security Trustee (so long as the Lien of the Lessor Security Assignment is in effect and has not been released by the Security Trustee).

8.     Each of the Transaction Parties agrees, expressly for the benefit of the Manufacturer, that it will not disclose, directly or indirectly, any terms of the Purchase Agreement disclosed to it; provided, that (a) the Transaction Parties may use, retain and disclose any such information to its special counsel and public accountants, who shall maintain the confidentiality of the Purchase Agreement, (b) the Transaction Parties may disclose any such information as required by Applicable Law or governmental regulations, (c) to the extent that any Transaction Party may have received a subpoena or other written demand under colour of legal right for such information, such Transaction Party may disclose such information, but it shall first, as soon as practicable upon receipt of such demand, furnish a copy thereof to the Manufacturer, and the relevant Transaction Party shall afford the Manufacturer reasonable opportunity, at the moving Person's cost and expense, to obtain a protective order or other reasonably satisfactory assurance of confidential treatment for the information required to be disclosed, (d) the Transaction Parties may disclose any such information to any bona fide potential purchaser or lessee of any Aircraft (subject to execution by such potential purchaser or lessee of a confidentiality undertaking substantially similar to this Section 8) and (e) the Transaction Parties may disclose any such information to the Agent, the Lenders, the Security Trustee, the Insurer Representative, each Insurer Group Member and any other Person with whom any of the foregoing is in good faith conducting negotiations relating to the possible transfer and sale of such Person's interests in the Purchase Agreement, any Aircraft and/or any provision of funds (subject to the execution of a confidentiality undertaking substantially similar to this Section 8 by such Agent, Lender, Security Trustee, Insurer Representative, Insurer Group Member and Person described in this paragraph 8) and to their respective special counsel and financial advisors (who shall maintain the confidentiality of the Purchase Agreement to the extent required by this Section 8).

9.     This Assignment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

10.    On the Delivery Date for an Aircraft, subject to satisfaction or waiver of the conditions set forth in the Participation Agreement required to be satisfied on or prior to the Delivery Date for such Aircraft, the Lessor agrees to purchase such Aircraft from the Manufacturer and (without limiting its other payment obligations under the Operative Documents on the Delivery Date for such Aircraft) to pay the Purchase Price for such Aircraft in the manner specified in the Purchase Agreement.

11.    If the Delivery Date for an Aircraft does not occur by 11:59 p.m. (Seattle time) on the date set forth in the Purchase Assignment Supplement in respect of such Aircraft, this Assignment (as it relates to such Aircraft) shall (unless otherwise agreed by the parties hereto) automatically terminate, whereupon the rights subject to this Assignment (as it relates to such Aircraft) shall be deemed reassigned by the Lessor to the Assignors without the requirement of any further act or action (other than any notice required to be given to the Manufacturer).

12.    For the purposes of this Assignment, all notices and other communications shall be in writing, in English, and shall be given or made by fax, or personal delivery and faxed or delivered to the intended recipient (other than the Manufacturer) at the address specified below, or, as to any party, at such other address as shall be designated by such party in a notice to each other party hereto. Except

FILED DATE: 1/11/2023 2:57 PM   2023L000001

as otherwise provided in this Assignment, all such communications shall be deemed to have been duly given when transmitted by fax (provided such transmission by fax is in legible form and is accompanied by or generates a substantially simultaneous confirmation of transmission), or personally delivered, in each case given or addressed as aforesaid.

(a)     If to the Lessor:

AAA Max 4 Limited
c/o Walkers Fiduciary Limited
Cayman Corporate Centre
27 Hospital Road
George Town
Grand Cayman KY1-9008
Cayman Islands

Attention:     The Directors

Telephone:     +1 345 814 7600

Email:     fiduciary@walkersglobal.com

(b)     If to Arctic:

Arctic Aviation Assets DAC
Ground Floor
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:     Tore Jenssen

Telephone:     + 353 879 461 070

Fax:     + 353 1 814 1839

(c)     If to Norwegian:

Norwegian Air Shuttle ASA
Oksenøyveien 3
1366 Lysaker
Norway

Attention:     Chief Financial Officer

Telephone:     + 47 99 54 6400

Fax:     +47 67 59 3001

Email:     notices@norwegian.com

with a copy to Arctic at the address above.

(d)     If to the Security Trustee:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Bank of Utah
200 East South Temple
Suite 210
Salt Lake City, UT 84111

Attention:      Jennifer Miller

Fax:             +1 801-746-3519

Email:          corptrust@bankofutah.com

(e)      If to the Lessee:

Trollfjorden Limited
c/o Arctic Aviation Assets DAC
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:     + 353 879 461 070

Fax:             + 353 1 814 7839

with a copy to Arctic at the address above.

(f)      If to Norway AS, as Sub-Lessee:

Norwegian Air Shuttle ASA
Oksenøyveien 3
Postboks 115
N-1330 Fornebu
Norway

Attention:      +47 67 59 30 78
Telephone:     +47 67 59 30 01
Fax:             notices@norwegian.no
E-mail:          Chief Financial Officer

with a copy to Norwegian at the address above.

(g)      If to Sweden AB, as Sub-Lessee:

Box 242
190 47 Stockholm-Arlanda
Sweden

Attention: Asgeir Nyseth
Telephone: +47 91 59 07 99
E-mail: asgeir.nyseth@norwegian.no

with a copy to Norwegian at the address above.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

13.    This Assignment will be governed by, and construed in accordance with, the laws of the State of Washington, except for the conflict of laws principles thereof.

14.    The provisions of clauses 13(d)(ii) to 13(d)(vi) of the Participation Agreement, in so far as they relate to any dispute between the parties shall apply hereto as if set out in this Assignment *mutatis mutandis*.

15.    Each of the parties to this Assignment (except the Sub-Lessees) acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Assignment is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

16.    Each Sub-Lessee acknowledges and agrees that the provisions of clause 20(c) (No Discharge, etc.; No Petitioning) and clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement apply to it to the same extent as if it were a party to the Participation Agreement and as if the reference to "Lessee" in such clause 20(c) referred to the Lessee and each Sub-Lessee.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Agreement Assignment to be duly executed the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 1

## FORM OF CONSENT AND AGREEMENT

## THE BOEING COMPANY

## CONSENT AND AGREEMENT

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated _____ 2018 between **AAA MAX 4 LIMITED** (the **Lessor**), **TROLLFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR SHUTTLE ASA** (**Norwegian**) and **ARCTIC AVIATION ASSETS DAC** (**Arctic**) (each of Arctic and Norwegian being an **Assignor**), **NORWEGIAN AIR NORWAY AS** (**Norway AS**) and **NORWEGIAN AIR SWEDEN AB** (**Sweden AB**) (each of Norway AS and Sweden AB being a **Sub-Lessee**) and **BANK OF UTAH**, as security trustee (the **Security Trustee**) relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number [●] (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.  all representations, warranties, indemnities and agreements of the Manufacturer, including the Warranties, under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.  no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.  the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.  if the Lessor desires to lease or sell the Aircraft to an entity who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for an entity in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

5.   the Manufacturer will continue to recognize the relevant Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement, including the Warranties, and agrees to pay to the relevant Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the relevant Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Loan Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.   the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.   the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.   The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)   the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)   the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)     to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)     Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.     The Manufacturer hereby confirms to the Security Trustee that:

(a)     upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)     except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.    The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.    The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.    It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 2018

**THE BOEING COMPANY**

By:

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

MSN [●]

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 2**

**DESCRIPTION OF AIRCRAFT**

Each of two (2) Boeing model 737 – 8 airframes, bearing Manufacturer's serial numbers 63971 and 42835, as further identified in each Purchase Assignment Supplement to be entered into by the Assignors, the Lessor, the Lessee and the relevant Sub-Lessee in respect of such airframes, together, in the case of each such airframe, with the two (2) CFM LEAP-1B27 engines installed thereon and each other engine identified on any Purchase Assignment Supplement thereto.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 3**

**FORM OF PURCHASE ASSIGNMENT SUPPLEMENT**

**PURCHASE ASSIGNMENT SUPPLEMENT NO. __**

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated _____ 2018 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 4 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **TROLLFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**), [**NORWEGIAN AIR NORWAY AS**, a private company limited by shares duly incorporated under the laws of Norway / **NORWEGIAN AIR SWEDEN AB**, a private company limited by shares duly incorporated under the laws of Sweden] (the **Sub-Lessee**) and **BANK OF UTAH**, as security trustee (the **Security Trustee**) and supplements that Purchase Agreement Assignment dated _____ 2018 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

**W I T N E S S E T H:**

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and the Sub-Lessee desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and the Sub-Lessee hereby agrees as follows:

1. The Sub-Lessee of the Aircraft is: _____

2. Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

   Manufacturer's serial number: _____

   Registration Mark: _____

   Engine Manufacturer's serial numbers: _____ & _____

3. Latest Delivery Date with respect to such Aircraft: _____

4. Maximum liability of the Lessor with respect to the Purchase Price of such Aircraft: U.S.$_____

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. ___ to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

**SIGNED AND DELIVERED** as a **DEED**                )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully                                )
appointed attorney                                    )                     …………………………………..

                                                                          Lawfully appointed attorney

in the presence of:                                   )

Witness's Signature:          _____

Name:                         _____

Address:                      _____

                              _____

**Norwegian**                                          )

**SIGNED AND DELIVERED** as a **DEED**                )
by **NORWEGIAN AIR SHUTTLE ASA**
acting by its lawfully                                )
appointed attorney                                    )                     …………………………………..

                                                                          Lawfully appointed attorney

in the presence of:                                   )

Witness's Signature:          _____

Name:                         _____

Address:                      _____

                              _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**EXECUTED** as a **DEED** by                                    )
**AAA MAX 4 LIMITED**                                            )
acting by                                                        )
_____                                         )
acting under the authority of that
Company, in the presence of:                                    )

Witness's Signature:        _____

Name:                       _____

Address:                    _____

                            _____

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed Attorney of
**BANK OF UTAH**
(as Security Trustee)

acting by

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature:     _____
Name:                    _____
Address:                 _____
                         _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (2)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Lessee**

| | | |
|---|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) | |
| **TROLLFJORDEN LIMITED** | ) | |
| acting by | ) | |
| its lawfully appointed attorney | ) | …………………………….. |

Lawfully appointed attorney

in the presence of:

Witness's Signature:   _____

Name:   _____

Address:   _____

_____

**Sub-Lessee**

| | | |
|---|---|---|
| **EXECUTED** as a **DEED** by | ) | |
| **[NORWEGIAN AIR NORWAY AS /** | ) | |
| **NORWEGIAN AIR SWEDEN AB]** | ) | …………………………….. |
| acting by its lawfully appointed attorney | | |

Lawfully appointed attorney

in the presence of:

Witness's Signature:   _____

Name:   _____

Address:   _____

_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (3)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By:
Name:
Title:
Date:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 4

## THE WARRANTIES

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**EXHIBIT B**

**to**

**AIRCRAFT GENERAL TERMS AGREEMENT**

**AGTA-NSB**

**between**

**THE BOEING COMPANY**

**and**

**NORWEGIAN AIR SHUTTLE ASA**

**CUSTOMER SUPPORT DOCUMENT**

This document contains:

Part 1:   Boeing Maintenance and Flight Training Programs;
          Operations Engineering Support

Part 2:   Field and Engineering Support Services

Part 3:   Technical Information and Materials

Part 4:   Alleviation or Cessation of Performance

Part 5:   Protection of Proprietary Information and
          Proprietary Materials

**BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

**CUSTOMER SUPPORT DOCUMENT**

**PART 1:     BOEING MAINTENANCE AND FLIGHT TRAINING PROGRAMS; OPERATIONS ENGINEERING SUPPORT**

1.     Boeing Training Programs.

1.1     Boeing will provide maintenance training and flight training programs to support the introduction of a specific model of aircraft into service. The training programs will consist of general and specialized courses and will be described in a Supplemental Exhibit to the applicable purchase agreement.

1.2     Boeing will conduct all training at Boeing's primary training facility for the model of aircraft purchased unless otherwise agreed.

1.3     All training will be presented in the English language.  If translation is required, Customer will provide interpreters.

1.4     Customer will be responsible for all expenses of Customer's personnel. Boeing will transport Customer's personnel between their local lodging and Boeing's training facility.

2.     Training Planning Conferences.

Customer and Boeing will conduct planning conferences approximately 12 months before the scheduled delivery month of the first aircraft of a model to define and schedule the maintenance and flight training programs.

3.     Operations Engineering Support.

3.1     As long as an aircraft purchased by Customer from Boeing is operated by Customer in scheduled revenue service, Boeing will provide operations engineering support.  Such support will include:

3.1.1     assistance with the analysis and preparation of performance data to be used in establishing operating practices and policies for Customer's operation of aircraft;

3.1.2     assistance with interpretation of the minimum equipment list, the definition of the configuration deviation list and the analysis of individual aircraft performance;

AGTA-NSB                              B
                                    1-1
                      **BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM    2023L000001

3.1.3   assistance with solving operational problems associated with delivery and route-proving flights;

3.1.4   information regarding significant service items relating to aircraft performance or flight operations; and

3.1.5   if requested by Customer, Boeing will provide operations engineering support during an aircraft ferry flight.

4.    Training at a Facility Other Than Boeing's.

If requested by Customer, Boeing will conduct the classroom portions of the maintenance and flight training (except for the Performance Engineer training courses) at a mutually acceptable alternate training site, subject to the following conditions:

4.1    Customer will provide acceptable classroom space, simulators (as necessary for flight training) and training equipment required to present the courses;

4.2    Customer will pay Boeing's then-current per diem charge for each Boeing instructor for each day, or fraction thereof, that the instructor is away from their home location, including travel time;

4.3    Customer will reimburse Boeing for the actual costs of round-trip transportation for Boeing's instructors and the shipping costs of training Materials between the primary training facility and the alternate training site;

4.4    Customer will be responsible for all taxes, fees, duties, licenses, permits and similar expenses incurred by Boeing and its employees as a result of Boeing's providing training at the alternate site or incurred as a result of Boeing providing revenue service training; and

4.5    Those portions of training that require the use of training devices not available at the alternate site will be conducted at Boeing's facility or at some other alternate site.

5.    General Terms and Conditions.

5.1    Boeing flight instructor personnel will not be required to work more than 5 days per week, or more than 8 hours in any one 24-hour period, of which not more than 5 hours per 8-hour workday will be spent in actual flying.  These foregoing restrictions will not apply to ferry assistance or revenue service training services, which will be governed by FAA rules and regulations.

5.2    **Normal Line Maintenance** is defined as line maintenance that Boeing might reasonably be expected to furnish for flight crew training at Boeing's facility, and will include ground support and aircraft storage in the open, but will not include provision of spare parts. Boeing will provide Normal Line Maintenance services for any aircraft while the aircraft is used for flight crew training at Boeing's facility in accordance with the Boeing Maintenance Plan (Boeing document D6-82076) and the Repair Station Operation and Inspection Manual (Boeing document D6-25470). Customer will provide such services if flight crew training is conducted elsewhere. Regardless of the location of such training, Customer will be responsible for providing all maintenance items (other than those included in Normal Line Maintenance) required during the training, including, but not limited to, fuel, oil, landing fees and spare parts.

5.3    If the training is based at Boeing's facility, and the aircraft is damaged during such training, Boeing will make all necessary repairs to the aircraft as promptly as possible. Customer will pay Boeing's reasonable charge, including the price of parts and materials, for making the repairs. If Boeing's estimated labor charge for the repair exceeds $25,000, Boeing and Customer will enter into an agreement for additional services before beginning the repair work.

5.4    If the flight training is based at Boeing's facility, several airports in surrounding states may be used, at Boeing's option. Unless otherwise agreed in the flight training planning conference, it will be Customer's responsibility to make arrangements for the use of such airports.

5.5    If Boeing agrees to make arrangements on behalf of Customer for the use of airports for flight training, Boeing will pay on Customer's behalf any landing fees charged by any airport used in conjunction with the flight training. At least 30 days before flight training, Customer will provide Boeing an open purchase order against which Boeing will invoice Customer for any landing fees Boeing paid on Customer's behalf. The invoice will be submitted to Customer approximately 60 days after flight training is completed, when all landing fee charges have been received and verified. Customer will pay to Boeing within 30 days of the date of the invoice.

5.6    If requested by Boeing, in order to provide the flight training or ferry flight assistance, Customer will make available to Boeing an aircraft after delivery to familiarize Boeing instructor or ferry flight crew personnel with such aircraft. If flight of the aircraft is required for any Boeing instructor or ferry flight crew member to maintain an FAA license for flight proficiency or landing currency, Boeing will be responsible for the costs of fuel, oil, landing fees and spare parts attributable to that portion of the flight.

5.7    If any part of the training described in Article 1.1 of this Exhibit is not used by Customer within 12 months after the delivery of the last aircraft under the relevant purchase agreement, Boeing will not be obligated to provide such training.

AGTA-NSB                                B
                                       1-3
                          **BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001



FILED DATE: 1/11/2023 2:57 PM   2023L000001

**CUSTOMER SUPPORT DOCUMENT**

**PART 2:       FIELD AND ENGINEERING  SUPPORT SERVICES**

1.       <u>Field Service Representation</u>.

Boeing will furnish field service representation to advise Customer with respect to the maintenance and operation of an aircraft (**Field Service Representatives**).

1.1       Field Service representation will be available at or near Customer's main maintenance or engineering facility beginning before the scheduled delivery month of the first aircraft and ending 12 months after delivery of the last aircraft covered by a specific purchase agreement.

1.2       Customer will provide, at no charge to Boeing, suitable furnished office space and office equipment at the location where Boeing is providing Field Service Representatives.  As required, Customer will assist each Field Service Representative with visas, work permits, customs, mail handling, identification passes and formal introduction to local airport authorities.

1.3       Boeing Field Service Representatives are assigned to various airports around the world.  Whenever Customer's aircraft are operating through any such airport, the services of Boeing's Field Service Representatives are available to Customer.

2.       <u>Engineering Support Services</u>.

Boeing will, if requested by Customer, provide technical advisory assistance for any aircraft and Boeing Product (as defined in Part I of Exhibit C).  Technical advisory assistance, provided from the Seattle area or at a base designated by Customer as appropriate, will include:

2.1       <u>Operational Problem Support</u>.   If Customer experiences operational problems with an aircraft, Boeing will analyze the information provided by Customer to determine the probable nature and cause of the problem and to suggest possible solutions.

2.2       <u>Schedule Reliability Support</u>.   If Customer is not satisfied with the schedule reliability of a specific model of aircraft, Boeing will analyze information provided by Customer to determine the nature and cause of the problem and to suggest possible solutions.

AGTA-NSB                                    B
                                                    2-1
                              **BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

2.3 <u>Maintenance Cost Reduction Support</u>.  If Customer is concerned that actual maintenance costs of a specific model of aircraft are excessive, Boeing will analyze information provided by Customer to determine the nature and cause of the problem and to suggest possible solutions.

2.4 <u>Aircraft Structural Repair Support</u>.  If Customer is designing structural repairs and desires Boeing's support, Boeing will analyze and comment on Customer's engineering releases relating to structural repairs not covered by Boeing's Structural Repair Manual.

2.5 <u>Aircraft Modification Support</u>.  If Customer is designing aircraft modifications and requests Boeing's support, Boeing will analyze and comment on Customer's engineering proposals for changes in, or replacement of, systems, parts, accessories or equipment manufactured to Boeing's detailed design.  Boeing will not analyze or comment on any major structural change unless Customer's request for such analysis and comment includes complete detailed drawings, substantiating information (including any information required by applicable government agencies), all stress or other appropriate analyses, and a specific statement from Customer of the substance of the review and the response requested.

2.6 <u>Facilities, Ground Equipment and Maintenance Planning Support</u>.  Boeing will, at Customer's request, evaluate Customer's technical facilities, tools and equipment for servicing and maintaining aircraft, to recommend changes where necessary and to assist in the formulation of an initial maintenance plan for the introduction of the aircraft into service.

2.7 <u>Post-Delivery Service Support</u>.  Boeing will, at Customer's request, perform work on an aircraft after delivery but prior to the initial departure flight or upon the return of the aircraft to Boeing's facility prior to completion of that flight.  In that event the following provisions will apply.

2.7.1   Boeing may rely upon the commitment authority of the Customer's personnel requesting the work.

2.7.2   As title and risk of loss has passed to Customer, the insurance provisions of Article 8.2 of the AGTA apply.

2.7.3   The provisions of the Boeing warranty in Part 2 of Exhibit C of this AGTA apply.

2.7.4   Customer will pay Boeing for requested work not covered by the Boeing warranty, if any.

AGTA-NSB

B
2-2
**BOEING PROPRIETARY**





FILED DATE: 1/11/2023 2:57 PM   2023L000001

    2.7.5   The <u>DISCLAIMER AND RELEASE</u> and <u>EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES</u> provisions in Article 11 of Part 2 of Exhibit C of this AGTA apply.

    2.8   <u>Additional Services</u>.   Boeing may, at Customer's request, provide additional services for an aircraft after delivery, which may include, but not be limited to, retrofit kit changes (kits and/or information), training, flight services, maintenance and repair of aircraft.  Such additional services will be subject to a mutually acceptable price, schedule, scope of work and other applicable terms and conditions.  The DISCLAIMER AND RELEASE and the EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES provisions in Article 11 of Part 2 of Exhibit C of this AGTA and the insurance provisions in Article 8.2 of this AGTA will apply to any such work.  Title to and risk of loss of any such aircraft will always remain with Customer.

**CUSTOMER SUPPORT DOCUMENT**

**PART 3:      TECHNICAL INFORMATION AND MATERIALS**

1.      General.

**Materials** are defined as any and all items that are created by Boeing or a third party, which are provided directly or indirectly from Boeing and serve primarily to contain, convey or embody information.  Materials may include either tangible embodiments (for example, documents or drawings), or intangible embodiments (for example, software and other electronic forms) of information but excludes Aircraft Software.  **Aircraft Software** is defined as software that is installed on and used in the operation of the aircraft.

Boeing will furnish to Customer certain Materials to support the maintenance and operation of the aircraft.  Such Materials will, if applicable, be prepared generally in accordance with Air Transport Association of America (ATA) iSpec 2200, entitled "Information Standards for Aviation Maintenance."  Materials not covered by iSpec 2200 will be provided in a structure suitable for the Material's intended use.  Materials will be in English and in the units of measure used by Boeing to manufacture an aircraft.

2.      Materials Planning Conferences.

Customer and Boeing will conduct planning conferences approximately 12 months before the scheduled delivery month of the first aircraft of a model in order to mutually determine the proper format and quantity of Materials to be furnished to Customer in support of the aircraft.

Customer may select one Boeing digital format as the delivery medium.  Should a Boeing digital format not be available, Customer may select a reasonable quantity of printed format.

3.      Information and Materials - Incremental Increase.

Should the delivery medium be of printed format, until one year after the month of delivery of the last aircraft covered by a specific purchase agreement, Customer may annually request in writing a reasonable increase in the quantity of printed Materials. Boeing will provide the additional quantity of printed Materials at no additional charge beginning with the next normal revision cycle.  Customer may request a decrease in revision quantities at any time.

AGTA-NSB

B
3-1



4.      Advance Representative Copies.

All advance representative copies of Materials will be selected by Boeing from available sources.  Such advance copies will be for advance planning purposes only.

5.      Customized Materials.

All customized Materials will reflect the configuration of each aircraft as delivered.

6.      Revisions.

6.1     Revision Service.  The schedule for updating certain Materials will be identified in the planning conference.  Such updates will reflect changes to Materials developed by Boeing.

6.2     Revisions Based on Boeing Service Bulletin Incorporation.  If Boeing receives written notice that Customer intends to incorporate, or has incorporated, any Boeing service bulletin in an aircraft, Boeing will issue revisions to Materials with revision service reflecting the effects of such incorporation into such aircraft.

7.      Supplier Technical Data.

7.1     For supplier-manufactured programmed airborne avionics components and equipment classified as Seller Furnished Equipment (**SFE**) or Seller Purchased Equipment (**SPE**) or Buyer Designated Equipment (**BDE**) which contain computer software designed and developed in accordance with Radio Technical Commission for Aeronautics Document No. RTCA/DO-178 dated January 1982, No. RTCA/DO-178A dated March 1985, or later as available, Boeing will request that each supplier of the components and equipment make software documentation available to Customer.

7.2     The provisions of this Article will not be applicable to items of BFE.

7.3     Boeing will furnish to Customer a document identifying the terms and conditions of the product support agreements between Boeing and its suppliers requiring the suppliers to fulfill Customer's requirements for information and services in support of the specific model of aircraft.

8.      Buyer Furnished Equipment Data.

Boeing will incorporate BFE information into the customized Materials providing Customer makes the information available to Boeing at least nine months prior to the scheduled delivery month of Customer's first aircraft of a specific model.  Customer

AGTA-NSB                              B
                                    3-2

FILED DATE: 1/11/2023 2:57 PM   2023L000001




FILED DATE: 1/11/2023 2:57 PM   2023L000001

agrees to furnish the information in Boeing standard digital format if Materials are to be delivered in Boeing standard digital format.

9.   <u>Materials Shipping Charges</u>.

Boeing will pay the reasonable transportation costs of the Materials.  Customer is responsible for any customs clearance charges, duties, and taxes.

10.   <u>Customer's Shipping Address</u>.

The Materials furnished to Customer hereunder are to be sent to a single address to be specified.  Customer will promptly notify Boeing of any change to the address.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## CUSTOMER SUPPORT DOCUMENT

### PART 4:      ALLEVIATION OR CESSATION OF PERFORMANCE

Boeing will not be required to provide any services, training or other things at a facility designated by Customer if any of the following conditions exist:

      1.     a labor stoppage or dispute in progress involving Customer;

      2.     wars or warlike operations, riots or insurrections in the country where the facility is located;

      3.     any condition at the facility which, in the opinion of Boeing, is detrimental to the general health, welfare or safety of its personnel or their families;

      4.     the United States Government refuses permission to Boeing personnel or their families to enter into the country where the facility is located, or recommends that Boeing personnel or their families leave the country; or

After the location of Boeing personnel at the facility, Boeing further reserves the right, upon the occurrence of any of such events, to immediately and without prior notice to Customer relocate its personnel and their families.

Boeing will not be required to provide any Materials at a facility designated by Customer if the United States Government refuses permission to Boeing to deliver Materials to the country where the facility is located.

**CUSTOMER SUPPORT DOCUMENT**

**PART 5:     PROTECTION OF PROPRIETARY INFORMATION
AND PROPRIETARY MATERIALS**

1.      <u>General</u>.

All Materials provided by Boeing to Customer and not covered by a Boeing
CSGTA or other agreement between Boeing and Customer defining Customer's right to
use and disclose the Materials and included information will be covered by, and subject
to the terms of this AGTA.  Title to all Materials containing, conveying or embodying
confidential, proprietary or trade secret information (Proprietary Information) belonging
to Boeing or a third party (Proprietary Materials), will at all times remain with Boeing or
such third party.  Customer will treat all Proprietary Materials and all Proprietary
Information in confidence and use and disclose the same only as specifically authorized
in this AGTA.

2.      <u>License Grant</u>.

Boeing grants to Customer a worldwide, non-exclusive, non-transferable license
to use and disclose Proprietary Materials in accordance with the terms and conditions of
this AGTA.  Customer is authorized to make copies of Materials (except for Materials
bearing the copyright legend of a third party), and all copies of Proprietary Materials will
belong to Boeing and be treated as Proprietary Materials under this AGTA.  Customer
will preserve all proprietary legends, and all copyright notices on all Materials and insure
the inclusion of those legends and notices on all copies.

3.      <u>Use of Proprietary Materials and Proprietary Information</u>.

Customer is authorized to use Proprietary Materials and Proprietary Information
for the purpose of: (a) operation, maintenance, repair, or modification of Customer's
aircraft for which the Proprietary Materials and Proprietary Information have been
specified by Boeing and (b) development and manufacture of training devices and
maintenance tools for use by Customer.

4.      <u>Providing of Proprietary Materials to Contractors</u>.

Customer is authorized to provide Proprietary Materials to Customer's contractors
for the sole purpose of maintenance, repair, or modification of Customer's aircraft for
which the Proprietary Materials have been specified by Boeing.  In addition, Customer
may provide Proprietary Materials to Customer's contractors for the sole purpose of




developing and manufacturing training devices and maintenance tools for Customer's use. Before providing Proprietary Materials to its contractor, Customer will first obtain a written agreement from the contractor by which the contractor agrees (a) to use the Proprietary Materials only on behalf of Customer, (b) to be bound by all of the restrictions and limitations of this Part 5, and (c) that Boeing is a third party beneficiary under the written agreement.   Customer agrees to provide copies of all such written agreements to Boeing upon request and be liable to Boeing for any breach of those agreements by a contractor.   A sample agreement acceptable to Boeing is attached as Appendix VII.

5.      Providing of Proprietary Materials and Proprietary Information to Regulatory Agencies.

        When and to the extent required by a government regulatory agency having jurisdiction over Customer or an aircraft, Customer is authorized to provide Proprietary Materials and to disclose Proprietary Information to the agency for use in connection with Customer's operation, maintenance, repair, or modification of such aircraft. Customer agrees to take all reasonable steps to prevent the agency from making any distribution, disclosure, or additional use of the Proprietary Materials and Proprietary Information provided or disclosed.   Customer further agrees to notify Boeing immediately upon learning of any (a) distribution, disclosure, or additional use by the agency, (b) request to the agency for distribution, disclosure, or additional use, or (c) intention on the part of the agency to distribute, disclose, or make additional use of Proprietary Materials or Proprietary Information.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

AGTA-NSB                                          B
AGTA_Exhibit_B                              5-2

**BOEING PROPRIETARY**



**EXHIBIT C**

**to**

**AIRCRAFT GENERAL TERMS AGREEMENT**

**AGTA-NSB**

**between**

**THE BOEING COMPANY**

**and**

**PRODUCT ASSURANCE DOCUMENT**

This document contains:

Part 1:    Exhibit C Definitions

Part 2:    Boeing Product Warranty

Part 3     Boeing Service Life Policy

Part 4:    Supplier Warranty Commitment

Part 5:    Boeing Interface Commitment

Part 6:    Boeing Indemnities against Patent and Copyright
Infringement

AGTA-NSB                          C
                                  i



FILED DATE: 1/11/2023 2:57 PM   2023L000001

## PRODUCT ASSURANCE DOCUMENT

## PART 1:      EXHIBIT C DEFINITIONS

**Authorized Agent** - Agent appointed by Customer to perform corrections and to administer warranties (see Appendix VI to the AGTA for a form acceptable to Boeing).

**Average Direct Hourly Labor Rate** - the average hourly rate (excluding all fringe benefits, premium-time allowances, social charges, business taxes and the like) paid by Customer to its Direct Labor employees.

**Boeing Product** - any system, accessory, equipment, part or Aircraft Software that is manufactured by Boeing or manufactured to Boeing's detailed design with Boeing's authorization.

**Boeing Warranty** - the organization within Boeing responsible for administration of warranties between Boeing and Customer.

**Correct(s)** - to repair, modify, provide modification kits or replace with a new product.

**Correction** - a repair, a modification, a modification kit or replacement with a new product.

**Corrected Boeing Product** - a Boeing Product which is free of defect as a result of a Correction.

**Direct Labor -** Labor spent by Customer's direct labor employees to access, remove, disassemble, modify, repair, inspect and bench test a defective Boeing Product, and to reassemble, reinstall a Corrected Boeing Product and perform final inspection and testing.

**Direct Materials** - Items such as parts, gaskets, grease, sealant and adhesives, installed or consumed in performing a Correction, excluding allowances for administration, overhead, taxes, customs duties and the like.

**Rogue Unit** - A Boeing Product, on which an unscheduled removal due to breach of warranty occurs three (3) or more times both (i) within the warranty period and (ii) within either twelve (12) consecutive months or one thousand (1,000) consecutive operating hours.

**Specification Control Drawing (SCD)** - a Boeing document defining specifications for certain Supplier Products.

**Supplier** - the manufacturer of a Supplier Product.

AGTA-NSB                                                    C
                                                         1-1
                          **BOEING PROPRIETARY**                          

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Supplier Product** - any system, accessory, equipment, part or Aircraft Software that is not manufactured to Boeing's detailed design. This includes but is not limited to parts manufactured to a SCDrawing, all standards, and other parts obtained from non-Boeing sources.

AGTA-NSB

C
1-2
**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**PRODUCT ASSURANCE DOCUMENT**

**PART 2:      BOEING PRODUCT WARRANTY**

1.     <u>Applicability</u>.

        This warranty applies to all Boeing Products. Warranties applicable to Supplier Products are in Part 4.    Warranties applicable to engines will be provided by Supplemental Exhibits to individual purchase agreements.

2.     <u>Warranty</u>.

        2.1    <u>Coverage</u>. Boeing warrants that at the time of delivery:

                (i)     the aircraft will conform to the Detail Specification except for portions stated to be estimates, approximations or design objectives;

                (ii)    all Boeing Products will be free from defects in material, process of manufacture and workmanship, including the workmanship utilized to install Supplier Products, engines and BFE, and;

                (iii)   all Boeing Products will be free from defects in design, including selection of materials and the process of manufacture, in view of the state of the art at the time of design

        2.2    <u>Exceptions</u>. The following conditions do not constitute a defect under this warranty:

                (i)     conditions resulting from normal wear and tear;

                (ii)    conditions resulting from acts or omissions of Customer; and

                (iii)   conditions resulting from failure to properly service and maintain a Boeing Product.

3.     <u>Warranty Periods</u>.

        3.1    <u>Warranty</u>.  The warranty period begins on the date of aircraft or Boeing Product delivery (Delivery) and ends at the applicable time specified in subsections 3.1(i) through 3.1(iii) below:

                (i)     for Boeing aircraft models 777-200, -300, 737-600, -700, -800, -900, 787 or new aircraft models designed and manufactured with similar, new technology and for the

AGTA-NSB                              C
                                     2-1
                        **BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

model 747-8, the warranty period ends 48 months after Delivery;

(ii)    in addition, for a Boeing Product installed at the time of delivery in a 787 model aircraft but not inspected during the initial 48 month warranty period, the warranty period continues until the date upon which Customer first inspects such Boeing Product pursuant to its Boeing Maintenance Planning Data Document but not later than 12 years after Delivery of such 787 aircraft;

(iii)    for any other Boeing aircraft model the warranty period ends 36 months after Delivery.

3.2    <u>Warranty on Corrected Boeing Products</u>.  The warranty period applicable to a Corrected Boeing Product shall begin on the date of delivery of the Corrected Boeing Product or date of delivery of the kit or kits furnished to Correct the Boeing Product and shall be for the period specified immediately below:

(i)  For Corrected Boeing Products which have been Corrected because of a defect in material, the applicable warranty period is the remainder of the initial warranty period for the defective Boeing Product.

(ii)  For Corrected Boeing Products which have been Corrected because of defect in workmanship, the applicable warranty period is the remainder of the initial warranty or 12 months following the date of delivery of the Corrected Boeing Product, whichever is longer.

(iii)  For Corrected Boeing Products which have been Corrected because of a defect in design, the applicable warranty period is 18 months or the remainder of the initial warranty period, whichever is longer.

3.3    <u>Survival of Warranties</u>. All warranty periods are stated above. The Performance Guarantees will not survive delivery of the aircraft.

4.    <u>Remedies</u>.

4.1    <u>Correction Options</u>. Customer may, at its option, either perform a Correction of a defective Boeing Product or return the Boeing Product to Boeing for Correction.  During the warranty period, Boeing will not charge Customer for tests on Boeing Products returned to Boeing for Correction on which Boeing is unable to confirm the failure claimed, provided:

(i)    Boeing's written instructions were followed by the Customer for testing the Boeing Product prior to its return to Boeing, and

AGTA-NSB                              C



FILED DATE: 1/11/2023 2:57 PM   2023L000001

(ii)    Customer's claim includes all applicable documentation of such tests with the returned Boeing Product, including but not limited to: Central Maintenance Computer (CMC), Flight Maintenance Computer System, (FMCS), Fault Isolation Manual (FIM), Engine Indicating and Crew Alerting System (EICAS) or Built In Test Equipment (BITE) messages.

4.2    <u>Warranty Inspections</u>. In addition to the remedies to Correct defects in Boeing Products described in Article 7.3, below, Boeing will reimburse Customer for the cost of Direct Labor to perform certain inspections of the aircraft to determine the occurrence of a condition Boeing has identified as a covered defect, provided the inspections are recommended by a service bulletin or service letter issued by Boeing during the warranty period.

Such reimbursement will not apply to any inspections performed after a Correction is available to Customer and Customer has had a reasonable time to incorporate the Correction, given the Customer's fleet size and maintenance schedule.

4.3    <u>Rogue Units.</u>

4.3.1    Upon written request, Boeing will lend Customer at no charge an interchangeable Boeing Product in exchange for a Rogue Unit. Within ten (10) calendar days of its receipt of the loaned Boeing Product, Customer will ship the Rogue Unit to Boeing. Customer will provide with the Rogue Unit verification of the following requirements:

(i)    The removed Boeing Product failed three (3) times within twelve (12) consecutive months or one thousand (1000) consecutive operating hours during the warranty period following initial delivery,

(ii)    Removals were performed in compliance with flight or maintenance manuals approved by the FAA or the comparable regulatory agency for the country in which the aircraft is registered, and

(iii)    Any Corrections or tests to the Boeing Product were performed by Customer according to the latest revision of the Boeing Component Maintenance Manual (CMM), according to written instructions from Boeing, or by Boeing.

4.3.2    Upon receipt of a Rogue Unit and the required verifications, Boeing will, at no-charge to Customer, either replace the Rogue Unit with a new

AGTA-NSB

C
2-3
**BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

Boeing Product or, if otherwise agreed, allow Customer to retain the loaned, Boeing Product.

5.    Discovery and Notice.

5.1    For notice to be effective:

(i)    the defect must be discovered during the warranty period; and

(ii)    Boeing Warranty must receive written notice of the discovery no later than 180 days after expiration of the warranty period. The notice must include sufficient information to substantiate the claim.

5.2    Receipt of Customer's or its Authorized Agent's notice of the discovery of a defect secures Customer's rights to remedies under this Exhibit C, even though a Correction is performed after the expiration of the warranty period.

5.3    Once Customer has given valid notice of the discovery of a defect, a claim will be submitted as soon as practicable after performance of the Correction.

5.4    Boeing may release service bulletins or service letters advising Customer of the availability of certain warranty remedies. When such advice is provided, Customer will be deemed to have fulfilled the requirements for discovery of the defect and submittal of notice under this Exhibit C as of the in-warranty date specified in industry support information in a service bulletin or service letter

6.    Filing a Claim.

6.1    Authority to File. Claims may be filed by Customer or its Authorized Agent.  Appointment of an Authorized Agent will only be effective upon Boeing's receipt of the Authorized Agent's express written agreement, in a form satisfactory to Boeing, to be bound by and to comply with all applicable terms and conditions of this Aircraft General Terms Agreement.

6.2    Claim Information.

6.2.1    Claimant is responsible for providing sufficient information to substantiate Customer's rights to remedies under this Exhibit C.  Boeing may reject a claim for lack of sufficient information.  At a minimum, such information must include:

(i)    identity of claimant;

AGTA-NSB                                C
                                        2-4
**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

    (ii)        serial or block number of the aircraft on which the defective Boeing Product was delivered;

    (iii)      part number and nomenclature of the defective Boeing Product;

    (iv)      purchase order number and date of delivery of the defective spare part;

    (v)       description and substantiation of the defect;

    (vi)      date the defect was discovered;

    (vii)      date the Correction was completed;

    (viii)     the total flight hours or cycles accrued, if applicable;

    (ix)      an itemized account of direct labor hours expended in performing the Correction; and

    (x)       an itemized account of any direct materials incorporated in the Correction.

    (xi)      for 787 model aircraft claims submitted after the 48 month warranty period, the specific reference within the Boeing Maintenance Planning Data Document to the inspection requirement for such Boeing Product.

6.2.2   Additional information may be required based on the nature of the defect and the remedies requested.

6.3   <u>Boeing Claim Processing</u>.

6.3.1   Any claim for a Boeing Product returned by Customer or its Authorized Agent to Boeing for Correction must accompany the Boeing Product. Any claim not associated with the return of a Boeing Product must be submitted signed and in writing directly by Customer or its Authorized Agent to Boeing Warranty by any of the methods identified in Article 11, "Notice," of the AGTA or through an internet portal and process specified by Boeing.

6.3.2   Boeing will promptly review the claim and will give notification of claim approval or rejection.  If the claim is rejected, Boeing will provide a written explanation.

7.   <u>Corrections Performed by Customer or Its Authorized Agent</u>.




FILED DATE: 1/11/2023 2:57 PM   2023L000001

7.1   <u>Facilities Requirements</u>. Provided Customer, its Authorized Agent or its third party contractor, as appropriate, are certified by the appropriate Civil Aviation Authority or Federal Aviation Authority, Customer or its Authorized Agent may, at its option, Correct defective Boeing Products at its facilities or may subcontract Corrections to a third party contractor.

7.2   <u>Technical Requirements</u>. All Corrections done by Customer, its Authorized Agent or a third party contractor must be performed in accordance with Boeing's applicable service manuals, bulletins or other written instructions, using parts and materials furnished or approved by Boeing.

7.3   <u>Reimbursement</u>.

7.3.1   Boeing will reimburse Customer's reasonable costs of Direct Materials and Direct Labor by credit memorandum (excluding labor hours expended for overhaul) at Customer's Warranty Labor Rate to Correct a defective Boeing Product. Claims for reimbursement must contain sufficient information to substantiate Direct Labor hours expended and Direct Materials consumed. Customer or its Authorized Agent may be required to produce invoices for materials.

7.3.2   Customer's established Warranty Labor Rate will be the greater of the standard labor rate or 150% of Customer's Average Direct Hourly Labor Rate. The standard labor rate paid by Boeing to its customers is established and published annually. Prior to or concurrently with submittal of Customer's first claim for Direct Labor reimbursement, Customer may notify Boeing of Customer's then-current Average Direct Hourly Labor Rate and thereafter notify Boeing of any material change in such rate. Boeing will require information from Customer to substantiate such rates.

7.3.3   Reimbursement for Direct Labor hours to perform Corrections stated in a service bulletin will be based on the labor estimates in the service bulletin.

7.3.4   Boeing will provide to Customer a single, lump sum credit memorandum for Customer's Direct Labor hours expended to incorporate the Corrections (other than of random anomalies) identified in service bulletins and service letters in all in-warranty aircraft covered by such service bulletins or service letters after Customer's submission of a warranty claim and verification of the incorporation of such Corrections with respect to the first affected in-warranty aircraft. Such credit memoranda will not be provided in response to any other requests for reimbursement including, without limitation, those arising out of program letters or other special offers provided by Boeing.

AGTA-NSB

C
2-6
**BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

7.3.5   Boeing will reimburse Customer's freight charges associated with a Correction of a defect on a Boeing Product performed by its Authorized Agent or a third party contractor.

7.3.6   <u>Maximum Reimbursement.</u> Unless previously agreed in writing, the maximum reimbursement for Direct Labor and Direct materials for repair of a defective Boeing Product will not exceed 65% of Boeing's then-current sales price for a new replacement Boeing Product. Inspection, removal, reinstallation labor, final testing, inspection and transportation costs are separate and are not to be included in the cost elements used to determine the 65% limit.  By mutual agreement between Customer and Boeing, Boeing may provide a replacement Product to Customer in lieu of credit reimbursement.

7.4   <u>Disposition of Defective Boeing Products Beyond Economical Repair</u>.

7.4.1   A defective Boeing Product found to be beyond economical repair (see Para. 7.3.6) will be retained for a period of 30 days from the date Boeing receives Customer's claim.  During the 30 day period, Boeing may request return of such Boeing Products for inspection and confirmation of a defect.

7.4.2   After the 30 day period, a defective Boeing Product with a value of U.S. $4,000 or less may be scrapped without notification to Boeing.  Boeing will reimburse Customer or its Authorized Agent for the charge for any item determined to be defective under this Aircraft General Terms Agreement.  If such Boeing Product has a value greater than U.S, $4,000, Customer must obtain confirmation of unrepairability by Boeing's on-site field service representative prior to scrapping.  Confirmation may be in the form of the representative's signature on Customer's claim or through direct communication between the representative and Boeing Warranty.

8.   <u>Corrections Performed by Boeing.</u>

8.1   <u>Freight Charges</u>.  Customer or its Authorized Agent will pre-pay freight charges to return a Boeing Product to Boeing.  If during the period of the applicable warranty Boeing determines the Boeing Product to be defective, Boeing will pre-pay shipping charges to return the Corrected Boeing Product.  Boeing will reimburse Customer or its Authorized Agent for freight charges for Boeing Products returned to Boeing for Correction and determined to be defective.

8.2   <u>Customer Instructions</u>.  The documentation shipped with the returned defective Boeing Product may include specific technical instructions for additional work to be performed on the Boeing Product.  The absence of such instructions will evidence Customer's authorization for Boeing to perform all necessary Corrections and work required to return the Boeing Product to a serviceable condition.

AGTA-NSB

C
2-7

**BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.3    Correction Time Objectives.

8.3.1    Boeing's objective for making Corrections is 10 working days for avionics and electronic Boeing Products, 30 working days for Corrections of other Boeing Products performed at Boeing's facilities and 40 working days for Corrections of other Boeing Products performed at a Boeing subcontractor's facilities.   The objectives are measured from the date Boeing receives the defective Boeing Product and a valid claim to the date Boeing ships the Corrected Boeing Product.

8.3.2    If Customer has a critical parts shortage because Boeing has exceeded a Correction time objective and Customer has procured spare Boeing Products for the defective Boeing Product in quantities shown in Boeing's Recommended Spare Parts List or, for 717 model aircraft only, in quantities shown in Boeing's Spares Planning and Requirements Evaluation Model, then Boeing will either expedite the Correction or provide an interchangeable Boeing Product, on a no charge loan basis, until the Corrected Boeing Product is returned.

8.4    Title Transfer and Risk of Loss.

8.4.1    Title to and risk of loss of any Boeing Product returned to Boeing will at all times remain with Customer or any other title holder of such Boeing Product.   While Boeing has possession of the returned Boeing Product, Boeing will have only such liabilities as a bailee for mutual benefit would have but will not be liable for loss of use.

8.4.2    If a Correction requires shipment of a new Boeing Product, then at the time Boeing ships the new Boeing Product, title to and risk of loss for the returned Boeing Product will pass to Boeing, and title to and risk of loss for the new Boeing Product will pass to Customer.

9.    Returning an Aircraft.

9.1    Conditions.  An aircraft may be returned to Boeing's facilities for Correction only if:

(i)      Boeing and Customer agree a covered defect exists;

(ii)     Customer lacks access to adequate facilities, equipment or qualified personnel to perform the Correction; and

(iii)    it is not practical, in Boeing's estimation, to dispatch Boeing personnel to perform the Correction at a remote site.

AGTA-NSB                          C
                                 2-8
                        **BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM 2023L000001

9.2 Correction Costs. Boeing will perform the Correction at no charge to Customer. Subject to the conditions of Article 9.1, Boeing will reimburse Customer for the costs of fuel, oil, other required fluids and landing fees incurred in ferrying the aircraft to Boeing and back to Customer's facilities. Customer will minimize the length of both flights.

9.3 Separate Agreement. Prior to the return of an aircraft to Boeing, Boeing and Customer will enter into a separate agreement covering return of the aircraft and performance of the Correction. Authorization by Customer for Boeing to perform additional work that is not part of the Correction must be received within 24 hours of Boeing's request. If such authorization is not received within 24 hours, Customer will be invoiced for work performed by Boeing that is not part of the Correction.

10. Insurance.

The provisions of Article 8.2 "Insurance", of this AGTA, will apply to any work performed by Boeing in accordance with Customer's specific technical instructions to the extent any legal liability of Boeing is based upon the content of such instructions.

11. Disclaimer and Release; Exclusion of Liabilities.

11.1 DISCLAIMER AND RELEASE. THE WARRANTIES, OBLIGATIONS AND LIABILITIES OF BOEING AND THE REMEDIES OF CUSTOMER IN THIS EXHIBIT C ARE EXCLUSIVE AND IN SUBSTITUTION FOR, AND CUSTOMER HEREBY WAIVES, RELEASES AND RENOUNCES, ALL OTHER WARRANTIES, OBLIGATIONS AND LIABILITIES OF BOEING AND ALL OTHER RIGHTS, CLAIMS AND REMEDIES OF CUSTOMER AGAINST BOEING, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, WITH RESPECT TO ANY NONCONFORMANCE OR DEFECT IN ANY AIRCRAFT, MATERIALS, TRAINING, SERVICES OR OTHER THING PROVIDED UNDER THIS AGTA AND THE APPLICABLE PURCHASE AGREEMENT, INCLUDING, BUT NOT LIMITED TO:

(A) ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS;

(B) ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE;

(C) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM THE NEGLIGENCE OF BOEING; AND

(D) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO ANY AIRCRAFT.



FILED DATE: 1/11/2023 2:57 PM   2023L000001

    11.2   <u>EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES</u>. BOEING WILL HAVE NO OBLIGATION OR LIABILITY, WHETHER ARISING IN CONTRACT (INCLUDING WARRANTY), TORT, WHETHER OR NOT ARISING FROM THE NEGLIGENCE OF BOEING, OR OTHERWISE, FOR LOSS OF USE, REVENUE OR PROFIT, OR FOR ANY OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES WITH RESPECT TO ANY NONCONFORMANCE OR DEFECT IN ANY AIRCRAFT, MATERIALS, TRAINING, SERVICES OR OTHER THING PROVIDED UNDER THIS AGTA AND THE APPLICABLE PURCHASE AGREEMENT.

    11.3   <u>Definitions</u>. For the purpose of this Article, "BOEING" or "Boeing" is defined as The Boeing Company, its divisions, subsidiaries, affiliates, the assignees of each, and their respective directors, officers, employees and agents.



AGTA-NSB                         C

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## PRODUCT ASSURANCE DOCUMENT

### PART 3:     BOEING SERVICE LIFE POLICY

1.    Definitions.

    **Service Life Policy (SLP) Component -** any of the primary structural elements (excluding industry standard parts), such as landing gear, wing, fuselage, vertical or horizontal stabilizer, listed in the applicable purchase agreement for a specific model of aircraft, either installed in the aircraft at time of delivery or purchased from Boeing by Customer as a spare part.  The detailed SLP Component listing will be in Supplemental Exhibit SLP1 to each Purchase Agreement.

2.    Service Life Policy.

    2.1    SLP Commitment. If a failure is discovered in a SLP Component within the time periods specified in Article 2.2 below, Boeing will provide Customer a replacement SLP Component at the price calculated pursuant to Article 3.1, below.  If requested by Customer as an alternative remedy, Boeing will reimburse Customer in accordance with the provisions of Exhibit C, Part 2, Article 7.3, for Direct Labor and Direct Material for repair of a failed SLP Component an amount not to exceed the difference between Boeing's then current spare parts price for such SLP Component and the price determined pursuant to Article 3, below.

    2.2    SLP Policy Periods.

        2.2.1   The policy period for SLP Components initially installed on an aircraft is 12 years after the date of delivery of the aircraft except that for SLP Components initially installed on a 787 aircraft the policy period is 15 years after the date of delivery of the aircraft.

        2.2.2   The policy period for SLP Components purchased from Boeing by Customer as spare parts is 12 years from delivery of such SLP Component or 12 years from the date of delivery of the last aircraft produced by Boeing of a specific model, whichever first expires, except that for the 787 aircraft such policy period is 15 years from delivery of such SLP Component or 15 years from the date of delivery of the last 787 aircraft produced by Boeing, whichever first expires.



AGTA-NSB                          C
                                3-1
                      **BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

3.    Price.

The price Customer will pay for replacement of a failed SLP Component will be calculated pursuant to the following formulas:

(i)  For 787 aircraft only:

$$P = \frac{C(T-48)}{132}$$

where:

$P =$    price to Customer for the replacement part
$C =$    SLP Component sales price at time of replacement
$T =$    total age in months of the failed SLP Component from the date of delivery to Customer to the date of discovery of such condition and is greater than 48 months.

(ii)  For all other aircraft models:

$$P = \frac{CT}{144}$$

where:

$P =$    price to Customer for the replacement part
$C =$    SLP Component sales price at time of replacement
$T =$    total age in months of the failed SLP Component from the date of delivery to Customer to the date of discovery of such condition.

4.    Conditions.

Boeing's obligations under this Part 3 of Exhibit C, "Boeing Service Life Policy," (Policy) are conditioned upon the following:

4.1    Customer must notify Boeing in writing of the failure within three months after it is discovered.

4.2    Customer must provide reasonable evidence that the claimed failure is covered by this Policy and if requested by Boeing, that such failure was not the result of:
   (i)    a defect or failure in a component not covered by this Policy,
   (ii)   an extrinsic force,
   (iii)  an act or omission of Customer, or
   (iv)   operation or maintenance contrary to applicable governmental regulations or Boeing's instructions.

AGTA-NSB                          C
                                  3-2
                        **BOEING PROPRIETARY**




4.3     If return of a failed SLP Component is practicable and requested by Boeing, Customer will return such SLP Component to Boeing at Boeing's expense.

4.4     Customer's rights and remedies under this Policy are limited to the receipt of a Correction pursuant to Article 2 above.

5.      <u>Disclaimer and Release; Exclusion of Liabilities</u>.

This Part 3 and the rights and remedies of Customer and the obligations of Boeing are subject to the DISCLAIMER AND RELEASE and EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES provisions of Article 11 of Part 2 of this Exhibit C.

## PRODUCT ASSURANCE DOCUMENT

## PART 4:      SUPPLIER WARRANTY COMMITMENT

1.      Supplier Warranties and Supplier Patent and Copyright Indemnities.

Boeing will use diligent efforts to obtain warranties and indemnities against patent and copyright infringement enforceable by Customer from Suppliers of Supplier Products (except for BFE and engines) installed on the aircraft at the time of delivery that were selected and purchased by Boeing, but not manufactured to Boeing's detailed design. Boeing will furnish copies of the warranties and patent and copyright indemnities to Customer contained in Supplier Product Support and Assurance Agreements, prior to the scheduled delivery month of the first aircraft under the initial purchase agreement to the AGTA.

2.      Boeing Assistance in Administration of Supplier Warranties.

Customer will be responsible for submitting warranty claims directly to Suppliers; however, if Customer experiences problems enforcing any Supplier warranty obtained by Boeing for Customer, Boeing will conduct an investigation of the problem and assist Customer in the resolution of those claims.

3.      Boeing Support in Event of Supplier Default.

3.1      If the Supplier defaults in the performance of a material obligation under its warranty, and Customer provides evidence to Boeing that a default has occurred, then Boeing will furnish the equivalent warranty terms as provided by the defaulting Supplier.

3.2      At Boeing's request, Customer will assign to Boeing, and Boeing will be subrogated to, its rights against the Supplier provided by the Supplier warranty.



AGTA-NSB                          C
                                4-1
                        **BOEING PROPRIETARY**

**PRODUCT ASSURANCE DOCUMENT**

**PART 5:      BOEING INTERFACE COMMITMENT**

1.      <u>Interface Problems</u>.

        An Interface Problem is defined as a technical problem in the operation of an aircraft or its systems experienced by Customer, the cause of which is not readily identifiable by Customer but which Customer believes to be attributable to either the design characteristics of the aircraft or its systems or the workmanship used in the installation of Supplier Products. In the event Customer experiences an Interface Problem, Boeing will, without additional charge to Customer, promptly conduct an investigation and analysis to determine the cause or causes of the Interface Problem. Boeing will promptly advise Customer at the conclusion of its investigation of Boeing's opinion as to the causes of the Interface Problem and Boeing's recommendation as to corrective action.

2.      <u>Boeing Responsibility</u>.

        If Boeing determines that the Interface Problem is primarily attributable to the design or installation of any Boeing Product, Boeing will Correct the design or workmanship to the extent of any then-existing obligations of Boeing under the provisions of the applicable Boeing Product warranty.

3.      <u>Supplier Responsibility</u>.

        If Boeing determines that the Interface Problem is primarily attributable to the design or installation of a Supplier Product, Boeing will assist Customer in processing a warranty claim against the Supplier.

4.      <u>Joint Responsibility</u>.

        If Boeing determines that the Interface Problem is partially attributable to the design or installation of a Boeing Product and partially to the design or installation of a Supplier Product, Boeing will seek a solution to the Interface Problem through the cooperative efforts of Boeing and the Supplier and will promptly advise Customer of the resulting corrective actions and recommendations.

5.      <u>General</u>.

        Customer will, if requested by Boeing, assign to Boeing any of its rights against any supplier as Boeing may require to fulfill its obligations hereunder.

FILED DATE: 1/11/2023 2:57 PM    2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

6.     <u>Disclaimer and Release; Exclusion of Liabilities</u>.

        This Part 5 and the rights and remedies of Customer and the obligations of Boeing herein are subject to the DISCLAIMER AND RELEASE and EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES provisions of Article 11 of Part 2 of this Exhibit C.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## PRODUCT ASSURANCE DOCUMENT

## PART 6: BOEING INDEMNITIES AGAINST PATENT
## AND COPYRIGHT INFRINGEMENT

1.     Indemnity Against Patent Infringement.

       Boeing will defend and indemnify Customer with respect to all claims, suits and liabilities arising out of any actual or alleged patent infringement through Customer's use, lease or resale of any aircraft or any Boeing Product installed on an aircraft at delivery.

2.     Indemnity Against Copyright Infringement.

       Boeing will defend and indemnify Customer with respect to all claims, suits and liabilities arising out of any actual or alleged copyright infringement through Customer's use, lease or resale of any Boeing created Materials and Aircraft Software installed on an aircraft at delivery.

3.     Exceptions, Limitations and Conditions.

       3.1     Boeing's obligation to indemnify Customer for patent infringement will extend only to infringements in countries which, at the time of the infringement, were party to and fully bound by either (a) Article 27 of the Chicago Convention on International Civil Aviation of December 7, 1944, or (b) the International Convention for the Protection of Industrial Property (Paris Convention).

       3.2     Boeing's obligation to indemnify Customer for copyright infringement is limited to infringements in countries which, at the time of the infringement, are members of The Berne Union and recognize computer software as a "work" under The Berne Convention.

       3.3     The indemnities provided under this Part 6 will not apply to any BFE engines, Supplier Product, Boeing Product used other than for its intended purpose, or Aircraft Software not created by Boeing.

       3.4     Customer must deliver written notice to Boeing (i) within 10 days after Customer first receives notice of any suit or other formal action against Customer and (ii) within 20 days after Customer first receives any other allegation or written claim of infringement covered by this Part 6.

AGTA-NSB                              C
                                     6-1
                          **BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

3.5     At any time, Boeing will have the right at its option and expense to: (i) negotiate with any party claiming infringement, (ii) assume or control the defense of any infringement allegation, claim, suit or formal action, (iii) intervene in any infringement suit or formal action, and/or (iv) attempt to resolve any claim of infringement by replacing an allegedly infringing Boeing Product or Aircraft Software with a noninfringing equivalent.

3.6     Customer will promptly furnish to Boeing all information, records and assistance within Customer's possession or control which Boeing considers relevant or material to any alleged infringement covered by this Part 6.

3.7     Except as required by a final judgment entered against Customer by a court of competent jurisdiction from which no appeals can be or have been filed, Customer will obtain Boeing's written approval prior to paying, committing to pay, assuming any obligation or making any material concession relative to any infringement covered by these indemnities.

3.8     BOEING WILL HAVE NO OBLIGATION OR LIABILITY UNDER THIS PART 6 FOR LOSS OF USE, REVENUE OR PROFIT, OR FOR ANY OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES. THE OBLIGATIONS OF BOEING AND REMEDIES OF CUSTOMER IN THIS PART 6 ARE EXCLUSIVE AND IN SUBSTITUTION FOR, AND CUSTOMER HEREBY WAIVES, RELEASES AND RENOUNCES ALL OTHER INDEMNITIES, OBLIGATIONS AND LIABILITIES OF BOEING AND ALL OTHER RIGHTS, CLAIMS AND REMEDIES OF CUSTOMER AGAINST BOEING, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, WITH RESPECT TO ANY ACTUAL OR ALLEGED PATENT, COPYRIGHT OR OTHER INTELLECTUAL PROPERTY INFRINGEMENT OR THE LIKE BY ANY AIRCRAFT, AIRCRAFT SOFTWARE, MATERIALS, TRAINING, SERVICES OR OTHER THING PROVIDED UNDER THIS AGTA AND THE APPLICABLE PURCHASE AGREEMENT.

3.9     For the purposes of this Part 6, "BOEING or Boeing" is defined as The Boeing Company, its divisions, subsidiaries, affiliates, the assignees of each and their respective directors, officers, employees and agents.



AGTA-NSB

C
6-2
**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE AGREEMENT ASSIGNMENT

**Assignors**

**SIGNED AND DELIVERED** as a **DEED** by )

**ARCTIC AVIATION ASSETS DAC** )
acting by
its lawfully appointed attorney )

_____
Lawfully appointed attorney

in the presence of:

Witness's Signature:  Aoife Rock

Name:  AOIFE ROCK

Address:  IMBUS HOUSE DUBLIN AIRPORT

**SIGNED AND DELIVERED** as a **DEED** by )

**NORWEGIAN AIR SHUTTLE ASA** )
acting by
its lawfully appointed attorney )

_____
Lawfully appointed attorney

in the presence of:

Witness's Signature: ..........................................

Name: ..........................................

Address: ..........................................

3                                    Purchase Agreement Assignment

**SIGNATURES**

**PURCHASE AGREEMENT ASSIGNMENT**

**Assignors**

**SIGNED AND DELIVERED** as a **DEED** by )

**ARCTIC AVIATION ASSETS DAC** )
acting by
its lawfully appointed attorney )

....................................
Lawfully appointed attorney

in the presence of:

Witness's Signature: ....................................

Name: ....................................

Address: ....................................

**SIGNED AND DELIVERED** as a **DEED** by )

**NORWEGIAN AIR SHUTTLE ASA** )
acting by
its lawfully appointed attorney )

ANDERS FREDRIKSEN

ATTORNEY-IN-FACT
Lawfully appointed attorney

in the presence of:

Witness's Signature: ....................................

Name: PER-HELGE ELLINGSEN

Address: OKSENØYVEIEN 3
1330 FORNEBU

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **AAA MAX 4 LIMITED** | ) |
| acting by | ) |
| <u>Elaine Anderson</u> - Director | ) |
| acting under the authority of that | |
| Company, in the presence of: | ) |

Witness's Signature:

Name:                  Stephanie Jackson

Address:               Cayman Corporate Cente, 27 Hospital Road
                       George Town, Grand Cayman KY1-9008 Cayman Islands

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

### PURCHASE AGREEMENT ASSIGNMENT

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by )

**TROLLFJORDEN LIMITED** )
acting by
its lawfully appointed attorney )

_____
Lawfully appointed attorney

in the presence of:

Witness's Signature:  *Aoife Rock*

Name:  *AOIFE ROCK*

Address:  *IMBUS HOUSE, DUBLIN AIRPORT*

5                                    Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Sub-Lessees**

**SIGNED AND DELIVERED** as a **DEED** by )

**NORWEGIAN AIR NORWAY AS** )
acting by
its lawfully appointed attorney )

ASGEIR NYSETH

Chairman
.......................................
Lawfully appointed attorney

in the presence of:

Witness's Signature: .......................................

Name: ANDERS FREDRIKSEN

Address: OKSENØYVEIEN 3, 1330 FORNEBU, NORWAY

**SIGNED AND DELIVERED** as a **DEED** by )

**NORWEGIAN AIR SWEDEN AB** )
acting by
its lawfully appointed attorney )

ASGEIR NYSETH

chairman
.......................................
Lawfully appointed attorney

in the presence of:

Witness's Signature: .......................................

Name: PER CHRISTOFFER KISE

Address: NORDRAAKS GATE 25, 0268 OSLO, NORWAY

6                                        Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (3)

## PURCHASE AGREEMENT ASSIGNMENT

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed Attorney of    **Vice President**
**BANK OF UTAH**
(as Security Trustee)

acting by         **Jon Croasmun**
                **Vice President**
acting under the authority of
that entity in such capacity in the presence of:

Witness's signature:
Name:                    Marie Stapley
Address:                 Legal Assistant

200 E. South Temple, Ste 210
Salt Lake City, Utah 84111

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT C-4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 1

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated 20 November 2018 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 4 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **TROLLFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**), **NORWEGIAN AIR SWEDEN AB**, a private company limited by shares duly incorporated under the laws of Sweden (the **Sub-Lessee**) and **BANK OF UTAH**, as security trustee (the **Security Trustee**) and supplements that Purchase Agreement Assignment dated ___20 November___ 2018 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

### W I T N E S S E T H:

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and the relevant Sub-Lessee desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and the relevant Sub-Lessee hereby agrees as follows:

1. The Sub-Lessee of the Aircraft is:  Norwegian Air Sweden AB

2. Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

   Manufacturer's serial number:  42835

   Registration Mark:  SE-RTA

   Engine Manufacturer's serial numbers:  602679 & 602687

3. Latest Delivery Date with respect to such Aircraft:  20 November 2018

4. Maximum liability of the Lessor with respect to the Purchase Price of such Aircraft:  U.S.$ 49,282,115.00

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. 1 to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Arctic**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | ) |
| by **ARCTIC AVIATION ASSETS DAC** | |
| acting by its lawfully | ) |
| appointed attorney | ) |

Lawfully appointed attorney

| | |
|---|---|
| in the presence of: | ) |

Witness's Signature: _Aoife Rock_

Name: _AOIFE ROCK_

Address: _IMBUS HOUSE, DUBLIN AIRPORT_

**Norwegian**                                    )

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | |
| by **NORWEGIAN AIR SHUTTLE ASA** | |
| acting by its lawfully | ) |
| appointed attorney | ) |

Lawfully appointed attorney

| | |
|---|---|
| in the presence of: | ) |

Witness's Signature: _____

Name: _____

Address: _____

_____

0121556-0000001 BK:46464780.2                          3                          MSN 42835 – Purchase Agreement
Assignment Supplement No 1

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

### PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

**SIGNED AND DELIVERED** as a **DEED**   )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully   )
appointed attorney   )

............................................

Lawfully appointed attorney

in the presence of:   )

Witness's Signature:   _____

Name:   _____

Address:   _____

_____

**Norwegian**   )

**SIGNED AND DELIVERED** as a **DEED**
by **NORWEGIAN AIR SHUTTLE ASA**
acting by its lawfully   )
appointed attorney   )

ANDERS FREDRIKSEN

ATTORNEY-IN-FACT

Lawfully appointed attorney

in the presence of:   )

Witness's Signature:   _____

Name:   PER-HELGE ELLINGSEN

Address:   OKSENØYVEIEN 3

1330 FORNEBU

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**EXECUTED** as a **DEED** by )
**AAA MAX 4 LIMITED** )
acting by )
Elaine Anderson - Director )
acting under the authority of that )
Company, in the presence of: )

Witness's Signature: _____

Name: Stephanie Jackson _____

Address: Cayman Corporate Centre, 27 Hospital Road
George Town, Grand Cayman KY1-9008 Cayman Islands
_____

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed Attorney of
**BANK OF UTAH**
(as Security Trustee)

acting by

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature: _____
Name: _____
Address: _____

FILED DATE: 1/11/2023 2:57 PM  2023L000001

**EXECUTED** as a **DEED** by                    )
**AAA MAX 4 LIMITED**                            )
acting by                                        )
                                                 )
_____                                )
acting under the authority of that
Company, in the presence of:                     )

Witness's Signature: _____

Name: _____

Address: _____

_____

_____

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed ~~Attorney of~~ **Vice President**
**BANK OF UTAH**
(as Security Trustee)

acting by          **Jon Croasmun**
                   **Vice President**

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature: _____
Name:                **Marie Stapley**
Address:             ~~Legal Assistant~~

                   **200 E. South Temple, Ste 210**
                   **Salt Lake City, Utah 84111**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

### PURCHASE ASSIGNMENT SUPPLEMENT

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **TROLLFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

..................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:   *Aoife Rock*

Name:   *AOIFE ROCK*

Address:   *IMBW HOUSE*

*DUBLIN AIRPORT*

**Sub-Lessee**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **NORWEGIAN AIR SWEDEN AB** | ) |
| acting by its lawfully appointed attorney | ) |

..................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:   _____

Name:   _____

Address:   _____

_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (2)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

Lessee

**SIGNED AND DELIVERED** as a **DEED** by            )
**TROLLFJORDEN LIMITED**                             )
acting by                                            )
its lawfully appointed attorney                      )

........................................

Lawfully appointed attorney

in the presence of:

Witness's Signature:    _____

Name:                   _____

Address:                _____

                        _____

Sub-Lessee

**EXECUTED** as a **DEED** by                        )
**NORWEGIAN AIR SWEDEN AB**                          )
acting by its lawfully appointed attorney            )

ASGEIR NYSETH
........................................
Chairman

Lawfully appointed attorney

in the presence of:

Witness's Signature:    ANDERS FREDRIKSEN

Name:                   ATTORNEY-IN-FACT

Address:                OKSENBYVEIEN 3

                        1330 FORNEBU

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (3)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By: _T A Greene_
Name: _Tiffany Greene_
Title: _Attorney-in-fact_
Date:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT C-5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THE BOEING COMPANY**

**CONSENT AND AGREEMENT**

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated __20 November__ 2018 between **AAA MAX 4 LIMITED** (the **Lessor**), **TROLLFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR SHUTTLE ASA** (**Norwegian**) and **ARCTIC AVIATION ASSETS DAC** (**Arctic**) (each of Arctic and Norwegian being an **Assignor**), **NORWEGIAN AIR NORWAY AS** (**Norway AS**) and **NORWEGIAN AIR SWEDEN AB** (**Sweden AB**) (each of Norway AS and Sweden AB being a **Sub-Lessee**) and **BANK OF UTAH**, as security trustee (the **Security Trustee**) relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number 42835 (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.   all representations, warranties, indemnities and agreements of the Manufacturer, including the Warranties, under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.   no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.   the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.   if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

5.   the Manufacturer will continue to recognize the relevant Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement, including the Warranties, and agrees to pay to the relevant Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the relevant Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided, however, that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Loan Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.    the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.    the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.    The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)    the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)    the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)   to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)   Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.   The Manufacturer hereby confirms to the Security Trustee that:

(a)   upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)   except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.   The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.   The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.   It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated   __20 November__   2018

**THE BOEING COMPANY**

By:   _TLGreene_

Name:   Tiffany Greene

Title:   Attorney-in fact

MSN 42835

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, S

FILED
1/11/2023 2:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000001
Calendar, S
21000066

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# GROUP EXHIBIT D

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT D-1

FILED DATE: 1/11/2023 2:57 PM  2023L000001

**EXECUTION VERSION**

# MASTER LEASE AGREEMENT

### 16 NOVEMBER 2018

**Between**

**AAA MAX 4 LIMITED**
**as Lessor**

**and**

**TROLLFJORDEN LIMITED**
**as Lessee**

**Two (2) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

Allen & Overy LLP

0121556-0000001 BK:46177236.5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# CONTENTS

**Clause**                                                                                                      **Page**

1.    Definitions and interpretation ..........................................................................................1
2.    Agreement to Lease; Term..............................................................................................1
3.    Rent ..................................................................................................................................2
4.    Lessor's Disclaimer of Warranties; Manufacturers' Warranties ....................................4
5.    Purchase Options; Return of Aircraft..............................................................................6
6.    Liens .................................................................................................................................9
7.    Registration, Maintenance, Operation and Possession .................................................10
8.    Replacement; Temporary Installation; Pooling; Alterations, Modifications and Additions; Etc ........24
9.    Loss, Destruction, Requisition, Etc...............................................................................28
10.   Insurance ........................................................................................................................32
11.   Absolute Obligations .....................................................................................................40
12.   Assignment.....................................................................................................................42
13.   Lease Events of Default and Termination Events..........................................................42
14.   Remedies.........................................................................................................................45
15.   Further Assurances; Investment of Security Funds, No Breach of Sanctions ..............47
16.   Notices............................................................................................................................49
17.   Miscellaneous; Governing Law .....................................................................................49
18.   Security for the Lessor's Obligation...............................................................................50
19.   Lessor's Right to Perform for Lessee.............................................................................50
20.   English Language Prevails ..............................................................................................51
21.   Complete Agreement ......................................................................................................51
22.   Limitation of Liability of the Lessor..............................................................................51

**Schedule**

1.    Form of Acceptance Certificate .....................................................................................52
2.    Form of Lease Supplement ............................................................................................53
3.    Form of Eurocontrol Letter ...........................................................................................57
4.    Form of EU ETS Authority Letter .................................................................................58

Signatories.................................................................................................................................59

0121556-0000001 BK:46177236.5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS MASTER LEASE AGREEMENT** dated __16__ November 2018 (this **Lease**)

**AMONG**

(1)     **AAA MAX 4 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands, as lessor (the **Lessor**); and

(2)     **TROLLFJORDEN LIMITED**, a limited liability company duly incorporated under the laws of Ireland (the **Lessee**).

 **WITNESSETH:**

(1)     **WHEREAS,** pursuant to that certain Participation Agreement, dated as of the date of execution and delivery thereof (as amended, supplemented and modified from time to time, the **Participation Agreement**), among, *inter alios*, the Lessor, Walkers Fiduciary Limited, as lessor parent, the Lessee, Bank of China Limited, Singapore Branch as Lender and Agent and Bank of Utah, as security trustee, the Lessor and the Lessee have agreed to enter into this Lease.

(2)     **WHEREAS,** pursuant to each Purchase Assignment in respect of an Aircraft, the Lessor will acquire certain rights under the Purchase Agreement in respect of such Aircraft.

(3)     **WHEREAS,** pursuant to the terms and conditions of this Lease, the Lessor has agreed to lease each Aircraft to the Lessee and the Lessee has agreed to lease each Aircraft from the Lessor.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

**1.      DEFINITIONS AND INTERPRETATION**

**1.1     Definitions**

Unless the context otherwise requires, capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in part 1 of appendix 1 to the Participation Agreement for all purposes of this Lease.

**1.2     Interpretation**

This Lease shall be interpreted in accordance with the rules of construction set forth in part 2 of appendix 1 to the Participation Agreement.

**2.      AGREEMENT TO LEASE; TERM**

**2.1     Delivery**

The Lessor hereby agrees on each Delivery Date for an Aircraft, subject to (a) the purchase of such Aircraft by the Lessor to be delivered pursuant to the Participation Agreement, the Purchase Agreement and the Purchase Assignment and (b) the satisfaction or waiver of the conditions precedent with respect to such Aircraft set forth or referred to in clause 4 of the Participation Agreement, to accept delivery of, and subject to clause 2 of the Participation Agreement to lease to the Lessee hereunder, and the Lessee hereby agrees, subject to the foregoing and the satisfaction of the conditions precedent (with respect to such Aircraft) set forth in clause 5 of the Participation Agreement, to accept delivery of, to sign the Acceptance Certificate and to lease from the Lessor hereunder, such Aircraft, whereupon the Term for such Aircraft shall commence.

**2.2     Acceptance**

The Lessee hereby agrees that the execution of the Acceptance Certificate for an Aircraft in the form of Schedule 1 hereto shall be deemed to constitute unconditional, absolute and irrevocable acceptance of such Aircraft by the Lessee under this Lease.

**2.3     Term**

Subject to acceptance of an Aircraft as provided in Clauses 2.1 and 2.2, the Lessee hereby leases from the Lessor such Aircraft for the Term applicable thereto.

**2.4     Cape Town Convention**

(a)     The parties hereto agree that, for all purposes of the Cape Town Convention, upon execution of a Lease Supplement (i) this Lease, together with such Lease Supplement, will constitute a separate International Interest with respect to the Airframe and each Engine identified in such Lease Supplement, (ii) such Airframe and Engines each constitute an Aircraft Object and (iii) this Lease, together with such Lease Supplement, will constitute an agreement for the registration of such Airframe.

(b)     If there is any change to the manner in which the Cape Town Convention is implemented in the Government of Registry, the Lessee shall take such action as the Lessor may require in relation to such change, including:

(i)     amending or re-executing any Operative Document;

(ii)     registering, perfecting and/or preserving any International Interest(s) vested in the Lessor and the Secured Parties with respect to the Airframe and/or any Engine; and

(iii)     entry into agreements (subordination or otherwise) to protect the priority of any International Interest(s) or other registrable interests referred to in the foregoing paragraphs (i) and/or (ii).

(c)     The Lessee agrees to indemnify on demand and shall pay or reimburse the Agent, the Lenders, the Insurer Representative, each Insurer Group Member, the Lessor, the Lessor Parent and the Security Trustee for any reasonable costs and expenses (including reasonable fees and disbursements of legal counsel and other experts employed or retained by such Person) incurred by such Person in connection with any action taken pursuant to paragraph (b) above.

**3.     RENT**

**3.1     Initial Rent**

On or prior to each Delivery Date, the Lessee agrees to pay the Lessor the Initial Rent in Dollars for the Aircraft to be delivered on such Delivery Date.

**3.2     Basic Rent**

In addition, the Lessee agrees to pay the Lessor rent (the **Basic Rent**) for each Aircraft in Dollars with respect to each Rent Period in arrear on each Basic Rent Payment Date occurring during the Term for such Aircraft, in each case, in an amount calculated in accordance with paragraph (a) through (b) below.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a) For all purposes of this Lease, the Basic Rent payable in respect of each Aircraft on each Basic Rent Payment Date for such Aircraft occurring during the Term for such Aircraft shall be equal to the sum of (i) the "Principal Instalment" set forth in Schedule I to the Lease Supplement for such Aircraft for the relevant Basic Rent Payment Date and (ii) the amount equal to the interest due and payable under clause 3.2 of the Loan Agreement on the Loan Payment Date corresponding to such Basic Rent Payment Date .

(b) Each instalment of Basic Rent for an Aircraft payable on any Basic Rent Payment Date for such Aircraft shall in all events be in an amount that is equal to the amount payable by the Lessor to the Agent under the Loan Agreement in respect of the scheduled principal of, and interest on, the Loan for such Aircraft due on the corresponding Loan Payment Date.

## 3.3    Supplemental Rent

The Lessee shall pay all Supplemental Rent to the Lessor or to such other Person to whom such amount may be owed under the Operative Documents in the currency (whether Dollars or another currency) in which the same is due and owing, and by the date on which such amount is payable in accordance with the provision of the Operative Documents under which such payment obligation arises.  The Lessee will also pay interest on demand to the recipient entitled thereto, as Supplemental Rent, to the extent permitted by Applicable Laws, at a rate per annum equal to the applicable Post-Default Rate on any part of any instalment of Basic Rent not paid when due for the period from and including the due date thereof to but excluding the date on which the same is paid in full and, in the case of payment to any of the Lessor, the Lenders, the Agent, the Insurer Representative, the Security Trustee or any other Person, on any payment of Supplemental Rent payable but not paid when due or demanded by the recipient entitled thereto for the period from and including the due date thereof to but excluding the date on which the same is paid in full.

## 3.4    Manner of Payment

(a) All Rent and other sums payable hereunder shall be paid by 9:00 a.m. (Singapore time) on the date payment is due, in Dollars (or, in the case of any Supplemental Rent denominated in a currency other than Dollars, in the relevant currency) and in immediately available funds (or such other funds as are from time to time customary for the settlement of international banking transactions in Dollars or other relevant currency in London or other relevant jurisdiction of such other currency).  Whenever any payment of Basic Rent shall become due on a day which is not a Business Day, the due date thereof shall be the next succeeding Business Day (unless the next succeeding Business Day would fall in the next succeeding month, in which case the relevant payment date shall be made on the immediately preceding Business Day) provided always that the amount of Basic Rent shall be adjusted accordingly and in a manner consistent with the provisions of clause 4.1(f) of the Loan Agreement.

(b) Whenever any payment (other than a payment of Basic Rent) shall become due on a date which is not a Business Day, or if any such payment is payable on demand and demand is not made on a Business Day or is made on a Business Day but is made outside normal banking hours of the recipient of such demand, demand for such payment shall be deemed to have been made on the immediately succeeding Business Day, and if such payment includes any payment of interest (or an amount calculated or determined by reference to interest), the amount payable shall be adjusted accordingly.  All payments of Rent to the Lessor and all other amounts payable hereunder by the Lessee to the Lessor shall be paid to such account as the Lessor may specify from time to time in writing not less than five (5) Business Days prior to the date on which the relevant amount is payable.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 3.5    Absolute Obligation

The obligation of the Lessee to pay Rent hereunder shall be absolute and unconditional as more fully set forth in Clause 11.  To the extent Taxes arise from the leasing of any Aircraft to the Lessee under this Lease which are payable by way of withholding by the Lessee, such Taxes shall be deducted and paid by the Lessee by way of withholding, and the Lessor agrees that the full amount of Rent due under this Lease in respect of an Aircraft shall be the amount of Basic Rent payable in respect of such Aircraft under Clause 3.2 increased by any such Taxes withheld by the Lessee such that the Lessor receives the net amount of Rent that it would have otherwise have received had no such withholding been made by the Lessee.

## 3.6    Associated Rights

The Lessee hereby agrees to pay and perform all of its obligations under the Operative Documents to which it is a party and further acknowledges and agrees that the payment of Rent hereunder and the performance by the Lessee of its obligations under the other Operative Documents constitute Associated Rights and are secured by and/or associated with the relevant Aircraft and Engines.

## 3.7    Assignment of Rent and direction of payments

(a)    Pursuant to the Security Documents, the Lessor has assigned its right to receive Basic Rent and Termination Value hereunder to the Security Trustee, and pursuant to such assignment the Lessor hereby directs, and the Lessee hereby agrees, that all Basic Rent and Termination Value payable to the Lessor hereunder shall be paid directly to the Agent to be applied in accordance with the payment waterfall in clause 4.1(c) of the Loan Agreement (unless a Material Default, Termination Event or an Event of Default shall have occurred and be continuing and the Insurer Representative or the Security Trustee has given notice to the Agent and the Lessor in which case the Basic Rent and Termination Value shall be paid directly to the Security Trustee).

(b)    The Lessee hereby agrees that it shall procure that any Permitted Sub-Lessee shall (or shall, in the case of the Initial Permitted Sub-Lessee, direct Arctic on its behalf to) pay directly to the Agent, on each Basic Payment Date, a portion of rental under the Permitted Sub-Lease equal to the amount of Basic Rent payable by the Lessee to the Lessor hereunder on such Basic Rent Payment Date to be applied in accordance with the payment waterfall in clause 4.1(c) of the Loan Agreement (unless a Material Default, Termination Event or an Event of Default shall have occurred and be continuing and the Insurer Representative or the Security Trustee has given notice to the Agent and the Lessor in which case such amounts shall be paid directly to the Security Trustee). Such payments by the Permitted Sub-Lessee shall *pro tanto* satisfy the Lessee's obligations pursuant to paragraph (a) above.

## 4.    LESSOR'S DISCLAIMER OF WARRANTIES; MANUFACTURERS' WARRANTIES

## 4.1    Disclaimer

Subject to Clause 4.2, the Lessee acknowledges and agrees that (a) each Aircraft is of a size, design, capacity and manufacture selected by and acceptable to the Lessee and (b) the Lessee is satisfied that such Aircraft are suitable for its purposes.  NONE OF LESSOR, LESSOR PARENT, ANY LENDER, THE AGENT, THE SECURITY TRUSTEE, THE INSURER REPRESENTATIVE OR ANY MEMBER OF THE INSURER GROUP SHALL MAKE OR GIVE OR SHALL BE DEEMED TO HAVE MADE OR GIVEN AND HEREBY EXPRESSLY DISCLAIMS ANY REPRESENTATION, WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, AS TO (i) THE AIRWORTHINESS, VALUE, CONDITION, DESIGN, COMPLIANCE WITH SPECIFICATIONS OF, OPERATION OF, OR THE QUALITY OF THE MATERIAL OF OR WORKMANSHIP IN, OR TITLE TO, OR ANY DEFECT IN, ANY AIRCRAFT, ANY

FILED DATE: 1/11/2023 2:57 PM   2023L000001

AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, (ii) THE MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE OF ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, OR AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT OR THE LIKE, OR ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (iii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT WITH RESPECT TO ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, WHETHER OR NOT IN STRICT OR ABSOLUTE LIABILITY OR ARISING FROM THE NEGLIGENCE OF LESSOR, THE LENDERS, THE AGENT, THE SECURITY TRUSTEE OR THE INSURER REPRESENTATIVE, ACTUAL OR IMPUTED, (INCLUDING ANY STATUTORY WARRANTY OR CONDITION UNDER THE LAWS OF THE UNITED STATES, ANY STATE THEREOF, THE GOVERNMENT OF REGISTRY OR THE JURISDICTION OF INCORPORATION OR FORMATION OF LESSEE) OR (iv) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF, OR DAMAGE TO, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING, FOR ANY LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES THEREFROM, IT BEING UNDERSTOOD THAT ALL SUCH RISKS, AS BETWEEN LESSEE AND SUCH OTHER PERSONS, ARE TO BE BORNE BY LESSEE, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE OPERATIVE DOCUMENTS.  NONE OF THE INSURER REPRESENTATIVE, ANY MEMBER OF THE INSURER GROUP, THE LENDERS, THE AGENT NOR THE SECURITY TRUSTEE SHALL BE LIABLE OR OTHERWISE RESPONSIBLE IN ANY MANNER FOR ANY REPRESENTATION OR WARRANTY MADE BY THE LESSOR HEREUNDER OR UNDER ANY OTHER OPERATIVE DOCUMENT.

## 4.2   Manufacturers' Warranties

None of the provisions of this Clause 4 or any other provision of this Lease shall be deemed to amend, modify or otherwise affect the representations, warranties or other obligations (express or implied) of the Manufacturer or the Engine Manufacturer or any contractor, subcontractor or supplier of the Manufacturer or the Engine Manufacturer with respect to any Aircraft, any Airframe, any Engine or any Parts, forming a part of or installed on or attached to any Aircraft, any Airframe or any Engine or to release the Manufacturer or the Engine Manufacturer or any such contractor, subcontractor or supplier from any such representation, warranty or obligation.  So long as no Event of Default or Termination Event shall have occurred and be continuing, the Lessee, or any Permitted Sub-Lessee leasing an Aircraft from the Lessee, shall have the benefit of and shall be entitled to enforce (as it shall deem appropriate), either in its own name or in the name of the Lessor (at the cost of the Lessee and in respect of which enforcement the Lessee hereby agrees to indemnify the Lessor) for the use and benefit of the Lessee (or the relevant Permitted Sub-Lessee) during the relevant Term by way of revocable license (provided that the Lessor shall not revoke such license until an Event of Default or Termination Event occurs and is continuing and shall reinstate such license in the event the Event of Default or Termination Event is cured), any and all dealer's, manufacturer's contractor's, or subcontractor's credits, guarantees, indemnities, warranties or other benefits, if any, available to the Lessor in respect of any Aircraft, any Engine and/or any Part, provided that neither the Lessee nor any Permitted Sub-Lessee shall be entitled to modify, amend or otherwise alter any of the foregoing without the prior written consent of the Security Trustee except in circumstances where such modification, amendment or alteration could not reasonably be expected to have a Material Adverse Effect in relation to the Lessor or any Secured Party, and the Lessor agrees at the Lessee's expense to do, execute and deliver such further acts, deeds, matters or things as may be reasonably

FILED DATE: 1/11/2023 2:57 PM   2023L000001

requested by the Lessee to enable the Lessee to obtain customary warranty service furnished for any Aircraft, any Engine and/or Part by such dealer, manufacturer, contractor or subcontractor or any supplier as aforesaid or to exercise any other rights in relation to any of the foregoing benefits, and any moneys recovered from such enforcement shall be promptly paid to, and retained by, the Lessee (or, if directed by the Lessee, any Permitted Sub-Lessee), provided further, that if a Material Default, Termination Event or Event of Default shall have occurred and be continuing, any such moneys payable to the Lessee or Permitted Sub-Lessee shall instead be paid to the Security Trustee as security for, and applied to, the obligations of the Lessee Obligors under the Operative Documents in accordance with the Intercreditor Agreement and, at such time as no Material Default, Termination Event or Event of Default shall be continuing, to the extent not so applied, promptly paid to the Lessee.  The Lessee hereby acknowledges the provisions of the Purchase Assignment, the Engine Warranties Agreement and each Security Agreement and of the security interests granted to the Security Trustee in respect of the Lessor's rights, title and interests in and to the Purchase Agreement and the Engine Agreement created by the Operative Documents.

## 5.    PURCHASE OPTIONS; RETURN OF AIRCRAFT

### 5.1    Purchase Options

Provided that the leasing of the relevant Aircraft under this Lease has not otherwise terminated, and no Material Default, Termination Event or Event of Default has occurred and is continuing, the Lessee may on any date falling after the Delivery Date and prior to or including the scheduled end of the Term for such Aircraft, by thirty (30) days' prior written notice (or such shorter period of notice as the Lessor the Insurance Representative and the Security Trustee may agree) delivered to the Lessor (with copies to the Security Trustee, the Insurer Representative and the Agent) (which notice shall be irrevocable), elect for it or a nominee approved by the Insurer Representative and the Agent (such approval not to be unreasonably withheld) (an **Approved Nominee)** to purchase such Aircraft on such date for a purchase price equal to the Termination Value in respect of such Aircraft on such date, plus any and all Rent in respect thereof then due and payable (including, but without duplication, any amounts payable by the Lessor or the Lessee under the Lessor Indemnity Agreement and the Loan Agreement in respect of the related prepayment of the Loan for such Aircraft) plus, if the purchase of the Aircraft occurs on the Final Maturity Date, ten Dollars (US$ 10); provided that, in no event shall the Lessee have the right to purchase or elect an Approved Nominee to purchase such Aircraft without the prior written consent of the Insurer Representative if such consent would be required by the Lessor to voluntarily prepay the Loan for such Aircraft in full under clause 2.4 of the Loan Agreement at the time of the proposed purchase of the Aircraft.

### 5.2    Purchase Procedure; Termination

In connection with the purchase of an Aircraft pursuant to Clause 5.1, upon indefeasible payment to the Lessor of the Termination Value in respect of such Aircraft in full on such date and any and all Rent then due in respect of such Aircraft, the Lessor will (at the cost of the Lessee) transfer to the Lessee or its Approved Nominee all of the Lessor's right, title and interest in and to such Aircraft (including any warranties relating thereto and assigned to the Lessor pursuant to the relevant Purchase Assignment and the relevant Engine Warranties Agreement), in "AS-IS, WHERE-IS" condition, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, except that the Lessor will warrant to the Lessee or its Approved Nominee that it has such title to such Aircraft as was delivered to the Lessor by the Manufacturer on the Delivery Date for such Aircraft (or in respect of any Engine or Part which was not delivered to the Lessor by the Manufacturer on the Delivery Date for such Aircraft or was delivered to the Lessor pursuant to any subsequent transfer in accordance with the terms of this Lease, on the date the Lessor acquired title to such Engine or Part), and the lawful right to transfer such Aircraft in accordance with the terms hereof and that such Aircraft is free of all Lessor Liens attributable to it.  THE WARRANTY CONTAINED IN THE IMMEDIATELY PRECEDING SENTENCE WILL BE MADE BY LESSOR IN LIEU OF AND IN

FILED DATE: 1/11/2023 2:57 PM   2023L000001

SUBSTITUTION FOR, AND LESSEE HEREBY WAIVES, RELEASES AND RENOUNCES, ALL OTHER EXPRESS OR IMPLIED WARRANTIES, CONDITIONS OR REPRESENTATIONS WITH REGARD TO THE CONDITION OR TITLE OF THE RELEVANT AIRCRAFT (INCLUDING SUCH AS TO THE STATE, DESCRIPTION, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT), AND ALL OBLIGATIONS AND LIABILITIES OF LESSOR HEREUNDER WITH RESPECT TO CONSEQUENTIAL DAMAGES THEREFROM, AND ALL RIGHTS, CLAIMS AND REMEDIES OF LESSEE, EXPRESS OR IMPLIED, ARISING OUT OF LAW OR OTHERWISE WITH RESPECT THERETO THE USE OR OPERATION OF SUCH AIRCRAFT AND ANYTHING GIVEN OR SOUGHT TO BE IMPLIED FROM ANYTHING SAID OR WRITTEN IN THE NEGOTIATIONS BETWEEN THE PARTIES HERETO OR THEIR REPRESENTATIVES PRIOR TO ENTERING INTO THIS LEASE WITH RESPECT THERETO.   ANY STATUTORY OR OTHER WARRANTY, CONDITION, DESCRIPTION OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE STATE, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT IS EXPRESSLY EXCLUDED, INCLUDING BUT NOT LIMITED TO:

(a)    ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS;

(b)    ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE;

(c)    ANY OBLIGATION OR LIABILITY WITH RESPECT TO ANY ACTUAL OR ALLEGED INFRINGEMENT OF PATENTS, LICENSES OR THE LIKE, OR ANY OTHER INTELLECTUAL PROPERTY;

(d)    ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM EACH PARTY'S OR ITS ASSIGNS' NEGLIGENCE, ACTUAL OR IMPUTED; AND

(e)    ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO SUCH AIRCRAFT, FOR LOSS OF USE, REVENUE OR PROFIT WITH RESPECT TO LESSEE OR FOR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF WHATEVER DESCRIPTION.

In connection with such transfer, the Lessee shall prepare and the Lessor shall execute, all in form and substance satisfactory to the Lessee and/or in a form recordable in the Government of Registry, a bill of sale evidencing each such transfer, a termination of the leasing of such Aircraft under this Lease and such other documents (including the discharge of the Lien of the Aircraft Mortgage in respect of such Aircraft and the other Security Documents and opinions of counsel) as the Lessee may reasonably request, all at the expense of the Lessee.  Upon a purchase of an Aircraft by the Lessee or its nominee pursuant to Clause 5.1 and Clause 5.2 or Clause 14, the leasing of such Aircraft under this Lease shall terminate.

**5.3    Return of Aircraft; Condition Upon Return**

(a)    Unless the Lessee or its nominee shall have acquired title to an Aircraft pursuant to Clause 5.2 or Clause 14, the Lessee will, upon the termination or expiration of this Lease with respect to such Aircraft (other than following an Event of Loss with respect to such Aircraft), at its own risk and expense, cause the Airframe for such Aircraft, together with the Manuals and Technical Records therefor, to be delivered to the Lessor pursuant to Clause 5.6, fully equipped with two Engines, duly installed thereon (or one or two Replacement Engines of the same manufacturer or of another manufacturer, of the same or an improved model (it being understood that such engines on such Aircraft shall be of the same or an improved model and suitable for installation and use on the Airframe for such

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Aircraft but having a value and remaining useful life at least equal to, and being in as good operating condition as, the Engines leased by the Lessee for such Aircraft)), duly installed thereon.

(b)    At the time of such return, (i) such Aircraft shall have a valid Certificate of Airworthiness, (ii) the Airframe and Engines or engines for such Aircraft shall be free and clear of all Liens (other than any Lessor Liens, Lender Liens or other Liens arising under any Operative Document), (iii) the Airframe and Engines or engines for such Aircraft shall be in as good operating condition, and in proper operating condition for scheduled revenue passenger flights as provided in this Clause 5.3, Clause 7.2 and Clause 8 and (iv) such Aircraft shall, except as otherwise provided herein, be in substantially the same configuration and have installed (A) the same or equivalent avionics and other equipment, safety equipment and appurtenances as when such Aircraft was originally delivered to the Lessee hereunder and (B) all other equipment financed on the Delivery Date for such Aircraft (it being agreed that the records of the Manufacturer, including the Purchase Agreement and the Manuals and Technical Records, shall be prima facie evidence thereof).

(c)    Upon such return the Airframe for such Aircraft shall have cleared a recently completed major check as would be required to clear such Aircraft for at least the next 12 months and such Engines and all major components for such Aircraft shall have at least 50% of the hours, cycles or time (whichever is more limiting) in each case remaining until the next anticipated engine refurbishment, overhaul or inspection requiring removal.  At the time of such return, the Lessee shall also at its own expense:

(i)    remove or paint over all names, insignia and other indications of the Lessee or any Permitted Sub-Lessee from the exterior and interior of such Aircraft in a good, workman-like manner;

(ii)    transfer or cause to be transferred, or reassign or cause to be reassigned, to the Lessor to the extent then possible all assignable and remaining warranties and performance guarantees obtained by the Lessee or any Permitted Sub-Lessee with respect to such Aircraft, together with all documents related thereto that may be required to effect such transfer or reassignment; and

(iii)    if requested by the Lessor, obtain an export certificate of airworthiness (if available) for, and obtain or submit any applicable approval, permit, license or report for the re-export of, such Aircraft from the Civil Aviation Authority and deregister such Aircraft from the registry maintained by the Government of Registry.

(d)    If the Lessee fails to remove or procure the removal by the Permitted Sub-Lessee of the registration or to obtain the export certificate of airworthiness or such re-export approval, permit or license as provided above, the Lessor may do so at the cost and expense of the Lessee and, in such event, the Lessee shall upon demand reimburse the Lessor for the cost thereof.  The Lessee hereby irrevocably appoints the Lessor, upon such failure of the Lessee, as its true and lawful attorney-in-fact, with full power of substitution, in the Lessee's name or otherwise, to carry out the provisions of this Clause 5.3 and to take any action and to execute and/or file any instrument necessary to accomplish the purposes of this Clause 5.3.

(e)    If any other of the foregoing requirements shall not be satisfied at the time of return, the Lessee shall (at the Lessor's election) either promptly remedy any deficiency or make a payment fully compensating the Lessor for the remedy of such deficiency.  If requested by the Lessor, the Lessee shall perform or procure the performance of (at the sole cost and expense of the Lessee):

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(i)     a complete videotape borescope inspection of such Engines in accordance with Engine Manufacturer's maintenance manual demonstrating to the Lessor's satisfaction that such Engines (or any module) are not unserviceable or beyond serviceable limits (or serviceable with limitations) under such manual; and

(ii)    a flight test demonstration, at the Lessee's expense and during normal business hours, for a period of not more than two hours at any airport referred to in Clause 5.4.  Personnel designated by the Lessor may participate as observers in such demonstration flight and a pilot selected by the Lessor may accompany the Lessee's pilot and occupy the observer's seat during such demonstration.  The purpose of the demonstration flight will be to ascertain that all systems and their components are functioning satisfactorily and in the event they are not so functioning they will be corrected by the Lessee or provision made therefor by the Lessee.

**5.4    Place of Redelivery; Storage Upon Return**

Each Aircraft shall be returned to an airport in Europe designated by the Lessor, and the Lessee shall retain the risk of loss for such Aircraft, and the related Airframe, Engines and Parts, until they are returned in conformity with the provisions of this Lease at such airport.

**5.5    Return of Engines**

In the event that any engine not owned by the Lessor shall be delivered with any returned Airframe as set forth in Clause 5.3 (which engine must meet the requirements of a Replacement Engine, the Lessee shall, concurrently with such delivery, at its own expense, furnish the Lessor with a bill of sale covering such engine, including full warranty as to title, and thereupon the Lessor will transfer to the Lessee, on an "as-is, where-is" basis, without recourse or warranty (except as to the absence of Lessor Liens, Lender Liens or other Liens arising under or in connection with any Operative Document), all of the Lessor's right, title and interest in and to any Engine constituting part of the relevant Aircraft but not installed on such Airframe at the time of the return of such Airframe.  After such conveyance, the substituted engine shall be deemed an "Engine" as defined herein and shall meet the conditions set forth in Clause 5 hereof.

**5.6    Fuel, Manuals**

Upon the return of each Aircraft, each fuel tank and oil tank shall contain the same quantity of fuel or oil as was contained in the fuel and oil tanks when such Aircraft was delivered to the Lessee on the Delivery Date for such Aircraft.  Upon the return of each Aircraft, the Lessee shall deliver to the Lessor at least one original or certified copy of all logs, manuals and data, and inspection, modification and overhaul records (including all job cards) required to be maintained with respect to such Aircraft under the applicable rules and regulations of the Civil Aviation Authority (collectively, the **Manuals and Technical Records**) and such other additional records as would be necessary for the FAA to issue an unrestricted certificate of airworthiness, passenger transport category, for such Aircraft and if any thereof are not in English, certified English translations thereof.

**6.    LIENS**

The Lessee will not (and shall procure that no sublessee will) directly or indirectly create, incur, assume, suffer, permit or allow to exist any Lien on or with respect to any Aircraft or any Airframe or any Engine or any Part, title thereto or any interest therein or in or to this Lease or any other Operative Document or any of its rights hereunder or thereunder, except Permitted Liens.  The Lessee will promptly, at its own expense, take such action as may be necessary duly to discharge or satisfy (by bonding or otherwise) any Lien that is not a Permitted Lien if the same shall arise at any time.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 7.   REGISTRATION, MAINTENANCE, OPERATION AND POSSESSION

### 7.1   Registration

The Lessee shall, at its sole cost and expense, upon the delivery of an Aircraft, cause such Aircraft to be duly certified as to airworthiness in accordance with the law of the Government of Registry and to be duly registered with the Civil Aviation Authority in the name of the Lessor as owner of such Aircraft and the relevant Initial Permitted Sub-Lessee as operator of such Aircraft, the extent permitted by Applicable Law.  Unless otherwise provided in this Lease, the Lessee shall not take any action, or fail to take any action, which action or failure might cause such airworthiness certification and registration to cease to be in full force and effect or to be revoked, withdrawn or suspended.  Without limiting the generality of the foregoing, the Lessee at all times during the Term for an Aircraft shall ensure, at the Lessee's sole cost and expense, that prior to the expiration thereof, the Certificate of Airworthiness and Certificate of Registration are renewed or maintained by the Civil Aviation Authority.  Without limiting the generality of Clause 11, the Lessor shall take, and shall co-operate with the Lessee to take, at the Lessee's sole cost and expense all actions necessary to permit and maintain such registration and to permit the Lessee to receive copies of all correspondence and communications to and from the Civil Aviation Authority.  Except as expressly permitted by the Operative Documents, the Lessee shall not, during the Term for an Aircraft, take any action which (a) may cause deregistration of such Aircraft from the Civil Aviation Authority or (b) the removal of the Lien of the Aircraft Mortgage in respect of such Aircraft from the Civil Aviation Authority.

### 7.2   Maintenance

The Lessee shall, at the Lessee's cost and expense:

(a)   establish, maintain or cause the establishment and maintenance of a maintenance programme for Boeing model 737 - 8 aircraft and for CFM model LEAP-1B27 engines (and Replacement Engines), as the case may be, each conforming with the Manufacturer's and Engine Manufacturer's maintenance planning document and approved by the Civil Aviation Authority (collectively, the **Approved Maintenance Programme**), and ensure that all service, inspection, maintenance, modification, storage, repair and overhaul of each Aircraft is performed in accordance with such Approved Maintenance Programme, by the Lessee or by the Permitted Sub-Lessee if so approved by the Civil Aviation Authority or by a maintenance facility approved by the Civil Aviation Authority (the **Approved Maintenance Facility**), provided that (i) all Manuals and Technical Records shall be kept in the English language, (ii) the Lessee shall submit the Approved Maintenance Programme to the Lessor, the Agent, the Insurer Representative and Security Trustee on or prior to the Delivery Date for each Aircraft and shall advise the Lessor, and the Insurer Representative, upon their reasonable request, of any material subsequent changes to such Approved Maintenance Programme by issuing revisions thereof approved by the Civil Aviation Authority to the Lessor, Security Trustee, the Insurer Representative and the Agent and (iii) upon the return of any Aircraft pursuant to the terms hereof, such Aircraft shall be capable of qualifying immediately for the issuance of a Certificate of Airworthiness issued by the FAA for commercial passenger transport;

(b)   keep each Airframe, each Engine and all Parts or procure each of the same are kept in good operating and serviceable condition and repair, and in such condition (including maintenance of the Manuals and Technical Records) as necessary to enable all applicable airworthiness certifications of each Aircraft to be maintained in good standing at all times under the Applicable Laws of the Government of Registry except when such Aircraft is undergoing service, maintenance, modification, overhaul, testing and/or repairs as required or permitted hereunder;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)      promptly furnish the Lessor, upon request, with such information as may be required to enable the Lessor to file any report required to be filed by the Lessor with any Government Body because of the Lessor's ownership of each Aircraft or the Lessor's lease of each Aircraft hereunder, as the case may be;

(d)      procure that each Airframe, each Engine and each Part is maintained, inspected serviced, stored, repaired, modified and overhauled (i) to comply with all warranty requirements pursuant to the Purchase Agreement or the Engine Agreement, as the case may be, (ii) in accordance with Manufacturer's and Engine Manufacturer's repair manuals, (iii) pursuant to the Approved Maintenance Programme and (iv) in a manner that does not discriminate against any Aircraft, any Airframe or any Engine when compared to the highest applicable standard (including the prompt performance of Service Bulletins, mandatory Manufacturer's and Engine Manufacturer's directives and Airworthiness Directives) applied by the Lessee or the Permitted Sub-Lessee with regard to similar aircraft owned, operated or leased by the Lessee or the Permitted Sub-Lessee;

(e)      procure and maintain in effect with Manufacturer and Engine Manufacturer a revision service, if any, for all Manuals and Technical Records, and maintain the Manuals and Technical Records in such condition to satisfy the standards of the Civil Aviation Authority for a Certificate of Airworthiness for commercial passenger/cargo transport;

(f)      procure that for each Aircraft, all applicable mandatory alert Service Bulletins issued by Manufacturer and Engine Manufacturer shall be accomplished, and, in addition, all other Service Bulletins the Lessee or the Permitted Sub-Lessee adopts during the Term for such Aircraft for any similarly operated aircraft of the same model in the Lessee's or the Permitted Sub-Lessee's fleet, it being the intent of the parties that no Aircraft shall be discriminated against in any manner in Service Bulletin compliance and other maintenance matters; and

(g)      for each Aircraft, comply with all applicable Airworthiness Directives issued by the Civil Aviation Authority and which become due during the Term for such Aircraft or which at the time of redelivery of such Aircraft to the Lessor pursuant to the terms hereof have been issued by the Civil Aviation Authority or made mandatory by EASA upon operators regarding Boeing model –737 - 8 aircraft, CFM model LEAP-1B27 engines and any Part, as the case may be, and which have become due.

Neither the Lessor nor any Secured Party shall bear responsibility or liability for any grounding or suspension of operations of any Aircraft resulting from Airworthiness Directives, Service Bulletins, or any repairs or modifications to any Aircraft by the Lessee or any other Person.

**7.3    Operation**

Subject to Clause 7.5, the Lessee undertakes that no Aircraft will be maintained, used, insured or operated:

(a)      in violation of the Certificate of Airworthiness or any license or registration of, or with, any Government Body having jurisdiction over the Lessee (or any Permitted Sub-Lessee) or such Aircraft;

(b)      for any primary purpose other than the commercial transportation of passengers and/or cargo, provided that cargo shall be carried only in the cargo hold of such Aircraft;

(c)      in violation of the Approved Maintenance Programme or any warranty requirements pursuant to the Purchase Agreement, Engine Agreement or any other agreement setting forth

FILED DATE: 1/11/2023 2:57 PM   2023L000001

any other material warranties with respect to such Aircraft, the related Airframe, Engines or Parts;

(d)     for any purpose or in any manner for which it is not designed or reasonably suited or outside the tolerances and limitations for which such Aircraft, the related Airframe or any related Engine was designed in accordance with the Approved Maintenance Program, Applicable Laws and applicable material warranties;

(e)     at any time while the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof are not in full force and effect;

(f)     for any purpose or in any manner inconsistent with the terms of, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof;

(g)     in any place inconsistent with the terms of, excluded from coverage by, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof (or outside any geographical limit imposed by the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof, including without limitation, in or through any recognized or (in the Lessor's, the Agent's or the Insurer Representative's reasonable opinion) threatened area of hostilities unless fully covered by war risk and allied perils insurance in amounts and scope required by this Lease; or

(h)     in violation of any Applicable Law of or by any Government Body having jurisdiction over the Lessor or the Lessee (or any Permitted Sub-Lessee) or any Secured Party or any Aircraft or any mandatory requirement of Manufacturer, Engine Manufacturer or supplier, except for unintentional minor or nonrecurring violations which are cured promptly and which:

     (i)     do not involve any loss or reduction of coverage under any of the Aircraft Insurances or any Aircraft Reinsurances required by the terms of Clause 10;

     (ii)     do not involve any material risk of the sale, forfeiture or loss of or damage to such Aircraft or any interest therein;

     (iii)     do not involve any material risk of the Lessor or any Secured Party being subject to civil penalties;

     (iv)     do not involve any risk of criminal penalties being imposed against or upon the Lessee, the Lessor, the Lessor Parent or any Secured Party, which in the case of the Lessor or the Lessee shall be a material risk; and

     (v)     do not subject the Lessor, the Lessee or the Permitted Sub-Lessee to any fine or penalty or enforcement action which would materially adversely affect the business or operations of the Lessor, the Lessee, the Permitted Sub-Lessee or any Guarantor, the operation of any Aircraft or the rights of the Lessee, the Lessor or any Secured Party hereunder or under any other Operative Document,

provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party or have any material risk of the sale or forfeiture of any Aircraft, or of materially adversely affecting the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder, and if any Applicable Law requires alteration of any Aircraft, the Lessee will conform thereto or obtain conformance therewith at no cost or expense to the Lessor or any Secured Party and will maintain such Aircraft in proper operating condition under such

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Applicable Law, provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party, have any material risk of the sale or forfeiture of any Aircraft or any Engine, or adversely affect the rights of the Lessor or any Secured Party hereunder or under any other Operative Documents or the obligations of the Lessee hereunder.

Further, the Lessee undertakes that:

(i)     all debts, costs, Losses, liabilities, premiums, calls, contributions, penalties, landing fees, overflight and navigation charges (including Eurocontrol fees), dues, tolls, charges, fines, recoveries or other expenses with respect to any Aircraft shall be duly and punctually paid and discharged during the Term, provided that the Lessee may in good faith diligently contest the validity or application of any of the foregoing in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of the sale of forfeiture of any Aircraft, or adversely affecting the rights of the Lessor or any Secured Party hereunder or under any of the other Operative Documents or the obligations of the Lessee hereunder or any risk of any criminal penalties or criminal liability being imposed, and upon reasonable request by the Lessor, the Insurer Representative or the Security Trustee shall confirm to such Person's reasonable satisfaction that such action has been taken;

(ii)    no alteration in or modification or addition to any Airframe, any Engine or any Part, or any removal of any Engine or any Part from the Aircraft, or installation on or attachment to any Airframe, any Engine or any Part of anything not being part of any Aircraft on the Delivery Date shall occur unless expressly permitted by this Lease, including under Clause 8.4; and

(iii)   it shall not and shall procure that any Permitted Sub-Lessee shall not cause or permit to be done anything regarding any Airframe, any Engine or any Part the effect of which may be reasonably expected to result in such Airframe, such Engine or such Part being requisitioned for title or arrested or otherwise to jeopardize the interests of the Lessor and the Secured Parties in and to such Airframe, such Engine or such Part.

## 7.4    Possession

(a)     Subject to Clauses 7.5, 8 and 9, the Lessee shall not and shall procure that no Permitted Sub-Lessee shall, without the prior written consent of the Insurer Representative and the Security Trustee (which consent may be withheld in their sole discretion), sublease (whether directly, under a Dry Lease or Wet Lease), or otherwise in any manner deliver, transfer or relinquish possession of any Airframe, any Engine or any Part to any Person or firm or install any Engine, or permit any Engine to be installed, on any airframe other than the associated Airframe, provided, however, that (subject to Clauses 7.5, 8 and 9) so long as no Termination Event or Event of Default shall have occurred and be continuing, the Lessee may, without the prior written consent of the Insurer Representative, the Agent or the Security Trustee:

(i)     deliver or permit the delivery of possession of any Airframe, any Engine or any Part (A) to the manufacturer thereof for testing or other similar purposes or (B) to an Approved Maintenance Facility for service, repair, maintenance or overhaul work on such Airframe, such Engine, such Part or any part thereof or for alterations or modifications in or additions to such Airframe, such Engine or such Part to the extent required or permitted by the terms

FILED DATE: 1/11/2023 2:57 PM   2023L000001

of Clause 8.4, but in any event only in compliance with the Approved Maintenance Programme and Clause 7.2;

(ii)     install or permit the installation of an Engine for any reason on another airframe owned by the Lessee free and clear of all Liens, except (A) Permitted Liens and except those that apply only to the engines (other than the Engines), appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment (other than Parts) installed on such airframe (but not to such airframe as an entirety); and (B) mortgage liens or other security interests, but only if the holder of such mortgage lien or other security interest expressly agrees that such Engine shall not become subject to the Lien of such mortgage or security interest, notwithstanding the installation thereof on such airframe;

(iii)    install or permit the installation of an Engine for any reason on an airframe owned or operated by the Lessee or an Approved NAS Sub-Lessee (while such Approved NAS Sub-Lessee is leasing the Engine from the Lessee pursuant to a Permitted Sub-Lease) leased under a lease unrelated to this Lease to the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) or purchased by the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) subject to a conditional sale or other security agreement, provided, however, that in any such case the Lessee shall provide written assurance reasonably satisfactory to the Lessor and the Security Trustee that the rights, title and interests of the Lessor and the Secured Parties in such Engine under the Operative Documents will not be derogated in any material manner as a result thereof;

(iv)     temporarily install an engine on an Airframe which does not satisfy the requirements of Replacement Engine;

(v)      wet lease the Aircraft:

       (A)      if from a Permitted Sub-Lessee to any of Norwegian Air Shuttle, Norwegian Air International Limited, Norwegian Air UK Limited, Norwegian Air Sweden AB or Norwegian Air Norway AS, for a term not to exceed the lesser of twelve (12) months and the remainder of the Term for such Aircraft; or

       (B)      otherwise, for a term not to exceed the lesser of six (6) months and the remainder of the Term for such Aircraft; and

provided, in each case, that the rights of any transferee who receives possession by reason of a transfer permitted by this Clause 7.4 (other than the transfer of an Engine which is deemed an Event of Loss) SHALL BE EXPRESSLY SUBJECT AND SUBORDINATE TO ALL THE TERMS OF THIS LEASE AND THE OTHER OPERATIVE DOCUMENTS, including the Lessor's and the Secured Parties' rights to a repossession pursuant to Clause 14 hereof, to terminate and avoid this Lease or other transfer upon such repossession and to require the Lessee or other transferee to forthwith deliver any Airframe and/or any Engine subject to this Lease or other transfer upon repossession, and the Lessee shall remain primarily liable hereunder for the performance of all of the terms of this Lease to the same extent as if such transfer had not occurred.

(b)     No relinquishment of possession of any Airframe, any Engine or any Part shall affect in any way the registration of any Aircraft or discharge or diminish any of the Lessee's obligations hereunder or under any of the other Operative Documents or constitute a waiver of the Lessor's or any Secured Party's rights or remedies hereunder or under any of the other Operative Documents.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)    The Lessor agrees, for the benefit of the Lessee (and any Permitted Sub-Lessee) and for the benefit of any mortgagee or other holder of a security interest in any engine (other than an Engine) owned or leased by the Lessee (or any Permitted Sub-Lessee), any lessor of any engine (other than an Engine) leased to the Lessee (or any Permitted Sub-Lessee) and any conditional vendor of any engine (other than an Engine) purchased or leased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale agreement or any other security agreement, that no interest shall be created hereunder in any engine so owned, leased or purchased and that none of the Lessor, Security Trustee nor their respective successors or assigns will acquire or claim, as against the Lessee (or any Permitted Sub-Lessee) or any such mortgagee, lessor or conditional vendor or other holder of a security interest or any successor or assignee of any thereof, any right, title or interest in such engine as the result of such engine being installed on any Airframe, provided, however, that such agreement of the Lessor shall not be for the benefit of any lessor of or secured party in respect of any airframe (other than an Airframe) leased to the Lessee (or any Permitted Sub-Lessee) or purchased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale or other security agreement or for the benefit of any mortgagee of or any other holder of a security interest in an airframe (other than an Airframe) owned by the Lessee (or any Permitted Sub-Lessee), unless such lessor, conditional vendor, other secured party or mortgagee has expressly agreed (which agreement may be contained in such lease, conditional sale or other security agreement or mortgage) that neither it nor its successors or assigns will acquire, as against the Lessor, the Security Trustee or any other Secured Party any right, title or interest in an Engine as a result of such Engine being installed on such airframe.

(d)    The Lessee will, upon reasonable request, furnish to the Insurer Representative, the Security Trustee and the Agent prompt notice of any transfer or relinquishment of possession of any Aircraft permitted under this Clause 7.4 (other than Clause 7.4(a)), and if requested by the Insurer Representative, the Security Trustee or the Agent a copy of the documents relating to such transfer or relinquishment of possession, duly certified by an officer's certificate of the Lessee as being a complete and correct copy of all documents so provided.

**7.5    Dry Leasing**

(a)    The Lessee shall not enter into any sublease (whether by Dry Lease or any other similar arrangement) of any duration with respect to any Aircraft (including any Airframe and any Engines or engines installed thereon) with any Person without the prior written consent of the Insurer Representative, the Agent and the Security Trustee (each of which may withhold its consent in its sole discretion) other than:

(i)    the Initial Permitted Sub-Lease; or

(ii)    another Permitted Sub-Lease with a Permitted Sub-Lessee.

(b)    Other than in respect of the Initial Permitted Sub-Lease, any such sublease shall be subject to the following conditions and requirements:

(i)    any such sublease shall be made expressly subject and subordinate to all the terms of this Lease and the other Operative Documents, and shall not adversely affect the priority or perfection of the Lien of the Security Documents, the enforceability of the Collateral or the right of the Lessor or the Security Trustee to avoid such sublease and to repossess such Aircraft, the associated Airframe or the associated Engines in connection with the exercise of any remedies upon any Termination Event or Event of Default;

(ii)    the Lessee shall remain primarily liable hereunder for the performance of all terms and conditions of this Lease to the same extent as if such sublease had not occurred;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(iii)   all terms and conditions of this Lease and the other Operative Documents shall remain in full force and effect;

(iv)   prior to entering into any such sublease, the Lessee shall provide to the Lessor and the Secured Parties certificates of insurance, reinsurance and brokers' undertakings in respect of insurances and reinsurances from the Lessee's insurance brokers or an authorized representative of the Lessee's insurers reflecting that the Aircraft Insurances and Reinsurances required to be maintained pursuant to Clause 10 are in full force and will not be adversely affected due to the sublease;

(v)   such sublease shall (A) provide that such Aircraft, and the associated Airframe, Engines and Parts, be maintained in accordance with the Approved Maintenance Programme, and (B) be governed by English law or another jurisdiction acceptable to the Security Trustee, the Agent and the Insurer Representative, and (C) be with a Permitted Sub-Lessee;

(vi)   such sublease shall not permit any further sub-leasing and the term of the sublease shall not exceed the remaining Term with respect to such Aircraft;

(vii)   either (A) no re-registration of such Aircraft shall occur as a result of entering into such sublease or (B) if entering into such sublease shall involve the re-registration of such Aircraft, the proposed state of registration of such Aircraft shall be Norway, Ireland, Sweden, the United Kingdom or shall have been approved by the Insurer Representative, the Agent and the Security Trustee in writing (which approval may be withheld in their sole discretion) and shall in each case be subject to the following:

　　(A)   under the Applicable Laws of the proposed state of registration of such Aircraft:

　　　　I.   there shall exist no rights in favour of the Lessee or the relevant sublessee or any other Person that would, upon bankruptcy or other default by such sublessee, prevent the deregistration, re-export and return of such Aircraft to the Lessor (or upon the enforcement of the Lien of the Security Documents, the Security Trustee) in accordance with and as permitted by the terms of Clause 5 upon the exercise by the Lessor of its remedies under Clause 14;

　　　　II.   the Lessor shall be recognized as the owner of such Aircraft and the Secured Parties' Lien over the Aircraft pursuant to the Security Documents shall be recognised;

　　　　III.   there shall be no impediment (as at the date of re-registration) to the exercise of the rights and remedies provided for in this Lease or in any other Operative Document in respect of such Aircraft and the practical realisation by the Lessor and the Secured Parties of the benefits of this Lease and the Security Documents (to the extent relating to the Aircraft and this Lease) will be available under such Applicable Law;

　　　　IV.   the rights of the Lessor under this Lease and the rights and Liens of the Security Trustee and the Secured Parties under the Security Documents, in each case, in respect of such Aircraft, shall be enforceable in the jurisdiction of re-registration and, if requested by the Security Trustee or the Insurer Representative, the Lessor shall provide a new local law mortgage over the Aircraft in favour of the Secured Parties;

　　　　V.   all filings (including all filings required by the Insurer Representative or the Security Trustee pursuant to the Cape Town Convention), recordations and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

other actions necessary in order to establish, protect and perfect the Lessor's title to the Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Paragraph IV above) shall have been made;

VI.    no Secured Party shall be required to qualify to do business in such jurisdiction as a result of such re-registration;

(B)    such re-registration shall not result in any Tax for which the Lessee is not required to indemnify;

(C)    the insurance and any reinsurance required in respect of such Aircraft by Clause 10 shall be in full force and effect subsequent to such re-registration and the Lessee shall provide to the Lessor, the Insurer Representative, the Agent and the Security Trustee evidence of such insurance and any reinsurances required reasonably satisfactory to the Insurer Representative, the Agent and the Security Trustee;

(D)    no Liens (other than Permitted Liens) shall arise as a result of such re-registration;

(E)    all filings, registrations, recordations and other actions necessary under the Applicable Laws of the jurisdiction in which such Aircraft is to be registered, in order to establish, protect and perfect the Lessor's title to such Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Clause 7.5(vii)(A)(IV) above), shall be made;

(F)    the Lessee shall provide to the Lessor, the Insurer Representative, the Agent and the Security Trustee an opinion of independent counsel in the state of such re-registration addressed to the Lessor, the Security Trustee, the Agent and the Insurer Representative reasonably satisfactory in form and substance to the Insurer Representative, the Agent and the Security Trustee; and

(G)    all reasonable costs, expenses, fees and other charges in connection with any such re-registration shall be paid by the Lessee;

(viii)    the Lessee shall (A) at least thirty (30) days prior to such sublease taking effect, give the Lessor, the Security Trustee, the Agent and the Insurer Representative written notice of such proposed sublease together with a copy of the proposed agreement (which agreement must be reasonably acceptable in form and substance to the Lessor, the Security Trustee and the Insurer Representative), (B) deliver a copy of the approved executed agreement to the Security Trustee, the Lessor, the Agent and the Insurer Representative and assign the Lessee's interests in such agreement to the Lessor, who in turn shall assign such interests to the Security Trustee, as a perfected first-priority security interest for the Lessee's obligations hereunder and cause the Lessee to consent to such assignment and to the Lessor's further assignment of such sublease to the Security Trustee for the benefit of the Secured Parties and (C) provide evidence to the Security Trustee, the Agent and the Insurer Representative that registrations have been made with the International Registry with respect to the International Interests, if any, created pursuant to such sublease and the assignments of International Interests, if any, created pursuant to the assignments;

(ix)    the Lessee shall, at least ten (10) days prior to such sublease taking effect, deliver to the Lessor, the Security Trustee, the Agent and the Insurer Representative proposed forms of (A) an acknowledgment by the sublessee recognizing all rights, title and interests of the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessor, the Security Trustee and the other Secured Parties under the Operative Documents, and (B) a written opinion of counsel in the country of citizenship or incorporation or formation of the relevant sublessee confirming that all steps necessary to protect the rights, title and interests of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents (including, without limitation, registration of all interests, assignments and subordinations with the International Registry) have been taken or will be taken in a manner reasonably satisfactory to the Secured Parties, each in form and substance reasonably satisfactory to the Lessor, the Agent, the Insurer Representative and the Security Trustee, and on or prior to such sublease taking effect, deliver to the Lessor, the Insurer Representative, the Agent and the Security Trustee executed copies of such documents;

(x)     the Lessee shall promptly reimburse the Lessor, the Security Trustee or any other Secured Party for any reasonable costs and expenses (including attorneys' fees and expenses) incurred by them in connection with such sublease or any related re-registration; and

(xi)    the proposed sublessee must be solvent.

## 7.6     Special Operation and Possession Covenants

In addition to the foregoing requirements, the Lessee covenants and agrees as follows:

(a)     **Restricted Use of Aircraft**

No Aircraft, Engine or Part shall, without the prior written consent of the Lessor, the Security Trustee, the Agent and the Insurer Representative, (whether, directly or under a Dry Lease, Wet Lease, Charter, blocked-space or other arrangement) be:

(i)     flown to, from or within, or otherwise operated or used to, from or within, any Restricted Country if to do so would breach any Applicable Law (including Sanctions) or operated (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under, the laws of, or whose principal place of business or principal place of aircraft operations is located in, any Restricted Country;

(ii)    principally used in, or operated or used (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under the laws of, or whose principal place of business or principal place of aircraft operations is located in, a Restricted Country;

(iii)   "primarily based" in one or more Restricted Countries.  For purposes of this provision, **primarily based** shall mean that during any consecutive seven (7) day period, the aggregate amount of time spent on the ground by such Aircraft, such Engine or such Part, as applicable, in one or more Restricted Countries shall exceed 15% of the total amount of time spent on the ground during such seven (7) day period, provided that the limitation imposed by this paragraph (iii) shall not prohibit, to the extent necessary, any nonrecurring maintenance or other nonrecurring repairs to be done with respect to an Aircraft in a Restricted Country;

(iv)    operated or used by or for any other Person except in accordance with Clauses 7.3, 7.4 and 7.5;

(v)     operated or used in contravention of any United States law, regulation or stated policy of general applicability restricting the operation or use of United

FILED DATE: 1/11/2023 2:57 PM   2023L000001

States-manufactured or financed aircraft and engines and such restrictions are applicable to the transactions contemplated hereby;

(vi)    operated in any manner which would cause any Obligor, any Secured Party or any Permitted Sub-Lessee to be in breach of Sanctions;

(vii)    flown or otherwise operated or used for any offensive or defensive military purpose;

(viii)    operated or used for any purpose for which it is not designed or reasonably suited in accordance with the Approved Maintenance Programme, Applicable Law and applicable material warranties or for any primary purpose or other than the commercial transport of passengers and cargo; or

(ix)    subleased (whether under a dry lease or wet lease) to any Person other than as provided in this Lease,

and the Lessee shall inform the Agent, the Insurer Representative and the Security Trustee in writing as soon as possible if any Obligor or any of its Subsidiaries or, upon its becoming aware, any of their respective joint ventures or any of their respective directors, officers or employees, becomes a Sanctioned Person.

(b)    **Waiver of Defences to Repossession**

None of the Lessee, nor any Permitted Sub-Lessee, nor anyone claiming through or under the Lessee or Permitted Sub-Lessee, shall set up, claim or seek to take advantage of any Applicable Laws now or hereafter in force in any jurisdiction in which any Aircraft or any portion thereof may be situated in order to prevent, hinder or delay any effort in accordance with this Lease on the part of the Lessor or any Secured Party to regain possession of any Aircraft or deregister or re-export any Aircraft or any portion thereof from any jurisdiction in which such Aircraft or any portion thereof may be situated following the occurrence of an Event of Default or Termination Event, and while the same shall be continuing, and the Lessee, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may be lawful so to do, the benefit of all such Applicable Laws (including, without limitation, any rights it may have, if any, to avail itself of the protection provided by the Convention of 1933 on the Unification of Certain Rules Relating to the Precautionary Arrest of Aircraft, or any other similar law, treaty or convention applicable to the Lessee or any Aircraft which would limit the ability of the Lessor or any Secured Party to repossess or otherwise recover any Aircraft following the occurrence and during the continuance of an Event of Default or Termination Event).

(c)    **Statement of Account of Landing Fees or Navigation Charges**

In the event that a Government Body of any country in which any Aircraft or the Lessee or any Permitted Sub-Lessee operates shall be permitted by Applicable Law to detain or seize, or shall adopt legislation which permits the detention or seizure of, an aircraft for unpaid landing fees or navigation charges without formal legal proceedings, the Lessee shall (and shall procure that any Permitted Sub-Lessee shall) promptly following demand by the Security Trustee or the Insurer Representative, deliver to the Security Trustee, the Agent and the Insurer Representative a letter, in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative, addressed to the airport or air navigation authority of such country authorizing such authority to release to the Security Trustee from time to time a statement of account of all such fees and charges then due in respect of all aircraft owned by or leased to the Lessee or any Permitted Sub-Lessee, as the case may be.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(d)     **Eurocontrol**

The Lessee shall and shall procure that the relevant Initial Permitted Sub-Lessee shall prior to the Delivery Date of an Aircraft, and the Lessee shall procure that any other Permitted Sub-Lessee shall, prior to the commencement of any sub-lease:

(i)     procure that the Lessee or any Permitted Sub-Lessee executes a Eurocontrol Letter and ensure that such letter is promptly sent to and acknowledged by Eurocontrol in accordance with Eurocontrol's advertised procedures;

(ii)    to the extent it has not already done so, promptly enter into a CEFA Agreement and provide the Security Trustee and the Insurer Representative with a copy certified by an officer of such company;

(iii)   if requested by the Security Trustee or the Insurer Representative, promptly obtain from Eurocontrol (via CEFA or otherwise) and provide to the Lessor, the Security Trustee and the Insurer Representative a general statement of account in relation to charges incurred by the Lessee and the Initial Permitted Sub-Lessee (and, if applicable, other Permitted Sub-Lessee); and

(iv)    if Eurocontrol's procedures relating to the availability to third parties of general statements of account are amended, take such actions as may be reasonably requested by the Security Trustee or Insurer Representative to ensure that the Security Trustee is able to obtain (or continue to obtain) such general statements of account in accordance with such procedures.

(e)     **EU ETS Laws**

It shall procure that any Permitted Sub-Lessee:

(i)     comply, and must procure that any other "aircraft operator" for the purposes of the EU ETS Laws complies, with all EU ETS Laws applicable to it/them or the Aircraft and, promptly on request from the Lessor, the Insurer Representative or the Security Trustee, supply to such person evidence reasonably satisfactory to it of such compliance;

(ii)    identify itself as "aircraft operator" to any EU ETS Authority whenever required under the EU ETS Laws or whenever the Lessor, the Insurer Representative or the Security Trustee may request.

(f)     **No Operation by the Secured Parties**

In no event shall any Secured Party be represented as carrying goods or passengers on any Aircraft or as being in any way connected or associated with any operation or carriage which may be undertaken by the Lessee or any Permitted Sub-Lessee or as having any operational interest in any Aircraft.

(g)     **Seizure of Aircraft**

The Lessee shall not do, shall procure that no Permitted Sub-Lessee shall do, and shall otherwise use its best efforts to prevent, any act which could reasonably be expected to result in any Aircraft, any Airframe or any Engine being arrested, confiscated, seized, taken in execution, attached, impounded, forfeited, detained in exercise or purported exercise of any registered or possessory lien or other claim or otherwise taken from the possession of the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessee or any Permitted Sub-Lessee, and if any such arrest, confiscation, seizure, execution, taking, attachment, impoundment, forfeiture, detention or other loss of possession occurs, the Lessee shall give Security Trustee, the Lessor, the Agent and the Insurer Representative immediate notice thereof and shall forthwith procure the prompt release of such Aircraft, such Airframe or such Engine.

(h)     **Credit for Maintenance**

The Lessee shall not pledge and shall procure that no Permitted Sub-Lessee shall pledge  the credit of any Secured Party for any maintenance, service, repairs, overhauls of, or modifications to, or changes or alterations in, or additions to, any Aircraft, any Airframe, any Engine or any Part.

(i)      **Notice of Suspension**

The Lessee shall give the Lessor, the Security Trustee, the Agent and the Insurer Representative immediate written notice of any action being taken by the management of any Lessee Obligor relating to any general suspension of payment proceedings under any Applicable Law.

(j)      **Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under Clause 10 and should any such claim be paid, shall procure that immediate action is taken either (A) to increase any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty or (B) to obtain "contingent War Risk Insurance" acceptable to the Issuer Representative and the Security Trustee for the express benefit of the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee so that their financial interests in each Aircraft shall at all times be fully insured for the period covered by that War Risk Insurance, notwithstanding any annual aggregate limit or sublimit of liability.

(k)     **Inspection**

At all reasonable times and (except during the continuance of a Default, a Termination Event or an Event of Default) upon reasonable notice to the Lessee each of the Insurer Representative and the Agent may, no more frequently than once per calendar year each, require the Lessee to allow it and its authorised representatives to inspect any Aircraft, any Engine or any Part and the Manuals and Technical Records relating thereto and to the registration thereof and copy or make extracts from the books and records of the Lessee and any Permitted Sub-Lessee relative thereto and may discuss the Lessee's and any Permitted Sub-Lessee business or financial affairs with any of the Lessee's or Permitted Sub-Lessee officials, auditors or officers as may be required for the foregoing and, to the extent available, make any inspection reports available to the Agent, provided that, unless a Termination Event or an Event of Default has occurred and is continuing:

(i)      any such inspection shall be a visual, walk-around inspection which may include going on board such Aircraft, subject to the Permitted Sub-Lessee's limitations for reasons of safety or insurance coverage, but shall not include opening or removing any panels, bays or engine or avionic components of such Aircraft, unless such

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Aircraft is, on the date of such inspection, undergoing a maintenance visit, in which case such panels, bays or engine or avionic components as are open or removed from such Aircraft on such date may be inspected; and

(ii)    any such inspection or examination shall not unreasonably delay or interrupt or cause any obstruction in the Lessee's maintenance and operation of such Aircraft.

(l)    None of the Lessor, the Security Trustee, the Agent, the Lenders or the Insurer Representative (i) shall have any duty to make any such inspection or (ii) shall incur any liability or obligation by reason of making or not making any such inspection, except as provided in this Clause 7.7. So long as no Termination Event or Event of Default has occurred and is continuing, the reasonable cost of one such inspection initiated by the Insurer Representative each calendar year shall be paid by the Lessee. The cost of any inspection initiated by the Agent shall, unless the Insurer Representative also participates in such inspection and agrees that such inspection constitutes its one annual inspection for that calendar year, be for the account of the Agent only. The Lessee shall pay the cost of all such inspections during the continuance of a Termination Event or an Event of Default. The cost of other inspections shall be paid by the party requesting such inspection, unless such inspection reveals a material breach of the obligations hereunder to maintain each Aircraft and the associated Manuals and Technical Records, in which case the cost of such inspection shall be borne by the Lessee. Upon the request of the Lessor, the Insurer Representative or the Agent, the Lessee shall promptly notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of the major phase checks ("C" check or higher and any structural inspection) then scheduled on any Aircraft for the six-month period following such request.

## 7.7    Information Concerning the Aircraft and Engines

The Lessee shall at its own cost and expense promptly provide the Lessor, the Agent, the Lenders, the Insurer Representative and the Security Trustee with such information (to the extent required by this Lease, any Operative Document or maintained by the Lessee in accordance with its standard fleet procedures) regarding the registration, location, operation, use, insurance, maintenance and condition of each Aircraft and its associated Engines, including all Parts to the extent practicable, as the Lessor, the Agent, the Lenders, the Insurer Representative or the Security Trustee may from time to time reasonably require.

## 7.8    Substitution of Engines

(a)    So long as no Termination Event or Event of Default shall have occurred and be continuing (unless such Termination Event or Event of Default relates to the Engine being substituted), the Lessee may (and may permit any Permitted Sub-Lessee to) at any time, with contemporaneous notice to the Lessor, the Agent, the Lenders, the Insurer Representative and the Security Trustee, duly convey or cause to be conveyed to the Lessor as a substitute for an Engine title to another engine of the same manufacturer and model, as such Engine which satisfies the conditions set forth in the definition of "Replacement Engine", provided that all engines installed on any Airframe shall be of compatible make and model, free and clear of all Liens other than Permitted Liens and shall have a value and remaining useful life and utility at least equal to, and being in as good operating condition and state of maintenance as, the Engine to be replaced thereby, assuming such Engine was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to such replacement. Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(i)      furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor, the Agent and the Security Trustee with respect to such Replacement Engine;

(ii)     cause a Lease Supplement, in form and substance reasonably satisfactory to the Lessor, the Insurer Representative, the Agent and the Security Trustee subjecting such Replacement Engine to this Lease to be duly executed by the Lessor and the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry;

(iii)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such replacement engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor may reasonably request;

(iv)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) reasonably satisfactory to the Lessor, the Security Trustee and the Insurer Representative certifying that such engine has value and remaining useful life at least equal to, and is in as good operating condition (as the Engine being substituted, assuming such Engine was in the condition and state of repair required by the terms hereof immediately prior to such substitution;

(v)     cause amendments to the relevant Aircraft Mortgage and any Security Document, in form and substance reasonably satisfactory to the Insurer Representative, the Agent and the Security Trustee subjecting such replacement engine to the relevant Aircraft Mortgage and the relevant Security Documents to be duly executed by the Lessor, Lessee or Permitted Sub-Lessee (as applicable) and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or the jurisdiction of incorporation or formation of the Lessor, Lessee or Permitted Sub-Lessee as applicable;

(vi)    cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to clause 6 of the Participation Agreement);

(vii)   furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative, the Agent and Security Trustee regarding the perfection of the Lien of any amended Security Document and relevant Aircraft Mortgage with respect to such Replacement Engine, in form and substance reasonably satisfactory to the Security Trustee, the Agent and the Insurer Representative (addressed to the Security Trustee, the Insurer Representative, the Lenders and the Agent); and

(viii)  affix a nameplate on such replacement engine in accordance with Clause 8.5.

(b)     Upon full compliance by the Lessee with the terms of this Clause 7.8, the Lessor will transfer or cause to be transferred, at the Lessee's sole cost and expense, to or upon the order of the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it) all of the Lessor's right, title and interest, if any, in and to each replaced Engine with respect to which such substitution occurred by an appropriate instrument, signed by the Security Trustee, releasing such Engine from any Lien

FILED DATE: 1/11/2023 2:57 PM   2023L000001

of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Engine" as defined herein and shall be deemed part of the same Aircraft as was the Engine replaced thereby.  No substitution with respect to an Engine under the circumstances contemplated by the terms of this Clause 7.8 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

**7.9     Annual Survey**

(a)     Upon written request, but no more frequently than once each calendar year for each Aircraft any one of the Security Trustee, the Agent, the Insurer Representative or their authorized representative (unless an Event of Default has occurred and is continuing in which case no such limitation shall apply), may request a technical report about the related Airframe, Engines and Manuals and Technical Records in connection with such Airframe and each such Engine, performed at an Approved Maintenance Facility in connection with the most recently completed (i) airworthiness inspection, or heavy maintenance check (in the case of an Airframe), (ii) heavy maintenance visit and any shop visit (in the case of each such Engine), and (iii) overhaul or reconditioning (in the case of any Part, appurtenance or system in respect of such Aircraft or each such Engine not covered by clauses (i) and (ii) preceding).

(b)     Such report shall be at the Lessee's expense and shall contain sufficient detail so as to enable the Security Trustee, the Agent and the Insurer Representative to determine the Lessee's compliance with the terms of this Lease and the general repair, condition, maintenance, overhaul and time-before-overhaul status of such Airframe and each such Engine or Part.  If any such report is prepared at the request of the Security Trustee, the Security Trustee shall promptly provide a copy to the Agent and the Insurer Representative.

**7.10     Engine power by the hour support arrangements**

If at any time the Lessee or a Permitted Sub-lessee enters into or receives the benefit of a power by the hour (or equivalent) support arrangement relating to the Engines with the Engine Manufacturer, the Lessee shall use all reasonable endeavours to procure that such benefit is promptly assigned to the Security Trustee (each such assignment, an **Engine PBH Security Assignment**).

**8.     REPLACEMENT;   TEMPORARY   INSTALLATION;   POOLING;   ALTERATIONS, MODIFICATIONS AND ADDITIONS; ETC**

**8.1     Replacement of Parts**

(a)     The Lessee, at its own expense, will promptly replace or cause to be replaced all Parts that may from time to time be incorporated or installed in or attached to any Airframe or any Engine and that may from time to time be defective and not economically repairable, become time-expired or due for replacement or worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever.

(b)     In addition, the Lessee (or any Permitted Sub-Lessee) may, at its own expense, remove in the ordinary course of maintenance, service, repair, overhaul or testing, any Part, whether or not time-expired, due for replacement, worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use, provided, however, that the Lessee will, at its own cost and expense, replace (or cause to be replaced) such Part as promptly as practicable.

(c)     Each replacement Part shall be free and clear of all Liens (except Permitted Liens) and except as permitted by Clause 8.3, shall be in at least as good operating condition as, and shall have value, modification status and performance characteristics at least equal to, or, if applicable, comparable to, the Part replaced assuming such replaced Part was in the condition and repair required to be maintained by the terms hereof.

(d)     Each Part at any time removed from any Airframe or each Part removed from any Engine shall remain the property of the Lessor, no matter where located, until such time as such Part shall be replaced by a Part that has been incorporated or installed in or attached to the Airframe from which such Part was removed or, as the case may be, an Engine and that meets the requirements for a replacement Part specified above and shall be subject to the Lien of the relevant Aircraft Mortgage.

(e)     Immediately upon any replacement Part becoming incorporated or installed in or attached to an Airframe or, as the case may be, an Engine as above provided and title thereto being vested in the Lessor free and clear of all Liens (except Permitted Liens), without further act:

(i)     title to the replaced Part shall thereupon vest in the Lessee or its Approved Nominee and shall no longer be deemed a Part hereunder; and

(ii)    such replacement Part shall become subject to this Lease and be deemed part of such Airframe or, as the case may be, such Engine for all purposes hereof to the same extent as the Part originally incorporated or installed in or attached to such Airframe or, as the case may be, such Engine.

## 8.2     Temporary Installation of Parts

The Lessee may install or permit the installation of any part on any Airframe or Engine by way of substitution, replacement, renewal or mandatory modification notwithstanding that such installation is not in accordance with Clause 8.1 in the case of a part if:

(a)     there shall not have been available to the Lessee at the time and in the place that such part was required to be installed on such Airframe or, as the case may be, such Engine a substitute or replacement Part complying with the requirements of Clause 8.1;

(b)     it would have resulted in a disruption of the operation of the relevant Aircraft and/or the business of the Lessee to have grounded such Aircraft and/or to have permitted the relevant Part to continue to be unserviceable or unrepaired until such time as an part complying with the requirements of Clause 8.1 became available for installation on such Airframe or such Engine; and

(c)     as soon as practicable, but in any event within one hundred and eighty (180) days, the Lessee shall cause any such part not complying with the requirements of Clause 8.1 to be removed and replaced or substituted by a part complying with the requirements of Clause 8.1.

## 8.3     Pooling of Parts

Any Part removed from any Airframe or any Engine may be subjected by the Lessee or permitted by the Lessee to be subjected to a normal pooling arrangement customary in the international airline industry entered into in the ordinary course of the Lessee's (or, while the relevant Aircraft is leased by the Lessee to the Initial Permitted Sub-Lessee pursuant to the Initial Permitted Sub-Lease, the Initial Permitted Sub-Lessee's) business, provided, that the part replacing such removed Part shall be incorporated or installed in or attached to such Airframe or such Engine in accordance with Clause 8.1 as promptly as possible after the removal of such removed Part.   In addition, any

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

replacement part when incorporated or installed in or attached to any Airframe or any Engine in accordance with Clause 8.1 may be owned by another air carrier subject to such a normal pooling arrangement, provided that the Lessee, at its own cost and expense, shall as soon as practicable, shall either (a) cause title to such replacement part to vest in the Lessor in accordance with Clause 8.1 by the Lessee acquiring title (or procuring acquisition of the title) thereto for the benefit of the Lessor free and clear of all Liens (other than Permitted Liens) and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement or (b) replace such replacement Part by incorporating or installing in or attaching to such Airframe or such Engine a further replacement Part owned by the Lessee (or such Permitted Sub-Lessee) free and clear of all Liens (other than Permitted Liens) and by causing title to such further replacement Part to vest in the Lessor in accordance with Clause 8.1 and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement.

**8.4     Alterations, Modifications and Additions**

(a)     The Lessee, at its own expense, will promptly make (or cause to be made) such alterations and modifications in and additions to any Airframe or any Engine as may be reasonably required from time to time to comply with any Airworthiness Directives, Service Bulletins, other directive or modifications published (and of a mandatory nature) by the Manufacturer, the Engine Manufacturer and/or the Civil Aviation Authority in accordance with the terms of this Lease, provided that the Lessee may in good faith diligently contest the validity or application of any such Airworthiness Directive, Service Bulletin, directive or modification in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of adversely affecting the value of any Aircraft, the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder.

(b)     In addition, the Lessee (or the Permitted Sub-Lessee), at its own expense, may from time to time make such alterations and modifications in and additions to any Airframe or any Engine as the Lessee (or Permitted Sub-Lessee) may deem desirable in the proper conduct of its business, including installation of additional buyer furnished equipment or removal of Parts that the Lessee (or Permitted Sub-Lessee) determines to be obsolete or no longer suitable or appropriate for use on such Airframe or such Engine, provided, however, that no such alteration, modification or addition shall materially diminish the value, utility, remaining useful life, performance or operational characteristics of such Airframe or such Engine, or impair the condition or airworthiness thereof, below the value, remaining useful life, performance or operational characteristics, condition or airworthiness thereof immediately prior to such alteration, modification or addition (assuming such Airframe or such Engine was then of the value, remaining useful life, performance or operational characteristics, condition or airworthiness required to be maintained by the terms of this Lease), provided, further, that the Lessee shall consult with the Manufacturer or the Engine Manufacturer, as applicable, the Insurer Representative and the Security Trustee prior to undertaking any material alteration or modification to any Aircraft. Without prejudice to the generality of the foregoing, the Lessor consents to the modification which includes installation of antennae, aerodynamic domes, wiring, structural attaching parts, mounts, receivers, wireless access points (WAP's), modems, controllers, switching equipment, display and sound reproduction equipment and all related hardware and software directly associated with the receipt and distribution of satellite or where applicable ground based internet signals and data into the Aircraft for passenger use, whether provided by ROW 44 or an alternative provider.  Title to all Parts incorporated or installed in or attached or added to any Aircraft as the result of such alteration, modification or addition, shall immediately vest in the Lessor free and clear of all Liens (except Permitted Liens) and become subject to this Lease, without the necessity for any further act of transfer, document or notice.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     Notwithstanding Clause 8.1 and the foregoing provisions of this Clause 8.4 and provided that no Termination Event or Event of Default shall have occurred and is continuing, the Lessor agrees that the Lessee or any Permitted Sub-Lessee may, at any time during the Term in respect of any Aircraft, remove or suffer to be removed any Part (including buyer furnished equipment) from such Aircraft that:

(i)     is in addition to, and not in replacement of or substitution for, any Part originally incorporated or installed in or attached to the related Airframe or Engine at the time of the Delivery of such Aircraft hereunder or any Part in replacement of or substitution for any such Part;

(ii)    is not required to be incorporated or installed in or attached or added to the related Airframe or Engine pursuant to the terms of Clause 7 or this Clause 8 or in order to maintain insurance required by Clause 10; or

(iii)   can be removed from the related Airframe or Engine without causing damage to such Airframe or such Engine or diminishing or impairing in any material respect the value, utility, remaining useful life, performance or operational characteristics, condition or airworthiness that such Airframe or such Engine would have had at such time had such removal not occurred.

(d)     Upon the removal by the Lessee (or any Permitted Sub-Lessee) of any Part as provided in and permitted by this Clause 8.4, title thereto shall, without further act, vest in the Lessee or the Lessee's Approved Nominee, and such Part shall no longer be deemed part of the Airframe or Engine from which it was removed.  Notwithstanding the foregoing, any Part not removed by the Lessee (or any Permitted Sub-Lessee) as above provided prior to the return of the relevant Airframe or Engine to the Lessor hereunder shall become the property of the Lessor at the time of such return and become subject to the relevant Aircraft Mortgage and the relevant Security Agreement.

**8.5     Nameplate and Other Markings**

The Lessee shall affix and keep a metal nameplate having dimensions of not less than five inches by four inches in the cockpit of each Airframe adjacent to the airworthiness certificate therein and on each of the Engines bearing the inscription "THIS [AIRFRAME/ENGINE] IS OWNED BY AAA MAX 4 LIMITED AND LEASED TO TROLLFJORDEN LIMITED, IS FURTHER SUB-LEASED TO [NORWEGIAN AIR NORWAY AS][NORWEGIAN AIR SWEDEN AB] AND SUBJECT TO A MORTGAGE IN FAVOUR OF BANK OF UTAH, AS SECURITY TRUSTEE", or such other inscription as the Security Trustee or the Insurer Representative from time to time may reasonably request (such nameplate to be affixed within ten (10) days after the Delivery Date for such Airframe and such Engines, and the Lessee shall thereupon so advise the Lessor).  Except as provided above, the Lessee shall not allow the name or other indication of any other Person to be placed on any Airframe or any Engine, if such name or other indication could be interpreted as a claim of ownership or other interest therein; provided, that each Airframe, Engine and Part may be marked with the customary name, colours or insignia of the Lessee or the Permitted Sub-Lessee and/or any manufacturer(s) of such Airframe, Engines and Parts.

**8.6     No Third Party Beneficiaries**

It is expressly agreed that the Lessee's obligations with respect to maintenance under Clauses 7 and 8 are solely for the benefit of the Lessor and the Secured Parties and that the Lessee shall have no liability to any other Person with respect thereto, and that except for the Lessee's indemnification obligations with respect thereto contained in the Participation Agreement and the Lessor Indemnity Agreement which shall survive the termination of such documents in accordance with their

FILED DATE: 1/11/2023 2:57 PM   2023L000001

respective terms, the Lessee's obligations under Clauses 7 and 8 in respect of an Aircraft shall terminate upon termination of the leasing of an Aircraft to the Lessee pursuant to this Lease and the relevant Lease Supplement in accordance with the terms hereof.

**8.7    No Authorization to Contract for the Lessor**

Nothing contained in this Lease shall constitute any consent or request by the Lessor or any Secured Party express or implied, for the performance of any works or services or the furnishing of any materials or other property in respect of any Aircraft, any Engine or any Part thereof, nor as giving the Lessee any right, power or authority to contract for or permit the performance of any works or services or the furnishing of any materials or other property, in such fashion as would permit the making of any claim against the Lessor or any Secured Party in respect thereof or any claim that any Lien (other than Permitted Liens) based on the performance of such works or services or the furnishing of any such materials or other property is prior to the interests of the Lessor or any other Person in such Aircraft, such Engine or such Part thereof.

**8.8    No Rights of Retention**

The Lessee hereby waives any and all rights of retention which it may have or which at any time hereafter may be conferred upon it, by virtue of law or otherwise, related to any replacement of Parts, alterations, modifications or additions that the Lessee may make to any Airframe or any Engine.  The Lessee hereby expressly releases the Lessor and the Secured Parties from any and all obligations, whether present or future, to indemnify or reimburse the Lessee for any of the aforementioned replacements, alterations, modifications, improvements or additions.

**9.    LOSS, DESTRUCTION, REQUISITION, ETC**

**9.1    Event of Loss with Respect to an Aircraft**

(a)    Upon the occurrence of an Event of Loss with respect to an Aircraft or an Airframe and any related Engines and/or engines then installed thereon, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), which notice shall specify the actions the Lessee is taking with respect to such Event of Loss.  So long as no Default, Termination Event or Event of Default shall have occurred and be continuing, the Lessee may within forty-five (45) days after such occurrence, request permission from the Lessor to replace such Aircraft (or such Airframe and Engine(s), as applicable), upon terms and conditions acceptable to the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee in their absolute discretion, including compliance with such terms and requirements that would make such replacement aircraft (or such replacement airframe and engine(s), as applicable) (a **Replacement Aircraft**) eligible for financing supported by the Insurance Policy in the same amount as such replaced Aircraft (or such replaced Airframe and Engine(s), as applicable), it being agreed that if the Lessee does not request such permission within the relevant time period (or does not receive such permission within ten (10) days after such request), the Lessee will not be entitled to substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable).

(b)    Any such replacement airframe and/or replacement engines shall satisfy the conditions set forth in the definitions thereof and shall be free and clear of all Liens (other than Permitted Liens) and shall have a value, utility and remaining useful life at least equal to, and be in as good operating condition and state of maintenance as, the relevant Airframe and/or Engines being replaced (assuming such Airframe and/or Engines were of the value, utility and remaining useful life and in the condition and repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)    The Lessee will not substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) hereunder unless such Replacement Aircraft (or replacement airframe and engine(s), as applicable) would be eligible for financing supported by the Insurance Policy, as determined by the Insurer Representative in its sole discretion.

(d)    It is expressly agreed that if any Basic Rent Payment Date for the affected Aircraft occurs at or after the date of such Event of Loss and prior to the payment of the Termination Value and any other Rent due in relation to such Aircraft, the Lessee shall pay to the Lessor on such Basic Rent Payment Date the amount equal to the Basic Rent which would have become due and payable in respect of such Aircraft on such Basic Rent Payment Date in accordance with the terms hereof had no Event of Loss so occurred.

(e)    Unless a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) are being substituted in the circumstances contemplated in the preceding clauses, the Term for the affected Aircraft shall end on a date no later than the earliest of (i) the date falling ninety (90) days after the occurrence of such Event of Loss and (ii) the Lessor or the Security Trustee receives insurance or requisition proceeds in respect thereof (the **Settlement Date**), and on such Settlement Date the Lessee shall pay to the Lessor an amount equal to the then applicable Termination Value for the affected Aircraft on such Settlement Date together with all accrued but unpaid Rent for the affected Aircraft to such Settlement Date and, without duplication, all other amounts then owing by the Lessee under the Operative Documents.

(f)    Upon full compliance by the Lessee with the terms of this Clause 9.1 the Lessor will (so long as no Event of Default shall have occurred and be continuing and subject to insurer's salvage rights, if any) transfer to, or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty, all of the Lessor's right, title and interest, if any, in and to the Aircraft with respect to which such Event of Loss occurred by an appropriate instrument, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.   For all purposes hereof, each such Replacement Aircraft shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Aircraft" as defined herein.

## 9.2    Event of Loss with Respect to an Engine

(a)    Upon the occurrence of an Event of Loss with respect to an Engine under circumstances in which there has not occurred an Event of Loss with respect to the associated Airframe, the Lessee shall promptly and in any case within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), then within one hundred and twenty (120) days after the occurrence of such Event of Loss, the Lessee shall duly convey or cause to be conveyed to the Lessor and duly subject to the relevant Aircraft Mortgage and other relevant Security Documents, as replacement for such Engine with respect to which such Event of Loss occurred, title to a Replacement Engine (provided that all engines installed on such Airframe shall be of compatible make and model).

(b)    Such Replacement Engine shall be free and clear of all Liens (other than Permitted Liens) and having a value and remaining useful life at least equal to, and being in as good operating condition and state of maintenance as, the Engine with respect to which such Event of Loss occurred, assuming such Engine was of the value and remaining useful life and in the condition and state of repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss, but without regard to its point in the maintenance cycle.

(c)    Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(i)     furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor, the Agent and the Security Trustee with respect to such Replacement Engine;

(ii)    cause an amendment to the related Lease Supplement, in form and substance reasonably satisfactory to the Lessor, the Agent and the Security Trustee, subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or any other Relevant Jurisdiction;

(iii)   furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such Replacement Engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor and the Security Trustee may reasonably request;

(iv)    furnish the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) satisfactory to the Insurer Representative and the Security Trustee certifying that such engine has value and remaining useful life and it is in as good an operating condition as the Engine being substituted, assuming such Engine was in the condition and state of repair as required by the terms hereof immediately prior to such substitution, but without regard to its point in the maintenance cycle;

(v)     cause amendments to the relevant Aircraft Mortgage and other Security Documents, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such Replacement Engine to the relevant Aircraft Mortgage and Security Documents  to be duly executed by the Lessor and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry, the jurisdiction of incorporation or formation of the Lessor and the United States of America;

(vi)    cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessee, the Security Trustee and the Insurer Representative under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)   furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative, the Agent and the Security Trustee regarding the perfection of the Lien of the relevant Aircraft Mortgage and Security Documents with respect to such Replacement Engine addressed to the Security Trustee, the Insurer Representative and the Agent and in form and substance reasonably acceptable to the Security Trustee, the Agent and the Insurer Representative;

(viii)  affix a nameplate on such replacement engine in accordance with Clause 8.5;

(ix)    assign to the Lessor (for further assignment to the Security Trustee) all assignable and remaining engine warranties applicable to such Replacement Engine in a manner consistent with the relevant Engine Warranties Agreement.

(d)     Upon full compliance by the Lessee with the terms of this Clause 9.2 the Lessor will (so long as no Event of Default shall have occurred and be continuing and subject to insurer's salvage rights, if any) transfer to or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was

FILED DATE: 1/11/2023 2:57 PM   2023L000001

transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it), all of the Lessor's right, title and interest, if any, in and to the replaced Engine by an appropriate instrument, signed by the Security Trustee, releasing the replaced Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an **Engine** as defined herein.  No Event of Loss with respect to an Engine under the circumstances contemplated by the terms of this Clause 9.2 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

**9.3      Application of Payments from Governmental Authorities or Others**

Any payments (other than insurance proceeds from policies carried (or caused to be carried) by the Lessee the application of which is provided for in Clause 10 and other than proceeds of insurance policies carried by the Lessor or any Secured Party) received at any time by the Lessor or the Lessee from any Government Body or other Person with respect to an Event of Loss of any Aircraft or any Engine shall be paid over to the Security Trustee and applied, subject to Clause 9.6, in accordance with the terms of the Intercreditor Deed.

**9.4      Requisition for Use of any Airframe and the Engines Installed Thereon**

In the event of the requisition for use by any Government Body not constituting an Event of Loss of an Airframe and the Engines installed thereon during the relevant Term, the Lessee shall promptly notify the Lessor, the Security Trustee, the Insurer Representative and the Agent of such requisition, and all of the Lessee's obligations under this Lease shall continue to the extent such obligations are not restricted or curtailed by such requisition and to the same extent as if such requisition had not occurred (but the Lessee's obligations to pay Rent for the relevant Aircraft pursuant to Clause 3 and its obligations under Clause 10 shall not be reduced or excused by such requisition).  All payments (and any interest thereon) received by the Lessor or the Lessee for the use of such Airframe and Engines at any time shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied in accordance with the Intercreditor Deed.

**9.5      Requisition for Use of an Engine Not Installed on an Airframe**

If an Engine not then installed on an Airframe is requisitioned for use by any Government Body, the Lessee shall replace such Engine or cause it to be replaced by complying with the terms of Clause 9.2 hereof as if an Event of Loss had occurred with respect to such Engine, and (upon compliance by the Lessee as aforesaid) any payments received by the Lessor or the Lessee from with respect to such requisition shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, that if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied to the obligations of the Lessee hereunder as the Lessor shall direct and any excess, shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee.

**9.6      Payments to the Lessee**

Any amount referred to in this Clause 9 which is payable or creditable to the Lessee or any Permitted Sub-Lessee shall not be paid or credited to the Lessee or such Permitted Sub-Lessee or, if it has been previously paid to the Lessee or such Permitted Sub-Lessee, shall not be retained by the Lessee or such Permitted Sub-Lessee, if at the time of such payment or credit a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to, applied in

FILED DATE: 1/11/2023 2:57 PM   2023L000001

accordance with the terms of the Operative Documents and/or held by the Security Trustee as security for the obligations of the Lessee under this Lease and the Operative Documents and at such time as there shall not be continuing any Material Default, Termination Event or Event of Default such amount (together with interest thereon, if any), if then remaining, shall be paid or credited to the Lessee or the Permitted Sub-Lessee (as the case may be).

## 10.    INSURANCE

### 10.1    Aviation Third Party Legal Liability Insurance

Except to the extent provided in Clauses 10.3 and 10.5, on or before the Delivery Date for an Aircraft, and throughout the Term therefor and for a period extending to two years following the later of (a) the final Basic Rent Payment Date for such Aircraft and (b) the date such Aircraft is returned to the Lessor, the Lessee will carry or cause to be carried at its own expense with insurers of recognized standing in the international aviation industry which insurers shall be reasonably acceptable to the Lessor, the Security Trustee, the Agent and the Insurer Representative, airline liability insurance in respect of such Aircraft including war and allied perils, hi-jacking and other similar risks that are excluded from standard liability coverage to the extent that such insurance is (a) maintained by the Lessee or the Permitted Sub-Lessee with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (b) customarily obtained by carriers with comparable route structures flying similar aircraft or (c) generally required by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures in amounts customary for similar aircraft in the Lessee's fleet (but not less than seven hundred and fifty million Dollars (US$750,000,000)) any one occurrence per each aircraft and subject to customary sub-limits for non-aviation coverage and aggregate limits for products liability and war risks coverages) and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet and of the type usually carried by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning and operating similar aircraft and engines, and which covers risks of a kind customarily insured against by such corporations which shall include general third party legal liability (including war and allied perils to the fullest extent available under good commercial practice), passenger liability, and property damage liability (including cargo, baggage and mail liability).  Any liability insurance carried in accordance with this Clause 10.1 and any policies taken out in substitution or replacement for any of such policies:

(a)      shall be amended to name the Security Trustee and each of the Lessor, the Lessor Parent, the Agent, the Security Trustee, the Lenders and the Insurer Representative as contract parties (collectively, the **Contract Parties**) and  each of the foregoing, the Lessee, each Participant and each of the Insurer Group and their respective successors, members, assigns, transferees, officers, directors, shareholders, agents, employees, servants, Affiliates and sub-contracts as additional insured (the **Additional Insureds**);

(b)      shall provide that in respect of the interests of the Lessor or any other Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that the Additional Insured so protected has not caused, contributed to or knowingly condoned the said act or omission);

(c)      shall provide that there shall be no recourse against the Lessor or any other Additional Insured for the payment of premiums under such policies and that the Aircraft Insurers shall waive any right of subrogation against the Additional Insureds; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(d)      shall provide that, if such insurance is cancelled for any reason whatsoever, or if any material change is made in such insurance that adversely affects the interest of the Lessor or any other Additional Insured, such cancellation or change shall not be effective as to the Lessor or any other Additional Insured for thirty (30) days (seven (7) days, or such other period as is then customarily obtainable in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers (if different from the Lessee's insurance broker) to the Lessee's appointed insurance broker.  The Lessee hereby covenants to cause the Lessee's or the Permitted Sub-Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

Each liability policy (a) shall be primary without right of contribution from any other insurance or reinsurance that is carried by any other Person to the extent that such other insurance or reinsurance provides it with contingent or excess liability insurance with respect to its interest as such in any Aircraft, (b) shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured, (c) shall waive any right of the Aircraft Insurer to any setoff, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Lessee, the Permitted Sub-Lessee, the Lessor or any other Additional Insured to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft) and (d) shall provide for worldwide coverage (except in relation to Excluded Countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk and related perils policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit.

## 10.2    Aircraft Hull Insurance

(a)      Except to the extent provided in Clauses 10.3 and 10.5, on or prior to the Delivery Date for each Aircraft and throughout the Term for each Aircraft (and, in the case of the termination of this Lease with respect to an Aircraft pursuant to Clause 14 hereof, at all times following such termination until the sale or other disposition of such Aircraft pursuant hereto) the Lessee shall maintain or cause to be maintained in full force and effect, at its own expense and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet, all-risk aircraft hull insurance covering such Aircraft, while flying and on the ground, including coverage of the Engines and Parts while temporarily removed from or not installed on such Aircraft and not replaced with similar components (with flight taxing and ingestion coverage), against loss or damage, of the type (but not necessarily the amount) usually insured against by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning or operating similar aircraft and engines on an agreed-value basis in a dollar amount not less than 120% of the aggregate of (i) all outstanding principal in respect of the relevant Loan in relation to such Aircraft and (ii) the maximum amount of interest payable during the applicable Interest Period (the **Threshold Value**), and all-risk insurance with respect to each Engine and Part while removed from an Aircraft, and, as to each Engine or Part not installed on an Airframe, not less than the fair market value of such Engine or Part.

(b)      The Lessee shall maintain or cause to be maintained in full force and effect war-risk and related perils insurance and hi-jacking and government confiscation insurance (on the basis LSW555D or the highest equivalent level of coverage available (including for confiscation by the Government of Registry)) in respect of each Aircraft on an agreed value basis for such Aircraft throughout each policy year, for not less than the amounts set forth in the preceding paragraph in respect of such Aircraft covering each of the following perils (i) insured by the Lessee or the Permitted Sub-Lessee, with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (ii) customarily insured by

air carriers with comparable route structures flying similar aircraft, and (iii) generally required to be insured by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures.

(c)    All policies and subsequent policies taken out in accordance with this Clause 10.2 will be issued by insurance companies or underwriters of recognized standing in the international aviation industry or re-insurance companies or underwriters of such standing and through internationally recognized aviation insurance brokers, all of which insurance companies, underwriters and insurance brokers shall be reasonably acceptable to the Lessor, the Security Trustee, the Agent and the Insurer Representative. In addition, all such policies and subsequent policies:

(i)    shall be denominated and payable in Dollars and shall be on an agreed value basis without the insurer's right to replace;

(ii)    shall name the Additional Insureds as additional insureds in respect of the legal liability insurances and the Security Trustee as the sole contract party and as loss payee in respect of hull claims that become payable on the basis of a total loss and provide that payment in respect of such claims shall be made to or to the order of the contract parties for application in accordance with the Operative Documents and in respect of all other hull claims the loss will be settled with such Persons as may be necessary to repair the relevant Airframe or Engine;

(iii)    shall provide that in respect of the interests of each Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that such Additional Insured has not caused, contributed to or knowingly condoned the said act or omission);

(iv)    shall provide that there shall be no recourse against the Lessor or any Additional Insured for the payment of premiums under such policies; and

(v)    shall provide that, if such insurance is cancelled for any reason whatsoever, or if any material change is made in such insurance which adversely affects the interests of any Additional Insured, such cancellation or change shall not be effective as to Additional Insureds for thirty (30) days (seven (7) days, or such other period as is then customarily imposed by in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers to the Lessee's appointed insurance broker. The Lessee hereby covenants to cause the Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Parties on behalf of all Additional Insureds.

(d)    The hull policy for each Aircraft:

(i)    shall waive any right of the Aircraft Insurer or any reinsurers to any set-off, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Additional Insureds or any other Person to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft);

(ii)    if separate hull all risks and war risks policies are arranged, shall contain a 50/50 claims funding clause acceptable to the Security Trustee, the Agent and the Insurer representative (which shall be AVS 103 or similar) in the event of a dispute as to which policy in respect of the hull insurances set forth in this Clause 10.2 shall pay in the event of a loss;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(iii)   shall provide for worldwide coverage (except for excluded countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit;

(iv)   shall have deductibles (not applicable in the case of an Event of Loss or war and allied perils insurance) standard in the  industry in respect of the same model aircraft, which are reasonably acceptable to the Insurer Representative, the Agent and the Security Trustee and in amounts which are no greater than seven hundred and fifty thousand dollars (US$750,000) and in any event such deductible shall not be greater than those which other international airlines of comparable standing (in the judgement of the Secured Parties' independent insurance advisor after consultation with the Lessee's broker of record) to the Lessee operating comparable aircraft are able to obtain in such market; and

(v)   shall provide in the event that an Aircraft is fitted with a leased engine, the agreed value of such Aircraft for the purposes of the insurances is automatically increased by the value of the leased engine.

(e)   The Lessee may procure endorsements to the relevant insurance policies required to be maintained pursuant to Clause 10 so as to incorporate the terms of AVN 67B (or any successor provision) unto such policies, in which event, to the extent that any provision of any such AVN 67B (or any successor provision) endorsement conflicts or is otherwise inconsistent with the requirements of this Clause 10, then (so long as it shall remain general industry practice to insure aircraft financed by financial institutions on the basis of such endorsement) such endorsement shall be deemed to satisfy the requirements of this Clause 10 to the extent covered by such endorsement.

(f)   As between the Lessor and the Lessee it is agreed that all insurance payments received under policies that the Lessee is required to maintain pursuant to this Clause 10.2, exclusive of any payments received in excess of the then applicable Threshold Value for an Aircraft, as the result of the occurrence of an Event of Loss with respect to an Airframe or an Engine related thereto will be applied, unless a replacement is effected in accordance with Clause 9.1 or 9.2 hereof, pursuant to the Intercreditor Deed.

(g)   As between the Lessor and the Lessee the insurance payment of any property damage or loss with respect to an Aircraft (i) that constitutes an Event of Loss, in excess of the then applicable Threshold Value for such Aircraft, shall be paid to the Lessee, and (ii) that does not constitute an Event of Loss with respect to the related Airframe or a related Engine, will be applied in payment (or to reimburse the Lessee), for repairs or for replacement property in accordance with the terms of Clauses 7 and 8, if not already paid for by the Lessee and any balance remaining after compliance with such Clauses with respect to such loss shall, subject as provided below, be paid to and retained by the Lessee or in accordance with clause 9.3(b) of the Intercreditor Deed.

(h)   Notwithstanding any provision in this Clause 10.2, any amount referred to in this Clause 10.2 which is payable to the Lessee, shall not be paid to the Lessee or, if it has been previously paid directly to the Lessee, shall not be retained by the Lessee, if at the time of such payment a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to and held by the Security Trustee as security for the obligations of the Lessee under this Lease and, during the continuance of such Material Default, Termination Event or Event of Default, shall be applied to the satisfaction of the then due and payable obligations of the Lessee under this Lease, and, at such time as there

FILED DATE: 1/11/2023 2:57 PM   2023L000001

shall not be continuing any such Material Default, Termination Event or Event of Default, the remainder of such amount shall be paid to the Lessee.

**10.3    Default**

If the Lessee shall default in effecting or maintaining any insurance or if any insurance shall, for any cause become void, the Lessor, the Security Trustee or any other Additional Insured may (but without any obligation to do so and without prejudice to the Lessor's other rights and remedies hereunder) effect and keep up such insurance at the cost of the Lessee and the Lessee will forthwith upon demand repay to the Lessor, the Security Trustee or any other Additional Insured all premiums and other moneys from time to time paid by the Lessor, the Security Trustee or any other Additional Insured in respect of such insurance (which amount shall be certified by the Lessor, the Security Trustee or such other Additional Insured).

**10.4    Certificates**

On or before the Delivery Date for each Aircraft and promptly after the issuance or modification or renewal thereof (but in any event prior to the expiration of any insurance or reinsurance then to be renewed) in form substantially similar to those given prior to or on such Delivery Date, the Lessee will furnish to the Lessor, the Insurer Representative, the Agent and Security Trustee (with sufficient copies for all Lenders):

(a)    a certificate of the Lessee's insurance broker or an authorized representative of the Aircraft Insurer (and, if applicable, Aircraft Reinsurer and any relevant insurance and/or reinsurance broker) describing in reasonable detail the Aircraft Insurances and Aircraft Reinsurances then carried and maintained on such Aircraft, containing an endorsement reflecting the Aircraft Insurances and Aircraft Reinsurances for such Aircraft required hereunder and:

   (i)    certifying the date and time of commencement and expiry of each insurance or reinsurance policy;

   (ii)    specifying the deductible amounts and levels of co-insurance, if any, for each type of loss; and

(b)    a letter of undertaking from the Lessee's appointed insurance broker with regard to the Aircraft Insurances and Aircraft Reinsurances for such Aircraft respectively required hereunder in respect of such Aircraft (in the case of each renewal, in substantially the same form as delivered on the relevant Delivery Date).

**10.5    Notice of Variations**

If any material variation is made to the terms of any of the Aircraft Insurances or Aircraft Reinsurances the Lessee shall immediately give notice to the Lessor, the Insurer Representative, the Security Trustee, the Agent and the Lenders of such variation and shall provide such further details in relation thereto as the Lessor, the Insurer Representative, the Security Trustee, the Agent or any Lender may reasonably require.

**10.6    Premiums**

The Lessee shall pay or cause to be paid the premiums (or installments thereof) as required by the terms of such policies and produce to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request receipts in respect of payment of such premiums (or installments thereof) or other evidence of such payments as the Lessor, the Insurer Representative, the Security Trustee or the Agent may reasonably request.  In the case of renewals of such policies, the Lessee

FILED DATE: 1/11/2023 2:57 PM 2023L000001

shall cause to be provided to the Lessor, the Insurer Representative, the Security Trustee and the Agent evidence of such renewal as soon as practicable and in any event within seven (7) days after the date of renewal and shall give the Lessor, the Insurer Representative, the Security Trustee and the Agent notice of such intended renewal no later than the day before such date and the Lessee shall pay the renewal and other premiums (and installments thereof) as required by the terms of such policies.

**10.7 Insurance Policies**

In the absence of an unqualified opinion or certificate addressed to the Lessor, the Insurer Representative, the Security Trustee and the Agent from the Lessee's or the Permitted Sub-Lessee's insurance brokers (and, if applicable, reinsurance brokers), the Lessor and each Secured Party shall be entitled to full reliance, without exception, that the certificates of insurance (and, if applicable, certificates of reinsurance) delivered pursuant to this Clause 10 do not conflict with the terms and conditions of the underlying insurance (and, if applicable, reinsurance) policies. Copies of the policies and endorsements and riders amendatory thereof (excluding premium information) with respect to the Aircraft Insurances and any Aircraft Reinsurances, required under this Clause 10 shall be made available to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request for inspection by their respective representatives at the offices of the Lessee or the Permitted Sub-Lessee or the Lessee's or the Permitted Sub-Lessee's insurance brokers during normal business hours.

**10.8 Reinsurance**

Unless the Aircraft Insurances maintained by the Lessee in accordance with the provisions in this Clause 10 are maintained with Lloyd's of London or in other internationally recognized aviation insurance markets with insurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee and the Insurer Representative, then the Lessee shall procure that the insurers shall maintain reinsurance in all respects satisfactory to the Security Trustee and the Insurer Representative covering identical subject matter and risk for an amount (which shall not be less than ninety five percent (95%) of the relevant coverage amount) with Lloyd's of London or in other internationally recognized aviation insurance markets with reinsurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee, the Agent and the Insurer Representative. Any reinsurance shall:

(a) be on the same terms as the original insurances;

(b) contain a "cut-through" clause satisfactory to the Security Trustee, the Agent and the Insurer Representative providing that, in the event of any claim arising under the reinsurance, the reinsurers thereunder shall, in lieu of payment to the original insurer or its successors in interest and assigns, pay to or to the order of the Security Trustee as loss payee that portion of any loss due for which the reinsurers thereunder would but for this cut-through clause be liable to pay the original insurer or its successors in interest and assigns, it being understood and agreed (and the Lessee agreeing to obtain the agreement of its original insurers for the benefit of the Lessor, the Agent, the Security Trustee, the Insurer Representative, the other Secured Parties and the reinsurers) that any such payment by the reinsurers thereunder shall fully discharge and release the original insurers from any and all further liability in connection therewith; and

(c) provide for payment to be made directly to or to the order of the Security Trustee as loss payee as provided herein notwithstanding (x) any bankruptcy, insolvency, liquidation or dissolution of the original insurer(s), and/or (y) that the original insurer(s) have made no payment under the primary insurance policies.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**10.9    Location**

Except as otherwise expressly permitted herein, the Lessee shall not at any time do or suffer to be done to any Aircraft, any Engine or any Part thereof or the premises on which the same may be located, or bring or keep, or permit to be brought or kept, anything therein or thereon or operate any Aircraft, any Engine or any Part thereof or take the same to or keep the same in, or permit the same to be taken to or kept in, a place where or whereby any insurance required hereunder may be rendered void or voidable or no longer in force or coverage thereunder shall be limited, without first arranging at its own expense such additional Aircraft Insurance and/or Aircraft Reinsurance coverage as shall be necessary to avoid such result, such additional insurance to be in form and substance satisfactory to the Lessor, the Security Trustee, the Agent and the Insurer Representative. The Lessee will pay or cause to be paid all additional insurance premiums required on account of the additional risk caused by the use to which any Aircraft is put as aforesaid.

**10.10    Notice from the Lessee**

The Lessee will forthwith notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of any event (including but not limited to an occurrence) which will or may give rise to a claim under the Aircraft Insurances required in Clause 10.2, in excess of an amount in any currency equal to three million Dollars (US$3,000,000) (or its equivalent in any other currency) in respect of an Airframe and one million Dollars (US$1,000,000) (or its equivalent in any other currency) in respect of an Engine, but nothing in this Clause 10.10 shall prejudice the payment provisions of Clause 10.2.  Upon completion of the repairs in respect of a loss in which insurers have paid proceeds towards such repair, the Lessee shall deliver to the Lessor, the Insurer Representative, the Security Trustee and the Agent an engineer's certificate certifying that such repairs have been completed in accordance with the manufacturer's recommended procedures.

**10.11    Certain Undertakings in Respect of the Aircraft Insurances**

(a)    The Lessee shall not and shall procure that no Permitted Sub-Lessee shall:

(i)    make any modification to the Aircraft Insurances or any Aircraft Reinsurances required hereunder which is materially adverse to the interest of the Lessor, the Insurer Representative, the Security Trustee, any Secured Party or any other Additional Insured;

(ii)    do, or omit to do, or permit to be done, or left undone anything whereby any required Aircraft Insurance or any Aircraft Reinsurance would or might reasonably be expected to be rendered, in whole or in part, invalid or unenforceable and, without prejudice to the foregoing, not use or keep or permit any Aircraft or any Engine or any Part thereof, to be used or kept for any purpose, in any manner or in any place not covered by required Aircraft Insurances or any Aircraft Reinsurances (except as otherwise expressly permitted herein); and

(iii)    discriminate against any Aircraft relative to other aircraft of the same or comparable model within the Lessee's or the Permitted Sub-Lessee's fleet as to the coverage of the Aircraft Insurances and Aircraft Reinsurances required under this Clause 10.

(b)    The Lessee shall as soon as practicable, but in no event later than 48 hours, upon receipt of notice of cancellation of the war risks and related perils insurance due to armed hostilities in the area where any Aircraft may then be located or scheduled to operate, remove any Aircraft or cause any Aircraft to be removed to the United Kingdom  (or such other location at which such Aircraft shall remain covered by war risks and related perils insurance) and shall cause such Aircraft to remain in such location until such war risks and related perils insurance is reinstated and compliance herewith shall cure any related Termination Event or

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Event of Default under Clause 13(c), provided, however, that the Lessee need not comply with the provisions of this paragraph (b) if to do so would cause the Lessee to breach any other obligation contained herein.

(c)    The Lessee shall be responsible for the payment of any applicable deductibles or costs of any Aircraft Insurances and any Aircraft Reinsurances.

**10.12   Reimbursement**

The Lessee shall reimburse the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative, as the case may be, on demand for the amount of any premiums or premium installments which such party may pay pursuant to this Clause 10 together with interest thereon, for the period from and including the date of such payment by such party to but excluding the date on which the same is paid in full by the Lessee at the applicable Post-Default Rate.

**10.13   Change in Industry Practice; Additional Requirements**

In the event that there is a material change in the generally accepted industry-wide practice with regard to the insurance of aircraft (whether relating to all or any of the types of insurances required to be effected under the foregoing provisions of this Clause 10) such that the insurances required pursuant to the provisions of this Clause 10 are insufficient to protect the interests of the Lessor, the Insurer Representative, the Agent the Security Trustee or any of the other Additional Insureds hereunder, the Insurer Representative, the Agent and the Security Trustee shall, to the extent reasonably practicable, consult with the Lessee, and the insurance requirements set forth in this Clause 10 shall be varied at the request of the Insurer Representative or the Security Trustee so as to include such additional or varied requirements as may be reasonably necessary to ensure that the insurances and reinsurances as so varied shall provide comparable protection to that which it would have provided if such change in the generally accepted industry-wide practice had not occurred.

**10.14   Compliance with Legal Requirements**

In addition to the foregoing provisions of this Clause 10 the Lessee shall and shall procure that any Permitted Sub-Lessee shall comply with all legal requirements as to the insurance of any Aircraft or any Engine which may from time to time be imposed by the Applicable Laws of any Aircraft's registration or of any jurisdiction to or from or over which any Aircraft or any Engine shall be flown or in which the same shall be located.

**10.15   Additional Insurance**

The Lessee shall have the right to carry insurance in excess of the amounts required hereunder and additional and separate insurance for its own benefit at its own expense; provided that, no such insurance shall result in a duplicate payment on a loss, or shall impair in any way (whether or not material) the rights of the Lessor, the Insurer Representative, the Security Trustee, and other Secured Party or any other Additional Insured under this Lease and the Operative Documents.  Proceeds of such insurance shall be payable directly to the Lessee.

**10.16   Additional Terms of Insurance**

The Lessee agrees to ensure that the insurance and reinsurance policies in respect of all Aircraft Insurances and Aircraft Reinsurances referred to in Clauses 10.1 and 10.2 above shall at all times be underwritten in full.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**10.17    Self Insurance**

Except for the deductibles permitted by Clause 10.2 hereof or otherwise permitted by the Lessor, the Security Trustee and the Insurer Representative, the Lessee shall not be permitted (and shall not permit any Permitted Sub-Lessee) to self-insure against any of the risks required to be covered by the insurance described in this Clause 10.

**10.18    Date Recognition Exclusion**

If the Aircraft Insurances and/or Aircraft Reinsurances are subject to any exclusion relating to date recognition, the Lessee shall obtain write-backs covering such exclusions to the fullest extent available in the international aviation insurance markets and in accordance with good and prudent international aviation insurance practice.

**10.19    Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance and/or War Risk Reinsurances required to be maintained under this Clause 10 and shall take immediate action to restore any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty.

**11.    ABSOLUTE OBLIGATIONS**

(a)    This Lease is a net lease, and it is intended that the Lessee shall pay or cause to be paid all costs, charges, fees (including Eurocontrol fees), assessments, expenses, withholdings and Taxes of every character whether foreseen or unforeseen, ordinary or extraordinary, incurred in connection with or arising out of the use, operation, maintenance, repair, modification, alteration, replacement and leasing of any Aircraft, including the costs, expenses and Taxes and similar levies set forth in the Participation Agreement.  The Lessee's obligation to pay all Rent and to perform all other obligations hereunder is absolute and unconditional and shall not be affected or reduced by any circumstances or for any reason, including:

(i)    any setoff, counterclaim, recoupment, defense or other right which the Lessee may have against the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party, the Manufacturer, the Engine Manufacturer or any Person providing services with respect to any Aircraft, or any other Person, for any reason whatsoever (whether in connection with the transactions contemplated hereby or otherwise), including any breach by the Lessor of its warranties contained herein or in the other Operative Documents;

(ii)    any defect in the title, airworthiness, eligibility of registration under any Applicable Law, condition, design, operation, or fitness for use of, or any damage to or loss or destruction of, any Aircraft or any portion thereof (subject to the provisions of Clause 9 hereof), any interruption or cessation in the use of or possession thereof by or availability to the Lessee for any reason whatsoever, whether arising out of or related to an act or omission of the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, Manufacturer, Engine Manufacturer or any other Person;

(iii)    any Lien with respect to any Aircraft or any portion thereof;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(iv)    the invalidity or unenforceability or lack of due authorization or other infirmity of this Lease or any absence of right, power or authority of any Person to enter into any Operative Document;

(v)     any Taxes;

(vi)    any change, waiver, extension, indulgence or liability or other act or omission in respect of any liability or obligation of the Lessor, the Security Trustee, the Lenders, the Agent or the Insurer Representative or any other Secured Party;

(vii)   any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation, receivership or other like proceeding relating to the Lessee, the Lessor, the Lessor Parent, the Trustee or the Security Trustee or any disaffirmance, rejection or other action taken with respect to this Lease or any other Operative Document by the Lessor, the Lenders, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party or any other Person, or by any court, in any such proceeding;

(viii)  the Lessee at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of sovereignty or otherwise, which immunity, if any, the Lessee hereby expressly waives;

(ix)    any restrictions applicable to the Lessee on the transfer or conversion of currency; or

(x)     any other circumstances or happening of any nature whatsoever, whether or not similar to any of the foregoing; it being the express intention of the Lessor and the Lessee that all Rent payable hereunder shall be payable in all events, unless the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease or the other Operative Documents.

(b)     This Lease shall not, except as expressly set forth herein, be cancellable by the Lessee and, except as expressly set forth elsewhere in this Lease, the Lessee hereby waives any and all rights which it may now have or which at any time hereafter may be conferred upon it, by statute or otherwise, to terminate, abate, cancel, quit, reduce, defer, suspend or surrender this Lease or any Aircraft or any obligation imposed upon the Lessee hereunder or under the other Operative Documents (including payment of Rent), except in accordance with the terms hereof and thereof.

(c)     If for any reason whatsoever this Lease shall be terminated in whole or in part by operation of Applicable Law, except as specifically provided herein, the Lessee, if and to the extent that the Lessee retains the use and possession of any Aircraft, nonetheless agrees to pay to the Lessor an amount equal to each Basic Rent payment and any Supplemental Rent payment in respect of such Aircraft at the time such payments would have become due and payable in accordance with the terms hereof and the other Operative Documents had this Lease not been terminated in whole or in part and so long as such payments are made and all other terms and conditions hereof are complied with by the Lessee, the Lessor and the Lessee will deem this Lease to remain in full force and effect.

(d)     Nothing contained in this Lease shall be construed as a waiver of the Lessee's right to seek any claim against the Lessor, the Security Trustee, any Secured Party or any other Person arising out of the transactions contemplated by the Operative Documents in a separate proceeding or by compulsory counterclaim.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

12.     **ASSIGNMENT**

The terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Except as otherwise provided in Clause 7.4, neither party hereto shall, without the prior written consent of the other and except as expressly permitted by the Operative Documents, assign any of its rights or obligations hereunder.

13.     **LEASE EVENTS OF DEFAULT AND TERMINATION EVENTS**

Other than the events referred to in paragraphs (f), (p), (t) or (u) which, if they do not arise as a result of any act or omission of any Lessee Group Member, shall constitute "Termination Events" (but, for the avoidance of doubt,  in all other circumstances shall constitute "Lease Events of Default"), the following events shall constitute "Lease Events of Default" hereunder, (whether any such event shall be voluntary or involuntary or come about or be effective by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, the United States or any other jurisdiction, or the administration or interpretation thereof) and each such Lease Event of Default or Termination Event shall be deemed to exist and continue so long as, but only so long as, it shall not have been remedied:

(a)     the Lessee shall fail to pay when due any amount of Basic Rent or Termination Value on the date such Basic Rent or Termination Value is due, and such failure shall continue unremedied for three (3) Business Days following the due date therefor;

(b)     the Lessee shall fail to pay when due any amount of Supplemental Rent or any other amount due and owing from the Lessee under this Lease (other than as specified in Paragraph (a) above) or any other Operative Document and such failure to pay shall continue for a period of five (5) Business Days after demand has been made on the Lessee;

(c)     the Lessee shall fail to carry and maintain or fails to procure that any Permitted Sub-Lessee carry and maintain Aircraft Insurances (including any required Aircraft Reinsurances) required to be maintained in accordance with the provisions of Clause 10, or the Lessee shall fail to perform or observe any covenant, condition or agreement contained in Clause 7.6(a) or 10.11 hereof or clause 8(g) of the Participation Agreement;

(d)     any Lessee Obligor shall have failed to perform or observe in any material respect  any other covenant or agreement (ie, other than those covered by the preceding paragraph (a), (b) or (c) of this Clause 13) to be performed or observed by it hereunder or under any other Operative Document to which it is a party, and such failure is unremediable, or if remediable and the Lessee is diligently proceeding to remedy such failure, shall continue unremedied for a period of thirty (30) days after the earlier of (i) the Lessee obtaining actual knowledge of such failure or (ii) notice to the Lessee thereof has been given by the Lessor, the Security Trustee or the Insurer Representative;

(e)     any representation or warranty of any Lessee Obligor under any of the Operative Documents or in any document or certificate furnished by the Lessee in connection therewith or pursuant thereto shall be untrue, inaccurate or misleading in any material respect as at the time when made or furnished;

(f)     any license, consent, approval or authorization of, or any filing or registration with, any governmental authority or agency necessary for the performance by a Lessee Obligor of its obligations under this Lease or any other Operative Document or in connection herewith or therewith (including, without limitation, the registration of any Aircraft or any Mortgage or any Security Agreement) or the Certificate of Airworthiness issued in respect of any Aircraft

FILED DATE: 1/11/2023 2:57 PM   2023L000001

shall be revoked, not applied for or not issued or shall cease to remain in full force (or, as applicable, is not duly renewed upon the terms consistent with the original approval or otherwise satisfactory to the Security Trustee and the Insurer Representative) or any of the foregoing shall be modified and any such revocation, non-application or issuance or modification would materially adversely affect (in the opinion of the Security Trustee or the Insurer Representative) the rights and remedies of the Lessor hereunder or of any Secured Party under the Operative Documents;

(g)     the Lessee or either Guarantor shall apply for or consent to the appointment of, or the taking of possession by, a receiver, an examiner, a trustee, custodian or liquidator of itself or of a substantial part of its property, or the Lessee or either Guarantor shall admit in writing submitted in connection with judicial or other similar procedures its inability to pay its debts generally as they come due, shall announce a moratorium on payment of its debts or any class of its debts, or shall make a general assignment for the benefit of creditors or any creditor exercises a contractual right to assume the general operations or financial management of the Lessee;

(h)     the Lessee or either Guarantor shall file a voluntary petition or commence a case in bankruptcy or a voluntary petition or an answer seeking reorganization in a proceeding under any bankruptcy or insolvency laws (as now or hereafter in effect) or an answer admitting the material allegations of a petition filed against any the Lessee or either Guarantor in any such proceedings, or the Lessee or either Guarantor shall by voluntary petition, answer or consent to or seek relief under the provisions of any other now existing or future bankruptcy, insolvency, reorganization or other similar law providing for the reorganization or winding-up of corporations, or providing for an agreement, composition, extension or adjustment with its creditors;

(i)     an order, judgment or decree shall be entered in any proceeding by any court of competent jurisdiction appointing, without the consent of such Lessee or either Guarantor, a receiver, trustee, custodian or liquidator of the Lessee or either Guarantor or of any substantial part of its property, or sequestering any substantial part of the property of such Lessee or either Guarantor, and any such order, judgment or decree of appointment or sequestration shall remain in force undismissed, unstayed or unvacated for a period of sixty (60) days after the date of entry thereof;

(j)     a petition against the Lessee or either Guarantor in a proceeding under any bankruptcy laws or other insolvency laws as now or hereafter in effect shall be filed in a court of competent jurisdiction and shall not be withdrawn or dismissed within sixty (60) days thereafter, or if, under the provisions of any law providing for reorganization or winding-up of corporations which may apply to the Lessee or either Guarantor any court of competent jurisdiction shall assume jurisdiction, custody or control of the Lessee or of any substantial part of its property or any Aircraft and such jurisdiction, custody or control shall remain in force unrelinquished, unstayed or unterminated for a period of sixty (60) days;

(k)     the Lessee or either Guarantor threatens to suspend making payments or declares a moratorium or seeks a restructuring of its Indebtedness or the Lessee shall fail to pay when due (after giving effect to any applicable grace periods) any principal of or interest or scheduled payments in respect of any of its other Indebtedness (i) aggregating ten million Dollars (US$10,000,000) or more (or the equivalent thereof in any currency) or (ii) in respect of any Other Indebtedness, and the lender(s), the funder(s) or an agent or trustee thereof in respect of such Indebtedness declares or thereby becomes entitled to declare such Indebtedness to be due and payable prior to its scheduled maturity;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(l)      any additional procedure similar to those referred to in subparagraphs (g), (h), (i) and (j) above for the relief of financially distressed debtors under any Applicable Law or any other competent jurisdiction is entered into by the Lessee or either Guarantor voluntarily or involuntarily, and is not withdrawn or dismissed within sixty (60) days thereafter;

(m)     any of the events referred to in subparagraphs (g) to (l) above occurs in relation to any Permitted Sub-Lessee, and:

      (i)      the Lessee fails to inform the Lessor, the Security Trustee and the Insurer Representative immediately upon becoming aware of such event; or

      (ii)     the Lessee fails to terminate the leasing of the Aircraft pursuant to the relevant Permitted Sub-Lease immediately upon written request from the Lessor, the Security Trustee or the Insurer Representative.

(n)      a final judgment or judgments for the payment of money in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, shall be rendered against the Lessee or either Guarantor and the same shall remain undischarged for a period of sixty (60) days during which execution of such judgment shall not be effectively stayed, or an attachment or attachments or other Lien or Liens in respect of such judgment or judgments shall be issued or entered against any of the property of the Lessee or either Guarantor, for an amount in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, and shall remain undischarged or unbonded for thirty (30) days, except, in each case when such is being contested in good faith by appropriate proceedings that do not involve any substantial risk of the sale, seizure, forfeiture or loss of Collateral or title thereto, interest therein or use thereof and the Lessee provides the Lessor, the Agent, the Security Trustee and the Insurer Representative with reasonable evidence to that effect;

(o)      the existence, validity, enforceability or priority of the Lessor's rights, title and interests to any Aircraft is challenged by any Lessee Obligor or any other Person claiming through the Lessee or this Lease or any other Operative Document is or becomes wholly or in part to a material extent invalid, illegal or unenforceable for any reason;

(p)      the validity or enforceability (but not any particular interpretation) of any provision of any Operative Document is contested through appropriate proceedings by the Lessee or any Affiliate thereof or by any Government Body seeking to establish the invalidity or unenforceability thereof;

(q)      the Lessee or any Permitted Sub-Lessee shall:

      (i)      (in the case of a Permitted Sub-Lessee) cease, or announce its intention to cease, to conduct its business as a commercial scheduled airline;

      (ii)     other than in circumstances permitted by Clause 8(g) of the Participation Agreement, assign, lease or otherwise dispose of all or any material part of the assets or property (whether by a single transaction or a number of related or unrelated transactions and whether at the same time or over a period of time) comprising the its aircraft or aircraft related business; or

      (iii)    (in the case of a Permitted Sub-Lessee) cease to hold, whether by virtue of the revocation, suspension or non-renewal thereof or otherwise, any air transport license or its equivalent required to enable the it to carry out its principal business or the franchises, concessions, permits, rights or privileges required for the conduct of the business or operations of it shall be revoked, canceled or otherwise terminated or the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

free and continued use and exercise thereof curtailed or prevented, and as a result of any of the foregoing the preponderant business activity of it shall cease to be that of a commercial airline;

(r)    there shall have occurred and be continuing any "Event of Default" under and as defined in any Other Operative Document;

(s)    The Lessee breaches its obligations under clause 6 or clause 23 of the Participation Agreement;

(t)    there shall be any change (or such change shall be enacted or made by decree or otherwise and shall be scheduled and become thereafter effective) in the laws, regulations or treaties of the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, (while it is leasing an Aircraft from the Lessee) any Permitted Sub-Lessee, the Cayman Islands, Ireland the United States or any government or political agency, subdivision or instrumentality thereof which materially adversely affects the validity, legality or perfection of the Lessor's title to any Aircraft, or any Secured Party's rights in any Aircraft under any Security Document, or which materially adversely affects the Lessor's or any Secured Party's interests under this Lease or materially adversely affects the Lessee's ability to perform or comply with its obligations under this Lease or the legality of such performance or compliance;

(u)    any Government Body shall have condemned, seized or appropriated all or any substantial part of the property of the Lessee or either Guarantor which is likely materially and adversely to affect the ability of such the Lessee or either Guarantor to perform its obligations under the Operative Documents; and/or

(v)    any other event occurs (other than an Event of Loss) or any other circumstance arises which is likely materially and adversely to affect the ability or legal obligation of the Lessee to perform its obligations under any Operative Document to which it is a party.

## 14.    REMEDIES

(a)    Upon the occurrence of any Event of Default or a Termination Event and at any time thereafter so long as the same shall be continuing, the Lessor may (without prejudice to any other rights of the Secured Parties under this Lease or the other Operative Documents), at its option, (in the case of any Event of Default) accept such repudiation and by notice to the Lessee declare this Lease to be in default or a Termination Event to have occurred and (in each case) by notice to the Lessee may, at its option, terminate any commitment of the Lessor to lease any Aircraft for which the relevant Delivery Date has not yet occurred (provided, that upon the occurrence of any Event of Default described in Clause 13(g)-(l), this Lease shall automatically be deemed in default and the Lessor's commitment shall automatically terminate); and at any time after this Lease shall be declared or deemed to be declared to be in default or a Termination Event to have occurred under this Clause 14, the Lessor may, so long as the Lessee shall not have remedied all outstanding Events of Default or Termination Events, exercise one or more of the following remedies with respect to all or any part of any Aircraft as the Lessor in its sole discretion shall elect:

(i)    the Lessor may demand that the Lessee pay the Lessor, and the Lessee shall pay to the Lessor, all Basic Rent (for all Aircraft) that has accrued but remains unpaid, together with the then applicable Termination Value for such Aircraft, computed on the date of final payment in full thereof, all Supplemental Rent then due and payable by the Lessee hereunder and all amounts then due and payable by the Lessee to the Lessor or any Secured Party under all other Operative Documents, and upon the indefeasible payment of such amount

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and all Supplemental Rent then due and payable by the Lessee hereunder, the Term for such Aircraft shall terminate;

(ii)    the Lessor shall be entitled in addition to making any demand referred to in paragraph (a) above:

        (A)    to cause the Lessee upon demand of the Lessor (provided that such demand shall be deemed to have been given if the Lessor is stayed by operation of law from making such demand) and at the Lessee's expense, to return promptly, and the Lessee shall return promptly, all or such part of any Aircraft, and the Manuals and Technical Records relating thereto, as the Lessor may so demand, to the Lessor in the manner and condition required by, and otherwise in accordance with all the provisions of, Clause 5 as if such Aircraft was being returned at the end of the Term for such Aircraft, or if the Lessee does not so deliver such Aircraft or the Manuals and Technical Records relating thereto, the Lessor, at its option, may enter upon the premises where all or any part of such Aircraft and the Manuals and Technical Records relating thereto are located and take immediate possession of and remove the same (together with any engine or part which is not an Engine or Part associated with such Aircraft but which is installed on the relevant Airframe or stored with or attached to any relevant Engine, subject to all of the rights of the owner, lessor, lienor or secured party of such engine or part) by summary proceedings or otherwise all without liability accruing to the Lessor for or by reason of such entry or taking of possession, whether for restoration of damage to property caused by such taking or otherwise, provided that all actions of the Lessor in this respect are reasonable and necessary, and the Lessor may institute proceedings to repossess such Aircraft in any jurisdiction where such Aircraft may be located, and provided further that if at any time after the Lessor has exercised its rights under this paragraph (A), the Lessee shall make the payments referred to in paragraph (a) above, the Term for such Aircraft shall terminate;

        (B)    following repossession of an Aircraft pursuant to Clause 14(a)(ii)(A), to sell such Aircraft at public or private sale, as the Lessor may determine; provided that the Lessor shall apply the proceeds of any sale in the manner set forth in the Intercreditor Deed, and the Lessor agrees to give the Lessee at least ten (10) Business Days' prior notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article 8(4) of the Convention) of the date fixed for any public sale of such Aircraft or of the date on or after which will occur the execution of any contract providing for any private sale thereof, and any such sale shall be conducted so as to afford the Lessee a reasonable opportunity to bid; and

        (C)    the Lessor may exercise any other right or remedy which may be available to it as a secured party under Applicable Law or under the Cape Town Convention, including, without limitation, all rights and remedies under Chapter III of the Convention and Chapter II of the Protocol.  The Lessor hereby agrees to give the Lessee at least fifteen (15) days' notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article IX(6) of the Protocol) as set forth in Article IX(6) of the Protocol in connection with a proposal to procure the de-registration and export of an Aircraft without a court order.  The Lessee expressly agrees to permit the Lessor to obtain from any applicable court, pending final determination of any claim resulting from an Event of Default or Termination Event hereunder, speedy relief in the form of any of the orders specified in Article 13 of the Convention and Article X of the Protocol as the Lessor shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

determine in its sole and absolute discretion, subject to any procedural requirements prescribed by Applicable Laws.

(b)      In addition, the Lessee shall be liable, except as otherwise provided above, for any and all unpaid Supplemental Rent due hereunder before, after or during the exercise of any of the foregoing remedies and for all legal fees and other costs and expenses actually incurred by the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative by reason of the occurrence of any Event of Default or Termination Event or the exercise of the Lessor's remedies with respect thereto, including (i) all costs and expenses incurred in connection with the return of the relevant Aircraft in accordance with the terms of Clause 5 or in placing the relevant Aircraft in the condition and airworthiness required by such Clause and (ii) any other costs and expenses that the Lessor, the Agent, the Lenders, the Security Trustee or the Insurer Representative may incur in connection with the retaking, holding, storage, export, deregistration and preparing for sale of the relevant Aircraft and other like action or that the Lessee has agreed to assume in any other Operative Document or pursuant to Applicable Law.  Except as otherwise expressly provided above, no remedy referred to in this Clause 14 is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above; and the exercise or beginning of exercise by the Lessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by the Lessor of any or all of such other remedies.  No express or implied waiver by the Lessor of, and no course of dealing by it with respect to, any Event of Default or Termination Event shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default or Termination Event.

(c)      The Lessee hereby consents to the exercise by the Lessor of the remedies granted herein and in the Cape Town Convention.  The Lessee acknowledges and agrees that the Lessor may exercise such of the foregoing remedies as it shall determine in its sole discretion and none of the foregoing remedies is manifestly unreasonable.  To the extent permitted by Applicable Law, the Lessee and the Lessor hereby agree that paragraph 2 of Article 13 of the Convention shall not apply to this Lease or to the exercise of any remedy by the Lessor under this Lease or the Cape Town Convention.  Following the occurrence of an Event of Default or Termination Event, the Lessee agrees to immediately discharge, upon demand by the Lessor or the Security Trustee, any registration made with the International Registry in favour of the Lessee.

## 15.   FURTHER ASSURANCES; INVESTMENT OF SECURITY FUNDS, NO BREACH OF SANCTIONS

### 15.1   Further Assurances

(a)      The Lessee and the Lessor shall from time to time, at the cost and expense of the Lessee, do and perform such other and further acts and duly execute and deliver such further documents and assurances as may be required by Applicable Laws or requested by the other party to establish, maintain and protect the respective rights and remedies of the other party and to carry out and effect the intent and purpose of this Lease including, if requested by the Lessor, the Security Trustee, the Agent  or the Insurer Representative and at the expense of the Lessee:

(i)      the execution and delivery of supplements hereto or to the other Operative Documents, in recordable form, subjecting to this Lease or to the other Operative Documents, any replacement or substitute airframe or engine;

(ii)      the recording or filing of counterparts hereto or thereto, in accordance with the laws of such jurisdictions in which any Aircraft is based as the Insurer Representative or the Security

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee; and

(iii)    the registration of any interest, assignment or subordination with the International Registry to preserve, protect, perfect or establish priority in respect of any Aircraft Object or Associated Right covered by or related to this Lease, the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee.

(b)    The Lessee shall be solely responsible for obtaining all required consents and approvals of, giving all required notices to, performing all required registrations and filings for recordation with, and taking all other necessary actions in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, any Guarantor the jurisdiction of incorporation or formation of the Lessor, England and Wales and/or the United States of America including any governmental or political agency, subdivision or instrumentality thereof.

(c)    Without limiting the foregoing, the Lessee shall cause this Lease, and any and all additional instruments which shall be executed pursuant to the terms hereof, to be kept, filed, deposited or recorded, at all times, in the International Registry and in such places in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, the jurisdiction of incorporation or formation of the Lessor, the United States of America, England and Wales and such other jurisdictions in which any Aircraft is based as the Lessor, the Security Trustee, the Agent, any Lender or the Insurer Representative may reasonably request in order to perfect and preserve the rights of the Lessor, the Security Trustee, the Agent, the Lenders, the Insurer Representative or the other Secured Parties hereunder, and furnish to the Lessor, the Insurer Representative, the Agent, the Lenders and the Security Trustee an opinion or opinions of counsel or other evidence satisfactory to the Lessor, the Insurer Representative and the Security Trustee of each such filing, deposit or recordation and, without limitation of any of the foregoing, at the reasonable request of the Lessor, the Insurer Representative, the Agent, any lender or the Security Trustee, promptly correct any defect, error or omission which may at any time hereafter be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof and, at the request of the Lessee, the Lessor shall promptly correct any defect, error or omission which may at any time be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof.  Without limiting any of the foregoing, the Lessee will co-operate fully with the Lessor, the Security Trustee, the Agent, the Lenders and the Insurer Representative for obtaining the deregistration of any Aircraft and any required export licenses, when requested by the Security Trustee upon any return of any Aircraft required hereunder.

## 15.2    Security Funds

(a)    Notwithstanding anything in this Lease to the contrary, if a Material Default or Event of Default or Termination Event  under this Lease shall have occurred and be continuing or if the Lessor (or the Security Trustee, as the Lessor's assignee) is holding funds pending replacement of any Airframe and/or Engines pursuant to Clause 9, all amounts otherwise payable to the Lessee hereunder shall be paid to the Lessor and shall be held by the Lessor (or, if either Security Agreement shall not have been discharged, shall be paid to and held by the Security Trustee) as security for the obligations of the Lessee under this Lease, and, at such time as there shall not be continuing such Material Default, Termination Event or Event of Default or such replacement is complete, such amounts, net of any amounts theretofore properly applied to the Lessee's obligations hereunder, shall be paid to the Lessee or as the Lessee may direct.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     All funds held by the Security Trustee hereunder shall be held as Collateral under the Lessee Security Agreement to secure, inter alia, the repayment of the Loans and the other amounts expressed to be secured thereunder and applied as provided therein.

**15.3   No Sanctions Breaches**

(a)     No Lessee Obligor shall, and it shall not permit or authorise any other person or Subsidiary to, directly or indirectly, use, lend, make payments of, contribute or otherwise make available, all or any part of the proceeds of any Loan or other transactions contemplated by the Operative Documents to fund any trade, business or other activities:

(i)     involving or for the benefit of any Sanctioned Person; or

(ii)    in any other manner that could cause any Obligor or any Secured Party to be in breach of any Sanctions.

**16.   NOTICES**

All notices, consents and other communications hereunder shall be given in accordance with clause 13(c) of the Participation Agreement.

**17.   MISCELLANEOUS; GOVERNING LAW**

(a)     Any provision of this Lease that is prohibited or unenforceable in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and shall not invalidate or render unenforceable the other provisions hereof in any jurisdiction. To the extent permitted by Applicable Law, the Lessee hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect. No term or provision of this Lease may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought and only as permitted by the Operative Documents. The Clause and paragraph headings in this Lease and the table of contents are for convenience of reference only and shall not modify, define, expand or limit any of the terms or provisions hereof.

(b)     This Lease and any non-contractual obligations arising out of or in connection with it are governed by English law.

(c)     The provisions of clause 13(d) of the Participation Agreement, in so far as they relate to any dispute between the Lessor and the Lessee, shall apply hereto as if set out in this Agreement, *mutatis mutandis*.

(d)     To the extent that the Lessee may be or hereafter become entitled, in any jurisdiction in which judicial proceedings may at any time be commenced with respect to this Lease, to claim for itself or its property, assets or revenues immunity (whether by reason of sovereignty or otherwise) from suit, jurisdiction of any court, attachment prior to judgment, attachment in aid of execution of a judgment, set-off, execution of judgment or from any other legal process, and to the extent that in any such jurisdiction there may be attributed any such immunity (whether or not claimed), the Lessee hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity.

(e)     The payment obligations of the Lessee payable under this Lease and any other Operative Document (the **payor**) expressed to be payable thereunder in one currency (the **first currency**) shall not be discharged by an amount paid in another currency (the **second**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**currency**), whether pursuant to a judgment or otherwise, to the extent that the amount so paid on prompt conversion to the first currency under normal banking procedures does not yield the full amount of the first currency due thereunder, and the payor shall indemnify the recipient of such payment (the **payee**) against any such shortfall; and in the event that any payment by the payor, whether pursuant to a judgment or otherwise, upon conversion and transfer does not result in payment of such amount of the first currency, the payee shall have a separate cause of action against the payor for the additional amount necessary to yield the amount due and owing to the payee.

(f)     If it is necessary to determine for any reason other than that referred to in Clause 17(e) above the equivalent in the first currency of a sum denominated in the second currency, the rate of exchange used shall be that at which in accordance with normal banking procedures the Security Trustee could purchase the first currency with the second currency on the Business Day on which such determination is to be made (or, if such day is not a Business Day, on the next preceding Business Day).

(g)     This Lease may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Lease.

(h)     Except to the extent expressly provided herein, any terms of this Lease which expressly incorporate any provisions of the Cape Town Convention shall prevail in the case of any conflict with any other provision contained herein.  Each of the parties hereto acknowledges and agrees that for purposes of the Cape Town Convention (to the extent applicable hereto), separate rights may exist with respect to each Airframe and Engine.

## 18.     SECURITY FOR THE LESSOR'S OBLIGATION

(a)     In order to secure the repayment, inter alia, of the Secured Obligations, the Lessor has agreed in the Lessor Security Agreement, among other things, to assign to the Security Trustee its right, title and interest in and to this Lease, including all Associated Rights related thereto, subject to the reservations and conditions therein set forth.  The Lessee hereby consents to such assignment and acknowledges receipt of a copy of the Security Agreement it being understood that such consent shall not affect any requirement or the absence of any requirement for any consent under any other circumstances.

(b)     Until the Lien of the Lessor Security Agreement has been released:

(i)     the Lessee shall, notwithstanding anything herein to the contrary, make all payments of Rent and all other amounts payable hereunder in accordance with clause 13 of the Participation Agreement and such payments shall not be subject to any defence, counterclaim, set-off or other right or claim of any kind which the Lessee may be able to assert against the Lessor or any other Person in an action brought by any thereof on this Lease;

(ii)     all rights of the Lessor with respect to this Lease (including all consent, waiver and notice rights), any Aircraft, any Airframe, any Engine or any Part thereof, to the extent set forth in and subject in each case to the exceptions set forth in the Lessor Security Agreement, shall be exercisable by the Security Trustee (to the exclusion of the Lessor); and

(iii)     all documents, notices, certificates and opinions of counsel sent by the Lessee to the Lessor shall also be sent to the Security Trustee.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

19. **LESSOR'S RIGHT TO PERFORM FOR LESSEE**

If the Lessee fails to make any payment of Rent required to be made by it hereunder or fails to perform or comply with any of its agreements contained herein, the Lessor or the Security Trustee may (but shall be under no obligation to) itself make such payment or perform or comply with such agreement, and the amount of such payment and the amount of the reasonable expenses of the Lessor or the Security Trustee incurred in connection with such payment or the performance of or compliance with such agreement, as the case may be, shall be deemed Supplemental Rent, payable by the Lessee upon demand together with interest thereon at the applicable Post-Default Rate.

20. **ENGLISH LANGUAGE PREVAILS**

For the avoidance of doubt, the Lessor and the Lessee agree any translation of this Lease shall not apply in construing this Lease and that the English version of this Lease shall govern for all purposes.

21. **COMPLETE AGREEMENT**

Except for the other Operative Documents, this Lease contains the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior written or oral communications or agreements with respect thereto.

22. **LIMITATION OF LIABILITY OF THE LESSOR**

The Lessee acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Lease is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Master Lease Agreement to be duly executed by their respective duly authorized officers on the date first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 1**

**FORM OF ACCEPTANCE CERTIFICATE**

Trollfjorden Limited (the **Lessee**) at [●] on this [●] day of [●] (the **Delivery Date**), has accepted delivery from AAA Max 4 Limited (the **Lessor**) of the following described aircraft (the **Aircraft**) pursuant to and in accordance with the terms of that certain Master Lease Agreement (the **Lease**) dated [●] between the Lessor and the Lessee:

One (1) Boeing model –737 - 8 airframe bearing manufacturer's serial number [●] and registration mark [●] together with two (2) installed CFM model LEAP-1B27 engines bearing manufacturer's serial numbers [●] and [●], all parts, appliances, components, instruments, accessories, accessions, attachments, avionics (including, without limitation, radio, radar, navigation systems and other electronic equipment), other equipment (including, without limitation, all buyer-designated equipment and all buyer-furnished equipment) and components of whatever nature incorporated or installed in or attached to the Aircraft or such Engines, and all Manuals and Technical Records pertaining to the Aircraft and Engines.

The Lessee further certifies (a) that it has irrevocably accepted the above-described Aircraft for all purposes hereof and of the Lease as being airworthy, in good working order and repair without defect or inherent vice in title, condition, design, operation or fitness for use, and (b) that the Aircraft conforms in all respects with all of the requirements of the Lease.

Capitalized terms used in this Acceptance Certificate not otherwise defined herein shall have the meaning assigned thereto in the Lease.

**IN WITNESS THEREOF**, the Lessee has caused this Acceptance Certificate to be executed in its name by its duly authorized representative on this [●] day of [●].

TROLLFJORDEN LIMITED

By: _____
Name:
Title:

FILED DATE: 1/11/2023 2:57 PM      2023L000001

## SCHEDULE 2

## FORM OF LEASE SUPPLEMENT

LEASE SUPPLEMENT NO. [  ]

THIS LEASE SUPPLEMENT NO. [●] dated [●] (this **Lease Supplement**) is between AAA Max 4 Limited**,** an exempted company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Trollfjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated [●] relating to –737 - 8 Boeing model [●] aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.      The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

(a)     one (1) Boeing model –737 - 8  airframe bearing manufacturer's serial number [●] and registration mark [●]; and

(b)     two (2) CFM model LEAP-1B27 engines bearing manufacturer's serial numbers [●] and [●], respectively.

2.      The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.      The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.      The parties confirm that the Purchase Price for the Delivered Aircraft is US$[●] and the Initial Rent for the Delivered Aircraft is US$[●].

5.      All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.      The [revised] "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.      This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 4 LIMITED

By:     _____
              Name:
              Title:

TROLLFJORDEN LIMITED

By:     _____
              Name:
              Title:

Receipt of the counterpart of the foregoing Lease Supplement No. [●] is hereby acknowledged on this [●] day of [●].

[●], as Security Trustee

By:     _____
              Name:
              Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

Basic Rent
Payment Date

Principal Instalment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 3

## FORM OF EUROCONTROL LETTER

From:   **[NORWEGIAN AIR NORWAY AS][NORWEGIAN AIR SWEDEN AB]**

To:     The Director of the Central Route Charges Office
        European Organisation for the Safety of Air Navigation (EUROCONTROL)
        Rue de La Fusée, 96
        B-1130 Brussels
        Belgium

[    ] 2018

Dear Sirs

### Authorisation Letter

**AIR NAVIGATION CHARGES: ONE (1) BOEING 737 - 8 AIRCRAFT BEARING MANUFACTURER'S SERIAL NUMBER [●] AND REGISTRATION MARK [●] (THE AIRCRAFT)**

We have subleased the Aircraft from Trollfjorden Limited (the **Sublessor**) in accordance with a sublease agreement dated [  ] 2018 between us and the Sublessor.

We hereby authorise you to provide the Sublessor (hereby represented by [SECURITY TRUSTEE]) with a general statement of account in relation to air navigation charges incurred by us and due to EUROCONTROL.   Access to the statement(s) of account will be provided in accordance with the procedures established by EUROCONTROL.

The authorisation contained in this letter may only be revoked or amended by a written instruction signed by us and the Sublessor.

Yours faithfully

For and on behalf of
**[NORWEGIAN AIR NORWAY AS][NORWEGIAN AIR SWEDEN AB]**

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 4

## FORM OF EU ETS AUTHORITY LETTER

From:   **[NORWEGIAN AIR NORWAY AS][NORWEGIAN AIR SWEDEN AB]**

To:    All governmental entities in the European Union charged with administering any EU ETS (as defined below) applicable to us and the Aircraft

[•]

Dear Sirs

**Emissions Trading Schemes**

1    Pursuant to the terms of the aircraft lease agreement dated [•] 2018 (the **Lease**) between AAA Max 4 Limited (the **Lessor**) and Trollfjorden Limited (the **Lessee**) and the aircraft sub-lease agreement dated [•] 2018 (the **Sub-Lease**) between the Lessee and ourselves, we have agreed to sub-lease one (1) Boeing 737 - 8 aircraft with manufacturer's serial number [●] and registration mark [●].

2    We wish to enable each of the Lessor, [●] (the Insurer Representative) and [●] the (Security Trustee) to monitor the performance by us of our obligations under the Emissions Trading Schemes (**EU ETS**).

3    We hereby unconditionally authorise you, on request by the Lessor, the Security Trustee or the Insurer Representative from time to time, to provide the Lessor the Security Trustee or the Insurer Representative with particulars of any obligations due from but unperformed by us under the EU ETS.

4    The authorisation contained herein shall only be revoked or amended upon receipt by you of a written instruction signed by ourselves, the Lessor and the Agent requesting such revocation.

Yours faithfully

………………………………………………
For and on behalf of
**[NORWEGIAN AIR NORWAY AS][NORWEGIAN AIR NORWAY AB]**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATORIES**

**LESSOR**

**AAA MAX 4 LIMITED**

By: _____

    Name:    Elaine Anderson

    Title:    Director

**LESSEE**

**TROLLFJORDEN LIMITED**

By: _____

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM    2023L000001

**SIGNATORIES**

**LESSOR**

**AAA MAX 4 LIMITED**

By: _____
       Name:
       Title:

**LESSEE**

**TROLLEJORDEN LIMITED**

By: _____

Name:
Title:
      Sinead O'Brien
      Attorney-in-Fact

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT D-2

LEASE SUPPLEMENT NO. 2

THIS LEASE SUPPLEMENT NO. 2 dated _____, 2018 (this **Lease Supplement**) is between AAA Max 4 Limited**,** an exempted company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Trollfjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated 16 November 2018 relating to two 737 - 8 Boeing model aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.      The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

   (a)     one (1) Boeing model –737 - 8  airframe bearing manufacturer's serial number 63971 and registration mark LN-BKF; and

   (b)     two (2) CFM model LEAP-1B27 engines bearing manufacturer's serial numbers 602650 and 602652, respectively.

2.      The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.      The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.      The parties confirm that the Purchase Price for the Delivered Aircraft is US$49,260,781.00 and the Initial Rent for the Delivered Aircraft is US$7,389,117.15.

5.      All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.      The "Principal Instalment" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.      This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 4 LIMITED

By: _____

      Name:    **Elaine Anderson**
      Title:     **Director**

TROLLFJORDEN LIMITED

By: _____

      Name:
      Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 2 is hereby acknowledged on this ___ day of _____, 2018.

BANK OF UTAH, as Security Trustee

By: _____

      Name:
      Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 4 LIMITED

By: _____
   Name:
   Title:

TROLLFJORDEN LIMITED

By: _____
   Name:     Brian Byrne
   Title:    Attorney-in-Fact

Receipt of the counterpart of the foregoing Lease Supplement No. 2 is hereby acknowledged on this ___ day of _____, 2018.

BANK OF UTAH, as Security Trustee

By: _____
   Name:
   Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA MAX 4 LIMITED

By: _____

      Name:
      Title:

TROLLFJORDEN LIMITED

By: _____

      Name:
      Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 2 is hereby acknowledged on this ___ day of _____, 2018.

BANK OF UTAH, as Security Trustee

By: _____

      Name:   Michael Arsenault
      Title:    Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

| Basic Rent Payment Date | Principal Instalment (US$) |
|---|---|
| 18/12/2018 | |
| 18/03/2019 | 734,547.79 |
| 18/06/2019 | 741,646.74 |
| 18/09/2019 | 748,814.29 |
| 18/12/2019 | 756,051.11 |
| 18/03/2020 | 763,357.87 |
| 18/06/2020 | 770,735.25 |
| 18/09/2020 | 778,183.93 |
| 18/12/2020 | 785,704.59 |
| 18/03/2021 | 793,297.93 |
| 18/06/2021 | 800,964.66 |
| 18/09/2021 | 808,705.48 |
| 18/12/2021 | 816,521.12 |
| 18/03/2022 | 824,412.28 |
| 18/06/2022 | 832,379.71 |
| 18/09/2022 | 840,424.14 |
| 18/12/2022 | 848,546.32 |
| 18/03/2023 | 856,746.98 |
| 18/06/2023 | 865,026.91 |
| 18/09/2023 | 873,386.85 |
| 18/12/2023 | 881,827.59 |
| 18/03/2024 | 890,349.90 |
| 18/06/2024 | 898,954.58 |
| 18/09/2024 | 907,642.41 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

| | |
|---|---|
| 18/12/2024 | 916,414.21 |
| 18/03/2025 | 925,270.78 |
| 18/06/2025 | 934,212.94 |
| 18/09/2025 | 943,241.53 |
| 18/12/2025 | 952,357.37 |
| 18/03/2026 | 961,561.31 |
| 18/06/2026 | 970,854.20 |
| 18/09/2026 | 980,236.90 |
| 18/12/2026 | 989,710.27 |
| 18/03/2027 | 999,275.20 |
| 18/06/2027 | 1,008,932.57 |
| 18/09/2027 | 1,018,683.28 |
| 18/12/2027 | 1,028,528.21 |
| 18/03/2028 | 1,038,468.30 |
| 18/06/2028 | 1,048,504.44 |
| 18/09/2028 | 1,058,637.58 |
| 18/12/2028 | 1,068,868.65 |
| 18/03/2029 | 1,079,198.60 |
| 18/06/2029 | 1,089,628.38 |
| 18/09/2029 | 1,100,158.96 |
| 18/12/2029 | 1,110,791.31 |
| 18/03/2030 | 1,121,526.41 |
| 18/06/2030 | 1,132,365.26 |
| 18/09/2030 | 1,143,308.87 |
| 18/12/2030 | 1,154,358.23 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT D-3

**EXECUTION VERSION**

# PURCHASE AGREEMENT ASSIGNMENT

Dated as of  20 November    2018

**ARCTIC AVIATION ASSETS DAC**
**as Assignor**

**NORWEGIAN AIR SHUTTLE ASA**
**as Assignor**

**TROLLFJORDEN LIMITED**
**as Lessee**

**NORWEGIAN AIR NORWAY AS**

**as Sub-Lessee**

**NORWEGIAN AIR SWEDEN AB**

**as Sub-Lessee**

**BANK OF UTAH**

**as Security Trustee**

**and**

**AAA MAX 4 LIMITED**
**as Lessor**

**two (2) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

**Allen & Overy LLP**

0121556-0000001 BK:46157644.4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS PURCHASE AGREEMENT ASSIGNMENT** dated <u>20 November</u> 2018 (this **Assignment**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**), **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 4 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **TROLLFJORDEN LIMITED**, a private company limited by shares incorporated under the laws of Ireland (the **Lessee**) and **BANK OF UTAH**, as security trustee (in such capacity, together with its successors and permitted assigns, the **Security Trustee**), **NORWEGIAN AIR NORWAY AS**, a private company limited by shares duly incorporated under the laws of Norway (**Norway AS**) and **NORWEGIAN AIR SWEDEN AB**, a private company limited by shares duly incorporated under the laws of Sweden under Reg. No. 559111-7907 (**Sweden AB**) (each of Norway AS and Sweden AB being a **Sub-Lessee**).

## W I T N E S S E T H :

**WHEREAS**, Norwegian and The Boeing Company (the **Manufacturer**) entered into that certain purchase agreement number 03754, dated 24 January 2012, and that certain Aircraft General Terms Agreement AGTA-NSB, dated 29 August 2007 (the **AGTA**), which is incorporated by reference in that purchase agreement, providing for, inter alia, the sale by the Manufacturer of each Aircraft.

**WHEREAS**, Norwegian assigned and transferred to Arctic its rights and obligations under the Purchase Agreement to purchase the Aircraft in accordance with the Assignment, Assumption and Release Agreement dated 27 November 2014 (the **AARA**).

**WHEREAS**, the Lessor wishes to acquire certain rights and interests under the Purchase Agreement and each Assignor, on the terms and conditions set forth herein, is willing to assign to the Lessor certain of its rights and interests under the Purchase Agreement, and the Lessor is willing to accept such assignment; and

**WHEREAS**, the Manufacturer is willing to execute and deliver to the Lessor on each Delivery Date a consent and agreement (the **Consent and Agreement**) to the provisions hereof in substantially the form of Schedule 1 hereto in respect of the relevant Aircraft.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and of other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1.    For all purposes of this Assignment, unless the context otherwise requires, the following terms shall have the following respective meanings:

     **Agent** shall mean Bank of China Limited, Singapore Branch, as agent for the Lenders.

     **Aircraft** shall mean any of the two (2) Boeing model 737 - 8 airframes described in Schedule 2 hereto (each, an **Airframe**), as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, together, in the case of either Airframe, with two CFM LEAP-1B27 engines, each as more particularly described in Schedule 2, as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, installed on such Airframe and each other engine described in any Purchase Assignment Supplement hereto (collectively, the **Engines**), together with the equipment, components and accessories installed on such Aircraft (other than buyer furnished equipment that has not been converted to seller purchased equipment pursuant to the Purchase Agreement) pursuant to the Purchase Agreement, and together with all technical records, manuals and data with respect thereto provided in relation to such Aircraft pursuant to the Purchase Agreement (collectively, the **Manuals and Technical Records**).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Delivery** shall mean, with respect to an Aircraft, the time when the relevant Sub-Lessee (as designee of the Lessee), as the authorized representative of the Lessor, shall accept delivery of such Aircraft under the Purchase Agreement (as evidenced by delivery to the Lessor from the Manufacturer of the bill of sale in respect of such Aircraft referred to in the Purchase Agreement).

**Delivery Date** shall mean, with respect to an Aircraft, the date on which the Delivery of such Aircraft occurs.

**Engine Manufacturer** shall mean CFM International S.A., a French company and its successors and permitted assigns.

**Insurer Representative** shall mean Allianz Global Corporate & Specialty SE, U.K. Branch, as Insurer Representative.

**Lease** shall mean, in respect of each Aircraft, the Master Lease Agreement dated on or about the date hereof as supplemented by the lease supplement dated on or prior to the Delivery Date for such Aircraft, substantially in the form of Exhibit I to the Master Lease Agreement, in each case between the Lessor, as lessor, and the Lessee, as lessee, providing for the lease of such Aircraft, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Lease Event of Default** shall have the meaning given to such term in the Lease.

**Lessor Security Assignment** shall mean, in respect of each Aircraft, the security agreement relating to that Aircraft dated on or prior to the Delivery Date for such Aircraft between the Lessor and the Security Trustee, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Loan Agreement** shall mean the loan agreement, dated on or about 16 November 2018, among the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Lenders identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Loan Event of Default** shall mean shall have the meaning given to such term in the Loan Agreement.

**Participation Agreement** shall mean the Participation Agreement dated on or about 16 November 2018, among inter alios the Assignors, the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Lenders identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Purchase Agreement** shall mean the purchase agreement no. PA-03754 dated 24 January 2012 originally made between Norwegian and the Manufacturer, as partially assigned to and assumed by Arctic pursuant to the AARA,  and as further amended and supplemented from time to time thereafter, providing for, inter alia, the purchase by Arctic from the Manufacturer of each Aircraft, as more particularly described therein, which incorporates by reference the terms and conditions of the Aircraft General Terms Agreement (AGTA-NSB) dated 29 August 2007 between Norwegian and the Manufacturer (the **AGTA**).

**Purchase Assignment Supplement** shall mean in respect of each Aircraft, the purchase assignment supplement relating to such Aircraft entered into between the Assignors, the Lessee, the relevant Sub-Lessee and the Lessor and consented to by the Manufacturer, substantially in the form of Schedule 3 hereto.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Purchase Price** shall mean, with respect to an Aircraft, the amount in United States Dollars (U.S.$) in respect of the purchase of such Aircraft as shall be notified by Arctic to the Lessor at least five (5) Business Days prior to the Delivery Date for such Aircraft upon agreement with the Manufacturer and pursuant to the terms of the Purchase Agreement; provided that the Lessor's maximum liability under this Assignment in respect of the Purchase Price for such Aircraft shall not exceed the amount set forth in the Purchase Assignment Supplement; provided, further, that in the event that such amount changes after such notification but prior to the relevant Delivery Date, the parties agree that such amount shall be appropriately adjusted.

**Security Trustee** shall mean Bank of Utah, as Security Trustee.

**Sub-Lease** shall mean, with respect to an Aircraft, the aircraft operating lease agreement entered into or to be entered into on or about the Delivery Date of such Aircraft between the Lessee as lessor and the relevant Sub-Lessee as lessee.

**Sub-Lease Event of Default** shall have the meaning given to the term "Termination Event " in the Sub-Lease.

**Transaction Parties** means the Lessor, the Lessee and each Sub-Lessee and **Transaction Party** shall mean any one of them.

**Warranties** means the warranties in respect of the Airframe given by the Manufacturer pursuant to Exhibit C (Product Assurance Document) of the AGTA (which forms part of the Purchase Agreement) as attached hereto as Schedule 4 (The Warranties), including all post-delivery-rights in respect thereof.

All other capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Assignment and the rules of construction set out in part 2 of appendix 1 of the Participation Agreement and will be deemed to be set out herein in their entirety but as if each reference to any "Operative Document" were a reference instead to this Assignment.

2. As of the date of delivery of a Purchase Assignment Supplement from the Assignors to the Lessor (with copies to the Manufacturer and the Security Trustee) with respect to an Aircraft, each Assignor shall, with effect from such date, thereby sell, assign, transfer and set over unto the Lessor, its successors and permitted assigns, all of such Assignor's rights and interests in and to the Purchase Agreement as and to the extent they relate to the purchase of such Aircraft and the operation thereof, except as and to the extent expressly reserved below, including in such assignment:

    (a) the right upon valid tender by the Manufacturer to purchase such Aircraft subject to the terms and conditions thereof and the right to take title to such Aircraft and to be named the Buyer in the bill of sale to be delivered by the Manufacturer for such Aircraft pursuant to the Purchase Agreement;

    (b) the right to accept delivery of such Aircraft, such acceptance to be exercised by the relevant Sub-Lessee (as designee of the Lessee) as the authorized representative of the Lessor, provided that the Manufacturer shall have received written notice in advance of the identity and authority of such authorized representative;

    (c) all claims for damages in respect of such Aircraft arising as a result of any default by the Manufacturer under the Purchase Agreement in respect of such Aircraft;

    (d) all warranty and indemnity provisions contained in the Purchase Agreement, including the Warranties, and all claims arising thereunder, in respect of such Aircraft; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(e)     any and all rights of each Assignor to compel performance of the terms of the Purchase Agreement in respect of such Aircraft;

reserving exclusively to the Assignors, however:

(i)     all the Assignors' rights and interests in and to the Purchase Agreement as and to the extent that it relates to aircraft other than an Aircraft or the purchase, ownership or operation of such other aircraft and to the extent that it relates to any other matters not directly pertaining to an Aircraft;

(ii)    all the Assignors' rights and interests in or arising out of (including any credits for or repayment of) any advance payments made or to be made by the Assignors in respect of such Aircraft under the Purchase Agreement and any other payments or deposits made by the Assignors in respect of such Aircraft under the Purchase Agreement or any other agreement;

(iii)   the right to obtain services, training, data and demonstration and test flights pursuant to the Purchase Agreement; and

(iv)    the right to maintain plant representatives at the Manufacturer's plant pursuant to the Purchase Agreement.

The Lessor hereby accepts the assignment set forth above.

Notwithstanding the foregoing, so long and only so long as no notice has been issued to the Manufacturer in accordance with this Assignment, the Lessor hereby authorizes the relevant Sub-Lessee during the term of the Lease in respect of an Aircraft, to the exclusion of the Assignor, to exercise in such relevant Sub-Lessee's name (A) the right to enforce any warranty or indemnity, including the Warranties, under the Purchase Agreement and to retain any recovery or benefit resulting from the enforcement of any warranty or indemnity, including the Warranties, under the Purchase Agreement in respect of such Aircraft, (B) all rights to demand, accept and retain all rights in and to all property (other than such Aircraft) and (C) the right to exercise all other rights and powers of the Customer under the Purchase Agreement assigned to the Lessor hereunder in respect of such Aircraft; provided that the Assignors and such relevant Sub-Lessee may not enter into any change order or other amendment, modification or supplement to the Purchase Agreement if such change order, amendment, modification or supplement would (i) result in any rescission, cancellation or termination of the Purchase Agreement or any aircraft warranties in respect of any Aircraft, or (ii) materially diminish the rights and interests assigned hereunder.

For all purposes of this Assignment, the Manufacturer shall not be deemed to have knowledge of or need to recognize the occurrence of a Lease Event of Default, a Termination Event, a Sub-Lease Event of Default or a Loan Event of Default, unless and until the Manufacturer shall have received from the Lessee or the Lessor (or the Security Trustee, so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) written notice thereof, addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706. Until such time as a notice shall have been given by the Lessee or the Lessor (or the Security Trustee so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) to the Manufacturer, the Manufacturer shall deal solely and exclusively with the relevant Sub-Lessee. Thereafter, until the Lessee or the Lessor (or the Security Trustee, as the case may be) who served the notice on the Manufacturer shall have notified the Manufacturer that any such Lease Event of Default,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Termination Event, Sub-Lease Event of Default or Loan Event of Default is no longer continuing (which notice shall be given at such relevant Sub-Lessee's, the Lessee's or the Lessor's (as applicable) written request promptly after the remedy thereof), the Manufacturer shall deal solely and exclusively with the Lessor, the Lessee or the Security Trustee, as the case may be. The Manufacturer may act with acquittance and conclusively rely on such notice. For the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and in the event that the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control.

3.   It is expressly agreed that, anything herein contained to the contrary notwithstanding: (a) prior to the execution of a Purchase Assignment Supplement with respect to an Aircraft, each Assignor will perform its obligations with respect to such Aircraft to be performed by it on or before the Delivery Date for such Aircraft, (b) Arctic or Norwegian, as applicable, shall at all times remain liable to the Manufacturer under the Purchase Agreement to perform all duties and obligations of the Customer thereunder to the same extent as if this Assignment had not been executed, (c) the exercise by a Transaction Party of any of the rights assigned hereunder shall not release Arctic or Norwegian, as applicable, from any of its duties or obligations to the Manufacturer under the Purchase Agreement, except to the extent that such exercise by a Transaction Party shall constitute performance of such duties and obligations, and (d) except as specifically provided in the next succeeding paragraph with respect to the Transaction Parties, the Transaction Parties shall not have any obligation or liability under the Purchase Agreement by reason of or arising out of this Assignment or be obligated to perform any of the obligations or duties of Arctic or Norwegian, as applicable, under the Purchase Agreement or to make any payment or to make any inquiry as to the sufficiency of any payment received by it or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder.

Anything contained in this Assignment to the contrary notwithstanding (but without in any way releasing either Assignor from any of its duties or obligations under the Purchase Agreement), the Transaction Parties confirm for the benefit of the Manufacturer that, insofar as the provisions of the Purchase Agreement relate to any Aircraft, in exercising any rights under the Purchase Agreement with respect to such Aircraft, or in making any claim with respect to such Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to such Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, the Transaction Parties to the same extent as if each Transaction Party had been the original Customer thereunder. The Transaction Parties further agree, expressly for the benefit of the Manufacturer, that at any time and from time to time upon the written request of the Manufacturer, the Transaction Parties shall promptly and duly execute and deliver any and all such further assurances, instruments and documents and take all such further action as the Manufacturer may reasonably request in order to obtain the full benefits of the Transaction Parties' agreements set forth in this paragraph.

Nothing contained herein shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement and AGTA or modify in any respect the contract rights of the Manufacturer thereunder or require the Manufacturer to divest itself of title to or possession of any Aircraft or other goods and services until delivery thereof and payment therefor on the date of such delivery as provided therein.

Effective at any time after a Sub-Lease Event of Default has occurred, and for so long as such Sub-Lease Event of Default is continuing, the relevant Sub-Lessee does hereby irrevocably appoint the Lessee, its successors and permitted assigns, the relevant Sub-Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee or otherwise) to ask,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessee may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Lease Event of Default has occurred, and for so long as such Lease Event of Default is continuing, the relevant Sub-Lessee and the Lessee do hereby irrevocably appoint the Lessor, its successors and permitted assigns, the relevant Sub-Lessee's and the Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee, the Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessor may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessor may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Loan Event of Default has occurred, and for so long as such Loan Event of Default is continuing, each Sub-Lessee, the Lessee and the Lessor do hereby irrevocably appoint the Security Trustee, its successors and permitted assigns, the relevant Sub-Lessee's, the Lessee's and the Lessor's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee, the Lessee, the Lessor or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Security Trustee may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Security Trustee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

4.   NO ASSIGNOR SHALL BE DEEMED TO HAVE GIVEN, AND EACH ASSIGNOR HEREBY EXPRESSLY DISCLAIMS, ANY IMPLIED REPRESENTATION OR WARRANTY AS TO THE AIRWORTHINESS, CONDITION, MERCHANTABILITY, DESIGN, OPERATION OR FITNESS FOR USE OF ANY AIRCRAFT OR ANY PART THEREOF, OR ANY OTHER IMPLIED REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO ANY AIRCRAFT.

5.   Each Assignor agrees that at any time and from time to time upon the written request of any Transaction Party, it will promptly and duly execute and deliver any and all such further instruments and documents and take such further action as such Transaction Party may reasonably request in order to obtain the full benefits of this Assignment and of the rights and powers herein granted.

6.   Each Assignor does hereby represent and warrant that it has not assigned or pledged, and hereby covenants that it will not assign or pledge so long as this Assignment shall remain in effect, the whole or any part of the rights hereby assigned to anyone other than the Lessor. Each Assignor hereby acknowledges and agrees that the Lessor has assigned to the Security Trustee, as collateral security for the Lessor's obligations under the Loan Agreement and the other Operative Documents, all of the Lessor's right, title and interest in and to the Purchase Agreement (as it relates to any

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Aircraft) and this Assignment pursuant to the Lessor Security Assignment, and each Assignor hereby consents to such assignment.

7.   The Lessor agrees that it will not enter into any agreement with the Manufacturer that would amend, modify, rescind, cancel or terminate the Purchase Agreement in respect of any Aircraft or take any other action to amend, modify, rescind, cancel or terminate any of the Assignors' rights in respect of any Aircraft, without the prior written consent of the Assignors and the Security Trustee (so long as the Lien of the Lessor Security Assignment is in effect and has not been released by the Security Trustee).

8.   Each of the Transaction Parties agrees, expressly for the benefit of the Manufacturer, that it will not disclose, directly or indirectly, any terms of the Purchase Agreement disclosed to it; provided, that (a) the Transaction Parties may use, retain and disclose any such information to its special counsel and public accountants, who shall maintain the confidentiality of the Purchase Agreement, (b) the Transaction Parties may disclose any such information as required by Applicable Law or governmental regulations, (c) to the extent that any Transaction Party may have received a subpoena or other written demand under colour of legal right for such information, such Transaction Party may disclose such information, but it shall first, as soon as practicable upon receipt of such demand, furnish a copy thereof to the Manufacturer, and the relevant Transaction Party shall afford the Manufacturer reasonable opportunity, at the moving Person's cost and expense, to obtain a protective order or other reasonably satisfactory assurance of confidential treatment for the information required to be disclosed, (d) the Transaction Parties may disclose any such information to any bona fide potential purchaser or lessee of any Aircraft (subject to execution by such potential purchaser or lessee of a confidentiality undertaking substantially similar to this Section 8) and (e) the Transaction Parties may disclose any such information to the Agent, the Lenders, the Security Trustee, the Insurer Representative, each Insurer Group Member and any other Person with whom any of the foregoing is in good faith conducting negotiations relating to the possible transfer and sale of such Person's interests in the Purchase Agreement, any Aircraft and/or any provision of funds (subject to the execution of a confidentiality undertaking substantially similar to this Section 8 by such Agent, Lender, Security Trustee, Insurer Representative, Insurer Group Member and Person described in this paragraph 8) and to their respective special counsel and financial advisors (who shall maintain the confidentiality of the Purchase Agreement to the extent required by this Section 8).

9.   This Assignment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

10.   On the Delivery Date for an Aircraft, subject to satisfaction or waiver of the conditions set forth in the Participation Agreement required to be satisfied on or prior to the Delivery Date for such Aircraft, the Lessor agrees to purchase such Aircraft from the Manufacturer and (without limiting its other payment obligations under the Operative Documents on the Delivery Date for such Aircraft) to pay the Purchase Price for such Aircraft in the manner specified in the Purchase Agreement.

11.   If the Delivery Date for an Aircraft does not occur by 11:59 p.m. (Seattle time) on the date set forth in the Purchase Assignment Supplement in respect of such Aircraft, this Assignment (as it relates to such Aircraft) shall (unless otherwise agreed by the parties hereto) automatically terminate, whereupon the rights subject to this Assignment (as it relates to such Aircraft) shall be deemed reassigned by the Lessor to the Assignors without the requirement of any further act or action (other than any notice required to be given to the Manufacturer).

12.   For the purposes of this Assignment, all notices and other communications shall be in writing, in English, and shall be given or made by fax, or personal delivery and faxed or delivered to the intended recipient (other than the Manufacturer) at the address specified below, or, as to any party, at such other address as shall be designated by such party in a notice to each other party hereto. Except

FILED DATE: 1/11/2023 2:57 PM   2023L000001

as otherwise provided in this Assignment, all such communications shall be deemed to have been duly given when transmitted by fax (provided such transmission by fax is in legible form and is accompanied by or generates a substantially simultaneous confirmation of transmission), or personally delivered, in each case given or addressed as aforesaid.

(a)     If to the Lessor:

AAA Max 4 Limited
c/o Walkers Fiduciary Limited
Cayman Corporate Centre
27 Hospital Road
George Town
Grand Cayman KY1-9008
Cayman Islands

| | |
|---|---|
| Attention: | The Directors |
| Telephone: | +1 345 814 7600 |
| Email: | fiduciary@walkersglobal.com |

(b)     If to Arctic:

Arctic Aviation Assets DAC
Ground Floor
Imbus House
Dublin Airport
Co. Dublin
Ireland

| | |
|---|---|
| Attention: | Tore Jenssen |
| Telephone: | + 353 879 461 070 |
| Fax: | + 353 1 814 1839 |

(c)     If to Norwegian:

Norwegian Air Shuttle ASA
Oksenøyveien 3
1366 Lysaker
Norway

| | |
|---|---|
| Attention: | Chief Financial Officer |
| Telephone: | + 47 99 54 6400 |
| Fax: | +47 67 59 3001 |
| Email: | notices@norwegian.com |

with a copy to Arctic at the address above.

(d)     If to the Security Trustee:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Bank of Utah
200 East South Temple
Suite 210
Salt Lake City, UT 84111

Attention:      Jennifer Miller

Fax:            +1 801-746-3519

Email:          corptrust@bankofutah.com

(e)     If to the Lessee:

Trollfjorden Limited
c/o Arctic Aviation Assets DAC
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:      + 353 879 461 070

Fax:            + 353 1 814 7839

with a copy to Arctic at the address above.

(f)     If to Norway AS, as Sub-Lessee:

Norwegian Air Shuttle ASA
Oksenøyveien 3
Postboks 115
N-1330 Fornebu
Norway

Attention:      +47 67 59 30 78
Telephone:      +47 67 59 30 01
Fax:            notices@norwegian.no
E-mail:         Chief Financial Officer

with a copy to Norwegian at the address above.

(g)     If to Sweden AB, as Sub-Lessee:

Box 242
190 47 Stockholm-Arlanda
Sweden

Attention: Asgeir Nyseth
Telephone: +47 91 59 07 99
E-mail: asgeir.nyseth@norwegian.no

with a copy to Norwegian at the address above.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

13. This Assignment will be governed by, and construed in accordance with, the laws of the State of Washington, except for the conflict of laws principles thereof.

14. The provisions of clauses 13(d)(ii) to 13(d)(vi) of the Participation Agreement, in so far as they relate to any dispute between the parties shall apply hereto as if set out in this Assignment *mutatis mutandis*.

15. Each of the parties to this Assignment (except the Sub-Lessees) acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Assignment is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

16. Each Sub-Lessee acknowledges and agrees that the provisions of clause 20(c) (No Discharge, etc.; No Petitioning) and clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement apply to it to the same extent as if it were a party to the Participation Agreement and as if the reference to "Lessee" in such clause 20(c) referred to the Lessee and each Sub-Lessee.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Agreement Assignment to be duly executed the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 1

## FORM OF CONSENT AND AGREEMENT

## THE BOEING COMPANY

## CONSENT AND AGREEMENT

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated _____ 2018 between **AAA MAX 4 LIMITED** (the **Lessor**), **TROLLFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR SHUTTLE ASA** (**Norwegian**) and **ARCTIC AVIATION ASSETS DAC** (**Arctic**) (each of Arctic and Norwegian being an **Assignor**), **NORWEGIAN AIR NORWAY AS** (**Norway AS**) and **NORWEGIAN AIR SWEDEN AB** (**Sweden AB**) (each of Norway AS and Sweden AB being a **Sub-Lessee**) and **BANK OF UTAH**, as security trustee (the **Security Trustee**) relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number [●] (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1. all representations, warranties, indemnities and agreements of the Manufacturer, including the Warranties, under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2. no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3. the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4. if the Lessor desires to lease or sell the Aircraft to an entity who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for an entity in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

5.      the Manufacturer will continue to recognize the relevant Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement, including the Warranties, and agrees to pay to the relevant Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the relevant Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Loan Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.      the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.      the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.      The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)      the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)      the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)     to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)     Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.     The Manufacturer hereby confirms to the Security Trustee that:

(a)     upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)     except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.     The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.     The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.     It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 2018

**THE BOEING COMPANY**

By:

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

MSN [●]

**SCHEDULE 2**

**DESCRIPTION OF AIRCRAFT**

Each of two (2) Boeing model 737 – 8 airframes, bearing Manufacturer's serial numbers 63971 and 42835, as further identified in each Purchase Assignment Supplement to be entered into by the Assignors, the Lessor, the Lessee and the relevant Sub-Lessee in respect of such airframes, together, in the case of each such airframe, with the two (2) CFM LEAP-1B27 engines installed thereon and each other engine identified on any Purchase Assignment Supplement thereto.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 3

### FORM OF PURCHASE ASSIGNMENT SUPPLEMENT

### PURCHASE ASSIGNMENT SUPPLEMENT NO. __

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated _____ 2018 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 4 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **TROLLFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**), [**NORWEGIAN AIR NORWAY AS**, a private company limited by shares duly incorporated under the laws of Norway / **NORWEGIAN AIR SWEDEN AB**, a private company limited by shares duly incorporated under the laws of Sweden] (the **Sub-Lessee**) and **BANK OF UTAH**, as security trustee (the **Security Trustee**) and supplements that Purchase Agreement Assignment dated _____ 2018 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

### W I T N E S S E T H :

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and the Sub-Lessee desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and the Sub-Lessee hereby agrees as follows:

1.   The Sub-Lessee of the Aircraft is:                        _____

2.   Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

   Manufacturer's serial number:                        _____

   Registration Mark:                        _____

   Engine Manufacturer's serial numbers:                        _____ & _____

3.   Latest Delivery Date with respect to such Aircraft:            _____

4.   Maximum liability of the Lessor with respect to the   U.S.$_____
     Purchase Price of such Aircraft:

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. ___ to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM  2023L000001

## SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | ) |
| by **ARCTIC AVIATION ASSETS DAC** | |
| acting by its lawfully | ) |
| appointed attorney | ) |

………………………………..

Lawfully appointed attorney

in the presence of:                                                )

Witness's Signature:        _____

Name:                            _____

Address:                         _____

_____

**Norwegian**                                                      )

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | |
| by **NORWEGIAN AIR SHUTTLE ASA** | |
| acting by its lawfully | ) |
| appointed attorney | ) |

………………………………..

Lawfully appointed attorney

in the presence of:                                                )

Witness's Signature:        _____

Name:                            _____

Address:                         _____

_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**EXECUTED** as a **DEED** by )
**AAA MAX 4 LIMITED** )
acting by )
_____ )
acting under the authority of that
Company, in the presence of: )

Witness's Signature:       _____

Name:                  _____

Address:                _____

                      _____

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed Attorney of
**BANK OF UTAH**
(as Security Trustee)

acting by

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature:    _____
Name:              _____
Address:            _____
                 _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (2)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **TROLLFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

……………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature: _____

Name: _____

Address: _____

_____

**Sub-Lessee**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **[NORWEGIAN AIR NORWAY AS /** | ) |
| **NORWEGIAN AIR SWEDEN AB]** | ) |
| acting by its lawfully appointed attorney | |

……………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature: _____

Name: _____

Address: _____

_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (3)

## PURCHASE ASSIGNMENT SUPPLEMENT

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By:
Name:
Title:
Date:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 4

## THE WARRANTIES

**EXHIBIT B**

to

**AIRCRAFT GENERAL TERMS AGREEMENT**

**AGTA-NSB**

between

**THE BOEING COMPANY**

and

**NORWEGIAN AIR SHUTTLE ASA**

<u>**CUSTOMER SUPPORT DOCUMENT**</u>

<u>This document contains</u>:

Part 1:   Boeing Maintenance and Flight Training Programs;
Operations Engineering Support

Part 2:   Field and Engineering Support Services

Part 3:   Technical Information and Materials

Part 4:   Alleviation or Cessation of Performance

Part 5:   Protection of Proprietary Information and
Proprietary Materials

AGTA-NSB

B
i

**BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

**CUSTOMER SUPPORT DOCUMENT**

**PART 1:    BOEING MAINTENANCE AND FLIGHT TRAINING
PROGRAMS; OPERATIONS ENGINEERING SUPPORT**

1.    <u>Boeing Training Programs</u>.

    1.1    Boeing will provide maintenance training and flight training programs to support the introduction of a specific model of aircraft into service. The training programs will consist of general and specialized courses and will be described in a Supplemental Exhibit to the applicable purchase agreement.

    1.2    Boeing will conduct all training at Boeing's primary training facility for the model of aircraft purchased unless otherwise agreed.

    1.3    All training will be presented in the English language.  If translation is required, Customer will provide interpreters.

    1.4    Customer will be responsible for all expenses of Customer's personnel. Boeing will transport Customer's personnel between their local lodging and Boeing's training facility.

2.    <u>Training Planning Conferences</u>.

    Customer and Boeing will conduct planning conferences approximately 12 months before the scheduled delivery month of the first aircraft of a model to define and schedule the maintenance and flight training programs.

3.    <u>Operations Engineering Support</u>.

    3.1    As long as an aircraft purchased by Customer from Boeing is operated by Customer in scheduled revenue service, Boeing will provide operations engineering support.  Such support will include:

        3.1.1    assistance with the analysis and preparation of performance data to be used in establishing operating practices and policies for Customer's operation of aircraft;

        3.1.2    assistance with interpretation of the minimum equipment list, the definition of the configuration deviation list and the analysis of individual aircraft performance;

AGTA-NSB                       B

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

3.1.3   assistance with solving operational problems associated with delivery and route-proving flights;

3.1.4   information regarding significant service items relating to aircraft performance or flight operations; and

3.1.5   if requested by Customer, Boeing will provide operations engineering support during an aircraft ferry flight.

4.   <u>Training at a Facility Other Than Boeing's</u>.

If requested by Customer, Boeing will conduct the classroom portions of the maintenance and flight training (except for the Performance Engineer training courses) at a mutually acceptable alternate training site, subject to the following conditions:

4.1   Customer will provide acceptable classroom space, simulators (as necessary for flight training) and training equipment required to present the courses;

4.2   Customer will pay Boeing's then-current per diem charge for each Boeing instructor for each day, or fraction thereof, that the instructor is away from their home location, including travel time;

4.3   Customer will reimburse Boeing for the actual costs of round-trip transportation for Boeing's instructors and the shipping costs of training Materials between the primary training facility and the alternate training site;

4.4   Customer will be responsible for all taxes, fees, duties, licenses, permits and similar expenses incurred by Boeing and its employees as a result of Boeing's providing training at the alternate site or incurred as a result of Boeing providing revenue service training; and

4.5   Those portions of training that require the use of training devices not available at the alternate site will be conducted at Boeing's facility or at some other alternate site.

5.   <u>General Terms and Conditions</u>.

5.1   Boeing flight instructor personnel will not be required to work more than 5 days per week, or more than 8 hours in any one 24-hour period, of which not more than 5 hours per 8-hour workday will be spent in actual flying.  These foregoing restrictions will not apply to ferry assistance or revenue service training services, which will be governed by FAA rules and regulations.

AGTA-NSB

B
1-2
**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

5.2    **Normal Line Maintenance** is defined as line maintenance that Boeing might reasonably be expected to furnish for flight crew training at Boeing's facility, and will include ground support and aircraft storage in the open, but will not include provision of spare parts. Boeing will provide Normal Line Maintenance services for any aircraft while the aircraft is used for flight crew training at Boeing's facility in accordance with the Boeing Maintenance Plan (Boeing document D6-82076) and the Repair Station Operation and Inspection Manual (Boeing document D6-25470). Customer will provide such services if flight crew training is conducted elsewhere. Regardless of the location of such training, Customer will be responsible for providing all maintenance items (other than those included in Normal Line Maintenance) required during the training, including, but not limited to, fuel, oil, landing fees and spare parts.

5.3    If the training is based at Boeing's facility, and the aircraft is damaged during such training, Boeing will make all necessary repairs to the aircraft as promptly as possible. Customer will pay Boeing's reasonable charge, including the price of parts and materials, for making the repairs. If Boeing's estimated labor charge for the repair exceeds $25,000, Boeing and Customer will enter into an agreement for additional services before beginning the repair work.

5.4    If the flight training is based at Boeing's facility, several airports in surrounding states may be used, at Boeing's option. Unless otherwise agreed in the flight training planning conference, it will be Customer's responsibility to make arrangements for the use of such airports.

5.5    If Boeing agrees to make arrangements on behalf of Customer for the use of airports for flight training, Boeing will pay on Customer's behalf any landing fees charged by any airport used in conjunction with the flight training. At least 30 days before flight training, Customer will provide Boeing an open purchase order against which Boeing will invoice Customer for any landing fees Boeing paid on Customer's behalf. The invoice will be submitted to Customer approximately 60 days after flight training is completed, when all landing fee charges have been received and verified. Customer will pay to Boeing within 30 days of the date of the invoice.

5.6    If requested by Boeing, in order to provide the flight training or ferry flight assistance, Customer will make available to Boeing an aircraft after delivery to familiarize Boeing instructor or ferry flight crew personnel with such aircraft. If flight of the aircraft is required for any Boeing instructor or ferry flight crew member to maintain an FAA license for flight proficiency or landing currency, Boeing will be responsible for the costs of fuel, oil, landing fees and spare parts attributable to that portion of the flight.

5.7    If any part of the training described in Article 1.1 of this Exhibit is not used by Customer within 12 months after the delivery of the last aircraft under the relevant purchase agreement, Boeing will not be obligated to provide such training.



FILED DATE: 1/11/2023 2:57 PM   2023L000001

**CUSTOMER SUPPORT DOCUMENT**

**PART 2:        FIELD AND ENGINEERING  SUPPORT SERVICES**

1.        <u>Field Service Representation</u>.

        Boeing will furnish field service representation to advise Customer with respect to the maintenance and operation of an aircraft (**Field Service Representatives**).

        1.1    Field Service representation will be available at or near Customer's main maintenance or engineering facility beginning before the scheduled delivery month of the first aircraft and ending 12 months after delivery of the last aircraft covered by a specific purchase agreement.

        1.2    Customer will provide, at no charge to Boeing, suitable furnished office space and office equipment at the location where Boeing is providing Field Service Representatives.  As required, Customer will assist each Field Service Representative with visas, work permits, customs, mail handling, identification passes and formal introduction to local airport authorities.

        1.3    Boeing Field Service Representatives are assigned to various airports around the world.  Whenever Customer's aircraft are operating through any such airport, the services of Boeing's Field Service Representatives are available to Customer.

2.        <u>Engineering Support Services</u>.

        Boeing will, if requested by Customer, provide technical advisory assistance for any aircraft and Boeing Product (as defined in Part I of Exhibit C).  Technical advisory assistance, provided from the Seattle area or at a base designated by Customer as appropriate, will include:

        2.1    <u>Operational Problem Support</u>.  If Customer experiences operational problems with an aircraft, Boeing will analyze the information provided by Customer to determine the probable nature and cause of the problem and to suggest possible solutions.

        2.2    <u>Schedule Reliability Support</u>.  If Customer is not satisfied with the schedule reliability of a specific model of aircraft, Boeing will analyze information provided by Customer to determine the nature and cause of the problem and to suggest possible solutions.

AGTA-NSB                                    B
                                        2-1
                            **BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

2.3   <u>Maintenance Cost Reduction Support</u>.  If Customer is concerned that actual maintenance costs of a specific model of aircraft are excessive, Boeing will analyze information provided by Customer to determine the nature and cause of the problem and to suggest possible solutions.

2.4   <u>Aircraft Structural Repair Support</u>.  If Customer is designing structural repairs and desires Boeing's support, Boeing will analyze and comment on Customer's engineering releases relating to structural repairs not covered by Boeing's Structural Repair Manual.

2.5   <u>Aircraft Modification Support</u>.   If Customer is designing aircraft modifications and requests Boeing's support, Boeing will analyze and comment on Customer's engineering proposals for changes in, or replacement of, systems, parts, accessories or equipment manufactured to Boeing's detailed design.  Boeing will not analyze or comment on any major structural change unless Customer's request for such analysis and comment includes complete detailed drawings, substantiating information (including any information required by applicable government agencies), all stress or other appropriate analyses, and a specific statement from Customer of the substance of the review and the response requested.

2.6   <u>Facilities, Ground Equipment and Maintenance Planning Support</u>.  Boeing will, at Customer's request, evaluate Customer's technical facilities, tools and equipment for servicing and maintaining aircraft, to recommend changes where necessary and to assist in the formulation of an initial maintenance plan for the introduction of the aircraft into service.

2.7   <u>Post-Delivery Service Support</u>.  Boeing will, at Customer's request, perform work on an aircraft after delivery but prior to the initial departure flight or upon the return of the aircraft to Boeing's facility prior to completion of that flight.  In that event the following provisions will apply.

2.7.1   Boeing may rely upon the commitment authority of the Customer's personnel requesting the work.

2.7.2   As title and risk of loss has passed to Customer, the insurance provisions of Article 8.2 of the AGTA apply.

2.7.3   The provisions of the Boeing warranty in Part 2 of Exhibit C of this AGTA apply.

2.7.4   Customer will pay Boeing for requested work not covered by the Boeing warranty, if any.

AGTA-NSB

B
2-2
**BOEING PROPRIETARY**




FILED DATE: 1/11/2023 2:57 PM   2023L000001

2.7.5   The <u>DISCLAIMER AND RELEASE</u> and <u>EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES</u> provisions in Article 11 of Part 2 of Exhibit C of this AGTA apply.

2.8   <u>Additional Services</u>.   Boeing may, at Customer's request, provide additional services for an aircraft after delivery, which may include, but not be limited to, retrofit kit changes (kits and/or information), training, flight services, maintenance and repair of aircraft.  Such additional services will be subject to a mutually acceptable price, schedule, scope of work and other applicable terms and conditions.  The DISCLAIMER AND RELEASE and the EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES provisions in Article 11 of Part 2 of Exhibit C of this AGTA and the insurance provisions in Article 8.2 of this AGTA will apply to any such work.  Title to and risk of loss of any such aircraft will always remain with Customer.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## CUSTOMER SUPPORT DOCUMENT

## PART 3:       TECHNICAL INFORMATION AND MATERIALS

1.      General.

   **Materials** are defined as any and all items that are created by Boeing or a third party, which are provided directly or indirectly from Boeing and serve primarily to contain, convey or embody information.  Materials may include either tangible embodiments (for example, documents or drawings), or intangible embodiments (for example, software and other electronic forms) of information but excludes Aircraft Software.  **Aircraft Software** is defined as software that is installed on and used in the operation of the aircraft.

   Boeing will furnish to Customer certain Materials to support the maintenance and operation of the aircraft.  Such Materials will, if applicable, be prepared generally in accordance with Air Transport Association of America (ATA) iSpec 2200, entitled "Information Standards for Aviation Maintenance."  Materials not covered by iSpec 2200 will be provided in a structure suitable for the Material's intended use.  Materials will be in English and in the units of measure used by Boeing to manufacture an aircraft.

2.      Materials Planning Conferences.

   Customer and Boeing will conduct planning conferences approximately 12 months before the scheduled delivery month of the first aircraft of a model in order to mutually determine the proper format and quantity of Materials to be furnished to Customer in support of the aircraft.

   Customer may select one Boeing digital format as the delivery medium.  Should a Boeing digital format not be available, Customer may select a reasonable quantity of printed format.

3.      Information and Materials - Incremental Increase.

   Should the delivery medium be of printed format, until one year after the month of delivery of the last aircraft covered by a specific purchase agreement, Customer may annually request in writing a reasonable increase in the quantity of printed Materials. Boeing will provide the additional quantity of printed Materials at no additional charge beginning with the next normal revision cycle.  Customer may request a decrease in revision quantities at any time.

AGTA-NSB                                        B
                                                3-1



FILED DATE: 1/11/2023 2:57 PM   2023L000001

4.      Advance Representative Copies.

    All advance representative copies of Materials will be selected by Boeing from available sources.  Such advance copies will be for advance planning purposes only.

5.      Customized Materials.

    All customized Materials will reflect the configuration of each aircraft as delivered.

6.      Revisions.

    6.1      Revision Service.  The schedule for updating certain Materials will be identified in the planning conference.  Such updates will reflect changes to Materials developed by Boeing.

    6.2      Revisions Based on Boeing Service Bulletin Incorporation.  If Boeing receives written notice that Customer intends to incorporate, or has incorporated, any Boeing service bulletin in an aircraft, Boeing will issue revisions to Materials with revision service reflecting the effects of such incorporation into such aircraft.

7.      Supplier Technical Data.

    7.1      For supplier-manufactured programmed airborne avionics components and equipment classified as Seller Furnished Equipment (**SFE**) or Seller Purchased Equipment (**SPE**) or Buyer Designated Equipment (**BDE**) which contain computer software designed and developed in accordance with Radio Technical Commission for Aeronautics Document No. RTCA/DO-178 dated January 1982, No. RTCA/DO-178A dated March 1985, or later as available, Boeing will request that each supplier of the components and equipment make software documentation available to Customer.

    7.2      The provisions of this Article will not be applicable to items of BFE.

    7.3      Boeing will furnish to Customer a document identifying the terms and conditions of the product support agreements between Boeing and its suppliers requiring the suppliers to fulfill Customer's requirements for information and services in support of the specific model of aircraft.

8.      Buyer Furnished Equipment Data.

    Boeing will incorporate BFE information into the customized Materials providing Customer makes the information available to Boeing at least nine months prior to the scheduled delivery month of Customer's first aircraft of a specific model.  Customer

AGTA-NSB                              B
                                     3-2
                         **BOEING PROPRIETARY**




FILED DATE: 1/11/2023 2:57 PM   2023L000001

agrees to furnish the information in Boeing standard digital format if Materials are to be delivered in Boeing standard digital format.

9.    Materials Shipping Charges.

Boeing will pay the reasonable transportation costs of the Materials.  Customer is responsible for any customs clearance charges, duties, and taxes.

10.    Customer's Shipping Address.

The Materials furnished to Customer hereunder are to be sent to a single address to be specified.  Customer will promptly notify Boeing of any change to the address.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## CUSTOMER SUPPORT DOCUMENT

### PART 4:       ALLEVIATION OR CESSATION OF PERFORMANCE

Boeing will not be required to provide any services, training or other things at a facility designated by Customer if any of the following conditions exist:

     1.     a labor stoppage or dispute in progress involving Customer;

     2.     wars or warlike operations, riots or insurrections in the country where the facility is located;

     3.     any condition at the facility which, in the opinion of Boeing, is detrimental to the general health, welfare or safety of its personnel or their families;

     4.     the United States Government refuses permission to Boeing personnel or their families to enter into the country where the facility is located, or recommends that Boeing personnel or their families leave the country; or

After the location of Boeing personnel at the facility, Boeing further reserves the right, upon the occurrence of any of such events, to immediately and without prior notice to Customer relocate its personnel and their families.

Boeing will not be required to provide any Materials at a facility designated by Customer if the United States Government refuses permission to Boeing to deliver Materials to the country where the facility is located.

**BOEING PROPRIETARY**

**CUSTOMER SUPPORT DOCUMENT**

**PART 5:     PROTECTION OF PROPRIETARY INFORMATION
AND PROPRIETARY MATERIALS**

1.     <u>General</u>.

All Materials provided by Boeing to Customer and not covered by a Boeing CSGTA or other agreement between Boeing and Customer defining Customer's right to use and disclose the Materials and included information will be covered by, and subject to the terms of this AGTA.  Title to all Materials containing, conveying or embodying confidential, proprietary or trade secret information (Proprietary Information) belonging to Boeing or a third party (Proprietary Materials), will at all times remain with Boeing or such third party.  Customer will treat all Proprietary Materials and all Proprietary Information in confidence and use and disclose the same only as specifically authorized in this AGTA.

2.     <u>License Grant</u>.

Boeing grants to Customer a worldwide, non-exclusive, non-transferable license to use and disclose Proprietary Materials in accordance with the terms and conditions of this AGTA.  Customer is authorized to make copies of Materials (except for Materials bearing the copyright legend of a third party), and all copies of Proprietary Materials will belong to Boeing and be treated as Proprietary Materials under this AGTA.  Customer will preserve all proprietary legends, and all copyright notices on all Materials and insure the inclusion of those legends and notices on all copies.

3.     <u>Use of Proprietary Materials and Proprietary Information</u>.

Customer is authorized to use Proprietary Materials and Proprietary Information for the purpose of: (a) operation, maintenance, repair, or modification of Customer's aircraft for which the Proprietary Materials and Proprietary Information have been specified by Boeing and (b) development and manufacture of training devices and maintenance tools for use by Customer.

4.     <u>Providing of Proprietary Materials to Contractors</u>.

Customer is authorized to provide Proprietary Materials to Customer's contractors for the sole purpose of maintenance, repair, or modification of Customer's aircraft for which the Proprietary Materials have been specified by Boeing.  In addition, Customer may provide Proprietary Materials to Customer's contractors for the sole purpose of

AGTA-NSB                                    B
AGTA_Exhibit_B                              5-1
**BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

developing and manufacturing training devices and maintenance tools for Customer's use. Before providing Proprietary Materials to its contractor, Customer will first obtain a written agreement from the contractor by which the contractor agrees (a) to use the Proprietary Materials only on behalf of Customer, (b) to be bound by all of the restrictions and limitations of this Part 5, and (c) that Boeing is a third party beneficiary under the written agreement.   Customer agrees to provide copies of all such written agreements to Boeing upon request and be liable to Boeing for any breach of those agreements by a contractor.   A sample agreement acceptable to Boeing is attached as Appendix VII.

5.      Providing of Proprietary Materials and Proprietary Information to Regulatory Agencies.

        When and to the extent required by a government regulatory agency having jurisdiction over Customer or an aircraft, Customer is authorized to provide Proprietary Materials and to disclose Proprietary Information to the agency for use in connection with Customer's operation, maintenance, repair, or modification of such aircraft. Customer agrees to take all reasonable steps to prevent the agency from making any distribution, disclosure, or additional use of the Proprietary Materials and Proprietary Information provided or disclosed.   Customer further agrees to notify Boeing immediately upon learning of any (a) distribution, disclosure, or additional use by the agency, (b) request to the agency for distribution, disclosure, or additional use, or (c) intention on the part of the agency to distribute, disclose, or make additional use of Proprietary Materials or Proprietary Information.




FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT C

### to

## AIRCRAFT GENERAL TERMS AGREEMENT

## AGTA-NSB

### between

## THE BOEING COMPANY

### and

## PRODUCT ASSURANCE DOCUMENT

### This document contains:

| | | |
|---|---|---|
| Part 1: | Exhibit C Definitions | |
| Part 2: | Boeing Product Warranty | |
| Part 3 | Boeing Service Life Policy | |
| Part 4: | Supplier Warranty Commitment | |
| Part 5: | Boeing Interface Commitment | |
| Part 6: | Boeing Indemnities against Patent and Copyright Infringement | |



**BOEING PROPRIETARY**





**PRODUCT ASSURANCE DOCUMENT**

**PART 1:     EXHIBIT C DEFINITIONS**

**Authorized Agent** - Agent appointed by Customer to perform corrections and to administer warranties (see Appendix VI to the AGTA for a form acceptable to Boeing).

**Average Direct Hourly Labor Rate** - the average hourly rate (excluding all fringe benefits, premium-time allowances, social charges, business taxes and the like) paid by Customer to its Direct Labor employees.

**Boeing Product** - any system, accessory, equipment, part or Aircraft Software that is manufactured by Boeing or manufactured to Boeing's detailed design with Boeing's authorization.

**Boeing Warranty** - the organization within Boeing responsible for administration of warranties between Boeing and Customer.

**Correct(s)** - to repair, modify, provide modification kits or replace with a new product.

**Correction** - a repair, a modification, a modification kit or replacement with a new product.

**Corrected Boeing Product** - a Boeing Product which is free of defect as a result of a Correction.

**Direct Labor** - Labor spent by Customer's direct labor employees to access, remove, disassemble, modify, repair, inspect and bench test a defective Boeing Product, and to reassemble, reinstall a Corrected Boeing Product and perform final inspection and testing.

**Direct Materials** - Items such as parts, gaskets, grease, sealant and adhesives, installed or consumed in performing a Correction, excluding allowances for administration, overhead, taxes, customs duties and the like.

**Rogue Unit** - A Boeing Product, on which an unscheduled removal due to breach of warranty occurs three (3) or more times both (i) within the warranty period and (ii) within either twelve (12) consecutive months or one thousand (1,000) consecutive operating hours.

**Specification Control Drawing (SCD)** - a Boeing document defining specifications for certain Supplier Products.

**Supplier** - the manufacturer of a Supplier Product.

**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001




FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Supplier Product** - any system, accessory, equipment, part or Aircraft Software that is not manufactured to Boeing's detailed design. This includes but is not limited to parts manufactured to a SCDrawing, all standards, and other parts obtained from non-Boeing sources.

AGTA-NSB

C
1-2
**BOEING PROPRIETARY**

**PRODUCT ASSURANCE DOCUMENT**

**PART 2:**    **BOEING PRODUCT WARRANTY**

1.    <u>Applicability</u>.

     This warranty applies to all Boeing Products. Warranties applicable to Supplier Products are in Part 4.   Warranties applicable to engines will be provided by Supplemental Exhibits to individual purchase agreements.

2.    <u>Warranty</u>.

     2.1    <u>Coverage</u>. Boeing warrants that at the time of delivery:

         (i)    the aircraft will conform to the Detail Specification except for portions stated to be estimates, approximations or design objectives;

         (ii)    all Boeing Products will be free from defects in material, process of manufacture and workmanship, including the workmanship utilized to install Supplier Products, engines and BFE, and;

         (iii)    all Boeing Products will be free from defects in design, including selection of materials and the process of manufacture, in view of the state of the art at the time of design

     2.2    <u>Exceptions</u>. The following conditions do not constitute a defect under this warranty:

         (i)    conditions resulting from normal wear and tear;

         (ii)    conditions resulting from acts or omissions of Customer; and

         (iii)    conditions resulting from failure to properly service and maintain a Boeing Product.

3.    <u>Warranty Periods</u>.

     3.1    <u>Warranty</u>.   The warranty period begins on the date of aircraft or Boeing Product delivery (Delivery) and ends at the applicable time specified in subsections 3.1(i) through 3.1(iii) below:

         (i)    for Boeing aircraft models 777-200, -300, 737-600, -700, -800, -900, 787 or new aircraft models designed and manufactured with similar, new technology and for the

AGTA-NSB                                C
                                                2-1
                        **BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001



model 747-8, the warranty period ends 48 months after Delivery;

(ii)     in addition, for a Boeing Product installed at the time of delivery in a 787 model aircraft but not inspected during the initial 48 month warranty period, the warranty period continues until the date upon which Customer first inspects such Boeing Product pursuant to its Boeing Maintenance Planning Data Document but not later than 12 years after Delivery of such 787 aircraft;

(iii)    for any other Boeing aircraft model the warranty period ends 36 months after Delivery.

3.2     <u>Warranty on Corrected Boeing Products</u>.  The warranty period applicable to a Corrected Boeing Product shall begin on the date of delivery of the Corrected Boeing Product or date of delivery of the kit or kits furnished to Correct the Boeing Product and shall be for the period specified immediately below:

(i)  For Corrected Boeing Products which have been Corrected because of a defect in material, the applicable warranty period is the remainder of the initial warranty period for the defective Boeing Product.

(ii)  For Corrected Boeing Products which have been Corrected because of defect in workmanship, the applicable warranty period is the remainder of the initial warranty or 12 months following the date of delivery of the Corrected Boeing Product, whichever is longer.

(iii)  For Corrected Boeing Products which have been Corrected because of a defect in design, the applicable warranty period is 18 months or the remainder of the initial warranty period, whichever is longer.

3.3     <u>Survival of Warranties</u>. All warranty periods are stated above. The Performance Guarantees will not survive delivery of the aircraft.

4.     <u>Remedies</u>.

4.1     <u>Correction Options</u>. Customer may, at its option, either perform a Correction of a defective Boeing Product or return the Boeing Product to Boeing for Correction.  During the warranty period, Boeing will not charge Customer for tests on Boeing Products returned to Boeing for Correction on which Boeing is unable to confirm the failure claimed, provided:

(i)     Boeing's written instructions were followed by the Customer for testing the Boeing Product prior to its return to Boeing, and

AGTA-NSB                        C
                               2-2
                    **BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001



FILED DATE: 1/11/2023 2:57 PM   2023L000001

   (ii)  Customer's claim includes all applicable documentation of such tests with the returned Boeing Product, including but not limited to: Central Maintenance Computer (CMC), Flight Maintenance Computer System, (FMCS), Fault Isolation Manual (FIM), Engine Indicating and Crew Alerting System (EICAS) or Built In Test Equipment (BITE) messages.

  4.2  <u>Warranty Inspections</u>. In addition to the remedies to Correct defects in Boeing Products described in Article 7.3, below, Boeing will reimburse Customer for the cost of Direct Labor to perform certain inspections of the aircraft to determine the occurrence of a condition Boeing has identified as a covered defect, provided the inspections are recommended by a service bulletin or service letter issued by Boeing during the warranty period.

Such reimbursement will not apply to any inspections performed after a Correction is available to Customer and Customer has had a reasonable time to incorporate the Correction, given the Customer's fleet size and maintenance schedule.

  4.3  <u>Rogue Units.</u>

  4.3.1 Upon written request, Boeing will lend Customer at no charge an interchangeable Boeing Product in exchange for a Rogue Unit. Within ten (10) calendar days of its receipt of the loaned Boeing Product, Customer will ship the Rogue Unit to Boeing. Customer will provide with the Rogue Unit verification of the following requirements:

   (i)  The removed Boeing Product failed three (3) times within twelve (12) consecutive months or one thousand (1000) consecutive operating hours during the warranty period following initial delivery,

   (ii)  Removals were performed in compliance with flight or maintenance manuals approved by the FAA or the comparable regulatory agency for the country in which the aircraft is registered, and

   (iii)  Any Corrections or tests to the Boeing Product were performed by Customer according to the latest revision of the Boeing Component Maintenance Manual (CMM), according to written instructions from Boeing, or by Boeing.

  4.3.2 Upon receipt of a Rogue Unit and the required verifications, Boeing will, at no-charge to Customer, either replace the Rogue Unit with a new

AGTA-NSB     C
        2-3
      **BOEING PROPRIETARY**



Boeing Product or, if otherwise agreed, allow Customer to retain the loaned, Boeing Product.

5.    Discovery and Notice.

    5.1    For notice to be effective:

        (i)    the defect must be discovered during the warranty period; and

        (ii)    Boeing Warranty must receive written notice of the discovery no later than 180 days after expiration of the warranty period. The notice must include sufficient information to substantiate the claim.

    5.2    Receipt of Customer's or its Authorized Agent's notice of the discovery of a defect secures Customer's rights to remedies under this Exhibit C, even though a Correction is performed after the expiration of the warranty period.

    5.3    Once Customer has given valid notice of the discovery of a defect, a claim will be submitted as soon as practicable after performance of the Correction.

    5.4    Boeing may release service bulletins or service letters advising Customer of the availability of certain warranty remedies. When such advice is provided, Customer will be deemed to have fulfilled the requirements for discovery of the defect and submittal of notice under this Exhibit C as of the in-warranty date specified in industry support information in a service bulletin or service letter

6.    Filing a Claim.

    6.1    Authority to File. Claims may be filed by Customer or its Authorized Agent.  Appointment of an Authorized Agent will only be effective upon Boeing's receipt of the Authorized Agent's express written agreement, in a form satisfactory to Boeing, to be bound by and to comply with all applicable terms and conditions of this Aircraft General Terms Agreement.

    6.2    Claim Information.

        6.2.1    Claimant is responsible for providing sufficient information to substantiate Customer's rights to remedies under this Exhibit C.  Boeing may reject a claim for lack of sufficient information.  At a minimum, such information must include:

            (i)    identity of claimant;

AGTA-NSB                              C
                                     2-4
                         **BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001



FILED DATE: 1/11/2023 2:57 PM    2023L000001

(ii)        serial or block number of the aircraft on which the defective Boeing Product was delivered;

(iii)       part number and nomenclature of the defective Boeing Product;

(iv)       purchase order number and date of delivery of the defective spare part;

(v)        description and substantiation of the defect;

(vi)       date the defect was discovered;

(vii)      date the Correction was completed;

(viii)     the total flight hours or cycles accrued, if applicable;

(ix)       an itemized account of direct labor hours expended in performing the Correction; and

(x)        an itemized account of any direct materials incorporated in the Correction.

(xi)       for 787 model aircraft claims submitted after the 48 month warranty period, the specific reference within the Boeing Maintenance Planning Data Document to the inspection requirement for such Boeing Product.

6.2.2   Additional information may be required based on the nature of the defect and the remedies requested.

6.3    Boeing Claim Processing.

6.3.1   Any claim for a Boeing Product returned by Customer or its Authorized Agent to Boeing for Correction must accompany the Boeing Product. Any claim not associated with the return of a Boeing Product must be submitted signed and in writing directly by Customer or its Authorized Agent to Boeing Warranty by any of the methods identified in Article 11, "Notice," of the AGTA or through an internet portal and process specified by Boeing.

6.3.2   Boeing will promptly review the claim and will give notification of claim approval or rejection. If the claim is rejected, Boeing will provide a written explanation.

7.    Corrections Performed by Customer or Its Authorized Agent.

AGTA-NSB                                C
                                        2-5
                        **BOEING PROPRIETARY**




7.1     <u>Facilities Requirements</u>. Provided Customer, its Authorized Agent or its third party contractor, as appropriate, are certified by the appropriate Civil Aviation Authority or Federal Aviation Authority, Customer or its Authorized Agent may, at its option, Correct defective Boeing Products at its facilities or may subcontract Corrections to a third party contractor.

7.2     <u>Technical Requirements</u>. All Corrections done by Customer, its Authorized Agent or a third party contractor must be performed in accordance with Boeing's applicable service manuals, bulletins or other written instructions, using parts and materials furnished or approved by Boeing.

7.3     <u>Reimbursement</u>.

7.3.1    Boeing will reimburse Customer's reasonable costs of Direct Materials and Direct Labor by credit memorandum (excluding labor hours expended for overhaul) at Customer's Warranty Labor Rate to Correct a defective Boeing Product. Claims for reimbursement must contain sufficient information to substantiate Direct Labor hours expended and Direct Materials consumed. Customer or its Authorized Agent may be required to produce invoices for materials.

7.3.2    Customer's established Warranty Labor Rate will be the greater of the standard labor rate or 150% of Customer's Average Direct Hourly Labor Rate. The standard labor rate paid by Boeing to its customers is established and published annually. Prior to or concurrently with submittal of Customer's first claim for Direct Labor reimbursement, Customer may notify Boeing of Customer's then-current Average Direct Hourly Labor Rate and thereafter notify Boeing of any material change in such rate. Boeing will require information from Customer to substantiate such rates.

7.3.3    Reimbursement for Direct Labor hours to perform Corrections stated in a service bulletin will be based on the labor estimates in the service bulletin.

7.3.4    Boeing will provide to Customer a single, lump sum credit memorandum for Customer's Direct Labor hours expended to incorporate the Corrections (other than of random anomalies) identified in service bulletins and service letters in all in-warranty aircraft covered by such service bulletins or service letters after Customer's submission of a warranty claim and verification of the incorporation of such Corrections with respect to the first affected in-warranty aircraft. Such credit memoranda will not be provided in response to any other requests for reimbursement including, without limitation, those arising out of program letters or other special offers provided by Boeing.

AGTA-NSB

C
2-6
**BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM    2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

7.3.5   Boeing will reimburse Customer's freight charges associated with a Correction of a defect on a Boeing Product performed by its Authorized Agent or a third party contractor.

7.3.6   <u>Maximum Reimbursement.</u> Unless previously agreed in writing, the maximum reimbursement for Direct Labor and Direct materials for repair of a defective Boeing Product will not exceed 65% of Boeing's then-current sales price for a new replacement Boeing Product. Inspection, removal, reinstallation labor, final testing, inspection and transportation costs are separate and are not to be included in the cost elements used to determine the 65% limit.  By mutual agreement between Customer and Boeing, Boeing may provide a replacement Product to Customer in lieu of credit reimbursement.

7.4     <u>Disposition of Defective Boeing Products Beyond Economical Repair</u>.

7.4.1   A defective Boeing Product found to be beyond economical repair (see Para. 7.3.6) will be retained for a period of 30 days from the date Boeing receives Customer's claim.  During the 30 day period, Boeing may request return of such Boeing Products for inspection and confirmation of a defect.

7.4.2   After the 30 day period, a defective Boeing Product with a value of U.S. $4,000 or less may be scrapped without notification to Boeing.  Boeing will reimburse Customer or its Authorized Agent for the charge for any item determined to be defective under this Aircraft General Terms Agreement.  If such Boeing Product has a value greater than U.S, $4,000, Customer must obtain confirmation of unrepairability by Boeing's on-site field service representative prior to scrapping.  Confirmation may be in the form of the representative's signature on Customer's claim or through direct communication between the representative and Boeing Warranty.

8.      <u>Corrections Performed by Boeing</u>.

8.1     <u>Freight Charges</u>.  Customer or its Authorized Agent will pre-pay freight charges to return a Boeing Product to Boeing.  If during the period of the applicable warranty Boeing determines the Boeing Product to be defective, Boeing will pre-pay shipping charges to return the Corrected Boeing Product.  Boeing will reimburse Customer or its Authorized Agent for freight charges for Boeing Products returned to Boeing for Correction and determined to be defective.

8.2     <u>Customer Instructions</u>.  The documentation shipped with the returned defective Boeing Product may include specific technical instructions for additional work to be performed on the Boeing Product.  The absence of such instructions will evidence Customer's authorization for Boeing to perform all necessary Corrections and work required to return the Boeing Product to a serviceable condition.




FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.3   Correction Time Objectives.

8.3.1   Boeing's objective for making Corrections is 10 working days for avionics and electronic Boeing Products, 30 working days for Corrections of other Boeing Products performed at Boeing's facilities and 40 working days for Corrections of other Boeing Products performed at a Boeing subcontractor's facilities.   The objectives are measured from the date Boeing receives the defective Boeing Product and a valid claim to the date Boeing ships the Corrected Boeing Product.

8.3.2   If Customer has a critical parts shortage because Boeing has exceeded a Correction time objective and Customer has procured spare Boeing Products for the defective Boeing Product in quantities shown in Boeing's Recommended Spare Parts List or, for 717 model aircraft only, in quantities shown in Boeing's Spares Planning and Requirements Evaluation Model, then Boeing will either expedite the Correction or provide an interchangeable Boeing Product, on a no charge loan basis, until the Corrected Boeing Product is returned.

8.4   Title Transfer and Risk of Loss.

8.4.1   Title to and risk of loss of any Boeing Product returned to Boeing will at all times remain with Customer or any other title holder of such Boeing Product.   While Boeing has possession of the returned Boeing Product, Boeing will have only such liabilities as a bailee for mutual benefit would have but will not be liable for loss of use.

8.4.2   If a Correction requires shipment of a new Boeing Product, then at the time Boeing ships the new Boeing Product, title to and risk of loss for the returned Boeing Product will pass to Boeing, and title to and risk of loss for the new Boeing Product will pass to Customer.

9.   Returning an Aircraft.

9.1   Conditions. An aircraft may be returned to Boeing's facilities for Correction only if:

(i)     Boeing and Customer agree a covered defect exists;

(ii)    Customer lacks access to adequate facilities, equipment or qualified personnel to perform the Correction; and

(iii)   it is not practical, in Boeing's estimation, to dispatch Boeing personnel to perform the Correction at a remote site.

AGTA-NSB                          C
                                2-8
                       **BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

9.2    Correction Costs. Boeing will perform the Correction at no charge to Customer.  Subject to the conditions of Article 9.1, Boeing will reimburse Customer for the costs of fuel, oil, other required fluids and landing fees incurred in ferrying the aircraft to Boeing and back to Customer's facilities.  Customer will minimize the length of both flights.

9.3    Separate Agreement.  Prior to the return of an aircraft to Boeing, Boeing and Customer will enter into a separate agreement covering return of the aircraft and performance of the Correction.  Authorization by Customer for Boeing to perform additional work that is not part of the Correction must be received within 24 hours of Boeing's request. If such authorization is not received within 24 hours, Customer will be invoiced for work performed by Boeing that is not part of the Correction.

10.    Insurance.

The provisions of Article 8.2 "Insurance", of this AGTA, will apply to any work performed by Boeing in accordance with Customer's specific technical instructions to the extent any legal liability of Boeing is based upon the content of such instructions.

11.    Disclaimer and Release; Exclusion of Liabilities.

11.1    DISCLAIMER AND RELEASE. THE WARRANTIES, OBLIGATIONS AND LIABILITIES OF BOEING AND THE REMEDIES OF CUSTOMER IN THIS EXHIBIT C ARE EXCLUSIVE AND IN SUBSTITUTION FOR, AND CUSTOMER HEREBY WAIVES, RELEASES AND RENOUNCES, ALL OTHER WARRANTIES, OBLIGATIONS AND LIABILITIES OF BOEING AND ALL OTHER RIGHTS, CLAIMS AND REMEDIES OF CUSTOMER AGAINST BOEING, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, WITH RESPECT TO ANY NONCONFORMANCE OR DEFECT IN ANY AIRCRAFT, MATERIALS, TRAINING, SERVICES OR OTHER THING PROVIDED UNDER THIS AGTA AND THE APPLICABLE PURCHASE AGREEMENT, INCLUDING, BUT NOT LIMITED TO:

> (A)    ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS;
>
> (B)    ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE;
>
> (C)    ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM THE NEGLIGENCE OF BOEING; AND
>
> (D)    ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO ANY AIRCRAFT.

AGTA-NSB

C
2-9

**BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

11.2  <u>EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES</u>. BOEING WILL HAVE NO OBLIGATION OR LIABILITY, WHETHER ARISING IN CONTRACT (INCLUDING WARRANTY), TORT, WHETHER OR NOT ARISING FROM THE NEGLIGENCE OF BOEING, OR OTHERWISE, FOR LOSS OF USE, REVENUE OR PROFIT, OR FOR ANY OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES WITH RESPECT TO ANY NONCONFORMANCE OR DEFECT IN ANY AIRCRAFT, MATERIALS, TRAINING, SERVICES OR OTHER THING PROVIDED UNDER THIS AGTA AND THE APPLICABLE PURCHASE AGREEMENT.

11.3  <u>Definitions</u>. For the purpose of this Article, "BOEING" or "Boeing" is defined as The Boeing Company, its divisions, subsidiaries, affiliates, the assignees of each, and their respective directors, officers, employees and agents.



FILED DATE: 1/11/2023 2:57 PM   2023L000001

**PRODUCT ASSURANCE DOCUMENT**

**PART 3:      BOEING SERVICE LIFE POLICY**

1.    <u>Definitions</u>.

**Service Life Policy (SLP) Component -** any of the primary structural elements (excluding industry standard parts), such as landing gear, wing, fuselage, vertical or horizontal stabilizer, listed in the applicable purchase agreement for a specific model of aircraft, either installed in the aircraft at time of delivery or purchased from Boeing by Customer as a spare part. The detailed SLP Component listing will be in Supplemental Exhibit SLP1 to each Purchase Agreement.

2.    <u>Service Life Policy</u>.

2.1    <u>SLP Commitment</u>. If a failure is discovered in a SLP Component within the time periods specified in Article 2.2 below, Boeing will provide Customer a replacement SLP Component at the price calculated pursuant to Article 3.1, below. If requested by Customer as an alternative remedy, Boeing will reimburse Customer in accordance with the provisions of Exhibit C, Part 2, Article 7.3, for Direct Labor and Direct Material for repair of a failed SLP Component an amount not to exceed the difference between Boeing's then current spare parts price for such SLP Component and the price determined pursuant to Article 3, below.

2.2    <u>SLP Policy Periods</u>.

2.2.1    The policy period for SLP Components initially installed on an aircraft is 12 years after the date of delivery of the aircraft except that for SLP Components initially installed on a 787 aircraft the policy period is 15 years after the date of delivery of the aircraft.

2.2.2    The policy period for SLP Components purchased from Boeing by Customer as spare parts is 12 years from delivery of such SLP Component or 12 years from the date of delivery of the last aircraft produced by Boeing of a specific model, whichever first expires, except that for the 787 aircraft such policy period is 15 years from delivery of such SLP Component or 15 years from the date of delivery of the last 787 aircraft produced by Boeing, whichever first expires.

AGTA-NSB                                          C
                                                3-1
                                      **BOEING PROPRIETARY**



FILED DATE: 1/11/2023 2:57 PM   2023L000001

3.   Price.

The price Customer will pay for replacement of a failed SLP Component will be calculated pursuant to the following formulas:

(i)  For 787 aircraft only:

$$P = \frac{C(T-48)}{132}$$

where:

   P =   price to Customer for the replacement part
   C =   SLP Component sales price at time of replacement
   T =   total age in months of the failed SLP Component from the date of delivery to Customer to the date of discovery of such condition and is greater than 48 months.

(ii)  For all other aircraft models:

$$P = \frac{CT}{144}$$

where:

   P =   price to Customer for the replacement part
   C =   SLP Component sales price at time of replacement
   T =   total age in months of the failed SLP Component from the date of delivery to Customer to the date of discovery of such condition.

4.   Conditions.

Boeing's obligations under this Part 3 of Exhibit C, "Boeing Service Life Policy," (Policy) are conditioned upon the following:

4.1   Customer must notify Boeing in writing of the failure within three months after it is discovered.

4.2   Customer must provide reasonable evidence that the claimed failure is covered by this Policy and if requested by Boeing, that such failure was not the result of:

   (i)    a defect or failure in a component not covered by this Policy,
   (ii)   an extrinsic force,
   (iii)  an act or omission of Customer, or
   (iv)   operation or maintenance contrary to applicable governmental regulations or Boeing's instructions.

AGTA-NSB                           C
                                  3-2
                        **BOEING PROPRIETARY**





FILED DATE: 1/11/2023 2:57 PM   2023L000001

4.3    If return of a failed SLP Component is practicable and requested by Boeing, Customer will return such SLP Component to Boeing at Boeing's expense.

4.4    Customer's rights and remedies under this Policy are limited to the receipt of a Correction pursuant to Article 2 above.

5.    Disclaimer and Release; Exclusion of Liabilities.

This Part 3 and the rights and remedies of Customer and the obligations of Boeing are subject to the DISCLAIMER AND RELEASE and EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES provisions of Article 11 of Part 2 of this Exhibit C.

AGTA-NSB                          C
                                 3-3
                        **BOEING PROPRIETARY**

**PRODUCT ASSURANCE DOCUMENT**

**PART 4:      SUPPLIER WARRANTY COMMITMENT**

1.    Supplier Warranties and Supplier Patent and Copyright Indemnities.

Boeing will use diligent efforts to obtain warranties and indemnities against patent and copyright infringement enforceable by Customer from Suppliers of Supplier Products (except for BFE and engines) installed on the aircraft at the time of delivery that were selected and purchased by Boeing, but not manufactured to Boeing's detailed design.  Boeing will furnish copies of the warranties and patent and copyright indemnities to Customer contained in Supplier Product Support and Assurance Agreements, prior to the scheduled delivery month of the first aircraft under the initial purchase agreement to the AGTA.

2.    Boeing Assistance in Administration of Supplier Warranties.

Customer will be responsible for submitting warranty claims directly to Suppliers; however, if Customer experiences problems enforcing any Supplier warranty obtained by Boeing for Customer, Boeing will conduct an investigation of the problem and assist Customer in the resolution of those claims.

3.    Boeing Support in Event of Supplier Default.

3.1    If the Supplier defaults in the performance of a material obligation under its warranty, and Customer provides evidence to Boeing that a default has occurred, then Boeing will furnish the equivalent warranty terms as provided by the defaulting Supplier.

3.2    At Boeing's request, Customer will assign to Boeing, and Boeing will be subrogated to, its rights against the Supplier provided by the Supplier warranty.



AGTA-NSB                              C
                                    4-1
                          **BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM    2023L000001

## PRODUCT ASSURANCE DOCUMENT

### PART 5:      BOEING INTERFACE COMMITMENT

1.      <u>Interface Problems</u>.

An Interface Problem is defined as a technical problem in the operation of an aircraft or its systems experienced by Customer, the cause of which is not readily identifiable by Customer but which Customer believes to be attributable to either the design characteristics of the aircraft or its systems or the workmanship used in the installation of Supplier Products. In the event Customer experiences an Interface Problem, Boeing will, without additional charge to Customer, promptly conduct an investigation and analysis to determine the cause or causes of the Interface Problem. Boeing will promptly advise Customer at the conclusion of its investigation of Boeing's opinion as to the causes of the Interface Problem and Boeing's recommendation as to corrective action.

2.      <u>Boeing Responsibility</u>.

If Boeing determines that the Interface Problem is primarily attributable to the design or installation of any Boeing Product, Boeing will Correct the design or workmanship to the extent of any then-existing obligations of Boeing under the provisions of the applicable Boeing Product warranty.

3.      <u>Supplier Responsibility</u>.

If Boeing determines that the Interface Problem is primarily attributable to the design or installation of a Supplier Product, Boeing will assist Customer in processing a warranty claim against the Supplier.

4.      <u>Joint Responsibility</u>.

If Boeing determines that the Interface Problem is partially attributable to the design or installation of a Boeing Product and partially to the design or installation of a Supplier Product, Boeing will seek a solution to the Interface Problem through the cooperative efforts of Boeing and the Supplier and will promptly advise Customer of the resulting corrective actions and recommendations.

5.      <u>General</u>.

Customer will, if requested by Boeing, assign to Boeing any of its rights against any supplier as Boeing may require to fulfill its obligations hereunder.

AGTA-NSB                        C
**BOEING PROPRIETARY**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

6.     <u>Disclaimer and Release; Exclusion of Liabilities</u>.

This Part 5 and the rights and remedies of Customer and the obligations of Boeing herein are subject to the DISCLAIMER AND RELEASE and EXCLUSION OF CONSEQUENTIAL AND OTHER DAMAGES provisions of Article 11 of Part 2 of this Exhibit C.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## PRODUCT ASSURANCE DOCUMENT

## PART 6: BOEING INDEMNITIES AGAINST PATENT AND COPYRIGHT INFRINGEMENT

1.      Indemnity Against Patent Infringement.

Boeing will defend and indemnify Customer with respect to all claims, suits and liabilities arising out of any actual or alleged patent infringement through Customer's use, lease or resale of any aircraft or any Boeing Product installed on an aircraft at delivery.

2.      Indemnity Against Copyright Infringement.

Boeing will defend and indemnify Customer with respect to all claims, suits and liabilities arising out of any actual or alleged copyright infringement through Customer's use, lease or resale of any Boeing created Materials and Aircraft Software installed on an aircraft at delivery.

3.      Exceptions, Limitations and Conditions.

3.1     Boeing's obligation to indemnify Customer for patent infringement will extend only to infringements in countries which, at the time of the infringement, were party to and fully bound by either (a) Article 27 of the Chicago Convention on International Civil Aviation of December 7, 1944, or (b) the International Convention for the Protection of Industrial Property (Paris Convention).

3.2     Boeing's obligation to indemnify Customer for copyright infringement is limited to infringements in countries which, at the time of the infringement, are members of The Berne Union and recognize computer software as a "work" under The Berne Convention.

3.3     The indemnities provided under this Part 6 will not apply to any BFE engines, Supplier Product, Boeing Product used other than for its intended purpose, or Aircraft Software not created by Boeing.

3.4     Customer must deliver written notice to Boeing (i) within 10 days after Customer first receives notice of any suit or other formal action against Customer and (ii) within 20 days after Customer first receives any other allegation or written claim of infringement covered by this Part 6.



FILED DATE: 1/11/2023 2:57 PM    2023L000001

3.5     At any time, Boeing will have the right at its option and expense to: (i) negotiate with any party claiming infringement, (ii) assume or control the defense of any infringement allegation, claim, suit or formal action, (iii) intervene in any infringement suit or formal action, and/or (iv) attempt to resolve any claim of infringement by replacing an allegedly infringing Boeing Product or Aircraft Software with a noninfringing equivalent.

3.6     Customer will promptly furnish to Boeing all information, records and assistance within Customer's possession or control which Boeing considers relevant or material to any alleged infringement covered by this Part 6.

3.7     Except as required by a final judgment entered against Customer by a court of competent jurisdiction from which no appeals can be or have been filed, Customer will obtain Boeing's written approval prior to paying, committing to pay, assuming any obligation or making any material concession relative to any infringement covered by these indemnities.

3.8     BOEING WILL HAVE NO OBLIGATION OR LIABILITY UNDER THIS PART 6 FOR LOSS OF USE, REVENUE OR PROFIT, OR FOR ANY OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES. THE OBLIGATIONS OF BOEING AND REMEDIES OF CUSTOMER IN THIS PART 6 ARE EXCLUSIVE AND IN SUBSTITUTION FOR, AND CUSTOMER HEREBY WAIVES, RELEASES AND RENOUNCES ALL OTHER INDEMNITIES, OBLIGATIONS AND LIABILITIES OF BOEING AND ALL OTHER RIGHTS, CLAIMS AND REMEDIES OF CUSTOMER AGAINST BOEING, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, WITH RESPECT TO ANY ACTUAL OR ALLEGED PATENT, COPYRIGHT OR OTHER INTELLECTUAL PROPERTY INFRINGEMENT OR THE LIKE BY ANY AIRCRAFT, AIRCRAFT SOFTWARE, MATERIALS, TRAINING, SERVICES OR OTHER THING PROVIDED UNDER THIS AGTA AND THE APPLICABLE PURCHASE AGREEMENT.

3.9     For the purposes of this Part 6, "BOEING or Boeing" is defined as The Boeing Company, its divisions, subsidiaries, affiliates, the assignees of each and their respective directors, officers, employees and agents.



FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE AGREEMENT ASSIGNMENT

**Assignors**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **ARCTIC AVIATION ASSETS DAC** acting by | ) |
| its lawfully appointed attorney | ) |

Lawfully appointed attorney

in the presence of:

Witness's Signature: Aoife Rock

Name: AOIFE ROCK

Address: IMBUS HOUSE DUBLIN AIRPORT

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR SHUTTLE ASA** acting by | ) |
| its lawfully appointed attorney | ) |

Lawfully appointed attorney

in the presence of:

Witness's Signature: ..............................................

Name: ..............................................

Address: ..............................................

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**

**PURCHASE AGREEMENT ASSIGNMENT**

**Assignors**

**SIGNED AND DELIVERED** as a **DEED** by              )

**ARCTIC AVIATION ASSETS DAC**                          )
acting by
its lawfully appointed attorney                         )

.......................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:   ...........................................

Name:                  ...........................................

Address:               ...........................................

**SIGNED AND DELIVERED** as a **DEED** by              )

**NORWEGIAN AIR SHUTTLE ASA**                           )
acting by
its lawfully appointed attorney                         )

ANDERS FREDRIKSEN

ATTORNEY-IN-FACT
.......................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:   ...........................................

Name:                  PER-HELGE ELLINGSEN

Address:               OKSENØYVEIEN 3
                       1330 FORNEBU

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by　　　　　　　　　　)
**AAA MAX 4 LIMITED**　　　　　　　　　　　　)
acting by　　　　　　　　　　　　　　　　　　　)
Elaine Anderson - Director　　　　　　　　　　)
acting under the authority of that
Company, in the presence of:　　　　　　　　)

Witness's Signature:

Name:　　　　　　　　Stephanie Jackson

Address:　　　　　　　Cayman Corporate Cente, 27 Hospital Road
　　　　　　　　　　　George Town, Grand Cayman KY1-9008 Cayman Islands

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

### PURCHASE AGREEMENT ASSIGNMENT

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by        )

**TROLLFJORDEN LIMITED**        )
acting by
its lawfully appointed attorney        )

_____
Lawfully appointed attorney

in the presence of:

Witness's Signature:  Aoife Rock

Name:  AOIFE ROCK

Address:  IMBUS HOUSE, DUBLIN AIRPORT

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Sub-Lessees**

**SIGNED AND DELIVERED** as a **DEED** by )

**NORWEGIAN AIR NORWAY AS** )
acting by
its lawfully appointed attorney )

ASGEIR NYSETH

Chairman

.......................................
Lawfully appointed attorney

in the presence of:

Witness's Signature: .......................................

Name: ANDERS FREDRIKSEN

Address: OKSENØYVEIEN 3, 1330 FORNEBU, NORWAY

**SIGNED AND DELIVERED** as a **DEED** by )

**NORWEGIAN AIR SWEDEN AB** )
acting by
its lawfully appointed attorney )

ASGEIR NYSETH

chairman

.......................................
Lawfully appointed attorney

in the presence of:

Witness's Signature: .......................................

Name: PERCHRISTOFFER KISE

Address: NORDRAAKS GATE 25, 0260 OSLO, NORWAY

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM  2023L000001

## SIGNATURES (3)

## PURCHASE AGREEMENT ASSIGNMENT

**Security Trustee**

**EXECUTED** as a **DEED**

**Vice President**

By the lawfully appointed Attorney of
**BANK OF UTAH**
(as Security Trustee)

acting by       **Jon Croasmun**
                **Vice President**

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature:
Name:                   Marie Stapley
Address:                Legal Assistant

200 E. South Temple, Ste 210
Salt Lake City, Utah 84111

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT D-4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**PURCHASE ASSIGNMENT SUPPLEMENT NO. 2**

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated _____ 2018 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a designated activity company duly incorporated under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 4 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **TROLLFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**), **NORWEGIAN AIR NORWAY AS**, a private company limited by shares duly incorporated under the laws of Norway (the **Sub-Lessee**) and **BANK OF UTAH**, as security trustee (the **Security Trustee**) and supplements that Purchase Agreement Assignment dated 20 November, 2018 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

**W I T N E S S E T H:**

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and the relevant Sub-Lessee desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and the relevant Sub-Lessee hereby agrees as follows:

1. The Sub-Lessee of the Aircraft is:                     Norwegian Air Norway AS

2. Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

    Manufacturer's serial number:                 63971

    Registration Mark:                          LN-BKF

    Engine Manufacturer's serial numbers:       602650 & 602652

3. Latest Delivery Date with respect to such Aircraft:      13 December 2018

4. Maximum liability of the Lessor with respect to the    U.S.$ 49,260,781.00
   Purchase Price of such Aircraft:

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. 2 to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Arctic**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | ) |
| by **ARCTIC AVIATION ASSETS DAC** | |
| acting by its lawfully | ) |
| appointed attorney | ) |

_Derek Bean_

Lawfully appointed attorney

in the presence of:                                 )

Witness's Signature:    AoifeRock

Name:                   AOIFE ROCK

Address:                IMBUS HOUSE

                        DUBLIN AIRPORT

**Norwegian**                                       )

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | |
| by **NORWEGIAN AIR SHUTTLE ASA** | |
| acting by its lawfully | ) |
| appointed attorney | ) |

.......................................

Lawfully appointed attorney

in the presence of:                                 )

Witness's Signature:    _____

Name:                   _____

Address:                _____

                        _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Arctic**

**SIGNED AND DELIVERED** as a **DEED**                    )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully                                    )
appointed attorney                                       )

.........................................
Lawfully appointed attorney

in the presence of:                                      )

Witness's Signature: _____

Name: _____

Address: _____

          _____

**Norwegian**                                            )

**SIGNED AND DELIVERED** as a **DEED**
by **NORWEGIAN AIR SHUTTLE ASA**
acting by its lawfully                                   )
appointed attorney                                       )

.........................................
Lawfully appointed attorney
ANDERS FREDRIKSEN

ATTORNEY-IN-FACT

in the presence of: _____ )

Witness's Signature: _____

Name: PER-HELGE ELLINGSEN
      OKSENØYVEIEN 3

Address: _____
         1330 FORNEBU

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**EXECUTED** as a **DEED** by )
**AAA MAX 4 LIMITED** )
acting by )
Elaine Anderson - Director )
acting under the authority of that
Company, in the presence of: )

Witness's Signature:

Name:          Stephanie Jackson

Address:       Cayman Corporate Centre, 27 Hospital Road, George Town

Grand Cayman KY1-9008, Cayman Islands

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed Attorney of
**BANK OF UTAH**
(as Security Trustee)

acting by

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature:
Name:
Address:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**EXECUTED** as a **DEED** by )
**AAA MAX 4 LIMITED** )
acting by )
  )
_____ )
acting under the authority of that
Company, in the presence of: )

Witness's Signature: _____

Name: _____

Address: _____

  _____

**Security Trustee**

**EXECUTED** as a **DEED**

By the lawfully appointed ~~Attorney~~ of
**BANK OF UTAH**
(as Security Trustee)

acting by     Michael Arsenault
             **Vice President**

acting under the authority of
that entity in such capacity in the presence of:

Witness's signature:
Name:      Marie Stapley
Address:     ~~Legal Assistant~~

      200 E. South Temple, Ste 210
      Salt Lake City, Utah 84111

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

### PURCHASE ASSIGNMENT SUPPLEMENT

**Lessee**

**SIGNED AND DELIVERED as a DEED by**           )
**TROLLFJORDEN LIMITED**                        )
acting by                                       )
its lawfully appointed attorney                 )

_____
Lawfully appointed attorney

in the presence of:

Witness's Signature:    Aoife Rock

Name:                   AOIFE ROCK

Address:                IMBUS HOUSE

                        DUBLIN AIRPORT

**Sub-Lessee**

**EXECUTED as a DEED by**                       )
**NORWEGIAN AIR NORWAY AS**                     )
acting by its lawfully appointed attorney       )

_____
Lawfully appointed attorney

in the presence of:

Witness's Signature:    _____

Name:                   _____

Address:                _____

                        _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (2)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **TROLLFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

.......................................

Lawfully appointed attorney

in the presence of:

Witness's Signature: _____

Name: _____

Address: _____

_____

**Sub-Lessee**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **NORWEGIAN AIR NORWAY AS** | ) |
| acting by its lawfully appointed attorney | ) |

.......................................

Lawfully appointed attorney
**PER-HELGE ELLINGSEN**

**ATTORNEY-IN-FACT**

in the presence of:

Witness's Signature: _____

Name: ANDERS FREDRIKSEN

Address: OKSENBYVEIEN 3

1330 FORNEBU

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (3)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By: _T Greene_
Name: Tiffany Greene
Title: Attorney-in-Fact
Date

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT D-5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THE BOEING COMPANY**

**CONSENT AND AGREEMENT**

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated _____ 2018 between **AAA MAX 4 LIMITED** (the **Lessor**), **TROLLFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR SHUTTLE ASA** (**Norwegian**) and **ARCTIC AVIATION ASSETS DAC** (**Arctic**) (each of Arctic and Norwegian being an **Assignor**), **NORWEGIAN AIR NORWAY AS** (**Norway AS**) and **NORWEGIAN AIR SWEDEN AB** (**Sweden AB**) (each of Norway AS and Sweden AB being a **Sub-Lessee**) and **BANK OF UTAH**, as security trustee (the **Security Trustee**) relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number 63971 (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.   all representations, warranties, indemnities and agreements of the Manufacturer, including the Warranties, under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.   no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.   the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.   if the Lessor desires to lease or sell the Aircraft to an entity who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for an entity in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

5.   the Manufacturer will continue to recognize the relevant Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement, including the Warranties, and agrees to pay to the relevant Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the relevant Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Loan Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.   the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.   the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.   The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)   the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)   the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)     Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.     The Manufacturer hereby confirms to the Security Trustee that:

(a)     upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)     except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.     The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.     The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.     It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 2018

**THE BOEING COMPANY**

By: _T.A. Greene_

Name: _Tiffany Greene_

Title: _Attorney-in-fact_

MSN 63971

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, S

FILED
1/11/2023 2:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000001
Calendar, S
21000066

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# GROUP EXHIBIT E

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT E-1

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# MASTER LEASE AGREEMENT

22 June      **2017**

**Between**

**AAA MAX 1 LIMITED**
**as Lessor**

**and**

**HARDANGERFJORDEN LIMITED**
**as Lessee**

**Up to six (6) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

Allen & Overy LLP

0117131-0000002 BK:39702344.14

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# CONTENTS

**Clause**                                                                                                          **Page**

1.  Definitions and interpretation ...................................................................................................1
2.  Agreement to Lease; Term.......................................................................................................1
3.  Rent ..........................................................................................................................................2
4.  Lessor's Disclaimer of Warranties; Manufacturers' Warranties .............................................4
5.  Purchase Options; Return of Aircraft.......................................................................................6
6.  Liens .........................................................................................................................................9
7.  Registration, Maintenance, Operation and Possession ...........................................................9
8.  Replacement; Temporary Installation; Pooling; Alterations, Modifications and Additions; Etc .......24
9.  Loss, Destruction, Requisition, Etc .......................................................................................28
10. Insurance ................................................................................................................................31
11. Absolute Obligations..............................................................................................................39
12. Assignment.............................................................................................................................41
13. Lease Events of Default and Termination Events ..................................................................41
14. Remedies.................................................................................................................................45
15. Further Assurances; Investment of Security Funds ...............................................................47
16. Notices ....................................................................................................................................48
17. Miscellaneous; Governing Law .............................................................................................48
18. Security for the Lessor's Obligation.......................................................................................49
19. Lessor's Right to Perform for Lessee .....................................................................................50
20. English Language Prevails......................................................................................................50
21. Complete Agreement ..............................................................................................................50

**Schedule**

1.  Form of Acceptance Certificate ............................................................................................51
2.  Form of Lease Supplement ....................................................................................................52
    Form of Eurocontrol Letter ....................................................................................................56

Signatories.........................................................................................................................................57

0117131-0000002 BK:39702344.14

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS MASTER LEASE AGREEMENT** dated _____22 June_____ 2017 (this **Lease**)

**AMONG**

(1)  **AAA MAX 1 LIMITED**, an exempted company  with limited liability incorporated and existing under the laws of the Cayman Islands, as lessor (the **Lessor**); and

(2)  **HARDANGERFJORDEN LIMITED**, a limited liability company duly incorporated under the laws of Ireland (the **Lessee**).

 **WITNESSETH:**

(1)  **WHEREAS,** pursuant to that certain Participation Agreement, dated as of the date of execution and delivery thereof (as amended, supplemented and modified from time to time, the **Participation Agreement**), among, *inter alios*, the Lessor, Walkers Fiduciary Limited, as lessor parent, the Lessee, Greensill Capital (UK) Limited, as Funder, Citibank Europe plc, UK Branch, as Agent, Citibank N.A., London Branch, as security trustee, the Lessor and the Lessee have agreed to enter into this Lease.

(2)  **WHEREAS,** pursuant to each Purchase Assignment in respect of an Aircraft, the Lessor will acquire certain rights under the Purchase Agreement in respect of such Aircraft.

(3)  **WHEREAS,** pursuant to the terms and conditions of this Lease, the Lessor has agreed to lease each Aircraft to the Lessee and the Lessee has agreed to lease each Aircraft from the Lessor.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.  **DEFINITIONS AND INTERPRETATION**

1.1  **Definitions**

Unless the context otherwise requires, capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Lease.

1.2  **Interpretation**

 This Lease shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

2.  **AGREEMENT TO LEASE; TERM**

2.1  **Delivery**

The Lessor hereby agrees on each Delivery Date for an Aircraft, subject to (a) the purchase of such Aircraft by the Lessor to be delivered pursuant to the Participation Agreement, the Purchase Agreement and the Purchase Assignment and (b) the satisfaction or waiver of the conditions precedent with respect to such Aircraft set forth or referred to in clause 4 of the Participation Agreement, to accept delivery of, and subject to clause 2 of the Participation Agreement to lease to the Lessee hereunder, and the Lessee hereby agrees, subject to the foregoing and the satisfaction of the conditions precedent (with respect to such Aircraft) set forth in clause 5 of the Participation

Agreement, to accept delivery of, to sign the Acceptance Certificate and to lease from the Lessor hereunder, such Aircraft, whereupon the Term for such Aircraft shall commence.

## 2.2 Acceptance

The Lessee hereby agrees that the execution of the Acceptance Certificate for an Aircraft in the form of Schedule 1 hereto shall be deemed to constitute unconditional, absolute and irrevocable acceptance of such Aircraft by the Lessee under this Lease.

## 2.3 Term

Subject to acceptance of an Aircraft as provided in Clauses 2.1 and 2.2, the Lessee hereby leases from the Lessor such Aircraft for the Term applicable thereto.

## 2.4 Cape Town Convention

(a)     The parties hereto agree that, for all purposes of the Cape Town Convention, upon execution of a Lease Supplement (a) this Lease, together with such Lease Supplement, will constitute a separate International Interest with respect to the Airframe and each Engine identified in such Lease Supplement, (b) such Airframe and Engines each constitute an Aircraft Object and (c) this Lease, together with such Lease Supplement, will constitute an agreement for the registration of such Airframe.

(b)     If there is any change to the manner in which the Cape Town Convention is implemented in the Government of Registry, the Lessee shall take such action as the Lessor may require in relation to such change, including:

(i)     amending or re-executing any Operative Document;

(ii)    registering, perfecting and/or preserving any International Interest(s) vested in the Lessor and the Secured Parties with respect to the Airframe and/or any Engine; and

(iii)   entry into agreements (subordination or otherwise) to protect the priority of any International Interest(s) or other registrable interests referred to in the foregoing paragraphs (i) and/or (ii).

(c)     The Lessee agrees to indemnify on demand and shall pay or reimburse the Agent, the Funder, the Insurer Representative, each Insurer Group Member, the Lessor, the Lessor Parent and the Security Trustee for any reasonable costs and expenses (including reasonable fees and disbursements of legal counsel and other experts employed or retained by such Person) incurred by such Person in connection with any action taken pursuant to paragraph (b) above.

## 3. RENT

## 3.1 Initial Rent

On or prior to each Delivery Date, the Lessee agrees to pay the Lessor the Initial Rent in Dollars for the Aircraft to be delivered on such Delivery Date.

## 3.2 Basic Rent

In addition, the Lessee agrees to pay the Lessor rent (the **Basic Rent**) for each Aircraft in Dollars with respect to each Rent Period in arrear on each Basic Rent Payment Date occurring during the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Term for such Aircraft, in each case, in an amount calculated in accordance with paragraph (a) through (b) below.

(a)     For all purposes of this Lease, the Basic Rent payable in respect of each Aircraft on each Basic Rent Payment Date for such Aircraft occurring during the Term for such Aircraft shall be equal to the "Basic Rent" set forth in Schedule I to the Lease Supplement for such Aircraft and Basic Rent Payment Date.

(b)     Each instalment of Basic Rent for an Aircraft payable on any Basic Rent Payment Date for such Aircraft shall in all events be in an amount that is equal to the amount payable by the Lessor to the Agent under the Payment Undertaking Agreement in respect of the scheduled Payment Amounts for such Aircraft due on the corresponding Payment Date.

**3.3     Supplemental Rent**

The Lessee shall pay all Supplemental Rent to the Lessor or to such other Person to whom such amount may be owed under the Operative Documents in the currency (whether Dollars or another currency) in which the same is due and owing, and such Supplemental Rent shall be payable within thirty (30) days of demand upon the Lessee (or within such longer period as the Lessor, acting reasonably and having regard to all relevant circumstances (including, without limitation, the timing of any approvals or licenses required from any Government Body of the Government of Registry and/or the jurisdiction of incorporation or formation of the Lessee in order for such payment to be lawfully made) may agree), provided that if any such demand has been made and subsequent to the making of such demand a Material Default, Termination Event or an Event of Default shall occur, any such Supplemental Rent shall be payable forthwith upon the occurrence of such Material Default, Termination Event or Event of Default.  In the event of any failure on the part of the Lessee to pay any Supplemental Rent, the Lessor shall have the same rights, powers and remedies provided for herein or by law or equity or otherwise as in the case of non-payment of Basic Rent.  The Lessee will also pay interest on demand to the recipient entitled thereto, as Supplemental Rent, to the extent permitted by Applicable Laws, at a rate per annum equal to the applicable Post-Default Rate on any part of any instalment of Basic Rent not paid when due for the period from and including the due date thereof to but excluding the date on which the same is paid in full and, in the case of payment to any of the Lessor, the Funder, the Agent, the Insurer Representative, the Security Trustee or any other Person, on any payment of Supplemental Rent payable but not paid when due or demanded by the recipient entitled thereto for the period from and including the due date thereof to but excluding the date on which the same is paid in full.

**3.4     Manner of Payment**

(a)     All Rent and other sums payable hereunder shall be paid by 3:00 p.m. (London time) on the date payment is due, in Dollars (or, in the case of any Supplemental Rent denominated in a currency other than Dollars, in the relevant currency) and in immediately available funds (or such other funds as are from time to time customary for the settlement of international banking transactions in Dollars or other relevant currency in New York City or other relevant jurisdiction of such other currency).  Whenever any payment of Basic Rent shall become due on a day which is not a Business Day, the due date thereof shall be the immediately preceding Business Day, provided always that the amount of Basic Rent shall not be adjusted by reason of such payment being made on such immediately preceding Business Day.

(b)     Whenever any payment (other than a payment of Basic Rent) shall become due on a date which is not a Business Day, or if any such payment is payable on demand and demand is not made on a Business Day or is made on a Business Day but is made outside normal banking hours of the recipient of such demand, demand for such payment shall be deemed to

FILED DATE: 1/11/2023 2:57 PM   2023L000001

have been made on the immediately succeeding Business Day, and if such payment includes any payment of interest (or an amount calculated or determined by reference to interest), the amount payable shall be adjusted accordingly.  All payments of Rent to the Lessor and all other amounts payable hereunder by the Lessee to the Lessor shall be paid to such account as the Lessor may specify from time to time in writing not less than thirty (30) Business Days prior to the date on which the relevant amount is payable.

**3.5     Absolute Obligation**

The obligation of the Lessee to pay Rent hereunder shall be absolute and unconditional as more fully set forth in Clause 11.  To the extent Taxes arise from the leasing of any Aircraft to the Lessee under this Lease which are payable by way of withholding by the Lessee, such Taxes shall be deducted and paid by the Lessee by way of withholding, and the Lessor agrees that the full amount of Rent due under this Lease in respect of an Aircraft shall be the amount of Basic Rent payable in respect of such Aircraft under Clause 3.2 increased by any such Taxes withheld by the Lessee.

**3.6     Associated Rights**

The Lessee hereby agrees to pay and perform all of its obligations under the Operative Documents to which it is a party and further acknowledges and agrees that the payment of Rent hereunder and the performance by the Lessee of its obligations under the other Operative Documents constitute Associated Rights and are secured by and/or associated with the relevant Aircraft and Engines.

**3.7     Assignment of Rent**

Pursuant to the Security Documents, the Lessor has assigned its right to receive Basic Rent and Termination Value hereunder to the Security Trustee, and pursuant to such assignment the Lessor hereby directs, and the Lessee hereby agrees, that all Basic Rent and Termination Value payable to the Lessor hereunder shall be paid directly to the Funder (unless a Material Default, Termination Event or an Event of Default shall have occurred and be continuing and the Insurer Representative or the Security Trustee has given notice to the Funder and the Lessor in which case the Basic Rent and Termination Value shall be paid directly to the Security Trustee).

**4.     LESSOR'S DISCLAIMER OF WARRANTIES; MANUFACTURERS' WARRANTIES**

**4.1     Disclaimer**

Subject to Clause 4.2, the Lessee acknowledges and agrees that (a) each Aircraft is of a size, design, capacity and manufacture selected by and acceptable to the Lessee and (b) the Lessee is satisfied that such Aircraft are suitable for its purposes.  NONE OF LESSOR, LESSOR PARENT, THE FUNDER, THE AGENT, THE SECURITY TRUSTEE, THE INSURER REPRESENTATIVE OR ANY MEMBER OF THE INSURER GROUP SHALL MAKE OR GIVE OR SHALL BE DEEMED TO HAVE MADE OR GIVEN AND HEREBY EXPRESSLY DISCLAIMS ANY REPRESENTATION, WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, AS TO (i) THE AIRWORTHINESS, VALUE, CONDITION, DESIGN, COMPLIANCE WITH SPECIFICATIONS OF, OPERATION OF, OR THE QUALITY OF THE MATERIAL OF OR WORKMANSHIP IN, OR TITLE TO, OR ANY DEFECT IN, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, (ii) THE MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE OF ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, OR AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT OR THE LIKE,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

OR ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (iii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT WITH RESPECT TO ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, WHETHER OR NOT IN STRICT OR ABSOLUTE LIABILITY OR ARISING FROM THE NEGLIGENCE OF LESSOR, THE FUNDER, THE AGENT, THE SECURITY TRUSTEE OR THE INSURER REPRESENTATIVE, ACTUAL OR IMPUTED, (INCLUDING ANY STATUTORY WARRANTY OR CONDITION UNDER THE LAWS OF THE UNITED STATES, ANY STATE THEREOF, THE GOVERNMENT OF REGISTRY OR THE JURISDICTION OF INCORPORATION OR FORMATION OF LESSEE) OR (iv) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF, OR DAMAGE TO, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING, FOR ANY LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES THEREFROM, IT BEING UNDERSTOOD THAT ALL SUCH RISKS, AS BETWEEN LESSEE AND SUCH OTHER PERSONS, ARE TO BE BORNE BY LESSEE, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE OPERATIVE DOCUMENTS. NONE OF THE INSURER REPRESENTATIVE, ANY MEMBER OF THE INSURER GROUP, THE FUNDER, THE AGENT NOR THE SECURITY TRUSTEE SHALL BE LIABLE OR OTHERWISE RESPONSIBLE IN ANY MANNER FOR ANY REPRESENTATION OR WARRANTY MADE BY THE LESSOR HEREUNDER OR UNDER ANY OTHER OPERATIVE DOCUMENT.

## 4.2 Manufacturers' Warranties

None of the provisions of this Clause 4 or any other provision of this Lease shall be deemed to amend, modify or otherwise affect the representations, warranties or other obligations (express or implied) of the Manufacturer or the Engine Manufacturer or any contractor, subcontractor or supplier of the Manufacturer or the Engine Manufacturer with respect to any Aircraft, any Airframe, any Engine or any Parts, forming a part of or installed on or attached to any Aircraft, any Airframe or any Engine or to release the Manufacturer or the Engine Manufacturer or any such contractor, subcontractor or supplier from any such representation, warranty or obligation. So long as no Event of Default or Termination Event shall have occurred and be continuing, the Lessee, or any Permitted Sub-Lessee leasing an Aircraft from the Lessee, shall have the benefit of and shall be entitled to enforce (as it shall deem appropriate), either in its own name or in the name of the Lessor (at the cost of the Lessee and in respect of which enforcement the Lessee hereby agrees to indemnify the Lessor) for the use and benefit of the Lessee (or the relevant Permitted Sub-Lessee) during the relevant Term by way of revocable license (provided that the Lessor shall not revoke such license until an Event of Default or Termination Event occurs and is continuing and shall reinstate such license in the event the Event of Default or Termination Event is cured), any and all dealer's, manufacturer's contractor's, or subcontractor's credits, guarantees, indemnities, warranties or other benefits, if any, available to the Lessor in respect of any Aircraft, any Engine and/or any Part, provided that neither the Lessee nor any Permitted Sub-Lessee shall be entitled to modify, amend or otherwise alter any of the foregoing without the prior written consent of the Security Trustee except in circumstances where such modification, amendment or alteration could not reasonably be expected to have a Material Adverse Effect in relation to the Lessor or any Secured Party, and the Lessor agrees at the Lessee's expense to do, execute and deliver such further acts, deeds, matters or things as may be reasonably requested by the Lessee to enable the Lessee to obtain customary warranty service furnished for any Aircraft, any Engine and/or Part by such dealer, manufacturer, contractor or subcontractor or any supplier as aforesaid or to exercise any other rights in relation to any of the foregoing benefits, and any moneys recovered from such enforcement shall be promptly paid to, and retained by, the Lessee (or, if directed by the Lessee, any Permitted Sub-Lessee), provided further, that if a Material Default, Termination Event or Event of Default shall have occurred and be continuing, any such moneys payable to the Lessee or Permitted Sub-Lessee shall instead be paid to the Lessor as security for, and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

applied to, the obligations of the Lessee Obligors under the Operative Documents in such order as the Lessor shall elect and, at such time as no Material Default, Termination Event or Event of Default shall be continuing, to the extent not so applied, promptly paid to the Lessee.  The Lessee hereby acknowledges the provisions of the Purchase Assignment, the Engine Warranties Agreement and each Security Agreement and of the security interests granted to the Security Trustee in respect of the Lessor's rights, title and interests in and to the Purchase Agreement and the Engine Agreement created by the Operative Documents.

## 5. PURCHASE OPTIONS; RETURN OF AIRCRAFT

### 5.1 Purchase Options

Provided that the leasing of the relevant Aircraft under this Lease has not otherwise terminated, and no Material Default, Termination Event or Event of Default has occurred and is continuing, the Lessee may on any Basic Rent Payment Date for an Aircraft prior to or including the scheduled end of the Term for such Aircraft, by thirty (30) days' prior written notice (or such shorter period of notice as the Lessor the Insurance Representative and the Security Trustee may agree) delivered to the Lessor (with copies to the Security Trustee, the Insurer Representative and the Agent) (which notice shall be irrevocable), elect for it or a nominee approved by the Insurer Representative (such approval not to be unreasonably withheld) (an **Approved Nominee**) to purchase such Aircraft on such date for a purchase price equal to the Termination Value in respect of such Aircraft on such date, plus any Rent in respect thereof then due and payable plus, if the purchase of the Aircraft occurs on the Final Maturity Date, ten Dollars (US$10).

### 5.2 Purchase Procedure; Termination

In connection with the purchase of an Aircraft pursuant to Clause 5.1, upon indefeasible payment to the Lessor of the Termination Value in respect of such Aircraft on such date and any Rent then due in respect of such Aircraft, the Lessor will transfer to the Lessee or its Approved Nominee all of the Lessor's right, title and interest in and to such Aircraft (including any warranties relating thereto and assigned to the Lessor pursuant to the relevant Purchase Assignment and the relevant Engine Warranties Agreement), in "AS-IS, WHERE-IS" condition, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, except that the Lessor will warrant to the Lessee or its Approved Nominee that it has such title to such Aircraft as was delivered to the Lessor by the Manufacturer on the Delivery Date for such Aircraft and the lawful right to transfer such Aircraft in accordance with the terms hereof and that such Aircraft is free of all Lessor Liens attributable to it.  THE WARRANTY CONTAINED IN THE IMMEDIATELY PRECEDING SENTENCE WILL BE MADE BY LESSOR IN LIEU OF AND IN SUBSTITUTION FOR, AND LESSEE HEREBY WAIVES, RELEASES AND RENOUNCES, ALL OTHER EXPRESS OR IMPLIED WARRANTIES, CONDITIONS OR REPRESENTATIONS WITH REGARD TO THE CONDITION OR TITLE OF THE RELEVANT AIRCRAFT (INCLUDING SUCH AS TO THE STATE, DESCRIPTION, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT), AND ALL OBLIGATIONS AND LIABILITIES OF LESSOR HEREUNDER WITH RESPECT TO CONSEQUENTIAL DAMAGES THEREFROM, AND ALL RIGHTS, CLAIMS AND REMEDIES OF LESSEE, EXPRESS OR IMPLIED, ARISING OUT OF LAW OR OTHERWISE WITH RESPECT THERETO THE USE OR OPERATION OF SUCH AIRCRAFT AND ANYTHING GIVEN OR SOUGHT TO BE IMPLIED FROM ANYTHING SAID OR WRITTEN IN THE NEGOTIATIONS BETWEEN THE PARTIES HERETO OR THEIR REPRESENTATIVES PRIOR TO ENTERING INTO THIS LEASE WITH RESPECT THERETO. ANY STATUTORY OR OTHER WARRANTY, CONDITION, DESCRIPTION OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE STATE, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT IS EXPRESSLY EXCLUDED, INCLUDING BUT NOT LIMITED TO:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a)     ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS;

(b)     ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE;

(c)     ANY OBLIGATION OR LIABILITY WITH RESPECT TO ANY ACTUAL OR ALLEGED INFRINGEMENT OF PATENTS, LICENSES OR THE LIKE, OR ANY OTHER INTELLECTUAL PROPERTY;

(d)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM EACH PARTY'S OR ITS ASSIGNS' NEGLIGENCE, ACTUAL OR IMPUTED; AND

(e)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO SUCH AIRCRAFT, FOR LOSS OF USE, REVENUE OR PROFIT WITH RESPECT TO LESSEE OR FOR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF WHATEVER DESCRIPTION.

In connection with such transfer, the Lessee shall prepare and the Lessor shall execute, all in form and substance satisfactory to the Lessee and/or in a form recordable in the Government of Registry, a bill of sale evidencing each such transfer, a termination of this Lease in respect of such Aircraft and such other documents (including the discharge of the Lien of the Aircraft Mortgage in respect of such Aircraft and the other Security Documents and opinions of counsel) as the Lessee may reasonably request, all at the expense of the Lessee.  Upon a purchase of an Aircraft by the Lessee or its nominee pursuant to Clause 5.1 and Clause 5.2 or Clause 14, the leasing of such Aircraft under this Lease shall terminate.

**5.3     Return of Aircraft; Condition Upon Return**

(a)     Unless the Lessee or its nominee shall have acquired title to an Aircraft pursuant to Clause 5.2 or Clause 14, the Lessee will, upon the termination or expiration of this Lease with respect to such Aircraft (other than following an Event of Loss with respect to such Aircraft), at its own risk and expense, cause the Airframe for such Aircraft, together with the Manuals and Technical Records therefor, to be delivered to the Lessor pursuant to Clause 5.6, fully equipped with two Engines, duly installed thereon (or one or two Replacement Engines of the same manufacturer or of another manufacturer, of the same or an improved model (it being understood that such engines on such Aircraft shall be of the same or an improved model and suitable for installation and use on the Airframe for such Aircraft but having a value and remaining useful life at least equal to, and being in as good operating condition as, the Engines leased by the Lessee for such Aircraft)), duly installed thereon.

(b)     At the time of such return, (i) such Aircraft shall have a valid Certificate of Airworthiness, (ii) the Airframe and Engines or engines for such Aircraft shall be free and clear of all Liens (other than any the Lessor Liens, Funder Liens or other Liens arising under any Operative Document), (iii) the Airframe and Engines or engines for such Aircraft shall be in as good operating condition, and in proper operating condition for scheduled revenue passenger flights as provided in this Clause 5.3, Clause 7.2 and Clause 8 and (iv) such Aircraft shall, except as otherwise provided herein, be in substantially the same configuration and have installed (A) the same or equivalent avionics and other equipment, safety equipment and appurtenances as when such Aircraft was originally delivered to the Lessee hereunder and (B) all other equipment financed on the Delivery Date for such Aircraft (it being agreed that the records of the Manufacturer, including the Purchase Agreement and the Manuals and Technical Records, shall be prima facie evidence thereof).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)    Upon such return the Airframe for such Aircraft shall have cleared a recently completed major check as would be required to clear such Aircraft for at least the next 12 months and such Engines and all major components for such Aircraft shall have at least 50% of the hours, cycles or time (whichever is more limiting) in each case remaining until the next anticipated engine refurbishment, overhaul or inspection requiring removal.  At the time of such return, the Lessee shall also at its own expense:

(i)    remove or paint over all names, insignia and other indications of the Lessee or any Permitted Sub-Lessee from the exterior and interior of such Aircraft in a good, workman-like manner;

(ii)    transfer or cause to be transferred, or reassign or cause to be reassigned, to the Lessor to the extent then possible all assignable and remaining warranties and performance guarantees obtained by the Lessee or any Permitted Sub-Lessee with respect to such Aircraft, together with all documents related thereto that may be required to effect such transfer or reassignment; and

(iii)    if requested by the Lessor, obtain an export certificate of airworthiness (if available) for, and obtain or submit any applicable approval, permit, license or report for the re-export of, such Aircraft from the Civil Aviation Authority and deregister such Aircraft from the registry maintained by the Government of Registry.

(d)    If the Lessee fails to remove or procure the removal by the Permitted Sub-Lessee of the registration or to obtain the export certificate of airworthiness or such re-export approval, permit or license as provided above, the Lessor may do so at the cost and expense of the Lessee and, in such event, the Lessee shall upon demand reimburse the Lessor for the cost thereof.  The Lessee hereby irrevocably appoints the Lessor, upon such failure of the Lessee, as its true and lawful attorney-in-fact, with full power of substitution, in the Lessee's name or otherwise, to carry out the provisions of this Clause 5.3 and to take any action and to execute and/or file any instrument necessary to accomplish the purposes of this Clause 5.3.

(e)    If any other of the foregoing requirements shall not be satisfied at the time of return, the Lessee shall (at the Lessor's election) either promptly remedy any deficiency or make a payment fully compensating the Lessor for the remedy of such deficiency.  If requested by the Lessor, the Lessee shall perform or procure the performance of (at the sole cost and expense of the Lessee):

(i)    a complete videotape borescope inspection of such Engines in accordance with Engine Manufacturer's maintenance manual demonstrating to the Lessor's satisfaction that such Engines (or any module) are not unserviceable or beyond serviceable limits (or serviceable with limitations) under such manual; and

(ii)    a flight test demonstration, at the Lessee's expense and during normal business hours, for a period of not more than two hours at any airport referred to in Clause 5.4.  Personnel designated by the Lessor may participate as observers in such demonstration flight and a pilot selected by the Lessor may accompany the Lessee's pilot and occupy the observer's seat during such demonstration.  The purpose of the demonstration flight will be to ascertain that all systems and their components are functioning satisfactorily and in the event they are not so functioning they will be corrected by the Lessee or provision made therefor by the Lessee.

FILED DATE: 1/11/2023 2:57 PM  2023L000001

**5.4     Place of Redelivery; Storage Upon Return**

Each Aircraft shall be returned to an airport in Europe designated by the Lessor, and the Lessee shall retain the risk of loss for such Aircraft, and the related Airframe, Engines and Parts, until they are returned in conformity with the provisions of this Lease at such airport.

**5.5     Return of Engines**

In the event that any engine not owned by the Lessor shall be delivered with any returned Airframe as set forth in Clause 5.3 (which engine must meet the requirements of a Replacement Engine, the Lessee shall, concurrently with such delivery, at its own expense, furnish the Lessor with a bill of sale covering such engine, including full warranty as to title, and thereupon the Lessor will transfer to the Lessee, on an "as-is, where-is" basis, without recourse or warranty (except as to the absence of the Lessor Liens, Funder Liens or other Liens arising under or in connection with any Operative Document), all of the Lessor's right, title and interest in and to any Engine constituting part of the relevant Aircraft but not installed on such Airframe at the time of the return of such Airframe.  After such conveyance, the substituted engine shall be deemed an "Engine" as defined herein and shall meet the conditions set forth in Clause 5 hereof.

**5.6     Fuel, Manuals**

Upon the return of each Aircraft, each fuel tank and oil tank shall contain the same quantity of fuel or oil as was contained in the fuel and oil tanks when such Aircraft was delivered to the Lessee on the Delivery Date for such Aircraft.  Upon the return of each Aircraft, the Lessee shall deliver to the Lessor at least one original or certified copy of all logs, manuals and data, and inspection, modification and overhaul records (including all job cards) required to be maintained with respect to such Aircraft under the applicable rules and regulations of the Civil Aviation Authority (collectively, **Manuals and Technical Records**) and such other additional records as would be necessary for the FAA to issue an unrestricted certificate of airworthiness, passenger transport category, for such Aircraft and if any thereof are not in English, certified English translations thereof.

**6.     LIENS**

The Lessee will not (and shall procure that no sublessee will) directly or indirectly create, incur, assume, suffer, permit or allow to exist any Lien on or with respect to any Aircraft or any Airframe or any Engine or any Part, title thereto or any interest therein or in or to this Lease or any other Operative Document or any of its rights hereunder or thereunder, except Permitted Liens.  The Lessee will promptly, at its own expense, take such action as may be necessary duly to discharge or satisfy (by bonding or otherwise) any Lien that is not a Permitted Lien if the same shall arise at any time.

**7.     REGISTRATION, MAINTENANCE, OPERATION AND POSSESSION**

**7.1     Registration**

The Lessee shall, at its sole cost and expense, upon the delivery of an Aircraft, cause such Aircraft to be duly certified as to airworthiness in accordance with the law of the Government of Registry and to be duly registered with the Civil Aviation Authority in the name of the Lessor as owner of such Aircraft and the relevant Initial Permitted Sub-Lessee as operator of such Aircraft, the extent permitted by Applicable Law.  Unless otherwise provided in this Lease, the Lessee shall not take any action, or fail to take any action, which action or failure might cause such airworthiness certification and registration to cease to be in full force and effect or to be revoked, withdrawn or suspended. Without limiting the generality of the foregoing, the Lessee at all times during the Term for an

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Aircraft shall ensure, at the Lessee's sole cost and expense, that prior to the expiration thereof, the Certificate of Airworthiness and Certificate of Registration are renewed or maintained by the Civil Aviation Authority.  Without limiting the generality of Clause 11, the Lessor shall take, and shall co-operate with the Lessee to take, at the Lessee's sole cost and expense all actions necessary to permit and maintain such registration and to permit the Lessee to receive copies of all correspondence and communications to and from the Civil Aviation Authority.  Except as expressly permitted by the Operative Documents, the Lessee shall not, during the Term for an Aircraft, take any action which (a) may cause deregistration of such Aircraft from the Civil Aviation Authority or (b) the removal of the Lien of the Aircraft Mortgage in respect of such Aircraft from the Civil Aviation Authority.

## 7.2    Maintenance

The Lessee shall, at the Lessee's cost and expense:

(a)     establish, maintain or cause the establishment and maintenance of a maintenance programme for Boeing model 737 - 8 aircraft and for CFM model LEAP-1B27 engines (and Replacement Engines), as the case may be, each conforming with the Manufacturer's and Engine Manufacturer's maintenance planning document and approved by the Civil Aviation Authority (collectively, the **Approved Maintenance Programme**), and ensure that all service, inspection, maintenance, modification, storage, repair and overhaul of each Aircraft is performed in accordance with such Approved Maintenance Programme, by the Lessee or by the Permitted Sub-Lessee if so approved by the Civil Aviation Authority or by a maintenance facility approved by the Civil Aviation Authority (the **Approved Maintenance Facility**), provided that (i) all Manuals and Technical Records shall be kept in the English language, (ii) the Lessee shall submit the Approved Maintenance Programme to the Lessor, the Insurer Representative and Security Trustee on or prior to the Delivery Date for each Aircraft and shall advise the Lessor, and the Insurer Representatve, upon the their reasonable request, of any material subsequent changes to such Approved Maintenance Programme by issuing revisions thereof approved by the Civil Aviation Authority to the Lessor, Security Trustee, the Insurer Representative and the Agent and (iii) upon the return of any Aircraft pursuant to the terms hereof, such Aircraft shall be capable of qualifying immediately for the issuance of a Certificate of Airworthiness issued by the FAA for commercial passenger transport;

(b)     keep each Airframe, each Engine and all Parts or procure each of the same are kept in good operating and serviceable condition and repair, and in such condition (including maintenance of the Manuals and Technical Records) as necessary to enable all applicable airworthiness certifications of each Aircraft to be maintained in good standing at all times under the Applicable Laws of the Government of Registry except when such Aircraft is undergoing service, maintenance, modification, overhaul, testing and/or repairs as required or permitted hereunder;

(c)     promptly furnish the Lessor, upon request, with such information as may be required to enable the Lessor to file any report required to be filed by the Lessor with any Government Body because of the Lessor's ownership of each Aircraft or the Lessor's lease of each Aircraft hereunder, as the case may be;

(d)     procure that each Airframe, each Engine and each Part is maintained, inspected serviced, stored, repaired, modified and overhauled (i) to comply with all warranty requirements pursuant to the Purchase Agreement or the Engine Agreement, as the case may be, (ii) in accordance with Manufacturer's and Engine Manufacturer's repair manuals, (iii) pursuant to the Approved Maintenance Programme and (iv) in a manner that does not discriminate against any Aircraft, any Airframe or any Engine when compared to the highest applicable standard (including the prompt performance of Service Bulletins, mandatory Manufacturer's

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and Engine Maufacturer's directives and Airworthiness Directives) applied by the Lessee or the Permitted Sub-Lessee with regard to similar aircraft owned, operated or leased by the Lessee or the Permitted Sub-Lessee;

(e)     procure and maintain in effect with Manufacturer and Engine Manufacturer a revision service, if any, for all Manuals and Technical Records, and maintain the Manuals and Technical Records in such condition to satisfy the standards of the Civil Aviation Authority for a Certificate of Airworthiness for commercial passenger/cargo transport;

(f)     procure that for each Aircraft, all applicable mandatory alert Service Bulletins issued by Manufacturer and Engine Manufacturer shall be accomplished, and, in addition, all other Service Bulletins the Lessee or the Permitted Sub-Lessee adopts during the Term for such Aircraft for any similarly operated aircraft of the same model in the Lessee's or the Permitted Sub-Lessee's fleet, it being the intent of the parties that no Aircraft shall be discriminated against in any manner in Service Bulletin compliance and other maintenance matters; and

(g)     for each Aircraft, comply with all applicable Airworthiness Directives issued by the Civil Aviation Authority and which become due during the Term for such Aircraft or which at the time of redelivery of such Aircraft to the Lessor pursuant to the terms hereof have been issued by the Civil Aviation Authority or made mandatory by EASA upon operators regarding Boeing model 737 - 8 aircraft, CFM model LEAP-1B27 engines and any Part, as the case may be, and which have become due.

Neither the Lessor nor any Secured Party shall bear responsibility or liability for any grounding or suspension of operations of any Aircraft resulting from Airworthiness Directives, Service Bulletins, or any repairs or modifications to any Aircraft by the Lessee or any other Person.

**7.3     Operation**

Subject to Clause 7.5, the Lessee undertakes that no Aircraft will be maintained, used, insured or operated:

(a)     in violation of the Certificate of Airworthiness or any license or registration of, or with, any Government Body having jurisdiction over the Lessee (or any Permitted Sub-Lessee) or such Aircraft;

(b)     for any primary purpose other than the commercial transportation of passengers and/or cargo, provided that cargo shall be carried only in the cargo hold of such Aircraft;

(c)     in violation of the Approved Maintenance Programme or any warranty requirements pursuant to the Purchase Agreement, Engine Agreement or any other agreement setting forth any other material warranties with respect to such Aircraft, the related Airframe, Engines or Parts;

(d)     for any purpose or in any manner for which it is not designed or reasonably suited or outside the tolerances and limitations for which such Aircraft, the related Airframe or any related Engine was designed in accordance with the Approved Maintenance Program, Applicable Laws and applicable material warranties;

(e)     at any time while the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof are not in full force and effect;

(f)     for any purpose or in any manner inconsistent with the terms of, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(g)   in any place inconsistent with the terms of, excluded from coverage by, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof (or outside any geographical limit imposed by the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof, including without limitation, in or through any recognized or (in the Lessor's reasonable opinion) threatened area of hostilities unless fully covered by war risk and allied perils insurance in amounts and scope required by this Lease; or

(h)   in violation of any Applicable Law of or by any Government Body having jurisdiction over the Lessor or the Lessee or any Secured Party or any Aircraft or any mandatory requirement of Manufacturer, Engine Manufacturer or supplier, except for unintentional minor or nonrecurring violations which are cured promptly and which:

(i)   do not involve any loss or reduction of coverage under any of the Aircraft Insurances or any Aircraft Reinsurances required by the terms of Clause 10;

(ii)   do not involve any material risk of the sale, forfeiture or loss of or damage to such Aircraft or any interest therein;

(iii)   do not involve any material risk of the Lessor or any Secured Party being subject to civil penalties;

(iv)   do not involve any risk of criminal penalties being imposed against or upon the Lessee, the Lessor, the Lessor Parent or any Secured Party, which in the case of the Lessor or the Lessee shall be a material risk; and

(v)   do not subject the Lessor, the Lessee or the Permitted Sub-Lessee to any fine or penalty or enforcement action which would materially adversely affect the business or operations of the Lessor, the Lessee, the Permitted Sub-Lessee or any Guarantor, the operation of any Aircraft or the rights of the Lessee, the Lessor or any Secured Party hereunder or under any other Operative Document,

provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party or have any material risk of the sale or forfeiture of any Aircraft, or of materially adversely affecting the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder, and if any Applicable Law requires alteration of any Aircraft, the Lessee will conform thereto or obtain conformance therewith at no cost or expense to the Lessor or any Secured Party and will maintain such Aircraft in proper operating condition under such Applicable Law, provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party, have any material risk of the sale or forfeiture of any Aircraft or any Engine, or adversely affect the rights of the Lessor or any Secured Party hereunder or under any other Operative Documents or the obligations of the Lessee hereunder.

Further, the Lessee undertakes that:

(i)   all debts, costs, Losses, liabilities, premiums, calls, contributions, penalties, landing fees, overflight and navigation charges (including Eurocontrol fees), dues, tolls, charges, fines, recoveries or other expenses with respect to any Aircraft shall be duly and punctually paid and discharged during the Term, provided that the Lessee may in good faith diligently contest the validity or application of any of the foregoing in

FILED DATE: 1/11/2023 2:57 PM   2023L000001

any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of the sale of forfeiture of any Aircraft, or adversely affecting the rights of the Lessor or any Secured Party hereunder or under any of the other Operative Documents or the obligations of the Lessee hereunder or any risk of any criminal penalties or criminal liability being imposed, and upon reasonable request by the Lessor, the Insurer Representative or the Security Trustee shall confirm to such Person's reasonable satisfaction that such action has been taken;

(ii)     no alteration in or modification or addition to any Airframe, any Engine or any Part, or any removal of any Engine or any Part from the Aircraft, or installation on or attachment to any Airframe, any Engine or any Part of anything not being part of any Aircraft on the Delivery Date shall occur unless expressly permitted by this Lease, including under Clause 8.4; and

(iii)    it shall not and shall procure that any Permitted Sub-Lessee shall not cause or permit to be done anything regarding any Airframe, any Engine or any Part the effect of which may be reasonably expected to result in such Airframe, such Engine or such Part being requisitioned for title or arrested or otherwise to jeopardize the interests of the Lessor and the Secured Parties in and to such Airframe, such Engine or such Part.

## 7.4    Possession

(a)      Subject to Clauses 7.5, 8 and 9, the Lessee shall not and shall procure that no Permitted Sub-Lessee shall, without the prior written consent of the Insurer Representative and the Security Trustee (which consent may be withheld in their sole discretion), sublease (whether directly, under a Dry Lease or Wet Lease), or otherwise in any manner deliver, transfer or relinquish possession of any Airframe, any Engine or any Part to any Person or firm or install any Engine, or permit any Engine to be installed, on any airframe other than the associated Airframe, provided, however, that (subject to Clauses 7.5, 8 and 9) so long as no Termination Event or Event of Default shall have occurred and be continuing, the Lessee may, without the prior written consent of the Insurer Representative or the Security Trustee:

(i)      deliver or permit the delivery of possession of any Airframe, any Engine or any Part (A) to the manufacturer thereof for testing or other similar purposes or (B) to an Approved Maintenance Facility for service, repair, maintenance or overhaul work on such Airframe, such Engine, such Part or any part thereof or for alterations or modifications in or additions to such Airframe, such Engine or such Part to the extent required or permitted by the terms of Clause 8.4, but in any event only in compliance with the Approved Maintenance Programme and Clause 7.2;

(ii)     install or permit the installation of an Engine for any reason on another airframe owned by the Lessee free and clear of all Liens, except (A) Permitted Liens and except those that apply only to the engines (other than the Engines), appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment (other than Parts) installed on such airframe (but not to such airframe as an entirety); and (B) mortgage liens or other security interests, but only if the holder of such mortgage lien or other security interest expressly agrees that such Engine shall not become subject to the Lien of such mortgage or security interest, notwithstanding the installation thereof on such airframe;

(iii)    install or permit the installation of an Engine for any reason on an airframe owned or operated by the Lessee or an Approved NAS Sub-Lessee (while such Approved

FILED DATE: 1/11/2023 2:57 PM   2023L000001

NAS Sub-Lessee is leasing the Engine from the Lessee pursuant to a Permitted Sub-Lease) leased under a lease unrelated to this Lease to the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) or purchased by the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) subject to a conditional sale or other security agreement, provided, however, that in any such case the Lessee shall provide written assurance reasonably satisfactory to the Lessor and the Security Trustee that the rights, title and interests of the Lessor and the Secured Parties in such Engine under the Operative Documents will not be derogated in any material manner as a result thereof;

(iv) temporarily install an engine on an Airframe which does not satisfy the requirements of Replacement Engine; and

(v) Wet Lease an Aircraft for a term not to exceed the lesser of six (6) months and the remainder of the Term for such Aircraft,

provided, in each case, that the rights of any transferee who receives possession by reason of a transfer permitted by this Clause 7.4 (other than the transfer of an Engine which is deemed an Event of Loss) SHALL BE EXPRESSLY SUBJECT AND SUBORDINATE TO ALL THE TERMS OF THIS LEASE AND THE OTHER OPERATIVE DOCUMENTS, including the Lessor's and the Secured Parties' rights to a repossession pursuant to Clause 14 hereof, to terminate and avoid this Lease or other transfer upon such repossession and to require the Lessee or other transferee to forthwith deliver any Airframe and/or any Engine subject to this Lease or other transfer upon repossession, and the Lessee shall remain primarily liable hereunder for the performance of all of the terms of this Lease to the same extent as if such transfer had not occurred.

(b) No relinquishment of possession of any Airframe, any Engine or any Part shall affect in any way the registration of any Aircraft or discharge or diminish any of the Lessee's obligations hereunder or under any of the other Operative Documents or constitute a waiver of the Lessor's or any Secured Party's rights or remedies hereunder or under any of the other Operative Documents.

(c) The Lessor agrees, for the benefit of the Lessee (and any Permitted Sub-Lessee) and for the benefit of any mortgagee or other holder of a security interest in any engine (other than an Engine) owned or leased by the Lessee (or any Permitted Sub-Lessee), any lessor of any engine (other than an Engine) leased to the Lessee (or any Permitted Sub-Lessee) and any conditional vendor of any engine (other than an Engine) purchased or leased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale agreement or any other security agreement, that no interest shall be created hereunder in any engine so owned, leased or purchased and that none of the Lessor, Security Trustee nor their respective successors or assigns will acquire or claim, as against the Lessee (or any Permitted Sub-Lessee) or any such mortgagee, lessor or conditional vendor or other holder of a security interest or any successor or assignee of any thereof, any right, title or interest in such engine as the result of such engine being installed on any Airframe, provided, however, that such agreement of the Lessor shall not be for the benefit of any lessor of or secured party in respect of any airframe (other than an Airframe) leased to the Lessee (or any Permitted Sub-Lessee) or purchased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale or other security agreement or for the benefit of any mortgagee of or any other holder of a security interest in an airframe (other than an Airframe) owned by the Lessee (or any Permitted Sub-Lessee), unless such lessor, conditional vendor, other secured party or mortgagee has expressly agreed (which agreement may be contained in such lease, conditional sale or other security

agreement or mortgage) that neither it nor its successors or assigns will acquire, as against the Lessor, the Security Trustee or any other Secured Party any right, title or interest in an Engine as a result of such Engine being installed on such airframe.

(d)     The Lessee will, upon reasonable request, furnish to the Insurer Representative, the Security Trustee and the Agent prompt notice of any transfer or relinquishment of possession of any Aircraft permitted under this Clause 7.4 (other than Clause 7.4(a)), and if requested by the Insurer Representative, the Security Trustee or the Agent a copy of the documents relating to such transfer or relinquishment of possession, duly certified by an officer's certificate of the Lessee being a complete and correct copy of all documents so provided.

## 7.5     Dry Leasing

(a)     The Lessee shall not enter into any sublease (whether by Dry Lease or any other similar arrangement) of any duration with respect to any Aircraft (including any Airframe and any Engines or engines installed thereon) with any Person without the prior written consent of the Insurer Representative and the Security Trustee (each of which may withhold its consent in its sole discretion) other than:

(i)     the Initial Permitted Sub-Lease; or

(ii)     another Permitted Sub-Lease with a Permitted Sub-Lessee.

(b)     Other than in respect of the Initial Permitted Sub-Lease, any such sublease shall be subject to the following conditions and requirements:

(i)     any such sublease shall be made expressly subject and subordinate to all the terms of this Lease and the other Operative Documents, and shall not adversely affect the priority or perfection of the Lien of the Security Documents, the enforceability of the Collateral or the right of the Lessor or the Security Trustee to avoid such sublease and to repossess such Aircraft, the associated Airframe or the associated Engines in connection with the exercise of any remedies upon any Termination Event or Event of Default;

(ii)     the Lessee shall remain primarily liable hereunder for the performance of all terms and conditions of this Lease to the same extent as if such sublease had not occurred;

(iii)     all terms and conditions of this Lease and the other Operative Documents shall remain in full force and effect;

(iv)     prior to entering into any such sublease, the Lessee shall provide to the Lessor and the Secured Parties certificates of insurance and brokers' undertakings from the Lessee's insurance brokers or an authorized representative of the Lessee's insurers reflecting that the Aircraft Insurances required to be maintained pursuant to Clause 10 are in full force and will not be adversely affected due to the sublease;

(v)     such sublease shall (A) provide that such Aircraft, and the associated Airframe, Engines and Parts, be maintained in accordance with the Approved Maintenance Programme, and (B) be governed by English law or another jurisdiction acceptable to the Security Trustee and the Insurer Representative, and (C) be with a Permitted Sub-Lessee;

(vi)     such sublease shall not permit any further sub-leasing and the term of the sublease shall not exceed the remaining Term with respect to such Aircraft;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(vii)    either (A) no re-registration of such Aircraft shall occur as a result of entering into such sublease or (B) if entering into such sublease shall involve the re-registration of such Aircraft, the proposed state of registration of such Aircraft shall be Norway, Ireland, the United Kingdom or shall have been approved by the Insurer Representative and the Security Trustee in writing (which approval may be withheld in their sole discretion) and shall in each case be subject to the following:

(A)    under the Applicable Laws of the proposed state of registration of such Aircraft:

I.    there shall exist no rights in favour of the Lessee or the relevant sublessee or any other Person that would, upon bankruptcy or other default by such sublessee, prevent the deregistration, re-export and return of such Aircraft to the Lessor (or upon the enforcement of the Lien of the Security Documents, the Security Trustee) in accordance with and as permitted by the terms of Clause 5 upon the exercise by the Lessor of its remedies under Clause 14;

II.    the Lessor shall be recognized as the owner of such Aircraft and the Secured Parties' Lien over the Aircraft pursuant to the Security Documents shall be recognised;

III.    there shall be no impediment (as at the date of re-registration) to the exercise of the rights and remedies provided for in this Lease or in any other Operative Document in respect of such Aircraft and the practical realisation by the Lessor and the Secured Parties of the benefits of this Lease and the Security Documents (to the extent relating to the Aircraft and this Lease) will be available under such Applicable Law;

IV.    the rights of the Lessor under this Lease and the rights and Liens of the Security Trustee and the Secured Parties under the Security Documents, in each case, in respect of such Aircraft, shall be enforceable in  the jurisdiction of re-registration and, if requested by the Security Trustee or the Insurer Representative, the Lessor shall provide a new local law mortgage over the Aircraft in favour of the Secured Parties;

V.    all filings (including all filings required by the Insurer Representative or the Security Trustee pursuant to the Cape Town Convention), recordations and other actions necessary in order to establish, protect and perfect the Lessor's title to the Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Paragraph IV above) shall have been made;

VI.    no Secured Party shall be required to qualify to do business in such jurisdiction as a result of such re-registration;

(B)    such re-registration shall not result in any Tax for which the Lessee is not required to indemnify;

(C)    the insurance and any reinsurance required in respect of such Aircraft by Clause 10 shall be in full force and effect subsequent to such re-registration and the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee evidence of such insurance reasonably satisfactory to the Insurer Representative and the Security Trustee;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(D)    no Liens (other than Permitted Liens) shall arise as a result of such re-registration;

(E)    all filings, registrations, recordations and other actions necessary under the Applicable Laws of the jurisdiction in which such Aircraft is to be registered, in order to establish, protect and perfect the Lessor's title to such Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Clause 7.5(vii)(A)(IV) above), shall be made;

(F)    the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee an opinion of independent counsel in the state of such re-registration addressed to the Lessor, the Security Trustee, the Agent and the Insurer Representative reasonably satisfactory in form and substance to the Insurer Representative and the Security Trustee; and

(G)    all reasonable costs, expenses, fees and other charges in connection with any such re-registration shall be paid by the Lessee;

(viii)    the Lessee shall (A) at least thirty (30) days prior to such sublease taking effect, give the Lessor, the Security Trustee, the Agent and the Insurer Representative written notice of such proposed sublease together with a copy of the proposed agreement (which agreement must be reasonably acceptable in form and substance to the Lessor, the Security Trustee and the Insurer Representative), (B) deliver a copy of the approved executed agreement to the Security Trustee, the Lessor, the Agent and the Insurer Representative and assign the Lessee's interests in such agreement to the Lessor, who in turn shall assign such interests to the Security Trustee, as a perfected first-priority security interest for the Lessee's obligations hereunder and cause the Lessee to consent to such assignment and to the Lessor's further assignment of such sublease to the Security Trustee for the benefit of the Secured Parties and (C) provide evidence to the Security Trustee, the Agent and the Insurer Representative that registrations have been made with the International Registry with respect to the International Interests, if any, created pursuant to such sublease and the assignments of International Interests, if any, created pursuant to the assignments;

(ix)    the Lessee shall, at least ten (10) days prior to such sublease taking effect, deliver to the Lessor, the Security Trustee, the Agent and the Insurer Representative proposed forms of (A) an acknowledgment by the sublessee recognizing all rights, title and interests of the Lessor, the Security Trustee and the other Secured Parties under the Operative Documents, and (B) a written opinion of counsel in the country of citizenship or incorporation or formation of the relevant sublessee confirming that all steps necessary to protect the rights, title and interests of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents (including, without limitation, registration of all interests, assignments and subordinations with the International Registry) have been taken or will be taken in a manner reasonably satisfactory to the Secured Parties, each in form and substance reasonably satisfactory to the Lessor, the Agent, the Insurer Representative and the Security Trustee, and on or prior to such sublease taking effect, deliver to the Lessor, the Insurer Representative, the Agent and the Security Trustee executed copies of such documents;

(x)    the Lessee shall promptly reimburse the Lessor, the Security Trustee or any other Secured Party for any reasonable costs and expenses (including attorneys' fees and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

expenses) incurred by them in connection with such sublease or any related re-registration; and

(xi)    the proposed sublessee must be solvent.

**7.6**    **Special Operation and Possession Covenants**

In addition to the foregoing requirements, the Lessee covenants and agrees as follows:

(a)    **Restricted Use of Aircraft**

No Aircraft, Engine or Part shall, without the prior written consent of the Lessor, the Security Trustee and the Insurer Representative, (whether, directly or under a Dry Lease, Wet Lease, Charter, blocked-space or other arrangement) be:

(i)    flown to or within, or otherwise operated or used to or within, an Excluded Country if to do so would breach any Applicable Law (including Sanctions) or operated (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under, the laws of, or whose principal place of business or principal place of aircraft operations is located in, an Excluded Country;

(ii)    principally used in, or operated or used (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under the laws of, or whose principal place of business or principal place of aircraft operations is located in, a Restricted Country;

(iii)    "primarily based" in one or more Restricted Countries.  For purposes of this provision, **primarily based** shall mean that during any consecutive seven (7) day period, the aggregate amount of time spent on the ground by such Aircraft, such Engine or such Part, as applicable, in one or more Restricted Countries shall exceed 15% of the total amount of time spent on the ground during such seven (7) day period, provided that the limitation imposed by this paragraph (iii) shall not prohibit, to the extent necessary, any nonrecurring maintenance or other nonrecurring repairs to be done with respect to an Aircraft in a Restricted Country;

(iv)    operated or used by or for any other Person except in accordance with Clauses 7.3, 7.4 and 7.5;

(v)    operated or used in contravention of any United States law, regulation or stated policy of general applicability restricting the operation or use of United States-manufactured or financed aircraft and engines and such restrictions are applicable to the transactions contemplated hereby;

(vi)    flown or otherwise operated or used for any offensive or defensive military purpose;

(vii)    operated or used for any purpose for which it is not designed or reasonably suited in accordance with the Approved Maintenance Programme, Applicable Law and applicable material warranties or for any primary purpose or other than the commercial transport of passengers and cargo; or

(viii)    subleased (whether under a dry lease or wet lease) to any Person other than as provided in this Lease.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)    **Waiver of Defences to Repossession**

None of the Lessee, nor any Permitted Sub-Lessee, nor anyone claiming through or under the Lessee or Permitted Sub-Lessee, shall set up, claim or seek to take advantage of any Applicable Laws now or hereafter in force in any jurisdiction in which any Aircraft or any portion thereof may be situated in order to prevent, hinder or delay any effort in accordance with this Lease on the part of the Lessor or the Security Trustee to regain possession of any Aircraft or deregister or re-export any Aircraft or any portion thereof from any jurisdiction in which such Aircraft or any portion thereof may be situated following the occurrence of an Event of Default or Termination Event, and while the same shall be continuing, and the Lessee, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may be lawful so to do, the benefit of all such Applicable Laws (including, without limitation, any rights it may have, if any, to avail itself of the protection provided by the Convention of 1933 on the Unification of Certain Rules Relating to the Precautionary Arrest of Aircraft, or any other similar law, treaty or convention applicable to the Lessee or any Aircraft which would limit the ability of the Lessor or the Security Trustee to repossess or otherwise recover any Aircraft following the occurrence and during the continuance of an Event of Default or Termination Event).

(c)    **Statement of Account of Landing Fees or Navigation Charges**

In the event that a Government Body of any country in which any Aircraft or the Lessee or any Permitted Sub-Lessee operates shall be permitted by Applicable Law to detain or seize, or shall adopt legislation which permits the detention or seizure of, an aircraft for unpaid landing fees or navigation charges without formal legal proceedings, the Lessee shall (and shall procure that any Permitted Sub-Lessee shall) promptly following demand by the Security Trustee or the Insurer Representative, deliver to the Security Trustee, the Agent and the Insurer Representative a letter, in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative, addressed to the airport or air navigation authority of such country authorizing such authority to release to the Security Trustee from time to time a statement of account of all such fees and charges then due in respect of all aircraft owned by or leased to the Lessee or any Permitted Sub-Lessee, as the case may be.

(d)    **Eurocontrol**

The Lessee shall and shall procure that the relevant Initial Permitted Sub-Lessee shall prior to the Delivery Date of an Aircraft, and the Lessee shall procure that any other Permitted Sub-Lessee shall, prior to the commencement of any sub-lease:

(i)     procure that the Lessee or any Permitted Sub-Lessee executes a Eurocontrol Letter and ensure that such letter is promptly sent to and acknowledged by Eurocontrol in accordance with Eurocontrol's advertised procedures;

(ii)    to the extent it has not already done so, promptly enter into a CEFA Agreement and provide the Security Trustee and the Insurer Representative with a copy certified by an officer of such company;

(iii)   if requested by the Security Trustee or the Insurer Representative, promptly obtain from Eurocontrol (via CEFA or otherwise) and provide to the Lessor, the Security Trustee and the Insurer Representative a general statement of account in relation to charges incurred by the Lessee and the Initial Permitted Sub-Lessee (and, if applicable, other Permitted Sub-Lessee); and

FILED DATE: 1/11/2023 2:57 PM  2023L000001

(iv)     if Eurocontrol's procedures relating to the availability to third parties of general statements of account are amended, take such actions as may be reasonably requested by the Security Trustee or Insurer Representative to ensure that the Security Trustee is able to obtain (or continue to obtain) such general statements of account in accordance with such procedures.

(e)     **EU ETS Laws**

It shall procure that any Permitted Sub--Lessee:

(i)     comply, and must procure that any other "aircraft operator" for the purposes of the EU ETS Laws complies, with all EU ETS Laws applicable to it/them or the Aircraft and, promptly on request from the Lessor, the Insurer Representative or the Security Trustee, supply to such person evidence reasonably satisfactory to it of such compliance;

(ii)     identify itself as "aircraft operator" to any EU ETS Authority whenever required under the EU ETS Laws or whenever the Lessor, the Insurer Representative or the Security Trustee may request.

(f)     **No Operation by the Secured Parties**

In no event shall any Secured Party be represented as carrying goods or passengers on any Aircraft or as being in any way connected or associated with any operation or carriage which may be undertaken by the Lessee or any Permitted Sub-Lessee or as having any operational interest in any Aircraft.

(g)     **Seizure of Aircraft**

The Lessee shall not do, shall procure that no Permitted Sub-Lessee shall do, and shall otherwise use its best efforts to prevent, any act which could reasonably be expected to result in any Aircraft, any Airframe or any Engine being arrested, confiscated, seized, taken in execution, attached, impounded, forfeited, detained in exercise or purported exercise of any registered or possessory lien or other claim or otherwise taken from the possession of the Lessee or any Permitted Sub-Lessee, and if any such arrest, confiscation, seizure, execution, taking, attachment, impoundment, forfeiture, detention or other loss of possession occurs, the Lessee shall give Security Trustee, the Lessor, the Agent and the Insurer Representative immediate notice thereof and shall forthwith procure the prompt release of such Aircraft, such Airframe or such Engine.

(h)     **Credit for Maintenance**

The Lessee shall not pledge and shall procure that no Permitted Sub-Lessee shall pledge  the credit of any Secured Party for any maintenance, service, repairs, overhauls of, or modifications to, or changes or alterations in, or additions to, any Aircraft, any Airframe, any Engine or any Part.

(i)     **Notice of Suspension**

The Lessee shall give the Lessor, the Security Trustee, the Agent and the Insurer Representative immediate written notice of any action being taken by the management of any Lessee Obligor relating to any general suspension of payment proceedings under any Applicable Law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(j)      **Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under Clause 10 and should any such claim be paid, shall procure that immediate action is taken either (A) to increase any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty or (B) to obtain "contingent War Risk Insurance" acceptable to the Issuer Representative and the Security Trustee for the express benefit of the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee so that their financial interests in each Aircraft shall at all times be fully insured for the period covered by that War Risk Insurance, notwithstanding any annual aggregate limit or sublimit of liability.

(k)      **Inspection**

At all reasonable times and (except during the continuance of a Default, a Termination Event or an Event of Default) upon reasonable notice to the Lessee and not more frequently than once per calendar year any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives may inspect any Aircraft, any Engine or any Part and the Manuals and Technical Records relating thereto and to the registration thereof and copy or make extracts from the books and records of the Lessee and any Permitted Sub-Lessee relative thereto and may discuss the Lessee's and any Permitted Sub-Lessee business or financial affairs with any of the Lessee's or Permitted Sub-Lessee officials, auditors or officers as may be required for the foregoing and, to the extent available, make any inspection reports available to the Agent, provided that, unless a Termination Event or an Event of Default has occurred and is continuing:

(i)       any such inspection shall be a visual, walk-around inspection which may include going on board such Aircraft, subject to the Permitted Sub-Lessee's limitations for reasons of safety or insurance coverage, but shall not include opening or removing any panels, bays or engine or avionic components of such Aircraft, unless such Aircraft is, on the date of such inspection, undergoing a maintenance visit, in which case such panels, bays or engine or avionic components as are open or removed from such Aircraft on such date may be inspected; and

(ii)      any such inspection or examination shall not unreasonably delay or interrupt or cause any obstruction in the Lessee's maintenance and operation of such Aircraft.

(l)      None of the Lessor, the Security Trustee, the Agent, the Funder or the Insurer Representative (i) shall have any duty to make any such inspection or (ii) shall incur any liability or obligation by reason of making or not making any such inspection, except as provided in this Clause 7.7.  So long as no Termination Event or Event of Default has occurred and is continuing, the reasonable cost of one such inspection initiated by any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives each calendar year shall be paid by the Lessee.  The Lessee shall pay the cost of all such inspections during the continuance of a Termination Event or an Event of Default.  The cost of other inspections shall be paid by the party requesting such inspection, unless such inspection reveals a material breach of the obligations hereunder to maintain each Aircraft and the associated Manuals and Technical Records, in which case the cost of such inspection shall be borne by the Lessee.  Upon the request of the Lessor, the Lessee shall promptly notify the Lessor, the Insurer Representative, the Agent and the Security

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Trustee of the major phase checks ("C" check or higher and any structural inspection) then scheduled on any Aircraft for the six-month period following such request.

**7.7    Information Concerning the Aircraft and Engines**

The Lessee shall at its own cost and expense promptly provide the Lessor, the Agent, the Funder, the Insurer Representative and the Security Trustee with such information (to the extent required by this Lease, any Operative Document or maintained by the Lessee in accordance with its standard fleet procedures) regarding the registration, location, operation, use, insurance, maintenance and condition of each Aircraft and its associated Engines, including all Parts to the extent practicable, as the Lessor, the Agent, the Funder, the Insurer Representative or the Security Trustee may from time to time reasonably require.

**7.8    Substitution of Engines**

(a)    So long as no Termination Event or Event of Default shall have occurred and be continuing (unless such Termination Event or Event of Default relates to the Engine being substituted), the Lessee may (and may permit any Permitted Sub-Lessee to) at any time, with contemporaneous notice to the Lessor, the Agent, the Funder, the Insurer Representative and the Security Trustee, duly convey or cause to be conveyed to the Lessor as a substitute for an Engine title to another engine of the same manufacturer and model, as such Engine which satisfies the conditions set forth in the definition of "Replacement Engine", provided that all engines installed on any Airframe shall be of compatible make and model, free and clear of all Liens other than Permitted Liens and shall have a value and remaining useful life and utility at least equal to, and being in as good operating condition and state of maintenance as, the Engine to be replaced thereby, assuming such Engine was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to such replacement.  Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)    furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)    cause a Lease Supplement, in form and substance reasonably satisfactory to the Lessor, the Insurer Representative and the Security Trustee subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry;

(iii)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such replacement engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor may reasonably request;

(iv)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) reasonably satisfactory to the Lessor, the Security Trustee and the Insurer Representative certifying that such engine has value and remaining useful life at least equal to, and is in as good operating condition (as the Engine being substituted, assuming such Engine was in the condition and state of repair required by the terms hereof immediately prior to such substitution;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(v)     cause amendments to the relevant Aircraft Mortgage and any Security Document, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such replacement engine to the relevant Aircraft Mortgage and the relevant Security Documents to be duly executed by the Lessor, Lessee or Permitted Sub-Lessee (as applicable) and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or the jurisdiction of incorporation or formation of the Lessor, Lessee or Permitted Sub-Lessee as applicable;

(vi)    cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)   furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and Security Trustee regarding the perfection of the Lien of any amended Security Document and relevant Aircraft Mortgage with respect to such Replacement Engine, in form and substance reasonably satisfactory to the Security Trustee and the Insurer Representative (addressed to the Security Trustee, the Insurer Representative, the Funder and the Agent); and

(viii)  affix a nameplate on such replacement engine in accordance with Clause 8.5.

(b)     Upon full compliance by the Lessee with the terms of this Clause 7.8, the Lessor will transfer or cause to be transferred, at the Lessee's sole cost and expense, to or upon the order of the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it) all of the Lessor's right, title and interest, if any, in and to each replaced Engine with respect to which such substitution occurred by an appropriate instrument, signed by the Security Trustee, releasing such Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer. For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Engine" as defined herein and shall be deemed part of the same Aircraft as was the Engine replaced thereby. No substitution with respect to an Engine under the circumstances contemplated by the terms of this Clause 7.8 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

## 7.9     Annual Survey

(a)     Upon written request, but no more frequently than once each calendar year for each Aircraft any one of the Security Trustee, the Agent, the Insurer Representative or their authorized representative, may request a technical report about the related Airframe, Engines and Manuals and Technical Records in connection with such Airframe and each such Engine, performed at an Approved Maintenance Facility in connection with the most recently completed (i) airworthiness inspection, or heavy maintenance check (in the case of an Airframe), (ii) heavy maintenance visit and any shop visit (in the case of each such Engine), and (iii) overhaul or reconditioning (in the case of any Part, appurtenance or system in respect of such Aircraft or each such Engine not covered by clauses (i) and (ii) preceding).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b) Such report shall be at the Lessee's expense and shall contain sufficient detail so as to enable the Security Trustee, the Agent and the Insurer Representative to determine the Lessee's compliance with the terms of this Lease and the general repair, condition, maintenance, overhaul and time-before-overhaul status of such Airframe and each such Engine or Part. If any such report is prepared at the request of the Security Trustee, the Security Trustee shall promptly provide a copy to the Agent and the Insurer Representative.

## 8. REPLACEMENT; TEMPORARY INSTALLATION; POOLING; ALTERATIONS, MODIFICATIONS AND ADDITIONS; ETC

### 8.1 Replacement of Parts

(a) The Lessee, at its own expense, will promptly replace or cause to be replaced all Parts that may from time to time be incorporated or installed in or attached to any Airframe or any Engine and that may from time to time be defective and not economically repairable, become time-expired or due for replacement or worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever.

(b) In addition, the Lessee (or any Permitted Sub-Lessee) may, at its own expense, remove in the ordinary course of maintenance, service, repair, overhaul or testing, any Part, whether or not time-expired, due for replacement, worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use, provided, however, that the Lessee will, at its own cost and expense, replace (or cause to be replaced) such Part as promptly as practicable.

(c) Each replacement Part shall be free and clear of all Liens (except Permitted Liens) and except as permitted by Clause 8.3, shall be in at least as good operating condition as, and shall have value, modification status and performance characteristics at least equal to, or, if applicable, comparable to, the Part replaced assuming such replaced Part was in the condition and repair required to be maintained by the terms hereof.

(d) Each Part at any time removed from any Airframe or each Part removed from any Engine shall remain the property of the Lessor, no matter where located, until such time as such Part shall be replaced by a Part that has been incorporated or installed in or attached to the Airframe from which such Part was removed or, as the case may be, an Engine and that meets the requirements for a replacement Part specified above and shall be subject to the Lien of the relevant Aircraft Mortgage.

(e) Immediately upon any replacement Part becoming incorporated or installed in or attached to an Airframe or, as the case may be, an Engine as above provided and title thereto being vested in the Lessor free and clear of all Liens (except Permitted Liens), without further act:

(i) title to the replaced Part shall thereupon vest in the Lessee or its Approved Nominee and shall no longer be deemed a Part hereunder; and

(ii) such replacement Part shall become subject to this Lease and be deemed part of such Airframe or, as the case may be, such Engine for all purposes hereof to the same extent as the Part originally incorporated or installed in or attached to such Airframe or, as the case may be, such Engine.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 8.2     Temporary Installation of Parts

The Lessee may install or permit the installation of any part on any Airframe or Engine by way of substitution, replacement, renewal or mandatory modification notwithstanding that such installation is not in accordance with Clause 8.1 in the case of a part if:

(a)     there shall not have been available to the Lessee at the time and in the place that such part was required to be installed on such Airframe or, as the case may be, such Engine a substitute or replacement Part complying with the requirements of Clause 8.1;

(b)     it would have resulted in a disruption of the operation of the relevant Aircraft and/or the business of the Lessee to have grounded such Aircraft and/or to have permitted the relevant Part to continue to be unserviceable or unrepaired until such time as an part complying with the requirements of Clause 8.1 became available for installation on such Airframe or such Engine; and

(c)     as soon as practicable, but in any event within one hundred and eighty (180) days, the Lessee shall cause any such part not complying with the requirements of Clause 8.1 to be removed and replaced or substituted by a part complying with the requirements of Clause 8.1.

## 8.3     Pooling of Parts

Any Part removed from any Airframe or any Engine may be subjected by the Lessee or permitted by the Lessee to be subjected to a normal pooling arrangement customary in the international airline industry entered into in the ordinary course of the Lessee's (or, while the relevant Aircraft is leased by the Lessee to the Initial Permitted Sub-Lessee pursuant to the Initial Permitted Sub-Lease, the Initial Permitted Sub-Lessee's) business, provided, that the part replacing such removed Part shall be incorporated or installed in or attached to such Airframe or such Engine in accordance with Clause 8.1 as promptly as possible after the removal of such removed Part.   In addition, any replacement part when incorporated or installed in or attached to any Airframe or any Engine in accordance with Clause 8.1 may be owned by another air carrier subject to such a normal pooling arrangement, provided that the Lessee, at its own cost and expense, as soon as practicable, shall either (a) cause title to such replacement part to vest in the Lessor in accordance with Clause 8.1 by the Lessee acquiring title (or procuring acquisition of the title) thereto for the benefit of the Lessor free and clear of all Liens (other than Permitted Liens) and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement or (b) replace such replacement Part by incorporating or installing in or attaching to such Airframe or such Engine a further replacement Part owned by the Lessee (or such Permitted Sub-Lessee) free and clear of all Liens (other than Permitted Liens) and by causing title to such further replacement Part to vest in the Lessor in accordance with Clause 8.1 and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement.

## 8.4     Alterations, Modifications and Additions

(a)     The Lessee, at its own expense, will promptly make (or cause to be made) such alterations and modifications in and additions to any Airframe or any Engine as may be reasonably required from time to time to comply with any Airworthiness Directives, Service Bulletins, other directive or modifications published (and of a mandatory nature) by the Manufacturer, the Engine Manufacturer and/or the Civil Aviation Authority in accordance with the terms of this Lease, provided that the Lessee may in good faith diligently contest the validity or application of any such Airworthiness Directive, Service Bulletin, directive or modification in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of adversely affecting the value of any Aircraft, the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder.

(b)     In addition, the Lessee (or the Permitted Sub-Lessee), at its own expense, may from time to time make such alterations and modifications in and additions to any Airframe or any Engine as the Lessee (or Permitted Sub-Lessee) may deem desirable in the proper conduct of its business, including installation of additional buyer furnished equipment or removal of Parts that the Lessee (or Permitted Sub-Lessee) determines to be obsolete or no longer suitable or appropriate for use on such Airframe or such Engine, provided, however, that no such alteration, modification or addition shall materially diminish the value, utility, remaining useful life, performance or operational characteristics of such Airframe or such Engine, or impair the condition or airworthiness thereof, below the value, remaining useful life, performance or operational characteristics, condition or airworthiness thereof immediately prior to such alteration, modification or addition (assuming such Airframe or such Engine was then of the value, remaining useful life, performance or operational characteristics, condition or airworthiness required to be maintained by the terms of this Lease), provided, further, that the Lessee shall consult with the Manufacturer or the Engine Manufacturer, as applicable, the Insurer Representative and the Security Trustee prior to undertaking any material alteration or modification to any Aircraft. Without prejudice to the generality of the foregoing, the Lessor consents to the modification which includes installation of antennae, aerodynamic domes, wiring, structural attaching parts, mounts, receivers, wireless access points,(WAP's), modems, controllers, switching equipment, display and sound reproduction equipment and all related hardware and software directly associated with the receipt and distribution of satellite or where applicable ground based internet signals and data into the Aircraft for passenger use, whether provided by ROW 44 or an alternative provider.  Title to all Parts incorporated or installed in or attached or added to any Aircraft as the result of such alteration, modification or addition, shall immediately vest in the Lessor free and clear of all Liens (except Permitted Liens) and become subject to this Lease, without the necessity for any further act of transfer, document or notice.

(c)     Notwithstanding Clause 8.1 and the foregoing provisions of this Clause 8.4 and provided that no Termination Event  or Event of Default shall have occurred and is continuing, the Lessor agrees that the Lessee or any Permitted Sub-Lessee may, at any time during the Term in respect of any Aircraft, remove or suffer to be removed any Part (including buyer furnished equipment) from such Aircraft that:

(i)      is in addition to, and not in replacement of or substitution for, any Part originally incorporated or installed in or attached to the related Airframe or Engine at the time of the Delivery of such Aircraft hereunder or any Part in replacement of or substitution for any such Part;

(ii)     is not required to be incorporated or installed in or attached or added to the related Airframe or Engine pursuant to the terms of Clause 7 or this Clause 8 or in order to maintain insurance required by Clause 10; or

(iii)    can be removed from the related Airframe or Engine without causing damage to such Airframe or such Engine or diminishing or impairing in any material respect the value, utility, remaining useful life, performance or operational characteristics, condition or airworthiness that such Airframe or such Engine would have had at such time had such removal not occurred.

(d)     Upon the removal by the Lessee (or any Permitted Sub-Lessee) of any Part as provided in and permitted by this Clause 8.4, title thereto shall, without further act, vest in the Lessee or the Lessee's Approved Nominee, and such Part shall no longer be deemed part of the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Airframe or Engine from which it was removed.  Notwithstanding the foregoing, any Part not removed by the Lessee (or any Permitted Sub-Lessee) as above provided prior to the return of the relevant Airframe or Engine to the Lessor hereunder shall become the property of the Lessor at the time of such return and become subject to the relevant Aircraft Mortgage and the relevant Security Agreement.

**8.5    Nameplate and Other Markings**

The Lessee shall affix and keep a metal nameplate having dimensions of not less than five inches by four inches in the cockpit of each Airframe adjacent to the airworthiness certificate therein and on each of the Engines bearing the inscription "THIS [AIRFRAME/ENGINE] IS OWNED BY AAA MAX 1 LIMITED AND LEASED TO HARDANGERFJORDEN LIMITED, IS FURTHER SUB-LEASED TO [NORWEGIAN AIR INTERNATIONAL LIMITED / NORWEGIAN AIR SHUTTLE ASA] AND SUBJECT TO A MORTGAGE IN FAVOUR OF CITIBANK N.A., LONDON BRANCH, AS SECURITY TRUSTEE", or such other inscription as the Security Trustee or the Insurer Representative from time to time may reasonably request (such nameplate to be affixed within ten (10) days after the Delivery Date for such Airframe and such Engines, and the Lessee shall thereupon so advise the Lessor).  Except as provided above, the Lessee shall not allow the name or other indication of any other Person to be placed on any Airframe or any Engine, if such name or other indication could be interpreted as a claim of ownership or other interest therein; provided, that each Airframe, Engine and Part may be marked with the customary name, colours or insignia of the Lessee or the Permitted Sub-Lessee and/or any manufacturer(s) of such Airframe, Engines and Parts.

**8.6    No Third Party Beneficiaries**

It is expressly agreed that the Lessee's obligations with respect to maintenance under Clauses 7 and 8 are solely for the benefit of the Lessor and the Secured Parties and that the Lessee shall have no liability to any other Person with respect thereto, and that except for the Lessee's indemnification obligations with respect thereto contained in the Participation Agreement which shall survive the termination of such documents in accordance with their respective terms, the Lessee's obligations under Clauses 7 and 8 in respect of an Aircraft shall terminate upon termination of the leasing of an Aircraft to the Lessee pursuant to this Lease and the relevant Lease Supplement in accordance with the terms hereof.

**8.7    No Authorization to Contract for the Lessor**

Nothing contained in this Lease shall constitute any consent or request by the Lessor or any Secured Party express or implied, for the performance of any works or services or the furnishing of any materials or other property in respect of any Aircraft, any Engine or any Part thereof, nor as giving the Lessee any right, power or authority to contract for or permit the performance of any works or services or the furnishing of any materials or other property, in such fashion as would permit the making of any claim against the Lessor or any Secured Party in respect thereof or any claim that any Lien (other than Permitted Liens) based on the performance of such works or services or the furnishing of any such materials or other property is prior to the interests of the Lessor or any other Person in such Aircraft, such Engine or such Part thereof.

**8.8    No Rights of Retention**

The Lessee hereby waives any and all rights of retention which it may have or which at any time hereafter may be conferred upon it, by virtue of law or otherwise, related to any replacement of Parts, alterations, modifications or additions that the Lessee may make to any Airframe or any Engine.  The Lessee hereby expressly releases the Lessor and the Secured Parties from any and all

FILED DATE: 1/11/2023 2:57 PM   2023L000001

obligations, whether present or future, to indemnify or reimburse the Lessee for any of the aforementioned replacements, alterations, modifications, improvements or additions.

## 9.   LOSS, DESTRUCTION, REQUISITION, ETC

### 9.1   Event of Loss with Respect to an Aircraft

(a)   Upon the occurrence of an Event of Loss with respect to an Aircraft or an Airframe and any related Engines and/or engines then installed thereon, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), which notice shall specify the actions the Lessee is taking with respect to such Event of Loss. So long as no Default, Termination Event or Event of Default shall have occurred and be continuing, the Lessee may within forty-five (45) days after such occurrence, request permission from the Lessor to replace such Aircraft (or such Airframe and Engine(s), as applicable), upon terms and conditions acceptable to the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee in their absolute discretion, including compliance with such terms and requirements that would make such replacement aircraft (or such replacement airframe and engine(s), as applicable) (a **Replacement Aircraft**) eligible for financing supported by the Insurance Policy in the same amount as such replaced Aircraft (or such replaced Airframe and Engine(s), as applicable), it being agreed that if the Lessee does not request such permission within the relevant time period (or does not receive such permission within ten (10) days after such request), the Lessee will not be entitled to substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable).

(b)   The Lessee will not substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) hereunder unless such Replacement Aircraft (or replacement airframe and engine(s), as applicable) would be eligible for financing supported by the Insurance Policy, as determined by the Insurer Representative in its sole discretion.

(c)   It is expressly agreed that if any Basic Rent Payment Date for the affected Aircraft occurs at or after the date of such Event of Loss and prior to the payment of the Termination Value and any other Rent due in relation to such Aircraft, the Lessee shall pay to the Lessor on such Basic Rent Payment Date the amount equal to the Basic Rent which would have become due and payable in respect of such Aircraft on such Basic Rent Payment Date in accordance with the terms hereof had no Event of Loss so occurred.

(d)   Unless a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) are being substituted in the circumstances contemplated in the preceding clauses, the Term for the affected Aircraft shall end on a date no later than the earliest of (i) the date falling ninety (90) days after the occurrence of such Event of Loss and (ii)  the Lessor or the Security Trustee receives insurance or requisition proceeds in respect thereof (the **Settlement Date**), and on such Settlement Date the Lessee shall pay to the Lessor an amount equal to the then applicable Termination Value for the affected Aircraft on such Settlement Date together with all accrued but unpaid Rent for the affected Aircraft to such Settlement Date and, without duplication, all other amounts then owing by the Lessee under the Operative Documents.

(e)   Upon full compliance by the Lessee with the terms of this Clause 9.1 the Lessor will (subject to insurer's salvage rights, if any) transfer to, or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty, all of the Lessor's right, title and interest, if any, in and to the Aircraft with respect to which such Event of Loss occurred by an appropriate instrument, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes

hereof, each such Replacement Aircraft shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Aircraft" as defined herein.

**9.2     Event of Loss with Respect to an Engine**

(a)     Upon the occurrence of an Event of Loss with respect to an Engine under circumstances in which there has not occurred an Event of Loss with respect to the associated Airframe, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), then within one hundred and twenty (120) days after the occurrence of such Event of Loss, the Lessee shall duly convey or cause to be conveyed to the Lessor and duly subject to the relevant Aircraft Mortgage and other relevant Security Documents, as replacement for such Engine with respect to which such Event of Loss occurred, title to a Replacement Engine (provided that all engines installed on such Airframe shall be of compatible make and model).

(b)     Such Replacement Engine shall be free and clear of all Liens (other than Permitted Liens) and having a value and remaining useful life at least equal to, and being in as good operating condition and state of maintenance as, the Engine with respect to which such Event of Loss occurred, assuming such Engine was of the value and remaining useful life and in the condition and state of repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss, but without regard to its point in the maintenance cycle.

(c)     Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

   (i)     furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

   (ii)     cause an amendment to the related Lease Supplement, in form and substance reasonably satisfactory to the Lessor and the Security Trustee, subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or any other Relevant Jurisdiction;

   (iii)     furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such Replacement Engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor and the Security Trustee may reasonably request;

   (iv)     furnish the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) satisfactory to the Insurer Representative and the Security Trustee certifying that such engine has value and remaining useful life and it is in good operating condition as the Engine being substituted, assuming such Engine was in the condition and state of repair as required by the terms hereof immediately prior to such substitution, but without regard to its point in the maintenance cycle;

   (v)     cause amendments to the relevant Aircraft Mortgage and other Security Documents, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such Replacement Engine to the relevant Aircraft Mortgage and Security Documents  to be duly executed by the Lessor and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Government of Registry, the jurisdiction of incorporation or formation of the Lessor and the United States of America;

(vi)     cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessee, the Security Trustee and the Insurer Representative under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)    furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and the Security Trustee regarding the perfection of the Lien of the relevant Aircraft Mortgage and Security Documents with respect to such Replacement Engine addressed to the Security Trustee, the Insurer Representative and the Agent and in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative;

(viii)   affix a nameplate on such replacement engine in accordance with Clause 8.5;

(ix)     assign to the Lessor (for further assignment to the Security Trustee) all assignable and remaining engine warranties applicable to such Replacement Engine in a manner consistent with the relevant Engine Warranties Agreement.

(d)     Upon full compliance by the Lessee with the terms of this Clause 9.2 the Lessor will (subject to insurer's salvage rights, if any) transfer to or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it), all of the Lessor's right, title and interest, if any, in and to the replaced Engine by an appropriate instrument, signed by the Security Trustee, releasing the replaced Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.   For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an **Engine** as defined herein.   No Event of Loss with respect to an Engine under the circumstances contemplated by the terms of this Clause 9.2 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

## 9.3     Application of Payments from Governmental Authorities or Others

Any payments (other than insurance proceeds from policies carried (or caused to be carried) by the Lessee the application of which is provided for in Clause 10 and other than proceeds of insurance policies carried by the Lessor or any Secured Party) received at any time by the Lessor or the Lessee from any Government Body or other Person with respect to an Event of Loss of any Aircraft or any Engine shall be paid over to the Security Trustee and applied, subject to Clause 9.6, in accordance with the terms of the Intercreditor Deed.

## 9.4     Requisition for Use of any Airframe and the Engines Installed Thereon

In the event of the requisition for use by any Government Body not constituting an Event of Loss of an Airframe and the Engines installed thereon during the relevant Term, the Lessee shall promptly notify the Lessor, the Security Trustee, the Insurer Representative and the Agent of such requisition, and all of the Lessee's obligations under this Lease shall continue to the extent such obligations are not restricted or curtailed by such requisition and to the same extent as if such requisition had not

FILED DATE: 1/11/2023 2:57 PM   2023L000001

occurred (but the Lessee's obligations to pay Rent for the relevant Aircraft pursuant to Clause 3 and its obligations under Clause 10 shall not be reduced or excused by such requisition).  All payments (and any interest thereon) received by the Lessor or the Lessee for the use of such Airframe and Engines at any time shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied in accordance with the Intercreditor Deed.

**9.5**    **Requisition for Use of an Engine Not Installed on an Airframe**

If an Engine not then installed on an Airframe is requisitioned for use by any Government Body, the Lessee shall replace such Engine or cause it to be replaced by complying with the terms of Clause 9.2 hereof as if an Event of Loss had occurred with respect to such Engine, and (upon compliance by the Lessee as aforesaid) any payments received by the Lessor or the Lessee from with respect to such requisition shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, that if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied to the obligations of the Lessee hereunder as the Lessor shall direct and any excess, shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee.

**9.6**    **Payments to the Lessee**

Any amount referred to in this Clause 9 which is payable or creditable to the Lessee or any Permitted Sub-Lessee shall not be paid or credited to the Lessee or such Permitted Sub-Lessee or, if it has been previously paid to the Lessee or such Permitted Sub-Lessee, shall not be retained by the Lessee or such Permitted Sub-Lessee, if at the time of such payment or credit a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to, applied in accordance with the terms of the Operative Documents and/or held by the Security Trustee as security for the obligations of the Lessee under this Lease and the Operative Documents and at such time as there shall not be continuing any Material Default, Termination Event or Event of Default such amount (together with interest thereon, if any), if then remaining, shall be paid or credited to the Lessee or the Permitted Sub-Lessee (as the case may be).

**10.**    **INSURANCE**

**10.1**    **Aviation Third Party Legal Liability Insurance**

Except to the extent provided in Clauses 10.3 and 10.5, on or before the Delivery Date for an Aircraft, and throughout the Term therefor and for a period extending to two years following the later of (a) the final Basic Rent Payment Date for such Aircraft and (b) the date such Aircraft is returned to the Lessor, the Lessee will carry or cause to be carried at its own expense with insurers of recognized standing which insurers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative, airline liability insurance in respect of such Aircraft including war and allied perils, hi-jacking and other similar risks that are excluded from standard liability coverage to the extent that such insurance is (a) maintained by the Lessee or the Permitted Sub-Lessee with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (b) customarily obtained by carriers with comparable route structures flying similar aircraft or (c) generally required by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures in amounts customary for similar aircraft in the Lessee's fleet (but not less than seven hundred and fifty million Dollars (US$750,000,000) any one occurrence per each aircraft and subject to customary sub-limits for non-aviation coverage and aggregate limits for products liability and war risks coverages) and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet and of the type usually carried by corporations engaged in the same or a similar business, similarly situated with the Lessee or the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Permitted Sub-Lessee, and owning and operating similar aircraft and engines, and which covers risks of a kind customarily insured against by such corporations which shall include general third party legal liability (including war and allied perils), passenger liability, and property damage liability (including cargo, baggage and mail liability).  Any liability insurance carried in accordance with this Clause 10.1 and any policies taken out in substitution or replacement for any of such policies:

(a)     shall be amended to name the Security Trustee, as the contract party (the **Contract Party**) and each of the Lessor, the Lessee, the Lessor Parent, the Agent, the Security Trustee, the Funder, the Insurer Representative, the Insurer Group and their respective successors, members, assigns, officers, directors, shareholders, agents, employees, servants, Affiliates and sub-contractors as additional insureds (the **Additional Insureds**);

(b)     shall provide that in respect of the interests of the Lessor or any other Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that the Additional Insured so protected has not caused, contributed to or knowingly condoned the said act or omission);

(c)     shall provide that there shall be no recourse against the Lessor or any other Additional Insured for the payment of premiums under such policies and that the Insurer Representatives shall waive any right of subrogation against the Additional Insureds; and

(d)     shall provide that, if such insurance is cancelled for any reason whatsoever, or if any material change is made in such insurance that adversely affects the interest of the Lessor or any other Additional Insured, such cancellation or change shall not be effective as to the Lessor or any other Additional Insured for thirty (30) days (seven (7) days, or such other period as is then customarily obtainable in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers (if different from the Lessee's insurance broker) to the Lessee's appointed insurance broker.  The Lessee hereby covenants to cause the Lessee's or the Permitted Sub-Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

Each liability policy (a) shall be primary without right of contribution from any other insurance that is carried by any other Person to the extent that such other insurance provides it with contingent or excess liability insurance with respect to its interest as such in any Aircraft, (b) shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured, (c) shall waive any right of the Aircraft Insurer to any setoff, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Lessee, the Permitted Sub-Lessee, the Lessor or any other Additional Insured to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft) and (d) shall provide for worldwide coverage (except in relation to Excluded Countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk and related perils policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit.

**10.2**   **Aircraft Hull Insurance**

(a)     Except to the extent provided in Clauses 10.3 and 10.5, on or prior to the Delivery Date for each Aircraft and throughout the Term for each Aircraft (and, in the case of the termination of this Lease with respect to an Aircraft pursuant to Clause 14 hereof, at all times following such termination until the sale or other disposition of such Aircraft pursuant hereto) the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessee shall maintain or cause to be maintained in full force and effect, at its own expense and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet, all-risk aircraft hull insurance covering such Aircraft, while flying and on the ground, including coverage of the Engines and Parts while temporarily removed from or not installed on such Aircraft and not replaced with similar components (with flight taxing and ingestion coverage), against loss or damage, of the type (but not necessarily the amount) usually insured against by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning or operating similar aircraft and engines on an agreed-value basis in a Dollar amount not less than 112% of the highest Termination Value for such Aircraft during the applicable insurance period (the **Threshold Value**), and all-risk insurance with respect to each Engine and Part while removed from an Aircraft, and, as to each Engine or Part not installed on an Airframe, not less than the fair market value of such Engine or Part.

(b)    The Lessee shall maintain or cause to be maintained in full force and effect war-risk and related perils insurance and hi-jacking and government confiscation insurance (excluding for confiscation by the Government of Registry) in respect of each Aircraft on an agreed value basis for such Aircraft throughout each policy year, for not less than the amounts set forth in the preceding paragraph in respect of such Aircraft covering each of the following perils (i) insured by the Lessee or the Permitted Sub-Lessee, with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (ii) customarily insured by air carriers with comparable route structures flying similar aircraft, and (iii) generally required to be insured by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures.

(c)    All policies and subsequent policies taken out in accordance with this Clause 10.2 will be issued by insurance companies or underwriters of recognized standing in the international aviation industry or re-insurance companies or underwriters of such standing and through internationally recognized aviation insurance brokers, all of which insurance companies, underwriters and insurance brokers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative. In addition, all such policies and subsequent policies:

(i)    shall be denominated and payable in Dollars and shall be on an agreed value basis without the insurer's right to replace;

(ii)    shall name the Additional Insureds as additional insureds in respect of the legal liability insurances and the Security Trustee as the sole contract party and as loss payee in respect of hull claims that become payable on the basis of a total loss and provide that payment in respect of such claims shall be made to or to the order of the contract parties for application in accordance with the Operative Documents and in respect of all other hull claims the loss will be settled with such Persons as may be necessary to repair the relevant Airframe or Engine;

(iii)    shall provide that in respect of the interests of each Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that such Additional Insured has not caused, contributed to or knowingly condoned the said act or omission);

(iv)    shall provide that there shall be no recourse against the Lessor or any Additional Insured for the payment of premiums under such policies; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(v)      shall provide that, if such insurance is canceled for any reason whatsoever, or if any material change is made in such insurance which adversely affects the interests of any Additional Insured, such cancellation or change shall not be effective as to Additional Insureds for thirty (30) days (seven (7) days, or such other period as is then customarily imposed by in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers to the Lessee's appointed insurance broker. The Lessee hereby covenants to cause the Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

(d)      The hull policy for each Aircraft:

    (i)      shall waive any right of the Aircraft Insurer or any reinsurers to any set-off, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Additional Insureds or any other Person to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft);

    (ii)      if separate hull all risks and war risks policies are arranged, shall contain a 50/50 claims funding clause acceptable to the Security Trustee, the Agent and the Insurer representative (which shall be AVS 103 or similar) in the event of a dispute as to which policy in respect of the hull insurances set forth in this Clause 10.2 shall pay in the event of a loss;

    (iii)      shall provide for worldwide coverage (except for excluded countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit; and

    (iv)      shall have deductibles (not applicable in the case of an Event of Loss or war and allied perils insurance) standard in the  industry in respect of the same model aircraft, which are reasonably acceptable to the Insurer Representative and the Security Trustee and in amounts which are no greater than seven hundred and fifty thousand dollars (US$750,000) and in any event such deductible shall not be greater than those which other international airlines of comparable standing (in the judgement of the Secured Parties' independent insurance advisor after consultation with the Lessee's broker of record) to the Lessee operating comparable aircraft are able to obtain in such market.

(e)      The Lessee may procure endorsements to the relevant insurance policies required to be maintained pursuant to Clause 10 so as to incorporate the terms of AVN 67B (or any successor provision) unto such policies, in which event, to the extent that any provision of any such AVN 67B (or any successor provision) endorsement conflicts or is otherwise inconsistent with the requirements of this Clause 10, then (so long as it shall remain general industry practice to insure aircraft financed by financial institutions on the basis of such endorsement) such endorsement shall be deemed to satisfy the requirements of this Clause 10 to the extent covered by such endorsement.

(f)      As between the Lessor and the Lessee it is agreed that all insurance payments received under policies that the Lessee is required to maintain pursuant to this Clause 10.2, exclusive of any payments received in excess of the then applicable Threshold Value for an Aircraft, as the result of the occurrence of an Event of Loss with respect to an Airframe or an Engine related

FILED DATE: 1/11/2023 2:57 PM   2023L000001

thereto will be applied, unless a replacement is effected in accordance with Clause 9.1 or 9.2 hereof, pursuant to the Intercreditor Deed.

(g)    As between the Lessor and the Lessee the insurance payment of any property damage or loss with respect to an Aircraft (i) that constitutes an Event of Loss, in excess of the then applicable Threshold Value for such Aircraft, shall be paid to the Lessee, and (ii) that does not constitute an Event of Loss with respect to the related Airframe or a related Engine, will be applied in payment (or to reimburse the Lessee), for repairs or for replacement property in accordance with the terms of Clauses 7 and 8, if not already paid for by the Lessee and any balance remaining after compliance with such Clauses with respect to such loss shall, subject as provided below, be paid to and retained by the Lessee or in accordance with Clause 9.3(b) of the Intercreditor Deed.

(h)    Notwithstanding any provision in this Clause 10.2, any amount referred to in this Clause 10.2 which is payable to the Lessee, shall not be paid to the Lessee or, if it has been previously paid directly to the Lessee, shall not be retained by the Lessee, if at the time of such payment a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to and held by the Security Trustee as security for the obligations of the Lessee under this Lease and, during the continuance of such Material Default, Termination Event or Event of Default, shall be applied to the satisfaction of the then due and payable obligations of the Lessee under this Lease, and, at such time as there shall not be continuing any such Material Default, Termination Event or Event of Default, the remainder of such amount shall be paid to the Lessee.

## 10.3    Default

If the Lessee shall default in effecting or maintaining any insurance or if any insurance shall, for any cause become void, the Lessor, the Security Trustee or any other Additional Insured may (but without any obligation to do so and without prejudice to the Lessor's other rights and remedies hereunder) effect and keep up such insurance at the cost of the Lessee and the Lessee will forthwith upon demand repay to the Lessor, the Security Trustee or any other Additional Insured all premiums and other moneys from time to time paid by the Lessor, the Security Trustee or any other Additional Insured in respect of such insurance (which amount shall be certified by the Lessor, the Security Trustee or such other Additional Insured).

## 10.4    Certificates

On or before the Delivery Date for each Aircraft and promptly after the issuance or modification or renewal thereof (but in any event prior to the expiration of any insurance then to be renewed) in form substantially similar to those given prior to or on such Delivery Date, the Lessee will furnish to the Lessor, the Insurer Representative, the Agent and Security Trustee (with sufficient copies to the Funder):

(a)    a certificate of the Lessee's insurance broker or an authorized representative of the Aircraft Insurer describing in reasonable detail the Aircraft Insurances then carried and maintained on such Aircraft, containing an endorsement reflecting the Aircraft Insurances required hereunder and:

    (i)    certifying the date and time of commencement and expiry of each insurance policy;

    (ii)    specifying the deductible amounts and levels of co-insurance, if any, for each type of loss; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     a letter of undertaking from the Lessee's appointed insurance broker with regard to the Aircraft Insurances required hereunder in respect of such Aircraft (in the case of each renewal, in substantially the same form as delivered on the relevant Delivery Date).

**10.5    Notice of Variations**

If any material variation is made to the terms of any of the Aircraft Insurances or Aircraft Reinsurances the Lessee shall immediately give notice to the Lessor, the Insurer Representative, the Security Trustee, the Agent and the Funder of such variation and shall provide such further details in relation thereto as the Lessor, the Insurer Representative, the Security Trustee, the Agent or any Funder may reasonably require.

**10.6    Premiums**

The Lessee shall pay or cause to be paid the premiums (or installments thereof) as required by the terms of such policies and produce to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request receipts in respect of payment of such premiums (or installments thereof) or other evidence of such payments as the Lessor, the Insurer Representative, the Security Trustee or the Agent may reasonably request.  In the case of renewals of such policies, the Lessee shall cause to be provided to the Lessor, the Insurer Representative, the Security Trustee and the Agent evidence of such renewal as soon as practicable and in any event within seven (7) days after the date of renewal and shall give the Lessor, the Insurer Representative, the Security Trustee and the Agent notice of such intended renewal no later than the day before such date and the Lessee shall pay the renewal and other premiums (and installments thereof) as required by the terms of such policies.

**10.7    Insurance Policies**

In the absence of an unqualified opinion or certificate addressed to the Lessor, the Insurer Representative, the Security Trustee and the Agent from the Lessee's or the Permitted Sub-Lessee's insurance brokers (and, if applicable, reinsurance brokers), the Lessor and each Secured Party shall be entitled to full reliance, without exception, that the certificates of insurance (and, if applicable, certificates of reinsurance) delivered pursuant to this Clause 10 do not conflict with the terms and conditions of the underlying insurance (and, if applicable, reinsurance) policies.  Copies of the policies and endorsements and riders amendatory thereof (excluding premium information) with respect to the Aircraft Insurances and any Aircraft Reinsurances, required under this Clause 10 shall be made available to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request for inspection by their respective representatives at the offices of the Lessee or the Permitted Sub-Lessee or the Lessee's or the Permitted Sub-Lessee's insurance brokers during normal business hours.

**10.8    Reinsurance**

(a)     Unless the Aircraft Insurances maintained by the Lessee in accordance with the provisions in this Clause 10 are maintained with Lloyd's of London or in other internationally recognized aviation insurance markets with insurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee and the Insurer Representative, then the Lessee shall procure that the insurers shall maintain reinsurance in all respects satisfactory to the Security Trustee and the Insurer Representative covering identical subject matter and risk for an amount (which shall not be less than ninety five percent (95%) of the relevant coverage amount) with Lloyd's of London or in other internationally recognized aviation insurance markets with reinsurers of international standing and repute who normally participate in aircraft insurance programmes

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and who are acceptable to the Security Trustee, the Agent and the Insurer Representative. Any reinsurance shall:

(b)    be on the same terms as the original insurances;

(i)    contain a "cut-through" clause satisfactory to the Security Trustee, the Agent and the Insurer Representative providing that, in the event of any claim arising under the reinsurance, the reinsurers thereunder shall, in lieu of payment to the original insurer or its successors in interest and assigns, pay to or to the order of the Contract Party as loss payee that portion of any loss due for which the reinsurers thereunder would but for this cut-through clause be liable to pay the original insurer or its successors in interest and assigns, it being understood and agreed (and the Lessee agreeing to obtain the agreement of its original insurers for the benefit of the Lessor, the Agent, the Security Trustee, the Insurer Representative, the other Secured Parties and the reinsurers) that any such payment by the reinsurers thereunder shall fully discharge and release the original insurers from any and all further liability in connection therewith; and

(ii)    provide for payment to be made directly to or to the order of the Contract Party as provided herein notwithstanding (x) any bankruptcy, insolvency, liquidation or dissolution of the original insurer(s), and/or (y) that the original insurer(s) have made no payment under the primary insurance policies.

**10.9    Location**

Except as otherwise expressly permitted herein, the Lessee shall not at any time do or suffer to be done to any Aircraft, any Engine or any Part thereof or the premises on which the same may be located, or bring or keep, or permit to be brought or kept, anything therein or thereon or operate any Aircraft, any Engine or any Part thereof or take the same to or keep the same in, or permit the same to be taken to or kept in, a place where or whereby any insurance required hereunder may be rendered void or voidable or no longer in force or coverage thereunder shall be limited, without first arranging at its own expense such additional Insurance coverage as shall be necessary to avoid such result, such additional insurance to be in form and substance satisfactory to the Lessor, the Security Trustee and the Insurer Representative.  The Lessee will pay or cause to be paid all additional insurance premiums required on account of the additional risk caused by the use to which any Aircraft is put as aforesaid.

**10.10    Notice from the Lessee**

The Lessee will forthwith notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of any event (including but not limited to an occurrence) which will or may give rise to a claim under the Aircraft Insurances required in Clause 10.2, in excess of an amount in any currency equal to three million Dollars (US$3,000,000) in respect of an Airframe and one million Dollars (US$1,000,000) in respect of an Engine, but nothing in this Clause 10.10 shall prejudice the payment provisions of Clause 10.2.  Upon completion of the repairs in respect of a loss in which insurers have paid proceeds towards such repair, the Lessee shall deliver to the Lessor, the Insurer Representative, the Security Trustee and the Agent an engineer's certificate certifying that such repairs have been completed in accordance with the manufacturer's recommended procedures.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**10.11   Certain Undertakings in Respect of the Aircraft Insurances**

(a)   The Lessee shall not and shall procure that no Permitted Sub-Lessee shall:

    (i)   make any modification to the Aircraft Insurances or any Aircraft Reinsurances required hereunder which is materially adverse to the interest of the Lessor, the Insurer Representative, the Security Trustee, any Secured Party or any other Additional Insured;

    (ii)   do, or omit to do, or permit to be done, or left undone anything whereby any required Aircraft Insurance or any Aircraft Reinsurance would or might reasonably be expected to be rendered, in whole or in part, invalid or unenforceable and, without prejudice to the foregoing, not use or keep or permit any Aircraft or any Engine or any Part thereof, to be used or kept for any purpose, in any manner or in any place not covered by required Aircraft Insurances or any Aircraft Reinsurances (except as otherwise expressly permitted herein); and

    (iii)   discriminate against any Aircraft relative to other aircraft of the same or comparable model within the Lessee's or the Permitted Sub-Lessee's fleet as to the coverage of the Aircraft Insurances required under this Clause 10.

(b)   The Lessee shall as soon as practicable, but in no event later than 48 hours, upon receipt of notice of cancellation of the war risks and related perils insurance due to armed hostilities in the area where any Aircraft may then be located or scheduled to operate, remove any Aircraft or cause any Aircraft to be removed to the United Kingdom  (or such other location at which such Aircraft shall remain covered by war risks and related perils insurance) and shall cause such Aircraft to remain in such location until such war risks and related perils insurance is reinstated and compliance herewith shall cure any related Termination Event or Event of Default under Clause 13.1(c), provided, however, that the Lessee need not comply with the provisions of this paragraph (b) if to do so would cause the Lessee to breach any other obligation contained herein.

(c)   The Lessee shall be responsible for the payment of any applicable deductibles or costs of any Aircraft Insurances and any Aircraft Reinsurances.

**10.12   Reimbursement**

The Lessee shall reimburse the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative, as the case may be, on demand for the amount of any premiums or premium installments which such party may pay pursuant to this Clause 10 together with interest thereon, for the period from and including the date of such payment by such party to but excluding the date on which the same is paid in full by the Lessee at the applicable Post-Default Rate.

**10.13   Change in Industry Practice; Additional Requirements**

In the event that there is a material change in the generally accepted industry-wide practice with regard to the insurance of aircraft (whether relating to all or any of the types of insurances required to be effected under the foregoing provisions of this Clause 10) such that the insurances required pursuant to the provisions of this Clause 10 are insufficient to protect the interests of the Lessor, the Insurer Representative, the Security Trustee or any of the other Additional Insureds hereunder, the Insurer Representative and the Security Trustee shall, to the extent reasonably practicable, consult with the Lessee, and the insurance requirements set forth in this Clause 10 shall be varied at the request of the Insurer Representative or the Security Trustee so as to include such additional or varied requirements as may be reasonably necessary to ensure that the insurances and reinsurances as

FILED DATE: 1/11/2023 2:57 PM   2023L000001

so varied shall provide comparable protection to that which it would have provided if such change in the generally accepted industry-wide practice had not occurred.

**10.14   Compliance with Legal Requirements**

In addition to the foregoing provisions of this Clause 10 the Lessee shall and shall procure that any Permitted Sub-Lessee shall comply with all legal requirements as to the insurance of any Aircraft or any Engine which may from time to time be imposed by the Applicable Laws of any Aircraft's registration or of any jurisdiction to or from or over which any Aircraft or any Engine shall be flown or in which the same shall be located.

**10.15   Additional Insurance**

The Lessee shall have the right to carry insurance in excess of the amounts required hereunder and additional and separate insurance for its own benefit at its own expense; provided that, no such insurance shall result in a duplicate payment on a loss, or shall impair in any way (whether or not material) the rights of the Lessor, the Insurer Representative, the Security Trustee, and other Secured Party or any other Additional Insured under this Lease and the Operative Documents.  Proceeds of such insurance shall be payable directly to the Lessee.

**10.16   Additional Terms of Insurance**

The Lessee agrees to ensure that the insurance policies in respect of all Insurances referred to in Clauses 10.1 and 10.2 above shall at all times be underwritten in full.

**10.17   Self Insurance**

Except for the deductibles permitted by Clause 10.2 hereof or otherwise permitted by the Lessor, the Security Trustee and the Insurer Representative, the Lessee shall not be permitted to self-insure against any of the risks required to be covered by the insurance described in this Clause 10.

**10.18   Date Recognition Exclusion**

If the Aircraft Insurances are subject to any exclusion relating to date recognition, the Lessee shall obtain write-backs covering such exclusions to the fullest extent available in the international aviation insurance markets and in accordance with good and prudent international aviation insurance practice.

**10.19   Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under this Clause 10 and shall take immediate action to restore any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty.

**11.     ABSOLUTE OBLIGATIONS**

(a)     This Lease is a net lease, and it is intended that the Lessee shall pay or cause to be paid all costs, charges, fees (including Eurocontrol fees), assessments, expenses, withholdings and Taxes of every character whether foreseen or unforeseen, ordinary or extraordinary, incurred in connection with or arising out of the use, operation, maintenance, repair, modification,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

alteration, replacement and leasing of any Aircraft, including the costs, expenses and Taxes and similar levies set forth in the Participation Agreement.  The Lessee's obligation to pay all Rent and to perform all other obligations hereunder is absolute and unconditional and shall not be affected or reduced by any circumstances or for any reason, including:

(i)     any setoff, counterclaim, recoupment, defense or other right which the Lessee may have against the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party, the Manufacturer, the Engine Manufacturer or any Person providing services with respect to any Aircraft, or any other Person, for any reason whatsoever (whether in connection with the transactions contemplated hereby or otherwise), including any breach by the Lessor of its warranties contained herein or in the other Operative Documents;

(ii)    any defect in the title, airworthiness, eligibility of registration under any Applicable Law, condition, design, operation, or fitness for use of, or any damage to or loss or destruction of, any Aircraft or any portion thereof (subject to the provisions of Clause 9 hereof), any interruption or cessation in the use of or possession thereof by or availability to the Lessee for any reason whatsoever, whether arising out of or related to an act or omission of the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, Manufacturer, Engine Manufacturer or any other Person;

(iii)   any Lien with respect to any Aircraft or any portion thereof;

(iv)    the invalidity or unenforceability or lack of due authorization or other infirmity of this Lease or any absence of right, power or authority of any Person to enter into any Operative Document;

(v)     any Taxes;

(vi)    any change, waiver, extension, indulgence or liability or other act or omission in respect of any liability or obligation of the Lessor, the Security Trustee, the Funder, the Agent or the Insurer Representative or any other Secured Party;

(vii)   any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation, receivership or other like proceeding relating to the Lessee, the Lessor, the Lessor Parent, the Funder or the Security Trustee or any disaffirmance, rejection or other action taken with respect to this Lease or any other Operative Document by the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party or any other Person, or by any court, in any such proceeding;

(viii)  the Lessee at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of sovereignty or otherwise, which immunity, if any, the Lessee hereby expressly waives;

(ix)    any restrictions applicable to the Lessee on the transfer or conversion of currency; or

(x)     any other circumstances or happening of any nature whatsoever, whether or not similar to any of the foregoing; it being the express intention of the Lessor and the Lessee that all Rent payable hereunder shall be payable in all events, unless the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease or the other Operative Documents.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     This Lease shall not, except as expressly set forth herein, be cancellable by the Lessee and, except as expressly set forth elsewhere in this Lease, the Lessee hereby waives any and all rights which it may now have or which at any time hereafter may be conferred upon it, by statute or otherwise, to terminate, abate, cancel, quit, reduce, defer, suspend or surrender this Lease or any Aircraft or any obligation imposed upon the Lessee hereunder or under the other Operative Documents (including payment of Rent), except in accordance with the terms hereof and thereof.

(c)     If for any reason whatsoever this Lease shall be terminated in whole or in part by operation of Applicable Law, except as specifically provided herein, the Lessee, if and to the extent that the Lessee retains the use and possession of any Aircraft, nonetheless agrees to pay to the Lessor an amount equal to each Basic Rent payment and any Supplemental Rent payment in respect of such Aircraft at the time such payments would have become due and payable in accordance with the terms hereof and the other Operative Documents had this Lease not been terminated in whole or in part and so long as such payments are made and all other terms and conditions hereof are complied with by the Lessee, the Lessor and the Lessee will deem this Lease to remain in full force and effect.

(d)     Nothing contained in this Lease shall be construed as a waiver of the Lessee's right to seek any claim against the Lessor, the Security Trustee, any Secured Party or any other Person arising out of the transactions contemplated by the Operative Documents in a separate proceeding or by compulsory counterclaim.

## 12.     ASSIGNMENT

The terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Except as otherwise provided in Clause 7.4, neither party hereto shall, without the prior written consent of the other and except as expressly permitted by the Operative Documents, assign any of its rights or obligations hereunder.

## 13.     LEASE EVENTS OF DEFAULT AND TERMINATION EVENTS

Other than the events referred to in paragraphs (f), (p), (t) or (u) which, if they do not arise as a result of any act or omission of any Lessee Group Member, shall constitute "Termination Events" (but, for the avoidance of doubt,  in all other circumstances shall constitute "Lease Events of Default"), the following events shall constitute "Lease Events of Default" hereunder, (whether any such event shall be voluntary or involuntary or come about or be effective by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, the United States or any other jurisdiction, or the administration or interpretation thereof) and each such Lease Event of Default or Termination Event shall be deemed to exist and continue so long as, but only so long as, it shall not have been remedied:

(a)     the Lessee shall fail to pay when due any amount of Basic Rent or Termination Value on the date such Basic Rent or Termination Value is due, and such failure shall continue unremedied for three (3) Business Days following the due date therefor;

(b)     the Lessee shall fail to pay when due any amount of Supplemental Rent or any other amount due and owing from the Lessee under this Lease (other than as specified in Paragraph (a) above) or any other Operative Document and such failure to pay shall continue for a period of five (5) Business Days after demand has been made on the Lessee;

(c)     the Lessee shall fail to carry and maintain or fails to procure that any Permitted Sub-Lessee carry and maintain Aircraft Insurances (including any required Aircraft Reinsurances)

FILED DATE: 1/11/2023 2:57 PM   2023L000001

required to be maintained in accordance with the provisions of Clause 10, or the Lessee shall fail to perform or observe any covenant, condition or agreement contained in Clause 7.6(a) or 10.11 hereof or Clause 8(g) of the Participation Agreement;

(d)     any Lessee Obligor shall have failed to perform or observe in any material respect any other covenant or agreement (ie, other than those covered by the preceding paragraph (a), (b) or (c) of this Clause 13) to be performed or observed by it hereunder or under any other Operative Document to which it is a party, and such failure is unremediable, or if remediable and the Lessee is diligently proceeding to remedy such failure, shall continue unremedied for a period of thirty (30) days after the earlier of (i) the Lessee obtaining actual knowledge of such failure or (ii) notice to the Lessee thereof has been given by the Lessor, the Security Trustee or the Insurer Representative;

(e)     any representation or warranty of any Lessee Obligor under any of the Operative Documents or in any document or certificate furnished by the Lessee in connection therewith or pursuant thereto shall be untrue, inaccurate or misleading in any material respect as at the time when made or furnished;

(f)     any license, consent, approval or authorization of, or any filing or registration with, any governmental authority or agency necessary for the performance by a Lessee Obligor of its obligations under this Lease or any other Operative Document or in connection herewith or therewith (including, without limitation, the registration of any Aircraft or the any Mortgage or any Security Agreement) or the Certificate of Airworthiness issued in respect of any Aircraft shall be revoked, not applied for or not issued or shall cease to remain in full force (or, as applicable, is not duly renewed upon the terms consistent with the original approval or otherwise satisfactory to the Security Trustee and the Insurer Representative) or any of the foregoing shall be modified and any such revocation, non-application or issuance or modification would materially adversely affect (in the opinion of the Security Trustee or the Insurer Representative) the rights and remedies of the Lessor hereunder or of any Secured Party under the Operative Documents;

(g)     the Lessee or either Guarantor shall apply for or consent to the appointment of, or the taking of possession by, a receiver, an examiner, a trustee, custodian or liquidator of itself or of a substantial part of its property, or the Lessee or either Guarantor shall admit in writing submitted in connection with judicial or other similar procedures its inability to pay its debts generally as they come due, shall announce a moratorium on payment of its debts or any class of its debts, or shall make a general assignment for the benefit of creditors;

(h)     the Lessee or either Guarantor shall file a voluntary petition or commence a case in bankruptcy or a voluntary petition or an answer seeking reorganization in a proceeding under any bankruptcy or insolvency laws (as now or hereafter in effect) or an answer admitting the material allegations of a petition filed against any the Lessee or either Guarantor in any such proceedings, or the Lessee or either Guarantor shall by voluntary petition, answer or consent to or seek relief under the provisions of any other now existing or future bankruptcy, insolvency, reorganization or other similar law providing for the reorganization or winding-up of corporations, or providing for an agreement, composition, extension or adjustment with its creditors;

(i)     an order, judgment or decree shall be entered in any proceeding by any court of competent jurisdiction appointing, without the consent of such Lessee or either Guarantor, a receiver, trustee, custodian or liquidator of the Lessee or either Guarantor or of any substantial part of its property, or sequestering any substantial part of the property of such Lessee or either Guarantor, and any such order, judgment or decree of appointment or sequestration shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

remain in force undismissed, unstayed or unvacated for a period of sixty (60) days after the date of entry thereof;

(j)     a petition against the Lessee or either Guarantor in a proceeding under any bankruptcy laws or other insolvency laws as now or hereafter in effect shall be filed in a court of competent jurisdiction and shall not be withdrawn or dismissed within sixty (60) days thereafter, or if, under the provisions of any law providing for reorganization or winding-up of corporations which may apply to the Lessee or either Guarantor any court of competent jurisdiction shall assume jurisdiction, custody or control of the Lessee or of any substantial part of its property or any Aircraft and such jurisdiction, custody or control shall remain in force unrelinquished, unstayed or unterminated for a period of sixty (60) days;

(k)     the Lessee or either Guarantor threatens to suspend making payments or declares a moratorium or seeks a restructuring of its Indebtedness or the Lessee shall fail to pay when due (after giving effect to any applicable grace periods) any principal of or interest or scheduled payments in respect of any of its other Indebtedness (i) aggregating ten million Dollars (US$10,000,000) or more (or the equivalent thereof in any currency) or (ii) in respect of any Other Indebtedness, and the lender(s), the funder(s) or an agent or trustee thereof in respect of such Indebtedness declares or thereby becomes entitled to declare such Indebtedness to be due and payable prior to its scheduled maturity;

(l)     any additional procedure similar to those referred to in subparagraphs (g), (h), (i) and (j) above for the relief of financially distressed debtors under any Applicable Law or any other competent jurisdiction is entered into by the Lessee or either Guarantor voluntarily or involuntarily, and is not withdrawn or dismissed within sixty (60) days thereafter;

(m)     any of the events referred to in subparagraphs (g) to (l) above occurs in relation to any Permitted Sub-Lessee, and:

    (i)     the Lessee fails to inform the Lessor, the Security Trustee and the Insurer Representative immediately upon becoming aware of such event; or

    (ii)    the Lessee fails to terminate the leasing of the Aircraft pursuant to the relevant Permitted Sub-Lease immediately upon written request from the Lessor, the Security Trustee or the Insurer Representative.

(n)     a final judgment or judgments for the payment of money in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, shall be rendered against the Lessee or either Guarantor and the same shall remain undischarged for a period of sixty (60) days during which execution of such judgment shall not be effectively stayed, or an attachment or attachments or other Lien or Liens in respect of such judgment or judgments shall be issued or entered against any of the property of the Lessee or either Guarantor, for an amount in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, and shall remain undischarged or unbonded for thirty (30) days, except, in each case when such is being contested in good faith by appropriate proceedings that do not involve any substantial risk of the sale, seizure, forfeiture or loss of Collateral or title thereto, interest therein or use thereof;

(o)     the existence, validity, enforceability or priority of the Lessor's rights, title and interests to any Aircraft is challenged by any Lessee Obligor or any other Person claiming through the Lessee or this Lease or any other Operative Document becomes wholly or in part to a material extent invalid, illegal or unenforceable for any reason;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(p)  the validity or enforceability (but not any particular interpretation) of any provision of any Operative Document is contested through appropriate proceedings by the Lessee or any Affiliate thereof or by any Government Body seeking to establish the invalidity or unenforceability thereof;

(q)  the Lessee or any Permitted Sub-Lessee shall:

   (i)  (in the case of a Permitted Sub-Lessee) cease, or announce its intention to cease, to conduct its business as a commercial scheduled airline;

   (ii)  other than in circumstances permitted by Clause 8(g) of the Participation Agreement, assign, lease or otherwise dispose of all or any material part of the assets or property (whether by a single transaction or a number of related or unrelated transactions and whether at the same time or over a period of time) comprising the its aircraft or aircraft related business; or

   (iii)  (in the case of a Permitted Sub-Lessee) cease to hold, whether by virtue of the revocation, suspension or non-renewal thereof or otherwise, any air transport license or its equivalent required to enable the it to carry out its principal business or the franchises, concessions, permits, rights or privileges required for the conduct of the business or operations of it shall be revoked, canceled or otherwise terminated or the free and continued use and exercise thereof curtailed or prevented, and as a result of any of the foregoing the preponderant business activity of it  shall cease to be that of a commercial airline;

(r)  there shall have occurred and be continuing any "Event of Default" under as and defined in any Other Operative Document;

(s)  The Lessee breaches its obligations under clause 6 or clause 23 of the Participation Agreement;

(t)  there shall be any change (or such change shall be enacted or made by decree or otherwise and shall be scheduled and become thereafter effective) in the laws, regulations or treaties of the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, (while it is leasing an Aircraft from the Lessee) any Permitted Sub-Lessee, the Cayman Islands, Ireland the United States or any government or political agency, subdivision or instrumentality thereof which materially adversely affects the validity, legality or perfection of the Lessor's title to any Aircraft, or any Secured Party's rights in any Aircraft under any Security Document, or which materially adversely affects the Lessor's or any Secured Party's interests under this Lease or materially adversely affects the Lessee's ability to perform or comply with its obligations under this Lease or the legality of such performance or compliance;

(u)  any Government Body shall have condemned, seized or appropriated all or any substantial part of the property of the Lessee or either Guarantor which is likely materially and adversely to affect the ability of such the Lessee or either Guarantor to perform its obligations under the Operative Documents; and/or

(v)  any other event occurs (other than an Event of Loss) or any other circumstance arises which is likely materially and adversely to affect the ability or legal obligation of the Lessee to perform its obligations under any Operative Document to which it is a party.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 14.    REMEDIES

(a)    Upon the occurrence of any Event of Default or a Termination Event and at any time thereafter so long as the same shall be continuing, the Lessor may (without prejudice to any other rights of the Secured Parties under this Lease or the other Operative Documents), at its option, (in the case of any Event of Default) accept such repudiation and by notice to the Lessee declare this Lease to be in default or a Termination Event to have occurred and (in each case) by notice to the Lessee may, at its option, terminate any commitment of the Lessor to lease any Aircraft for which the relevant Delivery Date has not yet occurred (provided, that upon the occurrence of any Event of Default described in Clause 13.1(g)-(l), this Lease shall automatically be deemed in default and the Lessor's commitment shall automatically terminate); and at any time after this Lease shall be declared or deemed to be declared to be in default or a Termination Event to have occurred under this Clause 14, the Lessor may, so long as the Lessee shall not have remedied all outstanding Events of Default or Termination Events, exercise one or more of the following remedies with respect to all or any part of any Aircraft as the Lessor in its sole discretion shall elect:

(i)    the Lessor may demand that the Lessee pay the Lessor, and the Lessee shall pay to the Lessor, all Basic Rent (for all Aircraft) that has accrued but remains unpaid, together with the then applicable Termination Value for such Aircraft, computed on the date of final payment in full thereof, all Supplemental Rent then due and payable by the Lessee hereunder and all amounts then due and payable by the Lessee to the Lessor or any Secured Party under all other Operative Documents, and upon the indefeasible payment of such amount and all Supplemental Rent then due and payable by the Lessee hereunder, the Term for such Aircraft shall terminate;

(ii)    the Lessor shall be entitled in addition to making any demand referred to in paragraph (a) above:

(A)    to cause the Lessee upon demand of the Lessor (provided that such demand shall be deemed to have been given if the Lessor is stayed by operation of law from making such demand) and at the Lessee's expense, to return promptly, and the Lessee shall return promptly, all or such part of any Aircraft, and the Manuals and Technical Records relating thereto, as the Lessor may so demand, to the Lessor in the manner and condition required by, and otherwise in accordance with all the provisions of, Clause 5 as if such Aircraft was being returned at the end of the Term for such Aircraft, or if the Lessee does not so deliver such Aircraft or the Manuals and Technical Records relating thereto, the Lessor, at its option, may enter upon the premises where all or any part of such Aircraft and the Manuals and Technical Records relating thereto are located and take immediate possession of and remove the same (together with any engine or part which is not an Engine or Part associated with such Aircraft but which is installed on the relevant Airframe or stored with or attached to any relevant Engine, subject to all of the rights of the owner, lessor, lienor or secured party of such engine or part) by summary proceedings or otherwise all without liability accruing to the Lessor for or by reason of such entry or taking of possession, whether for restoration of damage to property caused by such taking or otherwise, provided that all actions of the Lessor in this respect are reasonable and necessary, and the Lessor may institute proceedings to repossess such Aircraft in any jurisdiction where such Aircraft may be located, and provided further that if at any time after the Lessor has exercised its rights under this paragraph (A), the Lessee shall make the payments referred to in paragraph (a) above, the Term for such Aircraft shall terminate;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(B)     following repossession of an Aircraft pursuant to Clause 14(b)(i), to sell such Aircraft at public or private sale, as the Lessor may determine; provided that the Lessor shall apply the proceeds of any sale in the manner set forth in the Intercreditor Deed, and the Lessor agrees to give the Lessee at least ten (10) Business Days' prior notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article 8(4) of the Convention) of the date fixed for any public sale of such Aircraft or of the date on or after which will occur the execution of any contract providing for any private sale thereof, and any such sale shall be conducted so as to afford the Lessee a reasonable opportunity to bid; and

(C)     the Lessor may exercise any other right or remedy which may be available to it as a secured party under Applicable Law or under the Cape Town Convention, including, without limitation, all rights and remedies under Chapter III of the Convention and Chapter II of the Protocol.  the Lessor hereby agrees to give the Lessee at least fifteen (15) days' notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article IX(6) of the Protocol) as set forth in Article IX(6) of the Protocol in connection with a proposal to procure the de-registration and export of an Aircraft without a court order.  the Lessee expressly agrees to permit the Lessor to obtain from any applicable court, pending final determination of any claim resulting from an Event of Default or Termination Event hereunder, speedy relief in the form of any of the orders specified in Article 13 of the Convention and Article X of the Protocol as the Lessor shall determine in its sole and absolute discretion, subject to any procedural requirements prescribed by Applicable Laws.

(b)     In addition, the Lessee shall be liable, except as otherwise provided above, for any and all unpaid Supplemental Rent due hereunder before, after or during the exercise of any of the foregoing remedies and for all legal fees and other costs and expenses actually incurred by the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative by reason of the occurrence of any Event of Default or Termination Event or the exercise of the Lessor's remedies with respect thereto, including (i) all costs and expenses incurred in connection with the return of the relevant Aircraft in accordance with the terms of Clause 5 or in placing the relevant Aircraft in the condition and airworthiness required by such Clause and (ii) any other costs and expenses that the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative may incur in connection with the retaking, holding, storage, export, deregistration and preparing for sale of the relevant Aircraft and other like action or that the Lessee has agreed to assume in any other Operative Document or pursuant to Applicable Law.  Except as otherwise expressly provided above, no remedy referred to in this Clause 14 is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above; and the exercise or beginning of exercise by the Lessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by the Lessor of any or all of such other remedies.  No express or implied waiver by the Lessor of, and no course of dealing by it with respect to, any Event of Default or Termination Event shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default or Termination Event.

(c)     The Lessee hereby consents to the exercise by the Lessor of the remedies granted herein and in the Cape Town Convention.  The Lessee acknowledges and agrees that the Lessor may exercise such of the foregoing remedies as it shall determine in its sole discretion and none of the foregoing remedies is manifestly unreasonable.  To the extent permitted by Applicable Law, the Lessee and the Lessor hereby agree that paragraph 2 of Article 13 of the Convention shall not apply to this Lease or to the exercise of any remedy by the Lessor

under this Lease or the Cape Town Convention.  Following the occurrence of an Event of Default or Termination Event, the Lessee agrees to immediately discharge, upon demand by the Lessor or the Security Trustee, any registration made with the International Registry in favour of the Lessee.

## 15.    FURTHER ASSURANCES; INVESTMENT OF SECURITY FUNDS

### 15.1    Further Assurances

(a)    The Lessee and the Lessor shall from time to time, at the cost and expense of the Lessee, do and perform such other and further acts and duly execute and deliver such further documents and assurances as may be required by Applicable Laws or requested by the other party to establish, maintain and protect the respective rights and remedies of the other party and to carry out and effect the intent and purpose of this Lease including, if requested by the Lessor, the Security Trustee, the Agent  or the Insurer Representative and at the expense of the Lessee:

   (i)    the execution and delivery of supplements hereto or to the other Operative Documents, in recordable form, subjecting to this Lease or to the other Operative Documents, any replacement or substitute airframe or engine;

   (ii)    the recording or filing of counterparts hereto or thereto, in accordance with the laws of such jurisdictions in which any Aircraft is based as the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee; and

   (iii)    the registration of any interest, assignment or subordination with the International Registry to preserve, protect, perfect or establish priority in respect of any Aircraft Object or Associated Right covered by or related to this Lease, the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee.

(b)    The Lessee shall be solely responsible for obtaining all required consents and approvals of, giving all required notices to, performing all required registrations and filings for recordation with, and taking all other necessary actions in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, any Guarantor the jurisdiction of incorporation or formation of the Lessor, England and Wales and/or the United States of America including any governmental or political agency, subdivision or instrumentality thereof.

(c)    Without limiting the foregoing, the Lessee shall cause this Lease, and any and all additional instruments which shall be executed pursuant to the terms hereof, to be kept, filed, deposited or recorded, at all times, in the International Registry and in such places in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, the jurisdiction of incorporation or formation of the Lessor, the United States of America, England and Wales and such other jurisdictions in which any Aircraft is based as the Lessor, the Security Trustee, the Agent, any Funder or the Insurer Representative may reasonably request in order to perfect and preserve the rights of the Lessor, the Security Trustee, the Agent, the Funder, the Insurer Representative or the other Secured Parties hereunder, and furnish to the Lessor, the Insurer Representative, the Agent, Funder and the Security Trustee an opinion or opinions of counsel or other evidence satisfactory to the Lessor, the Insurer Representative and the Security Trustee of each such filing, deposit or recordation and, without limitation of any of the foregoing, at the reasonable request of the Lessor, the Insurer Representative, the Agent, any Funder or the Security Trustee, promptly

FILED DATE: 1/11/2023 2:57 PM   2023L000001

correct any defect, error or omission which may at any time hereafter be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof and, at the request of the Lessee, the Lessor shall promptly correct any defect, error or omission which may at any time be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof.  Without limiting any of the foregoing, the Lessee will co-operate fully with the Lessor, the Security Trustee, the Agent, the Funder and the Insurer Representative for obtaining the deregistration of any Aircraft and any required export licenses, when requested by the Security Trustee upon any return of any Aircraft required hereunder.

**15.2    Security Funds**

(a)    Notwithstanding anything in this Lease to the contrary, if a Material Default or Event of Default or Termination Event  under this Lease shall have occurred and be continuing or if the Lessor (or the Security Trustee, as the Lessor's assignee) is holding funds pending replacement of any Airframe and/or Engines pursuant to Clause 9, all amounts otherwise payable to the Lessee hereunder shall be paid to the Lessor and shall be held by the Lessor (or, if either Security Agreement shall not have been discharged, shall be paid to and held by the Security Trustee) as security for the obligations of the Lessee under this Lease, and, at such time as there shall not be continuing such Material Default, Termination Event or Event of Default or such replacement is complete, such amounts, net of any amounts theretofore properly applied to the Lessee's obligations hereunder, shall be paid to the Lessee or as the Lessee may direct.

(b)    All funds held by the Security Trustee hereunder shall be held as Collateral under the Lessee Security Agreement to secure, inter alia, the repayment of the Loans and the other amounts expressed to be secured thereunder and applied as provided therein.

**16.    NOTICES**

All notices, consents and other communications hereunder shall be given in accordance with clause 13(c) of the Participation Agreement.

**17.    MISCELLANEOUS; GOVERNING LAW**

(a)    Any provision of this Lease that is prohibited or unenforceable in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and shall not invalidate or render unenforceable the other provisions hereof in any jurisdiction.  To the extent permitted by Applicable Law, the Lessee hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.  No term or provision of this Lease may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought and only as permitted by the Operative Documents.  The Clause and paragraph headings in this Lease and the table of contents are for convenience of reference only and shall not modify, define, expand or limit any of the terms or provisions hereof.

(b)    This Lease and any non-contractual obligations arising out of or in connection with it are governed by English law.

(c)    The provisions of clause 13(d) of the Participation Agreement, in so far as they relate to any dispute between the Lessor and the Lessee, shall apply hereto as if set out in this Agreement, *mutatis mutandis*.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(d)     To the extent that the Lessee may be or hereafter become entitled, in any jurisdiction in which judicial proceedings may at any time be commenced with respect to this Lease, to claim for itself or its property, assets or revenues immunity (whether by reason of sovereignty or otherwise) from suit, jurisdiction of any court, attachment prior to judgment, attachment in aid of execution of a judgment, set-off, execution of judgment or from any other legal process, and to the extent that in any such jurisdiction there may be attributed any such immunity (whether or not claimed), the Lessee hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity.

(e)     The payment obligations of the Lessee payable under this Lease and any other Operative Document (the **payor**) expressed to be payable thereunder in one currency (the **first currency**) shall not be discharged by an amount paid in another currency (the **second currency**), whether pursuant to a judgment or otherwise, to the extent that the amount so paid on prompt conversion to the first currency under normal banking procedures does not yield the full amount of the first currency due thereunder, and the payor shall indemnify the recipient of such payment (the **payee**) against any such shortfall; and in the event that any payment by the payor, whether pursuant to a judgment or otherwise, upon conversion and transfer does not result in payment of such amount of the first currency, the payee shall have a separate cause of action against the payor for the additional amount necessary to yield the amount due and owing to the payee.

(f)     If it is necessary to determine for any reason other than that referred to in Clause 17.1(e) above the equivalent in the first currency of a sum denominated in the second currency, the rate of exchange used shall be that at which in accordance with normal banking procedures the Security Trustee could purchase the first currency with the second currency on the Business Day on which such determination is to be made (or, if such day is not a Business Day, on the next preceding Business Day).

(g)     This Lease may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Lease.

(h)     Except to the extent expressly provided herein, any terms of this Lease which expressly incorporate any provisions of the Cape Town Convention shall prevail in the case of any conflict with any other provision contained herein.  Each of the parties hereto acknowledges and agrees that for purposes of the Cape Town Convention (to the extent applicable hereto), separate rights may exist with respect to each Airframe and Engine.

## 18.     SECURITY FOR THE LESSOR'S OBLIGATION

(a)     In order to secure the repayment, inter alia, of the Secured Obligations, the Lessor has agreed in the Lessor Security Agreement, among other things, to assign to the Security Trustee its right, title and interest in and to this Lease, including all Associated Rights related thereto, subject to the reservations and conditions therein set forth.  The Lessee hereby consents to such assignment and acknowledges receipt of a copy of the Security Agreement it being understood that such consent shall not affect any requirement or the absence of any requirement for any consent under any other circumstances.

(b)     Until the Lien of the Lessor Security Agreement has been released:

(i)      the Lessee shall, notwithstanding anything herein to the contrary, make all payments of Rent and all other amounts payable hereunder in accordance with clause 13 of the Participation Agreement and such payments shall not be subject to any defence, counterclaim, set-off or other right or claim of any kind which the Lessee may be

FILED DATE: 1/11/2023 2:57 PM   2023L000001

able to assert against the Lessor or any other Person in an action brought by any thereof on this Lease;

(ii)     all rights of the Lessor with respect to this Lease (including all consent, waiver and notice rights), any Aircraft, any Airframe, any Engine or any Part thereof, to the extent set forth in and subject in each case to the exceptions set forth in the Lessor Security Agreement, shall be exercisable by the Security Trustee (to the exclusion of the Lessor); and

(iii)    all documents, notices, certificates and opinions of counsel sent by the Lessee to the Lessor shall also be sent to the Security Trustee.

## 19.     LESSOR'S RIGHT TO PERFORM FOR LESSEE

If the Lessee fails to make any payment of Rent required to be made by it hereunder or fails to perform or comply with any of its agreements contained herein, the Lessor or the Security Trustee may (but shall be under no obligation to) itself make such payment or perform or comply with such agreement, and the amount of such payment and the amount of the reasonable expenses of the Lessor or the Security Trustee incurred in connection with such payment or the performance of or compliance with such agreement, as the case may be, shall be deemed Supplemental Rent, payable by the Lessee upon demand together with interest thereon at the applicable Post-Default Rate.

## 20.     ENGLISH LANGUAGE PREVAILS

For the avoidance of doubt, the Lessor and the Lessee agree any translation of this Lease shall not apply in construing this Lease and that the English version of this Lease shall govern for all purposes.

## 21.     COMPLETE AGREEMENT

Except for the other Operative Documents, this Lease contains the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior written or oral communications or agreements with respect thereto.

## 22.     LIMITATION OF LIABILITY OF THE LESSOR

The Lessee acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Lease is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Master Lease Agreement to be duly executed by their respective duly authorized officers on the date first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 1**

**FORM OF ACCEPTANCE CERTIFICATE**

[●] (the **Lessee**) at [●] on this [●] day of [●] (the **Delivery Date**), has accepted delivery from [●] (the **Lessor**) of the following described aircraft (the **Aircraft**) pursuant to and in accordance with the terms of that certain Master Lease Agreement (the **Lease**) dated as of [●]between the Lessor and the Lessee:

One (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number [●] and registration mark [●] together with two (2) installed CFM model LEAP-1B27 engines bearing manufacturer's serial numbers [●] and [●], all parts, appliances, components, instruments, accessories, accessions, attachments, avionics (including, without limitation, radio, radar, navigation systems and other electronic equipment), other equipment (including, without limitation, all buyer-designated equipment and all buyer-furnished equipment) and components of whatever nature incorporated or installed in or attached to the Aircraft or such Engines, and all Manuals and Technical Records pertaining to the Aircraft and Engines.

The Lessee further certifies (a) that it has irrevocably accepted the above-described Aircraft for all purposes hereof and of the Lease as being airworthy, in good working order and repair without defect or inherent vice in title, condition, design, operation or fitness for use, and (b) that the Aircraft conforms in all respects with all of the requirements of the Lease.

Capitalized terms used in this Acceptance Certificate not otherwise defined herein shall have the meaning assigned thereto in the Lease.

**IN WITNESS THEREOF**, the Lessee has caused this Acceptance Certificate to be executed in its name by its duly authorized representative on this [●] day of [●].

[●]

By:      _____
Name:
Title:

FILED DATE: 1/11/2023 2:57 PM    2023L000001

## SCHEDULE 2

## FORM OF LEASE SUPPLEMENT

LEASE SUPPLEMENT NO. [  ]

THIS LEASE SUPPLEMENT NO. [●] dated [●] (this **Lease Supplement**) is between [●]**,** a [●] company incorporated under the laws of [●], as lessor (the **Lessor**) and [●], a [●] company incorporated under the laws of [●], as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)    the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated as of [●] relating to 737 - 8 Boeing model [●] aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)    the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.    The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

   (a)    one (1) Boeing model 737 - 8  airframe bearing manufacturer's serial number [●] and [●] registration mark [●]; and

   (b)    two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers [●] and [●], respectively.

2.    The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.    The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.    The parties confirm that the Purchase Price for the Delivered Aircraft is US$[●] and the Initial Rent for the Delivered Aircraft is US$[●].

5.    All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.    The [revised] "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.    This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

8.	This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

[●]

By:    _____
       Name:
       Title:

[●]

By:    _____
       Name:
       Title:

Receipt of the counterpart of the foregoing Lease Supplement No. [●] is hereby acknowledged on this [●] day of [●].

[●], as Security Trustee

By:    _____
       Name:
       Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

Basic Rent
Payment Date                    Basic Rent

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 3

## FORM OF EUROCONTROL LETTER

From:   **[NORWEGIAN AIR INTERNATIONAL LIMITED]**

To:     The Director of the Central Route Charges Office
        European Organisation for the Safety of Air Navigation (EUROCONTROL)
        Rue de La Fusée, 96
        B-1130 Brussels
        Belgium

[    ] 2014

Dear Sirs

### Authorisation Letter

**AIR NAVIGATION CHARGES: ONE (1) BOEING 737 - 8 AIRCRAFT BEARING MANUFACTURER'S SERIAL NUMBER [●] AND REGISTRATION MARK [●] (THE AIRCRAFT)**

We have [subleased] the Aircraft from [[●] (the **Sublessor**)] in accordance with a [sublease] agreement dated [  ] 2017 between us and the [Lessor] [Sublessor].

We hereby authorise you to provide the [Sublessor] (hereby represented by [SECURITY TRUSTEE]) with a general statement of account in relation to air navigation charges incurred by us and due to EUROCONTROL.   Access to the statement(s) of account will be provided in accordance with the procedures established by EUROCONTROL.

The authorisation contained in this letter may only be revoked or amended by a written instruction signed by us and the [Sublessor].

Yours faithfully

For and on behalf of
**[NORWEGIAN AIR INTERNATIONAL LIMITED]**

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 4**

**Form of EU ETS Authority Letter**

From:  **[NORWEGIAN AIR INTERNATIONAL LIMITED]**

To:      All governmental entities in the European Union charged with administering any EU ETS (as defined below) applicable to us and the Aircraft

[●]

Dear Sirs

**Emissions Trading Schemes**

1       Pursuant to the terms of the aircraft lease agreement dated [●] 2017 (the **Lease**) between [●] (the **Lessor**) and  Hardangerfjorden Limited (the **Lessee**) and the aircraft sub-lease agreement dated [●] 2017 (the **Sub-Lease**) between the Lessee and ourselves, we have agreed to sub-lease one (1) Boeing 737 - 8 aircraft with manufacturer's serial number [●]and registration mark [●].

2       We wish to enable each of the Lessor, [●] (the Insurer Representative) and [●] the (Security Trustee) to monitor the performance by us of our obligations under the Emissions Trading Schemes (**EU ETS**).

3       We hereby unconditionally authorise you, on request by the Lessor, the Security Trustee or the Insurer Representative from time to time, to provide the Lessor the Security Trustee or the Insurer Representative with particulars of any obligations due from but unperformed by us under the EU ETS.

4       The authorisation contained herein shall only be revoked or amended upon receipt by you of a written instruction signed by ourselves, the Lessor and the Agent requesting such revocation.

Yours faithfully

………………………………………………
For and on behalf of
**[NORWEGIAN AIR INTERNATIONAL LIMITED]**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATORIES**

**LESSOR**

**AAA MAX I LIMITED**

By: _____

Name: Elaine Anderson
Title: Director

**LESSEE**

**HARDANGERFJORDEN LIMITED**

By: _____

Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATORIES**

**LESSOR**

**AAA MAX 1 LIMITED**

By: _____

    Name:

    Title:    Brian Byrne
           Attorney-in-Fact

**LESSEE**

**HARDANGERFJORDEN LIMITED**

By: _____

Name:

Title:    Brian Byrne
           Attorney-in-Fact

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT E-2

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## LEASE SUPPLEMENT NO. 3

THIS LEASE SUPPLEMENT NO. 3 dated ___17 July___ 2017 (this **Lease Supplement**) is between AAA Max 1 Limited**,** an exempted  company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Hardangerfjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

### WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated as of 22 June 2017 relating to 737 - 8 Boeing model aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.     The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

(a)     one (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number 42825 and registration mark EI-FYC; and

(b)     two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers 602161 and 602163, respectively.

2.     The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.     The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.     The parties confirm that the Purchase Price for the Delivered Aircraft is US$47,354,717 and the Initial Rent for the Delivered Aircraft is US$7,103,207.55.

5.     All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.     The "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.     This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.    The parties confirm and agree that any previous Lease Supplement entered into in respect of the Delivered Aircraft is superseded by this Lease Supplement and is of no force or effect.

9.    This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____

Name: Gennie Bigord

Title: Director

Hardangerfjorden Limited

By: _____

Name:

Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 3 is hereby acknowledged on this ___17th day of __July_____ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____

Name:

Title:

Lease Supplement No. 3

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____
       Name:
       Title:

Hardangerfjorden Limited

By: _____
       Name:    Brian Byrne
       Title:     Attorney-in-Fact

Receipt of the counterpart of the foregoing Lease Supplement No. 3 is hereby acknowledged on this __17th__ day of __July__ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____
       Name:
       Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____
      Name:
      Title:

Hardangerfjorden Limited

By: _____
      Name:
      Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 3 is hereby acknowledged on this ___17th day of ___July___ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____
Name:
Title:      John Kane
           Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

| Basic Rent Payment Date | Basic Rent |
|---|---|
| 17-Oct-17 | 1,088,672.00 |
| 17-Jan-18 | 1,088,672.00 |
| 17-Apr-18 | 1,088,672.00 |
| 17-Jul-18 | 1,088,672.00 |
| 17-Oct-18 | 1,088,672.00 |
| 17-Jan-19 | 1,088,672.00 |
| 17-Apr-19 | 1,088,672.00 |
| 17-Jul-19 | 1,088,672.00 |
| 17-Oct-19 | 1,088,672.00 |
| 17-Jan-20 | 1,088,672.00 |
| 17-Apr-20 | 1,088,672.00 |
| 17-Jul-20 | 1,088,672.00 |
| 16-Oct-20 | 1,088,672.00 |
| 15-Jan-21 | 1,088,672.00 |
| 16-Apr-21 | 1,088,672.00 |
| 16-Jul-21 | 1,088,672.00 |
| 15-Oct-21 | 1,088,672.00 |
| 14-Jan-22 | 1,088,672.00 |
| 13-Apr-22 | 1,088,672.00 |
| 15-Jul-22 | 1,088,672.00 |
| 17-Oct-22 | 1,088,672.00 |
| 17-Jan-23 | 1,088,672.00 |
| 17-Apr-23 | 1,088,672.00 |
| 17-Jul-23 | 1,088,672.00 |
| 17-Oct-23 | 1,088,672.00 |
| 17-Jan-24 | 1,088,672.00 |
| 17-Apr-24 | 1,088,672.00 |
| 17-Jul-24 | 1,088,672.00 |
| 17-Oct-24 | 1,088,672.00 |
| 17-Jan-25 | 1,088,672.00 |
| 16-Apr-25 | 1,088,672.00 |
| 17-Jul-25 | 1,088,672.00 |
| 17-Oct-25 | 1,088,672.00 |
| 16-Jan-26 | 1,088,672.00 |
| 17-Apr-26 | 1,088,672.00 |
| 17-Jul-26 | 1,088,672.00 |
| 16-Oct-26 | 1,088,672.00 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

| | |
|---|---|
| 15-Jan-27 | 1,088,672.00 |
| 16-Apr-27 | 1,088,672.00 |
| 16-Jul-27 | 1,088,672.00 |
| 15-Oct-27 | 1,088,672.00 |
| 14-Jan-28 | 1,088,672.00 |
| 12-Apr-28 | 1,088,672.00 |
| 17-Jul-28 | 1,088,672.00 |
| 17-Oct-28 | 1,088,672.00 |
| 17-Jan-29 | 1,088,672.00 |
| 17-Apr-29 | 1,088,672.00 |
| 17-Jul-29 | 1,088,672.00 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT E-3

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# PURCHASE AGREEMENT ASSIGNMENT

Dated as of _____29 June_____ 2017

**ARCTIC AVIATION ASSETS DAC**
**as Assignor**

**and**

**NORWEGIAN AIR SHUTTLE ASA**
**as Assignor and Sub-Lessee**

**HARDANGERFJORDEN LIMITED**
**as Lessee**

**NORWEGIAN AIR INTERNATIONAL LIMITED**
**as Sub-Lessee**

**and**

**AAA MAX 1 LIMITED**
**as Lessor**

**six (6) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

Allen & Overy LLP

0117131-0000002 BK:40179920.15

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS PURCHASE AGREEMENT ASSIGNMENT** dated as of _____29 June_____ 2017 (this **Assignment**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly incorporated under the laws of Ireland (**Arctic**), **NORWEGIAN AIR SHUTTLE ASA**, a company organized under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company incorporated under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly incorporated under the laws of Ireland (**International**).

## W I T N E S S E T H :

**WHEREAS**, Norwegian and The Boeing Company (the **Manufacturer**) entered into that certain purchase agreement number 03754, dated as of 24 January 2012, and that certain Aircraft General Terms Agreement AGTA-NSB, dated 29 August 2007 (the **AGTA**), which is incorporated by reference in that purchase agreement, providing for, inter alia, the sale by the Manufacturer of each Aircraft;

**WHEREAS**, Norwegian assigned and transferred to Arctic its rights and obligations under the Purchase Agreement to purchase the Aircraft in accordance with the Assignment, Assumption and Release Agreement dated 27 November 2014 (the **AARA**).

**WHEREAS**, the benefit of the warranty provisions in the Purchase Agreement were excluded from the rights of Norwegian that were assigned and transferred by it to Arctic under the AARA.

**WHEREAS**, the Lessor wishes to acquire certain rights and interests under the Purchase Agreement and each Assignor, on the terms and conditions set forth herein, is willing to assign to the Lessor certain of its rights and interests under the Purchase Agreement, and the Lessor is willing to accept such assignment; and

**WHEREAS**, the Manufacturer is willing to execute and deliver to the Lessor on each Delivery Date a consent and agreement (the **Consent and Agreement**) to the provisions hereof in substantially the form of Schedule 1 hereto in respect of the relevant Aircraft.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and of other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1.     For all purposes of this Assignment, unless the context otherwise requires, the following terms shall have the following respective meanings:

**Agent** shall mean Citibank Europe plc, UK Branch, as agent for the Funder.

**Aircraft** shall mean any of the six (6) Boeing model 737 - 8 airframes described in Schedule 2 hereto (each, an **Airframe**), as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, together, in the case of any Airframe, with two CFM model LEAP-1B27 engines, as more particularly described in Schedule 2, as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, installed on such Airframe and each other engine described in any Purchase Assignment Supplement hereto (collectively, the **Engines**), together with the equipment, components and accessories installed on such Aircraft (other than buyer furnished equipment that has not been converted to seller purchased equipment pursuant to the Purchase Agreement) pursuant to the Purchase Agreement, and together with all technical records, manuals and data with respect thereto provided in relation to such Aircraft pursuant to the Purchase Agreement (collectively, the **Manuals and Technical Records**).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Delivery** shall mean, with respect to an Aircraft, the time when the relevant Sub-Lessee (as designee of the Lessee), as the authorized representative of the Lessor, shall accept delivery of such Aircraft under the Purchase Agreement (as evidenced by delivery to the Lessor from the Manufacturer of the bill of sale in respect of such Aircraft referred to in the Purchase Agreement).

**Delivery Date** shall mean, with respect to an Aircraft, the date on which the Delivery of such Aircraft occurs.

**Engine Manufacturer** shall mean CFM International S.A., a French company, and its successors and permitted assigns.

**Insurer Representative** shall mean Allianz Risk Transfer AG, as Insurer Representative.

**Lease** shall mean, in respect of each Aircraft, the Master Lease Agreement dated on or about the date hereof as supplemented by the lease supplement dated on or prior to the Delivery Date for that Aircraft, substantially in the form of Exhibit I to the Master Lease Agreement, in each case between the Lessor, as lessor, and the Lessee, as lessee, providing for the lease of that Aircraft, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Lease Event of Default** shall have the meaning given to such term in the Lease.

**Lessor Security Assignment** shall mean, in respect of each Aircraft, the security agreement relating to that Aircraft dated on or prior to the Delivery Date for that Aircraft between the Lessor, as mortgagor, and the Security Trustee, as mortgagee, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Participation Agreement** shall mean the Participation Agreement dated as of 22 June 2017 among inter alios the Assignors, the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Funder identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Payment Undertaking Agreement** shall mean the Payment Undertaking Agreement, dated as of 22 June 2017, among the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Funder identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Payment Undertaking Event of Default** shall have the meaning given to such term in the Payment Undertaking Agreement.

**Purchase Agreement** shall mean the purchase agreement no. PA-03754 dated as of 24 January 2012 originally made between Norwegian and the Manufacturer, as assigned to and assumed by Arctic pursuant to the AARA,  and as further amended and supplemented from time to time thereafter, providing for, inter alia, the purchase by Arctic from the Manufacturer of each Aircraft, as more particularly described therein, which incorporates by reference the terms and conditions of the Aircraft General Terms Agreement (AGTA-NSB) dated as of  29 August 2007 between Norwegian and the Manufacturer (the **AGTA**).

**Purchase Assignment Supplement** shall mean in respect of each Aircraft, the purchase assignment supplement relating to that Aircraft entered into between the Assignors, the Lessee, International and the Lessor and consented to by the Manufacturer, substantially in the form of Schedule 3 hereto.

**Purchase Price** shall mean, with respect to an Aircraft, the amount in United States Dollars (U.S.$) in respect of the purchase of such Aircraft as shall be notified by Arctic to the Lessor at least five (5) Business Days prior to the Delivery Date for such Aircraft upon agreement with the Manufacturer

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and pursuant to the terms of the Purchase Agreement; provided that the Lessor's maximum liability under this Assignment in respect of the Purchase Price for such Aircraft shall not exceed the amount set forth in the Purchase Assignment Supplement; provided, further, that in the event that such amount changes after such notification but prior to the relevant Delivery Date, the parties agree that such amount shall be appropriately adjusted.

**Sub-Lessee** shall mean Norwegian or International, as the case may be.

**Security Trustee** shall mean Citibank N.A., London Branch, as Security Trustee.

**Sub-Lease** shall mean, with respect to an Aircraft, the aircraft operating lease agreement entered into or to be entered into on or about the Delivery Date of such Aircraft between the Lessee as lessor and the relevant Sub-Lessee as lessee.

**Sub-Lease Event of Default** shall have the meaning given to the term "Termination Event" in the relevant Sub-Lease.

**Transaction Parties** means the Lessor, the Lessee, Norwegian and International and **Transaction Party** shall mean any one of them.

All other capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Assignment and this Assignment shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

2.     As of the date of delivery of a Purchase Assignment Supplement from the Assignors to the Lessor (with copies to the Manufacturer and the Security Trustee) with respect to an Aircraft, each Assignor shall, with effect from such date, thereby sell, assign, transfer and set over unto the Lessor, its successors and permitted assigns, all of that Assignor's rights and interests in and to the Purchase Agreement as and to the extent they relate to the purchase of such Aircraft and the operation thereof, except as and to the extent expressly reserved below, including in such assignment:

    (a)     the right upon valid tender by the Manufacturer to purchase such Aircraft pursuant to the Purchase Agreement subject to the terms and conditions thereof and the right to take title to such Aircraft and to be named the Buyer in the bill of sale to be delivered by the Manufacturer for such Aircraft pursuant to the Purchase Agreement;

    (b)     the right to accept delivery of such Aircraft, such acceptance to be exercised by the relevant Sub-Lessee (as designee of the Lessee) as the authorized representative of the Lessor, provided that the Manufacturer shall have received written notice in advance of the identity and authority of such authorized representative;

    (c)     all claims for damages in respect of such Aircraft arising as a result of any default by the Manufacturer under the Purchase Agreement in respect of such Aircraft;

    (d)     all warranty and indemnity provisions contained in the Purchase Agreement and all claims arising thereunder, in respect of such Aircraft; and

    (e)     any and all rights of each Assignor to compel performance of the terms of the Purchase Agreement in respect of such Aircraft;

reserving exclusively to the Assignors, however:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(i)     all the Assignors' rights and interests in and to the Purchase Agreement as and to the extent that it relates to aircraft other than an Aircraft or the purchase, ownership or operation of such other aircraft and to the extent that it relates to any other matters not directly pertaining to an Aircraft;

(ii)    all the Assignors' rights and interests in or arising out of (including any credits for or repayment of) any advance payments made or to be made by the Assignors in respect of such Aircraft under the Purchase Agreement and any other payments or deposits made by the Assignors in respect of such Aircraft under the Purchase Agreement or any other agreement;

(iii)   the right to obtain services, training, data and demonstration and test flights pursuant to the Purchase Agreement; and

(iv)   the right to maintain plant representatives at the Manufacturer's plant pursuant to the Purchase Agreement.

The Lessor hereby accepts the assignment set forth above.

Notwithstanding the foregoing, so long and only so long as no notice has been issued to the Manufacturer, the Lessor hereby authorizes the relevant Sub-Lessee during the term of the Lease in respect of an Aircraft, to the exclusion of the Lessor, to exercise in such relevant Sub-Lessee's name (A) the right to enforce any warranty or indemnity under the Purchase Agreement and to retain any recovery or benefit resulting from the enforcement of any warranty or indemnity under the Purchase Agreement in respect of such Aircraft, (B) all rights to demand, accept and retain all rights in and to all property (other than such Aircraft) and (C) the right to exercise all other rights and powers of the Customer under the Purchase Agreement assigned to the Lessor hereunder in respect of such Aircraft; provided that the Assignors and such relevant Sub-Lessee may not enter into any change order or other amendment, modification or supplement to the Purchase Agreement if such change order, amendment, modification or supplement would (i) result in any rescission, cancellation or termination of the Purchase Agreement or any aircraft warranties in respect of any Aircraft, or (ii) materially diminish the rights and interests assigned hereunder.

For all purposes of this Assignment, the Manufacturer shall not be deemed to have knowledge of or need to recognize the occurrence of a Lease Event of Default, a Termination Event or a Sub-Lease Event of Default, unless and until the Manufacturer shall have received from the Lessee or the Lessor (or the Security Trustee, so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) written notice thereof, addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706. Until such time as a notice shall have been given by the Lessee or the Lessor (or the Security Trustee so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) to the Manufacturer, the Manufacturer shall deal solely and exclusively with the relevant Sub-Lessee. Thereafter, until the Lessee or the Lessor (or the Security Trustee, as the case may be) who served the notice on the Manufacturer shall have notified the Manufacturer that any such Lease Event of Default, Termination Event, Sub-Lease Event of Default or Payment Undertaking Event of Default is no longer continuing (which notice shall be given at such relevant Sub-Lessee's, the Lessee's or the Lessor's (as applicable) written request promptly after the remedy thereof), the Manufacturer shall deal solely and exclusively with the Lessor, the Lessee or the Security Trustee, as the case may be. The Manufacturer may act with acquittance and conclusively rely on such notice. For the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice

FILED DATE: 1/11/2023 2:57 PM   2023L000001

from the Security Trustee shall control and in the event that the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control.

3.   It is expressly agreed that, anything herein contained to the contrary notwithstanding: (a) prior to the execution of a Purchase Assignment Supplement with respect to an Aircraft, each Assignor will perform its obligations with respect to such Aircraft to be performed by it on or before the Delivery Date for such Aircraft, (b) Arctic shall at all times remain liable to the Manufacturer under the Purchase Agreement to perform all duties and obligations of the Customer thereunder to the same extent as if this Assignment had not been executed, (c) the exercise by a Transaction Party of any of the rights assigned hereunder shall not release Arctic from any of its duties or obligations to the Manufacturer under the Purchase Agreement, except to the extent that such exercise by a Transaction Party shall constitute performance of such duties and obligations, and (d) except as specifically provided in the next succeeding paragraph with respect to the Transaction Parties, the Transaction Parties shall not have any obligation or liability under the Purchase Agreement by reason of or arising out of this Assignment or be obligated to perform any of the obligations or duties of Arctic under the Purchase Agreement or to make any payment or to make any inquiry as to the sufficiency of any payment received by it or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder.

Anything contained in this Assignment to the contrary notwithstanding (but without in any way releasing either Assignor from any of its duties or obligations under the Purchase Agreement), the Transaction Parties confirm for the benefit of the Manufacturer that, insofar as the provisions of the Purchase Agreement relate to any Aircraft, in exercising any rights under the Purchase Agreement with respect to such Aircraft, or in making any claim with respect to such Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to such Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, the Transaction Parties to the same extent as if each Transaction Party had been the original Customer thereunder. The Transaction Parties further agree, expressly for the benefit of the Manufacturer, that at any time and from time to time upon the written request of the Manufacturer, the Transaction Parties shall promptly and duly execute and deliver any and all such further assurances, instruments and documents and take all such further action as the Manufacturer may reasonably request in order to obtain the full benefits of the Transaction Parties' agreements set forth in this paragraph.

Nothing contained herein shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the contract rights of the Manufacturer thereunder or require the Manufacturer to divest itself of title to or possession of any Aircraft or other goods and services until delivery thereof and payment therefor on the date of such delivery as provided therein.

Effective at any time after a Sub-Lease Event of Default has occurred, and for so long as such Sub-Lease Event of Default is continuing, the relevant Sub-Lessee does hereby irrevocably appoint the Lessee, its successors and permitted assigns, the relevant Sub-Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessee may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any

FILED DATE: 1/11/2023 2:57 PM   2023L000001

recovery in connection therewith that the Lessee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Lease Event of Default has occurred, and for so long as such Lease Event of Default is continuing, the relevant Sub-Lessee and the Lessee do hereby irrevocably appoint the Lessor, its successors and permitted assigns, the relevant Sub-Lessee and the Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee, the Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessor may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessor may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

4.  NEITHER ASSIGNOR SHALL BE DEEMED TO HAVE GIVEN, AND EACH ASSIGNOR HEREBY EXPRESSLY DISCLAIMS, ANY IMPLIED REPRESENTATION OR WARRANTY AS TO THE AIRWORTHINESS, CONDITION, MERCHANTABILITY, DESIGN, OPERATION OR FITNESS FOR USE OF ANY AIRCRAFT OR ANY PART THEREOF, OR ANY OTHER IMPLIED REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO ANY AIRCRAFT.

5.  Each Assignor agrees that at any time and from time to time upon the written request of any Transaction Party, it will promptly and duly execute and deliver any and all such further instruments and documents and take such further action as such Transaction Party may reasonably request in order to obtain the full benefits of this Assignment and of the rights and powers herein granted.

6.  Each Assignor does hereby represent and warrant that it has not assigned or pledged, and hereby covenants that it will not assign or pledge so long as this Assignment shall remain in effect, the whole or any part of the rights hereby assigned to anyone other than the Lessor. Each Assignor hereby acknowledges and agrees that the Lessor has assigned to the Security Trustee, as collateral security for the Lessor's obligations under the Payment Undertaking Agreement and the other Operative Documents, all of the Lessor's right, title and interest in and to the Purchase Agreement (as it relates to any Aircraft) and this Assignment pursuant to the Lessor Security Assignment, and each Assignor hereby consents to such assignment.

7.  The Lessor agrees that it will not enter into any agreement with the Manufacturer that would amend, modify, rescind, cancel or terminate the Purchase Agreement in respect of any Aircraft or take any other action to amend, modify, rescind, cancel or terminate any of the Assignors' rights in respect of any Aircraft, without the prior written consent of the Assignors and the Security Trustee (so long as the Lien of the Lessor Security Assignment is in effect and has not been released by the Security Trustee).

8.  Each of the Transaction Parties agrees, expressly for the benefit of the Manufacturer, that it will not disclose, directly or indirectly, any terms of the Purchase Agreement disclosed to it; provided, that (a) the Transaction Parties may use, retain and disclose any such information to its special counsel and public accountants, who shall maintain the confidentiality of the Purchase Agreement, (b) the Transaction Parties may disclose any such information as required by Applicable Law or governmental regulations, (c) to the extent that any Transaction Party may have received a subpoena or other written demand under colour of legal right for such information, such Transaction Party may disclose such information, but it shall first, as soon as practicable upon receipt of such demand, furnish a copy thereof to the Manufacturer, and the relevant Transaction Party shall afford the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer reasonable opportunity, at the moving Person's cost and expense, to obtain a protective order or other reasonably satisfactory assurance of confidential treatment for the information required to be disclosed, (d) the Transaction Parties may disclose any such information to any bona fide potential purchaser or lessee of any Aircraft (subject to execution by such potential purchaser or lessee of a confidentiality undertaking substantially similar to this Section 8) and (e) the Transaction Parties may disclose any such information to the Agent, the Funder, the Security Trustee, the Insurer Representative, each Insurer Group Member and any other Person with whom any of the foregoing is in good faith conducting negotiations relating to the possible transfer and sale of such Person's interests in the Purchase Agreement, any Aircraft and/or any provision of funds (subject to the execution of a confidentiality undertaking substantially similar to this Section 8 by such Agent, Funder, Security Trustee, Insurer Representative, Insurer Group Member and Person described in this paragraph 8) and to their respective special counsel and financial advisors (who shall maintain the confidentiality of the Purchase Agreement to the extent required by this Section 8).

9.      This Assignment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

10.     On the Delivery Date for an Aircraft, subject to satisfaction or waiver of the conditions set forth in the Participation Agreement required to be satisfied on or prior to the Delivery Date for such Aircraft, the Lessor agrees to purchase such Aircraft from the Manufacturer and (without limiting its other payment obligations under the Operative Documents on the Delivery Date for such Aircraft) to pay the Purchase Price for such Aircraft in the manner specified in the Purchase Agreement.

11.     If the Delivery Date for an Aircraft does not occur by 11:59 p.m. (Seattle time) on the date set forth in the Purchase Assignment Supplement in respect of such Aircraft, this Assignment (as it relates to such Aircraft) shall (unless otherwise agreed by the parties hereto) automatically terminate, whereupon the rights subject to this Assignment (as it relates to such Aircraft) shall be deemed reassigned by the Lessor to the Assignors without the requirement of any further act or action (other than any notice required to be given to the Manufacturer).

12.     For the purposes of this Assignment, all notices and other communications shall be in writing, in English, and shall be given or made by fax, or personal delivery and faxed or delivered to the intended recipient (other than the Manufacturer) at the address specified below, or, as to any party, at such other address as shall be designated by such party in a notice to each other party hereto. Except as otherwise provided in this Assignment, all such communications shall be deemed to have been duly given when transmitted by fax (provided such transmission by fax is in legible form and is accompanied by or generates a substantially simultaneous confirmation of transmission), or personally delivered, in each case given or addressed as aforesaid.

(a)      If to the Lessor:

AAA Max 1 Limited
c/o Walkers Fiduciary Limited
Cayman Corporate Centre
27 Hospital Road
George Town
Grand Cayman KY1-9008
Cayman Islands

Attention:      The Directors

Telephone:      +1 345 814 7600

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Email:              issuerpfla@citi.com

(b)     With a copy to the Security Trustee:

Citibank, N.A., London Branch
Canada Square,
Canary Wharf,
London E14 5LB

Attention:      The Directors

Fax:            issuerpfla@citi.comIf to Arctic:

Arctic Aviation Assets DAC
Ground Floor
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:      + 353 879 461 070

Fax:            + 353 1 814 1839

with a copy to Norwegian at the address below.

(c)     If to Norwegian:
Norwegian Air Shuttle ASA
Oksenøyveien 3
Postboks 115
N-1330 Fornebu
Norway

Attention:      Chief Financial Officer

Telephone:      + 47 67 59 3078

Fax:            +47 67 59 3001

(d)     If to the Lessee:

Hardangerfjorden Limited
c/o Arctic Aviation Assets DAC
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:      + 353 879 461 070

Fax:            + 353  1 814 7839

FILED DATE: 1/11/2023 2:57 PM   2023L000001

with a copy to Norwegian at the address above.

(e)     If to International

Norwegian Air International Limited
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:       Tore Jenssen

Telephone:      + 353 879 461 070

Fax:            + 353 1 814 7839

with a copy to Norwegian at the address above.

13.    This Assignment will be governed by, and construed in accordance with, the laws of the State of Washington, except for the conflict of laws principles thereof.

14.    The provisions of clauses 13(d)(ii) to 13(d)(vi) of the Participation Agreement, in so far as they relate to any dispute between the parties shall apply hereto as if set out in this Assignment *mutatis mutandis*.

15.    Each of the parties to this Assignment (except International) acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Assignment is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

16.    International acknowledges and agrees that the provisions of clause 20(c) (No Discharge, etc.; No Petitioning) and clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement apply to it to the same extent as if it were a party to the Participation Agreement and as if the reference to "Lessee" in such clause 20(c) referred to the Lessee and the Sub-Lessee.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Agreement Assignment to be duly executed as of the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 1

## FORM OF CONSENT AND AGREEMENT

## THE BOEING COMPANY

## CONSENT AND AGREEMENT

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated as of _____ 2017 between **AAA MAX 1 LIMITED** (the **Lessor**), **HARDANGERFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** [(**International/** the **Sub-Lessee**)] **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** [(**Norwegian**/ the **Sub-Lessee**)] (each of Arctic and [Norwegian/ the Sub-Lessee] being an **Assignor**), relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number [●] (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.   all representations, warranties, indemnities and agreements of the Manufacturer under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.   no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.   the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.   if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

5.   the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided, however, that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Payment Undertaking Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.   the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.   the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.   The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)   the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)   the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)    to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)    Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.    The Manufacturer hereby confirms to the Security Trustee that:

(a)    upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)    except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.    The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.    The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.    It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 2017

**THE BOEING COMPANY**

By:

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

MSN [●]

**SCHEDULE 2**

**DESCRIPTION OF AIRCRAFT**

Each of the six (6) Boeing model 737 - 8 airframes, bearing Manufacturer's serial numbers 42826, 42830, 42825, 42827, 42828 and 42829, as further identified on each Purchase Assignment Supplement to be entered into by the Assignors, the Lessor, the Lessee and the relevant Sub-Lessee in respect of such airframes, together, in the case of each such airframe, with the two (2) CFM Model LEAP-1B27 engines installed thereon and each other engine identified on any Purchase Assignment Supplement hereto.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 3

### FORM OF PURCHASE ASSIGNMENT SUPPLEMENT

### PURCHASE ASSIGNMENT SUPPLEMENT NO. __

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated _____ 2017 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly organized under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly organized under the laws of Ireland (**International**) and supplements that Purchase Agreement Assignment dated as of _____ 2017 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

### W I T N E S S E T H:

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and International desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and International hereby agrees as follows:

1.      The Sub-Lessee of the Aircraft is:                                      _____

2.      Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

      Manufacturer's serial number:                                      _____

      Registration Mark:                                      _____

      Engine Manufacturer's serial numbers:                                      _____ & _____

3.      Latest Delivery Date with respect to such Aircraft:                                      _____

4.      Maximum liability of the Lessor with respect to the Purchase Price of such Aircraft:      U.S.$_____

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. ___ to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | ) |
| by **ARCTIC AVIATION ASSETS DAC** | |
| acting by its lawfully | ) |
| appointed attorney | ) |

…………………………..

Lawfully appointed attorney

in the presence of:                                          )

Witness's Signature:        _____

Name:                              _____

Address:                         _____

_____

**Norwegian**

| | |
|---|---|
| SIGNED AND DELIVERED as a DEED by | |
| **NORWEGIAN AIR SHUTTLE ASA** | ) |
| acting by its lawfully appointed attorney | ) |

…………………………..

Lawfully appointed attorney

in the presence of:                                          )

Witness's Signature:        _____

Name:                              _____

Address:                         _____

_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by                                    )
**AAA MAX 1 LIMITED**                                            )
acting by                                                        )
_____                                            )
acting under the authority of that
Company, in the presence of:                                     )

Witness's Signature:        _____

Name:                       _____

Address:                    _____

                            _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

## PURCHASE ASSIGNMENT SUPPLEMENT

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **HARDANGERFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

……………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature: _____

Name: _____

Address: _____

_____

**International**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR INTERNATIONAL** | ) |
| **LIMITED** | ) |
| acting by its lawfully appointed attorney | |

……………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature: _____

Name: _____

Address: _____

_____

**SIGNATURES (3)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By:
Name:
Title:
Date:

FILED DATE: 1/11/2023 2:57 PM  2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE AGREEMENT ASSIGNMENT

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by )

**ARCTIC AVIATION ASSETS DAC** )
acting by
its lawfully appointed attorney )

.....Tim O'Connell.....
Lawfully appointed attorney

in the presence of:

Witness's Signature: ...Vanessa Caesar........

Name: ...Vanessa Caesar.....

Address: ...Imbus House.........

**Assignor and Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by )

**NORWEGIAN AIR SHUTTLE ASA** )
acting by
its lawfully appointed attorney )

.....................................
Lawfully appointed attorney

in the presence of:

Witness's Signature: ...................................

Name: ...................................

Address: ...................................

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**

**PURCHASE AGREEMENT ASSIGNMENT**

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by        )

**ARCTIC AVIATION ASSETS DAC**              )
acting by
its lawfully appointed attorney             )

............................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:    ...........................................

Name:             ...........................................

Address:          ...........................................

**Assignor and Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by        )

**NORWEGIAN AIR SHUTTLE ASA**              )
acting by
its lawfully appointed attorney             )

ANDERS FREDRIKSEN

....A.T.T.O.R.N.E.Y.-.I.N.-.F.A.C.T......
Lawfully appointed attorney

in the presence of:

Witness's Signature:    ...Simen Strand...

Name:             ...SIMEN STRAND...

Address:          ...HARBITZALLEEN 14H...

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by                )
**AAA MAX 1 LIMITED**                          )
acting by                                      )
_____                        )
acting under the authority of that
Company, in the presence of:                   )

Elaine Anderson
Director

Witness's Signature:

Name:

Address:          Cayman Corporate Centre
                  27 Hospital Road, George Town
                  Grand Cayman KY1-9008
                  Cayman Islands

3                                    Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM  2023L000001

## SIGNATURES (2)

### PURCHASE AGREEMENT ASSIGNMENT

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by                    )

**HARDANGERFJORDEN LIMITED**                    )
acting by
its lawfully appointed attorney                    )

*Tim O'Connell*
..................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:     *Vanessa Caesar*

Name:     *Vanessa Caesar*

Address:     *Imbus House*

**Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by                    )

**NORWEGIAN AIR INTERNATIONAL**                    )
**LIMITED**
acting by
its lawfully appointed attorney                    )

*Tim O'Connell*
..................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:     *Vanessa Caesar*

Name:     *Vanessa Caesar*

Address:     *Imbus House*

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Citibank N.A, London Branch, as security trustee for the Secured Parties and as holder of a security interest in the right, title and interest of the Lessor in and to the Purchase Agreement (as it relates to each Aircraft) and this Assignment pursuant to the terms of the Lessor Security Assignment, agrees to the terms and conditions of this Assignment and agrees that its rights and remedies under the Lessor Security Assignment in respect of the property expressed to be assigned under this Assignment shall be subject to the terms and conditions of this Assignment (including, without limitation, the second paragraph of Section 3 hereof) and of the Purchase Agreement.

**CITIBANK N.A., LONDON BRANCH**
as Security Trustee

By: _John M. Kane_

Name:

Title:              John Kane
                Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT E-4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**PURCHASE ASSIGNMENT SUPPLEMENT NO. 3**

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated ___17 July___ 2017 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly organized under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly organized under the laws of Ireland (**International**) and supplements that Purchase Agreement Assignment dated as of 29 June 2017 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

**W I T N E S S E T H :**

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and International desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and International hereby agrees as follows:

1.  The Sub-Lessee of the Aircraft is:                    Norwegian Air Shuttle ASA

2.  Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

    Manufacturer's serial number:                   42825

    Registration Mark:                              EI-FYC

    Engine Manufacturer's serial numbers:           602161 & 602163

3.  Latest Delivery Date with respect to such Aircraft:   17 July 2017

4.  Maximum liability of the Lessor with respect to the Purchase Price of such Aircraft:            U.S.$47,354,717

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. 3 to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

### PURCHASE ASSIGNMENT SUPPLEMENT NO. 3

**Arctic**

**SIGNED AND DELIVERED** as a **DEED**          )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully                                        )
appointed attorney                                          )

................................................
Lawfully appointed attorney

in the presence of:                                         )

Witness's Signature:

Name:          Vanessa Caesar

Address:       Imbus House

**Norwegian**

SIGNED AND DELIVERED as a DEED by
**NORWEGIAN AIR SHUTTLE ASA**                  )
acting by its lawfully appointed attorney           )

..........................................
Lawfully appointed attorney

in the presence of:                                         )

Witness's Signature:

Name:

Address:

Purchase Agreement Assignment Supplement No. 3

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 3

**Arctic**

**SIGNED AND DELIVERED** as a **DEED** )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully )
appointed attorney )

.......................................
Lawfully appointed attorney

in the presence of: )

Witness's Signature:  _____

Name:  _____

Address:  _____

_____

**Norwegian**

SIGNED AND DELIVERED as a DEED by
**NORWEGIAN AIR SHUTTLE ASA**
acting by its lawfully appointed attorney )
)

in the presence of: )

Witness's Signature:  *Simen Strand*

Name:  SIMEN STRAND

Address:  HARBITZALLEEN 14H

_____

ANDERS FREDRIKSEN

........ATTORNEY-IN-FACT...
Lawfully appointed attorney

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (2)**

**PURCHASE ASSIGNMENT SUPPLEMENT NO. 3**

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **HARDANGERFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

Lawfully appointed attorney

in the presence of:

Witness's Signature: _____

Name: Vanessa Caesar

Address: Imbus House

_____

**International**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR INTERNATIONAL** | ) |
| **LIMITED** | ) |
| acting by its lawfully appointed attorney | |

Lawfully appointed attorney

in the presence of:

Witness's Signature: _____

Name: Vanessa Caesar

Address: Imbus House

_____

Purchase Agreement Assignment Supplement No. 3

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by )
**AAA MAX 1 LIMITED** )
acting by )
_____ )

acting under the authority of that
Company, in the presence of: )

Gennie Bigord
Director

Witness's Signature:

Name:

Address: Cayman Corporate Centre
27 Hospital Road, George Town
Grand Cayman KY1-9008
Cayman Islands

Purchase Agreement Assignment Supplement No. 3

FILED DATE: 1/11/2023 2:57 PM   2023L000001

SIGNATURES (3)

PURCHASE ASSIGNMENT SUPPLEMENT NO. 3

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By:

Name: Fletcher Barkedull

Title: Attorney-In-Fact

Date: 17 July 2017

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT E-5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# CONSENT AND AGREEMENT

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated as of 29 June 2017 between **AAA MAX 1 LIMITED** (the **Lessor**), **HARDANGERFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** (**International**), **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** (the **Sub-Lessee**) (each of Arctic and the Sub-Lessee being an **Assignor**), relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number 42825 (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.    all representations, warranties, indemnities and agreements of the Manufacturer under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.    no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.    the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.    if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

5.    the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Payment Undertaking Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.      the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.      the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.      The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)      the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)      the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)      to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)      Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.    The Manufacturer hereby confirms to the Security Trustee that:

(a)    upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)    except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.    The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.    The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.    It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 17 July _____ 2017

**THE BOEING COMPANY**

By: _____

Name:  Fletcher Barkdull

Title:  Attorney-In-Fact

MSN 42825

FILED
1/11/2023 2:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000001
Calendar, S
21000066

FILED DATE: 1/11/2023 2:57 PM    2023L000001

# GROUP EXHIBIT F

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT F-1

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM 2023L000001

# MASTER LEASE AGREEMENT

22 June    **2017**

**Between**

**AAA MAX 1 LIMITED**
**as Lessor**

**and**

**HARDANGERFJORDEN LIMITED**
**as Lessee**

**Up to six (6) Boeing model 737 - 8 aircraft**

ALLEN & OVERY

Allen & Overy LLP

0117131-0000002 BK:39702344.14

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# CONTENTS

**Clause**                                                                                                              **Page**

1.    Definitions and interpretation ........................................................................................................1
2.    Agreement to Lease; Term ............................................................................................................1
3.    Rent .................................................................................................................................................2
4.    Lessor's Disclaimer of Warranties; Manufacturers' Warranties ..................................................4
5.    Purchase Options; Return of Aircraft ...........................................................................................6
6.    Liens ...............................................................................................................................................9
7.    Registration, Maintenance, Operation and Possession .................................................................9
8.    Replacement; Temporary Installation; Pooling; Alterations, Modifications and Additions; Etc .......24
9.    Loss, Destruction, Requisition, Etc ............................................................................................28
10.   Insurance ......................................................................................................................................31
11.   Absolute Obligations ...................................................................................................................39
12.   Assignment ...................................................................................................................................41
13.   Lease Events of Default and Termination Events .......................................................................41
14.   Remedies ......................................................................................................................................45
15.   Further Assurances; Investment of Security Funds ....................................................................47
16.   Notices ..........................................................................................................................................48
17.   Miscellaneous; Governing Law ...................................................................................................48
18.   Security for the Lessor's Obligation ............................................................................................49
19.   Lessor's Right to Perform for Lessee ..........................................................................................50
20.   English Language Prevails ...........................................................................................................50
21.   Complete Agreement ...................................................................................................................50

**Schedule**

1.    Form of Acceptance Certificate ..................................................................................................51
2.    Form of Lease Supplement ..........................................................................................................52
      Form of Eurocontrol Letter .........................................................................................................56

Signatories.........................................................................................................................................57

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS MASTER LEASE AGREEMENT** dated _____22 June_____ 2017 (this **Lease**)

**AMONG**

(1)     **AAA MAX 1 LIMITED**, an exempted company  with limited liability incorporated and existing under the laws of the Cayman Islands, as lessor (the **Lessor**); and

(2)     **HARDANGERFJORDEN LIMITED**, a limited liability company duly incorporated under the laws of Ireland (the **Lessee**).

 **WITNESSETH:**

(1)     **WHEREAS,** pursuant to that certain Participation Agreement, dated as of the date of execution and delivery thereof (as amended, supplemented and modified from time to time, the **Participation Agreement**), among, *inter alios*, the Lessor, Walkers Fiduciary Limited, as lessor parent, the Lessee, Greensill Capital (UK) Limited, as Funder, Citibank Europe plc, UK Branch, as Agent, Citibank N.A., London Branch, as security trustee, the Lessor and the Lessee have agreed to enter into this Lease.

(2)     **WHEREAS,** pursuant to each Purchase Assignment in respect of an Aircraft, the Lessor will acquire certain rights under the Purchase Agreement in respect of such Aircraft.

(3)     **WHEREAS,** pursuant to the terms and conditions of this Lease, the Lessor has agreed to lease each Aircraft to the Lessee and the Lessee has agreed to lease each Aircraft from the Lessor.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.     **DEFINITIONS AND INTERPRETATION**

1.1     **Definitions**

Unless the context otherwise requires, capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Lease.

1.2     **Interpretation**

 This Lease shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

2.     **AGREEMENT TO LEASE; TERM**

2.1     **Delivery**

The Lessor hereby agrees on each Delivery Date for an Aircraft, subject to (a) the purchase of such Aircraft by the Lessor to be delivered pursuant to the Participation Agreement, the Purchase Agreement and the Purchase Assignment and (b) the satisfaction or waiver of the conditions precedent with respect to such Aircraft set forth or referred to in clause 4 of the Participation Agreement, to accept delivery of, and subject to clause 2 of the Participation Agreement to lease to the Lessee hereunder, and the Lessee hereby agrees, subject to the foregoing and the satisfaction of the conditions precedent (with respect to such Aircraft) set forth in clause 5 of the Participation

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Agreement, to accept delivery of, to sign the Acceptance Certificate and to lease from the Lessor hereunder, such Aircraft, whereupon the Term for such Aircraft shall commence.

**2.2    Acceptance**

The Lessee hereby agrees that the execution of the Acceptance Certificate for an Aircraft in the form of Schedule 1 hereto shall be deemed to constitute unconditional, absolute and irrevocable acceptance of such Aircraft by the Lessee under this Lease.

**2.3    Term**

Subject to acceptance of an Aircraft as provided in Clauses 2.1 and 2.2, the Lessee hereby leases from the Lessor such Aircraft for the Term applicable thereto.

**2.4    Cape Town Convention**

(a)    The parties hereto agree that, for all purposes of the Cape Town Convention, upon execution of a Lease Supplement (a) this Lease, together with such Lease Supplement, will constitute a separate International Interest with respect to the Airframe and each Engine identified in such Lease Supplement, (b) such Airframe and Engines each constitute an Aircraft Object and (c) this Lease, together with such Lease Supplement, will constitute an agreement for the registration of such Airframe.

(b)    If there is any change to the manner in which the Cape Town Convention is implemented in the Government of Registry, the Lessee shall take such action as the Lessor may require in relation to such change, including:

(i)    amending or re-executing any Operative Document;

(ii)    registering, perfecting and/or preserving any International Interest(s) vested in the Lessor and the Secured Parties with respect to the Airframe and/or any Engine; and

(iii)    entry into agreements (subordination or otherwise) to protect the priority of any International Interest(s) or other registrable interests referred to in the foregoing paragraphs (i) and/or (ii).

(c)    The Lessee agrees to indemnify on demand and shall pay or reimburse the Agent, the Funder, the Insurer Representative, each Insurer Group Member, the Lessor, the Lessor Parent and the Security Trustee for any reasonable costs and expenses (including reasonable fees and disbursements of legal counsel and other experts employed or retained by such Person) incurred by such Person in connection with any action taken pursuant to paragraph (b) above.

**3.    RENT**

**3.1    Initial Rent**

On or prior to each Delivery Date, the Lessee agrees to pay the Lessor the Initial Rent in Dollars for the Aircraft to be delivered on such Delivery Date.

**3.2    Basic Rent**

In addition, the Lessee agrees to pay the Lessor rent (the **Basic Rent**) for each Aircraft in Dollars with respect to each Rent Period in arrear on each Basic Rent Payment Date occurring during the

Term for such Aircraft, in each case, in an amount calculated in accordance with paragraph (a) through (b) below.

(a)  For all purposes of this Lease, the Basic Rent payable in respect of each Aircraft on each Basic Rent Payment Date for such Aircraft occurring during the Term for such Aircraft shall be equal to the "Basic Rent" set forth in Schedule I to the Lease Supplement for such Aircraft and Basic Rent Payment Date.

(b)  Each instalment of Basic Rent for an Aircraft payable on any Basic Rent Payment Date for such Aircraft shall in all events be in an amount that is equal to the amount payable by the Lessor to the Agent under the Payment Undertaking Agreement in respect of the scheduled Payment Amounts for such Aircraft due on the corresponding Payment Date.

### 3.3   Supplemental Rent

The Lessee shall pay all Supplemental Rent to the Lessor or to such other Person to whom such amount may be owed under the Operative Documents in the currency (whether Dollars or another currency) in which the same is due and owing, and such Supplemental Rent shall be payable within thirty (30) days of demand upon the Lessee (or within such longer period as the Lessor, acting reasonably and having regard to all relevant circumstances (including, without limitation, the timing of any approvals or licenses required from any Government Body of the Government of Registry and/or the jurisdiction of incorporation or formation of the Lessee in order for such payment to be lawfully made) may agree), provided that if any such demand has been made and subsequent to the making of such demand a Material Default, Termination Event or an Event of Default shall occur, any such Supplemental Rent shall be payable forthwith upon the occurrence of such Material Default, Termination Event or Event of Default.  In the event of any failure on the part of the Lessee to pay any Supplemental Rent, the Lessor shall have the same rights, powers and remedies provided for herein or by law or equity or otherwise as in the case of non-payment of Basic Rent.  The Lessee will also pay interest on demand to the recipient entitled thereto, as Supplemental Rent, to the extent permitted by Applicable Laws, at a rate per annum equal to the applicable Post-Default Rate on any part of any instalment of Basic Rent not paid when due for the period from and including the due date thereof to but excluding the date on which the same is paid in full and, in the case of payment to any of the Lessor, the Funder, the Agent, the Insurer Representative, the Security Trustee or any other Person, on any payment of Supplemental Rent payable but not paid when due or demanded by the recipient entitled thereto for the period from and including the due date thereof to but excluding the date on which the same is paid in full.

### 3.4   Manner of Payment

(a)  All Rent and other sums payable hereunder shall be paid by 3:00 p.m. (London time) on the date payment is due, in Dollars (or, in the case of any Supplemental Rent denominated in a currency other than Dollars, in the relevant currency) and in immediately available funds (or such other funds as are from time to time customary for the settlement of international banking transactions in Dollars or other relevant currency in New York City or other relevant jurisdiction of such other currency).  Whenever any payment of Basic Rent shall become due on a day which is not a Business Day, the due date thereof shall be the immediately preceding Business Day, provided always that the amount of Basic Rent shall not be adjusted by reason of such payment being made on such immediately preceding Business Day.

(b)  Whenever any payment (other than a payment of Basic Rent) shall become due on a date which is not a Business Day, or if any such payment is payable on demand and demand is not made on a Business Day or is made on a Business Day but is made outside normal banking hours of the recipient of such demand, demand for such payment shall be deemed to

FILED DATE: 1/11/2023 2:57 PM   2023L000001

have been made on the immediately succeeding Business Day, and if such payment includes any payment of interest (or an amount calculated or determined by reference to interest), the amount payable shall be adjusted accordingly.  All payments of Rent to the Lessor and all other amounts payable hereunder by the Lessee to the Lessor shall be paid to such account as the Lessor may specify from time to time in writing not less than thirty (30) Business Days prior to the date on which the relevant amount is payable.

3.5     **Absolute Obligation**

The obligation of the Lessee to pay Rent hereunder shall be absolute and unconditional as more fully set forth in Clause 11.  To the extent Taxes arise from the leasing of any Aircraft to the Lessee under this Lease which are payable by way of withholding by the Lessee, such Taxes shall be deducted and paid by the Lessee by way of withholding, and the Lessor agrees that the full amount of Rent due under this Lease in respect of an Aircraft shall be the amount of Basic Rent payable in respect of such Aircraft under Clause 3.2 increased by any such Taxes withheld by the Lessee.

3.6     **Associated Rights**

The Lessee hereby agrees to pay and perform all of its obligations under the Operative Documents to which it is a party and further acknowledges and agrees that the payment of Rent hereunder and the performance by the Lessee of its obligations under the other Operative Documents constitute Associated Rights and are secured by and/or associated with the relevant Aircraft and Engines.

3.7     **Assignment of Rent**

Pursuant to the Security Documents, the Lessor has assigned its right to receive Basic Rent and Termination Value hereunder to the Security Trustee, and pursuant to such assignment the Lessor hereby directs, and the Lessee hereby agrees, that all Basic Rent and Termination Value payable to the Lessor hereunder shall be paid directly to the Funder (unless a Material Default, Termination Event or an Event of Default shall have occurred and be continuing and the Insurer Representative or the Security Trustee has given notice to the Funder and the Lessor in which case the Basic Rent and Termination Value shall be paid directly to the Security Trustee).

4.      **LESSOR'S DISCLAIMER OF WARRANTIES; MANUFACTURERS' WARRANTIES**

4.1     **Disclaimer**

Subject to Clause 4.2, the Lessee acknowledges and agrees that (a) each Aircraft is of a size, design, capacity and manufacture selected by and acceptable to the Lessee and (b) the Lessee is satisfied that such Aircraft are suitable for its purposes.  NONE OF LESSOR, LESSOR PARENT, THE FUNDER, THE AGENT, THE SECURITY TRUSTEE, THE INSURER REPRESENTATIVE OR ANY MEMBER OF THE INSURER GROUP SHALL MAKE OR GIVE OR SHALL BE DEEMED TO HAVE MADE OR GIVEN AND HEREBY EXPRESSLY DISCLAIMS ANY REPRESENTATION, WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, AS TO (i) THE AIRWORTHINESS, VALUE, CONDITION, DESIGN, COMPLIANCE WITH SPECIFICATIONS OF, OPERATION OF, OR THE QUALITY OF THE MATERIAL OF OR WORKMANSHIP IN, OR TITLE TO, OR ANY DEFECT IN, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, (ii) THE MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE OF ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, OR AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT OR THE LIKE,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

OR ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (iii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT WITH RESPECT TO ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, WHETHER OR NOT IN STRICT OR ABSOLUTE LIABILITY OR ARISING FROM THE NEGLIGENCE OF LESSOR, THE FUNDER, THE AGENT, THE SECURITY TRUSTEE OR THE INSURER REPRESENTATIVE, ACTUAL OR IMPUTED, (INCLUDING ANY STATUTORY WARRANTY OR CONDITION UNDER THE LAWS OF THE UNITED STATES, ANY STATE THEREOF, THE GOVERNMENT OF REGISTRY OR THE JURISDICTION OF INCORPORATION OR FORMATION OF LESSEE) OR (iv) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF, OR DAMAGE TO, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING, FOR ANY LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES THEREFROM, IT BEING UNDERSTOOD THAT ALL SUCH RISKS, AS BETWEEN LESSEE AND SUCH OTHER PERSONS, ARE TO BE BORNE BY LESSEE, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE OPERATIVE DOCUMENTS.  NONE OF THE INSURER REPRESENTATIVE, ANY MEMBER OF THE INSURER GROUP, THE FUNDER, THE AGENT NOR THE SECURITY TRUSTEE SHALL BE LIABLE OR OTHERWISE RESPONSIBLE IN ANY MANNER FOR ANY REPRESENTATION OR WARRANTY MADE BY THE LESSOR HEREUNDER OR UNDER ANY OTHER OPERATIVE DOCUMENT.

**4.2    Manufacturers' Warranties**

None of the provisions of this Clause 4 or any other provision of this Lease shall be deemed to amend, modify or otherwise affect the representations, warranties or other obligations (express or implied) of the Manufacturer or the Engine Manufacturer or any contractor, subcontractor or supplier of the Manufacturer or the Engine Manufacturer with respect to any Aircraft, any Airframe, any Engine or any Parts, forming a part of or installed on or attached to any Aircraft, any Airframe or any Engine or to release the Manufacturer or the Engine Manufacturer or any such contractor, subcontractor or supplier from any such representation, warranty or obligation.  So long as no Event of Default or Termination Event shall have occurred and be continuing, the Lessee, or any Permitted Sub-Lessee leasing an Aircraft from the Lessee, shall have the benefit of and shall be entitled to enforce (as it shall deem appropriate), either in its own name or in the name of the Lessor (at the cost of the Lessee and in respect of which enforcement the Lessee hereby agrees to indemnify the Lessor) for the use and benefit of the Lessee (or the relevant Permitted Sub-Lessee) during the relevant Term by way of revocable license (provided that the Lessor shall not revoke such license until an Event of Default or Termination Event occurs and is continuing and shall reinstate such license in the event the Event of Default or Termination Event is cured), any and all dealer's, manufacturer's contractor's, or subcontractor's credits, guarantees, indemnities, warranties or other benefits, if any, available to the Lessor in respect of any Aircraft, any Engine and/or any Part, provided that neither the Lessee nor any Permitted Sub-Lessee shall be entitled to modify, amend or otherwise alter any of the foregoing without the prior written consent of the Security Trustee except in circumstances where such modification, amendment or alteration could not reasonably be expected to have a Material Adverse Effect in relation to the Lessor or any Secured Party, and the Lessor agrees at the Lessee's expense to do, execute and deliver such further acts, deeds, matters or things as may be reasonably requested by the Lessee to enable the Lessee to obtain customary warranty service furnished for any Aircraft, any Engine and/or Part by such dealer, manufacturer, contractor or subcontractor or any supplier as aforesaid or to exercise any other rights in relation to any of the foregoing benefits, and any moneys recovered from such enforcement shall be promptly paid to, and retained by, the Lessee (or, if directed by the Lessee, any Permitted Sub-Lessee), provided further, that if a Material Default, Termination Event or Event of Default shall have occurred and be continuing, any such moneys payable to the Lessee or Permitted Sub-Lessee shall instead be paid to the Lessor as security for, and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

applied to, the obligations of the Lessee Obligors under the Operative Documents in such order as the Lessor shall elect and, at such time as no Material Default, Termination Event or Event of Default shall be continuing, to the extent not so applied, promptly paid to the Lessee.  The Lessee hereby acknowledges the provisions of the Purchase Assignment, the Engine Warranties Agreement and each Security Agreement and of the security interests granted to the Security Trustee in respect of the Lessor's rights, title and interests in and to the Purchase Agreement and the Engine Agreement created by the Operative Documents.

## 5.        PURCHASE OPTIONS; RETURN OF AIRCRAFT

### 5.1      Purchase Options

Provided that the leasing of the relevant Aircraft under this Lease has not otherwise terminated, and no Material Default, Termination Event or Event of Default has occurred and is continuing, the Lessee may on any Basic Rent Payment Date for an Aircraft prior to or including the scheduled end of the Term for such Aircraft, by thirty (30) days' prior written notice (or such shorter period of notice as the Lessor the Insurance Representative and the Security Trustee may agree) delivered to the Lessor (with copies to the Security Trustee, the Insurer Representative and the Agent) (which notice shall be irrevocable), elect for it or a nominee approved by the Insurer Representative (such approval not to be unreasonably withheld) (an **Approved Nominee)** to purchase such Aircraft on such date for a purchase price equal to the Termination Value in respect of such Aircraft on such date, plus any Rent in respect thereof then due and payable plus, if the purchase of the Aircraft occurs on the Final Maturity Date, ten Dollars (US$10).

### 5.2      Purchase Procedure; Termination

In connection with the purchase of an Aircraft pursuant to Clause 5.1, upon indefeasible payment to the Lessor of the Termination Value in respect of such Aircraft on such date and any Rent then due in respect of such Aircraft, the Lessor will transfer to the Lessee or its Approved Nominee all of the Lessor's right, title and interest in and to such Aircraft (including any warranties relating thereto and assigned to the Lessor pursuant to the relevant Purchase Assignment and the relevant Engine Warranties Agreement), in "AS-IS, WHERE-IS" condition, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, except that the Lessor will warrant to the Lessee or its Approved Nominee that it has such title to such Aircraft as was delivered to the Lessor by the Manufacturer on the Delivery Date for such Aircraft and the lawful right to transfer such Aircraft in accordance with the terms hereof and that such Aircraft is free of all Lessor Liens attributable to it.  THE WARRANTY CONTAINED IN THE IMMEDIATELY PRECEDING SENTENCE WILL BE MADE BY LESSOR IN LIEU OF AND IN SUBSTITUTION FOR, AND LESSEE HEREBY WAIVES, RELEASES AND RENOUNCES, ALL OTHER EXPRESS OR IMPLIED WARRANTIES, CONDITIONS OR REPRESENTATIONS WITH REGARD TO THE CONDITION OR TITLE OF THE RELEVANT AIRCRAFT (INCLUDING SUCH AS TO THE STATE, DESCRIPTION, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT), AND ALL OBLIGATIONS AND LIABILITIES OF LESSOR HEREUNDER WITH RESPECT TO CONSEQUENTIAL DAMAGES THEREFROM, AND ALL RIGHTS, CLAIMS AND REMEDIES OF LESSEE, EXPRESS OR IMPLIED, ARISING OUT OF LAW OR OTHERWISE WITH RESPECT THERETO THE USE OR OPERATION OF SUCH AIRCRAFT AND ANYTHING GIVEN OR SOUGHT TO BE IMPLIED FROM ANYTHING SAID OR WRITTEN IN THE NEGOTIATIONS BETWEEN THE PARTIES HERETO OR THEIR REPRESENTATIVES PRIOR TO ENTERING INTO THIS LEASE WITH RESPECT THERETO. ANY STATUTORY OR OTHER WARRANTY, CONDITION, DESCRIPTION OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE STATE, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT IS EXPRESSLY EXCLUDED, INCLUDING BUT NOT LIMITED TO:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a)    ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS;

(b)    ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE;

(c)    ANY OBLIGATION OR LIABILITY WITH RESPECT TO ANY ACTUAL OR ALLEGED INFRINGEMENT OF PATENTS, LICENSES OR THE LIKE, OR ANY OTHER INTELLECTUAL PROPERTY;

(d)    ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM EACH PARTY'S OR ITS ASSIGNS' NEGLIGENCE, ACTUAL OR IMPUTED; AND

(e)    ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO SUCH AIRCRAFT, FOR LOSS OF USE, REVENUE OR PROFIT WITH RESPECT TO LESSEE OR FOR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF WHATEVER DESCRIPTION.

In connection with such transfer, the Lessee shall prepare and the Lessor shall execute, all in form and substance satisfactory to the Lessee and/or in a form recordable in the Government of Registry, a bill of sale evidencing each such transfer, a termination of this Lease in respect of such Aircraft and such other documents (including the discharge of the Lien of the Aircraft Mortgage in respect of such Aircraft and the other Security Documents and opinions of counsel) as the Lessee may reasonably request, all at the expense of the Lessee.  Upon a purchase of an Aircraft by the Lessee or its nominee pursuant to Clause 5.1 and Clause 5.2 or Clause 14, the leasing of such Aircraft under this Lease shall terminate.

**5.3    Return of Aircraft; Condition Upon Return**

(a)    Unless the Lessee or its nominee shall have acquired title to an Aircraft pursuant to Clause 5.2 or Clause 14, the Lessee will, upon the termination or expiration of this Lease with respect to such Aircraft (other than following an Event of Loss with respect to such Aircraft), at its own risk and expense, cause the Airframe for such Aircraft, together with the Manuals and Technical Records therefor, to be delivered to the Lessor pursuant to Clause 5.6, fully equipped with two Engines, duly installed thereon (or one or two Replacement Engines of the same manufacturer or of another manufacturer, of the same or an improved model (it being understood that such engines on such Aircraft shall be of the same or an improved model and suitable for installation and use on the Airframe for such Aircraft but having a value and remaining useful life at least equal to, and being in as good operating condition as, the Engines leased by the Lessee for such Aircraft)), duly installed thereon.

(b)    At the time of such return, (i) such Aircraft shall have a valid Certificate of Airworthiness, (ii) the Airframe and Engines or engines for such Aircraft shall be free and clear of all Liens (other than any the Lessor Liens, Funder Liens or other Liens arising under any Operative Document), (iii) the Airframe and Engines or engines for such Aircraft shall be in as good operating condition, and in proper operating condition for scheduled revenue passenger flights as provided in this Clause 5.3, Clause 7.2 and Clause 8 and (iv) such Aircraft shall, except as otherwise provided herein, be in substantially the same configuration and have installed (A) the same or equivalent avionics and other equipment, safety equipment and appurtenances as when such Aircraft was originally delivered to the Lessee hereunder and (B) all other equipment financed on the Delivery Date for such Aircraft (it being agreed that the records of the Manufacturer, including the Purchase Agreement and the Manuals and Technical Records, shall be prima facie evidence thereof).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     Upon such return the Airframe for such Aircraft shall have cleared a recently completed major check as would be required to clear such Aircraft for at least the next 12 months and such Engines and all major components for such Aircraft shall have at least 50% of the hours, cycles or time (whichever is more limiting) in each case remaining until the next anticipated engine refurbishment, overhaul or inspection requiring removal.  At the time of such return, the Lessee shall also at its own expense:

  (i)     remove or paint over all names, insignia and other indications of the Lessee or any Permitted Sub-Lessee from the exterior and interior of such Aircraft in a good, workman-like manner;

  (ii)    transfer or cause to be transferred, or reassign or cause to be reassigned, to the Lessor to the extent then possible all assignable and remaining warranties and performance guarantees obtained by the Lessee or any Permitted Sub-Lessee with respect to such Aircraft, together with all documents related thereto that may be required to effect such transfer or reassignment; and

  (iii)   if requested by the Lessor, obtain an export certificate of airworthiness (if available) for, and obtain or submit any applicable approval, permit, license or report for the re-export of, such Aircraft from the Civil Aviation Authority and deregister such Aircraft from the registry maintained by the Government of Registry.

(d)     If the Lessee fails to remove or procure the removal by the Permitted Sub-Lessee of the registration or to obtain the export certificate of airworthiness or such re-export approval, permit or license as provided above, the Lessor may do so at the cost and expense of the Lessee and, in such event, the Lessee shall upon demand reimburse the Lessor for the cost thereof.  The Lessee hereby irrevocably appoints the Lessor, upon such failure of the Lessee, as its true and lawful attorney-in-fact, with full power of substitution, in the Lessee's name or otherwise, to carry out the provisions of this Clause 5.3 and to take any action and to execute and/or file any instrument necessary to accomplish the purposes of this Clause 5.3.

(e)     If any other of the foregoing requirements shall not be satisfied at the time of return, the Lessee shall (at the Lessor's election) either promptly remedy any deficiency or make a payment fully compensating the Lessor for the remedy of such deficiency.  If requested by the Lessor, the Lessee shall perform or procure the performance of (at the sole cost and expense of the Lessee):

  (i)     a complete videotape borescope inspection of such Engines in accordance with Engine Manufacturer's maintenance manual demonstrating to the Lessor's satisfaction that such Engines (or any module) are not unserviceable or beyond serviceable limits (or serviceable with limitations) under such manual; and

  (ii)    a flight test demonstration, at the Lessee's expense and during normal business hours, for a period of not more than two hours at any airport referred to in Clause 5.4.  Personnel designated by the Lessor may participate as observers in such demonstration flight and a pilot selected by the Lessor may accompany the Lessee's pilot and occupy the observer's seat during such demonstration.  The purpose of the demonstration flight will be to ascertain that all systems and their components are functioning satisfactorily and in the event they are not so functioning they will be corrected by the Lessee or provision made therefor by the Lessee.

### 5.4 Place of Redelivery; Storage Upon Return

Each Aircraft shall be returned to an airport in Europe designated by the Lessor, and the Lessee shall retain the risk of loss for such Aircraft, and the related Airframe, Engines and Parts, until they are returned in conformity with the provisions of this Lease at such airport.

### 5.5 Return of Engines

In the event that any engine not owned by the Lessor shall be delivered with any returned Airframe as set forth in Clause 5.3 (which engine must meet the requirements of a Replacement Engine, the Lessee shall, concurrently with such delivery, at its own expense, furnish the Lessor with a bill of sale covering such engine, including full warranty as to title, and thereupon the Lessor will transfer to the Lessee, on an "as-is, where-is" basis, without recourse or warranty (except as to the absence of the Lessor Liens, Funder Liens or other Liens arising under or in connection with any Operative Document), all of the Lessor's right, title and interest in and to any Engine constituting part of the relevant Aircraft but not installed on such Airframe at the time of the return of such Airframe.  After such conveyance, the substituted engine shall be deemed an "Engine" as defined herein and shall meet the conditions set forth in Clause 5 hereof.

### 5.6 Fuel, Manuals

Upon the return of each Aircraft, each fuel tank and oil tank shall contain the same quantity of fuel or oil as was contained in the fuel and oil tanks when such Aircraft was delivered to the Lessee on the Delivery Date for such Aircraft.  Upon the return of each Aircraft, the Lessee shall deliver to the Lessor at least one original or certified copy of all logs, manuals and data, and inspection, modification and overhaul records (including all job cards) required to be maintained with respect to such Aircraft under the applicable rules and regulations of the Civil Aviation Authority (collectively, **Manuals and Technical Records**) and such other additional records as would be necessary for the FAA to issue an unrestricted certificate of airworthiness, passenger transport category, for such Aircraft and if any thereof are not in English, certified English translations thereof.

## 6. LIENS

The Lessee will not (and shall procure that no sublessee will) directly or indirectly create, incur, assume, suffer, permit or allow to exist any Lien on or with respect to any Aircraft or any Airframe or any Engine or any Part, title thereto or any interest therein or in or to this Lease or any other Operative Document or any of its rights hereunder or thereunder, except Permitted Liens.  The Lessee will promptly, at its own expense, take such action as may be necessary duly to discharge or satisfy (by bonding or otherwise) any Lien that is not a Permitted Lien if the same shall arise at any time.

## 7. REGISTRATION, MAINTENANCE, OPERATION AND POSSESSION

### 7.1 Registration

The Lessee shall, at its sole cost and expense, upon the delivery of an Aircraft, cause such Aircraft to be duly certified as to airworthiness in accordance with the law of the Government of Registry and to be duly registered with the Civil Aviation Authority in the name of the Lessor as owner of such Aircraft and the relevant Initial Permitted Sub-Lessee as operator of such Aircraft, the extent permitted by Applicable Law.  Unless otherwise provided in this Lease, the Lessee shall not take any action, or fail to take any action, which action or failure might cause such airworthiness certification and registration to cease to be in full force and effect or to be revoked, withdrawn or suspended. Without limiting the generality of the foregoing, the Lessee at all times during the Term for an

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Aircraft shall ensure, at the Lessee's sole cost and expense, that prior to the expiration thereof, the Certificate of Airworthiness and Certificate of Registration are renewed or maintained by the Civil Aviation Authority.  Without limiting the generality of Clause 11, the Lessor shall take, and shall co-operate with the Lessee to take, at the Lessee's sole cost and expense all actions necessary to permit and maintain such registration and to permit the Lessee to receive copies of all correspondence and communications to and from the Civil Aviation Authority.  Except as expressly permitted by the Operative Documents, the Lessee shall not, during the Term for an Aircraft, take any action which (a) may cause deregistration of such Aircraft from the Civil Aviation Authority or (b) the removal of the Lien of the Aircraft Mortgage in respect of such Aircraft from the Civil Aviation Authority.

**7.2**    **Maintenance**

The Lessee shall, at the Lessee's cost and expense:

(a)    establish, maintain or cause the establishment and maintenance of a maintenance programme for Boeing model 737 - 8 aircraft and for CFM model LEAP-1B27 engines (and Replacement Engines), as the case may be, each conforming with the Manufacturer's and Engine Manufacturer's maintenance planning document and approved by the Civil Aviation Authority (collectively, the **Approved Maintenance Programme**), and ensure that all service, inspection, maintenance, modification, storage, repair and overhaul of each Aircraft is performed in accordance with such Approved Maintenance Programme, by the Lessee or by the Permitted Sub-Lessee if so approved by the Civil Aviation Authority or by a maintenance facility approved by the Civil Aviation Authority (the **Approved Maintenance Facility**), provided that (i) all Manuals and Technical Records shall be kept in the English language, (ii) the Lessee shall submit the Approved Maintenance Programme to the Lessor, the Insurer Representative and Security Trustee on or prior to the Delivery Date for each Aircraft and shall advise the Lessor, and the Insurer Representatve, upon the their reasonable request, of any material subsequent changes to such Approved Maintenance Programme by issuing revisions thereof approved by the Civil Aviation Authority to the Lessor, Security Trustee, the Insurer Representative and the Agent and (iii) upon the return of any Aircraft pursuant to the terms hereof, such Aircraft shall be capable of qualifying immediately for the issuance of a Certificate of Airworthiness issued by the FAA for commercial passenger transport;

(b)    keep each Airframe, each Engine and all Parts or procure each of the same are kept in good operating and serviceable condition and repair, and in such condition (including maintenance of the Manuals and Technical Records) as necessary to enable all applicable airworthiness certifications of each Aircraft to be maintained in good standing at all times under the Applicable Laws of the Government of Registry except when such Aircraft is undergoing service, maintenance, modification, overhaul, testing and/or repairs as required or permitted hereunder;

(c)    promptly furnish the Lessor, upon request, with such information as may be required to enable the Lessor to file any report required to be filed by the Lessor with any Government Body because of the Lessor's ownership of each Aircraft or the Lessor's lease of each Aircraft hereunder, as the case may be;

(d)    procure that each Airframe, each Engine and each Part is maintained, inspected serviced, stored, repaired, modified and overhauled (i) to comply with all warranty requirements pursuant to the Purchase Agreement or the Engine Agreement, as the case may be, (ii) in accordance with Manufacturer's and Engine Manufacturer's repair manuals, (iii) pursuant to the Approved Maintenance Programme and (iv) in a manner that does not discriminate against any Aircraft, any Airframe or any Engine when compared to the highest applicable standard (including the prompt performance of Service Bulletins, mandatory Manufacturer's

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and Engine Maufacturer's directives and Airworthiness Directives) applied by the Lessee or the Permitted Sub-Lessee with regard to similar aircraft owned, operated or leased by the Lessee or the Permitted Sub-Lessee;

(e)     procure and maintain in effect with Manufacturer and Engine Manufacturer a revision service, if any, for all Manuals and Technical Records, and maintain the Manuals and Technical Records in such condition to satisfy the standards of the Civil Aviation Authority for a Certificate of Airworthiness for commercial passenger/cargo transport;

(f)     procure that for each Aircraft, all applicable mandatory alert Service Bulletins issued by Manufacturer and Engine Manufacturer shall be accomplished, and, in addition, all other Service Bulletins the Lessee or the Permitted Sub-Lessee adopts during the Term for such Aircraft for any similarly operated aircraft of the same model in the Lessee's or the Permitted Sub-Lessee's fleet, it being the intent of the parties that no Aircraft shall be discriminated against in any manner in Service Bulletin compliance and other maintenance matters; and

(g)     for each Aircraft, comply with all applicable Airworthiness Directives issued by the Civil Aviation Authority and which become due during the Term for such Aircraft or which at the time of redelivery of such Aircraft to the Lessor pursuant to the terms hereof have been issued by the Civil Aviation Authority or made mandatory by EASA upon operators regarding Boeing model 737 - 8 aircraft, CFM model LEAP-1B27 engines and any Part, as the case may be, and which have become due.

Neither the Lessor nor any Secured Party shall bear responsibility or liability for any grounding or suspension of operations of any Aircraft resulting from Airworthiness Directives, Service Bulletins, or any repairs or modifications to any Aircraft by the Lessee or any other Person.

**7.3     Operation**

Subject to Clause 7.5, the Lessee undertakes that no Aircraft will be maintained, used, insured or operated:

(a)     in violation of the Certificate of Airworthiness or any license or registration of, or with, any Government Body having jurisdiction over the Lessee (or any Permitted Sub-Lessee) or such Aircraft;

(b)     for any primary purpose other than the commercial transportation of passengers and/or cargo, provided that cargo shall be carried only in the cargo hold of such Aircraft;

(c)     in violation of the Approved Maintenance Programme or any warranty requirements pursuant to the Purchase Agreement, Engine Agreement or any other agreement setting forth any other material warranties with respect to such Aircraft, the related Airframe, Engines or Parts;

(d)     for any purpose or in any manner for which it is not designed or reasonably suited or outside the tolerances and limitations for which such Aircraft, the related Airframe or any related Engine was designed in accordance with the Approved Maintenance Program, Applicable Laws and applicable material warranties;

(e)     at any time while the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof are not in full force and effect;

(f)     for any purpose or in any manner inconsistent with the terms of, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(g)    in any place inconsistent with the terms of, excluded from coverage by, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof (or outside any geographical limit imposed by the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof, including without limitation, in or through any recognized or (in the Lessor's reasonable opinion) threatened area of hostilities unless fully covered by war risk and allied perils insurance in amounts and scope required by this Lease; or

(h)    in violation of any Applicable Law of or by any Government Body having jurisdiction over the Lessor or the Lessee or any Secured Party or any Aircraft or any mandatory requirement of Manufacturer, Engine Manufacturer or supplier, except for unintentional minor or nonrecurring violations which are cured promptly and which:

    (i)    do not involve any loss or reduction of coverage under any of the Aircraft Insurances or any Aircraft Reinsurances required by the terms of Clause 10;

    (ii)    do not involve any material risk of the sale, forfeiture or loss of or damage to such Aircraft or any interest therein;

    (iii)    do not involve any material risk of the Lessor or any Secured Party being subject to civil penalties;

    (iv)    do not involve any risk of criminal penalties being imposed against or upon the Lessee, the Lessor, the Lessor Parent or any Secured Party, which in the case of the Lessor or the Lessee shall be a material risk; and

    (v)    do not subject the Lessor, the Lessee or the Permitted Sub-Lessee to any fine or penalty or enforcement action which would materially adversely affect the business or operations of the Lessor, the Lessee, the Permitted Sub-Lessee or any Guarantor, the operation of any Aircraft or the rights of the Lessee, the Lessor or any Secured Party hereunder or under any other Operative Document,

provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party or have any material risk of the sale or forfeiture of any Aircraft, or of materially adversely affecting the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder, and if any Applicable Law requires alteration of any Aircraft, the Lessee will conform thereto or obtain conformance therewith at no cost or expense to the Lessor or any Secured Party and will maintain such Aircraft in proper operating condition under such Applicable Law, provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party, have any material risk of the sale or forfeiture of any Aircraft or any Engine, or adversely affect the rights of the Lessor or any Secured Party hereunder or under any other Operative Documents or the obligations of the Lessee hereunder.

Further, the Lessee undertakes that:

    (i)    all debts, costs, Losses, liabilities, premiums, calls, contributions, penalties, landing fees, overflight and navigation charges (including Eurocontrol fees), dues, tolls, charges, fines, recoveries or other expenses with respect to any Aircraft shall be duly and punctually paid and discharged during the Term, provided that the Lessee may in good faith diligently contest the validity or application of any of the foregoing in

FILED DATE: 1/11/2023 2:57 PM   2023L000001

any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of the sale of forfeiture of any Aircraft, or adversely affecting the rights of the Lessor or any Secured Party hereunder or under any of the other Operative Documents or the obligations of the Lessee hereunder or any risk of any criminal penalties or criminal liability being imposed, and upon reasonable request by the Lessor, the Insurer Representative or the Security Trustee shall confirm to such Person's reasonable satisfaction that such action has been taken;

(ii)     no alteration in or modification or addition to any Airframe, any Engine or any Part, or any removal of any Engine or any Part from the Aircraft, or installation on or attachment to any Airframe, any Engine or any Part of anything not being part of any Aircraft on the Delivery Date shall occur unless expressly permitted by this Lease, including under Clause 8.4; and

(iii)    it shall not and shall procure that any Permitted Sub-Lessee shall not cause or permit to be done anything regarding any Airframe, any Engine or any Part the effect of which may be reasonably expected to result in such Airframe, such Engine or such Part being requisitioned for title or arrested or otherwise to jeopardize the interests of the Lessor and the Secured Parties in and to such Airframe, such Engine or such Part.

## 7.4     Possession

(a)     Subject to Clauses 7.5, 8 and 9, the Lessee shall not and shall procure that no Permitted Sub-Lessee shall, without the prior written consent of the Insurer Representative and the Security Trustee (which consent may be withheld in their sole discretion), sublease (whether directly, under a Dry Lease or Wet Lease), or otherwise in any manner deliver, transfer or relinquish possession of any Airframe, any Engine or any Part to any Person or firm or install any Engine, or permit any Engine to be installed, on any airframe other than the associated Airframe, provided, however, that (subject to Clauses 7.5, 8 and 9) so long as no Termination Event or Event of Default shall have occurred and be continuing, the Lessee may, without the prior written consent of the Insurer Representative or the Security Trustee:

(i)      deliver or permit the delivery of possession of any Airframe, any Engine or any Part (A) to the manufacturer thereof for testing or other similar purposes or (B) to an Approved Maintenance Facility for service, repair, maintenance or overhaul work on such Airframe, such Engine, such Part or any part thereof or for alterations or modifications in or additions to such Airframe, such Engine or such Part to the extent required or permitted by the terms of Clause 8.4, but in any event only in compliance with the Approved Maintenance Programme and Clause 7.2;

(ii)     install or permit the installation of an Engine for any reason on another airframe owned by the Lessee free and clear of all Liens, except (A) Permitted Liens and except those that apply only to the engines (other than the Engines), appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment (other than Parts) installed on such airframe (but not to such airframe as an entirety); and (B) mortgage liens or other security interests, but only if the holder of such mortgage lien or other security interest expressly agrees that such Engine shall not become subject to the Lien of such mortgage or security interest, notwithstanding the installation thereof on such airframe;

(iii)    install or permit the installation of an Engine for any reason on an airframe owned or operated by the Lessee or an Approved NAS Sub-Lessee (while such Approved

FILED DATE: 1/11/2023 2:57 PM   2023L000001

NAS Sub- Lessee is leasing the Engine from the Lessee pursuant to a Permitted Sub-Lease) leased under a lease unrelated to this Lease to the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) or purchased by the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) subject to a conditional sale or other security agreement, provided, however, that in any such case the Lessee shall provide written assurance reasonably satisfactory to the Lessor and the Security Trustee that the rights, title and interests of the Lessor and the Secured Parties in such Engine under the Operative Documents will not be derogated in any material manner as a result thereof;

(iv)    temporarily install an engine on an Airframe which does not satisfy the requirements of Replacement Engine; and

(v)     Wet Lease an Aircraft for a term not to exceed the lesser of six (6) months and the remainder of the Term for such Aircraft,

provided, in each case, that the rights of any transferee who receives possession by reason of a transfer permitted by this Clause 7.4 (other than the transfer of an Engine which is deemed an Event of Loss) SHALL BE EXPRESSLY SUBJECT AND SUBORDINATE TO ALL THE TERMS OF THIS LEASE AND THE OTHER OPERATIVE DOCUMENTS, including the Lessor's and the Secured Parties' rights to a repossession pursuant to Clause 14 hereof, to terminate and avoid this Lease or other transfer upon such repossession and to require the Lessee or other transferee to forthwith deliver any Airframe and/or any Engine subject to this Lease or other transfer upon repossession, and the Lessee shall remain primarily liable hereunder for the performance of all of the terms of this Lease to the same extent as if such transfer had not occurred.

(b)     No relinquishment of possession of any Airframe, any Engine or any Part shall affect in any way the registration of any Aircraft or discharge or diminish any of the Lessee's obligations hereunder or under any of the other Operative Documents or constitute a waiver of the Lessor's or any Secured Party's rights or remedies hereunder or under any of the other Operative Documents.

(c)     The Lessor agrees, for the benefit of the Lessee (and any Permitted Sub-Lessee) and for the benefit of any mortgagee or other holder of a security interest in any engine (other than an Engine) owned or leased by the Lessee (or any Permitted Sub-Lessee), any lessor of any engine (other than an Engine) leased to the Lessee (or any Permitted Sub-Lessee) and any conditional vendor of any engine (other than an Engine) purchased or leased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale agreement or any other security agreement, that no interest shall be created hereunder in any engine so owned, leased or purchased and that none of the Lessor, Security Trustee nor their respective successors or assigns will acquire or claim, as against the Lessee (or any Permitted Sub-Lessee) or any such mortgagee, lessor or conditional vendor or other holder of a security interest or any successor or assignee of any thereof, any right, title or interest in such engine as the result of such engine being installed on any Airframe, provided, however, that such agreement of the Lessor shall not be for the benefit of any lessor of or secured party in respect of any airframe (other than an Airframe) leased to the Lessee (or any Permitted Sub-Lessee) or purchased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale or other security agreement or for the benefit of any mortgagee of or any other holder of a security interest in an airframe (other than an Airframe) owned by the Lessee (or any Permitted Sub-Lessee), unless such lessor, conditional vendor, other secured party or mortgagee has expressly agreed (which agreement may be contained in such lease, conditional sale or other security

FILED DATE: 1/11/2023 2:57 PM   2023L000001

agreement or mortgage) that neither it nor its successors or assigns will acquire, as against the Lessor, the Security Trustee or any other Secured Party any right, title or interest in an Engine as a result of such Engine being installed on such airframe.

(d)     The Lessee will, upon reasonable request, furnish to the Insurer Representative, the Security Trustee and the Agent prompt notice of any transfer or relinquishment of possession of any Aircraft permitted under this Clause 7.4 (other than Clause 7.4(a)), and if requested by the Insurer Representative, the Security Trustee or the Agent a copy of the documents relating to such transfer or relinquishment of possession, duly certified by an officer's certificate of the Lessee being a complete and correct copy of all documents so provided.

## 7.5     Dry Leasing

(a)     The Lessee shall not enter into any sublease (whether by Dry Lease or any other similar arrangement) of any duration with respect to any Aircraft (including any Airframe and any Engines or engines installed thereon) with any Person without the prior written consent of the Insurer Representative and the Security Trustee (each of which may withhold its consent in its sole discretion) other than:

(i)      the Initial Permitted Sub-Lease; or

(ii)     another Permitted Sub-Lease with a Permitted Sub-Lessee.

(b)     Other than in respect of the Initial Permitted Sub-Lease, any such sublease shall be subject to the following conditions and requirements:

(i)      any such sublease shall be made expressly subject and subordinate to all the terms of this Lease and the other Operative Documents, and shall not adversely affect the priority or perfection of the Lien of the Security Documents, the enforceability of the Collateral or the right of the Lessor or the Security Trustee to avoid such sublease and to repossess such Aircraft, the associated Airframe or the associated Engines in connection with the exercise of any remedies upon any Termination Event or Event of Default;

(ii)     the Lessee shall remain primarily liable hereunder for the performance of all terms and conditions of this Lease to the same extent as if such sublease had not occurred;

(iii)    all terms and conditions of this Lease and the other Operative Documents shall remain in full force and effect;

(iv)    prior to entering into any such sublease, the Lessee shall provide to the Lessor and the Secured Parties certificates of insurance and brokers' undertakings from the Lessee's insurance brokers or an authorized representative of the Lessee's insurers reflecting that the Aircraft Insurances required to be maintained pursuant to Clause 10 are in full force and will not be adversely affected due to the sublease;

(v)     such sublease shall (A) provide that such Aircraft, and the associated Airframe, Engines and Parts, be maintained in accordance with the Approved Maintenance Programme, and (B) be governed by English law or another jurisdiction acceptable to the Security Trustee and the Insurer Representative, and (C) be with a Permitted Sub-Lessee;

(vi)    such sublease shall not permit any further sub-leasing and the term of the sublease shall not exceed the remaining Term with respect to such Aircraft;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(vii)   either (A) no re-registration of such Aircraft shall occur as a result of entering into such sublease or (B) if entering into such sublease shall involve the re-registration of such Aircraft, the proposed state of registration of such Aircraft shall be Norway, Ireland, the United Kingdom or shall have been approved by the Insurer Representative and the Security Trustee in writing (which approval may be withheld in their sole discretion) and shall in each case be subject to the following:

(A)   under the Applicable Laws of the proposed state of registration of such Aircraft:

  I.   there shall exist no rights in favour of the Lessee or the relevant sublessee or any other Person that would, upon bankruptcy or other default by such sublessee, prevent the deregistration, re-export and return of such Aircraft to the Lessor (or upon the enforcement of the Lien of the Security Documents, the Security Trustee) in accordance with and as permitted by the terms of Clause 5 upon the exercise by the Lessor of its remedies under Clause 14;

  II.   the Lessor shall be recognized as the owner of such Aircraft and the Secured Parties' Lien over the Aircraft pursuant to the Security Documents shall be recognised;

  III.   there shall be no impediment (as at the date of re-registration) to the exercise of the rights and remedies provided for in this Lease or in any other Operative Document in respect of such Aircraft and the practical realisation by the Lessor and the Secured Parties of the benefits of this Lease and the Security Documents (to the extent relating to the Aircraft and this Lease) will be available under such Applicable Law;

  IV.   the rights of the Lessor under this Lease and the rights and Liens of the Security Trustee and the Secured Parties under the Security Documents, in each case, in respect of such Aircraft, shall be enforceable in  the jurisdiction of re-registration and, if requested by the Security Trustee or the Insurer Representative, the Lessor shall provide a new local law mortgage over the Aircraft in favour of the Secured Parties;

  V.   all filings (including all filings required by the Insurer Representative or the Security Trustee pursuant to the Cape Town Convention), recordations and other actions necessary in order to establish, protect and perfect the Lessor's title to the Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Paragraph IV above) shall have been made;

  VI.   no Secured Party shall be required to qualify to do business in such jurisdiction as a result of such re-registration;

(B)   such re-registration shall not result in any Tax for which the Lessee is not required to indemnify;

(C)   the insurance and any reinsurance required in respect of such Aircraft by Clause 10 shall be in full force and effect subsequent to such re-registration and the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee evidence of such insurance reasonably satisfactory to the Insurer Representative and the Security Trustee;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(D)     no Liens (other than Permitted Liens) shall arise as a result of such re-registration;

(E)     all filings, registrations, recordations and other actions necessary under the Applicable Laws of the jurisdiction in which such Aircraft is to be registered, in order to establish, protect and perfect the Lessor's title to such Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Clause 7.5(vii)(A)(IV) above), shall be made;

(F)     the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee an opinion of independent counsel in the state of such re-registration addressed to the Lessor, the Security Trustee, the Agent and the Insurer Representative reasonably satisfactory in form and substance to the Insurer Representative and the Security Trustee; and

(G)     all reasonable costs, expenses, fees and other charges in connection with any such re-registration shall be paid by the Lessee;

(viii)  the Lessee shall (A) at least thirty (30) days prior to such sublease taking effect, give the Lessor, the Security Trustee, the Agent and the Insurer Representative written notice of such proposed sublease together with a copy of the proposed agreement (which agreement must be reasonably acceptable in form and substance to the Lessor, the Security Trustee and the Insurer Representative), (B) deliver a copy of the approved executed agreement to the Security Trustee, the Lessor, the Agent and the Insurer Representative and assign the Lessee's interests in such agreement to the Lessor, who in turn shall assign such interests to the Security Trustee, as a perfected first-priority security interest for the Lessee's obligations hereunder and cause the Lessee to consent to such assignment and to the Lessor's further assignment of such sublease to the Security Trustee for the benefit of the Secured Parties and (C) provide evidence to the Security Trustee, the Agent and the Insurer Representative that registrations have been made with the International Registry with respect to the International Interests, if any, created pursuant to such sublease and the assignments of International Interests, if any, created pursuant to the assignments;

(ix)    the Lessee shall, at least ten (10) days prior to such sublease taking effect, deliver to the Lessor, the Security Trustee, the Agent and the Insurer Representative proposed forms of (A) an acknowledgment by the sublessee recognizing all rights, title and interests of the Lessor, the Security Trustee and the other Secured Parties under the Operative Documents, and (B) a written opinion of counsel in the country of citizenship or incorporation or formation of the relevant sublessee confirming that all steps necessary to protect the rights, title and interests of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents (including, without limitation, registration of all interests, assignments and subordinations with the International Registry) have been taken or will be taken in a manner reasonably satisfactory to the Secured Parties, each in form and substance reasonably satisfactory to the Lessor, the Agent, the Insurer Representative and the Security Trustee, and on or prior to such sublease taking effect, deliver to the Lessor, the Insurer Representative, the Agent and the Security Trustee executed copies of such documents;

(x)     the Lessee shall promptly reimburse the Lessor, the Security Trustee or any other Secured Party for any reasonable costs and expenses (including attorneys' fees and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

expenses) incurred by them in connection with such sublease or any related re-registration; and

(xi)   the proposed sublessee must be solvent.

**7.6**   **Special Operation and Possession Covenants**

In addition to the foregoing requirements, the Lessee covenants and agrees as follows:

(a)   **Restricted Use of Aircraft**

No Aircraft, Engine or Part shall, without the prior written consent of the Lessor, the Security Trustee and the Insurer Representative, (whether, directly or under a Dry Lease, Wet Lease, Charter, blocked-space or other arrangement) be:

(i)    flown to or within, or otherwise operated or used to or within, an Excluded Country if to do so would breach any Applicable Law (including Sanctions) or operated (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under, the laws of, or whose principal place of business or principal place of aircraft operations is located in, an Excluded Country;

(ii)   principally used in, or operated or used (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under the laws of, or whose principal place of business or principal place of aircraft operations is located in, a Restricted Country;

(iii)  "primarily based" in one or more Restricted Countries.  For purposes of this provision, **primarily based** shall mean that during any consecutive seven (7) day period, the aggregate amount of time spent on the ground by such Aircraft, such Engine or such Part, as applicable, in one or more Restricted Countries shall exceed 15% of the total amount of time spent on the ground during such seven (7) day period, provided that the limitation imposed by this paragraph (iii) shall not prohibit, to the extent necessary, any nonrecurring maintenance or other nonrecurring repairs to be done with respect to an Aircraft in a Restricted Country;

(iv)   operated or used by or for any other Person except in accordance with Clauses 7.3, 7.4 and 7.5;

(v)    operated or used in contravention of any United States law, regulation or stated policy of general applicability restricting the operation or use of United States-manufactured or financed aircraft and engines and such restrictions are applicable to the transactions contemplated hereby;

(vi)   flown or otherwise operated or used for any offensive or defensive military purpose;

(vii)  operated or used for any purpose for which it is not designed or reasonably suited in accordance with the Approved Maintenance Programme, Applicable Law and applicable material warranties or for any primary purpose or other than the commercial transport of passengers and cargo; or

(viii) subleased (whether under a dry lease or wet lease) to any Person other than as provided in this Lease.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     **Waiver of Defences to Repossession**

None of the Lessee, nor any Permitted Sub-Lessee, nor anyone claiming through or under the Lessee or Permitted Sub-Lessee, shall set up, claim or seek to take advantage of any Applicable Laws now or hereafter in force in any jurisdiction in which any Aircraft or any portion thereof may be situated in order to prevent, hinder or delay any effort in accordance with this Lease on the part of the Lessor or the Security Trustee to regain possession of any Aircraft or deregister or re-export any Aircraft or any portion thereof from any jurisdiction in which such Aircraft or any portion thereof may be situated following the occurrence of an Event of Default or Termination Event, and while the same shall be continuing, and the Lessee, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may be lawful so to do, the benefit of all such Applicable Laws (including, without limitation, any rights it may have, if any, to avail itself of the protection provided by the Convention of 1933 on the Unification of Certain Rules Relating to the Precautionary Arrest of Aircraft, or any other similar law, treaty or convention applicable to the Lessee or any Aircraft which would limit the ability of the Lessor or the Security Trustee to repossess or otherwise recover any Aircraft following the occurrence and during the continuance of an Event of Default or Termination Event).

(c)     **Statement of Account of Landing Fees or Navigation Charges**

In the event that a Government Body of any country in which any Aircraft or the Lessee or any Permitted Sub-Lessee operates shall be permitted by Applicable Law to detain or seize, or shall adopt legislation which permits the detention or seizure of, an aircraft for unpaid landing fees or navigation charges without formal legal proceedings, the Lessee shall (and shall procure that any Permitted Sub-Lessee shall) promptly following demand by the Security Trustee or the Insurer Representative, deliver to the Security Trustee, the Agent and the Insurer Representative a letter, in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative, addressed to the airport or air navigation authority of such country authorizing such authority to release to the Security Trustee from time to time a statement of account of all such fees and charges then due in respect of all aircraft owned by or leased to the Lessee or any Permitted Sub-Lessee, as the case may be.

(d)     **Eurocontrol**

The Lessee shall and shall procure that the relevant Initial Permitted Sub-Lessee shall prior to the Delivery Date of an Aircraft, and the Lessee shall procure that any other Permitted Sub-Lessee shall, prior to the commencement of any sub-lease:

(i)     procure that the Lessee or any Permitted Sub-Lessee executes a Eurocontrol Letter and ensure that such letter is promptly sent to and acknowledged by Eurocontrol in accordance with Eurocontrol's advertised procedures;

(ii)    to the extent it has not already done so, promptly enter into a CEFA Agreement and provide the Security Trustee and the Insurer Representative with a copy certified by an officer of such company;

(iii)   if requested by the Security Trustee or the Insurer Representative, promptly obtain from Eurocontrol (via CEFA or otherwise) and provide to the Lessor, the Security Trustee and the Insurer Representative a general statement of account in relation to charges incurred by the Lessee and the Initial Permitted Sub-Lessee (and, if applicable, other Permitted Sub-Lessee); and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(iv)    if Eurocontrol's procedures relating to the availability to third parties of general statements of account are amended, take such actions as may be reasonably requested by the Security Trustee or Insurer Representative to ensure that the Security Trustee is able to obtain (or continue to obtain) such general statements of account in accordance with such procedures.

(e)    **EU ETS Laws**

It shall procure that any Permitted Sub--Lessee:

(i)    comply, and must procure that any other "aircraft operator" for the purposes of the EU ETS Laws complies, with all EU ETS Laws applicable to it/them or the Aircraft and, promptly on request from the Lessor, the Insurer Representative or the Security Trustee, supply to such person evidence reasonably satisfactory to it of such compliance;

(ii)    identify itself as "aircraft operator" to any EU ETS Authority whenever required under the EU ETS Laws or whenever the Lessor, the Insurer Representative or the Security Trustee may request.

(f)    **No Operation by the Secured Parties**

In no event shall any Secured Party be represented as carrying goods or passengers on any Aircraft or as being in any way connected or associated with any operation or carriage which may be undertaken by the Lessee or any Permitted Sub-Lessee or as having any operational interest in any Aircraft.

(g)    **Seizure of Aircraft**

The Lessee shall not do, shall procure that no Permitted Sub-Lessee shall do, and shall otherwise use its best efforts to prevent, any act which could reasonably be expected to result in any Aircraft, any Airframe or any Engine being arrested, confiscated, seized, taken in execution, attached, impounded, forfeited, detained in exercise or purported exercise of any registered or possessory lien or other claim or otherwise taken from the possession of the Lessee or any Permitted Sub-Lessee, and if any such arrest, confiscation, seizure, execution, taking, attachment, impoundment, forfeiture, detention or other loss of possession occurs, the Lessee shall give Security Trustee, the Lessor, the Agent and the Insurer Representative immediate notice thereof and shall forthwith procure the prompt release of such Aircraft, such Airframe or such Engine.

(h)    **Credit for Maintenance**

The Lessee shall not pledge and shall procure that no Permitted Sub-Lessee shall pledge  the credit of any Secured Party for any maintenance, service, repairs, overhauls of, or modifications to, or changes or alterations in, or additions to, any Aircraft, any Airframe, any Engine or any Part.

(i)    **Notice of Suspension**

The Lessee shall give the Lessor, the Security Trustee, the Agent and the Insurer Representative immediate written notice of any action being taken by the management of any Lessee Obligor relating to any general suspension of payment proceedings under any Applicable Law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(j)     **Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under Clause 10 and should any such claim be paid, shall procure that immediate action is taken either (A) to increase any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty or (B) to obtain "contingent War Risk Insurance" acceptable to the Issuer Representative and the Security Trustee for the express benefit of the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee so that their financial interests in each Aircraft shall at all times be fully insured for the period covered by that War Risk Insurance, notwithstanding any annual aggregate limit or sublimit of liability.

(k)     **Inspection**

At all reasonable times and (except during the continuance of a Default, a Termination Event or an Event of Default) upon reasonable notice to the Lessee and not more frequently than once per calendar year any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives may inspect any Aircraft, any Engine or any Part and the Manuals and Technical Records relating thereto and to the registration thereof and copy or make extracts from the books and records of the Lessee and any Permitted Sub-Lessee relative thereto and may discuss the Lessee's and any Permitted Sub-Lessee business or financial affairs with any of the Lessee's or Permitted Sub-Lessee officials, auditors or officers as may be required for the foregoing and, to the extent available, make any inspection reports available to the Agent, provided that, unless a Termination Event or an Event of Default has occurred and is continuing:

(i)      any such inspection shall be a visual, walk-around inspection which may include going on board such Aircraft, subject to the Permitted Sub-Lessee's limitations for reasons of safety or insurance coverage, but shall not include opening or removing any panels, bays or engine or avionic components of such Aircraft, unless such Aircraft is, on the date of such inspection, undergoing a maintenance visit, in which case such panels, bays or engine or avionic components as are open or removed from such Aircraft on such date may be inspected; and

(ii)     any such inspection or examination shall not unreasonably delay or interrupt or cause any obstruction in the Lessee's maintenance and operation of such Aircraft.

(l)     None of the Lessor, the Security Trustee, the Agent, the Funder or the Insurer Representative (i) shall have any duty to make any such inspection or (ii) shall incur any liability or obligation by reason of making or not making any such inspection, except as provided in this Clause 7.7.  So long as no Termination Event or Event of Default has occurred and is continuing, the reasonable cost of one such inspection initiated by any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives each calendar year shall be paid by the Lessee.  The Lessee shall pay the cost of all such inspections during the continuance of a Termination Event or an Event of Default.  The cost of other inspections shall be paid by the party requesting such inspection, unless such inspection reveals a material breach of the obligations hereunder to maintain each Aircraft and the associated Manuals and Technical Records, in which case the cost of such inspection shall be borne by the Lessee.  Upon the request of the Lessor, the Lessee shall promptly notify the Lessor, the Insurer Representative, the Agent and the Security

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Trustee of the major phase checks ("C" check or higher and any structural inspection) then scheduled on any Aircraft for the six-month period following such request.

**7.7     Information Concerning the Aircraft and Engines**

The Lessee shall at its own cost and expense promptly provide the Lessor, the Agent, the Funder, the Insurer Representative and the Security Trustee with such information (to the extent required by this Lease, any Operative Document or maintained by the Lessee in accordance with its standard fleet procedures) regarding the registration, location, operation, use, insurance, maintenance and condition of each Aircraft and its associated Engines, including all Parts to the extent practicable, as the Lessor, the Agent, the Funder, the Insurer Representative or the Security Trustee may from time to time reasonably require.

**7.8     Substitution of Engines**

(a)     So long as no Termination Event or Event of Default shall have occurred and be continuing (unless such Termination Event or Event of Default relates to the Engine being substituted), the Lessee may (and may permit any Permitted Sub-Lessee to) at any time, with contemporaneous notice to the Lessor, the Agent, the Funder, the Insurer Representative and the Security Trustee, duly convey or cause to be conveyed to the Lessor as a substitute for an Engine title to another engine of the same manufacturer and model, as such Engine which satisfies the conditions set forth in the definition of "Replacement Engine", provided that all engines installed on any Airframe shall be of compatible make and model, free and clear of all Liens other than Permitted Liens and shall have a value and remaining useful life and utility at least equal to, and being in as good operating condition and state of maintenance as, the Engine to be replaced thereby, assuming such Engine was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to such replacement.  Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

    (i)     furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

    (ii)     cause a Lease Supplement, in form and substance reasonably satisfactory to the Lessor, the Insurer Representative and the Security Trustee subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry;

    (iii)     furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such replacement engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor may reasonably request;

    (iv)     furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) reasonably satisfactory to the Lessor, the Security Trustee and the Insurer Representative certifying that such engine has value and remaining useful life at least equal to, and is in as good operating condition (as the Engine being substituted, assuming such Engine was in the condition and state of repair required by the terms hereof immediately prior to such substitution;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(v)      cause amendments to the relevant Aircraft Mortgage and any Security Document, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such replacement engine to the relevant Aircraft Mortgage and the relevant Security Documents to be duly executed by the Lessor, Lessee or Permitted Sub-Lessee (as applicable) and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or the jurisdiction of incorporation or formation of the Lessor, Lessee or Permitted Sub-Lessee as applicable;

(vi)     cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)    furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and Security Trustee regarding the perfection of the Lien of any amended Security Document and relevant Aircraft Mortgage with respect to such Replacement Engine, in form and substance reasonably satisfactory to the Security Trustee and the Insurer Representative (addressed to the Security Trustee, the Insurer Representative, the Funder and the Agent); and

(viii)   affix a nameplate on such replacement engine in accordance with Clause 8.5.

(b)     Upon full compliance by the Lessee with the terms of this Clause 7.8, the Lessor will transfer or cause to be transferred, at the Lessee's sole cost and expense, to or upon the order of the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it) all of the Lessor's right, title and interest, if any, in and to each replaced Engine with respect to which such substitution occurred by an appropriate instrument, signed by the Security Trustee, releasing such Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Engine" as defined herein and shall be deemed part of the same Aircraft as was the Engine replaced thereby.  No substitution with respect to an Engine under the circumstances contemplated by the terms of this Clause 7.8 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

**7.9**    **Annual Survey**

(a)     Upon written request, but no more frequently than once each calendar year for each Aircraft any one of the Security Trustee, the Agent, the Insurer Representative or their authorized representative, may request a technical report about the related Airframe, Engines and Manuals and Technical Records in connection with such Airframe and each such Engine, performed at an Approved Maintenance Facility in connection with the most recently completed (i) airworthiness inspection, or heavy maintenance check (in the case of an Airframe), (ii) heavy maintenance visit and any shop visit (in the case of each such Engine), and (iii) overhaul or reconditioning (in the case of any Part, appurtenance or system in respect of such Aircraft or each such Engine not covered by clauses (i) and (ii) preceding).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     Such report shall be at the Lessee's expense and shall contain sufficient detail so as to enable the Security Trustee, the Agent and the Insurer Representative to determine the Lessee's compliance with the terms of this Lease and the general repair, condition, maintenance, overhaul and time-before-overhaul status of such Airframe and each such Engine or Part.  If any such report is prepared at the request of the Security Trustee, the Security Trustee shall promptly provide a copy to the Agent and the Insurer Representative.

**8.     REPLACEMENT;   TEMPORARY   INSTALLATION;   POOLING;   ALTERATIONS, MODIFICATIONS AND ADDITIONS; ETC**

**8.1     Replacement of Parts**

(a)     The Lessee, at its own expense, will promptly replace or cause to be replaced all Parts that may from time to time be incorporated or installed in or attached to any Airframe or any Engine and that may from time to time be defective and not economically repairable, become time-expired or due for replacement or worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever.

(b)     In addition, the Lessee (or any Permitted Sub-Lessee) may, at its own expense, remove in the ordinary course of maintenance, service, repair, overhaul or testing, any Part, whether or not time-expired, due for replacement, worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use, provided, however, that the Lessee will, at its own cost and expense, replace (or cause to be replaced) such Part as promptly as practicable.

(c)     Each replacement Part shall be free and clear of all Liens (except Permitted Liens) and except as permitted by Clause 8.3, shall be in at least as good operating condition as, and shall have value, modification status and performance characteristics at least equal to, or, if applicable, comparable to, the Part replaced assuming such replaced Part was in the condition and repair required to be maintained by the terms hereof.

(d)     Each Part at any time removed from any Airframe or each Part removed from any Engine shall remain the property of the Lessor, no matter where located, until such time as such Part shall be replaced by a Part that has been incorporated or installed in or attached to the Airframe from which such Part was removed or, as the case may be, an Engine and that meets the requirements for a replacement Part specified above and shall be subject to the Lien of the relevant Aircraft Mortgage.

(e)     Immediately upon any replacement Part becoming incorporated or installed in or attached to an Airframe or, as the case may be, an Engine as above provided and title thereto being vested in the Lessor free and clear of all Liens (except Permitted Liens), without further act:

    (i)      title to the replaced Part shall thereupon vest in the Lessee or its Approved Nominee and shall no longer be deemed a Part hereunder; and

    (ii)     such replacement Part shall become subject to this Lease and be deemed part of such Airframe or, as the case may be, such Engine for all purposes hereof to the same extent as the Part originally incorporated or installed in or attached to such Airframe or, as the case may be, such Engine.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 8.2     Temporary Installation of Parts

The Lessee may install or permit the installation of any part on any Airframe or Engine by way of substitution, replacement, renewal or mandatory modification notwithstanding that such installation is not in accordance with Clause 8.1 in the case of a part if:

(a)     there shall not have been available to the Lessee at the time and in the place that such part was required to be installed on such Airframe or, as the case may be, such Engine a substitute or replacement Part complying with the requirements of Clause 8.1;

(b)     it would have resulted in a disruption of the operation of the relevant Aircraft and/or the business of the Lessee to have grounded such Aircraft and/or to have permitted the relevant Part to continue to be unserviceable or unrepaired until such time as an part complying with the requirements of Clause 8.1 became available for installation on such Airframe or such Engine; and

(c)     as soon as practicable, but in any event within one hundred and eighty (180) days, the Lessee shall cause any such part not complying with the requirements of Clause 8.1 to be removed and replaced or substituted by a part complying with the requirements of Clause 8.1.

## 8.3     Pooling of Parts

Any Part removed from any Airframe or any Engine may be subjected by the Lessee or permitted by the Lessee to be subjected to a normal pooling arrangement customary in the international airline industry entered into in the ordinary course of the Lessee's (or, while the relevant Aircraft is leased by the Lessee to the Initial Permitted Sub-Lessee pursuant to the Initial Permitted Sub-Lease, the Initial Permitted Sub-Lessee's) business, provided, that the part replacing such removed Part shall be incorporated or installed in or attached to such Airframe or such Engine in accordance with Clause 8.1 as promptly as possible after the removal of such removed Part.  In addition, any replacement part when incorporated or installed in or attached to any Airframe or any Engine in accordance with Clause 8.1 may be owned by another air carrier subject to such a normal pooling arrangement, provided that the Lessee, at its own cost and expense, as soon as practicable, shall either (a) cause title to such replacement part to vest in the Lessor in accordance with Clause 8.1 by the Lessee acquiring title (or procuring acquisition of the title) thereto for the benefit of the Lessor free and clear of all Liens (other than Permitted Liens) and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement or (b) replace such replacement Part by incorporating or installing in or attaching to such Airframe or such Engine a further replacement Part owned by the Lessee (or such Permitted Sub-Lessee) free and clear of all Liens (other than Permitted Liens) and by causing title to such further replacement Part to vest in the Lessor in accordance with Clause 8.1 and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement.

## 8.4     Alterations, Modifications and Additions

(a)     The Lessee, at its own expense, will promptly make (or cause to be made) such alterations and modifications in and additions to any Airframe or any Engine as may be reasonably required from time to time to comply with any Airworthiness Directives, Service Bulletins, other directive or modifications published (and of a mandatory nature) by the Manufacturer, the Engine Manufacturer and/or the Civil Aviation Authority in accordance with the terms of this Lease, provided that the Lessee may in good faith diligently contest the validity or application of any such Airworthiness Directive, Service Bulletin, directive or modification in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of adversely affecting the value of any Aircraft, the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder.

(b)     In addition, the Lessee (or the Permitted Sub-Lessee), at its own expense, may from time to time make such alterations and modifications in and additions to any Airframe or any Engine as the Lessee (or Permitted Sub-Lessee) may deem desirable in the proper conduct of its business, including installation of additional buyer furnished equipment or removal of Parts that the Lessee (or Permitted Sub-Lessee) determines to be obsolete or no longer suitable or appropriate for use on such Airframe or such Engine, provided, however, that no such alteration, modification or addition shall materially diminish the value, utility, remaining useful life, performance or operational characteristics of such Airframe or such Engine, or impair the condition or airworthiness thereof, below the value, remaining useful life, performance or operational characteristics, condition or airworthiness thereof immediately prior to such alteration, modification or addition (assuming such Airframe or such Engine was then of the value, remaining useful life, performance or operational characteristics, condition or airworthiness required to be maintained by the terms of this Lease), provided, further, that the Lessee shall consult with the Manufacturer or the Engine Manufacturer, as applicable, the Insurer Representative and the Security Trustee prior to undertaking any material alteration or modification to any Aircraft. Without prejudice to the generality of the foregoing, the Lessor consents to the modification which includes installation of antennae, aerodynamic domes, wiring, structural attaching parts, mounts, receivers, wireless access points,(WAP's), modems, controllers, switching equipment, display and sound reproduction equipment and all related hardware and software directly associated with the receipt and distribution of satellite or where applicable ground based internet signals and data into the Aircraft for passenger use, whether provided by ROW 44 or an alternative provider.  Title to all Parts incorporated or installed in or attached or added to any Aircraft as the result of such alteration, modification or addition, shall immediately vest in the Lessor free and clear of all Liens (except Permitted Liens) and become subject to this Lease, without the necessity for any further act of transfer, document or notice.

(c)     Notwithstanding Clause 8.1 and the foregoing provisions of this Clause 8.4 and provided that no Termination Event  or Event of Default shall have occurred and is continuing, the Lessor agrees that the Lessee or any Permitted Sub-Lessee may, at any time during the Term in respect of any Aircraft, remove or suffer to be removed any Part (including buyer furnished equipment) from such Aircraft that:

(i)      is in addition to, and not in replacement of or substitution for, any Part originally incorporated or installed in or attached to the related Airframe or Engine at the time of the Delivery of such Aircraft hereunder or any Part in replacement of or substitution for any such Part;

(ii)     is not required to be incorporated or installed in or attached or added to the related Airframe or Engine pursuant to the terms of Clause 7 or this Clause 8 or in order to maintain insurance required by Clause 10; or

(iii)    can be removed from the related Airframe or Engine without causing damage to such Airframe or such Engine or diminishing or impairing in any material respect the value, utility, remaining useful life, performance or operational characteristics, condition or airworthiness that such Airframe or such Engine would have had at such time had such removal not occurred.

(d)     Upon the removal by the Lessee (or any Permitted Sub-Lessee) of any Part as provided in and permitted by this Clause 8.4, title thereto shall, without further act, vest in the Lessee or the Lessee's Approved Nominee, and such Part shall no longer be deemed part of the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Airframe or Engine from which it was removed.  Notwithstanding the foregoing, any Part not removed by the Lessee (or any Permitted Sub-Lessee) as above provided prior to the return of the relevant Airframe or Engine to the Lessor hereunder shall become the property of the Lessor at the time of such return and become subject to the relevant Aircraft Mortgage and the relevant Security Agreement.

**8.5   Nameplate and Other Markings**

The Lessee shall affix and keep a metal nameplate having dimensions of not less than five inches by four inches in the cockpit of each Airframe adjacent to the airworthiness certificate therein and on each of the Engines bearing the inscription "THIS [AIRFRAME/ENGINE] IS OWNED BY AAA MAX 1 LIMITED AND LEASED TO HARDANGERFJORDEN LIMITED, IS FURTHER SUB-LEASED TO [NORWEGIAN AIR INTERNATIONAL LIMITED / NORWEGIAN AIR SHUTTLE ASA] AND SUBJECT TO A MORTGAGE IN FAVOUR OF CITIBANK N.A., LONDON BRANCH, AS SECURITY TRUSTEE", or such other inscription as the Security Trustee or the Insurer Representative from time to time may reasonably request (such nameplate to be affixed within ten (10) days after the Delivery Date for such Airframe and such Engines, and the Lessee shall thereupon so advise the Lessor).  Except as provided above, the Lessee shall not allow the name or other indication of any other Person to be placed on any Airframe or any Engine, if such name or other indication could be interpreted as a claim of ownership or other interest therein; provided, that each Airframe, Engine and Part may be marked with the customary name, colours or insignia of the Lessee or the Permitted Sub-Lessee and/or any manufacturer(s) of such Airframe, Engines and Parts.

**8.6   No Third Party Beneficiaries**

It is expressly agreed that the Lessee's obligations with respect to maintenance under Clauses 7 and 8 are solely for the benefit of the Lessor and the Secured Parties and that the Lessee shall have no liability to any other Person with respect thereto, and that except for the Lessee's indemnification obligations with respect thereto contained in the Participation Agreement which shall survive the termination of such documents in accordance with their respective terms, the Lessee's obligations under Clauses 7 and 8 in respect of an Aircraft shall terminate upon termination of the leasing of an Aircraft to the Lessee pursuant to this Lease and the relevant Lease Supplement in accordance with the terms hereof.

**8.7   No Authorization to Contract for the Lessor**

Nothing contained in this Lease shall constitute any consent or request by the Lessor or any Secured Party express or implied, for the performance of any works or services or the furnishing of any materials or other property in respect of any Aircraft, any Engine or any Part thereof, nor as giving the Lessee any right, power or authority to contract for or permit the performance of any works or services or the furnishing of any materials or other property, in such fashion as would permit the making of any claim against the Lessor or any Secured Party in respect thereof or any claim that any Lien (other than Permitted Liens) based on the performance of such works or services or the furnishing of any such materials or other property is prior to the interests of the Lessor or any other Person in such Aircraft, such Engine or such Part thereof.

**8.8   No Rights of Retention**

The Lessee hereby waives any and all rights of retention which it may have or which at any time hereafter may be conferred upon it, by virtue of law or otherwise, related to any replacement of Parts, alterations, modifications or additions that the Lessee may make to any Airframe or any Engine.  The Lessee hereby expressly releases the Lessor and the Secured Parties from any and all

FILED DATE: 1/11/2023 2:57 PM   2023L000001

obligations, whether present or future, to indemnify or reimburse the Lessee for any of the aforementioned replacements, alterations, modifications, improvements or additions.

## 9.   LOSS, DESTRUCTION, REQUISITION, ETC

### 9.1   Event of Loss with Respect to an Aircraft

(a)   Upon the occurrence of an Event of Loss with respect to an Aircraft or an Airframe and any related Engines and/or engines then installed thereon, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), which notice shall specify the actions the Lessee is taking with respect to such Event of Loss.  So long as no Default, Termination Event or Event of Default shall have occurred and be continuing, the Lessee may within forty-five (45) days after such occurrence, request permission from the Lessor to replace such Aircraft (or such Airframe and Engine(s), as applicable), upon terms and conditions acceptable to the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee in their absolute discretion, including compliance with such terms and requirements that would make such replacement aircraft (or such replacement airframe and engine(s), as applicable) (a **Replacement Aircraft**) eligible for financing supported by the Insurance Policy in the same amount as such replaced Aircraft (or such replaced Airframe and Engine(s), as applicable), it being agreed that if the Lessee does not request such permission within the relevant time period (or does not receive such permission within ten (10) days after such request), the Lessee will not be entitled to substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable).

(b)   The Lessee will not substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) hereunder unless such Replacement Aircraft (or replacement airframe and engine(s), as applicable) would be eligible for financing supported by the Insurance Policy, as determined by the Insurer Representative in its sole discretion.

(c)   It is expressly agreed that if any Basic Rent Payment Date for the affected Aircraft occurs at or after the date of such Event of Loss and prior to the payment of the Termination Value and any other Rent due in relation to such Aircraft, the Lessee shall pay to the Lessor on such Basic Rent Payment Date the amount equal to the Basic Rent which would have become due and payable in respect of such Aircraft on such Basic Rent Payment Date in accordance with the terms hereof had no Event of Loss so occurred.

(d)   Unless a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) are being substituted in the circumstances contemplated in the preceding clauses, the Term for the affected Aircraft shall end on a date no later than the earliest of (i) the date falling ninety (90) days after the occurrence of such Event of Loss and (ii)  the Lessor or the Security Trustee receives insurance or requisition proceeds in respect thereof (the **Settlement Date**), and on such Settlement Date the Lessee shall pay to the Lessor an amount equal to the then applicable Termination Value for the affected Aircraft on such Settlement Date together with all accrued but unpaid Rent for the affected Aircraft to such Settlement Date and, without duplication, all other amounts then owing by the Lessee under the Operative Documents.

(e)   Upon full compliance by the Lessee with the terms of this Clause 9.1 the Lessor will (subject to insurer's salvage rights, if any) transfer to, or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty, all of the Lessor's right, title and interest, if any, in and to the Aircraft with respect to which such Event of Loss occurred by an appropriate instrument, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes

FILED DATE: 1/11/2023 2:57 PM   2023L000001

hereof, each such Replacement Aircraft shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Aircraft" as defined herein.

**9.2    Event of Loss with Respect to an Engine**

(a)    Upon the occurrence of an Event of Loss with respect to an Engine under circumstances in which there has not occurred an Event of Loss with respect to the associated Airframe, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), then within one hundred and twenty (120) days after the occurrence of such Event of Loss, the Lessee shall duly convey or cause to be conveyed to the Lessor and duly subject to the relevant Aircraft Mortgage and other relevant Security Documents, as replacement for such Engine with respect to which such Event of Loss occurred, title to a Replacement Engine (provided that all engines installed on such Airframe shall be of compatible make and model).

(b)    Such Replacement Engine shall be free and clear of all Liens (other than Permitted Liens) and having a value and remaining useful life at least equal to, and being in as good operating condition and state of maintenance as, the Engine with respect to which such Event of Loss occurred, assuming such Engine was of the value and remaining useful life and in the condition and state of repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss, but without regard to its point in the maintenance cycle.

(c)    Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)    furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)    cause an amendment to the related Lease Supplement, in form and substance reasonably satisfactory to the Lessor and the Security Trustee, subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or any other Relevant Jurisdiction;

(iii)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such Replacement Engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor and the Security Trustee may reasonably request;

(iv)    furnish the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) satisfactory to the Insurer Representative and the Security Trustee certifying that such engine has value and remaining useful life and it is in good operating condition as the Engine being substituted, assuming such Engine was in the condition and state of repair as required by the terms hereof immediately prior to such substitution, but without regard to its point in the maintenance cycle;

(v)    cause amendments to the relevant Aircraft Mortgage and other Security Documents, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such Replacement Engine to the relevant Aircraft Mortgage and Security Documents  to be duly executed by the Lessor and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Government of Registry, the jurisdiction of incorporation or formation of the Lessor and the United States of America;

(vi)     cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessee, the Security Trustee and the Insurer Representative under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)    furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and the Security Trustee regarding the perfection of the Lien of the relevant Aircraft Mortgage and Security Documents with respect to such Replacement Engine addressed to the Security Trustee, the Insurer Representative and the Agent and in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative;

(viii)   affix a nameplate on such replacement engine in accordance with Clause 8.5;

(ix)     assign to the Lessor (for further assignment to the Security Trustee) all assignable and remaining engine warranties applicable to such Replacement Engine in a manner consistent with the relevant Engine Warranties Agreement.

(d)     Upon full compliance by the Lessee with the terms of this Clause 9.2 the Lessor will (subject to insurer's salvage rights, if any) transfer to or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it), all of the Lessor's right, title and interest, if any, in and to the replaced Engine by an appropriate instrument, signed by the Security Trustee, releasing the replaced Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an **Engine** as defined herein.  No Event of Loss with respect to an Engine under the circumstances contemplated by the terms of this Clause 9.2 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

## 9.3     Application of Payments from Governmental Authorities or Others

Any payments (other than insurance proceeds from policies carried (or caused to be carried) by the Lessee the application of which is provided for in Clause 10 and other than proceeds of insurance policies carried by the Lessor or any Secured Party) received at any time by the Lessor or the Lessee from any Government Body or other Person with respect to an Event of Loss of any Aircraft or any Engine shall be paid over to the Security Trustee and applied, subject to Clause 9.6, in accordance with the terms of the Intercreditor Deed.

## 9.4     Requisition for Use of any Airframe and the Engines Installed Thereon

In the event of the requisition for use by any Government Body not constituting an Event of Loss of an Airframe and the Engines installed thereon during the relevant Term, the Lessee shall promptly notify the Lessor, the Security Trustee, the Insurer Representative and the Agent of such requisition, and all of the Lessee's obligations under this Lease shall continue to the extent such obligations are not restricted or curtailed by such requisition and to the same extent as if such requisition had not

occurred (but the Lessee's obligations to pay Rent for the relevant Aircraft pursuant to Clause 3 and its obligations under Clause 10 shall not be reduced or excused by such requisition).  All payments (and any interest thereon) received by the Lessor or the Lessee for the use of such Airframe and Engines at any time shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied in accordance with the Intercreditor Deed.

**9.5     Requisition for Use of an Engine Not Installed on an Airframe**

If an Engine not then installed on an Airframe is requisitioned for use by any Government Body, the Lessee shall replace such Engine or cause it to be replaced by complying with the terms of Clause 9.2 hereof as if an Event of Loss had occurred with respect to such Engine, and (upon compliance by the Lessee as aforesaid) any payments received by the Lessor or the Lessee from with respect to such requisition shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, that if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied to the obligations of the Lessee hereunder as the Lessor shall direct and any excess, shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee.

**9.6     Payments to the Lessee**

Any amount referred to in this Clause 9 which is payable or creditable to the Lessee or any Permitted Sub-Lessee shall not be paid or credited to the Lessee or such Permitted Sub-Lessee or, if it has been previously paid to the Lessee or such Permitted Sub-Lessee, shall not be retained by the Lessee or such Permitted Sub-Lessee, if at the time of such payment or credit a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to, applied in accordance with the terms of the Operative Documents and/or held by the Security Trustee as security for the obligations of the Lessee under this Lease and the Operative Documents and at such time as there shall not be continuing any Material Default, Termination Event or Event of Default such amount (together with interest thereon, if any), if then remaining, shall be paid or credited to the Lessee or the Permitted Sub-Lessee (as the case may be).

**10.     INSURANCE**

**10.1     Aviation Third Party Legal Liability Insurance**

Except to the extent provided in Clauses 10.3 and 10.5, on or before the Delivery Date for an Aircraft, and throughout the Term therefor and for a period extending to two years following the later of (a) the final Basic Rent Payment Date for such Aircraft and (b) the date such Aircraft is returned to the Lessor, the Lessee will carry or cause to be carried at its own expense with insurers of recognized standing which insurers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative, airline liability insurance in respect of such Aircraft including war and allied perils, hi-jacking and other similar risks that are excluded from standard liability coverage to the extent that such insurance is (a) maintained by the Lessee or the Permitted Sub-Lessee with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (b) customarily obtained by carriers with comparable route structures flying similar aircraft or (c) generally required by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures in amounts customary for similar aircraft in the Lessee's fleet (but not less than seven hundred and fifty million Dollars (US$750,000,000) any one occurrence per each aircraft and subject to customary sub-limits for non-aviation coverage and aggregate limits for products liability and war risks coverages) and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet and of the type usually carried by corporations engaged in the same or a similar business, similarly situated with the Lessee or the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Permitted Sub-Lessee, and owning and operating similar aircraft and engines, and which covers risks of a kind customarily insured against by such corporations which shall include general third party legal liability (including war and allied perils), passenger liability, and property damage liability (including cargo, baggage and mail liability).  Any liability insurance carried in accordance with this Clause 10.1 and any policies taken out in substitution or replacement for any of such policies:

(a)     shall be amended to name the Security Trustee, as the contract party (the **Contract Party**) and each of the Lessor, the Lessee, the Lessor Parent, the Agent, the Security Trustee, the Funder, the Insurer Representative, the Insurer Group and their respective successors, members, assigns, officers, directors, shareholders, agents, employees, servants, Affiliates and sub-contractors as additional insureds (the **Additional Insureds**);

(b)     shall provide that in respect of the interests of the Lessor or any other Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that the Additional Insured so protected has not caused, contributed to or knowingly condoned the said act or omission);

(c)     shall provide that there shall be no recourse against the Lessor or any other Additional Insured for the payment of premiums under such policies and that the Insurer Representatives shall waive any right of subrogation against the Additional Insureds; and

(d)     shall provide that, if such insurance is cancelled for any reason whatsoever, or if any material change is made in such insurance that adversely affects the interest of the Lessor or any other Additional Insured, such cancellation or change shall not be effective as to the Lessor or any other Additional Insured for thirty (30) days (seven (7) days, or such other period as is then customarily obtainable in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers (if different from the Lessee's insurance broker) to the Lessee's appointed insurance broker.  The Lessee hereby covenants to cause the Lessee's or the Permitted Sub-Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

Each liability policy (a) shall be primary without right of contribution from any other insurance that is carried by any other Person to the extent that such other insurance provides it with contingent or excess liability insurance with respect to its interest as such in any Aircraft, (b) shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured, (c) shall waive any right of the Aircraft Insurer to any setoff, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Lessee, the Permitted Sub-Lessee, the Lessor or any other Additional Insured to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft) and (d) shall provide for worldwide coverage (except in relation to Excluded Countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk and related perils policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit.

**10.2     Aircraft Hull Insurance**

(a)     Except to the extent provided in Clauses 10.3 and 10.5, on or prior to the Delivery Date for each Aircraft and throughout the Term for each Aircraft (and, in the case of the termination of this Lease with respect to an Aircraft pursuant to Clause 14 hereof, at all times following such termination until the sale or other disposition of such Aircraft pursuant hereto) the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessee shall maintain or cause to be maintained in full force and effect, at its own expense and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet, all-risk aircraft hull insurance covering such Aircraft, while flying and on the ground, including coverage of the Engines and Parts while temporarily removed from or not installed on such Aircraft and not replaced with similar components (with flight taxing and ingestion coverage), against loss or damage, of the type (but not necessarily the amount) usually insured against by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning or operating similar aircraft and engines on an agreed-value basis in a Dollar amount not less than 112% of the highest Termination Value for such Aircraft during the applicable insurance period (the **Threshold Value**), and all-risk insurance with respect to each Engine and Part while removed from an Aircraft, and, as to each Engine or Part not installed on an Airframe, not less than the fair market value of such Engine or Part.

(b)     The Lessee shall maintain or cause to be maintained in full force and effect war-risk and related perils insurance and hi-jacking and government confiscation insurance (excluding for confiscation by the Government of Registry) in respect of each Aircraft on an agreed value basis for such Aircraft throughout each policy year, for not less than the amounts set forth in the preceding paragraph in respect of such Aircraft covering each of the following perils (i) insured by the Lessee or the Permitted Sub-Lessee, with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (ii) customarily insured by air carriers with comparable route structures flying similar aircraft, and (iii) generally required to be insured by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures.

(c)     All policies and subsequent policies taken out in accordance with this Clause 10.2 will be issued by insurance companies or underwriters of recognized standing in the international aviation industry or re-insurance companies or underwriters of such standing and through internationally recognized aviation insurance brokers, all of which insurance companies, underwriters and insurance brokers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative. In addition, all such policies and subsequent policies:

(i)     shall be denominated and payable in Dollars and shall be on an agreed value basis without the insurer's right to replace;

(ii)    shall name the Additional Insureds as additional insureds in respect of the legal liability insurances and the Security Trustee as the sole contract party and as loss payee in respect of hull claims that become payable on the basis of a total loss and provide that payment in respect of such claims shall be made to or to the order of the contract parties for application in accordance with the Operative Documents and in respect of all other hull claims the loss will be settled with such Persons as may be necessary to repair the relevant Airframe or Engine;

(iii)   shall provide that in respect of the interests of each Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that such Additional Insured has not caused, contributed to or knowingly condoned the said act or omission);

(iv)    shall provide that there shall be no recourse against the Lessor or any Additional Insured for the payment of premiums under such policies; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(v)    shall provide that, if such insurance is canceled for any reason whatsoever, or if any material change is made in such insurance which adversely affects the interests of any Additional Insured, such cancellation or change shall not be effective as to Additional Insureds for thirty (30) days (seven (7) days, or such other period as is then customarily imposed by in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers to the Lessee's appointed insurance broker. The Lessee hereby covenants to cause the Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

(d)    The hull policy for each Aircraft:

(i)    shall waive any right of the Aircraft Insurer or any reinsurers to any set-off, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Additional Insureds or any other Person to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft);

(ii)    if separate hull all risks and war risks policies are arranged, shall contain a 50/50 claims funding clause acceptable to the Security Trustee, the Agent and the Insurer representative (which shall be AVS 103 or similar) in the event of a dispute as to which policy in respect of the hull insurances set forth in this Clause 10.2 shall pay in the event of a loss;

(iii)    shall provide for worldwide coverage (except for excluded countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit; and

(iv)    shall have deductibles (not applicable in the case of an Event of Loss or war and allied perils insurance) standard in the industry in respect of the same model aircraft, which are reasonably acceptable to the Insurer Representative and the Security Trustee and in amounts which are no greater than seven hundred and fifty thousand dollars (US$750,000) and in any event such deductible shall not be greater than those which other international airlines of comparable standing (in the judgement of the Secured Parties' independent insurance advisor after consultation with the Lessee's broker of record) to the Lessee operating comparable aircraft are able to obtain in such market.

(e)    The Lessee may procure endorsements to the relevant insurance policies required to be maintained pursuant to Clause 10 so as to incorporate the terms of AVN 67B (or any successor provision) unto such policies, in which event, to the extent that any provision of any such AVN 67B (or any successor provision) endorsement conflicts or is otherwise inconsistent with the requirements of this Clause 10, then (so long as it shall remain general industry practice to insure aircraft financed by financial institutions on the basis of such endorsement) such endorsement shall be deemed to satisfy the requirements of this Clause 10 to the extent covered by such endorsement.

(f)    As between the Lessor and the Lessee it is agreed that all insurance payments received under policies that the Lessee is required to maintain pursuant to this Clause 10.2, exclusive of any payments received in excess of the then applicable Threshold Value for an Aircraft, as the result of the occurrence of an Event of Loss with respect to an Airframe or an Engine related

FILED DATE: 1/11/2023 2:57 PM   2023L000001

thereto will be applied, unless a replacement is effected in accordance with Clause 9.1 or 9.2 hereof, pursuant to the Intercreditor Deed.

(g)     As between the Lessor and the Lessee the insurance payment of any property damage or loss with respect to an Aircraft (i) that constitutes an Event of Loss, in excess of the then applicable Threshold Value for such Aircraft, shall be paid to the Lessee, and (ii) that does not constitute an Event of Loss with respect to the related Airframe or a related Engine, will be applied in payment (or to reimburse the Lessee), for repairs or for replacement property in accordance with the terms of Clauses 7 and 8, if not already paid for by the Lessee and any balance remaining after compliance with such Clauses with respect to such loss shall, subject as provided below, be paid to and retained by the Lessee or in accordance with Clause 9.3(b) of the Intercreditor Deed.

(h)     Notwithstanding any provision in this Clause 10.2, any amount referred to in this Clause 10.2 which is payable to the Lessee, shall not be paid to the Lessee or, if it has been previously paid directly to the Lessee, shall not be retained by the Lessee, if at the time of such payment a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to and held by the Security Trustee as security for the obligations of the Lessee under this Lease and, during the continuance of such Material Default, Termination Event or Event of Default, shall be applied to the satisfaction of the then due and payable obligations of the Lessee under this Lease, and, at such time as there shall not be continuing any such Material Default, Termination Event or Event of Default, the remainder of such amount shall be paid to the Lessee.

## 10.3    Default

If the Lessee shall default in effecting or maintaining any insurance or if any insurance shall, for any cause become void, the Lessor, the Security Trustee or any other Additional Insured may (but without any obligation to do so and without prejudice to the Lessor's other rights and remedies hereunder) effect and keep up such insurance at the cost of the Lessee and the Lessee will forthwith upon demand repay to the Lessor, the Security Trustee or any other Additional Insured all premiums and other moneys from time to time paid by the Lessor, the Security Trustee or any other Additional Insured in respect of such insurance (which amount shall be certified by the Lessor, the Security Trustee or such other Additional Insured).

## 10.4    Certificates

On or before the Delivery Date for each Aircraft and promptly after the issuance or modification or renewal thereof (but in any event prior to the expiration of any insurance then to be renewed) in form substantially similar to those given prior to or on such Delivery Date, the Lessee will furnish to the Lessor, the Insurer Representative, the Agent and Security Trustee (with sufficient copies to the Funder):

(a)     a certificate of the Lessee's insurance broker or an authorized representative of the Aircraft Insurer describing in reasonable detail the Aircraft Insurances then carried and maintained on such Aircraft, containing an endorsement reflecting the Aircraft Insurances required hereunder and:

      (i)     certifying the date and time of commencement and expiry of each insurance policy;

      (ii)     specifying the deductible amounts and levels of co-insurance, if any, for each type of loss; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     a letter of undertaking from the Lessee's appointed insurance broker with regard to the Aircraft Insurances required hereunder in respect of such Aircraft (in the case of each renewal, in substantially the same form as delivered on the relevant Delivery Date).

**10.5     Notice of Variations**

If any material variation is made to the terms of any of the Aircraft Insurances or Aircraft Reinsurances the Lessee shall immediately give notice to the Lessor, the Insurer Representative, the Security Trustee, the Agent and the Funder of such variation and shall provide such further details in relation thereto as the Lessor, the Insurer Representative, the Security Trustee, the Agent or any Funder may reasonably require.

**10.6     Premiums**

The Lessee shall pay or cause to be paid the premiums (or installments thereof) as required by the terms of such policies and produce to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request receipts in respect of payment of such premiums (or installments thereof) or other evidence of such payments as the Lessor, the Insurer Representative, the Security Trustee or the Agent may reasonably request.  In the case of renewals of such policies, the Lessee shall cause to be provided to the Lessor, the Insurer Representative, the Security Trustee and the Agent evidence of such renewal as soon as practicable and in any event within seven (7) days after the date of renewal and shall give the Lessor, the Insurer Representative, the Security Trustee and the Agent notice of such intended renewal no later than the day before such date and the Lessee shall pay the renewal and other premiums (and installments thereof) as required by the terms of such policies.

**10.7     Insurance Policies**

In the absence of an unqualified opinion or certificate addressed to the Lessor, the Insurer Representative, the Security Trustee and the Agent from the Lessee's or the Permitted Sub-Lessee's insurance brokers (and, if applicable, reinsurance brokers), the Lessor and each Secured Party shall be entitled to full reliance, without exception, that the certificates of insurance (and, if applicable, certificates of reinsurance) delivered pursuant to this Clause 10 do not conflict with the terms and conditions of the underlying insurance (and, if applicable, reinsurance) policies.  Copies of the policies and endorsements and riders amendatory thereof (excluding premium information) with respect to the Aircraft Insurances and any Aircraft Reinsurances, required under this Clause 10 shall be made available to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request for inspection by their respective representatives at the offices of the Lessee or the Permitted Sub-Lessee or the Lessee's or the Permitted Sub-Lessee's insurance brokers during normal business hours.

**10.8     Reinsurance**

(a)      Unless the Aircraft Insurances maintained by the Lessee in accordance with the provisions in this Clause 10 are maintained with Lloyd's of London or in other internationally recognized aviation insurance markets with insurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee and the Insurer Representative, then the Lessee shall procure that the insurers shall maintain reinsurance in all respects satisfactory to the Security Trustee and the Insurer Representative covering identical subject matter and risk for an amount (which shall not be less than ninety five percent (95%) of the relevant coverage amount) with Lloyd's of London or in other internationally recognized aviation insurance markets with reinsurers of international standing and repute who normally participate in aircraft insurance programmes

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and who are acceptable to the Security Trustee, the Agent and the Insurer Representative. Any reinsurance shall:

(b)     be on the same terms as the original insurances;

    (i)     contain a "cut-through" clause satisfactory to the Security Trustee, the Agent and the Insurer Representative providing that, in the event of any claim arising under the reinsurance, the reinsurers thereunder shall, in lieu of payment to the original insurer or its successors in interest and assigns, pay to or to the order of the Contract Party as loss payee that portion of any loss due for which the reinsurers thereunder would but for this cut-through clause be liable to pay the original insurer or its successors in interest and assigns, it being understood and agreed (and the Lessee agreeing to obtain the agreement of its original insurers for the benefit of the Lessor, the Agent, the Security Trustee, the Insurer Representative, the other Secured Parties and the reinsurers) that any such payment by the reinsurers thereunder shall fully discharge and release the original insurers from any and all further liability in connection therewith; and

    (ii)    provide for payment to be made directly to or to the order of the Contract Party as provided herein notwithstanding (x) any bankruptcy, insolvency, liquidation or dissolution of the original insurer(s), and/or (y) that the original insurer(s) have made no payment under the primary insurance policies.

**10.9     Location**

Except as otherwise expressly permitted herein, the Lessee shall not at any time do or suffer to be done to any Aircraft, any Engine or any Part thereof or the premises on which the same may be located, or bring or keep, or permit to be brought or kept, anything therein or thereon or operate any Aircraft, any Engine or any Part thereof or take the same to or keep the same in, or permit the same to be taken to or kept in, a place where or whereby any insurance required hereunder may be rendered void or voidable or no longer in force or coverage thereunder shall be limited, without first arranging at its own expense such additional Insurance coverage as shall be necessary to avoid such result, such additional insurance to be in form and substance satisfactory to the Lessor, the Security Trustee and the Insurer Representative.  The Lessee will pay or cause to be paid all additional insurance premiums required on account of the additional risk caused by the use to which any Aircraft is put as aforesaid.

**10.10    Notice from the Lessee**

The Lessee will forthwith notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of any event (including but not limited to an occurrence) which will or may give rise to a claim under the Aircraft Insurances required in Clause 10.2, in excess of an amount in any currency equal to three million Dollars (US$3,000,000) in respect of an Airframe and one million Dollars (US$1,000,000) in respect of an Engine, but nothing in this Clause 10.10 shall prejudice the payment provisions of Clause 10.2.  Upon completion of the repairs in respect of a loss in which insurers have paid proceeds towards such repair, the Lessee shall deliver to the Lessor, the Insurer Representative, the Security Trustee and the Agent an engineer's certificate certifying that such repairs have been completed in accordance with the manufacturer's recommended procedures.

**10.11   Certain Undertakings in Respect of the Aircraft Insurances**

(a)    The Lessee shall not and shall procure that no Permitted Sub-Lessee shall:

     (i)    make any modification to the Aircraft Insurances or any Aircraft Reinsurances required hereunder which is materially adverse to the interest of the Lessor, the Insurer Representative, the Security Trustee, any Secured Party or any other Additional Insured;

     (ii)    do, or omit to do, or permit to be done, or left undone anything whereby any required Aircraft Insurance or any Aircraft Reinsurance would or might reasonably be expected to be rendered, in whole or in part, invalid or unenforceable and, without prejudice to the foregoing, not use or keep or permit any Aircraft or any Engine or any Part thereof, to be used or kept for any purpose, in any manner or in any place not covered by required Aircraft Insurances or any Aircraft Reinsurances (except as otherwise expressly permitted herein); and

     (iii)    discriminate against any Aircraft relative to other aircraft of the same or comparable model within the Lessee's or the Permitted Sub-Lessee's fleet as to the coverage of the Aircraft Insurances required under this Clause 10.

(b)    The Lessee shall as soon as practicable, but in no event later than 48 hours, upon receipt of notice of cancellation of the war risks and related perils insurance due to armed hostilities in the area where any Aircraft may then be located or scheduled to operate, remove any Aircraft or cause any Aircraft to be removed to the United Kingdom  (or such other location at which such Aircraft shall remain covered by war risks and related perils insurance) and shall cause such Aircraft to remain in such location until such war risks and related perils insurance is reinstated and compliance herewith shall cure any related Termination Event or Event of Default under Clause 13.1(c), provided, however, that the Lessee need not comply with the provisions of this paragraph (b) if to do so would cause the Lessee to breach any other obligation contained herein.

(c)    The Lessee shall be responsible for the payment of any applicable deductibles or costs of any Aircraft Insurances and any Aircraft Reinsurances.

**10.12   Reimbursement**

The Lessee shall reimburse the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative, as the case may be, on demand for the amount of any premiums or premium installments which such party may pay pursuant to this Clause 10 together with interest thereon, for the period from and including the date of such payment by such party to but excluding the date on which the same is paid in full by the Lessee at the applicable Post-Default Rate.

**10.13   Change in Industry Practice; Additional Requirements**

In the event that there is a material change in the generally accepted industry-wide practice with regard to the insurance of aircraft (whether relating to all or any of the types of insurances required to be effected under the foregoing provisions of this Clause 10) such that the insurances required pursuant to the provisions of this Clause 10 are insufficient to protect the interests of the Lessor, the Insurer Representative, the Security Trustee or any of the other Additional Insureds hereunder, the Insurer Representative and the Security Trustee shall, to the extent reasonably practicable, consult with the Lessee, and the insurance requirements set forth in this Clause 10 shall be varied at the request of the Insurer Representative or the Security Trustee so as to include such additional or varied requirements as may be reasonably necessary to ensure that the insurances and reinsurances as

FILED DATE: 1/11/2023 2:57 PM   2023L000001

so varied shall provide comparable protection to that which it would have provided if such change in the generally accepted industry-wide practice had not occurred.

**10.14   Compliance with Legal Requirements**

In addition to the foregoing provisions of this Clause 10 the Lessee shall and shall procure that any Permitted Sub-Lessee shall comply with all legal requirements as to the insurance of any Aircraft or any Engine which may from time to time be imposed by the Applicable Laws of any Aircraft's registration or of any jurisdiction to or from or over which any Aircraft or any Engine shall be flown or in which the same shall be located.

**10.15   Additional Insurance**

The Lessee shall have the right to carry insurance in excess of the amounts required hereunder and additional and separate insurance for its own benefit at its own expense; provided that, no such insurance shall result in a duplicate payment on a loss, or shall impair in any way (whether or not material) the rights of the Lessor, the Insurer Representative, the Security Trustee, and other Secured Party or any other Additional Insured under this Lease and the Operative Documents.  Proceeds of such insurance shall be payable directly to the Lessee.

**10.16   Additional Terms of Insurance**

The Lessee agrees to ensure that the insurance policies in respect of all Insurances referred to in Clauses 10.1 and 10.2 above shall at all times be underwritten in full.

**10.17   Self Insurance**

Except for the deductibles permitted by Clause 10.2 hereof or otherwise permitted by the Lessor, the Security Trustee and the Insurer Representative, the Lessee shall not be permitted to self-insure against any of the risks required to be covered by the insurance described in this Clause 10.

**10.18   Date Recognition Exclusion**

If the Aircraft Insurances are subject to any exclusion relating to date recognition, the Lessee shall obtain write-backs covering such exclusions to the fullest extent available in the international aviation insurance markets and in accordance with good and prudent international aviation insurance practice.

**10.19   Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under this Clause 10 and shall take immediate action to restore any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty.

**11.   ABSOLUTE OBLIGATIONS**

(a)   This Lease is a net lease, and it is intended that the Lessee shall pay or cause to be paid all costs, charges, fees (including Eurocontrol fees), assessments, expenses, withholdings and Taxes of every character whether foreseen or unforeseen, ordinary or extraordinary, incurred in connection with or arising out of the use, operation, maintenance, repair, modification,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

alteration, replacement and leasing of any Aircraft, including the costs, expenses and Taxes and similar levies set forth in the Participation Agreement.  The Lessee's obligation to pay all Rent and to perform all other obligations hereunder is absolute and unconditional and shall not be affected or reduced by any circumstances or for any reason, including:

(i)     any setoff, counterclaim, recoupment, defense or other right which the Lessee may have against the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party, the Manufacturer, the Engine Manufacturer or any Person providing services with respect to any Aircraft, or any other Person, for any reason whatsoever (whether in connection with the transactions contemplated hereby or otherwise), including any breach by the Lessor of its warranties contained herein or in the other Operative Documents;

(ii)    any defect in the title, airworthiness, eligibility of registration under any Applicable Law, condition, design, operation, or fitness for use of, or any damage to or loss or destruction of, any Aircraft or any portion thereof (subject to the provisions of Clause 9 hereof), any interruption or cessation in the use of or possession thereof by or availability to the Lessee for any reason whatsoever, whether arising out of or related to an act or omission of the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, Manufacturer, Engine Manufacturer or any other Person;

(iii)   any Lien with respect to any Aircraft or any portion thereof;

(iv)    the invalidity or unenforceability or lack of due authorization or other infirmity of this Lease or any absence of right, power or authority of any Person to enter into any Operative Document;

(v)     any Taxes;

(vi)    any change, waiver, extension, indulgence or liability or other act or omission in respect of any liability or obligation of the Lessor, the Security Trustee, the Funder, the Agent or the Insurer Representative or any other Secured Party;

(vii)   any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation, receivership or other like proceeding relating to the Lessee, the Lessor, the Lessor Parent, the Trustee or the Security Trustee or any disaffirmance, rejection or other action taken with respect to this Lease or any other Operative Document by the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party or any other Person, or by any court, in any such proceeding;

(viii)  the Lessee at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of sovereignty or otherwise, which immunity, if any, the Lessee hereby expressly waives;

(ix)    any restrictions applicable to the Lessee on the transfer or conversion of currency; or

(x)     any other circumstances or happening of any nature whatsoever, whether or not similar to any of the foregoing; it being the express intention of the Lessor and the Lessee that all Rent payable hereunder shall be payable in all events, unless the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease or the other Operative Documents.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     This Lease shall not, except as expressly set forth herein, be cancellable by the Lessee and, except as expressly set forth elsewhere in this Lease, the Lessee hereby waives any and all rights which it may now have or which at any time hereafter may be conferred upon it, by statute or otherwise, to terminate, abate, cancel, quit, reduce, defer, suspend or surrender this Lease or any Aircraft or any obligation imposed upon the Lessee hereunder or under the other Operative Documents (including payment of Rent), except in accordance with the terms hereof and thereof.

(c)     If for any reason whatsoever this Lease shall be terminated in whole or in part by operation of Applicable Law, except as specifically provided herein, the Lessee, if and to the extent that the Lessee retains the use and possession of any Aircraft, nonetheless agrees to pay to the Lessor an amount equal to each Basic Rent payment and any Supplemental Rent payment in respect of such Aircraft at the time such payments would have become due and payable in accordance with the terms hereof and the other Operative Documents had this Lease not been terminated in whole or in part and so long as such payments are made and all other terms and conditions hereof are complied with by the Lessee, the Lessor and the Lessee will deem this Lease to remain in full force and effect.

(d)     Nothing contained in this Lease shall be construed as a waiver of the Lessee's right to seek any claim against the Lessor, the Security Trustee, any Secured Party or any other Person arising out of the transactions contemplated by the Operative Documents in a separate proceeding or by compulsory counterclaim.

## 12.    ASSIGNMENT

The terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.   Except as otherwise provided in Clause 7.4, neither party hereto shall, without the prior written consent of the other and except as expressly permitted by the Operative Documents, assign any of its rights or obligations hereunder.

## 13.    LEASE EVENTS OF DEFAULT AND TERMINATION EVENTS

Other than the events referred to in paragraphs (f), (p), (t) or (u) which, if they do not arise as a result of any act or omission of any Lessee Group Member, shall constitute "Termination Events" (but, for the avoidance of doubt,  in all other circumstances shall constitute "Lease Events of Default"), the following events shall constitute "Lease Events of Default" hereunder, (whether any such event shall be voluntary or involuntary or come about or be effective by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, the United States or any other jurisdiction, or the administration or interpretation thereof) and each such Lease Event of Default or Termination Event shall be deemed to exist and continue so long as, but only so long as, it shall not have been remedied:

(a)     the Lessee shall fail to pay when due any amount of Basic Rent or Termination Value on the date such Basic Rent or Termination Value is due, and such failure shall continue unremedied for three (3) Business Days following the due date therefor;

(b)     the Lessee shall fail to pay when due any amount of Supplemental Rent or any other amount due and owing from the Lessee under this Lease (other than as specified in Paragraph (a) above) or any other Operative Document and such failure to pay shall continue for a period of five (5) Business Days after demand has been made on the Lessee;

(c)     the Lessee shall fail to carry and maintain or fails to procure that any Permitted Sub-Lessee carry and maintain Aircraft Insurances (including any required Aircraft Reinsurances)

FILED DATE: 1/11/2023 2:57 PM   2023L000001

required to be maintained in accordance with the provisions of Clause 10, or the Lessee shall fail to perform or observe any covenant, condition or agreement contained in Clause 7.6(a) or 10.11 hereof or Clause 8(g) of the Participation Agreement;

(d)   any Lessee Obligor shall have failed to perform or observe in any material respect any other covenant or agreement (ie, other than those covered by the preceding paragraph (a), (b) or (c) of this Clause 13) to be performed or observed by it hereunder or under any other Operative Document to which it is a party, and such failure is unremediable, or if remediable and the Lessee is diligently proceeding to remedy such failure, shall continue unremedied for a period of thirty (30) days after the earlier of (i) the Lessee obtaining actual knowledge of such failure or (ii) notice to the Lessee thereof has been given by the Lessor, the Security Trustee or the Insurer Representative;

(e)   any representation or warranty of any Lessee Obligor under any of the Operative Documents or in any document or certificate furnished by the Lessee in connection therewith or pursuant thereto shall be untrue, inaccurate or misleading in any material respect as at the time when made or furnished;

(f)   any license, consent, approval or authorization of, or any filing or registration with, any governmental authority or agency necessary for the performance by a Lessee Obligor of its obligations under this Lease or any other Operative Document or in connection herewith or therewith (including, without limitation, the registration of any Aircraft or the any Mortgage or any Security Agreement) or the Certificate of Airworthiness issued in respect of any Aircraft shall be revoked, not applied for or not issued or shall cease to remain in full force (or, as applicable, is not duly renewed upon the terms consistent with the original approval or otherwise satisfactory to the Security Trustee and the Insurer Representative) or any of the foregoing shall be modified and any such revocation, non-application or issuance or modification would materially adversely affect (in the opinion of the Security Trustee or the Insurer Representative) the rights and remedies of the Lessor hereunder or of any Secured Party under the Operative Documents;

(g)   the Lessee or either Guarantor shall apply for or consent to the appointment of, or the taking of possession by, a receiver, an examiner, a trustee, custodian or liquidator of itself or of a substantial part of its property, or the Lessee or either Guarantor shall admit in writing submitted in connection with judicial or other similar procedures its inability to pay its debts generally as they come due, shall announce a moratorium on payment of its debts or any class of its debts, or shall make a general assignment for the benefit of creditors;

(h)   the Lessee or either Guarantor shall file a voluntary petition or commence a case in bankruptcy or a voluntary petition or an answer seeking reorganization in a proceeding under any bankruptcy or insolvency laws (as now or hereafter in effect) or an answer admitting the material allegations of a petition filed against any the Lessee or either Guarantor in any such proceedings, or the Lessee or either Guarantor shall by voluntary petition, answer or consent to or seek relief under the provisions of any other now existing or future bankruptcy, insolvency, reorganization or other similar law providing for the reorganization or winding-up of corporations, or providing for an agreement, composition, extension or adjustment with its creditors;

(i)   an order, judgment or decree shall be entered in any proceeding by any court of competent jurisdiction appointing, without the consent of such Lessee or either Guarantor, a receiver, trustee, custodian or liquidator of the Lessee or either Guarantor or of any substantial part of its property, or sequestering any substantial part of the property of such Lessee or either Guarantor, and any such order, judgment or decree of appointment or sequestration shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

remain in force undismissed, unstayed or unvacated for a period of sixty (60) days after the date of entry thereof;

(j)     a petition against the Lessee or either Guarantor in a proceeding under any bankruptcy laws or other insolvency laws as now or hereafter in effect shall be filed in a court of competent jurisdiction and shall not be withdrawn or dismissed within sixty (60) days thereafter, or if, under the provisions of any law providing for reorganization or winding-up of corporations which may apply to the Lessee or either Guarantor any court of competent jurisdiction shall assume jurisdiction, custody or control of the Lessee or of any substantial part of its property or any Aircraft and such jurisdiction, custody or control shall remain in force unrelinquished, unstayed or unterminated for a period of sixty (60) days;

(k)     the Lessee or either Guarantor threatens to suspend making payments or declares a moratorium or seeks a restructuring of its Indebtedness or the Lessee shall fail to pay when due (after giving effect to any applicable grace periods) any principal of or interest or scheduled payments in respect of any of its other Indebtedness (i) aggregating ten million Dollars (US$10,000,000) or more (or the equivalent thereof in any currency) or (ii) in respect of any Other Indebtedness, and the lender(s), the funder(s) or an agent or trustee thereof in respect of such Indebtedness declares or thereby becomes entitled to declare such Indebtedness to be due and payable prior to its scheduled maturity;

(l)     any additional procedure similar to those referred to in subparagraphs (g), (h), (i) and (j) above for the relief of financially distressed debtors under any Applicable Law or any other competent jurisdiction is entered into by the Lessee or either Guarantor voluntarily or involuntarily, and is not withdrawn or dismissed within sixty (60) days thereafter;

(m)     any of the events referred to in subparagraphs (g) to (l) above occurs in relation to any Permitted Sub-Lessee, and:

    (i)     the Lessee fails to inform the Lessor, the Security Trustee and the Insurer Representative immediately upon becoming aware of such event; or

    (ii)    the Lessee fails to terminate the leasing of the Aircraft pursuant to the relevant Permitted Sub-Lease immediately upon written request from the Lessor, the Security Trustee or the Insurer Representative.

(n)     a final judgment or judgments for the payment of money in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, shall be rendered against the Lessee or either Guarantor and the same shall remain undischarged for a period of sixty (60) days during which execution of such judgment shall not be effectively stayed, or an attachment or attachments or other Lien or Liens in respect of such judgment or judgments shall be issued or entered against any of the property of the Lessee or either Guarantor, for an amount in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, and shall remain undischarged or unbonded for thirty (30) days, except, in each case when such is being contested in good faith by appropriate proceedings that do not involve any substantial risk of the sale, seizure, forfeiture or loss of Collateral or title thereto, interest therein or use thereof;

(o)     the existence, validity, enforceability or priority of the Lessor's rights, title and interests to any Aircraft is challenged by any Lessee Obligor or any other Person claiming through the Lessee or this Lease or any other Operative Document becomes wholly or in part to a material extent invalid, illegal or unenforceable for any reason;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(p)    the validity or enforceability (but not any particular interpretation) of any provision of any Operative Document is contested through appropriate proceedings by the Lessee or any Affiliate thereof or by any Government Body seeking to establish the invalidity or unenforceability thereof;

(q)    the Lessee or any Permitted Sub-Lessee shall:

    (i)    (in the case of a Permitted Sub-Lessee) cease, or announce its intention to cease, to conduct its business as a commercial scheduled airline;

    (ii)    other than in circumstances permitted by Clause 8(g) of the Participation Agreement, assign, lease or otherwise dispose of all or any material part of the assets or property (whether by a single transaction or a number of related or unrelated transactions and whether at the same time or over a period of time) comprising the its aircraft or aircraft related business; or

    (iii)    (in the case of a Permitted Sub-Lessee) cease to hold, whether by virtue of the revocation, suspension or non-renewal thereof or otherwise, any air transport license or its equivalent required to enable the it to carry out its principal business or the franchises, concessions, permits, rights or privileges required for the conduct of the business or operations of it shall be revoked, canceled or otherwise terminated or the free and continued use and exercise thereof curtailed or prevented, and as a result of any of the foregoing the preponderant business activity of it  shall cease to be that of a commercial airline;

(r)    there shall have occurred and be continuing any "Event of Default" under as and defined in any Other Operative Document;

(s)    The Lessee breaches its obligations under clause 6 or clause 23 of the Participation Agreement;

(t)    there shall be any change (or such change shall be enacted or made by decree or otherwise and shall be scheduled and become thereafter effective) in the laws, regulations or treaties of the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, (while it is leasing an Aircraft from the Lessee) any Permitted Sub-Lessee, the Cayman Islands, Ireland the United States or any government or political agency, subdivision or instrumentality thereof which materially adversely affects the validity, legality or perfection of the Lessor's title to any Aircraft, or any Secured Party's rights in any Aircraft under any Security Document, or which materially adversely affects the Lessor's or any Secured Party's interests under this Lease or materially adversely affects the Lessee's ability to perform or comply with its obligations under this Lease or the legality of such performance or compliance;

(u)    any Government Body shall have condemned, seized or appropriated all or any substantial part of the property of the Lessee or either Guarantor which is likely materially and adversely to affect the ability of such the Lessee or either Guarantor to perform its obligations under the Operative Documents; and/or

(v)    any other event occurs (other than an Event of Loss) or any other circumstance arises which is likely materially and adversely to affect the ability or legal obligation of the Lessee to perform its obligations under any Operative Document to which it is a party.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**14.    REMEDIES**

(a)    Upon the occurrence of any Event of Default or a Termination Event and at any time thereafter so long as the same shall be continuing, the Lessor may (without prejudice to any other rights of the Secured Parties under this Lease or the other Operative Documents), at its option, (in the case of any Event of Default) accept such repudiation and by notice to the Lessee declare this Lease to be in default or a Termination Event to have occurred and (in each case) by notice to the Lessee may, at its option, terminate any commitment of the Lessor to lease any Aircraft for which the relevant Delivery Date has not yet occurred (provided, that upon the occurrence of any Event of Default described in Clause 13.1(g)-(l), this Lease shall automatically be deemed in default and the Lessor's commitment shall automatically terminate); and at any time after this Lease shall be declared or deemed to be declared to be in default or a Termination Event to have occurred under this Clause 14, the Lessor may, so long as the Lessee shall not have remedied all outstanding Events of Default or Termination Events, exercise one or more of the following remedies with respect to all or any part of any Aircraft as the Lessor in its sole discretion shall elect:

(i)    the Lessor may demand that the Lessee pay the Lessor, and the Lessee shall pay to the Lessor, all Basic Rent (for all Aircraft) that has accrued but remains unpaid, together with the then applicable Termination Value for such Aircraft, computed on the date of final payment in full thereof, all Supplemental Rent then due and payable by the Lessee hereunder and all amounts then due and payable by the Lessee to the Lessor or any Secured Party under all other Operative Documents, and upon the indefeasible payment of such amount and all Supplemental Rent then due and payable by the Lessee hereunder, the Term for such Aircraft shall terminate;

(ii)    the Lessor shall be entitled in addition to making any demand referred to in paragraph (a) above:

(A)    to cause the Lessee upon demand of the Lessor (provided that such demand shall be deemed to have been given if the Lessor is stayed by operation of law from making such demand) and at the Lessee's expense, to return promptly, and the Lessee shall return promptly, all or such part of any Aircraft, and the Manuals and Technical Records relating thereto, as the Lessor may so demand, to the Lessor in the manner and condition required by, and otherwise in accordance with all the provisions of, Clause 5 as if such Aircraft was being returned at the end of the Term for such Aircraft, or if the Lessee does not so deliver such Aircraft or the Manuals and Technical Records relating thereto, the Lessor, at its option, may enter upon the premises where all or any part of such Aircraft and the Manuals and Technical Records relating thereto are located and take immediate possession of and remove the same (together with any engine or part which is not an Engine or Part associated with such Aircraft but which is installed on the relevant Airframe or stored with or attached to any relevant Engine, subject to all of the rights of the owner, lessor, lienor or secured party of such engine or part) by summary proceedings or otherwise all without liability accruing to the Lessor for or by reason of such entry or taking of possession, whether for restoration of damage to property caused by such taking or otherwise, provided that all actions of the Lessor in this respect are reasonable and necessary, and the Lessor may institute proceedings to repossess such Aircraft in any jurisdiction where such Aircraft may be located, and provided further that if at any time after the Lessor has exercised its rights under this paragraph (A), the Lessee shall make the payments referred to in paragraph (a) above, the Term for such Aircraft shall terminate;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(B)    following repossession of an Aircraft pursuant to Clause 14(b)(i), to sell such Aircraft at public or private sale, as the Lessor may determine; provided that the Lessor shall apply the proceeds of any sale in the manner set forth in the Intercreditor Deed, and the Lessor agrees to give the Lessee at least ten (10) Business Days' prior notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article 8(4) of the Convention) of the date fixed for any public sale of such Aircraft or of the date on or after which will occur the execution of any contract providing for any private sale thereof, and any such sale shall be conducted so as to afford the Lessee a reasonable opportunity to bid; and

(C)    the Lessor may exercise any other right or remedy which may be available to it as a secured party under Applicable Law or under the Cape Town Convention, including, without limitation, all rights and remedies under Chapter III of the Convention and Chapter II of the Protocol.  the Lessor hereby agrees to give the Lessee at least fifteen (15) days' notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article IX(6) of the Protocol) as set forth in Article IX(6) of the Protocol in connection with a proposal to procure the de-registration and export of an Aircraft without a court order.  the Lessee expressly agrees to permit the Lessor to obtain from any applicable court, pending final determination of any claim resulting from an Event of Default or Termination Event hereunder, speedy relief in the form of any of the orders specified in Article 13 of the Convention and Article X of the Protocol as the Lessor shall determine in its sole and absolute discretion, subject to any procedural requirements prescribed by Applicable Laws.

(b)    In addition, the Lessee shall be liable, except as otherwise provided above, for any and all unpaid Supplemental Rent due hereunder before, after or during the exercise of any of the foregoing remedies and for all legal fees and other costs and expenses actually incurred by the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative by reason of the occurrence of any Event of Default or Termination Event or the exercise of the Lessor's remedies with respect thereto, including (i) all costs and expenses incurred in connection with the return of the relevant Aircraft in accordance with the terms of Clause 5 or in placing the relevant Aircraft in the condition and airworthiness required by such Clause and (ii) any other costs and expenses that the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative may incur in connection with the retaking, holding, storage, export, deregistration and preparing for sale of the relevant Aircraft and other like action or that the Lessee has agreed to assume in any other Operative Document or pursuant to Applicable Law.  Except as otherwise expressly provided above, no remedy referred to in this Clause 14 is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above; and the exercise or beginning of exercise by the Lessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by the Lessor of any or all of such other remedies.  No express or implied waiver by the Lessor of, and no course of dealing by it with respect to, any Event of Default or Termination Event shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default or Termination Event.

(c)    The Lessee hereby consents to the exercise by the Lessor of the remedies granted herein and in the Cape Town Convention.  The Lessee acknowledges and agrees that the Lessor may exercise such of the foregoing remedies as it shall determine in its sole discretion and none of the foregoing remedies is manifestly unreasonable.  To the extent permitted by Applicable Law, the Lessee and the Lessor hereby agree that paragraph 2 of Article 13 of the Convention shall not apply to this Lease or to the exercise of any remedy by the Lessor

FILED DATE: 1/11/2023 2:57 PM   2023L000001

under this Lease or the Cape Town Convention.  Following the occurrence of an Event of Default or Termination Event, the Lessee agrees to immediately discharge, upon demand by the Lessor or the Security Trustee, any registration made with the International Registry in favour of the Lessee.

## 15.     FURTHER ASSURANCES; INVESTMENT OF SECURITY FUNDS

### 15.1    Further Assurances

(a)    The Lessee and the Lessor shall from time to time, at the cost and expense of the Lessee, do and perform such other and further acts and duly execute and deliver such further documents and assurances as may be required by Applicable Laws or requested by the other party to establish, maintain and protect the respective rights and remedies of the other party and to carry out and effect the intent and purpose of this Lease including, if requested by the Lessor, the Security Trustee, the Agent  or the Insurer Representative and at the expense of the Lessee:

(i)      the execution and delivery of supplements hereto or to the other Operative Documents, in recordable form, subjecting to this Lease or to the other Operative Documents, any replacement or substitute airframe or engine;

(ii)     the recording or filing of counterparts hereto or thereto, in accordance with the laws of such jurisdictions in which any Aircraft is based as the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee; and

(iii)    the registration of any interest, assignment or subordination with the International Registry to preserve, protect, perfect or establish priority in respect of any Aircraft Object or Associated Right covered by or related to this Lease, the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee.

(b)    The Lessee shall be solely responsible for obtaining all required consents and approvals of, giving all required notices to, performing all required registrations and filings for recordation with, and taking all other necessary actions in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, any Guarantor the jurisdiction of incorporation or formation of the Lessor, England and Wales and/or the United States of America including any governmental or political agency, subdivision or instrumentality thereof.

(c)    Without limiting the foregoing, the Lessee shall cause this Lease, and any and all additional instruments which shall be executed pursuant to the terms hereof, to be kept, filed, deposited or recorded, at all times, in the International Registry and in such places in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, the jurisdiction of incorporation or formation of the Lessor, the United States of America, England and Wales and such other jurisdictions in which any Aircraft is based as the Lessor, the Security Trustee, the Agent, any Funder or the Insurer Representative may reasonably request in order to perfect and preserve the rights of the Lessor, the Security Trustee, the Agent, the Funder, the Insurer Representative or the other Secured Parties hereunder, and furnish to the Lessor, the Insurer Representative, the Agent, Funder and the Security Trustee an opinion or opinions of counsel or other evidence satisfactory to the Lessor, the Insurer Representative and the Security Trustee of each such filing, deposit or recordation and, without limitation of any of the foregoing, at the reasonable request of the Lessor, the Insurer Representative, the Agent, any Funder or the Security Trustee, promptly

FILED DATE: 1/11/2023 2:57 PM   2023L000001

correct any defect, error or omission which may at any time hereafter be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof and, at the request of the Lessee, the Lessor shall promptly correct any defect, error or omission which may at any time be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof.  Without limiting any of the foregoing, the Lessee will co-operate fully with the Lessor, the Security Trustee, the Agent, the Funder and the Insurer Representative for obtaining the deregistration of any Aircraft and any required export licenses, when requested by the Security Trustee upon any return of any Aircraft required hereunder.

**15.2    Security Funds**

(a)    Notwithstanding anything in this Lease to the contrary, if a Material Default or Event of Default or Termination Event  under this Lease shall have occurred and be continuing or if the Lessor (or the Security Trustee, as the Lessor's assignee) is holding funds pending replacement of any Airframe and/or Engines pursuant to Clause 9, all amounts otherwise payable to the Lessee hereunder shall be paid to the Lessor and shall be held by the Lessor (or, if either Security Agreement shall not have been discharged, shall be paid to and held by the Security Trustee) as security for the obligations of the Lessee under this Lease, and, at such time as there shall not be continuing such Material Default, Termination Event or Event of Default or such replacement is complete, such amounts, net of any amounts theretofore properly applied to the Lessee's obligations hereunder, shall be paid to the Lessee or as the Lessee may direct.

(b)    All funds held by the Security Trustee hereunder shall be held as Collateral under the Lessee Security Agreement to secure, inter alia, the repayment of the Loans and the other amounts expressed to be secured thereunder and applied as provided therein.

**16.    NOTICES**

All notices, consents and other communications hereunder shall be given in accordance with clause 13(c) of the Participation Agreement.

**17.    MISCELLANEOUS; GOVERNING LAW**

(a)    Any provision of this Lease that is prohibited or unenforceable in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and shall not invalidate or render unenforceable the other provisions hereof in any jurisdiction.  To the extent permitted by Applicable Law, the Lessee hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.  No term or provision of this Lease may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought and only as permitted by the Operative Documents.  The Clause and paragraph headings in this Lease and the table of contents are for convenience of reference only and shall not modify, define, expand or limit any of the terms or provisions hereof.

(b)    This Lease and any non-contractual obligations arising out of or in connection with it are governed by English law.

(c)    The provisions of clause 13(d) of the Participation Agreement, in so far as they relate to any dispute between the Lessor and the Lessee, shall apply hereto as if set out in this Agreement, *mutatis mutandis*.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(d)   To the extent that the Lessee may be or hereafter become entitled, in any jurisdiction in which judicial proceedings may at any time be commenced with respect to this Lease, to claim for itself or its property, assets or revenues immunity (whether by reason of sovereignty or otherwise) from suit, jurisdiction of any court, attachment prior to judgment, attachment in aid of execution of a judgment, set-off, execution of judgment or from any other legal process, and to the extent that in any such jurisdiction there may be attributed any such immunity (whether or not claimed), the Lessee hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity.

(e)   The payment obligations of the Lessee payable under this Lease and any other Operative Document (the **payor**) expressed to be payable thereunder in one currency (the **first currency**) shall not be discharged by an amount paid in another currency (the **second currency**), whether pursuant to a judgment or otherwise, to the extent that the amount so paid on prompt conversion to the first currency under normal banking procedures does not yield the full amount of the first currency due thereunder, and the payor shall indemnify the recipient of such payment (the **payee**) against any such shortfall; and in the event that any payment by the payor, whether pursuant to a judgment or otherwise, upon conversion and transfer does not result in payment of such amount of the first currency, the payee shall have a separate cause of action against the payor for the additional amount necessary to yield the amount due and owing to the payee.

(f)   If it is necessary to determine for any reason other than that referred to in Clause 17.1(e) above the equivalent in the first currency of a sum denominated in the second currency, the rate of exchange used shall be that at which in accordance with normal banking procedures the Security Trustee could purchase the first currency with the second currency on the Business Day on which such determination is to be made (or, if such day is not a Business Day, on the next preceding Business Day).

(g)   This Lease may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Lease.

(h)   Except to the extent expressly provided herein, any terms of this Lease which expressly incorporate any provisions of the Cape Town Convention shall prevail in the case of any conflict with any other provision contained herein.  Each of the parties hereto acknowledges and agrees that for purposes of the Cape Town Convention (to the extent applicable hereto), separate rights may exist with respect to each Airframe and Engine.

## 18.   SECURITY FOR THE LESSOR'S OBLIGATION

(a)   In order to secure the repayment, inter alia, of the Secured Obligations, the Lessor has agreed in the Lessor Security Agreement, among other things, to assign to the Security Trustee its right, title and interest in and to this Lease, including all Associated Rights related thereto, subject to the reservations and conditions therein set forth.  The Lessee hereby consents to such assignment and acknowledges receipt of a copy of the Security Agreement it being understood that such consent shall not affect any requirement or the absence of any requirement for any consent under any other circumstances.

(b)   Until the Lien of the Lessor Security Agreement has been released:

(i)   the Lessee shall, notwithstanding anything herein to the contrary, make all payments of Rent and all other amounts payable hereunder in accordance with clause 13 of the Participation Agreement and such payments shall not be subject to any defence, counterclaim, set-off or other right or claim of any kind which the Lessee may be

FILED DATE: 1/11/2023 2:57 PM   2023L000001

able to assert against the Lessor or any other Person in an action brought by any thereof on this Lease;

(ii)    all rights of the Lessor with respect to this Lease (including all consent, waiver and notice rights), any Aircraft, any Airframe, any Engine or any Part thereof, to the extent set forth in and subject in each case to the exceptions set forth in the Lessor Security Agreement, shall be exercisable by the Security Trustee (to the exclusion of the Lessor); and

(iii)    all documents, notices, certificates and opinions of counsel sent by the Lessee to the Lessor shall also be sent to the Security Trustee.

## 19.    LESSOR'S RIGHT TO PERFORM FOR LESSEE

If the Lessee fails to make any payment of Rent required to be made by it hereunder or fails to perform or comply with any of its agreements contained herein, the Lessor or the Security Trustee may (but shall be under no obligation to) itself make such payment or perform or comply with such agreement, and the amount of such payment and the amount of the reasonable expenses of the Lessor or the Security Trustee incurred in connection with such payment or the performance of or compliance with such agreement, as the case may be, shall be deemed Supplemental Rent, payable by the Lessee upon demand together with interest thereon at the applicable Post-Default Rate.

## 20.    ENGLISH LANGUAGE PREVAILS

For the avoidance of doubt, the Lessor and the Lessee agree any translation of this Lease shall not apply in construing this Lease and that the English version of this Lease shall govern for all purposes.

## 21.    COMPLETE AGREEMENT

Except for the other Operative Documents, this Lease contains the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior written or oral communications or agreements with respect thereto.

## 22.    LIMITATION OF LIABILITY OF THE LESSOR

The Lessee acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Lease is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Master Lease Agreement to be duly executed by their respective duly authorized officers on the date first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 1**

**FORM OF ACCEPTANCE CERTIFICATE**

[●] (the **Lessee**) at [●] on this [●] day of [●] (the **Delivery Date**), has accepted delivery from [●] (the **Lessor**) of the following described aircraft (the **Aircraft**) pursuant to and in accordance with the terms of that certain Master Lease Agreement (the **Lease**) dated as of [●]between the Lessor and the Lessee:

One (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number [●] and registration mark [●] together with two (2) installed CFM model LEAP-1B27 engines bearing manufacturer's serial numbers [●] and [●], all parts, appliances, components, instruments, accessories, accessions, attachments, avionics (including, without limitation, radio, radar, navigation systems and other electronic equipment), other equipment (including, without limitation, all buyer-designated equipment and all buyer-furnished equipment) and components of whatever nature incorporated or installed in or attached to the Aircraft or such Engines, and all Manuals and Technical Records pertaining to the Aircraft and Engines.

The Lessee further certifies (a) that it has irrevocably accepted the above-described Aircraft for all purposes hereof and of the Lease as being airworthy, in good working order and repair without defect or inherent vice in title, condition, design, operation or fitness for use, and (b) that the Aircraft conforms in all respects with all of the requirements of the Lease.

Capitalized terms used in this Acceptance Certificate not otherwise defined herein shall have the meaning assigned thereto in the Lease.

**IN WITNESS THEREOF**, the Lessee has caused this Acceptance Certificate to be executed in its name by its duly authorized representative on this [●] day of [●].

[●]

By: _____
Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 2

## FORM OF LEASE SUPPLEMENT

LEASE SUPPLEMENT NO. [  ]

THIS LEASE SUPPLEMENT NO. [●] dated [●] (this **Lease Supplement**) is between [●]**,** a [●] company incorporated under the laws of [●], as lessor (the **Lessor**) and [●], a [●] company incorporated under the laws of [●], as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated as of [●] relating to 737 - 8 Boeing model [●] aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.     The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

    (a)     one (1) Boeing model 737 - 8  airframe bearing manufacturer's serial number [●] and [●] registration mark [●]; and

    (b)     two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers [●] and [●], respectively.

2.     The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.     The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.     The parties confirm that the Purchase Price for the Delivered Aircraft is US$[●] and the Initial Rent for the Delivered Aircraft is US$[●].

5.     All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.     The [revised] "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.     This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.     This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

[●]

By: _____
  Name:
  Title:

[●]

By: _____
  Name:
  Title:

Receipt of the counterpart of the foregoing Lease Supplement No. [●] is hereby acknowledged on this [●] day of [●].

[●], as Security Trustee

By: _____
  Name:
  Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

Basic Rent
Payment Date                         Basic Rent

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 3**

**FORM OF EUROCONTROL LETTER**

From:   **[NORWEGIAN AIR INTERNATIONAL LIMITED]**

To:     The Director of the Central Route Charges Office
        European Organisation for the Safety of Air Navigation (EUROCONTROL)
        Rue de La Fusée, 96
        B-1130 Brussels
        Belgium

                                                                    [    ] 2014

Dear Sirs

**Authorisation Letter**

**AIR NAVIGATION CHARGES: ONE (1) BOEING 737 - 8 AIRCRAFT BEARING MANUFACTURER'S SERIAL NUMBER [●] AND REGISTRATION MARK [●] (THE AIRCRAFT)**

We have [subleased] the Aircraft from [[●] (the **Sublessor**)] in accordance with a [sublease] agreement dated [   ] 2017 between us and the [Lessor] [Sublessor].

We hereby authorise you to provide the [Sublessor] (hereby represented by [SECURITY TRUSTEE]) with a general statement of account in relation to air navigation charges incurred by us and due to EUROCONTROL.   Access to the statement(s) of account will be provided in accordance with the procedures established by EUROCONTROL.

The authorisation contained in this letter may only be revoked or amended by a written instruction signed by us and the [Sublessor].

Yours faithfully

For and on behalf of
**[NORWEGIAN AIR INTERNATIONAL LIMITED]**

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 4**

**Form of EU ETS Authority Letter**

From:   **[NORWEGIAN AIR INTERNATIONAL LIMITED]**

To:      All governmental entities in the European Union charged with administering any EU ETS (as defined below) applicable to us and the Aircraft

[•]

Dear Sirs

**Emissions Trading Schemes**

1       Pursuant to the terms of the aircraft lease agreement dated [•] 2017 (the **Lease**) between [•] (the **Lessor**) and  Hardangerfjorden Limited (the **Lessee**) and the aircraft sub-lease agreement dated [•] 2017 (the **Sub-Lease**) between the Lessee and ourselves, we have agreed to sub-lease one (1) Boeing 737 - 8 aircraft with manufacturer's serial number [●]and registration mark [●].

2       We wish to enable each of the Lessor, [●] (the Insurer Representative) and [●] the (Security Trustee) to monitor the performance by us of our obligations under the Emissions Trading Schemes (**EU ETS**).

3       We hereby unconditionally authorise you, on request by the Lessor, the Security Trustee or the Insurer Representative from time to time, to provide the Lessor the Security Trustee or the Insurer Representative with particulars of any obligations due from but unperformed by us under the EU ETS.

4       The authorisation contained herein shall only be revoked or amended upon receipt by you of a written instruction signed by ourselves, the Lessor and the Agent requesting such revocation.

Yours faithfully

……………………………………………
For and on behalf of
**[NORWEGIAN AIR INTERNATIONAL LIMITED]**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATORIES

**LESSOR**

**AAA MAX I LIMITED**

By: _____
      Name: Elaine Anderson
      Title: Director

**LESSEE**

**HARDANGERFJORDEN LIMITED**

By: _____

Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATORIES**

**LESSOR**

**AAA MAX 1 LIMITED**

By: _____

Name:
Title:  Brian Byrne
        Attorney-in-Fact

**LESSEE**

**HARDANGERFJORDEN LIMITED**

By: _____

Name:
Title:  Brian Byrne
        Attorney-in-Fact

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT F-2

FILED DATE: 1/11/2023 2:57 PM   2023L000001

### LEASE SUPPLEMENT NO. 1

THIS LEASE SUPPLEMENT NO. 1 dated ___29 June__ 2017 (this **Lease Supplement**) is between AAA Max 1 Limited**,** an exempted  company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Hardangerfjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

<div align="center">WITNESSETH:</div>

**WHEREAS**:

(1)    the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated as of 22 June 2017 relating to 737 - 8 Boeing model aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)    the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.    The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

(a)    one (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number 42826 and registration mark EI-FYB; and

(b)    two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers 602179 and 602184, respectively.

2.    The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.    The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.    The parties confirm that the Purchase Price for the Delivered Aircraft is US$47,190,227 and the Initial Rent for the Delivered Aircraft is US$7,078,534.05.

5.    All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.    The "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.    This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____

      Name:   **Elaine Anderson**

      Title:    **Director**

Hardangerfjorden Limited

By: _____

      Name:

      Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 1 is hereby acknowledged on this _____ day of _____ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____

      Name:

      Title:

Lease Supplement No. 1

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF,** the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____
　　　Name:
　　　Title:

Hardangerfjorden Limited

By: _____
　　　Name:　　**Brian Byrne**
　　　Title:　　Attorney-in-Fact

Receipt of the counterpart of the foregoing Lease Supplement No. 1 is hereby acknowledged on this _____ day of _____ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____
　　　Name:
　　　Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____

Name:
Title:

Hardangerfjorden Limited

By: _____

Name:
Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 1 is hereby acknowledged on this __29__ day of _June_ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____

Name:
Title:            John Kane
                 Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

| Basic Rent Payment Date | Basic Rent |
|---|---|
| 29-Sep-17 | 1,078,616.00 |
| 29-Dec-17 | 1,078,616.00 |
| 28-Mar-18 | 1,078,616.00 |
| 29-Jun-18 | 1,078,616.00 |
| 28-Sep-18 | 1,078,616.00 |
| 28-Dec-18 | 1,078,616.00 |
| 28-Mar-19 | 1,078,616.00 |
| 28-Jun-19 | 1,078,616.00 |
| 27-Sep-19 | 1,078,616.00 |
| 27-Dec-19 | 1,078,616.00 |
| 27-Mar-20 | 1,078,616.00 |
| 29-Jun-20 | 1,078,616.00 |
| 29-Sep-20 | 1,078,616.00 |
| 29-Dec-20 | 1,078,616.00 |
| 29-Mar-21 | 1,078,616.00 |
| 29-Jun-21 | 1,078,616.00 |
| 29-Sep-21 | 1,078,616.00 |
| 29-Dec-21 | 1,078,616.00 |
| 29-Mar-22 | 1,078,616.00 |
| 29-Jun-22 | 1,078,616.00 |
| 29-Sep-22 | 1,078,616.00 |
| 29-Dec-22 | 1,078,616.00 |
| 29-Mar-23 | 1,078,616.00 |
| 29-Jun-23 | 1,078,616.00 |
| 29 Sep-23 | 1,078,616.00 |
| 29 Dec-23 | 1,078,616.00 |
| 27-Mar-24 | 1,078,616.00 |
| 28-Jun-24 | 1,078,616.00 |
| 27-Sep-24 | 1,078,616.00 |
| 27-Dec-24 | 1,078,616.00 |
| 28-Mar-25 | 1,078,616.00 |
| 27-Jun-25 | 1,078,616.00 |
| 29-Sep-25 | 1,078,616.00 |
| 29-Dec-25 | 1,078,616.00 |
| 25-Mar-26 | 1,078,616.00 |
| 29-Jun-26 | 1,078,616.00 |
| 29-Sep-26 | 1,078,616.00 |
| 29-Dec-26 | 1,078,616.00 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

| Basic Rent<br>Payment Date | Basic Rent |
|---|---|
| 24-Mar-27 | 1,078,616.00 |
| 29-Jun-27 | 1,078,616.00 |
| 29-Sep-27 | 1,078,616.00 |
| 29-Dec-27 | 1,078,616.00 |
| 29-Mar-28 | 1,078,616.00 |
| 29-Jun-28 | 1,078,616.00 |
| 29-Sep-28 | 1,078,616.00 |
| 29-Dec-28 | 1,078,616.00 |
| 28-Mar-29 | 1,078,616.00 |
| 29-Jun-29 | 1,078,616.00 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT F-3

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# PURCHASE AGREEMENT ASSIGNMENT

Dated as of _____29 June_____ 2017

**ARCTIC AVIATION ASSETS DAC**
**as Assignor**

**and**

**NORWEGIAN AIR SHUTTLE ASA**
**as Assignor and Sub-Lessee**

**HARDANGERFJORDEN LIMITED**
**as Lessee**

**NORWEGIAN AIR INTERNATIONAL LIMITED**
**as Sub-Lessee**

**and**

**AAA MAX 1 LIMITED**
**as Lessor**

**six (6) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

Allen & Overy LLP

0117131-0000002 BK:40179920.15

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS PURCHASE AGREEMENT ASSIGNMENT** dated as of _____29 June_____ 2017 (this **Assignment**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly incorporated under the laws of Ireland (**Arctic**), **NORWEGIAN AIR SHUTTLE ASA**, a company organized under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company incorporated under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly incorporated under the laws of Ireland (**International**).

## W I T N E S S E T H :

**WHEREAS**, Norwegian and The Boeing Company (the **Manufacturer**) entered into that certain purchase agreement number 03754, dated as of 24 January 2012, and that certain Aircraft General Terms Agreement AGTA-NSB, dated 29 August 2007 (the **AGTA**), which is incorporated by reference in that purchase agreement, providing for, inter alia, the sale by the Manufacturer of each Aircraft;

**WHEREAS**, Norwegian assigned and transferred to Arctic its rights and obligations under the Purchase Agreement to purchase the Aircraft in accordance with the Assignment, Assumption and Release Agreement dated 27 November 2014 (the **AARA**).

**WHEREAS**, the benefit of the warranty provisions in the Purchase Agreement were excluded from the rights of Norwegian that were assigned and transferred by it to Arctic under the AARA.

**WHEREAS**, the Lessor wishes to acquire certain rights and interests under the Purchase Agreement and each Assignor, on the terms and conditions set forth herein, is willing to assign to the Lessor certain of its rights and interests under the Purchase Agreement, and the Lessor is willing to accept such assignment; and

**WHEREAS**, the Manufacturer is willing to execute and deliver to the Lessor on each Delivery Date a consent and agreement (the **Consent and Agreement**) to the provisions hereof in substantially the form of Schedule 1 hereto in respect of the relevant Aircraft.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and of other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1.      For all purposes of this Assignment, unless the context otherwise requires, the following terms shall have the following respective meanings:

**Agent** shall mean Citibank Europe plc, UK Branch, as agent for the Funder.

**Aircraft** shall mean any of the six (6) Boeing model 737 - 8 airframes described in Schedule 2 hereto (each, an **Airframe**), as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, together, in the case of any Airframe, with two CFM model LEAP-1B27 engines, as more particularly described in Schedule 2, as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, installed on such Airframe and each other engine described in any Purchase Assignment Supplement hereto (collectively, the **Engines**), together with the equipment, components and accessories installed on such Aircraft (other than buyer furnished equipment that has not been converted to seller purchased equipment pursuant to the Purchase Agreement) pursuant to the Purchase Agreement, and together with all technical records, manuals and data with respect thereto provided in relation to such Aircraft pursuant to the Purchase Agreement (collectively, the **Manuals and Technical Records**).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Delivery** shall mean, with respect to an Aircraft, the time when the relevant Sub-Lessee (as designee of the Lessee), as the authorized representative of the Lessor, shall accept delivery of such Aircraft under the Purchase Agreement (as evidenced by delivery to the Lessor from the Manufacturer of the bill of sale in respect of such Aircraft referred to in the Purchase Agreement).

**Delivery Date** shall mean, with respect to an Aircraft, the date on which the Delivery of such Aircraft occurs.

**Engine Manufacturer** shall mean CFM International S.A., a French company, and its successors and permitted assigns.

**Insurer Representative** shall mean Allianz Risk Transfer AG, as Insurer Representative.

**Lease** shall mean, in respect of each Aircraft, the Master Lease Agreement dated on or about the date hereof as supplemented by the lease supplement dated on or prior to the Delivery Date for that Aircraft, substantially in the form of Exhibit I to the Master Lease Agreement, in each case between the Lessor, as lessor, and the Lessee, as lessee, providing for the lease of that Aircraft, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Lease Event of Default** shall have the meaning given to such term in the Lease.

**Lessor Security Assignment** shall mean, in respect of each Aircraft, the security agreement relating to that Aircraft dated on or prior to the Delivery Date for that Aircraft between the Lessor, as mortgagor, and the Security Trustee, as mortgagee, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Participation Agreement** shall mean the Participation Agreement dated as of 22 June 2017 among inter alios the Assignors, the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Funder identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Payment Undertaking Agreement** shall mean the Payment Undertaking Agreement, dated as of 22 June 2017, among the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Funder identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Payment Undertaking Event of Default** shall have the meaning given to such term in the Payment Undertaking Agreement.

**Purchase Agreement** shall mean the purchase agreement no. PA-03754 dated as of 24 January 2012 originally made between Norwegian and the Manufacturer, as assigned to and assumed by Arctic pursuant to the AARA,  and as further amended and supplemented from time to time thereafter, providing for, inter alia, the purchase by Arctic from the Manufacturer of each Aircraft, as more particularly described therein, which incorporates by reference the terms and conditions of the Aircraft General Terms Agreement (AGTA-NSB) dated as of  29 August 2007 between Norwegian and the Manufacturer (the **AGTA**).

**Purchase Assignment Supplement** shall mean in respect of each Aircraft, the purchase assignment supplement relating to that Aircraft entered into between the Assignors, the Lessee, International and the Lessor and consented to by the Manufacturer, substantially in the form of Schedule 3 hereto.

**Purchase Price** shall mean, with respect to an Aircraft, the amount in United States Dollars (U.S.$) in respect of the purchase of such Aircraft as shall be notified by Arctic to the Lessor at least five (5) Business Days prior to the Delivery Date for such Aircraft upon agreement with the Manufacturer

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and pursuant to the terms of the Purchase Agreement; provided that the Lessor's maximum liability under this Assignment in respect of the Purchase Price for such Aircraft shall not exceed the amount set forth in the Purchase Assignment Supplement; provided, further, that in the event that such amount changes after such notification but prior to the relevant Delivery Date, the parties agree that such amount shall be appropriately adjusted.

**Sub-Lessee** shall mean Norwegian or International, as the case may be.

**Security Trustee** shall mean Citibank N.A., London Branch, as Security Trustee.

**Sub-Lease** shall mean, with respect to an Aircraft, the aircraft operating lease agreement entered into or to be entered into on or about the Delivery Date of such Aircraft between the Lessee as lessor and the relevant Sub-Lessee as lessee.

**Sub-Lease Event of Default** shall have the meaning given to the term "Termination Event" in the relevant Sub-Lease.

**Transaction Parties** means the Lessor, the Lessee, Norwegian and International and **Transaction Party** shall mean any one of them.

All other capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Assignment and this Assignment shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

2. As of the date of delivery of a Purchase Assignment Supplement from the Assignors to the Lessor (with copies to the Manufacturer and the Security Trustee) with respect to an Aircraft, each Assignor shall, with effect from such date, thereby sell, assign, transfer and set over unto the Lessor, its successors and permitted assigns, all of that Assignor's rights and interests in and to the Purchase Agreement as and to the extent they relate to the purchase of such Aircraft and the operation thereof, except as and to the extent expressly reserved below, including in such assignment:

    (a) the right upon valid tender by the Manufacturer to purchase such Aircraft pursuant to the Purchase Agreement subject to the terms and conditions thereof and the right to take title to such Aircraft and to be named the Buyer in the bill of sale to be delivered by the Manufacturer for such Aircraft pursuant to the Purchase Agreement;

    (b) the right to accept delivery of such Aircraft, such acceptance to be exercised by the relevant Sub-Lessee (as designee of the Lessee) as the authorized representative of the Lessor, provided that the Manufacturer shall have received written notice in advance of the identity and authority of such authorized representative;

    (c) all claims for damages in respect of such Aircraft arising as a result of any default by the Manufacturer under the Purchase Agreement in respect of such Aircraft;

    (d) all warranty and indemnity provisions contained in the Purchase Agreement and all claims arising thereunder, in respect of such Aircraft; and

    (e) any and all rights of each Assignor to compel performance of the terms of the Purchase Agreement in respect of such Aircraft;

reserving exclusively to the Assignors, however:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(i)     all the Assignors' rights and interests in and to the Purchase Agreement as and to the extent that it relates to aircraft other than an Aircraft or the purchase, ownership or operation of such other aircraft and to the extent that it relates to any other matters not directly pertaining to an Aircraft;

(ii)    all the Assignors' rights and interests in or arising out of (including any credits for or repayment of) any advance payments made or to be made by the Assignors in respect of such Aircraft under the Purchase Agreement and any other payments or deposits made by the Assignors in respect of such Aircraft under the Purchase Agreement or any other agreement;

(iii)   the right to obtain services, training, data and demonstration and test flights pursuant to the Purchase Agreement; and

(iv)    the right to maintain plant representatives at the Manufacturer's plant pursuant to the Purchase Agreement.

The Lessor hereby accepts the assignment set forth above.

Notwithstanding the foregoing, so long and only so long as no notice has been issued to the Manufacturer, the Lessor hereby authorizes the relevant Sub-Lessee during the term of the Lease in respect of an Aircraft, to the exclusion of the Lessor, to exercise in such relevant Sub-Lessee's name (A) the right to enforce any warranty or indemnity under the Purchase Agreement and to retain any recovery or benefit resulting from the enforcement of any warranty or indemnity under the Purchase Agreement in respect of such Aircraft, (B) all rights to demand, accept and retain all rights in and to all property (other than such Aircraft) and (C) the right to exercise all other rights and powers of the Customer under the Purchase Agreement assigned to the Lessor hereunder in respect of such Aircraft; provided that the Assignors and such relevant Sub-Lessee may not enter into any change order or other amendment, modification or supplement to the Purchase Agreement if such change order, amendment, modification or supplement would (i) result in any rescission, cancellation or termination of the Purchase Agreement or any aircraft warranties in respect of any Aircraft, or (ii) materially diminish the rights and interests assigned hereunder.

For all purposes of this Assignment, the Manufacturer shall not be deemed to have knowledge of or need to recognize the occurrence of a Lease Event of Default, a Termination Event or a Sub-Lease Event of Default, unless and until the Manufacturer shall have received from the Lessee or the Lessor (or the Security Trustee, so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) written notice thereof, addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706. Until such time as a notice shall have been given by the Lessee or the Lessor (or the Security Trustee so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) to the Manufacturer, the Manufacturer shall deal solely and exclusively with the relevant Sub-Lessee. Thereafter, until the Lessee or the Lessor (or the Security Trustee, as the case may be) who served the notice on the Manufacturer shall have notified the Manufacturer that any such Lease Event of Default, Termination Event, Sub-Lease Event of Default or Payment Undertaking Event of Default is no longer continuing (which notice shall be given at such relevant Sub-Lessee's, the Lessee's or the Lessor's (as applicable) written request promptly after the remedy thereof), the Manufacturer shall deal solely and exclusively with the Lessor, the Lessee or the Security Trustee, as the case may be. The Manufacturer may act with acquittance and conclusively rely on such notice. For the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice

FILED DATE: 1/11/2023 2:57 PM   2023L000001

from the Security Trustee shall control and in the event that the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control.

3.  It is expressly agreed that, anything herein contained to the contrary notwithstanding: (a) prior to the execution of a Purchase Assignment Supplement with respect to an Aircraft, each Assignor will perform its obligations with respect to such Aircraft to be performed by it on or before the Delivery Date for such Aircraft, (b) Arctic shall at all times remain liable to the Manufacturer under the Purchase Agreement to perform all duties and obligations of the Customer thereunder to the same extent as if this Assignment had not been executed, (c) the exercise by a Transaction Party of any of the rights assigned hereunder shall not release Arctic from any of its duties or obligations to the Manufacturer under the Purchase Agreement, except to the extent that such exercise by a Transaction Party shall constitute performance of such duties and obligations, and (d) except as specifically provided in the next succeeding paragraph with respect to the Transaction Parties, the Transaction Parties shall not have any obligation or liability under the Purchase Agreement by reason of or arising out of this Assignment or be obligated to perform any of the obligations or duties of Arctic under the Purchase Agreement or to make any payment or to make any inquiry as to the sufficiency of any payment received by it or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder.

Anything contained in this Assignment to the contrary notwithstanding (but without in any way releasing either Assignor from any of its duties or obligations under the Purchase Agreement), the Transaction Parties confirm for the benefit of the Manufacturer that, insofar as the provisions of the Purchase Agreement relate to any Aircraft, in exercising any rights under the Purchase Agreement with respect to such Aircraft, or in making any claim with respect to such Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to such Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, the Transaction Parties to the same extent as if each Transaction Party had been the original Customer thereunder. The Transaction Parties further agree, expressly for the benefit of the Manufacturer, that at any time and from time to time upon the written request of the Manufacturer, the Transaction Parties shall promptly and duly execute and deliver any and all such further assurances, instruments and documents and take all such further action as the Manufacturer may reasonably request in order to obtain the full benefits of the Transaction Parties' agreements set forth in this paragraph.

Nothing contained herein shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the contract rights of the Manufacturer thereunder or require the Manufacturer to divest itself of title to or possession of any Aircraft or other goods and services until delivery thereof and payment therefor on the date of such delivery as provided therein.

Effective at any time after a Sub-Lease Event of Default has occurred, and for so long as such Sub-Lease Event of Default is continuing, the relevant Sub-Lessee does hereby irrevocably appoint the Lessee, its successors and permitted assigns, the relevant Sub-Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessee may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any

FILED DATE: 1/11/2023 2:57 PM   2023L000001

recovery in connection therewith that the Lessee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Lease Event of Default has occurred, and for so long as such Lease Event of Default is continuing, the relevant Sub-Lessee and the Lessee do hereby irrevocably appoint the Lessor, its successors and permitted assigns, the relevant Sub-Lessee's and the Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee, the Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessor may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessor may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

4.   NEITHER ASSIGNOR SHALL BE DEEMED TO HAVE GIVEN, AND EACH ASSIGNOR HEREBY EXPRESSLY DISCLAIMS, ANY IMPLIED REPRESENTATION OR WARRANTY AS TO THE AIRWORTHINESS, CONDITION, MERCHANTABILITY, DESIGN, OPERATION OR FITNESS FOR USE OF ANY AIRCRAFT OR ANY PART THEREOF, OR ANY OTHER IMPLIED REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO ANY AIRCRAFT.

5.   Each Assignor agrees that at any time and from time to time upon the written request of any Transaction Party, it will promptly and duly execute and deliver any and all such further instruments and documents and take such further action as such Transaction Party may reasonably request in order to obtain the full benefits of this Assignment and of the rights and powers herein granted.

6.   Each Assignor does hereby represent and warrant that it has not assigned or pledged, and hereby covenants that it will not assign or pledge so long as this Assignment shall remain in effect, the whole or any part of the rights hereby assigned to anyone other than the Lessor. Each Assignor hereby acknowledges and agrees that the Lessor has assigned to the Security Trustee, as collateral security for the Lessor's obligations under the Payment Undertaking Agreement and the other Operative Documents, all of the Lessor's right, title and interest in and to the Purchase Agreement (as it relates to any Aircraft) and this Assignment pursuant to the Lessor Security Assignment, and each Assignor hereby consents to such assignment.

7.   The Lessor agrees that it will not enter into any agreement with the Manufacturer that would amend, modify, rescind, cancel or terminate the Purchase Agreement in respect of any Aircraft or take any other action to amend, modify, rescind, cancel or terminate any of the Assignors' rights in respect of any Aircraft, without the prior written consent of the Assignors and the Security Trustee (so long as the Lien of the Lessor Security Assignment is in effect and has not been released by the Security Trustee).

8.   Each of the Transaction Parties agrees, expressly for the benefit of the Manufacturer, that it will not disclose, directly or indirectly, any terms of the Purchase Agreement disclosed to it; provided, that (a) the Transaction Parties may use, retain and disclose any such information to its special counsel and public accountants, who shall maintain the confidentiality of the Purchase Agreement, (b) the Transaction Parties may disclose any such information as required by Applicable Law or governmental regulations, (c) to the extent that any Transaction Party may have received a subpoena or other written demand under colour of legal right for such information, such Transaction Party may disclose such information, but it shall first, as soon as practicable upon receipt of such demand, furnish a copy thereof to the Manufacturer, and the relevant Transaction Party shall afford the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer reasonable opportunity, at the moving Person's cost and expense, to obtain a protective order or other reasonably satisfactory assurance of confidential treatment for the information required to be disclosed, (d) the Transaction Parties may disclose any such information to any bona fide potential purchaser or lessee of any Aircraft (subject to execution by such potential purchaser or lessee of a confidentiality undertaking substantially similar to this Section 8) and (e) the Transaction Parties may disclose any such information to the Agent, the Funder, the Security Trustee, the Insurer Representative, each Insurer Group Member and any other Person with whom any of the foregoing is in good faith conducting negotiations relating to the possible transfer and sale of such Person's interests in the Purchase Agreement, any Aircraft and/or any provision of funds (subject to the execution of a confidentiality undertaking substantially similar to this Section 8 by such Agent, Funder, Security Trustee, Insurer Representative, Insurer Group Member and Person described in this paragraph 8) and to their respective special counsel and financial advisors (who shall maintain the confidentiality of the Purchase Agreement to the extent required by this Section 8).

9.      This Assignment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

10.     On the Delivery Date for an Aircraft, subject to satisfaction or waiver of the conditions set forth in the Participation Agreement required to be satisfied on or prior to the Delivery Date for such Aircraft, the Lessor agrees to purchase such Aircraft from the Manufacturer and (without limiting its other payment obligations under the Operative Documents on the Delivery Date for such Aircraft) to pay the Purchase Price for such Aircraft in the manner specified in the Purchase Agreement.

11.     If the Delivery Date for an Aircraft does not occur by 11:59 p.m. (Seattle time) on the date set forth in the Purchase Assignment Supplement in respect of such Aircraft, this Assignment (as it relates to such Aircraft) shall (unless otherwise agreed by the parties hereto) automatically terminate, whereupon the rights subject to this Assignment (as it relates to such Aircraft) shall be deemed reassigned by the Lessor to the Assignors without the requirement of any further act or action (other than any notice required to be given to the Manufacturer).

12.     For the purposes of this Assignment, all notices and other communications shall be in writing, in English, and shall be given or made by fax, or personal delivery and faxed or delivered to the intended recipient (other than the Manufacturer) at the address specified below, or, as to any party, at such other address as shall be designated by such party in a notice to each other party hereto. Except as otherwise provided in this Assignment, all such communications shall be deemed to have been duly given when transmitted by fax (provided such transmission by fax is in legible form and is accompanied by or generates a substantially simultaneous confirmation of transmission), or personally delivered, in each case given or addressed as aforesaid.

(a)     If to the Lessor:

AAA Max 1 Limited
c/o Walkers Fiduciary Limited
Cayman Corporate Centre
27 Hospital Road
George Town
Grand Cayman KY1-9008
Cayman Islands

Attention:      The Directors

Telephone:     +1 345 814 7600

FILED DATE: 1/11/2023 2:57 PM   2023L000001

|  | Email: | issuerpfla@citi.com |

(b)     With a copy to the Security Trustee:

Citibank, N.A., London Branch
Canada Square,
Canary Wharf,
London E14 5LB

| Attention: | The Directors |
| Fax: | issuerpfla@citi.comIf to Arctic: |

Arctic Aviation Assets DAC
Ground Floor
Imbus House
Dublin Airport
Co. Dublin
Ireland

| Attention: | Tore Jenssen |
| Telephone: | + 353 879 461 070 |
| Fax: | + 353 1 814 1839 |

with a copy to Norwegian at the address below.

(c)     If to Norwegian:
Norwegian Air Shuttle ASA
Oksenøyveien 3
Postboks 115
N-1330 Fornebu
Norway

| Attention: | Chief Financial Officer |
| Telephone: | + 47 67 59 3078 |
| Fax: | +47 67 59 3001 |

(d)     If to the Lessee:

Hardangerfjorden Limited
c/o Arctic Aviation Assets DAC
Imbus House
Dublin Airport
Co. Dublin
Ireland

| Attention: | Tore Jenssen |
| Telephone: | + 353 879 461 070 |
| Fax: | + 353  1 814 7839 |

FILED DATE: 1/11/2023 2:57 PM  2023L000001

with a copy to Norwegian at the address above.

(e)      If to International

Norwegian Air International Limited
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:     Tore Jenssen

Telephone:    + 353 879 461 070

Fax:      + 353 1 814 7839

with a copy to Norwegian at the address above.

13.     This Assignment will be governed by, and construed in accordance with, the laws of the State of Washington, except for the conflict of laws principles thereof.

14.     The provisions of clauses 13(d)(ii) to 13(d)(vi) of the Participation Agreement, in so far as they relate to any dispute between the parties shall apply hereto as if set out in this Assignment *mutatis mutandis*.

15.     Each of the parties to this Assignment (except International) acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Assignment is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

16.     International acknowledges and agrees that the provisions of clause 20(c) (No Discharge, etc.; No Petitioning) and clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement apply to it to the same extent as if it were a party to the Participation Agreement and as if the reference to "Lessee" in such clause 20(c) referred to the Lessee and the Sub-Lessee.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Agreement Assignment to be duly executed as of the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 1**

**FORM OF CONSENT AND AGREEMENT**

**THE BOEING COMPANY**

**CONSENT AND AGREEMENT**

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated as of _____ 2017 between **AAA MAX 1 LIMITED** (the **Lessor**), **HARDANGERFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** [(**International/** the **Sub-Lessee**)] **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** [(**Norwegian/** the **Sub-Lessee**)] (each of Arctic and [Norwegian/ the Sub-Lessee] being an **Assignor**), relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number [●] (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.      all representations, warranties, indemnities and agreements of the Manufacturer under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.      no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.      the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.      if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

5.   the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided, however, that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Payment Undertaking Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.   the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.   the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.   The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

   (a)   the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

   (b)   the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)     to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)     Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.     The Manufacturer hereby confirms to the Security Trustee that:

(a)     upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)     except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.    The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.    The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.    It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 2017

**THE BOEING COMPANY**

By:

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

MSN [●]

**SCHEDULE 2**

**DESCRIPTION OF AIRCRAFT**

Each of the six (6) Boeing model 737 - 8 airframes, bearing Manufacturer's serial numbers 42826, 42830, 42825, 42827, 42828 and 42829, as further identified on each Purchase Assignment Supplement to be entered into by the Assignors, the Lessor, the Lessee and the relevant Sub-Lessee in respect of such airframes, together, in the case of each such airframe, with the two (2) CFM Model LEAP-1B27 engines installed thereon and each other engine identified on any Purchase Assignment Supplement hereto.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 3

### FORM OF PURCHASE ASSIGNMENT SUPPLEMENT

### PURCHASE ASSIGNMENT SUPPLEMENT NO. __

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated _____ 2017 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly organized under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly organized under the laws of Ireland (**International**) and supplements that Purchase Agreement Assignment dated as of _____ 2017 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

### W I T N E S S E T H:

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and International desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and International hereby agrees as follows:

1.     The Sub-Lessee of the Aircraft is:                          _____

2.     Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

       Manufacturer's serial number:                         _____

       Registration Mark:                         _____

       Engine Manufacturer's serial numbers:                         _____ & _____

3.     Latest Delivery Date with respect to such Aircraft:                         _____

4.     Maximum liability of the Lessor with respect to the Purchase Price of such Aircraft:     U.S.$_____

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. ____ to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

| | | |
|---|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | ) | |
| by **ARCTIC AVIATION ASSETS DAC** | | |
| acting by its lawfully | ) | |
| appointed attorney | ) | ………………………….. |
| | | Lawfully appointed attorney |
| in the presence of: | ) | |

Witness's Signature:   _____

Name:                           _____

Address:                       _____

                                      _____

**Norwegian**

| | | |
|---|---|---|
| SIGNED AND DELIVERED as a DEED by | | |
| **NORWEGIAN AIR SHUTTLE ASA** | ) | |
| acting by its lawfully appointed attorney | ) | ………………………….. |
| | | Lawfully appointed attorney |
| in the presence of: | ) | |

Witness's Signature:   _____

Name:                           _____

Address:                       _____

                                      _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **AAA MAX 1 LIMITED** | ) |
| acting by | ) |
| _____ | ) |
| acting under the authority of that | |
| Company, in the presence of: | ) |

Witness's Signature:    _____

Name:                         _____

Address:                     _____

                                 _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# SIGNATURES (2)

## PURCHASE ASSIGNMENT SUPPLEMENT

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **HARDANGERFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

…………………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature:   _____

Name:   _____

Address:   _____

_____

**International**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR INTERNATIONAL** | ) |
| **LIMITED** | ) |
| acting by its lawfully appointed attorney | |

…………………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature:   _____

Name:   _____

Address:   _____

_____

**SIGNATURES (3)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By:
Name:
Title:
Date:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE AGREEMENT ASSIGNMENT

**Assignor**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **ARCTIC AVIATION ASSETS DAC** | ) |
| acting by | |
| its lawfully appointed attorney | ) |

Tim O'Connell
Lawfully appointed attorney

in the presence of:

Witness's Signature: Vanessa Caesar

Name: Vanessa Caesar

Address: Imbus House

**Assignor and Sub-Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR SHUTTLE ASA** | ) |
| acting by | |
| its lawfully appointed attorney | ) |

…………………………………..
Lawfully appointed attorney

in the presence of:

Witness's Signature: …………………………………..

Name: …………………………………..

Address: …………………………………..

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM  2023L000001

# SIGNATURES

## PURCHASE AGREEMENT ASSIGNMENT

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by                )

**ARCTIC AVIATION ASSETS DAC**                           )
acting by
its lawfully appointed attorney                          )

..................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:    ………………………………..

Name:                   ………………………………..

Address:                ………………………………..

**Assignor and Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by                )

**NORWEGIAN AIR SHUTTLE ASA**                            )
acting by
its lawfully appointed attorney                          )

*ANDERS FREDRIKSEN*

....A.T.T.O.R.N.E.Y.-.I.N.-.F.A.C.T......
Lawfully appointed attorney

in the presence of:

Witness's Signature:    *Simen Strand*

Name:                   *SIMEN STRAND*

Address:                *HARBITZALLEEN 14H*

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by ⟩
**AAA MAX 1 LIMITED** ⟩
acting by ⟩
_____ ⟩

acting under the authority of that ⟩
Company, in the presence of: ⟩

Elaine Anderson
**Director**

Witness's Signature:

Name:

Address:      Cayman Corporate Centre
27 Hospital Road, George Town
Grand Cayman KY1-9008
Cayman Islands

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM  2023L000001

**SIGNATURES (2)**

**PURCHASE AGREEMENT ASSIGNMENT**

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by          )

**HARDANGERFJORDEN LIMITED**          )
acting by
its lawfully appointed attorney          )

*Tim O'Connell*
...................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:    *Vanessa Caesar*

Name:    Vanessa Caesar

Address:    Imbus House

**Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by          )

**NORWEGIAN AIR INTERNATIONAL LIMITED**          )
acting by
its lawfully appointed attorney          )

*Tim O'Connell*
...................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:    *Vanessa Caesar*

Name:    Vanessa Caesar

Address:    Imbus House

4                                    Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Citibank N.A, London Branch, as security trustee for the Secured Parties and as holder of a security interest in the right, title and interest of the Lessor in and to the Purchase Agreement (as it relates to each Aircraft) and this Assignment pursuant to the terms of the Lessor Security Assignment, agrees to the terms and conditions of this Assignment and agrees that its rights and remedies under the Lessor Security Assignment in respect of the property expressed to be assigned under this Assignment shall be subject to the terms and conditions of this Assignment (including, without limitation, the second paragraph of Section 3 hereof) and of the Purchase Agreement.

**CITIBANK N.A., LONDON BRANCH**
as Security Trustee

By:

Name:
       John Kane
Title:   Vice President

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT F-4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 1

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated ___29 June___ 2017 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly organized under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly organized under the laws of Ireland (**International**) and supplements that Purchase Agreement Assignment dated as of ___29 June___ 2017 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

### W I T N E S S E T H:

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and International desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and International hereby agrees as follows:

1.  The Sub-Lessee of the Aircraft is:                          Norwegian Air International Limited

2.  Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

   Manufacturer's serial number:                     42826

   Registration Mark:                                        EI-FYB

   Engine Manufacturer's serial numbers:         602179 & 602184

3.  Latest Delivery Date with respect to such Aircraft:      29 June 2017

4.  Maximum liability of the Lessor with respect to the Purchase Price of such Aircraft:          U.S.$47,190,227

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. 1 to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 1

**Arctic**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by **ARCTIC AVIATION ASSETS DAC** acting by its lawfully appointed attorney | ) ) ) |

................................................
Lawfully appointed attorney

in the presence of:                          )

Witness's Signature:    _Vanessa Caesar_

Name:    _Vanessa Caesar_

Address:    _Imbus House_

_____

**Norwegian**

| | |
|---|---|
| SIGNED AND DELIVERED as a DEED by **NORWEGIAN AIR SHUTTLE ASA** acting by its lawfully appointed attorney | ) ) |

......................................
Lawfully appointed attorney

in the presence of:                          )

Witness's Signature:    _____

Name:    _____

Address:    _____

_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**

**PURCHASE ASSIGNMENT SUPPLEMENT NO. 1**

**Arctic**

**SIGNED AND DELIVERED** as a **DEED**              )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully                               )
appointed attorney                                   )

                                                              …………………………………..
                                                              Lawfully appointed attorney

in the presence of:                                  )

Witness's Signature:      _____

Name:                    _____

Address:                 _____

                         _____

**Norwegian**

SIGNED AND DELIVERED as a DEED by
**NORWEGIAN AIR SHUTTLE ASA**                        )
acting by its lawfully appointed attorney            )

in the presence of:                                  )

Witness's Signature:      *Simen Strand*

Name:                    *SIMEN STRAND*

Address:                 *HARBITZ ALLEEN 14H*

                         _____

*ANDERS FREDRIKSEN*
*ATTORNEY-IN-FACT*
…………………………………..
Lawfully appointed attorney

2                                         Purchase Agreement Assignment Supplement No. 1

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **AAA MAX 1 LIMITED** | ) |
| acting by | ) |
| _____ | ) |
| acting under the authority of that | ) |
| Company, in the presence of: | ) |

**Elaine Anderson**
**Director**

Witness's Signature:

Name:

Address:

Cayman Corporate Centre
27 Hospital Road, George Town
Grand Cayman KY1-9008
Cayman Islands

3                    Purchase Agreement Assignment Supplement No. 1

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (2)**

**PURCHASE ASSIGNMENT SUPPLEMENT NO. 1**

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **HARDANGERFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

Lawfully appointed attorney

in the presence of:

Witness's Signature: *Vanessa Caesar*

Name: *Vanessa Caesar*

Address: *Imbus House*

**International**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR INTERNATIONAL** | ) |
| **LIMITED** | ) |
| acting by its lawfully appointed attorney | |

Lawfully appointed attorney

in the presence of:

Witness's Signature: *Vanessa Caesar*

Name: *Vanessa Caesar*

Address: *Imbus House*

Purchase Agreement Assignment Supplement No. 1

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (3)

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 1

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By: *TA Greene*
Name:   Tiffany Greene
Title:   Attorney -in-fact
Date:    29 June 2017

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT F-5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## THE BOEING COMPANY

## CONSENT AND AGREEMENT

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated as of _____29 June_____ 2017 between **AAA MAX 1 LIMITED** (the **Lessor**), **HARDANGERFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** (the **Sub-Lessee**) **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number 42826 (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.    all representations, warranties, indemnities and agreements of the Manufacturer under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.    no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.    the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.    if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

5.    the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box

FILED DATE: 1/11/2023 2:57 PM   2023L000001

3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Payment Undertaking Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.    the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.    the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.    The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)    the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)    the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)    to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(d)   Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.   The Manufacturer hereby confirms to the Security Trustee that:

(a)   upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)   except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.   The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.   The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.   It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 29 June _____ 2017

**THE BOEING COMPANY**

By:   *TA Greene*

Name:   Tiffany Greene

Title:   Attorney-in-fact

MSN 42826

Purchase Agreement Assignment

FILED
1/11/2023 2:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000001
Calendar, S
21000066

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# GROUP EXHIBIT G

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT G-1

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# MASTER LEASE AGREEMENT

22 June     **2017**

**Between**

**AAA MAX 1 LIMITED**
**as Lessor**

**and**

**HARDANGERFJORDEN LIMITED**
**as Lessee**

**Up to six (6) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

**Allen & Overy LLP**

0117131-0000002 BK:39702344.14

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# CONTENTS

| **Clause** | **Page** |
|---|---|
| 1. Definitions and interpretation | 1 |
| 2. Agreement to Lease; Term | 1 |
| 3. Rent | 2 |
| 4. Lessor's Disclaimer of Warranties; Manufacturers' Warranties | 4 |
| 5. Purchase Options; Return of Aircraft | 6 |
| 6. Liens | 9 |
| 7. Registration, Maintenance, Operation and Possession | 9 |
| 8. Replacement; Temporary Installation; Pooling; Alterations, Modifications and Additions; Etc | 24 |
| 9. Loss, Destruction, Requisition, Etc | 28 |
| 10. Insurance | 31 |
| 11. Absolute Obligations | 39 |
| 12. Assignment | 41 |
| 13. Lease Events of Default and Termination Events | 41 |
| 14. Remedies | 45 |
| 15. Further Assurances; Investment of Security Funds | 47 |
| 16. Notices | 48 |
| 17. Miscellaneous; Governing Law | 48 |
| 18. Security for the Lessor's Obligation | 49 |
| 19. Lessor's Right to Perform for Lessee | 50 |
| 20. English Language Prevails | 50 |
| 21. Complete Agreement | 50 |

**Schedule**

| | |
|---|---|
| 1. Form of Acceptance Certificate | 51 |
| 2. Form of Lease Supplement | 52 |
| Form of Eurocontrol Letter | 56 |
| Signatories | 57 |

0117131-0000002 BK:39702344.14

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS MASTER LEASE AGREEMENT** dated _____22 June____ 2017 (this **Lease**)

**AMONG**

(1)     **AAA MAX 1 LIMITED**, an exempted company  with limited liability incorporated and existing under the laws of the Cayman Islands, as lessor (the **Lessor**); and

(2)     **HARDANGERFJORDEN LIMITED**, a limited liability company duly incorporated under the laws of Ireland (the **Lessee**).

 **WITNESSETH:**

(1)     **WHEREAS,** pursuant to that certain Participation Agreement, dated as of the date of execution and delivery thereof (as amended, supplemented and modified from time to time, the **Participation Agreement**), among, *inter alios*, the Lessor, Walkers Fiduciary Limited, as lessor parent, the Lessee, Greensill Capital (UK) Limited, as Funder, Citibank Europe plc, UK Branch, as Agent, Citibank N.A., London Branch, as security trustee, the Lessor and the Lessee have agreed to enter into this Lease.

(2)     **WHEREAS,** pursuant to each Purchase Assignment in respect of an Aircraft, the Lessor will acquire certain rights under the Purchase Agreement in respect of such Aircraft.

(3)     **WHEREAS,** pursuant to the terms and conditions of this Lease, the Lessor has agreed to lease each Aircraft to the Lessee and the Lessee has agreed to lease each Aircraft from the Lessor.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

**1.     DEFINITIONS AND INTERPRETATION**

**1.1     Definitions**

Unless the context otherwise requires, capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Lease.

**1.2     Interpretation**

 This Lease shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

**2.     AGREEMENT TO LEASE; TERM**

**2.1     Delivery**

The Lessor hereby agrees on each Delivery Date for an Aircraft, subject to (a) the purchase of such Aircraft by the Lessor to be delivered pursuant to the Participation Agreement, the Purchase Agreement and the Purchase Assignment and (b) the satisfaction or waiver of the conditions precedent with respect to such Aircraft set forth or referred to in clause 4 of the Participation Agreement, to accept delivery of, and subject to clause 2 of the Participation Agreement to lease to the Lessee hereunder, and the Lessee hereby agrees, subject to the foregoing and the satisfaction of the conditions precedent (with respect to such Aircraft) set forth in clause 5 of the Participation

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Agreement, to accept delivery of, to sign the Acceptance Certificate and to lease from the Lessor hereunder, such Aircraft, whereupon the Term for such Aircraft shall commence.

**2.2    Acceptance**

The Lessee hereby agrees that the execution of the Acceptance Certificate for an Aircraft in the form of Schedule 1 hereto shall be deemed to constitute unconditional, absolute and irrevocable acceptance of such Aircraft by the Lessee under this Lease.

**2.3    Term**

Subject to acceptance of an Aircraft as provided in Clauses 2.1 and 2.2, the Lessee hereby leases from the Lessor such Aircraft for the Term applicable thereto.

**2.4    Cape Town Convention**

(a)    The parties hereto agree that, for all purposes of the Cape Town Convention, upon execution of a Lease Supplement (a) this Lease, together with such Lease Supplement, will constitute a separate International Interest with respect to the Airframe and each Engine identified in such Lease Supplement, (b) such Airframe and Engines each constitute an Aircraft Object and (c) this Lease, together with such Lease Supplement, will constitute an agreement for the registration of such Airframe.

(b)    If there is any change to the manner in which the Cape Town Convention is implemented in the Government of Registry, the Lessee shall take such action as the Lessor may require in relation to such change, including:

(i)    amending or re-executing any Operative Document;

(ii)    registering, perfecting and/or preserving any International Interest(s) vested in the Lessor and the Secured Parties with respect to the Airframe and/or any Engine; and

(iii)    entry into agreements (subordination or otherwise) to protect the priority of any International Interest(s) or other registrable interests referred to in the foregoing paragraphs (i) and/or (ii).

(c)    The Lessee agrees to indemnify on demand and shall pay or reimburse the Agent, the Funder, the Insurer Representative, each Insurer Group Member, the Lessor, the Lessor Parent and the Security Trustee for any reasonable costs and expenses (including reasonable fees and disbursements of legal counsel and other experts employed or retained by such Person) incurred by such Person in connection with any action taken pursuant to paragraph (b) above.

**3.    RENT**

**3.1    Initial Rent**

On or prior to each Delivery Date, the Lessee agrees to pay the Lessor the Initial Rent in Dollars for the Aircraft to be delivered on such Delivery Date.

**3.2    Basic Rent**

In addition, the Lessee agrees to pay the Lessor rent (the **Basic Rent**) for each Aircraft in Dollars with respect to each Rent Period in arrear on each Basic Rent Payment Date occurring during the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Term for such Aircraft, in each case, in an amount calculated in accordance with paragraph (a) through (b) below.

(a)     For all purposes of this Lease, the Basic Rent payable in respect of each Aircraft on each Basic Rent Payment Date for such Aircraft occurring during the Term for such Aircraft shall be equal to the "Basic Rent" set forth in Schedule I to the Lease Supplement for such Aircraft and Basic Rent Payment Date.

(b)     Each instalment of Basic Rent for an Aircraft payable on any Basic Rent Payment Date for such Aircraft shall in all events be in an amount that is equal to the amount payable by the Lessor to the Agent under the Payment Undertaking Agreement in respect of the scheduled Payment Amounts for such Aircraft due on the corresponding Payment Date.

### 3.3     Supplemental Rent

The Lessee shall pay all Supplemental Rent to the Lessor or to such other Person to whom such amount may be owed under the Operative Documents in the currency (whether Dollars or another currency) in which the same is due and owing, and such Supplemental Rent shall be payable within thirty (30) days of demand upon the Lessee (or within such longer period as the Lessor, acting reasonably and having regard to all relevant circumstances (including, without limitation, the timing of any approvals or licenses required from any Government Body of the Government of Registry and/or the jurisdiction of incorporation or formation of the Lessee in order for such payment to be lawfully made) may agree), provided that if any such demand has been made and subsequent to the making of such demand a Material Default, Termination Event or an Event of Default shall occur, any such Supplemental Rent shall be payable forthwith upon the occurrence of such Material Default, Termination Event or Event of Default.  In the event of any failure on the part of the Lessee to pay any Supplemental Rent, the Lessor shall have the same rights, powers and remedies provided for herein or by law or equity or otherwise as in the case of non-payment of Basic Rent.  The Lessee will also pay interest on demand to the recipient entitled thereto, as Supplemental Rent, to the extent permitted by Applicable Laws, at a rate per annum equal to the applicable Post-Default Rate on any part of any instalment of Basic Rent not paid when due for the period from and including the due date thereof to but excluding the date on which the same is paid in full and, in the case of payment to any of the Lessor, the Funder, the Agent, the Insurer Representative, the Security Trustee or any other Person, on any payment of Supplemental Rent payable but not paid when due or demanded by the recipient entitled thereto for the period from and including the due date thereof to but excluding the date on which the same is paid in full.

### 3.4     Manner of Payment

(a)     All Rent and other sums payable hereunder shall be paid by 3:00 p.m. (London time) on the date payment is due, in Dollars (or, in the case of any Supplemental Rent denominated in a currency other than Dollars, in the relevant currency) and in immediately available funds (or such other funds as are from time to time customary for the settlement of international banking transactions in Dollars or other relevant currency in New York City or other relevant jurisdiction of such other currency).  Whenever any payment of Basic Rent shall become due on a day which is not a Business Day, the due date thereof shall be the immediately preceding Business Day, provided always that the amount of Basic Rent shall not be adjusted by reason of such payment being made on such immediately preceding Business Day.

(b)     Whenever any payment (other than a payment of Basic Rent) shall become due on a date which is not a Business Day, or if any such payment is payable on demand and demand is not made on a Business Day or is made on a Business Day but is made outside normal banking hours of the recipient of such demand, demand for such payment shall be deemed to

FILED DATE: 1/11/2023 2:57 PM   2023L000001

have been made on the immediately succeeding Business Day, and if such payment includes any payment of interest (or an amount calculated or determined by reference to interest), the amount payable shall be adjusted accordingly.  All payments of Rent to the Lessor and all other amounts payable hereunder by the Lessee to the Lessor shall be paid to such account as the Lessor may specify from time to time in writing not less than thirty (30) Business Days prior to the date on which the relevant amount is payable.

**3.5     Absolute Obligation**

The obligation of the Lessee to pay Rent hereunder shall be absolute and unconditional as more fully set forth in Clause 11.  To the extent Taxes arise from the leasing of any Aircraft to the Lessee under this Lease which are payable by way of withholding by the Lessee, such Taxes shall be deducted and paid by the Lessee by way of withholding, and the Lessor agrees that the full amount of Rent due under this Lease in respect of an Aircraft shall be the amount of Basic Rent payable in respect of such Aircraft under Clause 3.2 increased by any such Taxes withheld by the Lessee.

**3.6     Associated Rights**

The Lessee hereby agrees to pay and perform all of its obligations under the Operative Documents to which it is a party and further acknowledges and agrees that the payment of Rent hereunder and the performance by the Lessee of its obligations under the other Operative Documents constitute Associated Rights and are secured by and/or associated with the relevant Aircraft and Engines.

**3.7     Assignment of Rent**

Pursuant to the Security Documents, the Lessor has assigned its right to receive Basic Rent and Termination Value hereunder to the Security Trustee, and pursuant to such assignment the Lessor hereby directs, and the Lessee hereby agrees, that all Basic Rent and Termination Value payable to the Lessor hereunder shall be paid directly to the Funder (unless a Material Default, Termination Event or an Event of Default shall have occurred and be continuing and the Insurer Representative or the Security Trustee has given notice to the Funder and the Lessor in which case the Basic Rent and Termination Value shall be paid directly to the Security Trustee).

**4.     LESSOR'S DISCLAIMER OF WARRANTIES; MANUFACTURERS' WARRANTIES**

**4.1     Disclaimer**

Subject to Clause 4.2, the Lessee acknowledges and agrees that (a) each Aircraft is of a size, design, capacity and manufacture selected by and acceptable to the Lessee and (b) the Lessee is satisfied that such Aircraft are suitable for its purposes.  NONE OF LESSOR, LESSOR PARENT, THE FUNDER, THE AGENT, THE SECURITY TRUSTEE, THE INSURER REPRESENTATIVE OR ANY MEMBER OF THE INSURER GROUP SHALL MAKE OR GIVE OR SHALL BE DEEMED TO HAVE MADE OR GIVEN AND HEREBY EXPRESSLY DISCLAIMS ANY REPRESENTATION, WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, AS TO (i) THE AIRWORTHINESS, VALUE, CONDITION, DESIGN, COMPLIANCE WITH SPECIFICATIONS OF, OPERATION OF, OR THE QUALITY OF THE MATERIAL OF OR WORKMANSHIP IN, OR TITLE TO, OR ANY DEFECT IN, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, (ii) THE MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE OF ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, OR AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT OR THE LIKE,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

OR ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (iii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT WITH RESPECT TO ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, WHETHER OR NOT IN STRICT OR ABSOLUTE LIABILITY OR ARISING FROM THE NEGLIGENCE OF LESSOR, THE FUNDER, THE AGENT, THE SECURITY TRUSTEE OR THE INSURER REPRESENTATIVE, ACTUAL OR IMPUTED, (INCLUDING ANY STATUTORY WARRANTY OR CONDITION UNDER THE LAWS OF THE UNITED STATES, ANY STATE THEREOF, THE GOVERNMENT OF REGISTRY OR THE JURISDICTION OF INCORPORATION OR FORMATION OF LESSEE) OR (iv) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF, OR DAMAGE TO, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING, FOR ANY LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES THEREFROM, IT BEING UNDERSTOOD THAT ALL SUCH RISKS, AS BETWEEN LESSEE AND SUCH OTHER PERSONS, ARE TO BE BORNE BY LESSEE, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE OPERATIVE DOCUMENTS.  NONE OF THE INSURER REPRESENTATIVE, ANY MEMBER OF THE INSURER GROUP, THE FUNDER, THE AGENT NOR THE SECURITY TRUSTEE SHALL BE LIABLE OR OTHERWISE RESPONSIBLE IN ANY MANNER FOR ANY REPRESENTATION OR WARRANTY MADE BY THE LESSOR HEREUNDER OR UNDER ANY OTHER OPERATIVE DOCUMENT.

**4.2    Manufacturers' Warranties**

None of the provisions of this Clause 4 or any other provision of this Lease shall be deemed to amend, modify or otherwise affect the representations, warranties or other obligations (express or implied) of the Manufacturer or the Engine Manufacturer or any contractor, subcontractor or supplier of the Manufacturer or the Engine Manufacturer with respect to any Aircraft, any Airframe, any Engine or any Parts, forming a part of or installed on or attached to any Aircraft, any Airframe or any Engine or to release the Manufacturer or the Engine Manufacturer or any such contractor, subcontractor or supplier from any such representation, warranty or obligation.  So long as no Event of Default or Termination Event shall have occurred and be continuing, the Lessee, or any Permitted Sub-Lessee leasing an Aircraft from the Lessee, shall have the benefit of and shall be entitled to enforce (as it shall deem appropriate), either in its own name or in the name of the Lessor (at the cost of the Lessee and in respect of which enforcement the Lessee hereby agrees to indemnify the Lessor) for the use and benefit of the Lessee (or the relevant Permitted Sub-Lessee) during the relevant Term by way of revocable license (provided that the Lessor shall not revoke such license until an Event of Default or Termination Event occurs and is continuing and shall reinstate such license in the event the Event of Default or Termination Event is cured), any and all dealer's, manufacturer's contractor's, or subcontractor's credits, guarantees, indemnities, warranties or other benefits, if any, available to the Lessor in respect of any Aircraft, any Engine and/or any Part, provided that neither the Lessee nor any Permitted Sub-Lessee shall be entitled to modify, amend or otherwise alter any of the foregoing without the prior written consent of the Security Trustee except in circumstances where such modification, amendment or alteration could not reasonably be expected to have a Material Adverse Effect in relation to the Lessor or any Secured Party, and the Lessor agrees at the Lessee's expense to do, execute and deliver such further acts, deeds, matters or things as may be reasonably requested by the Lessee to enable the Lessee to obtain customary warranty service furnished for any Aircraft, any Engine and/or Part by such dealer, manufacturer, contractor or subcontractor or any supplier as aforesaid or to exercise any other rights in relation to any of the foregoing benefits, and any moneys recovered from such enforcement shall be promptly paid to, and retained by, the Lessee (or, if directed by the Lessee, any Permitted Sub-Lessee), provided further, that if a Material Default, Termination Event or Event of Default shall have occurred and be continuing, any such moneys payable to the Lessee or Permitted Sub-Lessee shall instead be paid to the Lessor as security for, and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

applied to, the obligations of the Lessee Obligors under the Operative Documents in such order as the Lessor shall elect and, at such time as no Material Default, Termination Event or Event of Default shall be continuing, to the extent not so applied, promptly paid to the Lessee.  The Lessee hereby acknowledges the provisions of the Purchase Assignment, the Engine Warranties Agreement and each Security Agreement and of the security interests granted to the Security Trustee in respect of the Lessor's rights, title and interests in and to the Purchase Agreement and the Engine Agreement created by the Operative Documents.

**5.**      **PURCHASE OPTIONS; RETURN OF AIRCRAFT**

**5.1**     **Purchase Options**

Provided that the leasing of the relevant Aircraft under this Lease has not otherwise terminated, and no Material Default, Termination Event or Event of Default has occurred and is continuing, the Lessee may on any Basic Rent Payment Date for an Aircraft prior to or including the scheduled end of the Term for such Aircraft, by thirty (30) days' prior written notice (or such shorter period of notice as the Lessor the Insurance Representative and the Security Trustee may agree) delivered to the Lessor (with copies to the Security Trustee, the Insurer Representative and the Agent) (which notice shall be irrevocable), elect for it or a nominee approved by the Insurer Representative (such approval not to be unreasonably withheld) (an **Approved Nominee)** to purchase such Aircraft on such date for a purchase price equal to the Termination Value in respect of such Aircraft on such date, plus any Rent in respect thereof then due and payable plus, if the purchase of the Aircraft occurs on the Final Maturity Date, ten Dollars (US$10).

**5.2**     **Purchase Procedure; Termination**

In connection with the purchase of an Aircraft pursuant to Clause 5.1, upon indefeasible payment to the Lessor of the Termination Value in respect of such Aircraft on such date and any Rent then due in respect of such Aircraft, the Lessor will transfer to the Lessee or its Approved Nominee all of the Lessor's right, title and interest in and to such Aircraft (including any warranties relating thereto and assigned to the Lessor pursuant to the relevant Purchase Assignment and the relevant Engine Warranties Agreement), in "AS-IS, WHERE-IS" condition, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, except that the Lessor will warrant to the Lessee or its Approved Nominee that it has such title to such Aircraft as was delivered to the Lessor by the Manufacturer on the Delivery Date for such Aircraft and the lawful right to transfer such Aircraft in accordance with the terms hereof and that such Aircraft is free of all Lessor Liens attributable to it.  THE WARRANTY CONTAINED IN THE IMMEDIATELY PRECEDING SENTENCE WILL BE MADE BY LESSOR IN LIEU OF AND IN SUBSTITUTION FOR, AND LESSEE HEREBY WAIVES, RELEASES AND RENOUNCES, ALL OTHER EXPRESS OR IMPLIED WARRANTIES, CONDITIONS OR REPRESENTATIONS WITH REGARD TO THE CONDITION OR TITLE OF THE RELEVANT AIRCRAFT (INCLUDING SUCH AS TO THE STATE, DESCRIPTION, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT), AND ALL OBLIGATIONS AND LIABILITIES OF LESSOR HEREUNDER WITH RESPECT TO CONSEQUENTIAL DAMAGES THEREFROM, AND ALL RIGHTS, CLAIMS AND REMEDIES OF LESSEE, EXPRESS OR IMPLIED, ARISING OUT OF LAW OR OTHERWISE WITH RESPECT THERETO THE USE OR OPERATION OF SUCH AIRCRAFT AND ANYTHING GIVEN OR SOUGHT TO BE IMPLIED FROM ANYTHING SAID OR WRITTEN IN THE NEGOTIATIONS BETWEEN THE PARTIES HERETO OR THEIR REPRESENTATIVES PRIOR TO ENTERING INTO THIS LEASE WITH RESPECT THERETO. ANY STATUTORY OR OTHER WARRANTY, CONDITION, DESCRIPTION OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE STATE, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT IS EXPRESSLY EXCLUDED, INCLUDING BUT NOT LIMITED TO:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a)     ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS;

(b)     ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE;

(c)     ANY OBLIGATION OR LIABILITY WITH RESPECT TO ANY ACTUAL OR ALLEGED INFRINGEMENT OF PATENTS, LICENSES OR THE LIKE, OR ANY OTHER INTELLECTUAL PROPERTY;

(d)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM EACH PARTY'S OR ITS ASSIGNS' NEGLIGENCE, ACTUAL OR IMPUTED; AND

(e)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO SUCH AIRCRAFT, FOR LOSS OF USE, REVENUE OR PROFIT WITH RESPECT TO LESSEE OR FOR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF WHATEVER DESCRIPTION.

In connection with such transfer, the Lessee shall prepare and the Lessor shall execute, all in form and substance satisfactory to the Lessee and/or in a form recordable in the Government of Registry, a bill of sale evidencing each such transfer, a termination of this Lease in respect of such Aircraft and such other documents (including the discharge of the Lien of the Aircraft Mortgage in respect of such Aircraft and the other Security Documents and opinions of counsel) as the Lessee may reasonably request, all at the expense of the Lessee.  Upon a purchase of an Aircraft by the Lessee or its nominee pursuant to Clause 5.1 and Clause 5.2 or Clause 14, the leasing of such Aircraft under this Lease shall terminate.

**5.3     Return of Aircraft; Condition Upon Return**

(a)     Unless the Lessee or its nominee shall have acquired title to an Aircraft pursuant to Clause 5.2 or Clause 14, the Lessee will, upon the termination or expiration of this Lease with respect to such Aircraft (other than following an Event of Loss with respect to such Aircraft), at its own risk and expense, cause the Airframe for such Aircraft, together with the Manuals and Technical Records therefor, to be delivered to the Lessor pursuant to Clause 5.6, fully equipped with two Engines, duly installed thereon (or one or two Replacement Engines of the same manufacturer or of another manufacturer, of the same or an improved model (it being understood that such engines on such Aircraft shall be of the same or an improved model and suitable for installation and use on the Airframe for such Aircraft but having a value and remaining useful life at least equal to, and being in as good operating condition as, the Engines leased by the Lessee for such Aircraft)), duly installed thereon.

(b)     At the time of such return, (i) such Aircraft shall have a valid Certificate of Airworthiness, (ii) the Airframe and Engines or engines for such Aircraft shall be free and clear of all Liens (other than any the Lessor Liens, Funder Liens or other Liens arising under any Operative Document), (iii) the Airframe and Engines or engines for such Aircraft shall be in as good operating condition, and in proper operating condition for scheduled revenue passenger flights as provided in this Clause 5.3, Clause 7.2 and Clause 8 and (iv) such Aircraft shall, except as otherwise provided herein, be in substantially the same configuration and have installed (A) the same or equivalent avionics and other equipment, safety equipment and appurtenances as when such Aircraft was originally delivered to the Lessee hereunder and (B) all other equipment financed on the Delivery Date for such Aircraft (it being agreed that the records of the Manufacturer, including the Purchase Agreement and the Manuals and Technical Records, shall be prima facie evidence thereof).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     Upon such return the Airframe for such Aircraft shall have cleared a recently completed major check as would be required to clear such Aircraft for at least the next 12 months and such Engines and all major components for such Aircraft shall have at least 50% of the hours, cycles or time (whichever is more limiting) in each case remaining until the next anticipated engine refurbishment, overhaul or inspection requiring removal.  At the time of such return, the Lessee shall also at its own expense:

   (i)     remove or paint over all names, insignia and other indications of the Lessee or any Permitted Sub-Lessee from the exterior and interior of such Aircraft in a good, workman-like manner;

   (ii)    transfer or cause to be transferred, or reassign or cause to be reassigned, to the Lessor to the extent then possible all assignable and remaining warranties and performance guarantees obtained by the Lessee or any Permitted Sub-Lessee with respect to such Aircraft, together with all documents related thereto that may be required to effect such transfer or reassignment; and

   (iii)    if requested by the Lessor, obtain an export certificate of airworthiness (if available) for, and obtain or submit any applicable approval, permit, license or report for the re-export of, such Aircraft from the Civil Aviation Authority and deregister such Aircraft from the registry maintained by the Government of Registry.

(d)     If the Lessee fails to remove or procure the removal by the Permitted Sub-Lessee of the registration or to obtain the export certificate of airworthiness or such re-export approval, permit or license as provided above, the Lessor may do so at the cost and expense of the Lessee and, in such event, the Lessee shall upon demand reimburse the Lessor for the cost thereof.  The Lessee hereby irrevocably appoints the Lessor, upon such failure of the Lessee, as its true and lawful attorney-in-fact, with full power of substitution, in the Lessee's name or otherwise, to carry out the provisions of this Clause 5.3 and to take any action and to execute and/or file any instrument necessary to accomplish the purposes of this Clause 5.3.

(e)     If any other of the foregoing requirements shall not be satisfied at the time of return, the Lessee shall (at the Lessor's election) either promptly remedy any deficiency or make a payment fully compensating the Lessor for the remedy of such deficiency.  If requested by the Lessor, the Lessee shall perform or procure the performance of (at the sole cost and expense of the Lessee):

   (i)     a complete videotape borescope inspection of such Engines in accordance with Engine Manufacturer's maintenance manual demonstrating to the Lessor's satisfaction that such Engines (or any module) are not unserviceable or beyond serviceable limits (or serviceable with limitations) under such manual; and

   (ii)    a flight test demonstration, at the Lessee's expense and during normal business hours, for a period of not more than two hours at any airport referred to in Clause 5.4.  Personnel designated by the Lessor may participate as observers in such demonstration flight and a pilot selected by the Lessor may accompany the Lessee's pilot and occupy the observer's seat during such demonstration.  The purpose of the demonstration flight will be to ascertain that all systems and their components are functioning satisfactorily and in the event they are not so functioning they will be corrected by the Lessee or provision made therefor by the Lessee.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**5.4   Place of Redelivery; Storage Upon Return**

Each Aircraft shall be returned to an airport in Europe designated by the Lessor, and the Lessee shall retain the risk of loss for such Aircraft, and the related Airframe, Engines and Parts, until they are returned in conformity with the provisions of this Lease at such airport.

**5.5   Return of Engines**

In the event that any engine not owned by the Lessor shall be delivered with any returned Airframe as set forth in Clause 5.3 (which engine must meet the requirements of a Replacement Engine, the Lessee shall, concurrently with such delivery, at its own expense, furnish the Lessor with a bill of sale covering such engine, including full warranty as to title, and thereupon the Lessor will transfer to the Lessee, on an "as-is, where-is" basis, without recourse or warranty (except as to the absence of the Lessor Liens, Funder Liens or other Liens arising under or in connection with any Operative Document), all of the Lessor's right, title and interest in and to any Engine constituting part of the relevant Aircraft but not installed on such Airframe at the time of the return of such Airframe.  After such conveyance, the substituted engine shall be deemed an "Engine" as defined herein and shall meet the conditions set forth in Clause 5 hereof.

**5.6   Fuel, Manuals**

Upon the return of each Aircraft, each fuel tank and oil tank shall contain the same quantity of fuel or oil as was contained in the fuel and oil tanks when such Aircraft was delivered to the Lessee on the Delivery Date for such Aircraft.  Upon the return of each Aircraft, the Lessee shall deliver to the Lessor at least one original or certified copy of all logs, manuals and data, and inspection, modification and overhaul records (including all job cards) required to be maintained with respect to such Aircraft under the applicable rules and regulations of the Civil Aviation Authority (collectively, **Manuals and Technical Records**) and such other additional records as would be necessary for the FAA to issue an unrestricted certificate of airworthiness, passenger transport category, for such Aircraft and if any thereof are not in English, certified English translations thereof.

**6.   LIENS**

The Lessee will not (and shall procure that no sublessee will) directly or indirectly create, incur, assume, suffer, permit or allow to exist any Lien on or with respect to any Aircraft or any Airframe or any Engine or any Part, title thereto or any interest therein or in or to this Lease or any other Operative Document or any of its rights hereunder or thereunder, except Permitted Liens.  The Lessee will promptly, at its own expense, take such action as may be necessary duly to discharge or satisfy (by bonding or otherwise) any Lien that is not a Permitted Lien if the same shall arise at any time.

**7.   REGISTRATION, MAINTENANCE, OPERATION AND POSSESSION**

**7.1   Registration**

The Lessee shall, at its sole cost and expense, upon the delivery of an Aircraft, cause such Aircraft to be duly certified as to airworthiness in accordance with the law of the Government of Registry and to be duly registered with the Civil Aviation Authority in the name of the Lessor as owner of such Aircraft and the relevant Initial Permitted Sub-Lessee as operator of such Aircraft, the extent permitted by Applicable Law.  Unless otherwise provided in this Lease, the Lessee shall not take any action, or fail to take any action, which action or failure might cause such airworthiness certification and registration to cease to be in full force and effect or to be revoked, withdrawn or suspended. Without limiting the generality of the foregoing, the Lessee at all times during the Term for an

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Aircraft shall ensure, at the Lessee's sole cost and expense, that prior to the expiration thereof, the Certificate of Airworthiness and Certificate of Registration are renewed or maintained by the Civil Aviation Authority.  Without limiting the generality of Clause 11, the Lessor shall take, and shall co-operate with the Lessee to take, at the Lessee's sole cost and expense all actions necessary to permit and maintain such registration and to permit the Lessee to receive copies of all correspondence and communications to and from the Civil Aviation Authority.  Except as expressly permitted by the Operative Documents, the Lessee shall not, during the Term for an Aircraft, take any action which (a) may cause deregistration of such Aircraft from the Civil Aviation Authority or (b) the removal of the Lien of the Aircraft Mortgage in respect of such Aircraft from the Civil Aviation Authority.

**7.2    Maintenance**

The Lessee shall, at the Lessee's cost and expense:

(a)    establish, maintain or cause the establishment and maintenance of a maintenance programme for Boeing model 737 - 8 aircraft and for CFM model LEAP-1B27 engines (and Replacement Engines), as the case may be, each conforming with the Manufacturer's and Engine Manufacturer's maintenance planning document and approved by the Civil Aviation Authority (collectively, the **Approved Maintenance Programme**), and ensure that all service, inspection, maintenance, modification, storage, repair and overhaul of each Aircraft is performed in accordance with such Approved Maintenance Programme, by the Lessee or by the Permitted Sub-Lessee if so approved by the Civil Aviation Authority or by a maintenance facility approved by the Civil Aviation Authority (the **Approved Maintenance Facility**), provided that (i) all Manuals and Technical Records shall be kept in the English language, (ii) the Lessee shall submit the Approved Maintenance Programme to the Lessor, the Insurer Representative and Security Trustee on or prior to the Delivery Date for each Aircraft and shall advise the Lessor, and the Insurer Representatve, upon the their reasonable request, of any material subsequent changes to such Approved Maintenance Programme by issuing revisions thereof approved by the Civil Aviation Authority to the Lessor, Security Trustee, the Insurer Representative and the Agent and (iii) upon the return of any Aircraft pursuant to the terms hereof, such Aircraft shall be capable of qualifying immediately for the issuance of a Certificate of Airworthiness issued by the FAA for commercial passenger transport;

(b)    keep each Airframe, each Engine and all Parts or procure each of the same are kept in good operating and serviceable condition and repair, and in such condition (including maintenance of the Manuals and Technical Records) as necessary to enable all applicable airworthiness certifications of each Aircraft to be maintained in good standing at all times under the Applicable Laws of the Government of Registry except when such Aircraft is undergoing service, maintenance, modification, overhaul, testing and/or repairs as required or permitted hereunder;

(c)    promptly furnish the Lessor, upon request, with such information as may be required to enable the Lessor to file any report required to be filed by the Lessor with any Government Body because of the Lessor's ownership of each Aircraft or the Lessor's lease of each Aircraft hereunder, as the case may be;

(d)    procure that each Airframe, each Engine and each Part is maintained, inspected serviced, stored, repaired, modified and overhauled (i) to comply with all warranty requirements pursuant to the Purchase Agreement or the Engine Agreement, as the case may be, (ii) in accordance with Manufacturer's and Engine Manufacturer's repair manuals, (iii) pursuant to the Approved Maintenance Programme and (iv) in a manner that does not discriminate against any Aircraft, any Airframe or any Engine when compared to the highest applicable standard (including the prompt performance of Service Bulletins, mandatory Manufacturer's

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and Engine Maufacturer's directives and Airworthiness Directives) applied by the Lessee or the Permitted Sub-Lessee with regard to similar aircraft owned, operated or leased by the Lessee or the Permitted Sub-Lessee;

(e)     procure and maintain in effect with Manufacturer and Engine Manufacturer a revision service, if any, for all Manuals and Technical Records, and maintain the Manuals and Technical Records in such condition to satisfy the standards of the Civil Aviation Authority for a Certificate of Airworthiness for commercial passenger/cargo transport;

(f)     procure that for each Aircraft, all applicable mandatory alert Service Bulletins issued by Manufacturer and Engine Manufacturer shall be accomplished, and, in addition, all other Service Bulletins the Lessee or the Permitted Sub-Lessee adopts during the Term for such Aircraft for any similarly operated aircraft of the same model in the Lessee's or the Permitted Sub-Lessee's fleet, it being the intent of the parties that no Aircraft shall be discriminated against in any manner in Service Bulletin compliance and other maintenance matters; and

(g)     for each Aircraft, comply with all applicable Airworthiness Directives issued by the Civil Aviation Authority and which become due during the Term for such Aircraft or which at the time of redelivery of such Aircraft to the Lessor pursuant to the terms hereof have been issued by the Civil Aviation Authority or made mandatory by EASA upon operators regarding Boeing model 737 - 8 aircraft, CFM model LEAP-1B27 engines and any Part, as the case may be, and which have become due.

Neither the Lessor nor any Secured Party shall bear responsibility or liability for any grounding or suspension of operations of any Aircraft resulting from Airworthiness Directives, Service Bulletins, or any repairs or modifications to any Aircraft by the Lessee or any other Person.

**7.3     Operation**

Subject to Clause 7.5, the Lessee undertakes that no Aircraft will be maintained, used, insured or operated:

(a)     in violation of the Certificate of Airworthiness or any license or registration of, or with, any Government Body having jurisdiction over the Lessee (or any Permitted Sub-Lessee) or such Aircraft;

(b)     for any primary purpose other than the commercial transportation of passengers and/or cargo, provided that cargo shall be carried only in the cargo hold of such Aircraft;

(c)     in violation of the Approved Maintenance Programme or any warranty requirements pursuant to the Purchase Agreement, Engine Agreement or any other agreement setting forth any other material warranties with respect to such Aircraft, the related Airframe, Engines or Parts;

(d)     for any purpose or in any manner for which it is not designed or reasonably suited or outside the tolerances and limitations for which such Aircraft, the related Airframe or any related Engine was designed in accordance with the Approved Maintenance Program, Applicable Laws and applicable material warranties;

(e)     at any time while the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof are not in full force and effect;

(f)     for any purpose or in any manner inconsistent with the terms of, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(g)     in any place inconsistent with the terms of, excluded from coverage by, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof (or outside any geographical limit imposed by the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof, including without limitation, in or through any recognized or (in the Lessor's reasonable opinion) threatened area of hostilities unless fully covered by war risk and allied perils insurance in amounts and scope required by this Lease; or

(h)     in violation of any Applicable Law of or by any Government Body having jurisdiction over the Lessor or the Lessee or any Secured Party or any Aircraft or any mandatory requirement of Manufacturer, Engine Manufacturer or supplier, except for unintentional minor or nonrecurring violations which are cured promptly and which:

   (i)     do not involve any loss or reduction of coverage under any of the Aircraft Insurances or any Aircraft Reinsurances required by the terms of Clause 10;

   (ii)    do not involve any material risk of the sale, forfeiture or loss of or damage to such Aircraft or any interest therein;

   (iii)   do not involve any material risk of the Lessor or any Secured Party being subject to civil penalties;

   (iv)    do not involve any risk of criminal penalties being imposed against or upon the Lessee, the Lessor, the Lessor Parent or any Secured Party, which in the case of the Lessor or the Lessee shall be a material risk; and

   (v)     do not subject the Lessor, the Lessee or the Permitted Sub-Lessee to any fine or penalty or enforcement action which would materially adversely affect the business or operations of the Lessor, the Lessee, the Permitted Sub-Lessee or any Guarantor, the operation of any Aircraft or the rights of the Lessee, the Lessor or any Secured Party hereunder or under any other Operative Document,

   provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party or have any material risk of the sale or forfeiture of any Aircraft, or of materially adversely affecting the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder, and if any Applicable Law requires alteration of any Aircraft, the Lessee will conform thereto or obtain conformance therewith at no cost or expense to the Lessor or any Secured Party and will maintain such Aircraft in proper operating condition under such Applicable Law, provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party, have any material risk of the sale or forfeiture of any Aircraft or any Engine, or adversely affect the rights of the Lessor or any Secured Party hereunder or under any other Operative Documents or the obligations of the Lessee hereunder.

Further, the Lessee undertakes that:

   (i)     all debts, costs, Losses, liabilities, premiums, calls, contributions, penalties, landing fees, overflight and navigation charges (including Eurocontrol fees), dues, tolls, charges, fines, recoveries or other expenses with respect to any Aircraft shall be duly and punctually paid and discharged during the Term, provided that the Lessee may in good faith diligently contest the validity or application of any of the foregoing in

FILED DATE: 1/11/2023 2:57 PM   2023L000001

any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of the sale of forfeiture of any Aircraft, or adversely affecting the rights of the Lessor or any Secured Party hereunder or under any of the other Operative Documents or the obligations of the Lessee hereunder or any risk of any criminal penalties or criminal liability being imposed, and upon reasonable request by the Lessor, the Insurer Representative or the Security Trustee shall confirm to such Person's reasonable satisfaction that such action has been taken;

(ii)     no alteration in or modification or addition to any Airframe, any Engine or any Part, or any removal of any Engine or any Part from the Aircraft, or installation on or attachment to any Airframe, any Engine or any Part of anything not being part of any Aircraft on the Delivery Date shall occur unless expressly permitted by this Lease, including under Clause 8.4; and

(iii)    it shall not and shall procure that any Permitted Sub-Lessee shall not cause or permit to be done anything regarding any Airframe, any Engine or any Part the effect of which may be reasonably expected to result in such Airframe, such Engine or such Part being requisitioned for title or arrested or otherwise to jeopardize the interests of the Lessor and the Secured Parties in and to such Airframe, such Engine or such Part.

## 7.4     Possession

(a)     Subject to Clauses 7.5, 8 and 9, the Lessee shall not and shall procure that no Permitted Sub-Lessee shall, without the prior written consent of the Insurer Representative and the Security Trustee (which consent may be withheld in their sole discretion), sublease (whether directly, under a Dry Lease or Wet Lease), or otherwise in any manner deliver, transfer or relinquish possession of any Airframe, any Engine or any Part to any Person or firm or install any Engine, or permit any Engine to be installed, on any airframe other than the associated Airframe, provided, however, that (subject to Clauses 7.5, 8 and 9) so long as no Termination Event or Event of Default shall have occurred and be continuing, the Lessee may, without the prior written consent of the Insurer Representative or the Security Trustee:

(i)     deliver or permit the delivery of possession of any Airframe, any Engine or any Part (A) to the manufacturer thereof for testing or other similar purposes or (B) to an Approved Maintenance Facility for service, repair, maintenance or overhaul work on such Airframe, such Engine, such Part or any part thereof or for alterations or modifications in or additions to such Airframe, such Engine or such Part to the extent required or permitted by the terms of Clause 8.4, but in any event only in compliance with the Approved Maintenance Programme and Clause 7.2;

(ii)    install or permit the installation of an Engine for any reason on another airframe owned by the Lessee free and clear of all Liens, except (A) Permitted Liens and except those that apply only to the engines (other than the Engines), appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment (other than Parts) installed on such airframe (but not to such airframe as an entirety); and (B) mortgage liens or other security interests, but only if the holder of such mortgage lien or other security interest expressly agrees that such Engine shall not become subject to the Lien of such mortgage or security interest, notwithstanding the installation thereof on such airframe;

(iii)   install or permit the installation of an Engine for any reason on an airframe owned or operated by the Lessee or an Approved NAS Sub-Lessee (while such Approved

FILED DATE: 1/11/2023 2:57 PM   2023L000001

NAS Sub- Lessee is leasing the Engine from the Lessee pursuant to a Permitted Sub-Lease) leased under a lease unrelated to this Lease to the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) or purchased by the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) subject to a conditional sale or other security agreement, provided, however, that in any such case the Lessee shall provide written assurance reasonably satisfactory to the Lessor and the Security Trustee that the rights, title and interests of the Lessor and the Secured Parties in such Engine under the Operative Documents will not be derogated in any material manner as a result thereof;

(iv)    temporarily install an engine on an Airframe which does not satisfy the requirements of Replacement Engine; and

(v)    Wet Lease an Aircraft for a term not to exceed the lesser of six (6) months and the remainder of the Term for such Aircraft,

provided, in each case, that the rights of any transferee who receives possession by reason of a transfer permitted by this Clause 7.4 (other than the transfer of an Engine which is deemed an Event of Loss) SHALL BE EXPRESSLY SUBJECT AND SUBORDINATE TO ALL THE TERMS OF THIS LEASE AND THE OTHER OPERATIVE DOCUMENTS, including the Lessor's and the Secured Parties' rights to a repossession pursuant to Clause 14 hereof, to terminate and avoid this Lease or other transfer upon such repossession and to require the Lessee or other transferee to forthwith deliver any Airframe and/or any Engine subject to this Lease or other transfer upon repossession, and the Lessee shall remain primarily liable hereunder for the performance of all of the terms of this Lease to the same extent as if such transfer had not occurred.

(b)    No relinquishment of possession of any Airframe, any Engine or any Part shall affect in any way the registration of any Aircraft or discharge or diminish any of the Lessee's obligations hereunder or under any of the other Operative Documents or constitute a waiver of the Lessor's or any Secured Party's rights or remedies hereunder or under any of the other Operative Documents.

(c)    The Lessor agrees, for the benefit of the Lessee (and any Permitted Sub-Lessee) and for the benefit of any mortgagee or other holder of a security interest in any engine (other than an Engine) owned or leased by the Lessee (or any Permitted Sub-Lessee), any lessor of any engine (other than an Engine) leased to the Lessee (or any Permitted Sub-Lessee) and any conditional vendor of any engine (other than an Engine) purchased or leased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale agreement or any other security agreement, that no interest shall be created hereunder in any engine so owned, leased or purchased and that none of the Lessor, Security Trustee nor their respective successors or assigns will acquire or claim, as against the Lessee (or any Permitted Sub-Lessee) or any such mortgagee, lessor or conditional vendor or other holder of a security interest or any successor or assignee of any thereof, any right, title or interest in such engine as the result of such engine being installed on any Airframe, provided, however, that such agreement of the Lessor shall not be for the benefit of any lessor of or secured party in respect of any airframe (other than an Airframe) leased to the Lessee (or any Permitted Sub-Lessee) or purchased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale or other security agreement or for the benefit of any mortgagee of or any other holder of a security interest in an airframe (other than an Airframe) owned by the Lessee (or any Permitted Sub-Lessee), unless such lessor, conditional vendor, other secured party or mortgagee has expressly agreed (which agreement may be contained in such lease, conditional sale or other security

FILED DATE: 1/11/2023 2:57 PM   2023L000001

agreement or mortgage) that neither it nor its successors or assigns will acquire, as against the Lessor, the Security Trustee or any other Secured Party any right, title or interest in an Engine as a result of such Engine being installed on such airframe.

(d)     The Lessee will, upon reasonable request, furnish to the Insurer Representative, the Security Trustee and the Agent prompt notice of any transfer or relinquishment of possession of any Aircraft permitted under this Clause 7.4 (other than Clause 7.4(a)), and if requested by the Insurer Representative, the Security Trustee or the Agent a copy of the documents relating to such transfer or relinquishment of possession, duly certified by an officer's certificate of the Lessee being a complete and correct copy of all documents so provided.

## 7.5     Dry Leasing

(a)     The Lessee shall not enter into any sublease (whether by Dry Lease or any other similar arrangement) of any duration with respect to any Aircraft (including any Airframe and any Engines or engines installed thereon) with any Person without the prior written consent of the Insurer Representative and the Security Trustee (each of which may withhold its consent in its sole discretion) other than:

(i)      the Initial Permitted Sub-Lease; or

(ii)     another Permitted Sub-Lease with a Permitted Sub-Lessee.

(b)     Other than in respect of the Initial Permitted Sub-Lease, any such sublease shall be subject to the following conditions and requirements:

(i)      any such sublease shall be made expressly subject and subordinate to all the terms of this Lease and the other Operative Documents, and shall not adversely affect the priority or perfection of the Lien of the Security Documents, the enforceability of the Collateral or the right of the Lessor or the Security Trustee to avoid such sublease and to repossess such Aircraft, the associated Airframe or the associated Engines in connection with the exercise of any remedies upon any Termination Event or Event of Default;

(ii)     the Lessee shall remain primarily liable hereunder for the performance of all terms and conditions of this Lease to the same extent as if such sublease had not occurred;

(iii)    all terms and conditions of this Lease and the other Operative Documents shall remain in full force and effect;

(iv)     prior to entering into any such sublease, the Lessee shall provide to the Lessor and the Secured Parties certificates of insurance and brokers' undertakings from the Lessee's insurance brokers or an authorized representative of the Lessee's insurers reflecting that the Aircraft Insurances required to be maintained pursuant to Clause 10 are in full force and will not be adversely affected due to the sublease;

(v)      such sublease shall (A) provide that such Aircraft, and the associated Airframe, Engines and Parts, be maintained in accordance with the Approved Maintenance Programme, and (B) be governed by English law or another jurisdiction acceptable to the Security Trustee and the Insurer Representative, and (C) be with a Permitted Sub-Lessee;

(vi)     such sublease shall not permit any further sub-leasing and the term of the sublease shall not exceed the remaining Term with respect to such Aircraft;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(vii)　either (A) no re-registration of such Aircraft shall occur as a result of entering into such sublease or (B) if entering into such sublease shall involve the re-registration of such Aircraft, the proposed state of registration of such Aircraft shall be Norway, Ireland, the United Kingdom or shall have been approved by the Insurer Representative and the Security Trustee in writing (which approval may be withheld in their sole discretion) and shall in each case be subject to the following:

(A)　under the Applicable Laws of the proposed state of registration of such Aircraft:

I.　there shall exist no rights in favour of the Lessee or the relevant sublessee or any other Person that would, upon bankruptcy or other default by such sublessee, prevent the deregistration, re-export and return of such Aircraft to the Lessor (or upon the enforcement of the Lien of the Security Documents, the Security Trustee) in accordance with and as permitted by the terms of Clause 5 upon the exercise by the Lessor of its remedies under Clause 14;

II.　the Lessor shall be recognized as the owner of such Aircraft and the Secured Parties' Lien over the Aircraft pursuant to the Security Documents shall be recognised;

III.　there shall be no impediment (as at the date of re-registration) to the exercise of the rights and remedies provided for in this Lease or in any other Operative Document in respect of such Aircraft and the practical realisation by the Lessor and the Secured Parties of the benefits of this Lease and the Security Documents (to the extent relating to the Aircraft and this Lease) will be available under such Applicable Law;

IV.　the rights of the Lessor under this Lease and the rights and Liens of the Security Trustee and the Secured Parties under the Security Documents, in each case, in respect of such Aircraft, shall be enforceable in the jurisdiction of re-registration and, if requested by the Security Trustee or the Insurer Representative, the Lessor shall provide a new local law mortgage over the Aircraft in favour of the Secured Parties;

V.　all filings (including all filings required by the Insurer Representative or the Security Trustee pursuant to the Cape Town Convention), recordations and other actions necessary in order to establish, protect and perfect the Lessor's title to the Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Paragraph IV above) shall have been made;

VI.　no Secured Party shall be required to qualify to do business in such jurisdiction as a result of such re-registration;

(B)　such re-registration shall not result in any Tax for which the Lessee is not required to indemnify;

(C)　the insurance and any reinsurance required in respect of such Aircraft by Clause 10 shall be in full force and effect subsequent to such re-registration and the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee evidence of such insurance reasonably satisfactory to the Insurer Representative and the Security Trustee;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(D)     no Liens (other than Permitted Liens) shall arise as a result of such re-registration;

(E)     all filings, registrations, recordations and other actions necessary under the Applicable Laws of the jurisdiction in which such Aircraft is to be registered, in order to establish, protect and perfect the Lessor's title to such Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Clause 7.5(vii)(A)(IV) above), shall be made;

(F)     the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee an opinion of independent counsel in the state of such re-registration addressed to the Lessor, the Security Trustee, the Agent and the Insurer Representative reasonably satisfactory in form and substance to the Insurer Representative and the Security Trustee; and

(G)     all reasonable costs, expenses, fees and other charges in connection with any such re-registration shall be paid by the Lessee;

(viii)   the Lessee shall (A) at least thirty (30) days prior to such sublease taking effect, give the Lessor, the Security Trustee, the Agent and the Insurer Representative written notice of such proposed sublease together with a copy of the proposed agreement (which agreement must be reasonably acceptable in form and substance to the Lessor, the Security Trustee and the Insurer Representative), (B) deliver a copy of the approved executed agreement to the Security Trustee, the Lessor, the Agent and the Insurer Representative and assign the Lessee's interests in such agreement to the Lessor, who in turn shall assign such interests to the Security Trustee, as a perfected first-priority security interest for the Lessee's obligations hereunder and cause the Lessee to consent to such assignment and to the Lessor's further assignment of such sublease to the Security Trustee for the benefit of the Secured Parties and (C) provide evidence to the Security Trustee, the Agent and the Insurer Representative that registrations have been made with the International Registry with respect to the International Interests, if any, created pursuant to such sublease and the assignments of International Interests, if any, created pursuant to the assignments;

(ix)     the Lessee shall, at least ten (10) days prior to such sublease taking effect, deliver to the Lessor, the Security Trustee, the Agent and the Insurer Representative proposed forms of (A) an acknowledgment by the sublessee recognizing all rights, title and interests of the Lessor, the Security Trustee and the other Secured Parties under the Operative Documents, and (B) a written opinion of counsel in the country of citizenship or incorporation or formation of the relevant sublessee confirming that all steps necessary to protect the rights, title and interests of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents (including, without limitation, registration of all interests, assignments and subordinations with the International Registry) have been taken or will be taken in a manner reasonably satisfactory to the Secured Parties, each in form and substance reasonably satisfactory to the Lessor, the Agent, the Insurer Representative and the Security Trustee, and on or prior to such sublease taking effect, deliver to the Lessor, the Insurer Representative, the Agent and the Security Trustee executed copies of such documents;

(x)      the Lessee shall promptly reimburse the Lessor, the Security Trustee or any other Secured Party for any reasonable costs and expenses (including attorneys' fees and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

expenses) incurred by them in connection with such sublease or any related re-registration; and

(xi)    the proposed sublessee must be solvent.

**7.6    Special Operation and Possession Covenants**

In addition to the foregoing requirements, the Lessee covenants and agrees as follows:

(a)    **Restricted Use of Aircraft**

No Aircraft, Engine or Part shall, without the prior written consent of the Lessor, the Security Trustee and the Insurer Representative, (whether, directly or under a Dry Lease, Wet Lease, Charter, blocked-space or other arrangement) be:

(i)    flown to or within, or otherwise operated or used to or within, an Excluded Country if to do so would breach any Applicable Law (including Sanctions) or operated (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under, the laws of, or whose principal place of business or principal place of aircraft operations is located in, an Excluded Country;

(ii)    principally used in, or operated or used (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under the laws of, or whose principal place of business or principal place of aircraft operations is located in, a Restricted Country;

(iii)    "primarily based" in one or more Restricted Countries.  For purposes of this provision, **primarily based** shall mean that during any consecutive seven (7) day period, the aggregate amount of time spent on the ground by such Aircraft, such Engine or such Part, as applicable, in one or more Restricted Countries shall exceed 15% of the total amount of time spent on the ground during such seven (7) day period, provided that the limitation imposed by this paragraph (iii) shall not prohibit, to the extent necessary, any nonrecurring maintenance or other nonrecurring repairs to be done with respect to an Aircraft in a Restricted Country;

(iv)    operated or used by or for any other Person except in accordance with Clauses 7.3, 7.4 and 7.5;

(v)    operated or used in contravention of any United States law, regulation or stated policy of general applicability restricting the operation or use of United States-manufactured or financed aircraft and engines and such restrictions are applicable to the transactions contemplated hereby;

(vi)    flown or otherwise operated or used for any offensive or defensive military purpose;

(vii)    operated or used for any purpose for which it is not designed or reasonably suited in accordance with the Approved Maintenance Programme, Applicable Law and applicable material warranties or for any primary purpose or other than the commercial transport of passengers and cargo; or

(viii)    subleased (whether under a dry lease or wet lease) to any Person other than as provided in this Lease.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     **Waiver of Defences to Repossession**

None of the Lessee, nor any Permitted Sub-Lessee, nor anyone claiming through or under the Lessee or Permitted Sub-Lessee, shall set up, claim or seek to take advantage of any Applicable Laws now or hereafter in force in any jurisdiction in which any Aircraft or any portion thereof may be situated in order to prevent, hinder or delay any effort in accordance with this Lease on the part of the Lessor or the Security Trustee to regain possession of any Aircraft or deregister or re-export any Aircraft or any portion thereof from any jurisdiction in which such Aircraft or any portion thereof may be situated following the occurrence of an Event of Default or Termination Event, and while the same shall be continuing, and the Lessee, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may be lawful so to do, the benefit of all such Applicable Laws (including, without limitation, any rights it may have, if any, to avail itself of the protection provided by the Convention of 1933 on the Unification of Certain Rules Relating to the Precautionary Arrest of Aircraft, or any other similar law, treaty or convention applicable to the Lessee or any Aircraft which would limit the ability of the Lessor or the Security Trustee to repossess or otherwise recover any Aircraft following the occurrence and during the continuance of an Event of Default or Termination Event).

(c)     **Statement of Account of Landing Fees or Navigation Charges**

In the event that a Government Body of any country in which any Aircraft or the Lessee or any Permitted Sub-Lessee operates shall be permitted by Applicable Law to detain or seize, or shall adopt legislation which permits the detention or seizure of, an aircraft for unpaid landing fees or navigation charges without formal legal proceedings, the Lessee shall (and shall procure that any Permitted Sub-Lessee shall) promptly following demand by the Security Trustee or the Insurer Representative, deliver to the Security Trustee, the Agent and the Insurer Representative a letter, in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative, addressed to the airport or air navigation authority of such country authorizing such authority to release to the Security Trustee from time to time a statement of account of all such fees and charges then due in respect of all aircraft owned by or leased to the Lessee or any Permitted Sub-Lessee, as the case may be.

(d)     **Eurocontrol**

The Lessee shall and shall procure that the relevant Initial Permitted Sub-Lessee shall prior to the Delivery Date of an Aircraft, and the Lessee shall procure that any other Permitted Sub-Lessee shall, prior to the commencement of any sub-lease:

(i)     procure that the Lessee or any Permitted Sub-Lessee executes a Eurocontrol Letter and ensure that such letter is promptly sent to and acknowledged by Eurocontrol in accordance with Eurocontrol's advertised procedures;

(ii)    to the extent it has not already done so, promptly enter into a CEFA Agreement and provide the Security Trustee and the Insurer Representative with a copy certified by an officer of such company;

(iii)   if requested by the Security Trustee or the Insurer Representative, promptly obtain from Eurocontrol (via CEFA or otherwise) and provide to the Lessor, the Security Trustee and the Insurer Representative a general statement of account in relation to charges incurred by the Lessee and the Initial Permitted Sub-Lessee (and, if applicable, other Permitted Sub-Lessee); and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(iv)    if Eurocontrol's procedures relating to the availability to third parties of general statements of account are amended, take such actions as may be reasonably requested by the Security Trustee or Insurer Representative to ensure that the Security Trustee is able to obtain (or continue to obtain) such general statements of account in accordance with such procedures.

(e)    **EU ETS Laws**

It shall procure that any Permitted Sub--Lessee:

(i)    comply, and must procure that any other "aircraft operator" for the purposes of the EU ETS Laws complies, with all EU ETS Laws applicable to it/them or the Aircraft and, promptly on request from the Lessor, the Insurer Representative or the Security Trustee, supply to such person evidence reasonably satisfactory to it of such compliance;

(ii)    identify itself as "aircraft operator" to any EU ETS Authority whenever required under the EU ETS Laws or whenever the Lessor, the Insurer Representative or the Security Trustee may request.

(f)    **No Operation by the Secured Parties**

In no event shall any Secured Party be represented as carrying goods or passengers on any Aircraft or as being in any way connected or associated with any operation or carriage which may be undertaken by the Lessee or any Permitted Sub-Lessee or as having any operational interest in any Aircraft.

(g)    **Seizure of Aircraft**

The Lessee shall not do, shall procure that no Permitted Sub-Lessee shall do, and shall otherwise use its best efforts to prevent, any act which could reasonably be expected to result in any Aircraft, any Airframe or any Engine being arrested, confiscated, seized, taken in execution, attached, impounded, forfeited, detained in exercise or purported exercise of any registered or possessory lien or other claim or otherwise taken from the possession of the Lessee or any Permitted Sub-Lessee, and if any such arrest, confiscation, seizure, execution, taking, attachment, impoundment, forfeiture, detention or other loss of possession occurs, the Lessee shall give Security Trustee, the Lessor, the Agent and the Insurer Representative immediate notice thereof and shall forthwith procure the prompt release of such Aircraft, such Airframe or such Engine.

(h)    **Credit for Maintenance**

The Lessee shall not pledge and shall procure that no Permitted Sub-Lessee shall pledge  the credit of any Secured Party for any maintenance, service, repairs, overhauls of, or modifications to, or changes or alterations in, or additions to, any Aircraft, any Airframe, any Engine or any Part.

(i)    **Notice of Suspension**

The Lessee shall give the Lessor, the Security Trustee, the Agent and the Insurer Representative immediate written notice of any action being taken by the management of any Lessee Obligor relating to any general suspension of payment proceedings under any Applicable Law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(j)     **Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under Clause 10 and should any such claim be paid, shall procure that immediate action is taken either (A) to increase any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty or (B) to obtain "contingent War Risk Insurance" acceptable to the Issuer Representative and the Security Trustee for the express benefit of the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee so that their financial interests in each Aircraft shall at all times be fully insured for the period covered by that War Risk Insurance, notwithstanding any annual aggregate limit or sublimit of liability.

(k)     **Inspection**

At all reasonable times and (except during the continuance of a Default, a Termination Event or an Event of Default) upon reasonable notice to the Lessee and not more frequently than once per calendar year any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives may inspect any Aircraft, any Engine or any Part and the Manuals and Technical Records relating thereto and to the registration thereof and copy or make extracts from the books and records of the Lessee and any Permitted Sub-Lessee relative thereto and may discuss the Lessee's and any Permitted Sub-Lessee business or financial affairs with any of the Lessee's or Permitted Sub-Lessee officials, auditors or officers as may be required for the foregoing and, to the extent available, make any inspection reports available to the Agent, provided that, unless a Termination Event or an Event of Default has occurred and is continuing:

(i)     any such inspection shall be a visual, walk-around inspection which may include going on board such Aircraft, subject to the Permitted Sub-Lessee's limitations for reasons of safety or insurance coverage, but shall not include opening or removing any panels, bays or engine or avionic components of such Aircraft, unless such Aircraft is, on the date of such inspection, undergoing a maintenance visit, in which case such panels, bays or engine or avionic components as are open or removed from such Aircraft on such date may be inspected; and

(ii)    any such inspection or examination shall not unreasonably delay or interrupt or cause any obstruction in the Lessee's maintenance and operation of such Aircraft.

(l)     None of the Lessor, the Security Trustee, the Agent, the Funder or the Insurer Representative (i) shall have any duty to make any such inspection or (ii) shall incur any liability or obligation by reason of making or not making any such inspection, except as provided in this Clause 7.7.  So long as no Termination Event or Event of Default has occurred and is continuing, the reasonable cost of one such inspection initiated by any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives each calendar year shall be paid by the Lessee.  The Lessee shall pay the cost of all such inspections during the continuance of a Termination Event or an Event of Default.  The cost of other inspections shall be paid by the party requesting such inspection, unless such inspection reveals a material breach of the obligations hereunder to maintain each Aircraft and the associated Manuals and Technical Records, in which case the cost of such inspection shall be borne by the Lessee.  Upon the request of the Lessor, the Lessee shall promptly notify the Lessor, the Insurer Representative, the Agent and the Security

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Trustee of the major phase checks ("C" check or higher and any structural inspection) then scheduled on any Aircraft for the six-month period following such request.

## 7.7   Information Concerning the Aircraft and Engines

The Lessee shall at its own cost and expense promptly provide the Lessor, the Agent, the Funder, the Insurer Representative and the Security Trustee with such information (to the extent required by this Lease, any Operative Document or maintained by the Lessee in accordance with its standard fleet procedures) regarding the registration, location, operation, use, insurance, maintenance and condition of each Aircraft and its associated Engines, including all Parts to the extent practicable, as the Lessor, the Agent, the Funder, the Insurer Representative or the Security Trustee may from time to time reasonably require.

## 7.8   Substitution of Engines

(a)   So long as no Termination Event or Event of Default shall have occurred and be continuing (unless such Termination Event or Event of Default relates to the Engine being substituted), the Lessee may (and may permit any Permitted Sub-Lessee to) at any time, with contemporaneous notice to the Lessor, the Agent, the Funder, the Insurer Representative and the Security Trustee, duly convey or cause to be conveyed to the Lessor as a substitute for an Engine title to another engine of the same manufacturer and model, as such Engine which satisfies the conditions set forth in the definition of "Replacement Engine", provided that all engines installed on any Airframe shall be of compatible make and model, free and clear of all Liens other than Permitted Liens and shall have a value and remaining useful life and utility at least equal to, and being in as good operating condition and state of maintenance as, the Engine to be replaced thereby, assuming such Engine was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to such replacement.  Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)   furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)   cause a Lease Supplement, in form and substance reasonably satisfactory to the Lessor, the Insurer Representative and the Security Trustee subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry;

(iii)   furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such replacement engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor may reasonably request;

(iv)   furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) reasonably satisfactory to the Lessor, the Security Trustee and the Insurer Representative certifying that such engine has value and remaining useful life at least equal to, and is in as good operating condition (as the Engine being substituted, assuming such Engine was in the condition and state of repair required by the terms hereof immediately prior to such substitution;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(v)      cause amendments to the relevant Aircraft Mortgage and any Security Document, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such replacement engine to the relevant Aircraft Mortgage and the relevant Security Documents to be duly executed by the Lessor, Lessee or Permitted Sub-Lessee (as applicable) and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or the jurisdiction of incorporation or formation of the Lessor, Lessee or Permitted Sub-Lessee as applicable;

(vi)      cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)      furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and Security Trustee regarding the perfection of the Lien of any amended Security Document and relevant Aircraft Mortgage with respect to such Replacement Engine, in form and substance reasonably satisfactory to the Security Trustee and the Insurer Representative (addressed to the Security Trustee, the Insurer Representative, the Funder and the Agent); and

(viii)      affix a nameplate on such replacement engine in accordance with Clause 8.5.

(b)      Upon full compliance by the Lessee with the terms of this Clause 7.8, the Lessor will transfer or cause to be transferred, at the Lessee's sole cost and expense, to or upon the order of the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it)  all of the Lessor's right, title and interest, if any, in and to each replaced Engine with respect to which such substitution occurred by an appropriate instrument, signed by the Security Trustee, releasing such Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer. For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Engine" as defined herein and shall be deemed part of the same Aircraft as was the Engine replaced thereby. No substitution with respect to an Engine under the circumstances contemplated by the terms of this Clause 7.8 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

## 7.9    Annual Survey

(a)      Upon written request, but no more frequently than once each calendar year for each Aircraft any one of the Security Trustee, the Agent, the Insurer Representative or their authorized representative, may request a technical report about the related Airframe, Engines and Manuals and Technical Records in connection with such Airframe and each such Engine, performed at an Approved Maintenance Facility in connection with the most recently completed (i) airworthiness inspection, or heavy maintenance check (in the case of an Airframe), (ii) heavy maintenance visit and any shop visit (in the case of each such Engine), and (iii) overhaul or reconditioning (in the case of any Part, appurtenance or system in respect of such Aircraft or each such Engine not covered by clauses (i) and (ii) preceding).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     Such report shall be at the Lessee's expense and shall contain sufficient detail so as to enable the Security Trustee, the Agent and the Insurer Representative to determine the Lessee's compliance with the terms of this Lease and the general repair, condition, maintenance, overhaul and time-before-overhaul status of such Airframe and each such Engine or Part.  If any such report is prepared at the request of the Security Trustee, the Security Trustee shall promptly provide a copy to the Agent and the Insurer Representative.

## 8.   REPLACEMENT;  TEMPORARY  INSTALLATION;  POOLING;  ALTERATIONS, MODIFICATIONS AND ADDITIONS; ETC

### 8.1   Replacement of Parts

(a)     The Lessee, at its own expense, will promptly replace or cause to be replaced all Parts that may from time to time be incorporated or installed in or attached to any Airframe or any Engine and that may from time to time be defective and not economically repairable, become time-expired or due for replacement or worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever.

(b)     In addition, the Lessee (or any Permitted Sub-Lessee) may, at its own expense, remove in the ordinary course of maintenance, service, repair, overhaul or testing, any Part, whether or not time-expired, due for replacement, worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use, provided, however, that the Lessee will, at its own cost and expense, replace (or cause to be replaced) such Part as promptly as practicable.

(c)     Each replacement Part shall be free and clear of all Liens (except Permitted Liens) and except as permitted by Clause 8.3, shall be in at least as good operating condition as, and shall have value, modification status and performance characteristics at least equal to, or, if applicable, comparable to, the Part replaced assuming such replaced Part was in the condition and repair required to be maintained by the terms hereof.

(d)     Each Part at any time removed from any Airframe or each Part removed from any Engine shall remain the property of the Lessor, no matter where located, until such time as such Part shall be replaced by a Part that has been incorporated or installed in or attached to the Airframe from which such Part was removed or, as the case may be, an Engine and that meets the requirements for a replacement Part specified above and shall be subject to the Lien of the relevant Aircraft Mortgage.

(e)     Immediately upon any replacement Part becoming incorporated or installed in or attached to an Airframe or, as the case may be, an Engine as above provided and title thereto being vested in the Lessor free and clear of all Liens (except Permitted Liens), without further act:

(i)      title to the replaced Part shall thereupon vest in the Lessee or its Approved Nominee and shall no longer be deemed a Part hereunder; and

(ii)     such replacement Part shall become subject to this Lease and be deemed part of such Airframe or, as the case may be, such Engine for all purposes hereof to the same extent as the Part originally incorporated or installed in or attached to such Airframe or, as the case may be, such Engine.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 8.2    Temporary Installation of Parts

The Lessee may install or permit the installation of any part on any Airframe or Engine by way of substitution, replacement, renewal or mandatory modification notwithstanding that such installation is not in accordance with Clause 8.1 in the case of a part if:

(a)    there shall not have been available to the Lessee at the time and in the place that such part was required to be installed on such Airframe or, as the case may be, such Engine a substitute or replacement Part complying with the requirements of Clause 8.1;

(b)    it would have resulted in a disruption of the operation of the relevant Aircraft and/or the business of the Lessee to have grounded such Aircraft and/or to have permitted the relevant Part to continue to be unserviceable or unrepaired until such time as an part complying with the requirements of Clause 8.1 became available for installation on such Airframe or such Engine; and

(c)    as soon as practicable, but in any event within one hundred and eighty (180) days, the Lessee shall cause any such part not complying with the requirements of Clause 8.1 to be removed and replaced or substituted by a part complying with the requirements of Clause 8.1.

## 8.3    Pooling of Parts

Any Part removed from any Airframe or any Engine may be subjected by the Lessee or permitted by the Lessee to be subjected to a normal pooling arrangement customary in the international airline industry entered into in the ordinary course of the Lessee's (or, while the relevant Aircraft is leased by the Lessee to the Initial Permitted Sub-Lessee pursuant to the Initial Permitted Sub-Lease, the Initial Permitted Sub-Lessee's) business, provided, that the part replacing such removed Part shall be incorporated or installed in or attached to such Airframe or such Engine in accordance with Clause 8.1 as promptly as possible after the removal of such removed Part.  In addition, any replacement part when incorporated or installed in or attached to any Airframe or any Engine in accordance with Clause 8.1 may be owned by another air carrier subject to such a normal pooling arrangement, provided that the Lessee, at its own cost and expense, as soon as practicable, shall either (a) cause title to such replacement part to vest in the Lessor in accordance with Clause 8.1 by the Lessee acquiring title (or procuring acquisition of the title) thereto for the benefit of the Lessor free and clear of all Liens (other than Permitted Liens) and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement or (b) replace such replacement Part by incorporating or installing in or attaching to such Airframe or such Engine a further replacement Part owned by the Lessee (or such Permitted Sub-Lessee) free and clear of all Liens (other than Permitted Liens) and by causing title to such further replacement Part to vest in the Lessor in accordance with Clause 8.1 and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement.

## 8.4    Alterations, Modifications and Additions

(a)    The Lessee, at its own expense, will promptly make (or cause to be made) such alterations and modifications in and additions to any Airframe or any Engine as may be reasonably required from time to time to comply with any Airworthiness Directives, Service Bulletins, other directive or modifications published (and of a mandatory nature) by the Manufacturer, the Engine Manufacturer and/or the Civil Aviation Authority in accordance with the terms of this Lease, provided that the Lessee may in good faith diligently contest the validity or application of any such Airworthiness Directive, Service Bulletin, directive or modification in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of adversely affecting the value of any Aircraft, the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder.

(b)      In addition, the Lessee (or the Permitted Sub-Lessee), at its own expense, may from time to time make such alterations and modifications in and additions to any Airframe or any Engine as the Lessee (or Permitted Sub-Lessee) may deem desirable in the proper conduct of its business, including installation of additional buyer furnished equipment or removal of Parts that the Lessee (or Permitted Sub-Lessee) determines to be obsolete or no longer suitable or appropriate for use on such Airframe or such Engine, provided, however, that no such alteration, modification or addition shall materially diminish the value, utility, remaining useful life, performance or operational characteristics of such Airframe or such Engine, or impair the condition or airworthiness thereof, below the value, remaining useful life, performance or operational characteristics, condition or airworthiness thereof immediately prior to such alteration, modification or addition (assuming such Airframe or such Engine was then of the value, remaining useful life, performance or operational characteristics, condition or airworthiness required to be maintained by the terms of this Lease), provided, further, that the Lessee shall consult with the Manufacturer or the Engine Manufacturer, as applicable, the Insurer Representative and the Security Trustee prior to undertaking any material alteration or modification to any Aircraft. Without prejudice to the generality of the foregoing, the Lessor consents to the modification which includes installation of antennae, aerodynamic domes, wiring, structural attaching parts, mounts, receivers, wireless access points,(WAP's), modems, controllers, switching equipment, display and sound reproduction equipment and all related hardware and software directly associated with the receipt and distribution of satellite or where applicable ground based internet signals and data into the Aircraft for passenger use, whether provided by ROW 44 or an alternative provider.  Title to all Parts incorporated or installed in or attached or added to any Aircraft as the result of such alteration, modification or addition, shall immediately vest in the Lessor free and clear of all Liens (except Permitted Liens) and become subject to this Lease, without the necessity for any further act of transfer, document or notice.

(c)      Notwithstanding Clause 8.1 and the foregoing provisions of this Clause 8.4 and provided that no Termination Event  or Event of Default shall have occurred and is continuing, the Lessor agrees that the Lessee or any Permitted Sub-Lessee may, at any time during the Term in respect of any Aircraft, remove or suffer to be removed any Part (including buyer furnished equipment) from such Aircraft that:

(i)       is in addition to, and not in replacement of or substitution for, any Part originally incorporated or installed in or attached to the related Airframe or Engine at the time of the Delivery of such Aircraft hereunder or any Part in replacement of or substitution for any such Part;

(ii)      is not required to be incorporated or installed in or attached or added to the related Airframe or Engine pursuant to the terms of Clause 7 or this Clause 8 or in order to maintain insurance required by Clause 10; or

(iii)     can be removed from the related Airframe or Engine without causing damage to such Airframe or such Engine or diminishing or impairing in any material respect the value, utility, remaining useful life, performance or operational characteristics, condition or airworthiness that such Airframe or such Engine would have had at such time had such removal not occurred.

(d)      Upon the removal by the Lessee (or any Permitted Sub-Lessee) of any Part as provided in and permitted by this Clause 8.4, title thereto shall, without further act, vest in the Lessee or the Lessee's Approved Nominee, and such Part shall no longer be deemed part of the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Airframe or Engine from which it was removed.  Notwithstanding the foregoing, any Part not removed by the Lessee (or any Permitted Sub-Lessee) as above provided prior to the return of the relevant Airframe or Engine to the Lessor hereunder shall become the property of the Lessor at the time of such return and become subject to the relevant Aircraft Mortgage and the relevant Security Agreement.

**8.5    Nameplate and Other Markings**

The Lessee shall affix and keep a metal nameplate having dimensions of not less than five inches by four inches in the cockpit of each Airframe adjacent to the airworthiness certificate therein and on each of the Engines bearing the inscription "THIS [AIRFRAME/ENGINE] IS OWNED BY AAA MAX 1 LIMITED AND LEASED TO HARDANGERFJORDEN LIMITED, IS FURTHER SUB-LEASED TO [NORWEGIAN AIR INTERNATIONAL LIMITED / NORWEGIAN AIR SHUTTLE ASA] AND SUBJECT TO A MORTGAGE IN FAVOUR OF CITIBANK N.A., LONDON BRANCH, AS SECURITY TRUSTEE", or such other inscription as the Security Trustee or the Insurer Representative from time to time may reasonably request (such nameplate to be affixed within ten (10) days after the Delivery Date for such Airframe and such Engines, and the Lessee shall thereupon so advise the Lessor).  Except as provided above, the Lessee shall not allow the name or other indication of any other Person to be placed on any Airframe or any Engine, if such name or other indication could be interpreted as a claim of ownership or other interest therein; provided, that each Airframe, Engine and Part may be marked with the customary name, colours or insignia of the Lessee or the Permitted Sub-Lessee and/or any manufacturer(s) of such Airframe, Engines and Parts.

**8.6    No Third Party Beneficiaries**

It is expressly agreed that the Lessee's obligations with respect to maintenance under Clauses 7 and 8 are solely for the benefit of the Lessor and the Secured Parties and that the Lessee shall have no liability to any other Person with respect thereto, and that except for the Lessee's indemnification obligations with respect thereto contained in the Participation Agreement which shall survive the termination of such documents in accordance with their respective terms, the Lessee's obligations under Clauses 7 and 8 in respect of an Aircraft shall terminate upon termination of the leasing of an Aircraft to the Lessee pursuant to this Lease and the relevant Lease Supplement in accordance with the terms hereof.

**8.7    No Authorization to Contract for the Lessor**

Nothing contained in this Lease shall constitute any consent or request by the Lessor or any Secured Party express or implied, for the performance of any works or services or the furnishing of any materials or other property in respect of any Aircraft, any Engine or any Part thereof, nor as giving the Lessee any right, power or authority to contract for or permit the performance of any works or services or the furnishing of any materials or other property, in such fashion as would permit the making of any claim against the Lessor or any Secured Party in respect thereof or any claim that any Lien (other than Permitted Liens) based on the performance of such works or services or the furnishing of any such materials or other property is prior to the interests of the Lessor or any other Person in such Aircraft, such Engine or such Part thereof.

**8.8    No Rights of Retention**

The Lessee hereby waives any and all rights of retention which it may have or which at any time hereafter may be conferred upon it, by virtue of law or otherwise, related to any replacement of Parts, alterations, modifications or additions that the Lessee may make to any Airframe or any Engine.  The Lessee hereby expressly releases the Lessor and the Secured Parties from any and all

FILED DATE: 1/11/2023 2:57 PM   2023L000001

obligations, whether present or future, to indemnify or reimburse the Lessee for any of the aforementioned replacements, alterations, modifications, improvements or additions.

## 9.   LOSS, DESTRUCTION, REQUISITION, ETC

### 9.1   Event of Loss with Respect to an Aircraft

(a)   Upon the occurrence of an Event of Loss with respect to an Aircraft or an Airframe and any related Engines and/or engines then installed thereon, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), which notice shall specify the actions the Lessee is taking with respect to such Event of Loss.  So long as no Default, Termination Event or Event of Default shall have occurred and be continuing, the Lessee may within forty-five (45) days after such occurrence, request permission from the Lessor to replace such Aircraft (or such Airframe and Engine(s), as applicable), upon terms and conditions acceptable to the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee in their absolute discretion, including compliance with such terms and requirements that would make such replacement aircraft (or such replacement airframe and engine(s), as applicable) (a **Replacement Aircraft**) eligible for financing supported by the Insurance Policy in the same amount as such replaced Aircraft (or such replaced Airframe and Engine(s), as applicable), it being agreed that if the Lessee does not request such permission within the relevant time period (or does not receive such permission within ten (10) days after such request), the Lessee will not be entitled to substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable).

(b)   The Lessee will not substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) hereunder unless such Replacement Aircraft (or replacement airframe and engine(s), as applicable) would be eligible for financing supported by the Insurance Policy, as determined by the Insurer Representative in its sole discretion.

(c)   It is expressly agreed that if any Basic Rent Payment Date for the affected Aircraft occurs at or after the date of such Event of Loss and prior to the payment of the Termination Value and any other Rent due in relation to such Aircraft, the Lessee shall pay to the Lessor on such Basic Rent Payment Date the amount equal to the Basic Rent which would have become due and payable in respect of such Aircraft on such Basic Rent Payment Date in accordance with the terms hereof had no Event of Loss so occurred.

(d)   Unless a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) are being substituted in the circumstances contemplated in the preceding clauses, the Term for the affected Aircraft shall end on a date no later than the earliest of (i) the date falling ninety (90) days after the occurrence of such Event of Loss and (ii)  the Lessor or the Security Trustee receives insurance or requisition proceeds in respect thereof (the **Settlement Date**), and on such Settlement Date the Lessee shall pay to the Lessor an amount equal to the then applicable Termination Value for the affected Aircraft on such Settlement Date together with all accrued but unpaid Rent for the affected Aircraft to such Settlement Date and, without duplication, all other amounts then owing by the Lessee under the Operative Documents.

(e)   Upon full compliance by the Lessee with the terms of this Clause 9.1 the Lessor will (subject to insurer's salvage rights, if any) transfer to, or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty, all of the Lessor's right, title and interest, if any, in and to the Aircraft with respect to which such Event of Loss occurred by an appropriate instrument, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes

hereof, each such Replacement Aircraft shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Aircraft" as defined herein.

**9.2    Event of Loss with Respect to an Engine**

(a)    Upon the occurrence of an Event of Loss with respect to an Engine under circumstances in which there has not occurred an Event of Loss with respect to the associated Airframe, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), then within one hundred and twenty (120) days after the occurrence of such Event of Loss, the Lessee shall duly convey or cause to be conveyed to the Lessor and duly subject to the relevant Aircraft Mortgage and other relevant Security Documents, as replacement for such Engine with respect to which such Event of Loss occurred, title to a Replacement Engine (provided that all engines installed on such Airframe shall be of compatible make and model).

(b)    Such Replacement Engine shall be free and clear of all Liens (other than Permitted Liens) and having a value and remaining useful life at least equal to, and being in as good operating condition and state of maintenance as, the Engine with respect to which such Event of Loss occurred, assuming such Engine was of the value and remaining useful life and in the condition and state of repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss, but without regard to its point in the maintenance cycle.

(c)    Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)    furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)    cause an amendment to the related Lease Supplement, in form and substance reasonably satisfactory to the Lessor and the Security Trustee, subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or any other Relevant Jurisdiction;

(iii)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such Replacement Engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor and the Security Trustee may reasonably request;

(iv)    furnish the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) satisfactory to the Insurer Representative and the Security Trustee certifying that such engine has value and remaining useful life and it is in good operating condition as the Engine being substituted, assuming such Engine was in the condition and state of repair as required by the terms hereof immediately prior to such substitution, but without regard to its point in the maintenance cycle;

(v)    cause amendments to the relevant Aircraft Mortgage and other Security Documents, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such Replacement Engine to the relevant Aircraft Mortgage and Security Documents  to be duly executed by the Lessor and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant

FILED DATE: 1/11/2023 2:57 PM    2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Government of Registry, the jurisdiction of incorporation or formation of the Lessor and the United States of America;

(vi)    cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessee, the Security Trustee and the Insurer Representative under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)    furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and the Security Trustee regarding the perfection of the Lien of the relevant Aircraft Mortgage and Security Documents with respect to such Replacement Engine addressed to the Security Trustee, the Insurer Representative and the Agent and in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative;

(viii)    affix a nameplate on such replacement engine in accordance with Clause 8.5;

(ix)    assign to the Lessor (for further assignment to the Security Trustee) all assignable and remaining engine warranties applicable to such Replacement Engine in a manner consistent with the relevant Engine Warranties Agreement.

(d)    Upon full compliance by the Lessee with the terms of this Clause 9.2 the Lessor will (subject to insurer's salvage rights, if any) transfer to or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it), all of the Lessor's right, title and interest, if any, in and to the replaced Engine by an appropriate instrument, signed by the Security Trustee, releasing the replaced Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an **Engine** as defined herein.  No Event of Loss with respect to an Engine under the circumstances contemplated by the terms of this Clause 9.2 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

### 9.3    Application of Payments from Governmental Authorities or Others

Any payments (other than insurance proceeds from policies carried (or caused to be carried) by the Lessee the application of which is provided for in Clause 10 and other than proceeds of insurance policies carried by the Lessor or any Secured Party) received at any time by the Lessor or the Lessee from any Government Body or other Person with respect to an Event of Loss of any Aircraft or any Engine shall be paid over to the Security Trustee and applied, subject to Clause 9.6, in accordance with the terms of the Intercreditor Deed.

### 9.4    Requisition for Use of any Airframe and the Engines Installed Thereon

In the event of the requisition for use by any Government Body not constituting an Event of Loss of an Airframe and the Engines installed thereon during the relevant Term, the Lessee shall promptly notify the Lessor, the Security Trustee, the Insurer Representative and the Agent of such requisition, and all of the Lessee's obligations under this Lease shall continue to the extent such obligations are not restricted or curtailed by such requisition and to the same extent as if such requisition had not

FILED DATE: 1/11/2023 2:57 PM   2023L000001

occurred (but the Lessee's obligations to pay Rent for the relevant Aircraft pursuant to Clause 3 and its obligations under Clause 10 shall not be reduced or excused by such requisition).  All payments (and any interest thereon) received by the Lessor or the Lessee for the use of such Airframe and Engines at any time shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied in accordance with the Intercreditor Deed.

**9.5**     **Requisition for Use of an Engine Not Installed on an Airframe**

If an Engine not then installed on an Airframe is requisitioned for use by any Government Body, the Lessee shall replace such Engine or cause it to be replaced by complying with the terms of Clause 9.2 hereof as if an Event of Loss had occurred with respect to such Engine, and (upon compliance by the Lessee as aforesaid) any payments received by the Lessor or the Lessee from with respect to such requisition shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, that if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied to the obligations of the Lessee hereunder as the Lessor shall direct and any excess, shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee.

**9.6**     **Payments to the Lessee**

Any amount referred to in this Clause 9 which is payable or creditable to the Lessee or any Permitted Sub-Lessee shall not be paid or credited to the Lessee or such Permitted Sub-Lessee or, if it has been previously paid to the Lessee or such Permitted Sub-Lessee, shall not be retained by the Lessee or such Permitted Sub-Lessee, if at the time of such payment or credit a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to, applied in accordance with the terms of the Operative Documents and/or held by the Security Trustee as security for the obligations of the Lessee under this Lease and the Operative Documents and at such time as there shall not be continuing any Material Default, Termination Event or Event of Default such amount (together with interest thereon, if any), if then remaining, shall be paid or credited to the Lessee or the Permitted Sub-Lessee (as the case may be).

**10.**     **INSURANCE**

**10.1**    **Aviation Third Party Legal Liability Insurance**

Except to the extent provided in Clauses 10.3 and 10.5, on or before the Delivery Date for an Aircraft, and throughout the Term therefor and for a period extending to two years following the later of (a) the final Basic Rent Payment Date for such Aircraft and (b) the date such Aircraft is returned to the Lessor, the Lessee will carry or cause to be carried at its own expense with insurers of recognized standing which insurers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative, airline liability insurance in respect of such Aircraft including war and allied perils, hi-jacking and other similar risks that are excluded from standard liability coverage to the extent that such insurance is (a) maintained by the Lessee or the Permitted Sub-Lessee with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (b) customarily obtained by carriers with comparable route structures flying similar aircraft or (c) generally required by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures in amounts customary for similar aircraft in the Lessee's fleet (but not less than seven hundred and fifty million Dollars (US$750,000,000) any one occurrence per each aircraft and subject to customary sub-limits for non-aviation coverage and aggregate limits for products liability and war risks coverages) and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet and of the type usually carried by corporations engaged in the same or a similar business, similarly situated with the Lessee or the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Permitted Sub-Lessee, and owning and operating similar aircraft and engines, and which covers risks of a kind customarily insured against by such corporations which shall include general third party legal liability (including war and allied perils), passenger liability, and property damage liability (including cargo, baggage and mail liability).  Any liability insurance carried in accordance with this Clause 10.1 and any policies taken out in substitution or replacement for any of such policies:

(a)     shall be amended to name the Security Trustee, as the contract party (the **Contract Party**) and each of the Lessor, the Lessee, the Lessor Parent, the Agent, the Security Trustee, the Funder, the Insurer Representative, the Insurer Group and their respective successors, members, assigns, officers, directors, shareholders, agents, employees, servants, Affiliates and sub-contractors as additional insureds (the **Additional Insureds**);

(b)     shall provide that in respect of the interests of the Lessor or any other Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that the Additional Insured so protected has not caused, contributed to or knowingly condoned the said act or omission);

(c)     shall provide that there shall be no recourse against the Lessor or any other Additional Insured for the payment of premiums under such policies and that the Insurer Representatives shall waive any right of subrogation against the Additional Insureds; and

(d)     shall provide that, if such insurance is cancelled for any reason whatsoever, or if any material change is made in such insurance that adversely affects the interest of the Lessor or any other Additional Insured, such cancellation or change shall not be effective as to the Lessor or any other Additional Insured for thirty (30) days (seven (7) days, or such other period as is then customarily obtainable in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers (if different from the Lessee's insurance broker) to the Lessee's appointed insurance broker.  The Lessee hereby covenants to cause the Lessee's or the Permitted Sub-Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

Each liability policy (a) shall be primary without right of contribution from any other insurance that is carried by any other Person to the extent that such other insurance provides it with contingent or excess liability insurance with respect to its interest as such in any Aircraft, (b) shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured, (c) shall waive any right of the Aircraft Insurer to any setoff, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Lessee, the Permitted Sub-Lessee, the Lessor or any other Additional Insured to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft) and (d) shall provide for worldwide coverage (except in relation to Excluded Countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk and related perils policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit.

**10.2     Aircraft Hull Insurance**

(a)     Except to the extent provided in Clauses 10.3 and 10.5, on or prior to the Delivery Date for each Aircraft and throughout the Term for each Aircraft (and, in the case of the termination of this Lease with respect to an Aircraft pursuant to Clause 14 hereof, at all times following such termination until the sale or other disposition of such Aircraft pursuant hereto) the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessee shall maintain or cause to be maintained in full force and effect, at its own expense and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet, all-risk aircraft hull insurance covering such Aircraft, while flying and on the ground, including coverage of the Engines and Parts while temporarily removed from or not installed on such Aircraft and not replaced with similar components (with flight taxing and ingestion coverage), against loss or damage, of the type (but not necessarily the amount) usually insured against by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning or operating similar aircraft and engines on an agreed-value basis in a Dollar amount not less than 112% of the highest Termination Value for such Aircraft during the applicable insurance period (the **Threshold Value**), and all-risk insurance with respect to each Engine and Part while removed from an Aircraft, and, as to each Engine or Part not installed on an Airframe, not less than the fair market value of such Engine or Part.

(b)     The Lessee shall maintain or cause to be maintained in full force and effect war-risk and related perils insurance and hi-jacking and government confiscation insurance (excluding for confiscation by the Government of Registry) in respect of each Aircraft on an agreed value basis for such Aircraft throughout each policy year, for not less than the amounts set forth in the preceding paragraph in respect of such Aircraft covering each of the following perils (i) insured by the Lessee or the Permitted Sub-Lessee, with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (ii) customarily insured by air carriers with comparable route structures flying similar aircraft, and (iii) generally required to be insured by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures.

(c)     All policies and subsequent policies taken out in accordance with this Clause 10.2 will be issued by insurance companies or underwriters of recognized standing in the international aviation industry or re-insurance companies or underwriters of such standing and through internationally recognized aviation insurance brokers, all of which insurance companies, underwriters and insurance brokers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative. In addition, all such policies and subsequent policies:

(i)      shall be denominated and payable in Dollars and shall be on an agreed value basis without the insurer's right to replace;

(ii)     shall name the Additional Insureds as additional insureds in respect of the legal liability insurances and the Security Trustee as the sole contract party and as loss payee in respect of hull claims that become payable on the basis of a total loss and provide that payment in respect of such claims shall be made to or to the order of the contract parties for application in accordance with the Operative Documents and in respect of all other hull claims the loss will be settled with such Persons as may be necessary to repair the relevant Airframe or Engine;

(iii)    shall provide that in respect of the interests of each Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that such Additional Insured has not caused, contributed to or knowingly condoned the said act or omission);

(iv)     shall provide that there shall be no recourse against the Lessor or any Additional Insured for the payment of premiums under such policies; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(v)    shall provide that, if such insurance is canceled for any reason whatsoever, or if any material change is made in such insurance which adversely affects the interests of any Additional Insured, such cancellation or change shall not be effective as to Additional Insureds for thirty (30) days (seven (7) days, or such other period as is then customarily imposed by in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers to the Lessee's appointed insurance broker. The Lessee hereby covenants to cause the Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

(d)    The hull policy for each Aircraft:

    (i)    shall waive any right of the Aircraft Insurer or any reinsurers to any set-off, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Additional Insureds or any other Person to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft);

    (ii)    if separate hull all risks and war risks policies are arranged, shall contain a 50/50 claims funding clause acceptable to the Security Trustee, the Agent and the Insurer representative (which shall be AVS 103 or similar) in the event of a dispute as to which policy in respect of the hull insurances set forth in this Clause 10.2 shall pay in the event of a loss;

    (iii)    shall provide for worldwide coverage (except for excluded countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit; and

    (iv)    shall have deductibles (not applicable in the case of an Event of Loss or war and allied perils insurance) standard in the  industry in respect of the same model aircraft, which are reasonably acceptable to the Insurer Representative and the Security Trustee and in amounts which are no greater than seven hundred and fifty thousand dollars (US$750,000) and in any event such deductible shall not be greater than those which other international airlines of comparable standing (in the judgement of the Secured Parties' independent insurance advisor after consultation with the Lessee's broker of record) to the Lessee operating comparable aircraft are able to obtain in such market.

(e)    The Lessee may procure endorsements to the relevant insurance policies required to be maintained pursuant to Clause 10 so as to incorporate the terms of AVN 67B (or any successor provision) unto such policies, in which event, to the extent that any provision of any such AVN 67B (or any successor provision) endorsement conflicts or is otherwise inconsistent with the requirements of this Clause 10, then (so long as it shall remain general industry practice to insure aircraft financed by financial institutions on the basis of such endorsement) such endorsement shall be deemed to satisfy the requirements of this Clause 10 to the extent covered by such endorsement.

(f)    As between the Lessor and the Lessee it is agreed that all insurance payments received under policies that the Lessee is required to maintain pursuant to this Clause 10.2, exclusive of any payments received in excess of the then applicable Threshold Value for an Aircraft, as the result of the occurrence of an Event of Loss with respect to an Airframe or an Engine related

FILED DATE: 1/11/2023 2:57 PM   2023L000001

thereto will be applied, unless a replacement is effected in accordance with Clause 9.1 or 9.2 hereof, pursuant to the Intercreditor Deed.

(g)     As between the Lessor and the Lessee the insurance payment of any property damage or loss with respect to an Aircraft (i) that constitutes an Event of Loss, in excess of the then applicable Threshold Value for such Aircraft, shall be paid to the Lessee, and (ii) that does not constitute an Event of Loss with respect to the related Airframe or a related Engine, will be applied in payment (or to reimburse the Lessee), for repairs or for replacement property in accordance with the terms of Clauses 7 and 8, if not already paid for by the Lessee and any balance remaining after compliance with such Clauses with respect to such loss shall, subject as provided below, be paid to and retained by the Lessee or in accordance with Clause 9.3(b) of the Intercreditor Deed.

(h)     Notwithstanding any provision in this Clause 10.2, any amount referred to in this Clause 10.2 which is payable to the Lessee, shall not be paid to the Lessee or, if it has been previously paid directly to the Lessee, shall not be retained by the Lessee, if at the time of such payment a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to and held by the Security Trustee as security for the obligations of the Lessee under this Lease and, during the continuance of such Material Default, Termination Event or Event of Default, shall be applied to the satisfaction of the then due and payable obligations of the Lessee under this Lease, and, at such time as there shall not be continuing any such Material Default, Termination Event or Event of Default, the remainder of such amount shall be paid to the Lessee.

## 10.3     Default

If the Lessee shall default in effecting or maintaining any insurance or if any insurance shall, for any cause become void, the Lessor, the Security Trustee or any other Additional Insured may (but without any obligation to do so and without prejudice to the Lessor's other rights and remedies hereunder) effect and keep up such insurance at the cost of the Lessee and the Lessee will forthwith upon demand repay to the Lessor, the Security Trustee or any other Additional Insured all premiums and other moneys from time to time paid by the Lessor, the Security Trustee or any other Additional Insured in respect of such insurance (which amount shall be certified by the Lessor, the Security Trustee or such other Additional Insured).

## 10.4     Certificates

On or before the Delivery Date for each Aircraft and promptly after the issuance or modification or renewal thereof (but in any event prior to the expiration of any insurance then to be renewed) in form substantially similar to those given prior to or on such Delivery Date, the Lessee will furnish to the Lessor, the Insurer Representative, the Agent and Security Trustee (with sufficient copies to the Funder):

(a)     a certificate of the Lessee's insurance broker or an authorized representative of the Aircraft Insurer describing in reasonable detail the Aircraft Insurances then carried and maintained on such Aircraft, containing an endorsement reflecting the Aircraft Insurances required hereunder and:

          (i)     certifying the date and time of commencement and expiry of each insurance policy;

          (ii)    specifying the deductible amounts and levels of co-insurance, if any, for each type of loss; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)      a letter of undertaking from the Lessee's appointed insurance broker with regard to the Aircraft Insurances required hereunder in respect of such Aircraft (in the case of each renewal, in substantially the same form as delivered on the relevant Delivery Date).

**10.5      Notice of Variations**

If any material variation is made to the terms of any of the Aircraft Insurances or Aircraft Reinsurances the Lessee shall immediately give notice to the Lessor, the Insurer Representative, the Security Trustee, the Agent and the Funder of such variation and shall provide such further details in relation thereto as the Lessor, the Insurer Representative, the Security Trustee, the Agent or any Funder may reasonably require.

**10.6      Premiums**

The Lessee shall pay or cause to be paid the premiums (or installments thereof) as required by the terms of such policies and produce to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request receipts in respect of payment of such premiums (or installments thereof) or other evidence of such payments as the Lessor, the Insurer Representative, the Security Trustee or the Agent may reasonably request.  In the case of renewals of such policies, the Lessee shall cause to be provided to the Lessor, the Insurer Representative, the Security Trustee and the Agent evidence of such renewal as soon as practicable and in any event within seven (7) days after the date of renewal and shall give the Lessor, the Insurer Representative, the Security Trustee and the Agent notice of such intended renewal no later than the day before such date and the Lessee shall pay the renewal and other premiums (and installments thereof) as required by the terms of such policies.

**10.7      Insurance Policies**

In the absence of an unqualified opinion or certificate addressed to the Lessor, the Insurer Representative, the Security Trustee and the Agent from the Lessee's or the Permitted Sub-Lessee's insurance brokers (and, if applicable, reinsurance brokers), the Lessor and each Secured Party shall be entitled to full reliance, without exception, that the certificates of insurance (and, if applicable, certificates of reinsurance) delivered pursuant to this Clause 10 do not conflict with the terms and conditions of the underlying insurance (and, if applicable, reinsurance) policies.  Copies of the policies and endorsements and riders amendatory thereof (excluding premium information) with respect to the Aircraft Insurances and any Aircraft Reinsurances, required under this Clause 10 shall be made available to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request for inspection by their respective representatives at the offices of the Lessee or the Permitted Sub-Lessee or the Lessee's or the Permitted Sub-Lessee's insurance brokers during normal business hours.

**10.8      Reinsurance**

(a)      Unless the Aircraft Insurances maintained by the Lessee in accordance with the provisions in this Clause 10 are maintained with Lloyd's of London or in other internationally recognized aviation insurance markets with insurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee and the Insurer Representative, then the Lessee shall procure that the insurers shall maintain reinsurance in all respects satisfactory to the Security Trustee and the Insurer Representative covering identical subject matter and risk for an amount (which shall not be less than ninety five percent (95%) of the relevant coverage amount) with Lloyd's of London or in other internationally recognized aviation insurance markets with reinsurers of international standing and repute who normally participate in aircraft insurance programmes

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and who are acceptable to the Security Trustee, the Agent and the Insurer Representative. Any reinsurance shall:

(b)      be on the same terms as the original insurances;

(i)      contain a "cut-through" clause satisfactory to the Security Trustee, the Agent and the Insurer Representative providing that, in the event of any claim arising under the reinsurance, the reinsurers thereunder shall, in lieu of payment to the original insurer or its successors in interest and assigns, pay to or to the order of the Contract Party as loss payee that portion of any loss due for which the reinsurers thereunder would but for this cut-through clause be liable to pay the original insurer or its successors in interest and assigns, it being understood and agreed (and the Lessee agreeing to obtain the agreement of its original insurers for the benefit of the Lessor, the Agent, the Security Trustee, the Insurer Representative, the other Secured Parties and the reinsurers) that any such payment by the reinsurers thereunder shall fully discharge and release the original insurers from any and all further liability in connection therewith; and

(ii)      provide for payment to be made directly to or to the order of the Contract Party as provided herein notwithstanding (x) any bankruptcy, insolvency, liquidation or dissolution of the original insurer(s), and/or (y) that the original insurer(s) have made no payment under the primary insurance policies.

**10.9     Location**

Except as otherwise expressly permitted herein, the Lessee shall not at any time do or suffer to be done to any Aircraft, any Engine or any Part thereof or the premises on which the same may be located, or bring or keep, or permit to be brought or kept, anything therein or thereon or operate any Aircraft, any Engine or any Part thereof or take the same to or keep the same in, or permit the same to be taken to or kept in, a place where or whereby any insurance required hereunder may be rendered void or voidable or no longer in force or coverage thereunder shall be limited, without first arranging at its own expense such additional Insurance coverage as shall be necessary to avoid such result, such additional insurance to be in form and substance satisfactory to the Lessor, the Security Trustee and the Insurer Representative.  The Lessee will pay or cause to be paid all additional insurance premiums required on account of the additional risk caused by the use to which any Aircraft is put as aforesaid.

**10.10    Notice from the Lessee**

The Lessee will forthwith notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of any event (including but not limited to an occurrence) which will or may give rise to a claim under the Aircraft Insurances required in Clause 10.2, in excess of an amount in any currency equal to three million Dollars (US$3,000,000) in respect of an Airframe and one million Dollars (US$1,000,000) in respect of an Engine, but nothing in this Clause 10.10 shall prejudice the payment provisions of Clause 10.2.  Upon completion of the repairs in respect of a loss in which insurers have paid proceeds towards such repair, the Lessee shall deliver to the Lessor, the Insurer Representative, the Security Trustee and the Agent an engineer's certificate certifying that such repairs have been completed in accordance with the manufacturer's recommended procedures.

**10.11    Certain Undertakings in Respect of the Aircraft Insurances**

(a)    The Lessee shall not and shall procure that no Permitted Sub-Lessee shall:

(i)    make any modification to the Aircraft Insurances or any Aircraft Reinsurances required hereunder which is materially adverse to the interest of the Lessor, the Insurer Representative, the Security Trustee, any Secured Party or any other Additional Insured;

(ii)    do, or omit to do, or permit to be done, or left undone anything whereby any required Aircraft Insurance or any Aircraft Reinsurance would or might reasonably be expected to be rendered, in whole or in part, invalid or unenforceable and, without prejudice to the foregoing, not use or keep or permit any Aircraft or any Engine or any Part thereof, to be used or kept for any purpose, in any manner or in any place not covered by required Aircraft Insurances or any Aircraft Reinsurances (except as otherwise expressly permitted herein); and

(iii)    discriminate against any Aircraft relative to other aircraft of the same or comparable model within the Lessee's or the Permitted Sub-Lessee's fleet as to the coverage of the Aircraft Insurances required under this Clause 10.

(b)    The Lessee shall as soon as practicable, but in no event later than 48 hours, upon receipt of notice of cancellation of the war risks and related perils insurance due to armed hostilities in the area where any Aircraft may then be located or scheduled to operate, remove any Aircraft or cause any Aircraft to be removed to the United Kingdom  (or such other location at which such Aircraft shall remain covered by war risks and related perils insurance) and shall cause such Aircraft to remain in such location until such war risks and related perils insurance is reinstated and compliance herewith shall cure any related Termination Event or Event of Default under Clause 13.1(c), provided, however, that the Lessee need not comply with the provisions of this paragraph (b) if to do so would cause the Lessee to breach any other obligation contained herein.

(c)    The Lessee shall be responsible for the payment of any applicable deductibles or costs of any Aircraft Insurances and any Aircraft Reinsurances.

**10.12    Reimbursement**

The Lessee shall reimburse the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative, as the case may be, on demand for the amount of any premiums or premium installments which such party may pay pursuant to this Clause 10 together with interest thereon, for the period from and including the date of such payment by such party to but excluding the date on which the same is paid in full by the Lessee at the applicable Post-Default Rate.

**10.13    Change in Industry Practice; Additional Requirements**

In the event that there is a material change in the generally accepted industry-wide practice with regard to the insurance of aircraft (whether relating to all or any of the types of insurances required to be effected under the foregoing provisions of this Clause 10) such that the insurances required pursuant to the provisions of this Clause 10 are insufficient to protect the interests of the Lessor, the Insurer Representative, the Security Trustee or any of the other Additional Insureds hereunder, the Insurer Representative and the Security Trustee shall, to the extent reasonably practicable, consult with the Lessee, and the insurance requirements set forth in this Clause 10 shall be varied at the request of the Insurer Representative or the Security Trustee so as to include such additional or varied requirements as may be reasonably necessary to ensure that the insurances and reinsurances as

FILED DATE: 1/11/2023 2:57 PM   2023L000001

so varied shall provide comparable protection to that which it would have provided if such change in the generally accepted industry-wide practice had not occurred.

**10.14   Compliance with Legal Requirements**

In addition to the foregoing provisions of this Clause 10 the Lessee shall and shall procure that any Permitted Sub-Lessee shall comply with all legal requirements as to the insurance of any Aircraft or any Engine which may from time to time be imposed by the Applicable Laws of any Aircraft's registration or of any jurisdiction to or from or over which any Aircraft or any Engine shall be flown or in which the same shall be located.

**10.15   Additional Insurance**

The Lessee shall have the right to carry insurance in excess of the amounts required hereunder and additional and separate insurance for its own benefit at its own expense; provided that, no such insurance shall result in a duplicate payment on a loss, or shall impair in any way (whether or not material) the rights of the Lessor, the Insurer Representative, the Security Trustee, and other Secured Party or any other Additional Insured under this Lease and the Operative Documents.  Proceeds of such insurance shall be payable directly to the Lessee.

**10.16   Additional Terms of Insurance**

The Lessee agrees to ensure that the insurance policies in respect of all Insurances referred to in Clauses 10.1 and 10.2 above shall at all times be underwritten in full.

**10.17   Self Insurance**

Except for the deductibles permitted by Clause 10.2 hereof or otherwise permitted by the Lessor, the Security Trustee and the Insurer Representative, the Lessee shall not be permitted to self-insure against any of the risks required to be covered by the insurance described in this Clause 10.

**10.18   Date Recognition Exclusion**

If the Aircraft Insurances are subject to any exclusion relating to date recognition, the Lessee shall obtain write-backs covering such exclusions to the fullest extent available in the international aviation insurance markets and in accordance with good and prudent international aviation insurance practice.

**10.19   Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under this Clause 10 and shall take immediate action to restore any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty.

**11.   ABSOLUTE OBLIGATIONS**

(a)   This Lease is a net lease, and it is intended that the Lessee shall pay or cause to be paid all costs, charges, fees (including Eurocontrol fees), assessments, expenses, withholdings and Taxes of every character whether foreseen or unforeseen, ordinary or extraordinary, incurred in connection with or arising out of the use, operation, maintenance, repair, modification,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

alteration, replacement and leasing of any Aircraft, including the costs, expenses and Taxes and similar levies set forth in the Participation Agreement.  The Lessee's obligation to pay all Rent and to perform all other obligations hereunder is absolute and unconditional and shall not be affected or reduced by any circumstances or for any reason, including:

(i)      any setoff, counterclaim, recoupment, defense or other right which the Lessee may have against the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party, the Manufacturer, the Engine Manufacturer or any Person providing services with respect to any Aircraft, or any other Person, for any reason whatsoever (whether in connection with the transactions contemplated hereby or otherwise), including any breach by the Lessor of its warranties contained herein or in the other Operative Documents;

(ii)     any defect in the title, airworthiness, eligibility of registration under any Applicable Law, condition, design, operation, or fitness for use of, or any damage to or loss or destruction of, any Aircraft or any portion thereof (subject to the provisions of Clause 9 hereof), any interruption or cessation in the use of or possession thereof by or availability to the Lessee for any reason whatsoever, whether arising out of or related to an act or omission of the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, Manufacturer, Engine Manufacturer or any other Person;

(iii)    any Lien with respect to any Aircraft or any portion thereof;

(iv)     the invalidity or unenforceability or lack of due authorization or other infirmity of this Lease or any absence of right, power or authority of any Person to enter into any Operative Document;

(v)      any Taxes;

(vi)     any change, waiver, extension, indulgence or liability or other act or omission in respect of any liability or obligation of the Lessor, the Security Trustee, the Funder, the Agent or the Insurer Representative or any other Secured Party;

(vii)    any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation, receivership or other like proceeding relating to the Lessee, the Lessor, the Lessor Parent, the Trustee or the Security Trustee or any disaffirmance, rejection or other action taken with respect to this Lease or any other Operative Document by the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party or any other Person, or by any court, in any such proceeding;

(viii)   the Lessee at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of sovereignty or otherwise, which immunity, if any, the Lessee hereby expressly waives;

(ix)     any restrictions applicable to the Lessee on the transfer or conversion of currency; or

(x)      any other circumstances or happening of any nature whatsoever, whether or not similar to any of the foregoing; it being the express intention of the Lessor and the Lessee that all Rent payable hereunder shall be payable in all events, unless the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease or the other Operative Documents.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     This Lease shall not, except as expressly set forth herein, be cancellable by the Lessee and, except as expressly set forth elsewhere in this Lease, the Lessee hereby waives any and all rights which it may now have or which at any time hereafter may be conferred upon it, by statute or otherwise, to terminate, abate, cancel, quit, reduce, defer, suspend or surrender this Lease or any Aircraft or any obligation imposed upon the Lessee hereunder or under the other Operative Documents (including payment of Rent), except in accordance with the terms hereof and thereof.

(c)     If for any reason whatsoever this Lease shall be terminated in whole or in part by operation of Applicable Law, except as specifically provided herein, the Lessee, if and to the extent that the Lessee retains the use and possession of any Aircraft, nonetheless agrees to pay to the Lessor an amount equal to each Basic Rent payment and any Supplemental Rent payment in respect of such Aircraft at the time such payments would have become due and payable in accordance with the terms hereof and the other Operative Documents had this Lease not been terminated in whole or in part and so long as such payments are made and all other terms and conditions hereof are complied with by the Lessee, the Lessor and the Lessee will deem this Lease to remain in full force and effect.

(d)     Nothing contained in this Lease shall be construed as a waiver of the Lessee's right to seek any claim against the Lessor, the Security Trustee, any Secured Party or any other Person arising out of the transactions contemplated by the Operative Documents in a separate proceeding or by compulsory counterclaim.

## 12.     ASSIGNMENT

The terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Except as otherwise provided in Clause 7.4, neither party hereto shall, without the prior written consent of the other and except as expressly permitted by the Operative Documents, assign any of its rights or obligations hereunder.

## 13.     LEASE EVENTS OF DEFAULT AND TERMINATION EVENTS

Other than the events referred to in paragraphs (f), (p), (t) or (u) which, if they do not arise as a result of any act or omission of any Lessee Group Member, shall constitute "Termination Events" (but, for the avoidance of doubt,  in all other circumstances shall constitute "Lease Events of Default"), the following events shall constitute "Lease Events of Default" hereunder, (whether any such event shall be voluntary or involuntary or come about or be effective by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, the United States or any other jurisdiction, or the administration or interpretation thereof) and each such Lease Event of Default or Termination Event shall be deemed to exist and continue so long as, but only so long as, it shall not have been remedied:

(a)     the Lessee shall fail to pay when due any amount of Basic Rent or Termination Value on the date such Basic Rent or Termination Value is due, and such failure shall continue unremedied for three (3) Business Days following the due date therefor;

(b)     the Lessee shall fail to pay when due any amount of Supplemental Rent or any other amount due and owing from the Lessee under this Lease (other than as specified in Paragraph (a) above) or any other Operative Document and such failure to pay shall continue for a period of five (5) Business Days after demand has been made on the Lessee;

(c)     the Lessee shall fail to carry and maintain or fails to procure that any Permitted Sub-Lessee carry and maintain Aircraft Insurances (including any required Aircraft Reinsurances)

FILED DATE: 1/11/2023 2:57 PM   2023L000001

required to be maintained in accordance with the provisions of Clause 10, or the Lessee shall fail to perform or observe any covenant, condition or agreement contained in Clause 7.6(a) or 10.11 hereof or Clause 8(g) of the Participation Agreement;

(d)     any Lessee Obligor shall have failed to perform or observe in any material respect  any other covenant or agreement (ie, other than those covered by the preceding paragraph (a), (b) or (c) of this Clause 13) to be performed or observed by it hereunder or under any other Operative Document to which it is a party, and such failure is unremediable, or if remediable and the Lessee is diligently proceeding to remedy such failure, shall continue unremedied for a period of thirty (30) days after the earlier of (i) the Lessee obtaining actual knowledge of such failure or (ii) notice to the Lessee thereof has been given by the Lessor, the Security Trustee or the Insurer Representative;

(e)     any representation or warranty of any Lessee Obligor under any of the Operative Documents or in any document or certificate furnished by the Lessee in connection therewith or pursuant thereto shall be untrue, inaccurate or misleading in any material respect as at the time when made or furnished;

(f)     any license, consent, approval or authorization of, or any filing or registration with, any governmental authority or agency necessary for the performance by a Lessee Obligor of its obligations under this Lease or any other Operative Document or in connection herewith or therewith (including, without limitation, the registration of any Aircraft or the any Mortgage or any Security Agreement) or the Certificate of Airworthiness issued in respect of any Aircraft shall be revoked, not applied for or not issued or shall cease to remain in full force (or, as applicable, is not duly renewed upon the terms consistent with the original approval or otherwise satisfactory to the Security Trustee and the Insurer Representative) or any of the foregoing shall be modified and any such revocation, non-application or issuance or modification would materially adversely affect (in the opinion of the Security Trustee or the Insurer Representative) the rights and remedies of the Lessor hereunder or of any Secured Party under the Operative Documents;

(g)     the Lessee or either Guarantor shall apply for or consent to the appointment of, or the taking of possession by, a receiver, an examiner, a trustee, custodian or liquidator of itself or of a substantial part of its property, or the Lessee or either Guarantor shall admit in writing submitted in connection with judicial or other similar procedures its inability to pay its debts generally as they come due, shall announce a moratorium on payment of its debts or any class of its debts, or shall make a general assignment for the benefit of creditors;

(h)     the Lessee or either Guarantor shall file a voluntary petition or commence a case in bankruptcy or a voluntary petition or an answer seeking reorganization in a proceeding under any bankruptcy or insolvency laws (as now or hereafter in effect) or an answer admitting the material allegations of a petition filed against any the Lessee or either Guarantor in any such proceedings, or the Lessee or either Guarantor shall by voluntary petition, answer or consent to or seek relief under the provisions of any other now existing or future bankruptcy, insolvency, reorganization or other similar law providing for the reorganization or winding-up of corporations, or providing for an agreement, composition, extension or adjustment with its creditors;

(i)     an order, judgment or decree shall be entered in any proceeding by any court of competent jurisdiction appointing, without the consent of such Lessee or either Guarantor, a receiver, trustee, custodian or liquidator of the Lessee or either Guarantor or of any substantial part of its property, or sequestering any substantial part of the property of such Lessee or either Guarantor, and any such order, judgment or decree of appointment or sequestration shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

remain in force undismissed, unstayed or unvacated for a period of sixty (60) days after the date of entry thereof;

(j)      a petition against the Lessee or either Guarantor in a proceeding under any bankruptcy laws or other insolvency laws as now or hereafter in effect shall be filed in a court of competent jurisdiction and shall not be withdrawn or dismissed within sixty (60) days thereafter, or if, under the provisions of any law providing for reorganization or winding-up of corporations which may apply to the Lessee or either Guarantor any court of competent jurisdiction shall assume jurisdiction, custody or control of the Lessee or of any substantial part of its property or any Aircraft and such jurisdiction, custody or control shall remain in force unrelinquished, unstayed or unterminated for a period of sixty (60) days;

(k)      the Lessee or either Guarantor threatens to suspend making payments or declares a moratorium or seeks a restructuring of its Indebtedness or the Lessee shall fail to pay when due (after giving effect to any applicable grace periods) any principal of or interest or scheduled payments in respect of any of its other Indebtedness (i) aggregating ten million Dollars (US$10,000,000) or more (or the equivalent thereof in any currency) or (ii) in respect of any Other Indebtedness, and the lender(s), the funder(s) or an agent or trustee thereof in respect of such Indebtedness declares or thereby becomes entitled to declare such Indebtedness to be due and payable prior to its scheduled maturity;

(l)      any additional procedure similar to those referred to in subparagraphs (g), (h), (i) and (j) above for the relief of financially distressed debtors under any Applicable Law or any other competent jurisdiction is entered into by the Lessee or either Guarantor voluntarily or involuntarily, and is not withdrawn or dismissed within sixty (60) days thereafter;

(m)      any of the events referred to in subparagraphs (g) to (l) above occurs in relation to any Permitted Sub-Lessee, and:

   (i)      the Lessee fails to inform the Lessor, the Security Trustee and the Insurer Representative immediately upon becoming aware of such event; or

   (ii)     the Lessee fails to terminate the leasing of the Aircraft pursuant to the relevant Permitted Sub-Lease immediately upon written request from the Lessor, the Security Trustee or the Insurer Representative.

(n)      a final judgment or judgments for the payment of money in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, shall be rendered against the Lessee or either Guarantor and the same shall remain undischarged for a period of sixty (60) days during which execution of such judgment shall not be effectively stayed, or an attachment or attachments or other Lien or Liens in respect of such judgment or judgments shall be issued or entered against any of the property of the Lessee or either Guarantor, for an amount in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, and shall remain undischarged or unbonded for thirty (30) days, except, in each case when such is being contested in good faith by appropriate proceedings that do not involve any substantial risk of the sale, seizure, forfeiture or loss of Collateral or title thereto, interest therein or use thereof;

(o)      the existence, validity, enforceability or priority of the Lessor's rights, title and interests to any Aircraft is challenged by any Lessee Obligor or any other Person claiming through the Lessee or this Lease or any other Operative Document becomes wholly or in part to a material extent invalid, illegal or unenforceable for any reason;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(p)     the validity or enforceability (but not any particular interpretation) of any provision of any Operative Document is contested through appropriate proceedings by the Lessee or any Affiliate thereof or by any Government Body seeking to establish the invalidity or unenforceability thereof;

(q)     the Lessee or any Permitted Sub-Lessee shall:

    (i)     (in the case of a Permitted Sub-Lessee) cease, or announce its intention to cease, to conduct its business as a commercial scheduled airline;

    (ii)    other than in circumstances permitted by Clause 8(g) of the Participation Agreement, assign, lease or otherwise dispose of all or any material part of the assets or property (whether by a single transaction or a number of related or unrelated transactions and whether at the same time or over a period of time) comprising the its aircraft or aircraft related business; or

    (iii)   (in the case of a Permitted Sub-Lessee) cease to hold, whether by virtue of the revocation, suspension or non-renewal thereof or otherwise, any air transport license or its equivalent required to enable the it to carry out its principal business or the franchises, concessions, permits, rights or privileges required for the conduct of business or operations of it shall be revoked, canceled or otherwise terminated or the free and continued use and exercise thereof curtailed or prevented, and as a result of any of the foregoing the preponderant business activity of it  shall cease to be that of a commercial airline;

(r)     there shall have occurred and be continuing any "Event of Default" under as and defined in any Other Operative Document;

(s)     The Lessee breaches its obligations under clause 6 or clause 23 of the Participation Agreement;

(t)     there shall be any change (or such change shall be enacted or made by decree or otherwise and shall be scheduled and become thereafter effective) in the laws, regulations or treaties of the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, (while it is leasing an Aircraft from the Lessee) any Permitted Sub-Lessee, the Cayman Islands, Ireland the United States or any government or political agency, subdivision or instrumentality thereof which materially adversely affects the validity, legality or perfection of the Lessor's title to any Aircraft, or any Secured Party's rights in any Aircraft under any Security Document, or which materially adversely affects the Lessor's or any Secured Party's interests under this Lease or materially adversely affects the Lessee's ability to perform or comply with its obligations under this Lease or the legality of such performance or compliance;

(u)     any Government Body shall have condemned, seized or appropriated all or any substantial part of the property of the Lessee or either Guarantor which is likely materially and adversely to affect the ability of such the Lessee or either Guarantor to perform its obligations under the Operative Documents; and/or

(v)     any other event occurs (other than an Event of Loss) or any other circumstance arises which is likely materially and adversely to affect the ability or legal obligation of the Lessee to perform its obligations under any Operative Document to which it is a party.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**14.     REMEDIES**

(a)     Upon the occurrence of any Event of Default or a Termination Event and at any time thereafter so long as the same shall be continuing, the Lessor may (without prejudice to any other rights of the Secured Parties under this Lease or the other Operative Documents), at its option, (in the case of any Event of Default) accept such repudiation and by notice to the Lessee declare this Lease to be in default or a Termination Event to have occurred and (in each case) by notice to the Lessee may, at its option, terminate any commitment of the Lessor to lease any Aircraft for which the relevant Delivery Date has not yet occurred (provided, that upon the occurrence of any Event of Default described in Clause 13.1(g)-(l), this Lease shall automatically be deemed in default and the Lessor's commitment shall automatically terminate); and at any time after this Lease shall be declared or deemed to be declared to be in default or a Termination Event to have occurred under this Clause 14, the Lessor may, so long as the Lessee shall not have remedied all outstanding Events of Default or Termination Events, exercise one or more of the following remedies with respect to all or any part of any Aircraft as the Lessor in its sole discretion shall elect:

(i)     the Lessor may demand that the Lessee pay the Lessor, and the Lessee shall pay to the Lessor, all Basic Rent (for all Aircraft) that has accrued but remains unpaid, together with the then applicable Termination Value for such Aircraft, computed on the date of final payment in full thereof, all Supplemental Rent then due and payable by the Lessee hereunder and all amounts then due and payable by the Lessee to the Lessor or any Secured Party under all other Operative Documents, and upon the indefeasible payment of such amount and all Supplemental Rent then due and payable by the Lessee hereunder, the Term for such Aircraft shall terminate;

(ii)     the Lessor shall be entitled in addition to making any demand referred to in paragraph (a) above:

(A)     to cause the Lessee upon demand of the Lessor (provided that such demand shall be deemed to have been given if the Lessor is stayed by operation of law from making such demand) and at the Lessee's expense, to return promptly, and the Lessee shall return promptly, all or such part of any Aircraft, and the Manuals and Technical Records relating thereto, as the Lessor may so demand, to the Lessor in the manner and condition required by, and otherwise in accordance with all the provisions of, Clause 5 as if such Aircraft was being returned at the end of the Term for such Aircraft, or if the Lessee does not so deliver such Aircraft or the Manuals and Technical Records relating thereto, the Lessor, at its option, may enter upon the premises where all or any part of such Aircraft and the Manuals and Technical Records relating thereto are located and take immediate possession of and remove the same (together with any engine or part which is not an Engine or Part associated with such Aircraft but which is installed on the relevant Airframe or stored with or attached to any relevant Engine, subject to all of the rights of the owner, lessor, lienor or secured party of such engine or part) by summary proceedings or otherwise all without liability accruing to the Lessor for or by reason of such entry or taking of possession, whether for restoration of damage to property caused by such taking or otherwise, provided that all actions of the Lessor in this respect are reasonable and necessary, and the Lessor may institute proceedings to repossess such Aircraft in any jurisdiction where such Aircraft may be located, and provided further that if at any time after the Lessor has exercised its rights under this paragraph (A), the Lessee shall make the payments referred to in paragraph (a) above, the Term for such Aircraft shall terminate;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(B)     following repossession of an Aircraft pursuant to Clause 14(b)(i), to sell such Aircraft at public or private sale, as the Lessor may determine; provided that the Lessor shall apply the proceeds of any sale in the manner set forth in the Intercreditor Deed, and the Lessor agrees to give the Lessee at least ten (10) Business Days' prior notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article 8(4) of the Convention) of the date fixed for any public sale of such Aircraft or of the date on or after which will occur the execution of any contract providing for any private sale thereof, and any such sale shall be conducted so as to afford the Lessee a reasonable opportunity to bid; and

(C)     the Lessor may exercise any other right or remedy which may be available to it as a secured party under Applicable Law or under the Cape Town Convention, including, without limitation, all rights and remedies under Chapter III of the Convention and Chapter II of the Protocol.  the Lessor hereby agrees to give the Lessee at least fifteen (15) days' notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article IX(6) of the Protocol) as set forth in Article IX(6) of the Protocol in connection with a proposal to procure the de-registration and export of an Aircraft without a court order.  the Lessee expressly agrees to permit the Lessor to obtain from any applicable court, pending final determination of any claim resulting from an Event of Default or Termination Event hereunder, speedy relief in the form of any of the orders specified in Article 13 of the Convention and Article X of the Protocol as the Lessor shall determine in its sole and absolute discretion, subject to any procedural requirements prescribed by Applicable Laws.

(b)     In addition, the Lessee shall be liable, except as otherwise provided above, for any and all unpaid Supplemental Rent due hereunder before, after or during the exercise of any of the foregoing remedies and for all legal fees and other costs and expenses actually incurred by the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative by reason of the occurrence of any Event of Default or Termination Event or the exercise of the Lessor's remedies with respect thereto, including (i) all costs and expenses incurred in connection with the return of the relevant Aircraft in accordance with the terms of Clause 5 or in placing the relevant Aircraft in the condition and airworthiness required by such Clause and (ii) any other costs and expenses that the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative may incur in connection with the retaking, holding, storage, export, deregistration and preparing for sale of the relevant Aircraft and other like action or that the Lessee has agreed to assume in any other Operative Document or pursuant to Applicable Law.  Except as otherwise expressly provided above, no remedy referred to in this Clause 14 is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above; and the exercise or beginning of exercise by the Lessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by the Lessor of any or all of such other remedies.  No express or implied waiver by the Lessor of, and no course of dealing by it with respect to, any Event of Default or Termination Event shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default or Termination Event.

(c)     The Lessee hereby consents to the exercise by the Lessor of the remedies granted herein and in the Cape Town Convention.  The Lessee acknowledges and agrees that the Lessor may exercise such of the foregoing remedies as it shall determine in its sole discretion and none of the foregoing remedies is manifestly unreasonable.  To the extent permitted by Applicable Law, the Lessee and the Lessor hereby agree that paragraph 2 of Article 13 of the Convention shall not apply to this Lease or to the exercise of any remedy by the Lessor

FILED DATE: 1/11/2023 2:57 PM   2023L000001

under this Lease or the Cape Town Convention.  Following the occurrence of an Event of Default or Termination Event, the Lessee agrees to immediately discharge, upon demand by the Lessor or the Security Trustee, any registration made with the International Registry in favour of the Lessee.

## 15.    FURTHER ASSURANCES; INVESTMENT OF SECURITY FUNDS

### 15.1    Further Assurances

(a)    The Lessee and the Lessor shall from time to time, at the cost and expense of the Lessee, do and perform such other and further acts and duly execute and deliver such further documents and assurances as may be required by Applicable Laws or requested by the other party to establish, maintain and protect the respective rights and remedies of the other party and to carry out and effect the intent and purpose of this Lease including, if requested by the Lessor, the Security Trustee, the Agent  or the Insurer Representative and at the expense of the Lessee:

      (i)    the execution and delivery of supplements hereto or to the other Operative Documents, in recordable form, subjecting to this Lease or to the other Operative Documents, any replacement or substitute airframe or engine;

      (ii)    the recording or filing of counterparts hereto or thereto, in accordance with the laws of such jurisdictions in which any Aircraft is based as the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee; and

      (iii)    the registration of any interest, assignment or subordination with the International Registry to preserve, protect, perfect or establish priority in respect of any Aircraft Object or Associated Right covered by or related to this Lease, the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee.

(b)    The Lessee shall be solely responsible for obtaining all required consents and approvals of, giving all required notices to, performing all required registrations and filings for recordation with, and taking all other necessary actions in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, any Guarantor the jurisdiction of incorporation or formation of the Lessor, England and Wales and/or the United States of America including any governmental or political agency, subdivision or instrumentality thereof.

(c)    Without limiting the foregoing, the Lessee shall cause this Lease, and any and all additional instruments which shall be executed pursuant to the terms hereof, to be kept, filed, deposited or recorded, at all times, in the International Registry and in such places in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, the jurisdiction of incorporation or formation of the Lessor, the United States of America, England and Wales and such other jurisdictions in which any Aircraft is based as the Lessor, the Security Trustee, the Agent, any Funder or the Insurer Representative may reasonably request in order to perfect and preserve the rights of the Lessor, the Security Trustee, the Agent, the Funder, the Insurer Representative or the other Secured Parties hereunder, and furnish to the Lessor, the Insurer Representative, the Agent, Funder and the Security Trustee an opinion or opinions of counsel or other evidence satisfactory to the Lessor, the Insurer Representative and the Security Trustee of each such filing, deposit or recordation and, without limitation of any of the foregoing, at the reasonable request of the Lessor, the Insurer Representative, the Agent, any Funder or the Security Trustee, promptly

FILED DATE: 1/11/2023 2:57 PM 2023L000001

correct any defect, error or omission which may at any time hereafter be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof and, at the request of the Lessee, the Lessor shall promptly correct any defect, error or omission which may at any time be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof.  Without limiting any of the foregoing, the Lessee will co-operate fully with the Lessor, the Security Trustee, the Agent, the Funder and the Insurer Representative for obtaining the deregistration of any Aircraft and any required export licenses, when requested by the Security Trustee upon any return of any Aircraft required hereunder.

**15.2  Security Funds**

(a)  Notwithstanding anything in this Lease to the contrary, if a Material Default or Event of Default or Termination Event  under this Lease shall have occurred and be continuing or if the Lessor (or the Security Trustee, as the Lessor's assignee) is holding funds pending replacement of any Airframe and/or Engines pursuant to Clause 9, all amounts otherwise payable to the Lessee hereunder shall be paid to the Lessor and shall be held by the Lessor (or, if either Security Agreement shall not have been discharged, shall be paid to and held by the Security Trustee) as security for the obligations of the Lessee under this Lease, and, at such time as there shall not be continuing such Material Default, Termination Event or Event of Default or such replacement is complete, such amounts, net of any amounts theretofore properly applied to the Lessee's obligations hereunder, shall be paid to the Lessee or as the Lessee may direct.

(b)  All funds held by the Security Trustee hereunder shall be held as Collateral under the Lessee Security Agreement to secure, inter alia, the repayment of the Loans and the other amounts expressed to be secured thereunder and applied as provided therein.

**16.  NOTICES**

All notices, consents and other communications hereunder shall be given in accordance with clause 13(c) of the Participation Agreement.

**17.  MISCELLANEOUS; GOVERNING LAW**

(a)  Any provision of this Lease that is prohibited or unenforceable in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and shall not invalidate or render unenforceable the other provisions hereof in any jurisdiction.  To the extent permitted by Applicable Law, the Lessee hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.  No term or provision of this Lease may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought and only as permitted by the Operative Documents.  The Clause and paragraph headings in this Lease and the table of contents are for convenience of reference only and shall not modify, define, expand or limit any of the terms or provisions hereof.

(b)  This Lease and any non-contractual obligations arising out of or in connection with it are governed by English law.

(c)  The provisions of clause 13(d) of the Participation Agreement, in so far as they relate to any dispute between the Lessor and the Lessee, shall apply hereto as if set out in this Agreement, *mutatis mutandis*.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(d)     To the extent that the Lessee may be or hereafter become entitled, in any jurisdiction in which judicial proceedings may at any time be commenced with respect to this Lease, to claim for itself or its property, assets or revenues immunity (whether by reason of sovereignty or otherwise) from suit, jurisdiction of any court, attachment prior to judgment, attachment in aid of execution of a judgment, set-off, execution of judgment or from any other legal process, and to the extent that in any such jurisdiction there may be attributed any such immunity (whether or not claimed), the Lessee hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity.

(e)     The payment obligations of the Lessee payable under this Lease and any other Operative Document (the **payor**) expressed to be payable thereunder in one currency (the **first currency**) shall not be discharged by an amount paid in another currency (the **second currency**), whether pursuant to a judgment or otherwise, to the extent that the amount so paid on prompt conversion to the first currency under normal banking procedures does not yield the full amount of the first currency due thereunder, and the payor shall indemnify the recipient of such payment (the **payee**) against any such shortfall; and in the event that any payment by the payor, whether pursuant to a judgment or otherwise, upon conversion and transfer does not result in payment of such amount of the first currency, the payee shall have a separate cause of action against the payor for the additional amount necessary to yield the amount due and owing to the payee.

(f)     If it is necessary to determine for any reason other than that referred to in Clause 17.1(e) above the equivalent in the first currency of a sum denominated in the second currency, the rate of exchange used shall be that at which in accordance with normal banking procedures the Security Trustee could purchase the first currency with the second currency on the Business Day on which such determination is to be made (or, if such day is not a Business Day, on the next preceding Business Day).

(g)     This Lease may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Lease.

(h)     Except to the extent expressly provided herein, any terms of this Lease which expressly incorporate any provisions of the Cape Town Convention shall prevail in the case of any conflict with any other provision contained herein.  Each of the parties hereto acknowledges and agrees that for purposes of the Cape Town Convention (to the extent applicable hereto), separate rights may exist with respect to each Airframe and Engine.

## 18.     SECURITY FOR THE LESSOR'S OBLIGATION

(a)     In order to secure the repayment, inter alia, of the Secured Obligations, the Lessor has agreed in the Lessor Security Agreement, among other things, to assign to the Security Trustee its right, title and interest in and to this Lease, including all Associated Rights related thereto, subject to the reservations and conditions therein set forth.  The Lessee hereby consents to such assignment and acknowledges receipt of a copy of the Security Agreement it being understood that such consent shall not affect any requirement or the absence of any requirement for any consent under any other circumstances.

(b)     Until the Lien of the Lessor Security Agreement has been released:

    (i)     the Lessee shall, notwithstanding anything herein to the contrary, make all payments of Rent and all other amounts payable hereunder in accordance with clause 13 of the Participation Agreement and such payments shall not be subject to any defence, counterclaim, set-off or other right or claim of any kind which the Lessee may be

FILED DATE: 1/11/2023 2:57 PM   2023L000001

able to assert against the Lessor or any other Person in an action brought by any thereof on this Lease;

(ii)     all rights of the Lessor with respect to this Lease (including all consent, waiver and notice rights), any Aircraft, any Airframe, any Engine or any Part thereof, to the extent set forth in and subject in each case to the exceptions set forth in the Lessor Security Agreement, shall be exercisable by the Security Trustee (to the exclusion of the Lessor); and

(iii)    all documents, notices, certificates and opinions of counsel sent by the Lessee to the Lessor shall also be sent to the Security Trustee.

## 19.    LESSOR'S RIGHT TO PERFORM FOR LESSEE

If the Lessee fails to make any payment of Rent required to be made by it hereunder or fails to perform or comply with any of its agreements contained herein, the Lessor or the Security Trustee may (but shall be under no obligation to) itself make such payment or perform or comply with such agreement, and the amount of such payment and the amount of the reasonable expenses of the Lessor or the Security Trustee incurred in connection with such payment or the performance of or compliance with such agreement, as the case may be, shall be deemed Supplemental Rent, payable by the Lessee upon demand together with interest thereon at the applicable Post-Default Rate.

## 20.    ENGLISH LANGUAGE PREVAILS

For the avoidance of doubt, the Lessor and the Lessee agree any translation of this Lease shall not apply in construing this Lease and that the English version of this Lease shall govern for all purposes.

## 21.    COMPLETE AGREEMENT

Except for the other Operative Documents, this Lease contains the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior written or oral communications or agreements with respect thereto.

## 22.    LIMITATION OF LIABILITY OF THE LESSOR

The Lessee acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Lease is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Master Lease Agreement to be duly executed by their respective duly authorized officers on the date first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 1

### FORM OF ACCEPTANCE CERTIFICATE

[●] (the **Lessee**) at [●] on this [●] day of [●] (the **Delivery Date**), has accepted delivery from [●] (the **Lessor**) of the following described aircraft (the **Aircraft**) pursuant to and in accordance with the terms of that certain Master Lease Agreement (the **Lease**) dated as of [●]between the Lessor and the Lessee:

One (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number [●] and registration mark [●] together with two (2) installed CFM model LEAP-1B27 engines bearing manufacturer's serial numbers [●] and [●], all parts, appliances, components, instruments, accessories, accessions, attachments, avionics (including, without limitation, radio, radar, navigation systems and other electronic equipment), other equipment (including, without limitation, all buyer-designated equipment and all buyer-furnished equipment) and components of whatever nature incorporated or installed in or attached to the Aircraft or such Engines, and all Manuals and Technical Records pertaining to the Aircraft and Engines.

The Lessee further certifies (a) that it has irrevocably accepted the above-described Aircraft for all purposes hereof and of the Lease as being airworthy, in good working order and repair without defect or inherent vice in title, condition, design, operation or fitness for use, and (b) that the Aircraft conforms in all respects with all of the requirements of the Lease.

Capitalized terms used in this Acceptance Certificate not otherwise defined herein shall have the meaning assigned thereto in the Lease.

**IN WITNESS THEREOF**, the Lessee has caused this Acceptance Certificate to be executed in its name by its duly authorized representative on this [●] day of [●].

[●]

By:        _____
Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 2**

**FORM OF LEASE SUPPLEMENT**

LEASE SUPPLEMENT NO. [  ]

THIS LEASE SUPPLEMENT NO. [●] dated [●] (this **Lease Supplement**) is between [●]**,** a [●] company incorporated under the laws of [●], as lessor (the **Lessor**) and [●], a [●] company incorporated under the laws of [●], as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated as of [●] relating to 737 - 8 Boeing model [●] aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.     The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

   (a)     one (1) Boeing model 737 - 8  airframe bearing manufacturer's serial number [●] and [●] registration mark [●]; and

   (b)     two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers [●] and [●], respectively.

2.     The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.     The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.     The parties confirm that the Purchase Price for the Delivered Aircraft is US$[●] and the Initial Rent for the Delivered Aircraft is US$[●].

5.     All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.     The [revised] "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.     This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

[●]

By: _____
      Name:
      Title:

[●]

By: _____
      Name:
      Title:

Receipt of the counterpart of the foregoing Lease Supplement No. [●] is hereby acknowledged on this [●] day of [●].

[●], as Security Trustee

By: _____
      Name:
      Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

Basic Rent
Payment Date                           Basic Rent

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 3

## FORM OF EUROCONTROL LETTER

From:   [**NORWEGIAN AIR INTERNATIONAL LIMITED**]

To:     The Director of the Central Route Charges Office
        European Organisation for the Safety of Air Navigation (EUROCONTROL)
        Rue de La Fusée, 96
        B-1130 Brussels
        Belgium

[     ] 2014

Dear Sirs

### Authorisation Letter

**AIR NAVIGATION CHARGES: ONE (1) BOEING 737 - 8 AIRCRAFT BEARING MANUFACTURER'S SERIAL NUMBER [●] AND REGISTRATION MARK [●] (THE AIRCRAFT)**

We have [subleased] the Aircraft from [[●] (the **Sublessor**)] in accordance with a [sublease] agreement dated [  ] 2017 between us and the [Lessor] [Sublessor].

We hereby authorise you to provide the [Sublessor] (hereby represented by [SECURITY TRUSTEE]) with a general statement of account in relation to air navigation charges incurred by us and due to EUROCONTROL.   Access to the statement(s) of account will be provided in accordance with the procedures established by EUROCONTROL.

The authorisation contained in this letter may only be revoked or amended by a written instruction signed by us and the [Sublessor].

Yours faithfully

For and on behalf of
[**NORWEGIAN AIR INTERNATIONAL LIMITED**]

Name:

Title:

**SCHEDULE 4**

**Form of EU ETS Authority Letter**

From:   **[NORWEGIAN AIR INTERNATIONAL LIMITED]**

To:     All governmental entities in the European Union charged with administering any EU ETS (as defined below) applicable to us and the Aircraft

[●]

Dear Sirs

**Emissions Trading Schemes**

1       Pursuant to the terms of the aircraft lease agreement dated [●] 2017 (the **Lease**) between [●] (the **Lessor**) and  Hardangerfjorden Limited (the **Lessee**) and the aircraft sub-lease agreement dated [●] 2017 (the **Sub-Lease**) between the Lessee and ourselves, we have agreed to sub-lease one (1) Boeing 737 - 8 aircraft with manufacturer's serial number [●]and registration mark [●].

2       We wish to enable each of the Lessor, [●] (the Insurer Representative) and [●] the (Security Trustee) to monitor the performance by us of our obligations under the Emissions Trading Schemes (**EU ETS**).

3       We hereby unconditionally authorise you, on request by the Lessor, the Security Trustee or the Insurer Representative from time to time, to provide the Lessor the Security Trustee or the Insurer Representative with particulars of any obligations due from but unperformed by us under the EU ETS.

4       The authorisation contained herein shall only be revoked or amended upon receipt by you of a written instruction signed by ourselves, the Lessor and the Agent requesting such revocation.

Yours faithfully

………………………………………………
For and on behalf of
**[NORWEGIAN AIR INTERNATIONAL LIMITED]**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATORIES**

**LESSOR**

**AAA MAX I LIMITED**

By:  _____

Name: Elaine Anderson
Title: Director

**LESSEE**

**HARDANGERFJORDEN LIMITED**

By:  _____

Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

SIGNATORIES

**LESSOR**

**AAA MAX 1 LIMITED**

By: _____

    Name:
    Title:    Brian Byrne
           Attorney-in-Fact

**LESSEE**

**HARDANGERFJORDEN LIMITED**

By: _____

Name:
Title:    Brian Byrne
        Attorney-in-Fact

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT G-2

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## LEASE SUPPLEMENT NO. 5

THIS LEASE SUPPLEMENT NO. 5 dated ___31 July___ 2017 (this **Lease Supplement**) is between AAA Max 1 Limited**,** an exempted company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Hardangerfjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated as of 22 June 2017 relating to 737 - 8 Boeing model aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.     The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

(a)     one (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number 42827 and registration mark EI-FYE; and

(b)     two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers 602181 and 602188, respectively.

2.     The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.     The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.     The parties confirm that the Purchase Price for the Delivered Aircraft is US$47,359,732.00 and the Initial Rent for the Delivered Aircraft is US$7,103,959.80.

5.     All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.     The "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.     This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

IN WITNESS WHEREOF, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____

     Name:    **Elaine Anderson**
     Title:     **Director**

Hardangerfjorden Limited

By: _____

     Name:
     Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 5 is hereby acknowledged on this __31st__ day of __July__ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____

     Name:
     Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF,** the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____
Name:
Title:

Hardangerfjorden Limited

By: _____
Name: **Brian Byrne**
Title: **Attorney-in-Fact**

Receipt of the counterpart of the foregoing Lease Supplement No. 5 is hereby acknowledged on this __31st__ day of __July__ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____
Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF,** the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By:     _____
        Name:
        Title:

Hardangerfjorden Limited

By:     _____
        Name:
        Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 5 is hereby acknowledged on this  31st
day of ____July_____ 2017.

Citibank N.A., London Branch, as Security Trustee

By:     _John  1. Kane_____

        Name:
        Title:      John Kane
                    Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

| Basic Rent Payment Date | Basic Rent |
|---|---|
| 27-Oct-17 | 1,087,742.00 |
| 26-Jan-18 | 1,087,742.00 |
| 27-Apr-18 | 1,087,742.00 |
| 27-Jul-18 | 1,087,742.00 |
| 26-Oct-18 | 1,087,742.00 |
| 25-Jan-19 | 1,087,742.00 |
| 26-Apr-19 | 1,087,742.00 |
| 26-Jul-19 | 1,087,742.00 |
| 25-Oct-19 | 1,087,742.00 |
| 27-Jan-20 | 1,087,742.00 |
| 27-Apr-20 | 1,087,742.00 |
| 27-Jul-20 | 1,087,742.00 |
| 27-Oct-20 | 1,087,742.00 |
| 27-Jan-21 | 1,087,742.00 |
| 27-Apr-21 | 1,087,742.00 |
| 27-Jul-21 | 1,087,742.00 |
| 27-Oct-21 | 1,087,742.00 |
| 27-Jan-22 | 1,087,742.00 |
| 27-Apr-22 | 1,087,742.00 |
| 27-Jul-22 | 1,087,742.00 |
| 27-Oct-22 | 1,087,742.00 |
| 27-Jan-23 | 1,087,742.00 |
| 27-Apr-23 | 1,087,742.00 |
| 27-Jul-23 | 1,087,742.00 |
| 27-Oct-23 | 1,087,742.00 |
| 26-Jan-24 | 1,087,742.00 |
| 26-Apr-24 | 1,087,742.00 |
| 26-Jul-24 | 1,087,742.00 |
| 25-Oct-24 | 1,087,742.00 |
| 27-Jan-25 | 1,087,742.00 |
| 25-Apr-25 | 1,087,742.00 |
| 25-Jul-25 | 1,087,742.00 |
| 24-Oct-25 | 1,087,742.00 |
| 27-Jan-26 | 1,087,742.00 |
| 27-Apr-26 | 1,087,742.00 |
| 27-Jul-26 | 1,087,742.00 |
| 27-Oct-26 | 1,087,742.00 |
| 27-Jan-27 | 1,087,742.00 |
| 27-Apr-27 | 1,087,742.00 |
| 27-Jul-27 | 1,087,742.00 |
| 27-Oct-27 | 1,087,742.00 |
| 27-Jan-28 | 1,087,742.00 |
| 27-Apr-28 | 1,087,742.00 |
| 27-Jul-28 | 1,087,742.00 |
| 27-Oct-28 | 1,087,742.00 |
| 26-Jan-29 | 1,087,742.00 |
| 27-Apr-29 | 1,087,742.00 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

| Basic Rent<br>Payment Date | Basic Rent |
|---|---|
| 27-Jul-29 | 1,087,742.00 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT G-3

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# PURCHASE AGREEMENT ASSIGNMENT

Dated as of _____29 June_____ 2017

**ARCTIC AVIATION ASSETS DAC**
**as Assignor**

**and**

**NORWEGIAN AIR SHUTTLE ASA**
**as Assignor and Sub-Lessee**

**HARDANGERFJORDEN LIMITED**
**as Lessee**

**NORWEGIAN AIR INTERNATIONAL LIMITED**
**as Sub-Lessee**

**and**

**AAA MAX 1 LIMITED**
**as Lessor**

**six (6) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

Allen & Overy LLP

0117131-0000002 BK:40179920.15

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS PURCHASE AGREEMENT ASSIGNMENT** dated as of _____29 June_____ 2017 (this **Assignment**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly incorporated under the laws of Ireland (**Arctic**), **NORWEGIAN AIR SHUTTLE ASA**, a company organized under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company incorporated under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly incorporated under the laws of Ireland (**International**).

### W I T N E S S E T H :

**WHEREAS**, Norwegian and The Boeing Company (the **Manufacturer**) entered into that certain purchase agreement number 03754, dated as of 24 January 2012, and that certain Aircraft General Terms Agreement AGTA-NSB, dated 29 August 2007 (the **AGTA**), which is incorporated by reference in that purchase agreement, providing for, inter alia, the sale by the Manufacturer of each Aircraft;

**WHEREAS**, Norwegian assigned and transferred to Arctic its rights and obligations under the Purchase Agreement to purchase the Aircraft in accordance with the Assignment, Assumption and Release Agreement dated 27 November 2014 (the **AARA**).

**WHEREAS**, the benefit of the warranty provisions in the Purchase Agreement were excluded from the rights of Norwegian that were assigned and transferred by it to Arctic under the AARA.

**WHEREAS**, the Lessor wishes to acquire certain rights and interests under the Purchase Agreement and each Assignor, on the terms and conditions set forth herein, is willing to assign to the Lessor certain of its rights and interests under the Purchase Agreement, and the Lessor is willing to accept such assignment; and

**WHEREAS**, the Manufacturer is willing to execute and deliver to the Lessor on each Delivery Date a consent and agreement (the **Consent and Agreement**) to the provisions hereof in substantially the form of Schedule 1 hereto in respect of the relevant Aircraft.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and of other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1.  For all purposes of this Assignment, unless the context otherwise requires, the following terms shall have the following respective meanings:

     **Agent** shall mean Citibank Europe plc, UK Branch, as agent for the Funder.

     **Aircraft** shall mean any of the six (6) Boeing model 737 - 8 airframes described in Schedule 2 hereto (each, an **Airframe**), as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, together, in the case of any Airframe, with two CFM model LEAP-1B27 engines, as more particularly described in Schedule 2, as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, installed on such Airframe and each other engine described in any Purchase Assignment Supplement hereto (collectively, the **Engines**), together with the equipment, components and accessories installed on such Aircraft (other than buyer furnished equipment that has not been converted to seller purchased equipment pursuant to the Purchase Agreement) pursuant to the Purchase Agreement, and together with all technical records, manuals and data with respect thereto provided in relation to such Aircraft pursuant to the Purchase Agreement (collectively, the **Manuals and Technical Records**).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Delivery** shall mean, with respect to an Aircraft, the time when the relevant Sub-Lessee (as designee of the Lessee), as the authorized representative of the Lessor, shall accept delivery of such Aircraft under the Purchase Agreement (as evidenced by delivery to the Lessor from the Manufacturer of the bill of sale in respect of such Aircraft referred to in the Purchase Agreement).

**Delivery Date** shall mean, with respect to an Aircraft, the date on which the Delivery of such Aircraft occurs.

**Engine Manufacturer** shall mean CFM International S.A., a French company, and its successors and permitted assigns.

**Insurer Representative** shall mean Allianz Risk Transfer AG, as Insurer Representative.

**Lease** shall mean, in respect of each Aircraft, the Master Lease Agreement dated on or about the date hereof as supplemented by the lease supplement dated on or prior to the Delivery Date for that Aircraft, substantially in the form of Exhibit I to the Master Lease Agreement, in each case between the Lessor, as lessor, and the Lessee, as lessee, providing for the lease of that Aircraft, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Lease Event of Default** shall have the meaning given to such term in the Lease.

**Lessor Security Assignment** shall mean, in respect of each Aircraft, the security agreement relating to that Aircraft dated on or prior to the Delivery Date for that Aircraft between the Lessor, as mortgagor, and the Security Trustee, as mortgagee, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Participation Agreement** shall mean the Participation Agreement dated as of 22 June 2017 among inter alios the Assignors, the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Funder identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Payment Undertaking Agreement** shall mean the Payment Undertaking Agreement, dated as of 22 June 2017, among the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Funder identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Payment Undertaking Event of Default** shall have the meaning given to such term in the Payment Undertaking Agreement.

**Purchase Agreement** shall mean the purchase agreement no. PA-03754 dated as of 24 January 2012 originally made between Norwegian and the Manufacturer, as assigned to and assumed by Arctic pursuant to the AARA,  and as further amended and supplemented from time to time thereafter, providing for, inter alia, the purchase by Arctic from the Manufacturer of each Aircraft, as more particularly described therein, which incorporates by reference the terms and conditions of the Aircraft General Terms Agreement (AGTA-NSB) dated as of  29 August 2007 between Norwegian and the Manufacturer (the **AGTA**).

**Purchase Assignment Supplement** shall mean in respect of each Aircraft, the purchase assignment supplement relating to that Aircraft entered into between the Assignors, the Lessee, International and the Lessor and consented to by the Manufacturer, substantially in the form of Schedule 3 hereto.

**Purchase Price** shall mean, with respect to an Aircraft, the amount in United States Dollars (U.S.$) in respect of the purchase of such Aircraft as shall be notified by Arctic to the Lessor at least five (5) Business Days prior to the Delivery Date for such Aircraft upon agreement with the Manufacturer

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and pursuant to the terms of the Purchase Agreement; provided that the Lessor's maximum liability under this Assignment in respect of the Purchase Price for such Aircraft shall not exceed the amount set forth in the Purchase Assignment Supplement; provided, further, that in the event that such amount changes after such notification but prior to the relevant Delivery Date, the parties agree that such amount shall be appropriately adjusted.

**Sub-Lessee** shall mean Norwegian or International, as the case may be.

**Security Trustee** shall mean Citibank N.A., London Branch, as Security Trustee.

**Sub-Lease** shall mean, with respect to an Aircraft, the aircraft operating lease agreement entered into or to be entered into on or about the Delivery Date of such Aircraft between the Lessee as lessor and the relevant Sub-Lessee as lessee.

**Sub-Lease Event of Default** shall have the meaning given to the term "Termination Event" in the relevant Sub-Lease.

**Transaction Parties** means the Lessor, the Lessee, Norwegian and International and **Transaction Party** shall mean any one of them.

All other capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Assignment and this Assignment shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

2.   As of the date of delivery of a Purchase Assignment Supplement from the Assignors to the Lessor (with copies to the Manufacturer and the Security Trustee) with respect to an Aircraft, each Assignor shall, with effect from such date, thereby sell, assign, transfer and set over unto the Lessor, its successors and permitted assigns, all of that Assignor's rights and interests in and to the Purchase Agreement as and to the extent they relate to the purchase of such Aircraft and the operation thereof, except as and to the extent expressly reserved below, including in such assignment:

   (a)   the right upon valid tender by the Manufacturer to purchase such Aircraft pursuant to the Purchase Agreement subject to the terms and conditions thereof and the right to take title to such Aircraft and to be named the Buyer in the bill of sale to be delivered by the Manufacturer for such Aircraft pursuant to the Purchase Agreement;

   (b)   the right to accept delivery of such Aircraft, such acceptance to be exercised by the relevant Sub-Lessee (as designee of the Lessee) as the authorized representative of the Lessor, provided that the Manufacturer shall have received written notice in advance of the identity and authority of such authorized representative;

   (c)   all claims for damages in respect of such Aircraft arising as a result of any default by the Manufacturer under the Purchase Agreement in respect of such Aircraft;

   (d)   all warranty and indemnity provisions contained in the Purchase Agreement and all claims arising thereunder, in respect of such Aircraft; and

   (e)   any and all rights of each Assignor to compel performance of the terms of the Purchase Agreement in respect of such Aircraft;

   reserving exclusively to the Assignors, however:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(i)     all the Assignors' rights and interests in and to the Purchase Agreement as and to the extent that it relates to aircraft other than an Aircraft or the purchase, ownership or operation of such other aircraft and to the extent that it relates to any other matters not directly pertaining to an Aircraft;

(ii)    all the Assignors' rights and interests in or arising out of (including any credits for or repayment of) any advance payments made or to be made by the Assignors in respect of such Aircraft under the Purchase Agreement and any other payments or deposits made by the Assignors in respect of such Aircraft under the Purchase Agreement or any other agreement;

(iii)   the right to obtain services, training, data and demonstration and test flights pursuant to the Purchase Agreement; and

(iv)   the right to maintain plant representatives at the Manufacturer's plant pursuant to the Purchase Agreement.

The Lessor hereby accepts the assignment set forth above.

Notwithstanding the foregoing, so long and only so long as no notice has been issued to the Manufacturer, the Lessor hereby authorizes the relevant Sub-Lessee during the term of the Lease in respect of an Aircraft, to the exclusion of the Lessor, to exercise in such relevant Sub-Lessee's name (A) the right to enforce any warranty or indemnity under the Purchase Agreement and to retain any recovery or benefit resulting from the enforcement of any warranty or indemnity under the Purchase Agreement in respect of such Aircraft, (B) all rights to demand, accept and retain all rights in and to all property (other than such Aircraft) and (C) the right to exercise all other rights and powers of the Customer under the Purchase Agreement assigned to the Lessor hereunder in respect of such Aircraft; provided that the Assignors and such relevant Sub-Lessee may not enter into any change order or other amendment, modification or supplement to the Purchase Agreement if such change order, amendment, modification or supplement would (i) result in any rescission, cancellation or termination of the Purchase Agreement or any aircraft warranties in respect of any Aircraft, or (ii) materially diminish the rights and interests assigned hereunder.

For all purposes of this Assignment, the Manufacturer shall not be deemed to have knowledge of or need to recognize the occurrence of a Lease Event of Default, a Termination Event or a Sub-Lease Event of Default, unless and until the Manufacturer shall have received from the Lessee or the Lessor (or the Security Trustee, so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) written notice thereof, addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706. Until such time as a notice shall have been given by the Lessee or the Lessor (or the Security Trustee so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) to the Manufacturer, the Manufacturer shall deal solely and exclusively with the relevant Sub-Lessee. Thereafter, until the Lessee or the Lessor (or the Security Trustee, as the case may be) who served the notice on the Manufacturer shall have notified the Manufacturer that any such Lease Event of Default, Termination Event, Sub-Lease Event of Default or Payment Undertaking Event of Default is no longer continuing (which notice shall be given at such relevant Sub-Lessee's, the Lessee's or the Lessor's (as applicable) written request promptly after the remedy thereof), the Manufacturer shall deal solely and exclusively with the Lessor, the Lessee or the Security Trustee, as the case may be. The Manufacturer may act with acquittance and conclusively rely on such notice. For the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice

FILED DATE: 1/11/2023 2:57 PM   2023L000001

from the Security Trustee shall control and in the event that the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control.

3.    It is expressly agreed that, anything herein contained to the contrary notwithstanding: (a) prior to the execution of a Purchase Assignment Supplement with respect to an Aircraft, each Assignor will perform its obligations with respect to such Aircraft to be performed by it on or before the Delivery Date for such Aircraft, (b) Arctic shall at all times remain liable to the Manufacturer under the Purchase Agreement to perform all duties and obligations of the Customer thereunder to the same extent as if this Assignment had not been executed, (c) the exercise by a Transaction Party of any of the rights assigned hereunder shall not release Arctic from any of its duties or obligations to the Manufacturer under the Purchase Agreement, except to the extent that such exercise by a Transaction Party shall constitute performance of such duties and obligations, and (d) except as specifically provided in the next succeeding paragraph with respect to the Transaction Parties, the Transaction Parties shall not have any obligation or liability under the Purchase Agreement by reason of or arising out of this Assignment or be obligated to perform any of the obligations or duties of Arctic under the Purchase Agreement or to make any payment or to make any inquiry as to the sufficiency of any payment received by it or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder.

Anything contained in this Assignment to the contrary notwithstanding (but without in any way releasing either Assignor from any of its duties or obligations under the Purchase Agreement), the Transaction Parties confirm for the benefit of the Manufacturer that, insofar as the provisions of the Purchase Agreement relate to any Aircraft, in exercising any rights under the Purchase Agreement with respect to such Aircraft, or in making any claim with respect to such Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to such Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, the Transaction Parties to the same extent as if each Transaction Party had been the original Customer thereunder. The Transaction Parties further agree, expressly for the benefit of the Manufacturer, that at any time and from time to time upon the written request of the Manufacturer, the Transaction Parties shall promptly and duly execute and deliver any and all such further assurances, instruments and documents and take all such further action as the Manufacturer may reasonably request in order to obtain the full benefits of the Transaction Parties' agreements set forth in this paragraph.

Nothing contained herein shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the contract rights of the Manufacturer thereunder or require the Manufacturer to divest itself of title to or possession of any Aircraft or other goods and services until delivery thereof and payment therefor on the date of such delivery as provided therein.

Effective at any time after a Sub-Lease Event of Default has occurred, and for so long as such Sub-Lease Event of Default is continuing, the relevant Sub-Lessee does hereby irrevocably appoint the Lessee, its successors and permitted assigns, the relevant Sub-Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessee may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any

FILED DATE: 1/11/2023 2:57 PM   2023L000001

recovery in connection therewith that the Lessee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Lease Event of Default has occurred, and for so long as such Lease Event of Default is continuing, the relevant Sub-Lessee and the Lessee do hereby irrevocably appoint the Lessor, its successors and permitted assigns, the relevant Sub-Lessee's and the Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee, the Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessor may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessor may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

4.      NEITHER ASSIGNOR SHALL BE DEEMED TO HAVE GIVEN, AND EACH ASSIGNOR HEREBY EXPRESSLY DISCLAIMS, ANY IMPLIED REPRESENTATION OR WARRANTY AS TO THE AIRWORTHINESS, CONDITION, MERCHANTABILITY, DESIGN, OPERATION OR FITNESS FOR USE OF ANY AIRCRAFT OR ANY PART THEREOF, OR ANY OTHER IMPLIED REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO ANY AIRCRAFT.

5.      Each Assignor agrees that at any time and from time to time upon the written request of any Transaction Party, it will promptly and duly execute and deliver any and all such further instruments and documents and take such further action as such Transaction Party may reasonably request in order to obtain the full benefits of this Assignment and of the rights and powers herein granted.

6.      Each Assignor does hereby represent and warrant that it has not assigned or pledged, and hereby covenants that it will not assign or pledge so long as this Assignment shall remain in effect, the whole or any part of the rights hereby assigned to anyone other than the Lessor. Each Assignor hereby acknowledges and agrees that the Lessor has assigned to the Security Trustee, as collateral security for the Lessor's obligations under the Payment Undertaking Agreement and the other Operative Documents, all of the Lessor's right, title and interest in and to the Purchase Agreement (as it relates to any Aircraft) and this Assignment pursuant to the Lessor Security Assignment, and each Assignor hereby consents to such assignment.

7.      The Lessor agrees that it will not enter into any agreement with the Manufacturer that would amend, modify, rescind, cancel or terminate the Purchase Agreement in respect of any Aircraft or take any other action to amend, modify, rescind, cancel or terminate any of the Assignors' rights in respect of any Aircraft, without the prior written consent of the Assignors and the Security Trustee (so long as the Lien of the Lessor Security Assignment is in effect and has not been released by the Security Trustee).

8.      Each of the Transaction Parties agrees, expressly for the benefit of the Manufacturer, that it will not disclose, directly or indirectly, any terms of the Purchase Agreement disclosed to it; provided, that (a) the Transaction Parties may use, retain and disclose any such information to its special counsel and public accountants, who shall maintain the confidentiality of the Purchase Agreement, (b) the Transaction Parties may disclose any such information as required by Applicable Law or governmental regulations, (c) to the extent that any Transaction Party may have received a subpoena or other written demand under colour of legal right for such information, such Transaction Party may disclose such information, but it shall first, as soon as practicable upon receipt of such demand, furnish a copy thereof to the Manufacturer, and the relevant Transaction Party shall afford the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer reasonable opportunity, at the moving Person's cost and expense, to obtain a protective order or other reasonably satisfactory assurance of confidential treatment for the information required to be disclosed, (d) the Transaction Parties may disclose any such information to any bona fide potential purchaser or lessee of any Aircraft (subject to execution by such potential purchaser or lessee of a confidentiality undertaking substantially similar to this Section 8) and (e) the Transaction Parties may disclose any such information to the Agent, the Funder, the Security Trustee, the Insurer Representative, each Insurer Group Member and any other Person with whom any of the foregoing is in good faith conducting negotiations relating to the possible transfer and sale of such Person's interests in the Purchase Agreement, any Aircraft and/or any provision of funds (subject to the execution of a confidentiality undertaking substantially similar to this Section 8 by such Agent, Funder, Security Trustee, Insurer Representative, Insurer Group Member and Person described in this paragraph 8) and to their respective special counsel and financial advisors (who shall maintain the confidentiality of the Purchase Agreement to the extent required by this Section 8).

9.      This Assignment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

10.     On the Delivery Date for an Aircraft, subject to satisfaction or waiver of the conditions set forth in the Participation Agreement required to be satisfied on or prior to the Delivery Date for such Aircraft, the Lessor agrees to purchase such Aircraft from the Manufacturer and (without limiting its other payment obligations under the Operative Documents on the Delivery Date for such Aircraft) to pay the Purchase Price for such Aircraft in the manner specified in the Purchase Agreement.

11.     If the Delivery Date for an Aircraft does not occur by 11:59 p.m. (Seattle time) on the date set forth in the Purchase Assignment Supplement in respect of such Aircraft, this Assignment (as it relates to such Aircraft) shall (unless otherwise agreed by the parties hereto) automatically terminate, whereupon the rights subject to this Assignment (as it relates to such Aircraft) shall be deemed reassigned by the Lessor to the Assignors without the requirement of any further act or action (other than any notice required to be given to the Manufacturer).

12.     For the purposes of this Assignment, all notices and other communications shall be in writing, in English, and shall be given or made by fax, or personal delivery and faxed or delivered to the intended recipient (other than the Manufacturer) at the address specified below, or, as to any party, at such other address as shall be designated by such party in a notice to each other party hereto. Except as otherwise provided in this Assignment, all such communications shall be deemed to have been duly given when transmitted by fax (provided such transmission by fax is in legible form and is accompanied by or generates a substantially simultaneous confirmation of transmission), or personally delivered, in each case given or addressed as aforesaid.

(a)     If to the Lessor:

        AAA Max 1 Limited
        c/o Walkers Fiduciary Limited
        Cayman Corporate Centre
        27 Hospital Road
        George Town
        Grand Cayman KY1-9008
        Cayman Islands

        Attention:      The Directors

        Telephone:      +1 345 814 7600

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Email:          issuerpfla@citi.com

(b)     With a copy to the Security Trustee:

Citibank, N.A., London Branch
Canada Square,
Canary Wharf,
London E14 5LB

Attention:      The Directors

Fax:            issuerpfla@citi.comIf to Arctic:

Arctic Aviation Assets DAC
Ground Floor
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:      + 353 879 461 070

Fax:            + 353 1 814 1839

with a copy to Norwegian at the address below.

(c)     If to Norwegian:
Norwegian Air Shuttle ASA
Oksenøyveien 3
Postboks 115
N-1330 Fornebu
Norway

Attention:      Chief Financial Officer

Telephone:      + 47 67 59 3078

Fax:            +47 67 59 3001

(d)     If to the Lessee:

Hardangerfjorden Limited
c/o Arctic Aviation Assets DAC
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:      + 353 879 461 070

Fax:            + 353  1 814 7839

FILED DATE: 1/11/2023 2:57 PM   2023L000001

with a copy to Norwegian at the address above.

(e)     If to International

Norwegian Air International Limited
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:      + 353 879 461 070

Fax:            + 353 1 814 7839

with a copy to Norwegian at the address above.

13.     This Assignment will be governed by, and construed in accordance with, the laws of the State of Washington, except for the conflict of laws principles thereof.

14.     The provisions of clauses 13(d)(ii) to 13(d)(vi) of the Participation Agreement, in so far as they relate to any dispute between the parties shall apply hereto as if set out in this Assignment *mutatis mutandis*.

15.     Each of the parties to this Assignment (except International) acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Assignment is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

16.     International acknowledges and agrees that the provisions of clause 20(c) (No Discharge, etc.; No Petitioning) and clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement apply to it to the same extent as if it were a party to the Participation Agreement and as if the reference to "Lessee" in such clause 20(c) referred to the Lessee and the Sub-Lessee.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Agreement Assignment to be duly executed as of the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 1**

**FORM OF CONSENT AND AGREEMENT**

**THE BOEING COMPANY**

**CONSENT AND AGREEMENT**

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated as of _____ 2017 between **AAA MAX 1 LIMITED** (the **Lessor**), **HARDANGERFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** [(**International/** the **Sub-Lessee**)] **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** [(**Norwegian**/ the **Sub-Lessee**)] (each of Arctic and [Norwegian/ the Sub-Lessee] being an **Assignor**), relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number [●] (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.   all representations, warranties, indemnities and agreements of the Manufacturer under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.   no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.   the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.   if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

5.      the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided, however, that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Payment Undertaking Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.      the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.      the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.      The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

        (a)     the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

        (b)     the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)       to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)       Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.      The Manufacturer hereby confirms to the Security Trustee that:

(a)       upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)       except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.     The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.     The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.     It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 2017

**THE BOEING COMPANY**

By:

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

MSN [●]

**SCHEDULE 2**

**DESCRIPTION OF AIRCRAFT**

Each of the six (6) Boeing model 737 - 8 airframes, bearing Manufacturer's serial numbers 42826, 42830, 42825, 42827, 42828 and 42829, as further identified on each Purchase Assignment Supplement to be entered into by the Assignors, the Lessor, the Lessee and the relevant Sub-Lessee in respect of such airframes, together, in the case of each such airframe, with the two (2) CFM Model LEAP-1B27 engines installed thereon and each other engine identified on any Purchase Assignment Supplement hereto.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 3

### FORM OF PURCHASE ASSIGNMENT SUPPLEMENT

### PURCHASE ASSIGNMENT SUPPLEMENT NO. __

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated _____ 2017 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly organized under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly organized under the laws of Ireland (**International**) and supplements that Purchase Agreement Assignment dated as of _____ 2017 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

### W I T N E S S E T H:

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and International desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and International hereby agrees as follows:

1.      The Sub-Lessee of the Aircraft is:                          _____

2.      Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

    Manufacturer's serial number:                          _____

    Registration Mark:                          _____

    Engine Manufacturer's serial numbers:                          _____ & _____

3.      Latest Delivery Date with respect to such Aircraft:                          _____

4.      Maximum liability of the Lessor with respect to the Purchase Price of such Aircraft:        U.S.$_____

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. ___ to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

### SIGNATURES

### PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

| | | |
|---|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | ) | |
| by **ARCTIC AVIATION ASSETS DAC** | | |
| acting by its lawfully | ) | |
| appointed attorney | ) | ……………………………….. |

Lawfully appointed attorney

in the presence of:                                    )

Witness's Signature:     _____

Name:                            _____

Address:                         _____

                                      _____

**Norwegian**

| | | |
|---|---|---|
| SIGNED AND DELIVERED as a DEED by | | |
| **NORWEGIAN AIR SHUTTLE ASA** | ) | |
| acting by its lawfully appointed attorney | ) | ……………………………….. |

Lawfully appointed attorney

in the presence of:                                    )

Witness's Signature:     _____

Name:                            _____

Address:                         _____

                                      _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **AAA MAX 1 LIMITED** | ) |
| acting by | ) |
| _____ | ) |
| acting under the authority of that | |
| Company, in the presence of: | ) |

Witness's Signature:   _____

Name:   _____

Address:   _____

_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

## PURCHASE ASSIGNMENT SUPPLEMENT

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **HARDANGERFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

…………………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature:     _____

Name:                          _____

Address:                      _____

                                    _____

**International**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR INTERNATIONAL** | ) |
| **LIMITED** | ) |
| acting by its lawfully appointed attorney | |

…………………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature:     _____

Name:                          _____

Address:                      _____

                                    _____

**SIGNATURES (3)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By:
Name:
Title:
Date:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

### PURCHASE AGREEMENT ASSIGNMENT

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by        )

**ARCTIC AVIATION ASSETS DAC**        )
acting by
its lawfully appointed attorney        )

_Tim O'Connell_
Lawfully appointed attorney

in the presence of:

Witness's Signature:    _Vanessa Ceon_

Name:    _Vanessa Caesar_

Address:    _Imbus House_

**Assignor and Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by        )

**NORWEGIAN AIR SHUTTLE ASA**        )
acting by
its lawfully appointed attorney        )

………………………………..
Lawfully appointed attorney

in the presence of:

Witness's Signature:    ………………………………..

Name:    ………………………………..

Address:    ………………………………..

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE AGREEMENT ASSIGNMENT

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by           )

**ARCTIC AVIATION ASSETS DAC**                       )
acting by
its lawfully appointed attorney                      )

………………………………..
Lawfully appointed attorney

in the presence of:

Witness's Signature:     …………………………………..

Name:                    …………………………………..

Address:                 …………………………………..

**Assignor and Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by           )

**NORWEGIAN AIR SHUTTLE ASA**                        )
acting by
its lawfully appointed attorney                      )

ANDERS FREDRIKSEN

….A.T.T.O.R.N.E.Y.-.I.N.-.F.A.C.T.…..
Lawfully appointed attorney

in the presence of:

Witness's Signature:     Simen Strand

Name:                    SIMEN STRAND

Address:                 HARBITZALLEEN 14H

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **AAA MAX 1 LIMITED** | ) |
| acting by | ) |
| | ) |
| _____ | |
| acting under the authority of that | |
| Company, in the presence of: | ) |

Elaine Anderson
Director

Witness's Signature:

Name:                    Josineide Lucena

Address:                Cayman Corporate Centre
                        27 Hospital Road, George Town
                        Grand Cayman KY1-9008
                        Cayman Islands

3                    Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM  2023L000001

## SIGNATURES (2)

### PURCHASE AGREEMENT ASSIGNMENT

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by                )

**HARDANGERFJORDEN LIMITED**                )
acting by
its lawfully appointed attorney                )

Tim O'Connell
...........................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:      *Vanessa Caesar*

Name:                *Vanessa Caesar*

Address:             *Imbus House*

**Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by                )

**NORWEGIAN AIR INTERNATIONAL**                )
**LIMITED**
acting by
its lawfully appointed attorney                )

Tim O'Connell
...........................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:      *Vanessa Caesar*

Name:                *Vanessa Caesar*

Address:             *Imbus House*

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Citibank N.A, London Branch, as security trustee for the Secured Parties and as holder of a security interest in the right, title and interest of the Lessor in and to the Purchase Agreement (as it relates to each Aircraft) and this Assignment pursuant to the terms of the Lessor Security Assignment, agrees to the terms and conditions of this Assignment and agrees that its rights and remedies under the Lessor Security Assignment in respect of the property expressed to be assigned under this Assignment shall be subject to the terms and conditions of this Assignment (including, without limitation, the second paragraph of Section 3 hereof) and of the Purchase Agreement.

**CITIBANK N.A., LONDON BRANCH**
as Security Trustee

By: _John M. Kane_

Name:

Title:
          John Kane
          Vice President

5                                    Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT G-4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**PURCHASE ASSIGNMENT SUPPLEMENT NO. 5**

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated 31 July____ 2017 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly organized under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly organized under the laws of Ireland (**International**) and supplements that Purchase Agreement Assignment dated as of 29 June 2017 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

**W I T N E S S E T H:**

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and International desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and International hereby agrees as follows:

1.    The Sub-Lessee of the Aircraft is:                          Norwegian Air Shuttle ASA

2.    Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

Manufacturer's serial number:                          42827

Registration Mark:                          EI-FYE

Engine Manufacturer's serial numbers:                          602181 & 602188

3.    Latest Delivery Date with respect to such Aircraft:          31 July 2017

4.    Maximum liability of the Lessor with respect to the Purchase Price of such Aircraft:          U.S.$47,359,732.00

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. 5 to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**

**PURCHASE ASSIGNMENT SUPPLEMENT NO. 5**

**Arctic**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | ) |
| by **ARCTIC AVIATION ASSETS DAC** | |
| acting by its lawfully | ) |
| appointed attorney | ) |

Lawfully appointed attorney

in the presence of:                    )

Witness's Signature:

Name:         **Vanessa Caesar**

Address:      **Imbus House**

**Financial Administrator**

**Norwegian**

| | |
|---|---|
| SIGNED AND DELIVERED as a DEED by | |
| **NORWEGIAN AIR SHUTTLE ASA** | ) |
| acting by its lawfully appointed attorney | ) |
| in the presence of: | ) |

Lawfully appointed attorney

Witness's Signature:

Name:

Address:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 5

**Arctic**

**SIGNED AND DELIVERED** as a **DEED**                )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully                                             )
appointed attorney                                               )                  …………………………………..

                                                                                              Lawfully appointed attorney

in the presence of:                                               )

Witness's Signature:              _____

Name:                                    _____

Address:                                _____

                                              _____

**Norwegian**

SIGNED AND DELIVERED as a DEED by
**NORWEGIAN AIR SHUTTLE ASA**                            )
acting by its lawfully appointed attorney                    )

in the presence of:                                               )

Witness's Signature:          *Simen Strand*

Name:                                *SIMEN STRAND*

Address:                            *HARBITZALLEEN 14H*

                                          _____

ANDERS FREDRIKSEN
………ATTORNEY-IN-FACT………..
Lawfully appointed attorney

Purchase Agreement Assignment Supplement No. 5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by                                    )
**AAA MAX 1 LIMITED**                                            )
acting by                                                        )
                                                                 )
_____
acting under the authority of that                               )
Company, in the presence of:

**Elaine Anderson**
**Director**

Witness's Signature:

Name:

Address:          Cayman Corporate Centre
                  27 Hospital Road, George Town
                  Grand Cayman KY1-9008
                  Cayman Islands

Purchase Agreement Assignment Supplement No. 5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

### PURCHASE ASSIGNMENT SUPPLEMENT NO. 5

**Lessee**

| | | |
|---|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) | |
| **HARDANGERFJORDEN LIMITED** | ) | |
| acting by | ) | |
| its lawfully appointed attorney | ) | |

Lawfully appointed attorney

in the presence of:

Witness's Signature:

Name:        Vanessa Caesar

Imbus House

Address:     Financial Administrator

**International**

| | | |
|---|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) | |
| **NORWEGIAN AIR INTERNATIONAL** | ) | |
| **LIMITED** | ) | |
| acting by its lawfully appointed attorney | | |

Lawfully appointed attorney

in the presence of:

Witness's Signature:

Name:        Vanessa Caesar

Imbus House

Address:     Financial Administrator

Purchase Agreement Assignment Supplement No. 5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

SIGNATURES (3)

PURCHASE ASSIGNMENT SUPPLEMENT NO. 5

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By: _____

Name: Doug VanValkenburgh

Title: Attorney - In - Fact

Date:
       31 July 2017

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT G-5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## CONSENT AND AGREEMENT

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated as of 29 June 2017 between **AAA MAX 1 LIMITED** (the **Lessor**), **HARDANGERFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** (**International**), **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** (the **Sub-Lessee**) (each of Arctic and the Sub-Lessee being an **Assignor**), relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number 42827 (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.     all representations, warranties, indemnities and agreements of the Manufacturer under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.     no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.     the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.     if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

5.     the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Payment Undertaking Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.      the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.      the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.      The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)      the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)      the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)      to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)      Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall

subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.   The Manufacturer hereby confirms to the Security Trustee that:

    (a)   upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

    (b)   except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.   The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.   The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.   It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 31 July_ 2017

**THE BOEING COMPANY**

By: _(signature)_

Name: Doug VanValkenburgh

Title: Attorney-In-Fact

MSN 42827

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED
1/11/2023 2:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000001
Calendar, S
21000066

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# GROUP EXHIBIT H

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT H-1

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**EXECUTION VERSION**

# MASTER LEASE AGREEMENT

22 June    **2017**

**Between**

**AAA MAX 1 LIMITED**
**as Lessor**

**and**

**HARDANGERFJORDEN LIMITED**
**as Lessee**

**Up to six (6) Boeing model 737 - 8 aircraft**

# ALLEN & OVERY

Allen & Overy LLP

0117131-0000002 BK:39702344.14

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# CONTENTS

**Clause**                                                                                                                    **Page**

1.   Definitions and interpretation ..............................................................................................1
2.   Agreement to Lease; Term ....................................................................................................1
3.   Rent ........................................................................................................................................2
4.   Lessor's Disclaimer of Warranties; Manufacturers' Warranties ..........................................4
5.   Purchase Options; Return of Aircraft ....................................................................................6
6.   Liens ......................................................................................................................................9
7.   Registration, Maintenance, Operation and Possession ........................................................9
8.   Replacement; Temporary Installation; Pooling; Alterations, Modifications and Additions; Etc .......24
9.   Loss, Destruction, Requisition, Etc .....................................................................................28
10.  Insurance ..............................................................................................................................31
11.  Absolute Obligations ...........................................................................................................39
12.  Assignment ..........................................................................................................................41
13.  Lease Events of Default and Termination Events ...............................................................41
14.  Remedies ..............................................................................................................................45
15.  Further Assurances; Investment of Security Funds ............................................................47
16.  Notices .................................................................................................................................48
17.  Miscellaneous; Governing Law ..........................................................................................48
18.  Security for the Lessor's Obligation ....................................................................................49
19.  Lessor's Right to Perform for Lessee ..................................................................................50
20.  English Language Prevails ...................................................................................................50
21.  Complete Agreement ...........................................................................................................50

**Schedule**

1.   Form of Acceptance Certificate ..........................................................................................51
2.   Form of Lease Supplement ..................................................................................................52
     Form of Eurocontrol Letter .................................................................................................56

Signatories ....................................................................................................................................57

0117131-0000002 BK:39702344.14

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS MASTER LEASE AGREEMENT** dated _____22 June_____ 2017 (this **Lease**)

**AMONG**

(1)     **AAA MAX 1 LIMITED**, an exempted company  with limited liability incorporated and existing under the laws of the Cayman Islands, as lessor (the **Lessor**); and

(2)     **HARDANGERFJORDEN LIMITED**, a limited liability company duly incorporated under the laws of Ireland (the **Lessee**).

 **WITNESSETH:**

(1)     **WHEREAS,** pursuant to that certain Participation Agreement, dated as of the date of execution and delivery thereof (as amended, supplemented and modified from time to time, the **Participation Agreement**), among, *inter alios*, the Lessor, Walkers Fiduciary Limited, as lessor parent, the Lessee, Greensill Capital (UK) Limited, as Funder, Citibank Europe plc, UK Branch, as Agent, Citibank N.A., London Branch, as security trustee, the Lessor and the Lessee have agreed to enter into this Lease.

(2)     **WHEREAS,** pursuant to each Purchase Assignment in respect of an Aircraft, the Lessor will acquire certain rights under the Purchase Agreement in respect of such Aircraft.

(3)     **WHEREAS,** pursuant to the terms and conditions of this Lease, the Lessor has agreed to lease each Aircraft to the Lessee and the Lessee has agreed to lease each Aircraft from the Lessor.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

**1.**     **DEFINITIONS AND INTERPRETATION**

**1.1**     **Definitions**

Unless the context otherwise requires, capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Lease.

**1.2**     **Interpretation**

 This Lease shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

**2.**     **AGREEMENT TO LEASE; TERM**

**2.1**     **Delivery**

The Lessor hereby agrees on each Delivery Date for an Aircraft, subject to (a) the purchase of such Aircraft by the Lessor to be delivered pursuant to the Participation Agreement, the Purchase Agreement and the Purchase Assignment and (b) the satisfaction or waiver of the conditions precedent with respect to such Aircraft set forth or referred to in clause 4 of the Participation Agreement, to accept delivery of, and subject to clause 2 of the Participation Agreement to lease to the Lessee hereunder, and the Lessee hereby agrees, subject to the foregoing and the satisfaction of the conditions precedent (with respect to such Aircraft) set forth in clause 5 of the Participation

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Agreement, to accept delivery of, to sign the Acceptance Certificate and to lease from the Lessor hereunder, such Aircraft, whereupon the Term for such Aircraft shall commence.

## 2.2 Acceptance

The Lessee hereby agrees that the execution of the Acceptance Certificate for an Aircraft in the form of Schedule 1 hereto shall be deemed to constitute unconditional, absolute and irrevocable acceptance of such Aircraft by the Lessee under this Lease.

## 2.3 Term

Subject to acceptance of an Aircraft as provided in Clauses 2.1 and 2.2, the Lessee hereby leases from the Lessor such Aircraft for the Term applicable thereto.

## 2.4 Cape Town Convention

(a) The parties hereto agree that, for all purposes of the Cape Town Convention, upon execution of a Lease Supplement (a) this Lease, together with such Lease Supplement, will constitute a separate International Interest with respect to the Airframe and each Engine identified in such Lease Supplement, (b) such Airframe and Engines each constitute an Aircraft Object and (c) this Lease, together with such Lease Supplement, will constitute an agreement for the registration of such Airframe.

(b) If there is any change to the manner in which the Cape Town Convention is implemented in the Government of Registry, the Lessee shall take such action as the Lessor may require in relation to such change, including:

(i) amending or re-executing any Operative Document;

(ii) registering, perfecting and/or preserving any International Interest(s) vested in the Lessor and the Secured Parties with respect to the Airframe and/or any Engine; and

(iii) entry into agreements (subordination or otherwise) to protect the priority of any International Interest(s) or other registrable interests referred to in the foregoing paragraphs (i) and/or (ii).

(c) The Lessee agrees to indemnify on demand and shall pay or reimburse the Agent, the Funder, the Insurer Representative, each Insurer Group Member, the Lessor, the Lessor Parent and the Security Trustee for any reasonable costs and expenses (including reasonable fees and disbursements of legal counsel and other experts employed or retained by such Person) incurred by such Person in connection with any action taken pursuant to paragraph (b) above.

## 3. RENT

### 3.1 Initial Rent

On or prior to each Delivery Date, the Lessee agrees to pay the Lessor the Initial Rent in Dollars for the Aircraft to be delivered on such Delivery Date.

### 3.2 Basic Rent

In addition, the Lessee agrees to pay the Lessor rent (the **Basic Rent**) for each Aircraft in Dollars with respect to each Rent Period in arrear on each Basic Rent Payment Date occurring during the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Term for such Aircraft, in each case, in an amount calculated in accordance with paragraph (a) through (b) below.

(a)     For all purposes of this Lease, the Basic Rent payable in respect of each Aircraft on each Basic Rent Payment Date for such Aircraft occurring during the Term for such Aircraft shall be equal to the "Basic Rent" set forth in Schedule I to the Lease Supplement for such Aircraft and Basic Rent Payment Date.

(b)     Each instalment of Basic Rent for an Aircraft payable on any Basic Rent Payment Date for such Aircraft shall in all events be in an amount that is equal to the amount payable by the Lessor to the Agent under the Payment Undertaking Agreement in respect of the scheduled Payment Amounts for such Aircraft due on the corresponding Payment Date.

**3.3     Supplemental Rent**

The Lessee shall pay all Supplemental Rent to the Lessor or to such other Person to whom such amount may be owed under the Operative Documents in the currency (whether Dollars or another currency) in which the same is due and owing, and such Supplemental Rent shall be payable within thirty (30) days of demand upon the Lessee (or within such longer period as the Lessor, acting reasonably and having regard to all relevant circumstances (including, without limitation, the timing of any approvals or licenses required from any Government Body of the Government of Registry and/or the jurisdiction of incorporation or formation of the Lessee in order for such payment to be lawfully made) may agree), provided that if any such demand has been made and subsequent to the making of such demand a Material Default, Termination Event or an Event of Default shall occur, any such Supplemental Rent shall be payable forthwith upon the occurrence of such Material Default, Termination Event or Event of Default.  In the event of any failure on the part of the Lessee to pay any Supplemental Rent, the Lessor shall have the same rights, powers and remedies provided for herein or by law or equity or otherwise as in the case of non-payment of Basic Rent.  The Lessee will also pay interest on demand to the recipient entitled thereto, as Supplemental Rent, to the extent permitted by Applicable Laws, at a rate per annum equal to the applicable Post-Default Rate on any part of any instalment of Basic Rent not paid when due for the period from and including the due date thereof to but excluding the date on which the same is paid in full and, in the case of payment to any of the Lessor, the Funder, the Agent, the Insurer Representative, the Security Trustee or any other Person, on any payment of Supplemental Rent payable but not paid when due or demanded by the recipient entitled thereto for the period from and including the due date thereof to but excluding the date on which the same is paid in full.

**3.4     Manner of Payment**

(a)     All Rent and other sums payable hereunder shall be paid by 3:00 p.m. (London time) on the date payment is due, in Dollars (or, in the case of any Supplemental Rent denominated in a currency other than Dollars, in the relevant currency) and in immediately available funds (or such other funds as are from time to time customary for the settlement of international banking transactions in Dollars or other relevant currency in New York City or other relevant jurisdiction of such other currency).  Whenever any payment of Basic Rent shall become due on a day which is not a Business Day, the due date thereof shall be the immediately preceding Business Day, provided always that the amount of Basic Rent shall not be adjusted by reason of such payment being made on such immediately preceding Business Day.

(b)     Whenever any payment (other than a payment of Basic Rent) shall become due on a date which is not a Business Day, or if any such payment is payable on demand and demand is not made on a Business Day or is made on a Business Day but is made outside normal banking hours of the recipient of such demand, demand for such payment shall be deemed to

FILED DATE: 1/11/2023 2:57 PM   2023L000001

have been made on the immediately succeeding Business Day, and if such payment includes any payment of interest (or an amount calculated or determined by reference to interest), the amount payable shall be adjusted accordingly.  All payments of Rent to the Lessor and all other amounts payable hereunder by the Lessee to the Lessor shall be paid to such account as the Lessor may specify from time to time in writing not less than thirty (30) Business Days prior to the date on which the relevant amount is payable.

**3.5     Absolute Obligation**

The obligation of the Lessee to pay Rent hereunder shall be absolute and unconditional as more fully set forth in Clause 11.  To the extent Taxes arise from the leasing of any Aircraft to the Lessee under this Lease which are payable by way of withholding by the Lessee, such Taxes shall be deducted and paid by the Lessee by way of withholding, and the Lessor agrees that the full amount of Rent due under this Lease in respect of an Aircraft shall be the amount of Basic Rent payable in respect of such Aircraft under Clause 3.2 increased by any such Taxes withheld by the Lessee.

**3.6     Associated Rights**

The Lessee hereby agrees to pay and perform all of its obligations under the Operative Documents to which it is a party and further acknowledges and agrees that the payment of Rent hereunder and the performance by the Lessee of its obligations under the other Operative Documents constitute Associated Rights and are secured by and/or associated with the relevant Aircraft and Engines.

**3.7     Assignment of Rent**

Pursuant to the Security Documents, the Lessor has assigned its right to receive Basic Rent and Termination Value hereunder to the Security Trustee, and pursuant to such assignment the Lessor hereby directs, and the Lessee hereby agrees, that all Basic Rent and Termination Value payable to the Lessor hereunder shall be paid directly to the Funder (unless a Material Default, Termination Event or an Event of Default shall have occurred and be continuing and the Insurer Representative or the Security Trustee has given notice to the Funder and the Lessor in which case the Basic Rent and Termination Value shall be paid directly to the Security Trustee).

**4.     LESSOR'S DISCLAIMER OF WARRANTIES; MANUFACTURERS' WARRANTIES**

**4.1     Disclaimer**

Subject to Clause 4.2, the Lessee acknowledges and agrees that (a) each Aircraft is of a size, design, capacity and manufacture selected by and acceptable to the Lessee and (b) the Lessee is satisfied that such Aircraft are suitable for its purposes.  NONE OF LESSOR, LESSOR PARENT, THE FUNDER, THE AGENT, THE SECURITY TRUSTEE, THE INSURER REPRESENTATIVE OR ANY MEMBER OF THE INSURER GROUP SHALL MAKE OR GIVE OR SHALL BE DEEMED TO HAVE MADE OR GIVEN AND HEREBY EXPRESSLY DISCLAIMS ANY REPRESENTATION, WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, AS TO (i) THE AIRWORTHINESS, VALUE, CONDITION, DESIGN, COMPLIANCE WITH SPECIFICATIONS OF, OPERATION OF, OR THE QUALITY OF THE MATERIAL OF OR WORKMANSHIP IN, OR TITLE TO, OR ANY DEFECT IN, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, (ii) THE MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE OF ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, OR AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT OR THE LIKE,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

OR ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (iii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT WITH RESPECT TO ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, WHETHER OR NOT IN STRICT OR ABSOLUTE LIABILITY OR ARISING FROM THE NEGLIGENCE OF LESSOR, THE FUNDER, THE AGENT, THE SECURITY TRUSTEE OR THE INSURER REPRESENTATIVE, ACTUAL OR IMPUTED, (INCLUDING ANY STATUTORY WARRANTY OR CONDITION UNDER THE LAWS OF THE UNITED STATES, ANY STATE THEREOF, THE GOVERNMENT OF REGISTRY OR THE JURISDICTION OF INCORPORATION OR FORMATION OF LESSEE) OR (iv) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF, OR DAMAGE TO, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING, FOR ANY LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES THEREFROM, IT BEING UNDERSTOOD THAT ALL SUCH RISKS, AS BETWEEN LESSEE AND SUCH OTHER PERSONS, ARE TO BE BORNE BY LESSEE, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE OPERATIVE DOCUMENTS.  NONE OF THE INSURER REPRESENTATIVE, ANY MEMBER OF THE INSURER GROUP, THE FUNDER, THE AGENT NOR THE SECURITY TRUSTEE SHALL BE LIABLE OR OTHERWISE RESPONSIBLE IN ANY MANNER FOR ANY REPRESENTATION OR WARRANTY MADE BY THE LESSOR HEREUNDER OR UNDER ANY OTHER OPERATIVE DOCUMENT.

**4.2    Manufacturers' Warranties**

None of the provisions of this Clause 4 or any other provision of this Lease shall be deemed to amend, modify or otherwise affect the representations, warranties or other obligations (express or implied) of the Manufacturer or the Engine Manufacturer or any contractor, subcontractor or supplier of the Manufacturer or the Engine Manufacturer with respect to any Aircraft, any Airframe, any Engine or any Parts, forming a part of or installed on or attached to any Aircraft, any Airframe or any Engine or to release the Manufacturer or the Engine Manufacturer or any such contractor, subcontractor or supplier from any such representation, warranty or obligation.  So long as no Event of Default or Termination Event shall have occurred and be continuing, the Lessee, or any Permitted Sub-Lessee leasing an Aircraft from the Lessee, shall have the benefit of and shall be entitled to enforce (as it shall deem appropriate), either in its own name or in the name of the Lessor (at the cost of the Lessee and in respect of which enforcement the Lessee hereby agrees to indemnify the Lessor) for the use and benefit of the Lessee (or the relevant Permitted Sub-Lessee) during the relevant Term by way of revocable license (provided that the Lessor shall not revoke such license until an Event of Default or Termination Event occurs and is continuing and shall reinstate such license in the event the Event of Default or Termination Event is cured), any and all dealer's, manufacturer's contractor's, or subcontractor's credits, guarantees, indemnities, warranties or other benefits, if any, available to the Lessor in respect of any Aircraft, any Engine and/or any Part, provided that neither the Lessee nor any Permitted Sub-Lessee shall be entitled to modify, amend or otherwise alter any of the foregoing without the prior written consent of the Security Trustee except in circumstances where such modification, amendment or alteration could not reasonably be expected to have a Material Adverse Effect in relation to the Lessor or any Secured Party, and the Lessor agrees at the Lessee's expense to do, execute and deliver such further acts, deeds, matters or things as may be reasonably requested by the Lessee to enable the Lessee to obtain customary warranty service furnished for any Aircraft, any Engine and/or Part by such dealer, manufacturer, contractor or subcontractor or any supplier as aforesaid or to exercise any other rights in relation to any of the foregoing benefits, and any moneys recovered from such enforcement shall be promptly paid to, and retained by, the Lessee (or, if directed by the Lessee, any Permitted Sub-Lessee), provided further, that if a Material Default, Termination Event or Event of Default shall have occurred and be continuing, any such moneys payable to the Lessee or Permitted Sub-Lessee shall instead be paid to the Lessor as security for, and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

applied to, the obligations of the Lessee Obligors under the Operative Documents in such order as the Lessor shall elect and, at such time as no Material Default, Termination Event or Event of Default shall be continuing, to the extent not so applied, promptly paid to the Lessee.  The Lessee hereby acknowledges the provisions of the Purchase Assignment, the Engine Warranties Agreement and each Security Agreement and of the security interests granted to the Security Trustee in respect of the Lessor's rights, title and interests in and to the Purchase Agreement and the Engine Agreement created by the Operative Documents.

**5.**       **PURCHASE OPTIONS; RETURN OF AIRCRAFT**

**5.1**      **Purchase Options**

Provided that the leasing of the relevant Aircraft under this Lease has not otherwise terminated, and no Material Default, Termination Event or Event of Default has occurred and is continuing, the Lessee may on any Basic Rent Payment Date for an Aircraft prior to or including the scheduled end of the Term for such Aircraft, by thirty (30) days' prior written notice (or such shorter period of notice as the Lessor the Insurance Representative and the Security Trustee may agree) delivered to the Lessor (with copies to the Security Trustee, the Insurer Representative and the Agent) (which notice shall be irrevocable), elect for it or a nominee approved by the Insurer Representative (such approval not to be unreasonably withheld) (an **Approved Nominee)** to purchase such Aircraft on such date for a purchase price equal to the Termination Value in respect of such Aircraft on such date, plus any Rent in respect thereof then due and payable plus, if the purchase of the Aircraft occurs on the Final Maturity Date, ten Dollars (US$10).

**5.2**      **Purchase Procedure; Termination**

In connection with the purchase of an Aircraft pursuant to Clause 5.1, upon indefeasible payment to the Lessor of the Termination Value in respect of such Aircraft on such date and any Rent then due in respect of such Aircraft, the Lessor will transfer to the Lessee or its Approved Nominee all of the Lessor's right, title and interest in and to such Aircraft (including any warranties relating thereto and assigned to the Lessor pursuant to the relevant Purchase Assignment and the relevant Engine Warranties Agreement), in "AS-IS, WHERE-IS" condition, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, except that the Lessor will warrant to the Lessee or its Approved Nominee that it has such title to such Aircraft as was delivered to the Lessor by the Manufacturer on the Delivery Date for such Aircraft and the lawful right to transfer such Aircraft in accordance with the terms hereof and that such Aircraft is free of all Lessor Liens attributable to it.  THE WARRANTY CONTAINED IN THE IMMEDIATELY PRECEDING SENTENCE WILL BE MADE BY LESSOR IN LIEU OF AND IN SUBSTITUTION FOR, AND LESSEE HEREBY WAIVES, RELEASES AND RENOUNCES, ALL OTHER EXPRESS OR IMPLIED WARRANTIES, CONDITIONS OR REPRESENTATIONS WITH REGARD TO THE CONDITION OR TITLE OF THE RELEVANT AIRCRAFT (INCLUDING SUCH AS TO THE STATE, DESCRIPTION, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT), AND ALL OBLIGATIONS AND LIABILITIES OF LESSOR HEREUNDER WITH RESPECT TO CONSEQUENTIAL DAMAGES THEREFROM, AND ALL RIGHTS, CLAIMS AND REMEDIES OF LESSEE, EXPRESS OR IMPLIED, ARISING OUT OF LAW OR OTHERWISE WITH RESPECT THERETO THE USE OR OPERATION OF SUCH AIRCRAFT AND ANYTHING GIVEN OR SOUGHT TO BE IMPLIED FROM ANYTHING SAID OR WRITTEN IN THE NEGOTIATIONS BETWEEN THE PARTIES HERETO OR THEIR REPRESENTATIVES PRIOR TO ENTERING INTO THIS LEASE WITH RESPECT THERETO. ANY STATUTORY OR OTHER WARRANTY, CONDITION, DESCRIPTION OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE STATE, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT IS EXPRESSLY EXCLUDED, INCLUDING BUT NOT LIMITED TO:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a)     ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS;

(b)     ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE;

(c)     ANY OBLIGATION OR LIABILITY WITH RESPECT TO ANY ACTUAL OR ALLEGED INFRINGEMENT OF PATENTS, LICENSES OR THE LIKE, OR ANY OTHER INTELLECTUAL PROPERTY;

(d)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM EACH PARTY'S OR ITS ASSIGNS' NEGLIGENCE, ACTUAL OR IMPUTED; AND

(e)     ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO SUCH AIRCRAFT, FOR LOSS OF USE, REVENUE OR PROFIT WITH RESPECT TO LESSEE OR FOR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF WHATEVER DESCRIPTION.

In connection with such transfer, the Lessee shall prepare and the Lessor shall execute, all in form and substance satisfactory to the Lessee and/or in a form recordable in the Government of Registry, a bill of sale evidencing each such transfer, a termination of this Lease in respect of such Aircraft and such other documents (including the discharge of the Lien of the Aircraft Mortgage in respect of such Aircraft and the other Security Documents and opinions of counsel) as the Lessee may reasonably request, all at the expense of the Lessee.  Upon a purchase of an Aircraft by the Lessee or its nominee pursuant to Clause 5.1 and Clause 5.2 or Clause 14, the leasing of such Aircraft under this Lease shall terminate.

**5.3**    **Return of Aircraft; Condition Upon Return**

(a)     Unless the Lessee or its nominee shall have acquired title to an Aircraft pursuant to Clause 5.2 or Clause 14, the Lessee will, upon the termination or expiration of this Lease with respect to such Aircraft (other than following an Event of Loss with respect to such Aircraft), at its own risk and expense, cause the Airframe for such Aircraft, together with the Manuals and Technical Records therefor, to be delivered to the Lessor pursuant to Clause 5.6, fully equipped with two Engines, duly installed thereon (or one or two Replacement Engines of the same manufacturer or of another manufacturer, of the same or an improved model (it being understood that such engines on such Aircraft shall be of the same or an improved model and suitable for installation and use on the Airframe for such Aircraft but having a value and remaining useful life at least equal to, and being in as good operating condition as, the Engines leased by the Lessee for such Aircraft)), duly installed thereon.

(b)     At the time of such return, (i) such Aircraft shall have a valid Certificate of Airworthiness, (ii) the Airframe and Engines or engines for such Aircraft shall be free and clear of all Liens (other than any the Lessor Liens, Funder Liens or other Liens arising under any Operative Document), (iii) the Airframe and Engines or engines for such Aircraft shall be in as good operating condition, and in proper operating condition for scheduled revenue passenger flights as provided in this Clause 5.3, Clause 7.2 and Clause 8 and (iv) such Aircraft shall, except as otherwise provided herein, be in substantially the same configuration and have installed (A) the same or equivalent avionics and other equipment, safety equipment and appurtenances as when such Aircraft was originally delivered to the Lessee hereunder and (B) all other equipment financed on the Delivery Date for such Aircraft (it being agreed that the records of the Manufacturer, including the Purchase Agreement and the Manuals and Technical Records, shall be prima facie evidence thereof).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(c)     Upon such return the Airframe for such Aircraft shall have cleared a recently completed major check as would be required to clear such Aircraft for at least the next 12 months and such Engines and all major components for such Aircraft shall have at least 50% of the hours, cycles or time (whichever is more limiting) in each case remaining until the next anticipated engine refurbishment, overhaul or inspection requiring removal.  At the time of such return, the Lessee shall also at its own expense:

      (i)     remove or paint over all names, insignia and other indications of the Lessee or any Permitted Sub-Lessee from the exterior and interior of such Aircraft in a good, workman-like manner;

      (ii)     transfer or cause to be transferred, or reassign or cause to be reassigned, to the Lessor to the extent then possible all assignable and remaining warranties and performance guarantees obtained by the Lessee or any Permitted Sub-Lessee with respect to such Aircraft, together with all documents related thereto that may be required to effect such transfer or reassignment; and

      (iii)     if requested by the Lessor, obtain an export certificate of airworthiness (if available) for, and obtain or submit any applicable approval, permit, license or report for the re-export of, such Aircraft from the Civil Aviation Authority and deregister such Aircraft from the registry maintained by the Government of Registry.

(d)     If the Lessee fails to remove or procure the removal by the Permitted Sub-Lessee of the registration or to obtain the export certificate of airworthiness or such re-export approval, permit or license as provided above, the Lessor may do so at the cost and expense of the Lessee and, in such event, the Lessee shall upon demand reimburse the Lessor for the cost thereof.  The Lessee hereby irrevocably appoints the Lessor, upon such failure of the Lessee, as its true and lawful attorney-in-fact, with full power of substitution, in the Lessee's name or otherwise, to carry out the provisions of this Clause 5.3 and to take any action and to execute and/or file any instrument necessary to accomplish the purposes of this Clause 5.3.

(e)     If any other of the foregoing requirements shall not be satisfied at the time of return, the Lessee shall (at the Lessor's election) either promptly remedy any deficiency or make a payment fully compensating the Lessor for the remedy of such deficiency.  If requested by the Lessor, the Lessee shall perform or procure the performance of (at the sole cost and expense of the Lessee):

      (i)     a complete videotape borescope inspection of such Engines in accordance with Engine Manufacturer's maintenance manual demonstrating to the Lessor's satisfaction that such Engines (or any module) are not unserviceable or beyond serviceable limits (or serviceable with limitations) under such manual; and

      (ii)     a flight test demonstration, at the Lessee's expense and during normal business hours, for a period of not more than two hours at any airport referred to in Clause 5.4.  Personnel designated by the Lessor may participate as observers in such demonstration flight and a pilot selected by the Lessor may accompany the Lessee's pilot and occupy the observer's seat during such demonstration.  The purpose of the demonstration flight will be to ascertain that all systems and their components are functioning satisfactorily and in the event they are not so functioning they will be corrected by the Lessee or provision made therefor by the Lessee.

**5.4    Place of Redelivery; Storage Upon Return**

Each Aircraft shall be returned to an airport in Europe designated by the Lessor, and the Lessee shall retain the risk of loss for such Aircraft, and the related Airframe, Engines and Parts, until they are returned in conformity with the provisions of this Lease at such airport.

**5.5    Return of Engines**

In the event that any engine not owned by the Lessor shall be delivered with any returned Airframe as set forth in Clause 5.3 (which engine must meet the requirements of a Replacement Engine, the Lessee shall, concurrently with such delivery, at its own expense, furnish the Lessor with a bill of sale covering such engine, including full warranty as to title, and thereupon the Lessor will transfer to the Lessee, on an "as-is, where-is" basis, without recourse or warranty (except as to the absence of the Lessor Liens, Funder Liens or other Liens arising under or in connection with any Operative Document), all of the Lessor's right, title and interest in and to any Engine constituting part of the relevant Aircraft but not installed on such Airframe at the time of the return of such Airframe.  After such conveyance, the substituted engine shall be deemed an "Engine" as defined herein and shall meet the conditions set forth in Clause 5 hereof.

**5.6    Fuel, Manuals**

Upon the return of each Aircraft, each fuel tank and oil tank shall contain the same quantity of fuel or oil as was contained in the fuel and oil tanks when such Aircraft was delivered to the Lessee on the Delivery Date for such Aircraft.  Upon the return of each Aircraft, the Lessee shall deliver to the Lessor at least one original or certified copy of all logs, manuals and data, and inspection, modification and overhaul records (including all job cards) required to be maintained with respect to such Aircraft under the applicable rules and regulations of the Civil Aviation Authority (collectively, **Manuals and Technical Records**) and such other additional records as would be necessary for the FAA to issue an unrestricted certificate of airworthiness, passenger transport category, for such Aircraft and if any thereof are not in English, certified English translations thereof.

**6.    LIENS**

The Lessee will not (and shall procure that no sublessee will) directly or indirectly create, incur, assume, suffer, permit or allow to exist any Lien on or with respect to any Aircraft or any Airframe or any Engine or any Part, title thereto or any interest therein or in or to this Lease or any other Operative Document or any of its rights hereunder or thereunder, except Permitted Liens.  The Lessee will promptly, at its own expense, take such action as may be necessary duly to discharge or satisfy (by bonding or otherwise) any Lien that is not a Permitted Lien if the same shall arise at any time.

**7.    REGISTRATION, MAINTENANCE, OPERATION AND POSSESSION**

**7.1    Registration**

The Lessee shall, at its sole cost and expense, upon the delivery of an Aircraft, cause such Aircraft to be duly certified as to airworthiness in accordance with the law of the Government of Registry and to be duly registered with the Civil Aviation Authority in the name of the Lessor as owner of such Aircraft and the relevant Initial Permitted Sub-Lessee as operator of such Aircraft, the extent permitted by Applicable Law.  Unless otherwise provided in this Lease, the Lessee shall not take any action, or fail to take any action, which action or failure might cause such airworthiness certification and registration to cease to be in full force and effect or to be revoked, withdrawn or suspended. Without limiting the generality of the foregoing, the Lessee at all times during the Term for an

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Aircraft shall ensure, at the Lessee's sole cost and expense, that prior to the expiration thereof, the Certificate of Airworthiness and Certificate of Registration are renewed or maintained by the Civil Aviation Authority.  Without limiting the generality of Clause 11, the Lessor shall take, and shall co-operate with the Lessee to take, at the Lessee's sole cost and expense all actions necessary to permit and maintain such registration and to permit the Lessee to receive copies of all correspondence and communications to and from the Civil Aviation Authority.  Except as expressly permitted by the Operative Documents, the Lessee shall not, during the Term for an Aircraft, take any action which (a) may cause deregistration of such Aircraft from the Civil Aviation Authority or (b) the removal of the Lien of the Aircraft Mortgage in respect of such Aircraft from the Civil Aviation Authority.

**7.2    Maintenance**

The Lessee shall, at the Lessee's cost and expense:

(a)    establish, maintain or cause the establishment and maintenance of a maintenance programme for Boeing model 737 - 8 aircraft and for CFM model LEAP-1B27 engines (and Replacement Engines), as the case may be, each conforming with the Manufacturer's and Engine Manufacturer's maintenance planning document and approved by the Civil Aviation Authority (collectively, the **Approved Maintenance Programme**), and ensure that all service, inspection, maintenance, modification, storage, repair and overhaul of each Aircraft is performed in accordance with such Approved Maintenance Programme, by the Lessee or by the Permitted Sub-Lessee if so approved by the Civil Aviation Authority or by a maintenance facility approved by the Civil Aviation Authority (the **Approved Maintenance Facility**), provided that (i) all Manuals and Technical Records shall be kept in the English language, (ii) the Lessee shall submit the Approved Maintenance Programme to the Lessor, the Insurer Representative and Security Trustee on or prior to the Delivery Date for each Aircraft and shall advise the Lessor, and the Insurer Representatve, upon the their reasonable request, of any material subsequent changes to such Approved Maintenance Programme by issuing revisions thereof approved by the Civil Aviation Authority to the Lessor, Security Trustee, the Insurer Representative and the Agent and (iii) upon the return of any Aircraft pursuant to the terms hereof, such Aircraft shall be capable of qualifying immediately for the issuance of a Certificate of Airworthiness issued by the FAA for commercial passenger transport;

(b)    keep each Airframe, each Engine and all Parts or procure each of the same are kept in good operating and serviceable condition and repair, and in such condition (including maintenance of the Manuals and Technical Records) as necessary to enable all applicable airworthiness certifications of each Aircraft to be maintained in good standing at all times under the Applicable Laws of the Government of Registry except when such Aircraft is undergoing service, maintenance, modification, overhaul, testing and/or repairs as required or permitted hereunder;

(c)    promptly furnish the Lessor, upon request, with such information as may be required to enable the Lessor to file any report required to be filed by the Lessor with any Government Body because of the Lessor's ownership of each Aircraft or the Lessor's lease of each Aircraft hereunder, as the case may be;

(d)    procure that each Airframe, each Engine and each Part is maintained, inspected serviced, stored, repaired, modified and overhauled (i) to comply with all warranty requirements pursuant to the Purchase Agreement or the Engine Agreement, as the case may be, (ii) in accordance with Manufacturer's and Engine Manufacturer's repair manuals, (iii) pursuant to the Approved Maintenance Programme and (iv) in a manner that does not discriminate against any Aircraft, any Airframe or any Engine when compared to the highest applicable standard (including the prompt performance of Service Bulletins, mandatory Manufacturer's

and Engine Maufacturer's directives and Airworthiness Directives) applied by the Lessee or the Permitted Sub-Lessee with regard to similar aircraft owned, operated or leased by the Lessee or the Permitted Sub-Lessee;

(e)     procure and maintain in effect with Manufacturer and Engine Manufacturer a revision service, if any, for all Manuals and Technical Records, and maintain the Manuals and Technical Records in such condition to satisfy the standards of the Civil Aviation Authority for a Certificate of Airworthiness for commercial passenger/cargo transport;

(f)     procure that for each Aircraft, all applicable mandatory alert Service Bulletins issued by Manufacturer and Engine Manufacturer shall be accomplished, and, in addition, all other Service Bulletins the Lessee or the Permitted Sub-Lessee adopts during the Term for such Aircraft for any similarly operated aircraft of the same model in the Lessee's or the Permitted Sub-Lessee's fleet, it being the intent of the parties that no Aircraft shall be discriminated against in any manner in Service Bulletin compliance and other maintenance matters; and

(g)     for each Aircraft, comply with all applicable Airworthiness Directives issued by the Civil Aviation Authority and which become due during the Term for such Aircraft or which at the time of redelivery of such Aircraft to the Lessor pursuant to the terms hereof have been issued by the Civil Aviation Authority or made mandatory by EASA upon operators regarding Boeing model 737 - 8 aircraft, CFM model LEAP-1B27 engines and any Part, as the case may be, and which have become due.

Neither the Lessor nor any Secured Party shall bear responsibility or liability for any grounding or suspension of operations of any Aircraft resulting from Airworthiness Directives, Service Bulletins, or any repairs or modifications to any Aircraft by the Lessee or any other Person.

**7.3     Operation**

Subject to Clause 7.5, the Lessee undertakes that no Aircraft will be maintained, used, insured or operated:

(a)     in violation of the Certificate of Airworthiness or any license or registration of, or with, any Government Body having jurisdiction over the Lessee (or any Permitted Sub-Lessee) or such Aircraft;

(b)     for any primary purpose other than the commercial transportation of passengers and/or cargo, provided that cargo shall be carried only in the cargo hold of such Aircraft;

(c)     in violation of the Approved Maintenance Programme or any warranty requirements pursuant to the Purchase Agreement, Engine Agreement or any other agreement setting forth any other material warranties with respect to such Aircraft, the related Airframe, Engines or Parts;

(d)     for any purpose or in any manner for which it is not designed or reasonably suited or outside the tolerances and limitations for which such Aircraft, the related Airframe or any related Engine was designed in accordance with the Approved Maintenance Program, Applicable Laws and applicable material warranties;

(e)     at any time while the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof are not in full force and effect;

(f)     for any purpose or in any manner inconsistent with the terms of, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(g)    in any place inconsistent with the terms of, excluded from coverage by, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof (or outside any geographical limit imposed by the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof, including without limitation, in or through any recognized or (in the Lessor's reasonable opinion) threatened area of hostilities unless fully covered by war risk and allied perils insurance in amounts and scope required by this Lease; or

(h)    in violation of any Applicable Law of or by any Government Body having jurisdiction over the Lessor or the Lessee or any Secured Party or any Aircraft or any mandatory requirement of Manufacturer, Engine Manufacturer or supplier, except for unintentional minor or nonrecurring violations which are cured promptly and which:

(i)     do not involve any loss or reduction of coverage under any of the Aircraft Insurances or any Aircraft Reinsurances required by the terms of Clause 10;

(ii)    do not involve any material risk of the sale, forfeiture or loss of or damage to such Aircraft or any interest therein;

(iii)   do not involve any material risk of the Lessor or any Secured Party being subject to civil penalties;

(iv)    do not involve any risk of criminal penalties being imposed against or upon the Lessee, the Lessor, the Lessor Parent or any Secured Party, which in the case of the Lessor or the Lessee shall be a material risk; and

(v)     do not subject the Lessor, the Lessee or the Permitted Sub-Lessee to any fine or penalty or enforcement action which would materially adversely affect the business or operations of the Lessor, the Lessee, the Permitted Sub-Lessee or any Guarantor, the operation of any Aircraft or the rights of the Lessee, the Lessor or any Secured Party hereunder or under any other Operative Document,

provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party or have any material risk of the sale or forfeiture of any Aircraft, or of materially adversely affecting the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder, and if any Applicable Law requires alteration of any Aircraft, the Lessee will conform thereto or obtain conformance therewith at no cost or expense to the Lessor or any Secured Party and will maintain such Aircraft in proper operating condition under such Applicable Law, provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party, have any material risk of the sale or forfeiture of any Aircraft or any Engine, or adversely affect the rights of the Lessor or any Secured Party hereunder or under any other Operative Documents or the obligations of the Lessee hereunder.

Further, the Lessee undertakes that:

(i)     all debts, costs, Losses, liabilities, premiums, calls, contributions, penalties, landing fees, overflight and navigation charges (including Eurocontrol fees), dues, tolls, charges, fines, recoveries or other expenses with respect to any Aircraft shall be duly and punctually paid and discharged during the Term, provided that the Lessee may in good faith diligently contest the validity or application of any of the foregoing in

FILED DATE: 1/11/2023 2:57 PM   2023L000001

any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of the sale of forfeiture of any Aircraft, or adversely affecting the rights of the Lessor or any Secured Party hereunder or under any of the other Operative Documents or the obligations of the Lessee hereunder or any risk of any criminal penalties or criminal liability being imposed, and upon reasonable request by the Lessor, the Insurer Representative or the Security Trustee shall confirm to such Person's reasonable satisfaction that such action has been taken;

(ii)     no alteration in or modification or addition to any Airframe, any Engine or any Part, or any removal of any Engine or any Part from the Aircraft, or installation on or attachment to any Airframe, any Engine or any Part of anything not being part of any Aircraft on the Delivery Date shall occur unless expressly permitted by this Lease, including under Clause 8.4; and

(iii)    it shall not and shall procure that any Permitted Sub-Lessee shall not cause or permit to be done anything regarding any Airframe, any Engine or any Part the effect of which may be reasonably expected to result in such Airframe, such Engine or such Part being requisitioned for title or arrested or otherwise to jeopardize the interests of the Lessor and the Secured Parties in and to such Airframe, such Engine or such Part.

## 7.4     Possession

(a)     Subject to Clauses 7.5, 8 and 9, the Lessee shall not and shall procure that no Permitted Sub-Lessee shall, without the prior written consent of the Insurer Representative and the Security Trustee (which consent may be withheld in their sole discretion), sublease (whether directly, under a Dry Lease or Wet Lease), or otherwise in any manner deliver, transfer or relinquish possession of any Airframe, any Engine or any Part to any Person or firm or install any Engine, or permit any Engine to be installed, on any airframe other than the associated Airframe, provided, however, that (subject to Clauses 7.5, 8 and 9) so long as no Termination Event or Event of Default shall have occurred and be continuing, the Lessee may, without the prior written consent of the Insurer Representative or the Security Trustee:

(i)     deliver or permit the delivery of possession of any Airframe, any Engine or any Part (A) to the manufacturer thereof for testing or other similar purposes or (B) to an Approved Maintenance Facility for service, repair, maintenance or overhaul work on such Airframe, such Engine, such Part or any part thereof or for alterations or modifications in or additions to such Airframe, such Engine or such Part to the extent required or permitted by the terms of Clause 8.4, but in any event only in compliance with the Approved Maintenance Programme and Clause 7.2;

(ii)     install or permit the installation of an Engine for any reason on another airframe owned by the Lessee free and clear of all Liens, except (A) Permitted Liens and except those that apply only to the engines (other than the Engines), appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment (other than Parts) installed on such airframe (but not to such airframe as an entirety); and (B) mortgage liens or other security interests, but only if the holder of such mortgage lien or other security interest expressly agrees that such Engine shall not become subject to the Lien of such mortgage or security interest, notwithstanding the installation thereof on such airframe;

(iii)    install or permit the installation of an Engine for any reason on an airframe owned or operated by the Lessee or an Approved NAS Sub-Lessee (while such Approved

FILED DATE: 1/11/2023 2:57 PM   2023L000001

NAS Sub- Lessee is leasing the Engine from the Lessee pursuant to a Permitted Sub-Lease) leased under a lease unrelated to this Lease to the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) or purchased by the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) subject to a conditional sale or other security agreement, provided, however, that in any such case the Lessee shall provide written assurance reasonably satisfactory to the Lessor and the Security Trustee that the rights, title and interests of the Lessor and the Secured Parties in such Engine under the Operative Documents will not be derogated in any material manner as a result thereof;

(iv)     temporarily install an engine on an Airframe which does not satisfy the requirements of Replacement Engine; and

(v)      Wet Lease an Aircraft for a term not to exceed the lesser of six (6) months and the remainder of the Term for such Aircraft,

provided, in each case, that the rights of any transferee who receives possession by reason of a transfer permitted by this Clause 7.4 (other than the transfer of an Engine which is deemed an Event of Loss) SHALL BE EXPRESSLY SUBJECT AND SUBORDINATE TO ALL THE TERMS OF THIS LEASE AND THE OTHER OPERATIVE DOCUMENTS, including the Lessor's and the Secured Parties' rights to a repossession pursuant to Clause 14 hereof, to terminate and avoid this Lease or other transfer upon such repossession and to require the Lessee or other transferee to forthwith deliver any Airframe and/or any Engine subject to this Lease or other transfer upon repossession, and the Lessee shall remain primarily liable hereunder for the performance of all of the terms of this Lease to the same extent as if such transfer had not occurred.

(b)      No relinquishment of possession of any Airframe, any Engine or any Part shall affect in any way the registration of any Aircraft or discharge or diminish any of the Lessee's obligations hereunder or under any of the other Operative Documents or constitute a waiver of the Lessor's or any Secured Party's rights or remedies hereunder or under any of the other Operative Documents.

(c)      The Lessor agrees, for the benefit of the Lessee (and any Permitted Sub-Lessee) and for the benefit of any mortgagee or other holder of a security interest in any engine (other than an Engine) owned or leased by the Lessee (or any Permitted Sub-Lessee), any lessor of any engine (other than an Engine) leased to the Lessee (or any Permitted Sub-Lessee) and any conditional vendor of any engine (other than an Engine) purchased or leased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale agreement or any other security agreement, that no interest shall be created hereunder in any engine so owned, leased or purchased and that none of the Lessor, Security Trustee nor their respective successors or assigns will acquire or claim, as against the Lessee (or any Permitted Sub-Lessee) or any such mortgagee, lessor or conditional vendor or other holder of a security interest or any successor or assignee of any thereof, any right, title or interest in such engine as the result of such engine being installed on any Airframe, provided, however, that such agreement of the Lessor shall not be for the benefit of any lessor of or secured party in respect of any airframe (other than an Airframe) leased to the Lessee (or any Permitted Sub-Lessee) or purchased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale or other security agreement or for the benefit of any mortgagee of or any other holder of a security interest in an airframe (other than an Airframe) owned by the Lessee (or any Permitted Sub-Lessee), unless such lessor, conditional vendor, other secured party or mortgagee has expressly agreed (which agreement may be contained in such lease, conditional sale or other security

FILED DATE: 1/11/2023 2:57 PM   2023L000001

agreement or mortgage) that neither it nor its successors or assigns will acquire, as against the Lessor, the Security Trustee or any other Secured Party any right, title or interest in an Engine as a result of such Engine being installed on such airframe.

(d)     The Lessee will, upon reasonable request, furnish to the Insurer Representative, the Security Trustee and the Agent prompt notice of any transfer or relinquishment of possession of any Aircraft permitted under this Clause 7.4 (other than Clause 7.4(a)), and if requested by the Insurer Representative, the Security Trustee or the Agent a copy of the documents relating to such transfer or relinquishment of possession, duly certified by an officer's certificate of the Lessee being a complete and correct copy of all documents so provided.

## 7.5     Dry Leasing

(a)     The Lessee shall not enter into any sublease (whether by Dry Lease or any other similar arrangement) of any duration with respect to any Aircraft (including any Airframe and any Engines or engines installed thereon) with any Person without the prior written consent of the Insurer Representative and the Security Trustee (each of which may withhold its consent in its sole discretion) other than:

(i)     the Initial Permitted Sub-Lease; or

(ii)     another Permitted Sub-Lease with a Permitted Sub-Lessee.

(b)     Other than in respect of the Initial Permitted Sub-Lease, any such sublease shall be subject to the following conditions and requirements:

(i)     any such sublease shall be made expressly subject and subordinate to all the terms of this Lease and the other Operative Documents, and shall not adversely affect the priority or perfection of the Lien of the Security Documents, the enforceability of the Collateral or the right of the Lessor or the Security Trustee to avoid such sublease and to repossess such Aircraft, the associated Airframe or the associated Engines in connection with the exercise of any remedies upon any Termination Event or Event of Default;

(ii)     the Lessee shall remain primarily liable hereunder for the performance of all terms and conditions of this Lease to the same extent as if such sublease had not occurred;

(iii)     all terms and conditions of this Lease and the other Operative Documents shall remain in full force and effect;

(iv)     prior to entering into any such sublease, the Lessee shall provide to the Lessor and the Secured Parties certificates of insurance and brokers' undertakings from the Lessee's insurance brokers or an authorized representative of the Lessee's insurers reflecting that the Aircraft Insurances required to be maintained pursuant to Clause 10 are in full force and will not be adversely affected due to the sublease;

(v)     such sublease shall (A) provide that such Aircraft, and the associated Airframe, Engines and Parts, be maintained in accordance with the Approved Maintenance Programme, and (B) be governed by English law or another jurisdiction acceptable to the Security Trustee and the Insurer Representative, and (C) be with a Permitted Sub-Lessee;

(vi)     such sublease shall not permit any further sub-leasing and the term of the sublease shall not exceed the remaining Term with respect to such Aircraft;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(vii)    either (A) no re-registration of such Aircraft shall occur as a result of entering into such sublease or (B) if entering into such sublease shall involve the re-registration of such Aircraft, the proposed state of registration of such Aircraft shall be Norway, Ireland, the United Kingdom or shall have been approved by the Insurer Representative and the Security Trustee in writing (which approval may be withheld in their sole discretion) and shall in each case be subject to the following:

(A)    under the Applicable Laws of the proposed state of registration of such Aircraft:

    I.    there shall exist no rights in favour of the Lessee or the relevant sublessee or any other Person that would, upon bankruptcy or other default by such sublessee, prevent the deregistration, re-export and return of such Aircraft to the Lessor (or upon the enforcement of the Lien of the Security Documents, the Security Trustee) in accordance with and as permitted by the terms of Clause 5 upon the exercise by the Lessor of its remedies under Clause 14;

    II.    the Lessor shall be recognized as the owner of such Aircraft and the Secured Parties' Lien over the Aircraft pursuant to the Security Documents shall be recognised;

    III.    there shall be no impediment (as at the date of re-registration) to the exercise of the rights and remedies provided for in this Lease or in any other Operative Document in respect of such Aircraft and the practical realisation by the Lessor and the Secured Parties of the benefits of this Lease and the Security Documents (to the extent relating to the Aircraft and this Lease) will be available under such Applicable Law;

    IV.    the rights of the Lessor under this Lease and the rights and Liens of the Security Trustee and the Secured Parties under the Security Documents, in each case, in respect of such Aircraft, shall be enforceable in the jurisdiction of re-registration and, if requested by the Security Trustee or the Insurer Representative, the Lessor shall provide a new local law mortgage over the Aircraft in favour of the Secured Parties;

    V.    all filings (including all filings required by the Insurer Representative or the Security Trustee pursuant to the Cape Town Convention), recordations and other actions necessary in order to establish, protect and perfect the Lessor's title to the Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Paragraph IV above) shall have been made;

    VI.    no Secured Party shall be required to qualify to do business in such jurisdiction as a result of such re-registration;

(B)    such re-registration shall not result in any Tax for which the Lessee is not required to indemnify;

(C)    the insurance and any reinsurance required in respect of such Aircraft by Clause 10 shall be in full force and effect subsequent to such re-registration and the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee evidence of such insurance reasonably satisfactory to the Insurer Representative and the Security Trustee;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(D)     no Liens (other than Permitted Liens) shall arise as a result of such re-registration;

(E)     all filings, registrations, recordations and other actions necessary under the Applicable Laws of the jurisdiction in which such Aircraft is to be registered, in order to establish, protect and perfect the Lessor's title to such Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Clause 7.5(vii)(A)(IV) above), shall be made;

(F)     the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee an opinion of independent counsel in the state of such re-registration addressed to the Lessor, the Security Trustee, the Agent and the Insurer Representative reasonably satisfactory in form and substance to the Insurer Representative and the Security Trustee; and

(G)     all reasonable costs, expenses, fees and other charges in connection with any such re-registration shall be paid by the Lessee;

(viii)   the Lessee shall (A) at least thirty (30) days prior to such sublease taking effect, give the Lessor, the Security Trustee, the Agent and the Insurer Representative written notice of such proposed sublease together with a copy of the proposed agreement (which agreement must be reasonably acceptable in form and substance to the Lessor, the Security Trustee and the Insurer Representative), (B) deliver a copy of the approved executed agreement to the Security Trustee, the Lessor, the Agent and the Insurer Representative and assign the Lessee's interests in such agreement to the Lessor, who in turn shall assign such interests to the Security Trustee, as a perfected first-priority security interest for the Lessee's obligations hereunder and cause the Lessee to consent to such assignment and to the Lessor's further assignment of such sublease to the Security Trustee for the benefit of the Secured Parties and (C) provide evidence to the Security Trustee, the Agent and the Insurer Representative that registrations have been made with the International Registry with respect to the International Interests, if any, created pursuant to such sublease and the assignments of International Interests, if any, created pursuant to the assignments;

(ix)    the Lessee shall, at least ten (10) days prior to such sublease taking effect, deliver to the Lessor, the Security Trustee, the Agent and the Insurer Representative proposed forms of (A) an acknowledgment by the sublessee recognizing all rights, title and interests of the Lessor, the Security Trustee and the other Secured Parties under the Operative Documents, and (B) a written opinion of counsel in the country of citizenship or incorporation or formation of the relevant sublessee confirming that all steps necessary to protect the rights, title and interests of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents (including, without limitation, registration of all interests, assignments and subordinations with the International Registry) have been taken or will be taken in a manner reasonably satisfactory to the Secured Parties, each in form and substance reasonably satisfactory to the Lessor, the Agent, the Insurer Representative and the Security Trustee, and on or prior to such sublease taking effect, deliver to the Lessor, the Insurer Representative, the Agent and the Security Trustee executed copies of such documents;

(x)     the Lessee shall promptly reimburse the Lessor, the Security Trustee or any other Secured Party for any reasonable costs and expenses (including attorneys' fees and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

expenses) incurred by them in connection with such sublease or any related re-registration; and

(xi)    the proposed sublessee must be solvent.

**7.6**    **Special Operation and Possession Covenants**

In addition to the foregoing requirements, the Lessee covenants and agrees as follows:

(a)    **Restricted Use of Aircraft**

No Aircraft, Engine or Part shall, without the prior written consent of the Lessor, the Security Trustee and the Insurer Representative, (whether, directly or under a Dry Lease, Wet Lease, Charter, blocked-space or other arrangement) be:

(i)    flown to or within, or otherwise operated or used to or within, an Excluded Country if to do so would breach any Applicable Law (including Sanctions) or operated (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under, the laws of, or whose principal place of business or principal place of aircraft operations is located in, an Excluded Country;

(ii)    principally used in, or operated or used (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under the laws of, or whose principal place of business or principal place of aircraft operations is located in, a Restricted Country;

(iii)    "primarily based" in one or more Restricted Countries.  For purposes of this provision, **primarily based** shall mean that during any consecutive seven (7) day period, the aggregate amount of time spent on the ground by such Aircraft, such Engine or such Part, as applicable, in one or more Restricted Countries shall exceed 15% of the total amount of time spent on the ground during such seven (7) day period, provided that the limitation imposed by this paragraph (iii) shall not prohibit, to the extent necessary, any nonrecurring maintenance or other nonrecurring repairs to be done with respect to an Aircraft in a Restricted Country;

(iv)    operated or used by or for any other Person except in accordance with Clauses 7.3, 7.4 and 7.5;

(v)    operated or used in contravention of any United States law, regulation or stated policy of general applicability restricting the operation or use of United States-manufactured or financed aircraft and engines and such restrictions are applicable to the transactions contemplated hereby;

(vi)    flown or otherwise operated or used for any offensive or defensive military purpose;

(vii)    operated or used for any purpose for which it is not designed or reasonably suited in accordance with the Approved Maintenance Programme, Applicable Law and applicable material warranties or for any primary purpose or other than the commercial transport of passengers and cargo; or

(viii)    subleased (whether under a dry lease or wet lease) to any Person other than as provided in this Lease.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     **Waiver of Defences to Repossession**

None of the Lessee, nor any Permitted Sub-Lessee, nor anyone claiming through or under the Lessee or Permitted Sub-Lessee, shall set up, claim or seek to take advantage of any Applicable Laws now or hereafter in force in any jurisdiction in which any Aircraft or any portion thereof may be situated in order to prevent, hinder or delay any effort in accordance with this Lease on the part of the Lessor or the Security Trustee to regain possession of any Aircraft or deregister or re-export any Aircraft or any portion thereof from any jurisdiction in which such Aircraft or any portion thereof may be situated following the occurrence of an Event of Default or Termination Event, and while the same shall be continuing, and the Lessee, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may be lawful so to do, the benefit of all such Applicable Laws (including, without limitation, any rights it may have, if any, to avail itself of the protection provided by the Convention of 1933 on the Unification of Certain Rules Relating to the Precautionary Arrest of Aircraft, or any other similar law, treaty or convention applicable to the Lessee or any Aircraft which would limit the ability of the Lessor or the Security Trustee to repossess or otherwise recover any Aircraft following the occurrence and during the continuance of an Event of Default or Termination Event).

(c)     **Statement of Account of Landing Fees or Navigation Charges**

In the event that a Government Body of any country in which any Aircraft or the Lessee or any Permitted Sub-Lessee operates shall be permitted by Applicable Law to detain or seize, or shall adopt legislation which permits the detention or seizure of, an aircraft for unpaid landing fees or navigation charges without formal legal proceedings, the Lessee shall (and shall procure that any Permitted Sub-Lessee shall) promptly following demand by the Security Trustee or the Insurer Representative, deliver to the Security Trustee, the Agent and the Insurer Representative a letter, in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative, addressed to the airport or air navigation authority of such country authorizing such authority to release to the Security Trustee from time to time a statement of account of all such fees and charges then due in respect of all aircraft owned by or leased to the Lessee or any Permitted Sub-Lessee, as the case may be.

(d)     **Eurocontrol**

The Lessee shall and shall procure that the relevant Initial Permitted Sub-Lessee shall prior to the Delivery Date of an Aircraft, and the Lessee shall procure that any other Permitted Sub-Lessee shall, prior to the commencement of any sub-lease:

(i)      procure that the Lessee or any Permitted Sub-Lessee executes a Eurocontrol Letter and ensure that such letter is promptly sent to and acknowledged by Eurocontrol in accordance with Eurocontrol's advertised procedures;

(ii)     to the extent it has not already done so, promptly enter into a CEFA Agreement and provide the Security Trustee and the Insurer Representative with a copy certified by an officer of such company;

(iii)    if requested by the Security Trustee or the Insurer Representative, promptly obtain from Eurocontrol (via CEFA or otherwise) and provide to the Lessor, the Security Trustee and the Insurer Representative a general statement of account in relation to charges incurred by the Lessee and the Initial Permitted Sub-Lessee (and, if applicable, other Permitted Sub-Lessee); and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(iv)    if Eurocontrol's procedures relating to the availability to third parties of general statements of account are amended, take such actions as may be reasonably requested by the Security Trustee or Insurer Representative to ensure that the Security Trustee is able to obtain (or continue to obtain) such general statements of account in accordance with such procedures.

(e)    **EU ETS Laws**

It shall procure that any Permitted Sub--Lessee:

(i)    comply, and must procure that any other "aircraft operator" for the purposes of the EU ETS Laws complies, with all EU ETS Laws applicable to it/them or the Aircraft and, promptly on request from the Lessor, the Insurer Representative or the Security Trustee, supply to such person evidence reasonably satisfactory to it of such compliance;

(ii)    identify itself as "aircraft operator" to any EU ETS Authority whenever required under the EU ETS Laws or whenever the Lessor, the Insurer Representative or the Security Trustee may request.

(f)    **No Operation by the Secured Parties**

In no event shall any Secured Party be represented as carrying goods or passengers on any Aircraft or as being in any way connected or associated with any operation or carriage which may be undertaken by the Lessee or any Permitted Sub-Lessee or as having any operational interest in any Aircraft.

(g)    **Seizure of Aircraft**

The Lessee shall not do, shall procure that no Permitted Sub-Lessee shall do, and shall otherwise use its best efforts to prevent, any act which could reasonably be expected to result in any Aircraft, any Airframe or any Engine being arrested, confiscated, seized, taken in execution, attached, impounded, forfeited, detained in exercise or purported exercise of any registered or possessory lien or other claim or otherwise taken from the possession of the Lessee or any Permitted Sub-Lessee, and if any such arrest, confiscation, seizure, execution, taking, attachment, impoundment, forfeiture, detention or other loss of possession occurs, the Lessee shall give Security Trustee, the Lessor, the Agent and the Insurer Representative immediate notice thereof and shall forthwith procure the prompt release of such Aircraft, such Airframe or such Engine.

(h)    **Credit for Maintenance**

The Lessee shall not pledge and shall procure that no Permitted Sub-Lessee shall pledge  the credit of any Secured Party for any maintenance, service, repairs, overhauls of, or modifications to, or changes or alterations in, or additions to, any Aircraft, any Airframe, any Engine or any Part.

(i)    **Notice of Suspension**

The Lessee shall give the Lessor, the Security Trustee, the Agent and the Insurer Representative immediate written notice of any action being taken by the management of any Lessee Obligor relating to any general suspension of payment proceedings under any Applicable Law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(j)    **Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under Clause 10 and should any such claim be paid, shall procure that immediate action is taken either (A) to increase any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty or (B) to obtain "contingent War Risk Insurance" acceptable to the Issuer Representative and the Security Trustee for the express benefit of the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee so that their financial interests in each Aircraft shall at all times be fully insured for the period covered by that War Risk Insurance, notwithstanding any annual aggregate limit or sublimit of liability.

(k)    **Inspection**

At all reasonable times and (except during the continuance of a Default, a Termination Event or an Event of Default) upon reasonable notice to the Lessee and not more frequently than once per calendar year any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives may inspect any Aircraft, any Engine or any Part and the Manuals and Technical Records relating thereto and to the registration thereof and copy or make extracts from the books and records of the Lessee and any Permitted Sub-Lessee relative thereto and may discuss the Lessee's and any Permitted Sub-Lessee business or financial affairs with any of the Lessee's or Permitted Sub-Lessee officials, auditors or officers as may be required for the foregoing and, to the extent available, make any inspection reports available to the Agent, provided that, unless a Termination Event or an Event of Default has occurred and is continuing:

(i)    any such inspection shall be a visual, walk-around inspection which may include going on board such Aircraft, subject to the Permitted Sub-Lessee's limitations for reasons of safety or insurance coverage, but shall not include opening or removing any panels, bays or engine or avionic components of such Aircraft, unless such Aircraft is, on the date of such inspection, undergoing a maintenance visit, in which case such panels, bays or engine or avionic components as are open or removed from such Aircraft on such date may be inspected; and

(ii)    any such inspection or examination shall not unreasonably delay or interrupt or cause any obstruction in the Lessee's maintenance and operation of such Aircraft.

(l)    None of the Lessor, the Security Trustee, the Agent, the Funder or the Insurer Representative (i) shall have any duty to make any such inspection or (ii) shall incur any liability or obligation by reason of making or not making any such inspection, except as provided in this Clause 7.7.  So long as no Termination Event or Event of Default has occurred and is continuing, the reasonable cost of one such inspection initiated by any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives each calendar year shall be paid by the Lessee.  The Lessee shall pay the cost of all such inspections during the continuance of a Termination Event or an Event of Default.  The cost of other inspections shall be paid by the party requesting such inspection, unless such inspection reveals a material breach of the obligations hereunder to maintain each Aircraft and the associated Manuals and Technical Records, in which case the cost of such inspection shall be borne by the Lessee.  Upon the request of the Lessor, the Lessee shall promptly notify the Lessor, the Insurer Representative, the Agent and the Security

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Trustee of the major phase checks ("C" check or higher and any structural inspection) then scheduled on any Aircraft for the six-month period following such request.

**7.7    Information Concerning the Aircraft and Engines**

The Lessee shall at its own cost and expense promptly provide the Lessor, the Agent, the Funder, the Insurer Representative and the Security Trustee with such information (to the extent required by this Lease, any Operative Document or maintained by the Lessee in accordance with its standard fleet procedures) regarding the registration, location, operation, use, insurance, maintenance and condition of each Aircraft and its associated Engines, including all Parts to the extent practicable, as the Lessor, the Agent, the Funder, the Insurer Representative or the Security Trustee may from time to time reasonably require.

**7.8    Substitution of Engines**

(a)    So long as no Termination Event or Event of Default shall have occurred and be continuing (unless such Termination Event or Event of Default relates to the Engine being substituted), the Lessee may (and may permit any Permitted Sub-Lessee to) at any time, with contemporaneous notice to the Lessor, the Agent, the Funder, the Insurer Representative and the Security Trustee, duly convey or cause to be conveyed to the Lessor as a substitute for an Engine title to another engine of the same manufacturer and model, as such Engine which satisfies the conditions set forth in the definition of "Replacement Engine", provided that all engines installed on any Airframe shall be of compatible make and model, free and clear of all Liens other than Permitted Liens and shall have a value and remaining useful life and utility at least equal to, and being in as good operating condition and state of maintenance as, the Engine to be replaced thereby, assuming such Engine was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to such replacement.  Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)    furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)   cause a Lease Supplement, in form and substance reasonably satisfactory to the Lessor, the Insurer Representative and the Security Trustee subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry;

(iii)  furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such replacement engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor may reasonably request;

(iv)   furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) reasonably satisfactory to the Lessor, the Security Trustee and the Insurer Representative certifying that such engine has value and remaining useful life at least equal to, and is in as good operating condition (as the Engine being substituted, assuming such Engine was in the condition and state of repair required by the terms hereof immediately prior to such substitution;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(v)      cause amendments to the relevant Aircraft Mortgage and any Security Document, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such replacement engine to the relevant Aircraft Mortgage and the relevant Security Documents to be duly executed by the Lessor, Lessee or Permitted Sub-Lessee (as applicable) and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or the jurisdiction of incorporation or formation of the Lessor, Lessee or Permitted Sub-Lessee as applicable;

(vi)      cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)      furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and Security Trustee regarding the perfection of the Lien of any amended Security Document and relevant Aircraft Mortgage with respect to such Replacement Engine, in form and substance reasonably satisfactory to the Security Trustee and the Insurer Representative (addressed to the Security Trustee, the Insurer Representative, the Funder and the Agent); and

(viii)      affix a nameplate on such replacement engine in accordance with Clause 8.5.

(b)      Upon full compliance by the Lessee with the terms of this Clause 7.8, the Lessor will transfer or cause to be transferred, at the Lessee's sole cost and expense, to or upon the order of the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it) all of the Lessor's right, title and interest, if any, in and to each replaced Engine with respect to which such substitution occurred by an appropriate instrument, signed by the Security Trustee, releasing such Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer. For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Engine" as defined herein and shall be deemed part of the same Aircraft as was the Engine replaced thereby. No substitution with respect to an Engine under the circumstances contemplated by the terms of this Clause 7.8 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

## 7.9      Annual Survey

(a)      Upon written request, but no more frequently than once each calendar year for each Aircraft any one of the Security Trustee, the Agent, the Insurer Representative or their authorized representative, may request a technical report about the related Airframe, Engines and Manuals and Technical Records in connection with such Airframe and each such Engine, performed at an Approved Maintenance Facility in connection with the most recently completed (i) airworthiness inspection, or heavy maintenance check (in the case of an Airframe), (ii) heavy maintenance visit and any shop visit (in the case of each such Engine), and (iii) overhaul or reconditioning (in the case of any Part, appurtenance or system in respect of such Aircraft or each such Engine not covered by clauses (i) and (ii) preceding).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)      Such report shall be at the Lessee's expense and shall contain sufficient detail so as to enable the Security Trustee, the Agent and the Insurer Representative to determine the Lessee's compliance with the terms of this Lease and the general repair, condition, maintenance, overhaul and time-before-overhaul status of such Airframe and each such Engine or Part.  If any such report is prepared at the request of the Security Trustee, the Security Trustee shall promptly provide a copy to the Agent and the Insurer Representative.

**8.      REPLACEMENT;   TEMPORARY   INSTALLATION;   POOLING;   ALTERATIONS, MODIFICATIONS AND ADDITIONS; ETC**

**8.1      Replacement of Parts**

(a)      The Lessee, at its own expense, will promptly replace or cause to be replaced all Parts that may from time to time be incorporated or installed in or attached to any Airframe or any Engine and that may from time to time be defective and not economically repairable, become time-expired or due for replacement or worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever.

(b)      In addition, the Lessee (or any Permitted Sub-Lessee) may, at its own expense, remove in the ordinary course of maintenance, service, repair, overhaul or testing, any Part, whether or not time-expired, due for replacement, worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use, provided, however, that the Lessee will, at its own cost and expense, replace (or cause to be replaced) such Part as promptly as practicable.

(c)      Each replacement Part shall be free and clear of all Liens (except Permitted Liens) and except as permitted by Clause 8.3, shall be in at least as good operating condition as, and shall have value, modification status and performance characteristics at least equal to, or, if applicable, comparable to, the Part replaced assuming such replaced Part was in the condition and repair required to be maintained by the terms hereof.

(d)      Each Part at any time removed from any Airframe or each Part removed from any Engine shall remain the property of the Lessor, no matter where located, until such time as such Part shall be replaced by a Part that has been incorporated or installed in or attached to the Airframe from which such Part was removed or, as the case may be, an Engine and that meets the requirements for a replacement Part specified above and shall be subject to the Lien of the relevant Aircraft Mortgage.

(e)      Immediately upon any replacement Part becoming incorporated or installed in or attached to an Airframe or, as the case may be, an Engine as above provided and title thereto being vested in the Lessor free and clear of all Liens (except Permitted Liens), without further act:

(i)       title to the replaced Part shall thereupon vest in the Lessee or its Approved Nominee and shall no longer be deemed a Part hereunder; and

(ii)      such replacement Part shall become subject to this Lease and be deemed part of such Airframe or, as the case may be, such Engine for all purposes hereof to the same extent as the Part originally incorporated or installed in or attached to such Airframe or, as the case may be, such Engine.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 8.2   Temporary Installation of Parts

The Lessee may install or permit the installation of any part on any Airframe or Engine by way of substitution, replacement, renewal or mandatory modification notwithstanding that such installation is not in accordance with Clause 8.1 in the case of a part if:

(a)   there shall not have been available to the Lessee at the time and in the place that such part was required to be installed on such Airframe or, as the case may be, such Engine a substitute or replacement Part complying with the requirements of Clause 8.1;

(b)   it would have resulted in a disruption of the operation of the relevant Aircraft and/or the business of the Lessee to have grounded such Aircraft and/or to have permitted the relevant Part to continue to be unserviceable or unrepaired until such time as an part complying with the requirements of Clause 8.1 became available for installation on such Airframe or such Engine; and

(c)   as soon as practicable, but in any event within one hundred and eighty (180) days, the Lessee shall cause any such part not complying with the requirements of Clause 8.1 to be removed and replaced or substituted by a part complying with the requirements of Clause 8.1.

## 8.3   Pooling of Parts

Any Part removed from any Airframe or any Engine may be subjected by the Lessee or permitted by the Lessee to be subjected to a normal pooling arrangement customary in the international airline industry entered into in the ordinary course of the Lessee's (or, while the relevant Aircraft is leased by the Lessee to the Initial Permitted Sub-Lessee pursuant to the Initial Permitted Sub-Lease, the Initial Permitted Sub-Lessee's) business, provided, that the part replacing such removed Part shall be incorporated or installed in or attached to such Airframe or such Engine in accordance with Clause 8.1 as promptly as possible after the removal of such removed Part.   In addition, any replacement part when incorporated or installed in or attached to any Airframe or any Engine in accordance with Clause 8.1 may be owned by another air carrier subject to such a normal pooling arrangement, provided that the Lessee, at its own cost and expense, as soon as practicable, shall either (a) cause title to such replacement part to vest in the Lessor in accordance with Clause 8.1 by the Lessee acquiring title (or procuring acquisition of the title) thereto for the benefit of the Lessor free and clear of all Liens (other than Permitted Liens) and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement or (b) replace such replacement Part by incorporating or installing in or attaching to such Airframe or such Engine a further replacement Part owned by the Lessee (or such Permitted Sub-Lessee) free and clear of all Liens (other than Permitted Liens) and by causing title to such further replacement Part to vest in the Lessor in accordance with Clause 8.1 and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement.

## 8.4   Alterations, Modifications and Additions

(a)   The Lessee, at its own expense, will promptly make (or cause to be made) such alterations and modifications in and additions to any Airframe or any Engine as may be reasonably required from time to time to comply with any Airworthiness Directives, Service Bulletins, other directive or modifications published (and of a mandatory nature) by the Manufacturer, the Engine Manufacturer and/or the Civil Aviation Authority in accordance with the terms of this Lease, provided that the Lessee may in good faith diligently contest the validity or application of any such Airworthiness Directive, Service Bulletin, directive or modification in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of adversely affecting the value of any Aircraft, the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder.

(b)      In addition, the Lessee (or the Permitted Sub-Lessee), at its own expense, may from time to time make such alterations and modifications in and additions to any Airframe or any Engine as the Lessee (or Permitted Sub-Lessee) may deem desirable in the proper conduct of its business, including installation of additional buyer furnished equipment or removal of Parts that the Lessee (or Permitted Sub-Lessee) determines to be obsolete or no longer suitable or appropriate for use on such Airframe or such Engine, provided, however, that no such alteration, modification or addition shall materially diminish the value, utility, remaining useful life, performance or operational characteristics of such Airframe or such Engine, or impair the condition or airworthiness thereof, below the value, remaining useful life, performance or operational characteristics, condition or airworthiness thereof immediately prior to such alteration, modification or addition (assuming such Airframe or such Engine was then of the value, remaining useful life, performance or operational characteristics, condition or airworthiness required to be maintained by the terms of this Lease), provided, further, that the Lessee shall consult with the Manufacturer or the Engine Manufacturer, as applicable, the Insurer Representative and the Security Trustee prior to undertaking any material alteration or modification to any Aircraft. Without prejudice to the generality of the foregoing, the Lessor consents to the modification which includes installation of antennae, aerodynamic domes, wiring, structural attaching parts, mounts, receivers, wireless access points,(WAP's), modems, controllers, switching equipment, display and sound reproduction equipment and all related hardware and software directly associated with the receipt and distribution of satellite or where applicable ground based internet signals and data into the Aircraft for passenger use, whether provided by ROW 44 or an alternative provider.  Title to all Parts incorporated or installed in or attached or added to any Aircraft as the result of such alteration, modification or addition, shall immediately vest in the Lessor free and clear of all Liens (except Permitted Liens) and become subject to this Lease, without the necessity for any further act of transfer, document or notice.

(c)      Notwithstanding Clause 8.1 and the foregoing provisions of this Clause 8.4 and provided that no Termination Event  or Event of Default shall have occurred and is continuing, the Lessor agrees that the Lessee or any Permitted Sub-Lessee may, at any time during the Term in respect of any Aircraft, remove or suffer to be removed any Part (including buyer furnished equipment) from such Aircraft that:

(i)      is in addition to, and not in replacement of or substitution for, any Part originally incorporated or installed in or attached to the related Airframe or Engine at the time of the Delivery of such Aircraft hereunder or any Part in replacement of or substitution for any such Part;

(ii)      is not required to be incorporated or installed in or attached or added to the related Airframe or Engine pursuant to the terms of Clause 7 or this Clause 8 or in order to maintain insurance required by Clause 10; or

(iii)      can be removed from the related Airframe or Engine without causing damage to such Airframe or such Engine or diminishing or impairing in any material respect the value, utility, remaining useful life, performance or operational characteristics, condition or airworthiness that such Airframe or such Engine would have had at such time had such removal not occurred.

(d)      Upon the removal by the Lessee (or any Permitted Sub-Lessee) of any Part as provided in and permitted by this Clause 8.4, title thereto shall, without further act, vest in the Lessee or the Lessee's Approved Nominee, and such Part shall no longer be deemed part of the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Airframe or Engine from which it was removed.  Notwithstanding the foregoing, any Part not removed by the Lessee (or any Permitted Sub-Lessee) as above provided prior to the return of the relevant Airframe or Engine to the Lessor hereunder shall become the property of the Lessor at the time of such return and become subject to the relevant Aircraft Mortgage and the relevant Security Agreement.

**8.5     Nameplate and Other Markings**

The Lessee shall affix and keep a metal nameplate having dimensions of not less than five inches by four inches in the cockpit of each Airframe adjacent to the airworthiness certificate therein and on each of the Engines bearing the inscription "THIS [AIRFRAME/ENGINE] IS OWNED BY AAA MAX 1 LIMITED AND LEASED TO HARDANGERFJORDEN LIMITED, IS FURTHER SUB-LEASED TO [NORWEGIAN AIR INTERNATIONAL LIMITED / NORWEGIAN AIR SHUTTLE ASA] AND SUBJECT TO A MORTGAGE IN FAVOUR OF CITIBANK N.A., LONDON BRANCH, AS SECURITY TRUSTEE", or such other inscription as the Security Trustee or the Insurer Representative from time to time may reasonably request (such nameplate to be affixed within ten (10) days after the Delivery Date for such Airframe and such Engines, and the Lessee shall thereupon so advise the Lessor).  Except as provided above, the Lessee shall not allow the name or other indication of any other Person to be placed on any Airframe or any Engine, if such name or other indication could be interpreted as a claim of ownership or other interest therein; provided, that each Airframe, Engine and Part may be marked with the customary name, colours or insignia of the Lessee or the Permitted Sub-Lessee and/or any manufacturer(s) of such Airframe, Engines and Parts.

**8.6     No Third Party Beneficiaries**

It is expressly agreed that the Lessee's obligations with respect to maintenance under Clauses 7 and 8 are solely for the benefit of the Lessor and the Secured Parties and that the Lessee shall have no liability to any other Person with respect thereto, and that except for the Lessee's indemnification obligations with respect thereto contained in the Participation Agreement which shall survive the termination of such documents in accordance with their respective terms, the Lessee's obligations under Clauses 7 and 8 in respect of an Aircraft shall terminate upon termination of the leasing of an Aircraft to the Lessee pursuant to this Lease and the relevant Lease Supplement in accordance with the terms hereof.

**8.7     No Authorization to Contract for the Lessor**

Nothing contained in this Lease shall constitute any consent or request by the Lessor or any Secured Party express or implied, for the performance of any works or services or the furnishing of any materials or other property in respect of any Aircraft, any Engine or any Part thereof, nor as giving the Lessee any right, power or authority to contract for or permit the performance of any works or services or the furnishing of any materials or other property, in such fashion as would permit the making of any claim against the Lessor or any Secured Party in respect thereof or any claim that any Lien (other than Permitted Liens) based on the performance of such works or services or the furnishing of any such materials or other property is prior to the interests of the Lessor or any other Person in such Aircraft, such Engine or such Part thereof.

**8.8     No Rights of Retention**

The Lessee hereby waives any and all rights of retention which it may have or which at any time hereafter may be conferred upon it, by virtue of law or otherwise, related to any replacement of Parts, alterations, modifications or additions that the Lessee may make to any Airframe or any Engine.  The Lessee hereby expressly releases the Lessor and the Secured Parties from any and all

FILED DATE: 1/11/2023 2:57 PM   2023L000001

obligations, whether present or future, to indemnify or reimburse the Lessee for any of the aforementioned replacements, alterations, modifications, improvements or additions.

## 9.    LOSS, DESTRUCTION, REQUISITION, ETC

### 9.1    Event of Loss with Respect to an Aircraft

(a)    Upon the occurrence of an Event of Loss with respect to an Aircraft or an Airframe and any related Engines and/or engines then installed thereon, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), which notice shall specify the actions the Lessee is taking with respect to such Event of Loss.  So long as no Default, Termination Event or Event of Default shall have occurred and be continuing, the Lessee may within forty-five (45) days after such occurrence, request permission from the Lessor to replace such Aircraft (or such Airframe and Engine(s), as applicable), upon terms and conditions acceptable to the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee in their absolute discretion, including compliance with such terms and requirements that would make such replacement aircraft (or such replacement airframe and engine(s), as applicable) (a **Replacement Aircraft**) eligible for financing supported by the Insurance Policy in the same amount as such replaced Aircraft (or such replaced Airframe and Engine(s), as applicable), it being agreed that if the Lessee does not request such permission within the relevant time period (or does not receive such permission within ten (10) days after such request), the Lessee will not be entitled to substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable).

(b)    The Lessee will not substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) hereunder unless such Replacement Aircraft (or replacement airframe and engine(s), as applicable) would be eligible for financing supported by the Insurance Policy, as determined by the Insurer Representative in its sole discretion.

(c)    It is expressly agreed that if any Basic Rent Payment Date for the affected Aircraft occurs at or after the date of such Event of Loss and prior to the payment of the Termination Value and any other Rent due in relation to such Aircraft, the Lessee shall pay to the Lessor on such Basic Rent Payment Date the amount equal to the Basic Rent which would have become due and payable in respect of such Aircraft on such Basic Rent Payment Date in accordance with the terms hereof had no Event of Loss so occurred.

(d)    Unless a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) are being substituted in the circumstances contemplated in the preceding clauses, the Term for the affected Aircraft shall end on a date no later than the earliest of (i) the date falling ninety (90) days after the occurrence of such Event of Loss and (ii)  the Lessor or the Security Trustee receives insurance or requisition proceeds in respect thereof (the **Settlement Date**), and on such Settlement Date the Lessee shall pay to the Lessor an amount equal to the then applicable Termination Value for the affected Aircraft on such Settlement Date together with all accrued but unpaid Rent for the affected Aircraft to such Settlement Date and, without duplication, all other amounts then owing by the Lessee under the Operative Documents.

(e)    Upon full compliance by the Lessee with the terms of this Clause 9.1 the Lessor will (subject to insurer's salvage rights, if any) transfer to, or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty, all of the Lessor's right, title and interest, if any, in and to the Aircraft with respect to which such Event of Loss occurred by an appropriate instrument, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes

hereof, each such Replacement Aircraft shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Aircraft" as defined herein.

**9.2     Event of Loss with Respect to an Engine**

(a)     Upon the occurrence of an Event of Loss with respect to an Engine under circumstances in which there has not occurred an Event of Loss with respect to the associated Airframe, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), then within one hundred and twenty (120) days after the occurrence of such Event of Loss, the Lessee shall duly convey or cause to be conveyed to the Lessor and duly subject to the relevant Aircraft Mortgage and other relevant Security Documents, as replacement for such Engine with respect to which such Event of Loss occurred, title to a Replacement Engine (provided that all engines installed on such Airframe shall be of compatible make and model).

(b)     Such Replacement Engine shall be free and clear of all Liens (other than Permitted Liens) and having a value and remaining useful life at least equal to, and being in as good operating condition and state of maintenance as, the Engine with respect to which such Event of Loss occurred, assuming such Engine was of the value and remaining useful life and in the condition and state of repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss, but without regard to its point in the maintenance cycle.

(c)     Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)     furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)     cause an amendment to the related Lease Supplement, in form and substance reasonably satisfactory to the Lessor and the Security Trustee, subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or any other Relevant Jurisdiction;

(iii)     furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such Replacement Engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor and the Security Trustee may reasonably request;

(iv)     furnish the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) satisfactory to the Insurer Representative and the Security Trustee certifying that such engine has value and remaining useful life and it is in good operating condition as the Engine being substituted, assuming such Engine was in the condition and state of repair as required by the terms hereof immediately prior to such substitution, but without regard to its point in the maintenance cycle;

(v)     cause amendments to the relevant Aircraft Mortgage and other Security Documents, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such Replacement Engine to the relevant Aircraft Mortgage and Security Documents  to be duly executed by the Lessor and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Government of Registry, the jurisdiction of incorporation or formation of the Lessor and the United States of America;

(vi)    cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessee, the Security Trustee and the Insurer Representative under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)    furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and the Security Trustee regarding the perfection of the Lien of the relevant Aircraft Mortgage and Security Documents with respect to such Replacement Engine addressed to the Security Trustee, the Insurer Representative and the Agent and in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative;

(viii)    affix a nameplate on such replacement engine in accordance with Clause 8.5;

(ix)    assign to the Lessor (for further assignment to the Security Trustee) all assignable and remaining engine warranties applicable to such Replacement Engine in a manner consistent with the relevant Engine Warranties Agreement.

(d)    Upon full compliance by the Lessee with the terms of this Clause 9.2 the Lessor will (subject to insurer's salvage rights, if any) transfer to or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it), all of the Lessor's right, title and interest, if any, in and to the replaced Engine by an appropriate instrument, signed by the Security Trustee, releasing the replaced Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer. For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an **Engine** as defined herein. No Event of Loss with respect to an Engine under the circumstances contemplated by the terms of this Clause 9.2 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

## 9.3    Application of Payments from Governmental Authorities or Others

Any payments (other than insurance proceeds from policies carried (or caused to be carried) by the Lessee the application of which is provided for in Clause 10 and other than proceeds of insurance policies carried by the Lessor or any Secured Party) received at any time by the Lessor or the Lessee from any Government Body or other Person with respect to an Event of Loss of any Aircraft or any Engine shall be paid over to the Security Trustee and applied, subject to Clause 9.6, in accordance with the terms of the Intercreditor Deed.

## 9.4    Requisition for Use of any Airframe and the Engines Installed Thereon

In the event of the requisition for use by any Government Body not constituting an Event of Loss of an Airframe and the Engines installed thereon during the relevant Term, the Lessee shall promptly notify the Lessor, the Security Trustee, the Insurer Representative and the Agent of such requisition, and all of the Lessee's obligations under this Lease shall continue to the extent such obligations are not restricted or curtailed by such requisition and to the same extent as if such requisition had not

FILED DATE: 1/11/2023 2:57 PM   2023L000001

occurred (but the Lessee's obligations to pay Rent for the relevant Aircraft pursuant to Clause 3 and its obligations under Clause 10 shall not be reduced or excused by such requisition).  All payments (and any interest thereon) received by the Lessor or the Lessee for the use of such Airframe and Engines at any time shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied in accordance with the Intercreditor Deed.

9.5    **Requisition for Use of an Engine Not Installed on an Airframe**

If an Engine not then installed on an Airframe is requisitioned for use by any Government Body, the Lessee shall replace such Engine or cause it to be replaced by complying with the terms of Clause 9.2 hereof as if an Event of Loss had occurred with respect to such Engine, and (upon compliance by the Lessee as aforesaid) any payments received by the Lessor or the Lessee from with respect to such requisition shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, that if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied to the obligations of the Lessee hereunder as the Lessor shall direct and any excess, shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee.

9.6    **Payments to the Lessee**

Any amount referred to in this Clause 9 which is payable or creditable to the Lessee or any Permitted Sub-Lessee shall not be paid or credited to the Lessee or such Permitted Sub-Lessee or, if it has been previously paid to the Lessee or such Permitted Sub-Lessee, shall not be retained by the Lessee or such Permitted Sub-Lessee, if at the time of such payment or credit a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to, applied in accordance with the terms of the Operative Documents and/or held by the Security Trustee as security for the obligations of the Lessee under this Lease and the Operative Documents and at such time as there shall not be continuing any Material Default, Termination Event or Event of Default such amount (together with interest thereon, if any), if then remaining, shall be paid or credited to the Lessee or the Permitted Sub-Lessee (as the case may be).

10.    **INSURANCE**

10.1    **Aviation Third Party Legal Liability Insurance**

Except to the extent provided in Clauses 10.3 and 10.5, on or before the Delivery Date for an Aircraft, and throughout the Term therefor and for a period extending to two years following the later of (a) the final Basic Rent Payment Date for such Aircraft and (b) the date such Aircraft is returned to the Lessor, the Lessee will carry or cause to be carried at its own expense with insurers of recognized standing which insurers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative, airline liability insurance in respect of such Aircraft including war and allied perils, hi-jacking and other similar risks that are excluded from standard liability coverage to the extent that such insurance is (a) maintained by the Lessee or the Permitted Sub-Lessee with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (b) customarily obtained by carriers with comparable route structures flying similar aircraft or (c) generally required by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures in amounts customary for similar aircraft in the Lessee's fleet (but not less than seven hundred and fifty million Dollars (US$750,000,000) any one occurrence per each aircraft and subject to customary sub-limits for non-aviation coverage and aggregate limits for products liability and war risks coverages) and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet and of the type usually carried by corporations engaged in the same or a similar business, similarly situated with the Lessee or the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Permitted Sub-Lessee, and owning and operating similar aircraft and engines, and which covers risks of a kind customarily insured against by such corporations which shall include general third party legal liability (including war and allied perils), passenger liability, and property damage liability (including cargo, baggage and mail liability).  Any liability insurance carried in accordance with this Clause 10.1 and any policies taken out in substitution or replacement for any of such policies:

(a)     shall be amended to name the Security Trustee, as the contract party (the **Contract Party**) and each of the Lessor, the Lessee, the Lessor Parent, the Agent, the Security Trustee, the Funder, the Insurer Representative, the Insurer Group and their respective successors, members, assigns, officers, directors, shareholders, agents, employees, servants, Affiliates and sub-contractors as additional insureds (the **Additional Insureds**);

(b)     shall provide that in respect of the interests of the Lessor or any other Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that the Additional Insured so protected has not caused, contributed to or knowingly condoned the said act or omission);

(c)     shall provide that there shall be no recourse against the Lessor or any other Additional Insured for the payment of premiums under such policies and that the Insurer Representatives shall waive any right of subrogation against the Additional Insureds; and

(d)     shall provide that, if such insurance is cancelled for any reason whatsoever, or if any material change is made in such insurance that adversely affects the interest of the Lessor or any other Additional Insured, such cancellation or change shall not be effective as to the Lessor or any other Additional Insured for thirty (30) days (seven (7) days, or such other period as is then customarily obtainable in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers (if different from the Lessee's insurance broker) to the Lessee's appointed insurance broker.  The Lessee hereby covenants to cause the Lessee's or the Permitted Sub-Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

Each liability policy (a) shall be primary without right of contribution from any other insurance that is carried by any other Person to the extent that such other insurance provides it with contingent or excess liability insurance with respect to its interest as such in any Aircraft, (b) shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured, (c) shall waive any right of the Aircraft Insurer to any setoff, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Lessee, the Permitted Sub-Lessee, the Lessor or any other Additional Insured to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft) and (d) shall provide for worldwide coverage (except in relation to Excluded Countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk and related perils policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit.

**10.2   Aircraft Hull Insurance**

(a)     Except to the extent provided in Clauses 10.3 and 10.5, on or prior to the Delivery Date for each Aircraft and throughout the Term for each Aircraft (and, in the case of the termination of this Lease with respect to an Aircraft pursuant to Clause 14 hereof, at all times following such termination until the sale or other disposition of such Aircraft pursuant hereto) the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessee shall maintain or cause to be maintained in full force and effect, at its own expense and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet, all-risk aircraft hull insurance covering such Aircraft, while flying and on the ground, including coverage of the Engines and Parts while temporarily removed from or not installed on such Aircraft and not replaced with similar components (with flight taxing and ingestion coverage), against loss or damage, of the type (but not necessarily the amount) usually insured against by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning or operating similar aircraft and engines on an agreed-value basis in a Dollar amount not less than 112% of the highest Termination Value for such Aircraft during the applicable insurance period (the **Threshold Value**), and all-risk insurance with respect to each Engine and Part while removed from an Aircraft, and, as to each Engine or Part not installed on an Airframe, not less than the fair market value of such Engine or Part.

(b)     The Lessee shall maintain or cause to be maintained in full force and effect war-risk and related perils insurance and hi-jacking and government confiscation insurance (excluding for confiscation by the Government of Registry) in respect of each Aircraft on an agreed value basis for such Aircraft throughout each policy year, for not less than the amounts set forth in the preceding paragraph in respect of such Aircraft covering each of the following perils (i) insured by the Lessee or the Permitted Sub-Lessee, with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (ii) customarily insured by air carriers with comparable route structures flying similar aircraft, and (iii) generally required to be insured by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures.

(c)     All policies and subsequent policies taken out in accordance with this Clause 10.2 will be issued by insurance companies or underwriters of recognized standing in the international aviation industry or re-insurance companies or underwriters of such standing and through internationally recognized aviation insurance brokers, all of which insurance companies, underwriters and insurance brokers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative. In addition, all such policies and subsequent policies:

(i)     shall be denominated and payable in Dollars and shall be on an agreed value basis without the insurer's right to replace;

(ii)    shall name the Additional Insureds as additional insureds in respect of the legal liability insurances and the Security Trustee as the sole contract party and as loss payee in respect of hull claims that become payable on the basis of a total loss and provide that payment in respect of such claims shall be made to or to the order of the contract parties for application in accordance with the Operative Documents and in respect of all other hull claims the loss will be settled with such Persons as may be necessary to repair the relevant Airframe or Engine;

(iii)   shall provide that in respect of the interests of each Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that such Additional Insured has not caused, contributed to or knowingly condoned the said act or omission);

(iv)    shall provide that there shall be no recourse against the Lessor or any Additional Insured for the payment of premiums under such policies; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(v) shall provide that, if such insurance is canceled for any reason whatsoever, or if any material change is made in such insurance which adversely affects the interests of any Additional Insured, such cancellation or change shall not be effective as to Additional Insureds for thirty (30) days (seven (7) days, or such other period as is then customarily imposed by in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers to the Lessee's appointed insurance broker. The Lessee hereby covenants to cause the Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

(d) The hull policy for each Aircraft:

(i) shall waive any right of the Aircraft Insurer or any reinsurers to any set-off, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Additional Insureds or any other Person to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft);

(ii) if separate hull all risks and war risks policies are arranged, shall contain a 50/50 claims funding clause acceptable to the Security Trustee, the Agent and the Insurer representative (which shall be AVS 103 or similar) in the event of a dispute as to which policy in respect of the hull insurances set forth in this Clause 10.2 shall pay in the event of a loss;

(iii) shall provide for worldwide coverage (except for excluded countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit; and

(iv) shall have deductibles (not applicable in the case of an Event of Loss or war and allied perils insurance) standard in the  industry in respect of the same model aircraft, which are reasonably acceptable to the Insurer Representative and the Security Trustee and in amounts which are no greater than seven hundred and fifty thousand dollars (US$750,000) and in any event such deductible shall not be greater than those which other international airlines of comparable standing (in the judgement of the Secured Parties' independent insurance advisor after consultation with the Lessee's broker of record) to the Lessee operating comparable aircraft are able to obtain in such market.

(e) The Lessee may procure endorsements to the relevant insurance policies required to be maintained pursuant to Clause 10 so as to incorporate the terms of AVN 67B (or any successor provision) unto such policies, in which event, to the extent that any provision of any such AVN 67B (or any successor provision) endorsement conflicts or is otherwise inconsistent with the requirements of this Clause 10, then (so long as it shall remain general industry practice to insure aircraft financed by financial institutions on the basis of such endorsement) such endorsement shall be deemed to satisfy the requirements of this Clause 10 to the extent covered by such endorsement.

(f) As between the Lessor and the Lessee it is agreed that all insurance payments received under policies that the Lessee is required to maintain pursuant to this Clause 10.2, exclusive of any payments received in excess of the then applicable Threshold Value for an Aircraft, as the result of the occurrence of an Event of Loss with respect to an Airframe or an Engine related

FILED DATE: 1/11/2023 2:57 PM   2023L000001

thereto will be applied, unless a replacement is effected in accordance with Clause 9.1 or 9.2 hereof, pursuant to the Intercreditor Deed.

(g) As between the Lessor and the Lessee the insurance payment of any property damage or loss with respect to an Aircraft (i) that constitutes an Event of Loss, in excess of the then applicable Threshold Value for such Aircraft, shall be paid to the Lessee, and (ii) that does not constitute an Event of Loss with respect to the related Airframe or a related Engine, will be applied in payment (or to reimburse the Lessee), for repairs or for replacement property in accordance with the terms of Clauses 7 and 8, if not already paid for by the Lessee and any balance remaining after compliance with such Clauses with respect to such loss shall, subject as provided below, be paid to and retained by the Lessee or in accordance with Clause 9.3(b) of the Intercreditor Deed.

(h) Notwithstanding any provision in this Clause 10.2, any amount referred to in this Clause 10.2 which is payable to the Lessee, shall not be paid to the Lessee or, if it has been previously paid directly to the Lessee, shall not be retained by the Lessee, if at the time of such payment a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to and held by the Security Trustee as security for the obligations of the Lessee under this Lease and, during the continuance of such Material Default, Termination Event or Event of Default, shall be applied to the satisfaction of the then due and payable obligations of the Lessee under this Lease, and, at such time as there shall not be continuing any such Material Default, Termination Event or Event of Default, the remainder of such amount shall be paid to the Lessee.

## 10.3   Default

If the Lessee shall default in effecting or maintaining any insurance or if any insurance shall, for any cause become void, the Lessor, the Security Trustee or any other Additional Insured may (but without any obligation to do so and without prejudice to the Lessor's other rights and remedies hereunder) effect and keep up such insurance at the cost of the Lessee and the Lessee will forthwith upon demand repay to the Lessor, the Security Trustee or any other Additional Insured all premiums and other moneys from time to time paid by the Lessor, the Security Trustee or any other Additional Insured in respect of such insurance (which amount shall be certified by the Lessor, the Security Trustee or such other Additional Insured).

## 10.4   Certificates

On or before the Delivery Date for each Aircraft and promptly after the issuance or modification or renewal thereof (but in any event prior to the expiration of any insurance then to be renewed) in form substantially similar to those given prior to or on such Delivery Date, the Lessee will furnish to the Lessor, the Insurer Representative, the Agent and Security Trustee (with sufficient copies to the Funder):

(a) a certificate of the Lessee's insurance broker or an authorized representative of the Aircraft Insurer describing in reasonable detail the Aircraft Insurances then carried and maintained on such Aircraft, containing an endorsement reflecting the Aircraft Insurances required hereunder and:

   (i) certifying the date and time of commencement and expiry of each insurance policy;

   (ii) specifying the deductible amounts and levels of co-insurance, if any, for each type of loss; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)      a letter of undertaking from the Lessee's appointed insurance broker with regard to the Aircraft Insurances required hereunder in respect of such Aircraft (in the case of each renewal, in substantially the same form as delivered on the relevant Delivery Date).

**10.5     Notice of Variations**

If any material variation is made to the terms of any of the Aircraft Insurances or Aircraft Reinsurances the Lessee shall immediately give notice to the Lessor, the Insurer Representative, the Security Trustee, the Agent and the Funder of such variation and shall provide such further details in relation thereto as the Lessor, the Insurer Representative, the Security Trustee, the Agent or any Funder may reasonably require.

**10.6     Premiums**

The Lessee shall pay or cause to be paid the premiums (or installments thereof) as required by the terms of such policies and produce to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request receipts in respect of payment of such premiums (or installments thereof) or other evidence of such payments as the Lessor, the Insurer Representative, the Security Trustee or the Agent may reasonably request.  In the case of renewals of such policies, the Lessee shall cause to be provided to the Lessor, the Insurer Representative, the Security Trustee and the Agent evidence of such renewal as soon as practicable and in any event within seven (7) days after the date of renewal and shall give the Lessor, the Insurer Representative, the Security Trustee and the Agent notice of such intended renewal no later than the day before such date and the Lessee shall pay the renewal and other premiums (and installments thereof) as required by the terms of such policies.

**10.7     Insurance Policies**

In the absence of an unqualified opinion or certificate addressed to the Lessor, the Insurer Representative, the Security Trustee and the Agent from the Lessee's or the Permitted Sub-Lessee's insurance brokers (and, if applicable, reinsurance brokers), the Lessor and each Secured Party shall be entitled to full reliance, without exception, that the certificates of insurance (and, if applicable, certificates of reinsurance) delivered pursuant to this Clause 10 do not conflict with the terms and conditions of the underlying insurance (and, if applicable, reinsurance) policies.  Copies of the policies and endorsements and riders amendatory thereof (excluding premium information) with respect to the Aircraft Insurances and any Aircraft Reinsurances, required under this Clause 10 shall be made available to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request for inspection by their respective representatives at the offices of the Lessee or the Permitted Sub-Lessee or the Lessee's or the Permitted Sub-Lessee's insurance brokers during normal business hours.

**10.8     Reinsurance**

(a)      Unless the Aircraft Insurances maintained by the Lessee in accordance with the provisions in this Clause 10 are maintained with Lloyd's of London or in other internationally recognized aviation insurance markets with insurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee and the Insurer Representative, then the Lessee shall procure that the insurers shall maintain reinsurance in all respects satisfactory to the Security Trustee and the Insurer Representative covering identical subject matter and risk for an amount (which shall not be less than ninety five percent (95%) of the relevant coverage amount) with Lloyd's of London or in other internationally recognized aviation insurance markets with reinsurers of international standing and repute who normally participate in aircraft insurance programmes

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and who are acceptable to the Security Trustee, the Agent and the Insurer Representative. Any reinsurance shall:

(b)     be on the same terms as the original insurances;

> (i)     contain a "cut-through" clause satisfactory to the Security Trustee, the Agent and the Insurer Representative providing that, in the event of any claim arising under the reinsurance, the reinsurers thereunder shall, in lieu of payment to the original insurer or its successors in interest and assigns, pay to or to the order of the Contract Party as loss payee that portion of any loss due for which the reinsurers thereunder would but for this cut-through clause be liable to pay the original insurer or its successors in interest and assigns, it being understood and agreed (and the Lessee agreeing to obtain the agreement of its original insurers for the benefit of the Lessor, the Agent, the Security Trustee, the Insurer Representative, the other Secured Parties and the reinsurers) that any such payment by the reinsurers thereunder shall fully discharge and release the original insurers from any and all further liability in connection therewith; and

> (ii)    provide for payment to be made directly to or to the order of the Contract Party as provided herein notwithstanding (x) any bankruptcy, insolvency, liquidation or dissolution of the original insurer(s), and/or (y) that the original insurer(s) have made no payment under the primary insurance policies.

**10.9     Location**

Except as otherwise expressly permitted herein, the Lessee shall not at any time do or suffer to be done to any Aircraft, any Engine or any Part thereof or the premises on which the same may be located, or bring or keep, or permit to be brought or kept, anything therein or thereon or operate any Aircraft, any Engine or any Part thereof or take the same to or keep the same in, or permit the same to be taken to or kept in, a place where or whereby any insurance required hereunder may be rendered void or voidable or no longer in force or coverage thereunder shall be limited, without first arranging at its own expense such additional Insurance coverage as shall be necessary to avoid such result, such additional insurance to be in form and substance satisfactory to the Lessor, the Security Trustee and the Insurer Representative.  The Lessee will pay or cause to be paid all additional insurance premiums required on account of the additional risk caused by the use to which any Aircraft is put as aforesaid.

**10.10    Notice from the Lessee**

The Lessee will forthwith notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of any event (including but not limited to an occurrence) which will or may give rise to a claim under the Aircraft Insurances required in Clause 10.2, in excess of an amount in any currency equal to three million Dollars (US$3,000,000) in respect of an Airframe and one million Dollars (US$1,000,000) in respect of an Engine, but nothing in this Clause 10.10 shall prejudice the payment provisions of Clause 10.2.  Upon completion of the repairs in respect of a loss in which insurers have paid proceeds towards such repair, the Lessee shall deliver to the Lessor, the Insurer Representative, the Security Trustee and the Agent an engineer's certificate certifying that such repairs have been completed in accordance with the manufacturer's recommended procedures.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**10.11   Certain Undertakings in Respect of the Aircraft Insurances**

(a)   The Lessee shall not and shall procure that no Permitted Sub-Lessee shall:

    (i)   make any modification to the Aircraft Insurances or any Aircraft Reinsurances required hereunder which is materially adverse to the interest of the Lessor, the Insurer Representative, the Security Trustee, any Secured Party or any other Additional Insured;

    (ii)   do, or omit to do, or permit to be done, or left undone anything whereby any required Aircraft Insurance or any Aircraft Reinsurance would or might reasonably be expected to be rendered, in whole or in part, invalid or unenforceable and, without prejudice to the foregoing, not use or keep or permit any Aircraft or any Engine or any Part thereof, to be used or kept for any purpose, in any manner or in any place not covered by required Aircraft Insurances or any Aircraft Reinsurances (except as otherwise expressly permitted herein); and

    (iii)   discriminate against any Aircraft relative to other aircraft of the same or comparable model within the Lessee's or the Permitted Sub-Lessee's fleet as to the coverage of the Aircraft Insurances required under this Clause 10.

(b)   The Lessee shall as soon as practicable, but in no event later than 48 hours, upon receipt of notice of cancellation of the war risks and related perils insurance due to armed hostilities in the area where any Aircraft may then be located or scheduled to operate, remove any Aircraft or cause any Aircraft to be removed to the United Kingdom  (or such other location at which such Aircraft shall remain covered by war risks and related perils insurance) and shall cause such Aircraft to remain in such location until such war risks and related perils insurance is reinstated and compliance herewith shall cure any related Termination Event or Event of Default under Clause 13.1(c), provided, however, that the Lessee need not comply with the provisions of this paragraph (b) if to do so would cause the Lessee to breach any other obligation contained herein.

(c)   The Lessee shall be responsible for the payment of any applicable deductibles or costs of any Aircraft Insurances and any Aircraft Reinsurances.

**10.12   Reimbursement**

The Lessee shall reimburse the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative, as the case may be, on demand for the amount of any premiums or premium installments which such party may pay pursuant to this Clause 10 together with interest thereon, for the period from and including the date of such payment by such party to but excluding the date on which the same is paid in full by the Lessee at the applicable Post-Default Rate.

**10.13   Change in Industry Practice; Additional Requirements**

In the event that there is a material change in the generally accepted industry-wide practice with regard to the insurance of aircraft (whether relating to all or any of the types of insurances required to be effected under the foregoing provisions of this Clause 10) such that the insurances required pursuant to the provisions of this Clause 10 are insufficient to protect the interests of the Lessor, the Insurer Representative, the Security Trustee or any of the other Additional Insureds hereunder, the Insurer Representative and the Security Trustee shall, to the extent reasonably practicable, consult with the Lessee, and the insurance requirements set forth in this Clause 10 shall be varied at the request of the Insurer Representative or the Security Trustee so as to include such additional or varied requirements as may be reasonably necessary to ensure that the insurances and reinsurances as

so varied shall provide comparable protection to that which it would have provided if such change in the generally accepted industry-wide practice had not occurred.

**10.14   Compliance with Legal Requirements**

In addition to the foregoing provisions of this Clause 10 the Lessee shall and shall procure that any Permitted Sub-Lessee shall comply with all legal requirements as to the insurance of any Aircraft or any Engine which may from time to time be imposed by the Applicable Laws of any Aircraft's registration or of any jurisdiction to or from or over which any Aircraft or any Engine shall be flown or in which the same shall be located.

**10.15   Additional Insurance**

The Lessee shall have the right to carry insurance in excess of the amounts required hereunder and additional and separate insurance for its own benefit at its own expense; provided that, no such insurance shall result in a duplicate payment on a loss, or shall impair in any way (whether or not material) the rights of the Lessor, the Insurer Representative, the Security Trustee, and other Secured Party or any other Additional Insured under this Lease and the Operative Documents.  Proceeds of such insurance shall be payable directly to the Lessee.

**10.16   Additional Terms of Insurance**

The Lessee agrees to ensure that the insurance policies in respect of all Insurances referred to in Clauses 10.1 and 10.2 above shall at all times be underwritten in full.

**10.17   Self Insurance**

Except for the deductibles permitted by Clause 10.2 hereof or otherwise permitted by the Lessor, the Security Trustee and the Insurer Representative, the Lessee shall not be permitted to self-insure against any of the risks required to be covered by the insurance described in this Clause 10.

**10.18   Date Recognition Exclusion**

If the Aircraft Insurances are subject to any exclusion relating to date recognition, the Lessee shall obtain write-backs covering such exclusions to the fullest extent available in the international aviation insurance markets and in accordance with good and prudent international aviation insurance practice.

**10.19   Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under this Clause 10 and shall take immediate action to restore any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty.

**11.   ABSOLUTE OBLIGATIONS**

(a)   This Lease is a net lease, and it is intended that the Lessee shall pay or cause to be paid all costs, charges, fees (including Eurocontrol fees), assessments, expenses, withholdings and Taxes of every character whether foreseen or unforeseen, ordinary or extraordinary, incurred in connection with or arising out of the use, operation, maintenance, repair, modification,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

alteration, replacement and leasing of any Aircraft, including the costs, expenses and Taxes and similar levies set forth in the Participation Agreement.  The Lessee's obligation to pay all Rent and to perform all other obligations hereunder is absolute and unconditional and shall not be affected or reduced by any circumstances or for any reason, including:

(i)     any setoff, counterclaim, recoupment, defense or other right which the Lessee may have against the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party, the Manufacturer, the Engine Manufacturer or any Person providing services with respect to any Aircraft, or any other Person, for any reason whatsoever (whether in connection with the transactions contemplated hereby or otherwise), including any breach by the Lessor of its warranties contained herein or in the other Operative Documents;

(ii)     any defect in the title, airworthiness, eligibility of registration under any Applicable Law, condition, design, operation, or fitness for use of, or any damage to or loss or destruction of, any Aircraft or any portion thereof (subject to the provisions of Clause 9 hereof), any interruption or cessation in the use of or possession thereof by or availability to the Lessee for any reason whatsoever, whether arising out of or related to an act or omission of the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, Manufacturer, Engine Manufacturer or any other Person;

(iii)     any Lien with respect to any Aircraft or any portion thereof;

(iv)      the invalidity or unenforceability or lack of due authorization or other infirmity of this Lease or any absence of right, power or authority of any Person to enter into any Operative Document;

(v)     any Taxes;

(vi)     any change, waiver, extension, indulgence or liability or other act or omission in respect of any liability or obligation of the Lessor, the Security Trustee, the Funder, the Agent or the Insurer Representative or any other Secured Party;

(vii)     any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation, receivership or other like proceeding relating to the Lessee, the Lessor, the Lessor Parent, the Trustee or the Security Trustee or any disaffirmance, rejection or other action taken with respect to this Lease or any other Operative Document by the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party or any other Person, or by any court, in any such proceeding;

(viii)     the Lessee at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of sovereignty or otherwise, which immunity, if any, the Lessee hereby expressly waives;

(ix)     any restrictions applicable to the Lessee on the transfer or conversion of currency; or

(x)     any other circumstances or happening of any nature whatsoever, whether or not similar to any of the foregoing; it being the express intention of the Lessor and the Lessee that all Rent payable hereunder shall be payable in all events, unless the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease or the other Operative Documents.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)      This Lease shall not, except as expressly set forth herein, be cancellable by the Lessee and, except as expressly set forth elsewhere in this Lease, the Lessee hereby waives any and all rights which it may now have or which at any time hereafter may be conferred upon it, by statute or otherwise, to terminate, abate, cancel, quit, reduce, defer, suspend or surrender this Lease or any Aircraft or any obligation imposed upon the Lessee hereunder or under the other Operative Documents (including payment of Rent), except in accordance with the terms hereof and thereof.

(c)      If for any reason whatsoever this Lease shall be terminated in whole or in part by operation of Applicable Law, except as specifically provided herein, the Lessee, if and to the extent that the Lessee retains the use and possession of any Aircraft, nonetheless agrees to pay to the Lessor an amount equal to each Basic Rent payment and any Supplemental Rent payment in respect of such Aircraft at the time such payments would have become due and payable in accordance with the terms hereof and the other Operative Documents had this Lease not been terminated in whole or in part and so long as such payments are made and all other terms and conditions hereof are complied with by the Lessee, the Lessor and the Lessee will deem this Lease to remain in full force and effect.

(d)      Nothing contained in this Lease shall be construed as a waiver of the Lessee's right to seek any claim against the Lessor, the Security Trustee, any Secured Party or any other Person arising out of the transactions contemplated by the Operative Documents in a separate proceeding or by compulsory counterclaim.

## 12.    ASSIGNMENT

The terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Except as otherwise provided in Clause 7.4, neither party hereto shall, without the prior written consent of the other and except as expressly permitted by the Operative Documents, assign any of its rights or obligations hereunder.

## 13.    LEASE EVENTS OF DEFAULT AND TERMINATION EVENTS

Other than the events referred to in paragraphs (f), (p), (t) or (u) which, if they do not arise as a result of any act or omission of any Lessee Group Member, shall constitute "Termination Events" (but, for the avoidance of doubt,  in all other circumstances shall constitute "Lease Events of Default"), the following events shall constitute "Lease Events of Default" hereunder, (whether any such event shall be voluntary or involuntary or come about or be effective by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, the United States or any other jurisdiction, or the administration or interpretation thereof) and each such Lease Event of Default or Termination Event shall be deemed to exist and continue so long as, but only so long as, it shall not have been remedied:

(a)      the Lessee shall fail to pay when due any amount of Basic Rent or Termination Value on the date such Basic Rent or Termination Value is due, and such failure shall continue unremedied for three (3) Business Days following the due date therefor;

(b)      the Lessee shall fail to pay when due any amount of Supplemental Rent or any other amount due and owing from the Lessee under this Lease (other than as specified in Paragraph (a) above) or any other Operative Document and such failure to pay shall continue for a period of five (5) Business Days after demand has been made on the Lessee;

(c)      the Lessee shall fail to carry and maintain or fails to procure that any Permitted Sub-Lessee carry and maintain Aircraft Insurances (including any required Aircraft Reinsurances)

FILED DATE: 1/11/2023 2:57 PM   2023L000001

required to be maintained in accordance with the provisions of Clause 10, or the Lessee shall fail to perform or observe any covenant, condition or agreement contained in Clause 7.6(a) or 10.11 hereof or Clause 8(g) of the Participation Agreement;

(d)     any Lessee Obligor shall have failed to perform or observe in any material respect any other covenant or agreement (ie, other than those covered by the preceding paragraph (a), (b) or (c) of this Clause 13) to be performed or observed by it hereunder or under any other Operative Document to which it is a party, and such failure is unremediable, or if remediable and the Lessee is diligently proceeding to remedy such failure, shall continue unremedied for a period of thirty (30) days after the earlier of (i) the Lessee obtaining actual knowledge of such failure or (ii) notice to the Lessee thereof has been given by the Lessor, the Security Trustee or the Insurer Representative;

(e)     any representation or warranty of any Lessee Obligor under any of the Operative Documents or in any document or certificate furnished by the Lessee in connection therewith or pursuant thereto shall be untrue, inaccurate or misleading in any material respect as at the time when made or furnished;

(f)     any license, consent, approval or authorization of, or any filing or registration with, any governmental authority or agency necessary for the performance by a Lessee Obligor of its obligations under this Lease or any other Operative Document or in connection herewith or therewith (including, without limitation, the registration of any Aircraft or the any Mortgage or any Security Agreement) or the Certificate of Airworthiness issued in respect of any Aircraft shall be revoked, not applied for or not issued or shall cease to remain in full force (or, as applicable, is not duly renewed upon the terms consistent with the original approval or otherwise satisfactory to the Security Trustee and the Insurer Representative) or any of the foregoing shall be modified and any such revocation, non-application or issuance or modification would materially adversely affect (in the opinion of the Security Trustee or the Insurer Representative) the rights and remedies of the Lessor hereunder or of any Secured Party under the Operative Documents;

(g)     the Lessee or either Guarantor shall apply for or consent to the appointment of, or the taking of possession by, a receiver, an examiner, a trustee, custodian or liquidator of itself or of a substantial part of its property, or the Lessee or either Guarantor shall admit in writing submitted in connection with judicial or other similar procedures its inability to pay its debts generally as they come due, shall announce a moratorium on payment of its debts or any class of its debts, or shall make a general assignment for the benefit of creditors;

(h)     the Lessee or either Guarantor shall file a voluntary petition or commence a case in bankruptcy or a voluntary petition or an answer seeking reorganization in a proceeding under any bankruptcy or insolvency laws (as now or hereafter in effect) or an answer admitting the material allegations of a petition filed against any the Lessee or either Guarantor in any such proceedings, or the Lessee or either Guarantor shall by voluntary petition, answer or consent to or seek relief under the provisions of any other now existing or future bankruptcy, insolvency, reorganization or other similar law providing for the reorganization or winding-up of corporations, or providing for an agreement, composition, extension or adjustment with its creditors;

(i)     an order, judgment or decree shall be entered in any proceeding by any court of competent jurisdiction appointing, without the consent of such Lessee or either Guarantor, a receiver, trustee, custodian or liquidator of the Lessee or either Guarantor or of any substantial part of its property, or sequestering any substantial part of the property of such Lessee or either Guarantor, and any such order, judgment or decree of appointment or sequestration shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

remain in force undismissed, unstayed or unvacated for a period of sixty (60) days after the date of entry thereof;

(j)  a petition against the Lessee or either Guarantor in a proceeding under any bankruptcy laws or other insolvency laws as now or hereafter in effect shall be filed in a court of competent jurisdiction and shall not be withdrawn or dismissed within sixty (60) days thereafter, or if, under the provisions of any law providing for reorganization or winding-up of corporations which may apply to the Lessee or either Guarantor any court of competent jurisdiction shall assume jurisdiction, custody or control of the Lessee or of any substantial part of its property or any Aircraft and such jurisdiction, custody or control shall remain in force unrelinquished, unstayed or unterminated for a period of sixty (60) days;

(k)  the Lessee or either Guarantor threatens to suspend making payments or declares a moratorium or seeks a restructuring of its Indebtedness or the Lessee shall fail to pay when due (after giving effect to any applicable grace periods) any principal of or interest or scheduled payments in respect of any of its other Indebtedness (i) aggregating ten million Dollars (US$10,000,000) or more (or the equivalent thereof in any currency) or (ii) in respect of any Other Indebtedness, and the lender(s), the funder(s) or an agent or trustee thereof in respect of such Indebtedness declares or thereby becomes entitled to declare such Indebtedness to be due and payable prior to its scheduled maturity;

(l)  any additional procedure similar to those referred to in subparagraphs (g), (h), (i) and (j) above for the relief of financially distressed debtors under any Applicable Law or any other competent jurisdiction is entered into by the Lessee or either Guarantor voluntarily or involuntarily, and is not withdrawn or dismissed within sixty (60) days thereafter;

(m)  any of the events referred to in subparagraphs (g) to (l) above occurs in relation to any Permitted Sub-Lessee, and:

    (i)  the Lessee fails to inform the Lessor, the Security Trustee and the Insurer Representative immediately upon becoming aware of such event; or

    (ii)  the Lessee fails to terminate the leasing of the Aircraft pursuant to the relevant Permitted Sub-Lease immediately upon written request from the Lessor, the Security Trustee or the Insurer Representative.

(n)  a final judgment or judgments for the payment of money in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, shall be rendered against the Lessee or either Guarantor and the same shall remain undischarged for a period of sixty (60) days during which execution of such judgment shall not be effectively stayed, or an attachment or attachments or other Lien or Liens in respect of such judgment or judgments shall be issued or entered against any of the property of the Lessee or either Guarantor, for an amount in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, and shall remain undischarged or unbonded for thirty (30) days, except, in each case when such is being contested in good faith by appropriate proceedings that do not involve any substantial risk of the sale, seizure, forfeiture or loss of Collateral or title thereto, interest therein or use thereof;

(o)  the existence, validity, enforceability or priority of the Lessor's rights, title and interests to any Aircraft is challenged by any Lessee Obligor or any other Person claiming through the Lessee or this Lease or any other Operative Document becomes wholly or in part to a material extent invalid, illegal or unenforceable for any reason;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(p) the validity or enforceability (but not any particular interpretation) of any provision of any Operative Document is contested through appropriate proceedings by the Lessee or any Affiliate thereof or by any Government Body seeking to establish the invalidity or unenforceability thereof;

(q) the Lessee or any Permitted Sub-Lessee shall:

  (i) (in the case of a Permitted Sub-Lessee) cease, or announce its intention to cease, to conduct its business as a commercial scheduled airline;

  (ii) other than in circumstances permitted by Clause 8(g) of the Participation Agreement, assign, lease or otherwise dispose of all or any material part of the assets or property (whether by a single transaction or a number of related or unrelated transactions and whether at the same time or over a period of time) comprising the its aircraft or aircraft related business; or

  (iii) (in the case of a Permitted Sub-Lessee) cease to hold, whether by virtue of the revocation, suspension or non-renewal thereof or otherwise, any air transport license or its equivalent required to enable the it to carry out its principal business or the franchises, concessions, permits, rights or privileges required for the conduct of business or operations of it shall be revoked, canceled or otherwise terminated or the free and continued use and exercise thereof curtailed or prevented, and as a result of any of the foregoing the preponderant business activity of it shall cease to be that of a commercial airline;

(r) there shall have occurred and be continuing any "Event of Default" under and as defined in any Other Operative Document;

(s) The Lessee breaches its obligations under clause 6 or clause 23 of the Participation Agreement;

(t) there shall be any change (or such change shall be enacted or made by decree or otherwise and shall be scheduled and become thereafter effective) in the laws, regulations or treaties of the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, (while it is leasing an Aircraft from the Lessee) any Permitted Sub-Lessee, the Cayman Islands, Ireland the United States or any government or political agency, subdivision or instrumentality thereof which materially adversely affects the validity, legality or perfection of the Lessor's title to any Aircraft, or any Secured Party's rights in any Aircraft under any Security Document, or which materially adversely affects the Lessor's or any Secured Party's interests under this Lease or materially adversely affects the Lessee's ability to perform or comply with its obligations under this Lease or the legality of such performance or compliance;

(u) any Government Body shall have condemned, seized or appropriated all or any substantial part of the property of the Lessee or either Guarantor which is likely materially and adversely to affect the ability of such the Lessee or either Guarantor to perform its obligations under the Operative Documents; and/or

(v) any other event occurs (other than an Event of Loss) or any other circumstance arises which is likely materially and adversely to affect the ability or legal obligation of the Lessee to perform its obligations under any Operative Document to which it is a party.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 14.   REMEDIES

(a)   Upon the occurrence of any Event of Default or a Termination Event and at any time thereafter so long as the same shall be continuing, the Lessor may (without prejudice to any other rights of the Secured Parties under this Lease or the other Operative Documents), at its option, (in the case of any Event of Default) accept such repudiation and by notice to the Lessee declare this Lease to be in default or a Termination Event to have occurred and (in each case) by notice to the Lessee may, at its option, terminate any commitment of the Lessor to lease any Aircraft for which the relevant Delivery Date has not yet occurred (provided, that upon the occurrence of any Event of Default described in Clause 13.1(g)-(l), this Lease shall automatically be deemed in default and the Lessor's commitment shall automatically terminate); and at any time after this Lease shall be declared or deemed to be declared to be in default or a Termination Event to have occurred under this Clause 14, the Lessor may, so long as the Lessee shall not have remedied all outstanding Events of Default or Termination Events, exercise one or more of the following remedies with respect to all or any part of any Aircraft as the Lessor in its sole discretion shall elect:

(i)   the Lessor may demand that the Lessee pay the Lessor, and the Lessee shall pay to the Lessor, all Basic Rent (for all Aircraft) that has accrued but remains unpaid, together with the then applicable Termination Value for such Aircraft, computed on the date of final payment in full thereof, all Supplemental Rent then due and payable by the Lessee hereunder and all amounts then due and payable by the Lessee to the Lessor or any Secured Party under all other Operative Documents, and upon the indefeasible payment of such amount and all Supplemental Rent then due and payable by the Lessee hereunder, the Term for such Aircraft shall terminate;

(ii)   the Lessor shall be entitled in addition to making any demand referred to in paragraph (a) above:

(A)   to cause the Lessee upon demand of the Lessor (provided that such demand shall be deemed to have been given if the Lessor is stayed by operation of law from making such demand) and at the Lessee's expense, to return promptly, and the Lessee shall return promptly, all or such part of any Aircraft, and the Manuals and Technical Records relating thereto, as the Lessor may so demand, to the Lessor in the manner and condition required by, and otherwise in accordance with all the provisions of, Clause 5 as if such Aircraft was being returned at the end of the Term for such Aircraft, or if the Lessee does not so deliver such Aircraft or the Manuals and Technical Records relating thereto, the Lessor, at its option, may enter upon the premises where all or any part of such Aircraft and the Manuals and Technical Records relating thereto are located and take immediate possession of and remove the same (together with any engine or part which is not an Engine or Part associated with such Aircraft but which is installed on the relevant Airframe or stored with or attached to any relevant Engine, subject to all of the rights of the owner, lessor, lienor or secured party of such engine or part) by summary proceedings or otherwise all without liability accruing to the Lessor for or by reason of such entry or taking of possession, whether for restoration of damage to property caused by such taking or otherwise, provided that all actions of the Lessor in this respect are reasonable and necessary, and the Lessor may institute proceedings to repossess such Aircraft in any jurisdiction where such Aircraft may be located, and provided further that if at any time after the Lessor has exercised its rights under this paragraph (A), the Lessee shall make the payments referred to in paragraph (a) above, the Term for such Aircraft shall terminate;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(B)    following repossession of an Aircraft pursuant to Clause 14(b)(i), to sell such Aircraft at public or private sale, as the Lessor may determine; provided that the Lessor shall apply the proceeds of any sale in the manner set forth in the Intercreditor Deed, and the Lessor agrees to give the Lessee at least ten (10) Business Days' prior notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article 8(4) of the Convention) of the date fixed for any public sale of such Aircraft or of the date on or after which will occur the execution of any contract providing for any private sale thereof, and any such sale shall be conducted so as to afford the Lessee a reasonable opportunity to bid; and

(C)    the Lessor may exercise any other right or remedy which may be available to it as a secured party under Applicable Law or under the Cape Town Convention, including, without limitation, all rights and remedies under Chapter III of the Convention and Chapter II of the Protocol.  the Lessor hereby agrees to give the Lessee at least fifteen (15) days' notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article IX(6) of the Protocol) as set forth in Article IX(6) of the Protocol in connection with a proposal to procure the de-registration and export of an Aircraft without a court order.  the Lessee expressly agrees to permit the Lessor to obtain from any applicable court, pending final determination of any claim resulting from an Event of Default or Termination Event hereunder, speedy relief in the form of any of the orders specified in Article 13 of the Convention and Article X of the Protocol as the Lessor shall determine in its sole and absolute discretion, subject to any procedural requirements prescribed by Applicable Laws.

(b)    In addition, the Lessee shall be liable, except as otherwise provided above, for any and all unpaid Supplemental Rent due hereunder before, after or during the exercise of any of the foregoing remedies and for all legal fees and other costs and expenses actually incurred by the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative by reason of the occurrence of any Event of Default or Termination Event or the exercise of the Lessor's remedies with respect thereto, including (i) all costs and expenses incurred in connection with the return of the relevant Aircraft in accordance with the terms of Clause 5 or in placing the relevant Aircraft in the condition and airworthiness required by such Clause and (ii) any other costs and expenses that the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative may incur in connection with the retaking, holding, storage, export, deregistration and preparing for sale of the relevant Aircraft and other like action or that the Lessee has agreed to assume in any other Operative Document or pursuant to Applicable Law.  Except as otherwise expressly provided above, no remedy referred to in this Clause 14 is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above; and the exercise or beginning of exercise by the Lessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by the Lessor of any or all of such other remedies.  No express or implied waiver by the Lessor of, and no course of dealing by it with respect to, any Event of Default or Termination Event shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default or Termination Event.

(c)    The Lessee hereby consents to the exercise by the Lessor of the remedies granted herein and in the Cape Town Convention.  The Lessee acknowledges and agrees that the Lessor may exercise such of the foregoing remedies as it shall determine in its sole discretion and none of the foregoing remedies is manifestly unreasonable.  To the extent permitted by Applicable Law, the Lessee and the Lessor hereby agree that paragraph 2 of Article 13 of the Convention shall not apply to this Lease or to the exercise of any remedy by the Lessor

FILED DATE: 1/11/2023 2:57 PM   2023L000001

under this Lease or the Cape Town Convention.  Following the occurrence of an Event of Default or Termination Event, the Lessee agrees to immediately discharge, upon demand by the Lessor or the Security Trustee, any registration made with the International Registry in favour of the Lessee.

## 15.    FURTHER ASSURANCES; INVESTMENT OF SECURITY FUNDS

### 15.1    Further Assurances

(a)    The Lessee and the Lessor shall from time to time, at the cost and expense of the Lessee, do and perform such other and further acts and duly execute and deliver such further documents and assurances as may be required by Applicable Laws or requested by the other party to establish, maintain and protect the respective rights and remedies of the other party and to carry out and effect the intent and purpose of this Lease including, if requested by the Lessor, the Security Trustee, the Agent  or the Insurer Representative and at the expense of the Lessee:

(i)     the execution and delivery of supplements hereto or to the other Operative Documents, in recordable form, subjecting to this Lease or to the other Operative Documents, any replacement or substitute airframe or engine;

(ii)    the recording or filing of counterparts hereto or thereto, in accordance with the laws of such jurisdictions in which any Aircraft is based as the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee; and

(iii)   the registration of any interest, assignment or subordination with the International Registry to preserve, protect, perfect or establish priority in respect of any Aircraft Object or Associated Right covered by or related to this Lease, the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee.

(b)    The Lessee shall be solely responsible for obtaining all required consents and approvals of, giving all required notices to, performing all required registrations and filings for recordation with, and taking all other necessary actions in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, any Guarantor the jurisdiction of incorporation or formation of the Lessor, England and Wales and/or the United States of America including any governmental or political agency, subdivision or instrumentality thereof.

(c)    Without limiting the foregoing, the Lessee shall cause this Lease, and any and all additional instruments which shall be executed pursuant to the terms hereof, to be kept, filed, deposited or recorded, at all times, in the International Registry and in such places in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, the jurisdiction of incorporation or formation of the Lessor, the United States of America, England and Wales and such other jurisdictions in which any Aircraft is based as the Lessor, the Security Trustee, the Agent, any Funder or the Insurer Representative may reasonably request in order to perfect and preserve the rights of the Lessor, the Security Trustee, the Agent, the Funder, the Insurer Representative or the other Secured Parties hereunder, and furnish to the Lessor, the Insurer Representative, the Agent, Funder and the Security Trustee an opinion or opinions of counsel or other evidence satisfactory to the Lessor, the Insurer Representative and the Security Trustee of each such filing, deposit or recordation and, without limitation of any of the foregoing, at the reasonable request of the Lessor, the Insurer Representative, the Agent, any Funder or the Security Trustee, promptly

FILED DATE: 1/11/2023 2:57 PM   2023L000001

correct any defect, error or omission which may at any time hereafter be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof and, at the request of the Lessee, the Lessor shall promptly correct any defect, error or omission which may at any time be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof.  Without limiting any of the foregoing, the Lessee will co-operate fully with the Lessor, the Security Trustee, the Agent, the Funder and the Insurer Representative for obtaining the deregistration of any Aircraft and any required export licenses, when requested by the Security Trustee upon any return of any Aircraft required hereunder.

**15.2    Security Funds**

(a)    Notwithstanding anything in this Lease to the contrary, if a Material Default or Event of Default or Termination Event  under this Lease shall have occurred and be continuing or if the Lessor (or the Security Trustee, as the Lessor's assignee) is holding funds pending replacement of any Airframe and/or Engines pursuant to Clause 9, all amounts otherwise payable to the Lessee hereunder shall be paid to the Lessor and shall be held by the Lessor (or, if either Security Agreement shall not have been discharged, shall be paid to and held by the Security Trustee) as security for the obligations of the Lessee under this Lease, and, at such time as there shall not be continuing such Material Default, Termination Event or Event of Default or such replacement is complete, such amounts, net of any amounts theretofore properly applied to the Lessee's obligations hereunder, shall be paid to the Lessee or as the Lessee may direct.

(b)    All funds held by the Security Trustee hereunder shall be held as Collateral under the Lessee Security Agreement to secure, inter alia, the repayment of the Loans and the other amounts expressed to be secured thereunder and applied as provided therein.

**16.    NOTICES**

All notices, consents and other communications hereunder shall be given in accordance with clause 13(c) of the Participation Agreement.

**17.    MISCELLANEOUS; GOVERNING LAW**

(a)    Any provision of this Lease that is prohibited or unenforceable in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and shall not invalidate or render unenforceable the other provisions hereof in any jurisdiction.  To the extent permitted by Applicable Law, the Lessee hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.  No term or provision of this Lease may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought and only as permitted by the Operative Documents.  The Clause and paragraph headings in this Lease and the table of contents are for convenience of reference only and shall not modify, define, expand or limit any of the terms or provisions hereof.

(b)    This Lease and any non-contractual obligations arising out of or in connection with it are governed by English law.

(c)    The provisions of clause 13(d) of the Participation Agreement, in so far as they relate to any dispute between the Lessor and the Lessee, shall apply hereto as if set out in this Agreement, *mutatis mutandis*.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(d)     To the extent that the Lessee may be or hereafter become entitled, in any jurisdiction in which judicial proceedings may at any time be commenced with respect to this Lease, to claim for itself or its property, assets or revenues immunity (whether by reason of sovereignty or otherwise) from suit, jurisdiction of any court, attachment prior to judgment, attachment in aid of execution of a judgment, set-off, execution of judgment or from any other legal process, and to the extent that in any such jurisdiction there may be attributed any such immunity (whether or not claimed), the Lessee hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity.

(e)     The payment obligations of the Lessee payable under this Lease and any other Operative Document (the **payor**) expressed to be payable thereunder in one currency (the **first currency**) shall not be discharged by an amount paid in another currency (the **second currency**), whether pursuant to a judgment or otherwise, to the extent that the amount so paid on prompt conversion to the first currency under normal banking procedures does not yield the full amount of the first currency due thereunder, and the payor shall indemnify the recipient of such payment (the **payee**) against any such shortfall; and in the event that any payment by the payor, whether pursuant to a judgment or otherwise, upon conversion and transfer does not result in payment of such amount of the first currency, the payee shall have a separate cause of action against the payor for the additional amount necessary to yield the amount due and owing to the payee.

(f)     If it is necessary to determine for any reason other than that referred to in Clause 17.1(e) above the equivalent in the first currency of a sum denominated in the second currency, the rate of exchange used shall be that at which in accordance with normal banking procedures the Security Trustee could purchase the first currency with the second currency on the Business Day on which such determination is to be made (or, if such day is not a Business Day, on the next preceding Business Day).

(g)     This Lease may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Lease.

(h)     Except to the extent expressly provided herein, any terms of this Lease which expressly incorporate any provisions of the Cape Town Convention shall prevail in the case of any conflict with any other provision contained herein.  Each of the parties hereto acknowledges and agrees that for purposes of the Cape Town Convention (to the extent applicable hereto), separate rights may exist with respect to each Airframe and Engine.

## 18.     SECURITY FOR THE LESSOR'S OBLIGATION

(a)     In order to secure the repayment, inter alia, of the Secured Obligations, the Lessor has agreed in the Lessor Security Agreement, among other things, to assign to the Security Trustee its right, title and interest in and to this Lease, including all Associated Rights related thereto, subject to the reservations and conditions therein set forth.  The Lessee hereby consents to such assignment and acknowledges receipt of a copy of the Security Agreement it being understood that such consent shall not affect any requirement or the absence of any requirement for any consent under any other circumstances.

(b)     Until the Lien of the Lessor Security Agreement has been released:

(i)     the Lessee shall, notwithstanding anything herein to the contrary, make all payments of Rent and all other amounts payable hereunder in accordance with clause 13 of the Participation Agreement and such payments shall not be subject to any defence, counterclaim, set-off or other right or claim of any kind which the Lessee may be

FILED DATE: 1/11/2023 2:57 PM   2023L000001

able to assert against the Lessor or any other Person in an action brought by any thereof on this Lease;

(ii) all rights of the Lessor with respect to this Lease (including all consent, waiver and notice rights), any Aircraft, any Airframe, any Engine or any Part thereof, to the extent set forth in and subject in each case to the exceptions set forth in the Lessor Security Agreement, shall be exercisable by the Security Trustee (to the exclusion of the Lessor); and

(iii) all documents, notices, certificates and opinions of counsel sent by the Lessee to the Lessor shall also be sent to the Security Trustee.

## 19. LESSOR'S RIGHT TO PERFORM FOR LESSEE

If the Lessee fails to make any payment of Rent required to be made by it hereunder or fails to perform or comply with any of its agreements contained herein, the Lessor or the Security Trustee may (but shall be under no obligation to) itself make such payment or perform or comply with such agreement, and the amount of such payment and the amount of the reasonable expenses of the Lessor or the Security Trustee incurred in connection with such payment or the performance of or compliance with such agreement, as the case may be, shall be deemed Supplemental Rent, payable by the Lessee upon demand together with interest thereon at the applicable Post-Default Rate.

## 20. ENGLISH LANGUAGE PREVAILS

For the avoidance of doubt, the Lessor and the Lessee agree any translation of this Lease shall not apply in construing this Lease and that the English version of this Lease shall govern for all purposes.

## 21. COMPLETE AGREEMENT

Except for the other Operative Documents, this Lease contains the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior written or oral communications or agreements with respect thereto.

## 22. LIMITATION OF LIABILITY OF THE LESSOR

The Lessee acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Lease is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Master Lease Agreement to be duly executed by their respective duly authorized officers on the date first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 1**

**FORM OF ACCEPTANCE CERTIFICATE**

[●] (the **Lessee**) at [●] on this [●] day of [●] (the **Delivery Date**), has accepted delivery from [●] (the **Lessor**) of the following described aircraft (the **Aircraft**) pursuant to and in accordance with the terms of that certain Master Lease Agreement (the **Lease**) dated as of [●]between the Lessor and the Lessee:

One (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number [●] and registration mark [●] together with two (2) installed CFM model LEAP-1B27 engines bearing manufacturer's serial numbers [●] and [●], all parts, appliances, components, instruments, accessories, accessions, attachments, avionics (including, without limitation, radio, radar, navigation systems and other electronic equipment), other equipment (including, without limitation, all buyer-designated equipment and all buyer-furnished equipment) and components of whatever nature incorporated or installed in or attached to the Aircraft or such Engines, and all Manuals and Technical Records pertaining to the Aircraft and Engines.

The Lessee further certifies (a) that it has irrevocably accepted the above-described Aircraft for all purposes hereof and of the Lease as being airworthy, in good working order and repair without defect or inherent vice in title, condition, design, operation or fitness for use, and (b) that the Aircraft conforms in all respects with all of the requirements of the Lease.

Capitalized terms used in this Acceptance Certificate not otherwise defined herein shall have the meaning assigned thereto in the Lease.

**IN WITNESS THEREOF**, the Lessee has caused this Acceptance Certificate to be executed in its name by its duly authorized representative on this [●] day of [●].

[●]

By: _____
Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 2**

**FORM OF LEASE SUPPLEMENT**

LEASE SUPPLEMENT NO. [  ]

THIS LEASE SUPPLEMENT NO. [●] dated [●] (this **Lease Supplement**) is between [●]**,** a [●] company incorporated under the laws of [●], as lessor (the **Lessor**) and [●], a [●] company incorporated under the laws of [●], as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated as of [●] relating to 737 - 8 Boeing model [●] aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.     The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

   (a)     one (1) Boeing model 737 - 8  airframe bearing manufacturer's serial number [●] and [●] registration mark [●]; and

   (b)     two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers [●] and [●], respectively.

2.     The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.     The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.     The parties confirm that the Purchase Price for the Delivered Aircraft is US$[●] and the Initial Rent for the Delivered Aircraft is US$[●].

5.     All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.     The [revised] "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.     This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.   This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

[●]

By: _____
    Name:
    Title:

[●]

By: _____
    Name:
    Title:

Receipt of the counterpart of the foregoing Lease Supplement No. [●] is hereby acknowledged on this [●] day of [●].

[●], as Security Trustee

By: _____
    Name:
    Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

Basic Rent
Payment Date                         Basic Rent

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 3**

**FORM OF EUROCONTROL LETTER**

From:   **[NORWEGIAN AIR INTERNATIONAL LIMITED]**

To:     The Director of the Central Route Charges Office
        European Organisation for the Safety of Air Navigation (EUROCONTROL)
        Rue de La Fusée, 96
        B-1130 Brussels
        Belgium

                                                                              [     ] 2014

Dear Sirs

**Authorisation Letter**

**AIR NAVIGATION CHARGES: ONE (1) BOEING 737 - 8 AIRCRAFT BEARING MANUFACTURER'S SERIAL NUMBER [●] AND REGISTRATION MARK [●] (THE AIRCRAFT)**

We have [subleased] the Aircraft from [[●] (the **Sublessor**)] in accordance with a [sublease] agreement dated [  ] 2017 between us and the [Lessor] [Sublessor].

We hereby authorise you to provide the [Sublessor] (hereby represented by [SECURITY TRUSTEE]) with a general statement of account in relation to air navigation charges incurred by us and due to EUROCONTROL.   Access to the statement(s) of account will be provided in accordance with the procedures established by EUROCONTROL.

The authorisation contained in this letter may only be revoked or amended by a written instruction signed by us and the [Sublessor].

Yours faithfully

For and on behalf of
**[NORWEGIAN AIR INTERNATIONAL LIMITED]**

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 4**

**Form of EU ETS Authority Letter**

From:   **[NORWEGIAN AIR INTERNATIONAL LIMITED]**

To:      All governmental entities in the European Union charged with administering any EU ETS (as defined below) applicable to us and the Aircraft

[●]

Dear Sirs

**Emissions Trading Schemes**

1       Pursuant to the terms of the aircraft lease agreement dated [●] 2017 (the **Lease**) between [●] (the **Lessor**) and  Hardangerfjorden Limited (the **Lessee**) and the aircraft sub-lease agreement dated [●] 2017 (the **Sub-Lease**) between the Lessee and ourselves, we have agreed to sub-lease one (1) Boeing 737 - 8 aircraft with manufacturer's serial number [●]and registration mark [●].

2       We wish to enable each of the Lessor, [●] (the Insurer Representative) and [●] the (Security Trustee) to monitor the performance by us of our obligations under the Emissions Trading Schemes (**EU ETS**).

3       We hereby unconditionally authorise you, on request by the Lessor, the Security Trustee or the Insurer Representative from time to time, to provide the Lessor the Security Trustee or the Insurer Representative with particulars of any obligations due from but unperformed by us under the EU ETS.

4       The authorisation contained herein shall only be revoked or amended upon receipt by you of a written instruction signed by ourselves, the Lessor and the Agent requesting such revocation.

Yours faithfully

………………………………………………
For and on behalf of
**[NORWEGIAN AIR INTERNATIONAL LIMITED]**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATORIES**

**LESSOR**

**AAA MAX I LIMITED**

By: _____

     Name: Elaine Anderson
     Title: Director

**LESSEE**

**HARDANGERFJORDEN LIMITED**

By: _____

Name:
Title:

FILED DATE: 1/11/2023 2:57 PM  2023L000001

**SIGNATORIES**

**LESSOR**

**AAA MAX 1 LIMITED**

By: _____
Name:
Title:     Brian Byrne
           Attorney-in-Fact

**LESSEE**

**HARDANGERFJORDEN LIMITED**

By: _____

Name:
Title:     Brian Byrne
           Attorney-in-Fact

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT H-2

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## LEASE SUPPLEMENT NO. 4

THIS LEASE SUPPLEMENT NO. 4 dated ___17 July___ 2017 (this **Lease Supplement**) is between AAA Max 1 Limited**,** an exempted  company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Hardangerfjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated as of 22 June 2017 relating to 737 - 8 Boeing model aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.     The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

(a)     one (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number 42828 and registration mark EI-FYD; and

(b)     two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers 602164 and 602182, respectively.

2.     The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.     The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.     The parties confirm that the Purchase Price for the Delivered Aircraft is US$47,359,706 and the Initial Rent for the Delivered Aircraft is US$7,103,955.90.

5.     All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.     The "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.     This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____

      Name: **Gennie Bigord**

      Title: **Director**

Hardangerfjorden Limited

By: _____

      Name:

      Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 4 is hereby acknowledged on this __17th__ day of ___July___ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____

      Name:

      Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF,** the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____
    Name:
    Title:

Hardangerfjorden Limited

By: _____
    Name:    Brian Byrne
    Title:    Attorney-in-Fact

Receipt of the counterpart of the foregoing Lease Supplement No. 4 is hereby acknowledged on this ___17th day of ___July___ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____
    Name:
    Title:

**IN WITNESS WHEREOF,** the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____
Name:
Title:

Hardangerfjorden Limited

By: _____
Name:
Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 4 is hereby acknowledged on this ___17th day of ___July___ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _John  A. Kane_____
Name:
Title:       John Kane
             Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

| Basic Rent Payment Date | Basic Rent |
|---|---|
| 17-Oct-17 | 1,088,787.00 |
| 17-Jan-18 | 1,088,787.00 |
| 17-Apr-18 | 1,088,787.00 |
| 17-Jul-18 | 1,088,787.00 |
| 17-Oct-18 | 1,088,787.00 |
| 17-Jan-19 | 1,088,787.00 |
| 17-Apr-19 | 1,088,787.00 |
| 17-Jul-19 | 1,088,787.00 |
| 17-Oct-19 | 1,088,787.00 |
| 17-Jan-20 | 1,088,787.00 |
| 17-Apr-20 | 1,088,787.00 |
| 17-Jul-20 | 1,088,787.00 |
| 16-Oct-20 | 1,088,787.00 |
| 15-Jan-21 | 1,088,787.00 |
| 16-Apr-21 | 1,088,787.00 |
| 16-Jul-21 | 1,088,787.00 |
| 15-Oct-21 | 1,088,787.00 |
| 14-Jan-22 | 1,088,787.00 |
| 13-Apr-22 | 1,088,787.00 |
| 15-Jul-22 | 1,088,787.00 |
| 17-Oct-22 | 1,088,787.00 |
| 17-Jan-23 | 1,088,787.00 |
| 17-Apr-23 | 1,088,787.00 |
| 17-Jul-23 | 1,088,787.00 |
| 17-Oct-23 | 1,088,787.00 |
| 17-Jan-24 | 1,088,787.00 |
| 17-Apr-24 | 1,088,787.00 |
| 17-Jul-24 | 1,088,787.00 |
| 17-Oct-24 | 1,088,787.00 |
| 17-Jan-25 | 1,088,787.00 |
| 16-Apr-25 | 1,088,787.00 |
| 17-Jul-25 | 1,088,787.00 |
| 17-Oct-25 | 1,088,787.00 |
| 16-Jan-26 | 1,088,787.00 |
| 17-Apr-26 | 1,088,787.00 |
| 17-Jul-26 | 1,088,787.00 |
| 16-Oct-26 | 1,088,787.00 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

| | |
|---|---|
| 15-Jan-27 | 1,088,787.00 |
| 16-Apr-27 | 1,088,787.00 |
| 16-Jul-27 | 1,088,787.00 |
| 15-Oct-27 | 1,088,787.00 |
| 14-Jan-28 | 1,088,787.00 |
| 12-Apr-28 | 1,088,787.00 |
| 17-Jul-28 | 1,088,787.00 |
| 17-Oct-28 | 1,088,787.00 |
| 17-Jan-29 | 1,088,787.00 |
| 17-Apr-29 | 1,088,787.00 |
| 17-Jul-29 | 1,088,787.00 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT H-3

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# PURCHASE AGREEMENT ASSIGNMENT

Dated as of _____29 June_____ 2017

**ARCTIC AVIATION ASSETS DAC**
**as Assignor**

**and**

**NORWEGIAN AIR SHUTTLE ASA**
**as Assignor and Sub-Lessee**

**HARDANGERFJORDEN LIMITED**
**as Lessee**

**NORWEGIAN AIR INTERNATIONAL LIMITED**
**as Sub-Lessee**

**and**

**AAA MAX 1 LIMITED**
**as Lessor**

**six (6) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

Allen & Overy LLP

0117131-0000002 BK:40179920.15

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS PURCHASE AGREEMENT ASSIGNMENT** dated as of _____29 June_____ 2017 (this **Assignment**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly incorporated under the laws of Ireland (**Arctic**), **NORWEGIAN AIR SHUTTLE ASA**, a company organized under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company incorporated under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly incorporated under the laws of Ireland (**International**).

# W I T N E S S E T H :

**WHEREAS**, Norwegian and The Boeing Company (the **Manufacturer**) entered into that certain purchase agreement number 03754, dated as of 24 January 2012, and that certain Aircraft General Terms Agreement AGTA-NSB, dated 29 August 2007 (the **AGTA**), which is incorporated by reference in that purchase agreement, providing for, inter alia, the sale by the Manufacturer of each Aircraft;

**WHEREAS**, Norwegian assigned and transferred to Arctic its rights and obligations under the Purchase Agreement to purchase the Aircraft in accordance with the Assignment, Assumption and Release Agreement dated 27 November 2014 (the **AARA**).

**WHEREAS**, the benefit of the warranty provisions in the Purchase Agreement were excluded from the rights of Norwegian that were assigned and transferred by it to Arctic under the AARA.

**WHEREAS**, the Lessor wishes to acquire certain rights and interests under the Purchase Agreement and each Assignor, on the terms and conditions set forth herein, is willing to assign to the Lessor certain of its rights and interests under the Purchase Agreement, and the Lessor is willing to accept such assignment; and

**WHEREAS**, the Manufacturer is willing to execute and deliver to the Lessor on each Delivery Date a consent and agreement (the **Consent and Agreement**) to the provisions hereof in substantially the form of Schedule 1 hereto in respect of the relevant Aircraft.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and of other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1.     For all purposes of this Assignment, unless the context otherwise requires, the following terms shall have the following respective meanings:

**Agent** shall mean Citibank Europe plc, UK Branch, as agent for the Funder.

**Aircraft** shall mean any of the six (6) Boeing model 737 - 8 airframes described in Schedule 2 hereto (each, an **Airframe**), as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, together, in the case of any Airframe, with two CFM model LEAP-1B27 engines, as more particularly described in Schedule 2, as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, installed on such Airframe and each other engine described in any Purchase Assignment Supplement hereto (collectively, the **Engines**), together with the equipment, components and accessories installed on such Aircraft (other than buyer furnished equipment that has not been converted to seller purchased equipment pursuant to the Purchase Agreement) pursuant to the Purchase Agreement, and together with all technical records, manuals and data with respect thereto provided in relation to such Aircraft pursuant to the Purchase Agreement (collectively, the **Manuals and Technical Records**).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Delivery** shall mean, with respect to an Aircraft, the time when the relevant Sub-Lessee (as designee of the Lessee), as the authorized representative of the Lessor, shall accept delivery of such Aircraft under the Purchase Agreement (as evidenced by delivery to the Lessor from the Manufacturer of the bill of sale in respect of such Aircraft referred to in the Purchase Agreement).

**Delivery Date** shall mean, with respect to an Aircraft, the date on which the Delivery of such Aircraft occurs.

**Engine Manufacturer** shall mean CFM International S.A., a French company, and its successors and permitted assigns.

**Insurer Representative** shall mean Allianz Risk Transfer AG, as Insurer Representative.

**Lease** shall mean, in respect of each Aircraft, the Master Lease Agreement dated on or about the date hereof as supplemented by the lease supplement dated on or prior to the Delivery Date for that Aircraft, substantially in the form of Exhibit I to the Master Lease Agreement, in each case between the Lessor, as lessor, and the Lessee, as lessee, providing for the lease of that Aircraft, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Lease Event of Default** shall have the meaning given to such term in the Lease.

**Lessor Security Assignment** shall mean, in respect of each Aircraft, the security agreement relating to that Aircraft dated on or prior to the Delivery Date for that Aircraft between the Lessor, as mortgagor, and the Security Trustee, as mortgagee, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Participation Agreement** shall mean the Participation Agreement dated as of 22 June 2017 among inter alios the Assignors, the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Funder identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Payment Undertaking Agreement** shall mean the Payment Undertaking Agreement, dated as of 22 June 2017, among the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Funder identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Payment Undertaking Event of Default** shall have the meaning given to such term in the Payment Undertaking Agreement.

**Purchase Agreement** shall mean the purchase agreement no. PA-03754 dated as of 24 January 2012 originally made between Norwegian and the Manufacturer, as assigned to and assumed by Arctic pursuant to the AARA,  and as further amended and supplemented from time to time thereafter, providing for, inter alia, the purchase by Arctic from the Manufacturer of each Aircraft, as more particularly described therein, which incorporates by reference the terms and conditions of the Aircraft General Terms Agreement (AGTA-NSB) dated as of  29 August 2007 between Norwegian and the Manufacturer (the **AGTA**).

**Purchase Assignment Supplement** shall mean in respect of each Aircraft, the purchase assignment supplement relating to that Aircraft entered into between the Assignors, the Lessee, International and the Lessor and consented to by the Manufacturer, substantially in the form of Schedule 3 hereto.

**Purchase Price** shall mean, with respect to an Aircraft, the amount in United States Dollars (U.S.$) in respect of the purchase of such Aircraft as shall be notified by Arctic to the Lessor at least five (5) Business Days prior to the Delivery Date for such Aircraft upon agreement with the Manufacturer

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and pursuant to the terms of the Purchase Agreement; provided that the Lessor's maximum liability under this Assignment in respect of the Purchase Price for such Aircraft shall not exceed the amount set forth in the Purchase Assignment Supplement; provided, further, that in the event that such amount changes after such notification but prior to the relevant Delivery Date, the parties agree that such amount shall be appropriately adjusted.

**Sub-Lessee** shall mean Norwegian or International, as the case may be.

**Security Trustee** shall mean Citibank N.A., London Branch, as Security Trustee.

**Sub-Lease** shall mean, with respect to an Aircraft, the aircraft operating lease agreement entered into or to be entered into on or about the Delivery Date of such Aircraft between the Lessee as lessor and the relevant Sub-Lessee as lessee.

**Sub-Lease Event of Default** shall have the meaning given to the term "Termination Event" in the relevant Sub-Lease.

**Transaction Parties** means the Lessor, the Lessee, Norwegian and International and **Transaction Party** shall mean any one of them.

All other capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Assignment and this Assignment shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

2.    As of the date of delivery of a Purchase Assignment Supplement from the Assignors to the Lessor (with copies to the Manufacturer and the Security Trustee) with respect to an Aircraft, each Assignor shall, with effect from such date, thereby sell, assign, transfer and set over unto the Lessor, its successors and permitted assigns, all of that Assignor's rights and interests in and to the Purchase Agreement as and to the extent they relate to the purchase of such Aircraft and the operation thereof, except as and to the extent expressly reserved below, including in such assignment:

    (a)    the right upon valid tender by the Manufacturer to purchase such Aircraft pursuant to the Purchase Agreement subject to the terms and conditions thereof and the right to take title to such Aircraft and to be named the Buyer in the bill of sale to be delivered by the Manufacturer for such Aircraft pursuant to the Purchase Agreement;

    (b)    the right to accept delivery of such Aircraft, such acceptance to be exercised by the relevant Sub-Lessee (as designee of the Lessee) as the authorized representative of the Lessor, provided that the Manufacturer shall have received written notice in advance of the identity and authority of such authorized representative;

    (c)    all claims for damages in respect of such Aircraft arising as a result of any default by the Manufacturer under the Purchase Agreement in respect of such Aircraft;

    (d)    all warranty and indemnity provisions contained in the Purchase Agreement and all claims arising thereunder, in respect of such Aircraft; and

    (e)    any and all rights of each Assignor to compel performance of the terms of the Purchase Agreement in respect of such Aircraft;

reserving exclusively to the Assignors, however:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(i)    all the Assignors' rights and interests in and to the Purchase Agreement as and to the extent that it relates to aircraft other than an Aircraft or the purchase, ownership or operation of such other aircraft and to the extent that it relates to any other matters not directly pertaining to an Aircraft;

(ii)    all the Assignors' rights and interests in or arising out of (including any credits for or repayment of) any advance payments made or to be made by the Assignors in respect of such Aircraft under the Purchase Agreement and any other payments or deposits made by the Assignors in respect of such Aircraft under the Purchase Agreement or any other agreement;

(iii)    the right to obtain services, training, data and demonstration and test flights pursuant to the Purchase Agreement; and

(iv)    the right to maintain plant representatives at the Manufacturer's plant pursuant to the Purchase Agreement.

The Lessor hereby accepts the assignment set forth above.

Notwithstanding the foregoing, so long and only so long as no notice has been issued to the Manufacturer, the Lessor hereby authorizes the relevant Sub-Lessee during the term of the Lease in respect of an Aircraft, to the exclusion of the Lessor, to exercise in such relevant Sub-Lessee's name (A) the right to enforce any warranty or indemnity under the Purchase Agreement and to retain any recovery or benefit resulting from the enforcement of any warranty or indemnity under the Purchase Agreement in respect of such Aircraft, (B) all rights to demand, accept and retain all rights in and to all property (other than such Aircraft) and (C) the right to exercise all other rights and powers of the Customer under the Purchase Agreement assigned to the Lessor hereunder in respect of such Aircraft; provided that the Assignors and such relevant Sub-Lessee may not enter into any change order or other amendment, modification or supplement to the Purchase Agreement if such change order, amendment, modification or supplement would (i) result in any rescission, cancellation or termination of the Purchase Agreement or any aircraft warranties in respect of any Aircraft, or (ii) materially diminish the rights and interests assigned hereunder.

For all purposes of this Assignment, the Manufacturer shall not be deemed to have knowledge of or need to recognize the occurrence of a Lease Event of Default, a Termination Event or a Sub-Lease Event of Default, unless and until the Manufacturer shall have received from the Lessee or the Lessor (or the Security Trustee, so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) written notice thereof, addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706. Until such time as a notice shall have been given by the Lessee or the Lessor (or the Security Trustee so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) to the Manufacturer, the Manufacturer shall deal solely and exclusively with the relevant Sub-Lessee. Thereafter, until the Lessee or the Lessor (or the Security Trustee, as the case may be) who served the notice on the Manufacturer shall have notified the Manufacturer that any such Lease Event of Default, Termination Event, Sub-Lease Event of Default or Payment Undertaking Event of Default is no longer continuing (which notice shall be given at such relevant Sub-Lessee's, the Lessee's or the Lessor's (as applicable) written request promptly after the remedy thereof), the Manufacturer shall deal solely and exclusively with the Lessor, the Lessee or the Security Trustee, as the case may be. The Manufacturer may act with acquittance and conclusively rely on such notice. For the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice

FILED DATE: 1/11/2023 2:57 PM   2023L000001

from the Security Trustee shall control and in the event that the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control.

3.  It is expressly agreed that, anything herein contained to the contrary notwithstanding: (a) prior to the execution of a Purchase Assignment Supplement with respect to an Aircraft, each Assignor will perform its obligations with respect to such Aircraft to be performed by it on or before the Delivery Date for such Aircraft, (b) Arctic shall at all times remain liable to the Manufacturer under the Purchase Agreement to perform all duties and obligations of the Customer thereunder to the same extent as if this Assignment had not been executed, (c) the exercise by a Transaction Party of any of the rights assigned hereunder shall not release Arctic from any of its duties or obligations to the Manufacturer under the Purchase Agreement, except to the extent that such exercise by a Transaction Party shall constitute performance of such duties and obligations, and (d) except as specifically provided in the next succeeding paragraph with respect to the Transaction Parties, the Transaction Parties shall not have any obligation or liability under the Purchase Agreement by reason of or arising out of this Assignment or be obligated to perform any of the obligations or duties of Arctic under the Purchase Agreement or to make any payment or to make any inquiry as to the sufficiency of any payment received by it or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder.

Anything contained in this Assignment to the contrary notwithstanding (but without in any way releasing either Assignor from any of its duties or obligations under the Purchase Agreement), the Transaction Parties confirm for the benefit of the Manufacturer that, insofar as the provisions of the Purchase Agreement relate to any Aircraft, in exercising any rights under the Purchase Agreement with respect to such Aircraft, or in making any claim with respect to such Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to such Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, the Transaction Parties to the same extent as if each Transaction Party had been the original Customer thereunder. The Transaction Parties further agree, expressly for the benefit of the Manufacturer, that at any time and from time to time upon the written request of the Manufacturer, the Transaction Parties shall promptly and duly execute and deliver any and all such further assurances, instruments and documents and take all such further action as the Manufacturer may reasonably request in order to obtain the full benefits of the Transaction Parties' agreements set forth in this paragraph.

Nothing contained herein shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the contract rights of the Manufacturer thereunder or require the Manufacturer to divest itself of title to or possession of any Aircraft or other goods and services until delivery thereof and payment therefor on the date of such delivery as provided therein.

Effective at any time after a Sub-Lease Event of Default has occurred, and for so long as such Sub-Lease Event of Default is continuing, the relevant Sub-Lessee does hereby irrevocably appoint the Lessee, its successors and permitted assigns, the relevant Sub-Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessee may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any

FILED DATE: 1/11/2023 2:57 PM   2023L000001

recovery in connection therewith that the Lessee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Lease Event of Default has occurred, and for so long as such Lease Event of Default is continuing, the relevant Sub-Lessee and the Lessee do hereby irrevocably appoint the Lessor, its successors and permitted assigns, the relevant Sub-Lessee's and the Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee, the Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessor may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessor may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

4. NEITHER ASSIGNOR SHALL BE DEEMED TO HAVE GIVEN, AND EACH ASSIGNOR HEREBY EXPRESSLY DISCLAIMS, ANY IMPLIED REPRESENTATION OR WARRANTY AS TO THE AIRWORTHINESS, CONDITION, MERCHANTABILITY, DESIGN, OPERATION OR FITNESS FOR USE OF ANY AIRCRAFT OR ANY PART THEREOF, OR ANY OTHER IMPLIED REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO ANY AIRCRAFT.

5. Each Assignor agrees that at any time and from time to time upon the written request of any Transaction Party, it will promptly and duly execute and deliver any and all such further instruments and documents and take such further action as such Transaction Party may reasonably request in order to obtain the full benefits of this Assignment and of the rights and powers herein granted.

6. Each Assignor does hereby represent and warrant that it has not assigned or pledged, and hereby covenants that it will not assign or pledge so long as this Assignment shall remain in effect, the whole or any part of the rights hereby assigned to anyone other than the Lessor. Each Assignor hereby acknowledges and agrees that the Lessor has assigned to the Security Trustee, as collateral security for the Lessor's obligations under the Payment Undertaking Agreement and the other Operative Documents, all of the Lessor's right, title and interest in and to the Purchase Agreement (as it relates to any Aircraft) and this Assignment pursuant to the Lessor Security Assignment, and each Assignor hereby consents to such assignment.

7. The Lessor agrees that it will not enter into any agreement with the Manufacturer that would amend, modify, rescind, cancel or terminate the Purchase Agreement in respect of any Aircraft or take any other action to amend, modify, rescind, cancel or terminate any of the Assignors' rights in respect of any Aircraft, without the prior written consent of the Assignors and the Security Trustee (so long as the Lien of the Lessor Security Assignment is in effect and has not been released by the Security Trustee).

8. Each of the Transaction Parties agrees, expressly for the benefit of the Manufacturer, that it will not disclose, directly or indirectly, any terms of the Purchase Agreement disclosed to it; provided, that (a) the Transaction Parties may use, retain and disclose any such information to its special counsel and public accountants, who shall maintain the confidentiality of the Purchase Agreement, (b) the Transaction Parties may disclose any such information as required by Applicable Law or governmental regulations, (c) to the extent that any Transaction Party may have received a subpoena or other written demand under colour of legal right for such information, such Transaction Party may disclose such information, but it shall first, as soon as practicable upon receipt of such demand, furnish a copy thereof to the Manufacturer, and the relevant Transaction Party shall afford the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer reasonable opportunity, at the moving Person's cost and expense, to obtain a protective order or other reasonably satisfactory assurance of confidential treatment for the information required to be disclosed, (d) the Transaction Parties may disclose any such information to any bona fide potential purchaser or lessee of any Aircraft (subject to execution by such potential purchaser or lessee of a confidentiality undertaking substantially similar to this Section 8) and (e) the Transaction Parties may disclose any such information to the Agent, the Funder, the Security Trustee, the Insurer Representative, each Insurer Group Member and any other Person with whom any of the foregoing is in good faith conducting negotiations relating to the possible transfer and sale of such Person's interests in the Purchase Agreement, any Aircraft and/or any provision of funds (subject to the execution of a confidentiality undertaking substantially similar to this Section 8 by such Agent, Funder, Security Trustee, Insurer Representative, Insurer Group Member and Person described in this paragraph 8) and to their respective special counsel and financial advisors (who shall maintain the confidentiality of the Purchase Agreement to the extent required by this Section 8).

9.    This Assignment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

10.    On the Delivery Date for an Aircraft, subject to satisfaction or waiver of the conditions set forth in the Participation Agreement required to be satisfied on or prior to the Delivery Date for such Aircraft, the Lessor agrees to purchase such Aircraft from the Manufacturer and (without limiting its other payment obligations under the Operative Documents on the Delivery Date for such Aircraft) to pay the Purchase Price for such Aircraft in the manner specified in the Purchase Agreement.

11.    If the Delivery Date for an Aircraft does not occur by 11:59 p.m. (Seattle time) on the date set forth in the Purchase Assignment Supplement in respect of such Aircraft, this Assignment (as it relates to such Aircraft) shall (unless otherwise agreed by the parties hereto) automatically terminate, whereupon the rights subject to this Assignment (as it relates to such Aircraft) shall be deemed reassigned by the Lessor to the Assignors without the requirement of any further act or action (other than any notice required to be given to the Manufacturer).

12.    For the purposes of this Assignment, all notices and other communications shall be in writing, in English, and shall be given or made by fax, or personal delivery and faxed or delivered to the intended recipient (other than the Manufacturer) at the address specified below, or, as to any party, at such other address as shall be designated by such party in a notice to each other party hereto. Except as otherwise provided in this Assignment, all such communications shall be deemed to have been duly given when transmitted by fax (provided such transmission by fax is in legible form and is accompanied by or generates a substantially simultaneous confirmation of transmission), or personally delivered, in each case given or addressed as aforesaid.

(a)    If to the Lessor:

AAA Max 1 Limited
c/o Walkers Fiduciary Limited
Cayman Corporate Centre
27 Hospital Road
George Town
Grand Cayman KY1-9008
Cayman Islands

Attention:    The Directors

Telephone:    +1 345 814 7600

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Email:        issuerpfla@citi.com

(b)    With a copy to the Security Trustee:

Citibank, N.A., London Branch
Canada Square,
Canary Wharf,
London E14 5LB

Attention:    The Directors

Fax:    issuerpfla@citi.comIf to Arctic:

Arctic Aviation Assets DAC
Ground Floor
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:    Tore Jenssen

Telephone:    + 353 879 461 070

Fax:    + 353 1 814 1839

with a copy to Norwegian at the address below.

(c)    If to Norwegian:
Norwegian Air Shuttle ASA
Oksenøyveien 3
Postboks 115
N-1330 Fornebu
Norway

Attention:    Chief Financial Officer

Telephone:    + 47 67 59 3078

Fax:    +47 67 59 3001

(d)    If to the Lessee:

Hardangerfjorden Limited
c/o Arctic Aviation Assets DAC
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:    Tore Jenssen

Telephone:    + 353 879 461 070

Fax:    + 353  1 814 7839

FILED DATE: 1/11/2023 2:57 PM  2023L000001

with a copy to Norwegian at the address above.

(e)     If to International

Norwegian Air International Limited
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:     + 353 879 461 070

Fax:            + 353 1 814 7839

with a copy to Norwegian at the address above.

13.   This Assignment will be governed by, and construed in accordance with, the laws of the State of Washington, except for the conflict of laws principles thereof.

14.   The provisions of clauses 13(d)(ii) to 13(d)(vi) of the Participation Agreement, in so far as they relate to any dispute between the parties shall apply hereto as if set out in this Assignment *mutatis mutandis*.

15.   Each of the parties to this Assignment (except International) acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Assignment is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

16.   International acknowledges and agrees that the provisions of clause 20(c) (No Discharge, etc.; No Petitioning) and clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement apply to it to the same extent as if it were a party to the Participation Agreement and as if the reference to "Lessee" in such clause 20(c) referred to the Lessee and the Sub-Lessee.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Agreement Assignment to be duly executed as of the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 1

## FORM OF CONSENT AND AGREEMENT

## THE BOEING COMPANY

## CONSENT AND AGREEMENT

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated as of _____ 2017 between **AAA MAX 1 LIMITED** (the **Lessor**), **HARDANGERFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** [(**International/** the **Sub-Lessee**)] **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** [(**Norwegian**/ the **Sub-Lessee**)] (each of Arctic and [Norwegian/ the Sub-Lessee] being an **Assignor**), relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number [●] (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.      all representations, warranties, indemnities and agreements of the Manufacturer under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.      no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.      the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.      if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

5.  the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Payment Undertaking Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.  the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.  the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.  The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

    (a)  the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

    (b)  the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the

FILED DATE: 1/11/2023 2:57 PM  2023L000001

Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)     to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)     Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.      The Manufacturer hereby confirms to the Security Trustee that:

(a)     upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)     except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.     The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.     The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.     It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 2017

**THE BOEING COMPANY**

By:

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

MSN [●]

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 2

## DESCRIPTION OF AIRCRAFT

Each of the six (6) Boeing model 737 - 8 airframes, bearing Manufacturer's serial numbers 42826, 42830, 42825, 42827, 42828 and 42829, as further identified on each Purchase Assignment Supplement to be entered into by the Assignors, the Lessor, the Lessee and the relevant Sub-Lessee in respect of such airframes, together, in the case of each such airframe, with the two (2) CFM Model LEAP-1B27 engines installed thereon and each other engine identified on any Purchase Assignment Supplement hereto.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

### SCHEDULE 3

**FORM OF PURCHASE ASSIGNMENT SUPPLEMENT**

**PURCHASE ASSIGNMENT SUPPLEMENT NO. __**

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated _____ 2017 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly organized under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly organized under the laws of Ireland (**International**) and supplements that Purchase Agreement Assignment dated as of _____ 2017 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

**W I T N E S S E T H :**

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and International desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and International hereby agrees as follows:

1.    The Sub-Lessee of the Aircraft is:                    _____

2.    Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

       Manufacturer's serial number:                    _____

       Registration Mark:                    _____

       Engine Manufacturer's serial numbers:                    _____ & _____

3.    Latest Delivery Date with respect to such Aircraft:                    _____

4.    Maximum liability of the Lessor with respect to the    U.S.$_____
      Purchase Price of such Aircraft:

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. ___ to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

**SIGNED AND DELIVERED** as a **DEED**    )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully    )
appointed attorney    )    ………………………………..

                       Lawfully appointed attorney

in the presence of:    )

Witness's Signature:   _____

Name:   _____

Address:   _____

   _____

**Norwegian**

SIGNED AND DELIVERED as a DEED by
**NORWEGIAN AIR SHUTTLE ASA**    )
acting by its lawfully appointed attorney    )    ………………………………..

                       Lawfully appointed attorney

in the presence of:    )

Witness's Signature:   _____

Name:   _____

Address:   _____

   _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **AAA MAX 1 LIMITED** | ) |
| acting by | ) |
| _____ | ) |
| acting under the authority of that | |
| Company, in the presence of: | ) |

Witness's Signature:      _____

Name:                            _____

Address:                        _____

                                      _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (2)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by          )
**HARDANGERFJORDEN LIMITED**                        )
acting by                                           )
its lawfully appointed attorney                     )          ……………………………..

                                                               Lawfully appointed attorney

in the presence of:

Witness's Signature:        _____

Name:                       _____

Address:                    _____

                            _____

**International**

**SIGNED AND DELIVERED** as a **DEED** by          )
**NORWEGIAN AIR INTERNATIONAL**                     )
**LIMITED**                                         )          ……………………………..
acting by its lawfully appointed attorney

                                                               Lawfully appointed attorney

in the presence of:

Witness's Signature:        _____

Name:                       _____

Address:                    _____

                            _____

**SIGNATURES (3)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By:
Name:
Title:
Date:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

### PURCHASE AGREEMENT ASSIGNMENT

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by           )

**ARCTIC AVIATION ASSETS DAC**                      )
acting by
its lawfully appointed attorney                     )

........Tim O'Connell........
Lawfully appointed attorney

in the presence of:

Witness's Signature:   ...Vanessa Caesar.........

Name:                  ...Vanessa Caesar.....

Address:               ...Imbus House.........

**Assignor and Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by           )

**NORWEGIAN AIR SHUTTLE ASA**                        )
acting by
its lawfully appointed attorney                     )

…………………………………..
Lawfully appointed attorney

in the presence of:

Witness's Signature:   …………………………………..

Name:                  …………………………………..

Address:               …………………………………..

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE AGREEMENT ASSIGNMENT

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by                )

**ARCTIC AVIATION ASSETS DAC**                          )
acting by
its lawfully appointed attorney                          )                ………………………………..
                                                                        Lawfully appointed attorney

in the presence of:

Witness's Signature:        ………………………………..

Name:                       ………………………………..

Address:                    ………………………………..

**Assignor and Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by                )

**NORWEGIAN AIR SHUTTLE ASA**                            )
acting by
its lawfully appointed attorney                          )

                                                        ANDERS FREDRIKSEN

in the presence of:
                                                        ….A.T.T.O.R.N.E.Y.-.I.N.-.F.A.C.T.…...
Witness's Signature:    ……Simen Strand……               Lawfully appointed attorney

Name:                   ……SIMEN STRAND……

Address:                HARBITZALLEEN 14H

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by                              )
**AAA MAX 1 LIMITED**                                    )
acting by                                                )
                                                         )
_____                        )
acting under the authority of that
Company, in the presence of:                             )

**Elaine Anderson**
**Director**

Witness's Signature:

Name:

Address:

Cayman Corporate Centre
27 Hospital Road, George Town
Grand Cayman KY1-9008
Cayman Islands

3                                            Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (2)**

**PURCHASE AGREEMENT ASSIGNMENT**

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by          )

**HARDANGERFJORDEN LIMITED**          )
acting by
its lawfully appointed attorney          )

................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:   ....................................

Name:   ....................................

Address:   ....................................

**Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by          )

**NORWEGIAN AIR INTERNATIONAL**          )
**LIMITED**
acting by
its lawfully appointed attorney          )

................................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:   ....................................

Name:   ....................................

Address:   ....................................

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Citibank N.A, London Branch, as security trustee for the Secured Parties and as holder of a security interest in the right, title and interest of the Lessor in and to the Purchase Agreement (as it relates to each Aircraft) and this Assignment pursuant to the terms of the Lessor Security Assignment, agrees to the terms and conditions of this Assignment and agrees that its rights and remedies under the Lessor Security Assignment in respect of the property expressed to be assigned under this Assignment shall be subject to the terms and conditions of this Assignment (including, without limitation, the second paragraph of Section 3 hereof) and of the Purchase Agreement.

**CITIBANK N.A., LONDON BRANCH**
as Security Trustee

By: _John M. Kane_

Name:

Title:
       John Kane
       Vice President

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT H-4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 4

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated __17 July__ 2017 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly organized under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly organized under the laws of Ireland (**International**) and supplements that Purchase Agreement Assignment dated as of 29 June 2017 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

## W I T N E S S E T H :

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and International desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and International hereby agrees as follows:

1.    The Sub-Lessee of the Aircraft is:                    Norwegian Air Shuttle ASA

2.    Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

      Manufacturer's serial number:                    42828

      Registration Mark:                    EI-FYD

      Engine Manufacturer's serial numbers:                    602164 & 602182

3.    Latest Delivery Date with respect to such Aircraft:                    17 July 2017

4.    Maximum liability of the Lessor with respect to the Purchase Price of such Aircraft:                    U.S.$47,359,706

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. 4 to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**

**PURCHASE ASSIGNMENT SUPPLEMENT NO. 4**

**Arctic**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by **ARCTIC AVIATION ASSETS DAC** acting by its lawfully appointed attorney | ) ) ) |

................................
Lawfully appointed attorney

in the presence of:                                        )

Witness's Signature:   *Vanessa C.*

Name:        ~~Vanessa Caesar~~

Address:      ~~Imbus House~~

             ~~Financial Administrator~~

**Norwegian**

| | |
|---|---|
| SIGNED AND DELIVERED as a DEED by **NORWEGIAN AIR SHUTTLE ASA** acting by its lawfully appointed attorney | ) ) |

................................
Lawfully appointed attorney

in the presence of:                                        )

Witness's Signature:   _____

Name:         _____

Address:       _____

             _____

Purchase Agreement Assignment Supplement No. 4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES**

**PURCHASE ASSIGNMENT SUPPLEMENT NO. 4**

**Arctic**

**SIGNED AND DELIVERED** as a **DEED**            )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully                                          )
appointed attorney                                           )

…………………………..

Lawfully appointed attorney

in the presence of:                                            )

Witness's Signature:     _____

Name:                          _____

Address:                       _____

                                     _____

**Norwegian**

SIGNED AND DELIVERED as a DEED by
**NORWEGIAN AIR SHUTTLE ASA**                   )
acting by its lawfully appointed attorney          )

THOMAS F WELLEN
ATTORNEY-IN-FACT
Lawfully appointed attorney

in the presence of:                                            )

Witness's Signature:     *Simen Strand*

Name:                          *SIMEN STRAND*

Address:                       *HARBITZALLEEN 14H*

                                     _____

Purchase Agreement Assignment Supplement No. 4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by                    )
**AAA MAX 1 LIMITED**                             )
acting by                                        )
                                                 )
_____                              
acting under the authority of that
Company, in the presence of:                     )

**Gennie Bigord**
**Director**

Witness's Signature:

Name:

Address:      Cayman Corporate Centre
              27 Hospital Road, George Town
              Grand Cayman KY1-9008
              Cayman Islands

Purchase Agreement Assignment Supplement No. 4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATURES (2)**

**PURCHASE ASSIGNMENT SUPPLEMENT NO. 4**

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **HARDANGERFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

Lawfully appointed attorney

in the presence of:

Witness's Signature:  _Vanessa C._

Name:  **Vanessa Caesar**

Address:  **Imbus House**
**Financial Administrator**

**International**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR INTERNATIONAL** | ) |
| **LIMITED** | ) |
| acting by its lawfully appointed attorney | |

Lawfully appointed attorney

in the presence of:

Witness's Signature:  _Vanessa C._

Name:  **Vanessa Caesar**

Address:  **Imbus House**
**Financial Administrator**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

SIGNATURES (3)

PURCHASE ASSIGNMENT SUPPLEMENT NO. 4

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By: *TA Greene*
Name: *Tiffany Greene*
Title: *Attorney-in-fact*
Date: 17 July 2017

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT H-5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# CONSENT AND AGREEMENT

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated as of 29 June 2017 between **AAA MAX 1 LIMITED** (the **Lessor**), **HARDANGERFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** (**International**), **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** (the **Sub-Lessee**) (each of Arctic and the Sub-Lessee being an **Assignor**), relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number 42828 (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.    all representations, warranties, indemnities and agreements of the Manufacturer under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.    no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.    the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.    if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

5.    the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Payment Undertaking Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.   the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.   the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.   The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)   the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)   the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)   to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)   Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.   The Manufacturer hereby confirms to the Security Trustee that:

(a)   upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)   except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.   The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.   The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.   It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____17 July_____ 2017

**THE BOEING COMPANY**

By: _T.A. Greene_

Name: _Tiffany Greene_

Title: _Attorney-in-fact_

MSN 42828

FILED
1/11/2023 2:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000001
Calendar, S
21000066

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# GROUP EXHIBIT I

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT I-1

**EXECUTION VERSION**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# MASTER LEASE AGREEMENT

22 June   **2017**

**Between**

**AAA MAX 1 LIMITED**
**as Lessor**

**and**

**HARDANGERFJORDEN LIMITED**
**as Lessee**

**Up to six (6) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

Allen & Overy LLP

0117131-0000002 BK:39702344.14

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# CONTENTS

**Clause**                                                                                          **Page**

1.    Definitions and interpretation ..............................................................................1
2.    Agreement to Lease; Term.....................................................................................1
3.    Rent .......................................................................................................................2
4.    Lessor's Disclaimer of Warranties; Manufacturers' Warranties ............................4
5.    Purchase Options; Return of Aircraft.....................................................................6
6.    Liens ......................................................................................................................9
7.    Registration, Maintenance, Operation and Possession ..........................................9
8.    Replacement; Temporary Installation; Pooling; Alterations, Modifications and Additions; Etc .......24
9.    Loss, Destruction, Requisition, Etc ......................................................................28
10.   Insurance ..............................................................................................................31
11.   Absolute Obligations............................................................................................39
12.   Assignment...........................................................................................................41
13.   Lease Events of Default and Termination Events ................................................41
14.   Remedies ..............................................................................................................45
15.   Further Assurances; Investment of Security Funds ..............................................47
16.   Notices .................................................................................................................48
17.   Miscellaneous; Governing Law ...........................................................................48
18.   Security for the Lessor's Obligation.....................................................................49
19.   Lessor's Right to Perform for Lessee ...................................................................50
20.   English Language Prevails ...................................................................................50
21.   Complete Agreement ...........................................................................................50

**Schedule**

1.    Form of Acceptance Certificate ...........................................................................51
2.    Form of Lease Supplement ..................................................................................52
      Form of Eurocontrol Letter .................................................................................56

Signatories.................................................................................................................57

0117131-0000002 BK:39702344.14

**THIS MASTER LEASE AGREEMENT** dated _____22 June_____ 2017 (this **Lease**)

**AMONG**

(1)     **AAA MAX 1 LIMITED**, an exempted company  with limited liability incorporated and existing under the laws of the Cayman Islands, as lessor (the **Lessor**); and

(2)     **HARDANGERFJORDEN LIMITED**, a limited liability company duly incorporated under the laws of Ireland (the **Lessee**).

 **WITNESSETH:**

(1)     **WHEREAS,** pursuant to that certain Participation Agreement, dated as of the date of execution and delivery thereof (as amended, supplemented and modified from time to time, the **Participation Agreement**), among, *inter alios*, the Lessor, Walkers Fiduciary Limited, as lessor parent, the Lessee, Greensill Capital (UK) Limited, as Funder, Citibank Europe plc, UK Branch, as Agent, Citibank N.A., London Branch, as security trustee, the Lessor and the Lessee have agreed to enter into this Lease.

(2)     **WHEREAS,** pursuant to each Purchase Assignment in respect of an Aircraft, the Lessor will acquire certain rights under the Purchase Agreement in respect of such Aircraft.

(3)     **WHEREAS,** pursuant to the terms and conditions of this Lease, the Lessor has agreed to lease each Aircraft to the Lessee and the Lessee has agreed to lease each Aircraft from the Lessor.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

**1.     DEFINITIONS AND INTERPRETATION**

**1.1     Definitions**

Unless the context otherwise requires, capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Lease.

**1.2     Interpretation**

 This Lease shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

**2.     AGREEMENT TO LEASE; TERM**

**2.1     Delivery**

The Lessor hereby agrees on each Delivery Date for an Aircraft, subject to (a) the purchase of such Aircraft by the Lessor to be delivered pursuant to the Participation Agreement, the Purchase Agreement and the Purchase Assignment and (b) the satisfaction or waiver of the conditions precedent with respect to such Aircraft set forth or referred to in clause 4 of the Participation Agreement, to accept delivery of, and subject to clause 2 of the Participation Agreement to lease to the Lessee hereunder, and the Lessee hereby agrees, subject to the foregoing and the satisfaction of the conditions precedent (with respect to such Aircraft) set forth in clause 5 of the Participation

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Agreement, to accept delivery of, to sign the Acceptance Certificate and to lease from the Lessor hereunder, such Aircraft, whereupon the Term for such Aircraft shall commence.

**2.2** **Acceptance**

The Lessee hereby agrees that the execution of the Acceptance Certificate for an Aircraft in the form of Schedule 1 hereto shall be deemed to constitute unconditional, absolute and irrevocable acceptance of such Aircraft by the Lessee under this Lease.

**2.3** **Term**

Subject to acceptance of an Aircraft as provided in Clauses 2.1 and 2.2, the Lessee hereby leases from the Lessor such Aircraft for the Term applicable thereto.

**2.4** **Cape Town Convention**

(a) The parties hereto agree that, for all purposes of the Cape Town Convention, upon execution of a Lease Supplement (a) this Lease, together with such Lease Supplement, will constitute a separate International Interest with respect to the Airframe and each Engine identified in such Lease Supplement, (b) such Airframe and Engines each constitute an Aircraft Object and (c) this Lease, together with such Lease Supplement, will constitute an agreement for the registration of such Airframe.

(b) If there is any change to the manner in which the Cape Town Convention is implemented in the Government of Registry, the Lessee shall take such action as the Lessor may require in relation to such change, including:

(i) amending or re-executing any Operative Document;

(ii) registering, perfecting and/or preserving any International Interest(s) vested in the Lessor and the Secured Parties with respect to the Airframe and/or any Engine; and

(iii) entry into agreements (subordination or otherwise) to protect the priority of any International Interest(s) or other registrable interests referred to in the foregoing paragraphs (i) and/or (ii).

(c) The Lessee agrees to indemnify on demand and shall pay or reimburse the Agent, the Funder, the Insurer Representative, each Insurer Group Member, the Lessor, the Lessor Parent and the Security Trustee for any reasonable costs and expenses (including reasonable fees and disbursements of legal counsel and other experts employed or retained by such Person) incurred by such Person in connection with any action taken pursuant to paragraph (b) above.

**3.** **RENT**

**3.1** **Initial Rent**

On or prior to each Delivery Date, the Lessee agrees to pay the Lessor the Initial Rent in Dollars for the Aircraft to be delivered on such Delivery Date.

**3.2** **Basic Rent**

In addition, the Lessee agrees to pay the Lessor rent (the **Basic Rent**) for each Aircraft in Dollars with respect to each Rent Period in arrear on each Basic Rent Payment Date occurring during the

Term for such Aircraft, in each case, in an amount calculated in accordance with paragraph (a) through (b) below.

(a)     For all purposes of this Lease, the Basic Rent payable in respect of each Aircraft on each Basic Rent Payment Date for such Aircraft occurring during the Term for such Aircraft shall be equal to the "Basic Rent" set forth in Schedule I to the Lease Supplement for such Aircraft and Basic Rent Payment Date.

(b)     Each instalment of Basic Rent for an Aircraft payable on any Basic Rent Payment Date for such Aircraft shall in all events be in an amount that is equal to the amount payable by the Lessor to the Agent under the Payment Undertaking Agreement in respect of the scheduled Payment Amounts for such Aircraft due on the corresponding Payment Date.

**3.3     Supplemental Rent**

The Lessee shall pay all Supplemental Rent to the Lessor or to such other Person to whom such amount may be owed under the Operative Documents in the currency (whether Dollars or another currency) in which the same is due and owing, and such Supplemental Rent shall be payable within thirty (30) days of demand upon the Lessee (or within such longer period as the Lessor, acting reasonably and having regard to all relevant circumstances (including, without limitation, the timing of any approvals or licenses required from any Government Body of the Government of Registry and/or the jurisdiction of incorporation or formation of the Lessee in order for such payment to be lawfully made) may agree), provided that if any such demand has been made and subsequent to the making of such demand a Material Default, Termination Event or an Event of Default shall occur, any such Supplemental Rent shall be payable forthwith upon the occurrence of such Material Default, Termination Event or Event of Default.  In the event of any failure on the part of the Lessee to pay any Supplemental Rent, the Lessor shall have the same rights, powers and remedies provided for herein or by law or equity or otherwise as in the case of non-payment of Basic Rent.  The Lessee will also pay interest on demand to the recipient entitled thereto, as Supplemental Rent, to the extent permitted by Applicable Laws, at a rate per annum equal to the applicable Post-Default Rate on any part of any instalment of Basic Rent not paid when due for the period from and including the due date thereof to but excluding the date on which the same is paid in full and, in the case of payment to any of the Lessor, the Funder, the Agent, the Insurer Representative, the Security Trustee or any other Person, on any payment of Supplemental Rent payable but not paid when due or demanded by the recipient entitled thereto for the period from and including the due date thereof to but excluding the date on which the same is paid in full.

**3.4     Manner of Payment**

(a)     All Rent and other sums payable hereunder shall be paid by 3:00 p.m. (London time) on the date payment is due, in Dollars (or, in the case of any Supplemental Rent denominated in a currency other than Dollars, in the relevant currency) and in immediately available funds (or such other funds as are from time to time customary for the settlement of international banking transactions in Dollars or other relevant currency in New York City or other relevant jurisdiction of such other currency).  Whenever any payment of Basic Rent shall become due on a day which is not a Business Day, the due date thereof shall be the immediately preceding Business Day, provided always that the amount of Basic Rent shall not be adjusted by reason of such payment being made on such immediately preceding Business Day.

(b)     Whenever any payment (other than a payment of Basic Rent) shall become due on a date which is not a Business Day, or if any such payment is payable on demand and demand is not made on a Business Day or is made on a Business Day but is made outside normal banking hours of the recipient of such demand, demand for such payment shall be deemed to

FILED DATE: 1/11/2023 2:57 PM    2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

have been made on the immediately succeeding Business Day, and if such payment includes any payment of interest (or an amount calculated or determined by reference to interest), the amount payable shall be adjusted accordingly.  All payments of Rent to the Lessor and all other amounts payable hereunder by the Lessee to the Lessor shall be paid to such account as the Lessor may specify from time to time in writing not less than thirty (30) Business Days prior to the date on which the relevant amount is payable.

**3.5**   **Absolute Obligation**

The obligation of the Lessee to pay Rent hereunder shall be absolute and unconditional as more fully set forth in Clause 11.  To the extent Taxes arise from the leasing of any Aircraft to the Lessee under this Lease which are payable by way of withholding by the Lessee, such Taxes shall be deducted and paid by the Lessee by way of withholding, and the Lessor agrees that the full amount of Rent due under this Lease in respect of an Aircraft shall be the amount of Basic Rent payable in respect of such Aircraft under Clause 3.2 increased by any such Taxes withheld by the Lessee.

**3.6**   **Associated Rights**

The Lessee hereby agrees to pay and perform all of its obligations under the Operative Documents to which it is a party and further acknowledges and agrees that the payment of Rent hereunder and the performance by the Lessee of its obligations under the other Operative Documents constitute Associated Rights and are secured by and/or associated with the relevant Aircraft and Engines.

**3.7**   **Assignment of Rent**

Pursuant to the Security Documents, the Lessor has assigned its right to receive Basic Rent and Termination Value hereunder to the Security Trustee, and pursuant to such assignment the Lessor hereby directs, and the Lessee hereby agrees, that all Basic Rent and Termination Value payable to the Lessor hereunder shall be paid directly to the Funder (unless a Material Default, Termination Event or an Event of Default shall have occurred and be continuing and the Insurer Representative or the Security Trustee has given notice to the Funder and the Lessor in which case the Basic Rent and Termination Value shall be paid directly to the Security Trustee).

**4.**   **LESSOR'S DISCLAIMER OF WARRANTIES; MANUFACTURERS' WARRANTIES**

**4.1**   **Disclaimer**

Subject to Clause 4.2, the Lessee acknowledges and agrees that (a) each Aircraft is of a size, design, capacity and manufacture selected by and acceptable to the Lessee and (b) the Lessee is satisfied that such Aircraft are suitable for its purposes.  NONE OF LESSOR, LESSOR PARENT, THE FUNDER, THE AGENT, THE SECURITY TRUSTEE, THE INSURER REPRESENTATIVE OR ANY MEMBER OF THE INSURER GROUP SHALL MAKE OR GIVE OR SHALL BE DEEMED TO HAVE MADE OR GIVEN AND HEREBY EXPRESSLY DISCLAIMS ANY REPRESENTATION, WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, AS TO (i) THE AIRWORTHINESS, VALUE, CONDITION, DESIGN, COMPLIANCE WITH SPECIFICATIONS OF, OPERATION OF, OR THE QUALITY OF THE MATERIAL OF OR WORKMANSHIP IN, OR TITLE TO, OR ANY DEFECT IN, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, (ii) THE MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE OF ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, OR AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT OR THE LIKE,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

OR ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (iii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT WITH RESPECT TO ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING DELIVERED, LEASED, SOLD OR TRANSFERRED HEREUNDER, WHETHER OR NOT IN STRICT OR ABSOLUTE LIABILITY OR ARISING FROM THE NEGLIGENCE OF LESSOR, THE FUNDER, THE AGENT, THE SECURITY TRUSTEE OR THE INSURER REPRESENTATIVE, ACTUAL OR IMPUTED, (INCLUDING ANY STATUTORY WARRANTY OR CONDITION UNDER THE LAWS OF THE UNITED STATES, ANY STATE THEREOF, THE GOVERNMENT OF REGISTRY OR THE JURISDICTION OF INCORPORATION OR FORMATION OF LESSEE) OR (iv) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF, OR DAMAGE TO, ANY AIRCRAFT, ANY AIRFRAME, ANY ENGINE, ANY PART, ANY DATA OR ANY OTHER THING, FOR ANY LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES THEREFROM, IT BEING UNDERSTOOD THAT ALL SUCH RISKS, AS BETWEEN LESSEE AND SUCH OTHER PERSONS, ARE TO BE BORNE BY LESSEE, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE OPERATIVE DOCUMENTS.   NONE OF THE INSURER REPRESENTATIVE, ANY MEMBER OF THE INSURER GROUP, THE FUNDER, THE AGENT NOR THE SECURITY TRUSTEE SHALL BE LIABLE OR OTHERWISE RESPONSIBLE IN ANY MANNER FOR ANY REPRESENTATION OR WARRANTY MADE BY THE LESSOR HEREUNDER OR UNDER ANY OTHER OPERATIVE DOCUMENT.

## 4.2    Manufacturers' Warranties

None of the provisions of this Clause 4 or any other provision of this Lease shall be deemed to amend, modify or otherwise affect the representations, warranties or other obligations (express or implied) of the Manufacturer or the Engine Manufacturer or any contractor, subcontractor or supplier of the Manufacturer or the Engine Manufacturer with respect to any Aircraft, any Airframe, any Engine or any Parts, forming a part of or installed on or attached to any Aircraft, any Airframe or any Engine or to release the Manufacturer or the Engine Manufacturer or any such contractor, subcontractor or supplier from any such representation, warranty or obligation.  So long as no Event of Default or Termination Event shall have occurred and be continuing, the Lessee, or any Permitted Sub-Lessee leasing an Aircraft from the Lessee, shall have the benefit of and shall be entitled to enforce (as it shall deem appropriate), either in its own name or in the name of the Lessor (at the cost of the Lessee and in respect of which enforcement the Lessee hereby agrees to indemnify the Lessor) for the use and benefit of the Lessee (or the relevant Permitted Sub-Lessee) during the relevant Term by way of revocable license (provided that the Lessor shall not revoke such license until an Event of Default or Termination Event occurs and is continuing and shall reinstate such license in the event the Event of Default or Termination Event is cured), any and all dealer's, manufacturer's contractor's, or subcontractor's credits, guarantees, indemnities, warranties or other benefits, if any, available to the Lessor in respect of any Aircraft, any Engine and/or any Part, provided that neither the Lessee nor any Permitted Sub-Lessee shall be entitled to modify, amend or otherwise alter any of the foregoing without the prior written consent of the Security Trustee except in circumstances where such modification, amendment or alteration could not reasonably be expected to have a Material Adverse Effect in relation to the Lessor or any Secured Party, and the Lessor agrees at the Lessee's expense to do, execute and deliver such further acts, deeds, matters or things as may be reasonably requested by the Lessee to enable the Lessee to obtain customary warranty service furnished for any Aircraft, any Engine and/or Part by such dealer, manufacturer, contractor or subcontractor or any supplier as aforesaid or to exercise any other rights in relation to any of the foregoing benefits, and any moneys recovered from such enforcement shall be promptly paid to, and retained by, the Lessee (or, if directed by the Lessee, any Permitted Sub-Lessee), provided further, that if a Material Default, Termination Event or Event of Default shall have occurred and be continuing, any such moneys payable to the Lessee or Permitted Sub-Lessee shall instead be paid to the Lessor as security for, and

applied to, the obligations of the Lessee Obligors under the Operative Documents in such order as the Lessor shall elect and, at such time as no Material Default, Termination Event or Event of Default shall be continuing, to the extent not so applied, promptly paid to the Lessee.  The Lessee hereby acknowledges the provisions of the Purchase Assignment, the Engine Warranties Agreement and each Security Agreement and of the security interests granted to the Security Trustee in respect of the Lessor's rights, title and interests in and to the Purchase Agreement and the Engine Agreement created by the Operative Documents.

**5.      PURCHASE OPTIONS; RETURN OF AIRCRAFT**

**5.1      Purchase Options**

Provided that the leasing of the relevant Aircraft under this Lease has not otherwise terminated, and no Material Default, Termination Event or Event of Default has occurred and is continuing, the Lessee may on any Basic Rent Payment Date for an Aircraft prior to or including the scheduled end of the Term for such Aircraft, by thirty (30) days' prior written notice (or such shorter period of notice as the Lessor the Insurance Representative and the Security Trustee may agree) delivered to the Lessor (with copies to the Security Trustee, the Insurer Representative and the Agent) (which notice shall be irrevocable), elect for it or a nominee approved by the Insurer Representative (such approval not to be unreasonably withheld) (an **Approved Nominee)** to purchase such Aircraft on such date for a purchase price equal to the Termination Value in respect of such Aircraft on such date, plus any Rent in respect thereof then due and payable plus, if the purchase of the Aircraft occurs on the Final Maturity Date, ten Dollars (US$10).

**5.2      Purchase Procedure; Termination**

In connection with the purchase of an Aircraft pursuant to Clause 5.1, upon indefeasible payment to the Lessor of the Termination Value in respect of such Aircraft on such date and any Rent then due in respect of such Aircraft, the Lessor will transfer to the Lessee or its Approved Nominee all of the Lessor's right, title and interest in and to such Aircraft (including any warranties relating thereto and assigned to the Lessor pursuant to the relevant Purchase Assignment and the relevant Engine Warranties Agreement), in "AS-IS, WHERE-IS" condition, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, except that the Lessor will warrant to the Lessee or its Approved Nominee that it has such title to such Aircraft as was delivered to the Lessor by the Manufacturer on the Delivery Date for such Aircraft and the lawful right to transfer such Aircraft in accordance with the terms hereof and that such Aircraft is free of all Lessor Liens attributable to it.  THE WARRANTY CONTAINED IN THE IMMEDIATELY PRECEDING SENTENCE WILL BE MADE BY LESSOR IN LIEU OF AND IN SUBSTITUTION FOR, AND LESSEE HEREBY WAIVES, RELEASES AND RENOUNCES, ALL OTHER EXPRESS OR IMPLIED WARRANTIES, CONDITIONS OR REPRESENTATIONS WITH REGARD TO THE CONDITION OR TITLE OF THE RELEVANT AIRCRAFT (INCLUDING SUCH AS TO THE STATE, DESCRIPTION, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT), AND ALL OBLIGATIONS AND LIABILITIES OF LESSOR HEREUNDER WITH RESPECT TO CONSEQUENTIAL DAMAGES THEREFROM, AND ALL RIGHTS, CLAIMS AND REMEDIES OF LESSEE, EXPRESS OR IMPLIED, ARISING OUT OF LAW OR OTHERWISE WITH RESPECT THERETO THE USE OR OPERATION OF SUCH AIRCRAFT AND ANYTHING GIVEN OR SOUGHT TO BE IMPLIED FROM ANYTHING SAID OR WRITTEN IN THE NEGOTIATIONS BETWEEN THE PARTIES HERETO OR THEIR REPRESENTATIVES PRIOR TO ENTERING INTO THIS LEASE WITH RESPECT THERETO. ANY STATUTORY OR OTHER WARRANTY, CONDITION, DESCRIPTION OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE STATE, QUALITY, AIRWORTHINESS, VALUE OR FITNESS OF SUCH AIRCRAFT IS EXPRESSLY EXCLUDED, INCLUDING BUT NOT LIMITED TO:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(a)  ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS;

(b)  ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE;

(c)  ANY OBLIGATION OR LIABILITY WITH RESPECT TO ANY ACTUAL OR ALLEGED INFRINGEMENT OF PATENTS, LICENSES OR THE LIKE, OR ANY OTHER INTELLECTUAL PROPERTY;

(d)  ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM EACH PARTY'S OR ITS ASSIGNS' NEGLIGENCE, ACTUAL OR IMPUTED; AND

(e)  ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO SUCH AIRCRAFT, FOR LOSS OF USE, REVENUE OR PROFIT WITH RESPECT TO LESSEE OR FOR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF WHATEVER DESCRIPTION.

In connection with such transfer, the Lessee shall prepare and the Lessor shall execute, all in form and substance satisfactory to the Lessee and/or in a form recordable in the Government of Registry, a bill of sale evidencing each such transfer, a termination of this Lease in respect of such Aircraft and such other documents (including the discharge of the Lien of the Aircraft Mortgage in respect of such Aircraft and the other Security Documents and opinions of counsel) as the Lessee may reasonably request, all at the expense of the Lessee.  Upon a purchase of an Aircraft by the Lessee or its nominee pursuant to Clause 5.1 and Clause 5.2 or Clause 14, the leasing of such Aircraft under this Lease shall terminate.

**5.3  Return of Aircraft; Condition Upon Return**

(a)  Unless the Lessee or its nominee shall have acquired title to an Aircraft pursuant to Clause 5.2 or Clause 14, the Lessee will, upon the termination or expiration of this Lease with respect to such Aircraft (other than following an Event of Loss with respect to such Aircraft), at its own risk and expense, cause the Airframe for such Aircraft, together with the Manuals and Technical Records therefor, to be delivered to the Lessor pursuant to Clause 5.6, fully equipped with two Engines, duly installed thereon (or one or two Replacement Engines of the same manufacturer or of another manufacturer, of the same or an improved model (it being understood that such engines on such Aircraft shall be of the same or an improved model and suitable for installation and use on the Airframe for such Aircraft but having a value and remaining useful life at least equal to, and being in as good operating condition as, the Engines leased by the Lessee for such Aircraft)), duly installed thereon.

(b)  At the time of such return, (i) such Aircraft shall have a valid Certificate of Airworthiness, (ii) the Airframe and Engines or engines for such Aircraft shall be free and clear of all Liens (other than any the Lessor Liens, Funder Liens or other Liens arising under any Operative Document), (iii) the Airframe and Engines or engines for such Aircraft shall be in as good operating condition, and in proper operating condition for scheduled revenue passenger flights as provided in this Clause 5.3, Clause 7.2 and Clause 8 and (iv) such Aircraft shall, except as otherwise provided herein, be in substantially the same configuration and have installed (A) the same or equivalent avionics and other equipment, safety equipment and appurtenances as when such Aircraft was originally delivered to the Lessee hereunder and (B) all other equipment financed on the Delivery Date for such Aircraft (it being agreed that the records of the Manufacturer, including the Purchase Agreement and the Manuals and Technical Records, shall be prima facie evidence thereof).

(c)     Upon such return the Airframe for such Aircraft shall have cleared a recently completed major check as would be required to clear such Aircraft for at least the next 12 months and such Engines and all major components for such Aircraft shall have at least 50% of the hours, cycles or time (whichever is more limiting) in each case remaining until the next anticipated engine refurbishment, overhaul or inspection requiring removal.  At the time of such return, the Lessee shall also at its own expense:

(i)     remove or paint over all names, insignia and other indications of the Lessee or any Permitted Sub-Lessee from the exterior and interior of such Aircraft in a good, workman-like manner;

(ii)    transfer or cause to be transferred, or reassign or cause to be reassigned, to the Lessor to the extent then possible all assignable and remaining warranties and performance guarantees obtained by the Lessee or any Permitted Sub-Lessee with respect to such Aircraft, together with all documents related thereto that may be required to effect such transfer or reassignment; and

(iii)    if requested by the Lessor, obtain an export certificate of airworthiness (if available) for, and obtain or submit any applicable approval, permit, license or report for the re-export of, such Aircraft from the Civil Aviation Authority and deregister such Aircraft from the registry maintained by the Government of Registry.

(d)     If the Lessee fails to remove or procure the removal by the Permitted Sub-Lessee of the registration or to obtain the export certificate of airworthiness or such re-export approval, permit or license as provided above, the Lessor may do so at the cost and expense of the Lessee and, in such event, the Lessee shall upon demand reimburse the Lessor for the cost thereof.  The Lessee hereby irrevocably appoints the Lessor, upon such failure of the Lessee, as its true and lawful attorney-in-fact, with full power of substitution, in the Lessee's name or otherwise, to carry out the provisions of this Clause 5.3 and to take any action and to execute and/or file any instrument necessary to accomplish the purposes of this Clause 5.3.

(e)     If any other of the foregoing requirements shall not be satisfied at the time of return, the Lessee shall (at the Lessor's election) either promptly remedy any deficiency or make a payment fully compensating the Lessor for the remedy of such deficiency.  If requested by the Lessor, the Lessee shall perform or procure the performance of (at the sole cost and expense of the Lessee):

(i)     a complete videotape borescope inspection of such Engines in accordance with Engine Manufacturer's maintenance manual demonstrating to the Lessor's satisfaction that such Engines (or any module) are not unserviceable or beyond serviceable limits (or serviceable with limitations) under such manual; and

(ii)    a flight test demonstration, at the Lessee's expense and during normal business hours, for a period of not more than two hours at any airport referred to in Clause 5.4.  Personnel designated by the Lessor may participate as observers in such demonstration flight and a pilot selected by the Lessor may accompany the Lessee's pilot and occupy the observer's seat during such demonstration.  The purpose of the demonstration flight will be to ascertain that all systems and their components are functioning satisfactorily and in the event they are not so functioning they will be corrected by the Lessee or provision made therefor by the Lessee.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

5.4 **Place of Redelivery; Storage Upon Return**

Each Aircraft shall be returned to an airport in Europe designated by the Lessor, and the Lessee shall retain the risk of loss for such Aircraft, and the related Airframe, Engines and Parts, until they are returned in conformity with the provisions of this Lease at such airport.

5.5 **Return of Engines**

In the event that any engine not owned by the Lessor shall be delivered with any returned Airframe as set forth in Clause 5.3 (which engine must meet the requirements of a Replacement Engine, the Lessee shall, concurrently with such delivery, at its own expense, furnish the Lessor with a bill of sale covering such engine, including full warranty as to title, and thereupon the Lessor will transfer to the Lessee, on an "as-is, where-is" basis, without recourse or warranty (except as to the absence of the Lessor Liens, Funder Liens or other Liens arising under or in connection with any Operative Document), all of the Lessor's right, title and interest in and to any Engine constituting part of the relevant Aircraft but not installed on such Airframe at the time of the return of such Airframe. After such conveyance, the substituted engine shall be deemed an "Engine" as defined herein and shall meet the conditions set forth in Clause 5 hereof.

5.6 **Fuel, Manuals**

Upon the return of each Aircraft, each fuel tank and oil tank shall contain the same quantity of fuel or oil as was contained in the fuel and oil tanks when such Aircraft was delivered to the Lessee on the Delivery Date for such Aircraft. Upon the return of each Aircraft, the Lessee shall deliver to the Lessor at least one original or certified copy of all logs, manuals and data, and inspection, modification and overhaul records (including all job cards) required to be maintained with respect to such Aircraft under the applicable rules and regulations of the Civil Aviation Authority (collectively, **Manuals and Technical Records**) and such other additional records as would be necessary for the FAA to issue an unrestricted certificate of airworthiness, passenger transport category, for such Aircraft and if any thereof are not in English, certified English translations thereof.

6. **LIENS**

The Lessee will not (and shall procure that no sublessee will) directly or indirectly create, incur, assume, suffer, permit or allow to exist any Lien on or with respect to any Aircraft or any Airframe or any Engine or any Part, title thereto or any interest therein or in or to this Lease or any other Operative Document or any of its rights hereunder or thereunder, except Permitted Liens. The Lessee will promptly, at its own expense, take such action as may be necessary duly to discharge or satisfy (by bonding or otherwise) any Lien that is not a Permitted Lien if the same shall arise at any time.

7. **REGISTRATION, MAINTENANCE, OPERATION AND POSSESSION**

7.1 **Registration**

The Lessee shall, at its sole cost and expense, upon the delivery of an Aircraft, cause such Aircraft to be duly certified as to airworthiness in accordance with the law of the Government of Registry and to be duly registered with the Civil Aviation Authority in the name of the Lessor as owner of such Aircraft and the relevant Initial Permitted Sub-Lessee as operator of such Aircraft, the extent permitted by Applicable Law. Unless otherwise provided in this Lease, the Lessee shall not take any action, or fail to take any action, which action or failure might cause such airworthiness certification and registration to cease to be in full force and effect or to be revoked, withdrawn or suspended. Without limiting the generality of the foregoing, the Lessee at all times during the Term for an

Aircraft shall ensure, at the Lessee's sole cost and expense, that prior to the expiration thereof, the Certificate of Airworthiness and Certificate of Registration are renewed or maintained by the Civil Aviation Authority.  Without limiting the generality of Clause 11, the Lessor shall take, and shall co-operate with the Lessee to take, at the Lessee's sole cost and expense all actions necessary to permit and maintain such registration and to permit the Lessee to receive copies of all correspondence and communications to and from the Civil Aviation Authority.  Except as expressly permitted by the Operative Documents, the Lessee shall not, during the Term for an Aircraft, take any action which (a) may cause deregistration of such Aircraft from the Civil Aviation Authority or (b) the removal of the Lien of the Aircraft Mortgage in respect of such Aircraft from the Civil Aviation Authority.

**7.2     Maintenance**

The Lessee shall, at the Lessee's cost and expense:

(a)     establish, maintain or cause the establishment and maintenance of a maintenance programme for Boeing model 737 - 8 aircraft and for CFM model LEAP-1B27 engines (and Replacement Engines), as the case may be, each conforming with the Manufacturer's and Engine Manufacturer's maintenance planning document and approved by the Civil Aviation Authority (collectively, the **Approved Maintenance Programme**), and ensure that all service, inspection, maintenance, modification, storage, repair and overhaul of each Aircraft is performed in accordance with such Approved Maintenance Programme, by the Lessee or by the Permitted Sub-Lessee if so approved by the Civil Aviation Authority or by a maintenance facility approved by the Civil Aviation Authority (the **Approved Maintenance Facility**), provided that (i) all Manuals and Technical Records shall be kept in the English language, (ii) the Lessee shall submit the Approved Maintenance Programme to the Lessor, the Insurer Representative and Security Trustee on or prior to the Delivery Date for each Aircraft and shall advise the Lessor, and the Insurer Representatve, upon the their reasonable request, of any material subsequent changes to such Approved Maintenance Programme by issuing revisions thereof approved by the Civil Aviation Authority to the Lessor, Security Trustee, the Insurer Representative and the Agent and (iii) upon the return of any Aircraft pursuant to the terms hereof, such Aircraft shall be capable of qualifying immediately for the issuance of a Certificate of Airworthiness issued by the FAA for commercial passenger transport;

(b)     keep each Airframe, each Engine and all Parts or procure each of the same are kept in good operating and serviceable condition and repair, and in such condition (including maintenance of the Manuals and Technical Records) as necessary to enable all applicable airworthiness certifications of each Aircraft to be maintained in good standing at all times under the Applicable Laws of the Government of Registry except when such Aircraft is undergoing service, maintenance, modification, overhaul, testing and/or repairs as required or permitted hereunder;

(c)     promptly furnish the Lessor, upon request, with such information as may be required to enable the Lessor to file any report required to be filed by the Lessor with any Government Body because of the Lessor's ownership of each Aircraft or the Lessor's lease of each Aircraft hereunder, as the case may be;

(d)     procure that each Airframe, each Engine and each Part is maintained, inspected serviced, stored, repaired, modified and overhauled (i) to comply with all warranty requirements pursuant to the Purchase Agreement or the Engine Agreement, as the case may be, (ii) in accordance with Manufacturer's and Engine Manufacturer's repair manuals, (iii) pursuant to the Approved Maintenance Programme and (iv) in a manner that does not discriminate against any Aircraft, any Airframe or any Engine when compared to the highest applicable standard (including the prompt performance of Service Bulletins, mandatory Manufacturer's

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and Engine Maufacturer's directives and Airworthiness Directives) applied by the Lessee or the Permitted Sub-Lessee with regard to similar aircraft owned, operated or leased by the Lessee or the Permitted Sub-Lessee;

(e)    procure and maintain in effect with Manufacturer and Engine Manufacturer a revision service, if any, for all Manuals and Technical Records, and maintain the Manuals and Technical Records in such condition to satisfy the standards of the Civil Aviation Authority for a Certificate of Airworthiness for commercial passenger/cargo transport;

(f)    procure that for each Aircraft, all applicable mandatory alert Service Bulletins issued by Manufacturer and Engine Manufacturer shall be accomplished, and, in addition, all other Service Bulletins the Lessee or the Permitted Sub-Lessee adopts during the Term for such Aircraft for any similarly operated aircraft of the same model in the Lessee's or the Permitted Sub-Lessee's fleet, it being the intent of the parties that no Aircraft shall be discriminated against in any manner in Service Bulletin compliance and other maintenance matters; and

(g)    for each Aircraft, comply with all applicable Airworthiness Directives issued by the Civil Aviation Authority and which become due during the Term for such Aircraft or which at the time of redelivery of such Aircraft to the Lessor pursuant to the terms hereof have been issued by the Civil Aviation Authority or made mandatory by EASA upon operators regarding Boeing model 737 - 8 aircraft, CFM model LEAP-1B27 engines and any Part, as the case may be, and which have become due.

Neither the Lessor nor any Secured Party shall bear responsibility or liability for any grounding or suspension of operations of any Aircraft resulting from Airworthiness Directives, Service Bulletins, or any repairs or modifications to any Aircraft by the Lessee or any other Person.

**7.3**    **Operation**

Subject to Clause 7.5, the Lessee undertakes that no Aircraft will be maintained, used, insured or operated:

(a)    in violation of the Certificate of Airworthiness or any license or registration of, or with, any Government Body having jurisdiction over the Lessee (or any Permitted Sub-Lessee) or such Aircraft;

(b)    for any primary purpose other than the commercial transportation of passengers and/or cargo, provided that cargo shall be carried only in the cargo hold of such Aircraft;

(c)    in violation of the Approved Maintenance Programme or any warranty requirements pursuant to the Purchase Agreement, Engine Agreement or any other agreement setting forth any other material warranties with respect to such Aircraft, the related Airframe, Engines or Parts;

(d)    for any purpose or in any manner for which it is not designed or reasonably suited or outside the tolerances and limitations for which such Aircraft, the related Airframe or any related Engine was designed in accordance with the Approved Maintenance Program, Applicable Laws and applicable material warranties;

(e)    at any time while the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof are not in full force and effect;

(f)    for any purpose or in any manner inconsistent with the terms of, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(g)    in any place inconsistent with the terms of, excluded from coverage by, or not fully covered by, the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof (or outside any geographical limit imposed by the Aircraft Insurances or any Aircraft Reinsurances required by Clause 10 hereof, including without limitation, in or through any recognized or (in the Lessor's reasonable opinion) threatened area of hostilities unless fully covered by war risk and allied perils insurance in amounts and scope required by this Lease; or

(h)    in violation of any Applicable Law of or by any Government Body having jurisdiction over the Lessor or the Lessee or any Secured Party or any Aircraft or any mandatory requirement of Manufacturer, Engine Manufacturer or supplier, except for unintentional minor or nonrecurring violations which are cured promptly and which:

    (i)    do not involve any loss or reduction of coverage under any of the Aircraft Insurances or any Aircraft Reinsurances required by the terms of Clause 10;

    (ii)    do not involve any material risk of the sale, forfeiture or loss of or damage to such Aircraft or any interest therein;

    (iii)    do not involve any material risk of the Lessor or any Secured Party being subject to civil penalties;

    (iv)    do not involve any risk of criminal penalties being imposed against or upon the Lessee, the Lessor, the Lessor Parent or any Secured Party, which in the case of the Lessor or the Lessee shall be a material risk; and

    (v)    do not subject the Lessor, the Lessee or the Permitted Sub-Lessee to any fine or penalty or enforcement action which would materially adversely affect the business or operations of the Lessor, the Lessee, the Permitted Sub-Lessee or any Guarantor, the operation of any Aircraft or the rights of the Lessee, the Lessor or any Secured Party hereunder or under any other Operative Document,

provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party or have any material risk of the sale or forfeiture of any Aircraft, or of materially adversely affecting the rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder, and if any Applicable Law requires alteration of any Aircraft, the Lessee will conform thereto or obtain conformance therewith at no cost or expense to the Lessor or any Secured Party and will maintain such Aircraft in proper operating condition under such Applicable Law, provided that the Lessee may in good faith diligently contest the validity or application of any such Applicable Law in any reasonable manner which does not materially adversely affect the Aircraft, the Lessor or any Secured Party, have any material risk of the sale or forfeiture of any Aircraft or any Engine, or adversely affect the rights of the Lessor or any Secured Party hereunder or under any other Operative Documents or the obligations of the Lessee hereunder.

Further, the Lessee undertakes that:

    (i)    all debts, costs, Losses, liabilities, premiums, calls, contributions, penalties, landing fees, overflight and navigation charges (including Eurocontrol fees), dues, tolls, charges, fines, recoveries or other expenses with respect to any Aircraft shall be duly and punctually paid and discharged during the Term, provided that the Lessee may in good faith diligently contest the validity or application of any of the foregoing in

FILED DATE: 1/11/2023 2:57 PM   2023L000001

any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of the sale of forfeiture of any Aircraft, or adversely affecting the rights of the Lessor or any Secured Party hereunder or under any of the other Operative Documents or the obligations of the Lessee hereunder or any risk of any criminal penalties or criminal liability being imposed, and upon reasonable request by the Lessor, the Insurer Representative or the Security Trustee shall confirm to such Person's reasonable satisfaction that such action has been taken;

(ii)     no alteration in or modification or addition to any Airframe, any Engine or any Part, or any removal of any Engine or any Part from the Aircraft, or installation on or attachment to any Airframe, any Engine or any Part of anything not being part of any Aircraft on the Delivery Date shall occur unless expressly permitted by this Lease, including under Clause 8.4; and

(iii)    it shall not and shall procure that any Permitted Sub-Lessee shall not cause or permit to be done anything regarding any Airframe, any Engine or any Part the effect of which may be reasonably expected to result in such Airframe, such Engine or such Part being requisitioned for title or arrested or otherwise to jeopardize the interests of the Lessor and the Secured Parties in and to such Airframe, such Engine or such Part.

## 7.4     Possession

(a)     Subject to Clauses 7.5, 8 and 9, the Lessee shall not and shall procure that no Permitted Sub-Lessee shall, without the prior written consent of the Insurer Representative and the Security Trustee (which consent may be withheld in their sole discretion), sublease (whether directly, under a Dry Lease or Wet Lease), or otherwise in any manner deliver, transfer or relinquish possession of any Airframe, any Engine or any Part to any Person or firm or install any Engine, or permit any Engine to be installed, on any airframe other than the associated Airframe, provided, however, that (subject to Clauses 7.5, 8 and 9) so long as no Termination Event or Event of Default shall have occurred and be continuing, the Lessee may, without the prior written consent of the Insurer Representative or the Security Trustee:

(i)     deliver or permit the delivery of possession of any Airframe, any Engine or any Part (A) to the manufacturer thereof for testing or other similar purposes or (B) to an Approved Maintenance Facility for service, repair, maintenance or overhaul work on such Airframe, such Engine, such Part or any part thereof or for alterations or modifications in or additions to such Airframe, such Engine or such Part to the extent required or permitted by the terms of Clause 8.4, but in any event only in compliance with the Approved Maintenance Programme and Clause 7.2;

(ii)     install or permit the installation of an Engine for any reason on another airframe owned by the Lessee free and clear of all Liens, except (A) Permitted Liens and except those that apply only to the engines (other than the Engines), appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment (other than Parts) installed on such airframe (but not to such airframe as an entirety); and (B) mortgage liens or other security interests, but only if the holder of such mortgage lien or other security interest expressly agrees that such Engine shall not become subject to the Lien of such mortgage or security interest, notwithstanding the installation thereof on such airframe;

(iii)    install or permit the installation of an Engine for any reason on an airframe owned or operated by the Lessee or an Approved NAS Sub-Lessee (while such Approved

FILED DATE: 1/11/2023 2:57 PM   2023L000001

NAS Sub- Lessee is leasing the Engine from the Lessee pursuant to a Permitted Sub-Lease) leased under a lease unrelated to this Lease to the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) or purchased by the Lessee or the Initial Permitted Sub-Lessee (while the Initial Permitted Sub-Lessee is leasing the Engine from the Lessee pursuant to the Initial Permitted Sub-Lease) subject to a conditional sale or other security agreement, provided, however, that in any such case the Lessee shall provide written assurance reasonably satisfactory to the Lessor and the Security Trustee that the rights, title and interests of the Lessor and the Secured Parties in such Engine under the Operative Documents will not be derogated in any material manner as a result thereof;

(iv)     temporarily install an engine on an Airframe which does not satisfy the requirements of Replacement Engine; and

(v)      Wet Lease an Aircraft for a term not to exceed the lesser of six (6) months and the remainder of the Term for such Aircraft,

provided, in each case, that the rights of any transferee who receives possession by reason of a transfer permitted by this Clause 7.4 (other than the transfer of an Engine which is deemed an Event of Loss) SHALL BE EXPRESSLY SUBJECT AND SUBORDINATE TO ALL THE TERMS OF THIS LEASE AND THE OTHER OPERATIVE DOCUMENTS, including the Lessor's and the Secured Parties' rights to a repossession pursuant to Clause 14 hereof, to terminate and avoid this Lease or other transfer upon such repossession and to require the Lessee or other transferee to forthwith deliver any Airframe and/or any Engine subject to this Lease or other transfer upon repossession, and the Lessee shall remain primarily liable hereunder for the performance of all of the terms of this Lease to the same extent as if such transfer had not occurred.

(b)      No relinquishment of possession of any Airframe, any Engine or any Part shall affect in any way the registration of any Aircraft or discharge or diminish any of the Lessee's obligations hereunder or under any of the other Operative Documents or constitute a waiver of the Lessor's or any Secured Party's rights or remedies hereunder or under any of the other Operative Documents.

(c)      The Lessor agrees, for the benefit of the Lessee (and any Permitted Sub-Lessee) and for the benefit of any mortgagee or other holder of a security interest in any engine (other than an Engine) owned or leased by the Lessee (or any Permitted Sub-Lessee), any lessor of any engine (other than an Engine) leased to the Lessee (or any Permitted Sub-Lessee) and any conditional vendor of any engine (other than an Engine) purchased or leased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale agreement or any other security agreement, that no interest shall be created hereunder in any engine so owned, leased or purchased and that none of the Lessor, Security Trustee nor their respective successors or assigns will acquire or claim, as against the Lessee (or any Permitted Sub-Lessee) or any such mortgagee, lessor or conditional vendor or other holder of a security interest or any successor or assignee of any thereof, any right, title or interest in such engine as the result of such engine being installed on any Airframe, provided, however, that such agreement of the Lessor shall not be for the benefit of any lessor of or secured party in respect of any airframe (other than an Airframe) leased to the Lessee (or any Permitted Sub-Lessee) or purchased by the Lessee (or any Permitted Sub-Lessee) subject to a conditional sale or other security agreement or for the benefit of any mortgagee of or any other holder of a security interest in an airframe (other than an Airframe) owned by the Lessee (or any Permitted Sub-Lessee), unless such lessor, conditional vendor, other secured party or mortgagee has expressly agreed (which agreement may be contained in such lease, conditional sale or other security

agreement or mortgage) that neither it nor its successors or assigns will acquire, as against the Lessor, the Security Trustee or any other Secured Party any right, title or interest in an Engine as a result of such Engine being installed on such airframe.

(d)     The Lessee will, upon reasonable request, furnish to the Insurer Representative, the Security Trustee and the Agent prompt notice of any transfer or relinquishment of possession of any Aircraft permitted under this Clause 7.4 (other than Clause 7.4(a)), and if requested by the Insurer Representative, the Security Trustee or the Agent a copy of the documents relating to such transfer or relinquishment of possession, duly certified by an officer's certificate of the Lessee being a complete and correct copy of all documents so provided.

## 7.5     Dry Leasing

(a)     The Lessee shall not enter into any sublease (whether by Dry Lease or any other similar arrangement) of any duration with respect to any Aircraft (including any Airframe and any Engines or engines installed thereon) with any Person without the prior written consent of the Insurer Representative and the Security Trustee (each of which may withhold its consent in its sole discretion) other than:

  (i)     the Initial Permitted Sub-Lease; or

  (ii)    another Permitted Sub-Lease with a Permitted Sub-Lessee.

(b)     Other than in respect of the Initial Permitted Sub-Lease, any such sublease shall be subject to the following conditions and requirements:

  (i)     any such sublease shall be made expressly subject and subordinate to all the terms of this Lease and the other Operative Documents, and shall not adversely affect the priority or perfection of the Lien of the Security Documents, the enforceability of the Collateral or the right of the Lessor or the Security Trustee to avoid such sublease and to repossess such Aircraft, the associated Airframe or the associated Engines in connection with the exercise of any remedies upon any Termination Event or Event of Default;

  (ii)    the Lessee shall remain primarily liable hereunder for the performance of all terms and conditions of this Lease to the same extent as if such sublease had not occurred;

  (iii)   all terms and conditions of this Lease and the other Operative Documents shall remain in full force and effect;

  (iv)    prior to entering into any such sublease, the Lessee shall provide to the Lessor and the Secured Parties certificates of insurance and brokers' undertakings from the Lessee's insurance brokers or an authorized representative of the Lessee's insurers reflecting that the Aircraft Insurances required to be maintained pursuant to Clause 10 are in full force and will not be adversely affected due to the sublease;

  (v)     such sublease shall (A) provide that such Aircraft, and the associated Airframe, Engines and Parts, be maintained in accordance with the Approved Maintenance Programme, and (B) be governed by English law or another jurisdiction acceptable to the Security Trustee and the Insurer Representative, and (C) be with a Permitted Sub-Lessee;

  (vi)    such sublease shall not permit any further sub-leasing and the term of the sublease shall not exceed the remaining Term with respect to such Aircraft;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(vii)    either (A) no re-registration of such Aircraft shall occur as a result of entering into such sublease or (B) if entering into such sublease shall involve the re-registration of such Aircraft, the proposed state of registration of such Aircraft shall be Norway, Ireland, the United Kingdom or shall have been approved by the Insurer Representative and the Security Trustee in writing (which approval may be withheld in their sole discretion) and shall in each case be subject to the following:

(A)    under the Applicable Laws of the proposed state of registration of such Aircraft:

I.    there shall exist no rights in favour of the Lessee or the relevant sublessee or any other Person that would, upon bankruptcy or other default by such sublessee, prevent the deregistration, re-export and return of such Aircraft to the Lessor (or upon the enforcement of the Lien of the Security Documents, the Security Trustee) in accordance with and as permitted by the terms of Clause 5 upon the exercise by the Lessor of its remedies under Clause 14;

II.    the Lessor shall be recognized as the owner of such Aircraft and the Secured Parties' Lien over the Aircraft pursuant to the Security Documents shall be recognised;

III.    there shall be no impediment (as at the date of re-registration) to the exercise of the rights and remedies provided for in this Lease or in any other Operative Document in respect of such Aircraft and the practical realisation by the Lessor and the Secured Parties of the benefits of this Lease and the Security Documents (to the extent relating to the Aircraft and this Lease) will be available under such Applicable Law;

IV.    the rights of the Lessor under this Lease and the rights and Liens of the Security Trustee and the Secured Parties under the Security Documents, in each case, in respect of such Aircraft, shall be enforceable in the jurisdiction of re-registration and, if requested by the Security Trustee or the Insurer Representative, the Lessor shall provide a new local law mortgage over the Aircraft in favour of the Secured Parties;

V.    all filings (including all filings required by the Insurer Representative or the Security Trustee pursuant to the Cape Town Convention), recordations and other actions necessary in order to establish, protect and perfect the Lessor's title to the Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Paragraph IV above) shall have been made;

VI.    no Secured Party shall be required to qualify to do business in such jurisdiction as a result of such re-registration;

(B)    such re-registration shall not result in any Tax for which the Lessee is not required to indemnify;

(C)    the insurance and any reinsurance required in respect of such Aircraft by Clause 10 shall be in full force and effect subsequent to such re-registration and the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee evidence of such insurance reasonably satisfactory to the Insurer Representative and the Security Trustee;

(D)     no Liens (other than Permitted Liens) shall arise as a result of such re-registration;

(E)     all filings, registrations, recordations and other actions necessary under the Applicable Laws of the jurisdiction in which such Aircraft is to be registered, in order to establish, protect and perfect the Lessor's title to such Aircraft and its rights under this Lease, and the Security Trustee's and the Secured Parties' rights and Liens under the Security Documents (including any new local law mortgage requested in accordance with Clause 7.5(vii)(A)(IV) above), shall be made;

(F)     the Lessee shall provide to the Lessor, the Insurer Representative and the Security Trustee an opinion of independent counsel in the state of such re-registration addressed to the Lessor, the Security Trustee, the Agent and the Insurer Representative reasonably satisfactory in form and substance to the Insurer Representative and the Security Trustee; and

(G)     all reasonable costs, expenses, fees and other charges in connection with any such re-registration shall be paid by the Lessee;

(viii)   the Lessee shall (A) at least thirty (30) days prior to such sublease taking effect, give the Lessor, the Security Trustee, the Agent and the Insurer Representative written notice of such proposed sublease together with a copy of the proposed agreement (which agreement must be reasonably acceptable in form and substance to the Lessor, the Security Trustee and the Insurer Representative), (B) deliver a copy of the approved executed agreement to the Security Trustee, the Lessor, the Agent and the Insurer Representative and assign the Lessee's interests in such agreement to the Lessor, who in turn shall assign such interests to the Security Trustee, as a perfected first-priority security interest for the Lessee's obligations hereunder and cause the Lessee to consent to such assignment and to the Lessor's further assignment of such sublease to the Security Trustee for the benefit of the Secured Parties and (C) provide evidence to the Security Trustee, the Agent and the Insurer Representative that registrations have been made with the International Registry with respect to the International Interests, if any, created pursuant to such sublease and the assignments of International Interests, if any, created pursuant to the assignments;

(ix)    the Lessee shall, at least ten (10) days prior to such sublease taking effect, deliver to the Lessor, the Security Trustee, the Agent and the Insurer Representative proposed forms of (A) an acknowledgment by the sublessee recognizing all rights, title and interests of the Lessor, the Security Trustee and the other Secured Parties under the Operative Documents, and (B) a written opinion of counsel in the country of citizenship or incorporation or formation of the relevant sublessee confirming that all steps necessary to protect the rights, title and interests of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents (including, without limitation, registration of all interests, assignments and subordinations with the International Registry) have been taken or will be taken in a manner reasonably satisfactory to the Secured Parties, each in form and substance reasonably satisfactory to the Lessor, the Agent, the Insurer Representative and the Security Trustee, and on or prior to such sublease taking effect, deliver to the Lessor, the Insurer Representative, the Agent and the Security Trustee executed copies of such documents;

(x)     the Lessee shall promptly reimburse the Lessor, the Security Trustee or any other Secured Party for any reasonable costs and expenses (including attorneys' fees and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

expenses) incurred by them in connection with such sublease or any related re-registration; and

(xi)     the proposed sublessee must be solvent.

**7.6    Special Operation and Possession Covenants**

In addition to the foregoing requirements, the Lessee covenants and agrees as follows:

(a)     **Restricted Use of Aircraft**

No Aircraft, Engine or Part shall, without the prior written consent of the Lessor, the Security Trustee and the Insurer Representative, (whether, directly or under a Dry Lease, Wet Lease, Charter, blocked-space or other arrangement) be:

(i)      flown to or within, or otherwise operated or used to or within, an Excluded Country if to do so would breach any Applicable Law (including Sanctions) or operated (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under, the laws of, or whose principal place of business or principal place of aircraft operations is located in, an Excluded Country;

(ii)     principally used in, or operated or used (whether under a Dry Lease, Wet Lease, Charter, blocked-space or similar arrangement) by or for an airline or by any other Person which is a national of, or established under the laws of, or whose principal place of business or principal place of aircraft operations is located in, a Restricted Country;

(iii)    "primarily based" in one or more Restricted Countries.  For purposes of this provision, **primarily based** shall mean that during any consecutive seven (7) day period, the aggregate amount of time spent on the ground by such Aircraft, such Engine or such Part, as applicable, in one or more Restricted Countries shall exceed 15% of the total amount of time spent on the ground during such seven (7) day period, provided that the limitation imposed by this paragraph (iii) shall not prohibit, to the extent necessary, any nonrecurring maintenance or other nonrecurring repairs to be done with respect to an Aircraft in a Restricted Country;

(iv)     operated or used by or for any other Person except in accordance with Clauses 7.3, 7.4 and 7.5;

(v)      operated or used in contravention of any United States law, regulation or stated policy of general applicability restricting the operation or use of United States-manufactured or financed aircraft and engines and such restrictions are applicable to the transactions contemplated hereby;

(vi)     flown or otherwise operated or used for any offensive or defensive military purpose;

(vii)    operated or used for any purpose for which it is not designed or reasonably suited in accordance with the Approved Maintenance Programme, Applicable Law and applicable material warranties or for any primary purpose or other than the commercial transport of passengers and cargo; or

(viii)   subleased (whether under a dry lease or wet lease) to any Person other than as provided in this Lease.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     **Waiver of Defences to Repossession**

None of the Lessee, nor any Permitted Sub-Lessee, nor anyone claiming through or under the Lessee or Permitted Sub-Lessee, shall set up, claim or seek to take advantage of any Applicable Laws now or hereafter in force in any jurisdiction in which any Aircraft or any portion thereof may be situated in order to prevent, hinder or delay any effort in accordance with this Lease on the part of the Lessor or the Security Trustee to regain possession of any Aircraft or deregister or re-export any Aircraft or any portion thereof from any jurisdiction in which such Aircraft or any portion thereof may be situated following the occurrence of an Event of Default or Termination Event, and while the same shall be continuing, and the Lessee, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may be lawful so to do, the benefit of all such Applicable Laws (including, without limitation, any rights it may have, if any, to avail itself of the protection provided by the Convention of 1933 on the Unification of Certain Rules Relating to the Precautionary Arrest of Aircraft, or any other similar law, treaty or convention applicable to the Lessee or any Aircraft which would limit the ability of the Lessor or the Security Trustee to repossess or otherwise recover any Aircraft following the occurrence and during the continuance of an Event of Default or Termination Event).

(c)     **Statement of Account of Landing Fees or Navigation Charges**

In the event that a Government Body of any country in which any Aircraft or the Lessee or any Permitted Sub-Lessee operates shall be permitted by Applicable Law to detain or seize, or shall adopt legislation which permits the detention or seizure of, an aircraft for unpaid landing fees or navigation charges without formal legal proceedings, the Lessee shall (and shall procure that any Permitted Sub-Lessee shall) promptly following demand by the Security Trustee or the Insurer Representative, deliver to the Security Trustee, the Agent and the Insurer Representative a letter, in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative, addressed to the airport or air navigation authority of such country authorizing such authority to release to the Security Trustee from time to time a statement of account of all such fees and charges then due in respect of all aircraft owned by or leased to the Lessee or any Permitted Sub-Lessee, as the case may be.

(d)     **Eurocontrol**

The Lessee shall and shall procure that the relevant Initial Permitted Sub-Lessee shall prior to the Delivery Date of an Aircraft, and the Lessee shall procure that any other Permitted Sub-Lessee shall, prior to the commencement of any sub-lease:

(i)     procure that the Lessee or any Permitted Sub-Lessee executes a Eurocontrol Letter and ensure that such letter is promptly sent to and acknowledged by Eurocontrol in accordance with Eurocontrol's advertised procedures;

(ii)    to the extent it has not already done so, promptly enter into a CEFA Agreement and provide the Security Trustee and the Insurer Representative with a copy certified by an officer of such company;

(iii)   if requested by the Security Trustee or the Insurer Representative, promptly obtain from Eurocontrol (via CEFA or otherwise) and provide to the Lessor, the Security Trustee and the Insurer Representative a general statement of account in relation to charges incurred by the Lessee and the Initial Permitted Sub-Lessee (and, if applicable, other Permitted Sub-Lessee); and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(iv)    if Eurocontrol's procedures relating to the availability to third parties of general statements of account are amended, take such actions as may be reasonably requested by the Security Trustee or Insurer Representative to ensure that the Security Trustee is able to obtain (or continue to obtain) such general statements of account in accordance with such procedures.

(e)    **EU ETS Laws**

It shall procure that any Permitted Sub--Lessee:

(i)    comply, and must procure that any other "aircraft operator" for the purposes of the EU ETS Laws complies, with all EU ETS Laws applicable to it/them or the Aircraft and, promptly on request from the Lessor, the Insurer Representative or the Security Trustee, supply to such person evidence reasonably satisfactory to it of such compliance;

(ii)    identify itself as "aircraft operator" to any EU ETS Authority whenever required under the EU ETS Laws or whenever the Lessor, the Insurer Representative or the Security Trustee may request.

(f)    **No Operation by the Secured Parties**

In no event shall any Secured Party be represented as carrying goods or passengers on any Aircraft or as being in any way connected or associated with any operation or carriage which may be undertaken by the Lessee or any Permitted Sub-Lessee or as having any operational interest in any Aircraft.

(g)    **Seizure of Aircraft**

The Lessee shall not do, shall procure that no Permitted Sub-Lessee shall do, and shall otherwise use its best efforts to prevent, any act which could reasonably be expected to result in any Aircraft, any Airframe or any Engine being arrested, confiscated, seized, taken in execution, attached, impounded, forfeited, detained in exercise or purported exercise of any registered or possessory lien or other claim or otherwise taken from the possession of the Lessee or any Permitted Sub-Lessee, and if any such arrest, confiscation, seizure, execution, taking, attachment, impoundment, forfeiture, detention or other loss of possession occurs, the Lessee shall give Security Trustee, the Lessor, the Agent and the Insurer Representative immediate notice thereof and shall forthwith procure the prompt release of such Aircraft, such Airframe or such Engine.

(h)    **Credit for Maintenance**

The Lessee shall not pledge and shall procure that no Permitted Sub-Lessee shall pledge  the credit of any Secured Party for any maintenance, service, repairs, overhauls of, or modifications to, or changes or alterations in, or additions to, any Aircraft, any Airframe, any Engine or any Part.

(i)    **Notice of Suspension**

The Lessee shall give the Lessor, the Security Trustee, the Agent and the Insurer Representative immediate written notice of any action being taken by the management of any Lessee Obligor relating to any general suspension of payment proceedings under any Applicable Law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(j)     **Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under Clause 10 and should any such claim be paid, shall procure that immediate action is taken either (A) to increase any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty or (B) to obtain "contingent War Risk Insurance" acceptable to the Issuer Representative and the Security Trustee for the express benefit of the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee so that their financial interests in each Aircraft shall at all times be fully insured for the period covered by that War Risk Insurance, notwithstanding any annual aggregate limit or sublimit of liability.

(k)     **Inspection**

At all reasonable times and (except during the continuance of a Default, a Termination Event or an Event of Default) upon reasonable notice to the Lessee and not more frequently than once per calendar year any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives may inspect any Aircraft, any Engine or any Part and the Manuals and Technical Records relating thereto and to the registration thereof and copy or make extracts from the books and records of the Lessee and any Permitted Sub-Lessee relative thereto and may discuss the Lessee's and any Permitted Sub-Lessee business or financial affairs with any of the Lessee's or Permitted Sub-Lessee officials, auditors or officers as may be required for the foregoing and, to the extent available, make any inspection reports available to the Agent, provided that, unless a Termination Event or an Event of Default has occurred and is continuing:

   (i)      any such inspection shall be a visual, walk-around inspection which may include going on board such Aircraft, subject to the Permitted Sub-Lessee's limitations for reasons of safety or insurance coverage, but shall not include opening or removing any panels, bays or engine or avionic components of such Aircraft, unless such Aircraft is, on the date of such inspection, undergoing a maintenance visit, in which case such panels, bays or engine or avionic components as are open or removed from such Aircraft on such date may be inspected; and

   (ii)     any such inspection or examination shall not unreasonably delay or interrupt or cause any obstruction in the Lessee's maintenance and operation of such Aircraft.

(l)     None of the Lessor, the Security Trustee, the Agent, the Funder or the Insurer Representative (i) shall have any duty to make any such inspection or (ii) shall incur any liability or obligation by reason of making or not making any such inspection, except as provided in this Clause 7.7.  So long as no Termination Event or Event of Default has occurred and is continuing, the reasonable cost of one such inspection initiated by any one of the Lessor, the Security Trustee, the Insurer Representative, the Agent or their respective authorized representatives each calendar year shall be paid by the Lessee.  The Lessee shall pay the cost of all such inspections during the continuance of a Termination Event or an Event of Default.  The cost of other inspections shall be paid by the party requesting such inspection, unless such inspection reveals a material breach of the obligations hereunder to maintain each Aircraft and the associated Manuals and Technical Records, in which case the cost of such inspection shall be borne by the Lessee.  Upon the request of the Lessor, the Lessee shall promptly notify the Lessor, the Insurer Representative, the Agent and the Security

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Trustee of the major phase checks ("C" check or higher and any structural inspection) then scheduled on any Aircraft for the six-month period following such request.

**7.7    Information Concerning the Aircraft and Engines**

The Lessee shall at its own cost and expense promptly provide the Lessor, the Agent, the Funder, the Insurer Representative and the Security Trustee with such information (to the extent required by this Lease, any Operative Document or maintained by the Lessee in accordance with its standard fleet procedures) regarding the registration, location, operation, use, insurance, maintenance and condition of each Aircraft and its associated Engines, including all Parts to the extent practicable, as the Lessor, the Agent, the Funder, the Insurer Representative or the Security Trustee may from time to time reasonably require.

**7.8    Substitution of Engines**

(a)    So long as no Termination Event or Event of Default shall have occurred and be continuing (unless such Termination Event or Event of Default relates to the Engine being substituted), the Lessee may (and may permit any Permitted Sub-Lessee to) at any time, with contemporaneous notice to the Lessor, the Agent, the Funder, the Insurer Representative and the Security Trustee, duly convey or cause to be conveyed to the Lessor as a substitute for an Engine title to another engine of the same manufacturer and model, as such Engine which satisfies the conditions set forth in the definition of "Replacement Engine", provided that all engines installed on any Airframe shall be of compatible make and model, free and clear of all Liens other than Permitted Liens and shall have a value and remaining useful life and utility at least equal to, and being in as good operating condition and state of maintenance as, the Engine to be replaced thereby, assuming such Engine was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to such replacement.  Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)    furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)    cause a Lease Supplement, in form and substance reasonably satisfactory to the Lessor, the Insurer Representative and the Security Trustee subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry;

(iii)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such replacement engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor may reasonably request;

(iv)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) reasonably satisfactory to the Lessor, the Security Trustee and the Insurer Representative certifying that such engine has value and remaining useful life at least equal to, and is in as good operating condition (as the Engine being substituted, assuming such Engine was in the condition and state of repair required by the terms hereof immediately prior to such substitution;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(v)    cause amendments to the relevant Aircraft Mortgage and any Security Document, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such replacement engine to the relevant Aircraft Mortgage and the relevant Security Documents to be duly executed by the Lessor, Lessee or Permitted Sub-Lessee (as applicable) and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or the jurisdiction of incorporation or formation of the Lessor, Lessee or Permitted Sub-Lessee as applicable;

(vi)    cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessor, the Security Trustee and the Secured Parties under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)    furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and Security Trustee regarding the perfection of the Lien of any amended Security Document and relevant Aircraft Mortgage with respect to such Replacement Engine, in form and substance reasonably satisfactory to the Security Trustee and the Insurer Representative (addressed to the Security Trustee, the Insurer Representative, the Funder and the Agent); and

(viii)    affix a nameplate on such replacement engine in accordance with Clause 8.5.

(b)    Upon full compliance by the Lessee with the terms of this Clause 7.8, the Lessor will transfer or cause to be transferred, at the Lessee's sole cost and expense, to or upon the order of the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that it has such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it)  all of the Lessor's right, title and interest, if any, in and to each replaced Engine with respect to which such substitution occurred by an appropriate instrument, signed by the Security Trustee, releasing such Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Engine" as defined herein and shall be deemed part of the same Aircraft as was the Engine replaced thereby.  No substitution with respect to an Engine under the circumstances contemplated by the terms of this Clause 7.8 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

## 7.9    Annual Survey

(a)    Upon written request, but no more frequently than once each calendar year for each Aircraft any one of the Security Trustee, the Agent, the Insurer Representative or their authorized representative, may request a technical report about the related Airframe, Engines and Manuals and Technical Records in connection with such Airframe and each such Engine, performed at an Approved Maintenance Facility in connection with the most recently completed (i) airworthiness inspection, or heavy maintenance check (in the case of an Airframe), (ii) heavy maintenance visit and any shop visit (in the case of each such Engine), and (iii) overhaul or reconditioning (in the case of any Part, appurtenance or system in respect of such Aircraft or each such Engine not covered by clauses (i) and (ii) preceding).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)    Such report shall be at the Lessee's expense and shall contain sufficient detail so as to enable the Security Trustee, the Agent and the Insurer Representative to determine the Lessee's compliance with the terms of this Lease and the general repair, condition, maintenance, overhaul and time-before-overhaul status of such Airframe and each such Engine or Part. If any such report is prepared at the request of the Security Trustee, the Security Trustee shall promptly provide a copy to the Agent and the Insurer Representative.

## 8.    REPLACEMENT; TEMPORARY INSTALLATION; POOLING; ALTERATIONS, MODIFICATIONS AND ADDITIONS; ETC

### 8.1    Replacement of Parts

(a)    The Lessee, at its own expense, will promptly replace or cause to be replaced all Parts that may from time to time be incorporated or installed in or attached to any Airframe or any Engine and that may from time to time be defective and not economically repairable, become time-expired or due for replacement or worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever.

(b)    In addition, the Lessee (or any Permitted Sub-Lessee) may, at its own expense, remove in the ordinary course of maintenance, service, repair, overhaul or testing, any Part, whether or not time-expired, due for replacement, worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use, provided, however, that the Lessee will, at its own cost and expense, replace (or cause to be replaced) such Part as promptly as practicable.

(c)    Each replacement Part shall be free and clear of all Liens (except Permitted Liens) and except as permitted by Clause 8.3, shall be in at least as good operating condition as, and shall have value, modification status and performance characteristics at least equal to, or, if applicable, comparable to, the Part replaced assuming such replaced Part was in the condition and repair required to be maintained by the terms hereof.

(d)    Each Part at any time removed from any Airframe or each Part removed from any Engine shall remain the property of the Lessor, no matter where located, until such time as such Part shall be replaced by a Part that has been incorporated or installed in or attached to the Airframe from which such Part was removed or, as the case may be, an Engine and that meets the requirements for a replacement Part specified above and shall be subject to the Lien of the relevant Aircraft Mortgage.

(e)    Immediately upon any replacement Part becoming incorporated or installed in or attached to an Airframe or, as the case may be, an Engine as above provided and title thereto being vested in the Lessor free and clear of all Liens (except Permitted Liens), without further act:

    (i)    title to the replaced Part shall thereupon vest in the Lessee or its Approved Nominee and shall no longer be deemed a Part hereunder; and

    (ii)    such replacement Part shall become subject to this Lease and be deemed part of such Airframe or, as the case may be, such Engine for all purposes hereof to the same extent as the Part originally incorporated or installed in or attached to such Airframe or, as the case may be, such Engine.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## 8.2 Temporary Installation of Parts

The Lessee may install or permit the installation of any part on any Airframe or Engine by way of substitution, replacement, renewal or mandatory modification notwithstanding that such installation is not in accordance with Clause 8.1 in the case of a part if:

(a) there shall not have been available to the Lessee at the time and in the place that such part was required to be installed on such Airframe or, as the case may be, such Engine a substitute or replacement Part complying with the requirements of Clause 8.1;

(b) it would have resulted in a disruption of the operation of the relevant Aircraft and/or the business of the Lessee to have grounded such Aircraft and/or to have permitted the relevant Part to continue to be unserviceable or unrepaired until such time as an part complying with the requirements of Clause 8.1 became available for installation on such Airframe or such Engine; and

(c) as soon as practicable, but in any event within one hundred and eighty (180) days, the Lessee shall cause any such part not complying with the requirements of Clause 8.1 to be removed and replaced or substituted by a part complying with the requirements of Clause 8.1.

## 8.3 Pooling of Parts

Any Part removed from any Airframe or any Engine may be subjected by the Lessee or permitted by the Lessee to be subjected to a normal pooling arrangement customary in the international airline industry entered into in the ordinary course of the Lessee's (or, while the relevant Aircraft is leased by the Lessee to the Initial Permitted Sub-Lessee pursuant to the Initial Permitted Sub-Lease, the Initial Permitted Sub-Lessee's) business, provided, that the part replacing such removed Part shall be incorporated or installed in or attached to such Airframe or such Engine in accordance with Clause 8.1 as promptly as possible after the removal of such removed Part. In addition, any replacement part when incorporated or installed in or attached to any Airframe or any Engine in accordance with Clause 8.1 may be owned by another air carrier subject to such a normal pooling arrangement, provided that the Lessee, at its own cost and expense, as soon as practicable, shall either (a) cause title to such replacement part to vest in the Lessor in accordance with Clause 8.1 by the Lessee acquiring title (or procuring acquisition of the title) thereto for the benefit of the Lessor free and clear of all Liens (other than Permitted Liens) and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement or (b) replace such replacement Part by incorporating or installing in or attaching to such Airframe or such Engine a further replacement Part owned by the Lessee (or such Permitted Sub-Lessee) free and clear of all Liens (other than Permitted Liens) and by causing title to such further replacement Part to vest in the Lessor in accordance with Clause 8.1 and subjecting the same to the relevant Aircraft Mortgage and the relevant Security Agreement.

## 8.4 Alterations, Modifications and Additions

(a) The Lessee, at its own expense, will promptly make (or cause to be made) such alterations and modifications in and additions to any Airframe or any Engine as may be reasonably required from time to time to comply with any Airworthiness Directives, Service Bulletins, other directive or modifications published (and of a mandatory nature) by the Manufacturer, the Engine Manufacturer and/or the Civil Aviation Authority in accordance with the terms of this Lease, provided that the Lessee may in good faith diligently contest the validity or application of any such Airworthiness Directive, Service Bulletin, directive or modification in any reasonable manner which does not materially adversely affect the Lessor or any Secured Party or have any material risk of adversely affecting the value of any Aircraft, the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

rights of the Lessor or any Secured Party hereunder or under any other Operative Document or the obligations of the Lessee hereunder.

(b)     In addition, the Lessee (or the Permitted Sub-Lessee), at its own expense, may from time to time make such alterations and modifications in and additions to any Airframe or any Engine as the Lessee (or Permitted Sub-Lessee) may deem desirable in the proper conduct of its business, including installation of additional buyer furnished equipment or removal of Parts that the Lessee (or Permitted Sub-Lessee) determines to be obsolete or no longer suitable or appropriate for use on such Airframe or such Engine, provided, however, that no such alteration, modification or addition shall materially diminish the value, utility, remaining useful life, performance or operational characteristics of such Airframe or such Engine, or impair the condition or airworthiness thereof, below the value, remaining useful life, performance or operational characteristics, condition or airworthiness thereof immediately prior to such alteration, modification or addition (assuming such Airframe or such Engine was then of the value, remaining useful life, performance or operational characteristics, condition or airworthiness required to be maintained by the terms of this Lease), provided, further, that the Lessee shall consult with the Manufacturer or the Engine Manufacturer, as applicable, the Insurer Representative and the Security Trustee prior to undertaking any material alteration or modification to any Aircraft. Without prejudice to the generality of the foregoing, the Lessor consents to the modification which includes installation of antennae, aerodynamic domes, wiring, structural attaching parts, mounts, receivers, wireless access points,(WAP's), modems, controllers, switching equipment, display and sound reproduction equipment and all related hardware and software directly associated with the receipt and distribution of satellite or where applicable ground based internet signals and data into the Aircraft for passenger use, whether provided by ROW 44 or an alternative provider.  Title to all Parts incorporated or installed in or attached or added to any Aircraft as the result of such alteration, modification or addition, shall immediately vest in the Lessor free and clear of all Liens (except Permitted Liens) and become subject to this Lease, without the necessity for any further act of transfer, document or notice.

(c)     Notwithstanding Clause 8.1 and the foregoing provisions of this Clause 8.4 and provided that no Termination Event  or Event of Default shall have occurred and is continuing, the Lessor agrees that the Lessee or any Permitted Sub-Lessee may, at any time during the Term in respect of any Aircraft, remove or suffer to be removed any Part (including buyer furnished equipment) from such Aircraft that:

(i)      is in addition to, and not in replacement of or substitution for, any Part originally incorporated or installed in or attached to the related Airframe or Engine at the time of the Delivery of such Aircraft hereunder or any Part in replacement of or substitution for any such Part;

(ii)     is not required to be incorporated or installed in or attached or added to the related Airframe or Engine pursuant to the terms of Clause 7 or this Clause 8 or in order to maintain insurance required by Clause 10; or

(iii)    can be removed from the related Airframe or Engine without causing damage to such Airframe or such Engine or diminishing or impairing in any material respect the value, utility, remaining useful life, performance or operational characteristics, condition or airworthiness that such Airframe or such Engine would have had at such time had such removal not occurred.

(d)     Upon the removal by the Lessee (or any Permitted Sub-Lessee) of any Part as provided in and permitted by this Clause 8.4, title thereto shall, without further act, vest in the Lessee or the Lessee's Approved Nominee, and such Part shall no longer be deemed part of the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Airframe or Engine from which it was removed.  Notwithstanding the foregoing, any Part not removed by the Lessee (or any Permitted Sub-Lessee) as above provided prior to the return of the relevant Airframe or Engine to the Lessor hereunder shall become the property of the Lessor at the time of such return and become subject to the relevant Aircraft Mortgage and the relevant Security Agreement.

**8.5    Nameplate and Other Markings**

The Lessee shall affix and keep a metal nameplate having dimensions of not less than five inches by four inches in the cockpit of each Airframe adjacent to the airworthiness certificate therein and on each of the Engines bearing the inscription "THIS [AIRFRAME/ENGINE] IS OWNED BY AAA MAX 1 LIMITED AND LEASED TO HARDANGERFJORDEN LIMITED, IS FURTHER SUB-LEASED TO [NORWEGIAN AIR INTERNATIONAL LIMITED / NORWEGIAN AIR SHUTTLE ASA] AND SUBJECT TO A MORTGAGE IN FAVOUR OF CITIBANK N.A., LONDON BRANCH, AS SECURITY TRUSTEE", or such other inscription as the Security Trustee or the Insurer Representative from time to time may reasonably request (such nameplate to be affixed within ten (10) days after the Delivery Date for such Airframe and such Engines, and the Lessee shall thereupon so advise the Lessor).  Except as provided above, the Lessee shall not allow the name or other indication of any other Person to be placed on any Airframe or any Engine, if such name or other indication could be interpreted as a claim of ownership or other interest therein; provided, that each Airframe, Engine and Part may be marked with the customary name, colours or insignia of the Lessee or the Permitted Sub-Lessee and/or any manufacturer(s) of such Airframe, Engines and Parts.

**8.6    No Third Party Beneficiaries**

It is expressly agreed that the Lessee's obligations with respect to maintenance under Clauses 7 and 8 are solely for the benefit of the Lessor and the Secured Parties and that the Lessee shall have no liability to any other Person with respect thereto, and that except for the Lessee's indemnification obligations with respect thereto contained in the Participation Agreement which shall survive the termination of such documents in accordance with their respective terms, the Lessee's obligations under Clauses 7 and 8 in respect of an Aircraft shall terminate upon termination of the leasing of an Aircraft to the Lessee pursuant to this Lease and the relevant Lease Supplement in accordance with the terms hereof.

**8.7    No Authorization to Contract for the Lessor**

Nothing contained in this Lease shall constitute any consent or request by the Lessor or any Secured Party express or implied, for the performance of any works or services or the furnishing of any materials or other property in respect of any Aircraft, any Engine or any Part thereof, nor as giving the Lessee any right, power or authority to contract for or permit the performance of any works or services or the furnishing of any materials or other property, in such fashion as would permit the making of any claim against the Lessor or any Secured Party in respect thereof or any claim that any Lien (other than Permitted Liens) based on the performance of such works or services or the furnishing of any such materials or other property is prior to the interests of the Lessor or any other Person in such Aircraft, such Engine or such Part thereof.

**8.8    No Rights of Retention**

The Lessee hereby waives any and all rights of retention which it may have or which at any time hereafter may be conferred upon it, by virtue of law or otherwise, related to any replacement of Parts, alterations, modifications or additions that the Lessee may make to any Airframe or any Engine.  The Lessee hereby expressly releases the Lessor and the Secured Parties from any and all

FILED DATE: 1/11/2023 2:57 PM   2023L000001

obligations, whether present or future, to indemnify or reimburse the Lessee for any of the aforementioned replacements, alterations, modifications, improvements or additions.

## 9.    LOSS, DESTRUCTION, REQUISITION, ETC

### 9.1    Event of Loss with Respect to an Aircraft

(a)    Upon the occurrence of an Event of Loss with respect to an Aircraft or an Airframe and any related Engines and/or engines then installed thereon, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), which notice shall specify the actions the Lessee is taking with respect to such Event of Loss.  So long as no Default, Termination Event or Event of Default shall have occurred and be continuing, the Lessee may within forty-five (45) days after such occurrence, request permission from the Lessor to replace such Aircraft (or such Airframe and Engine(s), as applicable), upon terms and conditions acceptable to the Lessor, the Insurer Representative, the Agent, the Funder and the Security Trustee in their absolute discretion, including compliance with such terms and requirements that would make such replacement aircraft (or such replacement airframe and engine(s), as applicable) (a **Replacement Aircraft**) eligible for financing supported by the Insurance Policy in the same amount as such replaced Aircraft (or such replaced Airframe and Engine(s), as applicable), it being agreed that if the Lessee does not request such permission within the relevant time period (or does not receive such permission within ten (10) days after such request), the Lessee will not be entitled to substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable).

(b)    The Lessee will not substitute a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) hereunder unless such Replacement Aircraft (or replacement airframe and engine(s), as applicable) would be eligible for financing supported by the Insurance Policy, as determined by the Insurer Representative in its sole discretion.

(c)    It is expressly agreed that if any Basic Rent Payment Date for the affected Aircraft occurs at or after the date of such Event of Loss and prior to the payment of the Termination Value and any other Rent due in relation to such Aircraft, the Lessee shall pay to the Lessor on such Basic Rent Payment Date the amount equal to the Basic Rent which would have become due and payable in respect of such Aircraft on such Basic Rent Payment Date in accordance with the terms hereof had no Event of Loss so occurred.

(d)    Unless a Replacement Aircraft (or a replacement airframe and engine(s), as applicable) are being substituted in the circumstances contemplated in the preceding clauses, the Term for the affected Aircraft shall end on a date no later than the earliest of (i) the date falling ninety (90) days after the occurrence of such Event of Loss and (ii)  the Lessor or the Security Trustee receives insurance or requisition proceeds in respect thereof (the **Settlement Date**), and on such Settlement Date the Lessee shall pay to the Lessor an amount equal to the then applicable Termination Value for the affected Aircraft on such Settlement Date together with all accrued but unpaid Rent for the affected Aircraft to such Settlement Date and, without duplication, all other amounts then owing by the Lessee under the Operative Documents.

(e)    Upon full compliance by the Lessee with the terms of this Clause 9.1 the Lessor will (subject to insurer's salvage rights, if any) transfer to, or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty, all of the Lessor's right, title and interest, if any, in and to the Aircraft with respect to which such Event of Loss occurred by an appropriate instrument, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.  For all purposes

hereof, each such Replacement Aircraft shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an "Aircraft" as defined herein.

**9.2    Event of Loss with Respect to an Engine**

(a)    Upon the occurrence of an Event of Loss with respect to an Engine under circumstances in which there has not occurred an Event of Loss with respect to the associated Airframe, the Lessee shall within five (5) days after such occurrence, give the Lessor, the Insurer Representative, the Agent and the Security Trustee written notice of such Event of Loss (or cause such notice to be given), then within one hundred and twenty (120) days after the occurrence of such Event of Loss, the Lessee shall duly convey or cause to be conveyed to the Lessor and duly subject to the relevant Aircraft Mortgage and other relevant Security Documents, as replacement for such Engine with respect to which such Event of Loss occurred, title to a Replacement Engine (provided that all engines installed on such Airframe shall be of compatible make and model).

(b)    Such Replacement Engine shall be free and clear of all Liens (other than Permitted Liens) and having a value and remaining useful life at least equal to, and being in as good operating condition and state of maintenance as, the Engine with respect to which such Event of Loss occurred, assuming such Engine was of the value and remaining useful life and in the condition and state of repair as required by the terms hereof immediately prior to the occurrence of such Event of Loss, but without regard to its point in the maintenance cycle.

(c)    Prior to or at the time of any such conveyance, the Lessee, at its own expense, will:

(i)    furnish or cause to be furnished to the Lessor a bill of sale (with full warranty of title), in form and substance reasonably satisfactory to the Lessor and the Security Trustee with respect to such Replacement Engine;

(ii)    cause an amendment to the related Lease Supplement, in form and substance reasonably satisfactory to the Lessor and the Security Trustee, subjecting such Replacement Engine to this Lease to be duly executed by the Lessee and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant Government of Registry or any other Relevant Jurisdiction;

(iii)    furnish the Lessor, the Insurer Representative, the Agent and the Security Trustee with such evidence of compliance with the insurance provisions of Clause 10 with respect to such Replacement Engine as any of them may reasonably request and such other certifications and opinions of counsel as the Lessor and the Security Trustee may reasonably request;

(iv)    furnish the Insurer Representative, the Agent and the Security Trustee with a certificate of an aircraft engineer (who may be an employee of the Lessee) satisfactory to the Insurer Representative and the Security Trustee certifying that such engine has value and remaining useful life and it is in good operating condition as the Engine being substituted, assuming such Engine was in the condition and state of repair as required by the terms hereof immediately prior to such substitution, but without regard to its point in the maintenance cycle;

(v)    cause amendments to the relevant Aircraft Mortgage and other Security Documents, in form and substance reasonably satisfactory to the Insurer Representative and the Security Trustee subjecting such Replacement Engine to the relevant Aircraft Mortgage and Security Documents  to be duly executed by the Lessor and, to the extent necessary, recorded pursuant to the Applicable Laws of the relevant

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Government of Registry, the jurisdiction of incorporation or formation of the Lessor and the United States of America;

(vi)     cause all registrations to be made with the International Registry regarding such Replacement Engine (at the expense of the Lessee) as are necessary to ensure the protection and contemplated priority of the rights and interest of the Lessee, the Security Trustee and the Insurer Representative under the Operative Documents as shall be determined by the Security Trustee and the Insurer Representative (and in any event at least to the same extent as the registrations made with respect to the replaced Engine pursuant to Clause 6 of the Participation Agreement);

(vii)    furnish a legal opinion of counsel reasonably acceptable to the Insurer Representative and the Security Trustee regarding the perfection of the Lien of the relevant Aircraft Mortgage and Security Documents with respect to such Replacement Engine addressed to the Security Trustee, the Insurer Representative and the Agent and in form and substance reasonably acceptable to the Security Trustee and the Insurer Representative;

(viii)   affix a nameplate on such replacement engine in accordance with Clause 8.5;

(ix)     assign to the Lessor (for further assignment to the Security Trustee) all assignable and remaining engine warranties applicable to such Replacement Engine in a manner consistent with the relevant Engine Warranties Agreement.

(d)      Upon full compliance by the Lessee with the terms of this Clause 9.2 the Lessor will (subject to insurer's salvage rights, if any) transfer to or upon the order of, the Lessee on an "as-is, where-is" basis without recourse or warranty (except for a warranty that such title as was transferred to it by the Manufacturer on Delivery free and clear of Lessor Liens attributable to it), all of the Lessor's right, title and interest, if any, in and to the replaced Engine by an appropriate instrument, signed by the Security Trustee, releasing the replaced Engine from any Lien of the Security Documents, and any manufacturer's or repairer's warranties relating thereto and will take such other action as may be necessary to effect such transfer.   For all purposes hereof, each such Replacement Engine shall, after such conveyance, be deemed part of the property leased hereunder and shall be deemed an **Engine** as defined herein.   No Event of Loss with respect to an Engine under the circumstances contemplated by the terms of this Clause 9.2 shall result in any adjustment or reduction of Rent for the relevant Aircraft.

### 9.3     Application of Payments from Governmental Authorities or Others

Any payments (other than insurance proceeds from policies carried (or caused to be carried) by the Lessee the application of which is provided for in Clause 10 and other than proceeds of insurance policies carried by the Lessor or any Secured Party) received at any time by the Lessor or the Lessee from any Government Body or other Person with respect to an Event of Loss of any Aircraft or any Engine shall be paid over to the Security Trustee and applied, subject to Clause 9.6, in accordance with the terms of the Intercreditor Deed.

### 9.4     Requisition for Use of any Airframe and the Engines Installed Thereon

In the event of the requisition for use by any Government Body not constituting an Event of Loss of an Airframe and the Engines installed thereon during the relevant Term, the Lessee shall promptly notify the Lessor, the Security Trustee, the Insurer Representative and the Agent of such requisition, and all of the Lessee's obligations under this Lease shall continue to the extent such obligations are not restricted or curtailed by such requisition and to the same extent as if such requisition had not

occurred (but the Lessee's obligations to pay Rent for the relevant Aircraft pursuant to Clause 3 and its obligations under Clause 10 shall not be reduced or excused by such requisition).  All payments (and any interest thereon) received by the Lessor or the Lessee for the use of such Airframe and Engines at any time shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied in accordance with the Intercreditor Deed.

9.5     **Requisition for Use of an Engine Not Installed on an Airframe**

If an Engine not then installed on an Airframe is requisitioned for use by any Government Body, the Lessee shall replace such Engine or cause it to be replaced by complying with the terms of Clause 9.2 hereof as if an Event of Loss had occurred with respect to such Engine, and (upon compliance by the Lessee as aforesaid) any payments received by the Lessor or the Lessee from with respect to such requisition shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee, provided, however, that if a Material Default, Termination Event or Event of Default has occurred and is continuing then all payments received shall be paid over to the Security Trustee and applied to the obligations of the Lessee hereunder as the Lessor shall direct and any excess, shall, subject to Clause 9.6, be paid over to, or retained by, the Lessee.

9.6     **Payments to the Lessee**

Any amount referred to in this Clause 9 which is payable or creditable to the Lessee or any Permitted Sub-Lessee shall not be paid or credited to the Lessee or such Permitted Sub-Lessee or, if it has been previously paid to the Lessee or such Permitted Sub-Lessee, shall not be retained by the Lessee or such Permitted Sub-Lessee, if at the time of such payment or credit a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to, applied in accordance with the terms of the Operative Documents and/or held by the Security Trustee as security for the obligations of the Lessee under this Lease and the Operative Documents and at such time as there shall not be continuing any Material Default, Termination Event or Event of Default such amount (together with interest thereon, if any), if then remaining, shall be paid or credited to the Lessee or the Permitted Sub-Lessee (as the case may be).

10.     **INSURANCE**

10.1    **Aviation Third Party Legal Liability Insurance**

Except to the extent provided in Clauses 10.3 and 10.5, on or before the Delivery Date for an Aircraft, and throughout the Term therefor and for a period extending to two years following the later of (a) the final Basic Rent Payment Date for such Aircraft and (b) the date such Aircraft is returned to the Lessor, the Lessee will carry or cause to be carried at its own expense with insurers of recognized standing which insurers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative, airline liability insurance in respect of such Aircraft including war and allied perils, hi-jacking and other similar risks that are excluded from standard liability coverage to the extent that such insurance is (a) maintained by the Lessee or the Permitted Sub-Lessee with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (b) customarily obtained by carriers with comparable route structures flying similar aircraft or (c) generally required by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures in amounts customary for similar aircraft in the Lessee's fleet (but not less than seven hundred and fifty million Dollars (US$750,000,000) any one occurrence per each aircraft and subject to customary sub-limits for non-aviation coverage and aggregate limits for products liability and war risks coverages) and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet and of the type usually carried by corporations engaged in the same or a similar business, similarly situated with the Lessee or the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Permitted Sub-Lessee, and owning and operating similar aircraft and engines, and which covers risks of a kind customarily insured against by such corporations which shall include general third party legal liability (including war and allied perils), passenger liability, and property damage liability (including cargo, baggage and mail liability).  Any liability insurance carried in accordance with this Clause 10.1 and any policies taken out in substitution or replacement for any of such policies:

(a)     shall be amended to name the Security Trustee, as the contract party (the **Contract Party**) and each of the Lessor, the Lessee, the Lessor Parent, the Agent, the Security Trustee, the Funder, the Insurer Representative, the Insurer Group and their respective successors, members, assigns, officers, directors, shareholders, agents, employees, servants, Affiliates and sub-contractors as additional insureds (the **Additional Insureds**);

(b)     shall provide that in respect of the interests of the Lessor or any other Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that the Additional Insured so protected has not caused, contributed to or knowingly condoned the said act or omission);

(c)     shall provide that there shall be no recourse against the Lessor or any other Additional Insured for the payment of premiums under such policies and that the Insurer Representatives shall waive any right of subrogation against the Additional Insureds; and

(d)     shall provide that, if such insurance is cancelled for any reason whatsoever, or if any material change is made in such insurance that adversely affects the interest of the Lessor or any other Additional Insured, such cancellation or change shall not be effective as to the Lessor or any other Additional Insured for thirty (30) days (seven (7) days, or such other period as is then customarily obtainable in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers (if different from the Lessee's insurance broker) to the Lessee's appointed insurance broker.  The Lessee hereby covenants to cause the Lessee's or the Permitted Sub-Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

Each liability policy (a) shall be primary without right of contribution from any other insurance that is carried by any other Person to the extent that such other insurance provides it with contingent or excess liability insurance with respect to its interest as such in any Aircraft, (b) shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured, (c) shall waive any right of the Aircraft Insurer to any setoff, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Lessee, the Permitted Sub-Lessee, the Lessor or any other Additional Insured to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft) and (d) shall provide for worldwide coverage (except in relation to Excluded Countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk and related perils policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit.

## 10.2     Aircraft Hull Insurance

(a)     Except to the extent provided in Clauses 10.3 and 10.5, on or prior to the Delivery Date for each Aircraft and throughout the Term for each Aircraft (and, in the case of the termination of this Lease with respect to an Aircraft pursuant to Clause 14 hereof, at all times following such termination until the sale or other disposition of such Aircraft pursuant hereto) the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Lessee shall maintain or cause to be maintained in full force and effect, at its own expense and on terms substantially similar to insurance carried by the Lessee or the Permitted Sub-Lessee on similar aircraft in its fleet, all-risk aircraft hull insurance covering such Aircraft, while flying and on the ground, including coverage of the Engines and Parts while temporarily removed from or not installed on such Aircraft and not replaced with similar components (with flight taxing and ingestion coverage), against loss or damage, of the type (but not necessarily the amount) usually insured against by corporations engaged in the same or a similar business, similarly situated with the Lessee or the Permitted Sub-Lessee, and owning or operating similar aircraft and engines on an agreed-value basis in a Dollar amount not less than 112% of the highest Termination Value for such Aircraft during the applicable insurance period (the **Threshold Value**), and all-risk insurance with respect to each Engine and Part while removed from an Aircraft, and, as to each Engine or Part not installed on an Airframe, not less than the fair market value of such Engine or Part.

(b)     The Lessee shall maintain or cause to be maintained in full force and effect war-risk and related perils insurance and hi-jacking and government confiscation insurance (excluding for confiscation by the Government of Registry) in respect of each Aircraft on an agreed value basis for such Aircraft throughout each policy year, for not less than the amounts set forth in the preceding paragraph in respect of such Aircraft covering each of the following perils (i) insured by the Lessee or the Permitted Sub-Lessee, with respect to other aircraft owned or leased, and operated by the Lessee or the Permitted Sub-Lessee, (ii) customarily insured by air carriers with comparable route structures flying similar aircraft, and (iii) generally required to be insured by financiers and lessors of similar aircraft being operated by air carriers with comparable route structures.

(c)     All policies and subsequent policies taken out in accordance with this Clause 10.2 will be issued by insurance companies or underwriters of recognized standing in the international aviation industry or re-insurance companies or underwriters of such standing and through internationally recognized aviation insurance brokers, all of which insurance companies, underwriters and insurance brokers shall be reasonably acceptable to the Lessor, the Security Trustee and the Insurer Representative. In addition, all such policies and subsequent policies:

(i)     shall be denominated and payable in Dollars and shall be on an agreed value basis without the insurer's right to replace;

(ii)    shall name the Additional Insureds as additional insureds in respect of the legal liability insurances and the Security Trustee as the sole contract party and as loss payee in respect of hull claims that become payable on the basis of a total loss and provide that payment in respect of such claims shall be made to or to the order of the contract parties for application in accordance with the Operative Documents and in respect of all other hull claims the loss will be settled with such Persons as may be necessary to repair the relevant Airframe or Engine;

(iii)   shall provide that in respect of the interests of each Additional Insured in such policies the insurance shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of the Lessee or any other Person which results in a breach of any term, condition or warranty of such policies (provided that such Additional Insured has not caused, contributed to or knowingly condoned the said act or omission);

(iv)    shall provide that there shall be no recourse against the Lessor or any Additional Insured for the payment of premiums under such policies; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(v)      shall provide that, if such insurance is canceled for any reason whatsoever, or if any material change is made in such insurance which adversely affects the interests of any Additional Insured, such cancellation or change shall not be effective as to Additional Insureds for thirty (30) days (seven (7) days, or such other period as is then customarily imposed by in the industry, in the case of any war risk and allied perils coverage) after the giving of written notice from such insurers to the Lessee's appointed insurance broker. The Lessee hereby covenants to cause the Lessee's appointed insurance broker to give prompt notice of such cancellation or change by facsimile or email to the Contract Party on behalf of all Additional Insureds.

(d)      The hull policy for each Aircraft:

      (i)      shall waive any right of the Aircraft Insurer or any reinsurers to any set-off, counterclaim or other deduction, whether by attachment or otherwise, in respect of any liability of the Additional Insureds or any other Person to the extent of any moneys due such parties (except in respect of outstanding premium in respect of an Aircraft);

      (ii)      if separate hull all risks and war risks policies are arranged, shall contain a 50/50 claims funding clause acceptable to the Security Trustee, the Agent and the Insurer representative (which shall be AVS 103 or similar) in the event of a dispute as to which policy in respect of the hull insurances set forth in this Clause 10.2 shall pay in the event of a loss;

      (iii)      shall provide for worldwide coverage (except for excluded countries) and it is noted and agreed that the Aircraft Insurer may give notice effective on the expiry of seven (7) days (subject to exceptions uniformly provided in war risk policies then available on commercially reasonable terms) from midnight G.M.T. on the day on which such notice is issued to review the geographical limit; and

      (iv)      shall have deductibles (not applicable in the case of an Event of Loss or war and allied perils insurance) standard in the  industry in respect of the same model aircraft, which are reasonably acceptable to the Insurer Representative and the Security Trustee and in amounts which are no greater than seven hundred and fifty thousand dollars (US$750,000) and in any event such deductible shall not be greater than those which other international airlines of comparable standing (in the judgement of the Secured Parties' independent insurance advisor after consultation with the Lessee's broker of record) to the Lessee operating comparable aircraft are able to obtain in such market.

(e)      The Lessee may procure endorsements to the relevant insurance policies required to be maintained pursuant to Clause 10 so as to incorporate the terms of AVN 67B (or any successor provision) unto such policies, in which event, to the extent that any provision of any such AVN 67B (or any successor provision) endorsement conflicts or is otherwise inconsistent with the requirements of this Clause 10, then (so long as it shall remain general industry practice to insure aircraft financed by financial institutions on the basis of such endorsement) such endorsement shall be deemed to satisfy the requirements of this Clause 10 to the extent covered by such endorsement.

(f)      As between the Lessor and the Lessee it is agreed that all insurance payments received under policies that the Lessee is required to maintain pursuant to this Clause 10.2, exclusive of any payments received in excess of the then applicable Threshold Value for an Aircraft, as the result of the occurrence of an Event of Loss with respect to an Airframe or an Engine related

FILED DATE: 1/11/2023 2:57 PM   2023L000001

thereto will be applied, unless a replacement is effected in accordance with Clause 9.1 or 9.2 hereof, pursuant to the Intercreditor Deed.

(g)     As between the Lessor and the Lessee the insurance payment of any property damage or loss with respect to an Aircraft (i) that constitutes an Event of Loss, in excess of the then applicable Threshold Value for such Aircraft, shall be paid to the Lessee, and (ii) that does not constitute an Event of Loss with respect to the related Airframe or a related Engine, will be applied in payment (or to reimburse the Lessee), for repairs or for replacement property in accordance with the terms of Clauses 7 and 8, if not already paid for by the Lessee and any balance remaining after compliance with such Clauses with respect to such loss shall, subject as provided below, be paid to and retained by the Lessee or in accordance with Clause 9.3(b) of the Intercreditor Deed.

(h)     Notwithstanding any provision in this Clause 10.2, any amount referred to in this Clause 10.2 which is payable to the Lessee, shall not be paid to the Lessee or, if it has been previously paid directly to the Lessee, shall not be retained by the Lessee, if at the time of such payment a Material Default, Termination Event or Event of Default shall have occurred and be continuing, but shall be paid to and held by the Security Trustee as security for the obligations of the Lessee under this Lease and, during the continuance of such Material Default, Termination Event or Event of Default, shall be applied to the satisfaction of the then due and payable obligations of the Lessee under this Lease, and, at such time as there shall not be continuing any such Material Default, Termination Event or Event of Default, the remainder of such amount shall be paid to the Lessee.

## 10.3    Default

If the Lessee shall default in effecting or maintaining any insurance or if any insurance shall, for any cause become void, the Lessor, the Security Trustee or any other Additional Insured may (but without any obligation to do so and without prejudice to the Lessor's other rights and remedies hereunder) effect and keep up such insurance at the cost of the Lessee and the Lessee will forthwith upon demand repay to the Lessor, the Security Trustee or any other Additional Insured all premiums and other moneys from time to time paid by the Lessor, the Security Trustee or any other Additional Insured in respect of such insurance (which amount shall be certified by the Lessor, the Security Trustee or such other Additional Insured).

## 10.4    Certificates

On or before the Delivery Date for each Aircraft and promptly after the issuance or modification or renewal thereof (but in any event prior to the expiration of any insurance then to be renewed) in form substantially similar to those given prior to or on such Delivery Date, the Lessee will furnish to the Lessor, the Insurer Representative, the Agent and Security Trustee (with sufficient copies to the Funder):

(a)     a certificate of the Lessee's insurance broker or an authorized representative of the Aircraft Insurer describing in reasonable detail the Aircraft Insurances then carried and maintained on such Aircraft, containing an endorsement reflecting the Aircraft Insurances required hereunder and:

(i)     certifying the date and time of commencement and expiry of each insurance policy;

(ii)    specifying the deductible amounts and levels of co-insurance, if any, for each type of loss; and

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)     a letter of undertaking from the Lessee's appointed insurance broker with regard to the Aircraft Insurances required hereunder in respect of such Aircraft (in the case of each renewal, in substantially the same form as delivered on the relevant Delivery Date).

**10.5     Notice of Variations**

If any material variation is made to the terms of any of the Aircraft Insurances or Aircraft Reinsurances the Lessee shall immediately give notice to the Lessor, the Insurer Representative, the Security Trustee, the Agent and the Funder of such variation and shall provide such further details in relation thereto as the Lessor, the Insurer Representative, the Security Trustee, the Agent or any Funder may reasonably require.

**10.6     Premiums**

The Lessee shall pay or cause to be paid the premiums (or installments thereof) as required by the terms of such policies and produce to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request receipts in respect of payment of such premiums (or installments thereof) or other evidence of such payments as the Lessor, the Insurer Representative, the Security Trustee or the Agent may reasonably request.  In the case of renewals of such policies, the Lessee shall cause to be provided to the Lessor, the Insurer Representative, the Security Trustee and the Agent evidence of such renewal as soon as practicable and in any event within seven (7) days after the date of renewal and shall give the Lessor, the Insurer Representative, the Security Trustee and the Agent notice of such intended renewal no later than the day before such date and the Lessee shall pay the renewal and other premiums (and installments thereof) as required by the terms of such policies.

**10.7     Insurance Policies**

In the absence of an unqualified opinion or certificate addressed to the Lessor, the Insurer Representative, the Security Trustee and the Agent from the Lessee's or the Permitted Sub-Lessee's insurance brokers (and, if applicable, reinsurance brokers), the Lessor and each Secured Party shall be entitled to full reliance, without exception, that the certificates of insurance (and, if applicable, certificates of reinsurance) delivered pursuant to this Clause 10 do not conflict with the terms and conditions of the underlying insurance (and, if applicable, reinsurance) policies.  Copies of the policies and endorsements and riders amendatory thereof (excluding premium information) with respect to the Aircraft Insurances and any Aircraft Reinsurances, required under this Clause 10 shall be made available to the Lessor, the Insurer Representative, the Security Trustee and the Agent upon request for inspection by their respective representatives at the offices of the Lessee or the Permitted Sub-Lessee or the Lessee's or the Permitted Sub-Lessee's insurance brokers during normal business hours.

**10.8     Reinsurance**

(a)      Unless the Aircraft Insurances maintained by the Lessee in accordance with the provisions in this Clause 10 are maintained with Lloyd's of London or in other internationally recognized aviation insurance markets with insurers of international standing and repute who normally participate in aircraft insurance programmes and who are acceptable to the Security Trustee and the Insurer Representative, then the Lessee shall procure that the insurers shall maintain reinsurance in all respects satisfactory to the Security Trustee and the Insurer Representative covering identical subject matter and risk for an amount (which shall not be less than ninety five percent (95%) of the relevant coverage amount) with Lloyd's of London or in other internationally recognized aviation insurance markets with reinsurers of international standing and repute who normally participate in aircraft insurance programmes

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and who are acceptable to the Security Trustee, the Agent and the Insurer Representative. Any reinsurance shall:

(b)      be on the same terms as the original insurances;

(i)      contain a "cut-through" clause satisfactory to the Security Trustee, the Agent and the Insurer Representative providing that, in the event of any claim arising under the reinsurance, the reinsurers thereunder shall, in lieu of payment to the original insurer or its successors in interest and assigns, pay to or to the order of the Contract Party as loss payee that portion of any loss due for which the reinsurers thereunder would but for this cut-through clause be liable to pay the original insurer or its successors in interest and assigns, it being understood and agreed (and the Lessee agreeing to obtain the agreement of its original insurers for the benefit of the Lessor, the Agent, the Security Trustee, the Insurer Representative, the other Secured Parties and the reinsurers) that any such payment by the reinsurers thereunder shall fully discharge and release the original insurers from any and all further liability in connection therewith; and

(ii)     provide for payment to be made directly to or to the order of the Contract Party as provided herein notwithstanding (x) any bankruptcy, insolvency, liquidation or dissolution of the original insurer(s), and/or (y) that the original insurer(s) have made no payment under the primary insurance policies.

**10.9      Location**

Except as otherwise expressly permitted herein, the Lessee shall not at any time do or suffer to be done to any Aircraft, any Engine or any Part thereof or the premises on which the same may be located, or bring or keep, or permit to be brought or kept, anything therein or thereon or operate any Aircraft, any Engine or any Part thereof or take the same to or keep the same in, or permit the same to be taken to or kept in, a place where or whereby any insurance required hereunder may be rendered void or voidable or no longer in force or coverage thereunder shall be limited, without first arranging at its own expense such additional Insurance coverage as shall be necessary to avoid such result, such additional insurance to be in form and substance satisfactory to the Lessor, the Security Trustee and the Insurer Representative.  The Lessee will pay or cause to be paid all additional insurance premiums required on account of the additional risk caused by the use to which any Aircraft is put as aforesaid.

**10.10     Notice from the Lessee**

The Lessee will forthwith notify the Lessor, the Insurer Representative, the Agent and the Security Trustee of any event (including but not limited to an occurrence) which will or may give rise to a claim under the Aircraft Insurances required in Clause 10.2, in excess of an amount in any currency equal to three million Dollars (US$3,000,000) in respect of an Airframe and one million Dollars (US$1,000,000) in respect of an Engine, but nothing in this Clause 10.10 shall prejudice the payment provisions of Clause 10.2.  Upon completion of the repairs in respect of a loss in which insurers have paid proceeds towards such repair, the Lessee shall deliver to the Lessor, the Insurer Representative, the Security Trustee and the Agent an engineer's certificate certifying that such repairs have been completed in accordance with the manufacturer's recommended procedures.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**10.11   Certain Undertakings in Respect of the Aircraft Insurances**

(a)   The Lessee shall not and shall procure that no Permitted Sub-Lessee shall:

   (i)   make any modification to the Aircraft Insurances or any Aircraft Reinsurances required hereunder which is materially adverse to the interest of the Lessor, the Insurer Representative, the Security Trustee, any Secured Party or any other Additional Insured;

   (ii)   do, or omit to do, or permit to be done, or left undone anything whereby any required Aircraft Insurance or any Aircraft Reinsurance would or might reasonably be expected to be rendered, in whole or in part, invalid or unenforceable and, without prejudice to the foregoing, not use or keep or permit any Aircraft or any Engine or any Part thereof, to be used or kept for any purpose, in any manner or in any place not covered by required Aircraft Insurances or any Aircraft Reinsurances (except as otherwise expressly permitted herein); and

   (iii)   discriminate against any Aircraft relative to other aircraft of the same or comparable model within the Lessee's or the Permitted Sub-Lessee's fleet as to the coverage of the Aircraft Insurances required under this Clause 10.

(b)   The Lessee shall as soon as practicable, but in no event later than 48 hours, upon receipt of notice of cancellation of the war risks and related perils insurance due to armed hostilities in the area where any Aircraft may then be located or scheduled to operate, remove any Aircraft or cause any Aircraft to be removed to the United Kingdom  (or such other location at which such Aircraft shall remain covered by war risks and related perils insurance) and shall cause such Aircraft to remain in such location until such war risks and related perils insurance is reinstated and compliance herewith shall cure any related Termination Event or Event of Default under Clause 13.1(c), provided, however, that the Lessee need not comply with the provisions of this paragraph (b) if to do so would cause the Lessee to breach any other obligation contained herein.

(c)   The Lessee shall be responsible for the payment of any applicable deductibles or costs of any Aircraft Insurances and any Aircraft Reinsurances.

**10.12   Reimbursement**

The Lessee shall reimburse the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative, as the case may be, on demand for the amount of any premiums or premium installments which such party may pay pursuant to this Clause 10 together with interest thereon, for the period from and including the date of such payment by such party to but excluding the date on which the same is paid in full by the Lessee at the applicable Post-Default Rate.

**10.13   Change in Industry Practice; Additional Requirements**

In the event that there is a material change in the generally accepted industry-wide practice with regard to the insurance of aircraft (whether relating to all or any of the types of insurances required to be effected under the foregoing provisions of this Clause 10) such that the insurances required pursuant to the provisions of this Clause 10 are insufficient to protect the interests of the Lessor, the Insurer Representative, the Security Trustee or any of the other Additional Insureds hereunder, the Insurer Representative and the Security Trustee shall, to the extent reasonably practicable, consult with the Lessee, and the insurance requirements set forth in this Clause 10 shall be varied at the request of the Insurer Representative or the Security Trustee so as to include such additional or varied requirements as may be reasonably necessary to ensure that the insurances and reinsurances as

FILED DATE: 1/11/2023 2:57 PM   2023L000001

so varied shall provide comparable protection to that which it would have provided if such change in the generally accepted industry-wide practice had not occurred.

**10.14   Compliance with Legal Requirements**

In addition to the foregoing provisions of this Clause 10 the Lessee shall and shall procure that any Permitted Sub-Lessee shall comply with all legal requirements as to the insurance of any Aircraft or any Engine which may from time to time be imposed by the Applicable Laws of any Aircraft's registration or of any jurisdiction to or from or over which any Aircraft or any Engine shall be flown or in which the same shall be located.

**10.15   Additional Insurance**

The Lessee shall have the right to carry insurance in excess of the amounts required hereunder and additional and separate insurance for its own benefit at its own expense; provided that, no such insurance shall result in a duplicate payment on a loss, or shall impair in any way (whether or not material) the rights of the Lessor, the Insurer Representative, the Security Trustee, and other Secured Party or any other Additional Insured under this Lease and the Operative Documents.  Proceeds of such insurance shall be payable directly to the Lessee.

**10.16   Additional Terms of Insurance**

The Lessee agrees to ensure that the insurance policies in respect of all Insurances referred to in Clauses 10.1 and 10.2 above shall at all times be underwritten in full.

**10.17   Self Insurance**

Except for the deductibles permitted by Clause 10.2 hereof or otherwise permitted by the Lessor, the Security Trustee and the Insurer Representative, the Lessee shall not be permitted to self-insure against any of the risks required to be covered by the insurance described in this Clause 10.

**10.18   Date Recognition Exclusion**

If the Aircraft Insurances are subject to any exclusion relating to date recognition, the Lessee shall obtain write-backs covering such exclusions to the fullest extent available in the international aviation insurance markets and in accordance with good and prudent international aviation insurance practice.

**10.19   Notice of War Risk Insurance Claim**

The Lessee shall give the Lessor, the Insurer Representative, the Agent and the Security Trustee immediate written notice of the occurrence of any loss, damage or casualty affecting any Aircraft, any Airframe, any Engine or any Part which is likely to result in a claim being made under the War Risk Insurance required to be maintained under this Clause 10 and shall take immediate action to restore any fleet limitation (including automatic reinstatement) applicable to such war risk coverage to the level (including automatic reinstatement) that existed immediately prior to such event of loss, damage or casualty.

**11.   ABSOLUTE OBLIGATIONS**

(a)   This Lease is a net lease, and it is intended that the Lessee shall pay or cause to be paid all costs, charges, fees (including Eurocontrol fees), assessments, expenses, withholdings and Taxes of every character whether foreseen or unforeseen, ordinary or extraordinary, incurred in connection with or arising out of the use, operation, maintenance, repair, modification,

FILED DATE: 1/11/2023 2:57 PM   2023L000001

alteration, replacement and leasing of any Aircraft, including the costs, expenses and Taxes and similar levies set forth in the Participation Agreement.  The Lessee's obligation to pay all Rent and to perform all other obligations hereunder is absolute and unconditional and shall not be affected or reduced by any circumstances or for any reason, including:

(i)      any setoff, counterclaim, recoupment, defense or other right which the Lessee may have against the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party, the Manufacturer, the Engine Manufacturer or any Person providing services with respect to any Aircraft, or any other Person, for any reason whatsoever (whether in connection with the transactions contemplated hereby or otherwise), including any breach by the Lessor of its warranties contained herein or in the other Operative Documents;

(ii)      any defect in the title, airworthiness, eligibility of registration under any Applicable Law, condition, design, operation, or fitness for use of, or any damage to or loss or destruction of, any Aircraft or any portion thereof (subject to the provisions of Clause 9 hereof), any interruption or cessation in the use of or possession thereof by or availability to the Lessee for any reason whatsoever, whether arising out of or related to an act or omission of the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, Manufacturer, Engine Manufacturer or any other Person;

(iii)     any Lien with respect to any Aircraft or any portion thereof;

(iv)      the invalidity or unenforceability or lack of due authorization or other infirmity of this Lease or any absence of right, power or authority of any Person to enter into any Operative Document;

(v)      any Taxes;

(vi)     any change, waiver, extension, indulgence or liability or other act or omission in respect of any liability or obligation of the Lessor, the Security Trustee, the Funder, the Agent or the Insurer Representative or any other Secured Party;

(vii)     any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation, receivership or other like proceeding relating to the Lessee, the Lessor, the Lessor Parent, the Trustee or the Security Trustee or any disaffirmance, rejection or other action taken with respect to this Lease or any other Operative Document by the Lessor, the Funder, the Agent, the Security Trustee, the Insurer Representative, any other Secured Party or any other Person, or by any court, in any such proceeding;

(viii)    the Lessee at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of sovereignty or otherwise, which immunity, if any, the Lessee hereby expressly waives;

(ix)     any restrictions applicable to the Lessee on the transfer or conversion of currency; or

(x)      any other circumstances or happening of any nature whatsoever, whether or not similar to any of the foregoing; it being the express intention of the Lessor and the Lessee that all Rent payable hereunder shall be payable in all events, unless the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease or the other Operative Documents.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(b)   This Lease shall not, except as expressly set forth herein, be cancellable by the Lessee and, except as expressly set forth elsewhere in this Lease, the Lessee hereby waives any and all rights which it may now have or which at any time hereafter may be conferred upon it, by statute or otherwise, to terminate, abate, cancel, quit, reduce, defer, suspend or surrender this Lease or any Aircraft or any obligation imposed upon the Lessee hereunder or under the other Operative Documents (including payment of Rent), except in accordance with the terms hereof and thereof.

(c)   If for any reason whatsoever this Lease shall be terminated in whole or in part by operation of Applicable Law, except as specifically provided herein, the Lessee, if and to the extent that the Lessee retains the use and possession of any Aircraft, nonetheless agrees to pay to the Lessor an amount equal to each Basic Rent payment and any Supplemental Rent payment in respect of such Aircraft at the time such payments would have become due and payable in accordance with the terms hereof and the other Operative Documents had this Lease not been terminated in whole or in part and so long as such payments are made and all other terms and conditions hereof are complied with by the Lessee, the Lessor and the Lessee will deem this Lease to remain in full force and effect.

(d)   Nothing contained in this Lease shall be construed as a waiver of the Lessee's right to seek any claim against the Lessor, the Security Trustee, any Secured Party or any other Person arising out of the transactions contemplated by the Operative Documents in a separate proceeding or by compulsory counterclaim.

## 12.   ASSIGNMENT

The terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Except as otherwise provided in Clause 7.4, neither party hereto shall, without the prior written consent of the other and except as expressly permitted by the Operative Documents, assign any of its rights or obligations hereunder.

## 13.   LEASE EVENTS OF DEFAULT AND TERMINATION EVENTS

Other than the events referred to in paragraphs (f), (p), (t) or (u) which, if they do not arise as a result of any act or omission of any Lessee Group Member, shall constitute "Termination Events" (but, for the avoidance of doubt,  in all other circumstances shall constitute "Lease Events of Default"), the following events shall constitute "Lease Events of Default" hereunder, (whether any such event shall be voluntary or involuntary or come about or be effective by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, the United States or any other jurisdiction, or the administration or interpretation thereof) and each such Lease Event of Default or Termination Event shall be deemed to exist and continue so long as, but only so long as, it shall not have been remedied:

(a)   the Lessee shall fail to pay when due any amount of Basic Rent or Termination Value on the date such Basic Rent or Termination Value is due, and such failure shall continue unremedied for three (3) Business Days following the due date therefor;

(b)   the Lessee shall fail to pay when due any amount of Supplemental Rent or any other amount due and owing from the Lessee under this Lease (other than as specified in Paragraph (a) above) or any other Operative Document and such failure to pay shall continue for a period of five (5) Business Days after demand has been made on the Lessee;

(c)   the Lessee shall fail to carry and maintain or fails to procure that any Permitted Sub-Lessee carry and maintain Aircraft Insurances (including any required Aircraft Reinsurances)

FILED DATE: 1/11/2023 2:57 PM   2023L000001

required to be maintained in accordance with the provisions of Clause 10, or the Lessee shall fail to perform or observe any covenant, condition or agreement contained in Clause 7.6(a) or 10.11 hereof or Clause 8(g) of the Participation Agreement;

(d)      any Lessee Obligor shall have failed to perform or observe in any material respect  any other covenant or agreement (ie, other than those covered by the preceding paragraph (a), (b) or (c) of this Clause 13) to be performed or observed by it hereunder or under any other Operative Document to which it is a party, and such failure is unremediable, or if remediable and the Lessee is diligently proceeding to remedy such failure, shall continue unremedied for a period of thirty (30) days after the earlier of (i) the Lessee obtaining actual knowledge of such failure or (ii) notice to the Lessee thereof has been given by the Lessor, the Security Trustee or the Insurer Representative;

(e)      any representation or warranty of any Lessee Obligor under any of the Operative Documents or in any document or certificate furnished by the Lessee in connection therewith or pursuant thereto shall be untrue, inaccurate or misleading in any material respect as at the time when made or furnished;

(f)      any license, consent, approval or authorization of, or any filing or registration with, any governmental authority or agency necessary for the performance by a Lessee Obligor of its obligations under this Lease or any other Operative Document or in connection herewith or therewith (including, without limitation, the registration of any Aircraft or the any Mortgage or any Security Agreement) or the Certificate of Airworthiness issued in respect of any Aircraft shall be revoked, not applied for or not issued or shall cease to remain in full force (or, as applicable, is not duly renewed upon the terms consistent with the original approval or otherwise satisfactory to the Security Trustee and the Insurer Representative) or any of the foregoing shall be modified and any such revocation, non-application or issuance or modification would materially adversely affect (in the opinion of the Security Trustee or the Insurer Representative) the rights and remedies of the Lessor hereunder or of any Secured Party under the Operative Documents;

(g)      the Lessee or either Guarantor shall apply for or consent to the appointment of, or the taking of possession by, a receiver, an examiner, a trustee, custodian or liquidator of itself or of a substantial part of its property, or the Lessee or either Guarantor shall admit in writing submitted in connection with judicial or other similar procedures its inability to pay its debts generally as they come due, shall announce a moratorium on payment of its debts or any class of its debts, or shall make a general assignment for the benefit of creditors;

(h)      the Lessee or either Guarantor shall file a voluntary petition or commence a case in bankruptcy or a voluntary petition or an answer seeking reorganization in a proceeding under any bankruptcy or insolvency laws (as now or hereafter in effect) or an answer admitting the material allegations of a petition filed against any the Lessee or either Guarantor in any such proceedings, or the Lessee or either Guarantor shall by voluntary petition, answer or consent to or seek relief under the provisions of any other now existing or future bankruptcy, insolvency, reorganization or other similar law providing for the reorganization or winding-up of corporations, or providing for an agreement, composition, extension or adjustment with its creditors;

(i)      an order, judgment or decree shall be entered in any proceeding by any court of competent jurisdiction appointing, without the consent of such Lessee or either Guarantor, a receiver, trustee, custodian or liquidator of the Lessee or either Guarantor or of any substantial part of its property, or sequestering any substantial part of the property of such Lessee or either Guarantor, and any such order, judgment or decree of appointment or sequestration shall

FILED DATE: 1/11/2023 2:57 PM   2023L000001

remain in force undismissed, unstayed or unvacated for a period of sixty (60) days after the date of entry thereof;

(j)  a petition against the Lessee or either Guarantor in a proceeding under any bankruptcy laws or other insolvency laws as now or hereafter in effect shall be filed in a court of competent jurisdiction and shall not be withdrawn or dismissed within sixty (60) days thereafter, or if, under the provisions of any law providing for reorganization or winding-up of corporations which may apply to the Lessee or either Guarantor any court of competent jurisdiction shall assume jurisdiction, custody or control of the Lessee or of any substantial part of its property or any Aircraft and such jurisdiction, custody or control shall remain in force unrelinquished, unstayed or unterminated for a period of sixty (60) days;

(k)  the Lessee or either Guarantor threatens to suspend making payments or declares a moratorium or seeks a restructuring of its Indebtedness or the Lessee shall fail to pay when due (after giving effect to any applicable grace periods) any principal of or interest or scheduled payments in respect of any of its other Indebtedness (i) aggregating ten million Dollars (US$10,000,000) or more (or the equivalent thereof in any currency) or (ii) in respect of any Other Indebtedness, and the lender(s), the funder(s) or an agent or trustee thereof in respect of such Indebtedness declares or thereby becomes entitled to declare such Indebtedness to be due and payable prior to its scheduled maturity;

(l)  any additional procedure similar to those referred to in subparagraphs (g), (h), (i) and (j) above for the relief of financially distressed debtors under any Applicable Law or any other competent jurisdiction is entered into by the Lessee or either Guarantor voluntarily or involuntarily, and is not withdrawn or dismissed within sixty (60) days thereafter;

(m)  any of the events referred to in subparagraphs (g) to (l) above occurs in relation to any Permitted Sub-Lessee, and:

  (i)  the Lessee fails to inform the Lessor, the Security Trustee and the Insurer Representative immediately upon becoming aware of such event; or

  (ii)  the Lessee fails to terminate the leasing of the Aircraft pursuant to the relevant Permitted Sub-Lease immediately upon written request from the Lessor, the Security Trustee or the Insurer Representative.

(n)  a final judgment or judgments for the payment of money in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, shall be rendered against the Lessee or either Guarantor and the same shall remain undischarged for a period of sixty (60) days during which execution of such judgment shall not be effectively stayed, or an attachment or attachments or other Lien or Liens in respect of such judgment or judgments shall be issued or entered against any of the property of the Lessee or either Guarantor, for an amount in excess of ten million Dollars (US$10,000,000) or the equivalent in any other currencies, and shall remain undischarged or unbonded for thirty (30) days, except, in each case when such is being contested in good faith by appropriate proceedings that do not involve any substantial risk of the sale, seizure, forfeiture or loss of Collateral or title thereto, interest therein or use thereof;

(o)  the existence, validity, enforceability or priority of the Lessor's rights, title and interests to any Aircraft is challenged by any Lessee Obligor or any other Person claiming through the Lessee or this Lease or any other Operative Document becomes wholly or in part to a material extent invalid, illegal or unenforceable for any reason;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(p)     the validity or enforceability (but not any particular interpretation) of any provision of any Operative Document is contested through appropriate proceedings by the Lessee or any Affiliate thereof or by any Government Body seeking to establish the invalidity or unenforceability thereof;

(q)     the Lessee or any Permitted Sub-Lessee shall:

     (i)     (in the case of a Permitted Sub-Lessee) cease, or announce its intention to cease, to conduct its business as a commercial scheduled airline;

     (ii)    other than in circumstances permitted by Clause 8(g) of the Participation Agreement, assign, lease or otherwise dispose of all or any material part of the assets or property (whether by a single transaction or a number of related or unrelated transactions and whether at the same time or over a period of time) comprising the its aircraft or aircraft related business; or

     (iii)   (in the case of a Permitted Sub-Lessee) cease to hold, whether by virtue of the revocation, suspension or non-renewal thereof or otherwise, any air transport license or its equivalent required to enable the it to carry out its principal business or the franchises, concessions, permits, rights or privileges required for the conduct of the business or operations of it shall be revoked, canceled or otherwise terminated or the free and continued use and exercise thereof curtailed or prevented, and as a result of any of the foregoing the preponderant business activity of it  shall cease to be that of a commercial airline;

(r)     there shall have occurred and be continuing any "Event of Default" under and as defined in any Other Operative Document;

(s)     The Lessee breaches its obligations under clause 6 or clause 23 of the Participation Agreement;

(t)     there shall be any change (or such change shall be enacted or made by decree or otherwise and shall be scheduled and become thereafter effective) in the laws, regulations or treaties of the Government of Registry, the jurisdiction of incorporation or formation of the Lessee, (while it is leasing an Aircraft from the Lessee) any Permitted Sub-Lessee, the Cayman Islands, Ireland the United States or any government or political agency, subdivision or instrumentality thereof which materially adversely affects the validity, legality or perfection of the Lessor's title to any Aircraft, or any Secured Party's rights in any Aircraft under any Security Document, or which materially adversely affects the Lessor's or any Secured Party's interests under this Lease or materially adversely affects the Lessee's ability to perform or comply with its obligations under this Lease or the legality of such performance or compliance;

(u)     any Government Body shall have condemned, seized or appropriated all or any substantial part of the property of the Lessee or either Guarantor which is likely materially and adversely to affect the ability of such the Lessee or either Guarantor to perform its obligations under the Operative Documents; and/or

(v)     any other event occurs (other than an Event of Loss) or any other circumstance arises which is likely materially and adversely to affect the ability or legal obligation of the Lessee to perform its obligations under any Operative Document to which it is a party.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**14.     REMEDIES**

(a)     Upon the occurrence of any Event of Default or a Termination Event and at any time thereafter so long as the same shall be continuing, the Lessor may (without prejudice to any other rights of the Secured Parties under this Lease or the other Operative Documents), at its option, (in the case of any Event of Default) accept such repudiation and by notice to the Lessee declare this Lease to be in default or a Termination Event to have occurred and (in each case) by notice to the Lessee may, at its option, terminate any commitment of the Lessor to lease any Aircraft for which the relevant Delivery Date has not yet occurred (provided, that upon the occurrence of any Event of Default described in Clause 13.1(g)-(l), this Lease shall automatically be deemed in default and the Lessor's commitment shall automatically terminate); and at any time after this Lease shall be declared or deemed to be declared to be in default or a Termination Event to have occurred under this Clause 14, the Lessor may, so long as the Lessee shall not have remedied all outstanding Events of Default or Termination Events, exercise one or more of the following remedies with respect to all or any part of any Aircraft as the Lessor in its sole discretion shall elect:

(i)     the Lessor may demand that the Lessee pay the Lessor, and the Lessee shall pay to the Lessor, all Basic Rent (for all Aircraft) that has accrued but remains unpaid, together with the then applicable Termination Value for such Aircraft, computed on the date of final payment in full thereof, all Supplemental Rent then due and payable by the Lessee hereunder and all amounts then due and payable by the Lessee to the Lessor or any Secured Party under all other Operative Documents, and upon the indefeasible payment of such amount and all Supplemental Rent then due and payable by the Lessee hereunder, the Term for such Aircraft shall terminate;

(ii)     the Lessor shall be entitled in addition to making any demand referred to in paragraph (a) above:

(A)     to cause the Lessee upon demand of the Lessor (provided that such demand shall be deemed to have been given if the Lessor is stayed by operation of law from making such demand) and at the Lessee's expense, to return promptly, and the Lessee shall return promptly, all or such part of any Aircraft, and the Manuals and Technical Records relating thereto, as the Lessor may so demand, to the Lessor in the manner and condition required by, and otherwise in accordance with all the provisions of, Clause 5 as if such Aircraft was being returned at the end of the Term for such Aircraft, or if the Lessee does not so deliver such Aircraft or the Manuals and Technical Records relating thereto, the Lessor, at its option, may enter upon the premises where all or any part of such Aircraft and the Manuals and Technical Records relating thereto are located and take immediate possession of and remove the same (together with any engine or part which is not an Engine or Part associated with such Aircraft but which is installed on the relevant Airframe or stored with or attached to any relevant Engine, subject to all of the rights of the owner, lessor, lienor or secured party of such engine or part) by summary proceedings or otherwise all without liability accruing to the Lessor for or by reason of such entry or taking of possession, whether for restoration of damage to property caused by such taking or otherwise, provided that all actions of the Lessor in this respect are reasonable and necessary, and the Lessor may institute proceedings to repossess such Aircraft in any jurisdiction where such Aircraft may be located, and provided further that if at any time after the Lessor has exercised its rights under this paragraph (A), the Lessee shall make the payments referred to in paragraph (a) above, the Term for such Aircraft shall terminate;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(B)     following repossession of an Aircraft pursuant to Clause 14(b)(i), to sell such Aircraft at public or private sale, as the Lessor may determine; provided that the Lessor shall apply the proceeds of any sale in the manner set forth in the Intercreditor Deed, and the Lessor agrees to give the Lessee at least ten (10) Business Days' prior notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article 8(4) of the Convention) of the date fixed for any public sale of such Aircraft or of the date on or after which will occur the execution of any contract providing for any private sale thereof, and any such sale shall be conducted so as to afford the Lessee a reasonable opportunity to bid; and

(C)     the Lessor may exercise any other right or remedy which may be available to it as a secured party under Applicable Law or under the Cape Town Convention, including, without limitation, all rights and remedies under Chapter III of the Convention and Chapter II of the Protocol.  the Lessor hereby agrees to give the Lessee at least fifteen (15) days' notice (which the Lessor and the Lessee agree satisfies the requirement of "reasonable prior notice" specified in Article IX(6) of the Protocol) as set forth in Article IX(6) of the Protocol in connection with a proposal to procure the de-registration and export of an Aircraft without a court order.  the Lessee expressly agrees to permit the Lessor to obtain from any applicable court, pending final determination of any claim resulting from an Event of Default or Termination Event hereunder, speedy relief in the form of any of the orders specified in Article 13 of the Convention and Article X of the Protocol as the Lessor shall determine in its sole and absolute discretion, subject to any procedural requirements prescribed by Applicable Laws.

(b)     In addition, the Lessee shall be liable, except as otherwise provided above, for any and all unpaid Supplemental Rent due hereunder before, after or during the exercise of any of the foregoing remedies and for all legal fees and other costs and expenses actually incurred by the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative by reason of the occurrence of any Event of Default or Termination Event or the exercise of the Lessor's remedies with respect thereto, including (i) all costs and expenses incurred in connection with the return of the relevant Aircraft in accordance with the terms of Clause 5 or in placing the relevant Aircraft in the condition and airworthiness required by such Clause and (ii) any other costs and expenses that the Lessor, the Agent, the Funder, the Security Trustee or the Insurer Representative may incur in connection with the retaking, holding, storage, export, deregistration and preparing for sale of the relevant Aircraft and other like action or that the Lessee has agreed to assume in any other Operative Document or pursuant to Applicable Law.  Except as otherwise expressly provided above, no remedy referred to in this Clause 14 is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above; and the exercise or beginning of exercise by the Lessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by the Lessor of any or all of such other remedies.  No express or implied waiver by the Lessor of, and no course of dealing by it with respect to, any Event of Default or Termination Event shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default or Termination Event.

(c)     The Lessee hereby consents to the exercise by the Lessor of the remedies granted herein and in the Cape Town Convention.  The Lessee acknowledges and agrees that the Lessor may exercise such of the foregoing remedies as it shall determine in its sole discretion and none of the foregoing remedies is manifestly unreasonable.  To the extent permitted by Applicable Law, the Lessee and the Lessor hereby agree that paragraph 2 of Article 13 of the Convention shall not apply to this Lease or to the exercise of any remedy by the Lessor

FILED DATE: 1/11/2023 2:57 PM   2023L000001

under this Lease or the Cape Town Convention.  Following the occurrence of an Event of Default or Termination Event, the Lessee agrees to immediately discharge, upon demand by the Lessor or the Security Trustee, any registration made with the International Registry in favour of the Lessee.

## 15.    FURTHER ASSURANCES; INVESTMENT OF SECURITY FUNDS

### 15.1    Further Assurances

(a)    The Lessee and the Lessor shall from time to time, at the cost and expense of the Lessee, do and perform such other and further acts and duly execute and deliver such further documents and assurances as may be required by Applicable Laws or requested by the other party to establish, maintain and protect the respective rights and remedies of the other party and to carry out and effect the intent and purpose of this Lease including, if requested by the Lessor, the Security Trustee, the Agent  or the Insurer Representative and at the expense of the Lessee:

(i)    the execution and delivery of supplements hereto or to the other Operative Documents, in recordable form, subjecting to this Lease or to the other Operative Documents, any replacement or substitute airframe or engine;

(ii)    the recording or filing of counterparts hereto or thereto, in accordance with the laws of such jurisdictions in which any Aircraft is based as the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee; and

(iii)    the registration of any interest, assignment or subordination with the International Registry to preserve, protect, perfect or establish priority in respect of any Aircraft Object or Associated Right covered by or related to this Lease, the Insurer Representative or the Security Trustee may from time to time reasonably deem necessary after prior consultation with the Lessee.

(b)    The Lessee shall be solely responsible for obtaining all required consents and approvals of, giving all required notices to, performing all required registrations and filings for recordation with, and taking all other necessary actions in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, any Guarantor the jurisdiction of incorporation or formation of the Lessor, England and Wales and/or the United States of America including any governmental or political agency, subdivision or instrumentality thereof.

(c)    Without limiting the foregoing, the Lessee shall cause this Lease, and any and all additional instruments which shall be executed pursuant to the terms hereof, to be kept, filed, deposited or recorded, at all times, in the International Registry and in such places in the Government of Registry, the jurisdiction of incorporation or formation of the Lessee and any Permitted Sub-Lessee, the jurisdiction of incorporation or formation of the Lessor, the United States of America, England and Wales and such other jurisdictions in which any Aircraft is based as the Lessor, the Security Trustee, the Agent, any Funder or the Insurer Representative may reasonably request in order to perfect and preserve the rights of the Lessor, the Security Trustee, the Agent, the Funder, the Insurer Representative or the other Secured Parties hereunder, and furnish to the Lessor, the Insurer Representative, the Agent, Funder and the Security Trustee an opinion or opinions of counsel or other evidence satisfactory to the Lessor, the Insurer Representative and the Security Trustee of each such filing, deposit or recordation and, without limitation of any of the foregoing, at the reasonable request of the Lessor, the Insurer Representative, the Agent, any Funder or the Security Trustee, promptly

FILED DATE: 1/11/2023 2:57 PM   2023L000001

correct any defect, error or omission which may at any time hereafter be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof and, at the request of the Lessee, the Lessor shall promptly correct any defect, error or omission which may at any time be discovered in the contents of this Lease or in the execution, acknowledgment or delivery hereof.  Without limiting any of the foregoing, the Lessee will co-operate fully with the Lessor, the Security Trustee, the Agent, the Funder and the Insurer Representative for obtaining the deregistration of any Aircraft and any required export licenses, when requested by the Security Trustee upon any return of any Aircraft required hereunder.

**15.2    Security Funds**

(a)    Notwithstanding anything in this Lease to the contrary, if a Material Default or Event of Default or Termination Event  under this Lease shall have occurred and be continuing or if the Lessor (or the Security Trustee, as the Lessor's assignee) is holding funds pending replacement of any Airframe and/or Engines pursuant to Clause 9, all amounts otherwise payable to the Lessee hereunder shall be paid to the Lessor and shall be held by the Lessor (or, if either Security Agreement shall not have been discharged, shall be paid to and held by the Security Trustee) as security for the obligations of the Lessee under this Lease, and, at such time as there shall not be continuing such Material Default, Termination Event or Event of Default or such replacement is complete, such amounts, net of any amounts theretofore properly applied to the Lessee's obligations hereunder, shall be paid to the Lessee or as the Lessee may direct.

(b)    All funds held by the Security Trustee hereunder shall be held as Collateral under the Lessee Security Agreement to secure, inter alia, the repayment of the Loans and the other amounts expressed to be secured thereunder and applied as provided therein.

**16.    NOTICES**

All notices, consents and other communications hereunder shall be given in accordance with clause 13(c) of the Participation Agreement.

**17.    MISCELLANEOUS; GOVERNING LAW**

(a)    Any provision of this Lease that is prohibited or unenforceable in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and shall not invalidate or render unenforceable the other provisions hereof in any jurisdiction.  To the extent permitted by Applicable Law, the Lessee hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.  No term or provision of this Lease may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought and only as permitted by the Operative Documents.  The Clause and paragraph headings in this Lease and the table of contents are for convenience of reference only and shall not modify, define, expand or limit any of the terms or provisions hereof.

(b)    This Lease and any non-contractual obligations arising out of or in connection with it are governed by English law.

(c)    The provisions of clause 13(d) of the Participation Agreement, in so far as they relate to any dispute between the Lessor and the Lessee, shall apply hereto as if set out in this Agreement, *mutatis mutandis*.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(d)     To the extent that the Lessee may be or hereafter become entitled, in any jurisdiction in which judicial proceedings may at any time be commenced with respect to this Lease, to claim for itself or its property, assets or revenues immunity (whether by reason of sovereignty or otherwise) from suit, jurisdiction of any court, attachment prior to judgment, attachment in aid of execution of a judgment, set-off, execution of judgment or from any other legal process, and to the extent that in any such jurisdiction there may be attributed any such immunity (whether or not claimed), the Lessee hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity.

(e)     The payment obligations of the Lessee payable under this Lease and any other Operative Document (the **payor**) expressed to be payable thereunder in one currency (the **first currency**) shall not be discharged by an amount paid in another currency (the **second currency**), whether pursuant to a judgment or otherwise, to the extent that the amount so paid on prompt conversion to the first currency under normal banking procedures does not yield the full amount of the first currency due thereunder, and the payor shall indemnify the recipient of such payment (the **payee**) against any such shortfall; and in the event that any payment by the payor, whether pursuant to a judgment or otherwise, upon conversion and transfer does not result in payment of such amount of the first currency, the payee shall have a separate cause of action against the payor for the additional amount necessary to yield the amount due and owing to the payee.

(f)     If it is necessary to determine for any reason other than that referred to in Clause 17.1(e) above the equivalent in the first currency of a sum denominated in the second currency, the rate of exchange used shall be that at which in accordance with normal banking procedures the Security Trustee could purchase the first currency with the second currency on the Business Day on which such determination is to be made (or, if such day is not a Business Day, on the next preceding Business Day).

(g)     This Lease may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Lease.

(h)     Except to the extent expressly provided herein, any terms of this Lease which expressly incorporate any provisions of the Cape Town Convention shall prevail in the case of any conflict with any other provision contained herein.  Each of the parties hereto acknowledges and agrees that for purposes of the Cape Town Convention (to the extent applicable hereto), separate rights may exist with respect to each Airframe and Engine.

## 18.     SECURITY FOR THE LESSOR'S OBLIGATION

(a)     In order to secure the repayment, inter alia, of the Secured Obligations, the Lessor has agreed in the Lessor Security Agreement, among other things, to assign to the Security Trustee its right, title and interest in and to this Lease, including all Associated Rights related thereto, subject to the reservations and conditions therein set forth.  The Lessee hereby consents to such assignment and acknowledges receipt of a copy of the Security Agreement it being understood that such consent shall not affect any requirement or the absence of any requirement for any consent under any other circumstances.

(b)     Until the Lien of the Lessor Security Agreement has been released:

(i)     the Lessee shall, notwithstanding anything herein to the contrary, make all payments of Rent and all other amounts payable hereunder in accordance with clause 13 of the Participation Agreement and such payments shall not be subject to any defence, counterclaim, set-off or other right or claim of any kind which the Lessee may be

FILED DATE: 1/11/2023 2:57 PM   2023L000001

able to assert against the Lessor or any other Person in an action brought by any thereof on this Lease;

(ii) all rights of the Lessor with respect to this Lease (including all consent, waiver and notice rights), any Aircraft, any Airframe, any Engine or any Part thereof, to the extent set forth in and subject in each case to the exceptions set forth in the Lessor Security Agreement, shall be exercisable by the Security Trustee (to the exclusion of the Lessor); and

(iii) all documents, notices, certificates and opinions of counsel sent by the Lessee to the Lessor shall also be sent to the Security Trustee.

## 19.    LESSOR'S RIGHT TO PERFORM FOR LESSEE

If the Lessee fails to make any payment of Rent required to be made by it hereunder or fails to perform or comply with any of its agreements contained herein, the Lessor or the Security Trustee may (but shall be under no obligation to) itself make such payment or perform or comply with such agreement, and the amount of such payment and the amount of the reasonable expenses of the Lessor or the Security Trustee incurred in connection with such payment or the performance of or compliance with such agreement, as the case may be, shall be deemed Supplemental Rent, payable by the Lessee upon demand together with interest thereon at the applicable Post-Default Rate.

## 20.    ENGLISH LANGUAGE PREVAILS

For the avoidance of doubt, the Lessor and the Lessee agree any translation of this Lease shall not apply in construing this Lease and that the English version of this Lease shall govern for all purposes.

## 21.    COMPLETE AGREEMENT

Except for the other Operative Documents, this Lease contains the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior written or oral communications or agreements with respect thereto.

## 22.    LIMITATION OF LIABILITY OF THE LESSOR

The Lessee acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Lease is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Master Lease Agreement to be duly executed by their respective duly authorized officers on the date first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 1**

**FORM OF ACCEPTANCE CERTIFICATE**

[●] (the **Lessee**) at [●] on this [●] day of [●] (the **Delivery Date**), has accepted delivery from [●] (the **Lessor**) of the following described aircraft (the **Aircraft**) pursuant to and in accordance with the terms of that certain Master Lease Agreement (the **Lease**) dated as of [●]between the Lessor and the Lessee:

One (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number [●] and registration mark [●] together with two (2) installed CFM model LEAP-1B27 engines bearing manufacturer's serial numbers [●] and [●], all parts, appliances, components, instruments, accessories, accessions, attachments, avionics (including, without limitation, radio, radar, navigation systems and other electronic equipment), other equipment (including, without limitation, all buyer-designated equipment and all buyer-furnished equipment) and components of whatever nature incorporated or installed in or attached to the Aircraft or such Engines, and all Manuals and Technical Records pertaining to the Aircraft and Engines.

The Lessee further certifies (a) that it has irrevocably accepted the above-described Aircraft for all purposes hereof and of the Lease as being airworthy, in good working order and repair without defect or inherent vice in title, condition, design, operation or fitness for use, and (b) that the Aircraft conforms in all respects with all of the requirements of the Lease.

Capitalized terms used in this Acceptance Certificate not otherwise defined herein shall have the meaning assigned thereto in the Lease.

**IN WITNESS THEREOF**, the Lessee has caused this Acceptance Certificate to be executed in its name by its duly authorized representative on this [●] day of [●].

[●]

By:   _____
Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 2

## FORM OF LEASE SUPPLEMENT

### LEASE SUPPLEMENT NO. [  ]

THIS LEASE SUPPLEMENT NO. [●] dated [●] (this **Lease Supplement**) is between [●]**,** a [●] company incorporated under the laws of [●], as lessor (the **Lessor**) and [●], a [●] company incorporated under the laws of [●], as lessee (the **Lessee**);

### WITNESSETH:

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated as of [●] relating to 737 - 8 Boeing model [●] aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.     The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

(a)     one (1) Boeing model 737 - 8  airframe bearing manufacturer's serial number [●] and [●] registration mark [●]; and

(b)     two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers [●] and [●], respectively.

2.     The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.     The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.     The parties confirm that the Purchase Price for the Delivered Aircraft is US$[●] and the Initial Rent for the Delivered Aircraft is US$[●].

5.     All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.     The [revised] "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.     This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

[●]

By:      _____
         Name:
         Title:

[●]

By:      _____
         Name:
         Title:

Receipt of the counterpart of the foregoing Lease Supplement No. [●] is hereby acknowledged on this [●] day of [●].

[●], as Security Trustee

By:      _____
         Name:
         Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

Basic Rent
Payment Date                         Basic Rent

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE 3

## FORM OF EUROCONTROL LETTER

From:   **[NORWEGIAN AIR INTERNATIONAL LIMITED]**

To:     The Director of the Central Route Charges Office
        European Organisation for the Safety of Air Navigation (EUROCONTROL)
        Rue de La Fusée, 96
        B-1130 Brussels
        Belgium

                                                                      [    ] 2014

Dear Sirs

### Authorisation Letter

**AIR NAVIGATION CHARGES: ONE (1) BOEING 737 - 8 AIRCRAFT BEARING MANUFACTURER'S SERIAL NUMBER [●] AND REGISTRATION MARK [●] (THE AIRCRAFT)**

We have [subleased] the Aircraft from [[●] (the **Sublessor**)] in accordance with a [sublease] agreement dated [  ] 2017 between us and the [Lessor] [Sublessor].

We hereby authorise you to provide the [Sublessor] (hereby represented by [SECURITY TRUSTEE]) with a general statement of account in relation to air navigation charges incurred by us and due to EUROCONTROL.   Access to the statement(s) of account will be provided in accordance with the procedures established by EUROCONTROL.

The authorisation contained in this letter may only be revoked or amended by a written instruction signed by us and the [Sublessor].

Yours faithfully

For and on behalf of
**[NORWEGIAN AIR INTERNATIONAL LIMITED]**

Name:

Title:

**SCHEDULE 4**

**Form of EU ETS Authority Letter**

From:   **[NORWEGIAN AIR INTERNATIONAL LIMITED]**

To:     All governmental entities in the European Union charged with administering any EU ETS (as defined below) applicable to us and the Aircraft

[●]

Dear Sirs

**Emissions Trading Schemes**

1       Pursuant to the terms of the aircraft lease agreement dated [●] 2017 (the **Lease**) between [●] (the **Lessor**) and  Hardangerfjorden Limited (the **Lessee**) and the aircraft sub-lease agreement dated [●] 2017 (the **Sub-Lease**) between the Lessee and ourselves, we have agreed to sub-lease one (1) Boeing 737 - 8 aircraft with manufacturer's serial number [●]and registration mark [●].

2       We wish to enable each of the Lessor, [●] (the Insurer Representative) and [●] the (Security Trustee) to monitor the performance by us of our obligations under the Emissions Trading Schemes (**EU ETS**).

3       We hereby unconditionally authorise you, on request by the Lessor, the Security Trustee or the Insurer Representative from time to time, to provide the Lessor the Security Trustee or the Insurer Representative with particulars of any obligations due from but unperformed by us under the EU ETS.

4       The authorisation contained herein shall only be revoked or amended upon receipt by you of a written instruction signed by ourselves, the Lessor and the Agent requesting such revocation.

Yours faithfully

………………………………………………
For and on behalf of
**[NORWEGIAN AIR INTERNATIONAL LIMITED]**

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATORIES**

**LESSOR**

**AAA MAX I LIMITED**

By:        _____

Name: Elaine Anderson
Title: Director

**LESSEE**

**HARDANGERFJORDEN LIMITED**

By:        _____

Name:
Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SIGNATORIES**

**LESSOR**

**AAA MAX 1 LIMITED**

By: _____

Name:

Title:     Brian Byrne
           Attorney-in-Fact

**LESSEE**

**HARDANGERFJORDEN LIMITED**

By: _____

Name:

Title:     Brian Byrne
           Attorney-in-Fact

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT I-2

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## LEASE SUPPLEMENT NO. 6

THIS LEASE SUPPLEMENT NO. 6 dated __10 August__ 2017 (this **Lease Supplement**) is between AAA Max 1 Limited**,** an exempted  company with limited liability incorporated under the laws of the Cayman Islands, as lessor (the **Lessor**) and Hardangerfjorden Limited, a limited liability company incorporated under the laws of Ireland, as lessee (the **Lessee**);

<div align="center">WITNESSETH:</div>

**WHEREAS**:

(1)     the Lessor and the Lessee have heretofore entered into that certain Master Lease Agreement dated as of 22 June 2017 relating to 737 - 8 Boeing model aircraft (herein called the **Lease**; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Lease); and

(2)     the Lease provides for the execution and delivery of a Lease Supplement for the purposes of (a) leasing the Aircraft described below under the Lease as and when delivered by the Lessor to the Lessee in accordance with the terms thereof and (b) revising the payment schedules thereto.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, the Lessor and the Lessee hereby agree as follows:

1.     The Lessor hereby delivers and leases to the Lessee under the Lease, and the Lessee hereby accepts and leases from the Lessor under the Lease, the following described aircraft (the **Delivered Aircraft**), which as of the date hereof consists of the following components:

(a)     one (1) Boeing model 737 - 8 airframe bearing manufacturer's serial number 42829 and registration mark EI-FYF; and

(b)     two (2) CFM model LEAP1B-27 engines bearing manufacturer's serial numbers 602172 and 602197, respectively.

2.     The parties hereto confirm that the Delivery Date for the Delivered Aircraft is the date specified in the Acceptance Certificate.

3.     The parties hereto confirm that the Term for the Delivered Aircraft shall commence on the Delivery Date for the Delivered Aircraft and end on the Final Maturity Date.

4.     The parties confirm that the Purchase Price for the Delivered Aircraft is US$47,359,689.00 and the Initial Rent for the Delivered Aircraft is US$7,103,953.35.

5.     All of the terms and provisions of the Lease are hereby incorporated by reference in this Lease Supplement to the same extent as if fully set forth herein.

6.     The "Payment Amount" in respect of each Basic Rent Payment Date is set forth on Schedule I hereto.

7.     This Lease Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

8.      This Lease Supplement and any non-contractual obligations arising out of or in connection with it are governed by, English law.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____

      Name:   **Elaine Anderson**
      Title:     **Director**

Hardangerfjorden Limited

By: _____

      Name:
      Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 6 is hereby acknowledged on this __10th__ day of __August__ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____

      Name:
      Title:

FILED DATE: 1/11/2023 2:57 PM 2023L000001

**IN WITNESS WHEREOF,** the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max 1 Limited

By: _____
      Name:
      Title:

Hardangerfjorden Limited

By: _____
      Name: TIM O CONNELL
      Title: Attorney - in - Fact

Receipt of the counterpart of the foregoing Lease Supplement No. 6 is hereby acknowledged on this _10th_ day of _August_ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____
      Name:
      Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF,** the Lessor and the Lessee have caused this Lease Supplement to be duly executed by their respective officers hereunto duly authorized, as of the date and year first above written.

AAA Max I Limited

By: _____

   Name:
   Title:

Hardangerfjorden Limited

By: _____

   Name:
   Title:

Receipt of the counterpart of the foregoing Lease Supplement No. 6 is hereby acknowledged on this __10th__ day of __August__ 2017.

Citibank N.A., London Branch, as Security Trustee

By: _____

   Name:     John Kane
   Title:    Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SCHEDULE I TO LEASE SUPPLEMENT

| Basic Rent Payment Date | Basic Rent (USD) |
|---|---|
| 08-Nov-17 | 1,086,911.00 |
| 08-Feb-18 | 1,086,911.00 |
| 08-May-18 | 1,086,911.00 |
| 08-Aug-18 | 1,086,911.00 |
| 08-Nov-18 | 1,086,911.00 |
| 08-Feb-19 | 1,086,911.00 |
| 08-May-19 | 1,086,911.00 |
| 08-Aug-19 | 1,086,911.00 |
| 08-Nov-19 | 1,086,911.00 |
| 07-Feb-20 | 1,086,911.00 |
| 08-May-20 | 1,086,911.00 |
| 07-Aug-20 | 1,086,911.00 |
| 06-Nov-20 | 1,086,911.00 |
| 08-Feb-21 | 1,086,911.00 |
| 07-May-21 | 1,086,911.00 |
| 06-Aug-21 | 1,086,911.00 |
| 08-Nov-21 | 1,086,911.00 |
| 08-Feb-22 | 1,086,911.00 |
| 06-May-22 | 1,086,911.00 |
| 08-Aug-22 | 1,086,911.00 |
| 08-Nov-22 | 1,086,911.00 |
| 08-Feb-23 | 1,086,911.00 |
| 08-May-23 | 1,086,911.00 |
| 08-Aug-23 | 1,086,911.00 |
| 08-Nov-23 | 1,086,911.00 |
| 08-Feb-24 | 1,086,911.00 |
| 08-May-24 | 1,086,911.00 |
| 08-Aug-24 | 1,086,911.00 |
| 08-Nov-24 | 1,086,911.00 |
| 07-Feb-25 | 1,086,911.00 |
| 08-May-25 | 1,086,911.00 |
| 08-Aug-25 | 1,086,911.00 |
| 07-Nov-25 | 1,086,911.00 |
| 06-Feb-26 | 1,086,911.00 |
| 08-May-26 | 1,086,911.00 |
| 07-Aug-26 | 1,086,911.00 |
| 06-Nov-26 | 1,086,911.00 |
| 08-Feb-27 | 1,086,911.00 |
| 07-May-27 | 1,086,911.00 |
| 06-Aug-27 | 1,086,911.00 |
| 08-Nov-27 | 1,086,911.00 |
| 08-Feb-28 | 1,086,911.00 |
| 08-May-28 | 1,086,911.00 |
| 08-Aug-28 | 1,086,911.00 |

FILED DATE: 1/11/2023 2:57 PM   2023L000001

| Basic Rent Payment Date | Basic Rent (USD) |
|---|---|
| 08-Nov-28 | 1,086,911.00 |
| 08-Feb-29 | 1,086,911.00 |
| 08-May-29 | 1,086,911.00 |
| 08-Aug-29 | 1,086,911.00 |

Lease Supplement No. 6

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT I-3

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**EXECUTION VERSION**

# PURCHASE AGREEMENT ASSIGNMENT

Dated as of _____29 June_____ 2017

**ARCTIC AVIATION ASSETS DAC**
**as Assignor**

**and**

**NORWEGIAN AIR SHUTTLE ASA**
**as Assignor and Sub-Lessee**

**HARDANGERFJORDEN LIMITED**
**as Lessee**

**NORWEGIAN AIR INTERNATIONAL LIMITED**
**as Sub-Lessee**

**and**

**AAA MAX 1 LIMITED**
**as Lessor**

**six (6) Boeing model 737 - 8 aircraft**

## ALLEN & OVERY

Allen & Overy LLP

0117131-0000002 BK:40179920.15

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**THIS PURCHASE AGREEMENT ASSIGNMENT** dated as of _____ 29 June _____ 2017 (this **Assignment**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly incorporated under the laws of Ireland (**Arctic**), **NORWEGIAN AIR SHUTTLE ASA**, a company organized under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company incorporated under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly incorporated under the laws of Ireland (**International**).

## W I T N E S S E T H :

**WHEREAS**, Norwegian and The Boeing Company (the **Manufacturer**) entered into that certain purchase agreement number 03754, dated as of 24 January 2012, and that certain Aircraft General Terms Agreement AGTA-NSB, dated 29 August 2007 (the **AGTA**), which is incorporated by reference in that purchase agreement, providing for, inter alia, the sale by the Manufacturer of each Aircraft;

**WHEREAS**, Norwegian assigned and transferred to Arctic its rights and obligations under the Purchase Agreement to purchase the Aircraft in accordance with the Assignment, Assumption and Release Agreement dated 27 November 2014 (the **AARA**).

**WHEREAS**, the benefit of the warranty provisions in the Purchase Agreement were excluded from the rights of Norwegian that were assigned and transferred by it to Arctic under the AARA.

**WHEREAS**, the Lessor wishes to acquire certain rights and interests under the Purchase Agreement and each Assignor, on the terms and conditions set forth herein, is willing to assign to the Lessor certain of its rights and interests under the Purchase Agreement, and the Lessor is willing to accept such assignment; and

**WHEREAS**, the Manufacturer is willing to execute and deliver to the Lessor on each Delivery Date a consent and agreement (the **Consent and Agreement**) to the provisions hereof in substantially the form of Schedule 1 hereto in respect of the relevant Aircraft.

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein contained and of other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1.    For all purposes of this Assignment, unless the context otherwise requires, the following terms shall have the following respective meanings:

**Agent** shall mean Citibank Europe plc, UK Branch, as agent for the Funder.

**Aircraft** shall mean any of the six (6) Boeing model 737 - 8 airframes described in Schedule 2 hereto (each, an **Airframe**), as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, together, in the case of any Airframe, with two CFM model LEAP-1B27 engines, as more particularly described in Schedule 2, as such Schedule 2 may be amended on the relevant Delivery Date and from time to time by a Purchase Assignment Supplement, installed on such Airframe and each other engine described in any Purchase Assignment Supplement hereto (collectively, the **Engines**), together with the equipment, components and accessories installed on such Aircraft (other than buyer furnished equipment that has not been converted to seller purchased equipment pursuant to the Purchase Agreement) pursuant to the Purchase Agreement, and together with all technical records, manuals and data with respect thereto provided in relation to such Aircraft pursuant to the Purchase Agreement (collectively, the **Manuals and Technical Records**).

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Delivery** shall mean, with respect to an Aircraft, the time when the relevant Sub-Lessee (as designee of the Lessee), as the authorized representative of the Lessor, shall accept delivery of such Aircraft under the Purchase Agreement (as evidenced by delivery to the Lessor from the Manufacturer of the bill of sale in respect of such Aircraft referred to in the Purchase Agreement).

**Delivery Date** shall mean, with respect to an Aircraft, the date on which the Delivery of such Aircraft occurs.

**Engine Manufacturer** shall mean CFM International S.A., a French company, and its successors and permitted assigns.

**Insurer Representative** shall mean Allianz Risk Transfer AG, as Insurer Representative.

**Lease** shall mean, in respect of each Aircraft, the Master Lease Agreement dated on or about the date hereof as supplemented by the lease supplement dated on or prior to the Delivery Date for that Aircraft, substantially in the form of Exhibit I to the Master Lease Agreement, in each case between the Lessor, as lessor, and the Lessee, as lessee, providing for the lease of that Aircraft, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Lease Event of Default** shall have the meaning given to such term in the Lease.

**Lessor Security Assignment** shall mean, in respect of each Aircraft, the security agreement relating to that Aircraft dated on or prior to the Delivery Date for that Aircraft between the Lessor, as mortgagor, and the Security Trustee, as mortgagee, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Participation Agreement** shall mean the Participation Agreement dated as of 22 June 2017 among inter alios the Assignors, the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Funder identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Payment Undertaking Agreement** shall mean the Payment Undertaking Agreement, dated as of 22 June 2017, among the Lessor, the Agent, the Security Trustee, the Insurer Representative and the Funder identified therein, as amended, modified or supplemented from time to time in accordance with the terms thereof.

**Payment Undertaking Event of Default** shall have the meaning given to such term in the Payment Undertaking Agreement.

**Purchase Agreement** shall mean the purchase agreement no. PA-03754 dated as of 24 January 2012 originally made between Norwegian and the Manufacturer, as assigned to and assumed by Arctic pursuant to the AARA,  and as further amended and supplemented from time to time thereafter, providing for, inter alia, the purchase by Arctic from the Manufacturer of each Aircraft, as more particularly described therein, which incorporates by reference the terms and conditions of the Aircraft General Terms Agreement (AGTA-NSB) dated as of  29 August 2007 between Norwegian and the Manufacturer (the **AGTA**).

**Purchase Assignment Supplement** shall mean in respect of each Aircraft, the purchase assignment supplement relating to that Aircraft entered into between the Assignors, the Lessee, International and the Lessor and consented to by the Manufacturer, substantially in the form of Schedule 3 hereto.

**Purchase Price** shall mean, with respect to an Aircraft, the amount in United States Dollars (U.S.$) in respect of the purchase of such Aircraft as shall be notified by Arctic to the Lessor at least five (5) Business Days prior to the Delivery Date for such Aircraft upon agreement with the Manufacturer

FILED DATE: 1/11/2023 2:57 PM   2023L000001

and pursuant to the terms of the Purchase Agreement; provided that the Lessor's maximum liability under this Assignment in respect of the Purchase Price for such Aircraft shall not exceed the amount set forth in the Purchase Assignment Supplement; provided, further, that in the event that such amount changes after such notification but prior to the relevant Delivery Date, the parties agree that such amount shall be appropriately adjusted.

**Sub-Lessee** shall mean Norwegian or International, as the case may be.

**Security Trustee** shall mean Citibank N.A., London Branch, as Security Trustee.

**Sub-Lease** shall mean, with respect to an Aircraft, the aircraft operating lease agreement entered into or to be entered into on or about the Delivery Date of such Aircraft between the Lessee as lessor and the relevant Sub-Lessee as lessee.

**Sub-Lease Event of Default** shall have the meaning given to the term "Termination Event" in the relevant Sub-Lease.

**Transaction Parties** means the Lessor, the Lessee, Norwegian and International and **Transaction Party** shall mean any one of them.

All other capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in Part 1 of Appendix 1 to the Participation Agreement for all purposes of this Assignment and this Assignment shall be interpreted in accordance with the rules of construction set forth in Part 2 of Appendix 1 to the Participation Agreement.

2. As of the date of delivery of a Purchase Assignment Supplement from the Assignors to the Lessor (with copies to the Manufacturer and the Security Trustee) with respect to an Aircraft, each Assignor shall, with effect from such date, thereby sell, assign, transfer and set over unto the Lessor, its successors and permitted assigns, all of that Assignor's rights and interests in and to the Purchase Agreement as and to the extent they relate to the purchase of such Aircraft and the operation thereof, except as and to the extent expressly reserved below, including in such assignment:

   (a) the right upon valid tender by the Manufacturer to purchase such Aircraft pursuant to the Purchase Agreement subject to the terms and conditions thereof and the right to take title to such Aircraft and to be named the Buyer in the bill of sale to be delivered by the Manufacturer for such Aircraft pursuant to the Purchase Agreement;

   (b) the right to accept delivery of such Aircraft, such acceptance to be exercised by the relevant Sub-Lessee (as designee of the Lessee) as the authorized representative of the Lessor, provided that the Manufacturer shall have received written notice in advance of the identity and authority of such authorized representative;

   (c) all claims for damages in respect of such Aircraft arising as a result of any default by the Manufacturer under the Purchase Agreement in respect of such Aircraft;

   (d) all warranty and indemnity provisions contained in the Purchase Agreement and all claims arising thereunder, in respect of such Aircraft; and

   (e) any and all rights of each Assignor to compel performance of the terms of the Purchase Agreement in respect of such Aircraft;

reserving exclusively to the Assignors, however:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

(i)     all the Assignors' rights and interests in and to the Purchase Agreement as and to the extent that it relates to aircraft other than an Aircraft or the purchase, ownership or operation of such other aircraft and to the extent that it relates to any other matters not directly pertaining to an Aircraft;

(ii)     all the Assignors' rights and interests in or arising out of (including any credits for or repayment of) any advance payments made or to be made by the Assignors in respect of such Aircraft under the Purchase Agreement and any other payments or deposits made by the Assignors in respect of such Aircraft under the Purchase Agreement or any other agreement;

(iii)     the right to obtain services, training, data and demonstration and test flights pursuant to the Purchase Agreement; and

(iv)     the right to maintain plant representatives at the Manufacturer's plant pursuant to the Purchase Agreement.

The Lessor hereby accepts the assignment set forth above.

Notwithstanding the foregoing, so long and only so long as no notice has been issued to the Manufacturer, the Lessor hereby authorizes the relevant Sub-Lessee during the term of the Lease in respect of an Aircraft, to the exclusion of the Lessor, to exercise in such relevant Sub-Lessee's name (A) the right to enforce any warranty or indemnity under the Purchase Agreement and to retain any recovery or benefit resulting from the enforcement of any warranty or indemnity under the Purchase Agreement in respect of such Aircraft, (B) all rights to demand, accept and retain all rights in and to all property (other than such Aircraft) and (C) the right to exercise all other rights and powers of the Customer under the Purchase Agreement assigned to the Lessor hereunder in respect of such Aircraft; provided that the Assignors and such relevant Sub-Lessee may not enter into any change order or other amendment, modification or supplement to the Purchase Agreement if such change order, amendment, modification or supplement would (i) result in any rescission, cancellation or termination of the Purchase Agreement or any aircraft warranties in respect of any Aircraft, or (ii) materially diminish the rights and interests assigned hereunder.

For all purposes of this Assignment, the Manufacturer shall not be deemed to have knowledge of or need to recognize the occurrence of a Lease Event of Default, a Termination Event or a Sub-Lease Event of Default, unless and until the Manufacturer shall have received from the Lessee or the Lessor (or the Security Trustee, so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) written notice thereof, addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21-34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706. Until such time as a notice shall have been given by the Lessee or the Lessor (or the Security Trustee so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment (as set forth in Section 6 below) is in effect and shall not have been released by the Security Trustee) to the Manufacturer, the Manufacturer shall deal solely and exclusively with the relevant Sub-Lessee. Thereafter, until the Lessee or the Lessor (or the Security Trustee, as the case may be) who served the notice on the Manufacturer shall have notified the Manufacturer that any such Lease Event of Default, Termination Event, Sub-Lease Event of Default or Payment Undertaking Event of Default is no longer continuing (which notice shall be given at such relevant Sub-Lessee's, the Lessee's or the Lessor's (as applicable) written request promptly after the remedy thereof), the Manufacturer shall deal solely and exclusively with the Lessor, the Lessee or the Security Trustee, as the case may be. The Manufacturer may act with acquittance and conclusively rely on such notice. For the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice

FILED DATE: 1/11/2023 2:57 PM   2023L000001

from the Security Trustee shall control and in the event that the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control.

3.  It is expressly agreed that, anything herein contained to the contrary notwithstanding: (a) prior to the execution of a Purchase Assignment Supplement with respect to an Aircraft, each Assignor will perform its obligations with respect to such Aircraft to be performed by it on or before the Delivery Date for such Aircraft, (b) Arctic shall at all times remain liable to the Manufacturer under the Purchase Agreement to perform all duties and obligations of the Customer thereunder to the same extent as if this Assignment had not been executed, (c) the exercise by a Transaction Party of any of the rights assigned hereunder shall not release Arctic from any of its duties or obligations to the Manufacturer under the Purchase Agreement, except to the extent that such exercise by a Transaction Party shall constitute performance of such duties and obligations, and (d) except as specifically provided in the next succeeding paragraph with respect to the Transaction Parties, the Transaction Parties shall not have any obligation or liability under the Purchase Agreement by reason of or arising out of this Assignment or be obligated to perform any of the obligations or duties of Arctic under the Purchase Agreement or to make any payment or to make any inquiry as to the sufficiency of any payment received by it or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder.

Anything contained in this Assignment to the contrary notwithstanding (but without in any way releasing either Assignor from any of its duties or obligations under the Purchase Agreement), the Transaction Parties confirm for the benefit of the Manufacturer that, insofar as the provisions of the Purchase Agreement relate to any Aircraft, in exercising any rights under the Purchase Agreement with respect to such Aircraft, or in making any claim with respect to such Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to such Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, the Transaction Parties to the same extent as if each Transaction Party had been the original Customer thereunder. The Transaction Parties further agree, expressly for the benefit of the Manufacturer, that at any time and from time to time upon the written request of the Manufacturer, the Transaction Parties shall promptly and duly execute and deliver any and all such further assurances, instruments and documents and take all such further action as the Manufacturer may reasonably request in order to obtain the full benefits of the Transaction Parties' agreements set forth in this paragraph.

Nothing contained herein shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the contract rights of the Manufacturer thereunder or require the Manufacturer to divest itself of title to or possession of any Aircraft or other goods and services until delivery thereof and payment therefor on the date of such delivery as provided therein.

Effective at any time after a Sub-Lease Event of Default has occurred, and for so long as such Sub-Lease Event of Default is continuing, the relevant Sub-Lessee does hereby irrevocably appoint the Lessee, its successors and permitted assigns, the relevant Sub-Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessee may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any

FILED DATE: 1/11/2023 2:57 PM    2023L000001

recovery in connection therewith that the Lessee may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

Effective at any time after a Lease Event of Default has occurred, and for so long as such Lease Event of Default is continuing, the relevant Sub-Lessee and the Lessee do hereby irrevocably appoint the Lessor, its successors and permitted assigns, the relevant Sub-Lessee's and the Lessee's true and lawful attorney, by way of security, with full power (in the name of the relevant Sub-Lessee, the Lessee or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of the Purchase Agreement in respect of any Aircraft, to the extent that the same have been assigned by this Assignment and, for such period as the Lessor may exercise rights with respect thereto under this Assignment, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith that the Lessor may deem to be necessary or advisable in the premises. This appointment as attorney-in-fact is coupled with an interest.

4.      NEITHER ASSIGNOR SHALL BE DEEMED TO HAVE GIVEN, AND EACH ASSIGNOR HEREBY EXPRESSLY DISCLAIMS, ANY IMPLIED REPRESENTATION OR WARRANTY AS TO THE AIRWORTHINESS, CONDITION, MERCHANTABILITY, DESIGN, OPERATION OR FITNESS FOR USE OF ANY AIRCRAFT OR ANY PART THEREOF, OR ANY OTHER IMPLIED REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO ANY AIRCRAFT.

5.      Each Assignor agrees that at any time and from time to time upon the written request of any Transaction Party, it will promptly and duly execute and deliver any and all such further instruments and documents and take such further action as such Transaction Party may reasonably request in order to obtain the full benefits of this Assignment and of the rights and powers herein granted.

6.      Each Assignor does hereby represent and warrant that it has not assigned or pledged, and hereby covenants that it will not assign or pledge so long as this Assignment shall remain in effect, the whole or any part of the rights hereby assigned to anyone other than the Lessor. Each Assignor hereby acknowledges and agrees that the Lessor has assigned to the Security Trustee, as collateral security for the Lessor's obligations under the Payment Undertaking Agreement and the other Operative Documents, all of the Lessor's right, title and interest in and to the Purchase Agreement (as it relates to any Aircraft) and this Assignment pursuant to the Lessor Security Assignment, and each Assignor hereby consents to such assignment.

7.      The Lessor agrees that it will not enter into any agreement with the Manufacturer that would amend, modify, rescind, cancel or terminate the Purchase Agreement in respect of any Aircraft or take any other action to amend, modify, rescind, cancel or terminate any of the Assignors' rights in respect of any Aircraft, without the prior written consent of the Assignors and the Security Trustee (so long as the Lien of the Lessor Security Assignment is in effect and has not been released by the Security Trustee).

8.      Each of the Transaction Parties agrees, expressly for the benefit of the Manufacturer, that it will not disclose, directly or indirectly, any terms of the Purchase Agreement disclosed to it; provided, that (a) the Transaction Parties may use, retain and disclose any such information to its special counsel and public accountants, who shall maintain the confidentiality of the Purchase Agreement, (b) the Transaction Parties may disclose any such information as required by Applicable Law or governmental regulations, (c) to the extent that any Transaction Party may have received a subpoena or other written demand under colour of legal right for such information, such Transaction Party may disclose such information, but it shall first, as soon as practicable upon receipt of such demand, furnish a copy thereof to the Manufacturer, and the relevant Transaction Party shall afford the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer reasonable opportunity, at the moving Person's cost and expense, to obtain a protective order or other reasonably satisfactory assurance of confidential treatment for the information required to be disclosed, (d) the Transaction Parties may disclose any such information to any bona fide potential purchaser or lessee of any Aircraft (subject to execution by such potential purchaser or lessee of a confidentiality undertaking substantially similar to this Section 8) and (e) the Transaction Parties may disclose any such information to the Agent, the Funder, the Security Trustee, the Insurer Representative, each Insurer Group Member and any other Person with whom any of the foregoing is in good faith conducting negotiations relating to the possible transfer and sale of such Person's interests in the Purchase Agreement, any Aircraft and/or any provision of funds (subject to the execution of a confidentiality undertaking substantially similar to this Section 8 by such Agent, Funder, Security Trustee, Insurer Representative, Insurer Group Member and Person described in this paragraph 8) and to their respective special counsel and financial advisors (who shall maintain the confidentiality of the Purchase Agreement to the extent required by this Section 8).

9.    This Assignment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

10.   On the Delivery Date for an Aircraft, subject to satisfaction or waiver of the conditions set forth in the Participation Agreement required to be satisfied on or prior to the Delivery Date for such Aircraft, the Lessor agrees to purchase such Aircraft from the Manufacturer and (without limiting its other payment obligations under the Operative Documents on the Delivery Date for such Aircraft) to pay the Purchase Price for such Aircraft in the manner specified in the Purchase Agreement.

11.   If the Delivery Date for an Aircraft does not occur by 11:59 p.m. (Seattle time) on the date set forth in the Purchase Assignment Supplement in respect of such Aircraft, this Assignment (as it relates to such Aircraft) shall (unless otherwise agreed by the parties hereto) automatically terminate, whereupon the rights subject to this Assignment (as it relates to such Aircraft) shall be deemed reassigned by the Lessor to the Assignors without the requirement of any further act or action (other than any notice required to be given to the Manufacturer).

12.   For the purposes of this Assignment, all notices and other communications shall be in writing, in English, and shall be given or made by fax, or personal delivery and faxed or delivered to the intended recipient (other than the Manufacturer) at the address specified below, or, as to any party, at such other address as shall be designated by such party in a notice to each other party hereto. Except as otherwise provided in this Assignment, all such communications shall be deemed to have been duly given when transmitted by fax (provided such transmission by fax is in legible form and is accompanied by or generates a substantially simultaneous confirmation of transmission), or personally delivered, in each case given or addressed as aforesaid.

(a)    If to the Lessor:

AAA Max 1 Limited
c/o Walkers Fiduciary Limited
Cayman Corporate Centre
27 Hospital Road
George Town
Grand Cayman KY1-9008
Cayman Islands

Attention:    The Directors

Telephone:    +1 345 814 7600

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Email:          issuerpfla@citi.com

(b)     With a copy to the Security Trustee:

Citibank, N.A., London Branch
Canada Square,
Canary Wharf,
London E14 5LB

Attention:      The Directors

Fax:            issuerpfla@citi.comIf to Arctic:

Arctic Aviation Assets DAC
Ground Floor
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:      + 353 879 461 070

Fax:            + 353 1 814 1839

with a copy to Norwegian at the address below.

(c)     If to Norwegian:
Norwegian Air Shuttle ASA
Oksenøyveien 3
Postboks 115
N-1330 Fornebu
Norway

Attention:      Chief Financial Officer

Telephone:      + 47 67 59 3078

Fax:            +47 67 59 3001

(d)     If to the Lessee:

Hardangerfjorden Limited
c/o Arctic Aviation Assets DAC
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:      + 353 879 461 070

Fax:            + 353  1 814 7839

FILED DATE: 1/11/2023 2:57 PM  2023L000001

with a copy to Norwegian at the address above.

(e)     If to International

Norwegian Air International Limited
Imbus House
Dublin Airport
Co. Dublin
Ireland

Attention:      Tore Jenssen

Telephone:     + 353 879 461 070

Fax:           + 353 1 814 7839

with a copy to Norwegian at the address above.

13.    This Assignment will be governed by, and construed in accordance with, the laws of the State of Washington, except for the conflict of laws principles thereof.

14.    The provisions of clauses 13(d)(ii) to 13(d)(vi) of the Participation Agreement, in so far as they relate to any dispute between the parties shall apply hereto as if set out in this Assignment *mutatis mutandis*.

15.    Each of the parties to this Assignment (except International) acknowledges and agrees that its recourse against the Lessor, and the liability of the Lessor, under this Assignment is limited in accordance with the provisions of clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement.

16.    International acknowledges and agrees that the provisions of clause 20(c) (No Discharge, etc.; No Petitioning) and clause 30 (Limitations on Liability of the Lessor and the Lessor Parent) of the Participation Agreement apply to it to the same extent as if it were a party to the Participation Agreement and as if the reference to "Lessee" in such clause 20(c) referred to the Lessee and the Sub-Lessee.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Agreement Assignment to be duly executed as of the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 1**

**FORM OF CONSENT AND AGREEMENT**

**THE BOEING COMPANY**

**CONSENT AND AGREEMENT**

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated as of _____ 2017 between **AAA MAX 1 LIMITED** (the **Lessor**), **HARDANGERFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** [(**International/** the **Sub-Lessee**)] **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** [(**Norwegian**/ the **Sub-Lessee**)] (each of Arctic and [Norwegian/ the Sub-Lessee] being an **Assignor**), relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number [●] (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.  all representations, warranties, indemnities and agreements of the Manufacturer under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.  no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.  the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.  if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

FILED DATE: 1/11/2023 2:57 PM   2023L000001

5.      the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided, however, that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Payment Undertaking Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.      the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.      the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.      The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

         (a)      the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

         (b)      the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)    to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)    Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.    The Manufacturer hereby confirms to the Security Trustee that:

(a)    upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

(b)    except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.    The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.    The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.    It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____ 2017

**THE BOEING COMPANY**

By:

Name:

Title:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

MSN [●]

FILED DATE: 1/11/2023 2:57 PM  2023L000001

**SCHEDULE 2**

**DESCRIPTION OF AIRCRAFT**

Each of the six (6) Boeing model 737 - 8 airframes, bearing Manufacturer's serial numbers 42826, 42830, 42825, 42827, 42828 and 42829, as further identified on each Purchase Assignment Supplement to be entered into by the Assignors, the Lessor, the Lessee and the relevant Sub-Lessee in respect of such airframes, together, in the case of each such airframe, with the two (2) CFM Model LEAP-1B27 engines installed thereon and each other engine identified on any Purchase Assignment Supplement hereto.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**SCHEDULE 3**

**FORM OF PURCHASE ASSIGNMENT SUPPLEMENT**

**PURCHASE ASSIGNMENT SUPPLEMENT NO. __**

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated _____ 2017 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly organized under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly organized under the laws of Ireland (**International**) and supplements that Purchase Agreement Assignment dated as of _____ 2017 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

**W I T N E S S E T H:**

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and International desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and International hereby agrees as follows:

1.  The Sub-Lessee of the Aircraft is:                              _____

2.  Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

    Manufacturer's serial number:                      _____

    Registration Mark:                                           _____

    Engine Manufacturer's serial numbers:         _____ & _____

3.  Latest Delivery Date with respect to such Aircraft:         _____

4.  Maximum liability of the Lessor with respect to the   U.S.$_____
    Purchase Price of such Aircraft:

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. ___ to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT

**Arctic**

**SIGNED AND DELIVERED** as a **DEED**     )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully     )
appointed attorney     )     ………………………………..

     Lawfully appointed attorney

in the presence of:     )

Witness's Signature:     _____

Name:     _____

Address:     _____

     _____

**Norwegian**

SIGNED AND DELIVERED as a DEED by
**NORWEGIAN AIR SHUTTLE ASA**     )
acting by its lawfully appointed attorney     )     ………………………………..

in the presence of:     )     Lawfully appointed attorney

Witness's Signature:     _____

Name:     _____

Address:     _____

     _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

| | |
|---|---|
| **EXECUTED** as a **DEED** by | ) |
| **AAA MAX 1 LIMITED** | ) |
| acting by | ) |
| _____ | ) |
| acting under the authority of that | |
| Company, in the presence of: | ) |

Witness's Signature:    _____

Name:    _____

Address:    _____

          _____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (2)

## PURCHASE ASSIGNMENT SUPPLEMENT

**Lessee**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **HARDANGERFJORDEN LIMITED** | ) |
| acting by | ) |
| its lawfully appointed attorney | ) |

…………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature:      _____

Name:      _____

Address:      _____

_____

**International**

| | |
|---|---|
| **SIGNED AND DELIVERED** as a **DEED** by | ) |
| **NORWEGIAN AIR INTERNATIONAL** | ) |
| **LIMITED** | ) |
| acting by its lawfully appointed attorney | |

…………………………..

Lawfully appointed attorney

in the presence of:

Witness's Signature:      _____

Name:      _____

Address:      _____

_____

**SIGNATURES (3)**

**PURCHASE ASSIGNMENT SUPPLEMENT**

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By:
Name:
Title:
Date:

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

### PURCHASE AGREEMENT ASSIGNMENT

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by                    )

**ARCTIC AVIATION ASSETS DAC**                               )
acting by
its lawfully appointed attorney                              )

Tim O'Connell

Lawfully appointed attorney

in the presence of:

Witness's Signature:   Vanessa Caesar

Name:   Vanessa Caesar

Address:   Imbus House

**Assignor and Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by                    )

**NORWEGIAN AIR SHUTTLE ASA**                                )
acting by
its lawfully appointed attorney                              )

……………………………………..
Lawfully appointed attorney

in the presence of:

Witness's Signature:   …………………………………..

Name:   …………………………………..

Address:   …………………………………..

FILED DATE: 1/11/2023 2:57 PM  2023L000001

**SIGNATURES**

**PURCHASE AGREEMENT ASSIGNMENT**

**Assignor**

**SIGNED AND DELIVERED** as a **DEED** by            )

**ARCTIC AVIATION ASSETS DAC**                        )
acting by
its lawfully appointed attorney                            )

………………………………..
Lawfully appointed attorney

in the presence of:

Witness's Signature:    …………………………………..

Name:                        …………………………………..

Address:                    …………………………………..

**Assignor and Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by            )

**NORWEGIAN AIR SHUTTLE ASA**                       )
acting by
its lawfully appointed attorney                            )

ANDERS FREDRIKSEN
….A.T.T.O.R.N.E.Y.-.I.N.-.F.A.C.T.…..
Lawfully appointed attorney

in the presence of:

Witness's Signature:    …..Simen Strand…..

Name:                        ……SIMEN STRAND……

Address:                    ……HARBITZALLEEN 14H……

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by                )
**AAA MAX 1 LIMITED**                         )
acting by                                     )
                                              )
_____
acting under the authority of that
Company, in the presence of:                  )

**Elaine Anderson**
**Director**

Witness's Signature: _____

Name:   Josineide loucena

Address:   Cayman Corporate Centre
           27 Hospital Road, George Town
           Grand Cayman KY1-9008
           Cayman Islands

**SIGNATURES (2)**

**PURCHASE AGREEMENT ASSIGNMENT**

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by                )

**HARDANGERFJORDEN LIMITED**                             )
acting by
its lawfully appointed attorney                          )

_Tim O'Connell_
..............................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:    _Vanessa Caesar_

Name:                   _Vanessa Caesar_

Address:                _Imbus House_

**Sub-Lessee**

**SIGNED AND DELIVERED** as a **DEED** by                )

**NORWEGIAN AIR INTERNATIONAL**                          )
**LIMITED**
acting by
its lawfully appointed attorney                          )

_Tim O'Connell_
..............................................
Lawfully appointed attorney

in the presence of:

Witness's Signature:    _Vanessa Caesar_

Name:                   _Vanessa Caesar_

Address:                _Imbus House_

Purchase Agreement Assignment

FILED DATE: 1/11/2023 2:57 PM   2023L000001

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Citibank N.A, London Branch, as security trustee for the Secured Parties and as holder of a security interest in the right, title and interest of the Lessor in and to the Purchase Agreement (as it relates to each Aircraft) and this Assignment pursuant to the terms of the Lessor Security Assignment, agrees to the terms and conditions of this Assignment and agrees that its rights and remedies under the Lessor Security Assignment in respect of the property expressed to be assigned under this Assignment shall be subject to the terms and conditions of this Assignment (including, without limitation, the second paragraph of Section 3 hereof) and of the Purchase Agreement.

**CITIBANK N.A., LONDON BRANCH**
as Security Trustee

By: _____

Name:

Title:
John Kane
Vice President

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT I-4

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 6

THIS PURCHASE ASSIGNMENT SUPPLEMENT dated 10 August 2017 (this **Purchase Assignment Supplement**) is between **ARCTIC AVIATION ASSETS DAC**, a company duly organized under the laws of Ireland (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA**, a company incorporated under the laws of Norway (**Norwegian**) (each of Arctic and Norwegian being an **Assignor**), **AAA MAX 1 LIMITED**, an exempted company with limited liability incorporated and existing under the laws of the Cayman Islands (the **Lessor**), **HARDANGERFJORDEN LIMITED**, a company organised under the laws of Ireland (the **Lessee**) and **NORWEGIAN AIR INTERNATIONAL LIMITED**, a company duly organized under the laws of Ireland (**International**) and supplements that Purchase Agreement Assignment dated as of 29 June 2017 (the **Purchase Assignment**) between, amongst others, the Assignors and the Lessor. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Purchase Assignment.

### W I T N E S S E T H :

**WHEREAS**, the Assignors and the Lessor have entered into the Purchase Assignment, pursuant to which each Assignor has agreed to assign to the Lessor certain of its rights under the Purchase Agreement; and

**WHEREAS**, pursuant to the terms of Purchase Assignment, the Assignors, the Lessor, the Lessee and International desire to enter into this Purchase Assignment Supplement in respect of the Aircraft described below.

**NOW**, **THEREFORE**, in consideration of the premises and other good and sufficient consideration, each of the Assignors, the Lessor, the Lessee and International hereby agrees as follows:

1.  The Sub-Lessee of the Aircraft is:               Norwegian Air Shuttle ASA

2.  Schedule 2 of the Purchase Assignment is hereby amended to add thereto the Aircraft described below.

    Manufacturer's serial number:               42829

    Registration Mark:               EI-FYF

    Engine Manufacturer's serial numbers:               602172 & 602197

3.  Latest Delivery Date with respect to such Aircraft:               10 August 2017

4.  Maximum liability of the Lessor with respect to the Purchase Price of such Aircraft:               U.S.$ 47,359,689.00

All of the terms and provisions of the Purchase Assignment are hereby incorporated by reference in this Purchase Assignment Supplement to the same extent as if fully set forth herein.

This Purchase Assignment Supplement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

This Purchase Assignment Supplement is governed by the laws of the State of Washington.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**IN WITNESS WHEREOF**, the parties hereto have caused this Purchase Assignment Supplement No. 6 to be duly executed on the day and year first above written.

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 6

**Arctic**

| | | |
|---|---|---|
| **SIGNED AND DELIVERED** as a **DEED** | ) | |
| by **ARCTIC AVIATION ASSETS DAC** | | |
| acting by its lawfully | ) | |
| appointed attorney | ) | |

_Tim O'Connell_

Lawfully appointed attorney

in the presence of:                                     )

Witness's Signature:     _Vanessa Caesar_

Name:                            Vanessa Caesar

Address:                        Imbus House

Financial Administrator

**Norwegian**

| | | |
|---|---|---|
| SIGNED AND DELIVERED as a DEED by | | |
| **NORWEGIAN AIR SHUTTLE ASA** | ) | |
| acting by its lawfully appointed attorney | ) | |

...........................................

Lawfully appointed attorney

in the presence of:                                     )

Witness's Signature:     _____

Name:                            _____

Address:                        _____

_____

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES

## PURCHASE ASSIGNMENT SUPPLEMENT NO. 6

**Arctic**

**SIGNED AND DELIVERED** as a **DEED**    )
by **ARCTIC AVIATION ASSETS DAC**
acting by its lawfully    )
appointed attorney    )    …………………………………..

    Lawfully appointed attorney

in the presence of:    )

Witness's Signature: _____

Name: _____

Address: _____

_____

**Norwegian**

SIGNED AND DELIVERED as a DEED by
**NORWEGIAN AIR SHUTTLE ASA**    )
acting by its lawfully appointed attorney    )

in the presence of:    )

Witness's Signature: *Simen Strand*

Name: *SIMEN STRAND*

Address: *HARBITZALLEEN 14H*

_____

…………………………………..
Lawfully appointed attorney
ANDERS FREDRIKSEN

ATTORNEY-IN-FACT

FILED DATE: 1/11/2023 2:57 PM   2023L000001

**Lessor**

**EXECUTED** as a **DEED** by )
**AAA MAX 1 LIMITED** )
acting by )
)
_____
acting under the authority of that
Company, in the presence of: )

**Elaine Anderson**
**Director**

Witness's Signature:

Name:

Address:   Cayman Corporate Centre
27 Hospital Road, George Town
Grand Cayman KY1-9008
Cayman Islands

Purchase Agreement Assignment Supplement No. 6

SIGNATURES (2)

PURCHASE ASSIGNMENT SUPPLEMENT NO. 6

**Lessee**

**SIGNED AND DELIVERED** as a **DEED** by        )
**HARDANGERFJORDEN LIMITED**              )
acting by                                             )
its lawfully appointed attorney                )

Lawfully appointed attorney

in the presence of:

Witness's Signature:

Name:        **Vanessa Caesar**

Address:     **Imbus House**

**Financial Administrator**

**International**

**SIGNED AND DELIVERED** as a **DEED** by        )
**NORWEGIAN AIR INTERNATIONAL**          )
**LIMITED**                                         )
acting by its lawfully appointed attorney

Lawfully appointed attorney

in the presence of:

Witness's Signature:

Name:

Address:     **Vanessa Caesar**

**Imbus House**

**Financial Administrator**

Purchase Agreement Assignment Supplement No. 6

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## SIGNATURES (3)

### PURCHASE ASSIGNMENT SUPPLEMENT NO. 6

**Manufacturer acknowledgement**

**THE BOEING COMPANY**

By: *TAGreene*
Name: Tiffany Greene
Title: Attorney-in-fact
Date:    10 August 2017

FILED DATE: 1/11/2023 2:57 PM   2023L000001

# EXHIBIT I-5

FILED DATE: 1/11/2023 2:57 PM   2023L000001

## CONSENT AND AGREEMENT

The undersigned, **THE BOEING COMPANY**, a Delaware corporation (the **Manufacturer**), hereby acknowledges notice of and consents to all of the terms of the Purchase Agreement Assignment (herein called the Assignment; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Assignment) dated as of 29 June 2017 between **AAA MAX 1 LIMITED** (the **Lessor**), **HARDANGERFJORDEN LIMITED** (the **Lessee**), **NORWEGIAN AIR INTERNATIONAL LIMITED** (**International**), **ARCTIC AVIATION ASSETS DAC** (**Arctic**) and **NORWEGIAN AIR SHUTTLE ASA** (the **Sub-Lessee**) (each of Arctic and the Sub-Lessee being an **Assignor**), relating to the assignment by the Assignors of, among other things, certain of its rights and interests under the Purchase Agreement in respect of one (1) Boeing model 737 - 8 aircraft bearing manufacturer's serial number 42829 (the **Aircraft**), and hereby confirms to the Transaction Parties that:

1.   all representations, warranties, indemnities and agreements of the Manufacturer under the Purchase Agreement with respect to the Aircraft shall, subject to the terms and conditions thereof and of the Assignment, inure to the benefit of the Lessor to the same extent as if originally named the **Customer** therein, except as provided by Section 2 of the Assignment;

2.   no Transaction Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement, nor shall the Assignment give rise to any duties or obligations whatsoever on the part of any Transaction Party owing to the Manufacturer, except for the Transaction Parties' agreement in the Assignment with respect to the Aircraft that, in exercising any right under the Purchase Agreement with respect to the Aircraft, or in making any claim with respect to the Aircraft or other things (including, without limitation, the Manuals and Technical Records and other services) delivered or to be delivered pursuant to the Purchase Agreement with respect to the Aircraft, the terms and conditions of the Purchase Agreement including, without limitation, the disclaimer and release and exclusion of consequential and other damages provisions in Exhibit C, Part 2, Article 11 of the AGTA and the indemnity and insurance provisions in Article 8.2 of the AGTA, shall apply to, and be binding upon, each Transaction Party to the same extent as the Assignors;

3.   the Manufacturer acknowledges and agrees that the Assignment constitutes an assignment by the Assignors as permitted by the Purchase Agreement;

4.   if the Lessor desires to lease or sell the Aircraft to a person who is not then a party to a Customer Service General Terms Agreement with the Manufacturer, to the extent permitted under the laws of the United States of America, the Manufacturer agrees that it will then offer to such lessee or purchaser, subject to execution of an agreement so to lease or sell the Aircraft, a Customer Service General Terms Agreement on the Manufacturer's then standard terms and conditions for a person in the category in which the Manufacturer reasonably determines such lessee or purchaser falls; **provided that** if such lessee or purchaser is then a party to a Customer Service General Terms Agreement with the Manufacturer, such Customer Service General Terms Agreement shall apply to any purchase by such lessee or purchaser of the Aircraft provided however that nothing herein shall be deemed to constitute any consent by the Manufacturer to any further assignment by the Lessor or the Security Trustee of its rights in respect of the Purchase Agreement;

5.   the Manufacturer will continue to recognize the Sub-Lessee's rights to enforce any of the warranties and indemnities under the Purchase Agreement and agrees to pay to the Sub-Lessee all payments that the Manufacturer may be required to make (and that have been assigned to the Lessor under the Assignment) in respect of the Aircraft under the Purchase Agreement unless and until the Manufacturer shall have received written notice from the Lessor or the Lessee addressed to the Manufacturer at, if by mail, Vice President - Contracts, Boeing Commercial Airplanes, P.O. Box 3707, Mail Code 21 34, Seattle, Washington, 98124, U.S.A., or if by facsimile, facsimile no. (425) 237-1706, that an Event of Default or a Termination Event under the Lease or a Sub-Lease Event of

FILED DATE: 1/11/2023 2:57 PM   2023L000001

Default under the Sub-Lease (as applicable) has occurred and is continuing (which such notice shall be conclusive proof thereof between the Manufacturer and the Sub-Lessee and Lessee (if applicable)) whereupon the Manufacturer will, until the Lessor shall have notified the Manufacturer in writing that no such Event of Default or Termination Event or Sub-Lease Event of Default is continuing, make any and all payments and take all actions that it may be required thereafter to make or take in respect of the Aircraft under the Purchase Agreement and the right to receive which has been assigned to the Lessor under the Assignment, directly to the Lessor or the Lessee (as applicable) at its address as from time to time notified to the Manufacturer in writing; **provided**, **however**, **that** so long as the security interest in the Lessor's interest in the Purchase Agreement granted under the Lessor Security Assignment shall not have been released by the Security Trustee, if the Manufacturer shall have received written notice from the Security Trustee, addressed to the Manufacturer at the preceding address, stating that an Event of Default or a Termination Event each as defined in the Payment Undertaking Agreement shall have occurred and is continuing, the Manufacturer will, until the Security Trustee shall have notified the Manufacturer in writing that no such Event of Default or a Termination Event is continuing, pay directly to the Security Trustee at the Security Trustee's account at a bank or financial institution located in the United States to be advised from time to time upon request, any and all amounts that the Manufacturer thereafter may be required to make in respect of the Aircraft under the Purchase Agreement, and the right to receive payments of which have been sold, assigned, transferred and set over under the Assignment (for the avoidance of doubt, in the event the Manufacturer receives any notice from the Lessor, the Lessee and the Security Trustee, the notice from the Security Trustee shall control and if the Manufacturer receives any notice from the Lessor and the Lessee, the notice from the Lessor shall control);

6.     the Manufacturer agrees that it will not assert any lien or claim against the Aircraft, any engine or any part thereof arising with respect to or in connection with any work or other services performed by the Manufacturer or at its direction on the Aircraft, such engine or such part at the time of delivery of the Aircraft to the Lessor under the Purchase Agreement and the Assignment; and

7.     the Manufacturer hereby agrees that it shall on the date on which the Aircraft is delivered to the Lessor under the Purchase Agreement and the Assignment, subject to payment to it of the Purchase Price in respect of the Aircraft by the Lessor pursuant to the Purchase Agreement and the Assignment, forthwith upon receipt thereof deliver to and in favour of the Lessor the Bill of Sale and the other documents in respect of the Aircraft required to be delivered by the Manufacturer under the Purchase Agreement on the date the Aircraft is delivered.

8.     The Manufacturer hereby represents and warrants to the Assignors and the Transaction Parties that:

(a)     the Manufacturer is a corporation duly organized and validly existing in good standing under the law of the State of Delaware;

(b)     the making and performance in accordance with its terms of the Purchase Agreement and this Consent and Agreement in respect of the Aircraft have been duly authorized by all necessary corporate action on the part of the Manufacturer, do not require any stockholder approval, do not contravene the Manufacturer's Restated Certificate of Incorporation or By-laws or any indenture, credit agreement or other contractual agreement to which the Manufacturer is a party or by which it is bound and do not, as to the making thereof, contravene any law binding on the Manufacturer;

(c)     to the best of the Manufacturer's knowledge and belief, all applicable provisions of the Purchase Agreement in respect of the Aircraft have been complied with to effect the assignment contemplated by the Assignment; and

(d)     Notwithstanding any provision to the contrary in this Consent and Agreement or the Assignment, nothing contained in this Consent and Agreement or in the Assignment shall

MSN 42829 - Consent and Agreement

FILED DATE: 1/11/2023 2:57 PM  2023L000001

subject the Manufacturer to any liability to which it would not otherwise be subject under the Purchase Agreement or modify in any respect the Manufacturer's contract rights thereunder or require the Manufacturer to transfer title to, or possession of, the Aircraft prior to receipt of payment in full therefor as provided therein.

9.  The Manufacturer hereby confirms to the Security Trustee that:

   (a)  upon receipt by the Manufacturer of a notice from the Security Trustee addressed to the Manufacturer at the preceding address that the security constituted by the Lessor Security Assignment has become enforceable, the Assignment, including all warranties therein assigned, shall (to the extent assigned by the Assignment) inure to the benefit of the Security Trustee; and

   (b)  except as provided in the attestation executed by the Security Trustee on the signature page of the Assignment, neither the Security Trustee nor any Secured Party shall be liable for any of the obligations or duties of the Assignors under the Purchase Agreement or of the Transaction Parties under the Assignment.

10.  The provisions of the preceding paragraph are subject to the condition that the Lessor's right, title and interest in the Purchase Agreement (to the extent relating to the Aircraft) assigned to the Security Trustee pursuant to the Lessor Security Assignment may not be further assigned by the Security Trustee, without the prior written consent of the Manufacturer.

11.  The Manufacturer further consents and agrees to the security assignment by the Lessor to the Security Trustee of the Lessor's right, title and interest in and to the Purchase Agreement, the Assignment and this Consent and Agreement pursuant to the Lessor Security Assignment.

12.  It is understood that the execution by the Manufacturer of this Consent and Agreement is subject to the condition that, upon the delivery of the Aircraft by the Manufacturer to the Lessor, and the acceptance thereof by the Lessor, the Lessor shall lease the Aircraft to the Lessee pursuant to the Lease.

This Consent and Agreement shall be governed by, and construed in accordance with, the law of the State of Washington, excluding the conflict of laws principles thereof.

Dated _____10 August_____ 2017

**THE BOEING COMPANY**

By: *TA Greene*

Name: Tiffany Greene

Title: Attorney-in-fact

MSN 42829

MSN 42829 - Consent and Agreement