23cUNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AAA MAX 1 LIMITED, AAA MAX 2 LIMITED, AAA MAX 3 LIMITED, AAA MAX 4 LIMITED, AAA B787 2 LIMITED, And AAA B787 3 LIMITED, <br><br>    Plaintiffs, <br><br>    v. <br><br>THE BOEING COMPANY and BOEING COMMERCIAL AVIATION SERVICES EUROPE LIMITED, <br><br>    Defendants. | No. 23 C 853 <br><br> Judge Sara L. Ellis |

**OPINION AND ORDER**

Plaintiffs AAA Max 1 Limited, AAA Max 2 Limited, AAA Max 3 Limited, AAA Max 4 Limited, AAA B787 2 Limited, and AAA B787 3 Limited (collectively, "AAA") hold contractual and ownership interests in certain Boeing 737 Max and 787 aircraft that Boeing sold to Norwegian Air Shuttle ASA and Arctic Aviation Assets DACs (collectively, "Norwegian"). AAA filed suit in the Circuit Court of Cook County, Illinois against Defendants The Boeing Company ("Boeing") and Boeing Commercial Aviation Services Europe Limited ("BCASEL"), alleging breach of contract and fraud related to the design, manufacture, sale, and maintenance of the aircraft. Boeing and BCASEL removed the case to federal court, arguing that AAA fraudulently joined BCASEL as a Defendant and that diversity jurisdiction exists between AAA and Boeing, the only properly named Defendant. Concurrently, BCASEL filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), arguing that BCASEL is not subject to personal jurisdiction in Illinois and that AAA has failed to state a claim against it. AAA then filed a motion to remand, arguing that BCASEL cannot establish

fraudulent joinder and so the Court lacks subject matter jurisdiction over this case.[1]  Because BCASEL is not subject to personal jurisdiction in Illinois, the Court dismisses BCASEL from the case.  This leaves completely diverse parties, and so the Court has subject matter jurisdiction over the case and denies AAA's motion to remand.

## BACKGROUND[2]

### I.  The Parties

AAA consists of limited liability companies incorporated under the laws of the Cayman Islands.  Boeing, a Delaware corporation, previously had its corporate headquarters and principal place of business in Illinois, but, at the time of removal, had moved its headquarters and principal place of business to Virginia.  BCASEL, a private limited company incorporated under the law of the United Kingdom, has its registered office in London, England, and its principal place of business in Frimley, England.  BCASEL is a wholly owned subsidiary of Boeing United Kingdom Limited ("BUKL"), a United Kingdom company, which itself is a wholly owned subsidiary of Boeing.  BCASEL provides services to airline customers mainly in Europe and occasionally in the Middle East.  BCASEL employs over 300 people based entirely in Europe, with no office locations in the U.S.  BCASEL maintains separate corporate records from Boeing and has its own Board of Directors.  It does not commingle its assets with Boeing or BUKL but instead maintains its own bank accounts, which at all times, have sufficient balances to fund BCASEL's operations.  Nonetheless, BCASEL derives the majority of its revenue from Boeing and makes use of Boeing and BUKL's assets at times, though pursuant to written agreements

---

[1] Boeing also filed a motion to transfer, Doc. 8, which the Court denied without prejudice to refiling once the Court resolved the question of this Court's jurisdiction over the case.

[2] In addressing personal jurisdiction, the Court is not limited to the pleadings.  *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  Therefore, the Court draws the facts from AAA's complaint and the additional documents submitted by the parties.  The Court resolves all factual conflicts and draws all reasonable inferences in AAA's favor.  *Id.* at 782–83.

that provide for appropriate reimbursement. Boeing also indemnifies BCASEL against interest rate, liquidity, credit, and cash flow risks. BCASEL's webpage is found on Boeing's U.K. site and prominently displays Boeing's logo and includes hyperlinks to Boeing's main website.

BCASEL and Boeing collaborate to provide Boeing customers with a suite of fleet maintenance services through Boeing's GoldCare platform. Boeing provides some of these services directly but also contracts with other companies, such as BCASEL, to provide GoldCare services in certain locations. Boeing and BCASEL set forth their obligations with respect to GoldCare services in the General Terms and Conditions of GoldCare Network Agreement (the "Network Agreement") in 2014, and the Parts and Services General Terms Agreement (the "Parts and Services Agreement"), which superseded the Network Agreement, in 2020.[3] Among other things, these agreements address how BCASEL obtains the parts, materials, and other support it needs from Boeing to carry out its GoldCare obligations, as well as the parties' compensation arrangement. BCASEL coordinates its activities under the Network and Parts and Services Agreements with Boeing employees in Washington. The Network and Parts and Services Agreements provide that Washington law governs and that BCASEL has no authority to bind Boeing.

BCASEL and Boeing also entered into a Services Agreement in 2019, governing other services that BCASEL provides to Boeing, such as local market development in Europe, administrative and accounting services, and customer liaison services. BCASEL performs all of

---

[3] Boeing and BCASEL again amended the Parts and Services Agreement on November 30, 2021, with an effective date of January 1, 2021. BCASEL has provided the Court with the 2021 Parts and Services Agreement. Doc. 33. The 2021 Parts and Services Agreement provides that BCASEL does "not have and [will] not represent that it has, any authority to bind Boeing, to assume or create any obligations, express or implied, to enter into any agreements, or to make any warranties or representations, in each case on behalf of Boeing or in Boeing's name except as expressly authorized herein." Doc. 33 at 3. It also provides that BCASEL "is an independent company" and that "[n]othing in this Agreement will be deemed to constitute a partnership, joint-venture, or agency relationship between [BCASEL] and Boeing." *Id.* at 9. Washington law governs the agreement.

the services discussed in the Services Agreement in Europe. The Services Agreement provides that Delaware law governs and again indicates that BCASEL has no authority to bind Boeing and shall not represent that it has such authority.

## II.    The Relevant Transactions

Boeing sold twelve 737 Max aircraft and two 787 aircraft to Norwegian, which ultimately assigned the aircraft to AAA. Norwegian entered into a purchase agreement for the 737 Max aircraft in January 2012 and into purchase agreements for various 787 aircraft, including the two at issue in this case, in May 2011, October 2015, and March 2018. Boeing designed, certified, manufactured, and delivered the 737 Max and 787 aircraft at issue in this case at its facilities in Washington and South Carolina.

Boeing marketed the 737 Max to Norwegian and the industry as similar in design and operation to its earlier 737 Next Generation aircraft, representing, among other things, that no new pilot training would be required to incorporate the 737 Max into Norwegian's fleet and that the 737 Max would be state of the art. Boeing did not disclose that the 737 Max's larger engines could cause significant issues, including changing the aircraft's center of gravity, decreasing aircraft stability, and negatively affecting flight handling characteristics in a way that made the aircraft more susceptible to the risk of a catastrophic aerodynamic stall. Boeing also represented that the 787 aircraft would be reliable and would offer Norwegian operational and cost savings, as well as competitive advantages, including with respect to greater fuel efficiency. Despite these representations, the 737 Max and 787 aircraft have had significant issues that have required their grounding and have impaired the value of the aircraft.

In connection with the purchase of the 737 Max and 787 aircraft, Norwegian executed a 787 GoldCare Agreement in 2015 and a 737 Max GoldCare Agreement in 2016.[4] Norwegian, Boeing, and BCASEL are parties to the 787 GoldCare Agreement. Norwegian, Boeing, BCASEL, and Boeing International Corporation Spanish Branch are parties to the 737 Max GoldCare Agreement. BCASEL did not have a role in the negotiation of the agreements, with the negotiations conducted by Boeing employees in Washington and Norwegian representatives based in Europe. Washington law governs both agreements. Under the 737 Max and 787 GoldCare Agreements, BCASEL had responsibility for providing engineering, maintenance, and parts management services for the 737 Max and 787 aircraft to Norwegian in Europe subject to European Union safety regulations. BCASEL provided these services to Norwegian primarily at the London Gatwick Airport and at BCASEL's office in Frimley, England.

Boeing also entered into GoldCare Lessor Support Agreements ("GLSAs") for the 737 Max and 787 aircraft with AAA and Norwegian. BCASEL was not a party to the GLSAs. The GLSAs set out the terms by which Boeing set aside and allocated maintenance reserves for the potential benefit of AAA following a triggering event. Boeing personnel in Washington and overseas negotiated the GLSAs.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

---

[4] The 787 GoldCare Agreement and 737 Max GoldCare Agreement were terminated on August 13, 2020.

In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[ ] must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

     A defendant may remove a case filed in state court that could have been filed originally in federal court. 28 U.S.C. § 1441; *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). The removing party bears the burden of demonstrating the propriety of removal, and any doubt regarding jurisdiction should be resolved in favor of remand. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). The Court may remand a case based on a jurisdictional defect at any time. 28 U.S.C. § 1446; *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 625–26 (7th Cir. 2013). A party seeking a different forum on the basis of fraudulent joinder "bear[s] a heavy burden" and must show that the plaintiff falsely pleaded certain jurisdictional facts or that the plaintiff has no chance of succeeding on its claim against the non-diverse defendants. *Poulos v. Naas*, 959 F.2d 69, 73 (7th Cir. 1992). To find fraudulent joinder based on the second prong, a court must conclude that, "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the [non-diverse] defendant." *Id.* If the Court finds fraudulent joinder, the Court may disregard the non-diverse defendant's

6

inclusion when analyzing diversity of citizenship, assume jurisdiction over the case, and dismiss the non-diverse defendant. *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013).

## ANALYSIS

I. **Sequencing of Issues**

The parties dispute the order in which the Court should consider the pending motions, with AAA contending that the Court should decide the motion to remand without considering the question of personal jurisdiction, and Defendants arguing that the Court cannot decide the motion to remand without first determining whether BCASEL is subject to personal jurisdiction in Illinois. Although a Court typically resolves questions of subject matter jurisdiction first, the Court has discretion to consider personal jurisdiction first. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[T]here is no mandatory 'sequencing of jurisdictional issues.' In appropriate circumstances, . . . a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction." (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 584 (1999))); *Livingston v. Hoffman-La Roche Inc.*, 293 F. Supp. 3d 760, 765 (N.D. Ill. 2018) ("Federal district courts thus have discretion to dismiss a removed case for lack of personal jurisdiction without first making a subject-matter jurisdiction determination."). Here, Defendants' argument that the Court has subject matter jurisdiction based on diversity depends on resolution of their contention that BCASEL is not subject to personal jurisdiction in Illinois. Because the Court must decide personal jurisdiction to resolve the question of whether the case is properly before it, the Court exercises its discretion to consider the question of personal jurisdiction first. *See Redd v. Amazon Web Servs., Inc.*, --- F. Supp. 3d ----, 2023 WL 3505264, at *1 (N.D. Ill. May 17, 2023) ("When confronted with concurrent motions implicating both subject-matter jurisdiction and personal jurisdiction, a

federal court can decide for itself in which order to address them. Because a ruling for AWS on personal jurisdiction grounds would obviate the need to consider the remand motion entirely, I opt to resolve the Rule 12(b)(2) motion first."); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040, 1046 (N.D. Ill. 2016) ("To promote judicial economy, the Court will first address the issue of its personal jurisdiction over defendants as to Bernaix's claims. If personal jurisdiction is lacking, the Court may dismiss his claims, thereby preserving diversity of citizenship without delving into the fraudulent joinder analysis."). *But see Thompson v. Cottrell, Inc.*, No. 10-124, 2010 WL 850183, at *3 (S.D. Ill. Mar. 8, 2010) (refusing to consider lack of personal jurisdiction as a ground for finding fraudulent joinder because it "does not go to the merits" of a claim).

## II. Personal Jurisdiction over BCASEL

In diversity cases, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois allows for personal jurisdiction to the full extent authorized by the Illinois and United States Constitutions. *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). Although there may be theoretical differences between the federal and Illinois constitutional standards, the Seventh Circuit has observed that "no Illinois case has provided a definitive explanation" of these differences. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). Moreover, both constitutional standards essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable. *See KM Enters.*, 725 F.3d at 732. Thus, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g., Curry v. Revolution Labs., LLC*, 949 F.3d at 393; *Wesly v. Nat'l Hemophilia Found.*, 2020 IL App (3d) 170569, ¶ 16 ("[I]t is generally true that, when federal due process concerns

regarding personal jurisdiction are satisfied, so are Illinois due process concerns." (alteration in original) (citation omitted)).  Jurisdiction is proper under the Due Process Clause of the United States Constitution if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)).  Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017).

Personal jurisdiction comes in two forms: general and specific.[5]  *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019).  Because AAA does not argue that the Court has general jurisdiction over BCASEL, the Court limits its analysis to specific jurisdiction.  Specific jurisdiction arises "where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself.").  For purposes of specific jurisdiction, "[t]he relevant contacts are those that center on the relations among the defendant,

---

[5] As the Supreme Court has recently emphasized, these jurisdictional categories apply where a corporation has not otherwise consented to suit in the forum state, with consent providing an additional avenue for establishing personal jurisdiction. *Mallory v. Norfolk S. Ry. Co.*, --- U.S. ----, --- S. Ct. ----, 2023 WL 4187749, at *8 (June 27, 2023).  Here, because AAA does not argue that BCASEL consented to suit in Illinois, the Court does not address this question further.

9

the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800–01 (7th Cir. 2014).

AAA first argues that BCASEL itself has sufficient suit-related contacts with Illinois, focusing on the 737 Max and 787 GoldCare Agreements. Through these agreements, BCASEL partnered with Boeing, which at the relevant time had its headquarters in Illinois, to service Norwegian's aircraft in Europe. AAA emphasizes that Boeing directed BCASEL as to how to perform these services and paid BCASEL over $800 million per year to provide GoldCare services to Boeing's customers. When considering whether the effects of a contract can bring an otherwise out-of-state defendant into the Court's jurisdiction, the Court takes "a highly realistic approach," recognizing "that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985) (citation omitted) (internal quotation marks omitted). The Court examines the following factors: "(1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was formed; and (4) where performance of the contract was to take place." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (citation omitted). The Court also considers "the terms of the relevant contracts, the contemplated future consequences of those agreements, and the parties' actual course of dealing." *Madison Miracle Prods., LLC v. MGM Distrib. Co.*, 2012 IL App (1st) 112334, ¶ 62.

Here, although Boeing had its headquarters in Illinois at all relevant times, this is the only connection that the 737 Max and 787 GoldCare Agreements and the agreements between Boeing and BCASEL have with Illinois. Another contracting party's location cannot on its own establish jurisdiction over BCASEL in Illinois, however. *See RAR, Inc. v. Turner Diesel, Ltd.*,

107 F.3d 1272, 1277 (7th Cir. 1997) ("[A]n out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts."). Further, according to the affidavits provided by BCASEL, which AAA has not refuted, the Boeing employees involved in the negotiation and execution of these agreements were located in Washington, and Washington or Delaware law govern all of the agreements. *See Lexington Ins. Co.*, 938 F.3d at 879 (choice of law for dispute resolution in non-forum state weighed against personal jurisdiction in forum). None of the agreements required BCASEL to perform any obligations in Illinois, or even in the U.S., with the "real object" of the relationship being BCASEL's servicing of Boeing's customers in Europe. *See Burger King*, 471 U.S. at 479. Thus, the various agreements BCASEL had with Boeing and Norwegian do not sufficiently connect BCASEL with Illinois to provide a basis for subjecting BCASEL to jurisdiction here.[6]

AAA alternatively argues that BCASEL entered into a joint venture with Boeing, meaning that the Court can attribute Boeing's contacts with Illinois to BCASEL. *See Hill v. Shell Oil Co.*, 149 F. Supp. 2d 416, 418 (N.D. Ill. 2001) ("The joint venture theory provides that the minimum contacts of one co-venturer are attributable to other co-venturers such that personal jurisdiction over one means personal jurisdiction over all."). Illinois law defines a joint venture as "an association of two or more entities to carry out a single, specific purpose for a profit." *Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1030 (N.D. Ill. 2009) (citing *Daniels v. Corrigan*, 382 Ill. App. 3d 66, 80 (2008)). "A joint venture may be inferred from circumstances demonstrating the parties' intent to enter into a joint venture, even in the absence

---

[6] AAA also points out that two of BCASEL's former directors lived in Illinois. But the mere presence of a former director in Illinois without any explanation of how that director played a role in the events giving rise to this lawsuit cannot provide the basis for specific jurisdiction over BCASEL. *See Felland*, 682 F.3d at 676 ("Even where a defendant's conduct is purposefully directed at the forum state, the plaintiff must also show that his injury 'arises out of' or 'relates to' the conduct that comprises the defendant's contacts.").

11

of a formal agreement." *Id.*  BCASEL argues that a joint venture exists only where the following five factors are present: "(1) an express or implied agreement to carry on an enterprise; (2) a demonstration of intent to be joint venturers; (3) a community of interest, as reflected in the contribution of property, money, effort, skill, or knowledge; (4) a measure of joint control and management of the enterprise; and (5) sharing of profits and losses." *Hiatt v. W. Plastics, Inc.*, 2014 IL App (2d) 140178, ¶ 73 ("In the absence of any one of these elements, no joint venture exists.").  The Illinois Appellate Court has expressed skepticism as to the mechanical nature of this test when considering personal jurisdiction, suggesting that even where a relationship between two parties does not meet the Illinois joint venture definition, a party may nonetheless be found to have purposefully availed itself of the benefits of doing business in Illinois through a relationship with another party where the latter's contacts with the forum state were made "bilaterally rather than unilaterally." *Khan v. Gramercy Advisors, LLC*, 2016 IL App (4th) 150435, ¶ 171.  In other words, regardless of the five-factor test, the Court must consider "whether the contacts were made on behalf of just one venturer or both." *U.S. Conveyor Techs. Mfg., Inc. v. New England Quality Serv., Inc.*, No. 1:18-cv-1264, 2019 WL 208850, at *8 (C.D. Ill. Jan. 15, 2019).  Here, aside from the lack of contacts BCASEL had with Illinois, AAA has failed to identify any suit-related contacts that Boeing had with Illinois that Boeing arguably made on behalf of both itself and BCASEL.[7]  *See Hernandez v. Oliveros*, 2021 IL App (1st) 200032, ¶ 23 ("Bilateral acts occur when two parties have a business relationship or contractual understanding that contemplates one party's acting for the benefit of both in the forum state.").  Thus, even assuming that a joint venture existed, AAA has not sufficiently shown how Boeing's Illinois contacts subject BCASEL to jurisdiction for the claims raised in this suit.

---

[7] Given the lack of suit-related contacts with Illinois, the Court presumes that Boeing agrees that, although it recently moved its headquarters from Chicago to Virginia, it remains subject to personal jurisdiction in Illinois by way of general jurisdiction or consent for purposes of this case.

Finally, AAA argues that BCASEL is subject to jurisdiction in Illinois because it conducts the business of its parent corporation, Boeing, which has not contested personal jurisdiction. But "jurisdiction over a parent corporation" does not "automatically establish jurisdiction over a wholly owned subsidiary." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984). Here, AAA has not sufficiently shown that Boeing and BCASEL do not observe corporate formalities or that Boeing exercises an unusually high degree of control over BCASEL to allow for the imputation of Boeing's contacts to BCASEL. *See Abelesz*, 692 F.3d at 658–59 ("Imputation . . . requires 'an unusually high degree of control' or that the subsidiary's 'corporate existence is simply a formality.'" (quoting *Purdue Research Found.*, 338 F.3d at 788 n.17)); *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (personal jurisdiction "cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary"). Instead, the record reflects that Boeing and BCASEL observe corporate formalities, with BCASEL having its own bank accounts, board of directors, and separate corporate records. *See Marks v. Worldwide Robotic Automated Parking, LLC*, No. 16-CV-8656, 2017 WL 2985757, at *6 (N.D. Ill. July 13, 2017) (corporate formalities observed where companies operated as separate business entities, kept separate books, filed separate tax returns, produced separate financial statements, and maintained separate boards, even though there was evidence that companies shared the same officers). True, Boeing directs BCASEL's activities and BCASEL derives a significant share of its revenue from Boeing. But "'[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent,' and a normal parent-subsidiary relationship is insufficient to impute jurisdictional contacts." *My Canary LLC v. Cessna Aircraft Co.*, No. 16 CV 4000, 2017

WL 201373, at *3 (N.D. Ill. Jan. 18, 2017) (quoting *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998)).

Thus, because AAA has not demonstrated that BCASEL has suit-related contacts with Illinois or that Boeing's former presence in Illinois provides a basis for imputing its contacts to BCASEL under either a joint venture or parent-subsidiary theory, BCASEL is not subject to personal jurisdiction in Illinois. This means that AAA cannot proceed with its claims against BCASEL in Illinois state or federal court, and so the Court dismisses BCASEL as a party defendant.[8] With BCASEL's dismissal, the Court has subject matter jurisdiction over this case because the remaining parties are completely diverse, which necessitates the denial of AAA's motion to remand.

## CONCLUSION

For the foregoing reasons, the Court grants BCASEL's motion to dismiss for lack of personal jurisdiction [7]. The Court denies AAA's motion to remand [24]. The Court dismisses AAA's claims against BCASEL without prejudice for lack of personal jurisdiction.

Dated: July 26, 2023

SARA L. ELLIS
United States District Judge

---

[8] Because the Court lacks personal jurisdiction over BCASEL, it does not address BCASEL's arguments that AAA has not stated a claim against it.